

# Herman Herman & Katz, LLC
## Attorneys at law

820 O'Keefe Avenue
New Orleans, Louisiana 70113-1116

(504) 581-4892 Main
(504) 561-6024 Fax
Soren E. Gisleson
sgisleson@hhklawfirm.com

May 3, 2020

In Re: The Roman Catholic Church for the Archdiocese of New Orleans
Chapter 11
No. 20-10846

TO ALL STAKEHOLDERS AND PARTIES IN INTEREST:

This bankruptcy is about the sex abuse victims. Hundreds of children were raped, sodomized, and physically tortured by the clergy of this Archdiocese. While the abuse lasted for generations, the Archdiocese of New Orleans buried allegations, moved rapists among its parishes, and bullied most victims into silence. Archbishops Philip Hannan, Francis Schulte, Alfred Hughes, and Gregory Aymond had a sacred duty to protect the children of this community and they utterly failed to do so. The Archdiocese's misconduct is the prime mover of this bankruptcy.

The Archdiocese sees this case through a single lens: the survivors are "financial and operational difficulties." *Patrick Carr Declaration*, at ¶ 9 [Rec. Doc. 14]. The survivors are not "difficulties"; they are adult witnesses of crimes against the children of the New Orleans community. As such, the victims seek the truth. The victims need to know what the Archdiocese knew, when it knew it, and what it willfully did with that knowledge. The victims deserve some explanations. For example, why did the Archdiocese prioritize pedophile priests over innocent children. Why did the Archdiocese fail to report abuse to authorities even when the pedophile priest submitted a written confession to it most senior clergy. In state court, those victims were on the path to the truth. They filed lawsuits, named their assaulters, sought documents related to their

*This firm and its partners are also partners in Herman Gerel, LLP.

claims, and moved the District Court for testimony. Depositions were taken, documents were exchanged, and the District Court conducted dozens of hearings. The victims fought for themselves and, in so doing, started to reclaim the agency that was taken away from them as children.

The Archdiocese again deprived them of this agency by filing for bankruptcy. Its filing was designed to stop Archbishop Aymond's May 28th deposition and block the publication of thousands of pages of documents. Rather than embrace truth and transparency, the Archdiocese continued moved its campaign of delay and silence to another forum.

The Archdiocese's seeks to perpetuate a damning narrative before this Court. The Archdiocese boldly states that the sexual abuse that is the subject of the state court lawsuits "occurred more than 50 years ago". *Patrick Carr Declaration*, at ¶ 9 [Rec. Doc. 14]. It takes a blind eye to the existence of at least **20 plaintiffs** abused in the 1970s and 1980s, well within the past 50 years. Each one of the state court petitions identifies the timeframe of the abuse. This intentional misstatement callously repudiates these victims. It delegitimizes their abuse and implies that the credibility of their abuse accusations cannot be tested or that the survivors should have gotten over it by now. As to credibility-the main witness, the abuse victim, is very much alive and prepared to present their cases in a trial court. As to the durability of the harm, one can only have that attitude if you believe that "little people suffer little hurts."

The Debtor also obfuscates the financial worth of the Archdiocese and the Non Debtor Catholic Entities. On the one hand, the Archdiocese reports the total value of its assets to fall within the $100-$500 million range (*Form 201*, at 4). However, the real and personal property of the Non Debtor Catholic Entities and the Archdiocese exceeds $2.1 billion. *The Catholic Mutual Relief Society of America 2019-2020 Insurance Declaration*, at 1 (providing coverage of assets valued at

$2,163,078,000), attached as Exhibit "1". The Debtor, in all of its first-day pleadings makes no attempt to explain this discrepancy. As the Debtor undoubtedly will seek reorganization around a channeling injunction and release for these Non Debtor Catholic Entities, the presentation of the valuation range on the voluntary petition without further explanation simply does not present an accurate asset picture.

Abuse survivors have uncovered the Archdiocese's decades of pattern and practice only by way of contentious state court litigation. Undersigned counsel has litigated 22 cases at full bore: (1) filing dozens of motions, some of which revealed involvement of the New Orleans Saints on issues directly relevant to the victims' claims; (2) attending more than 35 District Court hearings and status conferences; (3) reviewing almost 10,000 Archdiocese documents; (4) producing thousands of pages from clients; (5) briefing dozens of motions and oppositions in the District Court; (6) issuing more than 15 District Court subpoenas; (7) retaining experts in the treatment of clergy sexual abuse victims; and (8) deposing the Archdiocese's Archivist and IT representatives to locate the various secret abuse files kept by the Archdiocese in a safe locked inside a vault, the Archbishop's locked files in his desk drawer, and the Vicars General own separate cache.

At the time of this bankruptcy filing, undersigned was in mid-preparation for a District Court prescription trial to determine whether the Archdiocese engaged in fraudulent concealment of the sexual abuse claims. The deposition of Archbishop Aymond had been noticed, a list of fact witnesses to be deposed was provided to the Archdiocese and being negotiated, a draft corporate representative notice of the Archdiocese itself had been propounded, a witness list identifying 37 witnesses had been served on the Archdiocese, and even the deposition of a Scranton Archdiocese Vicar General had been scheduled as well as issuing a subpoena for records from the Diocese of

Las Vegas. The truth of the history of abuse in this Archdiocese has been revealed only by dint of the hard work of the plaintiffs and counsel in these District Court cases.

All of this was done to empower the sexual abuse victims – to help them regain agency of their trauma. The rape of children is a thief that keeps on stealing for the rest of their lives. It starts by stealing their youth, their faith and their personal their relationships with friends, wives and children. Many victims experience intense suicidal ideations and drug addiction, and a number of our own clients have experienced both. These victims are in fact survivors who have suffered and fought through the pain inflicted on them as children. Studies have shown that sexual abuse victim does not even tell loved ones or therapists of the abuse for the first time until their mid-40s to 50s or even later. The average age at which a victim comes forward is at the age of 52.

Undersigned stand ready to continue to help the victims in this bankruptcy. Through the institutional knowledge gained from discovery in hard-fought District Court litigation, undersigned will execute their duties to protect, fight, and communicate on behalf of victims.

Communication is important to any litigation whether it is with the client, the court, or opposing counsel. Undersigned sent a letter to counsel for the Archdiocese ten days before the bankruptcy filing, requesting an opportunity to discuss the filing and to pro-actively develop a plan that would meaningfully assist the victims. *LTR from Trahant to Zeringue*, attached as Exhibit "2". Not only did the Archdiocese's counsel fail to respond to this letter, they refused to respond to a question in a March status conference before a state court judge about whether it was even contemplating bankruptcy. The Archdiocese has found a new judicial forum and a new judge, but it cannot evade the developing District Court record that documents is liability.

Bankruptcy by ambush yields distrust. The bankruptcy process needs fiduciaries and counsel who communicate openly and candidly about the Archdiocese's assets, liabilities and reorganization goals. While disagreement can be expected, this case will be successful only if there is candor. Plaintiffs contemplate working with an official committee that will represent the survivors' interests in that spirit and hope that they and the committee will have a debtor that acts in the same manner.

    Sincerely,

    SOREN GISLESON, ESQ.

cc:    All counsel via e-mail

8554
Certificate Number

# The Catholic Mutual Relief Society of America
## Declarations

Certificate Holder: **Archdiocese of New Orleans**
Address: 7887 Walmsley Avenue
New Orleans, LA 70125

Charges Due at Inception: $5,664,137.00
Business of Certificate Holder: Catholic Archdiocese

Certificate Period From: July 1, 2019 Noon Standard Time
To: July 1, 2020 Noon Standard Time

Coverage is provided in accordance with the following schedule of coverages. No coverage is provided for any part of this certificate unless a limit of liability or the word "Included" is shown for such coverage section or part.

| Section I-Property | Limit of Coverage/Liability | Deductible |
|---|---|---|
| A. Building and B. Personal Property*................ | $ 2,163,078,000 | See PKS-113-22 |
| Supplementary Declarations - PKS-101A | | |
| Named Storm - See PKS-192A(7-08)................ | 70,000,000 Per Occurrence Annual Aggregate | 3% Per Building |
| *Coverage is limited per building/contents to the amount shown on the attached ledger page(s). | | |
| **Section II-Liability Certificate Limit of Liability** | **$ 500,000** except as indicated below | |
| Limit(s) shown for the following is the maximum we will pay per occurrence/aggregate under the coverage part: | | |
| D. Bodily Injury, Property Damage, Personal Injury, Advertising Injury, Corporal Punishment........... | 500,000 | See PKS-113-22 |
| E. Fire Legal Liability................................. | 500,000 | See PKS-113-22 |
| F. Medical Payments to Others..................... | Nil | |
| G. Cemetery Errors & Omissions.................. | 500,000 | See PKS-113-22 |
| H. Counseling Errors & Omissions................ | 500,000 | See PKS-113-22 |
| J. Employee Benefits Errors & Omissions....... | 500,000 | See PKS-113-22 |
| K. Employment Practices Liability-See Form PKS-113-10... | 500,000 Annual Aggregate | See PKS-113-22 |
| Optional: | | |
| Incidental Medical Malpractice....................... | 500,000 | See PKS-113-22 |
| Liquor Liability (Limited)............................. | 500,000 | See PKS-113-22 |
| Excess Auto Liability - Form PKS-104-1(7-08)...... | 200,000 | See PKS-113-22 |
| Limited Mold Coverage - PKS-190(7-08)........... | 250,000 | See PKS-113-22 |
| Unmanned Aircraft (Drone) Coverage PKS-200(1-16r2)........ | 500,000 | $10,000 |
| **Section III-Crime Coverage Certificate Limit of Liability** | **$ 600,000** See PKS-113-11, 12, 13, 14 & 15 | |
| Employee Dishonesty-Agreement I (Blanket)........... | 125,000 | See PKS-113-22 |
| Theft-Agreement II-Money & Securities................ | 125,000 | See PKS-113-22 |
| Depositors Forgery-Agreement III..................... (Including Counterfeit Money) | 125,000 | See PKS-113-22 |
| Computer Fraud & Funds Transfer PKS-154(1-17) | 250,000 | See PKS-113-22 |

PKS-101(7-19) Rev Eff 7-18-19

Page 1


EXHIBIT 1

| 7-1-19 to 7-1-20 | | 8554 |
|---|---|---|
| Certificate Period | | Certificate Number |

| Section IV-Marine Forms<br>Specific Coverage | Limit of Coverage/Liability | Deductible |
|---|---|---|
| Builders Risk Form PKS-102(1-08)............. | $ 10,000,000 | See PKS-113-22 |
| Builders Risk Earthquake.................................. | 1,000,000 | $50,000 |
| Demolition Cost Coverage PKS-173(7-08) | See PKS 113-17 | See PKS-113-22 |
| **Section V-Directors & Officers** | | |
| Per Coverage Form    Retroactive | | |
| PKS-128(7-19)           Date         <u>7-1-89</u> | 500,000 | See PKS-113-22 |
| **Section VI-Priests/Religious** | | |
| Persons Covered   -  Priests & Religious on assignment<br>                   at covered locations | | |
| Personal Property Coverage   PKS-106(7-08) & PKS-113-18.... | 25,000 | $100 All Peril |
| Personal Liability - Each Priest on assignment at covered<br>                   location PKS-107(7-08)........................... | 300,000 | |
| Personal Medical Payments - Per Person............................... | 500 | |
| **Section VII-Excess Liability**<br>**Per Coverage Form(s)** | | |
| See PKS-117(10-15) | | |
| A. (1) Each Occurrence, except Directors & Officers Liability... | 25,000,000 | |
|     (2) Each Claim - Directors & Officers Liability............ | 20,000,000 | |
| B. (1) Annual Aggregate ............................... | 50,000,000 | |
|     (2) Annual Aggregate ............................ | 40,000,000 | |
| C. Retained Limit................................................................ | N/A | |
| **Section VIII-Equipment Breakdown** | | |
| Per Coverage Form   EB T001 (1-19) | 150,000,000 Maximum | $5,000 |
| **Section X-Long Term Care Professional**<br>**Liability, General Liability and**<br>**Directors & Officers** | | |
| See PKS-LTC DEC(7-08)   Retroactive Date: 7-1-89 | | |
| A. Each Occurrence ............................ | 2,000,000 | |
| B. Annual Aggregate ............................ | 5,000,000 | |
| C. Medical Payments............................................. | 5,000 | |
| D. Retained Limit.................................................. | 300,000 per occurrence | See PKS-113-22 |
| Optional: | | |
| Excess Auto Liability - Form PKS-LTC 104-1(7-08)..................... | 200,000 | See PKS-113-22 |
| Limited Mold Coverage - PKS-LTC 190(7-08)....................... | 250,000 | See PKS-113-22 |
| **Section XI-Sexual Misconduct** | | |
| Per Coverage Form   PKS-SM100(7-19) | | |
| Sexual Misconduct -  Retroactive Dates -<br>  See PKS-SM100S(7-19) | 3,000,000 Aggregate | See PKS-113-22 |
| Conditional Defense Coverage for Innocent Clergymen -<br>  Form PKS-182(7-19) Coverage Effective 7-1-99 to 1-1-2012 | 150,000 Aggregate | See PKS-113-22 |
| Conditional Defense Coverage for Innocent Person -<br>  Form PKS-182(B) (7-19) Coverage Effective 1-1-2012 | 150,000 Aggregate | See PKS-113-22 |

PKS-101(7-19) Rev Eff 7-18-19                                                                 Page 2

# Richard C. Trahant
*Attorney at Law*

2908 Hessmer Avenue
Metairie, Louisiana 70002

Telephone: (504) 780-9891
trahant@trahantlawoffice.com

April 21, 2020

Fax: (504) 780-7741

**Mr. Wayne G. Zeringue, Jr.**
Jones Walker
201 St. Charles Ave
New Orleans, LA 70170-5100

**(Via E-Mail)**

*Re: Clergy abuse litigation/Archdiocese of New Orleans bankruptcy*

Dear Wayne:

    We saw recent stories on the local news about the Archdiocese furloughing employees, which story contained a statement about the Archdiocese having explored ways to balance its budget for the past few years, and how the coronavirus shut down has made financial challenges become more acute.

    During the last appearance of all counsel in Civil District Court on March 11, 2020 in the *JW Doe* case, we raised the question of whether the Archdiocese is preparing for a bankruptcy filing. We did not receive any response to our request. We are aware that several archdioceses, dioceses, and religious orders have filed for bankruptcy protection in response to clergy abuse litigation. Should the Archdiocese be preparing for such a filing, we view our clients as perhaps the largest creditor constituency, and we offer to meet with you in advance of any filing in order to discuss certain critical aspects of the bankruptcy process in an effort to streamline the restructuring process and maximize recovery to the abuse victim creditors.

    Among these critical issues, please be advised that our victim/creditor clients have distinct views on: (1) insuring the fairness and due process in the claims bar date process for victims, (2) defining the universe of assets of the estate and establishing their values, (3) creating an equitable claims process, and (4) limiting "Plan" releases for non-bankrupt, abuse cover up co-conspirators including individual clergy members, religious orders, individual parishes, and possibly others.

    We have reached out to all attorneys known to us who have sex abuse cases filed against the Archdiocese in CDC, as well as attorneys who might have claims for clients for whom they have not filed suit. All have agreed to join with us, or have not opposed us taking the lead on this issue relative to Archdiocese filing for bankruptcy.

    Please let us know if you are receptive to such a pre-filing meeting. If not, we would ask for the professional courtesy of notification of the Archdiocese's filing on the day it is filed as well as a copy of all "first day" Motions and at least 24 hours advance notice of any hearings set on the "first-day" Motions.

**EXHIBIT 2**

Page 2
Zeringe-ANO
4-21-20

   Thanking you in advance, I remain,

                   Sincerely,

                   RICHARD C. TRAHANT

RCT:sb
cc: John H. Denenea, Jr. (via e-mail)
  Soren E. Gisleson (via e-mail)