CIVIL DISTRICT COURT

PARISH OF ORLEANS

STATE OF LOUISIANA

NO. 19-01371                                        DIVISION "C"


JAMES DOE

versus

ARCHDIOCESE OF NEW ORLEANS INDEMNITY, INC., THE CATHOLIC
MUTUAL RELIEF SOCIETY OF AMERICA, THE ROMAN CATHOLIC
CHURCH OF THE ARCHDIOCESE OF NEW ORLEANS, FATHER MICHAEL
FRASER, AND FATHER PAUL CALAMARI


Proceedings taken in the above-captioned and
-numbered matter, heard in open court before the HONORABLE
SIDNEY H. CATES, IV, Judge presiding, on Friday,
February 7, 2020.

Reported by:

LAURIE F. HENDRICKSON, RMR, CRR, CCR


APPEARANCES:

        JOHN H. DENENEA, JR., ESQ.
        RICHARD C. TRAHANT, ESQ.
        SOREN E. GISLESON, ESQ.
            Attorneys for the Plaintiff

        EDWARD DIRK WEGMANN, ESQ.
        BRODIE G. GLENN, ESQ.
        IAN P. GUNN, ESQ.
        ALLISON B. KINGSMILL, ESQ.
        WAYNE G. ZERINGUE, JR., ESQ.
            Attorneys for The Roman Catholic Church of the
            Archdiocese of New Orleans

        EVAN PARK HOWELL III, ESQ.
            Attorney for Father Paul Calamari


EXHIBIT 12

ROMAN CATHOLIC CHURCH OF THE ARCHDIOCESE OF NEW
ORLEANS' EXHIBIT INDEX

|  | Description | Offered | Accepted | Denied |
|---|---|---|---|---|
| 1 | "Special Master's Report and Recommendations," 2018-10864, Division "A," dated September 25, 2019 | 10, 12 | 12 | |
| 2 | "Protective Order," 2018-10864, Division "A," dated October 28, 2019 | 7, 10, 12 | 12 | |
| 3 | "Judgment Adopting Special Master's Report and Recommendations and Supplemental Special Master's Report and Recommendations," 2018-10864, Division "A," dated November 14, 2019 | 10, 12 | 12 | |
| 4 | "Special Master's Report and Recommendations," 2018-10864, Division "A," dated November 7, 2019 | 10, 12 | 12 | |
| 5 | "Judgment" in Lon Doe, Division "I," dated November 5, 2020 | 10, 12 | 12 | |
| 6 | Transcript in Stonebreaker, 2019-8551, Division "I," dated January 10, 2020 | 10, 12 | 12 | |
| 7 | Transcript in Tom Doe, 2019-8552, Division "B," dated January 10, 2020 | 10, 12 | 12 | |
| 8 | "Judgment" in J.W. Doe, 2019-3947, Division "D" | 10, 12 | 12 | |

```
 1    THE COURT:
 2              23 is next, James Doe v. The Roman Catholic
 3         Church.
 4              Before y'all announce all of your
 5         appearances on the record, I'm aware that
 6         there's some protective order in place in other
 7         cases.  Is this record sealed or anything?
 8              Okay.  Go ahead and proceed.
 9    MR. GISLESON:
10              Good morning, Your Honor.  Soren Gisleson,
11         Rick Trahant, Johnny Denenea on behalf of
12         plaintiff.
13    THE COURT:
14              Good morning, gentlemen.
15    MR. WEGMANN:
16              Dirk Wegmann, Your Honor, on behalf of the
17         Archdiocese.
18    MS. KINGSMILL:
19              Allison Kingsmill on behalf of the
20         Archdiocese.
21    MR. GLENN:
22              Brodie Glenn on behalf of the Archdiocese.
23    MR. GUNN:
24              Ian Gunn on behalf of the Archdiocese, Your
25         Honor.
26    MR. HOWELL:
27              Evan Howell on behalf of the defendant Paul
28         Calamari.  Thank you, Your Honor.
29    THE COURT:
30              Good morning, gentlemen, ladies.
31              This is the Archdiocese's motion for
32         extension of time, for a protective order, and a
```

```
1              request for a status conference.
2      MR. WEGMANN:
3              Yes, Your Honor.
4      THE COURT:
5              Are you going to argue them all?
6      MR. WEGMANN:
7              Yes, sir.
8      THE COURT:
9              Thank you.
10     MR. WEGMANN:
11             Good morning.
12     THE COURT:
13             Good morning.
14     MR. WEGMANN:
15             So some general background here, Judge:
16         Some of it hopefully will be helpful to you in
17         understanding the context in which, as you
18         suggested, you know, we appear before you.
19             On the motion for extension of time with
20         respect to the discovery, we filed answers to
21         the discovery interrogatories on January 15.  We
22         only need an additional 15 days from today, two
23         weeks, to produce documents, provided that there
24         is a protective order in place to protect
25         confidential information in those documents.
26     THE COURT:
27             Is that objected to by the plaintiff?
28     MR. GISLESON:
29             Your Honor, plaintiffs are okay with them
30         producing documents within 15 days.  We're not
31         okay with it being conditioned on a motion
32         that's yet to be heard, because they're saying
```

4

```
 1          they're not gonna produce any documents without
 2          a protective order being issued.
 3    THE COURT:
 4               That's fair.
 5    MR. GISLESON:
 6               We haven't argued the protective-order
 7          issue yet.  Thank you.
 8    MR. WEGMANN:
 9               Okay.  So, Judge, with respect to the
10          protective order that we're requesting, as Your
11          Honor may know, there are now 20 or more Doe
12          cases involving clergy of the Archdiocese and
13          others.  All of these claims involve claims of
14          sexual abuse that occurred decades ago.
15               In nine of these cases, including this one,
16          the same discovery interrogatories and request
17          for production of documents were issued to the
18          Archdiocese by the same lawyers.  In other
19          words, in these nine cases, the plaintiffs'
20          lawyers are the same; and, of course, the
21          Archdiocese lawyers are generally the same.  In
22          some cases, there are additional Archdiocese
23          lawyers because there's insurance coverage, but
24          my firm and another firm are the primary defense
25          firm for the Archdiocese itself.
26               These 20 different cases have been allotted
27          to 10 different judges.  Judge, you got four of
28          them.
29    THE COURT:
30               Thanks.
31    MR. WEGMANN:
32               Judge Bruno's got one.  Judge Hazeur's got
```

```
 1          three.  Judge Griffin's got four.  Judge Irons
 2          has got one.  Judge Johnson's got one.  Judge
 3          Julien has three.  Judge Reese has one.  Judge
 4          Sheppard has one, and Judge Giarrusso has one.
 5               So in the nine cases in which the discovery
 6          was addressed to the Archdiocese, in six of
 7          those cases, we've previously argued the motion
 8          for protective order.  And different judges have
 9          handled it in different ways, and I'd like to
10          make a record of what the other judges have done
11          for the benefit of the Court.
12               In the first-filed case, which is the John
13          Doe --
14  THE COURT:
15               Division "A"?
16  MR. WEGMANN:
17               Excuse me?
18  THE COURT:
19               That's the one in Division "A"?
20  MR. WEGMANN:
21               Yes, sir.
22  THE COURT:
23               There's already a protective order in
24          place?
25  MR. WEGMANN:
26               Yes, sir, and that's --  You know, and so
27          that's the first-filed case, and that's where
28          the Archdiocese first filed its motion for
29          protective order.  Judge Hazeur appointed a
30          special master, with the consent of the
31          plaintiff:  Judge -- former Judge Gill-Jefferson.
32               She heard the arguments with respect to
```

```
 1          whether or not a protective order should issue,
 2          and she recommended a protective order.  And
 3          then that was recommended, of course, to Judge
 4          Hazeur, who signed the protective order.
 5              And the protective order that was signed,
 6          I'd like to offer, file, and introduce that into
 7          evidence.  That's the protective order in that
 8          case.
 9              And I would point out to the Court that
10          literally the only limitation that is in this
11          protective order is that whatever is produced
12          and marked "confidential" can be used solely for
13          purposes of the litigation.
14              The protective order does not govern the
15          nonproduction of information.  In other words,
16          it's solely designed to say that, okay, if I
17          give you the names of people who have made
18          claims, if I give you the names of people that
19          have asserted other claims, if I give you the
20          personnel file of this clergy member that has
21          personal information in it, including health
22          care information, if I give you this information
23          and I mark it "confidential," the sole
24          limitation is that you must use it in connection
25          with the case.  We're producing the information,
26          just designating it as "confidential."
27              And much --  You know, the vast majority of
28          the information that's been requested, you know,
29          really doesn't pertain to any relevant issue in
30          the lawsuit.  There have become, I'm gonna call
31          it, side-show issues, like the New Orleans
32          Saints e-mails, with respect to the preparation
```

1       of a list in 2018 of clergy.

2           Be that as it may, there's just clearly

3       confidential information in these personnel

4       files that they've asked for production.  They

5       don't dispute that some of the information

6       that's in the personnel files is confidential.

7       There is a dispute as to whether all of the

8       information that we are producing is

9       confidential or not.

10           But, of course, you have the chicken and

11      egg or the horse and the cart.  What comes

12      first?  What comes first is there's a protective

13      order to protect confidential information.

14      Under the protective order, you designate

15      information as confidential.  If the other party

16      disagrees that it's confidential, then the Court

17      has another hearing to determine whether or not

18      the information that you had marked is indeed

19      confidential.

20          And so, once again, so Judge Gill-Jefferson

21      reviewed all of this.  She found that there was

22      multiple types of confidential and private

23      information that should be governed by a

24      protective order.  There's private

25      communications between the Archdiocese and third

26      parties.  There are documents regarding

27      allegations of sexual abuse against clergy

28      members.  There are people's names and personal

29      information in the personnel files.  There are

30      health care documents.

31          The entire personnel file itself is

32      generally considered by courts to be

1   confidential.  It's got all kinds of information

2   in it.  There's other personal information of

3   people:  cell phone numbers, e-mail addresses,

4   things of that nature.

5     And once again, Judge, the only limitation:

6   that you've got to use it --

7  THE COURT:

8     I understand your argument.

9  MR. WEGMANN:

10     -- in connection with the case.

11     So Judge Gill-Jefferson found that there's

12   confidential, private information regarding the

13   plaintiffs and the defendants and third parties.

14   And she said, given the nature of these

15   proceedings and the confidentiality of certain

16   documents, it is imperative that a protective

17   order issue.

18     And a protective order protects the privacy

19   of the information; it doesn't prevent the

20   disclosure or use in the litigation.

21     The special master also considered their

22   objections to the process of the protective

23   order that we proposed.  Once Judge Gill-

24   Jefferson recommended the protective order, we

25   then worked out the terms of the protective

26   order and modified some terms and conditions

27   pursuant to plaintiff's counsel request.  And

28   the procedures that were set forth in the

29   protective order were agreed to, again, in that

30   case, John Doe, and acknowledged by Judge

31   Hazeur.

32     And so, you know, the plaintiff himself

```
 1          filed this suit under seal and is protecting
 2          information with respect to himself, as well, I
 3          guess, he should.  But it's a two-way street.
 4          We want to protect our confidential information
 5          as well.
 6               And then, you know, the next case we argued
 7          was in front of Judge Ervin-Knott.
 8  THE COURT:
 9               I don't want you to read all of what
10          happened in --
11  MR. WEGMANN:
12               Okay.  All the other cases.  Okay.
13  THE COURT:
14               Now, you've suggested that you want to
15          introduce that.
16               Are y'all opposed to him introducing the
17          other orders? --
18               -- because I'm not going to have all these
19          people sit here while you read it.
20  MR. GISLESON:
21               No, Your Honor, we're not opposed to that
22          being introduced into the record.
23  THE COURT:
24               So you've offered --
25  MR. WEGMANN:
26               Yes, sir.  So I have eight exhibits.  I'll
27          just --  I'll give a copy to plaintiff's
28          counsel.
29               It's the special master's report from
30          September 25, 2019; the "Protective Order" dated
31          October 28, 2019; the judgment by Judge Hazeur
32          dated November 14, 2019, adopting the special
```

```
1          master's report.  Number 4 is the November 7,
2          2019, special master's report, again
3          recommending a protective order.
4               Number 5 is the -- Judge Griffin's
5          "Judgment," stating that she would grant a
6          protective order to be -- in terms to be agreed
7          on between the parties; and if not, she would
8          enter the protective order.  In another case in
9          front of Judge Griffin, we don't have a judgment
10         yet, so I'm introducing the transcript as number
11         6.
12              And then I have the transcript of the
13         hearing before Judge Johnson, who also is gonna
14         grant a protective order of some sort, but she
15         hasn't done it yet.  And then number 8 is the
16         judgment by Judge Knott, which grants a limited
17         protective order.
18              So, Judge, just, you know, in anticipation
19         of what they're arguing, once again, the issue
20         today is not what is confidential in the
21         documents.  That's reserved for another day.
22         They want to argue about, you know, information
23         being confidential or not.  All we're asking for
24         is a protective order and reserving the right
25         for the Court to determine in a further hearing
26         what's confidential or not.
27              The plaintiff also, Judge, confuses the
28         critical distinction -- I'm talking about their
29         brief -- between materials --
30    THE COURT:
31              I understand on the record that you're
32         arguing your rebuttal now.  Do you want to do it
```

```
1              after he argues, or do you want to --
2       MR. WEGMANN:
3              I will.  I'll be brief here, but simply
4          that materials produced in --
5       THE COURT:
6              So if you do it now --
7       MR. WEGMANN:
8              -- discovery require --
9       THE COURT:
10             -- I'm not going to let you do it again.
11      MR. WEGMANN:
12             Okay.  Well, I'll wait then.  Okay.
13      THE COURT:
14             Thank you.
15      MR. WEGMANN:
16             So that's what we've got.  Thank you, sir.
17      THE COURT:
18             Counsel?
19      MR. WEGMANN:
20             And so I'd like to offer, file, and
21          introduce into evidence Exhibits 1 to 8, and I
22          have copies.
23      THE COURT:
24             Let them be received into evidence without
25          objection.
26             Plaintiff?
27      MR. GISLESON:
28             Good morning, Your Honor.  Soren Gisleson
29          on behalf of the plaintiffs.
30             You know, the defendant has the burden of
31          proving good cause.  That is the burden that
32          they must supply to Your Honor.  They haven't
```

```
 1        met it.  They haven't introduced or attached a
 2        single document as an example of something that
 3        should be maintained as confidential.
 4             When the Court looks to decide whether or
 5        not to enter a protective order in the case, the
 6        first thing the Court should look it, frankly,
 7        is the context of the case.  What are the
 8        underlying allegations?  Are they something that
 9        has to do with trade secrets? -- 'cause you see
10        protective orders in trade secrets.
11             That's not what this case is.  This case is
12        criminal allegations, even though it's a civil
13        case, that have to do with pedophilia and the
14        church's cover-up of criminal activity.  That's
15        what's at issue here.  That is what they want to
16        cover up with the protective order.  That is not
17        what protective orders are designed to do.
18             We concede that another judge, a special
19        master, has recommended, and there was in place,
20        a protective order that was so onerous and
21        unworkable that not a single other judge, of the
22        other five judges who have looked at this issue,
23        have gone along with that particular protective
24        order.
25             Frankly, the bulk of the other judges in
26        the other cases have basically said:  Look, you
27        guys, turn over all the documents.  I'll put a
28        couple of sentences in the judgment.  Let the
29        plaintiffs look at all the documents.  And at
30        that point, we'll just reschedule the motion for
31        protective order, when the plaintiffs can look
32        at these documents and we can have an honest
```

1        discussion about whether or not e-mails related

2        to sexual abuse, whether a personnel file

3        related to criminal activity and personal sexual

4        abuse, are of the nature that protective orders

5        are designed to protect -- because that's not

6        what's going on in this case.

7              The plaintiffs have said from the beginning

8        we are fine with protecting the identity of

9        other victims; we agree that that information

10       should be protected.  And we're fine if Your

11       Honor wants to put a couple sentences in the

12       judgment, denying the protective order as to

13       everything else but stating, yes, I will enter a

14       protective order that limits the protection of

15       the identity of other victims.

16             But simply because a defendant comes in

17       with a burden and says, "I'm not attaching a

18       document.  Yes, these are all criminal

19       allegations; yes, these are outrageous

20       allegations.  The public has a very real

21       interest in knowing what happened and how it

22       happened; we still get to enter into a

23       protective order," that's not how protective

24       orders work.  It just isn't.

25             Does Your Honor have any questions?

26    THE COURT:

27             I don't have any questions.

28    MR. HOLWADEL:

29             Your Honor, I'll be very brief.  But my

30       client is one of the accused.  I have already

31       worked out an arrangement of a protective order

32       of sorts between counsel that certain

```
 1              information, such as health care and things like
 2              that, are not gonna be disclosed.
 3                   I just want to make the record clear
 4              that -- And whatever you rule for the
 5              Archdiocese or the plaintiffs, I don't want my
 6              client's personal medical records and things
 7              like that out into the public.  That's all, Your
 8              Honor.  Thank you.
 9       THE COURT:
10                   Thank you, Counsel.
11                   Rebuttal?
12       MR. WEGMANN:
13                   Yes, Judge, it's fairly brief.  There is no
14              cover-up here.  The documents are being produced
15              subject to a protective order.
16                   It really is -- This case is not a case
17              that should be tried in the newspaper.  It's a
18              case that should be tried before the Court.
19                   The information that's being produced is
20              produced in discovery for discovery purposes,
21              for use in the litigation.  If and when this
22              information is introduced into evidence at
23              trial, it will not be under seal; it will be
24              part of the record.
25                   But until the Court considers whether the
26              information that's being produced is relevant
27              and admissible as evidence, it should not be
28              carried over to the newspaper, to somebody's
29              best friend to look at and have a laugh about or
30              a criticism about.
31                   People's names, people's involvement in
32              these things, these allegations that are made
```

```
 1              that are yet to be proven --  We are trying to
 2              protect everyone's privacy by being fully
 3              transparent in disclosing the information but
 4              protecting the privacy of the individuals that
 5              are involved.
 6                   A clear distinction between discovery and a
 7              court record:  once it gets introduced in the
 8              court record, it's open to the public.  But in
 9              discovery, personal e-mails -- for example,
10              communications by and between people who are
11              private individuals that never expected their
12              personal e-mails to be turned over to a
13              newspaper or somebody else's best friend --
14              should be maintained as confidential.
15                   And so the process and the procedure,
16              whether it's a business dispute, a health care
17              dispute, or any other dispute, is a court enters
18              a protective order, and it allows every party to
19              designate information as confidential, the sole
20              limitation being you must use the information in
21              connection with the case.  You can do whatever
22              else you want with it, but it has to be in
23              connection with the case.  You can't take it and
24              give it to your best friend to read.  You can't
25              give it and turn it over to the newspaper.
26         THE COURT:
27                   Don't say that anymore.  I don't think
28              they're planning on giving it to their best
29              friends to read and laugh about.
30         MR. WEGMANN:
31                   Okay.  Well, they have been giving it --
32         THE COURT:
```

```
1                    That's the fourth time --
2      MR. WEGMANN:
3                    -- to the newspaper.
4      THE COURT:
5                    -- you say that.
6      MR. WEGMANN:
7                    They have been giving it to the newspaper.
8            Okay?  And so we request the same protective
9            order that Judge Hazeur entered.  Judge Piper
10           Griffin has ordered that a protective order be
11           entered, the terms of which she's gonna
12           stipulate to.  Judge Rachel Johnson said there
13           will be a protective order.  Judge Knott said
14           there will be a protective order.  Some of the
15           terms are different.
16                   But we request a protective order, and we
17           believe that the protective order issued by
18           Judge Hazeur is a routine, regular protective
19           order that protects both parties' interest.
20                   They can challenge the confidentially of
21           the information.  We'll come before Your Honor,
22           and Your Honor will decide what to do with
23           whether or not the information is confidential
24           or not.  Thank you.
25     THE COURT:
26                   Thank you.
27                   You've got a surrebuttal?
28     MR. GISLESON:
29                   Yeah, I just --  I do, Your Honor, briefly.
30           We have never provided any documentation to any
31           media outlet that any court has ever designated
32           as confidential.  That's false.
```

1    MR. WEGMANN:

2         I didn't say that.

3    MR. GISLESON:

4         Number 2, number 2, the bulk of the

5         decisions out there on protective orders are

6         not, and shouldn't be represented as such, are

7         not:  We're entering protective orders, no

8         matter what.

9         The bulk of the other decisions are:  Give

10        all the documents.  I'll enter a judgment on

11        this; I'll enter a judgment on this case that

12        says, "Turn over all the documents right now

13        that you are holding back because you claim

14        they're confidential."  I'll put a one- or

15        two-sentence lines into the judgment that says:

16        Okay.  These are sort of protected for purposes

17        in this limited capacity right now.  Let's

18        reschedule the motion for protective order down

19        the road, and then we'll have a true -- whatever

20        you want to call it -- document fight.

21        And we can come up, and everybody can look

22        at this e-mail between these two people that say

23        this particular thing, that Your Honor can go:

24        That's ridiculous.  That shouldn't be

25        confidential.  That shouldn't be privileged.

26        And that's what the bulk of the other

27        decisions are.  There hasn't been another judge

28        that has entered a protective order at all, a

29        permanent protective order at all, other than

30        that first one, especially when they heard our

31        concerns about how onerous and difficult it was.

32    THE COURT:

```
 1              Anything else for the record, Counsel?
 2      MR. WEGMANN:
 3              No, Your Honor.  The record speaks for
 4          itself in terms of what -- the protective order
 5          issued by Judge Hazeur and Judge Griffin and the
 6          other judges.  And we just simply request that
 7          we try -- we try to be consistent, you know.  It
 8          would be best, of course, if all these cases
 9          could be handled, you know, consistently.  But
10          each judge has the right to do what they feel
11          is, you know, their duty under the law.
12              So once again, we request that the
13          protective order issued by Judge Hazeur be
14          entered.  We'll be guided by whatever ruling
15          Your Honor makes.
16      THE COURT:
17              Thank you, Counsel.
18              Given the fact that y'all aren't objecting
19          to the extension request, I'm going to give them
20          30 days.  I don't think that prejudices either
21          side.
22              I'm also going to --  What I'm grappling
23          with --  Quite frankly, I'm not necessarily
24          influenced, one way or the other, about what you
25          say the bulk of the other judges did or what you
26          say the bulk of the other judges have done.  I'm
27          going to do whatever orders I'm going to issue
28          in this case based on my appreciation of the
29          facts and my interpretation of the law.  To the
30          extent that that might provide some guidance is
31          another issue.
32              But I'm concerned about issuing a
```

```
1              protective order in advance of producing the
2              documents.  So I'm going to try to perhaps issue
3              a different kind of order.
4                   I want you to produce the documents.
5                   I'm going to order that you not use it for
6              any other purposes other than in connection with
7              this case and that, if you intend to release it
8              to anyone --
9                   -- that y'all revisit my section before
10             that happens.
11                  That way, you have the benefit of access to
12             the information.
13                  You have the benefit of protection and
14             nondisclosure.
15                  And on those things that you can't agree
16             on, then I will address in advance of any
17             release to anybody else.
18        MR. WEGMANN:
19                  Okay, Judge.  So I will take what you just
20             said and put it into a judgment and say that the
21             Court is issuing what would be referred to as a
22             "limited protective order," that the Archdiocese
23             will produce documents.  The documents that will
24             be marked --
25        THE COURT:
26                  That's not what I said.  I said I'm going
27             to order production of the documents.
28                  And I'm going to order that you not
29             disclose those documents to anyone other than in
30             connection with this case.  And before you do
31             that --
32                  -- if y'all disagree on the substance or
```

```
 1              the privilege that's asserted or the privacy
 2              issue that presents itself by that information,
 3              y'all are going to come back to me.
 4                   I think what you're doing is you're going
 5              to have the benefit of saying your recitation of
 6              my order, in that you want it to say I've issued
 7              a limited protective order.  And I've not done
 8              that.
 9                   I'm going to defer the substance of any
10              other protective orders until some information
11              is produced, because what I'm hearing from the
12              argument is you haven't given them anything.
13                   Is that correct?
14   MR. GISLESON:
15                   Correct.
16   MR. WEGMANN:
17                   That's correct.  So --
18   THE COURT:
19                   And I'm not going to issue a protective
20              order, even a limited protective order, without
21              the exchange of any information.
22                   I'm ordering that you not disclose it.
23                   And then if y'all reach an impasse on the
24              characterization of an item -- and it won't be
25              medical records and that kind of stuff, I can
26              tell you; those are the easy ones -- y'all are
27              going to come back.  And then I'll address it as
28              it occurs, because I'm --
29   MR. WEGMANN:
30                   And so in the judgment, I will get a
31              transcript, and I'll try to put verbatim what
32              you said.
```

```
 1     THE COURT:
 2              I know that's awfully difficult.  But I'm
 3         going to grant the 30-day extension requested,
 4         as unopposed.
 5              You said you're not opposed.
 6              You wanted 15.
 7              You're not opposed to the extension.
 8              So I'm going to give you 30 anyway.  That's
 9         what I was prepared to do.  I'm going to order
10         that you turn over that information.
11              And I'm going to bar and prohibit you-all
12         from using it in any way other than in the
13         context with this litigation in this section and
14         that you not disclose it to anyone --
15              -- unless y'all agree that that's something
16         that can be disclosed.  If you don't agree,
17         you're going to come back.
18     MR. GISLESON:
19              Your Honor, with your direction that it's
20         sort of limited to the case and there's an order
21         that it's not to be distributed among anywhere
22         else, I want to make sure that, included in that
23         direction, the defendants produce the documents
24         to us; since it's protected by Your Honor's
25         language, they don't give us documents that are
26         redacted, because what they've done in another
27         section of court when there was a protective
28         order is they've given us documents under the
29         protective order and they redacted them.  And
30         so --
31     THE COURT:
32              -- gone back to that section of court also,
```

```
 1          I assume.
 2     MR. GISLESON:
 3              I understand.  I just want to make sure --
 4          Peremptorily, I'm just sort of asking.
 5     MR. WEGMANN:
 6              There will be certain information that's
 7          redacted.  You know, there are --  For example,
 8          there are settlements with other parties where
 9          the settlements specifically prohibit the
10          Archdiocese from disclosing the name of the
11          individual that was settled with.  And there are
12          names of other clergy members that are included
13          in other documents.
14              And so we are redacting that information.
15          If they want to file a motion to compel
16          production of that information, as to whether or
17          not that information is relevant and can lead to
18          discovery of relevant evidence, we'll deal with
19          it then.  But I'm not prepared to say that there
20          will be no redactions.
21              We will produce information that we believe
22          is under our obligation in discovery to produce,
23          and certainly information will be redacted.
24          They have the right to come in and have a
25          hearing as to whether or not that information
26          should be redacted or not should be redacted.
27              And we'll --  That's another day.  I mean,
28          we can't --  I'm not prepared to tell you
29          exactly what it is.  I do know that it's the
30          names of other alleged victims whose -- who have
31          requested confidentially, you know, and not --
32          their name not be disclosed unless ordered by
```

```
 1          the court, you know.
 2                  And then there are other claims against
 3          other clergy members which aren't relevant to
 4          this proceeding.  I don't believe that if
 5          somebody in 1968 was accused of some improper
 6          conduct, that that information should be given
 7          to these parties.  That's not relevant to the
 8          case.
 9                  So I think we just need to defer our ruling
10          on that until we consider what those issues are.
11     MR. GISLESON:
12                  That is absolutely abuse of process.  When
13          you get a protective order, the whole purpose of
14          the protective order is to exchange information
15          back and forth without redactions.  They don't
16          get both.
17     THE COURT:
18                  I agree with that.
19     MR. GISLESON:
20                  Yes, sir.
21     THE COURT:
22                  I agree with that, because, otherwise, my
23          ruling serves no useful purpose; you're just
24          going to redact what you want to redact.
25                  So you can either file your motion to
26          compel, or y'all can take this ruling up,
27          because obviously we're not going to be able to
28          do it voluntarily.  Otherwise, though, my whole
29          order is pointless.
30     MR. WEGMANN:
31                  No, Judge.  We're turning over -- Okay.
32          We're turning over the information with respect
```

```
1          to this clergy member.  Okay.
2               If you saw their discovery, they've asked
3          us to produce information with respect to any
4          claim made against any clergy member since 1968.
5          Okay.  So we don't believe that's relevant, so
6          we're not producing the information with respect
7          to other clergy members.  Okay?  And so --
8     THE COURT:
9               I understand what you're saying.
10    MR. WEGMANN:
11              That's right.  And so in a --  In this
12         particular case -- this is Fraser and
13         Calamari -- okay, there are documents that
14         contain the names of "Fraser" and "Calamari,"
15         and there are documents that contain the names
16         of other, I'm gonna call them, claimants that
17         allege that they were abused perhaps by Fraser
18         and Calamari.  I don't have everybody memorized
19         as to whether this -- these are the clergy
20         members that had other claims or not.
21              And so, you know, for example, there are --
22         I'm aware that, in some of these cases, an
23         accusation was made against a clergy member.
24         The Archdiocese settled the case with the person
25         that made the allegation, and there was a
26         settlement agreement in which the claimant in
27         that case said:  Do not give my information.  Do
28         not disclose my name to anyone absent a court
29         order.
30              Okay.  And so what I'm saying is that we're
31         gonna give all the information.  We will redact
32         very limited information, and we will --  Then
```

```
1           if they want to file a motion to compel and say
2           that that information is -- should not be
3           redacted, we will be -- once again, abide by
4           whatever decision you make.  Okay.
5                So, but there's lots of confidential
6           information that we are releasing that would be
7           governed by the protective order, you know.
8           And, for example, we have the counsel --
9                I'm sorry.
10   MR. HOWELL:
11                Evan Howell for Mr. -- for Paul Calamari.
12   MR. WEGMANN:
13                Right.  And I'm just --  Is Father Fraser
14           dead?
15   MR. HOWELL:
16                As I understand it, he is.
17   MR. WEGMANN:
18                Okay.  So Father --  For Father Calamari,
19           for example, in another case, we have health
20           care information of the clergy member.  As far
21           as I know, it's protected health care
22           information, and I can't release it absent an
23           order of the court.  So we have reached out to
24           the plaintiff -- I'm sorry -- to the counsel for
25           that clergy member and said:  Hey, do you object
26           to us producing this confidential health
27           information --
28   THE COURT:
29                Let me tell you --
30   MR. WEGMANN:
31                -- subject to a protective order?
32   THE COURT:
```

```
 1              Let me tell you where I'm at.  I've already
 2         ruled, and the redaction argument is premature
 3         because you haven't produced anything.
 4              Now, I've already ruled.  If y'all want to
 5         do it another way, I've indicated that I want
 6         you to address those issues in advance.  And
 7         you're telling me on the record:  I'm not going
 8         to do that.  I'm going to give him redactions,
 9         which I've done in other cases.
10              I've already ruled.  Produce what you think
11         you need to produce.
12              You do what you need to do.
13              And y'all will be back, and then I'll clear
14         it up.
15    MR. WEGMANN:
16              Thank you, Your Honor.
17    MR. GISLESON:
18              Your Honor, I would just like to state for
19         the record that by arguing, under protective
20         order, that you also get redactions completely
21         undermines the purpose of a protective order.  I
22         think it undermines their overall argument for
23         protective order.  I think it's outrageous and
24         unprofessional.  I'll leave it at that, Your
25         Honor.
26    MR. HOWELL:
27              If I may, Your Honor, just for the record,
28         there are no other allegations against Paul
29         Calamari other than this lawsuit and one before.
30         I don't want it to be left on the record like
31         there's multiple allegations floating out there.
32    MR. GISLESON:
```

```
 1              Then what we'll leave on the record is that
 2         the church itself put his name on its pedophile
 3         list.  This isn't a situation where --
 4    THE COURT:
 5              Counsel, I've already ruled.
 6    MR. GISLESON:
 7              Yeah.
 8    MR. HOWELL:
 9              Excuse me.  It's not a pedophile list as
10         it --
11    THE COURT:
12              Counsel --
13    MR. HOWELL:
14              -- relates to my client.  Thank you, Your
15         Honor.
16    THE COURT:
17              I've already ruled.  I expect I'll see
18         y'all back shortly.
19    MR. GISLESON:
20              Thank you, Your Honor.
21    THE COURT:
22              Y'all have a great weekend.
23              (The record is concluded.)
24
25
26
27
28
29
30
31
32
```

REPORTER'S CERTIFICATE

This certificate is valid only for a transcript accompanied by my original signature and embossed seal on this page.

I, LAURIE FRICKEY HENDRICKSON, Official Court Reporter in and for the State of Louisiana, employed as an official court reporter by the Civil District Court for the Parish of Orleans, as the officer before whom this testimony was taken, do hereby certify that the testimony as set forth in the foregoing 28 pages was reported by me in the stenotype reporting method, was prepared and transcribed by me, and is a true and correct transcript to the best of my ability and understanding; that the transcript has been prepared in compliance with transcript format guidelines required by statute or by rules of the Louisiana Board of Examiners of Certified Shorthand Reporters or by the Supreme Court of Louisiana; and that I am not related to counsel or to the parties herein, nor am I otherwise interested in the outcome of this matter.

Signed this _19th_ day of February, 2020.

LAURIE F. HENDRICKSON
Registered Merit Reporter
Certified Realtime Reporter
Certified Court Reporter #88007