**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| In re: ) | |
| ) | Case No. 20-10846 |
| THE ROMAN CATHOLIC CHURCH OF ) | |
| THE ARCHDIOCESE OF NEW ORLEANS ) | Section "A" |
| ) | |
| Debtor. ) | Chapter 11 |

**OBJECTION OF A CERTAIN ABUSE VICTIM-SURVIVOR TO DEBTOR'S MOTION FOR ENTRY OF AN ORDER AUTHORIZING THE DEBTOR TO EMPLOY PROFESSIONALS IN THE ORDINARY COURSE OF BUSINESS and REQUEST TO MAKE DOCUMENTS PUBLIC UNDER 11 U.S.C. §107**
[Relates to Docket # 191]

**SUBJECT TO MOTION AND ORDER TO FILE PORTIONS UNDER SEAL[1]**

NOW COMES state court sexual abuse plaintiff JW Doe ("JW Doe"),[2] with active litigation filed against the above-captioned debtor and debtor in possession (the "Archdiocese" or the "Debtor"), who files this *Objection* (the "Objection") to the *Debtor's Motion for Entry of an Order Authorizing the Debtor to Employ Professionals in the Ordinary Course of Business* [Docket #191] (the "Motion"), stating as follows:

**I.  SUMMARY OF OBJECTION**

1. State court plaintiff JW Doe objects to the continued payment from the Debtor's estate of ▬ "Ordinary Course Professionals" whose conduct is at issue ▬

---

[1] The publicly-filed version of this Objection has been redacted. See the *Ex Parte Motion of A Certain Abuse Victim-Survivor for an Order Pursuant to Bankruptcy Code Sections 105(A) and 107 and Bankruptcy Rule 9018 Authorizing Partial Filing Under Seal*, filed herewith.

[2] This claimant is the Plaintiff in a lawsuit which the Debtor has removed to the United States District Court for the Eastern District, Case No. 2:20-cv-01321, *JW Doe v. The Roman Catholic Church of the Archdiocese of New Orleans*.

1

## II. OBJECTIONS

**A. The Debtor has refused to cooperate with reasonable requests by JW Doe's counsel.**

2. Debtor in both state court and in this Court has a history of ignoring or rejecting reasonable requests by undersigned counsel. Almost two months before this bankruptcy was filed, the Archdiocese refused to acknowledge that it was preparing to file for bankruptcy protection when it was brought up in open court by undersigned counsel. (JW Doe transcript 3-11-20 at pp. 19, 32-33 attached as Exhibit 1). Again, in an attempt to cooperate with the Archdiocese, a letter was sent to the Archdiocese in the underlying litigation requesting a meeting before it filed for bankruptcy. (4/21/2020, Letter from Richard Trahant to Wayne Zeringue attached as Exhibit 2.) This correspondence requesting cooperation was summarily ignored.

3. JW Doe is in possession of documents obtained in discovery in the underlying state court case. JW Doe is an unsecured creditor who the UCC owes a fiduciary duty to. It is axiomatic that a member of the of the group the UCC represents should be able to share any and all documentation that would assist the UCC in the execution of its duties.

4. No court has had the opportunity to rule that *any* of the so-called "confidential" documents at issue in this pleading were in fact "confidential." JW Doe filed a Motion to Declassify these documents in state court. *Motion to Declassify*, attached as Exhibit "3". The Archdiocese filed for bankruptcy and removed JW Doe to federal court before the motion could be heard. For purposes of this motion, JW Doe adopts and incorporates by reference all arguments, facts, law, and exhibits attached to the motions referenced herein as exhibits.

5. JW Doe should be permitted to share all documents designated as "confidential" by the Archdiocese and all pleadings filed under seal in the state court cases with the UCC. Keeping the UCC from accessing these documents hampers the UCC from executing its duties and delays

83131308v.1

it from learning the manner with which the Archdiocese covered up allegations of sexual abuse and protected pedophile priests from authorities.

6. Nevertheless, when undersigned counsel made a reasonable request to share these documents and pleadings with the UCC, the debtor declined the request. (*See 7/3/2020, EML from Mintz to Gisleson*, attached as Exhibit "4").

7. Leaving only days to file an objection to Debtor's motion, JW Doe is forced to object to the Debtor's motion to pay Ordinary Course Professionals because it deprives the UCC of the necessary information to make an informed decision as to whether to object to this motion. And though the motion at issue is, under ordinary circumstances, fairly perfunctory in nature, JW Doe stands ready to participate in an evidentiary hearing should the Court require one.

**B.  JW Doe objects to the continued payment of ▆▆▆ of the attorneys Debtor seeks to pay as OCPs.**

8. While it is well known in the abstract that a multitude of Catholic clergy have sexually abused countless children over the course of many years and covered up this sexual abuse, the case of Father/Monsignor Lawrence Hecker and the "confidential" documents attached hereto put flesh on the bones.[3] These documents are probative of liability and the defense of prescription. The documents establish that ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆

9. JW Doe takes specific exception to ▆▆ of the attorneys whom the Debtor intends to continue to pay as Ordinary Course Professionals: ▆▆▆▆▆▆▆▆▆▆▆▆▆▆

---

[3] Hecker is just one of dozens of priests the Debtor itself has named as a pedophile. As this Court can observe, the Archdiocese made copious unilateral redactions and withheld many documents, all without court approval.

3

83131308v.1

███████████████████████████████████████████████████████████████

██████████████████████████████████████████████████

10. As set forth in JW Doe's *Motion to Depose Attorneys*, filed in the state court proceeding, ████████████████████████████████████████████████████████████

████████████████████████████████████████████████████, although the motion at issue focuses only on Hecker. *See Motion to Depose Attorneys* (attached as Exhibit 5, FILED UNDER SEAL) and *Attorneys for the Archdiocese's Motion for Protective Order, Alternatively, Opposition to Motion to Compel Discovery Depositions of Attorneys*, (attached Exhibit 6, FILED UNDER SEAL).[4] This motion was pending when the Archdiocese filed for this bankruptcy.

11. As a companion motion to the Motion to Depose Attorneys, JW Doe filed a *Motion to Declassify Documents* referenced above (See Exhibit 3 *infra*). JW Doe contended then, and contends now, that documents evincing felonies, among other documents, should not be considered "confidential" by any Court. Shortly after the filing of this motion on March 9, 2020, four local news organizations (The Advocate, Fox 8, WWL, and WDSU-TV) filed a *Motion to be Heard and to De-classify Documents with Request for Expedited Consideration,* attached as Exhibit "7".

12. Later, the Archdiocese produced additional documents which ███████████

████████████████████ (E-Mails attached UNDER SEAL as Exhibit "8"). ████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

---

[4] The documents attached to Exhibit 5 and the documents that comprise Exhibit 8 are not the totality of the "Hecker documents," but they are a selection of documents that serve the purpose of illustrating the abuse and cover up.

83131308v.1

███████████████████████████████████████
███████████████████████████████████████
███████████████████████████████████████
███████████████████████████████████████
███████████████████████████████████████
███████████████████████████████████████
█████████

13.     Undersigned counsel were scheduled to depose Hecker in the JW Doe matter on March 16, 2020, and had a subpoena served on Hecker's personal attorney. (Hecker Subpoena and Notice of Deposition, attached as Exhibit 9).

14.     On March 13, 2020, undersigned counsel received a letter from Hecker's counsel that Hecker would not appear for his subpoenaed deposition on the next business day, and that Hecker would be invoking his Fifth Amendment rights.  When Hecker failed to appear for his deposition on March 16, 2020, undersigned counsel took a *proces verbal*, and filed a *Motion for Contempt* against Hecker, which is believed to have been the last substantive motion filed in any sexual abuse case before the bankruptcy filing. (*See Motion for Contempt*, attached as Exhibit 10).

15.     The Debtor's own documents demonstrate ████████████████
███████████████████████████████████████
███████████████████████████████████████
███████████████████████████████████████
████████████████████████████ This is completely substantiated by the documents attached to Exhibit 5.

16.     Significantly, no court has had the opportunity to address the content of these

5

documents, nor has any law enforcement agency requested them from undersigned counsel, even after the local media reported that Hecker had invoked his Fifth Amendment rights. (*See Vargas May 1, 2020 Article, Retired New Orleans priest invokes rights against self-incrimination in molestation lawsuit,* attached as Exhibit 11).

17. That Hecker collected retirement benefits for nearly two decades after he was removed from ministry for sexually abusing many children, and that Archbishop Aymond and other high-ranking clerics will continue to be paid (even for housekeeping) within the context of this bankruptcy instead of facing criminal ramifications, is an affront to the pain JW Doe has been forced to bear for decades.

18. Contrary to what Debtor states in its motion, payment of these ▇ OCPs is not in the best interests of Debtor, its estate, its creditors, and other parties in interest.

19. These "ordinary course professionals" should not be allowed to be retained by the Archdiocese without (a) a thorough review of the documents attached to the Motion to Depose Attorneys, (b) discovery to determine the full breadth of their involvement in the various cover-ups, and (c) a ruling from this Court as to whether their conduct comports with the Bankruptcy Code standards for a debtor depleting its assets. Whatever the debtor was to pay these "professionals" would be better served paying sexual abuse claims.

### C. This Court should unseal these documents and make them immediately available to the public.

20. The Archdiocese fought tooth and nail to keep these documents from JW Doe in state court, and The Archdiocese fought tooth and nail to keep them from being made public.

21. That trend continues in this Court. During the 341 Meeting of Creditors, the UCC Chairman James Adams engaged in the following exchange with the Debtor's designee and its attorney:

6

> JAMES ADAMS:
> And other Chapter 11 cases where dioceses have sought Chapter 11 protection, there have been agreements to disclose and make public documents referable to clergy abuse within that diocese. For example, the Archdiocese of Santa Fe, Archbishop John Wester of Santa Fe has pledged to open sealed records related to priests' child sexual abuse cases and victims. And cases that the victims and attorneys and others pushed for more transparency.
>
> So I guess to increase transparency, as our Archbishop has promised, will the Archdiocese of New Orleans commit to making public all of its documents that show, identify evidence of clergy abuse?
>
> MARK MINTZ:
> This is Mark Mintz again. I will -- I can answer that question to the extent that the Archdiocese will provide the information as is required under law and under the mean bankruptcy court and through negotiations with the unsecured creditors committee as to what is appropriate and when it is appropriate.
>
> AMANDA GEORGE:
> And Father Aymond, do you agree with that? I, I'm sorry. Father Carr, do you agree with statement?
>
> FATHER PATRICK CARR:
> I do, yes.
> (See transcript of 341 Meeting attached as Exhibit 12 at pp. 53-54).

21. As he did on many occasions, Debtor's counsel jumped in to answer questions directed to the Debtor's designees.

22. Similarly, when questioned by state court counsel, Father Carr's answers were at first evasive, then illogical:

> JOHN DENENEA:
> And in follow-up to a couple of other questions raised about documents, do you agree that the disclosure of documents in the possession of the Archdiocese dealing with clergy abuse would go towards the healing of victim survivors throughout this reorganization and bankruptcy?
>
> FATHER PATRICK CARR:
> Maybe.

7

83131308v.1

JOHN DENENEA:
And why do you say maybe?

FATHER PATRICK CARR:
Because I'm not -- I'm not really certain. Just, maybe. That's the answer.

JOHN DENENEA:
Would you agree that, throughout this reorganization plan, if victim survivors were able to review certain documents and learn everything that the Archdiocese knew about the priests that violated them, it would go toward a healing process for that victim survivor?

FATHER PATRICK CARR:
I can't speak for victim survivors.
(See Exhibit 12 at pp. 61-62)

23. JW Doe would like to see all of the sexual abuse documents released without confidentiality restrictions. Equally important is that Hecker's story of pedophilia and the Archdiocese's story of protecting him also, in some perverse way, becomes part of the victim-survivor's story. As part of their stories, Hecker's victims should be able to speak with friends and family, should be able to speak publicly, and should even be able to write about the abuse and their abuser – as well as the Archdiocese that enabled and covered it up. Knowing the whole truth without limitation is an important part of the victim-survivor's ability to regain agency and take control of the events that caused so much pain they have been forced to carry in silence for so long.

24. Exhibits 5, 6 and 8 have been placed under seal as a protective measure (as had been done in state court), but none of the documents should be protected or maintained under seal based on prevailing Fifth Circuit law and other decisions involving almost identical issues.

LAW

25. Fortunately, bankruptcy proceedings have clear and direct law that specifically provides limited circumstances for documents to be designated as confidential. Bankruptcy Rule 11U.S.C. 107 - Public access to papers states,

(a) Except as provided in subsections (b) and (c) and subject to section 112, a paper filed in a case under this title and the dockets of a bankruptcy court are public records and open to examination by an entity at reasonable times without charge.

(b) On request of a party in interest, the bankruptcy court shall, and on the bankruptcy court's own motion, the bankruptcy court may—

(1) protect an entity with respect to a trade secret or confidential research, development, or commercial information; or

(2) protect a person with respect to scandalous or defamatory matter contained in a paper filed in a case under this title.

(c)

(1) The bankruptcy court, for cause, may protect an individual, with respect to the following types of information to the extent the court finds that disclosure of such information would create undue risk of identity theft or other unlawful injury to the individual or the individual's property:

(A) Any means of identification (as defined in section 1028(d) of title 18) contained in a paper filed, or to be filed, in a case under this title.

(B) Other information contained in a paper described in subparagraph (A).

(2) Upon ex parte application demonstrating cause, the court shall provide access to information protected pursuant to paragraph (1) to an entity acting pursuant to the police or regulatory power of a domestic governmental unit.

(3) The United States trustee, bankruptcy administrator, trustee, and any auditor serving under section 586(f) of title 28—

(A) shall have full access to all information contained in any paper filed or submitted in a case under this title; and

(B) shall not disclose information specifically protected by the court under this title.

26. Additionally, Rule 9018 of the Federal Rules of Bankruptcy Procedure, entitled "Secret, Confidential, Scandalous, or Defamatory Matter", provides as follows:

> On motion or on its own initiative, with or without notice, the court may make any order which justice requires (1) to protect the estate or any entity in respect of a trade secret or other confidential research, development, or commercial information, (2) to protect any entity against scandalous or defamatory matter contained in any paper filed in a case under the Code, or (3) to protect governmental matters that are made confidential by statute or regulation. If an order is entered

under this rule without notice, any entity affected thereby may move to vacate or modify the order, and after a hearing on notice the court shall determine the motion.

27. First, the applicable sections of these two rules are those that address "scandalous and defamatory" matters. The other sections address commercial and proprietary matters, which are not involved in this case. Next, there is nothing in the underlying documents that is defamatory. The documents are authentic and true documents maintained and produced by the Archdiocese in traditional discovery and kept by the Debtor in the normal course of business. The question of "scandalous" implies that the subject matter is not relevant but, instead, its primary purpose is to embarrass, and it is associated with "defamatory." Certainly, matters involving priests raping and sexually abusing children is no doubt embarrassing, disgraceful, shocking, and immoral; but the purpose of removing the confidentiality designation is not done to promote "scandalous" matter, but to (a) empower the victims to speak freely about the full story of their abuse, (b) freely use important liability-supporting documents with any and all victims and witnesses, (c) provide a truthful illustration of the underlying facts of this case and others, and (d) inform the public of the dangers of a living predator.

28. In a similar bankruptcy case entitled *In the Matter of Roman Catholic Archbishop of Portland in Oregon*, 661 F.3d 417 (9th Cir. 2018), the United States Ninth Circuit Court of Appeals addressed virtually the exact argument presented here. The underlying bankruptcy court was faced with the issue of whether personnel files from two priests should be made public when they were not part of a discovery record in the underlying bankruptcy. Two priests referred to as "Father M" and "Father D" were third parties that were *not* part of the claims that made up the bankruptcy. Indeed, Father M and Father D expressed that they had no claims against them arising out of the bankruptcy. The Court was faced with whether the personnel files of Father M and Father D should be made public under Federal Rules of Procedure 26.

29. The determination as to whether the information, such as those that are attached here, should be made public is governed by Rule 26, and as expressed by the Court in *Archbishop of Portland*, explained that,

> A Court considering a motion for continuation of protective order must proceed in two steps. First, it must determine whether 'particularized harm will result from disclosure of information to the public.' As we have explained, '[b]road allegations of harm, unsubstantiated by specific examples are articulated reasoning, do not satisfy the Rule 26(c) test.' Rather the person seeking protection from the disclosure 'allege specific prejudice or harm.' Second, if the Court concludes such harm will result from the disclosure of discovery documents, then it must proceed to balance 'the public and private interests to decide whether [maintaining] a protective order is necessary.

30. Additionally, in order to overcome the public disclosure requirement under 11 U.S.C. 107, the parties must show "not only that the materials are likely to cause a reasonable person to alter his or her opinion of the person who is subject of the material, but also that they contain material that is either untrue, or potentially untrue and either irrelevant or included in the record for improper purpose." *Archbishop of Portland,* at 431.

31. In the case *sub judice*, the material is authentic and true as the materials were produced by the Debtor in discovery. The material is not only relevant, but also absolutely probative of the present objection to pay the OCPs. The material is not being included for any improper purpose, because if the present claimant were not to file the material in support of its objection, it is likely that any reference to the materials in the future on the issue of these professionals would be waived. The materials are being presented for a proper and probative purpose.

Under Bankruptcy Rule 9018:

> On motion or on its own initiative, with or without notice, the Court may make any order which justice requires (1) to protect the estate or nay entity in respect of a trade secret or other confidential research, development, or commercial information, (2) to protect any entity against scandalous or defamatory matter contained in any paper filed in a case under the code, or (3) to protect governmental matters that are made confidential or regulation.

11

32. Here, Rule 9018(2) is the only applicable section. At first blush, it would appear that any of the information in the documents attached would qualify as "scandalous" matter. However, Rule 9018 addresses the purpose "to protect an entity against scandalous or defamatory matter." In this case the actual "scandalous matter" has been created by the Debtor, and not by any creditor or other party. All of the documents and the information contained therein are accurate representations of the personnel files and archive files of the Archdiocese regarding Hecker and the Diocese's handling of the abuse claims against him. The use and purpose of the attachment of these exhibits is made as a basis for a direct and relevant objection to the payment of professionals and are not being submitted for any improper purpose. The "scandalous" matter already has been made public in the disclosures of a list of pedophile priests by the Archdiocese in November of 2018, when Hecker was named to the Pedophile List. These documents add detail to what the Debtor half-heartedly and misleadingly revealed.

33. Finally, although not in a bankruptcy context, the United States Fifth Circuit Court of Appeals has weighed in on the issue of whether documents relative to deviant priests should be released to the public in *Cinel v. Connick*, 15 F.3d 1338 (5th Cir. 1994). In *Cinel* a variety of sexually oriented materials were obtained from Father Dino Cinel's room including a homemade video tape of Cinel engaged in homosexual activity, primarily with two young men, Christopher Fontaine and Ronald Tichenor.

34. In 1990, in connection with a state civil suit filed by the victim Fontaine, and at the request of the Church, a subpoena duces tecum was issued directing the DA's office to release the materials found in Cinel's room to the litigants in the Fontaine suit. The DA's office released the materials to the victim's attorneys as custodians. Cinel alleged in his complaint, where he asserted Federal civil rights violations, that the allegedly confidential materials were released "under the

12

pretext of a subpoena and consent judgment." The documents were later published by local and national news media in stories highlighting the *Cinel* case, and Cinel claimed that the public disclosure was in violation of his rights.

35. The Fifth Circuit recognized that the trial Judge, Martin Leach-Cross Feldman, held that the materials were a matter of legitimate public concern. Judge Feldman explained that:

> [T]he materials related to Appellant's guilt or innocence of criminal conduct. Also, the material implicated the public's concern with the performance of its elected DA, especially because the DA's decision cannot be reviewed by a court. *See State v. Perez,* 464 So.2d 737, 744 (La.1985) (explaining that the district attorney is given absolute discretion in the institution of criminal charges). Finally, the materials concerned Appellant's activities while an ordained Catholic priest and the Church's response to those activities.

36. Even Father Cinel acknowledged the newsworthiness of the materials, but he claimed that they added nothing to the underlying case and were an invasion of his privacy. The Fifth Circuit disagreed, stating that, "The materials broadcast by the Appellees were substantially related to Appellant's story," and therefore the public disclosure was not violative of the priest's rights.

37. Further, and in approving the public disclosure of the materials, the Fifth Circuit explained,

> Perhaps the use of the materials reflected the media's insensitivity, and no doubt Appellant was embarrassed, but we are not prepared to make editorial decisions for the media regarding information directly related to matters of public concern. See, e.g., *Ross v. Midwest Communications, Inc.,* 870 F.2d 271, 275 (5th Cir.) ("judges, acting with the benefit of hindsight, must resist the temptation to edit journalists aggressively"), *cert. denied,* 493 U.S. 935, 110 S.Ct. 326, 107 L.Ed.2d 316 (1989); *Neff v. Time, Inc.,* 406 F.Supp. 858, 860 (W.D.Pa.1976) (noting that "the courts are not concerned with establishing canons of good taste for the press or the public") (internal quotations omitted); *Cape Publications, Inc. v. Bridges,* 423 So.2d 426, 427–28 (Fla.Dist.Ct.App.1982) (concluding that when plaintiff's nude picture was relevant to a story of public interest, there is no invasion of privacy, even though picture may be embarrassing or distressful to the plaintiff), *cert. denied,* 464 U.S. 893, 104 S.Ct. 239, 78 L.Ed.2d 229 (1983).

38. The documents in this case are no less probative of criminal conduct than the actual video tapes of sexual activity in the *Cinel* case. The documents are directly probative of the arguments presented here in objection to the payment to professionals because of ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. The documents are relevant to all of Hecker's victims as well as to the Archdiocese's policy, practice, and procedure of covering up abuse allegations and enabling predators. Finally, the documents do not violate 11 U.S.C. 107, Rule 9018, or Rule 26 in that they are not "scandalous" because they are not untrue, not potentially untrue, not irrelevant, nor are they included in the record for any improper purpose.

WHEREFORE the Abuse Victim-Survivor JW Doe requests: 1) that this Objection be considered; and 2) that the Debtor's Motion be denied in part; and 3) that all of the attached documents be made part of the public record; or in the alternative, it is requested that the Objection be set for an evidentiary hearing. It is further requested that the Abuse Victim-Survivor JW Doe be granted all other proper relief under law or at equity.

Dated: July 9, 2020     Respectfully submitted,

*/s/ Soren E. Gisleson*
**SOREN E. GISLESON (#26302)**
**JOSEPH E. "JED" CAIN (#29785)**
Herman, Herman & Katz, L.L.C.
820 O'Keefe Avenue
New Orleans, Louisiana 70113
Office: 504-581-4892
Fax: 504-561-6024
Email: SGISLESON@hhklawfirm.com
Email: JCAIN@hhklawfirm.com

**-AND-**

JOHN H. DENENEA, JR. (#18861)
SHEARMAN~DENENEA, L.L.C.
4240 Canal Street
New Orleans, LA 70119
Telephone: (504) 304-4582
FAX: (504) 304-4587
Email: jdenenea@midcitylaw.com

-AND-

RICHARD C. TRAHANT (#22653)

ATTORNEY AT LAW
2908 Hessmer Avenue
Metairie, LA 70002
Telephone: (504) 780-9891
FAX: (504) 780-9891
Email: trahant@trahantlawoffice.com
*Attorneys for Abuse Victim-Survivor JW Doe*

## CERTIFICATE OF SERVICE

I hereby caused a true and correct copy of the foregoing *Objection* to be served on July 9, 2020 upon all parties by electronic case filing for those parties receiving notice via the Court's Electronic Case Filing system, and on all other parties requiring service under the Court's *Ex Parte Order Authorizing the Debtor to Limit Notice and Establishing Notice Procedures* through the Master Service List via first-class United States mail, postage prepaid, to be sent on July 9, 2020.

*/s/ Soren E. Gisleson*
Soren E. Gisleson

83131308v.1