# UNITED STATES BANKRUPTCY COURT

## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re: | § | |
| | § | Case No. 20-10846 |
| THE ROMAN CATHOLIC CHURCH | § | |
| OF THE ARCHDIOCESE OF NEW | § | Section "A" |
| ORLEANS, | § | |
| | § | Chapter 11 |
| Debtor[1] | § | |
| | § | |

---

## DEBTOR'S EXPEDITED MOTION FOR PROTECTIVE ORDER

> **EXPEDITED RELIEF HAS BEEN REQUESTED. A TELEPHONIC HEARING WILL BE CONDUCTED ON THIS MATTER ON JULY 30, 2020, AT 2:00 P.M. THE DIAL-IN INFORMATION FOR SECTION A IS 1-888-684-8852; CONFERENCE CODE 9318283. IF YOU OBJECT TO THE RELIEF REQUESTED, OR YOU BELIEVE THAT EXPEDITED CONSIDERATION IS NOT WARRANTED, YOU MUST FILE A WRITTEN OBJECTION ON OR BEFORE JULY 28, 2020 5:00 P.M. OTHERWISE, THE COURT MAY TREAT THE PLEADING AS UNOPPOSED AND GRANT THE RELIEF REQUESTED.**

---

[1] The last four digits of the Debtor's federal tax identification number are 8966. The Debtor's principal place of business is located at 7887 Walmsley Ave., New Orleans, LA 70125.

**NOW INTO COURT,** through undersigned counsel, comes The Roman Catholic Church of the Archdiocese of New Orleans, the above-captioned debtor and debtor-in-possession (the "Debtor" or the "Archdiocese"), who files this memorandum in support of its Motion for Protective Order to protect the disclosure of certain confidential documents and other confidential information that will be produced in discovery in the above-captioned matter, including, but not limited to (1) confidential financial information and (2) sensitive and confidential information regarding alleged sexual abuse claims. In support thereof, the Archdiocese states as follows:

## BACKGROUND

Due to the nature of this bankruptcy proceeding, the Archdiocese was aware that discovery in this case would necessarily involve the production of confidential information, such as business and financial information, information involving employment and personnel files, and information regarding sexual abuse claims. On June 6, 2020, the Archdiocese sent The Official Committee of Unsecured Creditors (the "**Committee**") a proposed protective order which would protect confidential information and documents produced in discovery in this case and prohibit disclosure and use of such information except for purposes of this bankruptcy proceeding. The Committee did not respond to the Archdiocese's proposed protective order at that time.

On July 10, 2020, the Committee propounded two sets of discovery to the Archdiocese consisting of (1) First Set of Interrogatories and Requests for Production of Documents to the Archdiocese [Rec. Doc. 253-1], in connection with a Motion to Dismiss this Chapter 11 case [Rec. Doc. 203] (the "**Motion to Dismiss**"); and (2) First Set of Interrogatories and Requests for Production of Documents [Rec. Doc. 253-2], in connection with a Bar Date Motion [R. Doc. 200]. (the "**Bar Date Motion**") (collectively, the "**Discovery Requests**"). The Committee's Discovery Requests, among other things, request information and documents regarding the Archdiocese's

finances, clergy assignments, personnel files and other employment history, and information and documents regarding any sexual abuse claims involving the Archdiocese and/or clergy for the past 40 years.[2] Much of the information and documents requested include confidential information of the Archdiocese and others (including alleged victims and claimants) necessitating that a protective order be in place to protect such confidential information. *See* Declaration of Emilie G. Leumas, Director of Archives and Records of the Archdiocese, attached as Exhibit 1; Declaration of Jeffrey J. Entwisle, Chief Financial Officer of the Archdiocese, attached as Exhibit 2.

Yesterday, July 22, 2020, the Committee finally responded to the Archdiocese's request for a response to its proposed protective order by proposing a form of protective order that is completely unacceptable to the Archdiocese. Among other things, the Committee's proposed form of protective order specifically ***excluded*** from protection ***any*** information or documents regarding alleged sexual abuse claims, which are of course some of the most confidential and sensitive information in this case. Accordingly, as of the date of this motion, the Archdiocese and the Committee have failed to agree upon a protective order. As demonstrated herein, there is good cause for a protective order in this case. Therefore, the Archdiocese respectfully requests that the Court enter a protective order in the form attached hereto as Exhibit 3.

## LAW AND ARGUMENT

Federal Rule of Civil Procedure 26(c) provides authority for the Court to issue a protective order to protect a party from "annoyance, embarrassment, oppression, or undue burden or expense." "Even where the scope of discovery is broader in a bankruptcy proceeding than in an ordinary civil proceeding, Rule 26(c) still applies to limit the promulgation of damaging

---

[2] During a hearing on June 23, 2020, the Court was surprised by the amount and breadth of the Committee's requested discovery in connection with the Bar Date Motion because there is no evidentiary hearing set for this motion.

information.  *See In re Symington*, 209 B.R. 678, 688-689 (Bankr. D. Md. 1994) ("Examinations

under Federal Rule of Bankruptcy Procedure 2004 may be subject to limitation by Federal Rules

of Civil Procedure 26(c) and 45(c).").

The Archdiocese acknowledges that the general policy regarding access to information in

bankruptcy proceedings favors openness. *See* 11 U.S.C. § 107(a); *In re Gen'l Homes Corp.*, 181

B.R. 898, 903 (Bankr. S.D. Tex. 1995). Regardless, the statute directs the Court to prevent public

disclosure of sensitive information in specific circumstances. For example, section 107 provides

in pertinent part:

> (b) On request of a party in interest, the bankruptcy court shall, and on the bankruptcy court's own motion, the bankruptcy court may – ...
>
> (1) protect an entity with respect to a trade secret or **confidential research, development, or commercial information**; or
>
> (2) protect a person with respect to **scandalous or defamatory matter** contained in a paper filed in a case under this title.
>
> (c)(1) The bankruptcy court, for cause, may protect an individual, with respect to the following types of information to the extent the court finds that disclosure of such information would create undue risk of . . . **unlawful injury to the individual or the individual's property**:
>
> (A) **any means of identification** (as defined in section 1028(d) of title 18) contained in a paper filed, or to be filed, in a case under this title.

11 U.S.C. § 107 (emphasis added).

Bankruptcy Rule 9018 defines the procedures by which a party may move for relief under

section 107(b):

> On motion or on its own initiative, with or without notice, the court may make any order which justice requires . . . to protect any entity against a scandalous or defamatory matter contained in any paper filed in a case under the Code.

Federal Rule of Bankruptcy Procedure 9018.

Moreover, in contested matters, such as the Committee's Motion to Dismiss, the more limited discovery rules applicable to adversary proceedings and contested matters govern. *See In re Nat'l Risk Assessment, Inc.*, 547 B.R. 63, 65 (Bankr. W.D.N.Y. 2016) ("the 'pending proceeding rule' . . . holds that after the commencement of [a] . . . contested matter, the parties to that proceeding or matter may no longer utilize the liberal provisions of Bankruptcy Rule 2004, but must seek discovery under the more restrictive standards of Bankruptcy Rule 7026.").

**I.     There is good cause for a protective order to protect (1) private, personal, confidential information, including information regarding sexual abuse claims and (2) business and financial information of the Archdiocese.**

There can be no doubt that a protective order is necessary and appropriate in cases such as this one. In similar bankruptcies involving other archdioceses, it is generally the rule rather than the exception that routine protective orders such as the one proposed by the Archdiocese are entered either by stipulation or unopposed motion. *See e.g.*, Exhibit 4, Order Clarifying Requirement to Provide Access to Confidential Information or to Privileged Information, *In re The Christian Brothers' Institute*, Case No. 11-22820 (Bankr. S.D.N.Y. August 5, 2011) (order as a result of unopposed motion brought by the Committee and debtors); Exhibit 5, Stipulated Confidentiality Order Governing Production and Access to Confidential Material, *In re Roman Catholic Church of the Diocese of Gallup*, Case No. 13-13677 (Bankr. D.N.M. June 4, 2014).

In fact, in another case brought by an archdiocese in bankruptcy, the firm of Pachulski Stang Ziehl & Jones LLP (one of the two firms representing the Committee here) stipulated to a confidentiality order which contained protective provisions similar to what the Archdiocese seeks here.  A copy of that stipulation is attached here. Exhibit 6, Stipulation Regarding Confidentiality Agreement Between Debtor and Official Committee of Unsecured Creditors, and Their Respective

Professionals, *In re Archdiocese of Milwaukee*, No. 11-20059 (Bankr. E.D. Wisc. May 11, 2011).

The protective order that the Archdiocese proposes here is substantively the same as the stipulation

entered into by the Committee in the *Archdiocese of Milwaukee* case.

> **A.      Private, personal, confidential information, including information regarding sexual abuse claims.**

Discovery in this case will involve the production of confidential and private information,

such as clergy personnel files and sensitive information relating to sexual abuse claims. For

example, among other things, the Committee's Discovery Requests seek the following information

regarding clergy assignments, employment history, and sexual abuse allegations for the last 40

years: (1) documents concerning the assignment history of clergy accused of sexual abuse; (2) a

list of all living, former, or deceased priests, religious and lay individuals who have operated within

the Archdiocese against whom there were allegation of sexual abuse, regardless of whether the

allegation was deemed credible, and their assignment and/or employment history; (3) documents

maintained as confidential and kept separate and apart from the main personnel files for priests,

deacons, or religious; (4) documents and communications concerning sexual abuse allegations; (5)

minutes of the Board of Directors for the Archdiocese and Non-Debtor Catholic Entities relating

to allegations of sexual abuse; (6) minutes of officer or management meetings for the Archdiocese

and Non-Debtor Catholic Entities relating to allegations of sexual abuse; (7) a list of all locations

within the Archdiocese at which allegations of sexual abuse against clergy, religious, and lay

individuals were alleged to have occurred; and (8) communications relative to subpoenas from any

governmental agency or entity to the Archdiocese regarding the issue of child sexual abuse and

response to such subpoenas. Rec. Doc. 253-1.

The United States Supreme Court, Louisiana courts, and other courts across the country

have consistently held that information provided in civil discovery is not "public" and a protective

order restricting dissemination is appropriate method to preserve confidentiality and protect against public disclosure *See, e.g.*, *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 33 (1984) ("Much of the information that surfaces during pretrial discovery may be unrelated, or only tangentially related, to the underlying cause of action. Therefore, restraints placed on discovered, but not yet admitted, information are not a restriction on a traditionally public source of information."); *United States v. Carriles*, 654 F. Supp. 2d 557, 572-73 (W.D. Tex. 2009) (citing *United States v. Anderson*, 799 F.2d 1438, 1441 (11th Cir. 1996)) ("Discovery, whether civil or criminal, is essentially a private process because the litigants and the courts assume that the sole purpose of discovery is to assist trial preparation." ); *In re Gannett News Serv., Inc*., 772 F.2d 113, 116 (5th Cir. 1985) (holding that "[t]he results of pretrial discovery may be restricted from the public" and "temporary denial of access [to evidence not yet ruled admissible] constitutes no form of prior restraint"); *Marshall v. Bramer*, 828 F.2d 355, 360 (6th Cir. 1987) (discovery in civil litigation "is generally private" and is not "public disclosure" but "private disclosure for a limited use.").

Further, courts have found that a showing of "good cause" may be made where it is readily apparent from the nature of the information sought that such information contains confidential, sensitive, private information that should not be disclosed to the public. For example, in *EEOC v. Signal Int'l, L.LC.*, No. 12-557, 2013 U.S. Dist. LEXIS 128990, at *2 (E.D. La. Sep. 10, 2013), the Eastern District of Louisiana found that a protective order prohibiting parties from publicly disseminating information obtained through pre-trial discovery was warranted given "the highly sensitive nature of the lawsuit" and the "potential for abuse through the media." *Id.* The court "[could] not fathom why the dissemination of any information obtained through the discovery process outweighs the privacy interest of the parties and non-parties at this time." *Id.; see Pamlab, L.L.C. v. Brookstone Pharm., L.L.C.*, No. 09-7434, 2010 U.S. Dist. LEXIS 120303, at *12-14 (E.D.

La. Oct. 22, 2010) (finding good cause for a protective order where each party alleged that the other had "waged a negative media campaign against it" and given "the potential for widespread dissemination of discovered information to the public"); *Duling v. Gristede's Operating Corp.,* 266 F.R.D. 66, 73 (S.D.N.Y. 2010) (finding that information requested through discovery was confidential "by its nature" and therefore found that there was good cause for a protective order without looking at specific examples of documents).

Finally, courts have consistently found that personnel files, such as the Archdiocese's clergy personnel files, are confidential and should be produced only subject to a protective order. *See May v. FedEx Freight Se., Inc.*, No. 07-660-B-M2, 2009 U.S. Dist. LEXIS 48257, at *10 (M.D. La. June 8, 2009) (finding that the entirety of the personnel file should be protected as confidential pursuant to a protective order); *Cannon v. Lodge*, No. 98-2859, 1999 U.S. Dist. LEXIS 12358, 1999 WL 600374, at *1 (E.D. La. Aug. 6, 1999) (ordering that personnel records and investigative and complaint records be produced only subject to a protective order); *D'Antoni v. Roach*, No. 97-1799, 1997 U.S. Dist. LEXIS 16085, 1997 WL 627601, at *4 (E.D. La. Oct. 10, 1997) (ordering the production of personnel and internal investigation files, subject to the restriction that all information remain confidential and be "used only for purposes of this litigation").

Here, like in these cases, there is good cause to enter a protective order to protect the confidential, personal, private information of the Archdiocese and others, such as information found in clergy personnel files and information about sexual abuse claims, particularly considering the highly sensitive nature of this proceeding and the potential for abuse through the media. See Exhibit 1, Leumas Declaration, ¶¶ 6-7. The Archdiocese's clergy personnel files generally include private information about a number of things, including, but not limited to, baptisms and marriages, protected health care information, salary and benefits information, private

correspondence, and other personal identifiable information, such as social security numbers, tax identification numbers, telephone numbers, and addresses. *Id*. at ¶ 8. Certain personnel files also include information regarding alleged sexual abuse claims and settlement agreements (some with confidentiality agreements that provide that such information may not be disclosed without permission of the parties and order of the court). *Id*. at ¶ 9.

In fact, the Archdiocese's proposed protective order is based on the form of protective order which was entered by the state court in the matter, entitled *Jane Doe v. The Roman Catholic Church of the Archdiocese of New Orleans*, No. 16-8781, Civil District Court for Orleans Parish, Div. C (April 11, 2017), to protect the same type of private, sensitive information involving sexual abuse claims. Exhibit 7, Joint Motion for Entry of Protective Order, and executed Protective Order. A nearly identical version of this protective order was also entered in another abuse case in state court, entitled *John Doe v. The Roman Catholic Church for the Archdiocese of New Orleans and George Brignac*, No. 18-10864, Civil District Court for Orleans Parish, Div. A (September 25, 2019). In that case, the Special Master explained that "[t]here is **no doubt** that discovery responses in this matter will contain not only confidential but private information that involves not only the plaintiff and named defendants but third parties who have no involvement in this matter."[3] *See also* Exhibit 9, Revised Judgment, *J.W. Doe v. Archdiocese of New Orleans Indemnity Company, et al.*, No. 19-3947, Civil District Court for Orleans Parish, Div. D (March 12, 2020).

Accordingly, as in the foregoing cases, the Court should enter the Archdiocese's proposed protective order, attached as Exhibit 3, to protect private, sensitive information about the Archdiocese and others and information about sexual abuse claims.

---

[3] Exhibit 8, Special Master's Report and Recommendations. This report of Special Master Carolyn Gill-Jefferson was adopted and made the judgment of the district court by Judge Ellen Hazeur on November 14, 2019.

### B.      Confidential and proprietary business and financial information.

Discovery in this bankruptcy proceeding will require the Archdiocese to produce confidential and proprietary business and financial information, which the Archdiocese does not make available to the public. For example, the Committee's Discovery Requests seek the following business and financial records of the Archdiocese: (1) electronic accounting system; (2) monthly financials; (3) financial budgets; (4) forecasts of expenditures, revenues, liabilities and/or cash flow; (5) charts and/or analyses showing coverage and policy limits for any insurance as may provide coverage for any abuse claims; (6) forecasts or estimates of liabilities or potential magnitude of any abuse claims; (7) audit reports, work papers, communications; (8) appraisals, valuations, opinions or value and/or valuation analysis of any real or personal property; and (9) financial reporting, audit reporting, debt covenant reporting, or other financial disclosures or financial statements. Rec. Doc. 253-1.

The Archdiocese regards and treats this type of information as confidential and proprietary; the Archdiocese has confidentiality policies that they have applied consistently and enforced by segregating and limiting internal access to such information on a need to know basis; and the Archdiocese requires confidentiality to be preserved both during and after the termination of employment. *Id.* at ¶ 6. The public disclosure of confidential and proprietary business and financial information will harm the Archdiocese. *Id.* at ¶ 7. For example, the disclosure of the Archdiocese's electronic accounting system and financials in native format would disclose confidential work product prepared by accountants. *Id.*

Further, courts routinely hold that these types of business and financial documents are precisely the kinds of documents that should only be produced subject to a protective order, which—while allowing production of the documents in the litigation—protects their

confidentiality and bars their dissemination beyond the confines of the litigation. *See, e.g., Old Towne Dev. Grp., L.L.C. v. Matthews*, No. 09-224-B-M2, 2009 U.S. Dist. LEXIS 58661, at *7 (M.D. La. July 9, 2009) (finding that accountant statements should be subject to a protective order since they contain confidential financial information); *Fed. Deposit Ins. Corp. v. Schoenberger*, No. 89-2756, 1990 U.S. Dist. LEXIS 4883, at *1-2 (E.D. La. Apr. 24, 1990) (granting motion for a protective order to protect documents containing information relative to financial transactions of individuals, documents and information relating to the appraised value of assets of the receivership estate, and examination reports and work papers); *HomeVestors of Am., Inc. v. Duane Legate & House Buyer Network, Inc*., No. 3:12-CV-01850-P, 2013 U.S. Dist. LEXIS 93391, at *14 (N.D. Tex. July 3, 2013) (ordering that all financial documents produced by parties shall be treated as confidential information and governed by a protective order); *Wauchop v. Domino's Pizza, Inc.,* 138 F.R.D. 539, 552-53 (N.D. Ind. 1991) (issuing protective order to protect confidential, proprietary information included in minutes of directors meetings); *C.A. Muer Corp. v. Big River Fish Co.,* No. 97-5402, 1998 WL 488007, at * 1, 4 (E.D. Penn. Aug. 10, 1998) (entering protective order limiting dissemination of confidential and proprietary documents, such as documents reflecting the budget of the plaintiff's restaurant operation, media budgets, advertising budgets and marketing budgets, to attorneys for litigants only).

Accordingly, as in the foregoing cases, the Court should enter the Archdiocese's proposed protective order, attached as Exhibit 3, to protect the Archdiocese's confidential business and financial information that will be produced in discovery in this case.

II.  **The Archdiocese's proposed protective order provides a necessary and proper mechanism for parties to protect confidential information that will be produced in discovery.**

The Archdiocese seeks entry of a standard protective order to protect confidential documents and information produced in discovery in this proceeding and provides a process for making the determination as to whether or not a particular document should be protected. The Archdiocese's proposed protective order provides the usual process whereby parties can submit documents to each other marked "CONFIDENTIAL" and if either party challenges the confidential designation, the Court will hold a hearing to determine whether the documents are in fact confidential and require protection. Exhibit 3, Archdiocese's Proposed Protective Order, ¶ 6. The Archdiocese's proposed protective order simply seeks to protect confidential information produced in discovery and prohibit disclosure and use of such information except for purposes of this bankruptcy proceeding.

Accordingly, the Archdiocese respectfully requests that the Court enter the Archdiocese's proposed protective order because it provides a reasonable and practical mechanism for the parties to designate certain documents as confidential in light of the financial information and other private, confidential information that will be produced in this case, while providing the opposing party an equal opportunity to challenge any confidential designations.

III.  **Certificate of Conference**

Pursuant to Local Rule 7026-1, undersigned counsel certifies that on July 21, 2020, counsel for the Archdiocese conferred by phone with counsel for the Committee and attempted in good faith to resolve the issues concerning the protective order without Court intervention. After conferring, counsel were not able to reach an agreement regarding the protective order.

{N4049800.9}
11

## IV.     Reservation of Rights

Nothing in this Motion nor the Protective Order shall waive any right or objection that may be asserted by any party regarding discovery.

## V.     Notice

Notice of this Motion has been provided to the parties identified in this Court's *Ex Parte Order Authorizing the Debtor to Limit Notice and Establishing Notice Procedures* [ECF No. 22], including:  (a) creditors who claim to hold security interests or liens, including Hancock Whitney Bank, KS State Bank, and Dell Financial Services LP, together with any of their known counsel; (b) the Archdiocese's twenty (20) largest unsecured creditors, together with any of their known counsel; (c) the creditors appointed to serve on the Committee, together with any counsel for the Committee; (d) all parties who have requested special notice pursuant to Bankruptcy Rule 2002, together with any of their known counsel; (e) the Office of the United States Trustee for the Eastern District of Louisiana; and (f) all applicable governmental agencies to the extent required by the Bankruptcy Rules and Local Rules, together with any of their known counsel.  In light of the nature of the relief requested herein, the Debtor submits that no other or further notice is necessary.

## CONCLUSION

**WHEREFORE**, the Archdiocese respectfully requests that the Court enter the Archdiocese's proposed protective order, attached hereto as Exhibit 3, to govern and protect confidential information produced in discovery in this case.

Respectfully submitted,

_/s/ Mark A. Mintz_
R. PATRICK VANCE (#13008)
ELIZABETH J. FUTRELL (#05863)
EDWARD D. WEGMANN (#13315)
MARK A. MINTZ (#31878)
LAURA F. ASHLEY (#32820)
LUCAS H. SELF (#37301)
Jones Walker LLP
201 St. Charles Avenue, 51st Floor
New Orleans, LA   70170
Telephone: (504) 582-8000
Facsimile:  (504) 589-8260
Email:  pvance@joneswalker.com
Email:  efutrell@joneswalker.com
Email:  mmintz@joneswalker.com
Email:  lashley@joneswalker.com
Email: lself@joneswalker.com

**ATTORNEYS FOR**
**THE ROMAN CATHOLIC CHURCH OF**
**THE ARCHDIOCESE OF NEW ORLEANS**