**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| In re: | ) | |
| | ) | Case No. 20-10846 |
| THE ROMAN CATHOLIC CHURCH OF | ) | |
| THE ARCHDIOCESE OF NEW ORLEANS | ) | Section "A" |
| | ) | |
| Debtor. | ) | Chapter 11 |

**LIMITED OBJECTION OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS TO DEBTOR'S EXPEDITED MOTION FOR PROTECTIVE ORDER**
**[Relates to Docket # 280]**

The undersigned counsel, on behalf of the Official Committee of Unsecured Creditors (the "Committee"), files this limited objection ("Objection") to the July 23, 2020 *Expedited Motion for Protective Order* [Docket #280] (the "Motion for Protective Order") filed by the above-captioned debtor and debtor in possession (the "Archdiocese" or the "Debtor"). In support of its Objection, the Committee states as follows:

## I.     SUMMARY OF LIMITED OBJECTION

1. Transparency should be the order of the day and secrecy has no place in this bankruptcy case, which was filed to deal with childhood sexual abuse claims. The fact that the Archdiocese failed for many years to address the sexual abuse of children and secreted away files containing sexual abuse information does not make that information confidential. The Archdiocese has no qualms about seeking to bar and "address" all abuse claims through bankruptcy proceedings; it cannot be given free rein to hide all information concerning those same claims. There is nothing inherently confidential about sexual abuse of children; to the contrary, childhood sexual abuse must be reported to authorities under Louisiana Mandated Reporting Laws. Information concerning who was abused, when they were abused and by whom is necessary in this case in order to notify the very claimants whose abuse this bankruptcy case is

1

83264249v.4

meant to address. Due process requires no less.[1]

2. The Debtor has not provided any basis for its contention that all documents relating to clergy sexual abuse of children are presumptively confidential or should be subject to confidentiality protections. Instead, the Motion for Protective Order broadly characterizes those documents as confidential and misrepresents the Committee's position in regards to addressing them. To be clear – the form of protective order proposed by the Committee did <u>not</u> exclude sexual abuse documents from any protection; but it does not automatically allow that presumption to be made by the Debtor's stamp of confidentiality. Under the Committee's proposal, sexual abuse documents will be subject to a meet and confer process and if the parties cannot reach agreement, either may seek a determination from the Court. In contrast, the Debtor apparently intends to designate *all* sexual abuse documents as confidential.[2] Since the Debtor has the burden of proving that confidential treatment is warranted, the Committee's proposal places that burden squarely on the Debtor where it belongs, rather than allowing the Debtor to shift it to the Committee (and other claimants and creditors) to obtain relief from an unsupported

---

[1] *See Sheftelman v. Standard Metals Corp.*, 839 F.2d 1383, 1386 (10th Cir. 1987), *cert. dismissed*, 488 U.S. 881, 109 S.Ct. 201, 102 L.Ed.2d 171 (1988) ("Notice must be given to 'all creditors' under Rule 2002(a) of the time set for filing proofs of claim. The term 'all creditors' has no qualifications or limitations. *New York v. New York, New Haven & Hartford Railroad Co.*, 344 U.S. 293, 73 S.Ct. 299, 97 L.Ed. 333. This notice must also be given to satisfy due process requirements. *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865. We are referring to actual notice to known creditors, and these are creditors whose actual identity is known and those within an identified group or category as were the bondholders of the particular bond issue here concerned and whose addresses are "reasonably ascertainable." Something by way of constructive notice must also be given to those bondholders in the same group whose identity and whereabouts cannot be ascertained. The record shows that the indenture trustee, the National Bank of Georgia, had a recent list of most if not all of the bondholders of these bearer bonds.").

[2] *See* Motion for Protective Order at page 2: "Among other things, the Committee's proposed form of protective order specifically excluded from protection any information or <u>documents regarding alleged sexual abuse claims</u>, <u>which are of course some of the most confidential and sensitive information in this case</u>." (Emphasis added.)

83264249v.4

designation. The Debtor should specify which abuse documents (or parts thereof) it wants to protect, the particular need to protect them, and prove to the Court why confidential treatment is justified. A presumption of confidentiality is improper, both as a matter of law and principle and as consistent with the Debtor's public statements.

## II. OBJECTIONS

3. The Committee does not object to the entry of a protective order, but does request the revisions set forth in the redline markup attached as Exhibit "1" hereto. (A clean copy of the Committee's requested form of protective order is attached as Exhibit "2" hereto.) The requested changes are summarized as follows:

### A. Process on Challenging Confidentiality Designations

4. The Committee's revisions include changes to the process by which confidentiality designations may be challenged. Under the protective order, the "Producing Party" (which in almost all cases will be the Debtor) will have the ability to designate material as confidential, subject to potential challenge.

5. In addition to technical changes, the Committee requests two important revisions. First, under Paragraph 6(a) of the Debtor's original version, the burden of presentation was effectively placed on the "Receiving Party" (almost always the Committee) to file a motion with the Court to challenge the confidentiality within 14 days from the date of the parties' conference. (Although the Debtor's version did state that the burden of proof was on the Producing Party, practically speaking the burden would have been on the Committee which would have been forced to file a motion and state all grounds in the motion when filed.) The Committee requests that in any confidentiality challenge, the receiving party need only identify the challenged materials in any initial filing with the Court, with the producing party then having the burden of

presentation to set forth its basis for designating as confidential. (*See* Exhibit "1" at ¶6(a), pp. 7-8) The objecting party will then have an opportunity to respond before the matter is submitted to the Court (*See* id.) The Committee's requested change is consistent with the two sample orders submitted by the Debtor attached to its motion, neither of which required the objecting party to come forward with the initial burden of presentation. *See* Motion for Protective Order, Exhibit "5" (producing party—not the objecting party—is the one to file the request with the Court) (¶4, p. 6); Exhibit "6" (objecting party not required to file motion) (¶9, p. 14)

6. Second, in connection with depositions and hearings under Paragraph 6(b), the Debtor's original version required an objecting party to state specific objections on the record at the deposition or hearing (where confidential designations are asserted) or else any confidentiality challenge is waived. (*See* Exhibit "1" at ¶6(b), pp. 8-9) The Committee submits that this is unnecessary and burdensome and requests that an objecting party be given 20 days after the transcript is received to object, with the parties' rights otherwise preserved. (*See* Exhibit "1" at ¶6(b), pp. 8-9) The Committee's requested change is consistent with the two sample orders submitted by the Debtor attached to its motion, neither of which required any reservation or challenge by an objecting party at the hearing or deposition. *See* Motion for Protective Order, Exhibit "5" (no requirement to state objection at deposition) (¶2, pp. 4-5); Exhibit "6" (same) (¶6(g), p. 10)

7. The requested changes are appropriate and follow the language of the two sample protective orders cited by the Debtor. As the bankruptcy court stated in the Archdiocese of Portland case considering a similar protective order:

> Here, debtor and the opposing clergy must show good cause for continuing the protection of the information from public disclosure. That burden is especially appropriate where, as here, the Archdiocese agreed to produce documents under a protective order that did not require or contain a court finding of good cause, that

4

allowed the Archdiocese to unilaterally designate documents as confidential, and that contained a provision allowing the tort claimants to challenge the designation of documents as confidential.

*In re Roman Catholic Archbishop of Portland in Oregon*, Case No. 04–37154–elp11, 2009 WL 1851010, *4 (Bankr. D.Or. June 24, 2009), *affirmed and reversed in part on other grounds*, 661 F.3d 417, 424 (9th Cir. 2011) (the holding discussed above was affirmed by the Ninth Circuit).

### B. Process for Addressing Abuse Documents

8. Paragraph 5 of the Committee's revised protective order includes a process for addressing what have been informally referred to as the "abuse documents," which include documents relating to the abuse suffered by victim-survivors and the efforts to cover up such abuse. For the reasons discussed below, these documents raise significant issues and separate treatment of these documents is warranted as set forth in the Committee's proposed revision.

> (1) *No "good cause" has been shown to include these non-confidential matters of great public interest*

9. The Committee and certain abuse victim-survivors assert that many of these documents are not confidential and are matters of great public interest, since they likely reveal abuse of children and efforts to cover up that abuse. The Archdiocese itself has publicly committed to transparency. (For example, in a November 8, 2018 interview with Newell Normand, Archbishop Aymond, the Archbishop stated "we want to be totally transparent" concerning abuse claims).[3] While victims' personal identifying information should remain confidential,[4] it is a matter of the utmost public interest that the crimes and abuse against children perpetrated over decades not be subject to any undue secrecy or non-disclosure.

10. Other Catholic dioceses have recognized the need for transparency and

---

[3] *See* Exhibit "4" hereto at p. 4 (Portion of transcript of interview); *See also, e.g.,* Pastoral Letter, 2018 Clergy Report Regarding Abuse, https://nolacatholic.org/2018-report-on-clergy-abuse

[4] In addition, some limited personnel and employment information may be confidential.

specifically the need to keep abuse documents public. In the *Archdiocese of Santa F*e Chapter 11 case, a 2018 case pending in the District of New Mexico, Archbishop Wester stated at the Section 341 meeting that he recognized that transparency in the production of documents to the public was important (subject only to redaction of victims' personal identifying information):

> · · MR. PAEZ:··Will the Debtor make public all of the documents produced in the state court lawsuits to the state tort lawyers as long as the victims' names are redacted, Archbishop?
> ARCHBISHOP WESTER:··Yes, as long as it's -- as long as the victims' names are redacted and it's in accordance to their agreements, we will be more than happy to do that.··We know that it's important to have that transparency and not even have the semblance of hiding or putting things under the rug, so that's a very important process.

See attached Exhibit "3" (excerpt of testimony, pp. 75-76)

11. The Debtor has not seriously attempted to demonstrate "good cause" as required under Rule 26(c) of the Federal Rules of Civil Procedure to include abuse documents within a protective order. The sole basis asserted by the Debtor for confidentiality of abuse documents is that some settlement agreements contain confidentiality agreements. (*See* Motion for Protective Order, p. 9) In response to the initial request to discuss a protective order, the Committee asked the Debtor repeatedly to provide the basis and rationale for confidentiality protection for abuse documents, but no answer was ever provided.[5]

12. In addition, the self-serving declarations submitted by the Debtor's personnel (Motion for Protective Order, Exhibits "1" and "2") add nothing and have no evidentiary value. The Declaration of Emilie Leumas contains a legal conclusion from a lay witness, without any foundation, that discovery "will involve the production of confidential information" and "poses a

---

[5] Unfortunately, the Debtor's incorrectly asserts that "the Committee did not respond to the Archdiocese's proposed protective order" and implies that the Committee ignored this proposed draft between June 6 and July 10. (Motion for Protective Order, p. 1). To the contrary, counsel asked repeatedly for additional information, which was never provided.

83264249v.4

real risk of harm to the Archdiocese and others."[6] Similarly, Jeffrey Entwisle's Declaration asserts the same legal conclusion and asserts, without basis or explanation, that "the Archdiocese has confidentiality policies that they have applied consistently"[7] and that discovery "poses a real risk of harm to the Archdiocese and others."[8] This is insufficient to show the "good cause" required under Rule 26(c) for a protective order for these documents.

13. As the court held in *Archdiocese of Portland*, "there is no blanket protection from disclosure of information contained in personnel records, particularly where the information involves allegations of serious wrongdoing that implicates public safety." In addition, even where abuse information is "highly personal and its release could cause embarrassment, is relevant to how much the Archdiocese knew and when it knew about the allegations of serious misconduct that related to the clergy's fitness to work in certain Archdiocesan ministries. On balance, there is no good cause to protect those relevant documents from disclosure." *In re Roman Catholic Archbishop of Portland in Oregon,* 2009 WL 1851010 at *6.

    (2) *In the state court proceedings, there was never a determination as to confidentiality of any documents*

14. While the Debtor invokes the state court proceedings, as the Committee understands, there was never a finding of confidentiality as to any documents in those

---

[6] *See* Federal Rules of Evidence 701 (Ms. Leumas is a lay witness who improperly asserts the ultimate legal issue of confidentiality); 601 and 602 (Ms. Leumas concludes that an unarticulated "real risk of harm" exists without explaining the nature of the alleged risk or the nature of the harm and fails to specify the basis for her knowledge).

[7] *See* Federal Rules of Evidence 701 (Mr. Entwisle is a lay witness who improperly asserts the ultimate legal issue of confidentiality); 601 and 602 (Mr. Entwisle fails to explain the confidentiality policies in any detail whatsoever, including whether they are oral or written, and to which documents they allegedly apply); 801 and 1001 (if no personal knowledge, based on out of court statement, and any confidentiality provisions are best evidence of their contents)

[8] *See* Federal Rules of Evidence 601 and 602 (Mr. Entwisle concludes that an unarticulated "real risk of harm" exists without explaining the nature of the alleged risk or the nature of the harm and fails to specify the basis for his knowledge).

7

proceedings. The Debtor "cherry picks" to support its arguments and attaches a single protective order entered in one out of 34 state court actions (Exhibit "7" to the Motion for Protective Order), along with a special master's report and recommendations (Exhibit "8") and a "temporary" protective order entered in another case (Exhibit "9" to the Motion for Protective Order; see p. 3 of Exhibit "9").[9] However, in another case, *James Doe v. Archdiocese of New Orleans Indemnity, Inc., et al.* (Case No. 20-1338 in District Court; filed as Case No. 2019-1371 in Orleans Parish Civil District Court), the court declined to enter a protective order (but did require the parties to revisit the issue before any documents would be disclosed outside of the lawsuit).

15. In addition, while the Debtor now asserts that "information found in clergy personnel files and information about sexual abuse claims" is confidential and should be subject to the protective order, in the state court proceedings, the Committee understands that <u>the Debtor produced a wide array of these very documents as non-confidential and without seeking confidentiality protection in those proceedings</u>. For example, in *John Doe v. Roman Catholic Church of the Archdiocese of New Orleans, et al.* (Case No. 20-1320 in District Court; filed as Case No. 2018-10864 in Orleans Parish Civil District Court)--a case concerning the notorious offender George Brignac—the Debtor produced as <u>non-confidential</u> the array of documents attached as <u>Exhibit "5"</u> hereto (in globo) which include (as illustrative examples):

- 1974 internal evaluation for becoming a deacon;
- 1978, 1988, and 1989 correspondence between George Brignac, Bishop Ott, Archbishop Hannan, George Brignac's attorney, and other clergy concerning criminal charges filed against Brignac and a request to reinstate Brignac as deacon;

---

[9] The state court orders are protective orders (like the one suggested by the Debtor in this Chapter 11 Case, but differing in form) allowing the parties to designate materials as potentially confidential, subject to later proceedings.

83264249v.4

- 2002 correspondence from senior officials (on behalf of Archbishop Hughes) to George Brignac advising him to seek laicization in light of the charges against him;
- 2002 Independent Review Board Report[10] concluding that Brignac's suspension should be permanent and a subsequent letter from the Archdiocese's attorneys to the New Orleans Police Department concerning Brignac's activities;
- 2008 internal paperwork filled out by Brignac acknowledging action taken against him on account of allegations of abuse;
- 2018 internal correspondence (to the Archbishop) concerning Brignac;
- 2018 correspondence between Archdiocese personnel and the New Orleans Saint concerning abuse allegations; and
- 2018 correspondence concerning Brignac's positions in the Knights of Columbus.

This further illustrates the non-confidential nature of such documents.

(3) *The Committee will work with the Debtor to narrow the issues concerning abuse documents and work to avoid protracted discovery litigation*

16. The Committee proposes that the parties work to attempt to narrow the issues before engaging in discovery litigation. Under the Debtor's form of protective order, the Committee understands that the Debtor will seek to broadly assert confidentiality for all abuse-related documents. The Committee (and perhaps other parties) will have no choice but to immediately challenge these designations, leading shortly to a court process.

**C. <u>Other Revisions to the Protective Order</u>**

17. Other revisions requested in the Committee's version are as follows:

18. <u>Paragraphs 4-5 (Scope of "Confidential Information")</u>: The Debtor's original version contained overbroad language stating flatly that a wide range of materials and information would be deemed confidential. It should go without saying that at this juncture no showing has been made as to any specific materials. The Committee's revision clarifies that the

[10] Inapplicable sections of this document were omitted from Exhibit "4."

Producing Party may designate in good faith what it believes to be confidential, and such designation shall be subject to the procedures set forth in the protective order (*See* Exhibit "1" at ¶4, pp. 4-5)

19. Paragraph 6 (Scope of material to be designated as "Professionals' Eyes Only"): The Committee submits that there should be language limiting the scope of materials designated as "professionals' eyes only" to include a specific defined scope. (The Debtor's original version has no restriction or basis listed as to what could be so designated.) (*See* Exhibit "1" at ¶4, pp. 4-5) This is consistent with the two sample orders submitted by the Debtor attached to its motion, neither of which gave the debtor an unrestricted ability to designate any items whatsoever as "professionals' eyes only" (One order has no "professionals eyes only" provision, and the other applies it only to a specific narrowly defined set of materials.) *See* Motion for Protective Order, Exhibit "5" (no "professionals eyes only provision") (¶2, pp. 4-5); Exhibit "6" (same) (¶6(c), p. 9) (only applied to certain electronic accounting information).

20. The Debtor should provide a reasonable – but extremely narrow -- definition of documents that it contends warrants treatment as "professionals' eyes only" because that class of documents cannot be shown to Committee members and therefore interferes with the attorney-client relationship. The Committee reserves all rights as to such scope.

21. Paragraph 6(e) (No time limit to challenge confidentiality designations): The Committee has added language (a new Paragraph 6(e)) clarifying that there is no time limit to challenge confidentiality designations. (*See* Exhibit "1" at ¶6(e), p. 10) The Debtor will not be prejudiced by this provision and the Committee should not be forced to devote resources to challenging designations unless and until it believes it needs to do so. This is consistent with the two sample orders submitted by the Debtor attached to its motion, neither of which has any such

time limit.

22. <u>Paragraphs 7-8 (Authorized use and recipients)</u>: The change concerning "Authorized Uses" retains the substance of the Debtor's draft, but is simplified and clarified. (*See* Exhibit "1" at ¶7, p. 10)

23. <u>Paragraph 9 (Commercial and competitive purposes)</u>: This language, which appears to come from a "commercial" case involving parties who could be business competitors, appears to be inapplicable. (*See* Exhibit "1" at ¶9, p. 16)

24. <u>Paragraph 10 (Public domain exclusion)</u>: Language has been added to apply a standard "public domain" exclusion to exclude from "Protected Material" any information in the public domain (*See* Exhibit "1" at ¶10, pp. 16-17) Such language is included in both of the sample protective orders included with the Debtor's motion. *See* Motion for Protective Order, Exhibit "5" (¶1, p. 4); Exhibit "6" (¶6(h), p. 11).

25. <u>Paragraph 14 (Return/Destruction of materials)</u>: An alternate provision tailored to a Chapter 11 case has been suggested for return or destruction of materials. (The provision included in Debtor's draft appears to be from a commercial litigation case.) (*See* Exhibit "1" at ¶14, p. 17-19)

26. <u>Paragraph 21 (Additional reservations of rights)</u>: New paragraph 21 adds some additional reservations which the Committee expects are uncontroversial. (*See* Exhibit "1" at ¶21, p. 21).

27. <u>Other Technical Revisions</u>: The Committee's version also contains some clarifying and technical edits including inclusion of defined terms (*See* Exhibit "1" at p. 3).

WHEREFORE for these and other reasons to be presented prior to or at any hearing on the Motion for Protective Order, the Committee requests: 1) that the Court sustain this Objection,

11

2) that the Motion for Protective Order be denied absent the revisions attached hereto, and 3) that the Committee be granted all other proper relief under law or at equity.

Dated: July 28, 2020

Respectfully submitted,

*By: /s/ C. Davin Boldissar*
Omer F. Kuebel, III (La #21682)
C. Davin Boldissar (La. #29094)
Locke Lord LLP
601 Poydras Street, Suite 2660
New Orleans, Louisiana 70130-6036
Telephone: (504) 558-5111
Facsimile: (504) 558-5200
Email: dboldissar@lockelord.com

and

James I. Stang (CA Bar No. 94435)
Linda F. Cantor (CA Bar No.153762)
Pachulski Stang Ziehl & Jones LLP
10100 Santa Monica Blvd., Suite 1300
Los Angeles, CA 90067
Telephone: (310)-277-6910
Facsimile: (310)-201-0760

*Co-Counsel to the Official Committee of Unsecured Creditors*

## CERTIFICATE OF SERVICE

I hereby caused a true and correct copy of this *Objection* to be served on July 28, 2020 by electronic case filing for those parties receiving notice via the Court's Electronic Case Filing system, and on all other parties requiring service under the Court's *Ex Parte Order Authorizing the Debtor to Limit Notice and Establishing Notice Procedures* through the Master Service List via first-class United States mail, postage prepaid, to be sent on July 29, 2020.

*/s/ C. Davin Boldissar*
C. Davin Boldissar

83264249v.4