**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| In re: ) | |
| ) | Case No. 20-10846 |
| THE ROMAN CATHOLIC CHURCH OF ) | |
| THE ARCHDIOCESE OF NEW ) | Section "A" |
| ORLEANS ) | |
| ) | Chapter 11 |
| Debtor. | |

**SEXUAL ABUSE SURVIVOR J.W. DOE'S MOTION TO LIFT STAY**

**NOW INTO COURT** comes J.W. Doe, plaintiff in *J.W. Doe v. Archdiocese of New Orleans*, No. 20-01321 (E.D.L.A.) (Guidry, J.), through undersigned counsel, who respectfully requests that this Court lift the litigation stay pursuant to Section 362 of the Bankruptcy Code. Alternatively, Doe respectfully requests that the Court partially lift the stay to allow limited written discovery and depositions of defendant and witnesses over the age of 70. Doe stipulates that he will not seek to enforce any judgment against the Debtor while the bankruptcy is pending from insurance or otherwise without Bankruptcy Court approval.

> **EXPEDITED RELIEF HAS BEEN REQUESTED. MOVANT HAS REQUESTED THAT A HEARING BE CONDUCTED ON THIS MATTER ON SEPTEMBER 17, 2020, AT 1:30 PM BY TELEPHONE THROUGH THE DIAL-IN FOR SECTION A 1-888-684-8852; CONFERENCE CODE 9318283. IF YOU OBJECT TO THE RELIEF REQUESTED, OR YOU BELIEVE THAT EXPEDITED CONSIDERATION IS NOT WARRANTED, YOU MUST FILE A WRITTEN RESPONSE, WHICH MOVANT HAS REQUESTED BE DUE ON OR BEFORE SEPTEMBER 14, 2020 AT 5:00 P.M. OTHERWISE, THE COURT MAY TREAT THE PLEADING AS UNOPPOSED AND GRANT THE RELIEF REQUESTED.**

**INTRODUCTION**

1. This case is one of thirty-five cases filed against the Archdiocese of New Orleans related to pervasive and systemic sexual abuse suffered by minors over decades at the hands of the

Archdiocese's employees. On May 1, 2020, the Archdiocese filed for bankruptcy, with the intended consequence of having the slew of state court sexual abuse cases pending against it (a) removed to federal court and (b) stayed under Section 362 of the Bankruptcy Code. Doe is one of the Archdiocese's victims. He moves this Court to lift the Section 362 stay so that he may continue his case against the Archdiocese.

2. This Court should lift the stay because the civil action against the Archdiocese is a non-core proceeding that has little to no chance of affecting the administration of the bankruptcy estate. Doe stands to suffer significant prejudice if the stay is left in place, as several witnesses are over the age of 70. The civil action had meaningfully progressed and stood ready to proceed with further discovery and a trial on the issue of prescription. Progression of Doe's case will assist the Bankruptcy Court by providing guidance on the issues of prescription and valuation of these claims.

3. Because it maintains insurance that pays for the defense of litigation costs without devaluing the corpus of the policy limits, the Archdiocese's estate will not be depleted in any way. Several other factors, more fully explained below, weigh in favor of lifting the stay in this case. Most importantly, this Court can fashion an order to allow the case to proceed in a way that poses no risk to the bankruptcy estate. Together, these factors provide sufficient "cause," pursuant to Section 362(d) of the Bankruptcy Code, to lift the stay of this matter.

### BACKGROUND

4. J.W. Doe was brought up a devout Catholic. In 1968, he was a middle school student at St. Joseph catholic school in Gretna, Louisiana. One of the priests associated with that school at the time was Father Lawrence Hecker. *Petition*, attached as Exhibit "1", at 3. One day, Father Hecker took Doe and a group of other schoolboys into the sacristy behind the alter of St.

Joseph church where he instructed the boys to line up shoulder-to-shoulder and drop their pants. *Id.* Father Hecker then told the boys that he would "show them what it was like to get a hernia exam." *Id.* Father Hecker then sexually abused each boy by fondling and groping the boys' genitals. *Id.*

5. On November 2, 2018, the Archdiocese placed Hecker on the Pedophile List. The Archdiocese published the Pedophile List ostensibly to inform the public, for the first time, of the more than 57 pedophiles that it employed and/or supervised – eventually expanding the list to a current total of about 64. *Pedophile List*, attached as Exhibit "2". On the Pedophile List, under each name, the Archdiocese purportedly identified the date of a credible allegation and in which parish the pedophile priest was employed at the time of the sexual abuse.

6. However, the Archdiocese's Pedophile List fails to inform the public of the following material facts: (a) *all* of the allegations of abuse against an individual priest; (b) when the Archdiocese first learned of allegations of abuse; (c) any steps taken to remove, reprimand, and/or refer the pedophile to authorities; and (d) why it took the Archdiocese so long to inform the public of these predators. A number of these pedophiles, like Hecker, are still alive.

7. Moreover, the Pedophile List is incomplete. Numerous Archdiocese-employed and controlled pedophile clergy have not been identified. The Archdiocese is uniquely positioned to know which of its employees, and those under its supervision, were engaged in what criminal conduct. In most cases, the Archdiocese concealed its knowledge from the public and authorities.

## State Court Litigation

8. Doe filed this lawsuit in the Orleans Parish Civil District Court on April 11, 2019. *Id.* at 1. Doe's allegations all sound in Louisiana tort law under the Louisiana Civil Code and other statures. He has alleged claims for negligence – La. Civ. Code arts. 2315-16 – fraudulent

3

concealment, and public nuisance – La. Rev. Stat. § 14:403, *et seq.* – against the Archdiocese and other defendants. *Id.* at 7-19.

9. At the time the Archdiocese filed bankruptcy, Doe was in the middle of preparations for a prescription trial in state court to determine whether the Archdiocese and Hecker engaged conduct that waived, forfeited, consented, and/or fraudulently concealed sexual abuse claims and that the claims were therefore timely made. In preparation, Doe had engaged in contentious disputes over written discovery, scheduled depositions, noticed the deposition of the Archbishop, filed and served a list of 37 fact witnesses, requested numerous depositions from the Archdiocese, issued subpoenas, and had numerous motions pending.

10. Defendants filed extensive exceptions seeking broad-ranging legal determinations including, but not limited to: (1) the Declinatory Exception of Partial Lack of Jurisdiction over the Subject Matter, seeking dismissal insofar as plaintiff's petition requested the interpretation or application of Church law, policy, and doctrine (2) the Dilatory Exception of Nonconformity of the Petition, arguing that plaintiff had failed to set forth the names of all parties by filing suit under the fictitious name "J.W. Doe"; (3) the Dilatory Exception of Vagueness or Ambiguity, arguing that plaintiff had made numerous vague and ambiguous allegations, failed to plead fraud with particularity, and failed to plead sufficient facts to allow defendant to investigate plaintiff's allegations and prepare its defense; (4) the Dilatory Exceptions of Prematurity, arguing that plaintiff had ignored the procedural requirements for actions based on sexual abuse of a minor; (5) the Peremptory Exceptions of No Cause of Action, arguing plaintiff had attempted to assert numerous causes of action that are not supported by the factual allegations of the petition and/or are not cognizable under Louisiana law or applicable law; and (6) the Peremptory Exceptions of No Right of Action, arguing (a) plaintiff attempted to assert a breach of contract claim based on

the Charter for the Protection of Children and Young People, and (b) plaintiff pled certain allegations regarding the Archdiocese's alleged actions or inactions with respect to others besides plaintiff himself. *Archdiocese Exceptions* (5/30/19), attached as Exhibit "3".

11. All of the defendants' exceptions were denied by Judgment of state court. *07/11/19 Judgment*, attached as Exhibit "4". Hecker answered on June 10, 2019, and the Archdiocese answered on July 8, 2019. *Hecker Answer*, attached as Exhibit "5"; *Archdiocese Answer*, attached as Exhibit "6". State court had temporarily resolved the issue of a protective order. *01/28/2020 Judgment*, attached as Exhibit "7". Substantial document production had occurred from defendants and plaintiffs, though Doe filed motions compelling further production.

12. A host of motions were pending at the time of the bankruptcy filing. Pending motions included: (1) Doe's *Motion to Compel Inspection* (moving for a court order to inspect the Archdiocese's premises to locate the various secret abuse files kept by the Archdiocese in a safe locked inside a vault, the Archbishop's locked files in his desk drawer, and the Vicars General own separate cache), attached as Exhibit "8"; (2) Doe's *Motion to Declassify Documents* (moving for an order declassifying documents that the Archdiocese unilaterally designated as "classified" because potential crimes were implicated), attached as Exhibit "9"; (3) Doe's *Motion to Depose Attorneys* (moving for an order to depose attorneys due to documents showing potential criminal exposure), attached as Exhibit "10" with a placeholder, since this Court earlier denied a Motion for Leave whereas the District Court granted it; (4) Various News Organizations filed a *Motion to Be Heard* (joining Doe's *Motion to Declassify and Motion to Depose Attorneys*), attached as Exhibit "11"; (5) Doe's *Motion to Compel Archdiocese* (moving for an order compelling the Archdiocese to produce documents unredacted, sexual abuse documents, Hecker's medical records, and documents related to other Hecker victims), attached as Exhibit "12"; (6) Doe's

*Motion to Compel Hecker* (moving for an order compelling Hecker to disclose his employment status with the Archdiocese, any benefits he received from the Archdiocese, and verify his responses), attached as Exhibit "13"; and (7) Archdiocese's *Motion to Compel Plaintiff* (moving for an order for information related to prescription), attached as Exhibit "14".

13. Doe issued numerous subpoenas which sought a host of important documentation. On February 3, 2020, Doe subpoenaed the New Orleans Saints to obtain documents related to how the Archdiocese compiled the Pedophile List; on February, 5, 2020, Doe subpoenaed Archbishop Aymond's cell phone records to obtain documents related to how the Archdiocese handles sex abuse allegations; on February 7, 2020, Doe subpoenaed the Benson Charitable Foundation to determine its relationship in developing the Pedophile List and funding sex abuse settlements; on March 10, 2020, Doe subpoenaed Notre Dame Seminary to obtain documents related to sexual abuse; on March 10, 2020, Doe subpoenaed St. Francis, St. Theresa, St. Anthony, St. Joseph's, and St. Anthony of Padua to obtain documents related to Hecker's prolific history of sexual abuse. *See Subpoenas* attached, *in globo*, as Exhibit "15".

14. Depositions had already been taken. Doe took the deposition of the Archdiocese's corporate representatives as it related to physical and electronic record keeping. *See Depositions of Emilie Leumas and Justin Gibson*, attached as Exhibits "16" and "17", respectively. These witnesses identified the locations of documents related to sexual abuse claims, as well as the separate secret files of the Archbishop and Vicar Generals.

15. Archbishop Aymond's deposition was scheduled for May 28, 2020. The Archbishop's Notice of Deposition was the result of <u>more than six months</u> of emails, phone calls, court appearances, and Rule 10.1 conferences (the state court equivalent to a meet and confer under L.R. 37.1) with Archdiocese counsel. The Archdiocese repeatedly delayed scheduling his

6

deposition until the Archdiocese finally provided the deposition date of May 28, 2020. Archdiocese counsel provided the May 28, 2020 deposition date to Plaintiff on March 24, 2020.

16. More depositions had been requested. Doe requested the depositions of the members of the Internal Review Board who reviewed at least one abuse allegation concerning Hecker. Those people are Lynette S. Causey, Joy D. Osofsky, Dorothy S. Randolph, Deregal Fay Burbank, Elmo J. Cerise, J. Garic Schoen, and Rhesa McDonald. *See 11/20/19 EMAIL from Gisleson to Tillery*, at 1, attached as Exhibit "18". At least one member has since passed away. It is believed that at least one other is 70 years of age or older. Doe also requested the deposition of Fr. Gerald Seiler.

17. On February 28, 2020, Doe filed a Witness List in preparation of the Prescription Trial identifying numerous fact witnesses to testify as to the Archdiocese's and Archbishop's conduct. *Prescription Trial Witness* List, attached as Exhibit "19". Notable witnesses on that list included Archbishop Aymond, Archbishop Emeritus Hughes, Rev. Patrick Williams, Sister Mary Wheelahan, Sister Carmelita Centanni, Fr. Gerald Seiler, Deacon Wil Robichaux, Fr. Allen Roy, Fr. Francis Berner, Fr. Joseph Benson, Fr. Raul Lobo, Fr. Tony White, Msgr. Thomas Glasgow, and Msgr. Terry Becker. Doe requested deposition dates for all Archdiocese witnesses. *03/05/2020 Email from Gisleson to Lowenthal,* at 1-2, attached as Exhibit "20". A number of these witnesses have either passed away or are 70 years of age or older, including Aymond and Hughes.

18. On May 1, 2020, the Archdiocese filed for bankruptcy. *Notice of Removal*, attached as Exhibit "21". On the same day, the Archdiocese filed a Notice of Removal of this suit from state court to the Eastern District of Louisiana. *Id.* The Archdiocese based removal on solely under 28 U.S.C. §§ 1334 and 1452(a). *Id.* The removal was allotted to Judge Greg G. Guidry and

became Case Number 20-cv-1321. The Archdiocese has not requested, nor has the Clerk's Office effectuated, a reference of bankruptcy to this Court.

I. **THE STAY SHOULD BE LIFTED IN THIS NON-CORE PROCEEDING OF A PERSONAL INJURY LAWSUIT FILED BEFORE THE BANKRUPTCY IN WHICH THE DISTRICT COURT REMOVED THE BANKRUPTCY REFERENCE.**

19. This case is a non-core proceeding that is subject to the automatic stay provided by 11 U.S.C. § 362(a)(1). 11 U.S.C. § 362 ("[A] petition filed under . . . this title . . . operates as a stay, applicable to all entities, of . . . the commencement or continuation . . . of a judicial . . . action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title.").

20. Judge Barbier has already held in another sexual abuse case implicated in this bankruptcy that a sexual abuse lawsuit is a non-core proceeding. *Order*, at 4 n.4, *James Doe v. Archdiocese of New Orleans*, 20-cv-01338, attached as Exhibit "22".

21. This automatic stay is not absolute, however. The automatic stay may be lifted upon a sufficient showing of "cause" by the movant. *See* 11 U.S.C. § 362(d)(1). The statute does not define "cause," leaving it up "to the judiciary to ascribe meaning to the term. What constitutes 'cause' is based on the totality of the circumstances in the particular case." *In re Robertson*, 244 B.R. 880, 882 (Bankr. N.D. Ga. 2000) (*citing Baldino v. Wilson (In re Wilson)*, 116 F.3d 87, 90 (3d Cir. 1997); *Trident Assoc. v. Metro. Life Ins. Co. (In re Trident Assoc.)*, 52 F.3d 127, 131 (6th Cir. 1995)).

A. **The circumstances of this sex abuse case provide sufficient "cause" to lift the stay.**

22. Overall, "[b]ankruptcy courts have broad discretion to fashion relief from the automatic stay." *In re Barnes*, 279 F. App'x 318, 319 (5th Cir. 2008). All in all, courts may consider an abundance of factors in determining whether "cause" exists. Some courts consider

factors such as (a) whether the bankruptcy was filed as a litigation tactic, (b) whether the case has a connection with or interferes with the bankruptcy case, (c) whether the bankruptcy estate is prejudiced by the stay being lifted, and (d) whether the creditor seeking to lift the stay intends to recover from non-estate property, such as insurance proceeds, for example. *See In re Fowler*, 259 B.R. 856, 868 (Bankr. E.D. Tex. 2001).

23. Some courts have adopted a three-prong test for determining whether cause exists to lift a stay on pending litigation. Those factors are:

> 1. whether any great prejudice to either the bankruptcy estate or the debtor will result from prosecution of the lawsuit;
>
> 2. whether the hardship to the non-debtor party by continuation of the automatic stay considerably outweighs the hardship to the debtor; and
>
> 3. whether the creditor has a probability of success on the merits of his case.

*In re Robertson*, 244 B.R. at 882.

24. Other courts have developed a 12-factor test.

1. Whether the relief will result in a partial or complete resolution of the issues;

2. The lack of any connection with or interference with the bankruptcy case;

3. Whether the foreign proceeding involves the debtor as a fiduciary;

4. Whether a specialized tribunal has been established to hear the particular cause of action and that tribunal has the expertise to hear such cases;

5. Whether the debtor's insurance carrier has assumed full financial responsibility for defending the litigation;

6. Whether the action essentially involves third parties and the debtor functions only as a bailee or conduit for the goods or proceeds in question;

7. Whether litigation in another forum would prejudice the interests of other creditors, the creditors' committee, and other interested parties;

8. Whether the judgment claim arising from the foreign action is subject to equitable subordination under Section 510(c);

9. Whether the movant's success in the foreign proceeding would result in a judicial lien avoidable by the debtor under Section 522(f);

10. The interest of judicial economy and the expeditious and economical determination of litigation for the parties;

11. Whether the foreign proceedings have progressed to the point where the parties are prepared for trial; and

12. The impact of the stay on the parties and the balance of the hurt.

*In re The Consol. FGH Liquidating Tr.*, 419 B.R. 636, 647–48 (Bankr. S.D. Miss. 2009)

25. One or many of these factors when put together can provide sufficient "cause" for a court, in its wide discretion, to lift a stay. Here, several factors weigh in favor of lifting the stay. Moreover, and alternatively, the stay can be lifted in such a way that this Court can ensure that there is no risk to the bankruptcy estate.

26. As Judge Barbier previously held in a similar suit, this is a non-core proceeding that was being litigated before the Archdiocese even filed for bankruptcy. *James Doe Order* at 4, n.4. Doe filed suit before the bankruptcy petition, and his claims are based entirely on state law. This action's relation to the bankruptcy is minimal and exists only inasmuch as the Debtor is a defendant in a state-law-based personal injury suit. This factor weighs in favor of lifting the stay. Moreover, the main issue in the case – whether the Archdiocese is liable to Doe for damages related to the sexual abuse he suffered – cannot even be decided by this Court.

27. This is a personal injury non-core action in which a jury trial was requested. This Court is without the authority or jurisdiction to establish liability in this case. *See* 28 U.S.C. § 157(b)(2)(B), (b)(5); *In re Southmark*, 163 F.3d 925, 930 (5th Cir. 1999) (finding that non-core bankruptcy proceedings are those which do not involve a substantive Title 11 right and/or can arise outside of the context of a bankruptcy); *In re Babcock & Wilcox Co.*, No. 01-1187, 2001 WL

1018366, at *4 (E.D. La. 2001) (finding that bankruptcy courts in this district may not preside over jury trials). Put another way, the effect of a stay only delays the inevitable day when *some* court, whether it is the District Court or the Louisiana state court, must determine liability. This weighs in favor of lifting the stay. This also applies to factor number ten in the above list. Lifting the stay and permitting the parties to proceed on issues of liability would expedite the issues between the Debtor and Movant in this case.

28. In that same vein, one of the factors courts rely on to determine whether to lift a stay is whether a special tribunal exists to hear this type of case. Here, either a judge in the Eastern District or Orleans Parish Civil District Court is available to determine issues of Louisiana state law, and decidedly has the expertise to adjudicate this case and its issues. Both the Eastern District and Orleans Parish Civil District Court have the procedural rules available to them should the courts decide to transfer and consolidate. Local Rule 9.3 of the Orleans Parish Civil District Court states:

> To facilitate the fair and expeditious resolution of cases, it is the policy of the court to transfer to the lower numbered suit and consolidate for trial those cases in which such consolidation is appropriate. The transfer and consolidation shall be by order of the judge to whom the case is being transferred, after contradictory hearing with all parties in each case, or with their written approval.

29. So, not only does the state court have the legal expertise to decide these issues, it also has the procedural ability to unify this and similar cases to expedite pretrial proceedings and rulings, which would lead to a more efficient resolution of the cases against the Debtor, and a more efficient resolution of the bankruptcy itself. Put simply, litigation of these issues in another forum could result in streamlined and efficient proceedings for multiple creditors.

30. Whether insurance provides coverage is moot for purposes of this motion. Doe stipulates that he will not execute any judgment against Debtor (for insurance or otherwise) until the bankruptcy concludes or the Bankruptcy Court approves.

31. Doe himself stands to suffer significant prejudice if this case continues to be stayed. These events occurred years ago, and crucial witnesses and one defendant are over the age of 70. Doe deserves a chance to confront those who are responsible. *Cf. In re Honosky*, 6 B.R. 667, 669 (Bankr. S.D.W. Va. 1980) ("Lack of adequate protection and lack of equity are not the sole grounds for relief from the stay. . . . Where the claim is one covered by insurance or indemnity, continuation of the (civil) action should be permitted since hardship to the debtor is likely to be outweighed by hardship to the plaintiff.") (*quoting* 2 Collier on Bankruptcy, § 362.07(3) (15th ed. 1979). The longer this case is stayed, the foggier memories may become, and the more likely it is that one or more witnesses or defendants dies or becomes infirm before a trial could occur.

32. Doe alleges that Fr. Hecker sexually assaulted him when he was a child and that these assaults were facilitated by the Archdiocese's behavior. Hecker is 88 years old, having been born on September 14, 1931. And since the bankruptcy was filed, George Brignac, one of the most prolific Archdiocesan pedophiles, has died. Even Archbishop Aymond is 70, having been born on November 2, 1949. At least one member of the Internal Review Board is believed to be 70 years of age or older. It is likely there are other important witnesses also in this age group both under the Archdiocese's control and as third-party witnesses.

33. The Archbishop is a crucial witness in each of these sex abuse cases. Archbishop Aymond is the sole person making the final decision about which priests to place, not place, or remove from the Pedophile List and is a fact witness in each of the abuse cases. He possesses first-hand knowledge of what the Archdiocese knew, when it knew it, and what it did with that

knowledge. As the Vicar General from 1996 to 2000, Archbishop Aymond was uniquely positioned to have been the designated person within the Archdiocese to "handle" sexual abuse allegations. From 1986-2000, Archbishop Aymond served as resident-rector of the Notre Dame Seminary – the site where numerous abuses occurred. As Archbishop, Aymond maintains secret files of abuse allegations in his office and maintains direct access to the priest personnel files stored in a vault.

34. Doe could be robbed of the opportunity to confront Hecker, the Archbishop who knew of this pedophile for so long but did nothing until it was too late, any Internal Review Board members who reviewed Hecker abuse allegations, and any other older witness. At oral argument in *James Doe*, Judge Barbier agreed that this is a "legitimate concern":

> Has there been a request by the plaintiffs, or any discussion otherwise, about allowing the plaintiffs to take at least some limited discovery -- because one of their main concerns is that you've got the alleged abusers are dying, every day, so to speak, in these cases, and I think that's a legitimate concern.

*James Doe Transcript 7/29/2020 Oral Argument*, at 47 (emphasis supplied), attached as Exhibit "23".

35. Moreover, the Archdiocese's estate will not be depleted and other creditors will not be prejudiced if the stay is lifted. The Archdiocese maintains insurance that reimburses it for the costs of defending sex abuse cases. "We expect some of it to be reimbursed, but reimbursement had been slow and uncertain, which makes this a larger strain on our cash flow." *Oral Argument Transcript Motion to Dismiss*, at 90, attached as Exhibit "24". *See also Jeffrey Entwistle Deposition*, at 42-43, attached as Exhibit "25" (testifying that the Archdiocese received reimbursements for litigation expenses for defending sexual assault lawsuits). As a result, this case can proceed without risk to other creditors.

36. Allowing Doe to proceed will also provide guidance to the Bankruptcy Court on the important issues of prescription and valuation. Discovery, motion practice, and trial will provide a road-map for whether and to what extent prescription should be used to determine value of these cases. A trial judgment, while not enforced without Bankruptcy Court approval, will assist this Court to determine how the emotional and psychological toll of childhood sexual assault impacts victims' entire lives.

37. In an earlier hearing, when this Court refused to allow documents from J.W. Doe to be admitted, much less reviewed, this Court unmistakably decided that it would not revisit any order issued by the state court in J.W. Doe. *07/16/2020 Hearing Transcript*, at 36, attached as Exhibit "26".

38. Overall, these many factors weigh in favor of lifting the stay in this case. On their own, they should form sufficient "cause". In the alternative, however, it is possible for this Court to fashion its order lifting the stay such that only certain issues can be tried in another forum. In the alternative of, and in addition to, the above argument, Doe suggests that there is one overarching factor that should lead this Court to lifting the stay in a more limited fashion: this Court can lift the stay in such a way that the trial on the merits of this case can proceed without any risk to the bankruptcy estate.

**B.   The stay should be lifted when there is no risk to the bankruptcy estate.**

39. Several courts all over the country have confronted issues with pre-petition litigation that has been stayed due to a party filing bankruptcy. In many of these cases, one party moves to lift the stay to allow litigation to proceed. Particularly in non-core proceedings, courts have fashioned a remedy to allow the litigation to proceed without endangering the bankruptcy estate: they simply issue an order lifting the stay with instructions to the creditor that, if they prevail

on liability issues in the other forum, they must return to the bankruptcy court for disbursement as any creditor would.

> A number of courts have addressed this circumstance and come up with the same solution: permit the liability and damages issues to be determined either in the state court or the U.S. district court, and then have the parties return to the bankruptcy court as needed for an adjudication of the dischargeability issue. *E.g., Doe v. Martinez (In re Martinez),* 2010 WL 3075282 (D.N.M.) at *3 (district court withdraws reference to bankruptcy court and then stays action to permit state court to adjudicate liability and damages on personal injury claims, with matter later to be referred back to the bankruptcy court for dischargeability adjudication); *In re Nifong,* 2008 WL 2203149 (Bankr.M.D.N.C.) at *4 (stay modified to permit adjudication of Duke University lacrosse player's personal injury claims against former prosecutor in U.S. district court; dischargeability adversary proceeding stayed); *Tidwell v. Smith (In re Smith),* 379 B.R. 315, 330–31 (Bankr.N.D.Ill.2007) (plaintiffs to prosecute sexual assault claims in state court and return to bankruptcy court for adjudication of dischargeability issue); *Rizzo v. Passialis (In re Passialis),* 292 B.R. 346, 348 (Bankr.N.D.Ill.2003) (in dischargeability action, plaintiff permitted to move to withdraw the reference so district court could adjudicate slander claim); *Roberts v. Goidel (In re Goidel),* 150 B.R. 885, 888 (Bankr.S.D.N.Y.1993) (in dischargeability action, bankruptcy court abstained until state court adjudicated defamation action). Therefore this Court will modify the automatic stay so that the parties can complete the adjudication of the liability and damages issues.

*In re Chacon*, 438 B.R. 725, 736–37 (Bankr. D.N.M. 2010). *See also Prince v. CMS Wireless LLC*, 2012 WL 1015001, at *4 (E.D. Tex. 2012) ("[T]he bankruptcy court's prohibition on collecting any judgment outside the bankruptcy court also ensures that lifting the stay for this purpose will not interfere with the bankruptcy proceeding or the bankruptcy estate. Thus, the court finds that the bankruptcy court did not abuse its discretion in lifting the stay."); *In re Arnott*, 512 B.R. 744, 755 (Bankr. S.D.N.Y. 2014) ("This is the system established by Congress in 28 U.S.C. § 157(b)(5). Under this system, the merits of the personal injury tort claim should be adjudicated first, since proof that the debtor intentionally and maliciously injured the movant by illegally discriminating against her necessitates proving the underlying discrimination allegations, which the bankruptcy court lacks jurisdiction to hear.") (quotation omitted).

40. Most importantly, this is how it appears to be done in the Eastern District of Louisiana. In *In re Wallace, Rush, Schmidt, Inc.*, 2018 WL 3954184, *1 (Bankr. E.D. La. 2018), the debtor had several state tort claims against it. This Court stated that "its general practice in these types of cases" was to lift the stay "to allow litigation to proceed to judgment in state court, with the claimants then directed to return to this court in the even they were successful in obtaining a judgment against the debtor." *Id.*

41. This is what Doe requests.

**II. Alternatively, the Stay Should Be Partially Lifted to Allow For Written Discovery and Depositions of Hecker, Aymond, and Any Other Witness 70 Years of Age Or Older.**

42. If this Court decides that the stay should not be fully lifted (with the stipulation of not enforcing any judgment), then Doe respectfully requests that the stay should be partially lifted to allow for the depositions of Hecker, Aymond, and any other witnesses 70 years of age or older as well as any written discovery needed to fully take these depositions.

43. For all of the reasons previously stated, Doe will be gravely prejudiced in this litigation and personally if this limited discovery is not allowed to proceed. "Bankruptcy courts have broad discretion to fashion relief from the automatic stay." *In re Barnes*, 279 F. App'x at 319.

44. The statute itself contemplates that the bankruptcy court has discretion to craft very flexible relief: "On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay. . . ." 11 U.S.C. § 362 (emphasis added). "[S]ection 362 gives the bankruptcy court wide latitude in crafting relief from the automatic stay." *In re Delaney-Morin*, 304 B.R. 365, 369 (B.A.P. 9th Cir. 2003); *see also In re Xenon Anesthesia of Tex., PLLC*, 510 B.R.

16

106, 112 (Bankr. S.D. Tex. 2014) ("The Bankruptcy Code gives the court broad discretion to provide appropriate relief from the automatic stay as may fit the facts of a particular case."); *In re Mirant Corp.*, 440 F.3d 238, 251-52 (5th Cir. 2006) ("[T]he bankruptcy court's discretion to grant a modification or lift of the automatic stay is broad.").

45. Put succinctly, "bankruptcy courts have the plastic powers to modify or condition an automatic stay so as to fashion the appropriate scope of relief." *In re Shared Tech. Cellular, Inc.*, 281 B.R. 804, 808 (Bankr. D. Conn. 2002) (*quoting Eastern Refra. Co. Inc. v. Forty Eight Insul. Inc.*, 157 F.3d 169, 172 (2d Cir. 1998)). This includes modifying any stay such that even limited discovery can take place.

## CONCLUSION

46. For the above and foregoing reasons, J.W. Doe respectfully requests that this Court lift the stay in *Doe v. Archdiocese of New Orleans, et al.*, No. 2:20-cv-01338. Doe stipulates that he will not enforce any judgment (including against insurance) without first obtaining approval from the Bankruptcy Court. Alternatively, Doe respectfully requests a limited lift of the stay to take focused written discovery and depositions of a defendant and any witnesses 70 years of age and older.

Respectfully submitted,

/s Soren Gisleson
SOREN E. GISLESON La Bar No. 26302
HERMAN, HERMAN & KATZ
820 O'Keefe Avenue
New Orleans, Louisiana 70113
Tel: (504) 581-4892
Fax: (504) 561-6024
Email: sgisleson@hhklawfirm.com

17

>RICHARD C. TRAHANT (# 22653)
>ATTORNEY AT LAW
>2908 Hessmer Avenue
>Metairie, LA 70002
>Telephone: (504) 780-9891
>FAX: (504) 780-9891
>Email: trahant@trahantlawoffice.com
>
>-AND-
>
>JOHN H. DENENEA, JR. (#18861)
>SHEARMAN~DENENEA, L.L.C.
>4240 Canal Street
>New Orleans, LA 70119
>Telephone: (504) 304-4582
>FAX: (504) 304-4587
>jdenenea@midcitylaw.com
>
>*Attorneys for J.W. Doe*

## CERTIFICATE OF SERVICE

I hereby caused a copy of the foregoing *Motion* to be served on September 1, 2020 upon all parties by electronic case filing for those parties receiving notice via the Court's Electronic Case Filing system, and on all other parties requiring service under the Court's *Ex Parte Order Authorizing the Debtor to Limit Notice and Establishing Notice Procedures* through the Master Service List via first-class United States mail, postage prepaid, to be sent on September 1, 2020.

S/Soren E. Gisleson