# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: | § | Case No. 20-10846 |
| | § | |
| THE ROMAN CATHOLIC CHURCH | § | Section "A" |
| OF THE ARCHDIOCESE OF NEW | § | |
| ORLEANS | § | Chapter 11 |
| | § | |
| Debtor.[1] | § | |
| | § | |

---

**SUMMARY COVER SHEET TO FIRST INTERIM APPLICATION FOR
ALLOWANCE AND PAYMENT OF COMPENSATION AND REIMBURSEMENT
OF EXPENSES OF PACHULSKI STANG ZIEHL & JONES LLP AS
CO-COUNSEL FOR THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS
FOR THE PERIOD FROM MAY 22, 2020 THROUGH SEPTEMBER 30, 2020**

| | | | |
|---|---|---|---|
| **Name of Applicant:** | | Pachulski Stang Ziehl & Jones LLP | |
| **Applicant's Professional Role in Case** | | Co-Counsel to the Official Committee of Unsecured Creditors | |
| **Date Order of Employment Signed** | | Effective May 22, 2020  pursuant to Order dated July 17, 2020 [Docket No. 257] | |
| | | **Beginning of Period** | **End of Period** |
| **Time period covered by this Application:** | | 05/22/2020 | 09/30/2020 |
| **Time period(s) covered by prior Applications:** | | N/A | N/A |
| **Total amounts awarded in all prior Applications:** | | N/A | |
| **Total fees requested in this Application:** | | | $900,175.50 |

---

[1] The last four digits of the Debtor's federal tax identification number are 8966. The Debtor's principal place of business is located at 7887 Walmsley Ave., New Orleans, LA 70125.

1

| | |
|---|---|
| **Total professional fees requested in this Application[2]:** | $846,992.50 |
| **Total actual professional hours covered by this Application:** | 1,210.30 |
| **Average hourly rate for professionals:** | $699.82 |
| **Total paraprofessional fees requested in this Application:** | $68,123.00 |
| **Total actual paraprofessionals hours covered by this Application** | 159.80 |
| **Average hourly rate for paraprofessionals:** | $426.30 |
| **Reimbursable expenses sought in this Application:** | $6,859.09 |

PSZJ professionals who rendered services for the Official Committee of Unsecured

Creditors (the "Committee") in this Chapter 11 case concerning the above captioned debtor and

debtor-in-possession (the "Debtor") during this Application Period are listed below.

## SUMMARY OF HOURS BILLED BY PROFESSIONALS AND PARAPROFESSIONALS
## MAY 22, 2020 THROUGH SEPTEMBER 30, 2020

| NAME OF PROFESSIONAL | TITLE | YEAR OF ADMISSION | YEAR OF PARTNER-SHIP | HOURLY RATE | TOTAL HOURS BILLED | TOTAL COMPENSATION |
|---|---|---|---|---|---|---|
| James I. Stang | Founding Partner | Member of CA Bar since 1980 | | $700.00 | 203.40 | $142,380.00 |
| Linda F. Cantor | Partner | Member of CA Bar since 1991; Member of IL Bar since 1988 | 1994 | $700.00 | 558.40 | $390,930.00 |
| Henry C. Kevane | Partner | Member of CA Bar since 1986 | 1997 | $700.00 | 3.40 | $2,380.00 |
| Harry D. Hochman | Of Counsel | Member of CA Bar since 1987 | N/A | $700.00 | 29.40 | $20,580.00 |

---

[2] This amount is subject to adjustment, as set forth below.

2

| Iain A. W. Nasatir | Partner | Member of NY Bar since 1983; Member of CA Bar since 1990 | 1999 | $700.00 | 13.40 | $9,380.00 |
|---|---|---|---|---|---|---|
| John A. Morris | Partner | Member of NY Bar since 1991 | 2008 | $700.00 | 99.00 | $69,300.00 |
| Joshua M. Fried | Partner | Member of CA Bar since 1995; Member of NY Bar since 1999 | 2006 | $700.00 | 72.50 | $50,750.00 |
| Kenneth H. Brown | Partner | Member of CA Bar since 1981 | 2001 | $700.00 | 6.30 | $4,410.00 |
| Gillian N. Brown | Of Counsel | Member of CA Bar since 1999; Member of Washington D.C. Bar since 2008; Member of NY Bar since 2010 | N/A | $700.00 | 183.00 | $128,100.00 |
| James K. T. Hunter | Of Counsel | Member of CA Bar since 1976 | N/A | $700.00 | 8.30 | $5,810.00 |
| John W. Lucas | Partner | Member of CA Bar since 2010 | 2014 | $700.00 | .70 | $490.00 |
| Gina F. Brandt | Of Counsel | Member of CA Bar since 1976 | N/A | $700.00 | 19.90 | $13,930.00 |
| Maxim B. Litvak | Partner | Member of CA Bar since 2001 | 2004 | $700.00 | .50 | $350.00 |
| Cia H. Mackle | Of Counsel | Member of FL Bar since 2006 | N/A | $675.00 | 9.60 | $6,502.50 |

3

| Leslie A. Forrester | Law Library Director | N/A | N/A | 450.00 | 9.40 | $4,230.00 |
|---|---|---|---|---|---|---|
| Beth D. Dassa | Paralegal | N/A | N/A | $425.00 | 49.80 | $21,165.00 |
| La Asia S. Canty | Paralegal | N/A | N/A | $425.00 | 75.60 | $32,130.00 |
| Nancy P.F. Lockwood | Paralegal | N/A | N/A | $425.00 | 24.10 | $10,242.50 |
| MDJ | Case Assistant | N/A | N/A | $395.00 | .90 | $355.50 |
| **Total** | | | | | **1,367.60** | **$913,365.50** |
| **Voluntary Adjustment Agreed Upon With UST** | | | | | | **<$12,500>** |
| **Accounting Adjustment** | | | | | | **<$690.00>** |
| **Total fees requested in this Application:** | | | | | | **$900,175.50** |

4

## COMPENSATION BY CATEGORY
## MAY 22, 2020 THROUGH SEPTEMBER 30, 2020

| Code | Description | Hours | Amount |
|---|---|---|---|
| AA | Asset Analysis/Recovery | 18.10 | $2,520.00 |
| AD | Asset Disposition | 3.40 | $2,380.00 |
| BL | Bankruptcy Litigation | 555.90 | $366,960.00 |
| CA | Case Administration | 34.50 | $18,155.00 |
| CO | Claims Administration/Objections | 413.10 | $280,820.50 |
| EB | Employee Benefit/Pension | 11.00 | $7,700.00 |
| FE | Fee/Employment Application | 91.20 | 56,400.00 |
| FN | Financing | 42.60 | $29,820.00 |
| GC | General Creditors Comm. | 173.30 | $121,310.00 |
| OP | Operations | 16.70 | $11,690.00 |
| SL | Stay Litigation | 7.80 | $5,460.00 |
|  | **TOTAL** | **1,367.50** | **$913,365.50** |
| Voluntary Adjustment Agreed Upon With UST |  |  | <$12,500> |
| Accounting Adjustment |  |  | <$690.00> |
| Total Fees Requested In This Application: |  |  | $900,175.50 |

The total amount of expenses by expense type for PSZJ during the Application Period is listed below.

## EXPENSES BY CATEGORY
## MAY 22, 2020 THROUGH SEPTEMBER 30, 2020

| Expense Category | Amount |
|---|---|
| Bloomberg | $1,681.60 |
| Conference Call | $159.33 |
| Federal Express | $130.76 |
| Filing Fee | $44.00 |
| Lexis/Nexis-Legal Research | $338.33 |
| Legal Vision Attorney Messenger Service | $23.00 |
| Miscellaneous | $3.00 |
| Outside Services | $123.00 |
| Pacer – Court Research | $351.80 |
| Postage | $52.70 |
| Reproduction Expense | $417.80 |
| Reproduction/Scan Copy | $448.20 |
| Research | $1,361.94 |
| Transcript | $1,723.63 |
| **TOTAL** | **$6,859.09** |

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| IN RE: | § | Case No. 20-10846 |
| | § | |
| THE ROMAN CATHOLIC CHURCH | § | Section "A" |
| OF THE ARCHDIOCESE OF NEW | § | |
| ORLEANS | § | Chapter 11 |
| | § | |
| Debtor.[3] | § | |
| | § | |

---

**FIRST INTERIM APPLICATION FOR**
**ALLOWANCE AND PAYMENT OF COMPENSATION AND REIMBURSEMENT**
**OF EXPENSES OF PACHULSKI STANG ZIEHL & JONES LLP AS**
**CO-COUNSEL FOR THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS**
**FOR THE PERIOD FROM MAY 22, 2020 THROUGH SEPTEMBER 30, 2020**

> A HEARING WILL BE CONDUCTED ON THIS MATTER ON DECEMBER 17, 2020, AT 1:30 P.M. BY TELEPHONE THROUGH THE DIAL-IN FOR SECTION A 1-888-684-8852; CONFERENCE CODE 9318283. IF YOU OBJECT TO THE RELIEF REQUESTED IN THIS PLEADING, YOU MUST RESPOND IN WRITING. UNLESS DIRECTED OTHERWISE BY THE COURT, YOU MUST FILE YOUR RESPONSE WITH THE CLERK OF THE BANKRUPTCY COURT NO LATER THAN SEVEN (7) DAYS BEFORE THE HEARING DATE. YOU MUST SERVE A COPY OF YOUR RESPONSE ON THE PERSON WHO SENT YOU THE NOTICE; OTHERWISE, THE COURT MAY TREAT THE PLEADING AS UNOPPOSED AND GRANT THE RELIEF REQUESTED.

Pachulski Stang Ziehl & Jones LLP ("PSZ&J" or "PSZJ" or the "Firm"), co-counsel for

the Official Committee of Unsecured Creditors (the "Committee") of The Roman Catholic

Church of the Archdiocese of New Orleans (the "Debtor"), hereby submits its *First Interim*

*Application for Allowance and Payment of Compensation and Reimbursement of Expenses of*

*Pachulski Stang Ziehl & Jones LLP, as Co-Counsel for the Official Committee of Unsecured*

---

[3] The last four digits of the Debtor's federal tax identification number are 8966. The Debtor's principal place of business is located at 7887 Walmsley Ave., New Orleans, LA 70125.

7

*Creditors for the Period From May 22, 2020 Through September 30, 2020* (the "<u>Application</u>").

In support of the Application, PSZ&J respectfully represents as follows:

## I.    INTRODUCTION

In this Application, the Firm seeks interim allowance and payment, to the extent unpaid, of the amounts set forth below for work performed between May 22, 2020 through September 30, 2020.

| Period Covered | Fees (at Standard Rates) | REQUESTED | | FEES (AFTER ALL REDUCTIONS) | 80% FEES; 100% EXPENSES | | |
| --- | --- | --- | --- | --- | --- | --- | --- |
| | | (Reductions from Standard Rates) | (Further Voluntary Reductions) | Fees | 80% Fees | 100% Expenses | 20% Amount of Holdback |
| 5/22/2020 - 6/30/2020 | $341,188.50 | $113,758.50 | $12,500.00[4] | $228,160.00 | $182,528.00 | $984.42 | $47,143.00 |
| 7/1/2020 - 7/31/2020 | $217,595.00 | $68,095.50 | $7,882.00 | $141,617.50 | $113,294.00 | $548.61 | $28,323.50 |
| 8/1/2020 - 8/31/2020) | $465,701.00 | $120,056.00 | $4,100.00 | $341,545.00 | $273,236.00 | $2,617.80 | $68,309.00 |
| 9/1/2020 - 9/30/2020) | $281,843.00 | $86,970.00 | $4,270.00 | $190,603.00 | $152,482.40 | $2,708.26 | $38,120.60 |
| **TOTAL** | **$1,336,500.10** | **$388,880.00** | **$45,694.60** | **$901,925.50** | **$721,540.40** | **$6,859.09** | **$181,896.10** |
| **TOTAL PAID** | | | | | **$306,811.00[5]** | **$1,533.03** | **N/A** |
| **AMOUNT UNPAID AND OWING** | | | | | **$414,729.40** | **$5,326.06** | |

---

[4] In addition to the voluntary reductions set forth at the time of the fee statement, pursuant to the request of the Office of the United States Trustee (the "<u>OUST</u>"), PSZJ agreed to an additional discount of $12,500.00.

[5] The amount paid includes an overpayment of $10,989.00 in fees due to a calculating error, to be address by the Firm with the Debtor in the immediate future.

## II.  JURISDICTION AND VENUE

1.  The Court has jurisdiction to consider this Application pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b).

2.  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3.  The bases for the relief requested herein are sections 330 and 331 of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "Bankruptcy Code"), Rules 2014 and 2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), Rules 2014-1 and 2016-1 of the Bankruptcy Local Rules for the Eastern District of Louisiana (the "Local Rules"), Section XIII(B) of the Court's *December 4, 2019 General Order Regarding Procedures of Complex Chapter 11 Cases* (the "Complex Case Order"), and the United States Trustee *Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses by Attorneys in Larger Chapter 11 Cases* (the "UST Guidelines").

## III.  BACKGROUND

### A.  Introduction

4.  On May 1, 2020 (the "Petition Date"), The Roman Catholic Church of the Archdiocese of New Orleans (the "Archdiocese") filed a voluntary petition for relief under the Bankruptcy Code.

5.  The Debtor remains in possession of its property and is managing its business as a debtor in possession pursuant to §§ 1107(a) and 1108 of the Bankruptcy Code, 11 U.S.C. § 101 *et. seq.*

6.  On May 20, 2020, the Office of the United States Trustee for Region 5 (the "U.S. Trustee") appointed the Committee pursuant to section 1102(a)(1) of the Bankruptcy Code [Docket #94].

9

7.      On May 22, 2020, the Committee conducted its first meeting and at that meeting unanimously selected PSZJ and Locke Lord LLP ("Locke Lord") to serve as co-counsel.

**B.      Employment of the Firm**

8.      On June 22, 2020, the Committee filed an *Application to Employ Pachulski Stang Ziehl & Jones LLP as Co-Counsel* [Docket No. 181] (the "Retention Application"). As more fully described in the Retention Application, the Committee retained the Firm to render legal services to the Committee in this Bankruptcy Case.

9.      On July 17, 2020, this Court entered the *Order Authorizing the Employment and Retention of Pachulski Stang Ziehl & Jones LLP as Co-Counsel for the Official Committee of Unsecured Creditors* [Docket No. 257] (the "Retention Order"). The Retention Order approved the Firm's retention as the Committee's co-counsel in this Bankruptcy Case.

## IV.      WORK PERFORMED AND RESULTS OBTAINED / EXTRAORDINARY CIRCUMSTANCES

10.      The Firm provided, and continues to provide, extensive legal services to the Committee in this Bankruptcy Case. The Firm has attached to this Application copies of the Firm's Monthly Fee Statements to which are appended Invoices (the "Invoices") setting forth the time-keeping entries generated by those Firm personnel who worked on this matter during Application Period from May 22, 2020 through September 30, 2020.

11.      Although the Committee submits that this Chapter 11 case should be dismissed for the reasons submitted in its *Motion to Dismiss Chapter 11 Case* [Docket #203], notwithstanding that request (which is still pending), the Committee and its counsel have undertaken strenuous efforts to move this case forward towards a resolution of creditor claims, to achieve the goal of the most favorable resolution to unsecured creditors possible. The actions

10

undertaken include the following.

A.   **Negotiation of Claims Bar Date and Noticing Program**

12.   The Debtor filed a motion for a claims bar date with a completely unrealistic 60-day claims deadline, an unworkable claims form, and without any significant noticing program or noticing expert. Following the precedent of numerous other church diocese cases, the Committee located and retained noticing and claim experts, drafted and negotiated a completely different claims form, and formulated a comprehensive noticing program under the guidance of the noticing expert retained by the Committee.

13.   While the Committee endeavored to negotiate these matters, the Debtor persisted in resisting the Committee's efforts. The Committee retained experts because the Debtor refused to do so, and even then the Debtor contested the Committee's expert's advice and opinions, backtracked on matters that had been the subject of agreement and the matter devolved from what could have been a productive and consensual resolution of a case milestone into an unnecessarily contested and lengthy hearing (the longest hearing in the case to date). The end result was a more appropriate bar date order and deadline, claims form, and noticing program much more consistent with past practice in other cases, and tailored for the unique circumstances of this bankruptcy case, but this only came as the result of the tenacious efforts of the Committee.

B.   **Action to Move Forward Resolution of Claims and Plan Negotiations**

14.   The Committee recognizes that, if this case is not dismissed, that the most likely outcome and resolution of claims will come through a plan of reorganization. To that end, the Committee has worked to move this process forward, which begins with a comprehensive investigation and analysis of the Debtor's financial circumstances and structure, which is

11

necessary to inform negotiations concerning potential resolution of claims.[6]

15.     The Committee and its counsel has undertaken significant work to perform financial investigation, including through the analysis and review performed under the discovery performed in connection with the motion to dismiss (including expert review and five depositions), analysis of financial information provided by the Debtor, the Schedules and Statements of Financial Affairs, and testimony and questioning at the Section 341 examination. Investigation continues and the Committee is currently gathering additional information from the Debtor and its non-Debtor affiliates.

16.     In addition, the Committee has considered action in connection with the Debtor's unusual (and never explained) step of expending the significant estate resources to remove all (more than 30) pending state court abuse lawsuits to federal district court. The Committee and its counsel have been evaluating the potential impact on the bankruptcy process and plan negotiations. (In addition, the removal to federal court was discussed at length by the Debtor in connection with the motion to dismiss.) The Committee has researched and considered taking the same action as was taken by the official unsecured creditors' committee in the *Diocese of San Diego* case, in which that committee filed a detailed brief in support of remanding all of the removed abuse claims related to that Chapter 11 case given the state of negotiations in the case to resolve the plan treatment for all creditors and the potential impact on the unsecured creditor

---

[6] As discussed in more detail below, the Debtor has been slow to provide information and there has been an overall lack of transparency. To take just one example, the Debtor scheduled [See Docket #104] 211 separate real estate properties each with "undetermined" values. Through discovery requests, the Committee received appraisals for some properties but no comprehensive or further valuation information has been provided. The Debtor originally scheduled [See Docket #104] all or virtually all of its trade creditors as disputed, contingent, and unliquidated. (This was only corrected after the Committee protested.)

12

body.[7]

**C.** **Negotiated or Litigated Resolution of Various Other Motions and Requests for Relief**

17. Additional matters include:

- The extraordinary and unprecedented request by the Bond Trustee for payment of pre- and post-petition interest and attorney's fees, in advance of filing and confirmation of a plan. The Committee negotiated significant changes includes withdrawal of the request for payment of attorney's fees, and reservation of rights to protect the rights of the unsecured creditors in light of the uncertain outcome of this case.[8]

- Various "first day" motions and negotiating and resolving orders on same.

- Negotiation of a protective order concerning document production.

- Addressing motions to lift stay, motions to pay secured claims, and a motion (later withdrawn) to sell property under Section 363 of the Bankruptcy Code.

**D.** **Motion to Dismiss**

18. As the Court and parties are well aware, the Committee filed a motion to dismiss this case and the Committee believes that the Chapter 11 case cannot be maintained as a bad faith filing. The Committee and counsel engaged in expedited but extensive discovery including five depositions, expert analysis and review, and document discovery (reviewing more than 32,000 pages of material). The process was also instrumental as part of the financial investigation discussed above, which is a necessary step towards eventual resolution of this case,

---

[7] After the Committee began investigating this issue, a creditor who is not a member of the Committee (but who is represented by counsel who also represents Committee members) filed a motion to remand a district court suit. Because of the common interest between the Committee and this creditor (and so as to not impair the Committee's potential action on this issue), this matter was discussed in multiple meetings of the full Committee, and the Committee and counsel reviewed and commented on the briefing on this issue. The Committee reserves the right to take further action on this issue and investigation continues.

[8] The Committee was also forced to address the Bond Trustee's conflict of interest which resulted in its removal from the Committee. That matter is now the subject of a contested matter before the Court.

13

in the event that the case is not dismissed.

**E.    Contentious Nature of Case**

19.    This case has already been contentious, and in the Committee's view, unnecessarily so.  The Debtor has shown a manifest lack of transparency and has been largely unwilling to cooperate with the Committee's investigation and efforts to move the case forward.  The Debtor, in an apparent effort to stymie the Committee's access to information, has been slow to respond to information requests and has not responded at all to many requests.  (Some of the most basic information requested by the Committee has never been produced, including insurance policies, shared services agreements, banking and financial data, real estate valuation information, employee pension information and abuse claims information, despite numerous requests.)  Monthly financial information that was to be shared with the Committee's financial advisors has been redacted to such an extent that the information is practically unintelligible.  Almost all of the information that the Committee has been able to obtain from the Debtor in this Case has only been produced through contested discovery proceedings.

20.    Nevertheless, the Committee and counsel will continue to work in good faith to attempt to move this matter forward, and as necessary, will bring matters to the Court.  The Committee and its counsel are dedicated to resolving matters in the manner most beneficial to unsecured creditors as a whole.

**V.    NATURE AND EXTENT OF LEGAL SERVICES PROVIDED**

21.    This Application has been prepared in accordance with sections 330 and 331 of the Bankruptcy Code, Rules 2014 and 2016 of the Bankruptcy Rules, Rules 2014-1 and 2016-1 of the Local Rules, the UST Guidelines, and Section XIII(B) of the Court's *December 4, 2019*

14

*General Order Regarding Procedures for Complex Chapter 11 Cases* (the "Complex Case Order").

22.     On October 6, 2020, PSZ&J submitted its first monthly fee statement (the "First Monthly Fee Statement") covering the period from May 22, 2020 through June 30, 2020. PSZJ incurred fees at its standard rates of $341,188.50. After the reduction due to reduced rates in the amount of $113,758.50 and further voluntary reductions of $16,942.60, PSZJ total fees for the First Monthly Statement are in the amount of $240,660.00. Further, pursuant to an agreement with the Office of the United States Trustee ("OUST"), PSZJ further reduced its fees $12,500.00. Thus, in its First Monthly Fee Statement, PSZJ requested an interim allowance of reduced fees in the amount of $228,160.00, and further requested payment of 80% of such reduced fees in the amount of $182,528.00 and 100% of expenses in the amount of $984.42 for a total amount of $183,512.42. Attached hereto as **Exhibit A** is a true and correct copy of the First Monthly Fee Statement.

23.     On October 16, 2020, PSZ&J submitted its second monthly fee statement (the "Second Monthly Fee Statement") covering the period from July 1, 2020 through July 31, 2020. PSZJ incurred fees at its standard rates of $217,595.00. After the reduction due to reduced rates in the amount of $68,095.50 and further voluntary reductions of $7,882.00, PSZJ total fees for the Second Monthly Statement are in the amount of $141,617.50. Thus, in its Second Monthly Fee Statement, PSZJ requested an interim allowance of reduced fees in the amount of $141,617.50, and further requested payment of 80% of such reduced fees in the amount of $113,294 and 100% of expenses in the amount of $548.61 for a total amount of $142,166.11. Attached hereto as **Exhibit B** is a true and correct copy of the Second Monthly Fee Statement.

24.     PSZ&J has received payment on the First Monthly Fee Statement and Second Monthly Fee Statement in the total amount of $308,344.03, representing $306,811.00 in fees and $1,533.03 in expenses.[9]

25.     On November 24, 2020, PSZ&J submitted its third monthly fee statement (the "Third Monthly Fee Statement") covering the period from August 1, 2020 through August 31, 2020. PSZJ incurred fees at its standard rates of $465,701.00. After the reduction due to reduced rates and further voluntary reductions of $124,156, PSZJ total fees for the Third Monthly Statement are in the amount of $341,545.00. Thus, in its Third Monthly Fee Statement, PSZJ requested an interim allowance of reduced fees in the amount of $341,545.00 and further requested payment of 80% of such reduced fees in the amount of $273,236.00 and 100% of expenses in the amount of $2,617.80 for a total amount of $275,853.80. Attached hereto as **Exhibit C** is a true and correct copy of the Third Monthly Fee Statement.

26.     On November 24, 2020, PSZ&J submitted its fourth monthly fee statement (the "Fourth Monthly Fee Statement") covering the period from September 1, 2020 through September 30, 2020. PSZJ incurred fees at its standard rates of $281,854.00. After the reduction due to reduced rates and further voluntary reductions of $91,250.00, PSZJ total fees for the Fourth Monthly Statement are in the amount of $190,603.00. Thus, in its Fourth Monthly Fee Statement, PSZJ requested an interim allowance of reduced fees in the amount of $190,603.00 and further requested payment of 80% of such reduced fees in the amount of $152,482.40 and 100% of expenses in the amount of $2,708.26 for a total amount of $155,190.66. Attached hereto as **Exhibit D** is a true and correct copy of the Fourth Monthly Fee Statement.

---

[9] The amount paid includes an overpayment of $10,989.00 in fees due to a calculating error, to be address by the Firm with the Debtor in the immediate future.

27.     PSZ&J seeks interim allowance of fees for professional services rendered during the period from May 22, 2020 through September 30, 2020 (the "Application Period") in the amount of $900,175.50 and reimbursement of actual and necessary expenses incurred during the Application Period in the amount of $6,859.09 for a total allowance of $907,034.59, and requests payment of such fees and costs to the extent unpaid. During the Application Period, PSZ&J's attorneys and paraprofessionals expended a total of 1,367.50 hours for which compensation is requested.

28.     The fees charged by PSZ&J in these cases are billed in accordance with its billing rates and procedures set forth in the Retention Application.

29.     The standard hourly rates for the PSZJ attorneys working on this matter range from $925 to $1,195 per hour for partners, and $650 to $995 per hour for of counsel. The standard hourly rate for paraprofessionals range from $425 to $450 per hour. Notwithstanding the foregoing, if PSZJ cumulative fees exceed a blended rate of $700 per hour (for attorneys only), the Firm agreed to cap its fees to the extent the fees incurred under the standard hourly rates exceed a blended hourly rate of $700. Such fees are reasonable based on the customary compensation charged by comparably skilled practitioners in comparable non-bankruptcy cases in a competitive national legal market.

30.     Pursuant to the UST Guidelines, attached hereto as **Exhibit E** is a summary setting forth all professionals and paraprofessionals employed by PSZ&J who have performed services in this Chapter 11 Case during the Application Period, the capacities in which each such individual is employed by PSZ&J, the hourly billing rate charged by PSZ&J for services performed by such individual, and the aggregate number of hours expended and fees billed.

31.     The Firm provided, and continues to provide, extensive legal services to the

17

Committee in this Bankruptcy Case. The Firm has attached to this Application copies of the

Firm's Invoices (the "Invoices") setting forth the time-keeping entries generated by those Firm

personnel who worked on this matter during the Application Period from May 22, 2020 through

September 30, 2020.[10]

## VI.    SUMMARY OF LEGAL SERVICES RENDERED BY CATEGORY

32.    The services rendered by PSZ&J during the Application Period can be grouped

into the categories set forth below.  PSZ&J attempted to place the services provided in the

category that best relates to such services.  However, because certain services may relate to one

or more categories, services pertaining to one category may in fact be included in another

category.  These services performed, by categories, are generally described below; with a more

detailed identification of the actual services provided set forth on the attached Invoices, which

identify the attorneys and paraprofessionals who rendered services relating to each category,

along with the number of hours for each individual and the total compensation sought for each

category.

### A.    Asset Analysis/Recovery

33.    Time billed to this category related to work regarding asset analysis and recovery

issues.  During the Application Period, the Firm, among other things:  (1) reviewed and

analyzed ordinary course professionals and insider payment motions; (2) reviewed and analyzed

financial reports and reviewed and analyzed redaction issues; (3) performed work regarding a

document production request; (4) performed research regarding lien perfection issues; (5)

reviewed and analyzed issues regarding discovery of underlying medical records; (6) reviewed

---

[10] True and correct copies of the Invoices are appended to the Firm's monthly fee statements attached to the
Application as **Exhibits "A", "B", "C" and "D"** and are incorporated by reference herein.

18

and analyzed Parish Deposit Fund issues; (7) performed work regarding insurance document requests; (8) reviewed and analyzed CM coverage issues; and (9) corresponded and conferred regarding asset analysis and recovery issues.

34.      The Firm expended 18.10 hours of professional time on services in this category. The Firm's professional fees in this category total $12,670.00. The Firm's blended hourly rate for this category is $700.00/hour.

**B.      Asset Disposition**

35.      Time billed to this category related to work regarding sales and other asset disposition issues.  During the Application Period, the Firm, among other things:  (1) reviewed and analyzed lien avoidance issues; (2) reviewed and analyzed issues regarding an objection to private sale motion; (3) reviewed and analyzed a motion to sell 4119 St. Elizabeth; and (4) drafted an opposition to sale motion.

36.      The Firm expended 3.40 hours of professional time on services in this category. The Firm's professional fees in this category total $2,380.00. The Firm's blended hourly rate for this category is $700.00/hour.

**C.      Bankruptcy Litigation**

37.      Time billed to this category related to work regarding motions, adversary proceedings and other litigation matters in the Bankruptcy Court.  During the Application Period, the Firm, among other things:  (1) reviewed and analyzed issues regarding Second Day hearings; (2) performed research regarding removal and remand issues; (3) performed research regarding dismissal issues; (4) reviewed and analyzed First Day Motions regarding cash management and wage issues; (5) reviewed and analyzed solvency issues; (6) reviewed and analyzed case strategy and jurisdictional issues; (7) reviewed and analyzed issues regarding abstention in personal

19

injury matters; (8) performed work regarding a confidentiality order; (9) reviewed and analyzed issues regarding First Day motion responses; (10) performed work regarding objections to final orders on First Day pleadings; (11) reviewed and analyzed a utility motion and order; (12) reviewed and analyzed first day orders regarding cash management, Jones Walker retention and insurance issues; (13) reviewed and analyzed insurance coverage issues; (14) performed work regarding a brief in support of motion to remand; (15) performed work regarding a document production request, including a review of financial information, Schedules, Statements and financial filings; (16) reviewed and analyzed removed lawsuits; (17) reviewed and analyzed Catholic Mutual documents; (18) reviewed and analyzed a litigation motion; (19) reviewed and revised a document request in light of insurance issues; (20) reviewed and analyzed definitions needed for the document production request; (21) drafted, and reviewed and revised, a motion to dismiss; (22) performed work regarding a Bankruptcy Rule 2004 examination request; (23) reviewed and analyzed issues regarding a bar date motion; (24) performed work regarding contested bar date issues; (25) attended to document production requests related to the motion to dismiss and bar date issues; (26) performed work regarding interrogatories; (27) reviewed and analyzed, and performed research regarding, notice issues; (28) reviewed and analyzed a motion to strike and performed work regarding a response; (29) prepared for and attended a hearing on July 14, 2020 regarding sale and retention issues; (30) reviewed and analyzed discovery requests and a response to the Debtor's opposition to request to produce documents; (31) prepared for and attended a hearing on July 16, 2020 on retention issues, motion to strike and status conference on the dismissal motion; (32) performed work regarding a motion to expedite discovery; (33) reviewed and analyzed issues regarding noticing alternatives; (34) performed work regarding a notice of deposition of the Debtor; (35) performed work regarding an opposition to case transfer;

20

(36) prepared for and met with the Committee's subcommittee regarding bar date matters; (37) reviewed and analyzed confidentiality orders; (38) prepared for and participated in a telephonic meet and confer regarding discovery issues; (39) reviewed and analyzed issues regarding confessional privilege; (40) reviewed and analyzed issues regarding an opposition to notice for bar date; (41) reviewed and analyzed the Catholic Mutual opposition to motion to remand; (42) performed work regarding a revised confidentiality agreement; (43) performed work regarding a potential motion to compel; (44) reviewed and analyzed issues regarding a motion for a protective order and form of order; (45) performed work regarding a scheduling order; (46) reviewed and analyzed issues regarding the remand of personal injury cases and the removal of diocese cases to the Bankruptcy Court; (47) performed work regarding a response to motion for protective order; (48) reviewed and revised a notice for deposition on bar date notice issues; (49) reviewed and revised a reply to motion to remand personal injury action; (50) performed work regarding revisions to proposed protective order; (51) drafted evidentiary objections and motions to strike portions of declarations filed in support of the Debtor's Expedited Motion for Protective Order; (52) prepared for and attended a hearing on July 29, 2020 regarding remand and transfer motions; (53) prepared for and attended a hearing on July 30, 2020 regarding protective order and bar date document production issues; (54) reviewed and analyzed strategy for an evidentiary hearing and discovery issues; (55) reviewed and analyzed witness and exhibit lists and performed work regarding the division of labor and strategy related to the motion to dismiss and bar date hearings; (56) reviewed and analyzed the Debtor's document production and written discovery responses; (57) attended to trial preparation issues; (58) reviewed and analyzed evidentiary hearing strategy; (59) reviewed and analyzed issues regarding expert reports concerning solvency; (60) performed work regarding a supplemental brief in support of remand;

21

(61) reviewed and analyzed the Debtor's responses to discovery demands and motions to

compel; (62) prepared for and participated in a meet and confer telephonic conference on August

4, 2020 regarding discovery issues; (63) reviewed and analyzed documents produced by the

Debtors; (64) reviewed and analyzed issues regarding a rebuttal to Archdiocese's expert report;

(65) attended to issues regarding the Archdiocese not following up on meet and confer issues;

(66) attended to deposition noticing and scheduling issues; (67) reviewed and analyzed issues

regarding the Debtor's financial expert's report; (68) prepared a summary of documents

produced; (69) reviewed, analyzed and coded produced documents in connection with pending

depositions; (70) performed work regarding a chart of witness issues and strategy; (71) reviewed

and analyzed issues regarding an expert rebuttal report; (72) performed work regarding

deposition exhibit issues; (73) performed work regarding preparation for the depositions of Carr,

Entwistle, Zuniga and Riggs; (74) prepared for and attended a telephonic meet and confer on

August 10, 2020 regarding discovery issues; (75) performed work regarding summarizing

information produced in Archdiocese's documents for use in depositions; (76) performed work

regarding finalizing exhibits for use in the Carr and Entwisle depositions; (77) reviewed and

analyzed alienation of goods and ultra vires issues; (78) performed work regarding preparation

for the Carr and Entwistle depositions including retrieval of exhibits, pre-marking exhibits, and

coordination of logistics; (79) prepared for and attended the depositions of Carr and Entwisle on

August 12, 2020; (80) performed work regarding summarizing the Carr and Entwisle depositions

and reviewing and analyzing strategy going forward; (81) performed work regarding the

preparation of exhibits for the Zuniga deposition; (82) reviewed and analyzed expert witness

issues and documents regarding the motion to dismiss; (83) performed work regarding finalizing

deposition exhibits for the Zuniga deposition; (84) reviewed and analyzed an expert rebuttal

report and performed work regarding a notice of errata; (85) reviewed and analyzed documents in preparation for the Zuniga deposition; (86) performed work in preparation for the Zuniga deposition including retrieval of exhibits, pre-marking of exhibits and coordination of logistics; (87) prepared for and attended the deposition of Zuniga on August 14, 2020; (88) performed work regarding a list of documents requested at depositions with references to draft deposition transcript page and line cites; (89) reviewed and analyzed a protective order regarding sharing of information with Committee members and their counsel; (90) prepared for and attended a Court conference on August 14, 2020 regarding the bar date motion to compel and related scheduling matters; (91) attended to issues regarding the division of labor for remaining discovery, trial preparation and trial; (92) reviewed and analyzed issues regarding the CRI expert report; (93) reviewed and analyzed documents BRG relied upon in preparing an expert rebuttal report; (94) performed work regarding a statement concerning remote witnesses; (95) prepared for trial on the motion to dismiss, including labeling documents and retrieving and organizing necessary exhibits; (96) coordinated deposition exhibits for the deposition of Riggs; (97) reviewed and analyzed the Debtor's opposition to motion to dismiss and a potential motion in *limine*; (98) prepared for and attended the depositions of Riggs and Shields on August 17, 2020; (99) reviewed and analyzed issues regarding the use of deposition transcripts at the evidentiary hearing; (100) reviewed and analyzed issues regarding an exhibit list and evidentiary hearing procedures; (101) reviewed and analyzed a joint exhibit list and compared it to deposition exhibits, motion to dismiss exhibits and the Committee's draft exhibit list; (102) attended to issues regarding demonstrative exhibits for the evidentiary hearing; (103) reviewed and analyzed pleadings and deposition transcripts in preparation for the evidentiary hearing; (104) performed work regarding preparation of oral argument; (105) performed work regarding video depositions

23

for evidentiary hearing; (106) prepared for and attended an evidentiary hearing on August 20, 2020 on the motion to dismiss; (107) reviewed and analyzed issues regarding a post-hearing brief; (108) performed legal research for the post-hearing brief; (109) reviewed and analyzed hearing and deposition transcripts regarding the post-hearing brief; (110) prepared for and attended a hearing on August 28, 2002; (111) reviewed and compiled documents for Kinsella Media; (112) reviewed and analyzed a motion for approval of bond settlement; (113) reviewed and analyzed an order extending the time for J. Romero to file dischargeability complaint; (114) reviewed and analyzed a motion on indenture trustee settlement; (115) reviewed and analyzed issues regarding Schedules and Statements; (116) reviewed and analyzed standing issues; (117) reviewed and analyzed bond indenture disputes and potential discovery; and (118) corresponded and conferred regarding bankruptcy litigation issues.

38.     The Firm expended 555.90 hours of professional time on services in this category. The Firm's professional fees in this category total $366,960.00. The Firm's blended hourly rate for this category is $660.12/hour.

**D.     Case Administration**

39.     This category includes work related to administering the cases in an efficient manner. During the Application Period, the Firm, among other things: (1) performed work regarding a summary of First Day pleadings; (2) performed work regarding case strategy issues; (3) reviewed and analyzed case background issues; (4) performed work regarding meeting agenda; (5) maintained a work-in-progress memorandum; (6) reviewed and analyzed the case docket and drafted a summary of pending case issues and entered orders; (7) maintained a critical date memorandum; (8) reviewed and analyzed mediation issues; (9) reviewed and

24

analyzed by-law issues and noticing protocols and procedures; (10) attended to redaction issues; and (11) conferred and corresponded regarding case administration issues.

40.     The Firm expended 34.50 hours of professional time on services in this category. The Firm's professional fees in this category total 18,155.00. Therefore, the Firm's blended hourly rate for this category is $526.23/hour.

**E.     Claims Administration/Objection**

41.     This category includes work related to claims administration and claims objection issues. During the Application Period, the Firm, among other things: (1) reviewed and analyzed the Debtor's proposed bar date motion; (2) reviewed and analyzed proposed bar date notice issues; (3) reviewed and analyzed redaction issues; (4) performed work regarding comments to a proposed bar date motion, exhibits, notice and order; (5) attended to media issues regarding the bar date motion; (6) reviewed and analyzed an ex parte bar date motion and performed work regarding an objection to such motion; (7) reviewed and analyzed bar date program issues with a claims noticing consultant; (8) responded to inquiries regarding bar date issues; (9) performed work regarding an outline of issues for bar date litigation; (10) reviewed and analyzed sample claims and publication procedures regarding the bar date motion; (11) reviewed and analyzed discovery issues regarding bar date issues; (12) reviewed and analyzed channeling injunction issues; (13) reviewed and analyzed issues regarding future claims representative; (14) performed research regarding notice issues; (15) reviewed and analyzed a Duff & Phelps report regarding claims bar date noticing procedures; (16) reviewed and analyzed a motion to pay secured claim; (17) reviewed and analyzed claim bar date proposals regarding adequate notice issues; (18) reviewed and analyzed issues regarding claims noticing advisor; (19) performed work regarding a claims estimation memorandum; (20) reviewed and analyzed responses to bar date motion

25

discovery requests and next steps; (21) performed work regarding a meet and confer email to

Debtor's counsel regarding discovery objections, scheduling order and deposition issues; (22)

performed work regarding a revised proof of claim form and related notice documents; (23)

reviewed and analyzed strategy for evidentiary hearing; (24) performed work regarding a

deposition notice; (25) performed work regarding a motion to compel production of documents

regarding bar date motion; (26) performed work regarding a memorandum relating to estimation

of claims; (27) reviewed and analyzed bar date orders and expert reports; (28) performed work

regarding an expedited motion to compel Archdiocese's production of documents relating to bar

date motion; (29) prepared for and attended a telephonic meet and confer on August 4, 2020

regarding the Archdiocese's refusal to produce documents relating to the bar date motion; (30)

reviewed and revised a form of notice of bar date; (31) performed work regarding background

for supplemental opposition to bar date motion; (32) reviewed and finalized the expedited

motion to compel the Archdiocese's production of documents regarding the bar date motion,

including declarations in support, proposed order thereon, and ex parte motion and order thereon;

(33) reviewed and analyzed forms of order in other diocese cases regarding proposing form of

bar date order and direct service provisions, and worked on revising form of bar date order; (34)

performed work regarding bar date settlement discussions; (35) performed work regarding a

memorandum outlining issues to address for supplemental opposition to bar date motion; (36)

reviewed and analyzed a motion to pay secured claim; (37) performed research regarding

statutory lien and avoidance issues relating to motion for authority to pay secured fee claims;

(38) reviewed and analyzed the Debtor's response to discovery and performed research regarding

legal grounds for failure to respond; (39) performed work regarding a supplemental opposition to

motion to set bar date; (40) reviewed and analyzed the Conte data reports and drafted a

26

declaration in support of supplemental opposition to bar date motion; (41) reviewed and analyzed issues regarding direct and publication notice; (42) performed legal research regarding the Courig asserted attorneys' lien; (43) performed work regarding the declaration of Linda Cantor in support of supplemental objection to bar date motion; (44) attended to scheduling issues regarding dates for continued motion to compel; (45) reviewed and analyzed issues regarding the status of negotiations with the Debtor regarding the bar date motion; (46) performed work regarding an application and supporting declaration to retain Jon Conte as expert on child abuse; (47) prepared for and attended a telephonic status conference on the bar date motion and motion to compel; (48) reviewed and analyzed bar date service list issues; (49) performed work regarding a chart with analysis of bar date orders in other diocese cases; (50) reviewed and analyzed the Archdiocese's opposition to motion to compel production of documents and performed work regarding a reply brief concerning motion to compel production of documents related to bar date; (51) reviewed and analyzed due process issues; (52) outlined document requests, responses and legal issues, and prepared for and attended a hearing on August 28, 2020 regarding the motion to compel production of documents relating to the bar date motion; (53) reviewed and analyzed expert witness report issues; (54) reviewed and analyzed bar date direct notice issues in light of hearing on motion to compel production of documents; (55) reviewed and analyzed privilege issues relating to potential expert witness; (56) performed work regarding the retention of Kinsella Media; (57) performed work regarding abuse claims publication notice issues; (58) reviewed and revised the supplemental objection and outlined issues for bar date objection hearing; (59) reviewed and analyzed expert opinions regarding bar date order matters; (60) reviewed and analyzed Diocese case dockets, pleadings, notice protocols and plan provisions regarding injunctions relating to currently contested issues; (61) performed

27

work regarding a memorandum summarizing pending negotiations and outstanding issues; (62) reviewed and analyzed an expert report regarding supplemental objection to bar date motion; (63) performed research regarding due process notice issues; (64) performed work regarding the Wheatman declaration; (65) performed research regarding Federal guidelines on notice and reviewed and analyzed notice issues for bar date; (66) reviewed and analyzed declarations in support of bar date opposition; (67) reviewed and analyzed publication protocol; (68) reviewed and analyzed issues regarding credibly accused lists; (69) reviewed and analyzed bar date order provisions regarding non-debtor entities; (70) reviewed and analyzed bar date pleadings and outlined issues for argument; (71) reviewed and analyzed the Debtor's reply to supplemental objection to bar date order; (72) reviewed and analyzed pleadings and documents, and drafted argument outlines, in preparation for a hearing on bar date motion; (73) prepared for and attended a hearing on September 17, 2020 on the bar date motion; (74) performed work regarding a revised form of bar date order; (75) performed work regarding a bar date notice publication plan; (76) reviewed and analyzed a hearing transcript and performed work regarding revised form of order, proof of claim and forms of notice; (77) reviewed and analyzed the Debtor's revised publication plan; (78) reviewed and revised sexual abuse proof of claim form and proposed order granting bar date motion; (79) prepared for and attended a continued hearing on September 24, 2020 on the bar date motion; (80) performed work regarding a clergy list for publication matters; (81) performed research regarding a list of sexual abusers and supporting details for a Committee website; (82) performed work regarding redrafts of notices, proof of claim form, and bar date order; (83) performed research regarding complaints and dockets relating to archdiocese abuse issues; (84) performed work regarding revised forms of exhibits to

28

bar date order; (85) prepared for and appeared at a hearing on September 30, 2020 regarding bar date order; and (86) corresponded and conferred regarding claim issues.

42. The Firm expended 413.10 hours of professional time on services in this category. The Firm's professional fees in this category total $280,820.50. The Firm's blended hourly rate for this category is $679.79/hour.

F. **Employee Benefit/Pension**

43. This category includes work related to employee benefits and pension plans, and other employee issues. During the Application Period, the Firm, among other things: (1) reviewed and analyzed issues regarding the definition of retired employee; (2) reviewed and analyzed a motion to compensate insiders; (3) performed work regarding summaries of Ordinary Course Professionals and Insider motions; and (4) reviewed and analyzed issues regarding Section 1114 and pension plan issues.

44. The Firm expended 11.00 hours of professional time on services in this category. The Firm's professional fees in this category total $7,700.00. The Firm's blended hourly rate for this category is $700.00/hour.

G. **Fee/Employment Application**

45. This category includes work related to professional fee and employment applications issues. During the Application Period, the Firm, among other things: (1) reviewed and analyzed a fee procedures order; (2) reviewed and analyzed *pro hac vice* documents and issues; (3) performed work regarding *pro hac vice* applications and orders for James Stang, Linda Cantor, and Joshua Fried; (4) reviewed and analyzed disinterestedness and potential conflicts of interest issues regarding the Jones Walker retention; (5) performed research; (6) attended to issues regarding certificates of good standing; (7) reviewed and analyzed issues

29

regarding potential objections to the Jones Walker retention application; (8) performed work regarding a memorandum concerning the Jones Walker retention application; (9) reviewed and analyzed potential preferential transfer issues regarding the Jones Walker matter; (10) performed work regarding a conflicts chart; (11) performed work regarding the selection process for a Committee financial advisor; (12) performed work regarding the PSZ&J retention application; (13) attended to issues regarding the Locke Lord retention application; (14) reviewed and analyzed the Riggs retention application; (15) reviewed and analyzed an ordinary course professionals motion; (16) performed work regarding a motion to retain BRG as Committee financial advisor; (17) reviewed and revised the BRG retention application; (18) reviewed and analyzed interim compensation procedures relating to fee statements and reviewed and analyzed United States Trustee Guidelines; (19) performed work regarding the Firm's monthly fee statements; (20) reviewed and analyzed ordinary course professional applications regarding possible objections; (21) reviewed and analyzed ordinary course professional declarations and prepared an analysis of such declarations; (22) performed work regarding the application to retain Jon Conte; (23) performed work regarding the Wheatman retention application; (24) performed work regarding the application to retain Kinsella Media; (25) performed work regarding an ex parte motion for expedited hearing on the employment applications of Jon Conte and Kinsella Media; (26) prepared for and attended a hearing on September 9, 2020 regarding the retention of professionals; and (27) corresponded and conferred regarding fee and employment issues relating to professionals.

46.     The Firm expended 91.20 hours of professional time on services in this category. The Firm's professional fees in this category total $56,400.00.  The Firm's blended hourly rate for this category is $618.42/hour.

30

## H.    **Financing**

47.    This category relates to work regarding Debtor in Possession financing and cash collateral issues.  During the Application Period, the Firm, among other things:  (1) reviewed and analyzed a cash collateral order and performed work regarding objections to such order; (2) reviewed and analyzed a cash management order and performed work regarding objections to such order; (3) reviewed and analyzed guaranty and *ipso facto* clause issues; (4) reviewed and analyzed springing lien and attachment issues; (5) reviewed and analyzed the Hancock Whiting Bank security interests; (6) reviewed and analyzed statutory lien issues; (7) reviewed and analyzed documents regarding Whitney Hancock Bank; (8) performed work regarding proposed revisions to the cash management and cash collateral orders; (9) performed work regarding an objection to the cash collateral motion; (10) reviewed and analyzed adequate protection issues; (11) reviewed and analyzed lien perfection under Louisiana State law; (12) reviewed and analyzed budget issues; (13) reviewed and analyzed insurance and reinsurance issues; and (14) conferred and corresponded regarding financing issues.

48.    The Firm expended 42.60 hours of professional time on services in this category. The Firm's professional fees in this category total $29,820.00.  The Firm's blended hourly rate for this category is $618.42/hour.

## I.    **General Creditors Committee**

49.    This category includes work related to general Committee issues.  During the Application Period, the Firm, among other things:  (1) prepared for and met with the Committee regarding case status and strategy issues; (2) prepared for and met with State Court Counsel regarding case status and strategy issues; (3) performed work regarding meeting agenda; (4) reviewed and analyzed issues regarding pending motions; (5) reviewed and analyzed Section 341

31

meeting issues; (6) reviewed and analyzed statute of limitations issues; (7) reviewed and analyzed bar date issues; (8) performed work regarding by-laws; (9) reviewed and analyzed issues regarding the Debtor's structure and regarding priest support; (10) reviewed and analyzed issues regarding remand; (11) attended to professional employment issues; (12) performed work regarding notices of appearance; (13) reviewed and analyzed issues concerning the Archdiocese representations regarding compensation of victims; (14) reviewed and analyzed Schedules and Statements, and prepared for and attended a Section 341 meeting of creditors on May 29, 2020; (15) attended to follow-up issues arising from the Section 341 meeting; (16) reviewed and analyzed issues regarding financial advisor retention; (17) reviewed and analyzed case dismissal issues; (18) attended to discovery and document production issues; (19) reviewed and analyzed cash collateral issues; (20) performed work regarding interviews with potential Committee financial advisors; (21) performed work regarding a motion to dismiss; (22) attended to issues regarding a document production request; (23) performed work regarding a Section 1102 motion for Committee information sharing; (24) reviewed and analyzed confidentiality order issues; (25) attended to issues regarding interviews with noticing firms; (26) reviewed and analyzed discovery issues related to bar date; (27) reviewed and analyzed issues regarding depositions, evidence, arguments and hearing related to the motion to dismiss; (28) reviewed and analyzed issues regarding documents produced relating to the motion to dismiss; (29) reviewed and analyzed United States Trustee rules and regulations; (30) reviewed and analyzed budget issues; (31) attended to fee estimate issues; (32) reviewed and analyzed mediation issues; (33) reviewed and analyzed bondholder settlement issues; (34) attended to issues regarding a proposed settlement between the Debtor and the Bond Trustee; (35) reviewed and analyzed Committee membership issues; and (36) corresponded and conferred regarding Committee issues.

DOCS_LA:334159.1 05067/002

50.     The Firm expended 173.30 hours of professional time on services in this category. The Firm's professional fees in this category total $121,310.00. The Firm's blended hourly rate for this category is $700.00/hour.

## J.     **Operations**

51.     This category includes work related to operations issues. During the Application Period, the Firm, among other things: (1) reviewed and analyzed Schedules and Statements; (2) reviewed and analyzed a First Day motion regarding insurance issues and reviewed and analyzed Catholic pool insurance information; (3) reviewed and analyzed a sale regarding due diligence and appraisal issues; (4) reviewed and analyzed financial statements and corporate documents; (5) performed work regarding insurance issues concerning a document request; (6) reviewed and analyzed ordinary course professional issues; (7) reviewed and analyzed Monthly Operating Report issues; (8) reviewed and analyzed a CM policy regarding coverage and missing materials; (9) reviewed and analyzed issues regarding Madonna Manor; and (10) conferred and corresponded regarding operations issues.

52.     The Firm expended 16.70 hours of professional time on services in this category. The Firm's professional fees in this category total $11,690.00. The Firm's blended hourly rate for this category is $700.00/hour.

## K.     **Stay Litigation**

53.     Time billed to this category relates to the automatic stay and relief from stay motions. During the Application Period, the Firm, among other things: (1) reviewed and analyzed a relief from stay motion; (2) reviewed and analyzed a motion for summary judgment by Catholic Mutual Insurance and reviewed and analyzed stay violation issues; (3) performed work regarding an opposition to motion for partial relief from stay; (4) reviewed and analyzed

33

the motion to lift stay in the JW Doe matter; and (5) reviewed and analyzed a motion to approve settlement.

54.     The Firm expended 22.70 hours of professional time on services in this category. The Firm's professional fees in this category total 15,890.00. The Firm's blended hourly rate for this category is $700/hour.

### VII.    ACTUAL AND NECESSARY EXPENSES INCURRED BY PSZ&J

55.     As summarized below, PSZ&J has incurred a total of $6,859.09 in expenses on behalf of the Committee during the Application Period. PSZ&J customarily charges $0.10 per page for photocopying expenses. PSZ&J's photocopying machines automatically record the number of copies made when the person that is doing the copying enters the client's account number into a device attached to the photocopier. PSZ&J summarizes each client's photocopying charges on a daily basis.

56.     PSZ&J charges $1.00 per page for out-going facsimile transmissions. There is no additional charge for long distance telephone calls on faxes. The charge for outgoing facsimile transmissions reflects PSZ&J's calculation of the actual costs incurred by PSZ&J for the machines, supplies and extra labor expenses associated with sending telecopies and is reasonable in relation to the amount charged by outside vendors who provide similar services. PSZ&J does not charge the Committee for the receipt of faxes in this case.

57.     With respect to providers of on-line legal research services (*e.g.*, LEXIS and Westlaw), PSZ&J charges the standard usage rates these providers charge for computerized legal research. PSZ&J bills its clients the actual amounts charged by such services, with no premium. Any volume discount received by PSZ&J is passed on to the client.

34

58.     PSZ&J believes that the foregoing rates are the market rates that the majority of law firms charge clients for such services.  In addition, PSZ&J believes that such charges are in accordance with the American Bar Association's ("ABA") guidelines, as set forth in the ABA's Statement of Principles, dated January 12, 1995, regarding billing for disbursements and other charges.

59.     The Firm's specific expenses are outlined below:

| Expense Category | Amount |
|---|---|
| Lexis/Nexis-Legal Research | $338.33 |
| Legal Vision Attorney Messenger Service | $23.00 |
| Miscellaneous | $3.00 |
| Outside Services | $123.00 |
| Pacer – Court Research | $351.80 |
| Postage | $52.70 |
| Reproduction Expense | $417.80 |
| Reproduction/Scan Copy | $448.20 |
| Research | $1,361.94 |
| Transcript | $1,723.63 |
| **TOTAL** | **$6,859.09** |

60.     The Firm requests that the Court grant it reimbursement for $6,859.09 in reimbursable expenses it incurred on the Committee's behalf during the Application Period.

## VIII.  VOLUNTARY REDUCTIONS

61.     For purposes of this Application, the Firm made certain voluntary reductions from the award sought.  The Firm agreed to cap its fees to the extent the fees incurred under the

35

standard hourly rates exceed a blended hourly rate of $700. Therefore, the amount of fees

incurred on the Firm's monthly invoices reflect the Firm's blended hourly rates as opposed to the

Firm's standard hourly rates. The Firm's reduction in its standard rates resulted in a $388,880.00

reduction in its fees. Further, the Firm took additional voluntary reductions that totaled

$45,694.60, for a total of $434,574.60 in voluntary reductions taken by the Firm. The Firm

believes that these reductions are appropriate and reasonable.

## IX.   STATEMENT IN COMPLIANCE WITH RULE 2016 OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE

62.   As more fully described in the Retention Application, the Committee agreed to

retain the Firm as their counsel and to compensate the Firm on an hourly basis in accordance

with the Firm's retention application, plus reimbursement of the actual and necessary expenses

that the Firm incurred in connection with the Bankruptcy Case. All compensation for services

rendered, and reimbursement for expenses incurred, are subject to this Court's approval in

accordance with the Retention Order, Bankruptcy Code §§ 330 and 331, the Federal Rules of

Bankruptcy Procedure (the "Bankruptcy Rules"), the Local Bankruptcy Rules of the Eastern

District of Louisiana (the "Local Bankruptcy Rules"), and other procedures that this Court may

fix. No entity has promised to compensate the Firm for any services rendered, or reimburse it for

expenses incurred, in connection with this case except as this Court may approve.

63.   No agreement or understanding exists between the Firm and any other entity for

the sharing of any compensation or reimbursement (i) that the Firm may receive for services

rendered in, or in connection with, this Bankruptcy Case or (ii) that such other entity has already

received or may receive for services that entity rendered in, or in connection with this

Bankruptcy Case, except that the Firm will share any compensation or reimbursement it receives

in connection with this Bankruptcy Case with its members, partners, associates, and other Firm employees (as originally disclosed in the Retention Application).

64.    As of today's date, the Firm has received $308,344.03 from the Debtor on its First Monthly Fee Statement and its Second Monthly fee Statement.

## X.    THE REQUESTED COMPENSATION SHOULD BE ALLOWED

65.    Section 330 provides that a court may award a professional employed under 11 U.S.C § 328 "reasonable compensation for actual, necessary services rendered . . . and reimbursement for actual, necessary expenses." *See* 11 U.S.C. Section 330(a)(1). Section 330 also sets forth the criteria for the award of such compensation and reimbursement:

> In determining the amount of reasonable compensation to be awarded . . . , the court should consider the nature, the extent, and the value of such services, taking into account all relevant factors, including –

> (A)    the time spent on such services;

> (B)    the rates charged for such services;

> (C)    whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title;

> (D)    whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed;

> (E)    with respect to a professional person, whether the person is board certified or otherwise has demonstrated skill and experience in the bankruptcy field; and

> (F)    whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.

37

11 U.S.C. § 330(a)(3).

66.     Here, PSZ&J respectfully submits that the services for which it seeks compensation in this Application were, at the time rendered, believed to be necessary for, beneficial to, and in the best interests of, the Committee. PSZ&J, on behalf of the Committee, among things, performed litigation work on an extensive and expedited basis related to the claims bar date and a motion to dismiss. The services rendered by PSZ&J were consistently performed in a timely manner commensurate with the complexity, importance, and nature of the issues involved.

67.     PSZ&J has a reputation for its expertise and experience in financial and bankruptcy reorganizations and restructurings and as noted above, the compensation is reasonably based on customary compensation charged by other practitioners in non-bankruptcy cases. Based on an application of the above factors and its compliance with the UST Guidelines, PSZ&J respectfully submits that the compensation requested herein is reasonable in light of the nature, extent and value of such services to the Committee and, accordingly, that approval of the compensation sought herein is warranted.

68.     Section 330 of the Bankruptcy Code authorizes the Court to award the Firm reasonable compensation for its actual and necessary legal services rendered and reimbursement of actual and necessary expenses incurred in the rendering of those legal services as counsel to the Committee in this case. Bankruptcy Code § 330(a)(1) provides as follows:

(a)(1) After notice to the parties in interest and the United States Trustee and a hearing, and subject to sections 326, 328, and 329, the court may award to a trustee, a consumer privacy ombudsman appointed under section 332, an examiner, an ombudsman appointed under section 333, or a professional person employed under section 327 or 1103—

(A)     reasonable compensation for actual, necessary services rendered by the trustee, examiner, ombudsman, professional person, or attorney and by any

38

paraprofessional person employed by any such person; and

(B)     reimbursement for actual, necessary expenses.

11 U.S.C. § 330(a)(1).

69.     This Application substantiates the total amount the Firm seeks for fees and expenses in accordance with this Court's standards applied to fee applications. The factors that courts in this jurisdiction consider when making a discretionary award of reasonable attorneys' fees and reimbursable expenses were originally described in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974) (the "*Johnson* Factors"). The Fifth Circuit has applied the *Johnson* Factors to the determination of awards of attorneys' fees and expenses in bankruptcy cases. *In re First Colonial Corp. of Am.*, 544 F.2d 1291 (5th Cir. 1977), *cert. denied* 431 U.S. 904 (1977). Many of these *Johnson* Factors have now been codified at Bankruptcy Code § 330(a)(3). 11 U.S.C. § 330(a)(3).

70.     The *Johnson* Factors are summarized as follows: (1) the time and labor required; (2) the novelty and difficulty of the questions presented; (3) the skill required to perform the legal services; (4) the preclusion of other employment by the attorneys due to acceptance of the bankruptcy case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or circumstances; (8) the amounts involved and the results obtained; (9) the experience, reputation and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.[11] Based upon the services described in this Application, the Firm respectfully represents that it has fully satisfied the standards prescribed by the *Johnson* Factors.

---

[11] The factors enunciated in *Johnson* have been adopted by four other courts of appeals. *See Boston & Maine Corp. v. Sheehan, Phinney, Bass & Green*, 778 F.2d 890, 896 (1st Cir. 1985); *Harman v. Levin*, 772 F.2d 1151, 1152-53 (4th Cir.

**The Time and Labor Required**

71.     Firm attorneys and paraprofessionals, in the performance of legal services,

expended 1,376.50 hours during the Application Period for a total fee of $900,175.50. [12]   Taking

into account the Firms' voluntary reductions, the blended hourly rate is therefore $653.96/hour.

The names of the professionals who worked on this case during the Application Period appear in

the Invoices and on the cover sheet attached to this Application.   The Firm submits that the time

and labor these professionals expended in the Bankruptcy Case are appropriate and reasonable

and that this *Johnson* Factor supports the Firm's requested award.   Further, the amount of time

multiplied by a reduced, and reasonable, fee suggests that the fee award is appropriate in this

Circuit under the "lodestar" doctrine.

**The Novelty and Difficulty of the Questions Presented**

72.     This Bankruptcy Case presents many novel and difficult questions.   Addressing

these questions have necessitated considerable legal expertise.   In light of these considerations,

this *Johnson* Factor strongly favors awarding the Firm the fees and expenses it has requested.

**The Skill Required to Perform the Services**

73.     Representing the Committee in this Bankruptcy Case required considerable skill

and expertise in bankruptcy issues.   The Firm has considerable experience in complex

bankruptcy matters.   Further, the Firm has represented numerous creditors' committees in cases

with abuse claims, and has extensive experience in cases involving dioceses and archdioceses of

the Catholic Church, and thus has a unique understanding of the structure and history of that

---

1985); *Mann v. McCombs*, 751 F.2d 286, 287-88 (8th Cir. 1984); *Yermakov v. Fitzsimmons*, 718 F.2d 1465, 1471 (9th
Cir. 1983).

[12] This takes into account the Firm's voluntary reductions.

DOCS_LA:334159.1 05067/002

institution and its sub-entities, and of the nature of its assets. Applicant submits that this expertise is also relevant as a factor suggesting a fee award under Local Rule 2016-1 (A)(13). The Firm employed attorneys and staff persons of varying levels of skill and expertise to efficiently resolve the issues in this case. The Firm strived to limit the number of attorneys who worked on this case and to use the most appropriate attorney or staff person for any given task. For this reason, the compensation the Firm is requesting for the services rendered by its attorneys and staff persons compares favorably to the compensation awarded in other bankruptcy cases of a similar size and complexity. This factor therefore supports the award the Firm has requested.

**Preclusion of Other Employment Due to Acceptance of the Case**

74.     The Firm has not declined any representation solely because it served as counsel for the Committee in this Bankruptcy Case. Nonetheless, the Firm did shift certain resources from matters involving other clients to address issues arising in this case. In particular, some matters during the Application Period involved disputes with the Debtor that involved discovery and contested evidentiary hearings, and included many tasks that had to be performed on an expedited bases. For this reason, this factor favors granting the award the Firm has sought.

**The Customary Fee**

75.     The Firm computed the amount of compensation it seeks in this Application according to its customary rates, which rates the Firm previously disclosed in the Retention Application. The Firm also maintained detailed time and disbursement records for all legal services for which it seeks compensation. The rates charged for the Firm's legal services in this case are comparable to other similar-situated firms. These rates also reflect substantial voluntary reductions of $388,880.00. Thus, the blended hourly rate on this matter of $653.96 /hour is reasonable and reflects market rates for legal services in Chapter 11 bankruptcy cases of this size

41

and complexity. Similarly, the amounts sought for the reimbursement of expenses reflect the prevailing rates for expense reimbursement by law firms similar in size and reputation to the Firm.

**Whether the Fee is Fixed or Contingent**

76.     The Firm's fees for services rendered in this Bankruptcy Case are based on its hourly rates, subject in all respects to this Court's approval. The Firm has not requested any contingent fee in this Bankruptcy Case.

**Time Limitations Imposed by the Client or Other Circumstances**

77.     The Firm has had to respond to tight time-constraints arising in this Bankruptcy Case. Matters often arose throughout the Application Period that required the Firm's immediate attention. Again, the exigent nature of these matters demanded that the Firm's professionals respond on very short notice to complicated and developing events as they unfolded. This imposed serious time demands on the Firm's personnel and required them to devote considerable legal resources to these matters. Taken together, these considerations suggest that this *Johnson* Factor supports the fee award requested.

**The Amount Involved and the Results Obtained**

78.     The Invoices summarize the individual tasks that Firm personnel performed during the Application Period as well as the amounts charged for those tasks. The total fees the Firm seeks to approve in this Application are $900,175. 50. This figure is commensurate with the Firm's achievements. This *Johnson* Factor strongly supports the fee award requested.

**The Experience, Reputation, and Ability of the Attorneys**

79.     The Firm's attorneys have significant experience in bankruptcy and other areas of the law, possess a high level of expertise, and have an excellent reputation in the business and

legal communities. In particular, the Firm's bankruptcy attorneys have appeared in bankruptcy cases throughout the United States and have provided services to secured creditors, unsecured creditors, creditors' committees, and debtors-in-possession. The quality of the Firm's services is consistently high. In addition, the Firm's attorneys also speak and write on various legal topics throughout the country. As mentioned, the Firm has considerable expertise in cases, such as this one, involving numerous abuse claims and sub-entities of the Catholic Church. The substantial experience, reputation, and ability of the Firm's attorneys working on this Bankruptcy Case favor granting the Firm the fee award it seeks.

### The "Undesirability" of the Bankruptcy Case

80.     From the Firm's perspective, serving as counsel to the Committee in this Bankruptcy Case was not undesirable. However, bankruptcy cases involved abuse claims and religious entities can involve intensive and hard-fought disputes, for example, regarding the claims process and the recovery and liquidation of assets. These concerns mean that any law firm deciding to represent the Committee could face potential fee risk and other uncertainties. This factor therefore favors granting the Firm the award it has requested.

### The Nature and Length of the Professional Relationship with the Client

81.     The Firm has no prior professional relationship with the Committee, which was only formed after this case began. However, members of the Firm have worked in similar matters, including coordinating issues with State Court counsel, thus making the representation of the Committee more efficient. For this reason, this *Johnson* Factor supports granting the Firm its fee award in this case.

### Awards in Similar Cases

82. The fee award the Firm seeks compares favorably to awards granted in other bankruptcy cases with a size and complexity similar to this case, including cases in the Fifth Circuit. In light of these considerations, this last *Johnson* Factor also supports granting the Firm its award.

83. In conclusion, the *Johnson* Factors favor granting the Firm the fee and expense award it seeks.

## XI.  **RESERVATION OF RIGHTS**

84. It is possible that some professional time expended or expenses incurred by PSZ&J are not reflected in this Application. PSZ&J reserves the right to file a supplemental fee application to submit additional fees and expenses not previously included in the Application, or to include such time and costs in a future fee application.

## XII.  **NO PRIOR REQUEST**

85. No prior application for the relief requested herein has been made to this or any other court.

DOCS_LA:334159.1 05067/002

## XIII.  **CONCLUSION**

WHEREFORE, PSZ&J respectfully requests that this Court enter an order (i) awarding

PSZ&J an interim allowance of fees for the Application Period in the amount of $900,175.50;

(ii) awarding PSZ&J reimbursement for actual and necessary expenses incurred in the amount of

$6,859.09; (iii) authorizing and directing the Debtors to pay such allowed fees and costs, less

amounts previously submitted; and (v) granting such other or additional relief as is just and

proper.

Dated:  November 25, 2020                    Respectfully submitted,

*By: /s/ Linda F. Cantor*
James I. Stang (CA Bar No. 94435)
Linda F. Cantor (CA Bar No. 153762)
Pachulski Stang Ziehl & Jones LLP
10100 Santa Monica Blvd., Suite 1300
Los Angeles, CA  90067
Telephone:  (310) 277-6910
Facsimile:  (310) 201-0760
Email: jstang@pszjlaw.com
        lcantor@pszjlaw.com

*Co-Counsel to the Official Committee of Unsecured Creditors*
