UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| In re: ) | |
| ) | Case No. 20-10846 |
| THE ROMAN CATHOLIC CHURCH OF ) | |
| THE ARCHDIOCESE OF NEW ) | Section "A" |
| ORLEANS ) | |
| ) | Chapter 11 |
| Debtor. | |

**SEXUAL ABUSE SURVIORS JAMES DOE & J.W. DOE'S CONSOLIDATED OPPOSITION TO THE DEBTOR'S MOTION FOR A PROTECTIVE ORDER**

**NOW INTO COURT** comes James Doe, No. 20-1338 (E.D. La. ) (Barbier, J.), and J.W. Doe, No. 20-1321 (E.D. La.) (Guidry, J.), through undersigned counsel, who respectfully submit the instant Opposition to the Debtor's *Motion for a Protective Order* [Rec. Doc. 599].

**Introduction**

The Debtor's motion should be denied for the following non-exclusive reasons: (1) Magistrate Judge Michael North already ruled on the protective order; (2) the Debtor failed to appeal the Magistrate's ruling to Judge Barbier or Judge Guidry; (3) this Court previously ruled that Judge Barbier and Judge Guidry are to determine the scope of any limitations on the depositions of the two priests; (4) this Court has previously held, in no uncertain terms, that it will not alter, amend, or tamper with the *J.W. Doe* protective order issued by the state court; (5) the Debtor has previously argued that this Court does not have jurisdiction to alter, amend, or tamper with the *J.W. Doe* protective order – only Judge Guidry does; and (6) whether the Sexual Abuse survivors ever decide to argue waiver of the bankruptcy stay is not ripe, since any such future argument will depend on the extent of the Debtor's future actions and will nonetheless be decided by the Bankruptcy Court.

1

I. **Magistrate North Already Ruled on the Protective Order, and the Debtor Failed to Appeal The Ruling to Judge Barbier or Judge Guidry.**

1. The Debtor's efforts at forum shopping fly in the face of this Court's previous ruling. In denying in part and granting in part movers' Motion to Lift Stay, this Court made it quite clear that it would defer to Judge Barbier and Judge Guidry (and by implication Magistrate North who is assigned to both cases) the issue of any restrictions to the scope of the depositions of the two priest deponents:

> <u>At this stage in the Debtor's bankruptcy case, this Court does not exercise jurisdiction over the State Court Actions, as they are currently pending in the District Court; therefore, the task of staging discovery in those cases in such a way that will permit the movants to depose the Non-Debtor Defendant Priests—without impairing the interests of the Debtor—rests with the District Court judges assigned to the State Court Actions.</u> *See Nat'l Oilwell Varco, L.P. v. Mud King Prods., Inc.*, No. 4:12-3120, 2013 WL 1948766, at *6 (S.D. Tex. May 9, 2013) (declining to issue a discretionary stay to non-debtor defendants, but crafting discovery plan that would not impair the debtor's interests and instructing parties to obtain clarification from the bankruptcy court regarding the scope of § 362 stay).

*In re Archdiocese of New Orleans*, No. 20-10846, at 14-15 (11/02/2020) (emphasis supplied) [Rec. Doc. 528].

2. Accordingly, this Court clearly deferred the issue of the scope of the depositions (including any protective order) to the District Court. The Debtor's efforts to have this Court issue a protective order violates this Court's earlier rulings. In fact, Magistrate North decided the issue of a protective order, and the Debtor failed to object or appeal the ruling.

3. Magistrate North has played a very active role in managing the scheduling and scope of the depositions of both witnesses. Magistrate North conducted two conference calls with all counsel to discuss the scope of the two depositions. The first call occurred on November 20, 2020. On this call, the Archdiocese argued for severe limitations to the scope of the depositions,

effectively arguing that no questions concerning the Archdiocese could be asked of the priests and that no Archdiocese documents could be discussed. Magistrate North instructed the parties to submit written briefing. The Debtor submitted <u>13 single spaced pages of briefing with 195 pages of exhibits</u> to Magistrate North arguing for suffocating restrictions. *11/25/2020 Archdiocese Submission*, attached as Exhibit 1 (exhibits are omitted due to size restrictions). The Abuse Survivors submitted their own briefing. *11/25/2020 Submission*, attached as Exhibit 2.

4. Importantly, counsel for deponent Hecker did <u>not</u> request any limitations to his deposition but just informed the court of his client's right to invoke the Fifth Amendment, *11/25/2020 Hecker Submission*, attached as Exhibit 3, and counsel for deponent Calamari submitted his own suggestions, *11/25/2020 Calamari Submission*, attached as Exhibit 4.

5. On December 1, 2020, Magistrate North conducted the second conference call to discuss the letter briefings and announce his rulings. On the call, the Debtor requested from Magistrate North that he seal the depositions. Abuse Survivors counsel sought clarification, and Magistrate North ruled as follows:

COUNSEL: Going to your statement a second ago about the deposition being sealed, is it -- there is sort of a protective order in place -- at least in one of these, I think. When you say being sealed, you just mean -- you're not making a ruling as to whether it's going to be sealed in perpetuity, you're just making a prophylactic decision as to maintaining the confidentiality such that when any party wants to contest or unseal or redesignate the deposition as confidential, that it would be subject to the Federal Rules of Civil Procedure dealing with confidentiality?

THE COURT: Yeah, obviously. I think that's a very -- that's a good way of explaining

> it, it's a prophylactic measure. Is there not a protective order in both of these cases?

COUNSEL: Only in *J.W. Doe*.

THE COURT: All right. <u>Well, I suggest that you-all enter the same -- submit the same protective order so that it's applicable in both cases. The depositions can be designated subject to that protective order. And then to the extent that plaintiffs' counsel or anybody else wants to dedesignate them or portions of them, there's a procedure in the protective order for you-all to do that.</u>

*12/01/2020 Transcript*, at 9-10 (emphasis supplied), attached as Exhibit 5.

6. The Debtor did not object, confront, or otherwise argue a different position to Magistrate North at the time. To memorialize his rulings on the conference call, Magistrate North issued an Order on the same day:

> Having considered the law, the parties' letter briefs, and the written opinion of the Bankruptcy Judge, the Court imposes no limitations on the questioning of Mr. Hecker and Mr. Calamari at their upcoming depositions without prejudice to the Debtor's right to move to exclude such testimony from use in any future proceeding. The written discovery previously propounded upon the two Defendants is to be updated and completed before the depositions proceed. The undersigned's courtroom is available as a site for the deposition of Mr. Hecker which is tentatively scheduled for mid-December. Counsel are to confer further on the date and logistics of Mr. Calamari's deposition. The transcripts of those depositions will initially be sealed as a prophylactic measure. <u>A protective order akin to the one in place in 20-CV-1321 is to be submitted to the Court for its approval and use in 20-CV-1338. Confidentiality designations should be made pursuant to the terms of those protective orders</u>. Counsel are also to confer further on whether the debtor's active participation in the depositions constitutes a waiver of the bankruptcy stay, taking heed of the Court's guidance on that issue.

*Magistrate North Order*, at 1 (12/01/2020), *J.W. Doe v. Archdiocese of New Orleans*, No. 20-cv-1321 [Rec. Doc. 24] (emphasis supplied). This same order was also entered into James Doe.

7.  Magistrate North has offered his services to all parties to assist to work through any and all issues related to the two depositions -- whether it is on an expedited basis, informal basis, or any basis at all:

> And of course the whole idea of me getting involved here is to make sure that we don't have any issues. So to the extent something comes up and y'all need my help or guidance, just call Blanca or give me a call or something, and I'll get on the phone with y'all as soon as I can.

*12/01/2020 Transcript*, at 6-7 (emphasis supplied). *See also id.* at 12 ("[S]ee if there's an issue and try to resolve it. And if you can't resolve it, get on the phone and call me, and I'll help you out."). Rather than go through the processes already established by this Court and the District Courts, the Debtor has chosen to forum shop an adverse ruling.

8.  Ultimately, Magistrate North ruled that the protective order in *J.W. Doe* (20-cv-1321) was to apply to both depositions and that it be submitted to *James Doe* (20-cv-1338). *Id.* At this point, the Debtor had the option of seeking reconsideration before Magistrate North or, pursuant to Federal Rule of Civil Procedure 72(a), appealing his ruling to either Judge Barbier, Judge Guidry, or both. Instead, the Debtor chose to do neither and come to this Court.

**II. This Court has previously held (in agreeing with the Debtor) that, in no uncertain terms, will it alter, amend, or tamper with the *J.W. Doe* protective order issued by the state court.**

9.  This issue has already arisen and been decided by this Court. When J.W. Doe sought to introduce documents obtained from state court litigation in *J.W. Doe*, the Debtor filed a *Motion to Strike* those documents from the record. *Debtor Motion to Strike*, Rec. Doc. 235. The Debtor aggressively argued that Plaintiffs were trying to make an "end run" around the protective order, and that "this Court lacks jurisdiction to conduct such a review pursuant to the *Rooker-Feldman* Doctrine". *Id.* at 12. In fact, the Debtor flat-out argued that only Judge Guidry has jurisdiction:

5

> Jurisdiction regarding the J.W. Doe Protective Order now lies with the district court in the matter, entitled *J.W. Doe v. The Roman Catholic Church of the Archdiocese of New Orleans, et al*, Case No. 2:20-cv-01321, Section T-5, United States District Court, Eastern District of Louisiana. If J.W. Doe seeks relief from the J.W. Doe Protective Order, it must seek such relief before the district court in the J.W. Doe case, not this Court.

*Id.*

10. This Court agreed with the Debtor. This Court took the extraordinary step of ordering the clerk's office to destroy documents filed into the record under seal: "And I will add that the Court intends to destroy any unsealed documents that this Court received. Because I do, I do respect the protective order issued by the court in, in state court." *Transcript*, at 36, attached as Exhibit 6.

11. The Debtor's hypocrisy, and this Court's previous ruling preclude it from altering, amending, or tampering with the J.W. Doe protective order or entering on in James Doe case. Judge Barbier and Judge Gudry, on their own or with Magistrate North, are the proper judges to decide this issue.

**III. Whether the Sexual Abuse survivors ever decide to argue waiver of the bankruptcy stay is not ripe, since any such future argument will depend on the extent of the Debtor's future actions and will nonetheless be decided by the Bankruptcy Court.**

12. In its motion, the Debtor moves the Court for a pre-emptive ruling on an argument that movers have not yet made to any court. In this truly remarkable request, the Debtor seeks to challenge a statement in an email to counsel in which undersigned placed the seven Archdiocese counsel on notice that they will argue waiver of the bankruptcy stay.[1] Striking a legal posture in

---

[1] The Debtor's decision to retain and include seven attorneys from two different law firms on an email concerning the scope of two depositions of people they do not represent raises the question of responsible management of assets. Debtor's counsel listed on the email from Jones Walker include: Dirk Wegmann, Jefferey Tillery, Wayne Zeringue, Joe Lowenthal, and Allison Kingsmill. Debtor's counsel from the Denechaud & Denechaud Law Firm include: Todd Gennardo and Richard Bordelon.

an email hardly qualifies as a basis to run to Court seeking relief of an argument that has not been made. Ripeness requires an actual controversy.

13. The genesis of the waiver argument did not originate with undersigned. Magistrate North placed the issue before all parties. In his December 1, 2020 Order, Magistrate North wrote: "<u>Counsel are also to confer further on whether the debtor's active participation in the depositions constitutes a waiver of the bankruptcy stay, taking heed of the Court's guidance on that issue</u>." *Magistrate North Order*, at 1 (12/01/2020), *J.W. Doe v. Archdiocese of New Orleans*, No. 20-cv-1321 [Rec. Doc. 24] (emphasis supplied).

14. Consequently, undersigned was required to take a position on the issue of waiver. Waiver is an argument of degree. The amount of work the Debtor engages in, the arguments Debtor makes, the number of lawyers Debtor retains to defend itself, the Debtor's court filings, and the Debtor's actions during the depositions will determine whether a waiver argument is sustainable before this Court. Certainly, undersigned counsel took heed of the fact that Magistrate North suggested that counsel for he Archdiocese be able to ask some questions of Hecker. That alone does not seem to waive the stay. But the Debtor's involvement thus far goes way beyond that. The Debtor is now litigating these cases exactly as it did in state court, as if it were the primary defendant with everything ng to lose.

15. Frankly, the Debtor chooses how much or how little it will participate in these depositions. The two deponents are <u>not</u> under the Debtor's control. No documents are being requested from the Debtor at this time. This Court previously addressed the differences between the two deponents and the Debtor in its decision to partially lift the stay. The Debtor should not be allowed to deplete assets with seven lawyers to participate in depositions in which it is neither taking nor

defending. Whatever actions the Debtor will take in the future must be weighed against the consequences.

## CONCLUSION

16. For the above and foregoing reasons, J.W. Doe and James Doe respectfully submit that the Debtor's Motion for a Protective Order be denied in all respects.

                Respectfully submitted,

/s Soren Gisleson
SOREN E. GISLESON La Bar No. 26302
HERMAN, HERMAN & KATZ
820 O'Keefe Avenue
New Orleans, Louisiana 70113
Tel: (504) 581-4892
Fax: (504) 561-6024
Email: sgisleson@hhklawfirm.com

RICHARD C. TRAHANT (# 22653)
ATTORNEY AT LAW
2908 Hessmer Avenue
Metairie, LA 70002
Telephone: (504) 780-9891
FAX: (504) 780-9891
Email: trahant@trahantlawoffice.com

-AND-

JOHN H. DENENEA, JR. (#18861)
SHEARMAN~DENENEA, L.L.C.
4240 Canal Street
New Orleans, LA 70119
Telephone: (504) 304-4582
FAX: (504) 304-4587
jdenenea@midcitylaw.com

*Attorneys for J.W. Doe & James Doe*

**CERTIFICATE OF SERVICE**

      I hereby caused a copy of the foregoing *Opposition* to be served on December 11, 2020 upon all parties by electronic case filing for those parties receiving notice via the Court's Electronic Case Filing system, and on all other parties requiring service under the Court's Ex Parte Order Authorizing the Debtor to Limit Notice and Establishing Notice Procedures through the Master Service List via first-class United States mail, postage prepaid, to be sent on December 11, 2020.

                                                       **S/Soren E. Gisleson**