**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| IN RE: | § | Case No. 20-10846 |
| | § | |
| THE ROMAN CATHOLIC CHURCH | § | Section "A" |
| OF THE ARCHDIOCESE OF NEW | § | |
| ORLEANS | § | Chapter 11 |
| | § | |
| Debtor.[1] | § | |
| | § | |

---

**SUMMARY COVER SHEET TO SECOND INTERIM APPLICATION FOR
ALLOWANCE AND PAYMENT OF COMPENSATION AND REIMBURSEMENT
OF EXPENSES OF PACHULSKI STANG ZIEHL & JONES LLP AS
CO-COUNSEL FOR THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS
FOR THE PERIOD FROM OCTOBER 1, 2020 THROUGH MARCH 31, 2021**

| | | |
|---|---|---|
| **Name of Applicant:** | Pachulski Stang Ziehl & Jones LLP | |
| **Applicant's Professional Role in Case** | Co-Counsel to the Official Committee of Unsecured Creditors | |
| **Date Order of Employment Signed** | Effective May 22, 2020  pursuant to Order dated July 17, 2020 [Docket No. 257] | |
| | **Beginning of Period** | **End of Period** |
| **Time period covered by this Application (the "Application Period"):** | 10/01/2020 | 03/31/2021 |
| **Time period(s) covered by prior Applications:** | 05/22/2020 | 09/30/2020 |
| **Total amounts awarded in all prior Applications:** | $888,275.50 (fees)  $6,859.09 (expenses)  Total Awarded: $895,134.59 | |

---

[1] The last four digits of the Debtor's federal tax identification number are 8966. The Debtor's principal place of business is located at 7887 Walmsley Ave., New Orleans, LA 70125.

DOCS_LA:336999.5 05067/002

| | |
|---|---|
| **Total professional fees requested in this Application:** | $642,955.50 |
| **Total professional hours covered by this Application:** | 1,004.20 |
| **Reimbursable expenses sought in this Application:** | $14,452.25 |

PSZJ professionals who rendered services for the Official Committee of Unsecured Creditors

(the "Committee") in this Chapter 11 case concerning the above captioned debtor and debtor-in-

possession (the "Debtor") during this Application Period are listed below.

### SUMMARY OF HOURS BILLED BY PROFESSIONALS AND PARAPROFESSIONALS
### OCTOBER 1, 2020 THROUGH MARCH 31, 2021

| NAME OF PROFESSIONAL | TITLE | YEAR OF ADMISSION | YEAR OF PARTNER-SHIP | HOURLY RATE | TOTAL HOURS BILLED | TOTAL COMPENSATION |
|---|---|---|---|---|---|---|
| James I. Stang | Founding Partner | Member of CA Bar since 1980 | 1983 | $700.00 | 111.30 | $77,910.00 |
| Andrew W. Caine | Partner | Member of CA Bar since 1983 | 1989/2013 | $700.00 | 174.80 | $122,360.00 |
| Linda F. Cantor | Partner | Member of CA Bar since 1991; Member of IL Bar since 1988 | 1994 | $700.00 | 132.90 | $93,030.00 |
| Iain A. W. Nasatir | Partner | Member of NY Bar since 1983; Member of CA Bar since 1990 | 1999 | $700.00 | 11.40 | $7,980.00 |
| John A. Morris | Partner | Member of NY Bar since 1991 | 2008 | $700.00 | 4.30 | $3,010.00 |
| Joshua M. Fried | Partner | Member of CA Bar since 1995; Member of | 2006 | $700.00 | 31.30 | $21,910.00 |

| NAME OF PROFESSIONAL | TITLE | YEAR OF ADMISSION | YEAR OF PARTNER-SHIP | HOURLY RATE | TOTAL HOURS BILLED | TOTAL COMPENSATION |
|---|---|---|---|---|---|---|
| | | NY Bar since 1999 | | | | |
| Kenneth H. Brown | Partner | Member of CA Bar since 1981 | 2001 | $700.00 | 198.00 | $138,600.00 |
| Ilan D. Scharf | Partner | Member of NY Bar since 2002 | 2010 | $700.00 | 0.20 | $140.00 |
| William L. Ramseyer | Of Counsel | Member of CA Bar since 1980 | N/A | $700.00 | 28.80 | $20,160.00 |
| John W. Lucas | Partner | Member of CA Bar since 2010 | 2014 | $700.00 | 1.40 | $980.00 |
| Gillian N. Brown | Of Counsel | Member of CA Bar since 1999; Member of Washington D.C. Bar since 2008; Member of NY Bar since 2010 | N/A | $700.00 | 99.00 | $69,300.00 |
| Cia H. Mackle | Of Counsel | Member of FL Bar since 2006 | N/A | $700.00 | 2.30 | $1,610.00 |
| Cia H. Mackle | Of Counsel | Member of FL Bar since 2006 | N/A | $675.00 | 0.80 | $540.00 |
| Leslie A. Forrester | Law Library Director | N/A | N/A | $450.00 | 15.50 | $6,975.00 |
| Beth D. Dassa | Paralegal | N/A | N/A | $460.00 | 24.80 | $11,408.00 |
| Beth D. Dassa | Paralegal | N/A | N/A | $425.00 | 6.50 | $2,762.50 |

DOCS_LA:336999.5 05067/002

| NAME OF PROFESSIONAL | TITLE | YEAR OF ADMISSION | YEAR OF PARTNER-SHIP | HOURLY RATE | TOTAL HOURS BILLED | TOTAL COMPENSATION |
|---|---|---|---|---|---|---|
| Patricia J. Jeffries | Paralegal | N/A | N/A | $460.00 | 2.00 | $920.00 |
| La Asia S. Canty | Paralegal | N/A | N/A | $425.00 | 0.30 | $127.50 |
| Nancy P.F. Lockwood | Paralegal | N/A | N/A | $460.00 | 16.30 | $7,498.00 |
| Nancy P.F. Lockwood | Paralegal | N/A | N/A | $425.00 | 38.10 | $16,192.50 |
| Ben C. Downing | Paralegal | N/A | N/A | $395.00 | 4.10 | $1,619.50 |
| Diane H. Hinojosa | Legal Assistant | N/A | N/A | $395.00 | 12.30 | $4,858.50 |
| Sophia L. Lee | Legal Assistant | N/A | N/A | $395.00 | 81.20 | $32,074.00 |
| Virginia L. Downing | Legal Assistant | N/A | N/A | $150.00 | 6.60 | $990.00 |
| **Total** | | | | | **1,004.20** | **$642,955.50[2]** |

---

[2] PSZJ's fees originally totaled $945,280.00  After reductions of standard rates in the amount of $296,359.50 due to an attorney rate cap of $700/per hour, and additional write-offs totaling $5,965.00, the total amount of fees requested during the Application Period is $642,955.50.

4

## COMPENSATION BY CATEGORY
## OCTOBER 1, 2020 THROUGH MARCH 31, 2021

| Code | Description | Hours | Amount |
|------|-------------|-------|--------|
| AA | Asset Analysis/Recovery | 20.80 | $10,395.50 |
| BL | Bankruptcy Litigation | 510.30 | $351,424.50 |
| CA | Case Administration | 30.80 | $15,284.50 |
| CO | Claims Administration/Objections | 159.10 | $82,153.00 |
| CP | Compensation of Professionals | 73.00 | $44,382.50 |
| CPO | Compensation of Professionals/Others | 13.70 | $7,516.00 |
| FE | Fee/Employment Application | 52.20 | $31,293.50 |
| GC | General Creditors Comm. | 108.20 | $75,740.00 |
| HE | Hearings | 1.30 | $910.00 |
| IC | Insurance Coverage | 24.70 | $16,810.00 |
| ME | Mediation | 2.00 | $1,400.00 |
| PD | Plan & Disclosure Statement | 4.20 | $2,940.00 |
| RPO | Retention of Professionals/Others | 1.90 | $1,330.00 |
| SL | Stay Litigation | 2.00 | $1,376.00 |
|  | **TOTAL** |  | **$642,955.50** |

DOCS_LA:336999.5 05067/002

The total amount of expenses by expense type for PSZJ during the Application Period is listed below.

## EXPENSES BY CATEGORY
## OCTOBER 1, 2020 THROUGH MARCH 31, 2021

| Expense Category | Amount |
|---|---|
| Attorney Service | $112.00 |
| Bloomberg | $1,728.88 |
| Conference Call | $84.43 |
| Federal Express | $106.43 |
| Filing Fee | $41.00 |
| Lexis/Nexis-Legal Research | $434.30 |
| Outside Services | $1,500.00 |
| Pacer – Court Research | $277.40 |
| Postage | $92.85 |
| Reproduction Expense | $1,027.60 |
| Reproduction/Scan Copy | $1,170.00 |
| Research | $1,651.00 |
| Transcript | $6,226.36 |
| **TOTAL** | **$14,452.25** |

DOCS_LA:336999.5 05067/002

## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **IN RE:** | § | **Case No. 20-10846** |
| | § | |
| **THE ROMAN CATHOLIC CHURCH** | § | **Section "A"** |
| **OF THE ARCHDIOCESE OF NEW** | § | |
| **ORLEANS** | § | **Chapter 11** |
| | § | |
| **Debtor.[3]** | § | |
| | § | |

---

### SECOND INTERIM APPLICATION FOR
### ALLOWANCE AND PAYMENT OF COMPENSATION AND REIMBURSEMENT
### OF EXPENSES OF PACHULSKI STANG ZIEHL & JONES LLP AS
### CO-COUNSEL FOR THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS
### FOR THE PERIOD FROM OCTOBER 1, 2020 THROUGH MARCH 31, 2021

> **A HEARING WILL BE CONDUCTED ON THIS MATTER ON MAY 20 2021, AT 1:30 P.M. BY TELEPHONE THROUGH THE DIAL-IN FOR SECTION A 1-888-684-8852; CONFERENCE CODE 9318283. IF YOU OBJECT TO THE RELIEF REQUESTED IN THIS PLEADING, YOU MUST RESPOND IN WRITING. UNLESS DIRECTED OTHERWISE BY THE COURT, YOU MUST FILE YOUR RESPONSE WITH THE CLERK OF THE BANKRUPTCY COURT NO LATER THAN SEVEN (7) DAYS BEFORE THE HEARING DATE. YOU MUST SERVE A COPY OF YOUR RESPONSE ON THE PERSON WHO SENT YOU THE NOTICE; OTHERWISE, THE COURT MAY TREAT THE PLEADING AS UNOPPOSED AND GRANT THE RELIEF REQUESTED.**

Pachulski Stang Ziehl & Jones LLP ("PSZJ" or the "Firm"), co-counsel for the Official

Committee of Unsecured Creditors (the "Committee") of The Roman Catholic Church of the

Archdiocese of New Orleans (the "Debtor"), hereby submits its *Second Interim Application for*

*Allowance and Payment of Compensation and Reimbursement of Expenses of Pachulski Stang Ziehl*

*& Jones LLP, as Co-Counsel for the Official Committee of Unsecured Creditors for the Period From*

---

[3] The last four digits of the Debtor's federal tax identification number are 8966. The Debtor's principal place of business is located at 7887 Walmsley Ave., New Orleans, LA 70125.

*October 1, 2020 Through March 31, 2021* (the "Application"). In support of the Application, PSZJ respectfully represents as follows:

## I. **INTRODUCTION**

In this Application, the Firm seeks interim allowance and payment, to the extent unpaid, of the amounts set forth below for work performed from October 1, 2020 through March 31, 2021.

| | | **REQUESTED** | | **FEES (AFTER ALL REDUCTIONS)** | **80% FEES; 100% EXPENSES** | | |
|---|---|---|---|---|---|---|---|
| **Period Covered** | **Fees (at Standard Rates)** | **(Reductions from Standard Rates)** | **(Further Voluntary Reductions)** | **Fees** | **80% Fees** | **100% Expenses** | **20% Amount of Holdback** |
| 10/1/2020– 10/31/2020 | $98,975.00 | $28,697.50 | | $70,277.50 | $56,222.00 | $1,830.89 | $14,055.50 |
| 11/1/2020– 11/30/2020 | $190,422.00 | $55,214.50 | | $135,207.50 | $108,166.00 | $1,810.71 | $27,041.50 |
| 12/1/2020- 12/31/2020 | $191,978.00 | $59,873.00 | | $132,105.00 | $105,684.00 | $7,674.83 | $26,421.00 |
| 1/1/2021 – 1/31/2021 | $116,035.50 | $39,423.50 | $678.50 | $75,933.50 | $60,746.80 | $1,398.89 | $15,186.70 |
| 2/1/21 – 2/28/21 (monthly fee statement not filed) | $102,260.00 | $37,406.50 | $884.00 | $63,969.50 | N/A | $639.70 | N/A |
| 3/1/21 – 3/31/21 (monthly fee statement not filed) | $245,609.50 | $75,744.50 | $4,402.50 | $165,462.50 | N/A | $1,097.23 | N/A |
| **TOTAL** | **$945,280.00** | **$296,359.50** | **$5,965.00** | **$642,955.50** | **$330,818.80** | **$14,452.25** | **$82,704.70** |
| **AMOUNT PAID PURSUANT TO MONTHLY FEE STATEMENTS:** **$281,388.43** | | | | | | | |

| | | REQUESTED | | FEES (AFTER ALL REDUCTIONS) | 80% FEES; 100% EXPENSES | | |
|---|---|---|---|---|---|---|---|
| Period Covered | Fees (at Standard Rates) | (Reductions from Standard Rates) | (Further Voluntary Reductions) | Fees | 80% Fees | 100% Expenses | 20% Amount of Holdback |
| **AMOUNT UNPAID AND OWING:**<br><br>**$376,019.32** | | | | | | | |

## II.    JURISDICTION AND VENUE

1.      The Court has jurisdiction to consider this Application pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).

2.      Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3.      The bases for the relief requested herein are sections 330 and 331 of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "Bankruptcy Code"), Rules 2014 and 2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), Rules 2014-1 and 2016-1 of the Bankruptcy Local Rules for the Eastern District of Louisiana (the "Local Rules"), Section XIII(B) of the Court's *December 4, 2019 General Order Regarding Procedures of Complex Chapter 11 Cases* (the "Complex Case Order"), and the United States Trustee *Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses by Attorneys in Larger Chapter 11 Cases* (the "UST Guidelines").

### III.    BACKGROUND

**A.    Introduction**

4.    On May 1, 2020 (the "Petition Date"), The Roman Catholic Church of the Archdiocese of New Orleans (the "Archdiocese") filed a voluntary petition for relief under the Bankruptcy Code.

5.    The Debtor remains in possession of its property and is managing its business as a debtor in possession pursuant to §§ 1107(a) and 1108 of the Bankruptcy Code, 11 U.S.C. § 101 *et. seq.*

6.    On May 20, 2020, the Office of the United States Trustee for Region 5 (the "U.S. Trustee") appointed the Committee pursuant to section 1102(a)(1) of the Bankruptcy Code [Docket No. 94].

7.    On May 22, 2020, the Committee conducted its first meeting and at that meeting unanimously selected PSZJ and Locke Lord LLP ("Locke Lord") to serve as co-counsel.

**B.    Employment of the Firm**

8.    On June 22, 2020, the Committee filed an *Application to Employ Pachulski Stang Ziehl & Jones LLP as Co-Counsel* [Docket No. 181] (the "Retention Application").  As more fully described in the Retention Application, the Committee retained the Firm to render legal services to the Committee in this chapter 11 case (the "Bankruptcy Case").

9.    On July 17, 2020, this Court entered the *Order Authorizing the Employment and Retention of Pachulski Stang Ziehl & Jones LLP as Co-Counsel for the Official Committee of Unsecured Creditors* [Docket No. 257] (the "Retention Order").  The Retention Order approved the Firm's retention as the Committee's co-counsel in this Bankruptcy Case.

## IV.    WORK PERFORMED AND RESULTS OBTAINED / EXTRAORDINARY CIRCUMSTANCES

10.    The Firm provided, and continues to provide, extensive legal services to the Committee in this Bankruptcy Case.  The Firm has attached to this Application copies of the Firm's Monthly Fee Statements to which are appended Invoices (the "Invoices") setting forth the time-keeping entries generated by those Firm personnel who worked on this matter during the Application Period of October 1, 2020 through March 31, 2021.

11.    The Committee and its counsel have undertaken strenuous efforts to move this case forward towards a resolution of creditor claims, to achieve the goal of the most favorable resolution to unsecured creditors possible.[4]

12.    The actions undertaken include the following:

**a.    Action to Move Forward Resolution of Claims, 2004 Motion and Document Requests, and Plan Negotiations**

The Committee recognizes that, if this case is not dismissed, that the most likely outcome and resolution of claims will come through a plan of reorganization.  To that end, the Committee has worked to move this process forward, beginning with a comprehensive investigation and analysis of the Debtor's financial circumstances and structure, which is necessary to inform negotiations and mediation concerning potential resolution of claims.

The Committee, together with its counsel, has undertaken significant work in this regard, including without limitation during the Application Period:

- Investigation, including through analysis of information and documents provided and to be provided by the Debtor.  During the Application Period, the Committee formulated and sent to the Debtor comprehensive document

---

[4] During the Application Period, the Committee was the sole unsecured creditors committee in this case.  Pursuant to the Court's February 8, 2021 Order [Docket No. 746], a committee of commercial unsecured creditors was appointed as of March 5, 2021.  In addition, the Motion to Dismiss Chapter 11 Case [Docket No. 203] is still pending, and the Committee reserves all rights in connection with that motion.

and information requests, and as became necessary, formulated and filed a Rule 2004 motion to formalize the requests.  The Committee negotiated with the Debtor concerning the requests and addressed numerous objections and limitations proposed by the Debtor, resulting in an agreed order granting the Rule 2004 motion and providing a timeline for the Debtor's formal response to the document requests and production of documents.  When the Debtor's formal response included numerous objections, the Committee negotiated with the Debtor in an attempt to resolve the objections, and when the discussions reached an impasse, the Committee formulated and filed a motion to compel the production of the requested documents, and digested, researched and prepared a reply to the Debtor's opposition to the motion to compel.  Throughout this process, the Committee communicated often with the Debtor regarding document production issues and reviewed the documents produced. The Committee also prepared and filed a Rule 2004 motion to obtain documents from the Debtor's captive insurance company, as the Debtor claimed that it did not have access to the requested documents. The parties reached agreement on an order granting this Rule 2004 motion. The Committee has also formulated and sent document and information requests to the more than 150 affiliates of the Debtor. The Committee also engaged in extensive discussions with the Debtor regarding the valuation of the Debtor's extensive real property holdings and the retention of experts to conduct the valuations.

- Analysis and preliminary review of non-abuse claims (the abuse claims bar date occurred after the end of the Application Period).

- Review of potential mediator candidates and mediation structure.

- Review and investigation of potential plan structuring and terms including financial and non-monetary terms.

      **b.**    **Rule 9019 Motion Concerning Bond Trustee and Request Concerning Appointment of Second Committee and/or Reconstitution of Committee**

During the Application Period, the Committee was required to address two matters concerning the Bond Trustee.  First, the Committee responded to, and negotiated a resolution of, the extraordinary and unprecedented request by the Bond Trustee for payment of pre- and post-petition interest and attorney's fees, in advance of filing and confirmation of a plan.  After necessary factual and legal analysis was performed, the Committee negotiated significant changes includes withdrawal of the request for payment of attorney's fees, and reservation of rights to protect the rights of the unsecured creditors in light of the uncertain outcome of this case.

12

Second, the Bond Trustee filed a motion [Docket No. 521] to reconstitute the Committee and/or for appointment of a second unsecured creditors committee.  The Committee was forced to respond to a myriad of positions and allegations made by the Bond Trustee and the Debtor.  This contested matter included a December 17, 2020 trial with four witnesses, extensive document discovery and four depositions, and resolution of issues including privilege and confidentiality of Committee materials.   Discovery propounded by the Bond Trustee (with access also requested by the Debtor) implicated more than 4,200 documents, with more than 12,000 pages ultimately produced by the Committee.  (More than 2,600 pages of material were also produced by the Bond Trustee and reviewed.)

### c.     Other Motions and Requests for Relief

Additional matters include:

- Addressing motions to lift stay, motion for protective order, motion for authority to dedicate servitude, Section 363 motion to sell property, a Rule 9019 motion to settle matters in connection with succession proceedings, and a motion for relief based on allegations of willful violation of the automatic stay

- Responding to discovery requests propounded by the Debtor in connection with the motion for relief based on allegations of willful violation of the automatic stay, including review of approximately 1100 documents and production of responsive, non-privileged documents

- Confirming noticing and service matters

### V.     NATURE AND EXTENT OF LEGAL SERVICES PROVIDED

13.     This Application has been prepared in accordance with sections 330 and 331 of the Bankruptcy Code, Rules 2014 and 2016 of the Bankruptcy Rules, Rules 2014-1 and 2016-1 of the Local Rules, the UST Guidelines, and Section XIII(B) of the Court's *December 4, 2019 General Order Regarding Procedures for Complex Chapter 11 Cases* (the "Complex Case Order").

DOCS_LA:336999.5 05067/002

14.     On January 27, 2021, PSZJ submitted its fifth monthly fee statement (the "<u>Fifth Monthly Fee Statement</u>") covering the period from October 1, 2020 through October 31, 2020. PSZJ incurred fees at its standard rates of $98,975.00.  After the reduction due to reduced rates of $28,697.50, PSZJ's total fees for the Fifth Monthly Statement are in the amount of $70,277.50. Thus, in its Fifth Monthly Fee Statement, PSZJ requested an interim allowance of reduced fees in the amount of $70,277.50 and further requested payment of 80% of such reduced fees in the amount of $56,222.00 and 100% of expenses in the amount of $1,830.89 for a total amount of $58,052.89. Attached hereto as **Exhibit A** is a true and correct copy of the Fifth Monthly Fee Statement.

15.     On January 27, 2021, PSZJ submitted its sixth monthly fee statement (the "<u>Sixth Monthly Fee Statement</u>") covering the period from November 1, 2020 through November 30, 2020. PSZJ incurred fees at its standard rates of $190,422.00.  After the reduction due to reduced rates of $55,214.50, PSZJ's total fees for the Sixth Monthly Statement are in the amount of $135,207.50. Thus, in its Sixth Monthly Fee Statement, PSZJ requested an interim allowance of reduced fees in the amount of $135,207.50 and further requested payment of 80% of such reduced fees in the amount of $108,166.00 and 100% of expenses in the amount of $1,810.71 for a total amount of $109,976.71.  Attached hereto as **Exhibit B** is a true and correct copy of the Sixth Monthly Fee Statement.

16.     On January 27, 2021, PSZJ submitted its seventh monthly fee statement (the "<u>Seventh Monthly Fee Statement</u>") covering the period from December 1, 2020 through December 31, 2020. PSZJ incurred fees at its standard rates of $191,978.00.  After the reduction due to reduced rates of $59,873.00, PSZJ's total fees for the Seventh Monthly Statement are in the amount of $132,105.00. Thus, in its Seventh Monthly Fee Statement, PSZJ requested an interim allowance of reduced fees in the amount of $132,105.00 and further requested payment of 80% of such reduced fees in the

amount of $105,684.00 and 100% of expenses in the amount of $7,674.83 for a total amount of $113,358.83.  Attached hereto as **Exhibit C** is a true and correct copy of the Seventh Monthly Fee Statement.

17.     On March 25, 2021, PSZJ submitted its eighth monthly fee statement (the "Eighth Monthly Fee Statement") covering the period from January 1, 2021 through January 31, 2021.  PSZJ incurred fees at its standard rates of $116,035.50.  After the reduction due to reduced rates of $39,423.50 and additional fee write-offs of $678.50, PSZJ's total fees for the Eighth Monthly Statement are in the amount of $75,933.50.  Thus, in its Eighth Monthly Fee Statement, PSZJ requested an interim allowance of reduced fees in the amount of $75,933.50 and further requested payment of 80% of such reduced fees in the amount of $60,746.80 and 100% of expenses in the amount of $1,398.89 for a total amount of $62,145.69.   Attached hereto as **Exhibit D** is a true and correct copy of the Eighth Monthly Fee Statement.

18.     Attached hereto as **Exhibit E** is a true and correct copy of PSZJ's invoice for the period February 1, 2021 through February 28, 2021, totaling $64,609.39, representing $63,969.50 in fees incurred  (after the reduction of the Firm's standard rates and additional voluntary reductions) and $639.70 in costs advanced.  These fees and expenses have not been the subject of a prior monthly fee statement.

19.     Attached hereto as **Exhibit F** is a true and correct copy of PSZJ's invoice for the period March 1, 2021 through March 31, 2021, totaling $166,559.73, representing $165,462.50 in fees incurred (after the reduction of the Firm's standard rates and additional voluntary reductions) and $1,097.23 in costs advanced.  These fees and expenses have not been the subject of a prior monthly fee statement.

DOCS_LA:336999.5 05067/002

20.     PSZJ seeks interim allowance of fees for professional services rendered during the period from October 1, 2020 through March 31, 2021 (the "Application Period") in the amount of $642,955.50 and reimbursement of actual and necessary expenses incurred during the Application Period in the amount of $14,452.25 for a total allowance of $657,407.75, and requests payment of such fees and costs to the extent unpaid.  During the Application Period, PSZJ's attorneys and paraprofessionals expended a total of 1,004.20 hours for which compensation is requested.

21.     The fees charged by PSZJ in these cases are billed in accordance with its billing rates and procedures set forth in the Retention Application.

22.     The standard hourly rates for the PSZJ attorneys working on this matter range from $925 to $1,345 per hour for partners, and $675 to $950 per hour for of counsel.  The standard hourly rate for paraprofessionals range from $150 to $460 per hour.  Such fees are reasonable based on the customary compensation charged by comparably skilled practitioners in comparable non-bankruptcy cases in a competitive national legal market.  However, as noted above, the Firm agreed to a maximum hourly rate of $700 per attorney in this case.

23.     Pursuant to the UST Guidelines, attached hereto as **Exhibit G** is a summary setting forth all professionals and paraprofessionals employed by PSZJ who have performed services in this Chapter 11 Case during the Application Period, the capacities in which each such individual is employed by PSZJ, the hourly billing rate charged by PSZJ for services performed by such individual, and the aggregate number of hours expended and fees billed.

24.     The Firm provided, and continues to provide, extensive legal services to the Committee in this Bankruptcy Case.  The Firm has attached to this Application copies of the Firm's Invoices (the "Invoices") setting forth the time-keeping entries generated by those Firm personnel who worked on this matter during the Application Period from October 1, 2020 through March 31,

2021.[5]

## VI.   SUMMARY OF LEGAL SERVICES RENDERED BY CATEGORY

25.     The services rendered by PSZJ during the Application Period can be grouped into the

categories set forth below.  PSZJ attempted to place the services provided in the category that best

relates to such services.  However, because certain services may relate to one or more categories,

services pertaining to one category may in fact be included in another category.  These services

performed, by categories, are generally described below; with a more detailed identification of the

actual services provided set forth on the attached Invoices, which identify the attorneys and

paraprofessionals who rendered services relating to each category, along with the number of hours

for each individual and the total compensation sought for each category.

**A.**     **Asset Analysis/Recovery**

26.     Time billed to this category related to work regarding asset analysis and recovery

issues.  During the Application Period, the Firm, among other things:   (1) reviewed and analyzed

discovery issues related to the Debtor's financial condition; (2) reviewed and analyzed recent

disclosures by the Debtor and religious orders regarding abusers; (3) reviewed and analyzed credit

card issues; (4) reviewed and analyzed real estate valuation and pending sale issues; (5) reviewed

and analyzed legal descriptions of real property owned by the Debtor; (6) reviewed and analyzed

issues regarding a Bankruptcy Rule 2004 examination relating to Captive Insurance; (7) reviewed

and analyzed appraisal issues; and (8) corresponded and conferred regarding asset analysis and

recovery issues.

---

[5] True and correct copies of the Invoices are appended to the Firm's monthly fee statements attached to the Application as
**Exhibits "A", "B", "C" "D",** or attached without monthly fee statements as **Exhibits E and F**, and are incorporated
herein by reference.

27.     The Firm expended 20.80 hours of professional time on services in this category. The Firm's professional fees in this category total $10,395.50.

**B.      Bankruptcy Litigation**[6]

28.     Time billed to this category related to work regarding motions, adversary proceedings and other litigation matters in the Bankruptcy Court.  During the Application Period, the Firm, among other things:  (1) reviewed and analyzed issues regarding a Common Interest Agreement; (2) performed research, and prepared a spreadsheet, regarding actions against the Debtor and priests; (3) reviewed and analyzed Bankruptcy Rule 9019 motion issues relating to the Debtor and TMI; (4) performed work regarding a third round of discovery requests; (5) performed work regarding a stipulation concerning discovery on the TMI Bankruptcy Rule 9019 motion; (6) reviewed and analyzed issues regarding Fr. Wigglesworth; (7) reviewed and analyzed committee composition issues; (8) reviewed and analyzed issues regarding the basis to object to payments to credibly accused priests; (9) performed work regarding Bankruptcy Rule 2004 document requests; (10) prepared for and attended a hearing on October 22, 2020 on the restructuring support agreement motion; (11) reviewed and analyzed issues regarding post-petition interest; (12) reviewed and analyzed a motion regarding formation of a new committee (13) reviewed and analyzed issues concerning a potential response to the motion regarding formation of a new committee; (14) reviewed and analyzed a proposed settlement agreement regarding its potential effect on Plan alternatives; (15) reviewed and analyzed confidentiality issues; (16) attended to issues regarding a stipulation relating to a restructuring support agreement; (17) performed work regarding an opposition to motion regarding formation of new committee; (18) reviewed and analyzed the standard of review related to United States Trustee decisions regarding committees; (19) reviewed

_____

[6] This category includes a small amount of time and fees from the Hearings category.

and analyzed the TMI discovery requests to the Committee and United States Trustee; (20) prepared for and attended a status conference on the TMI motion to appoint new committee; (21) reviewed and analyzed litigation strategy issues regarding the TMI motion; (22) performed work regarding a stipulation relating to unsealing exhibits; (23) performed work regarding *pro hac vice* motions; (24) prepared for and attended a meet and confer with TMI counsel; (25) reviewed and analyzed attorney client privilege issues; (26) reviewed and analyzed a TMI motion to bifurcate; (27) reviewed and analyzed issues regarding the standard to determine adequate representation; (28) prepared for and attended a scheduling conference on November 13, 2020; (29) performed work regarding responses to TMI discovery requests; (30) reviewed and analyzed documents in response to TMI document requests; (31) attended to issues regarding deposition scheduling; (32) reviewed and analyzed issues regarding TMI's requests for admission; (33) performed work regarding scheduling orders; (34) reviewed and analyzed documents and pleadings in preparation for depositions; (35) reviewed and analyzed issues regarding depositions of Committee members; (36) reviewed and analyzed privilege issues regarding to depositions; (37) prepared for and attended the deposition of Kevin Debrovo; (38) prepared for and attended the deposition of James Adams; (39) reviewed and analyzed issues regarding adjournment of depositions until emergency hearing; (40) reviewed and analyzed issues regarding assertion of committee privilege; (41) reviewed and analyzed the Debtor's and TMI's motions to compel discovery and performed work regarding oppositions; (42) reviewed and analyzed a motion to sell property and reservation of rights issues; (43) prepared for and attended a hearing on December 4, 2020 regarding the emergency motions of the Debtor and TMI and request to limit depositions; (44) reviewed and analyzed issues regarding TMI's breach of duties; (45) reviewed and analyzed issues regarding a privilege log; (46) prepared for and attended a continued hearing on December 7, 2020 regarding the TMI motion to compel;

(47) reviewed and analyzed proofs of claim regarding potential qualified creditors to serve on the Committee; (48) attended to issues regarding hearing transcripts; (49) prepared for and attended the Jackie Berheolt deposition; (50) performed work regarding an opposition brief, and proposed exhibit and witness lists in the TMI matter; (51) reviewed and analyzed the exhibit and witness lists of TMI and considered objection issues; (52) reviewed and analyzed the UST opposition to TMI motion; (53) reviewed and analyzed witness strategy issues for TMI evidentiary hearing; (54) reviewed and analyzed the Debtor's objection to discovery requests; (55) attended to issues regarding joint exhibits, witness lists and allocation of time; (56) reviewed and analyzed a motion to quash subpoenas and TMI opposition; (57) reviewed and analyzed the Debtor's response to TMI motion; (58) attended to issues regarding a request for status conference; (59) performed work regarding preparation for examination and cross-examination of witnesses; (60) prepared for and attended a hearing on December 15, 2020 on the motion to quash and status conference; (61) reviewed and analyzed a TMI reply brief; (62) reviewed and analyzed issues regarding the use of depositions in lieu of live testimony; (63) performed work regarding exhibit binders and an opening statement; (64) reviewed and analyzed the Debtor's response to document requests; (65) prepared for and attended a December 17, 2020 fee hearing and continued trial on the TMI motion to reconstitute the committee; (66) performed work regarding a meet and confer analysis chart regarding the Debtor's responses and objections to Bankruptcy Rule 2004 document requests; (67) performed work regarding a post-hearing brief; (68) reviewed and analyzed depositions and other documents for underlying information regarding Debtor records; (69) reviewed and analyzed real property valuation issues; (70) reviewed and analyzed strategy issues regarding a meet and confer on Bankruptcy Rule 2004 issues; (71) prepared for and participated in a telephonic meet and confer on January 7, 2021; (72) reviewed and analyzed a protective order regarding requirements for discovery

purposes; (73) reviewed and analyzed documents produced by the Debtor on January 8, 2021;

(74) maintained and updated a chart of documents produced by the Debtor; (75) performed work

regarding a revised Bankruptcy Rule 2004 motion for production of documents and related exhibits

and declarations; (76) reviewed and analyzed issues regarding insurance policies; (77) reviewed and

analyzed the Debtor's opposition to expedited hearing on Bankruptcy Rule 2004 motion;

(78) reviewed and analyzed issues regarding the employment of real estate appraisers; (79) reviewed

and analyzed an Annual Report; (80) reviewed and analyzed an updated insurance summary;

(81) reviewed and analyzed the Debtor's opposition to Bankruptcy Rule 2004 motion and related

exhibits; (82) reviewed and analyzed mediation issues and performed work regarding a spreadsheet;

(83) performed work regarding a reply in support of Bankruptcy Rule 2004 motion directed to the

Debtor; (84) reviewed and analyzed dockets and Plan and Disclosure Statement issues relating to

mediation issues; (85) performed work relating to an order regarding abuse claim access; (86)

performed work regarding a Bankruptcy Rule 2004 motion directed to insurance companies; (87)

reviewed and analyzed strategy issues relating to insurance discovery; (88) reviewed and analyzed

issues regarding a Bankruptcy Rule 2004 motion directed to Archdiocese of New Orleans Indemnity,

Inc.; (89) reviewed and analyzed issues regarding financial databases; (90) reviewed and analyzed

documents that the Debtor produced on February 28, 2021; (91) reviewed and analyzed issues

regarding real property disclosures; (92) reviewed and analyzed issues regarding an updated real

estate list; (93) reviewed and analyzed issues regarding personal property valuations; (94) reviewed

and analyzed issues regarding Belvedere; (95) reviewed and analyzed the Debtor's objections and

responses dated March 12, 2021 and performed work regarding a motion to compel; (96) prepared

for and attended a telephonic court hearing on March 18, 2021; (97) prepared for and attended a

telephonic meet and confer on March 19, 2021 regarding the motion to compel; (98) performed work

regarding a motion to modify mediation; (99) attended to issues regarding a potential partial resolution of motion to compel issues; (100) reviewed and analyzed issues regarding claims access and insurance records; and (101) corresponded and conferred regarding bankruptcy litigation issues.

29.     The Firm expended 510.30 hours of professional time on services in this category. The Firm's professional fees in this category total $351,424.50.

## C.     Case Administration

30.     This category includes work related to administering the cases in an efficient manner. During the Application Period, the Firm, among other things:  (1) reviewed and analyzed pleadings filed by the Indenture Trustee; (2) maintained a memorandum of critical dates; (3) maintained document control; (4) attended to notice issues; (5) reviewed and analyzed fee issues; (6) performed work regarding a memoranda summarizing case proceedings; (7) performed work regarding a creditor website; (8) reviewed and analyzed issues regarding amended Schedules and Statements; (9) attended to media issues; and (10) conferred and corresponded regarding case administration issues.

31.     The Firm expended 30.80 hours of professional time on services in this category. The Firm's professional fees in this category total $15,284.50.

## D.     Claims Administration/Objection

32.     This category includes work related to claims administration and claims objection issues.  During the Application Period, the Firm, among other things:  (1) reviewed and analyzed issues regarding lists of perpetrators against whom civil cases or criminal charges have been filed, and performed work regarding a Committee website; (2) performed research regarding actions against the Debtor, priests and other personnel and institutions, and performed work regarding a spreadsheet; (3) reviewed and analyzed a bar date order and notices; (4) reviewed and analyzed ad copy and publication information; (5) attended to issues regarding letters to Catholic households; (6)

reviewed and analyzed sexual abuse notice issues and performed work regarding Bar Date Notices; (7) reviewed and analyzed the Debtor's proposed changes to forms of ads and notices of bar dates; (8) prepared memoranda regarding bar date ads, notices of bar date and bar date publication programs; (9) reviewed and analyzed information concerning additional perpetrators; (10) performed work regarding an updated bar date spreadsheet; (11) reviewed and analyzed claim review issues; (12) reviewed and redacted survivor claims; (13) reviewed and analyzed issues regarding duplicate claims; (14) reviewed and analyzed the bar date order relating to release of information regarding claims; (15) reviewed and analyzed claims and potential defense issues; (16) reviewed and analyzed statute of limitations issues; (17) reviewed and analyzed prescription issues; (18) reviewed and analyzed issues regarding renunciation of limitations period and acknowledgment of claims; and (19) corresponded and conferred regarding claim issues.

33.     The Firm expended 159.10 hours of professional time on services in this category. The Firm's professional fees in this category total $82,153.00.

**E.     Compensation of Professionals**

34.     This category includes work related to compensation of the Firm's professionals. During the Application Period, the Firm, among other things**:**  (1) performed work regarding the Firm's monthly fee statements; (2) performed work regarding the Firm's First interim fee application; (3) attended to notice issues; and (4) corresponded and conferred regarding compensation issues.

35.     The Firm expended 73.00 hours of professional time on services in this category. The Firm's professional fees in this category total $44,382.50.

**F.**   **Compensation of Professionals/Others**

36.     This category includes work related to compensation of professionals, other than the Firm.  During the Application Period, the Firm, among other things**:**  (1) reviewed and analyzed complex case procedures regarding first interim fee requests; (2) performed work regarding the Kinsella Media First interim fee application; (3) performed work regarding the Kinsella Media and BRG monthly statements; and (4) corresponded and conferred regarding compensation issues.

37.     The Firm expended 13.70 hours of professional time on services in this category. The Firm's professional fees in this category total $7,516.00.

**G.**   **Fee/Employment Application**

38.     This category includes work related to professional fee and employment applications issues.  During the Application Period, the Firm, among other things:  (1) reviewed and analyzed United States Trustee comments regarding fee applications; (2) performed work regarding the Firm's monthly fee statements; (3) attended to issues regarding the Kinsella Media, Jones Walker and BRG fee statements; (4) reviewed and analyzed ordinary course professionals issues; (5) prepared for and attended a fee application hearing on December 17, 2020; (6) performed work regarding the application to employ Zobrio; (7) performed work regarding the Firm's Second quarterly fee application; and (8) corresponded and conferred regarding fee and employment issues relating to professionals.

39.     The Firm expended 52.20 hours of professional time on services in this category. The Firm's professional fees in this category total $31,293.50.

**H.**   **General Creditors Committee**

40.     This category includes work related to general Committee issues.  During the Application Period, the Firm, among other things:  (1) reviewed and analyzed issues regarding

Bankruptcy Rule 2004 discovery; (2) reviewed and analyzed bar date issues; (3) maintained a work-in-progress memorandum; (4) prepared for and met with the Committee regarding case status and strategy issues; (5) reviewed and analyzed relief from stay issues; (6) attended to issues regarding a restructuring support agreement motion; (7) prepared for and met with State Court Counsel regarding case status and strategy issues; (8) reviewed and analyzed issues regarding pending motions; (9) reviewed and analyzed issues regarding reorganization principles; (10) reviewed and analyzed valuation issues; (11) attended to claims review issues; (12) reviewed and analyzed statute of limitations issues; (13) reviewed and analyzed mediation issues; (14) reviewed and analyzed channeling injunction issues; (15) reviewed and analyzed committee formation issues; (16) reviewed and analyzed fee payment issues; (17) reviewed and analyzed property sale and listing agreement issues; (18) reviewed and analyzed TMI discovery issues; (19) reviewed and analyzed Plan timing issues; (20) reviewed and analyzed issues regarding mediator candidates; (21) reviewed and analyzed the order and opinion on the TMI motion for additional committee; and (22) corresponded and conferred regarding Committee issues.

41.     The Firm expended 108.20 hours of professional time on services in this category. The Firm's professional fees in this category total $75,740.00.

**I.      Hearings**

42.     This category includes work related to attending hearings.  During the Application Period, the Firm attended a conference in chambers and a hearing regarding claims access.

43.     The Firm expended 1.30 hours of professional time on services in this category. The Firm's professional fees in this category total $910.00.

J.      **Insurance Coverage**

44.     This category includes work related to insurance issues.  During the Application Period, the Firm, among other things:  (1) reviewed and analyzed a coverage chart and issues regarding an insurance motion and document requests; (2) performed work regarding a Bankruptcy Rule 2004 motion directed to the Archdiocese of New Orleans Indemnity, Inc.; (3) reviewed and analyzed produced insurance documents; (4) prepared for and attended an in camera hearing on February 22, 2021 regarding insurance issues; and (5) conferred and corresponded regarding insurance issues.

45.     The Firm expended 24.70 hours of professional time on services in this category. The Firm's professional fees in this category total $16,810.00.

K.      **Mediation**

46.     This category includes work related to mediation issues.  During the Application Period, the Firm, among other things, reviewed and analyzed, and conferred, regarding mediation issues.

47.     The Firm expended 2.0 hours of professional time on services in this category. The Firm's professional fees in this category total $1,400.00.

L.      **Plan and Disclosure Statement**

48.     This category includes work related to Plan and Disclosure Statement issues.  During the Application Period, the Firm, among other things:  (1) reviewed and analyzed issues regarding child protection measures to be included in the Plan; (2) reviewed and analyzed a motion to extend the exclusivity periods, and performed work regarding a response to such motion; (3) reviewed and analyzed confidentiality issues; and (4) corresponded and conferred regarding Plan and Disclosure Statement issues.

49.     The Firm expended 4.20 hours of professional time on services in this category. The Firm's professional fees in this category total $2,940.00.

**M.     Retention of Professionals/Other**

50.     This category includes work related to issues regarding the retention of professionals, other than the Firm. During the Application Period, the Firm, among other things, preformed work regarding the retention of Zobrio as computer consultants to BRG.

51.     The Firm expended 1.90 hours of professional time on services in this category. The Firm's professional fees in this category total $1,330.00.

**N.     Stay Litigation**

52.     Time billed to this category relates to the automatic stay and relief from stay motions. During the Application Period, the Firm, among other things: (1) reviewed and analyzed a relief from stay motion and performed work regarding an opposition; (2) reviewed and analyzed stay violation issues; and (3) conferred regarding stay issues.

53.     The Firm expended 2.00 hours of professional time on services in this category. The Firm's professional fees in this category total $1,376.00.

**VII.     ACTUAL AND NECESSARY EXPENSES INCURRED BY PSZJ**

54.     As summarized below, PSZJ has incurred a total of $14,452.25 in expenses on behalf of the Committee during the Application Period. PSZJ customarily charges $0.10 per page for photocopying expenses. PSZJ's photocopying machines automatically record the number of copies made when the person that is doing the copying enters the client's account number into a device attached to the photocopier. PSZJ summarizes each client's photocopying charges on a daily basis.

55.     PSZJ charges $1.00 per page for out-going facsimile transmissions. There is no additional charge for long distance telephone calls on faxes. The charge for outgoing facsimile

transmissions reflects PSZJ's calculation of the actual costs incurred by PSZJ for the machines, supplies and extra labor expenses associated with sending telecopies and is reasonable in relation to the amount charged by outside vendors who provide similar services.  PSZJ does not charge the Committee for the receipt of faxes in this case.

56.     With respect to providers of on-line legal research services (*e.g.*, LEXIS and Westlaw), PSZJ charges the standard usage rates these providers charge for computerized legal research.  PSZJ bills its clients the actual amounts charged by such services, with no premium.  Any volume discount received by PSZJ is passed on to the client.

57.     PSZJ believes that the foregoing rates are the market rates that the majority of law firms charge clients for such services.  In addition, PSZJ believes that such charges are in accordance with the American Bar Association's ("ABA") guidelines, as set forth in the ABA's Statement of Principles, dated January 12, 1995, regarding billing for disbursements and other charges.

58.     The Firm's specific expenses are outlined below:

| Expense Category | Amount |
|---|---|
| Attorney Service | $112.00 |
| Bloomberg | $1,728.88 |
| Conference Call | $84.43 |
| Federal Express | $106.43 |
| Filing Fee | $41.00 |
| Lexis/Nexis-Legal Research | $434.30 |
| Outside Services | $1,500.00 |
| Pacer – Court Research | $277.40 |
| Postage | $92.85 |

| | |
|---|---|
| Reproduction Expense | $1,027.60 |
| Reproduction/Scan Copy | $1,170.00 |
| Research | $1,651.00 |
| Transcript | $6,226.36 |
| **TOTAL** | **$14,452.25** |

59.     The Firm requests that the Court grant it reimbursement for $14,452.25 in reimbursable expenses it incurred on the Committee's behalf during the Application Period.

## VIII.    <u>VOLUNTARY REDUCTIONS</u>

60.     For purposes of this Application, the Firm made certain voluntary reductions from the award sought as explained above.  The Firm's reduction in its standard rates resulted in a $296,359.50 reduction in its fees.  Further, the Firm took additional voluntary reductions that totaled $5,965.00, for a total of $302,324.50 in voluntary reductions taken by the Firm.  The Firm believes that these reductions are appropriate and reasonable.

DOCS_LA:336999.5 05067/002

### IX.   STATEMENT IN COMPLIANCE WITH RULE 2016 OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE

61.     As more fully described in the Retention Application, the Committee agreed to retain the Firm as their counsel and to compensate the Firm on an hourly basis in accordance with the Firm's retention application, plus reimbursement of the actual and necessary expenses that the Firm incurred in connection with the Bankruptcy Case.  All compensation for services rendered, and reimbursement for expenses incurred, are subject to this Court's approval in accordance with the Retention Order, Bankruptcy Code §§ 330 and 331, the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), the Local Bankruptcy Rules of the Eastern District of Louisiana (the "Local Bankruptcy Rules"), and other procedures that this Court may fix.  No entity has promised to compensate the Firm for any services rendered, or reimburse it for expenses incurred, in connection with this case except as this Court may approve.

62.     No agreement or understanding exists between the Firm and any other entity for the sharing of any compensation or reimbursement (i) that the Firm may receive for services rendered in, or in connection with, this Bankruptcy Case or (ii) that such other entity has already received or may receive for services that entity rendered in, or in connection with this Bankruptcy Case, except that the Firm will share any compensation or reimbursement it receives in connection with this Bankruptcy Case with its members, partners, associates, and other Firm employees (as originally disclosed in the Retention Application).

63.     As of today's date, the Firm has received $281,388.43 from the Debtor on its Fifth, Sixth, and Seventh Monthly Fee Statements.

### O.   THE REQUESTED COMPENSATION SHOULD BE ALLOWED

64.     Section 330 provides that a court may award a professional employed under 11 U.S.C § 328 "reasonable compensation for actual, necessary services rendered . . . and reimbursement for

actual, necessary expenses." *See* 11 U.S.C. Section 330(a)(1). Section 330 also sets forth the

criteria for the award of such compensation and reimbursement:

> In determining the amount of reasonable compensation to be awarded . . . , the court should consider the nature, the extent, and the value of such services, taking into account all relevant factors, including –
>
> (A)    the time spent on such services;
>
> (B)    the rates charged for such services;
>
> (C)    whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title;
>
> (D)    whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed;
>
> (E)    with respect to a professional person, whether the person is board certified or otherwise has demonstrated skill and experience in the bankruptcy field; and
>
> (F)    whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.
>
> 11 U.S.C. § 330(a)(3).

65.    Here, PSZJ respectfully submits that the services for which it seeks compensation in

this Application were, at the time rendered, believed to be necessary for, beneficial to, and in the

best interests of, the Committee. The services rendered by PSZJ were consistently performed in a

timely manner commensurate with the complexity, importance, and nature of the issues involved.

66.    PSZJ has a reputation for its expertise and experience in financial and bankruptcy

reorganizations and restructurings and as noted above, the compensation is reasonably based on

customary compensation charged by other practitioners in non-bankruptcy cases. Based on an

application of the above factors and its compliance with the UST Guidelines, PSZJ respectfully

submits that the compensation requested herein is reasonable in light of the nature, extent and value

of such services to the Committee and, accordingly, that approval of the compensation sought herein is warranted.

67.     Section 330 of the Bankruptcy Code authorizes the Court to award the Firm reasonable compensation for its actual and necessary legal services rendered and reimbursement of actual and necessary expenses incurred in the rendering of those legal services as counsel to the Committee in this case. Bankruptcy Code § 330(a)(1) provides as follows:

(a)(1)   After notice to the parties in interest and the United States Trustee and a hearing, and subject to sections 326, 328, and 329, the court may award to a trustee, a consumer privacy ombudsman appointed under section 332, an examiner, an ombudsman appointed under section 333, or a professional person employed under section 327 or 1103—

(A)     reasonable compensation for actual, necessary services rendered by the trustee, examiner, ombudsman, professional person, or attorney and by any paraprofessional person employed by any such person; and

(B)     reimbursement for actual, necessary expenses.

11 U.S.C. § 330(a)(1).

68.     This Application substantiates the total amount the Firm seeks for fees and expenses in accordance with this Court's standards applied to fee applications.  The factors that courts in this jurisdiction consider when making a discretionary award of reasonable attorneys' fees and reimbursable expenses were originally described in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974) (the "*Johnson* Factors").  The Fifth Circuit has applied the *Johnson* Factors to the determination of awards of attorneys' fees and expenses in bankruptcy cases.  *In re First Colonial Corp. of Am.*, 544 F.2d 1291 (5th Cir. 1977), *cert. denied* 431 U.S. 904 (1977).  Many of these *Johnson* Factors have now been codified at Bankruptcy Code § 330(a)(3).  11 U.S.C. § 330(a)(3).

69.     The *Johnson* Factors are summarized as follows: (1) the time and labor required; (2) the novelty and difficulty of the questions presented; (3) the skill required to perform the legal

services; (4) the preclusion of other employment by the attorneys due to acceptance of the

bankruptcy case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time

limitations imposed by the client or circumstances; (8) the amounts involved and the results

obtained; (9) the experience, reputation and ability of the attorneys; (10) the "undesirability" of the

case; (11) the nature and length of the professional relationship with the client; and (12) awards in

similar cases.[7]  Based upon the services described in this Application, the Firm respectfully

represents that it has fully satisfied the standards prescribed by the *Johnson* Factors.

**The Time and Labor Required**

70.    Firm attorneys and paraprofessionals, in the performance of legal services, expended

1,004.20 hours during the Application Period for a total fee of $642,955.50.[8]  Taking into account

the Firms' voluntary reductions, the blended hourly rate is therefore $640.26/hour. The names of the

professionals who worked on this case during the Application Period appear in the Invoices and on

the cover sheet attached to this Application.  The Firm submits that the time and labor these

professionals expended in the Bankruptcy Case are appropriate and reasonable and that this *Johnson*

Factor supports the Firm's requested award.  Further, the amount of time multiplied by a reduced,

and reasonable, fee suggests that the fee award is appropriate in this Circuit under the "lodestar"

doctrine.

---

[7] The factors enunciated in *Johnson* have been adopted by four other courts of appeals.  *See Boston & Maine Corp. v. Sheehan, Phinney, Bass & Green*, 778 F.2d 890, 896 (1st Cir. 1985); *Harman v. Levin*, 772 F.2d 1151, 1152-53 (4th Cir. 1985); *Mann v. McCombs*, 751 F.2d 286, 287-88 (8th Cir. 1984); *Yermakov v. Fitzsimmons*, 718 F.2d 1465, 1471 (9th Cir. 1983).

[8] This takes into account the Firm's voluntary reductions.

**The Novelty and Difficulty of the Questions Presented**

71.     This Bankruptcy Case presents many novel and difficult questions.  Addressing these

questions have necessitated considerable legal expertise.  In light of these considerations, this

*Johnson* Factor strongly favors awarding the Firm the fees and expenses it has requested.

**The Skill Required to Perform the Services**

72.     Representing the Committee in this Bankruptcy Case required considerable skill and

expertise in bankruptcy issues.  The Firm has considerable experience in complex bankruptcy

matters.  Further, the Firm has represented numerous creditors' committees in cases with abuse

claims, and has extensive experience in cases involving dioceses and archdioceses of the Catholic

Church, and thus has a unique understanding of the structure and history of that institution and its

sub-entities, and of the nature of its assets.  Applicant submits that this expertise is also relevant as a

factor suggesting a fee award under Local Rule 2016-1 (A)(13). The Firm employed attorneys and

staff persons of varying levels of skill and expertise to efficiently resolve the issues in this case.  The

Firm strived to limit the number of attorneys who worked on this case and to use the most

appropriate attorney or staff person for any given task.  For this reason, the compensation the Firm is

requesting for the services rendered by its attorneys and staff persons compares favorably to the

compensation awarded in other bankruptcy cases of a similar size and complexity.  This factor

therefore supports the award the Firm has requested.

**Preclusion of Other Employment Due to Acceptance of the Case**

73.     The Firm has not declined any representation solely because it served as counsel for

the Committee in this Bankruptcy Case.  Nonetheless, the Firm did shift certain resources from

matters involving other clients to address issues arising in this case.  In particular, some matters

during the Application Period involved disputes with the Debtor that involved discovery and

34

contested evidentiary hearings, and included many tasks that had to be performed on an expedited

bases.  For this reason, this factor favors granting the award the Firm has sought.

**The Customary Fee**

74.     The Firm computed the amount of compensation it seeks in this Application

according to the rates the Firm previously disclosed in the Retention Application.  The Firm also

maintained detailed time and disbursement records for all legal services for which it seeks

compensation. The rates charged for the Firm's legal services in this case are comparable to other

similar-situated firms. These rates also reflect substantial voluntary reductions of $302,324.50,

which are a product of the voluntary reductions discussed above.  Thus, the blended hourly rate on

this matter of $640.26 /hour is reasonable and reflects market rates for legal services in Chapter 11

bankruptcy cases of this size and complexity.  Similarly, the amounts sought for the reimbursement

of expenses reflect the prevailing rates for expense reimbursement by law firms similar in size and

reputation to the Firm.

**Whether the Fee is Fixed or Contingent**

75.     The Firm's fees for services rendered in this Bankruptcy Case are based on its hourly

rates, subject in all respects to this Court's approval.  The Firm has not requested any contingent fee

in this Bankruptcy Case.

**Time Limitations Imposed by the Client or Other Circumstances**

76.     The Firm has had to respond to tight time-constraints arising in this Bankruptcy Case.

Matters often arose throughout the Application Period that required the Firm's immediate attention.

Again, the exigent nature of these matters demanded that the Firm's professionals respond on very

short notice to complicated and developing events as they unfolded.  This imposed serious time

demands on the Firm's personnel and required them to devote considerable legal resources to these

DOCS_LA:336999.5 05067/002

matters.  Taken together, these considerations suggest that this *Johnson* Factor supports the fee award requested.

**The Amount Involved and the Results Obtained**

77.    The Invoices summarize the individual tasks that Firm personnel performed during the Application Period as well as the amounts charged for those tasks.  The total fees the Firm seeks to approve in this Application are $642,955.50.  This figure is commensurate with the Firm's achievements.  This *Johnson* Factor strongly supports the fee award requested.

**The Experience, Reputation, and Ability of the Attorneys**

78.    The Firm's attorneys have significant experience in bankruptcy and other areas of the law, possess a high level of expertise, and have an excellent reputation in the business and legal communities.  In particular, the Firm's bankruptcy attorneys have appeared in bankruptcy cases throughout the United States and have provided services to secured creditors, unsecured creditors, creditors' committees, and debtors-in-possession.  The quality of the Firm's services is consistently high.  In addition, the Firm's attorneys also speak and write on various legal topics throughout the country.  As mentioned, the Firm has considerable expertise in cases, such as this one, involving numerous abuse claims and sub-entities of the Catholic Church.  The substantial experience, reputation, and ability of the Firm's attorneys working on this Bankruptcy Case favor granting the Firm the fee award it seeks.

**The "Undesirability" of the Bankruptcy Case**

79.    From the Firm's perspective, serving as counsel to the Committee in this Bankruptcy Case was not undesirable.  However, bankruptcy cases involved abuse claims and religious entities can involve intensive and hard-fought disputes, for example, regarding the claims process and the recovery and liquidation of assets.  These concerns mean that any law firm deciding to represent the

Committee could face potential fee risk and other uncertainties. This factor therefore favors granting the Firm the award it has requested.

**The Nature and Length of the Professional Relationship with the Client**

80.     The Firm has no prior professional relationship with the Committee, which was only formed after this case began.  However, members of the Firm have worked in similar matters, including coordinating issues with State Court counsel, thus making the representation of the Committee more efficient.  For this reason, this *Johnson* Factor supports granting the Firm its fee award in this case.

**Awards in Similar Cases**

81.     The fee award the Firm seeks compares favorably to awards granted in other bankruptcy cases with a size and complexity similar to this case, including cases in the Fifth Circuit. In light of these considerations, this last *Johnson* Factor also supports granting the Firm its award.

82.     In conclusion, the *Johnson* Factors favor granting the Firm the fee and expense award it seeks.

## XI.     RESERVATION OF RIGHTS

83.     It is possible that some professional time expended or expenses incurred by PSZJ are not reflected in this Application.  PSZJ reserves the right to file a supplemental fee application to submit additional fees and expenses not previously included in the Application, or to include such time and costs in a future fee application.

## XII.    NO PRIOR REQUEST

84.     No prior application for the relief requested herein has been made to this or any other court.

## XIII.  <u>CONCLUSION</u>

WHEREFORE, PSZJ respectfully requests that this Court enter an order (i) awarding PSZJ an interim allowance of fees for the Application Period in the amount of $642,955.50; (ii) awarding PSZJ reimbursement for actual and necessary expenses incurred in the amount of $14,452.25; (iii) authorizing and directing the Debtor to pay such allowed fees and costs, less amounts previously submitted; and (iv) granting such other or additional relief as is just and proper.

Dated:  April 29, 2021

Respectfully submitted,

<u>By: /s/ Linda F. Cantor</u>
James I. Stang (CA Bar No. 94435)
Linda F. Cantor (CA Bar No. 153762)
Pachulski Stang Ziehl & Jones LLP
10100 Santa Monica Blvd., Suite 1300
Los Angeles, CA  90067
Telephone:  (310) 277-6910
Facsimile:  (310) 201-0760
Email: jstang@pszjlaw.com
        lcantor@pszjlaw.com

*Co-Counsel to the Official Committee of Unsecured Creditors*