### UNITED STATES BANKRUPTCY COURT
### EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **IN RE:** | § | **Case No. 20-10846** |
| | § | |
| **THE ROMAN CATHOLIC CHURCH** | § | **Section "A"** |
| **OF THE ARCHDIOCESE OF NEW** | § | |
| **ORLEANS** | § | **Chapter 11** |
| | § | |
| **Debtor.[1]** | § | |
| | § | |

## SUMMARY COVER SHEET TO FIRST INTERIM APPLICATION FOR ALLOWANCE AND PAYMENT OF COMPENSATION AND REIMBURSEMENT OF EXPENSES OF BERKELEY RESEARCH GROUP LLP AS FINANCIAL ADVISORS FOR THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS <u>FOR THE PERIOD FROM JUNE 17, 2020 THROUGH MARCH 31, 2021</u>

| | | |
|---|---|---|
| **Name of Applicant:** | Berkeley Research Group, LLC | |
| **Applicant's Professional Role in Case** | Financial Advisor to the Official Committee of Unsecured Creditors | |
| **Date Order of Employment Signed** | Effective June 17, 2020 pursuant to Order dated August 25, 2020 [Docket No. 362] | |
| | **Beginning of Period** | **End of Period** |
| **Time period covered by this Application:** | 06/17/2020 | 03/31/2021 |
| **Time period(s) covered by prior Applications:** | N/A | N/A |
| **Total amounts awarded in all prior Applications:** | | N/A |
| **Total fees requested in this Application:** | | $252,386.00 |
| **Total hours covered by this Application:** | | $573.60 |

---

[1] The last four digits of the Debtor's federal tax identification number are 8966. The Debtor's principal place of business is located at 7887 Walmsley Ave., New Orleans, LA 70125.

| Average hourly rate: | 440.00 |
|---|---|
| Reimbursable expenses sought in this Application: | $3,889.52 |

BRG professionals who rendered services for the Official Committee of Unsecured Creditors (the "Committee") in this Chapter 11 case concerning the above captioned debtor and debtor-in-possession (the "Debtor") during this Application Period are listed below.

## SUMMARY OF HOURS BILLED BY PROFESSIONALS AND PARAPROFESSIONALS JUNE 17, 2020 THROUGH MARCH 31, 2021

| NAME OF PROFESSIONAL | TITLE | HOURLY RATE | TOTAL HOURS BILLED | TOTAL COMPENSATION |
|---|---|---|---|---|
| George Koutouras | Managing Director | $795 | 0.4 | $318.00 |
| Ernest Dixon | Managing Director | $695 | 1.2 | $834.00 |
| David Judd | Managing Director | $660 | 15.8 | $10,116.00 |
| Ozgur Kan | Managing Director | $600 | 28.9 | $17,340.00 |
| Paul Shields | Managing Director | $620 | 203.7 | $121,002.00 |
| Ray Strong | Managing Director | $590 | 9.2 | $5,345.50 |
| Matthew Babcock | Associate Director | $540 | 56.3 | $29,192.00 |
| Jared Funk | Senior Managing Consultant | $505 | 8.9 | $4,494.50 |
| Jeff Shaw | Senior Managing Consultant | $475 | 33.3 | $15,645.50 |
| Sarita Bhattacharya | Consultant | $325 | 27.3 | $8,872.50 |

2

| NAME OF PROFESSIONAL | TITLE | HOURLY RATE | TOTAL HOURS BILLED | TOTAL COMPENSATION |
|---|---|---|---|---|
| Nicholas Zeien | Consultant | $340 | 0.5 | $170.00 |
| Christina Tergevorkian | Senior Associate | $285 | 27.8 | $7,512.00 |
| Shelby Chaffos | Associate | $235 | 96.1 | $21,838.00 |
| Alisa Hulme | Case Assistant | $215 | 7.1 | $1,526.50 |
| Sherry Anthon | Case Assistant | $195 | 16.4 | $3,198.00 |
| Evelyn Perry | Case Assistant | $175 | 6.4 | $1,120.00 |
| Spencer Smith | Case Assistant | $150 | 3.0 | $450.00 |
| Victoria Calder | Case Assistant | $110 | 31.3 | $3,411.50 |
| **Total** | | | **573.60** | **$252,386.00** |

DOCS_LA:338150.2 05067/002

## COMPENSATION BY CATEGORY
## JUNE 17, 2020 THROUGH MARCH 31, 2021

| Code | Description | Hours | Amount |
|---|---|---|---|
| 100.00 | Case Background | 0.7 | $360.50 |
| 200.00 | Document / Data Analysis (General) | 2.0 | $1,165.00 |
| 200.10 | Document / Data Analysis (Data Room) | 0.2 | $118.00 |
| 200.20 | Document / Data Analysis (Financial Accounting) | 78.3 | $18,939.50 |
| 200.30 | Document / Data Analysis (Financial Accounting) – Accounting System | 8.9 | $5,096.50 |
| 200.50 | Document / Data Analysis (Related Non-Debtors) | 5.5 | $2,448.00 |
| 200.60 | Document / Data Analysis (PPP Loans) | 20.1 | $9,559.00 |
| 200.90 | Document / Data Analysis (Production Requests) | 55.5 | $26,901.00 |
| 210.00 | Bankruptcy Proceedings (Filings / Motion – General) | 0.2 | $118.00 |
| 211.03 | Bankruptcy Proceedings (Filings / Motion – Motions to Dismiss) | 200.7 | $86,516.50 |
| 220.00 | Debtors Operations / Monitoring (Monthly Operating Reports / Periodic Reporting) | 44.9 | $18,373.00 |
| 222.00 | Debtors Operations / Monitoring (Other Reports) | 0.3 | $154.50 |
| 300.00 | Asset Analysis (General – Debtors) | 8.1 | $3,793.50 |
| 330.00 | Asset Analysis (Real Property – Debtors) | 2.3 | $1,184.50 |
| 420.00 | Litigation Analysis (Expert Report Evaluation) | 6.3 | $3,784.50 |
| 600.00 | Claims / Liability Analysis (General) | 49.1 | $20,405.50 |

| Code | Description | Hours | Amount |
|------|-------------|-------|--------|
| 620.00 | Claims / Liability Analysis (Commercial Debt) | 9.9 | $5,880.00 |
| 1000.00 | Case Administration | 8.6 | $5,006.50 |
| 1010.00 | Employment Application | 1.7 | $875.50 |
| 1020.00 | Meeting Preparation & Attendance | 21.3 | $11,734.50 |
| 1040.00 | Hearing / Trial Preparation & Attendance | 4.4 | $2,722.00 |
| 1050.00 | Deposition Preparation & Attendance | 27.5 | $16,825.00 |
| 1060.00 | Fee Application Preparation & Hearing | 17.1 | $10,425.00 |
|  | **TOTAL** | **573.6** | **$252,386.00** |

DOCS_LA:338150.2 05067/002

The total amount of expenses by expense type for BRG during the Application Period is listed below.

**EXPENSES BY CATEGORY**
**JUNE 17, 2020 THROUGH MARCH 31, 2021**

| Expense Category | Amount |
|---|---:|
| Real Estate Consulting Services | $3,648.75 |
| Data Research | $158.77 |
| Economic Research | $75.00 |
| PACER – Court Research | $7.00 |
| **TOTAL** | **$3,889.52** |

## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **IN RE:** | § | **Case No. 20-10846** |
| | § | |
| **THE ROMAN CATHOLIC CHURCH** | § | **Section "A"** |
| **OF THE ARCHDIOCESE OF NEW** | § | |
| **ORLEANS** | § | **Chapter 11** |
| | § | |
| **Debtor.[2]** | § | |
| | § | |

---

## FIRST INTERIM APPLICATION FOR
## ALLOWANCE AND PAYMENT OF COMPENSATION AND REIMBURSEMENT
## OF EXPENSES OF BERKELEY RESEARCH GROUP AS
## FINANCIAL ADVISOR FOR THE OFFICIAL COMMITTEE OF UNSECURED
## CREDITORS FOR THE PERIOD FROM JUNE 17, 2020 THROUGH MARCH 31, 2021

> **A HEARING WILL BE CONDUCTED ON THIS MATTER ON JUNE 17, 2021, AT 1:30 P.M. BY TELEPHONE THROUGH THE DIAL-IN FOR SECTION A 1-888-684-8852; CONFERENCE CODE 9318283. IF YOU OBJECT TO THE RELIEF REQUESTED IN THIS PLEADING, YOU MUST RESPOND IN WRITING. UNLESS DIRECTED OTHERWISE BY THE COURT, YOU MUST FILE YOUR RESPONSE WITH THE CLERK OF THE BANKRUPTCY COURT NO LATER THAN SEVEN (7) DAYS BEFORE THE HEARING DATE. YOU MUST SERVE A COPY OF YOUR RESPONSE ON THE PERSON WHO SENT YOU THE NOTICE; OTHERWISE, THE COURT MAY TREAT THE PLEADING AS UNOPPOSED AND GRANT THE RELIEF REQUESTED.**

Berkeley Research Group ("BRG" or the "Firm"), financial advisor for the Official Committee of Unsecured Creditors (the "Committee") of The Roman Catholic Church of the Archdiocese of New Orleans (the "Debtor"), hereby submits its *First Interim Application for Allowance and Payment of Compensation and Reimbursement of Expenses of Berkeley Research*

---

[2] The last four digits of the Debtor's federal tax identification number are 8966. The Debtor's principal place of business is located at 7887 Walmsley Ave., New Orleans, LA 70125.

DOCS_LA:338150.2 05067/002

*Group, as Financial Advisor for the Official Committee of Unsecured Creditors for the Period From June 17,  2020 Through March 31, 2021*  (the "<u>Application</u>").  In support of the Application, BRG respectfully represents as follows:

## I.      INTRODUCTION

In this Application, the Firm seeks interim allowance and payment of fees in the amount of $252,386.00 and expenses in the amount of $3,889.52. BRG has been paid no compensation to date in this matter.

## II.      JURISDICTION AND VENUE

1.      The Court has jurisdiction to consider this Application pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b).

2.      Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3.      The bases for the relief requested herein are sections 330 and 331 of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "<u>Bankruptcy Code</u>"), Rules 2014 and 2016 of the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>"), Rules 2014-1 and 2016-1 of the Bankruptcy Local Rules for the Eastern District of Louisiana (the "<u>Local Rules</u>"), Section XIII(B) of the Court's *December 4, 2019 General Order Regarding Procedures of Complex Chapter 11 Cases* (the "<u>Complex Case Order</u>").

## III.      BACKGROUND

### A.      Introduction

4.      On May 1, 2020 (the "<u>Petition Date</u>"), The Roman Catholic Church of the Archdiocese of New Orleans (the "<u>Archdiocese</u>") filed a voluntary petition for relief under the Bankruptcy Code.

DOCS_LA:338150.2 05067/002

5.      The Debtor remains in possession of its property and is managing its business as a debtor in possession pursuant to §§ 1107(a) and 1108 of the Bankruptcy Code, 11 U.S.C. § 101 *et. seq.*

6.      On May 20, 2020, the Office of the United States Trustee for Region 5 (the "U.S. Trustee") appointed the Committee pursuant to section 1102(a)(1) of the Bankruptcy Code [Docket #94].

7.      On May 22, 2020, the Committee conducted its first meeting and at that meeting unanimously selected Pachulski, Stang, Ziehl & Jones ("PSZJ") and Locke Lord LLP ("Locke Lord") to serve as co-counsel.

**B.      Employment of the Firm**

8.      On July 6, 2020, the Committee filed an *Application to Employ Berkeley Research Group, LLC as Financial Advisor* [Docket No. 205] (the "Retention Application"). As more fully described in the Retention Application, the Committee retained the Firm to render financial advisory services to the Committee in this Bankruptcy Case.

9.      On August 25, 2020, this Court entered the *Order Authorizing the Employment and Retention of Berkeley Research Group, LLC as Co-Counsel for the Official Committee of Unsecured Creditors* [Docket No. 362] (the "Retention Order"). The Retention Order approved the Firm's retention as the Committee's co-counsel in this Bankruptcy Case.

## IV.      WORK PERFORMED AND RESULTS OBTAINED / EXTRAORDINARY CIRCUMSTANCES

10.      The Firm provided, and continues to provide, financial advisory services to the Committee in this Bankruptcy Case. The Firm has attached to this Application copies of the Firm's Monthly Fee Statements to which are appended Invoices (the "Invoices") setting forth the time-keeping entries generated by those Firm personnel who worked on this matter during

Application Period from June 17, 2020 through October 31, 2020.

11.     Although the Committee submits that this Chapter 11 case should be dismissed for the reasons submitted in its *Motion to Dismiss Chapter 11 Case* [Docket #203], notwithstanding that request (which is still pending), the Committee and its counsel and financial advisors have undertaken strenuous efforts to move this case forward towards a resolution of creditor claims, to achieve the goal of the most favorable resolution to unsecured creditors possible.

12.     As the Court and parties are well aware, the Committee filed a motion to dismiss this case and the Committee believes that the Chapter 11 case cannot be maintained as a bad faith filing.  The Committee and counsel engaged in expedited but extensive discovery including five depositions, expert analysis and review, and document discovery (reviewing more than 32,000 pages of material).  The process was also instrumental as part of the financial investigation conducted by BRG, which is a necessary step towards eventual resolution of this case, in the event that the case is not dismissed.

C.     **Contentious Nature of Case**

13.     This case has already been contentious.  The Debtor has been slow to respond to the Committee's information requests and has not responded at all to many requests, prompting the Committee to file a motion to compel production of documents ordered to be produced in connection with the Committee's Rule 2004 Motion.  Monthly financial information that was to be shared with the Committee's financial advisors has been redacted to such an extent that the information is practically unintelligible.   Almost all of the information that the Committee has been able to obtain from the Debtor in this Case has only been produced through contested discovery proceedings.

14.     Nevertheless, the Committee, counsel and financial advisors will continue to work

10

in good faith to attempt to move this matter forward, and as necessary, will bring matters to the Court.  The Committee and its counsel are dedicated to resolving matters in the manner most beneficial to unsecured creditors as a whole.

## V.   NATURE AND EXTENT OF FINANCIAL ADVISORY SERVICES PROVIDED

15.     This Application has been prepared in accordance with sections 330 and 331 of the Bankruptcy Code, Rules 2014 and 2016 of the Bankruptcy Rules, Rules 2014-1 and 2016-1 of the Local Rules, the UST Guidelines, and Section XIII(B) of the Court's *December 4, 2019 General Order Regarding Procedures for Complex Chapter 11 Cases* (the "Complex Case Order").

16.     In March, 2021, BRG submitted its first monthly fee statement (the "First Fee Statement") covering the period from June 17, 2020 through October 31, 2020.  BRG incurred fees at its standard rates of $205,361.00.  After the reduction due to reduced rates in the amount of $28,870.50, BRG total fees for the First Fee Statement are in the amount of $176,490.50.  Thus, in its First Fee Statement, BRG requested an interim allowance of reduced fees in the amount of $176,490.50, and further requested payment of 80% of such reduced fees in the amount of $141,192.40 and 100% of expenses in the amount of $3,807.52 for a total amount of $144,999.92.  Attached hereto as **Exhibit A** is a true and correct copy of the Firm's billing statement for the period June 17, 2020, through October 31, 2020.

17.     On May 25, 2021, BRG submitted its second fee statement (the "Second Fee Statement") covering the period from November 1, 2021 through November 30, 2021.  BRG incurred fees at its standard rates of $7,612.00.  After the reduction due to reduced rates in the amount of $1,322.50, BRG total fees for the Second Fee Statement are in the amount of $6,289.50.  Thus, in its Second Fee Statement, BRG requested an interim allowance of reduced

fees in the amount of $6,289.50, and further requested payment of 80% of such reduced fees in the amount of $5,031.60 and 100% of expenses in the amount of $75.00 for a total amount of $5,106.60. Attached hereto as **Exhibit B** is a true and correct copy of the Firm's billing statement for the period November 30, 2020, through November 30, 2020.

18.     On May 25, 2021, BRG submitted its third monthly fee statement (the "Third Fee Statement") covering the period from December 1, 2020 through December 31, 2020. BRG incurred fees at its standard rates of $12,061.50. After the reduction due to reduced rates and further voluntary reductions of $1,633.50, BRG total fees for the Third Fee Statement are in the amount of $10,428.00. Thus, in its Third Fee Statement, BRG requested an interim allowance of reduced fees in the amount of $10,428.00 and further requested payment of 80% of such reduced fees in the amount of $8,342.50 for a total amount of $8,342.50. Attached hereto as **Exhibit C** is a true and correct copy of the Firm's billing statement for the period December 1, 2020, through December 31, 2020.

19.     On May 25, 2021, BRG submitted its fourth fee statement (the "Fourth Fee Statement") covering the period from January 1, 2021 through January 31, 2021. BRG incurred fees at its standard rates of $24,961.50. After the reduction due to reduced rates and further voluntary reductions of $3,561.50, BRG total fees for the Fourth Fee Statement are in the amount of $21,400.00. Thus, in its Fourth Fee Statement, BRG requested an interim allowance of reduced fees in the amount of $21,400.00 and further requested payment of 80% of such reduced fees in the amount of $17,120.00 and 100% of expenses in the amount of $7.00 for a total amount of $17,127.00. Attached hereto as **Exhibit D** is a true and correct copy of the Firm's billing statement for the period January 1, 2021, through January 31, 2021.

DOCS_LA:338150.2 05067/002

20.    On May 25, 2021, BRG submitted its fifth fee statement (the "Fifth Fee Statement") covering the period from February 1, 2021 through February 28, 2021.  BRG incurred fees at its standard rates of $9,401.00.  After the reduction due to reduced rates and further voluntary reductions of $1,122.50, BRG total fees for the Fifth Fee Statement are in the amount of $8,278.50.  Thus, in its Fifth Fee Statement, BRG requested an interim allowance of reduced fees in the amount of $8,278.50 and further requested payment of 80% of such reduced fees in the amount of $6,622.80 for a total amount of $6,622.80.   Attached hereto as **Exhibit E** is a true and correct copy of the Firm's billing statement for the period February 1, 2021, through February 28, 2021.

21.    On May 25, 2021, BRG submitted its sixth fee statement (the "Sixth Fee Statement") covering the period from March 1, 2021 through March 31, 2021.  BRG incurred fees at its standard rates of $33,913.00.  After the reduction due to reduced rates and further voluntary reductions of $4,413.50, BRG total fees for the Sixth Fee Statement are in the amount of $29,499.50.  Thus, in its Sixth Fee Statement, BRG requested an interim allowance of reduced fees in the amount of $29,499.50 and further requested payment of 80% of such reduced fees in the amount of $23,599.60 for a total amount of $23,599.60.   Attached hereto as **Exhibit F** is a true and correct copy of the Firm's billing statement for the period March 1, 2021, through March 31, 2021.

22.    To date, BRG has not been paid any compensation in this matter. The Firm provided, and continues to provide, extensive financial advisory services to the Committee in this Bankruptcy Case.  The Firm has attached to this Application copies of the Firm's Invoices (the "Invoices") setting forth the time-keeping entries generated by those Firm personnel who

worked on this matter during the Application Period from June 17, 2020 through March 31, 2021.[3]

## VI. SUMMARY OF FINANCIAL ADVISORY SERVICES RENDERED BY CATEGORY

23.     The services rendered by BRG during the 1st Interim Application Period can be grouped into the categories set forth below. BRG attempted to place the services provided in the category that best relates to such services. Certain services may relate to one or more categories, but have only been included once to prevent any duplication.  These services performed, by categories, are generally described below, with a more detailed identification of the actual services provided set forth in the attached Fee Statements.

### A.     100.00 – Case Background

24.     BRG spoke with UCC Counsel in order to obtain an initial understanding of the Debtor, case issues and the initial analyses / investigations to be performed.

Fees: $360.50;              Hours: 0.7

### B.     200.00 – Document / Data Analysis (General)

25.     BRG communicated with the Debtor's Financial Advisor and UCC Counsel regarding ratio calculations in the annual and semi-annual financial information statements filed in connection with the Debtor's municipal bonds, reviewed and forwarded information relating to potential updates to the listing of Apostolates, and the proposed settlement between

---

[3] True and correct copies of the Invoices are appended to the Firm's monthly fee statements attached to the Application as **Exhibits "A", "B", "C", "D" "E", and "F"**)and are incorporated by reference herein.

Debtor and the Bond Trustee.

Fees: $1,165.00;          Hours: 2.0

C.    **200.10 – Document / Data Analysis (Data Room)**

26.    BRG spent some initial time evaluating access to Everlaw, the data management system used in this matter.

Fees: $118.00;          Hours: 0.2

D.    **200.20 – Document / Data Analysis (Financial / Accounting)**

27.    BRG has reviewed, organized, and indexed records produced by the Debtor since the initial document productions were made in the context of the Motion to Dismiss.[4] The records reviewed, organized and indexed include, but are not limited to, bank account statements, investment account statements, bank reconciliations, formation documents, promissory notes and alonges relating to the deposit and loan fund, unitization reports, quinquennial reports, investment management agreements, QuickBooks accounting data, select endowment fund records, pension plan actuarial reports and other financial records. BRG's analysis of the aforementioned data, along with other financial and accounting data, has and will continue to assist in its identification and analysis of assets and potential assets (both historical and current) of the Debtors. In addition, BRG analysis of financial statements will assist in its evaluation of historical and current financial trends and business relationships

_____

[4] The time and fees associated with reviewing and organizing records produced in the context of the Motion to Dismiss are included in task code 211.03 – Bankruptcy Proceedings (Filings / Motions – Motion to Dismiss).

15

existing between the Debtor and the Apostolates.

Fees: $18,939.50;        Hours: 78.3

**E.    200.30 – Document / Data Analysis (Financial / Accounting) – Accounting System**

28.    BRG identified and engaged in some initial consultation with consultants that are familiar with Financial Edge, one of the accounting systems used by the Debtor. BRG did not obtain access to the Debtor's Financial Edge and QuickBooks accounting system until after the period covered by this Fee Application. However, obtaining the Debtor's accounting data is vital to BRG's on-ongoing and pending analysis and will allow BRG to efficiently analyze the Debtor's historic and current operations and financial activity. In addition, the PeopleSoft data will assist BRG in its identification and analysis of assets available to the Debtors' creditors.

Fees: $5,096.50;          Hours: 8.9

**F.    200.50 – Document / Data Analysis (Related Non-Debtors)**

29.    In connection with BRG's identification of PPP Loans obtain by the Debtor and its Apostolates, which is the next task discussed, BRG evaluated schedules in the Debtor's bankruptcy schedules and statement of financial affairs to identify potential updates to the listing of Apostolates initially provided by the Debtor.

Fees: $2,448.00;          Hours:  5.5

**G.    200.60 – Document / Data Analysis (PPP Loans)**

30.    At the request of the UCC, BRG conducted an analysis to identify PPP Loans

obtained by the Debtor and its Apostolates in that such loans represent an increase in the financial resources obtain by the Debtor and its Apostolates.

Fees: $9,559.00; Hours: 20.1

### H. 200.90 – Document / Data Analysis (Production Requests)

31. BRG engaged in significant and continued efforts with UCC Counsel to request documentation and records, including providing explanations of the need for the requested documents. BRG assisted UCC Counsel in preparing formal document requests and its motion to compel production, and continued to monitor documents provided in order to identify outstanding document request. The requested documents are necessary in order to perform analyses and investigations in a number of critical areas, including assets (including alleged restrictions), claims, operations, organizational structure, and relationships and dealings between the Debtor and its Apostolates.

Fees: $26,901.00; Hours: 55.5

### I. 210.00 – Bankruptcy Proceedings (Filings / Motions – General)

32. BRG reviewed critical dates memoranda that set forth timing of the Debtor's reporting requirements.

Fees: $118.00; Hours: 0.2

### J. 211.03 – Bankruptcy Proceedings (Filings / Motions – Motion to Dismiss)

33. In connection with the services it provided as Financial Advisor to the UCC, BRG was engaged to provide expert analysis and testimony in the context of the Motion to Dismiss

17

filed by the UCC. In the context of providing these expert services, BRG, among other things, (1) evaluated the Motion to Dismiss and related exhibits, (2) analyzed the Carr, Riggs & Ingram report on the Debtor's financial condition (the "CRI Report"),[5] (3) analyzed credit ratings on the Debtor's municipal bonds and evaluated credit rating methodologies associated with non-profit organizations, (4) analyzed annual and semi-annual financial information statements filed in connection with the Debtor's municipal bonds, (5) prepared and evaluated comparative statements of financial condition and statements of activities for the Administrative Offices, nine schools and two churches, (6) analyzed the Debtor's audited financial statements and related footnotes, (7) analyzed the Debtor's May Chapter 11 Financial Report, (8) analyzed Finance Council meeting minutes, (8) evaluated industry research and conducted benchmarking analyses, (9) analyzed the Debtor's solvency and degree of financial distress, (10) prepared and issued rebuttal report and related schedules and appendices, (11) prepared for and provided expert deposition testimony regarding the Debtor's financial condition, (12) assisted UCC Counsel in preparing briefs that were filed, and illustrative exhibits that were used, in connection with the hearing on the Motion to Dismiss.

Fees: $86,516.50;      Hours: 200.7

**K.    220.00 – Debtor Operations / Monitoring (Monthly Operating Reports / Periodic Reporting)**

34.    BRG developed schedules and pivot tables to evaluate information set forth in monthly operating reports and periodic reporting. Such information includes cash receipts and

---

[5] Additional time analyzing the CRI report is included in task code 420.00 – Litigation Analysis (Expert Report Evaluation), which is discussed below.

disbursements detail, AR and AP agings, statements of financial condition and statements of activities. Such analysis is necessary to monitor the transaction activities of the Debtor. BRG also communicated with the Debtor's Financial Advisor and UCC Counsel in an effort to obtain monthly operating reports and period reporting data without redactions.

Fees: $18,373.00;             Hours: 44.9

**L.**      **222.00 – Debtors Operations / Monitoring (Other Reports)**

35.     BRG performed an initial review of Parish Service Agreements.

Fees: $154.50;             Hours: 0.3

**M.**      **300.00 – Asset Analysis (General – Debtors)**

36.     BRG analyzed the Debtor's bankruptcy schedules and statement of financial affair, as well as information relating to the Deposit and Loan Fund in an effort in order to identify Debtor assets and gain a better understanding of the Debtor's representations regarding same.

Fees: $3,793.50;             Hours: 8.1

**N.**      **330.00 – Asset Analysis (Real Property – Debtors)**

37.     BRG analyzed issues relating to the potential sale of real estate at 4119 St Elizabeth Drive, Kenner, LA.

Fees: $1,184.50;             Hours: 2.3

DOCS_LA:338150.2 05067/002

### O.     420.00 – Litigation Analysis (Expert Report Evaluation)

38.     In connection with the Motion to Dismiss, BRG analyzed the CRI Report, and also conducted an internal review of the BRG rebuttal report.

Fees: $3,784.50;     Hours: 6.3

### P.     600.00 – Claims / Liability Analysis (General)

39.     At the request of the UCC, BRG analyzed and compiled claims data and prepared a claims database based on information and claims data provided by the claims agent, Donlin Recano. BRG worked with Donlin Recano in order to ascertain and clarify claims data, as well as maintain an updated claims database as new claims continued to be filed up to and beyond the claim filing deadline. Based on information provided by Donlin Recano, BRG categorized each claim as a filed or scheduled claim, as well as determined the nature and class of each claim (i.e. sexual abuse claims, secured claims, trade claims, bonds, etc.). BRG analyzed and categorized the claims for approximately 3,500 scheduled claims and 865 filed claims. BRG evaluated and provided information regarding claims to UCC Counsel as requested.

Fees: $20,405.50;     Hours: 49.1

### Q.     620.00 – Claims / Liability Analysis (Commercial Debt)

40.     In response to a motion filed by the Bond Trustee to reconstitute the UCC and/or for the appointment of a second unsecured creditor committee, BRG was tasked with

DOCS_LA:338150.2 05067/002

analyzing, including conducting research from public sources, trading activity of the Debtor's municipal bonds.

Fees: $5,880.00;          Hours: 9.9

### R.      1000.00 – Case Administration

41.      At the request of the Bond Trustee and the UCC, BRG developed an estimated budget for fees to perform services in connection with the Motion to Dismiss. Once the budget was submitted, a request was made for further detail and refinements associated with the budget. Further, BRG developed a comparison of the budget estimate and compared it to actual fees incurred. Additional miscellaneous tasks were performed regarding case administration.

Fees: $5,006.50;          Hours: 8.6

### S.      1010.00 – Employment Application

42.      BRG coordinated issues related to the engagement, including the preparation and review of the retention application, and related declaration.

Fees: $875.50;          Hours: 1.7

### T.      1020.00 – Meeting Preparation & Attendance

43.      During the 1st Interim Fee Application Period, BRG prepared for and participated in various conference calls with UCC Counsel, Debtor's Counsel, and the Debtor's Financial Advisor. As requested by the UCC, BRG participated in UCC status calls in order to report on its analyses and investigations and to coordinate additional work to be performed.

DOCS_LA:338150.2 05067/002

Fees: $11,734.50;                Hours: 21.3

**U.**   **1040.00 – Hearing / Trial Preparation & Attendance**

44.      BRG assisted UCC Counsel in evaluating issues set forth in a declaration issued

by the Debtor's Financial Advisor relating to the Debtor's loan loss reserves assessment,

including evaluating generally accepted accounting standards for loan loss reserves.

Fees: $2,722.00;                Hours: 4.4

**V.**   **1050.00 – Deposition Preparation & Attendance**

45.      In the context of the Motion to Dismiss, BRG attended the depositions of Jeffrey

Entwisle, the Debtor's CFO, and Father Patrick Carr. In addition, BRG assisted UCC Counsel

in its preparation for the depositions of Mr. Entwisle, Father Carr, and Kathleen Zuniga and

Steve Riggs of Carr, Riggs & Ingram. Further, Mr. Shields of BRG prepared for and provided

deposition testimony in connection with the Motion to Dismiss.

Fees: $16,825.00;                Hours: 27.5

**W.**   **1060.00 – Fee Application Preparation & Hearing**

46.      During the 1st Interim Fee Application Period, BRG prepared and finalized its

First Fee Statement, which covered the period from June 17, 2020 to October 31, 2020

(including fee application narrative and related exhibits and a review of all related time entries

and expenses to ensure benefit to the estate). Further, BRG obtained and forwarded to UCC

Counsel LEDES files for the period June 17, 2020 to October 31, 2020. Of note, prior to filing

any fee application in this matter, BRG provides its fees and expenses to the UCC for review

22

and comment and only files a fee application after it receives UCC approval of its fees and

expenses.

Fees: $10,425.00;            Hours: 17.1

## VII.    ACTUAL AND NECESSARY EXPENSES INCURRED BY BRG

47.    The Firm requests that the Court grant it reimbursement for $3,889.52 in

reimbursable expenses it incurred on the Committee's behalf during the Application Period.

## IX.    STATEMENT IN COMPLIANCE WITH RULE 2016 OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE

48.    As more fully described in the Retention Application, the Committee agreed to

retain the Firm as its financial advisor and to compensate the Firm on an hourly basis in

accordance with the Firm's retention application, plus reimbursement of the actual and necessary

expenses that the Firm incurred in connection with the Bankruptcy Case.  All compensation for

services rendered, and reimbursement for expenses incurred, are subject to this Court's approval

in accordance with the Retention Order, Bankruptcy Code §§ 330 and 331, the Federal Rules of

Bankruptcy Procedure (the "Bankruptcy Rules"), the Local Bankruptcy Rules of the Eastern

District of Louisiana (the "Local Bankruptcy Rules"), and other procedures that this Court may

fix.  No entity has promised to compensate the Firm for any services rendered, or reimburse it for

expenses incurred, in connection with this case except as this Court may approve.

49.    No agreement or understanding exists between the Firm and any other entity for

the sharing of any compensation or reimbursement (i) that the Firm may receive for services

rendered in, or in connection with, this Bankruptcy Case or (ii) that such other entity has already

received or may receive for services that entity rendered in, or in connection with this

Bankruptcy Case, except that the Firm will share any compensation or reimbursement it receives

23

in connection with this Bankruptcy Case with its members and other Firm employees (as

originally disclosed in the Retention Application).

## X.    THE REQUESTED COMPENSATION SHOULD BE ALLOWED

50.    Section 330 provides that a court may award a professional employed under 11

U.S.C § 328 "reasonable compensation for actual, necessary services rendered . . . and

reimbursement for actual, necessary expenses." *See* 11 U.S.C. Section 330(a)(1).  Section 330

also sets forth the criteria for the award of such compensation and reimbursement:

> In determining the amount of reasonable compensation to be awarded . . . , the
> court should consider the nature, the extent, and the value of such services, taking
> into account all relevant factors, including –
>
> (A)    the time spent on such services;
>
> (B)    the rates charged for such services;
>
> (C)    whether the services were necessary to the administration of, or beneficial
> at the time at which the service was rendered toward the completion of, a
> case under this title;
>
> (D)    whether the services were performed within a reasonable amount of time
> commensurate with the complexity, importance, and nature of the
> problem, issue, or task addressed;
>
> (E)    with respect to a professional person, whether the person is board certified
> or otherwise has demonstrated skill and experience in the bankruptcy
> field; and
>
> (F)    whether the compensation is reasonable based on the customary
> compensation charged by comparably skilled practitioners in cases other
> than cases under this title.

11 U.S.C. § 330(a)(3).

51.    BRG has a reputation for its expertise and experience in financial and bankruptcy

reorganizations and restructurings and as noted above, the compensation is reasonably based on

customary compensation charged by other practitioners in non-bankruptcy cases.  Based on an

24

application of the above factors and its compliance with the UST Guidelines, BRG respectfully submits that the compensation requested herein is reasonable in light of the nature, extent and value of such services to the Committee and, accordingly, that approval of the compensation sought herein is warranted.

52.    Section 330 of the Bankruptcy Code authorizes the Court to award the Firm reasonable compensation for its actual and necessary financial advisory services rendered and reimbursement of actual and necessary expenses incurred in the rendering of those financial advisory services as counsel to the Committee in this case. Bankruptcy Code § 330(a)(1) provides as follows:

(a)(1)   After notice to the parties in interest and the United States Trustee and a hearing, and subject to sections 326, 328, and 329, the court may award to a trustee, a consumer privacy ombudsman appointed under section 332, an examiner, an ombudsman appointed under section 333, or a professional person employed under section 327 or 1103—

(A)      reasonable compensation for actual, necessary services rendered by the trustee, examiner, ombudsman, professional person, or attorney and by any paraprofessional person employed by any such person; and

(B)      reimbursement for actual, necessary expenses.

11 U.S.C. § 330(a)(1).

53.    This Application substantiates the total amount the Firm seeks for fees and expenses in accordance with this Court's standards applied to fee applications.  The factors that courts in this jurisdiction consider when making a discretionary award of reasonable attorneys' fees and reimbursable expenses were originally described in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974) (the "*Johnson* Factors").  The Fifth Circuit has applied the *Johnson* Factors to the determination of awards of professionals' fees and expenses in bankruptcy cases. *In re First Colonial Corp. of Am.*, 544 F.2d 1291 (5th Cir. 1977),

DOCS_LA:338150.2 05067/002

*cert. denied* 431 U.S. 904 (1977).  Many of these *Johnson* Factors have now been codified at

Bankruptcy Code § 330(a)(3).  11 U.S.C. § 330(a)(3).

54.     The *Johnson* Factors are summarized as follows: (1) the time and labor required;

(2) the novelty and difficulty of the questions presented; (3) the skill required to perform the

financial advisory services; (4) the preclusion of other employment by the professionals due to

acceptance of the bankruptcy case; (5) the customary fee; (6) whether the fee is fixed or

contingent; (7) time limitations imposed by the client or circumstances; (8) the amounts involved

and the results obtained; (9) the experience, reputation and ability of the professionals; (10) the

"undesirability" of the case; (11) the nature and length of the professional relationship with the

client; and (12) awards in similar cases.[6]  Based upon the services described in this Application,

the Firm respectfully represents that it has fully satisfied the standards prescribed by the *Johnson*

Factors.

**The Time and Labor Required**

55.     Firm professionals and case assistants, in the performance of financial advisory

services, expended 573.6 hours during the Application Period, for a total fee of $252,386.00.[7]

Taking into account the Firm's voluntary reductions, the blended hourly rate is $440.00/hour.

The names of the professionals who worked on this case during the Application Period appear in

the Invoices and on the cover sheet attached to this Application.  The Firm submits that the time

and labor these professionals expended in the Bankruptcy Case are appropriate and reasonable

---

[6] The factors enunciated in *Johnson* have been adopted by four other courts of appeals.  *See Boston & Maine Corp. v. Sheehan, Phinney, Bass & Green*, 778 F.2d 890, 896 (1st Cir. 1985); *Harman v. Levin*, 772 F.2d 1151, 1152-53 (4th Cir. 1985); *Mann v. McCombs*, 751 F.2d 286, 287-88 (8th Cir. 1984); *Yermakov v. Fitzsimmons*, 718 F.2d 1465, 1471 (9th Cir. 1983).

[7] This takes into account the Firm's voluntary reductions.

DOCS_LA:338150.2 05067/002

and that this *Johnson* Factor supports the Firm's requested award.  Further, the amount of time multiplied by a reduced, and reasonable, fee suggests that the fee award is appropriate in this Circuit under the "lodestar" doctrine.

**The Novelty and Difficulty of the Questions Presented**

56.     This Bankruptcy Case presents many novel and difficult questions.  Addressing these questions have necessitated considerable financial advisory expertise.  In light of these considerations, this *Johnson* Factor strongly favors awarding the Firm the fees and expenses it has requested.

**The Skill Required to Perform the Services**

57.     Representing the Committee in this Bankruptcy Case required considerable skill and expertise in bankruptcy issues.  The Firm has considerable experience in complex bankruptcy matters.  Further, the Firm has been engaged as financial advisor in numerous creditors' committees in cases with abuse claims, and has extensive experience in cases involving dioceses and archdioceses of the Catholic Church, and thus has a unique understanding of the structure and history of that institution and its sub-entities, and of the nature of its assets. Applicant submits that this expertise is also relevant as a factor suggesting a fee award under Local Rule 2016-1 (A)(13). The Firm employed professionals of varying levels of skill and expertise to efficiently resolve the issues in this case.  The Firm strived to limit the number of professionals who worked on this case and to use the most appropriate professional and case assistant staff for any given task.  For this reason, the compensation the Firm is requesting for the services rendered by its professionals compares favorably to the compensation awarded in other bankruptcy cases of a similar size and complexity.  This factor therefore supports the award the Firm has requested.

**The Customary Fee**

58.     The Firm computed the amount of compensation it seeks in this Application according to its customary rates, which rates the Firm previously disclosed in the Retention Application. The Firm also maintained detailed time and disbursement records for all financial advisory services for which it seeks compensation. The rates charged for the Firm's financial advisory services in this case are comparable to other similar-situated firms. Thus, the blended hourly rate on this matter of $440.00/hour is reasonable and reflects market rates for financial advisory services in Chapter 11 bankruptcy cases of this size and complexity.  Similarly, the amounts sought for the reimbursement of expenses reflect the prevailing rates for expense reimbursement by financial advisory firms similar in size and reputation to the Firm.

**Whether the Fee is Fixed or Contingent**

59.     The Firm's fees for services rendered in this Bankruptcy Case are based on its hourly rates, subject in all respects to this Court's approval.  The Firm has not requested any contingent fee in this Bankruptcy Case.

**Time Limitations Imposed by the Client or Other Circumstances**

60.     The Firm has had to respond to tight time-constraints arising in this Bankruptcy Case.  Matters often arose throughout the Application Period that required the Firm's immediate attention.  Again, the exigent nature of these matters demanded that the Firm's professionals respond on very short notice to complicated and developing events as they unfolded.  This imposed serious time demands on the Firm's personnel and required them to devote considerable financial advisory resources to these matters.  Taken together, these considerations suggest that this *Johnson* Factor supports the fee award requested.

## The Amount Involved and the Results Obtained

61.     The Invoices summarize the individual tasks that Firm personnel performed during the Application Period as well as the amounts charged for those tasks.  The total fees the Firm seeks to approve in this Application are $900,175.50.  This figure is commensurate with the Firm's achievements.  This *Johnson* Factor strongly supports the fee award requested.

## The Experience, Reputation, and Ability of the Professionals

62.     The Firm's professionals have significant experience in bankruptcy, financial advisory and investigative matters, and have an excellent reputation in the bankruptcy and financial advisory communities.  In particular, the Firm's professional have appeared in bankruptcy cases throughout the United States and have provided services to secured creditors, unsecured creditors, creditors' committees, and debtors-in-possession.  The quality of the Firm's services is consistently high.  In addition, the Firm's professional also speak and write on various financial, valuation, accounting and investigative topics throughout the country.  As mentioned, the Firm has considerable expertise in cases, such as this one, involving numerous abuse claims and sub-entities of the Catholic Church.  The substantial experience, reputation, and ability of the Firm's professionals working on this Bankruptcy Case favor granting the Firm the fee award it seeks.

## The "Undesirability" of the Bankruptcy Case

63.     From the Firm's perspective, serving as financial advisor to the Committee in this Bankruptcy Case was not undesirable.  However, bankruptcy cases involved abuse claims and religious entities can involve intensive and hard-fought disputes, for example, regarding the claims process and the recovery and liquidation of assets.  These concerns mean that any

professional services firm being employed could face potential fee risk and other uncertainties. This factor therefore favors granting the Firm the award it has requested.

**The Nature and Length of the Professional Relationship with the Client**

64.     The Firm has no prior professional relationship with the Committee, which was only formed after this case began.  However, members of the Firm have worked in similar matters, thus making the representation of the Committee more efficient.  For this reason, this *Johnson* Factor supports granting the Firm its fee award in this case.

**Awards in Similar Cases**

65.     The fee award the Firm seeks compares favorably to awards granted in other bankruptcy cases with a size and complexity similar to this case, including cases in the Fifth Circuit.  In light of these considerations, this last *Johnson* factor also supports granting the Firm its award.

66.     In conclusion, the *Johnson* Factors favor granting the Firm the fee and expense award it seeks.

## XI.     RESERVATION OF RIGHTS

67.     It is possible that some professional time expended or expenses incurred by BRG are not reflected in this Application.  BRG reserves the right to file a supplemental fee application to submit additional fees and expenses not previously included in the Application, or to include such time and costs in a future fee application.

## XII.     NO PRIOR REQUEST

68.     No prior application for the relief requested herein has been made to this or any other court.

DOCS_LA:338150.2 05067/002

# XIII. __CONCLUSION__

WHEREFORE, BRG respectfully requests that this Court enter an order (i) awarding

BRG an interim allowance of fees for the Application Period in the amount of $252,386.00; (ii)

awarding BRG reimbursement for actual and necessary expenses incurred in the amount of

$3,889.52; (iii) authorizing and directing the Debtor to pay such allowed fees and costs, less

amounts previously submitted; and (v) granting such other or additional relief as is just and

proper.

Dated: May 27, 2021

Respectfully submitted,

*By: /s/ Paul N. Shields*
Matthew Babcock
Paul Shields
Berkeley Research Group, LLC
201 South Main Street, Suite 450
Salt Lake City, Utah 84111
Telephone: (801) 364-6233
Email: mbabcock@thinkbrg.com
      pshields@thinkbrg.com

*Financial Advisor to the Official Committee of
Unsecured Creditors*