**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| **In re:** | § | |
| | § | **Case No. 20-10846** |
| **THE ROMAN CATHOLIC CHURCH OF THE ARCHDIOCESE OF NEW ORLEANS,** | § | |
| | § | **Section "A"** |
| | § | |
| | § | **Chapter 11** |
| **Debtor.**[1] | § | |
| | § | |

---

**DEBTOR'S MOTION FOR ENTRY OF AN ORDER**
**(I) APPROVING SETTLEMENT AGREEMENT WITH**
**THE UNITED STATES OF AMERICA AND ROBERT ROMERO,**
**PURSUANT TO BANKRUPTCY RULE 9019, AND (II) GRANTING RELATED RELIEF**

**A HEARING WILL BE CONDUCTED ON THIS MATTER ON SEPTEMBER 14, 2021, AT 1:30 PM, BY TELEPHONE THROUGH THE DIAL-IN FOR SECTION A 1-888-684-8852; CONFERENCE CODE 9318283. IF YOU OBJECT TO THE RELIEF REQUESTED IN THIS PLEADING, YOU MUST RESPOND IN WRITING. UNLESS DIRECTED OTHERWISE BY THE COURT, YOU MUST FILE YOUR RESPONSE WITH THE CLERK OF THE BANKRUPTCY COURT NO LATER THAN SEVEN (7) DAYS BEFORE THE HEARING DATE. YOU MUST SERVE A COPY OF YOUR RESPONSE ON THE PERSON WHO SENT YOU THE NOTICE; OTHERWISE, THE COURT MAY TREAT THE PLEADING AS UNOPPOSED AND GRANT THE RELIEF REQUESTED.**

NOW INTO COURT, through undersigned counsel, comes The Roman Catholic Church of the Archdiocese of New Orleans, the above-captioned debtor and debtor-in-possession (the "**Debtor**" or "**Archdiocese**"), who files this *Motion for Entry of an Order (I) Approving Settlement Agreement with the United States of America and Robert Romero, Pursuant to Bankruptcy Rule 9019, and (II) Granting Related Relief* (the "**Motion**"), and in support thereof, represents as follows:

---

[1] The last four digits of the Debtor's federal tax identification number are 8966. The Debtor's principal place of business is located at 7887 Walmsley Ave., New Orleans, LA 70125.

## Jurisdiction and Venue

1. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

2. This is a core proceeding pursuant to 28 U.S.C. § 157(b). The bases for the relief requested herein are § 105(a) of title 11 of the United States Code (the "**Bankruptcy Code**") and Rule 9019 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**").

## Procedural Background

3. On May 1, 2020 (the "**Petition Date**"), the Archdiocese filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code (this "**Chapter 11 Case**").

4. The Archdiocese remains in possession of its property and is managing its business as a debtor-in-possession pursuant to §§ 1107(a) and 1108 of the Bankruptcy Code.

5. The Official Committee of Unsecured Creditors (the "**Tort Committee**" or "**Original Committee**") was appointed by the Office of the United States Trustee (the "**UST**") on May 20, 2020 [ECF No. 94] and reconstituted on June 10, 2020 [ECF No. 151] and October 8, 2020 [ECF No. 478]. The Official Committee of Unsecured Commercial Creditors (the "**Commercial Committee**") was appointed by the UST on March 5, 2021. [ECF Nos. 772 & 792].

## Factual Background

6. This Motion concerns a proposed settlement stemming from extensive negotiations between the Archdiocese; the United States of America, acting through the United States Department of Justice and on behalf of Federal Emergency Management Agency ("**FEMA**") (collectively, the "**United States**"); and Robert Romero ("**Relator**") (all together, the "**Parties**").

**A. The Civil Action.**

7. On September 30, 2016, Relator filed a *qui tam* action in the United States District Court for the Eastern District of Louisiana captioned *United States ex rel. Robert Romero v. AECOM, Xavier University of Louisiana, Dillard University, the Roman Catholic Church of the Archdiocese of New Orleans, and Randall Krause,* Case No. 16-15092, pursuant to the *qui tam* provisions of the False Claims Act, 31 U.S.C. § 3730(b) (the "**Civil Action**").

8. The Civil Action arises out of the Archdiocese's role as a sub-grantee and recipient of FEMA funds under the Public Assistance ("**PA**") program, which limits contribution of funds to sub-grantees for "repairing, restoring, reconstructing, or replacing" a facility "on the basis of the design of the facility as the facility existed immediately before the major disaster." 42 U.S.C. § 5172(e)(1)(A)(i); *see also* 44 C.F.R. § 206.226 (2006). Pursuant to the 50% Rule (the "**50% Rule**"), if the cost to repair a facility to its pre-disaster condition exceeds 50% of the cost of replacing the facility based on the pre-disaster condition, FEMA funds the replacement of the damaged facility. 44 C.F.R. § 206.226(f). Following President George W. Bush's declaration of a major disaster in Louisiana due to Hurricane Katrina on August 29, 2005, the Archdiocese received PA program funds for the repair and replacement of certain facilities damaged by the hurricane.

9. The Civil Action concerns allegations that the Archdiocese, along with AECOM and others, violated the False Claims Act by knowingly submitting to FEMA requests for PA funding for the repair and/or replacement of certain facilities that violated the terms of the PA program.

10. Specifically, the Civil Action alleges, among other things, that the Archdiocese certified as accurate false and misleading FEMA Project Worksheets ("**PWs**") prepared by AECOM, which inflated the repair estimate and deflated the replacement estimate of certain

property belonging to the Archdiocese to falsely qualify the buildings for replacement. Based on AECOM's submissions of PWs on behalf of the Archdiocese, FEMA obligated funding to replace the Archdiocese's projects, and the Archdiocese obtained reimbursement from FEMA.

11. The Civil Action alleges approximately $46 million in overpayments by FEMA to the Archdiocese as a result of the allegedly improper submission of PWs and seeks treble damages, in addition to civil penalties. As such, the total potential exposure to the Archdiocese from the Civil Action is over $138 million.

**B. The Settlement Agreement.**

12. Although the Archdiocese expressly denies the allegations in the Civil Action, the Archdiocese intends to enter into the proposed Settlement Agreement (the "**Settlement Agreement**"), attached hereto as **Exhibit A**,[2] in order to consensually resolve the disputed claims asserted in the Civil Action and to avoid the delay, uncertainty, inconvenience, and expense of protracted litigation. Key terms of the Settlement Agreement are summarized below.

**i. Payments by the Archdiocese.**

13. The Archdiocese will make payments totaling $1,050,000 (the "**Settlement Amount**") to the United States in the following installments:

a. $300,000 within 30 days of the Effective Date of the Settlement Agreement;

b. $250,000 on or before six (6) months after the Effective Date of the Settlement Agreement;

c. $200,000 on or before twelve (12) months after the Effective Date of the Settlement Agreement;

d. $150,000 on or before eighteen (18) months after the Effective Date of the Settlement Agreement; and

[2] Capitalized Terms used but not otherwise defined herein shall have the meaning ascribed to them in the Settlement Agreement.

e. $150,000 on or before twenty-four (24) months after the Effective Date of the Settlement Agreement.

Ex. A, ¶ 1.

14. The Archdiocese will pay Relator a total of $50,000 for reasonable costs, expenses, and attorney's fees upon receipt of written instructions from Relator (together with the Settlement Amount, the "**Settlement Payments**"). Ex. A, ¶ 4.

**ii. Mutual Releases.**

15. Conditioned upon the Archdiocese's full payment of the Settlement Amount, the United States shall release the Archdiocese from any civil or administrative monetary claim the United States has for the Covered Conduct under the False Claims Act, 31 U.S.C. §§ 3729-3733; the Program Fraud Civil Remedies Act, 31 U.S.C. §§ 3801-3812; or the common law theories of breach of contract, payment by mistake, unjust enrichment, and fraud; or any statutory provision that the Civil Division of the Department of Justice has actual and present authority to assert and compromise pursuant to 28 CFR Part O, Subpart I, 0.45(d). Ex. A, ¶ 5.

16. However, this release shall not extend to the following:

a. Any liability arising under Title 26, U.S. Code (Internal Revenue Code);

b. Any criminal liability;

c. Except as explicitly stated in the Settlement Agreement, any administrative liability, including the suspension and debarment rights of any federal agency;

d. Any liability to the United States (or its agencies) for any conduct other than the Covered Conduct;

e. Any liability based upon obligations created by the Settlement Agreement; and

f. Any liability of individuals.

Ex. A., ¶ 7.

17. In addition, Relator shall release the Archdiocese and its directors, officers, and employees from any liability arising from the filing of the Civil Action, or under 31 U.S.C. § 3730(d) for expenses or attorney's fees and costs. Ex. A, ¶ 9.

18. The Archdiocese, in turn, will release and waive any claim or defense that it may have against the United States or Relator. Ex. A, ¶¶ 11-12.

**iii. Inapplicability of the Automatic Stay.**

19. The Archdiocese also agrees that any claim, action, or proceeding brought by the United States to enforce the terms of the Settlement Agreement is not subject to the automatic stay of § 362(a) of the Bankruptcy Code because such claim, action, or proceeding would be an exercise of police and regulatory power under § 362(b)(4). *See* Ex. A, ¶ 17. The Archdiocese further agrees that it shall: (a) not argue or contend that any such claim, action, or proceeding is subject to the automatic stay, and (b) to the extent necessary, consent to relief from the automatic stay for cause under § 362(d)(1) of the Bankruptcy Code. *Id.*

**iv. Other Material Terms.**

20. The Settlement Agreement also contains the following material terms, among others, which are briefly summarized below:

- If the Archdiocese fails to cure a default on payment to the United States within twenty (20) days of written notice of default, "the remaining unpaid principal portion of the Settlement Amount shall become accelerated and immediately due and payable, with interest at a simple rate of 2.5% from the Effective Date of [the Settlement] Agreement to the date of default, and at a simple rate of 12% per annum from the date of default until the date of payment." Ex. A, ¶ 2.

- The Archdiocese shall not charge any Unallowable Costs (as defined in the Federal Acquisition Regulation, 48 C.F.R. § 31.205-47) directly or indirectly to any contract with the United States. Ex. A, ¶ 13(a)-(b).

- "Within 90 days of the Effective Date of [the Settlement] Agreement, [the Archdiocese] shall identify and repay by adjustment to future claims for payment or otherwise any Unallowable Costs included in payments previously

sought by [the Archdiocese] or any of its subsidiaries or affiliates from the United States." Ex. A, ¶ 13(c).

- "Within thirty days of the signing of [the Settlement] Agreement, [the Archdiocese] agrees to furnish to the United States complete and unredacted copies of all non-privileged documents, reports, memoranda of interviews, and records in its possession, custody, or control concerning the Covered Conduct." Ex. A, ¶ 14.

## **Relief Requested**

21. By this Motion, the Debtor requests, pursuant to § 105(a) of the Bankruptcy Code and Bankruptcy Rule 9019, entry of an order in substantially the form attached as **Exhibit B**, approving and authorizing the Debtor to enter into the Settlement Agreement with the United States and Relator.

22. The Debtor circulated a copy of this Motion to counsel for the Tort Committee, the Commercial Committee, and the UST on August 12, 2021.

## **Applicable Authority**

23. Bankruptcy Rule 9019 provides that "[o]n motion by the Trustee and after notice and a hearing, the court may approve a compromise or settlement." Section 105(a) of the Bankruptcy Code further authorizes this Court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."

24. "[C]ompromises are a normal part of the process of reorganization, oftentimes desirable and wise methods of bringing to a close proceedings otherwise lengthy, complicated and costly." *Official Comm. of Unsecured Creditors v. Cajun Elec. Power Coop. (In re Cajun Elec. Power Coop.)*, 119 F.3d 349, 354 (5th Cir. 1997) (quoting *Rivercity v. Herpel (In re Jackson Brewing Co.)*, 624 F.2d 599, 602 (5th Cir. 1980)). In fact, "'[c]ompromises are favored in bankruptcy' because they minimize litigation costs and further the parties' interest in expediting

the administration of a bankruptcy case." *In re Idearc, Inc.*, 423 B.R. 138, 182 (Bankr. N.D. Tex. 2009), *aff'd,* 662 F.3d 315 (5th Cir. 2011) (quoting *In re Martin*, 91 F.3d 389, 393 (3d Cir. 1996)).

**A. The *Cajun* Factors.**

25. "Whether to approve a proposed compromise and settlement is fully within the bankruptcy court's discretion." *In re LMCHH PCP LLC*, No. 17-10353, 2017 Bankr. LEXIS 3361, *14 (Bankr. E.D. La. Oct. 2, 2017) (citing *Jackson Brewing*, 624 F.2d at 602-03). However, the Court should approve a settlement only if it is "fair and equitable and in the best interest of the estate." *Cajun Elec.*, 119 F.3d at 355 (quoting *Conn. Gen. Life Ins. Co. v. United Cos. Fin. Corp. (In re Foster Mortgage Corp.)*, 68 F.3d 914, 917 (5th Cir. 1995)).

26. In making this determination, the Court must consider the following factors:

> (1) The probability of success in the litigation, with due consideration for the uncertainty in fact and law,
>
> (2) The complexity and likely duration of the litigation and any attendant expense, inconvenience and delay, and
>
> (3) All other factors bearing on the wisdom of the compromise.

*Id.* at 356 (internal citation omitted). The Court should also consider the best interests of the creditors, with proper deference to their reasonable views, and the extent to which the settlement is the product of arms-length bargaining. *Id.*

27. Significantly, the Archdiocese's burden is not high. *In re Roqumore*, 393 B.R. 474, 480 (Bankr. S.D. Tex. 2008) ("[T]he Trustee's burden is not high."). The debtor must show only that its "decision falls within the 'range of reasonable litigation alternatives.'" *Id.* (quoting *In re W.T. Grant Co.*, 699 F.2d 599, 608 (2d Cir. 1983)).

28. Further, when determining the reasonableness of a proposed settlement, the Court "may give weight to the 'informed judgments of the . . . debtor-in-possession and their counsel

that a compromise is fair and equitable, and consider the competency and experience of counsel who support the compromise.'" *LMCHH PCP*, 2017 Bankr. LEXIS 3361, at *14 (quoting *Idearc, Inc.*, 423 B.R. at 183).

**B. The Settlement Agreement is Fair, Equitable, and in the Best Interest of the Estate.**

29. The Archdiocese believes that a compromise on the terms set forth in the Settlement Agreement should be approved by this Court because it is fair and equitable and in the best interest of the Archdiocese's estate.

**i. Probability of Success.**

30. The potential risks of litigating the Civil Action strongly favor approval of the Settlement Agreement. *See Jackson Brewing*, 624 F.2d at 604 (5th Cir. 1980) (upholding a settlement where "the resolution of [the litigation] was sufficiently uncertain not to risk the consequences of an adverse decision"); *see also LMCHH PCP*, 2017 Bankr. LEXIS 3361, at *16 (approving a settlement and noting "that there were material risks to both" sides if litigation continued).

31. Although the Archdiocese denies any wrongdoing, the uncertainty inherent in the Civil Action favors settlement. While a successful defense of the Civil Action would result in a finding of no liability, that outcome would not generate any additional recovery for creditors. Thus, when weighed against the massive financial exposure of over $138 million, the balance is clear.

**ii. Complexity and Duration.**

32. The complexity of the Civil Action and the length of time required to fully litigate the matter further support approval of the Settlement Agreement. *See Official Comm. of Unsecured Creditors v. Moeller (In re Age Ref., Inc.)*, 801 F.3d 530, 540 (5th Cir. 2015) (holding that the expense, inconvenience, and delay of continued litigation support approval of a settlement).

33. The Civil Action, which involves the United States, Relator, and several named co-defendants, presents a great deal of complexity. Despite being filed under seal in 2016, the Civil Action is in the early stages of discovery, and, while motions to dismiss have been denied, no summary judgment motions have been filed. Nonetheless, the Archdiocese already has expended a considerable amount of time and resources on the matter. Should the Civil Action proceed, the Debtor will incur significant costs in protracted discovery and time-consuming motion practice, which could culminate in an extremely expensive trial. Without settlement, there simply is no end in sight to the Civil Action.

**iii. Other Factors: Best Interest of Creditors & Arms-Length Negotiations.**

34. The Court should find that the Settlement Agreement is in the best interest of the creditors. "In evaluating the interests of the creditors, the court must take into account the consideration offered by the settling party and the degree to which the creditors object to determine whether the settlement furthers their best interests." *In re Asarco LLC*, No. 05-21207, 2009 Bankr. LEXIS 5721, *35 (Bankr. S.D. Tex. June 5, 2009) (approving an agreement that settled various governments' environmental claims against the debtor by allowing over $250 million in administrative priority claims over the objection of the unsecured creditors' committee).

35. The Settlement Agreement is in the best interest of the creditors because it preserves estate resources and eliminates the possibility of a more costly adverse judgment that could diminish their distribution under a plan of reorganization. The amount of consideration to be given by the Archdiocese—$1.1 million—is quite low when compared to the total value of the estate and the potential exposure of over $138 million in the Civil Action.

36. The Settlement Agreement also is the product of extensive, arms-length negotiations between the Parties, who at all times acted in good faith. Indeed, it cannot be said

credibly that a settlement entered into with the United States concerning an action that long predated the Petition Date is the product of fraud or collusion.

37. For all of these reasons, the settlement is fair and equitable and in the best interest of the estate, and the Court should authorize the Debtor to enter into the Settlement Agreement.

**C. The Necessity of Payment Doctrine.**

38. In approving the Settlement Agreement, this Court should allow the Debtor to make the Settlement Payments before a plan is confirmed because, as discussed below, immediate payment is crucial to the Debtor's successful reorganization.

39. Bankruptcy Courts have long recognized that, under the "necessity of payment doctrine," a debtor may use property of the estate to pay prepetition unsecured claims before it confirms a plan of reorganization. *See, e.g., In re Just for Feet, Inc.*, 242 B.R. 821, 824 (D. Del. 1999) ("Certain pre-petition claims by employees and trade creditors. . . may need to be paid to facilitate a successful reorganization. Section 105(a) of the Code provides a statutory basis for the payment of pre-petition claims."); *In re NVR L.P.*, 147 B.R. 126, 127 (Bankr. E.D. Va. 1992) ("While pre-petition claims are normally disposed of in a plan for reorganization and in accordance with statutory priorities, the 'necessity of payment' rule is a narrow exception well-established in bankruptcy common law."); *In re Eagle-Picher Indus., Inc.*, 124 B.R. 1021, 1023 (Bankr. S.D. Ohio 1991) (recognizing that "a bankruptcy court may exercise its equity powers under § 105(a) to authorize payment of pre-petition claims where such payment is necessary to permit the greatest likelihood of survival of the debtor and payment of creditors in full or a[t] least proportionately") (internal citations and quotation marks omitted).

40. In *In re CoServ, L.L.C.*, the U.S. Bankruptcy Court for the Northern District of Texas formulated a three-part test to determine the "necessity" of payments of prepetition claims:

> The debtor must show three elements are present. **First**, it must be critical that the debtor deal with the claimant. **Second**, unless it deals with the claimant, the debtor risks the probability of harm, or, alternatively, loss of economic advantage to the estate or the debtor's going concern value, which is disproportionate to the amount of the claimant's prepetition claim. **Third**, there is no practical or legal alternative by which the debtor can deal with the claimant other than by payment of the claim.
>
> If these three conditions are proven by a preponderance of the evidence, necessity of payment has been shown, and this Court will authorize payment of the prepetition claim.

273 B.R. 487, 498 (Bankr. N.D. Tex. 2002). This Court should allow the Debtor to make the Settlement Payments as contemplated by the Settlement Agreement because each of the *CoServ* elements is satisfied.

**i. The Archdiocese Must Work with the United States and Relator.**

41. The first part of the *CoServ* test requires a showing that it is "critical that the debtor deal with the claimant." *Id.* To meet this requirement, a "debtor must show that, for one reason or another, dealing with the claimant is virtually indispensable to profitable operations or preservation of the estate." *Id.*

42. To obtain confirmation of a plan of reorganization, a debtor must show that confirmation of its plan "is not likely to be followed by the liquidation, or the need for further financial reorganization." 11 U.S.C. § 1129(a)(11). This "feasibility" requirement may be satisfied by a "relatively low threshold of proof"—a debtor need only show that "the plan offers a reasonable assurance of success" based on analysis of the business's earning power, capital structure, economic conditions, and management. *In re Star Ambulance Serv., LLC,* 540 B.R. 251, 266 (Bankr. S.D. Tex. 2015) (internal quotations omitted). Nevertheless, a debtor must provide "fairly specific proof" of its ability to meet its obligations under the plan in "the time immediately following" confirmation. *Id.*

43. Here, it could be difficult for the Archdiocese to satisfy this standard without the cooperation of the United States and Relator, who could have a significant non-dischargeable debt against the Archdiocese should the Court not approve the Settlement Agreement.

**ii. The Archdiocese Risks Significant Harm If It Does Not Deal with the United States and Relator.**

44. The second part of the *CoServ* test requires the Debtor to show that the harm it risks by not dealing with the claimant significantly outweighs the harm associated with paying the prepetition claim. *Coserv*, 273 B.R. at 498. In other words, "a debtor must show that meaningful economic gain to the estate . . . will result or that serious economic harm will be avoided through payment of the prepetition claim, which itself is materially less than the potential loss to the estate." *Id.* at 498-99.

45. As previously discussed, the Archdiocese faces a significant potential liability in the Civil Action that could be non-dischargeable. Absent the Settlement Agreement, therefore, the Civil Action could result in severe economic hardship for the Archdiocese. Accordingly, making the Settlement Payments now as contemplated by the Settlement Agreement will more likely result in a meaningful economic gain to the estate (or the avoidance of any serious economic harm) than any harm associated with the Settlement Payments.

**iii. The Debtor's Only Practical Solution Is to Make the Settlement Payments Now.**

46. The third part of the *CoServ* test requires a debtor to show that it has no practical or legal way to deal with the claimant other than by paying the claim before plan confirmation. *Id.* at 499. Payment is considered the only alternative available to the debtor when it is "consistent with preservation of the estate and the going concern value of the business, while not unfairly preferring one general unsecured creditor over others." *Id.*

47. Here, the United States and Relator are only willing to settle the Civil Action if the Debtor makes the Settlement Payments now and throughout the pendency of this Chapter 11 Case. Because the Settlement Agreement will prevent significant economic loss to the Archdiocese, it is consistent with the preservation of the Debtor's estate and in the best interest of all creditors.

**D. Section 549(a)(2)(B) of the Bankruptcy Code.**

48. The Debtor also requests that the Settlement Payments be insulated from attack under § 549(a)(2)(B) of the Bankruptcy Code.

49. Section 549(a)(2)(B) governs post-petition transfers and provides, in part, that "the trustee may avoid a transfer of property of the estate . . . that occurs after the commencement of the case; and . . . *that is not authorized* . . . by the court." 11 U.S.C. § 549(a)(2)(B) (emphasis added). As such, it follows that this Court may authorize certain post-petition payments to satisfy prepetition debts. *See In re Isis Foods, Inc.*, 37 B.R. 334, 336 n. 3 (W.D. Mo. 1984), *appeal dismissed*, 738 F.2d 445 (8th Cir. 1984) ("It would appear that proposed transfers [to pay prepetition claims] could be presented in advance to a bankruptcy court for its approval and would thereafter be insulated from attack under section 549 . . . .").

50. By this Motion, the Debtor seeks authority to make the Settlement Payments, so that such payments will be insulated from attack under § 549(a)(2)(B) of the Bankruptcy Code.

**Non-dischargeability**

51. To implement the Settlement Agreement successfully, the Debtor stipulates, agrees, and consents to the entry of an order that the payments due under the Settlement Agreement are non-dischargeable pursuant to Bankruptcy Code § 1141(d)(6).

## Waiver of Bankruptcy Rules 6004(h)

52. The Debtor seeks a waiver of the 14-day stay of an order authorizing the use, sale, or lease of property under Bankruptcy Rule 6004(h).

**WHEREFORE**, The Roman Catholic Church of the Archdiocese of New Orleans respectfully requests that this Court (i) approve and authorize the Archdiocese to enter into the Settlement Agreement attached as **Exhibit A**; (ii) enter the proposed order attached as **Exhibit B**; and (iii) grant such other and further relief as is just and proper.

Dated: August 24, 2021

Respectfully submitted,

*/s/ Mark A. Mintz*

R. PATRICK VANCE (#13008)
ELIZABETH J. FUTRELL (#05863)
MARK A. MINTZ (#31878)
LAURA F. ASHLEY (#32820)
Jones Walker LLP
201 St. Charles Avenue, 51st Floor
New Orleans, LA 70170
Telephone: (504) 582-8000
Facsimile: (504) 589-8260
Email: pvance@joneswalker.com
Email: efutrell@joneswalker.com
Email: mmintz@joneswalker.com
Email: lashley@joneswalker.com

**ATTORNEYS FOR THE ROMAN CATHOLIC CHURCH OF THE ARCHDIOCESE OF NEW ORLEANS**

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing Motion is being served on August 24, 2021 (a) by email on those parties receiving electronic notice via the Court's ECF system, (b) by email on Mary Schmergel (Mary.Schmergel@usdoj.gov), Zachary Williams (Zachary.M.Williams@usdoj.gov), and Mimi Nguyen (Mimi.Nguyen@usdoj.gov), and (c) by email or First Class U.S. Mail, postage prepaid, on all other parties requiring service under the Court's Ex Parte Order Authorizing the Debtor to Limit Notice and Establishing Notice Procedures [ECF No. 22], to be sent by Donlin, Recano & Company, Inc. ("**DRC**"). DRC shall file a certificate of service to that effect once service is completed.

*/s/ Mark A. Mintz*
Mark A. Mintz