**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| **IN RE:** | § | **Case No. 20-10846** |
| | § | |
| **THE ROMAN CATHOLIC CHURCH** | § | **Section "A"** |
| **OF THE ARCHDIOCESE OF NEW** | § | |
| **ORLEANS** | § | **Chapter 11** |
| | § | |
| **Debtor.[1]** | § | |
| | § | |

---

### SUMMARY COVER SHEET TO SECOND INTERIM APPLICATION FOR ALLOWANCE AND PAYMENT OF COMPENSATION AND REIMBURSEMENT OF EXPENSES OF BERKELEY RESEARCH GROUP, LLC AS FINANCIAL ADVISORS FOR THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS FOR THE PERIOD FROM APRIL 1, 2021 THROUGH OCTOBER 31, 2021

| | | |
|---|---|---|
| **Name of Applicant:** | Berkeley Research Group, LLC | |
| **Applicant's Professional Role in Case** | Financial Advisor to the Official Committee of Unsecured Creditors | |
| **Date Order of Employment Signed** | Effective June 17, 2020 pursuant to Order dated August 25, 2020 [Docket No. 362] | |
| | **Beginning of Period** | **End of Period** |
| **Time period covered by this Application:** | 4/1/2021 | 10/31/2021 |
| **Time period(s) covered by prior Applications:** | 6/17/2020 | 3/31/2021 |
| **Total amounts awarded in all prior Applications:** | | $256,275.52 |
| **Total fees requested in this Application:** | | $393,516.50 |
| **Total hours covered by this Application:** | | 996.5 |
| **Average hourly rate:** | | $394.90 |
| **Reimbursable expenses sought in this Application:** | | $12.93 |

---

[1] The last four digits of the Debtor's federal tax identification number are 8966. The Debtor's principal place of business is located at 7887 Walmsley Ave., New Orleans, LA 70125.

## Schedule of Previous Fee Statements and Applications Noticed and Filed

| Statement/ Application | | Requested | | CNO/Order | Paid to Date | | Total Unpaid |
|---|---|---|---|---|---|---|---|
| Date Filed/ Docket No. | Period Covered | Total Fees | Expenses | Date Filed/ Docket No. | Fees | Expenses | Fees and Expenses |
| 3/23/2021 Dkt No. N/A | 6/17/2020-10/31/2020 | $176,490.50 | $3,807.52 | N/A | $176,490.50 | $3,807.52 | $0.00 |
| 5/25/2021 Dkt No. N/A | 11/1/2020-11/30/2020 | $6,289.50 | $75.00 | N/A | $6,289.50 | $75.00 | $0.00 |
| 5/25/2021 Dkt No. N/A | 12/1/2020-12/31/2020 | $10,428.00 | $0.00 | N/A | $10,428.00 | $0.00 | $0.00 |
| 5/25/2021 Dkt No. N/A | 1/1/2021-1/31/2021 | $21,400.00 | $7.00 | N/A | $21,400.00 | $7.00 | $0.00 |
| 5/25/2021 Dkt No. N/A | 2/1/2021-2/28/2021 | $8,278.50 | $0.00 | N/A | $8,278.50 | $0.00 | $0.00 |
| 5/25/2021 Dkt No. N/A | 3/1/2021-3/31/2021 | $29,499.50 | $0.00 | N/A | $29,499.50 | $0.00 | $0.00 |
| *5/27/2021 Dkt No. 891* | *6/17/2020-3/31/2021* | *$252,386.00* | *$3,889.52* | *6/21/2021 Dkt No. 916* | *$252,386.00* | *$3,889.52* | *$0.00* |
| 11/24/2021 Dkt No. N/A | 4/1/2021-4/30/2021 | $49,056.00 | $0.00 | N/A | $0.00 | $0.00 | $49,056.00 |
| 11/24/2021 Dkt No. N/A | 5/1/2021-5/31/2021 | $52,309.00 | $0.00 | N/A | $0.00 | $0.00 | $52,309.00 |
| 11/24/2021 Dkt No. N/A | 6/1/2021-6/30/2021 | $37,186.50 | $0.00 | N/A | $0.00 | $0.00 | $37,186.50 |
| 11/24/2021 Dkt No. N/A | 7/1/2021-7/31/2021 | $50,481.00 | $0.00 | N/A | $0.00 | $0.00 | $50,481.00 |
| 11/24/2021 Dkt No. N/A | 8/1/2021-8/31/2021 | $156,335.50 | $0.00 | N/A | $0.00 | $0.00 | $156,335.50 |
| 11/24/2021 Dkt No. N/A | 9/1/2021-9/30/2021 | $23,364.50 | $0.00 | N/A | $0.00 | $0.00 | $23,364.50 |
| 11/24/2021 Dkt No. N/A | 10/1/2021-10/31/2021 | $24,784.00 | $12.93 | N/A | $0.00 | $0.00 | $24,796.93 |
| **Totals** | | **$645,902.50** | **$3,902.45** | | **$252,386.00** | **$3,889.52** | **$393,529.43** |

**In re: The Roman Catholic Church of the**

**Archdiocese of New Orleans**

**Berkeley Research Group, LLC**

**Attachment A: Fees By Professional**

For the Period 4/1/2021 through 10/31/2021

| Professional | Title | Billing Rate | Hours | Fees |
|---|---|---|---|---|
| D. Judd | Managing Director | $660.00 | 39.0 | $25,740.00 |
| P. Shields | Managing Director | $620.00 | 123.1 | $76,322.00 |
| R. Strong | Managing Director | $590.00 | 48.5 | $28,615.00 |
| M. Babcock | Director | $540.00 | 129.6 | $69,984.00 |
| M. Babcock | Associate Director | $540.00 | 33.0 | $17,820.00 |
| J. Shaw | Senior Managing Consultant | $475.00 | 38.2 | $18,145.00 |
| K. Schliep | Senior Managing Consultant | $435.00 | 3.9 | $1,696.50 |
| C. Tergevorkian | Consultant | $325.00 | 60.3 | $19,597.50 |
| S. Bhattacharya | Consultant | $325.00 | 112.1 | $36,432.50 |
| A. Arena | Senior Associate | $350.00 | 11.9 | $4,165.00 |
| C. Tergevorkian | Senior Associate | $285.00 | 0.1 | $28.50 |
| S. Chaffos | Senior Associate | $275.00 | 163.9 | $45,072.50 |
| S. Chaffos | Associate | $235.00 | 160.5 | $37,717.50 |
| S. Smith | Associate | $210.00 | 1.0 | $210.00 |
| M. Haverkamp | Case Manager | $275.00 | 7.7 | $2,117.50 |
| A. Hulme | Case Assistant | $225.00 | 0.8 | $180.00 |
| H. Henritzy | Case Assistant | $155.00 | 6.5 | $1,007.50 |
| V. Calder | Case Assistant | $110.00 | 1.7 | $187.00 |
| V. Triana | Case Assistant | $155.00 | 54.7 | $8,478.50 |

| Professional | Title | Billing Rate | Hours | Fees |
|---|---|---|---|---|
| **Total** | | | **996.5** | **$393,516.50** |
| **Blended Rate** | | | | **$394.90** |

**In re: The Roman Catholic Church of the**

**Archdiocese of New Orleans**

**BRG**

## Berkeley Research Group, LLC

**Attachment B: Fees By Task Code**

For the Period 4/1/2021 through 10/31/2021

| Task Code | Hours | Fees |
|---|---|---|
| 200.10 Document / Data Analysis (Data Room) | 6.9 | $3,206.50 |
| 200.20 Document / Data Analysis (Financial / Accounting) | 260.0 | $86,172.50 |
| 200.30 Document / Data Analysis (Financial / Accounting) - Accounting System | 72.4 | $37,548.00 |
| 200.40 Document / Data Analysis (Corporate) | 11.0 | $7,260.00 |
| 200.50 Document / Data Analysis (Related Non-Debtors) | 24.1 | $8,956.00 |
| 200.90 Document / Data Analysis (Production Requests) | 136.7 | $56,293.00 |
| 220.00 Debtors Operations / Monitoring (Monthly Operating Reports / Periodic Reporting) | 36.7 | $11,776.00 |
| 221.00 Debtors Operations / Monitoring (Cash Management Reports) | 29.1 | $7,198.50 |
| 300.00 Asset Analysis (General - Debtors) | 28.3 | $15,318.50 |
| 302.00 Asset Analysis (General - Related Non-Debtors) | 38.1 | $13,455.00 |
| 310.00 Asset Analysis (Cash / Bank Accounts - Debtors) | 115.4 | $51,507.50 |
| 312.00 Asset Analysis (Cash / Bank Accounts - Related Non-Debtors) | 1.1 | $726.00 |
| 320.00 Asset Analysis (Investments / Funds - Debtors) | 4.7 | $2,618.00 |
| 321.00 Asset Analysis (Investments / Funds - Debtors Restricted / Identified Assets) | 2.7 | $634.50 |
| 330.00 Asset Analysis (Real Property - Debtors) | 27.9 | $10,213.00 |
| 332.00 Asset Analysis (Real Property - Related Non-Debtors) | 7.4 | $2,834.00 |
| 340.00 Asset Analysis (Personal Property - Debtors) | 11.3 | $4,681.00 |

| Task Code | Hours | Fees |
|---|---|---|
| 350.00 Asset Analysis (Insurance - Debtors) | 0.2 | $124.00 |
| 600.00 Claims / Liability Analysis (General) | 40.7 | $19,727.00 |
| 900.00 Report / Presentation Preparation | 10.2 | $5,240.00 |
| 1010.00 Employment Application | 0.5 | $295.00 |
| 1020.00 Meeting Preparation & Attendance | 29.9 | $16,625.00 |
| 1030.00 Mediation Preparation & Attendance | 0.1 | $59.00 |
| 1040.00 Hearing / Trial Preparation & Attendance | 1.5 | $898.00 |
| 1060.00 Fee Application Preparation & Hearing | 99.6 | $30,150.50 |
| **Total** | **996.5** | **$393,516.50** |
| **Blended Rate** | | **$394.90** |

Berkeley Research Group, LLC

Invoice for the 4/1/2021 - 10/31/2021 Period

**In re: The Roman Catholic Church of the**

**Archdiocese of New Orleans**

**Berkeley Research Group, LLC**

**Attachment C: Expenses By Category**

For the Period 4/1/2021 through 10/31/2021

| Expense Category | Amount |
|---|---:|
| 03. Travel - Taxi | $12.93 |
| **Total Expenses for the Period 4/1/2021 through 10/31/2021** | **$12.93** |

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: | § | Case No. 20-10846 |
| | § | |
| THE ROMAN CATHOLIC CHURCH | § | Section "A" |
| OF THE ARCHDIOCESE OF NEW | § | |
| ORLEANS | § | Chapter 11 |
| | § | |
| Debtor.[2] | § | |
| | § | |

---

**SECOND INTERIM APPLICATION FOR ALLOWANCE AND PAYMENT
OF COMPENSATION AND REIMBURSEMENT OF EXPENSES OF
BERKELEY RESEARCH GROUP, LLC AS FINANCIAL ADVISOR FOR THE
OFFICIAL COMMITTEE OF UNSECURED CREDITORS FOR THE PERIOD
FROM APRIL 1, 2021 THROUGH OCTOBER 31, 2021**

> **A HEARING WILL BE CONDUCTED ON THIS MATTER ON DECEMBER 16, 2021, AT 1:30 P.M. BY TELEPHONE THROUGH THE DIAL-IN FOR SECTION A 1-888-684-8852; CONFERENCE CODE 9318283. IF YOU OBJECT TO THE RELIEF REQUESTED IN THIS PLEADING, YOU MUST RESPOND IN WRITING. UNLESS DIRECTED OTHERWISE BY THE COURT, YOU MUST FILE YOUR RESPONSE WITH THE CLERK OF THE BANKRUPTCY COURT NO LATER THAN SEVEN (7) DAYS BEFORE THE HEARING DATE. YOU MUST SERVE A COPY OF YOUR RESPONSE ON THE PERSON WHO SENT YOU THE NOTICE; OTHERWISE, THE COURT MAY TREAT THE PLEADING AS UNOPPOSED AND GRANT THE RELIEF REQUESTED.**

Berkeley Research Group ("BRG"), financial advisor for the Official Committee of Unsecured Creditors (the "Committee") of The Roman Catholic Church of the Archdiocese of New Orleans (the "Debtor"), hereby submits its *Second Interim Application for Allowance and Payment of Compensation and Reimbursement of Expenses of Berkeley Research Group, as*

---

[2] The last four digits of the Debtor's federal tax identification number are 8966. The Debtor's principal place of business is located at 7887 Walmsley Ave., New Orleans, LA 70125.

*Financial Advisor for the Official Committee of Unsecured Creditors for the Period from April 1, 2021 Through October 31, 2021* (the "Application") seeking (a) the allowance of reasonable compensation for professional services rendered by BRG to the Committee during the period April 1, 2021 through and including October 31, 2021 (the "Fee Period"); and (b) reimbursement of actual and necessary charges and disbursements incurred by BRG during the Fee Period in the rendition of professional services on behalf of the Committee. In support of the Application, BRG respectfully represents as follows:

## JURISDICTION AND VENUE

1.      The United States Bankruptcy Court for the Eastern District of Louisiana (the "Court") has jurisdiction to consider this Application pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

2.      Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3.      The bases for the relief requested herein are sections 330 and 331 of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "Bankruptcy Code"), Rules 2014 and 2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), Rules 2014-1 and 2016-1 of the Bankruptcy Local Rules for the Eastern District of Louisiana (the "Local Rules"), and Section XIII(B) of the Court's *December 4, 2019 General Order Regarding Procedures of Complex Chapter 11 Cases* (the "Complex Case Order").

## BACKGROUND

4.      On May 1, 2020 (the "Petition Date"), The Roman Catholic Church of the Archdiocese of New Orleans (the "Archdiocese") filed a voluntary petition for relief under the Bankruptcy Code (the "Case"). The Debtor remains in possession of its property and is managing its business as a debtor in possession pursuant to §§ 1107(a) and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed in this Case.

4

5.      On May 20, 2020, the Office of the United States Trustee for Region 5 (the "U.S. Trustee") appointed the Committee pursuant to section 1102(a)(1) of the Bankruptcy Code [Docket #94].

6.      On June 17, 2020, the Committee selected BRG to serve as its financial advisor. The Committee also selected Pachulski, Stang, Ziehl & Jones ("PSZJ") and Locke Lord LLP ("Locke Lord" and together "Counsel") to serve as co-counsel.

7.      On July 6, 2020, the Committee filed an *Application to Employ Berkeley Research Group, LLC as Financial Advisor* [Docket No. 205] (the "Retention Application"). On August 25, 2020, this Court entered the *Order Authorizing the Employment and Retention of Berkeley Research Group, LLC as Financial Advisor for the Official Committee of Unsecured Creditors* [Docket No. 362] (the "Retention Order").

8.      On March 5, 2021, the U.S. Trustee, pursuant to the Court's *Order Directing United States Trustee to Appoint Additional Committee of Commercial Unsecured Creditors*, appointed the Unsecured Commercial Creditors' Committee (the "Commercial Committee").

## EXTRAORDINARY CIRCUMSTANCES

9.      The Committee with the support of BRG and Counsel have undertaken strenuous efforts to move this case forward towards a resolution of creditor claims, to achieve the goal of the most favorable resolution to unsecured creditors possible.

10.     The Committee recognizes that unless this case is dismissed, the most likely outcome and resolution of claims will come through a plan of reorganization. To that end, the Committee has worked to move this process forward, including, with BRG's support, a comprehensive investigation and analysis of the Debtor's financial circumstances and structure and information underlying claims filed against the Debtor, all of which is necessary to inform

negotiations and mediation concerning potential resolution of claims. Extensive efforts have been required to compel production of the documents necessary to the investigation and review the same for comprehensivity and responsiveness.

11.     Nevertheless, the Committee, Counsel and BRG will continue to work in good faith to attempt to move this matter forward, and as necessary, will bring matters to the Court. The Committee and its advisors are dedicated to resolving matters in the manner most beneficial to unsecured creditors as a whole.

### PROFESSIONAL FEES AND DISBURSEMENTS

12.     By this Application, prepared in accordance with sections 330 and 331 of the Bankruptcy Code, Rules 2014 and 2016 of the Bankruptcy Rules, Rules 2014-1 and 2016-1 of the Local Rules, the United States Trustee's Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses filed under 11 U.S.C. § 330, effective January 30, 1996 (the "U.S. Trustee Guidelines"), and Section XIII(B) of the Complex Case Order, BRG seeks allowance of fees in the amount of $393,516.50 for professional services rendered for and on behalf of the Committee during the Fee Period, and $12.93 for reimbursement of actual and necessary costs and expenses incurred in connection with the rendering of such services, for a total award of $393,529.43[3].

13.     BRG expended an aggregate of 996.5 hours at a blended hourly rate of $394.90.

14.     Attached as **Attachment A** above is the summary schedule of professionals who rendered services to the Committee during the Fee Period, including titles, billing rates, and the blended hourly rate. Attached as **Attachment B** above is the summary schedule of hours and fees

---

[3] The total fees requested herein incorporate the voluntary reduction as agreed upon with the Committee in the amount of $62,151.00 for the Fee Period.

expended during the Fee Period by BRG's professionals with respect to each task code (subject matter categories that BRG established consistent with the U.S. Trustee Guidelines).

15.     BRG also maintains records of all actual and necessary out-of-pocket expenses incurred in connection with the rendition of its professional services. **Attachment C** above is a summary of the expenses incurred by BRG during the Fee Period that sets forth the total amount of reimbursement sought with respect to each type of expense for which BRG is seeking reimbursement in this Application.

16.     BRG has, on November 23, 2021 submitted monthly fee statements for each month in the Fee Period, in accordance with the Complex Case Order and Bankruptcy Rule 2016, requesting 80% of the fees and 100% of the expenses incurred (the "Monthly Fee Statements"). The Monthly Fee Statements for April 1, 2021 through October 31, 2021 are attached hereto as **Exhibits A-G** respectively and incorporated herein by reference.

### SUMMARY OF SERVICES RENDERED

17.     BRG is a global strategic advisory and expert consulting firm that provides independent expert testimony, litigation and regulatory support, authoritative studies, strategic advice, advisory services relating to restructuring and turnaround, due diligence, valuation, and capital markets, and document and data analytics to major law firms, Fortune 500 corporations, government agencies, and regulatory bodies around the world. BRG has a wealth of experience in providing financial consulting in distressed scenarios and enjoys an excellent reputation for services it has rendered in large and complex chapter 11 cases on behalf of debtors and creditors throughout the United States.

18.     BRG has provided, and continues to provide, financial advisory services to the Committee in this Bankruptcy Case as requested and as necessary in furtherance of the interests

7

of the unsecured creditors of the Debtor's estate. BRG respectfully submits that the professional services rendered on behalf of the Committee were necessary and have directly benefited the creditor constituents represented by the Committee and have contributed to the effective administration of this Case.

19.     BRG submits that the fees applied for herein for professional services rendered in performing services for the Committee in this proceeding are fair and reasonable in view of the time spent, the extent of work performed, and the nature of the Debtors' operational and financial condition, and the results obtained.

20.     As noted in the *Application for Entry of An Order Authorizing the Retention and Employment of Berkeley Research Group, LLC, as Financial Advisor to the Official Committee of Unsecured Creditors Effective as of June 17, 2020* (the "Retention Application"), "In the ordinary course of business, BRG periodically revises its hourly rates to reflect promotions and other changes in personnel responsibilities, increases in experience, and increases in the cost of doing business." As of July 1, 2021, the hourly rates for certain staff increased. The new rates can be found in **Attachment A: Fees by Professional**. However, BRG is still subject to the discount on its hourly rates as agreed to with the Committee, and thus the rate changes have had minimal effect on the fees charged.

21.     The work involved, and thus the time expended, was carefully assigned in light of the experience and expertise required for a particular task. The staff utilized was selected to optimize efficiencies and avoid redundant efforts.

22.     BRG believes that there has been no duplication of services between BRG and any other advisors to the Committee.

23.    BRG's hourly rates for professionals of comparable experience, are at or below those of firms we consider our competitors. We believe that the compensation in this Application is based on the customary compensation charged by comparably skilled professionals in cases other than cases under Title 11.

24.    No agreement or understanding exists between BRG and any other person for sharing of compensation received or to be received for services rendered in connection with the Chapter 11 cases, except for internal agreements among employees regarding the sharing of revenue or compensation. Neither BRG nor any of its employees has entered into an agreement or understanding to share compensation with any entity as described in Bankruptcy Code Section 504 and Bankruptcy Rule 2016.

25.    The services rendered by BRG during the Fee Period can be grouped into the categories set forth below. BRG attempted to place the services provided in the category that best relates to such services. Certain services may relate to one or more categories but have only been included once to prevent any duplication. These services performed, by categories, are generally described below, with a more detailed identification of the actual services provided set forth in the attached Fee Statements.

## 200.10 – Document / Data Analysis (Data Room)

26.    BRG spent time evaluating the various categories and types of records produced by the Debtor and compared the documents produced to documents requested by the UCC in order to identify requested documents that remain outstanding.

27.    BRG expended 6.9 hours on this category for fees in the amount of $3,206.50.

## 200.20 – Document / Data Analysis (Financial / Accounting)

28.    A significant volume of banking and investment account records (over 11,000 pages of banking and investment account records), as well as other financial records, were produced by the Debtor during the Fee Period. Given the unorganized manner in which banking and investment account records were produced, BRG was required to expend significant time and effort examining and compiling these documents so that transaction data and information contained therein could be extracted, analyzed, and investigated in the most efficient manner (almost 83,000 transaction records were extracted and verified). While the data extraction and analysis has been automated as much as possible for efficiency, BRG was also required to compare and verify the data to ensure accuracy. The result of these efforts is the initial development of a cash receipts and disbursements database, which is an essential element of BRG's ongoing analyses and investigations, including its identification and analysis of potential assets available to the Debtors' creditors.

29.    The records reviewed, organized, and indexed also included, but are not limited to, promissory notes and allonges relating to the deposit and loan fund, investment management agreements, QuickBooks accounting data, and audited financial statements of related entities. Additional time was spent communicating with the Debtor and case professionals regarding the same. BRG's analysis of the aforementioned data, has and will continue to assist in its identification and analysis of assets and potential assets (both historical and current) of the Debtors. Furthermore, BRG analysis of financial statements and other financial information will assist in its evaluation of historical and current financial trends and business relationships existing between the Debtor and the Apostolates.

30.    BRG expended 260.0 hours on this category for fees in the amount of $86,172.50.

## 200.30 – Document / Data Analysis (Financial / Accounting) - Accounting System

31.     BRG analyzed significant volumes of data from Debtor's Financial Edge accounting system. QuickBooks data from the eleven Archdiocesan units was also evaluated. BRG also worked with the Debtor's Financial Advisor and external consultants in developing and executing data extractions from the Debtor's Financial Edge and QuickBooks accounting systems for further analysis. Specific areas of focus for BRG's efforts during the Fee Period included, but were not limited to, accounting system issues relating to motion to compel, accounting system extracts for Debtor and schools/affiliates, transfer of financial data from Debtor's systems, research of transaction activity found in QuickBooks files of the Archdiocesan units, annual financial statements generated from Financial Edge, accounts payable data, general ledger data, operating bank account data, and accounts receivable data. Obtaining the Debtor's accounting data has been vital to BRG's ongoing analysis and has allowed BRG to efficiently analyze the Debtor's historic and current operations and financial activity and assets available to the Debtor's creditors. Additional time was spent communicating and participating in meetings with case professionals and Debtor's financial advisors thereon.

32.     BRG expended 72.4 hours on this category for fees in the amount of $37,548.00.

## 200.40 – Document / Data Analysis (Corporate)

33.     BRG analyzed the Finance Committee Board minutes for the years 2010, 2011, 2015, 2017, 2018, 2019, and the 2020 Coronavirus task force meeting minutes. Additionally, BRG communicated with case professionals regarding information found therein. Minutes provide important insights into decisions made by the Debtor, the Debtor's practices, and other information.

34.     BRG expended 11.0 hours on this category for fees in the amount of $7,260.00.

11

## 200.50 – Document / Data Analysis (Related Non-Debtors)

35.     During the Fee Period, BRG reviewed financial information and other documents produced related to non-Debtor affiliates. Specific tasks included researching and reviewing Form 990s in GuideStar, identifying the list of Apostolates and other audit reports for review, creating schedules of financial statement and accounting documents produced, and communicating and participating in meetings with UCC Counsel and Debtor professionals in relation to such matter. Evaluating financial and other information relating to the non-debtor affiliates is important in the context of assessing, among other things, what might constitute a substantial contribution, and assessing the relationship, dealings and transaction activity between the Debtor and non-debtor affiliates.

36.     BRG expended 24.1 hours on this category for fees in the amount of $8,956.00.

## 200.90 – Document / Data Analysis (Production Requests)

37.     BRG engaged in significant and continued efforts with UCC Counsel to request and evaluate document productions and records, including providing explanations of the need for the requested documents and highlighting issues related to the production thereof. Specifically, BRG spent substantial time preparing and updating formal document requests, monitoring documents provided and updating listings of Debtor and non-debtor entities to determine outstanding production requests, developing and reviewing indices of records produced, and evaluating document requests and subpoenas for updated information on several matters such as bank and investment account information, financial statements, property documents, and documents pertaining to particular entities including parishes, schools, and other affiliates. Additional time was spent preparing for and participating in meetings with UCC Counsel and the Debtor and their counsel and financial advisors to address issues with and coordinate production

12

of data from various sources, including the affiliates, the deposit and loan fund database, and bank and investment accounts. The requested documents are necessary in order to perform analyses and investigations in a number of critical areas, including assets (including alleged restrictions), claims, operations, organizational structure, and relationships and dealings between the Debtor and non-debtor affiliates.

38.     BRG expended 136.7 hours on this category for fees in the amount of $56,293.00.

### 220.00 – Debtor Operations / Monitoring
### (Monthly Operating Reports / Periodic Reporting)

39.     BRG developed and updated schedules to evaluate information set forth in monthly operating reports and periodic reporting for the periods May 2020 through August 2021. Such information includes cash receipts and disbursements detail, AR and AP aging, statements of financial condition and statements of activities. Such analysis is necessary to monitor the transaction activities of the Debtor. BRG also communicated with the Debtor's Financial Advisor and UCC Counsel in an effort to obtain monthly operating reports and periodic reporting data without redactions.

40.     BRG expended 36.7 hours on this category for fees in the amount of $11,776.00.

### 221.00 – Debtors Operations / Monitoring (Cash Management Reports)

41.     BRG analyzed weekly cash receipts and disbursements for the period from January 31, 2021 through August 15, 2021 for the monitoring of the Debtor's cash activity.

42.     BRG expended 29.1 hours on this category for fees in the amount of $7,198.50.

### 300.00 – Asset Analysis (General – Debtors)

43.     BRG analyzed accounts maintained by the Debtor and non-debtor affiliates and coordinated tasks for the purpose of asset analysis and asset identification. Specifically, BRG coordinated ongoing analyses and investigations, analyzed Debtor's historical deposit and loan activity, analyzed bank/investment transaction activity, analyzed activity detailed in motion to recuse, and prepared summary of analyses/investigations for UCC and SCC related presentations. BRG also attended meetings and participated in communications with the UCC, UCC Counsel, State Court Counsel, the Debtor's financial advisor, and other case professionals.

44.     BRG expended 28.3 hours on this category for fees in the amount of $15,318.50.

### 302.00 – Asset Analysis (General – Related Non-Debtors)

45.     BRG analyzed the related non-Debtor entities' financial reports, properties audit reports, outlined and updated the affiliates financial analysis, and updated assets and liabilities summary for affiliates, and researching outstanding detail. Additional time was spent communicating thereon and preparing for UCC status presentations regarding the same with UCC Counsel and case professionals. BRG's ongoing examination of non-debtor affiliate assets will benefit its analysis and investigation, including its identification and analysis of potential assets available to the Debtor's creditors.

46.     BRG expended 38.1 hours on this category for fees in the amount of $13,455.00.

### 310.00 – Asset Analysis (Cash / Bank Accounts – Debtors)

47.     During the Fee Period, BRG developed detailed analyses of the Debtor's transaction activity and reported to UCC Counsel and the Committee thereon. Specific analyses undertaken included, but were not limited to, analyzing the flow of funds between various bank accounts for fiscal years 2018 through 2020 including portfolios A and B, the operating account

14

and checking accounts, categorization and analysis of receipts and cash disbursement transaction activity, and analysis of additional financial statements. Further work performed by BRG included developing a comparison of bank statements with reconciliation reports as well as availability of data contained within audit work papers, and developed reporting for UCC Counsel and the Committee regarding BRG's findings, and the status of and issues with the asset analysis workstream. Additional time was spent communicating with Counsel and internally in regards to the cash and investment asset analyses, issues that have arisen, next steps and additional analysis required. BRG's ongoing examination of cash and investments will benefit its analysis and investigation, including its identification and analysis of potential assets available to the Debtor's creditors.

48.    BRG expended 115.4 hours on this category for fees in the amount of $51,507.50.

### 312.00 – Asset Analysis (Cash / Bank Accounts – Related Non-Debtors)

49.    BRG participated in a meeting with case professionals, UCC Counsel, and UCC Committee advisor regarding cash tracing  for affiliated entities. BRG's ongoing examination of cash and investments will benefit its analysis and investigation, including its identification and analysis of potential assets available to the Debtor's creditors.

50.    BRG expended 1.1 hours on this category for fees in the amount of $726.00.

### 320.00 – Asset Analysis (Investments / Funds – Debtors)

51.    BRG analyzed the Debtor's Portfolio A investment balances and accounting activity. BRG's ongoing examination of cash and investments will benefit its analysis and investigation, including its identification and analysis of potential assets available to the Debtor's creditors.

52.    BRG expended 4.7 hours on this category for fees in the amount of $2,618.00.

**321.00 – Asset Analysis (Investments / Funds – Debtors Restricted / Identified Assets)**

53.     BRG analyzed the Debtor's and Debtor's affiliates net assets to determine balance with donor restrictions. BRG's ongoing examination of alleged restricted assets will benefit its analysis and investigation, including its identification and analysis of potential assets available to the Debtor's creditors.

54.     BRG expended 2.7 hours on this category for fees in the amount of $634.50.

**330.00 – Asset Analysis (Real Property – Debtors)**

55.     BRG developed and updated indices and schedules of 2021 real estate appraisals, analyzed real estate data to compare various schedules and related underlying data sources regarding real estate holdings identified by the Debtor, and updated the real estate analysis to include supporting documentation provided by the Debtor. Additional time was spent communicating with UCC Counsel and case professionals thereon. BRG's ongoing examination of the Debtor's real property will benefit its analysis and investigation, including its identification and analysis of potential assets available to the Debtor's creditors.

56.     BRG expended 27.9 hours on this category for fees in the amount of $10,213.00.

**332.00 – Asset Analysis (Real Property – Related Non-Debtors)**

57.     BRG analyzed the Debtor's affiliates' real estate holdings to update affiliates' listing with real estate values. BRG's ongoing examination of affiliate real property will benefit its analysis and investigation, including its identification and analysis of potential assets available to the Debtor's creditors.

58.     BRG expended 7.4 hours on this category for fees in the amount of $2,834.00.

### 340.00 – Asset Analysis (Personal Property - Debtors)

59.      BRG developed and updated indices regarding coverage limits of collectibles, analyzed and revised personal property asset analysis and related documentation, and discussed ongoing status and findings to case professionals and UCC Counsel. BRG's ongoing examination of personal property will benefit its analysis and investigation, including its identification and analysis of potential assets available to the Debtor's creditors.

60.      BRG expended 11.3 hours on this category for fees in the amount of $4,681.00.

### 350.00 – Asset Analysis (Insurance – Debtors)

61.      BRG analyzed captive insurance issues in the context of the Archdiocese of New Orleans bankruptcy captive insurance issues. BRG's ongoing examination of captive insurance issues will benefit its analysis and investigation, including its identification and analysis of potential assets available to the Debtor's creditors.

62.      BRG expended 0.2 hours on this category for fees in the amount of $124.00.

### 600.00 – Claims / Liability Analysis (General)

63.      At the request of UCC Counsel, BRG compiled, updated, and analyzed claims data and the related claims database based on data provided by the claims agent, Donlin Recano. BRG worked with Donlin Recano in order to ascertain and clarify claims data, as well as maintain an updated claims database as additional claims were filed. BRG categorized each claim as a filed or scheduled claim, as well as determined the nature and class of each claim (i.e., sexual abuse claims, secured claims, trade claims, bonds, etc.) examining the support for proofs of claims for non-abuse claims, and comparing the scheduled versus filed claims. BRG also developed and updated summary schedules of claims based on the categorization and class of each claim. Additionally,

BRG participated in meetings with UCC Counsel and Donlin Recano related to various aspects of the claims analysis and reconciliation.

64.    BRG expended 40.7 hours on this category for fees in the amount of $19,727.00.

### 900.00 – Report / Presentation Preparation

65.    BRG spent time preparing, reviewing, and revising presentation materials on matters including, but not limited to, asset analyses / investigations, industry research, and case status findings for presentation to the Committee, as well as communicating with UCC Counsel thereon.

66.    BRG expended 10.2 hours on this category for fees in the amount of $5,240.00.

### 1010.00 – Employment Application

67.    BRG met with Counsel regarding the employment of an accounting software consulting firm.

68.    BRG expended 0.5 hours on this category for fees in the amount of $295.00.

### 1020.00 – Meeting Preparation & Attendance

69.    During the Fee Period, BRG prepared for and participated in various conference calls with the Committee, UCC Counsel, the Commercial Committee counsel and financial advisors, the Debtor's counsel and financial advisor, and other case professionals to discuss a variety of case issues, including document production, gather and present information related to BRG's ongoing analyses and investigations, and coordinate additional work to be performed.

70.    BRG expended 29.9 hours on this category for fees in the amount of $16,625.00.

## 1030.00 – Mediation Preparation & Attendance

71.     BRG held an internal discussion regarding the mediation brief related to our ongoing analysis.

72.     BRG expended 0.1 hours on this category for fees in the amount of $59.00.

## 1040.00 – Hearing / Trial Preparation & Attendance

73.     BRG attended the telephonic Court hearing regarding the motion to compel and discussed the same with Counsel.

74.     BRG expended 1.5 hours on this category for fees in the amount of $898.00.

## 1060.00 – Fee Application Preparation & Hearing

75.     During the Second Interim Fee Application Period, BRG prepared, reviewed, and updated its Second through Eleventh Fee Statements, which covered the period from November 1, 2020 to August 31, 2021 (including the development and preparation of fee application narratives and related exhibits). Additional time was spent preparing and editing the First Interim Fee Application, as well as the initial preparation of the Second Interim Fee Applications. Of note, prior to filing any fee statement or application in this matter, BRG provides its fees and expenses to the UCC for review and comment and only files a fee application after it receives UCC approval of its fees and expenses.

76.     BRG expended 99.6 hours on this category for fees in the amount of $30,150.50.

## ACTUAL AND NECESSARY EXPENSES

77.     BRG incurred actual out-of-pocket expenses in connection with the rendition of the professional services to the Committee as summarized above, in the sum of $12.93, for which BRG requests reimbursement in full.

19

78.    Disbursements and expenses are incurred in accordance with BRG's normal practice of charging clients for expenses clearly related to and required by particular matters. Such expenses are often incurred to enable BRG to devote time beyond normal office hours to matters, which imposed extraordinary time demands. BRG endeavors to minimize these expenses to the fullest extent possible.

79.    BRG's billing rates do not include charges for photocopying, telephone and facsimile charges, computerized research, travel expenses, "working meals," secretarial overtime, postage, and certain other office services, because the needs of each client for such services differ. BRG believes that it is fairest to charge each client only for the services actually used in performing services for such client. BRG endeavors to minimize these expenses to the fullest extent possible.

80.    In providing a reimbursable service such as copying or telephone, BRG does not make a profit on that service. In charging for a particular service, BRG does not include in the amount for which reimbursement is sought the amortization of the cost of any investment, equipment, or capital outlay. In seeking reimbursement for service which BRG justifiably purchased or contracted for from a third party, BRG requests reimbursement only for the amount billed to BRG by such third party vendor and paid by BRG to that vendor.

## THE REQUESTED COMPENSATION SHOULD BE ALLOWED

81.    Section 330 provides that a court may award a professional employed under 11 U.S.C § 328 "reasonable compensation for actual, necessary services rendered . . . and reimbursement for actual, necessary expenses." See 11 U.S.C. Section 330(a)(1). Section 330 also sets forth the criteria for the award of such compensation and reimbursement:

> In determining the amount of reasonable compensation to be awarded . . . , the court should consider the nature, the extent, and the value of such services, taking into account all relevant factors, including –

(A)    the time spent on such services;

(B)    the rates charged for such services;

(C)    whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title;

(D)    whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed;

(E)    with respect to a professional person, whether the person is board certified or otherwise has demonstrated skill and experience in the bankruptcy field; and

(F)    whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.

11 U.S.C. § 330(a)(3).

82.    BRG has a reputation for its expertise and experience in financial and bankruptcy reorganizations and restructurings and as noted above, the compensation is reasonably based on customary compensation charged by other practitioners in non-bankruptcy cases. Based on an application of the above factors and its compliance with the U.S. Trustee Guidelines, BRG respectfully submits that the compensation requested herein is reasonable in light of the nature, extent, and value of such services to the Committee and, accordingly, that approval of the compensation sought herein is warranted.

83.    Section 330 of the Bankruptcy Code authorizes the Court to award BRG reasonable compensation for its actual and necessary financial advisory services rendered and reimbursement of actual and necessary expenses incurred in the rendering of those services as financial advisor to the Committee in this case. Bankruptcy Code § 330(a)(1) provides as follows:

(a)(1)    After notice to the parties in interest and the United States Trustee and a hearing, and subject to sections 326, 328, and 329, the court may award to a trustee, a consumer privacy ombudsman appointed under section 332, an examiner, an ombudsman

appitoned under section 333, or a professional person employed under section 327 or 1103—

    (A)   reasonable compensation for actual, necessary services rendered by the trustee, examiner, ombudsman, professional person, or attorney and by any paraprofessional person employed by any such person; and

    (B)   reimbursement for actual, necessary expenses.

11 U.S.C. § 330(a)(1).

84.    This Application substantiates the total amount BRG seeks for fees and expenses in accordance with this Court's standards applied to fee applications. The factors that courts in this jurisdiction consider when making a discretionary award of reasonable attorneys' fees and reimbursable expenses were originally described in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974) (the "*Johnson* Factors"). The Fifth Circuit has applied the *Johnson* Factors to the determination of awards of professionals' fees and expenses in bankruptcy cases. *In re First Colonial Corp. of Am.*, 544 F.2d 1291 (5th Cir. 1977), *cert. denied* 431 U.S. 904 (1977). Many of these *Johnson* Factors have now been codified at Bankruptcy Code § 330(a)(3). 11 U.S.C. § 330(a)(3).

85.    The *Johnson* Factors are summarized as follows: (1) the time and labor required; (2) the novelty and difficulty of the questions presented; (3) the skill required to perform the financial advisory services; (4) the preclusion of other employment by the professionals due to acceptance of the bankruptcy case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or circumstances; (8) the amounts involved and the results obtained; (9) the experience, reputation and ability of the professionals; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the

client; and (12) awards in similar cases.[4]  Based upon the services described in this Application, BRG respectfully represents that it has fully satisfied the standards prescribed by the Johnson Factors.

**The Time and Labor Required**

86.    Firm professionals and case assistants, in the performance of financial advisory services, expended 996.5 hours during the Fee Period for a total fee of $393,516.50.[5]  Taking into account BRG's voluntary reductions, the blended hourly rate is $394.90/hour. The names of the professionals who worked on this case during the Fee Period appear in the Monthly Fee Statements and in **Attachment A: Fees By Professional** included in the Application Summary above.  BRG submits that the time and labor these professionals expended in the Bankruptcy Case are appropriate and reasonable and that this *Johnson* Factor supports BRG's requested award. Further, the amount of time multiplied by a reduced, and reasonable, fee suggests that the fee award is appropriate in this Circuit under the "lodestar" doctrine.

**The Novelty and Difficulty of the Questions Presented**

87.    This Bankruptcy Case presents many novel and difficult questions. Addressing these questions have necessitated considerable financial advisory expertise. In light of these considerations, this *Johnson* Factor strongly favors awarding BRG the fees and expenses it has requested.

---

[4] The factors enunciated in *Johnson* have been adopted by four other courts of appeals. *See Boston & Maine Corp. v. Sheehan, Phinney, Bass & Green*, 778 F.2d 890, 896 (1st Cir. 1985); *Harman v. Levin*, 772 F.2d 1151, 1152-53 (4th Cir. 1985); *Mann v. McCombs*, 751 F.2d 286, 287-88 (8th Cir. 1984); *Yermakov v. Fitzsimmons*, 718 F.2d 1465, 1471 (9th Cir. 1983).

[5] This takes into account the Firm's voluntary reductions.

## The Skill Required to Perform the Services

88.      Representing the Committee in this Case required considerable skill and expertise in bankruptcy issues. As delineated above, BRG has considerable experience in complex bankruptcy matters. Further, BRG has been engaged as financial advisor in numerous creditors' committees in cases with abuse claims, and has extensive experience in cases involving dioceses and archdioceses of the Catholic Church, and thus has a unique understanding of the structure and history of that institution and its sub-entities, and of the nature of its assets.  BRG submits that this expertise is also relevant as a factor suggesting a fee award under Local Rule 2016-1 (A)(13). BRG employed professionals of varying levels of skill and expertise to efficiently resolve the issues in this case. BRG strove to limit the number of professionals who worked on this case and to use the most appropriate professional for any given task. For this reason, the compensation BRG is requesting for the services rendered by its professionals compares favorably to the compensation awarded in other bankruptcy cases of a similar size and complexity. This factor therefore supports the award BRG has requested.

## The Customary Fee

89.      BRG computed the amount of compensation it seeks in this Application according to its customary rates, which were disclosed in the Retention Application. BRG also maintained detailed time and disbursement records for all financial advisory services for which it seeks compensation. The rates charged for BRG's financial advisory services in this case are comparable to other similar-situated firms. Thus, the blended hourly rate on this matter of $394.90/hour is reasonable and reflects market rates for financial advisory services in Chapter 11 bankruptcy cases of this size and complexity. Similarly, the amounts sought for the reimbursement of expenses

reflect the prevailing rates for expense reimbursement by financial advisory firms similar in size and reputation to BRG.

## Whether the Fee is Fixed or Contingent

90.     BRG's fees for services rendered in this Bankruptcy Case are based on its hourly rates, subject in all respects to this Court's approval. BRG has not requested any contingent fee in this Bankruptcy Case.

## Time Limitations Imposed by the Client or Other Circumstances

91.     BRG has had to respond to tight time-constraints arising in this Bankruptcy Case. Matters often arose throughout the Fee Period that required BRG's immediate attention. Again, the exigent nature of these matters demanded that BRG's professionals respond on very short notice to complicated and developing events as they unfolded. This imposed serious time demands on BRG's personnel and required them to devote considerable resources to these matters. Taken together, these considerations suggest that this *Johnson* Factor supports the fee award requested.

## The Amount Involved and the Results Obtained

92.     The Monthly Fee Statements summarize the individual tasks that BRG personnel performed during the Fee Period as well as the amounts charged for those tasks. The total fees BRG seeks to approve in this Application are $393,516.50. This figure is commensurate with the Firm's achievements. This Johnson Factor strongly supports the fee award requested.

## The Experience, Reputation, and Ability of the Professionals

93.     BRG's professionals have significant experience in bankruptcy, financial advisory and investigative matters, and have an excellent reputation in the bankruptcy and financial advisory communities. In particular, BRG's professional have appeared in bankruptcy cases throughout the United States and have provided services to secured creditors, unsecured creditors,

creditors' committees, and debtors-in-possession. The quality of BRG's services is consistently high. In addition, BRG's professionals also speak and write on various financial, valuation, accounting, and investigative topics throughout the country. As mentioned, BRG has considerable expertise in cases, such as this one, involving numerous abuse claims and sub-entities of the Catholic Church. The substantial experience, reputation, and ability of BRG's professionals working on this Case favor granting BRG the fee award it seeks.

**The "Undesirability" of the Bankruptcy Case**

94.     From the Firm's perspective, serving as financial advisor to the Committee in this Bankruptcy Case was not undesirable. However, bankruptcy cases involved abuse claims and religious entities can involve intensive and hard-fought disputes, for example, regarding the claims process and the recovery and liquidation of assets. These concerns mean that any professional services firm being employed could face potential fee risk and other uncertainties. This factor therefore favors granting BRG the award it has requested.

**The Nature and Length of the Professional Relationship with the Client**

95.     BRG has no prior professional relationship with the Committee, which was only formed after this case began. However, employees of BRG have worked in similar matters, thus making the representation of the Committee more efficient. For this reason, this *Johnson* Factor supports granting BRG its fee award in this case.

**Awards in Similar Cases**

96.     The fee award BRG seeks compares favorably to awards granted in other bankruptcy cases with a size and complexity similar to this case, including cases in the Fifth Circuit. In light of these considerations, this last *Johnson* Factor also supports granting the Firm its award.

97.     In conclusion, the *Johnson* Factors favor granting BRG the fee and expense award it seeks.

## RESERVATION OF RIGHTS

98.     It is possible that some professional time expended or expenses incurred by BRG are not reflected in this Application.  BRG reserves the right to file a supplemental fee application to submit additional fees and expenses not previously included in the Application, or to include such time and costs in a future fee application.

## NO PRIOR REQUEST

99.     With respect to these amounts, as of the date of the Application, BRG has received no payments, and no previous application for the relief sought herein has been made to this or any other Court.

*[Remainder of the page left intentionally blank]*

## **CONCLUSION**

WHEREFORE, BRG respectfully requests that this Court enter an order, substantially in the form attached hereto as **Exhibit H**, (a) awarding BRG interim allowance of (i) fees in the amount of $393,516.50 for reasonable, actual and necessary services rendered on behalf of the Committee during the Fee Period and (ii) reimbursement of $12.93 for reasonable, actual and necessary expenses incurred during the Fee Period; (b) authorizing and directing the Debtor to pay the fees and expenses approved under the Application, less any fees and expenses previously paid pursuant to the Complex Case Order; and (c) granting such other or additional relief as is just and proper.

Dated:  November 24, 2021

Respectfully submitted,

*By: /s/ Paul N. Shields*
Matthew Babcock
Paul Shields
Berkeley Research Group, LLC
201 South Main Street, Suite 450
Salt Lake City, Utah 84111
Telephone:  (801) 364-6233
Email: mbabcock@thinkbrg.com
      pshields@thinkbrg.com

*Financial Advisor to the Official Committee of Unsecured Creditors*

## <u>CERTIFICATE OF SERVICE</u>

I hereby caused a copy of the foregoing *Application* to be served on November 24, 2021 upon all parties by electronic case filing for those parties receiving notice via the Court's Electronic Case Filing system, and on all other parties requiring service under the Court's *Ex Parte Order Authorizing the Debtor to Limit Notice and Establishing Notice Procedures* through the Master Service List via first-class United States mail, postage prepaid, to be sent on November 24, 2021.

*/s/ Linda F. Cantor*

Linda F. Cantor