UNITED STATES BANKRUPTCY COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re: | § § § § § § § § | Case No. 20-10846 |
| THE ROMAN CATHOLIC CHURCH OF THE ARCHDIOCESE OF NEW ORLEANS, | | Section "A" |
| | | Chapter 11 |
| Debtor.[1] | | |

**RESPONSE TO OFFICIAL COMMITTEE OF UNSECURED CREDITORS' MOTION FOR ORDER FOR ISSUANCE OF SUBPOENAS FOR DISCOVERY FROM THE APOSTOLATES PURSUANT TO FEDERAL RULE OF BANKRUPTCY PROCEDURE 2004**

Now into Court, through undersigned counsel, come the Apostolates, who file this response ("Response") to the *Official Committee of Unsecured Creditors' Motion for Order for Issuance of Subpoenas for Discovery from the Apostolates Pursuant to Federal Rule of Bankruptcy Procedure 2004* [Dkt. # 1381] ("Motion"), a copy is attached hereto as **Exhibit A**. The Apostolates recognize that, if they are going to receive a Channeling Injunction in connection with a confirmed Plan of Reorganization, certain disclosures of the assets and liabilities of the Apostolates are required. As set forth in the Motion, the Apostolates have been providing the Official Committee of Unsecured Creditors ("Tort Committee") and its advisors financial information and data concerning the assets and liabilities of each Apostolate over the last year and half. The extent of the information provided has been significant. The Motion filed by the Tort Committee can be broken down into the following categories:

    a) Request for new information that they are entitled to receive;

---

[1] The last four digits of the Debtor's federal tax identification number are 8966. The Debtor's principal place of business is located at 7887 Walmsley Ave., New Orleans, LA 70125.

b) Requests for information where either the information has been provided, or the information was provided but the Tort Committee does not like the format in which it was provided, or the Tort Committee does not like or believe the responses provided by the Apostolates to the requests; and

c) Requests for information that go beyond that necessary to determine the contribution an Apostolate will be required to make and that attempt to seek information as though an Apostolate was in fact a debtor.

## RULE 2004 EXAMINATIONS GENERALLY

1. "[A] bankruptcy court 'has abundant legal authority to order the retrieval of information concerning a debtor and his estate from persons and entities who are not parties in a bankruptcy case.'" *In re Correa,* 589 B.R. 76, 107 (Bankr. N.D. Tex. 2018). To that end, Federal Rule of Bankruptcy Procedure 2004 permits "any party in interest" to examine any entity relative to the "acts, conduct, or property or…liabilities and financial condition of the debtor, or to any matter which may affect the administration of the bankruptcy estate." This rule "affords both debtors and creditors the broad rights of examination of a third-party's records." *In re Cousins Barricades & Metal Products, Inc.,* 2000 WL 245860, *3 (E.D. La. 2000), citing, *Snyder v. Society Bank,* 181 B.R. 40, 41 (S.D. Tex.), *aff'd* 52 F.3d 1067 (5th Cir. 1995). See also *in re Ionosphere Clubs, Inc.,* 156 B.R. 414, 432 (S.D.N.Y. ("Because the purpose of the Rule 2004 Investigation is to aid in the discovery of assets, any third party who can be shown to have a relationship with the debtor can be made subject to a Rule 2004 investigation."), *aff'd* 17 F.3d 600 (2nd Cir. 1994).

## PROCEDURE FOR OBTAINING RULE 2004 EXAMINATION

2. The party seeking a Rule 2004 examination must file a motion with the bankruptcy court for an order allowing the examination and "must establish good cause for taking the exam."

*In re Roman Catholic Church of Diocese of Gallup,* 513 B.R. 761, 764 (Bankr. D. New Mexico 2014), citing, *In re Hammond,* 140 B.R. 197, 201 (S.D. Ohio 1992). The right to a Rule 2004 examination is not absolute. *First National Bank v. Scaccia,* 1998 WL 123332 (E.D. La. 1988). Instead, it is within the discretion of the bankruptcy court whether to permit a Rule 2004 examination. *In re Enron Corp.,* 281 B.R. 836, 840 (Bankr. S.D.N.Y. 2002), citing, *In re Bd. Of Dirs. of Hopewell Int'l Ins., Ltd.,* 258 B.R. 580, 587 (Bankr. S.D.N.Y. 2001); *In re French,* 145 B.R. 991, 993 (Bankr. D.S.D. 1992). "[T]he granting of a Rule 2004 examination is dependent on the discretion of the court [and] requires a balancing of 'the competing interests of the parties, weighing the relevance of and necessity of the information sought by examination.'" *In re Dewitt,* 808 B.R. 794, 798 (Bankr. W.D. Pa. 2019), citing *In re Millennium Lab Holdings II, LLC,* 562 B.R. 614, 625-27 (Bankr. D. Del. 2016) (footnotes omitted).

## SCOPE OF RULE 2004 EXAMINATION

3. An examination "may be had only of those persons possessing knowledge of a debtor's acts, conduct or financial affairs so far as this relates to a debtor's proceeding in bankruptcy." *In re Buick,* 174 B.R. 299, 304, quoting, *Matter of Wilcher,* 56 B.R. 428, 434 (Bankr. N.D. Ill. 1985) (quoting, *In re GHR Energy Corp.,* 35 B.R. 534, 537. (Bankr. D. Mass. 1983)).

In *Enron, supra,* the court noted that:

> As a general proposition, Rule 2004 examinations are appropriate for revealing the nature and extent of the bankruptcy estate…and for 'discovering assets, examining transactions, and determining whether wrongdoing has occurred.'

281 B.R. at 840, citing, *In re Strecker,* 251 B.R. 878, 882 (Bankr. D. Colo. 2000) (citing *In re Duratech Indus., Inc.* 241 B.R. 283, 289 (E.D. N.Y. 1999), See also *In re Dewitt,* 608 B.R. 794, 797 ("Legitimate goals of Rule 2004 examinations include 'discovering assets, examining

{00377794-11} 3

transactions and determining whether wrongdoing has occurred.'") (quoting *In re Millennium Lab Holdings II,* 562 B.R. at 625).

4. The scope of a Rule 2004 examination is quite broad. *In re Cousins Barricades & Metal Products,* 2000 WL 245860 at *3; *In re Enron Corp.,* 281 B.R. at 840; *In re Roman Catholic Church of Diocese of Gallup,* 513 B.R. at 764; *In re Washington Mutual Inc.,* 408 B.R. 48, 49 (Bankr. D. Del. 2009). In fact, a Rule 2004 examination is commonly referred to as a "fishing expedition." *Enron,* 281 B.R. at 840 ("…courts have recognized that Rule 2004 examinations are broad and unfettered and in the nature of fishing expeditions, *E.g., In re GHR Energy Corp.,* 33 B.R. [at 453]."); *In re Washington Mut., Inc.,* 408 B.R. at 50 ("A Rule 2004 examination 'is commonly recognized as more in the nature of a 'fishing expedition.'") (quoting *In re Bennett Funding Group, Inc.*, 203 B.R. 24, 28 (Bankr. N.D.N.Y. 1996)); *In re Roman Catholic Church of Diocese of Gallup,* 513 B.R. at 764; *In re Buick,* 174 B.R. at 305. Although broad, the scope of a Rule 2004 examination is not without any limits. *In re Enron,* 281 B.R. at 840; *In re Washington Mul., Inc.*, 408 B.R. at 50; *In re Roman Catholic Church of Diocese of Gallup,* 513 B.R. at 764; *In re Buick,* 174 B.R. at 305.

## LIMITATIONS ON RULE 2004 EXAMINATIONS

5. Bankruptcy courts have the discretion to "limit examination as justice requires." *In re: Roman Catholic Church of Diocese of Gallup,* 513 B.R. at 765. Thus, it has been held that Rule 2004 examinations may not be used for abuse or harassment. *In re Enron,* 281 B.R. at 840; *In re: Washington Mut., Inc.,* 408 B.R. at 50; *In re Roman Catholic Church of Diocese of Gallup,* 514 B.R. at 764. They should be denied where the information sought to be discovered is "redundant, onerous, unnecessarily costly or unreasonably intrusive, or which usurps the Trustee's authority." *In re Buick,* 174 B.R. at 305. Further, bankruptcy courts should be "reticent to open

the door to Rule 2004 examinations which might be identical to or duplicative of existing discovery needs and activities of other interested parties." *Id.*

6. Rule 2004 examinations also cannot be used to discover matters that have no effect on the administration of the bankruptcy estate, *i.e.,* "matters that are not relevant to the basic inquiry." *In re: Roman Catholic Church of Diocese of Gallup,* 514 B.R. at 764, quoting *In re Mittco, Inc.,* 44 B.R. 35, 36 (Bankr. E.D. Wis. 1984); *In re Washington Mut., Inc.,* 408 B.R. at 50, quoting *In re Table Talk, Inc.,* 51 B.R. 143, 145 (Bankr. D. Mass. 1985) (quoting *In re Mittco, Inc.*).

7. The Court in *In Re Roman Catholic Church of the Diocese of Gallup, Id* at 764 stated: "The Court exercises its discretion in this manner in order to mediate between two reasonable but opposing interests: efficient administration of the bankruptcy estate, on the one hand, and protecting the legitimate confidentiality rights of third parties (i.e.. the Apostolates) on the other hand. The Court believes that this ruling is a reasonable middle ground given the facts of the case."

8. In *Gallup*, the Court ordered the third party "affiliated entities" to produce financial condition ….and information about insurance coverage. The Apostolates have already provided information to the Tort Committee in excess of that required by the Court in *Gallup* in an effort to cooperate and because the Apostolates believed that complying with most of the requests would reduce the costs and burdens of the case for the Debtor and the Apostolates. Unfortunately, the filing of the Motion and the overbroad reach of the production request indicate that the belief may prove to be incorrect.

**DOCUMENTATION PRODUCED TO DATE**

9. The Apostolates have been providing financial information to the Tort Committee over the last 18 months. The last group of documents were produced in February of 2022 when the Apostolates provided information to the Tort Committee in response to a letter of December 30, 2021. Attached hereto as **Exhibit 1** is a copy of the Tort Committee's letter and the response of the Apostolates to the requests included in that letter. Attached as **Exhibit 2** is an index complete with Bates numbers of the documents that have already been produced.

10. The Tort Committee has represented that it is unable to determine the property that is owned by an Apostolate. The document referenced in the Tort Committee's Request for Production Number 4, that has already been provided to the Tort Committee, discloses property owned by the Apostolates and broken down on an Apostolate by Apostolate basis. It is believed that the real issue is not whether the requested information has been disclosed but, rather, whether the information can be provided in a format more convenient for the Tort Committee.

11. At various times counsel for the Apostolates has received a complaint that the financial advisors for the Tort Committee do not possess information as to the operation of certain properties owned by special purpose Apostolate entities whose properties are managed by Christopher Homes (an Apostolate). **Exhibit 3** to the Apostolates Response is a chart outlining information previously disclosed relative to the operations of property owned by a group of single member special purpose nonprofit Apostolates. In part, the Motion filed by the Tort Committee seeks to have the Apostolates produce information that has already been produced.

**INITIAL PROBLEMS WITH THE MOTION**

12. In other cases involving discovery of information, this Court has voiced the belief that a request for information must have "guardrails." The Motion filed by the Tort Committee lacks such "guardrails" for the following reasons:

{00377794-11} 6

a) The Motion lacks any limitation on time periods for the requested information. A literal reading of Requests for Production Numbers 1, 2 and 3 seeking income statements, balance sheets and a listing of real estate holdings would require an Apostolate to produce financial information from the inception of the entity to the present. The Apostolates are not debtors, and the discovery needs to be tailored to address the present financial condition of an Apostolate not what was. The request for documents from an undefined time horizon repeats itself in a number of other categories of document requests contained in the Motion.

b) Request for Production Number 8 related to the Catholic Foundation requests "all electronic systems and data" including, but not limited to, FIMS data. This request is not limited in time and would require a turnover of every bank account, investment account or other financial data related to the Catholic Foundation. The Tort Committee was previously provided a hard copy of the FIMS report (as opposed to the request for the program itself in electronic form) that reflects the interests owned by the Catholic Foundation, as well as every Apostolate, in Portfolio A. In addition, the Tort Committee has the audited financial statement of the Catholic Community Foundation.

c) The Tort Committee has been offered a copy of the year-end FIMS report for any period it chooses should the Tort Committee want to track over time an Apostolate's ownership in Portfolio A. No need exists for the electronic copy of the program that contains information that is unrelated to the ownership interest of an Apostolate in Portfolio A.

d) The Apostolates have redacted on the hard copy produced the names of persons and entities that are not Apostolates. In balancing the right of a person that is not an

Apostolate to financial privacy versus the desire of the Tort Committee to review everything within the information contained in the FIMS program, the privacy of third-party investors must be protected.

e) Request for Production Number 9 is another example of a request that is unlimited to time and requests a host of information between Apostolates, as opposed to a request for such information for a limited period of time between an Apostolate and the Archdiocese.

## SUPPRESSED PARISHES

13. The Court will note that Requests for Production Numbers 1, 2 and 3 contain a listing of a number of different entities. Most of the entities included are what are known as Suppressed Parishes. Entities on the list that are designated with an "Inc." as opposed to an "LLC" are Suppressed Parishes. A Suppressed Parish is a Parish that has been closed and is no longer in operation. The parishioners of the Suppressed Parishes have become parishioners of other Parishes. The Suppressed Parishes have no operations. The assets of Suppressed Parishes consist of bank accounts, interests in Portfolio A and B and real estate.

## SUPPRESSED PARISHES AND REQUESTS FOR PRODUCTION NUMBERS 1, 2 AND 3

14. On a number of occasions (the last being February of 2022), the Apostolates have supplied to the Tort Committee the financial information that exists for each of the Suppressed Parishes. In addition, information as to the real property owned by each Suppressed Parish has been provided.

## REQUEST FOR PRODUCTION NUMBERS 1, 2 AND 3

15. The Apostolates' only issue with the information requested in Request for Production Numbers 1, 2 and 3 is the scale of the requests which could be remedied by the Court's

{00377794-11} 8

placing guardrails on the requests. The Apostolates suggest that the production be limited to 2019 forward for the entities that possess such documentation.

### REQUEST FOR PRODUCTION NUMBER 4

16. This request seeks the production of a Native Excel version of a document that has been previously produced. The document at issue contains a listing of the real estate owned by the Apostolates and contains a value listing (insurance value) for the properties identified on the document. The Apostolates do not have a Native Excel version of the document. The document is a document generated by Catholic Mutual.

### REQUEST FOR PRODUCTION NUMBER 5

17. The Apostolates are unable to understand the request as it is written. By way of background, the Bar Date Order required the Archbishop to send a letter to each Parish requesting that they search their records to see if they had any information with respect to abuse claims that had not previously been provided to the Archdiocese. The purpose of the request was to provide the Archdiocese with names for purposes of providing actual notice of the Bar Date motion, as opposed to constructive notice to the persons whose names were previously unknown as possibly possessing abuse claims. A declaration from Father Carr was provided to the Tort Committee disclosing who responded to the Archbishop's request for information. Father Carr's declaration reveals that a few Parishes did furnish new information on abuse claims to the Archdiocese based upon a search of their records. It is believed that the information has been provided by the Archdiocese to the Tort Committee.

18. If Request for Production Number 5 is solely for this material, it is in the possession of the Archdiocese. If the request has a broader reach, a better explanation needs to be provided to the Apostolates as to what information is being requested.

### REQUEST FOR PRODUCTION NUMBER 6

19. The Apostolates have no initial response to Request for Production Number 6. It is the belief that all documents relative to Request for Production Number 6 have been produced by the Archdiocese. To the extent documents are identified that have not been already produced, they will be produced. The request, however, should be limited to individuals who have filed proofs of claim.

### REQUEST FOR PRODUCTION NUMBER 7

20. This request seeks the production of documentation between the Archdiocese on one hand and the Apostolates on the other. It is not limited in time and the use of the term "and any other participant" has no meaning. It is not limited to documents relating to the assets and liabilities of an Apostolate. Limitations should be placed on the request with respect to: a) the time period covered; b) the type of document requested; and c) the document at issue must be related to an asset or liability currently on the balance sheet of an Apostolate.

### REQUEST FOR PRODUCTION NUMBER 8

21. This request, as written, seeks every financial record of the Catholic Community Foundation and it exemplifies the fundamental dispute between the Apostolates and the Tort Committee. The Apostolates have no issue with disclosing the assets they have, and, for example, the Catholic Community Foundation has provided to the Tort Committee both a hard copy of the FIMS report (redacted to protect donors who are not Apostolates) and audited financial statements. The issue is that the Catholic Community Foundation and the Apostolates should not be required to disclose the source of the donations they receive and other information relative to the day-to-day operations of an Apostolate.

22. In addition, no basis exists for the names of third parties (not Apostolates) who have invested in Portfolio A or in other investment vehicles managed by the Catholic Community Foundation to be disclosed to the Tort Committee. These individuals who are not seeking a Channeling Injunction have a right to have their financial information private. There is nothing to balance with respect to the disclosure of this information. These persons are third parties to the Chapter 11 case.

### REQUEST FOR PRODUCTION NUMBER 9

23. This request seeks all agreements, contracts, etc. between the members of the Apostolates. It is not limited in time nor does it have any bearing on the current financial condition of an Apostolate and the contribution to be made by an Apostolate for a Channeling Injunction. To even attempt to address this request may take months or years and would require a painstaking analysis of every contract between every member of the Apostolates. An example of how overbroad and overreaching this request is can best be illustrated by the Clarion Herald (a member of the Apostolates) and its transactions with any Apostolate who places an ad or notice in the paper. The request reaches into the day-to-day operations of the Parishes and the Non-Debtor Service Entities.

### REQUEST FOR PRODUCTION NUMBER 10

24. This request reaches primarily the Parishes and seeks "all documents related to donor restrictions, or any accounts maintained by the Apostolates". The request seeks the names of donors of and the amounts of any "restricted donation" made to any Apostolate. The Apostolates are not debtors, and they are entitled to protect the names and addresses of anyone who makes either a restricted or unrestricted gift to an Apostolate as well as the amounts of those donations.

## CONCLUSION

The Apostolates have tried to be responsive to the requests for information made by the Tort Committee where it was believed that providing the information would help expedite the process. The Apostolates have not taken the position that no financial information of an Apostolate would be provided as was done by the Apostolate equivalent in the Archdiocese of St. Paul case. The Court in that case, in deciding whether to require the St. Paul Apostolates to turn over financial information, ruled in a one paragraph opinion that the Motion to Quash was granted (See **Exhibit 4**).

In connection with the Tort Committee's Motion, this Court should deny the Motion and require the Tort Committee to file a new request with guardrails that a) contains a timeframe limited to the assets of an Apostolate today; b) protect private information and the privacy of third parties; c) do not request information that has been previously provided; and d) can be complied with without an exhaustive search of the contracts and records of 185 entities.

April 8, 2022

Respectfully submitted:

/s/ Douglas S. Draper
Douglas S. Draper, La. Bar No. 5073
Leslie A. Collins, La. Bar No. 14891
HELLER, DRAPER & HORN, L.L.C.
650 Poydras Street, Suite 2500
New Orleans, LA 70130-6103
Telephone: 504.299.3300/Fax: 504.299.3399
E-mail:ddraper@hellerdraper.com
E-mail:lcollins@hellerdraper.com

*Attorneys for the Apostolates*

## CERTIFICATE OF SERVICE

I, Douglas S. Draper, hereby certify that a copy of the above and foregoing has been served on April 8, 2022, upon the following parties via this Court's electronic notification system as follows:

- **Christine W. Adams**  cadams@kinneylaw.com
- **A. Brooke Watford Altazan**  baltazan@stewartrobbins.com, baltazan@ecf.courtdrive.com;kheard@stewartrobbins.com;kheard@ecf.courtdrive.com;gtaylor@stewartrobbins.com;gtaylor@ecf.courtdrive.com
- **David Winston Ardoin**  david@amotriallawyers.com, renee@amotriallawyers.com
- **Laura F. Ashley**  lashley@joneswalker.com, laura-ashley-4406@ecf.pacerpro.com
- **John Baay**  jbaay@glllaw.com
- **Jerry A. Beatmann**  jay.beatmann@dentons.com, dee.mcgill@dentons.com;sam.alberts@dentons.com;malka.zeefe@dentons.com;lori.odum@dentons.com
- **Alicia M. Bendana**  abendana@lawla.com, rmichel@lawla.com;seaton@lawla.com
- **Richard A. Bordelon**  rbordelon@denechaudlaw.com
- **Derek T Braslow**  derek@thebraslowfirm.com
- **Brandon A. Brown**  bbrown@stewartrobbins.com, bbrown@ecf.courtdrive.com;kheard@stewartrobbins.com;kheard@ecf.courtdrive.com;gtaylor@stewartrobbins.com;gtaylor@ecf.courtdrive.com
- **Joseph M. Bruno**  jbruno@brunobrunolaw.com, Don@brunobrunolaw.com
- **Steven Bryant**  steven.bryant@lockelord.com
- **Amelia L Bueche**  amelia.hurt@kellyhart.com
- **Elwood F. Cahill**  ecahill@shergarner.com
- **Andrew William Caine**  acaine@pszjlaw.com
- **Deborah J Campbell**  deborah.campbell@dentons.com
- **Jamie Dodds Cangelosi**  jcangelosi@stewartrobbins.com, jcangelosi@ecf.courtdrive.com;kheard@stewartrobbins.com;kheard@ecf.courtdrive.com;gtaylor@stewartrobbins.com;gtaylor@ecf.courtdrive.com
- **Linda F Cantor**  lcantor@pszjlaw.com
- **Desiree M. Charbonnet**  dcharbonnet@desireelaw.com
- **William G. Cherbonnier**  wgc@billcherbonnier.com, caludagroupllc@jubileebk.net
- **Everett J. Cygal**  ecygal@schiffhardin.com
- **John H. Denenea**  jdenenea@midcitylaw.com, wdominguez@midcitylaw.com

- **Eric J Derbes**  ederbes@derbeslaw.com, derbespacer@gmail.com;derbeser72443@notify.bestcase.com
- **Ross J. Donnes**  rdonnes@tcmlawfirm.net
- **Douglas S. Draper**  ddraper@hellerdraper.com, vgamble@hellerdraper.com
- **John Douglas Elrod**  elrodj@gtlaw.com
- **Joseph Mark Fisher**  mfisher@schiffhardin.com
- **Elizabeth J. Futrell**  efutrell@joneswalker.com, mmontville@joneswalker.com;lisa-futrell-4186@ecf.pacerpro.com
- **Amanda Burnette George**  Amanda.B.George@usdoj.gov
- **Jeremy Gettes**  jgettes@gertlerfirm.com
- **William P. Gibbens**  billy@semmlaw.com, terri@semmlaw.com
- **Soren Erik Gisleson**  sgisleson@HHKC.com, jchauvin@hhkc.com
- **Brodie Glenn**  bglenn@bradleyfirm.com
- **Alan H. Goodman**  alan.goodman@bswllp.com, moorek@bswllp.com
- **Ashley J. Heilprin**  ashley.heilprin@phelps.com
- **Evan Park Howell**  ehowell@ephlaw.com, cathyt3@cox.net
- **Stephen Michael Huber**  stephen@huberthomaslaw.com
- **Sara Hunkler**  shunkler@ruggerilaw.com
- **Wayne J. Jablonowski**  wjjlaw@bellsouth.net
- **Annette W Jarvis**  jarvisa@gtlaw.com
- **Lillian Jordan**  ljordan@donlinrecano.com, rmapa@donlinrecano.com;nefrecipients@donlinrecano.com;jestrada@donlinrecano.com;fcardona@donlinrecano.com
- **Benjamin Kadden**  bkadden@lawla.com, mnguyen@lawla.com
- **Allison Kingsmill**  akingsmill@joneswalker.com
- **Bradley C. Knapp**  bknapp@lockelord.com, AutoDocket@LockeLord.com;Ashley.Lohr@lockelord.com
- **Dylan K. Knoll**  dknoll@denechaudlaw.com
- **Omer F. Kuebel**  rkuebel@lockelord.com, Yamille.Harrison@lockelord.com
- **Heather A. LaSalle**  halexis@hinshawlaw.com, lgraff@mcglinchey.com
- **Frank E. Lamothe**  felamothe@lamothefirm.com
- **Julien Guy Lamothe**  jlamothe@lamothefirm.com
- **Mark C. Landry**  mlandry@newmanmathis.com
- **Darryl T. Landwehr**  dtlandwehr@att.net, dtlandwehr@gmail.com
- **Mary S. Langston**  Mary.Langston@usdoj.gov
- **Joseph J Lowenthal**  jlowenthal@joneswalker.com
- **Ryan Luminais**  rluminais@shergarner.com
- **Thomas J. Madigan**  tmadigan@shergarner.com
- **Wayne A. Maiorana**  tmaiorana@newmanmathis.com
- **Wilson Lewis Maloz**  wmaloz@lpwsl.com
- **Robert A. Mathis**  rmathis@newmanmathis.com

- **Donald Andrew Mau**  dmau@meliaslaw.com
- **Patrick Maxcy**  patrick.maxcy@dentons.com
- **Gerald Edward Meunier**  gmeunier@gainsben.com, dmartin@gainsben.com
- **Allen C. Miller**  allen.miller@phelps.com
- **Mark Mintz**  mmintz@joneswalker.com, mark-mintz-4822@ecf.pacerpro.com
- **M. Keith Moskowitz**  keith.moskowitz@dentons.com
- **Colleen A Murphy**  murphyc@gtlaw.com
- **Samantha Oppenheim**  soppenheim@joneswalker.com, samantha-oppenheim-7970@ecf.pacerpro.com
- **Dwight C Paulsen**  tpaulsen@bradleyfirm.com
- **Felecia Y Peavy**  felepeavy@juno.com
- **Nancy Peterman**  petermann@gtlaw.com
- **William S. Robbins**  wrobbins@stewartrobbins.com, wrobbins@ecf.courtdrive.com;kheard@stewartrobbins.com;kheard@ecf.courtdrive.com;gtaylor@stewartrobbins.com;gtaylor@ecf.courtdrive.com
- **Craig Robinson**  craig@rlolegal.com
- **Nicholas Rockforte**  nicholas@onmyside.com
- **Keith A. Rodriguez**  Krodriguez@keithrodriguez.com
- **Samuel M. Rosamond**  srosamond@twpdlaw.com, jgreen@twpdlaw.com
- **Richard A Rozanski**  richard@rarlaw.net
- **David Rubin**  David.Rubin@butlersnow.com
- **Logan Elizabeth Schonekas**  logan@huberthomaslaw.com
- **Glenn K. Schreiber**  glenn.schreiber@usdoj.gov, bonnie.bodenheimer@usdoj.gov;caseview.ecf@usdoj.gov;Vanessa.brown@usdoj.gov
- **Kristi Schubert**  kschubert@lamothefirm.com
- **Stephen P. Scullin**  scullin@carverdarden.com, baradell@carverdarden.com
- **Peter James Segrist**  segrist@carverdarden.com, clary@carverdarden.com
- **Ryan M. Seidemann**  seidemannr@ag.louisiana.gov
- **Patrick M. Shelby**  rick.shelby@phelps.com, trisha.crombie@phelps.com
- **Nicholas Smeltz**  nsmeltz@stewartrobbins.com, nsmeltz@ecf.courtdrive.com;kheard@stewartrobbins.com;kheard@ecf.courtdrive.com;gtaylor@stewartrobbins.com;gtaylor@ecf.courtdrive.com
- **David M Spector**  dspector@schiffhardin.com
- **Roger Stetter**  rastetter47@yahoo.com
- **Paul Douglas Stewart**  dstewart@stewartrobbins.com, dstewart@ecf.courtdrive.com;kheard@stewartrobbins.com;kheard@ecf.courtdrive.com;gtaylor@stewartrobbins.com;gtaylor@ecf.courtdrive.com
- **Jefferson R. Tillery**  jtillery@joneswalker.com

- **Richard Trahant**   trahant@trahantlawoffice.com
- **Office of the U.S. Trustee**   USTPRegion05.NR.ECF@usdoj.gov
- **R. Patrick Vance**   pvance@joneswalker.com, nwiebelt@joneswalker.com;patrick-vance-7526@ecf.pacerpro.com
- **Richard P Voorhies**   Richard@voorhieslaw.com, tosha@voorhieslaw.com
- **David F. Waguespack**   waguespack@carverdarden.com, docket@carverdarden.com;plaisance@carverdarden.com
- **David E. Walle**   dwalle@bfrob.com, aadams@bfrob.com
- **John W. Waters**   jwaters@bfrob.com, aadams@bfrob.com
- **Regina S. Wedig**   reginawedig@wediglaw.com, rswedig@hotmail.com
- **Edward Dirk Wegmann**   dwegmann@joneswalker.com
- **Joshua D Weinberg**   jweinberg@ruggerilaw.com
- **Brittany Rose Wolf-Freedman**   bwolf@gainsben.com, sburrell@gainsben.com
- **Wayne George Zeringue**   wzeringue@joneswalker.com
- **Michael S. Zerlin**   mzerlin@netscape.net

                                        /s/ Douglas S. Draper
                                        Douglas S. Draper