**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| In re: | § § | |
| | § | Case No. 20-10846 |
| THE ROMAN CATHOLIC CHURCH | § | |
| OF THE ARCHDIOCESE OF NEW | § | Section "A" |
| ORLEANS, | § | |
| | § | Chapter 11 |
| Debtor.[1] | § § | |
| | § | |

**DEBTOR'S OBJECTION TO MOTION TO COMPEL THE DEBTOR TO TERMINATE PENSION BENEFITS TO CREDIBLY ACCUSED PERSONS**

NOW INTO COURT, through undersigned counsel, comes The Roman Catholic Church of the Archdiocese of New Orleans, the above-captioned debtor and debtor-in-possession (the "**Debtor**" or "**Archdiocese**"), who files this objection[2] (this "**Objection**") to the *Motion of the Official Committee of Unsecured Creditors to Compel the Debtor to Terminate Pension Benefits to Credibly Accused Persons* [ECF No. 1389] (the "**Motion**") filed by the Official Committee of Unsecured Creditors (the "**Original Committee**" or "**Committee**"). In support of this Objection, the Debtor respectfully states as follows:

**Introduction**

1. The Committee's Motion either improperly seeks mandatory and prohibitory injunctions against the Debtor and other third parties, or is an inappropriate attempt to modify a final order of this Court. Either way, the Motion should be denied.

2. To the extent that the Committee seeks an order compelling the Debtor to add certain identified priests to its 2018 Report Regarding Clergy Abuse, the Motion is a request for

---

[1] The last four digits of the Debtor's federal tax identification number are 8966. The Debtor's principal place of business is located at 7887 Walmsley Ave., New Orleans, LA 70125.

[2] The Debtor reserves its rights to more fully object on any additional basis at the appropriate time.

#100399927v5{N4555929.3}

injunctive relief that is improperly before this Court as a contested matter governed by Fed. R. Bankr. P. 9014. It is procedurally improper and constitutionally deficient for this Court to enter such an injunction outside the constitutional protections guaranteed by Fed. R. Bankr. P. 7001. Fifth Circuit case law confirms that injunctions require an adversary proceeding. *See, e.g., Feld v. Zale Corp. (In re Zale Corp.)*, 62 F.3d 746 (5th Cir. 1995).

3. The Committee argues that it is not seeking an injunction, but rather that it is seeking an order from the Court to "withdraw [the Debtor's] authority" to make payments under the Amended Wage Order.[3] If that is the case, the Committee is seeking to amend a final order of this Court without complying with Fed. R. Bankr. P. 9023 and 9024. The Amended Wage Order was entered on May 21, 2020 and was not appealed. *See* ECF No. 100. It is a final order that cannot be disturbed absent compliance with the Federal Rules.

4. In addition to these obvious, procedural, defects, the Motion suffers from several substantive infirmities, as it asks this Court to inappropriately insert itself into ecclesiastical matters. *See, e.g., In re Diocese of Lubbock*, 624 S.W.3d 506, 514 (Tex. 2021) ("[C]ourts are prohibited from risking judicial entanglement with ecclesiastical matters.") (citing *Our Lady of Guadeloupe School v. Morrisey-Berru*, 140 S. Ct. 2049, 2069 (2020)).

5. For these reasons, and for the reasons more fully set forth below, the Debtor respectfully asks this Court to deny the Motion.

---

[3] *See* Email from Committee counsel to Mark Mintz, dated Wednesday, March 30, 2022 at 3:39 PM, attached hereto as **Exhibit 1**.

**Procedural History**

6. On May 1, 2020 (the "**Petition Date**"), the Archdiocese filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**"), commencing the above-captioned chapter 11 case (this "**Chapter 11 Case**").

7. The Archdiocese remains in possession of its property and is managing its business as a debtor in possession pursuant to §§ 1107(a) and 1108 of the Bankruptcy Code.

8. The Office of the United States Trustee (the "**UST**") appointed the Original Committee on May 20, 2020 [ECF No. 94], which Original Committee was reconstituted on June 10, 2020 [ECF No. 151], and again on October 8, 2020, to remove TMI Trust Company, Inc., in its capacity as indenture trustee for certain bonds [ECF No. 478]. The Official Committee of Unsecured Commercial Creditors (the "**Commercial Committee**") was appointed by the UST on March 5, 2021. [ECF Nos. 772 and 792].

**The Wage Orders**

9. On the Petition Date, the Debtor filed its *Expedited Motion for an Order (I) Authorizing but Not Directing, the Debtor to Pay Certain Prepetition (A) Wages, Salaries, and Other Compensation, (B) Employee Medical and Similar Benefits, and (II) Authorizing and Directing the Applicable Banks and Financial Institutions to Honor and Pay All Checks and Transfers Associated with the Foregoing* [ECF No. 7] (the "**Wage Motion**"). In the Wage Motion, the Debtor sought authority to continue to pay certain pension benefits.[4] Certain abuse victims

---

[4] Wage Motion, at para. 44 ("Incardinated priests of the Archdiocese, whose retirement from active service is duly accepted by the Archbishop, are eligible for retirement benefits under an unfunded retirement plan (the 'Plan'). The Debtor has elected to account for these retirement benefits under accounting principles generally accepted in the United States of America, as a defined benefit pension plan.").

objected to the Wage Motion[5] and asked the Court to include language in the order that "no payments are authorized under the order to persons whom there have been ***substantiated or credible*** allegations of sexual abuse of a minor or vulnerable adult."[6]

10. After a hearing on the Wage Motion, this Court rejected the proposed language and granted the Wage Motion, as provided below:

> Notwithstanding anything to the contrary set forth herein, nothing in this Order shall authorize payment to any person against whom there have been ***substantiated*** allegations of abuse of a minor or vulnerable adult (as identified in the 2018 Report Regarding Clergy Abuse and published on the Debtor's website) in respect of any prepetition Employee Obligation.[7]

11. After a Motion to Reconsider was filed,[8] this Court amended the Wage Order to provide:

> Notwithstanding anything to the contrary set forth herein, nothing in this Order shall authorize payment to any person against whom there have been ***substantiated*** allegations of abuse of a minor or vulnerable adult (as identified in the 2018 Report Regarding Clergy Abuse and published on the Debtor's website) in respect of any prepetition Employee Obligation, except that the Debtor is instructed to continue provision of "retiree benefits" as that term is defined in 11 U.S.C. § 1114(a).[9]

---

[5] *See Consolidated Limited Objections of Certain Abuse Victims to First Day Motions* [ECF No. 29].

[6] *Id.* at para. 13 (emphasis added).

[7] *Order Authorizing the Debtor to (A) Pay All Outstanding Pre-Petition Wages, Salaries, Other Accrued Compensation, Expense Reimbursements, Benefits, and Related Amount; and (B) Continue Specified Benefit Programs in the Ordinary Course of Business* [ECF No. 47] (the "**Wage Order**"), at para. 7 (emphasis added).

[8] *See* Order treating *pro se* correspondence received by the Court from Gerald Howell as a Motion to Reconsider. [ECF No. 73].

[9] *Amended Order Authorizing the Debtor to (A) Pay All Outstanding Pre-Petition Wages, Salaries, Other Accrued Compensation, Expense Reimbursements, Benefits, and Related Amount; and (B) Continue Specified Benefit Programs in the Ordinary Course of Business* [ECF No. 100] (the "**Amended Wage Order**"), at para 7 (emphasis added).

12. Both the Wage Order and the Amended Wage Order are final orders. The difference between the words "credible" and "substantiated" is legally significant.

13. On March 25, 2022, the Committee filed the Motion seeking an order "compelling the Debtor to terminate pension payments to persons against whom there have been substantiated allegations of abuse of a minor or vulnerable adult." Motion, at pp. 1-2. Effectively, the Committee seeks to amend the Amended Wage Order by deleting the following words: "as identified in the 2018 Report Regarding Clergy Abuse and published on the Debtor's website." Alternatively, the Committee seeks a mandatory injunction to require the Debtor to add certain individuals to the 2018 Report Regarding Clergy Abuse.

## Law and Argument

**A.     Injunctions Require an Adversary Proceeding**

14. Under Fed. R. Bankr. P. 7001, a proceeding to obtain an injunction requires an adversary proceeding. Fed. R. Bankr. P. 7001(7); *see also Zale Corp.*, 62 F.3d at 762-63. This is especially true when third parties are involved.

15. Here, the Committee alleges that there are six people that *it* has deemed "Credibly Accused" who the Archdiocese exercised its discretion not to put on the 2018 Report Regarding Clergy Abuse. Motion, at para. 9. The Amended Wage Order states that the Debtor is not authorized to pay "any person against whom there have been substantiated allegations of abuse of a minor or vulnerable adult **(as identified in the 2018 Report Regarding Clergy Abuse and published on the Debtor's website)**." Amended Wage Order, at para. 7 (emphasis added). The Committee alleges that "[t]he Debtor's choice not to list such individuals should not control their receipt of pension payments." Motion, at para. 23. In other words, the Committee either seeks an injunction to require these individuals to be listed or seeks to amend the Amended Wage Order.

16. In general, a federal court may issue a mandatory injunction requiring a party to perform a specific act to remedy alleged harmful conduct. *See, e.g., Tex. & N.O.R.R. Co. v. Northside Belt Ry. Co.*, 276 U.S. 475, 479 (1928); *see also United States v. Criminal Sheriff*, 19 F.3d 238, 239-40 (5th Cir. 1994) (injunctive relief is utilized to preserve the status quo so court may render meaningful final decision). Here, the Committee has determined that certain identified people must be added to the 2018 Report Regarding Clergy Abuse. Compelling the Debtor to add these individuals to the 2018 Report Regarding Clergy Abuse is the very definition of an injunction.

17. Similarly, the Fifth Circuit has held that a settlement agreement which enjoined third parties from pursuing claims against the debtors and others required an adversary proceeding. *Zale Corp.*, 62 F.3d at 750-51, 763-65. In *Zale,* the Fifth Circuit explained that – especially with regards to third parties – the protections of adversary proceedings ensure fairness to all parties. *Id.* at 764-65.

18. The *Zale* court based its conclusion on an earlier Fifth Circuit case, *Haber Oil Co. v. Swinehart (In re Haber Oil Co.)*, 12 F.3d 426 (5th Cir. 1994). In *Haber Oil*, the Fifth Circuit cautioned that "difficulties . . . are apt to arise if the bankruptcy court too easily permits parties to circumvent the rules governing adversary proceedings." *Id.* at 440. The *Haber Oil* court used confusion about whether that matter was a core proceeding to illustrate its point.

19. Likewise, a motion to compel the Debtor to put names on its 2018 Report Regarding Clergy Abuse and the pension consequences that flow from that action have a substantial impact on non-debtors who deserve all the due process rights afforded them by the Federal Rules of Civil Procedure (the "**Federal Rules**") and the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**").

### B. The Committee Cannot Amend a Final Order

20. Recognizing that its use of the contested motion procedure to obtain an injunction runs afoul of the Bankruptcy Rules, the Committee argues that it is not seeking an injunction, but rather is seeking to amend the final Amended Wage Order. However, the Committee is too late to do so.

21. In email correspondence, Committee counsel explained that the "Debtor is currently making the subject payments in the ordinary course pursuant to a wage order issued by the Court in response to the Debtor's motion therefor. The Court can clearly withdraw that authority through further motion practice."[10] The Committee's position misunderstands the law.

22. The Amended Wage Order provides:

> Notwithstanding anything to the contrary set forth herein, nothing in this Order shall authorize payment to any person against whom there have been substantiated allegations of abuse of a minor or vulnerable adult (as identified in the 2018 Report Regarding Clergy Abuse and published on the Debtor's website) in respect of any prepetition Employee Obligation, except that the Debtor is instructed to continue provision of "retiree benefits" as that term is defined in 11 U.S.C. § 1114(a).

Amended Wage Order, at para. 7.

23. The Amended Wage Order is a final order, and the product of not one but two hearings before this Court in May of 2020. Further, the language at issue in this order, with this very limitation, was the product of the Committee lawyers' advocacy.[11] Indeed, Committee counsel suggested such language during the hearing on the Wage Motion.[12]

---

[10] Exhibit 1.

[11] *See* Excerpts from Transcript of Hearing Held on May 4, 2020, attached hereto as **Exhibit 2**.

[12] *See id.*, at pp. 81-83.

24. Now, the Committee seeks to change this language and remove the language defining which persons will not receive benefits. In other words, the Committee is – without proper evidence – seeking to change the wording of the Amended Wage Order.

25. Because the Amended Wage Order is a final order, the Court may vacate or amend the order only if the Committee can establish one of the grounds set forth in Bankruptcy Rule 9024, which incorporates Federal Rule 60(b).[13]

26. The Committee's Motion makes no effort to identify any ground that this Court should use to set aside the Amended Wage Order. Indeed, no such grounds exist.

27. Federal Rule 60(b) lists six categories of reasons or grounds on which to base a motion seeking relief from a final order:

> (1) mistake, inadvertence, surprise, or excusable neglect;
>
> (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);
>
> (3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party;
>
> (4) the judgment is void;
>
> (5) the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or
>
> (6) any other reason that justifies relief.

Fed. R. Civ. P. 60(b).

---

[13] "[F]inal orders may be set aside only under FRCP 60(b) applicable via Rule 9024; the bankruptcy court may not use its inherent power to circumvent the limitations of those rules." *Missoula Fed. Credit Union v. Reinertson*, 241 B.R. 451, 456 (BAP 9th Cir. 1999); *see also Shoemaker v. Hillen (In re JLJ Farms, LLC)*, Case No. 20-00713, Adv. No. 21-6002, 2021 Bankr. LEXIS 3429, *25 (Bankr. D. Idaho Dec. 15, 2021).

28. As a threshold matter, pursuant to Federal Rule 60(c)(1), a motion for relief from a judgment or order must be made within a "reasonable time." Fed. R. Civ. P. 60(c)(1). For reasons (1), (2), and (3), a motion must be brought within one year after entry of the judgment. *Id.* Because the Amended Wage Order is nearly two years old, the Committee may only use grounds (4), (5), and (6) to set aside the judgment.[14]

29. Even if the Committee had filed the Motion within the requisite time period, the Committee fails to meet the burden for obtaining relief under Federal Rule 60(b). The party seeking relief "must plead and provide sufficient grounds to the court of one of the five specific grounds listed in Rule 60(b)(1)-(5)." *In re Traylor*, No. 15-30943, 2018 Bankr. LEXIS 3969, at *3 (Bankr. W.D. La. Dec. 14, 2018) (Hodge, J.). If unable to establish one of the five enumerated grounds, the movant may attempt to use Federal Rule 60(b)(6)'s catchall provision. *Id.* (*citing Fiskars, Inc. v. Hunt Mfg. Co.*, 279 F.3d 1378, 1381 (Fed. Cir. 2002)).

30. To the extent that the Committee would attempt to rely on a change in circumstances, it has provided no evidentiary support that any unforeseen, substantial change warrants relief under Federal Rule 60(b)(5). There is no change in circumstances that rises to the level of "oppressive hardship" of the type Federal Rule 60(b)(5) is meant to address. *See Valentine Sugars, Inc. v. Sudan*, 34 F.3d 320, 321-22 (5th Cir. 1994) ("To repeat: caution, substantial change, unforeseenness, oppressive hardship, and a clear showing are the requirements.") (quoting *Roberts v. St. Regis Paper Co.*, 653 F.2d 166, 173 (5th Cir. Unit B 1981)).

31. Because the Committee has not provided any ground for relief under Federal Rule 60(b)(1)-(5), it must rely on Federal Rule 60(b)(6), which requires a showing of "exceptional

---

[14] The Debtor does not concede that the Committee has filed the Motion within a reasonable time for any of the grounds.

circumstances." *In re Traylor*, 2018 Bankr. LEXIS 3969, at *3-4. The Fifth Circuit has cautioned that relief under Federal Rule 60(b)(6) "is an extraordinary remedy" that requires "exceptional circumstances" and a "showing that absent relief, an 'extreme' and 'unexpected' hardship will result." *Id.* (quoting *Valentine Sugars, Inc.*, 34 F.3d at 321-22 (citations omitted)); *see also Rocha v. Thaler*, 619 F.3d 387, 400 (5th Cir. 2010) ("While Rule 60(b)(6) is commonly referred to as a 'grand reservoir of equitable power to do justice,' the rule is only invoked in 'extraordinary circumstances.'") (quoting *Williams v. Thaler*, 602 F.3d 291, 311 (5th Cir. 2010)). The Committee can make no such showing – and indeed has not even attempted to do so.

32. Absent any showing under Federal Rule 60(b), the Committee's efforts to modify the Amended Wage Order must fail.

C. **The Ecclesiastical Abstention Doctrine Prohibits Civil Court Intervention**

1. **The Independent Review Board Is a Canonical Entity that Provides Advice**

33. Even if the Motion were procedurally proper (which it is not), the First Amendment prohibits this Court from interfering with church governance or the interpretation of Canon Law. Therefore, any request requiring the Debtor to add individuals to the 2018 Report Regarding Clergy Abuse, even if procedurally proper, must fail as a violation of the First Amendment.

34. In November 2018, the Archbishop, in consultation with other church leaders and lay leadership, "decided to publish the names of Archdiocesan clergy (priests and deacons) who have been removed from ministry for an allegation of sexual abuse of a minor."[15] In accordance with regulations promulgated by the United States Conference of Catholic Bishops in its *Essential*

---

[15] *See Letter to the People of God in the Archdiocese of New Orleans*, dated November 2, 2018, available at https://nolacatholic.org/2018-report-on-clergy-abuse (last accessed May 11, 2022).

*Norms for Diocesan/Eparchial Policies Dealing with Allegations of Sexual Abuse of Minors by Priests or Deacons*,[16] the Debtor has created an Independent Review Board. The Independent Review Board "is a confidential consultative body established by the archbishop."[17] "This board will advise the archbishop in his assessment of allegations of sexual abuse of minors and in his determination of a cleric's suitability for ministry."[18] Importantly, the Independent Review Board does not make decisions about whether a cleric should be removed from ministry or placed on the 2018 Report Regarding Clergy Abuse. Its decisions are *advisory* in nature only.

35. The Policy explains that "[t]he Archbishop exercises the executive power of governance" according to Canon Law. *Id.* at p. 6. "A priest or deacon who is accused of sexual abuse of a minor or vulnerable adult is to be accorded the presumption of innocence during the investigation of the allegation and all appropriate steps are to be taken to protect his reputation." *Id.* at p. 7.

36. The Committee is intentionally confusing the word "credible" with the word "substantiated." Recall that the Amended Wage Order forbids payments to clerics against whom there have been "substantiated" claims of abuse, and that this Court rejected the use of the phrase

---

[16] "The *Charter for the Protection of Children and Young People* is a comprehensive set of procedures originally established by the USCCB in June 2002 for addressing allegations of sexual abuse of minors by Catholic clergy. The *Charter* also includes guidelines for reconciliation, healing, accountability, and prevention of future acts of abuse. It was revised in 2005, 2011, and 2018." https://www.usccb.org/offices/child-and-youth-protection/charter-protection-children-and-young-people (last visited May 11, 2022). The *Essential Norms for Diocesan/Eparchial Policies Dealing with Allegations of Sexual Abuse of Minors by Priests or Deacons* (the "**Essential Norms**") is in the same booklet as the *Charter*, but is not part of the *Charter* itself. *Id.*

The Essential Norms "bind as particular law all Dioceses and Eparchies of the United States Conference of Catholic Bishops." Essential Norms, at pp. 1-2. https://www.usccb.org/test/upload/Charter-for-the-Protection-of-Children-and-Young-People-2018-final(1).pdf

[17] *Policy Concerning Abuse and Neglect of Minors or Vulnerable Adults*, July 1, 2021 (the "**Policy**").

[18] *Id.* at p. 4.

"credible accusations." These words are legally significant. As already explained, the process of whether to put a cleric on the 2018 Report Regarding Clergy Abuse is a canonical process. The term "credible" is a description that the Internal Review Board uses if it determines that the accusation is "capable of being believed." The term does not indicate that an allegation is true. In contrast, every living person named on the 2018 Report Regarding Clergy Abuse was there not because the accusation was "credible," but because it was substantiated by proof. According to Canon Law, the Archbishop exercises the executive power of governance to decide if there is sufficient evidence to substantiate an accusation of abuse.

37. Again, and for clarity, the Archbishop retains the discretion to exercise executive authority and issue ecclesiastical punishments, if required and appropriate under Canon Law and the instructions of the Congregation for the Doctrine of the Faith at the Vatican. The Independent Review Board is consulted at the initial stages of the canonical process to advise the Archbishop concerning its opinion on whether or not to forward the accusation to the Congregation for the Doctrine of the Faith, who can instruct the bishop to conduct a canonical trial, gather more information, or determine that there is not enough evidence that a canonical crime has been committed. To be sure, the Archbishop is not a law enforcement official and does not and cannot exercise authority of the state. The decision of the Archbishop is ecclesiastical, and whether to put a person on the 2018 Report Regarding Clergy Abuse and the consequences that flow from that decision are purely a function of Canon Law and not of a civil or criminal nature.

### 2. The Ecclesiastical Abstention Doctrine Applies

38. "The ecclesiastical abstention doctrine is based on the Free Exercise and Establishment Clauses of the First Amendment to the U.S. Constitution[19] and 'severely circumscribe[s] the role that civil courts may play in resolving church property disputes.'" *Cross Point Church v. Andrews (In re Andrews)*, 560 B.R. 429, 443 (Bankr. S.D. Miss. 2016) (quoting *Jones v. Wolf*, 443 U.S. 595, 602 (1979)).

39. "Simply put, the First Amendment forbids civil courts from inquiring into and resolving ecclesiastical disputes, defined as including matters that concern 'theological controversy, church discipline, ecclesiastical government, or the conformity of the members of the church to the standard of morals required of them.'" *Id.* (quoting *Watson v. Jones*, 80 U.S. 679, 733 (1871)); *see also Serbian E. Orthodox Diocese v. Milivojevich*, 426 U.S. 696, 713 (1976).

40. Adjudicating who should be on the 2018 Report Regarding Clergy Abuse, and therefore who should preach from the pulpit, is clearly beyond the authority of the Court.

> [T]he First . . . Amendment[] permit[s] hierarchical religious organizations to establish their own rules and regulations for internal discipline and government, and to create tribunals for adjudicating disputes over these matters. When this choice is exercised and ecclesiastical tribunals are created to decide disputes over the government and direction of subordinate bodies, the Constitution requires that civil courts accept their decisions as binding upon them.

*Milivojevich*, 426 U.S. at 724-25.

41. While it is true that some civil disputes involving religious organizations can be resolved without delving into ecclesiastical questions, it must be done without resolving any underlying religious controversies. *Id.* at 710. Considering these factors, courts considering

---

[19] The First Amendment provides, in relevant part, "Congress shall make no law respecting an establishment of religion or prohibiting the free exercise thereof." U.S. CONST. amend. I.

similar relief have refused to intervene in priests' attempts to remove their names from similar lists in other Catholic dioceses.

42. In *In re Diocese of Lubbock*, 624 S.W.3d 506 (Tex. 2021), the Supreme Court of Texas considered a former cleric's defamation suit against the Diocese. *Id.* at 509-10. The court concluded: "Exercising jurisdiction over the underlying case will not only require the trial court to evaluate whether the Lubbock Diocese properly applied Canon Law but will also encroach on the Diocese's decision to investigate its clergy consistent with its internal policies." *Id.* at 519.

43. Similarly, in the Archdiocese of Santa Fe bankruptcy case, the Bankruptcy Court refused to lift the stay to permit a cleric to seek injunctions against the debtor Archdiocese for putting his name on that list. *In re Roman Catholic Church of the Archdiocese of Santa Fe*, Case No. 18-13027, 2021 Bankr. LEXIS 2557, at *21-23 (Bankr. D.N.M. Sept. 17, 2021). While the New Mexico Bankruptcy Court disagreed with the Texas Supreme Court about the ability of the civil court to entertain the cleric's defamation claim against the Archdiocese, the Bankruptcy Court concluded: "[The Court] does not have jurisdiction, however, to order that [the cleric] be removed from the List, nor to adjudicate [the cleric's] challenge to the Debtor's decision that he was close enough to the church in 1970 to warrant inclusion on the List." *Id.* at *23.

44. To be sure, if a court is prohibited from telling a Diocese that it must remove a cleric from its list, there is no logical reason that this Court should be permitted to mandate a cleric's inclusion on the list.

## Conclusion

45. The Committee is either impermissibly seeking an injunction through motion practice or collaterally attacking a final order of this Court. Either way, the Motion is procedurally improper and should be denied for these reasons alone.

46. Even if procedurally proper, a request that the Debtor add names to its 2018 Report Regarding Clergy Abuse runs afoul of the First Amendment to the U.S. Constitution, and this Court should abstain from proceeding over this matter.

WHEREFORE, the Debtor prays that the Motion be DENIED and for all other relief to which it is entitled in law and equity.

Dated: May 12, 2022

Respectfully submitted,

/s/ Mark A. Mintz
R. PATRICK VANCE (#13008)
ELIZABETH J. FUTRELL (#05863)
MARK A. MINTZ (#31878)
LAURA F. ASHLEY (#32820)
Jones Walker LLP
201 St. Charles Avenue, 51st Floor
New Orleans, LA 70170
Telephone: (504) 582-8000
Facsimile: (504) 589-8260
Email: pvance@joneswalker.com
Email: efutrell@joneswalker.com
Email: mmintz@joneswalker.com
Email: lashley@joneswalker.com

**ATTORNEYS FOR
THE ROMAN CATHOLIC CHURCH
OF THE ARCHDIOCESE OF NEW ORLEANS**

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of this Objection is being served (a) on May 12, 2022 by electronic case filing for those parties receiving notice via the Court's Electronic Case Filing system, and (b) by email or First Class U.S. Mail, postage prepaid, on all other parties requiring service under the Court's *Ex Parte Order Authorizing the Debtor to Limit Notice and Establishing Notice Procedures* [ECF No. 22], to be sent by Donlin Recano & Company, Inc. ("**DRC**"). DRC shall file a certificate of service to that effect once service is complete.

/s/ Mark A. Mintz
Mark A. Mintz