UNITED STATES BANKRUPTCY COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re: | § § | Case No. 20-10846 |
| THE ROMAN CATHOLIC CHURCH OF THE ARCHDIOCESE OF NEW ORLEANS, | § § § § | Section "A" |
| | § | Chapter 11 |
| Debtor.[1] | § § | |

**RESPONSE TO OFFICIAL COMMITTEE OF UNSECURED COMMERCIAL CREDITORS' MOTION FOR ENTRY OF AN ORDER AUTHORIZING AND REQUIRING THE OFFICIAL COMMITTEE TO SHARE DISCOVERY PRODUCED BY THE APOSTOLATES**

Now into Court, through undersigned counsel, come the Apostolates, who file this response ("Response") to the *Official Committee of Unsecured Commercial Creditors' Motion for Entry of an Order Authorizing and Requiring the Official Committee to Share Discovery Produced by the Apostolates* [Dkt. # 1410] (the "Motion"). The Official Committee of Unsecured Commercial Creditors (the "Commercial Committee") are not in the same position as the Official Committee of Unsecured Creditors (the "UCC Committee") and are not entitled to the same information. The Commercial Committee's attempt to circumvent the ordinary limits and bounds of discovery propounded upon non-debtor entities should be denied for the following reasons.

BACKGROUND

1. The Motion references the *Official Committee of Unsecured Creditors' Motion for Order for Issuance of Subpoenas for Discovery from the Apostolates Pursuant to Federal Rule of Bankruptcy Procedure 2004* [Doc. No. 1381] and related order(s) (the "2004 Exam"). In the

---

[1] The last four digits of the Debtor's federal tax identification number are 8966. The Debtor's principal place of business is located at 7887 Walmsley Ave., New Orleans, LA 70125.

{00378046-3}  1

Apostolate's Response to the UCC Committee's Motion for a 2004 Exam [Dkt. No. 1418], they recognize that, given the Channeling Injunction contemplated in the Plan of Reorganization, they would need to make certain disclosures of assets and liabilities and did not oppose providing the Official Committee of Unsecured Creditors (the "UCC Committee") with certain disclosures in response to the UCC Committee's 2004 Exam (albeit with certain guardrails). This is where an important distinction arises. The Channeling Injunction will be between the Apostolates and the UCC Committee, *not* the Apostolates and the Commercial Committee. Thus, the rationale for providing the UCC Committee with certain disclosures does not exist for the Commercial Committee because they do not sit in the same circumstances or have the same interests. As this Court has stated, "the fact is that the interests of abuse claimants and standard commercial creditors are different." *In re Roman Cath. Church of Archdiocese of New Orleans*, No. 20-10846, 2021 WL 454220, at *12 (Bankr. E.D. La. Feb. 8, 2021) [Dkt. No. 748, p. 22].

2. Although the Commercial Committee claims to need the information to analyze the Apostolates' financial contribution under the Channeling Injunction, the simple truth is that the Commercial Committee has no say or standing with respect to any Channeling Injunction affecting the persons who filed abuse claims. The Court and all parties recognized the difference between the Commercial Creditors and the abuse claimants when it established two separate bar dates and order the creation of the Commercial Creditors Committee. *Archdiocese of New Orleans*, No. 20-10846, 2021 WL 454220, at *14 (Bankr. E.D. La. Feb. 8, 2021) [Dkt. 748, p. 27] ("Although the Abuse Claimants in this case, at times, may share interests with commercial creditors, their interests often differ from the issues facing other creditors. Those special needs revealed themselves here, for instance, in the evidence this Court considered in appointing a separate Bar

Date and claims procedure for Abuse Claimants and in the statements and the positions taken in the Committee's Motion To Dismiss.").

3. The Channeling Injunction provision of the Plan solely relates to the abuse claimants and does not impact the recovery of the Commercial Claimants. The simple truth is that the Commercial Committee has no standing to assert objections based on another party's claims. *See*, *In re Delta Underground Storage Co., Inc.*, 165 B.R. 596, 599 (Bankr. S.D. Miss. 1994) ("Ranger is not entitled to object to a settlement arrangement relating to claims and actions between other parties before the Court.").

4. The UCC Committee's 2004 Exam requests the following categories of information:

    a) Financial information of the Apostolates;

    b) Real estate holdings of the Apostolates;

    c) Information regarding abuse claims;

    d) All agreements between the Archdiocese and Catholic Community Foundation, Parishes, Apostolates, or any other participant; and

    e) Documents related to donor restrictions for accounts maintained by the Apostolates.

5. The UCC Committee filed its 2004 Exam request on March 24, 2022, in conjunction with hopefully the start of the mediation process with the Apostolates regarding a channeling injunction. This is the only formal discovery request that the Apostolates have received to date from either committee. The Apostolates have provided other information to the UCC Committee on a voluntary basis as part of the settlement process. The UCC Committee's 2004 Exam and the material requested therein makes sense because to get the Channeling Injunction

implemented, the Apostolates may require the consent of the abuse claimants. The Commercial Committee, on the other hand, does not have a say in Channeling Injunction because its members will not be bound by any channeling injunction and will not be party to it. As such, their consent (and, thus, their access to the information sought by the UCC Committee) is not necessary.

6. Further, and perhaps most significantly, the Apostolates are non-debtors. Although the Apostolates need to provide some information to the UCC Committee in order to get the Channeling Injunction across the finish line, they do not need to provide the same information to the Commercial Committee except to the extent that it concerns the *Debtor's* assets and financial condition. Specifically, the Commercial Committee may have interest in whether certain assets of the Apostolates are, in fact, property of the estate and whether any transfers made to the Apostolates by the Debtor are recoverable under Chapter 5 of the Bankruptcy Code. For this reason, the Apostolates are willing to provide the Commercial Committee with information concerning the Apostolates interests in Portfolio A and B and real estate assets—information to which it is entitled. For example, the Apostolates will provide a list of the real estate that is titled in the name of an Apostolate and as such is owned by each Apostolate. The information being provided to the UCC Committee in the 2004 Exam, however, goes well beyond this and the Commercial Committee is simply not entitled to it.

7. The Apostolates question the need of the Commercial Committee to see detailed financial information of an Apostolate when the Commercial Committee and its constituents do not get to vote on any channeling injunction in favor of the Apostolates as long as the Commercial Creditors are not bound by any such channeling injunction. The Motion fails to state a legitimate basis for being able to see *everything* that the UCC Committee sees.

## RULE 2004 EXAMINATIONS GENERALLY

8. "[A] bankruptcy court 'has abundant legal authority to order the retrieval of information concerning a debtor and his estate from persons and entities who are not parties in a bankruptcy case.'" *In re Correa,* 589 B.R. 76, 107 (Bankr. N.D. Tex. 2018). To that end, Federal Rule of Bankruptcy Procedure 2004 permits "any party in interest" to examine any entity relative to the "acts, conduct, or property or…liabilities and financial condition of the debtor, or to any matter which may affect the administration of the bankruptcy estate." This rule "affords both debtors and creditors the broad rights of examination of a third-party's records." *In re Cousins Barricades & Metal Products, Inc.,* 2000 WL 245860, *3 (E.D. La. 2000), citing, *Snyder v. Society Bank,* 181 B.R. 40, 41 (S.D. Tex.), aff'd 52 F.3d 1067 (5th Cir. 1995). See also *in re Ionosphere Clubs, Inc.,* 156 B.R. 414, 432 (S.D.N.Y. ("Because the purpose of the Rule 2004 Investigation is to aid in the discovery of assets, any third party who can be shown to have a relationship with the debtor can be made subject to a Rule 2004 investigation."), aff'd 17 F.3d 600 (2nd Cir. 1994).

## PROCEDURE FOR OBTAINING RULE 2004 EXAMINATION

9. The party seeking a Rule 2004 examination must file a motion with the bankruptcy court for an order allowing the examination and "must establish good cause for taking the exam." *In re Roman Catholic Church of Diocese of Gallup,* 513 B.R. 761, 764 (Bankr. D. New Mexico 2014), citing, *In re Hammond,* 140 B.R. 197, 201 (S.D. Ohio 1992). The right to a Rule 2004 examination is not absolute. *First National Bank v. Scaccia,* 1998 WL 123332 (E.D. La. 1988). Instead, it is within the discretion of the bankruptcy court whether to permit a Rule 2004 examination. *In re Enron Corp.,* 281 B.R. 836, 840 (Bankr. S.D.N.Y. 2002), citing, *In re Bd. Of Dirs. of Hopewell Int'l Ins., Ltd.,* 258 B.R. 580, 587 (Bankr. S.D.N.Y. 2001); *In re French,* 145 B.R. 991, 993 (Bankr. D.S.D. 1992). "[T]he granting of a Rule 2004 examination is dependent on

the discretion of the court [and] requires a balancing of 'the competing interests of the parties, weighing the relevance of and necessity of the information sought by examination.'" *In re Dewitt,* 808 B.R. 794, 798 (Bankr. W.D. Pa. 2019), citing *In re Millennium Lab Holdings II, LLC,* 562 B.R. 614, 625-27 (Bankr. D. Del. 2016) (footnotes omitted).

## SCOPE OF RULE 2004 EXAMINATION

10. An examination "may be had only of those persons possessing knowledge of a debtor's acts, conduct or financial affairs so far as this relates to a debtor's proceeding in bankruptcy." *In re Buick,* 174 B.R. 299, 304, quoting, *Matter of Wilcher,* 56 B.R. 428, 434 (Bankr. N.D. Ill. 1985) (quoting, *In re GHR Energy Corp.,* 35 B.R. 534, 537. (Bankr. D. Mass. 1983)).

11. In *Enron, supra,* the court noted that:

> As a general proposition, Rule 2004 examinations are appropriate for revealing the nature and extent of the bankruptcy estate…and for 'discovering assets, examining transactions, and determining whether wrongdoing has occurred.'

281 B.R. at 840, citing, *In re Strecker,* 251 B.R. 878, 882 (Bankr. D. Colo. 2000) (citing *In re Duratech Indus., Inc.* 241 B.R. 283, 289 (E.D. N.Y. 1999), See also *In re Dewitt,* 608 B.R. 794, 797 ("Legitimate goals of Rule 2004 examinations include 'discovering assets, examining transactions and determining whether wrongdoing has occurred.'") (quoting *In re Millennium Lab Holdings II,* 562 B.R. at 625).

12. The scope of a Rule 2004 examination is quite broad. *In re Cousins Barricades & Metal Products,* 2000 WL 245860 at *3; *In re Enron Corp.,* 281 B.R. at 840; *In re Roman Catholic Church of Diocese of Gallup,* 513 B.R. at 764; *In re Washington Mutual Inc.,* 408 B.R. 48, 49 (Bankr. D. Del. 2009). In fact, a Rule 2004 examination is commonly referred to as a "fishing expedition." *Enron,* 281 B.R. at 840 ("…courts have recognized that Rule 2004 examinations are broad and unfettered and in the nature of fishing expeditions, *E.g., In re GHR Energy Corp.,* 33

{00378046-3} 6

B.R. [at 453]."); *In re Washington Mut., Inc.,* 408 B.R. at 50 ("A Rule 2004 examination 'is commonly recognized as more in the nature of a 'fishing expedition.'") (quoting *In re Bennett Funding Group, Inc.*, 203 B.R. 24, 28 (Bankr. N.D.N.Y. 1996)); *In re Roman Catholic Church of Diocese of Gallup,* 513 B.R. at 764; *In re Buick,* 174 B.R. at 305. Although broad, the scope of a Rule 2004 examination is not without any limits. *In re Enron,* 281 B.R. at 840; *In re Washington Mul., Inc.*, 408 B.R. at 50; *In re Roman Catholic Church of Diocese of Gallup,* 513 B.R. at 764; *In re Buick,* 174 B.R. at 305.

### LIMITATIONS ON RULE 2004 EXAMINATIONS

13. Bankruptcy courts have the discretion to "limit examination as justice requires." *In re: Roman Catholic Church of Diocese of Gallup,* 513 B.R. at 765. Rule 2004 examinations may not be used for abuse or harassment. *In re Enron,* 281 B.R. at 840; *In re: Washington Mut., Inc.,* 408 B.R. at 50; *In re Roman Catholic Church of Diocese of Gallup,* 514 B.R. at 764. They should be denied where the information sought to be discovered is "redundant, onerous, unnecessarily costly or unreasonably intrusive, or which usurps the Trustee's authority." *In re Buick,* 174 B.R. at 305. Bankruptcy courts should be "reticent to open the door to Rule 2004 examinations which might be identical to or duplicative of existing discovery needs and activities of other interested parties." *Id.*

14. Rule 2004 examinations also cannot be used to discover matters that have no effect on the administration of the bankruptcy estate, *i.e.*, "matters that are not relevant to the basic inquiry." *In re: Roman Catholic Church of Diocese of Gallup,* 514 B.R. at 764, quoting *In re Mittco, Inc.,* 44 B.R. 35, 36 (Bankr. E.D. Wis. 1984); *In re Washington Mut., Inc.,* 408 B.R. at 50, quoting *In re Table Talk, Inc.,* 51 B.R. 143, 145 (Bankr. D. Mass. 1985) (quoting *In re Mittco, Inc.*).

15. The Court in *Gallup* stated: "The Court exercises its discretion in this manner in order to mediate between two reasonable but opposing interests: efficient administration of the bankruptcy estate, on the one hand, and protecting the legitimate confidentiality rights of third parties (i.e.. the Apostolates) on the other hand. The Court believes that this ruling is a reasonable middle ground given the facts of the case." *Id* at 764.

16. In *Gallup*, the Court ordered the third party "affiliated entities" to produce financial condition ….and information about insurance coverage. The Apostolates are providing financial and real estate information to the UCC Committee, and the Apostolates do not object to providing some specifically identified documentation to the Commercial Committee as well. However, the Commercial Committee is simply not entitled to any of the remaining information as it serves no purpose to the Commercial Committee outside of getting information that is unreasonably intrusive. Again, the Commercial Committee is entitled to review some financial information and real estate assets so as to assess whether any property of the Apostolates can be considered property of the estate or whether any transfers from the Debtor to the Apostolates may be recovered. The Commercial Committee, however, is not entitled to information pertaining to the innerworkings or financial condition of an Apostolates, abuse claimants, donors, or any of the Apostolates' agreements with other entities. Such information is not necessary to the administration of the estate and falls outside of the scope of Rule 2004.

17. To the extent that the Commercial Committee is using the Motion to circumvent ordinary discovery in anticipation of litigation, "Rule 2004 examinations and Rule 7030 depositions are not discovery procedures that are interchangeable at will. … The primary concern of courts in these circumstances, as noted previously, is to prevent the use of Rule

{00378046-3}                                                        8

2004 examinations to circumvent the safeguards and protections of the discovery rules." *In re Young*, No. 17-14065-NPO, 2018 WL 6060338, at *4 (Bankr. N.D. Miss. Nov. 19, 2018).

18. The *Young* case made clear that the broad scope of Rule 2004 cannot be used as an end-run around the protection that parties are afforded in traditional litigation, which is precisely what may be one of the goals of the Commercial Committee here. Outside of the Apostolates interest in Portfolio A and B and real estate information, none of the information sought by the Commercial Committee relates to the Debtor's financial condition or estate assets.

### INFORMATION SOUGHT BY THE COMMERCIAL COMMITTEE

19. Again, the Apostolates do not oppose sharing financial information and listed real estate assets owned by the Apostolates with the Commercial Committee. Beyond that, however, the remaining information is beyond the scope of what the Commercial Committee is entitled to.

20. Information pertaining to abuse claims and the claimants is intrusive to the rights of the claimants and is of no benefit to the Commercial Committee. Further, this information does not affect the Debtor's estate and is outside of the scope of 2004. Information pertaining to abuse claims is intrusive to the rights of the abuse claimants and is of no benefit to the Commercial Committee.

21. Information pertaining to agreements between the Archdiocese and the Apostolates is of no benefit or use to the Commercial Committee other than to use as fodder for an anticipated lawsuit that will not affect the Debtor's estate. To the extent that it pertains to transfers by or to the Debtor to or by the Apostolates, that will be revealed in the financial information the Apostolates are willing to provide. This information is also available through the Debtor. If the goal is to gather information for future litigation, the proper procedure is to conduct proper

discovery within the parameters of the Federal Rules of Civil Procedure as applicable through the Federal Rules of Bankruptcy Procedure.

22. Other information sought includes every financial record of the Catholic Community Foundation. This information exemplifies the fundamental dispute between the Apostolates and the UCC Committee, not the Commercial Committee. The Catholic Community Foundation and the Apostolates should not be required to disclose the source of the donations they receive and other information relative to the day-to-day operations of an Apostolate to the Commercial Committee who has no interest in the Apostolate's dispute with the UCC Committee.

23. In addition, no basis exists for the names of third parties (not Apostolates) who have invested in Portfolio A or in other investment vehicles managed by the Catholic Community Foundation to be disclosed to the Commercial Committee. These individuals have a right to have their financial information private. There is nothing to balance with respect to the disclosure of this information. These persons are third parties to the Chapter 11 case.

24. The Commercial Committee also seeks all agreements, contracts, etc. between the members of the Apostolates. The request reaches into the day-to-day operations of the Parishes and the Non-Debtor Service Entities and does not have a conceivable impact on the Debtor's estate or any analysis that may be done by the Commercial Committee. This request goes beyond a fishing expedition to a blatant intrusion.

25. The Commercial Committee also seeks the names of donors and the amounts of any "restricted donation" made to any Apostolate. The Apostolates are not debtors, and they are entitled to protect the names and addresses of anyone who makes either a restricted or unrestricted gift to an Apostolate as well as the amounts of those donations. As with the other information,

these names have no bearing on the *Debtor's* estate because the Apostolates are not debtors. Again, the Commercial Committee is not entitled to this information.

## CONCLUSION

The Apostolates are willing to allow the Commercial Committee access to information where the Commercial Committee has a legitimate reason for obtaining that information within the scope of examining the estate's assets and general financial condition. The Apostolates do not take the position that no financial or real estate information of an Apostolate can be provided to the Commercial Committee as was done by the Apostolate equivalent in the Archdiocese of St. Paul case. However, the Commercial Committee simply has no basis for any additional information because it is not in the same position as the UCC Committee.

In connection with the Commercial Committee's Motion, this Court should deny the Motion as drafted and rather than proxy to information the Commercial Committee should be required to send out a request that addresses matters upon which the Commercial Committee has an interest to protect or advance.

May 12, 2022

                                                          Respectfully submitted:

                                                          */s/ Douglas S. Draper*
Douglas S. Draper, La. Bar No. 5073
Leslie A. Collins, La. Bar No. 14891
HELLER, DRAPER & HORN, L.L.C.
650 Poydras Street, Suite 2500
New Orleans, LA 70130-6103
Telephone: 504.299.3300/Fax: 504.299.3399
E-mail:ddraper@hellerdraper.com
E-mail:lcollins@hellerdraper.com

*Attorneys for the Apostolates*

## CERTIFICATE OF SERVICE

      I, Douglas S. Draper, hereby certify that a copy of the above and foregoing has been served on May 12, 2022, upon the following parties via this Court's electronic notification system as follows:

- **Christine W. Adams**    cadams@kinneylaw.com
- **A. Brooke Watford Altazan**    baltazan@stewartrobbins.com, baltazan@ecf.courtdrive.com;kheard@stewartrobbins.com;kheard@ecf.courtdrive.com;gtaylor@stewartrobbins.com;gtaylor@ecf.courtdrive.com
- **David Winston Ardoin**    david@amotriallawyers.com, renee@amotriallawyers.com
- **Laura F. Ashley**    lashley@joneswalker.com, laura-ashley-4406@ecf.pacerpro.com
- **John Baay**    jbaay@glllaw.com
- **Jerry A. Beatmann**    jay.beatmann@dentons.com, dee.mcgill@dentons.com;sam.alberts@dentons.com;malka.zeefe@dentons.com;lori.odum@dentons.com
- **Alicia M. Bendana**    abendana@lawla.com, rmichel@lawla.com;seaton@lawla.com
- **Richard A. Bordelon**    rbordelon@denechaudlaw.com
- **Derek T Braslow**    derek@thebraslowfirm.com
- **Brandon A. Brown**    bbrown@stewartrobbins.com, bbrown@ecf.courtdrive.com;kheard@stewartrobbins.com;kheard@ecf.courtdrive.com;gtaylor@stewartrobbins.com;gtaylor@ecf.courtdrive.com
- **Joseph M. Bruno**    jbruno@brunobrunolaw.com, Don@brunobrunolaw.com
- **Steven Bryant**    steven.bryant@lockelord.com
- **Amelia L Bueche**    amelia.hurt@kellyhart.com
- **Elwood F. Cahill**    ecahill@shergarner.com
- **Andrew William Caine**    acaine@pszjlaw.com
- **Deborah J Campbell**    deborah.campbell@dentons.com
- **Jamie Dodds Cangelosi**    jcangelosi@stewartrobbins.com, jcangelosi@ecf.courtdrive.com;kheard@stewartrobbins.com;kheard@ecf.courtdrive.com;gtaylor@stewartrobbins.com;gtaylor@ecf.courtdrive.com
- **Linda F Cantor**    lcantor@pszjlaw.com
- **Desiree M. Charbonnet**    dcharbonnet@desireelaw.com
- **William G. Cherbonnier**    wgc@billcherbonnier.com, caludagroupllc@jubileebk.net
- **Everett J. Cygal**    ecygal@schiffhardin.com
- **John H. Denenea**    jdenenea@midcitylaw.com, wdominguez@midcitylaw.com

- **Eric J Derbes** ederbes@derbeslaw.com, derbespacer@gmail.com;derbeser72443@notify.bestcase.com
- **Ross J. Donnes** rdonnes@tcmlawfirm.net
- **Douglas S. Draper** ddraper@hellerdraper.com, vgamble@hellerdraper.com
- **John Douglas Elrod** elrodj@gtlaw.com
- **Joseph Mark Fisher** mfisher@schiffhardin.com
- **Elizabeth J. Futrell** efutrell@joneswalker.com, mmontville@joneswalker.com;lisa-futrell-4186@ecf.pacerpro.com
- **Amanda Burnette George** Amanda.B.George@usdoj.gov
- **Jeremy Gettes** jgettes@gertlerfirm.com
- **William P. Gibbens** billy@semmlaw.com, terri@semmlaw.com
- **Soren Erik Gisleson** sgisleson@HHKC.com, jchauvin@hhkc.com
- **Brodie Glenn** bglenn@bradleyfirm.com
- **Alan H. Goodman** alan.goodman@bswllp.com, moorek@bswllp.com
- **Ashley J. Heilprin** ashley.heilprin@phelps.com
- **Evan Park Howell** ehowell@ephlaw.com, cathyt3@cox.net
- **Stephen Michael Huber** stephen@huberthomaslaw.com
- **Sara Hunkler** shunkler@ruggerilaw.com
- **Wayne J. Jablonowski** wjjlaw@bellsouth.net
- **Annette W Jarvis** jarvisa@gtlaw.com
- **Lillian Jordan** ljordan@donlinrecano.com, rmapa@donlinrecano.com;nefrecipients@donlinrecano.com;jestrada@donlinrecano.com;fcardona@donlinrecano.com
- **Benjamin Kadden** bkadden@lawla.com, mnguyen@lawla.com
- **Allison Kingsmill** akingsmill@joneswalker.com
- **Bradley C. Knapp** bknapp@lockelord.com, AutoDocket@LockeLord.com;Ashley.Lohr@lockelord.com
- **Dylan K. Knoll** dknoll@denechaudlaw.com
- **Omer F. Kuebel** rkuebel@lockelord.com, Yamille.Harrison@lockelord.com
- **Heather A. LaSalle** halexis@hinshawlaw.com, lgraff@mcglinchey.com
- **Frank E. Lamothe** felamothe@lamothefirm.com
- **Julien Guy Lamothe** jlamothe@lamothefirm.com
- **Mark C. Landry** mlandry@newmanmathis.com
- **Darryl T. Landwehr** dtlandwehr@att.net, dtlandwehr@gmail.com
- **Mary S. Langston** Mary.Langston@usdoj.gov
- **Joseph J Lowenthal** jlowenthal@joneswalker.com
- **Ryan Luminais** rluminais@shergarner.com
- **Thomas J. Madigan** tmadigan@shergarner.com
- **Wayne A. Maiorana** tmaiorana@newmanmathis.com
- **Wilson Lewis Maloz** wmaloz@lpwsl.com
- **Robert A. Mathis** rmathis@newmanmathis.com

- **Donald Andrew Mau** dmau@meliaslaw.com
- **Patrick Maxcy** patrick.maxcy@dentons.com
- **Gerald Edward Meunier** gmeunier@gainsben.com, dmartin@gainsben.com
- **Allen C. Miller** allen.miller@phelps.com
- **Mark Mintz** mmintz@joneswalker.com, mark-mintz-4822@ecf.pacerpro.com
- **M. Keith Moskowitz** keith.moskowitz@dentons.com
- **Colleen A Murphy** murphyc@gtlaw.com
- **Samantha Oppenheim** soppenheim@joneswalker.com, samantha-oppenheim-7970@ecf.pacerpro.com
- **Dwight C Paulsen** tpaulsen@bradleyfirm.com
- **Felecia Y Peavy** felepeavy@juno.com
- **Nancy Peterman** petermann@gtlaw.com
- **William S. Robbins** wrobbins@stewartrobbins.com, wrobbins@ecf.courtdrive.com;kheard@stewartrobbins.com;kheard@ecf.courtdrive.com;gtaylor@stewartrobbins.com;gtaylor@ecf.courtdrive.com
- **Craig Robinson** craig@rlolegal.com
- **Nicholas Rockforte** nicholas@onmyside.com
- **Keith A. Rodriguez** Krodriguez@keithrodriguez.com
- **Samuel M. Rosamond** srosamond@twpdlaw.com, jgreen@twpdlaw.com
- **Richard A Rozanski** richard@rarlaw.net
- **David Rubin** David.Rubin@butlersnow.com
- **Logan Elizabeth Schonekas** logan@huberthomaslaw.com
- **Glenn K. Schreiber** glenn.schreiber@usdoj.gov, bonnie.bodenheimer@usdoj.gov;caseview.ecf@usdoj.gov;Vanessa.brown@usdoj.gov
- **Kristi Schubert** kschubert@lamothefirm.com
- **Stephen P. Scullin** scullin@carverdarden.com, baradell@carverdarden.com
- **Peter James Segrist** segrist@carverdarden.com, clary@carverdarden.com
- **Ryan M. Seidemann** seidemannr@ag.louisiana.gov
- **Patrick M. Shelby** rick.shelby@phelps.com, trisha.crombie@phelps.com
- **Nicholas Smeltz** nsmeltz@stewartrobbins.com, nsmeltz@ecf.courtdrive.com;kheard@stewartrobbins.com;kheard@ecf.courtdrive.com;gtaylor@stewartrobbins.com;gtaylor@ecf.courtdrive.com
- **David M Spector** dspector@schiffhardin.com
- **Roger Stetter** rastetter47@yahoo.com
- **Paul Douglas Stewart** dstewart@stewartrobbins.com, dstewart@ecf.courtdrive.com;kheard@stewartrobbins.com;kheard@ecf.courtdrive.com;gtaylor@stewartrobbins.com;gtaylor@ecf.courtdrive.com
- **Jefferson R. Tillery** jtillery@joneswalker.com

- **Richard Trahant**   trahant@trahantlawoffice.com
- **Office of the U.S. Trustee**   USTPRegion05.NR.ECF@usdoj.gov
- **R. Patrick Vance**   pvance@joneswalker.com, nwiebelt@joneswalker.com;patrick-vance-7526@ecf.pacerpro.com
- **Richard P Voorhies**   Richard@voorhieslaw.com, tosha@voorhieslaw.com
- **David F. Waguespack**   waguespack@carverdarden.com, docket@carverdarden.com;plaisance@carverdarden.com
- **David E. Walle**   dwalle@bfrob.com, aadams@bfrob.com
- **John W. Waters**   jwaters@bfrob.com, aadams@bfrob.com
- **Regina S. Wedig**   reginawedig@wediglaw.com, rswedig@hotmail.com
- **Edward Dirk Wegmann**   dwegmann@joneswalker.com
- **Joshua D Weinberg**   jweinberg@ruggerilaw.com
- **Brittany Rose Wolf-Freedman**   bwolf@gainsben.com, sburrell@gainsben.com
- **Wayne George Zeringue**   wzeringue@joneswalker.com
- **Michael S. Zerlin**   mzerlin@netscape.net

                                        */s/ Douglas S. Draper*
                                        Douglas S. Draper