UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF LOUISIANA

| | § | |
|---|---|---|
| IN RE: | § | CASE NO: 20-10846 |
| | § | |
| THE ROMAN CATHOLIC CHURCH OF | § | CHAPTER 11 |
| THE ARCHDIOCESE OF NEW | § | |
| ORLEANS, | § | SECTION A |
| | § | |
| DEBTOR. | § | COMPLEX CASE |

**MEMORANUM OPINION AND ORDER**

Before the Court is the *Motion of the Official Committee of Unsecured Creditors To Compel the Debtor To Terminate Pension Benefits to Credibly Accused Persons* (the "Motion"), [ECF Doc. 1389],[1] and the objections to the Motion filed by Gustavo Henao, [ECF Doc. 1531 (filed under seal)], and The Roman Catholic Church of the Archdiocese of New Orleans (the "Archdiocese" or the "Debtor"), [ECF Doc. 1539]. The Court heard oral argument on the Motion and took it under submission. [ECF Doc. 1559]. For the reasons discussed herein, the Court **GRANTS** the Motion and will amend its Order dated May 21, 2020, [ECF Doc. 100], in accordance with this Memorandum Opinion and Order.

**JURISDICTION, VENUE & NOTICE**

This Court has jurisdiction to grant the relief provided for herein pursuant to 28 U.S.C. § 1334. The matter presently before the Court constitutes a core proceeding that this Court may hear and determine on a final basis under 28 U.S.C. § 157(b)(2)(A), (B) & (O). The venue of the

---

[1] The Court entered an Order granting in part and denying in part the request of the Official Committee of Unsecured Creditors (the "Committee") to file the Motion and all of the attached exhibits under seal. [ECF Doc. 1394]. A redacted version of the Motion is available on the docket; however, the Court required the *Declaration of Andrew W. Caine* and all exhibits filed in support of the Motion to remain under seal, as the information contained in the declaration and the exhibits themselves have been produced through discovery in this case and designated as "confidential" by the Debtor pursuant to the governing Protective Order. No party in interest has challenged that designation.

Debtor's chapter 11 case is proper under 28 U.S.C. §§ 1408 and 1409(a).  The Court finds that notice of the Motion was proper under applicable Federal Rules of Bankruptcy Procedure, this Court's Local Rules, and applicable limit-notice Orders governing notice in this case.

## RELEVANT BACKGROUND

**A. The Debtor's Bankruptcy Filing and the Wages & Benefits Motion**

On May 1, 2020, the Archdiocese filed a petition for chapter 11 bankruptcy relief in this Court.  [ECF Doc. 1].  Along with its petition, the Archdiocese filed a number of "first-day" motions, including the *Debtor's Expedited Motion for an Order (I) Authorizing, But Not Directing, the Debtor To Pay Certain Prepetition (A) Wages, Salaries and Other Compensation, (B) Employee Medical and Similar Benefits, and (II) Authorizing and Directing the Applicable Banks and Financial Institutions to Honor and Pay All Checks and Transfers Associated with the Foregoing* (the "Wages & Benefits Motion"), [ECF Doc. 7].  Through the Wages & Benefits Motion, the Archdiocese requested, among other things, permission to pay prepetition wages and benefits owed to current full-time and part-time employees because "[t]he Employees' knowledge, skills and understanding of the Debtor's ministries, mission, business operations and relationships are essential to the success of the Debtor and this Chapter 11 Case."  Wages & Benefits Motion, ¶ 15; *see also id*. ¶¶ 17–45.  The Wages & Benefits Motion predominantly dealt with wages, expense reimbursement, insurance, and retirement contributions for current employees.  But buried in one paragraph, the Archdiocese also made a request to continue paying retirement benefits to "[i]ncardinated priests of the Archdiocese, whose retirement from active service is duly accepted by the Archbishop."  *See* Wages & Benefits Motion, ¶ 44.

Although the Committee had yet to be constituted, certain claimants who had been actively litigating against the Archdiocese prior to its bankruptcy filing appeared through counsel and filed

2

an opposition to the Archdiocese's request to continue to pay retirement benefits to certain retired priests, specifically those "against whom there have been substantiated or credible allegations of sexual abuse of a minor or vulnerable adult." [ECF Doc. 29 & Ex. E]. At the hearing on the "first day" motions, counsel for the Archdiocese made no legal argument and introduced no evidence to justify post-petition payments for benefits that had accrued prepetition to retired priests who had been credibly accused of sexual abuse of a minor or vulnerable adult. Counsel made known to the Court, however, that the Archdiocese had an internal process for determining the credibility of accusations of sexual abuse and, further, had published a list of names of priests or lay persons serving in ministerial roles that, based on its own internal investigations, it deemed to have been credibly accused of sexual abuse of minors or vulnerable adults (the "Credibly Accused List"). *See* Hr'g Tr. 77:4–88:9 (May 5, 2020) [ECF Doc. 107]. After considering the creditors' arguments, and with the acquiescence of the Debtor to proposed language for the Order,[2] the Court entered an Order approving the Wages & Benefits Motion with the following caveat:

> Notwithstanding anything to the contrary set forth herein, nothing in this Order shall authorize payment to any person against whom there have been substantiated allegations of abuse of a minor or vulnerable adult (as identified in the 2018 Report Regarding Clergy Abuse and published on the Debtor's website) in respect of any prepetition Employee Obligation.

[ECF Doc. 47, ¶ 7 (the "Wages & Benefits Order")]. In sum, the Debtor agreed to forfeit its request to pay retirement benefits to those whom it had placed on the Credibly Accused List.

Approximately ten days after the entry of the Wages & Benefits Order, the Court received correspondence from a priest listed on the Credibly Accused List, interpreted the correspondence as a motion to reconsider the Wages & Benefits Order ("Motion To Reconsider"), and set the

---

[2] The Committee attached an interim wage order issued by the court in a diocesan case filed in another district as a proposed template for this Court's Order. [ECF Doc. 29, Ex. E-1]. The Archdiocese consented to modeling the language of the Order to be used in this case from the language used in that order.

matter for expedited hearing. [ECF Docs. 70 & 73]. A second priest listed on the Credibly Accused List later filed a joinder. [ECF Doc. 88]. Both asked this Court to reconsider the Wages & Benefits Order to allow them to receive retirement benefits. Two groups of claimants asserting sexual abuse claims against the Debtor filed objections to the motion to reconsider. [ECF Docs. 82 & 85]. The Debtor filed a limited response to the Motion To Reconsider. In its response, the Debtor reiterated its contractual and moral obligation under Canonical Law to care for all retired priests financially, but acknowledged its compliance with this Court's Wages & Benefits Order and reported that it had discontinued payments of monthly stipends and health benefits for any retired priest, laicized or not, listed on the Credibly Accused List. [ECF Doc. 89].

At the hearing on the Motion To Reconsider, representations made by counsel for the Archdiocese indicated that the retirement plan for retired priests is not a retirement or health plan governed by the Employee Retirement Income Security Act of 1974 ("ERISA"), the federal law obligating private employers offering pension plans to adhere to an array of rules designed to ensure plan solvency and protect plan participants. *See* Hr'g Tr. 18:7–21:6 (May 20, 2020) [ECF Doc. 122]. Indeed, "church" plans are exempted from ERISA. *See* 29 U.S.C. § 1003(b). Rather, the Archdiocese's retirement plan for priests is a contractual obligation arising under Canonical Law; it is a promise to take care of retired priests financially in their sunset years in exchange for priests' years of service and ministry in the church for what many would consider to be a low salary. *See* Hr'g Tr. 18:7–21:6 (May 20, 2020) [ECF Doc. 122]; [ECF Doc. 70]. The retirement benefits can be categorized in two parts: (i) a monthly stipend to pay for "maintenance," *i.e.*, living expenses such as groceries and rent; and (ii) medical benefits, including health insurance and co-payments for medication and treatment services. *See* Hr'g Tr. 21:3–24:8 (May 20, 2020) [ECF Doc. 122]; [ECF Doc. 70].

The Court raised its own concern at the hearing on the Motion to Reconsider that the Wages & Benefits Order ran afoul of 11 U.S.C. § 1114. *See* Hr'g Tr. 21:3–24:12, 28:8–29:11, 30:2–31:2 (May 20, 2020). That section of the Bankruptcy Code defines "retiree benefits" as

> payments to any entity or person for the purpose of providing or reimbursing payments for retired employees and their spouses and dependents, for medical, surgical, or hospital care benefits, or benefits in the event of sickness, accident, disability, or death under any plan, fund, or program (through the purchase of insurance or otherwise) maintained or established in whole or in part by the debtor prior to filing a petition commencing a case under this title.

11 U.S.C. § 1114(a). Section 1114(e) further mandates that a "debtor in possession . . . shall timely pay and shall not modify any retiree benefits" except via procedures set forth in that statute or by agreement of the parties. Given the Court's reading of § 1114, the Court granted in part the Motion To Reconsider to require the Debtor to continue provision of medical benefits to retired priests. But because the Debtor declined to make any showing to warrant its post-petition payment of prepetition maintenance obligations to retired priests listed on the Credibly Accused List, the Court denied the Motion To Reconsider to the extent it requested reinstatement of the movants' retirement benefits in the form of post-petition maintenance payments. On May 20, 2020, the Court amended paragraph 7 of the Wages & Benefits Order to reflect its ruling:

> Notwithstanding anything to the contrary set forth herein, nothing in this Order shall authorize payment to any person against whom there have been substantiated allegations of abuse of a minor or vulnerable adult (as identified in the 2018 Report Regarding Clergy Abuse and published on the Debtor's website) in respect of any prepetition Employee Obligation, except that the Debtor is instructed to continue provision of "retiree benefits" as that term is defined in 11 U.S.C. § 1114(a).

[ECF Doc. 100].

5

### B. The Committee's Motion To Compel Production of Documents

Beginning in the fall of 2020, in preparation for the mediation of hundreds of sexual abuse claims filed against the Debtor, the Debtor and the Committee started exchanging discovery consensually pursuant to Rule 2004 of the Federal Rules of Bankruptcy Procedure. On March 25, 2021, however, the Committee filed a motion to compel the Debtor to produce various documents (the "Motion To Compel"). [ECF Doc. 804]. The Committee's Motion To Compel addressed a wide range of categories in which it alleged the Debtor's production of responsive documents had been insufficient or lacking; relevant here, however, is the Committee's request for all documents pertaining to any allegations of abuse by an Archdiocesan priest or lay person. The Archdiocese summarily objected to the Committee's requests for such documents on various grounds. [ECF Doc. 814, ¶¶ 54–75]. The Court has met with the parties on a monthly basis to guide the discovery process, and the Debtor continues to produce documents subject to agreements made with the Committee and objections lodged regarding certain requests.[3]

After making progress for months, the parties reached an impasse regarding the scope of certain discovery requests, the first being whether the Debtor would be required to produce all documents related to all Archdiocesan priests or lay persons serving in ministerial roles that have been accused of sexual abuse, whether credibly accused or not and whether named in a proof of claim filed in this case or not. The Committee addressed that dispute in supplements to its Motion

---

[3] The volume of discovery in this case is significant and the form in which information exists has at times impacted the ease and speed with which document productions could be made. That said, although the parties have cooperated for the most part, resolving the Motion To Compel has led to a string of hearings, status reports, and briefing beginning in May 2021 and continuing to date. [ECF Docs. 845, 879, 909, 924, 962, 966, 1016, 1018, 1020, 1026, 1047, 1051, 1054, 1060, 1131, 1165-66, 1171-72, 1203, 1257, 1271, 1289, 1299–1300, 1317, 1336, 1352, 1460, 1548, 1557, 1604, 1665 & 1745].

To Compel, [ECF Docs. 1271 & 1299], and the Debtor responded, [ECF Doc. 1300].[4] After considering the pleadings and arguments of the parties at a hearing in February 2022, the Court overruled the Debtor's objections and ordered it to produce all documents from the past ten years—paper documents and electronic files, including, but not limited to, personnel files, Archdiocesan Review Board ("ARB") (sometimes referred to as the "Independent Review Board") findings,[5] and law enforcement referrals, maintained by any and all departments and offices within the Archdiocese—related to all Archdiocesan priests or lay persons serving in ministerial roles that have been accused of sexual abuse, whether placed by the Archbishop on the Credibly Accused List or not and whether named in a proof of claim filed in this case or not. *See* Hr'g Tr. 4:6–22:22 (Feb. 18, 2022) [ECF Doc. 1327]; [ECF Doc. 1336]. The Debtor committed to producing those documents within thirty days of the hearing.

---

[4] The Court allowed the Committee and the Debtor to file their pleadings under seal as both attached documents produced by the Debtor that had been marked as "confidential" pursuant to the Protective Order governing discovery in this case. [ECF Docs. 1274 & 1305].

[5] According to the Debtor's website, in November 2018, "to foster the healing of victims, in a spirit of transparency, and in the pursuit of justice," the Archbishop made the decision to publish the names of those "Archdiocesan clergy (priests and deacons) who had been removed from ministry for an allegation of sexual abuse of a minor." Archdiocese of New Orleans, Pastoral Letter, Clergy Report Regarding Abuse (Nov. 2, 2018), https://nolacatholic.org/2018-report-on-clergy-abuse; [ECF Doc. 1539, ¶ 34 & n.15]. In his letter, the Archbishop alluded to the role of the ARB:

> For those against whom the accusation came after their death, a very careful examination took place in order to justify the reporting of the person's name. The more recent cases were and continue to be presented to the Archdiocesan Review Board, an independent board made up of lay experts, who review the cases and make recommendations.

Archdiocese of New Orleans, Pastoral Letter, Clergy Report Regarding Abuse (Nov. 2, 2018), https://nolacatholic.org/2018-report-on-clergy-abuse; [ECF Doc. 1539, ¶ 34 & n.15]. The Debtor's objection to the Motion further describes the ARB as "a confidential consultative body established by the archbishop" that "will advise the archbishop in his assessment of allegations of sexual abuse of minors and in his determination of a cleric's suitability for ministry." [ECF Doc. 1539, ¶ 34].

**C. The Committee's Instant Motion To Compel Termination of Retirement Benefits**

On March 25, 2022, the Committee filed the instant Motion after having received ARB reports and other documents from the Archdiocese through the foregoing discovery. The Committee asserts that those documents substantiate credible accusations of sexual abuse committed by five priests (collectively, the "Accused")[6] prior to 2018, but those priests are not listed on the Credibly Accused List and, therefore, pursuant to this Court's amended Wages & Benefits Order, they continue to receive their full retirement benefits. *See* Motion, ¶¶ 8–17.

Although fashioned as a motion to compel the termination of retirement benefits, the Committee seeks further reconsideration of this Court's Wages & Benefits Order; therefore, the Court interprets and treats the relief requested as a motion filed pursuant to Rule 60(b) of the Federal Rules of Civil Procedure, made applicable here Bankruptcy Rule 9024.

## DISCUSSION

**A. The Court Finds Extraordinary Circumstances Justify Amending Its Wages & Benefits Order**

Rule 60(b) lists six grounds upon which a final judgment, order, or proceeding may be set aside. "Subsections one through five are specific, while subsection six is a general clause permitting relief for other valid grounds." *Curtis v. Brunsting,* 860 F. App'x 332, 335 (5th Cir. 2021) (citing *Bailey v. Ryan Stevedoring Co.*, 894 F.2d 157, 160 (5th Cir. 1990)); *see also Cage v. Garcia (In re Garcia)*, Adv. No. 07-03157, 2010 WL 3187590, at *5 (Bankr. S.D. Tex. Aug. 11, 2010) ("Rule 60(b)(6) allows a court to relieve a party from a final judgment for 'any other reason

---

[6] Those individuals are: ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉ The Motion listed two other priests; however, one of those priest is deceased. *See* Motion, ¶ 11 & n.13. Although the second priest was named in the Motion, no briefing or evidence was provided regarding any abusive or illegal acts attributable to him; therefore, the Court will not include that name in this ruling.

8

that justifies relief.'") "Rule 60(b)(6) is a grand reservoir of equitable power to do justice in a particular case." *Yesh Music v. Lakewood Church*, 727 F.3d 356, 363 (5th Cir. 2013) (citing *Batts v. Tow-Motor Forklift Co.*, 66 F.3d 743, 747 (5th Cir. 1995)). But the Fifth Circuit cautions that relief under Rule 60(b)(6) should "be granted only if extraordinary circumstances are present." *Id.*

Rule 60(b)(6) is not subject to the one-year limitation applied to Rules 60(b)(1)–(3); nevertheless, a movant must seek relief under Rule 60(b)(6) within a "reasonable time" after the entry of an order or judgment. *See* FED. R. CIV. P. 60(c). "What is a reasonable time 'depends on the particular facts and circumstances of the case.'" *Marzo v. Straine*, No. 94-41094, 1995 WL 153110, at *1 (5th Cir. Mar. 23, 1995) (citing *Travelers Ins. Co. v. Liljeberg Enters., Inc.*, 38 F.3d 1404, 1410 (5th Cir. 1994)). In determining what constitutes a reasonable time for seeking relief under Rule 60, the Court must weigh "the interest in finality, the reason for delay, the practical ability of the litigant to learn earlier of the grounds relied upon, and prejudice to other parties." *Travelers Ins. Co.*, 38 F.3d at 1410 (citation omitted). Further, "the timeliness of the [Rule 60] motion is measured as of the point in time when the moving party has grounds to make such a motion, regardless of the time that has elapsed since the entry of judgment." *First RepublicBank Fort Worth v. Norglass, Inc.*, 958 F.2d 117, 120 (5th Cir. 1992) (citing *United States v. 119.67 Acres of Land*, 663 F.2d 1328, 1331 (5th Cir. 1981)).

The court in *In re U.S. Metalsource Corp.* explained the circumstances leading to first-day orders and when reconsideration of such orders may be appropriate:

> [E]ven though first day orders may be final, this does not mean that they cannot be modified when there is evidence of unfairness, lack of due process or no reorganizational purpose being served. First day orders are extraordinary orders that are generally issued without the normal debate and examination given to ordinary matters. They are urged upon the court as necessary or essential for the debtor's reorganization. If and when a first day order is no longer necessary and/or improperly issued, such conditions must be brought to the court's attention. The interested parties, especially the committee of unsecured creditors, should carefully

9

> examine and continuously monitor such orders. The purpose of first day orders is to benefit creditors, by maximizing reorganization values. Many times they are in conflict with other provisions of the Bankruptcy Code. Such orders carry a heavy burden.

163 B.R. 260, 266 (Bankr. W.D. Pa. 1993); *see also* Hr'g Tr. 8:18–12:4 (May 20, 2020) (statements made by the Court prefacing its first reconsideration of the Wages & Benefits Order). At the beginning of the case, an ad hoc group of sexual abuse claimants objected to the Archdiocese's proposed payment of retirement benefits to certain priests found to have credible allegations of sexual abuse lodged against them. Put another way, those prepetition general unsecured claimants objected to the Archdiocese's post-petition payment of other prepetition general unsecured claims to certain retirees—not current employees—who had been adjudged through the internal review process of the Archdiocese to have been credibly accused of sexual abuse. At the first-day hearing on the issue, the Archdiocese made no attempt to justify payment to those retirees; rather, the Court, the objectors, and the Archdiocese agreed at that time to use the Credibly Accused List as a shorthand in the Wages & Benefits Order for identifying those retirees to whom post-petition payment of prepetition general unsecured obligations was objectionable.

The Committee now comes forward with documents produced by the Archdiocese in discovery that show that five additional retirees have, according to the Archdiocese's internal review process, credible sexual abuse allegations lodged against them. *See, e.g.*, Motion, Ex. B  Motion, Ex. E The Committee asks this Court to amend paragraph seven of its Wages & Benefits Order again to supplement that Order with the names of the five Accused to exclude them from receiving retirement benefits other than

those required by § 1114 of the Bankruptcy Code. The Committee asserts that no business justification exists to pay those prepetition obligations as the service of the retirees is not necessary to the Debtor's reorganization efforts. *See* Motion, ¶¶ 20–23. Had the Court access in the first days of this case to the information now presented by the Committee, perhaps the method identified in the Wages & Benefits Order for identifying the retirees to whom post-petition payment of benefits was objectionable to the ad hoc group of sexual abuse claimants would have been more expansive. Nonetheless, to date, the Committee has fulfilled and continues to fulfill its duty in examining and monitoring the necessity and propriety of the Wages & Benefits Order and other first-day orders. *See In re U.S. Metalsource Corp.*, 163 B.R. at 266.

The Court notes that, given the particular facts and circumstances of this case—namely, the ongoing discovery disputes between the parties and the time it took for the Archdiocese to produce the records containing information related to all Archdiocesan priests or lay persons serving in ministerial roles that have been accused of sexual abuse—the practical ability of the Committee to discover the existence of the five Accused earlier was severely limited. Thus, the Court finds that the Committee filed the Motion within a reasonable time for consideration under Rule 60(b)(6). Further, the Court finds that extraordinary circumstances exist at this time to exercise its equitable power to review its first-day Order to do justice in this case. The Court therefore overrules the Debtor's objection to the Motion to the extent that it argues against review under Rule 60.

### B. The Debtor Has Not Carried Its Burden To Justify Post-Petition Payments of Certain Prepetition Retirement Benefits Prior to Plan Confirmation

"A chapter 11 debtor generally may not make any payments or other distributions on account of prepetition claims except through a confirmed plan of reorganization or court-authorized liquidation." *In re Pioneer Health Servs.*, 570 B.R. 228, 232 (Bankr. S.D. Miss. 2017).

11

Courts in this Circuit and others, however, have allowed payment of prepetition claims prior to plan confirmation under certain conditions. *See, e.g.*, *In re Kmart Corp.*, 359 F.3d 866, 872–84 (7th Cir. 2004) (holding that § 363(b)(1) plus a developed evidentiary record could serve as the basis to allow post-petition payment of prepetition general unsecured claims to "critical vendors"); *In re CEI Roofing, Inc.*, 315 B.R. 50, 60–61 (Bankr. N.D. Tex. 2004) (finding that § 105(a) used in conjunction with § 507(a)(3) and (4) can provide statutory authority to allow post-petition payment of prepetition priority unsecured wage claims); *In re CoServ, L.L.C.*, 273 B.R. 487, 496–99 (Bankr. N.D. Tex. 2002) (finding that § 105(a) used in conjunction with § 1107(a) can provide statutory basis to apply pre-Code "doctrine of necessity" and justify post-petition payment of prepetition general unsecured claims to "critical vendors").

The three-prong test used by the court in *CoServ* for determining whether a debtor may pay a general unsecured prepetition claim prior to confirmation is:

> First, it must be critical that the debtor deal with the claimant. Second, unless it deals with the claimant, the debtor risks the probability of harm, or, alternatively, loss of economic advantage to the estate or the debtor's going concern value, which is disproportionate to the amount of the claimant's prepetition claim. Third, there is no practical or legal alternative by which the debtor can deal with the claimant other than by payment of the claim.

273 B.R. at 498. A debtor must prove those conditions by a preponderance of the evidence to convince the Court that necessity of payment to a particular creditor is warranted. *See id*. Essentially, underlying the satisfaction of those conditions is the premise that payment of a "critical vendor" will enable a successful reorganization and make all creditors—even the ones who are not favored as "critical"—better off.

In the face of objections by sexual abuse claimants as well as the Motion To Reconsider filed by affected retired priests, the Debtor has thrice declined the opportunity to make the required showing that payment of the prepetition retirement benefits to certain retired priests prior to

12

confirmation is necessary to its reorganization efforts. Rather, at this time, the Debtor first makes a procedural argument, asserting that the Committee's Motion seeks an injunction requiring an adversary proceeding under Bankruptcy Rule 7001. [ECF Doc. 1539, ¶¶ 14–18]. The Debtor next parses the terms "credible allegations" and "substantiated allegations" to tell the Court that it is prohibited by the ecclesiastical abstention doctrine to satisfy the Committee's perceived request for the Court to "mandate a cleric's inclusion on the [Credibly Accused List]." [ECF Doc. 1539, ¶¶ 33–44]. The Court rejects both of those characterizations of the relief sought in the Motion. Simply, the Motion is a creditors' challenge to this Debtor's ability to pay prepetition general unsecured claims prior to plan confirmation. It's a "critical vendor" challenge. It does not require an adversary proceeding. And the Court is not required to instruct—and has no intention of instructing—the Archbishop to list any names on the Credibly Accused List to resolve this dispute. Indeed, this Court is well within its authority to decide a contested matter regarding whether prepetition general unsecured claims can be paid by the Debtor prior to plan confirmation.

Here, the Committee, representing the interests of all prepetition general unsecured tort creditors, has lodged an objection to the five Accused being paid benefits pursuant to prepetition agreements made with the Archbishop and the Debtor prior to plan confirmation in violation of "one of the principal tenets of Chapter 11: that prepetition general unsecured claims should be satisfied on an equal basis pursuant to a plan." *In re CoServ, L.L.C.*, 273 B.R. at 493. The burden for showing that the payment of those prepetition general unsecured claims prior to plan confirmation is necessary to reorganization lies with the Debtor. *See id*. at 498. And the Debtor has failed to carry its burden.[7]

---

[7] Gustavo Henao ███████████████████████████████████████
███████████████████████████████████████████████████████
███████████████████████████████████████████████████████

**CONCLUSION**

Accordingly, for the reasons mentioned herein,

**IT IS ORDERED** that the Motion is **GRANTED.**

The Court will amend its Wages & Benefits Order, [ECF Doc. 100], in accordance with this Memorandum Opinion and Order as follows:

> Notwithstanding anything to the contrary set forth herein, nothing in this Order shall authorize payment to any person against whom there have been substantiated allegations of abuse of a minor or vulnerable adult (as identified in the 2018 Report Regarding Clergy Abuse and published on the Debtor's website and, per this Court's *Memorandum Opinion and Order* dated August 31, 2022, ▮▮▮▮) in respect of any prepetition Employee Obligation, except that the Debtor is instructed to continue provision of "retiree benefits" as that term is defined in 11 U.S.C. § 1114(a).

**IT IS FURTHER ORDERED** that counsel for the Committee serve this Memorandum Opinion and Order via first-class U.S. Mail upon all parties in interest who will not receive notice via this Court's CM/ECF system pursuant to the Federal Rules of Bankruptcy Procedure and applicable limit-notice Orders governing notice in this case and file a Certificate of Service within three days.

---

▮▮▮ Given the fact that the Debtor has not met its burden to justify payment of the five Accused's prepetition retirement benefits over the Committee's objection, the Court overrules the Gustavo Henao's objection.

**IT IS FURTHER ORDERED** that counsel for the Debtor serve this Memorandum Opinion and Order via first-class U.S. Mail upon the five Accused pursuant to the Federal Rules of Bankruptcy Procedure and file a redacted Certificate of Service within three days.

New Orleans, Louisiana, August 31, 2022.

_____
MEREDITH S. GRABILL
UNITED STATES BANKRUPTCY JUDGE