## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re: | * | |
| | * | Case No. 20-10846 |
| THE ROMAN CATHOLIC CHURCH | * | |
| OF THE ARCHDIOCESE OF | * | Section "A" |
| NEW ORLEANS | * | |
| | * | Chapter 11 |
| Debtor.[1] | * | |

∎∎∎∎∎∎∎∎∎∎∎∎∎∎∎∎∎∎∎∎∎∎∎∎∎∎∎∎∎∎∎∎∎∎∎∎∎∎∎∎∎∎∎∎∎∎∎∎∎∎

## OMNIBUS OBJECTION OF THE APOSTOLATES
## IN OPPOSITION TO MOTIONS FOR
## LIMITED RELIEF FROM AUTOMATIC STAY FILED ON BEHALF OF
## SEXUAL ABUSE SURVIVORS

NOW INTO COURT, through undersigned counsel, come the parishes and other non-Debtor affiliates (collectively, the "Apostolates")[2] of the Roman Catholic Church of The Archdiocese of New Orleans ("Debtor" or the "Archdiocese"), the Debtor in the above-captioned chapter 11 bankruptcy case (the "Bankruptcy Case"), and submit this Omnibus Memorandum in Opposition to the following: (i) twenty-seven (27) *Motions for Limited Relief from the Automatic Stay* [ECF. Nos. 2537, 2538, 2542, 2545, 2547, 2550, 2552, 2554, 2556, 2558, 2560, 2562, 2564, 2566, 2568, 2570, 2571, 2573, 2574, 2575, 2578, 2579, 2580, 2581, 2582, and 2583] (the "Motions"),[3] filed on behalf of alleged sexual abuse survivors (the "Movants")[4]; (ii) the *Memorandum in Support of Motions for Limited Relief from the Automatic Stay Filed on Behalf of [Certain] Sexual Abuse Survivor[s]* [ECF No. 2604] and the *Memorandum in Support of Motions for Limited Relief from the Automatic Stay Filed on Behalf of James Adams* [ECF No. 2607] (the

---

[1] The last four digits of the Debtor's federal tax identification number are 8966. The Debtor's principal place of business is located at 7887 Walmsley Ave., New Orleans, LA 70125.
[2] The Apostolates consist of the parishes within the Archdiocese and other non-Debtor affiliates of the Archdioceses, which have appeared in this case and are identified in ECF No. 1583.
[3] A total of 28 Motions for Limited Relief were filed, but one of them, ECF 2512, does seek to name the Apostolates, or any of them, as defendants in the proposed lawsuit in that Motion for Limited Relief.
[4] For purposes of this Objection, the term, "Movants," will also include the individuals filing the Memoranda in Support, including James Adams ("Adams") and the Official Unsecured Creditors' Committee (the "Committee").

"Memoranda in Support"); and (iii) *Official Committee of Unsecured Creditors' Joinder in Motions for Limited Relief from the Automatic Stay Filed on Behalf of Sexual Abuse Survivors [Relates to Docket Nos. 2512, 2519, 2521, 2523, 2525, 2527, 2529, 2531, 2533, 2535, 2438, 2542, 2544, 2545, 2547, 2550, 2552, 2554, 2556, 2558, 2560, 2562, 2564, 2566, 2568, 2570, 2571, 2573, 2574, 2575, 2578, 2579, 2580, 2581, 2582, 2583]* (the "Joinder").[5]  In support of this Objection the Apostolates state as follows:

## **Introduction**

1.        The Motions are virtually identical except as to the identity of the Movants.  They seek to have this Court lift the stay imposed under 11 U.S.C. § 362(a) for the purposes of permitting the Movants[6] to file petitions (the "Proposed Actions") in non-bankruptcy courts (state or federal) arising from alleged sexual abuse against the Archdiocese, various of the Apostolates and the companies providing insurance  to the Archdiocese and the Apostolates (the "Insurers"); to serve process on those defendants; and, to file proofs of Service of Process in the Proposed Actions.

2.        The Motions are ostensibly prompted by a change in Louisiana law relative to the prescriptive period for filing state law claims for sexual abuse pursuant to La. R.S. 9:2800.9(A)(1). After the expiration of the Bar Date for filing Sexual Abuse Proofs of Claim (the "Sexual Abuse Claims Bar Date") established in the *Order Fixing Time for Filing Proofs of Claims; Approving Proof of Claim Forms; Providing for Confidentiality Protocols; and Approving Form and Manner of Notice* [ECF No. 461] (the "Bar Date Order"), the Louisiana legislature passed Act 322 of 2021 ("Act 322") and Act 386 of 2022 ("Act 386").  This legislation purports to open a three-year

---

[5] ECF Nos. 2519, 2521, 2523, 2525, 2527, 2529, 2531 and 2535 are not Motions for Limited Relief but are Motions for Leave to File Sexual Abuse Survivor Proofs of Claim beyond the Sexual Abuse Claims Bar Date.  In each case, the Claimant alleges that he/she did not receive actual notice of the filing of the Bankruptcy Case or any Bar Dates. All claim to have filed lawsuits against the certain of the Apostolates  with whom the Alleged Abusers were associated with at the time of the alleged abuse, but state that they agreed to drop their lawsuits and pursue their claims in the Bankruptcy Case. These motions are not addressed in this Memorandum.

[6] Pursuant to the *Order Fixing Time for Filing Proofs of Claims; Approving Proof of Claim Forms; Providing for Confidentiality Protocols; and Approving Form and Manner of Notice* [ECF 461], the identity of the Claimants and the contents of the claims that they have filed against the Debtor [and the Apostolates] are confidential.

window (the "Revival Window"), or until June 14, 2024, for holders of claims for sexual abuse of a minor that would otherwise be prescribed to file their claims.   Constitutional challenges have been asserted against the statute and at this time it is unknown if the legislation will be upheld in the Courts.

3.      The attorneys for the Movants have also requested to have the automatic stay lifted with respect to individuals who claim to have suffered sexual abuse, but who are not before the Court through an "opt-in" procedure (the "Opt-In Request").

4.      The stated purpose of the Motions, according to counsel for the Committee "is to allow people to file state court lawsuits against the Archdiocese and, against any third parties [*i.e.,* Apostolates and the Insurers] who may be subject to the automatic stay…and serve those lawsuits and then hit the stop button."[7] In other words, if no plan has been confirmed by June 14, 2024, those individuals will have "reserved [their] rights as to the affiliated non-debtor parties [*i.e.,* Apostolates] as to the Revival Window."[8]

5.      As discussed below, any Proposed Actions against the Apostolates, including the issuance or employment of process, are stayed under § 362(a)(1) and (3) because they would be actions against property of the estate, namely, the proceeds of the insurance policies (the "Policies") that provide coverage to both the Debtor and the Apostolates for the claims to be stated by the putative plaintiffs in the Proposed Actions.

6.      Movants have not presented any "cause" to lift the stay to permit them to file and serve the Proposed Actions and for that reason and the additional reasons set forth below, the Apostolates request that the Motions be denied.

## Background

---

[7] See Excerpts of Transcript of  Hearing held on August 15, 2023, **Exhibit 2611-1** hereto, p. 39:12-22.
[8] Exhibit 2611-1, p. 40:9-23.

{00381007-4}

## A. General

7.        On May 1, 2020, the Archdiocese filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code").  It has been operating its business and managing its property as a debtor in possession pursuant to §§ 1107(a) and 1108 of the Bankruptcy Code since the commencement of the action.

8.        The Apostolates (identified in ECF No.1583) are not debtors in this Bankruptcy Case or any other case pending before this Court.  They are non-debtor affiliates of the Debtor but are covered under the Policies for the types of claims that are sought to be asserted in the Proposed Actions.

9.        The Committee was appointed by the United States Trustee on May 20, 2020 [ECF No. 94] and has been reconstituted on three (3) separate occasions [ECF Nos. 151, 478, 1575, 1618 and 2081].  The members of the Committee are members of the class of Sexual Abuse Claimants.[9]

10.        At the time the Debtor filed this Bankruptcy Case, it was defending some thirty-five (35) lawsuits in the Louisiana state courts (the "Pre-Petition Sexual Abuse Cases") relating to claims of sexual abuse perpetrated by individual priests, nuns, deacons and/or other individuals (the "Alleged Abusers") associated with the Archdiocese, the Apostolates and/or other affiliates of the Archdiocese.[10]  In many of the Pre-Petition Sexual Abuse Cases the alleged misconduct occurred decades ago.  Many of the Alleged Abusers are no longer alive.  In most of the Pre-Petition Sexual Abuse Cases, the Archdiocese and/or one or more of the Apostolates were named as defendants and the Plaintiffs in such actions asserted a joint and several liability theory against the Archdiocese and the Apostolate.

---

[9] There is also an Official Committee of Unsecured Commercial Creditors, which was appointed on March 5, 2021 [ECF Nos. 772 and 792].
[10] At the August 15, 2023, Hearing, counsel for the Committee represented that sixty-six (66) lawsuits had been filed pre-petition.  Exhibit 2611-1, p. 38:20-23.

{00381007-4}

11.     Following the filing of the Bankruptcy Case, the Pre-Petition Sexual Abuse Cases were removed to federal court the "<u>Removed Sexual Abuse Actions</u>") but are stayed pursuant to § 362(a) and remain pending in various sections of the federal district court.

**B. The Ralph Roe Case**

12.     One of the Removed Sexual Abuse Cases is *Ralph Roe v. Catholic Charities Archdiocese of New Orleans, et al.* (the "<u>Ralph Roe Case</u>").[11] The Archdiocese was not named as a defendant in that case but Catholic Charities Archdiocese of New Orleans ("<u>Catholic Charities</u>"), one of the Apostolates, which was named as a defendant in the case, removed it to federal court under 28 U.S.C. §§ 1334 and 1452(a) and Rule 9027 of the Federal Rules of Bankruptcy Procedure as a case related to the Bankruptcy Case.

13.      Roe sought a remand, which was opposed by Catholic Charities.   Relying on the Fifth Circuit's holding in *In re OGA Charters, L.L.C.,*[12] Catholic Charities argued that since it is covered under the same insurance policies that cover the Archdiocese, and because the proceeds of the Policies will likely be insufficient to pay satisfy the multitude of Sexual Abuse Claims, the Policies and their proceeds are property of the Debtor's estate.[13] As a result, and as held in *OGA Charters,* an action against the Apostolates is an action that affects the property of and the orderly administration of the Debtor's estate.

14.     The district court agreed with Catholic Charities and, accordingly, denied the plaintiff's motion to remand the case to state court.[14]  Quoting *In re Galaz,*[15] the Court found that

---

[11] EDLA Docket No. 20-1829 "M."

[12] 901 F.3d 599 (5th Cir. 2018).

[13] 901 F.3d at 604 ("We now make official what our cases have long contemplated:  In the ;limited circumstances,' as here, where a siege of tort claimants threatens the debtor's estate over and above the policy limits, we classify the proceeds as property of the estate.")

[14] See *Motion to Remand* (EDLA No. 20-1829, R.Doc. 11) and *Order and Reasons* (EDLA No. 20-1829, R.Doc. 20), entered 10/13/20.

[15] 841 F.3d 316, 322 (5th Cir. 2016), quoting *In re Spillman Dev. Group, Ltd.,* 710 F.3d 299, 304 (5th Cir. 2013). See also *In re KSRP, Ltd.,* 809 F.3d 263, 266 (5th Cir. 2015 ("'Related to' jurisdiction includes any litigation where the outcome could alter, positively or negatively, the debtor's rights, liabilities, options, or freedom of action or could influence the administration of the bankrupt estate." (citation omitted)).

"[b]efore confirmation of the bankruptcy plan, a proceeding is related to the bankruptcy case if the 'outcome could conceivably have any effect on the case being administered in bankruptcy.'"  The Court went on to note that "[o]ne purpose of 'related to' jurisdiction 'is to force into the bankruptcy court suits to which the debtor need not be a party but which may affect the amount of property in the bankrupt estate.'"[16]  Relying on *OGA Charters,* the district court held in the Ralph Roe Case that:

> Because Catholic Charities has demonstrated that the tort claims asserted in the [Removed Sexual Abuse Cases] stem from the same or similar alleged conduct (with the potential for even more such claims), and that it is readily conceivable that the liability for these claims could overcome the aggregate limits of [the Policies], the Court holds that the proceeds of these policies constitute property of the debtor's bankruptcy estate.[17]

Based upon that finding, remand was denied.

### C.  Previous Lift Stay Motions

15.     Several other motions to lift the stay were filed early on in the Bankruptcy Case. Two were filed by non-sexual abuse personal injury plaintiffs, first by Merle Noullet (the "Noullet Motion") [ECF No. 131], on June 4, 2020, and second by Warren and Mary Deemer (the "Deemer Motion") [ECF No. 401], on September 10, 2020.  The Noullet Motion sought to lift the stay to allow the plaintiff to prosecute her state court claims against the Debtor, and the Deemer Motion sought to lift the stay to allow the plaintiffs to prosecute their state court claims against certain non-debtors who had been named as  co-defendants with the Archdiocese in that case.  The Noullet Motion was denied by this Court and the Deemers Motion was granted for limited discovery purposes due to his poor health .[18]

---

[16] EDLA No. 20-1829, R. Doc. No. 20, p. 4, citing *In re Zale Corp.,* 62 F.3d 746, 752 (5th Cir. 1995) (quoting *Zerand-Benal Group, Inc. v. Cox,* 23 F.3d 159, 161-62 (7th Cir. 1994)).

[17] EDLA No. 20-1829, R. Doc. No. 20, p. 8.  (Footnote omitted).

[18] ECF Nos. 354 and 357 (Noullet) and ECF No. 494 (Deemers).  The Committee objected to the Noullet Motion on the grounds that the insurance proceeds are property of the Debtor's bankruptcy estate.

16.     Additional motions to lift the stay were filed in September 2020 by two plaintiffs in the Removed Sexual Abuse Cases, J.W. Doe [ECF. No. 378] and James Doe [ECF 380] (collectively the "Doe Motions").  In the Doe Motions, the plaintiffs sought to have the stay lifted to permit them to prosecute their claims against the Debtor, Apostolates and individual Alleged Abusers, as to liability and damages; provided, that they would not seek to enforce any damage awards outside the Bankruptcy Case.  Alternatively, they sought to lift the stay for the limited purpose of allowing them to depose defendants and witnesses who were over 70 years old.  This Court denied the Does' requests to prosecute their claims against the Debtor and Apostolates to judgment [ECF No. 441] but ultimately granted the Doe Motions to permit them to depose their Alleged Abusers who were over 70 years of age [ECF No. 528].

### D.     The Bar Date Order and Notice of Bar Dates

17.     After three (3) hearings in September 2020 and after considering expert testimony regarding advertising and notification as well as information and procedures relating to concerns of sexual abuse victims, on October 1, 2020, this Court entered the Bar Date Order [ECF No. 461], setting the Sexual Abuse Claims Bar Date for March 1, 2021, providing for confidentiality protocols, and approving the form and manner of the Notice of the Bar Dates.

18.     The individuals required by the Bar Date Order to file a Sexual Abuse Proof of Claim, are:

> Any Sexual Abuse Claimant who believes that he or she has a claim against the Debtor; including but not limited to, Sexual Abuse Claimants who have previously filed lawsuits against the Debtor, Sexual Abuse Claimants who previously gave notice to the Debtor *or a Parish or any Non-Debtor Catholic Service Entity* of their Sexual Abuse (including informal notice thereof), and Sexual Abuse Claimants who have never filed a lawsuit, entered into a settlement or reported their sexual abuse to the Debtor *or any Parish or Non-Debtor Catholic Service Entity*. [ECF No. 461, p. 6, ¶ 8(c)].  (Emphasis added; footnotes omitted).

19.     The Bar Date Order further provides that a person who is required to file a proof of claim in the Bankruptcy Case but who "fails to submit [his/her] claim by the applicable bar date, may not be treated as a creditor with respect to such claim for the purposes of voting on and distribution under any chapter 11 plan proposed and/or confirmed in this case and may be barred from asserting claims against the Debtor. Claimants should refer to the Sexual Abuse Bar Date Notice…regarding Sexual Abuse Claims against any **Parish, School , or Non-Debtor Catholic Service Entity**." [ECF No. 461, ¶ 9]. (Emphasis added).

20.     The Notice provisions in the Bar Date Order relative to Sexual Abuse Claims were heavily negotiated by and among the Debtor, the Committee (consisting of several Sexual Abuse Claimants), the Apostolates and other parties in interest, including the Insurers. The Bar Date Order presented to the Court was consensual and contained extensive Notice requirements, pursuant to which Notice of the Sexual Abuse Bar Date and the Sexual Abuse Claim form was widely published in and outside Louisiana to:

> (i)  All individuals who have filed or ever threatened in writing to file lawsuits against the Archdiocese, **Parishes, Non-Debtor Catholic Service Entities, or Orphanages** who allege sexual abuse.

> (ii)   All individuals known to the Archdiocese who contacted the Archdiocese or any **Parish, Non-Debtor Catholic Service Entity, or Orphanage** to report that they were Sexually Abused, whether or not that individual's claim was considered to be substantiated or unsubstantiated and whether or not the report was written or verbal.

> (iii)   All individuals known to the Archdiocese to whom payment or counseling reimbursement has ever been made by or on behalf of the Archdiocese or any **Parish, Non-Debtor Catholic Service Entity, or Orphanage** as a result of an allegation of Sexual abuse, as well as all individuals who participated in any mediation or settlement process with the Archdiocese or any **Parish, Non-Debtor Catholic Service Entity, or Orphanage** but did not enter into a settlement agreement….

> (iv)   All individuals known to the Archdiocese whole names were given by an alleged abuser…or by any third-party during interviews, or as part of an investigation of Sexual Abuse to the Archdiocese, to **any Parish, to any representative of the Archdiocese or**

*Parish or to any Parish* or diocesan and religious order priests and clergy in the Archdiocese *or Parish*.

(v)   All individuals that the Archdiocese or any *Parish, or Non-Debtor Catholic Service Entity, or Orphanage* has record of who contacted the Archdiocese about their children or other children being in close contact with an Alleged Abuser or about some problem with the Alleged Abusers and their child or another child.

(vi)   All individuals whom the Debtor has ever provided or referred to for counseling, spiritual director, or therapy support related to Sexual Abuse.

(vii)  Where any of the Sexual Abuse Notice Parties listed above have an attorney of record, notice shall also be sent to the attorney of record.

ECF 461, ¶ 18.  (Emphasis added; footnote omitted).

21.      A major concern of the Debtor, the Committee, the Apostolates and other interested parties in the negotiation of the Bar Date Order was identifying the universe of Sexual Abuse Claimants so that they could be provided with actual notice of the Sexual Abuse Claims Bar Date and participate in the Bankruptcy.  To that end, the Debtor and the Apostolates were required by ¶ 19 of the Bar Date Order to exercise herculean efforts to identify all Sexual Abuse Notice Parties. As a part of this effort, the Debtor and Apostolates were ordered to post a link providing notice of the Sexual Abuse Claims Bar Date Notice and the form of Sexual Abuse Proof of Claim on their websites.  [ECF 461, ¶ 22].

22.      The Sexual Abuse Claims Notice also plainly informs the Sexual Abuse Notice Parties that, if the Noticed party believes that he/she has experienced Sexual Abuse, as defined in the Sexual Abuse Claims Notice, by "persons associated with the Archdiocese…in connection with any entity or activity associated with the Archdiocese, **including schools, orphanages, parishes or Catholic Charities,**" he/she should file a Sexual Abuse Claim on or before the Sexual Abuse Claims Bar Date *regardless* of his/her  age, the length of time that has passed since the abuse occurred, *or whether he/she believed that the applicable statute of limitations may have run* on

the Sexual Abuse Claim and  whether he/she had filed a lawsuit or asserted a previous claim for Sexual Abuse.  The Sexual Abuse Notice Parties were further informed that if they failed to file a Sexual Abuse Survivor Proof of Claim on or before the Sexual Abuse Claims Bar Date, their rights, "including the right to compensation, against the compensation against the [Archdiocese] *and Non-Debtor Catholic Entities* [*i.e.,* the Apostolates] may be effected"

23.     The Debtor fully complied with the Notice provisions of the Bar Date Notice at a substantial cost to the estate and there has been no suggestion otherwise by any party in interest. Indeed, the Notice publication program in this Bankruptcy Case was one of the most expensive and expansive and relied heavily on the opinions rendered by experts hired by the Creditors Committee.  The Notice Program through the use of print, radio, television, social media and other means provided constructive notice to potential Sexual Abuse Claimants that did not receive actual notice.  Persons with Sexual Abuse Claims against either the Archdiocese *and the Apostolates* were advised to file proofs of claim and that the failure to file may adversely affect the person's rights.

24.     Every one of the  Movants has filed a Sexual Abuse Proof of Claim.

**E.  The Revival Window**

25.     On June 14, 2021, approximately three (3) months after the Sexual Abuse Claims Bar Date had expired, the Louisiana legislature passed Act 322, amending LSA-R.S. 9:2800.9, which provides the prescriptive period for filing claims of sexual abuse of a minor.  Prior to the amendment, the statute provided a prescriptive period of ten (10) years from the date the minor reached the age of majority.  Act 322 attempted to eliminate the prescriptive period for the filing of an action arising out of the sexual abuse of a minor, making such claims imprescriptible. Additionally, Section 2 of Act 322 opened a three-year window to permit any party whose action would otherwise have been prescribed under R.S. 9:2800.9 prior to the effective date of Act 322

to file suit for damages arising out of that abuse.  As the Court is aware, significant challenges exist as to the constitutionality of Act 322 and its breath and scope.

### F.    The Motion to Reopen Sexual Claims Bar Date

26.    Following the amendment to La. R.S. 9:2800.9, opening the three-year Revival Window, the OUCC sought to reopen the Sexual Abuse Claims Bar Date to extend the date for another sixty (60) days to afford potential Sexual Abuse Claimants who had not previously filed Sexual Abuse Proofs of Claim, believing them to be prescribed, to do so.[19]  The Motion to Reopen was denied by this Court [ECF 977], which held that it did not have the authority to reopen the Sexual Abuse Bar Claims Date and that, in any event, the opening of the Revival Window did not affect the nature of the Sexual Abuse Claims.  The Court in denying the Motion to Reopen was aware of the fact that the Bar Date Notice suggested that all persons asserting abuse claims whether or not the claim had prescribed or was against and Apostolate should file a proof of claim by the bar date.

### G.  The Instant Motions

27.    Although, as stated above, all of the 27 Movants filed Sexual Abuse Proofs of Claim they have now, supported by the Committee, filed these nearly identical Motions seeking to be permitted to also file lawsuits against the Archdiocese, the Apostolates and the Insurers prior to the expiration of the Revival Window.

28.    Throughout the course of this Bankruptcy Case, counsel for the Committee has continually and repeatedly represented to the Debtor, the Apostolates, the Insurers and this Court that, in addition to the 35 Removed Sexual Abuse Claims and the hundreds of Sexual Abuse Proofs of Claim that have been filed in this Bankruptcy Case, there are scores of additional Sexual Abuse Claims that have not been filed.  For example, at the August 15, 2023 Hearing, Committee's

---

[19] *Motion for Order Reopening Abuse Claims Bar Date for Additional 60-Day Period* [ECF No. 927] (the "Motion to Reopen").

{00381007-4}

counsel stated that these Motions would be designed to flush out "entities out there who may have claims against [Apostolates] that have not been articulated in a proof of claim or in any existing state court litigation[]"[20] and that "I need to try to set the best opportunity possible for state court counsel to come forward with clients who have not presented themselves in some fashion through a proof of claim."[21]  As represented at the August 15, 2023 Hearing, the Committee was trying to coordinate with law firms representing potential Sexual Abuse Claimants to file all of their motions for limited relief from the stay at the same time.[22]  Committee counsel further represented that "[w]e are informed by state court counsel that the time is now to try to get permission from [this Court for limited relief from the stay] because they have work to do on their cases and it doesn't happen overnight in terms of preparing an appropriate relief, state court complaint."[23]  The Committee has stated that it needs to know the number of unknown claims ( those in which no proof of claim has been filed ) in order to negotiate a settlement for this case.

29.        What Committee counsel represented to the parties and to this Court is not, in fact, what has occurred. Based on the Committee's representations, state court counsel, to be coordinated with the Committee, was granted until October 17, 2023, to file their limited motions for relief from the stay [ECF Nos. 2467, 2478], ostensibly, for potential Sexual Abuse Claimants who had not previously filed state court lawsuits or filed Sexual Abuse Proof of Claims  believing them to be prescribed.   Instead, the 27 Movants who filed  Motions are parties that have already filed Sexual Abuse Proofs of Claim.[24] The goal that the Committee and State Court counsel hoped to achieve through the process approved by this Court has not brought forward a single new claim against either the Debtor or the Apostolates.  Rather than identifying and having any parties not

---

[20] Exhibit 2611-1, p. 41:22-24.
[21] Exhibit 2611-11, p. 42:15-18.
[22] Exhibit 2611-11, p. 44:1-7.
[23] Exhibit 2611-1, p. 45:4-7.
[24] Additionally, as noted above, eight (8) individuals filed motions to file out of time Sexual Abuse Proofs of Claim.

previously represented by having either filed a state court lawsuit or a Sexual Abuse Proof of Claim come forward and file a Motion to Lift the Stay , the Movants, joined by the Committee instead, request that if counsel for a Claimant "is retained to represent additional similarly situated abuse claimants, [Claimant] requests an order that the relief sought herein be available upon the filing, by counsel, of a notice filed and served on the Debtor and [the Apostolates] that identifies each additional claimant."[25]   The Committee expands the "opt-in" proposed by Movants' counsel to request that the "opt-in" also apply to potential Sexual Abuse Claimants that are *pro se* or are represented by counsel other than one of the law firms representing Movants.[26]   The Movants and the Committee are now asking the Court for a third process where the first two despite strong warnings  to file a proof of claim have failed.

30.     The Committee and state court counsel have had more than three (3) years during the pendency of this Bankruptcy Case within which to identify these additional parties but have not done so.  The Notice provisions of the Bar Date Order were negotiated and designed to allow these parties to be identified.  The Scheduling Order for these Motions [ECF No. 2467], as amended and superseded [ECF No. 2478] gave them until October 17, 2023 to identify these additional parties, but no such parties have materialized to request motions to modify the stay and counsel for the Committee freely admitted at the August 15, 2023 Hearing that the Committee

---

[25] In all but two of the Motions, this request appears at ¶ 29; in the other two  [ECF Nos. 2512 and 2568], this relief is simply requested in the Conclusion. The OUCC's Joinder [ECF 2604] requests this "Opt-In" for non-Movant, non-Sexual Abuse Claimants and proposes an "Opt-In Procedure."  In addition,  Herman, Herman & Katz, LLC, Shearman-Denenea, LLC and Richard C. Trahant, have filed a Memorandum in Support, wherein they have requested that the Motions filed by them on behalf of Tim Doe [ECF No. 2570] and Jane Doe [ECF No. 2571] be granted not only on behalf the Movants in those motions, but also on behalf of some seventy-nine (79) other Sexual Abuse Survivors that they represent, as identified in their *Statement Pursuant to Rule 2019 of the General Rules of Bankruptcy Procedure* [ECF No. 2340] (the "Herman Rule 2019 Statement").  None of these additional 79 parties filed a motion on his/her own behalf for limited relief from the stay even though they easily could have; *all* of them, however, have filed Sexual Abuse Proofs of Claim and are not new to this Bankruptcy Case.  They have filed a separate Memorandum in Support on behalf of James Adams, seeking the same relief [ECF 2607] and asking the Court to review a report that Adams created.

[26] ECF No. 2605, ¶ 5.

{00381007-4}

cannot itself request relief from the automatic stay on behalf of any creditor; only the creditor can request such relief.[27]

## Law and Argument

### A.  The Stay Prohibits the Requested Limited Relief as to the Apostolates.

31.      In this case, the Archdiocese and the Apostolates are named insureds under the Policies.  As of August 15, 2023, approximately 500 General and Sexual Abuse Proofs of Claim for tort damages had been filed in this Bankruptcy Case.  Because of the sheer number of claims, it is likely that these claims will exceed the policy limits.  That eventuality, in turn, threatens the Debtor's estate.  In *OGA Charters,* the Fifth Circuit held that "[i]n the 'limited circumstances'… where a siege of tort claimants threaten[s] the debtor's estate over and above the policy limits, we classify the proceeds as property of the estate."[28]  The rationale, quoted with approval by the Fifth Circuit from 3 Collier on Bankruptcy ¶ 362.03 (16th ed.), is that:

> When there are multiple claimants to the policy proceeds, the court should be able to oversee the allocation of the proceeds among claimants.  Although policy proceeds are not available to all creditors, and in that sense are different from other property of the estate, they may be available to a class of creditors whose claims are covered by insurance, and may be insufficient to satisfy that class fully.  In such a case, oversight by the court is necessary to assure an equitable distribution of the available assets.[29]

As the Court further observed:

> A holding to the contrary would 'prevent [the] bankruptcy court from marshalling the insurance proceeds, and along with the other assets, arranging for their distribution so as to maximize their ability both to satisfy legitimate creditor claims and to preserve the debtor's estate.'[30]

---

[27] Exhibit 2611-1, p. 44:7-9.
[28] 901 F.3d at 604.
[29] 901 F.3d at 604.
[30] 901 F.3d at 604-05, quoting *Tringali v. Hathaway Mach. Co.,* 796 F.2d 553, 560 (1st Cir. 1986) (Breyer, J.).

32.     Indeed, Judge Ashe has held in the Ralph Roe Case that the proceeds of the Policies in *this* case are property of the estate.[31]  Accordingly, the filing of petitions/complaints by Movants against the Apostolates in non-bankruptcy courts is prohibited under § 362(a)(3).

**B.  The Court May not Lift the Stay as to Parties not Before the Court**

33.     The Opt-In Requests cannot be granted because only a party who comes before the bankruptcy court is entitled to relief from the stay on a proper showing of cause.  Section 362(d) requires that a request to lift the stay be filed by "a party in interest."  There has been no showing that any party in interest other than the 27 Movants has requested any relief from the stay.  It is improper for the Court to grant such relief through any "opt-in" procedure to unknown and/or unidentified parties not before the Court.  Counsel for the Committee has acknowledged that the Committee cannot file motions to lift the stay, which have to be filed by a creditor.[32]  The Court's Scheduling Order [ECF No. 2467, as amended by ECF 2478] precludes the filing of partial lift-stay motions through any "opt-in."  The Scheduling Order provides that:

> Any ***party*** who wishes to file a Partial Lift-Stay Motion to be heard by this Court…shall file such motion with this Court no later than Tuesday October 17, 2023.  The Partial Lift-Stay Motion must identify:  (a) the name of the claimant (which name may be filed under seal without the need for filing a separate motion to seal…provided that the name is disclosed to counsel for the Debtor, the Apostolates, and the Committee, who agree to maintain the confidentiality of that information….A lawyer, law firm, or group of lawyers representing more than one claimant may include ***only one client*** in any Partial Lift-Stay Motion. [ECF No. 2467, ¶ 1 (emphasis added)].

34.     Further, as this Court noted at the August 15, 2023 Hearing, there is no way to enforce any "opt-in" procedure in that none of the Court, the Debtor, the Apostolates or the

---

[31] EDLA No. 20-1829, R. Doc. 20, p. 8.  Movants, in fact, acknowledge that the Policies and their proceeds are property of the estate and stay applies to post-petition actions against non-debtor third parties that are also covered by the debtor's liability insurance policy.  See *e.g.*, ECF No. 2538 Motion of B.L., ¶s 18-20.  The Committee's citation to *In re Rockville Ctr.,* 651 B.R. 622, 644 (Bankr. S.D.N.Y. 2023) is misplaced since the partial lift-stay requests there were limited to claims that did not impact shared insurance proceeds and even if that were not the case, the opinion would be contrary to Fifth Circuit precedent as announced in *OGA Charters.*
[32] Exhibit 2611-1, p. 44:7-9.

Committee can force anyone to file an action or a proof of claim.[33] Potential claimants have already been notified through the Bar Date Notice procedures that they needed to file their Sexual Abuse Proofs of Claim by the Sexual Abuse Proof of Claim Bar Date, but they have apparently elected for whatever reason  not to file a proof of claim or file a Motion to Lift the Automatic Stay in connection with the process approved by the Court.  The Committee has been unsuccessful in convincing  the attorneys for these claimants to file motions for limited relief from the stay.  The Committee's efforts   only resulted in the filing of the Motions by the 27 Movants that have already filed Sexual Abuse Proofs of Claim.  No new parties have been brought to the table.  The Opt-In Procedure, if it could be implemented, which is denied, would resolve nothing and in that regard, would be tantamount to the issuance of an advisory opinion, which the Court may not issue.[34]

### C.  The Committee's Joinder Exceeds its Authority.

35.      To the extent that the Committee's Joinder requests an Opt-In Procedure that is far broader than that requested by even the Movants, it exceeds its authority and the Committee lacks standing to assert such relief.   The Scheduling Order, as amended and supplemented, only allows the Committee to join in support of the relief that was actually requested by the Movants.  Here, the Committee would have this Court implement an open-ended Opt-In Procedure whereby all potential Sexual Abuse Claimants, whether represented by existing state law counsel or some other, as yet unidentified counsel, or whether appearing *pro se,* and whether having previously had filed a proof of claim or lawsuit, would be permitted to   "opt-in" to the Stay Order simply by emailing a "*Notice of Consent to be Bound by Stay Order*" on counsel for the Debtor, the Apostolates, the Insurers and the Committee.[35] No deadline is suggested for the serving of such "Opt-In Notices," and, in fact, the Committee would place the burden on the ***Debtor*** to file an

---

[33] Exhibit 2611-1, p. 63:2-9.
[34] See *In re Cubic Energy, Inc.,* 587 B.R. 849, 855 (Bankr. Del. 2018); *In re:  Trichilo,* 540 B.R. 547, 551 (Bankr. M.D. Pa. 2015).
[35] ECF No. 2605, p. 5, ¶ 1.

amended Exhibit A to the Stay Order every 60 days that identifies the parties who have served Opt-In Notices since the entry of the original Stay Order.[36] Thus, the window for potential Sexual Abuse claimants to "opt-in" would be open indefinitely.  Such a procedure would not advance the goal of identifying the universe of Sexual Abuse Claims so that the Debtor, the Apostolates and the Insurers can reach a fair settlement and confect and file a consensual plan. This suggestion/request by the Committee is burdensome and completely unworkable.

36.      In addition, the process suggested by the Committee lacks an enforcement mechanism for someone who still elects not to participate.  It was hoped that the warning in the Bar Date order would serve as an incentive for abuse claimants to come forward and assert their claim.  What makes the Committee believe that this new process would be any more successful than the first two processes that were employed?  The suggestion that the cost of filing a Motion to Lift the Stay is a deterrent lacks any credibility when the filing of proof of claim was a cost free process and the claimants did not come forward.

**D.  Movers have not Demonstrated Cause for the Requested Relief**

37.      Under  §  362(d)(1) the Court can grant relief from the stay for cause.   The Bankruptcy Code does not define "cause," which is determined on a case-by-case basis within the court's broad discretion.[37]   Bankruptcy courts have considered the following twelve (12) factors, as relevant to each case, to determine whether cause exists for modifying the stay:

> (1) whether the relief will result in a partial or complete resolution of the issues; (2) the lack of any connection with or interference with the bankruptcy case; (3) whether the foreign proceeding involves the debtor as a fiduciary; (4) whether a specialized tribunal has been established to hear the particular cause of action and that tribunal has the expertise to hear such cases; (5) whether the debtor's insurance carrier has assumed full financial responsibility for defending the litigation; (6) whether the action essentially involves third parties and the debtor functions only as a bailee or conduit for the goods or proceeds in question; (7)

---

[36] ECF No. 2605, p. 5, ¶ 3.
[37] See *In re Xenon Anesthesia of Tex., PLLC,* 510 B.R. 106, 112 (Bankr. S.D. Tex. 2014).

whether litigation in another forum would prejudice the interests of other creditors, the creditors' committee and other interested parties; (8) whether the judgment claim arising from the foreign action is subject to equitable subordination; (9) whether the movant's success in the foreign proceeding would result in a judicial lien avoidable by the debtor under Section 522(f); (10) the interest of judicial economy and the expeditious and economical determination of litigation for the parties; (11) whether the foreign proceedings have progressed to the point where the parties are prepared for trial; and (12) the impact of the stay on the parties and the balance of the harms. [38]

38.     Not all of the factors will apply to each case. Only the factors that are relevant to a particular case need be applied and there is no requirement that the factors be given equal weight.[39]

39.     Here, Movants have requested relief only to preserve prescription rights granted under the Revival Window. They argue that they will suffer great harm if the stay is not lifted to permit them to file the Proposed Actions in state (or federal) court. They further suggest that there will be no harm to the defendants if the requested relief is granted. In fact, however, Movants will suffer no harm if the stay remains in place. All of the Movants have filed Sexual Abuse Proofs of Claim, and they allege that the Archdiocese and an Apostolate are solidarily liable for their damages.

40.     Unless modified by the bankruptcy court, the automatic stay of an act against property of the estate under § 362(a) continues until such property is no longer property of the estate and the stay of any other act under § 362(a) continues until the earliest of the time the case is closed or the time the case is dismissed. Under Code Section 108, however, prescriptive periods are suspended during the pendency of the automatic stay.[40] Additionally, the Fifth Circuit has held that the filing of a proof of claim interrupts prescription under Louisiana law because the filing of a proof of claim provides adequate notice to the debtor that he may be liable for the debt

---

[38] See *In re Curtis*, 40 B.R. 795, 799-80 (Bankr. D. Utah 1984); *In re Sonnax Indus., Inc.*, 907 F.2d 1280, 1286 (2nd Cir. 1990); *In re Xenon Anesthesia of Tex., PLLC*, 510 B.R. at 112.

[39] *In re Project Orange Assocs., LLC*, 432 B.R. 89, 104 (Bankr. S.D.N.Y. 2010).

[40] *Bank of New York Mellon v. Oldemeyer*, 2019-348 (La. App. 3rd Cir. 10/9/19), 282 So.3d 1098, 1113.

represented by the proof of claim.[41]   The filing of a proof of claim also interrupts prescription against non-debtors that are solidarily liable with the debtor.[42]

41.     Furthermore, even if prescription were merely suspended, under § 108(c)(2), the Movants would have at least thirty (30) days from the date of notice of termination or expiration of the stay to file suit. The notice that State Court counsel would receive relative to a possible dismissal of the case is far longer since a dismissal can only occur after "notice and hearing." Movants are already represented by counsel and have already done the work necessary to assert a claim inasmuch as they have filed General and/or Sexual Abuse Proofs of Claim in this proceeding. Thus, there is no reason why they should not be able to file a suit in an appropriate non-bankruptcy court if for any reason their claims are not resolved through the confirmation of the Debtor's Plan of Reorganization and the case is dismissed.  The Movants will suffer no harm whatsoever if the stay is not lifted for the purposes requested.

### E.   If Limited Relief from the Stay is Granted, the Proposed Actions Should be Required to be Filed in Federal Court.

42.     Should this Court determine that Movers should be granted relief from the automatic stay for the limited purposes requested in their Motions, then the Apostolates request that they be required to file their suits in federal district court, rather than state court.  The Pre-Petition Sexual Abuse Cases are already pending in the district court for this district, and it is in the interest of judicial economy and reduction of costs (such as for removal) to have any additional actions filed in the same forum.

### <u>Conclusion</u>

For the reasons stated above, the Apostolates request that this Court deny the Motions for Limited Relief from Automatic Stay; or, alternatively, that if the Motions for Limited Relief from

---

[41] *Magee v. O'Connor,* 153 F.3d 258, 262 (1998).
[42] 153 F.3d at 262-63. La. Civ. Code art. 3503.

{00381007-4}

Automatic Stay are granted, they be granted only as to the Movants and that Movants be required to file any actions in federal court. The Apostolates further request all general relief.

Dated: November 3, 2023.

Respectfully submitted,

*/s/ Douglas S. Draper*
**Douglas S. Draper,** LA Bar No. 5073
ddraper@hellerdraper.com
**Leslie A. Collins**, LA Bar No. 14891
lcollins@hellerdraper.com
**Greta M. Brouphy**, LA Bar No. 26216
gbrouphy@hellerdraper.com
Michael E. Landis, LA Bar No. 36542
mlandis@hellerdraper.com
**Heller Draper & Horn, L.L.C.**
650 Poydras St. Ste. 2500
New Orleans, LA  70130
Telephone: 504.299.3300
Fax: 504.299.3399
**Counsel for the Apostolates**

## CERTIFICATE OF SERVICE

I, do herby certify that I caused the above and foregoing to be served on November 3rd, 2023, to all parties entitled to service via the Court's CM/ECF Electronic Notification System as follows:

- **Christine W. Adams**    cadams@deshazoadams.com
- **A. Brooke Watford Altazan**    baltazan@stewartrobbins.com, baltazan@ecf.courtdrive.com;kheard@stewartrobbins.com;kheard@ecf.courtdrive.com
- **William Harrell Arata**    aratalaw@bellsouth.net
- **William Harrell Arata**    billarata@aratalaw.net
- **David Winston Ardoin**    david@amotriallawyers.com, renee@amotriallawyers.com
- **Laura F. Ashley**    lashley@joneswalker.com, laura-ashley-4406@ecf.pacerpro.com
- **John Baay**    jbaay@glllaw.com, myoung@glllaw.com

- **Jerry Beatmann**    jay.beatmann@dentons.com,
  dee.mcgill@dentons.com;sam.alberts@dentons.com
- **Alicia M. Bendana**    abendana@lawla.com, rmichel@lawla.com;seaton@lawla.com
- **Jacques F. Bezou**    jbezou2@bezou.com, dhenderson@bezou.com;alexis@bezou.com
- **Richard A. Bordelon**    rbordelon@denechaudlaw.com
- **Derek T Braslow**    derek@kbaattorneys.com
- **Brandon A. Brown**    bbrown@stewartrobbins.com,
  bbrown@ecf.courtdrive.com;kheard@stewartrobbins.com;kheard@ecf.courtdrive.com
- **Joseph M. Bruno**    jbruno@brunobrunolaw.com, Don@brunobrunolaw.com
- **Steven Bryant**    steven.bryant@lockelord.com
- **Elwood F. Cahill**    ecahill@shergarner.com
- **Andrew William Caine**    acaine@pszjlaw.com
- **Deborah J Campbell**    deborah.campbell@dentons.com
- **Jamie Dodds Cangelosi**    jcangelosi@stewartrobbins.com,
  jcangelosi@ecf.courtdrive.com;kheard@stewartrobbins.com;kheard@ecf.courtdrive.com
- **Linda F Cantor**    lcantor@pszjlaw.com
- **Ryan J Cavanaugh**    ryan@constantllp.com
- **Desiree M. Charbonnet**    desi@charbonnetlawfirm.com
- **William G. Cherbonnier**    wgc@billcherbonnier.com, caludagroupllc@jubileebk.net
- **Everett J. Cygal**    ecygal@schiffhardin.com
- **Scott Edward Delacroix**    scottdelacroixlaw@gmail.com
- **John H. Denenea**    jdenenea@gmail.com, wdominguez@midcitylaw.com
- **Ross J. Donnes**    rdonnes@tcmlawoffice.com
- **Douglas S. Draper**    ddraper@hellerdraper.com, vgamble@hellerdraper.com
- **Christopher F Edmunds**    chrisedmundslaw@gmail.com
- **Frank Elliot**    frank@nfelaw.com
- **John Douglas Elrod**    elrodj@gtlaw.com
- **Joseph Mark Fisher**    mfisher@schiffhardin.com
- **Elizabeth J. Futrell**    efutrell@joneswalker.com, mmontiville@joneswalker.com;lisa-futrell-4186@ecf.pacerpro.com
- **Amanda Burnette George**    Amanda.B.George@usdoj.gov
- **Jeremy Gettes**    jgettes@chehardy.com
- **William P. Gibbens**    billy@semmlaw.com, terri@semmlaw.com
- **Soren Erik Gisleson**    sgisleson@hhkc.com, jchauvin@hhkc.com
- **Brodie Glenn**    bglenn@bradleyfirm.com
- **Alan H. Goodman**    alan.goodman@bswllp.com, moorek@bswllp.com
- **Rochelle Guiton**    rochelle@dmillerlaw.com
- **Stephen Haedicke**    stephen@haedickelaw.com
- **Jan Marie Hayden**    jhayden@bakerdonelson.com,
  ptorres@bakerdonelson.com;jmclemore@bakerdonelson.com
- **Ashley J. Heilprin**    ashley.heilprin@phelps.com
- **Evan Park Howell**    ehowell@ephlaw.com
- **Stephen Michael Huber**    stephen@huberthomaslaw.com
- **Sara Hunkler**    shunkler@ruggerilaw.com
- **Amelia L. Hurt**    amelia.hurt@kellyhart.com

- **Wayne J. Jablonowski**   wjjlaw@bellsouth.net
- **Annette W Jarvis**   jarvisa@gtlaw.com
- **Lillian Jordan**   ljordan@donlinrecano.com, rmapa@donlinrecano.com;nefrecipients@donlinrecano.com;jestrada@donlinrecano.com
- **Benjamin Kadden**   bkadden@lawla.com, mnguyen@lawla.com
- **Allison Kingsmill**   akingsmill@joneswalker.com
- **Bradley C. Knapp**   bknapp@lockelord.com, AutoDocket@LockeLord.com
- **Dylan K. Knoll**   dknoll@denechaudlaw.com
- **Omer F. Kuebel**   rkuebel@lockelord.com, Yamille.Harrison@lockelord.com
- **Heather A. LaSalle**   halexis@hinshawlaw.com, lgraff@mcglinchey.com
- **Frank E. Lamothe**   felamothe@lamothefirm.com
- **Julien Guy Lamothe**   jlamothe@lamothefirm.com
- **Mark C. Landry**   mlandry@newmanmathis.com
- **Darryl T. Landwehr**   dtlandwehr@att.net, dtlandwehr@gmail.com
- **Mary S. Langston**   Mary.Langston@usdoj.gov
- **Joseph J Lowenthal**   jlowenthal@joneswalker.com
- **Ryan Luminais**   rluminais@shergarner.com
- **Thomas J. Madigan**   tmadigan@shergarner.com
- **Wayne A. Maiorana**   tmaiorana@newmanmathis.com
- **Wilson Lewis Maloz**   wmaloz@lpwsl.com
- **Robert A. Mathis**   rmathis@newmanmathis.com
- **Donald Andrew Mau**   dmau@meliaslaw.com
- **Patrick Maxcy**   patrick.maxcy@dentons.com
- **Collin Roy Melancon**   collin@mmcdlaw.com
- **Gerald Edward Meunier**   gmeunier@gainsben.com, dmartin@gainsben.com
- **Daniel Adam Meyer**   dmeyer@sssfirm.com
- **Allen C. Miller**   allen.miller@phelps.com
- **Mark Mintz**   mmintz@joneswalker.com, mark-mintz-4822@ecf.pacerpro.com
- **Jack E Morris**   jem@jemorrislaw.com
- **M. Keith Moskowitz**   keith.moskowitz@dentons.com
- **Kathryn Munson**   kwm@stanleyreuter.com
- **Colleen A Murphy**   murphyc@gtlaw.com
- **Brandon Naquin**   ban@stanleyreuter.com
- **Samantha Oppenheim**   soppenheim@joneswalker.com, samantha-oppenheim-7970@ecf.pacerpro.com
- **Swati Parashar**   sparashar@joneswalker.com
- **Dwight C Paulsen**   tpaulsen@bradleyfirm.com
- **Felecia Y Peavy**   felepeavy@juno.com
- **Nancy Peterman**   petermann@gtlaw.com
- **William S. Robbins**   wrobbins@stewartrobbins.com, wrobbins@ecf.courtdrive.com;kheard@stewartrobbins.com;kheard@ecf.courtdrive.com
- **Craig Robinson**   craig@rlolegal.com
- **Lacey E Rochester**   lrochester@bakerdonelson.com, jbowers@bakerdonelson.com;jmclemore@bakerdonelson.com
- **Nicholas Rockforte**   nicholas@onmyside.com

- **Keith A. Rodriguez**   Krodriguez@keithrodriguez.com
- **Samuel M. Rosamond**   srosamond@twpdlaw.com, jgreen@twpdlaw.com
- **Richard A Rozanski**   richard@rarlaw.net
- **David Rubin**   David.Rubin@butlersnow.com
- **Tancred Schiavoni**   tschiavoni@omm.com, nrivera@omm.com
- **Logan E. Schonekas**   logan@huberthomaslaw.com
- **Glenn K. Schreiber**   glenn.schreiber@usdoj.gov, bonnie.bodenheimer@usdoj.gov;caseview.ecf@usdoj.gov;Vanessa.brown@usdoj.gov
- **Kristi Schubert**   kschubert@lamothefirm.com
- **Stephen P. Scullin**   scullin@carverdarden.com, baradell@carverdarden.com
- **Peter James Segrist**   segrist@carverdarden.com, clary@carverdarden.com
- **Ryan Seidemann**   seidemannr@ag.louisiana.gov
- **Patrick M. Shelby**   patrick.shelby@phelps.com, michaela.boudreaux@phelps.com
- **Nicholas Smeltz**   nsmeltz@stewartrobbins.com, nsmeltz@ecf.courtdrive.com;kheard@stewartrobbins;kheard@ecf.courtdrive.com
- **David M Spector**   dspector@schiffhardin.com
- **Richard C. Stanley**   rcs@stanleyreuter.com
- **Paul Maury Sterbcow**   sterbcow@lksalaw.com
- **Roger Stetter**   rastetter47@yahoo.com
- **Paul Douglas Stewart**   dstewart@stewartrobbins.com, dstewart@ecf.courtdrive.com;kheard@stewartrobbins.com;kheard@ecf.courtdrive.com
- **Kaylin Storey**   kstorey@truittlaw.com
- **Jameson M. Taylor**   jameson@voorhieslaw.com, germaine@voorhieslaw.com
- **Reagan Charleston Thomas**   rthomas@awkolaw.com
- **Jefferson R. Tillery**   jtillery@joneswalker.com
- **Richard Trahant**   trahant@trahantlawoffice.com
- **Jack E Truitt**   btruitt@truittlaw.com, jwertz@truittlaw.com
- **Office of the U.S. Trustee**   USTPRegion05.NR.ECF@usdoj.gov
- **R. Patrick Vance**   pvance@joneswalker.com, nwiebelt@joneswalker.com;patrick-vance-7526@ecf.pacerpro.com
- **Richard P Voorhies**   Richard@voorhieslaw.com, tosha@voorhieslaw.com
- **David F. Waguespack**   waguespack@carverdarden.com, docket@carverdarden.com;plaisance@carverdarden.com
- **David E. Walle**   dwalle@bfrob.com, aadams@bfrob.com
- **John W. Waters**   jwaters@bfrob.com, aadams@bfrob.com
- **Michael Watson**   mwatson@michaelcwatson.com
- **Regina Wedig**   reginawedig@wediglaw.com, rswedig@hotmail.com
- **Edward Dirk Wegmann**   dwegmann@joneswalker.com
- **Joshua D Weinberg**   jweinberg@ruggerilaw.com
- **Brittany Rose Wolf-Freedman**   bwolf@gainsben.com, sburrell@gainsben.com
- **Wayne George Zeringue**   wzeringue@joneswalker.com
- **Michael S. Zerlin**   mzerlin@netscape.net

I, also do hereby certify that I caused a true and correct copy of the foregoing Objection to be served on November 3, 2023 by First Class U. S. Mail postage prepaid on all other parties requiring service under the Court's Ex Parte Order Authorizing the Debtor to Limit Notice and Establishing Notice Procedures [ECF #22], to be sent by Docusource.

*/s/Douglas S. Draper*
Douglas S. Draper