## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re: | * | Case No.  20-10846 |
| | * | |
| THE ROMAN CATHOLIC CHURCH | * | Section "A" |
| FOR THE ARCHDIOCESE OF NEW ORLEANS, | * | |
| | * | Chapter 11 |
| Debtor. | * | |

## THE OBJECTING INSURERS' OMNIBUS
## OBJECTION TO LIFT STAY MOTIONS

JOHN E.W. BAAY II (22928)
**GIEGER, LABORDE & LAPEROUSE,
L.L.C**.
Hancock Whitney Center
701 Poydras Street, Suite 4800
New Orleans, Louisiana 70139
Telephone: (504) 561-0400

TANCRED V. SCHIAVONI (*pro hac vice*)
**O'MELVENY & MYERS LLP**
Times Square Tower
7 Times Square
New York, NY 10036
Telephone: (212) 326-2000
Email: tschiavoni@omm.com

-and-

EMMA L. JONES (*pro hac vice*)
2501 N. Harwood St., Suite 1700
Dallas, TX 75201
Telephone: (972) 360-1900
Email: eljones@omm.com

*Counsel for United States Fire Insurance
Company and International Insurance Company*

TABLE OF CONTENTS

I.     PRELIMINARY STATEMENT ................................................................................. 1

II.    BACKGROUND ................................................................................................... 4

       A.    The Prior Denials of Motions to Lift the Automatic Stay. .................................. 4

       B.    The Bankruptcy Court Establishes a March 1, 2021 Bar Date and Denies
             the Tort Committee's Subsequent Request to Reopen it. ...................................... 6

       C.    The Debtor and Tort Committee Mediate, with Little Information Flow or
             Negotiation with the Insurers. ................................................................................ 8

       D.    Years Post-Petition, the Debtor and Tort Committee Decline to
             Meaningfully Engage with the Insurers. ................................................................ 9

       E.    Plaintiffs' Firms Purporting to Represent Various Abuse Claimants,
             Supported by the Tort Committee, Take a Third Bite at the Apple: Filing
             Lift Stay Motions Years After the Bar Date. ...................................................... 10

III.   ARGUMENT & AUTHORITIES ........................................................................ 11

       A.    The Lift Stay Motions Are an Attempt to Circumvent the Bar Date, Which
             This Court Previously Denied. .............................................................................. 11

       B.    The Sonnax Factors Do Not Support the Court's Approval of the Relief
             Sought in the Lift Stay Motions. .......................................................................... 15

             i.     Sonnax Factors 1, 2, 4, 5, 6, 7, 10, 11 and 12 Weigh Against
                    Granting Stay Relief Here. ......................................................................... 16

                    (1) Relief will not result in resolution of any issue. ................................. 17

                    (2) Opening the floodgates to new lawsuits will interfere with the
                        bankruptcy case. .............................................................................. 17

                    (3) No other court has established expertise to hear any of the
                        causes of action, as none of the Movants' cases have been
                        filed yet. .......................................................................................... 18

                    (4) The parishes did not purchase policies for all claims, and
                        coverage issues abound. .................................................................. 18

                    (5) The actions do not primarily involve third parties. ........................... 19

                    (6) Litigation in other forums will prejudice the interests of
                        creditors. .......................................................................................... 19

                    (7) The interests of judicial economy and the expeditious and
                        economical resolution of litigation will be undermined. ............. 20

                    (8) The parties are not ready for trial in any other proceeding. ............... 20

                    (9) Impact of the stay on the parties and the balance of harms
                        weigh against partial relief from stay. ............................................ 20

             ii.    Sonnax Factors 3, 8 and 9 Are Inapplicable or Neutral at Best. ............. 21

TABLE OF CONTENTS
(continued)

C.      The Movants Seek to Deploy the Automatic Stay as Both a Sword and a Shield Rendering the Relief Sought Improper As a Matter of Law ............. **Error! Bookmark not defined.**

IV.     CONCLUSION ............................................................................................................ 23

TABLE OF AUTHORITIES

**<u>Cases</u>**

*B. Bennett v. S.C. Ins. Co.*,
  692 So. 2d 1258 (La. Ct. App. 1997) ................................................................. 22

*Browning v. Navarro*,
  743 F.2d 1069 (5th Cir. 1984) ......................................................................... 11

*In re A. H. Robins Co.*,
  828 F.2d 1023 (4th Cir. 1987) ......................................................................... 11

*In re Best Products Co., Inc.*,
  140 B.R. 353 (Bankr. S.D.N.Y. 1992) ............................................................. 14

*In re Campbell*,
  No. 01-45325-DML-13 (Bankr. N.D. Tex. June 20, 2002) ............................... 11

*In re Kowalsky*,
  235 B.R. 590 (Bankr. E.D. Tex. 1999) ............................................................. 15

*In re Leblanc*,
  No. 20-11412, 2020 Bankr. LEXIS 3167 (Bankr. E.D. La. Nov. 10, 2020) ........... 15, 16

*In re Louisiana World Exposition, Inc.*,
  832 F.2d 1391 (5th Cir. 1987) ......................................................................... 15

*In re New Century TRS Holdings, Inc.*,
  465 B.R. 38 (Bankr. D. Del. 2012) ................................................................... 14

*In re Pioneer Commercial Funding Corp.*,
  114 B.R. 45 (Bankr. S.D.N.Y. 1990) ............................................................... 11

*In re Residential Capital*,
  No. 12-12020 (MG), 2012 Bankr. LEXIS 3624 (Bankr. S.D.N.Y. Aug. 7, 2012) ......... 16

*In re Sacred Heart Hosp.*,
  182 B.R. 413 (Bankr. E.D. Pa. 1995) ............................................................... 15

*In re Sonnax Indus., Inc.*,
  907 F.2d 1280 (2d Cir. 1990) ......................................................................... 15

*In re The Archdiocese of Saint Paul and Minneapolis*,
  Case No. 15-30125 (Bankr. D. Minn., Apr. 17, 2015) ...................................... 13

*In re The Diocese of Rochester*,
  Case No. 19-20905-PRW (Bankr. W.D.N.Y. July 29, 2020) ............................. 13

*In re The Roman Catholic Diocese of Syracuse*,
  Case No. 20-30663 (Bankr. N.D.N.Y. Nov. 6, 2020) ................................... 13, 14

TABLE OF AUTHORITIES
(continued)

*In re UTEX Communs. Corp.*,
457 B.R. 549 (Bankr. W.D. Tex. 2011) ................................................................. 17

*Morgan v. Golden Rule Ins. Co.*,
568 So. 2d 184 (La. Ct. App. 1990) ...................................................................... 21

*River Parishes Dirt & Gravel, LLC v. BankPlus (In re Willow Bend Ventures, LLC)*,
603 B.R. 293 (Bankr. E.D. La. 2019) ................................................................... 12

*Sternberg v. Johnston*,
582 F.3d 1114 (9th Cir. 2009) ............................................................................ 11

*Unsecured Creditors Disbursement Comm. v. Antill Pipeline Constr. Co., Inc.*,
300 F.3d 614 (5th Cir. 2002) .............................................................................. 15

## **Statutes**

11 U.S.C. § 108(c) .................................................................................................. 10

11 U.S.C. § 362(a)(1) ............................................................................................... 11

11 U.S.C. § 362(a)(3) ............................................................................................... 11

2021 La. Act 322 ..................................................................................................... 12

The Objecting Insurers[1] object to the lift stay motions[2] filed by various plaintiffs (the "Movants") and the omnibus briefs in support filed by the Official Committee of Unsecured Creditors (the "Committee" or "Tort Committee")[3] and certain abuse claimants.[4]  In support of this Objection, the Objecting Insurers respectfully state:

## I.    PRELIMINARY STATEMENT[5]

1.    If the Lift Stay Motions are granted, even partially, doing so will open the floodgates for an enormous number of dubious time-barred claims to be filed, making this already extraordinarily difficult case to resolve impossible to resolve.  The Tort Committee will lose the ability to reach comprehensive settlements on behalf of all creditors as the select plaintiffs' firms that are granted stay relief will now exercise a veto over settlement and seek disparate treatment of their favored clients over all other similarly-situated claimants. The complaints will spark a cascade of claims objections, corresponding coverage actions and motions for discovery to preserve evidence.  Plaintiffs' firms who are granted license to lift stay for all presently unnamed clients and clients that they can recruit in future, will turn their attention to that alone.  Disputes

---

[1] The Objecting Insurers are listed in the signature block to this Objection.

[2] Hereinafter referred to as the Lift Stay Motions, which include pleadings filed at ECF Nos. 2512, 2537, 2538, 2542, 2544, 2545, 2547, 2550, 2552, 2554, 2556, 2558, 2560, 2562, 2564, 2566, 2568, 2570, 2571, 2573, 2574, 2575 and 2578-83 in the above-captioned case. It is unclear whether ECF No. 2545 amends and replaces ECF No. 2537; however, both appear to be filed on behalf of the same abuse claimant, "G.A. Doe."

[3] *Official Committee of Unsecured Creditors' Joinder in Motions for Limited Relief From the Automatic Stay Filed on Behalf of Sexual Abuse Survivors* [ECF No. 2605] (the "TCC Joinder").

[4] *Memorandum in Support of Motions for Limited Relief From the Automatic Stay Filed on Behalf of Sexual Abuse Survivor (11 U.S.C. § 362(d)(1)) Rec. Docs. 2570 and 2571* [ECF No. 2604] ("Claimants' Brief"). Notably, Claimants' Brief is devoid of any supporting legal authority, nor identifies by name any contemplated defendant insurance companies. *See also Memorandum in Support of Motions for Limited Relief From the Automatic Stay Filed on Behalf of James Adams* (11 U.S.C. § 362(d)(1) Rec. Docs. 2570 and 2571) [ECF No. 2607].

[5] Capitalized terms used but not otherwise defined in the Preliminary Statement shall have the meanings ascribed to them in this Objection, as later defined.

will multiply, administrative costs will skyrocket, multi-party engagement ethics conflicts will worsen, and whatever hope there was of formulating a plan will disappear along with the cash in the estate.

2.      The Lift Stay Motions are a blatant effort to circumvent the Bar Date Order. The Court previously denied essentially the same request for relief.  It should do so again. Squarely in dispute is the Diocese's liability for the abuse claims. Two Lift Stay motions *solely* seek to file complaints against the Diocese and not third parties. And any claims against the parishes by definition implicate the Debtor as the relief the Debtor seeks through Chapter 11 is premised on all the claims being derivative of its liability.

3.      The Movants contend the Lift Stay Motions are necessary to ensure that abuse claimants are able to file complaints before the "revival window" expires on June 14, 2024.  But this is not the case.  As the Movants acknowledge, Bankruptcy Code section 108(c) provides claimants 30 days to file complaints should this case be dismissed.  Here, however, all of the Lift Stay Motions allege that the current proponents have filed proofs of claim.[6]  Thus, the utility of the Lift Stay Motions is utterly lacking.

4.      The Lift Stay Motions, however, all contemplate that current *and unidentified future* clients of the Movants may benefit from the Movants' requested relief.  This, in addition to the Movants' (i) failure to identify proof of claim numbers in the vast majority of Lift Stay Motions and affirmatively state whether claims in at least ten Lift Stay Motions were timely filed, and (ii) broad-sweeping request to lift the automatic stay *years* after the Bar Date demonstrate the Lift

---

[6] Only four of the Motions actually identify the claimant or claim number for such claims. *See* ECF Nos. 2512, 2568, 2570 and 2571.

Stay Motions' true purpose: Another attempt to circumvent the Bar Date. Consistent with prior rulings on this exact issue, the Court should deny the Movants' request.

5.  Recently, the *Diocese of Syracuse* bankruptcy court faced a very similar issue to the Movants' requested relief. In that case, various plaintiffs' firms filed lift stay motions in order to serve demand letters on the debtor's insurers. In its oral ruling denying the claimants' requests, the *Syracuse* court recognized the balance of harms weighed in favor of denying the lift stay motions years post-petition in that case: "[N]ot only would the estate accrue administrative expenses in cooperating with their insurance companies, but in many instances, the attorneys' fees from the insurance companies are decreasing the funds available under the policies."[7]

6.  To be sure, if the Movants and the Tort Committee were interested in a global resolution in this case as they contend, then mediation ***with the insurers' welcomed, active involvement*** would be the obvious solution. But to date, the Objecting Insurers have not received any copies of a draft Chapter 11 plan or term sheet and have been boxed out of any plan discussions. As such, the reason for the Movants' requested relief from automatic stay cannot be to further the goal of case resolution.

7.  The Lift Stay Motions should also be denied because the Movants improperly seek to deploy the automatic stay as both a sword and a shield. The Movants ask for an order that gives them the benefit of relief from stay to file complaints against the Objecting Insurers and at the same time seek to deploy the automatic stay to shield denying the Objecting Insurers' the right to investigate the claims and defend themselves. While the remedy for this is to deny the Motion, if the Court is inclined to grant the Movants' requested relief, it could only do so by also lifting the

---

[7] *Declaration of Emma L. Jones in Support of United States Fire Insurance Company's and International Insurance Company's Omnibus Objection to Lift Stay Motions* ("Jones Declaration"), Exh. 1 at [50: 24-25, 51: 1-3].

automatic stay to allow the Objecting Insurers to take discovery and file responsive pleadings, if necessary, in the Movants' non-bankruptcy actions to preserve evidence as they otherwise would be permitted to pre-petition.

8.      For all these reasons, and the reasons below, the Lift Stay Motions should be denied in their entirety. If, however, the Court is inclined to grant the Lift Stay Motions, the Objecting Insurers respectfully submit that the automatic stay must, in accordance with foundational principles of fairness and equity, be lifted ***fully*** with respect to the Movants' abuse claims.

## II.      BACKGROUND

### A.  The Prior Denials of Motions to Lift the Automatic Stay.

10.     The Movants' attempt to circumvent this bankruptcy process and the Bar Date is not new.  On September 9, 2020, a plaintiffs' firm filed several lift stay motions on behalf of tort claimants, seeking to lift the automatic stay to permit their claims to proceed in state court against the Debtor and other non-debtor defendants, including one of the Debtor's primary insurance carriers.[8]  Various parties-in-interest, including the Debtor,[9] certain insurers,[10] the apostolates[11] and one commercial creditor,[12] filed objections to these Initial Lift Stay Motions.  The Committee previously objected to certain lift stay motions filed by personal injury claimants on the basis that

---

[8] *See Sexual Abuse Survivor J.W. Doe's Motion to Lift Stay* [ECF No. 378]; *Sexual Abuse Survivor's James Doe's Motion to Lift Stay* [ECF No. 380] (collectively, the "Initial Lift Stay Motions").

[9] *See Debtor's Omnibus Objection to: (1) Sexual Abuse Survivor J.W. Doe's Motion to Lift Stay; and (2) Sexual Abuse Survivor James Doe's Motion to Lift Stay* [ECF No. 439].

[10] *See Catholic Mutual's Response in Opposition to James Doe's and JW Doe's Motions for Relief From Stay* [ECF No. 440]; *Employers' Liability's Joinder to Debtor's and Catholic Mutual's Objections to Motions to Lift Stay* [ECF No. 441].

[11] *See Opposition to (1) Sexual Abuse Survivor J.W. Doe's Motion to Lift Stay; and (2) Sexual Abuse Survivor James Doe's Motion to Lift Stay* [ECF No. 446].

[12] *See Omnibus Objection of TMI Trust Company to James and J.W. Doe's Motions to Lift Stay* [ECF No. 447]. TMI Trust Company, a bond trustee, who sat on the Committee at the time, filed its own objection to the Initial Lift Stay Motions because the Committee would not do so. *See id.*

granting such relief "could favor certain early-moving creditors by diminishing or exhausting available insurance coverage that may be available to all personal injury claimants,"[13] but instead filed a brief response noting sheepishly, without explanation, "the same concern may not be an issue for the claims at issue in the [Initial] Lift Stay Motions."[14]

11.     At the hearing on the Initial Lift Stay Motions on September 30, 2020, the Court aptly noted the balance of harms weighed against lifting of the stay in favor of the abuse claimants: This Chapter 11 Case "is not just an abuse case," and other creditors are not served by lifting of the stay.[15]  The Court also acknowledged it "[was] not willing to allow the debtor take the risk of incurring . . . cost out of the estate and away from all other creditors . . . " in rendering its decision in light of the uncertainty surrounding insurance coverage.[16]  The Court recognized the finality of the forthcoming bar date, "which will allow all of the parties to know the *entire universe* of claims against the estate and, [on] March 1st [2021], we're going to know *exactly* what we're dealing with . . . ."[17]

12.     The Court subsequently entered an order denying the Movants' request to lift the automatic stay, reserving judgment on the Movants' alternative request for limited relief from the

---

[13] *See Objection of the Official Committee of Unsecured Creditors to Motion for Relief From the Automatic Stay* [ECF No. 343] at ¶ 4.

[14] *See Omnibus Response of the Official Committee of Unsecured Creditors to: (1) Sexual Abuse Survivor J.W. Doe's Motion to Lift Stay; and (2) Sexual Abuse Survivor James Doe's Motion to Lift Stay* [ECF No. 450] at ¶¶ 1-2.

[15] Jones Declaration, Exh. 2 at [63:4-15]:

THE COURT: . . . The abuse claimants are not the only ones to assert claims against this debtor. . . . Lifting the stay . . . with no clear benefit to other creditors of the estate, in my opinion . . . would greatly prejudice all other creditors, whether they're traditional commercial creditors or they're sexual abuse claimants.

[16] *Id.* at [62:2-14].

[17] *Id.* at [63:18-25, 64:1-3] (emphasis added).

5

automatic stay to engage in limited discovery.[18] After requesting additional briefing from the Movants, a non-debtor defendant priest and Debtor on this issue,[19] the Court held a follow-up hearing on October 20, 2020.  Following that hearing, the Court took the matter under advisement but later issued an a decision declining to extend the automatic stay to the non-debtor defendant priests and authorizing limited written discovery and depositions of such defendants.[20]

**B.  The Bankruptcy Court Establishes a March 1, 2021 Bar Date and Denies the Tort Committee's Subsequent Request to Reopen it.**

13.     Pursuant to the *Order Fixing Time for Filing Proofs of Claims; Approving Proof of Claim Forms; Providing for Confidentiality Protocols; and Approving Form and Manner of Notice* [ECF No. 461] (the "Bar Date Order"), the Court set **March 1, 2021, at 5:00 p.m. (CST)** as the deadline for filing proofs of claim predicated on allegations of sexual abuse (the "Bar Date").

14.     Since that time, the Tort Committee has attempted to re-open the Bar Date for the same reason raised by the Movants, *e.g.*, Louisiana's June 14, 2021 change in law removing the prescription for certain abuse claims.[21]  Through that motion, the Tort Committee asserted, among other things, that "the June 2021 legislation is a significant change in law and circumstances," and such change took place "after the March 1, 2021 abuse claims bar date."[22]  The Commercial

---

[18] *See Order* [ECF No. 460].

[19] *See Response and Opposition Memorandum of Paul Calamari* [ECF No. 492]; *Sexual Abuse Survivors James Doe & J.W. Doe's Consolidated Supplemental Memorandum in Support of Motions to Lift Stay* [ECF No. 493]; *Debtor's Supplemental Memorandum of Law Regarding: (1) Sexual Abuse Survivor J.W. Doe's Motion to Lift Stay; and (2) Sexual Abuse Survivor James Doe's Motion to Lift Stay* [ECF No. 496].

[20] *See Order and Reasons* [ECF No. 528].

[21] *See Official Committee of Unsecured Creditors' Motion for Order Reopening Abuse Claims Bar Date for Additional 60-Day Period* [ECF No. 927] (the "Tort Committee's Motion to Reopen") filed July 1, 2021.

[22] Tort Committee's Motion to Reopen at ¶ 2.

Committee,[23] Debtor[24] and apostolates[25] all filed briefs in opposition to this effort.  The Court, however, properly denied the Tort Committee's request.[26] Indeed, during the July 22, 2021 hearing on the merits, the Court "[was] not convinced that the recent action taken by the Louisiana State Legislature regarding the prescription really changes the nature of the claims in light of the notice provisions [of the Bar Date Order]."[27]  The Court elaborated that:

> The bar date order and exhibits setting forth the form and manner and timing of the notice . . . are very clear.  They tell folks that 'You need to file a proof of claim regardless of whether you think there are any defenses to that claim.  Regardless of how old you are right now, come and file the proof of claim.'  This is the opportunity.[28]

15.     This Court has already refused to extend the Bar Date.  Although certain abuse claimants have moved for relief from the Court to permit late-filed abuse claims, these pleadings—and any resulting stipulations—reflect that any late-filed abuse proof of claim remains subject to all parties-in-interests' rights to object to such claims, including for the reasons that they were filed after the Bar Date.[29]

---

[23] *The Official Committee of Unsecured Commercial Creditors' Objection to Motion for Order Reopening Abuse Claims Bar Date For Additional 60-Day Period [P-927]* [ECF No. 935].

[24] *Debtor's Objection to Official Committee of Unsecured Creditors' Motion for Order Reopening Abuse Claims Bar Date For Additional 60-Day Period* [ECF No. 938].

[25] *Memorandum in Opposition to the Official Committee of Unsecured Creditors' Motion for Order Reopening Abuse Claims Bar Date for Additional 60-Day Period* [ECF No. 939].

[26] *See Order* [ECF No. 1021] entered August 19, 2021.

[27] Jones Declaration, Exh. 3 at [31:17-20].

[28] *Id.* at [30:19-25, 31:1-2].

[29] *See, e.g., Omnibus Joint Stipulation Concerning K.L.K., S.M.J., J.L.S., and M.N.S.'s Motions for Leave to File Sexual Abuse Survivor Proofs of Claim* [ECF No. 2468].

**C. The Debtor and Tort Committee Mediate, with Little Information Flow or Negotiation with the Insurers.**

16.     The Court granted the Joint Mediation Motion by order on September 15, 2021 (the "Mediation Order")[30] and appointed United States Bankruptcy Judge Gregg W. Zive as mediator in the Chapter 11 Case.  The Court has since extended its Mediation Order several times.[31]

17.     The insurers have been excluded by the Debtor and Tort Committee from all communications about the formulation of a plan of reorganization.  No term sheets or draft plan documents have been shared with the Objecting Insurers.  While the Debtor and Tort Committee counsel note that they had prior "discussions" with the insurance carriers,[32] the insurers have been locked out of all communications about a plan of reorganization and no term sheets or drafts shared with them.

18.     On August 29, 2023, U.S. Fire Insurance Company ("U.S. Fire") and International Insurance Company ("International") filed a statement in response to the report provided by the Debtor and Tort Committee at the August 15 status conference pointing out that they have been locked out of plan negotiations.[33]  U.S. Fire and International discussed their desire to play a meaningful role in efforts directed towards reaching consensual plan but noted neither the Debtor nor Tort Committee had shared any draft plan or term sheets with them, nor with any other insurer to their knowledge.  *See id.*

---

[30] *Order Granting Joint Motion to Appoint Mediator* [ECF No. 1058].

[31] *See* ECF Nos. 1322, 1747, 2107 and 2443.

[32] Jones Declaration, Exh. 4 at [69, 70:1-17].

[33] *United States Fire Insurance Company and International Insurance Company's Statement in Response to Debtor's and Official Committee of Unsecured Creditors' August 15, 2023 Status Conference Report* [ECF No. 2452].

**D.  Years Post-Petition, the Debtor and Tort Committee Decline to Meaningfully Engage with the Insurers.**

19.      On August 30, 2023, the Court held a further status conference to discuss the Debtor's and Committee's contemplated procedure for the Lift Stay Motions.  During the parties' discussion, the Court asked whether the Debtor's insurers would be named defendants in the forthcoming complaints and if so, whether the Debtor or Tort Committee had included them in their discussions:

> THE COURT: Are the insurers also gonna be named? Like, do you have any idea? So it's gonna be, you know, we're a direct action state. So are the insurers involved in these discussions regarding this, this potential -- I mean, you've got Mr. Draper here who, ostensibly, represents apostolates, 24 non-debtor affiliates. We've got Mr. Mintz. Do we have a spokesperson that's gonna speak to this issue on behalf of the insurers who will also be named?
>
> . . .
>
> MR. CAINE: We have not had this conversation with the insurers on any specific basis.[34]

20.      Upon Tort Committee counsel's confirmation that the abuse claimants subject to the Lift Stay Motions intended to name the insurers in the forthcoming abuse complaints, the Court admonished and encouraged the Tort Committee and Debtor to include the insurers in their discussions:

> THE COURT: And the only, and the only reason I say all of that and just ask the question is because if the, if the insurers are not at the table, perhaps they should be.[35]
>
> . . .
>
> You know . . . I just think that in order to get that orderly process you would want, I'd wanna hear from everybody, you know . . . .[36]

---

[34] Jones Declaration, Exh. 5 at [29: 20-25, 30: 7-4].

[35] *Id.* at [33:1-3].

[36] *Id.* at [34:3-5].

21.     Since that time, U.S. Fire and International have had two or three informal conversations with the Debtor trying to secure cooperation but have not been provided copies of any draft Chapter 11 plan or term sheets. Despite this, U.S. Fire and International have continued to reach out to request to be included in the plan negotiation process.

**E. Plaintiffs' Firms Purporting to Represent Various Abuse Claimants, Supported by the Tort Committee, Take a Third Bite at the Apple: Filing Lift Stay Motions Years After the Bar Date.**

22.     From October 11, 2023 through October 17, 2023, the Movants filed the Lift Stay Motions.  They do so in order to file and serve—but allegedly not prosecute—complaints against the Debtor, and in more cases, complaints against the Debtor and non-debtor third parties, including the insurers.  In support, the Movants generally contend they want to preserve current ***and future*** clients' rights to file complaints since (1) the Louisiana Reviver Statute was passed after the Bar Date, (2) the automatic stay is in effect and (3) 30 days is inadequate to prepare and file abuse complaints should the Chapter 11 Case be dismissed.

23.     Despite the Court's explicit mandate that the Movants ***must*** identify ***the name*** of each proposed defendant,[37] none of them do.[38]  Further, none of the Lift Stay Motions nor the TCC Joinder is supported by a form of proposed order, and all the Lift Stay Motions—except four—fail to identify the claimant or specific proof of claim number for the moving abuse claimant.  Thus, the "floodgate" concern and abuse of process this Court previously expressed concern is real.[39]

---

[37] *Amended and Superseding Scheduling Order* [ECF No. 2478] at ¶ 1.

[38] All of the Lift Stay Motions broadly and generally allege that "any insurance carrier that issued a policy that may provide coverage to the Debtor or Affiliated Non-Debtor Defendants for acts alleged in the Petition, the 'Insurance Companies'" are contemplated insurer defendants.

[39] Jones Declaration, Exh. 5 at [20:2-3, 20-24]:

> THE COURT: . . . I have some concerns about even racking [the] door open on this scale. . . . Do [claimants] understand they have an opportunity now to participate in this process as well, right? I mean, we know the bar date. We litigated that extensively and we know the bar date has been out there . . . .

### III.    ARGUMENT & AUTHORITIES

**A. The Lift Stay Motions Are an Attempt to Circumvent the Bar Date, Which This Court Previously Denied.**

24.    In filing the Lift Stay Motions, the Movants seek to accomplish a feat this Court has previously denied: An end-run-around the Bar Date. While the Movants contend that they seek relief from stay because, *inter alia*, "it is not clear under Louisiana law that section 108(c) tolls the revival window, which would provide only 30 days to prepare, file and served detailed petitions after dismissal,"—an "impossible" task,[40] they clearly seek stay relief to bolster unfiled or late-filed abuse proofs of claim years after the Bar Date.  This is not a proper use of Bankruptcy Code section 362(d).

25.    Section 362(a) of the Bankruptcy Code provides that a bankruptcy petition "operates as a stay, applicable to all entities, of the commencement or continuation of a judicial . . . proceeding against the debtor," or of "any act to obtain possession of . . . or to exercise control over property of the estate."  11 U.S.C. §§ 362(a)(1), 362(a)(3).  It permits the debtor to maintain focus on a reorganization (or liquidation) by providing a "breathing spell" from competition litigation and other, similar distractions.  *See Browning v. Navarro*, 743 F.2d 1069, 1083 (5th Cir. 1984) ("The automatic stay is intended to give the debtor a breathing spell from his creditors." (quotations omitted)); *In re Pioneer Commercial Funding Corp.*, 114 B.R. 45, 48 (Bankr. S.D.N.Y. 1990).

26.    But under no circumstance is the automatic stay a weapon.  Bankruptcy courts have repeatedly—if not universally—admonished litigants who seek to subvert the "breathing spell"

---

[40] In this regard, the Movants are identically situated to any other creditor in any other bankruptcy case who may be up against the expiration of the statute of limitations period during the pendency of the bankruptcy case. This is why section 108(c) of the Code exists—to provide an additional 30-day buffer following termination of the automatic stay. Accordingly, the Movants are not prejudiced by denial of the Lift Stay Motions. *See* 11 U.S.C. § 108(c).

from the automatic stay into a chokehold around the neck of an adversary. *See, e.g.*, *Sternberg v. Johnston*, 582 F.3d 1114, 1124 (9th Cir. 2009) ("We have never said the stay should aid the debtor in pursuing his creditors . . . The stay is a shield, not a sword."); *In re A. H. Robins Co.*, 828 F.2d 1023, 1026 (4th Cir. 1987) ("Our system of law ***universally*** frowns on a party who would use the stay as both a sword and a shield." (emphasis added)); *In re Campbell*, No. 01-45325-DML-13, at *1 (Bankr. N.D. Tex. June 20, 2002) ("[T]he Court must be alert to abuse of the automatic stay as well. The stay is intended as a shield, not a sword."). It follows that requesting strategically advantageous relief from the automatic stay is similarly improper where the result is the same.

27. Yet that is precisely what the Movants seek to do. By requesting relief to file and serve complaints against the Debtor and numerous non-debtor parties including ***unnamed*** insurance companies, the Movants are, in essence, backing the Debtor into a corner with targeted stay relief. This is inappropriate.

28. Notably, ten out of the 27 Lift Stay Motions contain allegations surrounding abuse claims that, in contrast to the other Lift Stay Motions, fail to allege such claimants timely filed proofs of claim by the Bar Date.[41] Only four Lift Stay Motions identify the claimant or specific claim number of the applicable proof of claim.[42] Equally problematic is that the Lift Stay Motions contemplate stay relief for the Movants' current ***and future*** clients. Thus, while the Movants ostensibly point to (i) the passage of the Reviver Statute[43] after the Bar Date, (ii) the alleged

---

[41] *See* ECF Nos. 2542, 2573, 2574, 2575 and 2578-2583. *Cf.* ECF Nos. 2512, 2537, 2538, 2544, 2545, 2547, 2550, 2552, 2554, 2556, 2558, 2560, 2562, 2564, 2566, 2568, 257, and 2571.

[42] *See* ECF Nos. 2512, 2568, 2570 and 2571.

[43] *See* 2021 La. Act 322 (as later amended on June 10, 2022), herein referred to as the "Reviver Statute." As the Movants acknowledge, the constitutionality of the Reviver Statute remains in question and the subject of litigation.

uncertain interplay between Bankruptcy Code section 108(c) and the Reviver Statute[44] and (iii) the applicability of the automatic stay to non-debtor parties as the rationale for their requested relief, the Movants instead are candid that their goal is to lodge claims against the estate well after the Bar Date has passed.  This is evident from the procedures outlined in the TCC Joinder, which provides a form of "opt-in" procedure for future claimants.[45]

29.     But bankruptcy courts considering this issue, including this Court,[46] have concluded that not only do they have the authority to fix a bar date prior to the expiration of the revived statute of limitations period, but that the balance of equities requires it.  *See In re The Roman Catholic Diocese of Syracuse*, Case No. 20-30663 (Bankr. N.D.N.Y. Nov. 6, 2020) [ECF No. 214]; *In re The Diocese of Rochester*, Case No. 19-20905-PRW (Bankr. W.D.N.Y. July 29, 2020); *In re The Archdiocese of Saint Paul and Minneapolis*, Case No. 15-30125 (Bankr. D. Minn., Apr. 17, 2015) [ECF No. 161].

30.     In *The Archdiocese of Saint Paul and Minneapolis*, the debtor filed for chapter 11 bankruptcy in January 2015 and requested a bar date of August 3, 2015.  *See* Case No. 15-30125. Plaintiffs' counsel objected, arguing that because Minnesota's Child Victim's Act left "the legislatively-created window for asserting child sexual abuse claims open until May 25, 2016," the debtor's "request for a claims bar date earlier than May 25, 2016 effectively asks this Court to disregard the recent legislation and prematurely 'close the window' on sexual abuse claims against the Archdiocese," and that "[s]uch a request flies in the face of the clear intent of the Minnesota

---

[44] The Movants invent an issue where none exists: Section 108(c) provides the Movants with 30 days following dismissal of this Chapter 11 Case to otherwise file abuse complaints notwithstanding the expiration of the prescription period. *See River Parishes Dirt & Gravel, LLC v. BankPlus (In re Willow Bend Ventures, LLC)*, 603 B.R. 293, 297 (Bankr. E.D. La. 2019) ("Further, § 108(c) extends statutes of limitations for creditors who are barred by the automatic stay from taking timely action against the debtor.").

[45] *See* TCC Joinder at pp. 5-9.

[46] *See supra*, n. 26-27.

legislature"—exactly the argument the plaintiffs' bar advances here. *Id.* at ECF No. 175. The Minnesota bankruptcy court summarily rejected plaintiffs' argument and set a bar date for August 3, 2015—more than eight months before the statutory window closed. *Id.* at ECF No. 188.

31.     Similarly, the court in *The Roman Catholic Diocese of Syracuse* granted the debtor's motion to set a bar date prior to the end of the revival window, rejecting the Committee's objection that the court must set a bar date no earlier than August 14, 2021, the date to which New York's Child Victims Act extended the statute of limitations for survivors of childhood sexual abuse. Case No. 20-30663. Instead, the court set a bar date for April 15, 2021, four months earlier than the close of the revival window.

32.     Recently, the *Syracuse* bankruptcy court faced an analogous issue to the Movants' requested relief: Various plaintiffs' firms filed lift stay motions in order to serve demand letters on the debtor's insurers.[47] Several parties, including insurers, objected. Following a hearing held on September 28, 2023, and upon consideration of the parties' objections and arguments, the *Syracuse* bankruptcy court entered orders denying the motions.[48]

33.     Here, as in *Syracuse*, the Court's establishment of a prompt deadline for filing proofs of claim was of paramount importance. This Court emphasized this point in denying the

---

[47] *See Motion for Relief From Stay by Survivor Claimants 97, 103, 123, 131, 140, and 213 to Modify the Automatic Stay Pursuant to 11 U.S.C. Section 362(d)(1)* [ECF No. 1393], *In re: The Roman Catholic Diocese of Syracuse*, New York, Case No. 20-30663 (Bankr. N.D. N.Y.); *Motion by Survivor Claimants 34 and 124 to Modify the Automatic Stay Pursuant to 11 U.S.C. § 362(d)(1)* [ECF No. 1395], *In re: The Roman Catholic Diocese of Syracuse*, New York, Case No. 20-30663 (Bankr. N.D. N.Y.); *Motion by Survivor Claimants 77 and 79 to Modify the Automatic Stay Pursuant to 11 U.S.C. § 362(d)(1)* [ECF No. 1400], *In re: The Roman Catholic Diocese of Syracuse*, New York, Case No. 20-30663 (Bankr. N.D. N.Y.).

[48] *See Orders Denying Motion for Relief From Stay* at ECF Nos. 1473-75, *In re: The Roman Catholic Diocese of Syracuse*, New York, Case No. 20-30663 (Bankr. N.D. N.Y.).

Tort Committee's Motion to Reopen.[49]  But many of the Movants seek to improperly circumvent

the Bar Date by requesting relief to file abuse claims.

34.     This renders the Stay Relief Motions both procedurally and substantively defective,

as the Court and the parties have no way to identify (1) whether such contemplated future clients

have already filed a proof of claim, and (2) if so, whether such proof of claim was timely filed.

For notice to be effective, a motion for relief from stay must identify the person or entity for whom

relief is sought. Our research has identified no case where a court granted relief for unnamed clients

of a law firm present or future.

35.     The Court should deny the Lift Stay Motions in their entirety as both procedurally

and substantively defective for this reason alone.

**B.   The *Sonnax* Factors Do Not Support the Court's Approval of the Relief Sought in the
Lift Stay Motions.**

36.     Not only are the Lift Stay Motions procedurally defective and lodged for an

improper purpose, Movants fail to make even a *prima facie* showing that "cause" exists under

Bankruptcy Code section 362(d)(1) to lift the automatic stay.  *See In re Kowalsky*, 235 B.R. 590,

594 (Bankr. E.D. Tex. 1999) ("If a movant fails to make a *prima facie* showing, the court should

deny the relief requested.").

37.     It is black-letter law in this Circuit that a debtor's insurance policies constitute

property of the estate, and the policies' proceeds may be estate property, depending on the

language of the policy.[50]  But despite the Movants' arguments to the contrary, "cause" is not

---

[49] *See In re Best Products Co., Inc.*, 140 B.R. 353, 357 (Bankr. S.D.N.Y. 1992) (a claim-filing deadline
is "an integral step in the reorganization process"); *In re New Century TRS Holdings, Inc.*, 465 B.R. 38, 46
(Bankr. D. Del. 2012) (a bar date "contributes to one of the main purposes of bankruptcy law, securing,
within a limited time, the prompt and effectual administration and settlement of the Debtor's estate").

[50] *See Unsecured Creditors Disbursement Comm. v. Antill Pipeline Constr. Co., Inc. (In re Equinox Oil
Co., Inc.)*, 300 F.3d 614, 618 (5th Cir. 2002) ("An insurance policy owned by the debtor is generally
considered property of the estate. But, whether the proceeds of a particular insurance policy is property of

present to warrant relief from stay.   Under the twelve-factor *Sonnax* test applied by bankruptcy courts in the Fifth Circuit, the balance of hardships overwhelmingly weighs against granting the Lift Stay Motions.   *See In re Leblanc*, No. 20-11412, 2020 Bankr. LEXIS 3167, at *9 (Bankr. E.D. La. Nov. 10, 2020) (citing *In re Sonnax Indus., Inc.*, 907 F.2d 1280, 1286 (2d Cir. 1990) for the twelve-factor test).[51]

       i.  **Sonnax Factors 1, 2, 4, 5, 6, 7, 10, 11 and 12 Weigh Against Granting Stay Relief Here.**

38.    The Movants loosely rely on three or four *Sonnax* factors in support of the Lift Stay Motions.   The relevant factors weigh against stay relief.   *See In re Leblanc*, 2020 Bankr. LEXIS 3167, at *9 ("Not all factors may be relevant to each case; indeed, a court need only apply the factors that are relevant to the particular case, and does not need to give each factor equal weight."). Unlike the Movants, the Objecting Insurers discuss each relevant *Sonnax* factor in turn below, all of which weigh against stay relief in this instance:

---

the estate depends on the nature of the policy."); *In re La. World Exposition, Inc.*, 832 F.2d 1391, 1399 (5th Cir. 1987) (determining policies were estate property, but the liability proceeds payable to the directors and officers were non-estate property). Here, the proceeds of the Objecting Insurers' policies with the Debtor are undoubtedly property of the estate: they inure to the benefit of the Debtor and non-debtor apostolates for covered claims. *See In re Sacred Heart Hosp.*, 182 B.R. 413, 420 (Bankr. E.D. Pa. 1995) (where "Debtor's own liability exposure [was] also covered by the D&O Policy," and "[p]roceeds available for the Debtor's liability exposure [were] not segregated from the proceeds available to the directors and officers[,]" court determined insurance policy proceeds were estate property).

[51] The *Sonnax* factors include the court's consideration of (1) whether the relief will result in a partial or complete resolution of the issues; (2) the lack of any connection with or interference with the bankruptcy case; (3) whether the foreign proceeding involves the debtor as a fiduciary; (4) whether a specialized tribunal has been established to hear the particular cause of action and that tribunal has the expertise to hear such cases; (5) whether the debtor's insurance carrier has assumed full financial responsibility for defending the litigation; (6) whether the action essentially involves third parties and the debtor functions only as a bailee or conduit for the goods or proceeds in question; (7) whether litigation in another forum would prejudice the interests of other creditors, the creditors' committee and other interested parties; (8) whether the judgment claim arising from the foreign action is subject to equitable subordination under Section 510(c); (9) whether the movant's success in the foreign proceeding would result in a judicial lien avoidable by the debtor under Section 522(f); (10) the interest of judicial economy and the expeditious and economical determination of litigation for the parties; (11) whether the foreign proceedings have progressed to the point where the parties are prepared for trial; and (12) whether the relief will result in a partial or complete resolution of the issues.

**(1) Relief will not result in resolution of any issue.**

39.     Stay relief will not result in complete resolution of the issues.  Instead, any relief the Court awards under the Lift Stay Motions will increase the number of unresolved claims against the estate—none of which the plaintiffs currently seek to prosecute to finality.  *See In re Residential Capital*, No. 12-12020 (MG), 2012 Bankr. LEXIS 3624, at *14 (Bankr. S.D.N.Y. Aug. 7, 2012) ("[w]here lifting the stay would not result in partial or complete resolution of the issues, the first *Sonnax* Factor weighs against lifting the stay."). In addition, lifting the stay will not comprehensively resolve any issues surrounding confirmation of any Chapter 11 plan to be proposed in this Chapter 11 Case.  This is particularly true where, as here, the Objecting Insurers have been boxed out from any meaningful plan discussions or negotiations.  Accordingly, *Sonnax* factor 1 weighs against granting the Lift Stay Motions.

**(2) Opening the floodgates to new lawsuits will interfere with the bankruptcy case.**

40.     The relief sought in the Lift Stay Motions is directly connected to, and will undoubtedly interfere with, this Chapter 11 Case: Plaintiffs who allegedly filed proofs of claim (whether timely or untimely) seek to file and serve complaints with state or non-bankruptcy federal courts to assert claims for sexual abuse against the Debtor and various non-debtor third parties including the apostolates and insurers.  *See In re UTEX Communs. Corp.*, 457 B.R. 549, 570 (Bankr. W.D. Tex. 2011) ("When balancing the hardships in lifting the stay, the most important factor is the effect of such litigation on the administration of the estate; even slight interference with the administration may be enough to preclude relief.").  The Court already expressed concern over opening the floodgates on this issue so late in the case and the potential for abuse.[52]  And it

---

[52] *See infra*, n. 38.

has already disrupted and distracted the parties from meaningful engagement on plan issues. Where claimants have already had the opportunity to participate in this process *for years*, but have not done so, the harm in granting the stay outweighs the benefits.[53]  Thus, *Sonnax* factor 2 weighs against granting the Lift Stay Motions.

### (3) No other court has established expertise to hear any of the causes of action, as none of the Movants' cases have been filed yet.

41.     While Movants intend to file abuse complaints in the applicable state or federal court, they cite to no cases that hold such a process yields the specialized forum that warrants lifting the stay, even in a limited fashion.  So too does *Sonnax* factor 4 weighs against granting the Lift Stay Motions.

### (4) The parishes did not purchase policies for all claims, and coverage issues abound.

42.     If the Lift Stay Motions are granted, it is likely to spark a cascade of corresponding motions to lift stay to pursue coverage actions and motions for discovery of the Diocese, its parishes and claimants to preserve evidence about the allegations of the complaints.  While primary insurers have offered to defend subject to a reservation of rights, there remain real issues as to whether insurance coverage is applicable to claims that a policyholder had notice of, ratified and covered up sexual abuse of hundreds of children by its members. The facts alleged are

---

[53] In denying the lift stay motions in the *Diocese of Syracuse* bankruptcy, the *Syracuse* bankruptcy court said it best:

> There's also a huge connection with the bankruptcy case and interference with it. It detracts from the mediation process that's undergoing. It detracts from the reorganization process and the plan that has now been promised . . . . And the discovery and process involved in those demands would be expense, would have to result in delay, and could impeded the negotiations . . . with the mediation process.

*Id*., Exh. 1 at [51: 17-24].

unprecedented. Many of the plaintiffs' lawyers allege criminal conduct. *Sonnax* factor 5 also weighs against lifting the stay.

### (5) The actions do not primarily involve third parties.

43.    The relief that the Debtor seeks through a plan of reorganization is premised on the all the abuse claims being derivative of the claims against the Debtor. Squarely in dispute is the Diocese's liability for the abuse claims. Two Lift Stay motions *solely* seek to file complaints against the Diocese and not third parties.[54] This factor—*Sonnax* factor 6—also weighs against granting the Lift Stay Motions.

### (6) Litigation in other forums will prejudice the interests of creditors.

44.    Allowing plaintiffs to file complaints in the multiple state and federal courts will cause chaos, run up costs and make this bankruptcy impossible to resolve. Lifting the stay will prejudice creditors who timely filed proofs of claim and hopelessly distract the Debtor and other parties from resolving this Chapter 11 Case. This is true notwithstanding the Louisiana legislature's passage of the Reviver Statute. As the Court previously determined, the Louisiana State Legislature's recent action regarding the prescription really does not, and should not, change the nature of the claims in light of the notice provisions of the Bar Date Order.[55] While the Lift Stay Motions assert claimants have filed corresponding proofs of claim in this case, many of them are untimely.[56] And the Lift Stay Motions contemplate claims of *future*, unknown claimants. Claimants should not be permitted to circumvent the Bar Date in light of the Bar Date Order's

---

[54]*See* Lift Stay Motions filed at ECF Nos. 2512, 2568.

[55] *See infra*, n. 26.

[56] *See* ECF Nos. 2542, 2573, 2574, 2575, 2578-2583. *Cf.* ECF Nos. 2512, 2537, 2538, 2544, 2545, 2547, 2550, 2552, 2554, 2556, 2558, 2560, 2562, 2564, 2566, 2568, 2570, and 2571.

broad and unambiguous notice provisions.  Accordingly, *Sonnax* factor 7 weighs against granting the Lift Stay Motions.

## (7) <u>The interests of judicial economy and the expeditious and economical resolution of litigation will be undermined.</u>

45.     This factor also weighs against stay relief and in favor of the Objecting Insurers. The Chapter 11 process provides for a single, centralized forum where the Diocese, creditors and other stakeholders can engage with each other in the hopes of formulating a consensual plan of reorganization.  Movants contend granting relief from stay in this instance "will not interfere with the administration of this case," but will "in fact, likely facilitate its resolution."  *See, e.g.*, ECF No. 2583 at ¶ 28.  This is belied by the fact that many of the Lift Stay Motions refer to abuse claimants who appear to have filed untimely proofs of claim, and ***all*** of the Lift Stay Motions contemplate ***future*** clients, the claim status for which is entirely unknown at this juncture.  Thus, the Movants' entire exercise creates more uncertainty than it provides answers.  And it is nothing more than a second shot at the Bar Date, which has now passed.

## (8) <u>The parties are not ready for trial in any other proceeding.</u>

46.     The Movants are nowhere near ready for trial, nor do the Movants appear to seek such relief through the  Lift Stay Motions.  *Sonnax* factor 11 overwhelmingly weighs against the Court granting the Lift Stay Motions.

## (9) <u>Impact of the stay on the parties and the balance of harms weigh against partial relief from stay.</u>

47.     Granting the lift stay motions will make this difficult to resolve bankruptcy impossible to resolve.  If allowed, the Objecting Insurers, the Debtor and Tort Committee must investigate the Movants' claims, seek discovery and lift stay motions to pursue coverage actions increasing costs for all parties and the estate. The tremendous damage this will cause is not necessary.  The Lift Stay Motions are for claims for which proofs of claim have purportedly

already been filed (whether timely or untimely).  Section 108(c) of the Bankruptcy Code provides

the Movants with the same 30-day window as litigants in any other bankruptcy case to file

complaints in the chance this Chapter 11 Case is dismissed.  The Movants fail to show any harm

should their Lift Stay Motions be denied.  Thus, *Sonnax* factor 12 weighs against granting the Lift

Stay Motions.

ii. ***Sonnax Factors 3, 8 and 9 Are Inapplicable or Neutral at Best.***

48. The balance of *Sonnax* factors, *e.g*., factors 3 (whether the foreign proceeding

involves the debtor as a fiduciary), 8 (whether the judgment claim arising from the foreign action

is subject to equitable subordination under Section 510(c)) and 9 (whether the movant's success

in the foreign proceeding would result in a judicial lien avoidable by the debtor under Section

522(f)), either do not apply or are neutral.  Because, however, the overwhelming balance of factors

weighs against relief from stay, as set forth above, the Movants' requests should be denied.

### C. The Movants Seek to Deploy the Automatic Stay as Both a Sword and a Shield Rendering the Relief Sought Improper As a Matter of Law

51. The Movants ask for an order that gives them the benefit of relief from stay to file

complaints against the Objecting Insurers and at the same time ask the Court to deploy the

automatic stay as a shield denying the Objecting Insurers' the right to investigate their claims and

defend themselves.  The appropriate remedy for this is to deny the Motion. But if the Court is

inclined to grant the Movants' requested relief, it could only do so by also lifting the automatic

stay to allow the Objecting Insurers to take discovery and file responsive pleadings, if necessary,

in the Movants' non-bankruptcy actions to preserve evidence.

52. The Movants seek to modify the automatic stay for the limited purpose of filing

and serving complaints against the Debtor and various non-debtor affiliated parties, including

21

insurers, arising from alleged sexual abuse.  If the Court grants stay relief, the Objecting Insurers should be entitled to seek discovery to investigate the allegations and preserve evidence.

53.    But rather than seeking stay relief that would permit the Objecting Insurers to evaluate any claims and/or demands for which claimants contend there is insurance coverage, the Movants propose to keep the stay in effect "as to all other aspects of the Actions,"[57] save for the filing and serving of the complaints and filing of service of process.  Insurers are not bound by a claimant's allegations and the Debtor bears the burden of proof to establish in the first instance that an accident occurred.  And for good reason.  If complaints with unverified allegations (and without any opportunity to investigation or take discovery) Plaintiffs would be able to manufacture any number of claims against an insurer.[58]

54.    Solely to the extent the Court elects to grant the Lift Stay Motions, the Objecting Insurers must be given the opportunity to explore the Movants' allegations (by way of example and not limitation) propounding written discovery on the Movants and/or the Debtor, deposing the Movants and/or the Debtor, if necessary or appropriate.  *See generally B. Bennett v. S.C. Ins. Co.*, 692 So. 2d 1258, 1269 (La. Ct. App. 1997) ("[Louisiana] law imposes on insurers a duty to investigate..").

55.    Judge Kinsella presiding over the *Syracuse* diocesan bankruptcy recognized this necessity had she lifted the stay.[59]  Anything less would inequitably allow the Movants to file and

---

[57] The Lift Stay Motions define "Action" as the state or federal non-bankruptcy court action commenced by the filing of abuse complaints against the Debtor, affiliated non-debtor defendants and insurance companies.

[58] Should the Objecting Insurers be denied full stay relief to conduct discovery, the Objecting Insurers reserve all rights to file and serve claim objections in this Chapter 11 Case.

[59] Jones Declaration, Exh. 1 at [50: 17-23]:

> [I]n considering the relief requested, the Court believes it would be necessary to allow the insurance companies to have discovery, or the reality is what the movants have asked for is that they're going to make a demand. The response is going to be that the demand is

assert coverage for claims they have alleged, without giving the intended or direct payor—the

Objecting Insurers—the ability to investigate the details, thus subverting the automatic stay.[60]

### IV.     CONCLUSION

WHEREFORE, the Objecting Insurers respectfully request that the Court (i) sustain the

Objection and deny the  Lift Stay Motions; (ii) or, solely to the extent the Court is inclined to grant

the Lift Stay Motions, enter an order lifting the stay in its entirety; and (iii) award all other relief

that is just and proper.

Dated: November 3, 2023

By: */s/ John E.W. Baay II*
JOHN E.W. BAAY II (22928)
**GIEGER, LABORDE & LAPEROUSE, L.L.C**.
Hancock Whitney Center
701 Poydras Street, Suite 4800
New Orleans, Louisiana 70139
Telephone:     (504) 561-0400
Facsimile:     (504) 561-1011
Email: jbaay@glllaw.com

**O'MELVENY & MYERS LLP**
TANCRED V. SCHIAVONI (*pro hac vice*)
Times Square Tower
7 Times Square
New York, NY 10036
Telephone:     (212) 326-2000
Email: tschiavoni@omm.com

EMMA L. JONES (*pro hac vice*)
2501 N. Harwood St., Suite 1700
Dallas, TX 75201
Telephone:     (972) 360-1900

---

unreasonable without discovery, and then whether that's bad faith or whatever, it's simply a distraction from the process.

[60] Nothing contained in this Objection should be construed as an admission as to the validity of any claim against the Objecting Insurers, a waiver of the Objecting Insurers' right to dispute any claim or the Objecting Insurers' waiver of any of its rights under the Bankruptcy Code or any applicable law, including their rights to (a) move to withdraw the reference from this Court; (b) contest the jurisdiction of this Court; (c) contest whether any matter constitutes a core proceeding; (d) contest the entry of final orders or judgments by this Court; or (e) demand arbitration or a trial by jury. The Objecting Insurers reserve the right to supplement or amend this Objection at any time. The Objecting Insurers further reserve all rights to raise additional objections to the Lift Stay Motions any time before or at the Court's upcoming hearing on the Lift Stay Motions.

Email: eljones@omm.com

*Counsel for United States Fire Insurance Company and International Insurance Company*

Laura S. McKay
**HINKHOUSE WILLIAMS WALSH LLP**
180 N. Stetson Ave., Ste. 3400
Chicago, Illinois 60601
Telephone: (312) 784-5400
lmckay@hww-law.com

*Attorney for Defendant SPARTA Insurance Company, as successor in interest for certain limited purposes to American Employers' Insurance Company*

24

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a copy of the foregoing document was served this 3rd day of November, 2023 by using the Court's electronic filing system and notice of this filing will be sent to all counsel of record receiving electronic notice by such system.  I also certify that on this 3rd day of November, 2023, I caused a copy of the foregoing document to be served by e-mail or first-class U.S. mail, as applicable, on all other parties requiring service under the Court's Ex Parte *Order Authorizing the Debtor to Limit Notice and Establishing Notice Procedures* [ECF No. 22].

/s/ John E.W. Baay II
JOHN E.W. BAAY II (22928)

4888-6542-6814.7
11/03/23

25