**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| IN RE: | CASE NO. 20-10846 |
| THE ROMAN CATHOLIC CHURCH OF THE ARCHDIOCESE OF NEW ORLEANS | SECTION "A" |
| *Debtor* [1] | CHAPTER 11 |

### *EX PARTE* MOTION FOR STATUS CONFERENCE

**NOW INTO COURT**, through undersigned counsel, comes the Official Committee of Unsecured Commercial Creditors (the "***Commercial Committee***") who respectfully requests that the Court set a status conference to discuss a breach of the Court's protective order. In support thereof, the Commercial Committee respectfully represents as follows:

1. The Court previously entered a Protective Order on August 3, 2020, which has been subsequently amended and supplemented (the "***Protective Order***").[2]

2. A breach of the Protective Order relating to financial documents has recently come to the Commercial Committee's attention. Since such time, the Commercial Committee and its financial advisor, Dundon Advisors ("***Dundon***"), have worked diligently and as expeditiously as possible to investigate the breach and notify the proper parties-in-interest. This, with the intention of quickly thereafter notifying the Court of the breach, utilizing the proper protocols in place, particularly with respect the Protective Order as it relates to the mediation privilege.

---

[1] The last four digits of the Debtor's federal tax identification number are 8966. The Debtor's principal place of business is located at 7887 Walmsley Ave., New Orleans, LA 70125.

[2] ECF. Nos. 305, 729, 885, and 1120.

3. On February 1, 2024, following a preliminary telephone discussion on the matter with counsel for the Debtor, the Commercial Committee and Dundon sent the correspondence attached hereto as **Exhibit A** to counsel of record for the Debtor.

4. On February 15, 2024, after garnering the Debtor's consent in light of the mediation privilege at play (that the Commercial Committee understood to be required before further dissemination) and following a preliminary telephone discussion on the matter with each constituency the Commercial Committee planned to send correspondence to (except the UST[3]), the Commercial Committee and Dundon, through its recently-retained counsel Louis M. Phillips, sent the correspondence attached hereto as **Exhibit B** to counsel of record for the Official Committee of Unsecured Creditors (the "*Abuse Committee*"), the Apostolates, with the exception of Second Harvest Food Bank of Greater New Orleans and Acadiana ("*Second Harvest*")[4], and the Office of the U.S. Trustee (the "*UST*").

5. The Commercial Committee sent the correspondence attached as **Exhibit C** to Second Harvest's counsel of record with the Debtor's consent on February 21, 2023.

6. The Commercial Committee requests a status conference to discuss these issues with the Court once all parties, including the Court, have had an opportunity to digest the information presented and, where applicable, discuss it with their clients.

7. Prior to filing the instant motion, undersigned counsel reached out to counsel for the Debtor, Apostolates, Second Harvest, Abuse Committee, and the UST. Counsel for Second Harvest and the UST have responded that they have no objection to the requested status conference. As of the time of filing the instant motion, undersigned has not received any response

---

[3] Undersigned attempted such a call, but was unable to reach UST counsel.
[4] Given the Commercial Committee's understanding that that counsel of record for apostolate Second Harvest has not signed the Protective Order and may not be a mediation party, the Commercial Committee and Dundon did not include Second Harvest as a recipient.

from the Debtor, Apostolates, or the Abuse Committee in this regard. Under the circumstances, the Commercial Committee submits that this motion is appropriately submitted *ex parte*.

**WHEREFORE**, for the reasons outlined herein, the Commercial Committee respectfully requests entry of an order in substantially the form of the proposed order attached as **Exhibit D** setting a status conference at a time and date convenient to the Court to discuss the breach of the Court's protective order outlined in the attached correspondence.

Dated: February 22, 2024                Respectfully submitted,

**STEWART ROBBINS BROWN & ALTAZAN, LLC**

By:    */s/ Brooke W. Altazan*
Paul D. Stewart, Jr. (LA. Bar # 24661)
dstewart@stewartrobbins.com
William S. Robbins (LA. Bar # 24627)
wrobbins@stewartrobbins.com
Brandon A. Brown (La. Bar #25592)
bbrown@stewartrobbins.com
Brooke W. Altazan (La. Bar #32796)
baltazan@stewartrobbins.com
301 Main St., Suite 1640
Baton Rouge, LA 70801-0016
Telephone: (225) 231-9998
Facsimile: (225) 709-9467

*Counsel to the Official Committee of Unsecured Commercial Creditors of The Roman Catholic Church of the Archdiocese of New Orleans*



Brooke W. Altazan
Member
baltazan@stewartrobbins.com

301 Main Street, Suite 1640
Baton Rouge, LA 70801
225.231.9998

Licensed in LA, TX and MS

February 1, 2024

**CONFIDENTIAL MEDIATION COMMUNICATION - VIA EMAIL ONLY**
The Roman Catholic Church of the Archdiocese of New Orleans
c/o Mark Mintz (mmintz@joneswalker.com)

    Re:    In re: The Roman Catholic Church of the Archdiocese of New Orleans, Case No. 20-10846, LAEB – *Notice of Breach of Protective Order*

Dear Mark:

A breach of the Court's protective order relating to financial documents has recently come to our attention. On or around September 2023, Tom Short ("TS"), then a full-time[1] senior associate at Dundon Advisors ("Dundon"), contacted an individual residing in Africa named Joyce Korir ("JK") through the web-based Upwork platform and entered into a services agreement[2] with her. This contact and agreement occurred without the approval, consent or knowledge of our firm, or any principal at Dundon.

As we currently understand the arrangement, JK initially assisted TS with certain ministerial tasks unrelated to ANO, but eventually he planned on JK taking on some of his work on the ANO file. It appears from our investigation thus far that TS' intention was for JK to perform services without anyone else's knowledge.[3] We have identified no contribution of JK to Dundon's work product for ANO during the period in which she was assisting TS, nor any attempt by TS to cause Dundon to bill the Estate for any of JK's time.

Since we became aware of the situation, we have endeavored to determine what, if any, ANO documents and information TS provided JK. We have compiled the following timeline based on the information available to us at this time:

---

[1] TS is no longer affiliated with Dundon.

[2] Such agreement includes a provision whereby JK agreed not to disclose "any information relating to the firm, its clients, or third parties which is non-public . . . [which obligation] continues after the termination of [JK's] services to the firm for a period of greater of two years or until the expiry of any confidentially obligation of the firm relating to such information."

[3] For example, JK was required to set her VPN to zip code 93950 (western California, TS' primary location), provided login credentials and directed to turn off her camera and mic for Zoom calls.

Exhibit A

The Roman Catholic Church of
the Archdiocese of New Orleans
February 1, 2024

Page | 2

### October 2023
(1) **10.9.23** – TS emailed JK certain portions of Dundon's analysis related to the SAG/NDHS sale and feasibility/ability to pay, and the following documents which were produced by the Debtor to us subject to the mediation privilege and protective order:
   i. Debtor (Carr Riggs) Financial Report
   ii. Paul Shields' 8.12.20 Report
(2) **10.22.23** – TS emailed JK certain portions of Dundon's analysis related to the SAG/NDHS sale and feasibility/ability to pay, and the following documents which were produced by the Debtor to us subject to the mediation privilege and protective order:
   i. ANO Liquidation Analysis
   ii. ANO Cash Flow Projections
(3) **10.23.23** – TS sent JK the following documents which were produced by the Debtor to us subject to the mediation privilege and protective order with edits:
   i. #4033.1 – Liquidation Analysis
   ii. #4054.1 – Plan cash flow projections
(4) **10.23.23** – TS and JK had a Teams meeting titled "Discussion over ANO workstream"
(5) We can tell from the time logs JK submitted to TS in October 2023 for the weeks 10.9-10.13; 10.16-10.20; 10.23-10.27 that the only ANO time she billed TS for was a meeting with TS on 10.23.23.

### November 2023
(1) **10.30.23** – TS and JK had a Teams meeting titled "Catch Up Session"
(2) We can tell from the time logs JK submitted to TS in November 2023 for the weeks 10/30-11/3; 11/6-11/10; 11/13-11/17; 11/20-11/25 that she did not bill for any ANO related time.

### December 2023
(1) **12.8.23** – TS sent JK a password list with login information for the following with direction to attempt login prior to call:
   i. Dropbox
   ii. Everlaw (SRBA)
   iii. Bill4Time
   iv. Microsoft
   v. Zoom
   vi. Jones Walker ANO Sharefile
(2) **12.8.23** – TS sent JK an updated password list with login information for:
   i. Dropbox
   ii. Everlaw (SRBA)
   iii. Bill4Time
   iv. Microsoft
   v. Zoom
   vi. Jones Walker ANO Sharefile
   vii. CRI
   viii. Teams

The Roman Catholic Church of
the Archdiocese of New Orleans
February 1, 2024

Page |3

(3) **12.8.23** – TS and JK had a Teams meeting titled "ANO MORs training" at 10-11 AM CST
(4) We can tell from our research that "TS'" activity in Everlaw on 12.8.23 is as follows (notably, "TS" had no subsequent activity in Everlaw and was removed by SRBA on January 9th):
   a. 8:13 login, 8:45 logged out (no documents are opened)
   b. 11:08 login, 12:06 logged out – the following activity occurred during this time:
      i. 11:10 – viewed search results for "Binder Deposit and Loan Fund Reference Material"
      ii. 11:11 – opened & viewed page 1 of document ANO (20-10846)_00016497 (same page viewed again at 11:12).
      iii. 11:12 – opened & viewed page 1 of document ANO (20-10846)_00018840 (same page viewed again at 11:27).
      iv. 11:13 – searched for "Contents<<Portfolio B>>"
      v. 12:06 – logged out
      vi. We had Everlaw pull the IP address for TS' 12/8 activity and that IP address - 197.232.135.210 – was located in Kenya (TS' prior IP address was located in California). While not perfect, we believe that this is a strong indication that JK was the actual user on 12/8, rather than TS.
(5) We can tell from the time logs JK submitted to TS in December 2023 for the weeks 11/27-12/1 and 12/4-12/8 that the only ANO time she billed for was a meeting with TS re: ANO on 12.8.23.

As you can see from the above, the breach is limited to financial data, and we do not believe that any sexual abuse claims data or information is at issue. The only sexual abuse information our firm has had access to was contained in the redacted sexual abuse claims spreadsheet we received from the Abuse Committee on 1.13.22 (the "Spreadsheet"). We have no reason to believe at this point that TS shared the Spreadsheet with JK. SRBA saved the Spreadsheet into Everlaw (the firm's litigation software) and, once Dundon executed the Confidentiality Agreement, provided the password to access the Spreadsheet via email to Heather Barlow, Matt Dundon and Phil Preis of Dundon. TS was granted access to Everlaw. Since that time, we know from our research that TS accessed the Spreadsheet in Everlaw only once, on June 24, 2022, and then only for 34 seconds. We can tell from our research that he did not download the Spreadsheet from Everlaw and only viewed page 1. We understand that Dundon never provided TS access to the Spreadsheet via email and Dundon never saved the spreadsheet elsewhere.

Both Dundon and SRBA have been blindsided by TS's breach of trust and have worked as expeditiously as possible to determine what, if any, effect this may have on the Estate and the extent of TS' breach of the protective order. As with our general disposition in this case, it is our goal to be as transparent as possible about this situation and to work with the Debtor and all other parties-in-interest to ensure that any such effects are minimized to the greatest extent possible. In that vein, we wish to share this letter with counsel for the Abuse Committee, the Apostolates and the U.S. Trustee's Office ASAP. So as not to run afoul of the mediation privilege in disclosing the documents we know to be at issue (detailed above), which documents we obtained from the

The Roman Catholic Church of
the Archdiocese of New Orleans
February 1, 2024

P a g e | 4

Debtor subject to the mediation privilege and protective order, we ask that the Debtor consent to such disclosure.

Given TS' breach of the Court's protective order, we expect to also make such disclosures to the Court as soon as possible. Before doing so, we would like to discuss next steps with you at your very earliest convenience. Please let us know your availability next Monday (2/5) and Wednesday (2/7) for a call to discuss.

    With warmest regards, I remain

                    Very truly yours,

                    STEWART ROBBINS BROWN, & ALTAZAN, LLC

                    By:   Brooke W. Altazan

                    Matthew Dundon

cc: Commercial Committee Members (via email only)



Brooke W. Altazan
Member
baltazan@stewartrobbins.com

301 Main Street, Suite 1640
Baton Rouge, LA 70801
225.231.9998

Licensed in LA, TX and MS

February 15, 2024

**CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER**

**VIA EMAIL ONLY**
**The Official Committee of Unsecured Creditors**
c/o    Omer F. Kuebel, III (rkuebel@lockelord.com)
        W. Steven Bryant (sbryant@lockelord.com)

**The Apostolates (with the exception of Second Harvest Food Bank of Greater New Orleans and Acadiana)**
c/o    Douglas S. Draper (ddraper@hellerdraper.com)

**The Office of the U.S. Trustee**
c/o    Amanda Burnette George (Amanda.B.George@usdoj.gov)

       Re:    In re: The Roman Catholic Church of the Archdiocese of New Orleans, Case No.
               20-10846, LAEB – *Notice of Breach of Protective Order*

Dear Counsel:

Please see the attached correspondence sent to the Debtor on February 1st (the "Correspondence").

We expect to disclose as soon as possible to the Court the contents of the Correspondence. Before doing so and after you have had some time to consider the Correspondence and discuss it with your clients, we would like to discuss next steps with you. Please let us know your availability next Wednesday through Friday (2/21 – 2/23) for a call to discuss.

Exhibit B

The Official Committee of Unsecured Creditors
The Apostolates
The Office of the U.S. Trustee
February 15, 2024

P a g e | 2

With warmest regards, I remain

                                        Very truly yours,

                                        STEWART ROBBINS BROWN, & ALTAZAN, LLC

                                        By:   Brooke W. Altazan


                                        **KELLY HART PITRE**

                                        ***/s/ Louis M. Phillips***
                                        Louis M. Phillips (LA #10505)
                                        One American Place
                                        301 Main Street, Suite 1600
                                        Baton Rouge, LA 70801-1916
                                        Telephone: (225) 381-9643
                                        Facsimile: (225) 336-9763
                                        Email: louis.phillips@kellyhart.com

cc:
    Commercial Committee Members (via email only)
    Matthew Dundon (via email only)
    Mark Mintz, counsel for the Debtor (via email only)



Brooke W. Altazan
Member
baltazan@stewartrobbins.com

301 Main Street, Suite 1640
Baton Rouge, LA 70801
225.231.9998

Licensed in LA, TX and MS

February 1, 2024

**CONFIDENTIAL MEDIATION COMMUNICATION - VIA EMAIL ONLY**
The Roman Catholic Church of the Archdiocese of New Orleans
c/o Mark Mintz (mmintz@joneswalker.com)

    Re:    In re: The Roman Catholic Church of the Archdiocese of New Orleans, Case No. 20-10846, LAEB – *Notice of Breach of Protective Order*

Dear Mark:

A breach of the Court's protective order relating to financial documents has recently come to our attention. On or around September 2023, Tom Short ("TS"), then a full-time[1] senior associate at Dundon Advisors ("Dundon"), contacted an individual residing in Africa named Joyce Korir ("JK") through the web-based Upwork platform and entered into a services agreement[2] with her. This contact and agreement occurred without the approval, consent or knowledge of our firm, or any principal at Dundon.

As we currently understand the arrangement, JK initially assisted TS with certain ministerial tasks unrelated to ANO, but eventually he planned on JK taking on some of his work on the ANO file. It appears from our investigation thus far that TS' intention was for JK to perform services without anyone else's knowledge.[3] We have identified no contribution of JK to Dundon's work product for ANO during the period in which she was assisting TS, nor any attempt by TS to cause Dundon to bill the Estate for any of JK's time.

Since we became aware of the situation, we have endeavored to determine what, if any, ANO documents and information TS provided JK. We have compiled the following timeline based on the information available to us at this time:

---

[1] TS is no longer affiliated with Dundon.

[2] Such agreement includes a provision whereby JK agreed not to disclose "any information relating to the firm, its clients, or third parties which is non-public . . . [which obligation] continues after the termination of [JK's] services to the firm for a period of greater of two years or until the expiry of any confidentially obligation of the firm relating to such information."

[3] For example, JK was required to set her VPN to zip code 93950 (western California, TS' primary location), provided login credentials and directed to turn off her camera and mic for Zoom calls.

The Roman Catholic Church of
the Archdiocese of New Orleans
February 1, 2024

Page 2

### October 2023
(1) **10.9.23** – TS emailed JK certain portions of Dundon's analysis related to the SAG/NDHS sale and feasibility/ability to pay, and the following documents which were produced by the Debtor to us subject to the mediation privilege and protective order:
    i. Debtor (Carr Riggs) Financial Report
    ii. Paul Shields' 8.12.20 Report
(2) **10.22.23** – TS emailed JK certain portions of Dundon's analysis related to the SAG/NDHS sale and feasibility/ability to pay, and the following documents which were produced by the Debtor to us subject to the mediation privilege and protective order:
    i. ANO Liquidation Analysis
    ii. ANO Cash Flow Projections
(3) **10.23.23** – TS sent JK the following documents which were produced by the Debtor to us subject to the mediation privilege and protective order with edits:
    i. #4033.1 – Liquidation Analysis
    ii. #4054.1 – Plan cash flow projections
(4) **10.23.23** – TS and JK had a Teams meeting titled "Discussion over ANO workstream"
(5) We can tell from the time logs JK submitted to TS in October 2023 for the weeks 10.9-10.13; 10.16-10.20; 10.23-10.27 that the only ANO time she billed TS for was a meeting with TS on 10.23.23.

### November 2023
(1) **10.30.23** – TS and JK had a Teams meeting titled "Catch Up Session"
(2) We can tell from the time logs JK submitted to TS in November 2023 for the weeks 10/30-11/3; 11/6-11/10; 11/13-11/17; 11/20-11/25 that she did not bill for any ANO related time.

### December 2023
(1) **12.8.23** – TS sent JK a password list with login information for the following with direction to attempt login prior to call:
    i. Dropbox
    ii. Everlaw (SRBA)
    iii. Bill4Time
    iv. Microsoft
    v. Zoom
    vi. Jones Walker ANO Sharefile
(2) **12.8.23** – TS sent JK an updated password list with login information for:
    i. Dropbox
    ii. Everlaw (SRBA)
    iii. Bill4Time
    iv. Microsoft
    v. Zoom
    vi. Jones Walker ANO Sharefile
    vii. CRI
    viii. Teams

The Roman Catholic Church of
the Archdiocese of New Orleans
February 1, 2024

Page 3

(3) **12.8.23** – TS and JK had a Teams meeting titled "ANO MORs training" at 10-11 AM CST
(4) We can tell from our research that "TS'" activity in Everlaw on 12.8.23 is as follows (notably, "TS" had no subsequent activity in Everlaw and was removed by SRBA on January 9th):
   a. 8:13 login, 8:45 logged out (no documents are opened)
   b. 11:08 login, 12:06 logged out – the following activity occurred during this time:
      i. 11:10 – viewed search results for "Binder Deposit and Loan Fund Reference Material"
      ii. 11:11 – opened & viewed page 1 of document ANO (20-10846)_00016497 (same page viewed again at 11:12).
      iii. 11:12 – opened & viewed page 1 of document ANO (20-10846)_00018840 (same page viewed again at 11:27).
      iv. 11:13 – searched for "Contents<<Portfolio B>>"
      v. 12:06 – logged out
      vi. We had Everlaw pull the IP address for TS' 12/8 activity and that IP address – 197.232.135.210 – was located in Kenya (TS' prior IP address was located in California). While not perfect, we believe that this is a strong indication that JK was the actual user on 12/8, rather than TS.
(5) We can tell from the time logs JK submitted to TS in December 2023 for the weeks 11/27-12/1 and 12/4-12/8 that the only ANO time she billed for was a meeting with TS re: ANO on 12.8.23.

As you can see from the above, the breach is limited to financial data, and we do not believe that any sexual abuse claims data or information is at issue. The only sexual abuse information our firm has had access to was contained in the redacted sexual abuse claims spreadsheet we received from the Abuse Committee on 1.13.22 (the "Spreadsheet"). We have no reason to believe at this point that TS shared the Spreadsheet with JK. SRBA saved the Spreadsheet into Everlaw (the firm's litigation software) and, once Dundon executed the Confidentiality Agreement, provided the password to access the Spreadsheet via email to Heather Barlow, Matt Dundon and Phil Preis of Dundon. TS was granted access to Everlaw. Since that time, we know from our research that TS accessed the Spreadsheet in Everlaw only once, on June 24, 2022, and then only for 34 seconds. We can tell from our research that he did not download the Spreadsheet from Everlaw and only viewed page 1. We understand that Dundon never provided TS access to the Spreadsheet via email and Dundon never saved the spreadsheet elsewhere.

Both Dundon and SRBA have been blindsided by TS's breach of trust and have worked as expeditiously as possible to determine what, if any, effect this may have on the Estate and the extent of TS' breach of the protective order. As with our general disposition in this case, it is our goal to be as transparent as possible about this situation and to work with the Debtor and all other parties-in-interest to ensure that any such effects are minimized to the greatest extent possible. In that vein, we wish to share this letter with counsel for the Abuse Committee, the Apostolates and the U.S. Trustee's Office ASAP. So as not to run afoul of the mediation privilege in disclosing the documents we know to be at issue (detailed above), which documents we obtained from the

The Roman Catholic Church of
the Archdiocese of New Orleans
February 1, 2024

Page | 4

Debtor subject to the mediation privilege and protective order, we ask that the Debtor consent to such disclosure.

Given TS' breach of the Court's protective order, we expect to also make such disclosures to the Court as soon as possible. Before doing so, we would like to discuss next steps with you at your very earliest convenience. Please let us know your availability next Monday (2/5) and Wednesday (2/7) for a call to discuss.

With warmest regards, I remain

Very truly yours,

STEWART ROBBINS BROWN, & ALTAZAN, LLC

By: Brooke W. Altazan

Matthew Dundon

cc: Commercial Committee Members (via email only)

| | |
|---|---|
| **From:** | Brooke Altazan |
| **Sent:** | Wednesday, February 21, 2024 2:13 PM |
| **To:** | Hayden, Jan |
| **Cc:** | Doug Stewart; Will Robbins; Louis M. Phillips; 'mmintz@joneswalker.com' |
| **Subject:** | NOAD - Notice of Breach of Protective Order - Confidential |
| **Attachments:** | CT Debtor re Notice of Breach of Protective Order.pdf |

Jan:

With the Debtor's approval for us to circulate, please see the attached correspondence we sent to the Debtor on February 1st.  We intend to file a motion to set status conference to discuss the matter by close of business today and will send an email shortly to the parties in this regard.  Please feel free to give me a call if you wish to discuss.

Thanks,
Brooke

Brooke W. Altazan | Member
Stewart Robbins Brown & Altazan, LLC
301 Main Street | Suite 1640 | Baton Rouge, LA 70801
P.O. Box 2348 | Baton Rouge, LA 70821-2348
Tel 225.231.9998 | Fax 225.709.9467
baltazan@stewartrobbins.com | www.stewartrobbins.com

**Confidentiality Notice:** The information contained in this email message is protected under the Electronic Communications Privacy Act, 18 U.S.C. 2310-2321, and may also be protected by attorney-client and/or the attorney/work product privileges. It is intended only for the use of the individual named above and the privileges are not waived by virtue of this having been sent by email. If the person actually receiving this email or any other reader of the email is not the named recipient, any use, dissemination, distribution, or copying of the communication is strictly prohibited. If you have received this communication in error, please immediately notify us by telephone at 225-231-9998 and return the original message to us at baltazan@stewartrobbins.com.

**IRS Circular 230 Disclosure:** Any tax advice contained in this email including any attachments, was not intended to be used, and cannot be used by you or anyone else, for the purpose of avoiding penalties imposed by the Internal Revenue Code or other law or for the purpose of marketing or recommending to any other party any transaction or other matter.

Exhibit C



Brooke W. Altazan
Member
baltazan@stewartrobbins.com

301 Main Street, Suite 1640
Baton Rouge, LA 70801
225.231.9998

Licensed in LA, TX and MS

February 1, 2024

**CONFIDENTIAL MEDIATION COMMUNICATION - VIA EMAIL ONLY**
The Roman Catholic Church of the Archdiocese of New Orleans
c/o Mark Mintz (mmintz@joneswalker.com)

      Re:    In re: The Roman Catholic Church of the Archdiocese of New Orleans, Case No. 20-10846, LAEB – *Notice of Breach of Protective Order*

Dear Mark:

A breach of the Court's protective order relating to financial documents has recently come to our attention. On or around September 2023, Tom Short ("TS"), then a full-time[1] senior associate at Dundon Advisors ("Dundon"), contacted an individual residing in Africa named Joyce Korir ("JK") through the web-based Upwork platform and entered into a services agreement[2] with her. This contact and agreement occurred without the approval, consent or knowledge of our firm, or any principal at Dundon.

As we currently understand the arrangement, JK initially assisted TS with certain ministerial tasks unrelated to ANO, but eventually he planned on JK taking on some of his work on the ANO file. It appears from our investigation thus far that TS' intention was for JK to perform services without anyone else's knowledge.[3] We have identified no contribution of JK to Dundon's work product for ANO during the period in which she was assisting TS, nor any attempt by TS to cause Dundon to bill the Estate for any of JK's time.

Since we became aware of the situation, we have endeavored to determine what, if any, ANO documents and information TS provided JK. We have compiled the following timeline based on the information available to us at this time:

---

[1] TS is no longer affiliated with Dundon.

[2] Such agreement includes a provision whereby JK agreed not to disclose "any information relating to the firm, its clients, or third parties which is non-public . . . [which obligation] continues after the termination of [JK's] services to the firm for a period of greater of two years or until the expiry of any confidentially obligation of the firm relating to such information."

[3] For example, JK was required to set her VPN to zip code 93950 (western California, TS' primary location), provided login credentials and directed to turn off her camera and mic for Zoom calls.

The Roman Catholic Church of
the Archdiocese of New Orleans
February 1, 2024

Page | 2

**October 2023**
  (1) **10.9.23** – TS emailed JK certain portions of Dundon's analysis related to the SAG/NDHS sale and feasibility/ability to pay, and the following documents which were produced by the Debtor to us subject to the mediation privilege and protective order:
      i. Debtor (Carr Riggs) Financial Report
      ii. Paul Shields' 8.12.20 Report
  (2) **10.22.23** – TS emailed JK certain portions of Dundon's analysis related to the SAG/NDHS sale and feasibility/ability to pay, and the following documents which were produced by the Debtor to us subject to the mediation privilege and protective order:
      i. ANO Liquidation Analysis
      ii. ANO Cash Flow Projections
  (3) **10.23.23** – TS sent JK the following documents which were produced by the Debtor to us subject to the mediation privilege and protective order with edits:
      i. #4033.1 – Liquidation Analysis
      ii. #4054.1 – Plan cash flow projections
  (4) **10.23.23** – TS and JK had a Teams meeting titled "Discussion over ANO workstream"
  (5) We can tell from the time logs JK submitted to TS in October 2023 for the weeks 10.9-10.13; 10.16-10.20; 10.23-10.27 that the only ANO time she billed TS for was a meeting with TS on 10.23.23.

**November 2023**
  (1) **10.30.23** – TS and JK had a Teams meeting titled "Catch Up Session"
  (2) We can tell from the time logs JK submitted to TS in November 2023 for the weeks 10/30-11/3; 11/6-11/10; 11/13-11/17; 11/20-11/25 that she did not bill for any ANO related time.

**December 2023**
  (1) **12.8.23** – TS sent JK a password list with login information for the following with direction to attempt login prior to call:
      i. Dropbox
      ii. Everlaw (SRBA)
      iii. Bill4Time
      iv. Microsoft
      v. Zoom
      vi. Jones Walker ANO Sharefile
  (2) **12.8.23** – TS sent JK an updated password list with login information for:
      i. Dropbox
      ii. Everlaw (SRBA)
      iii. Bill4Time
      iv. Microsoft
      v. Zoom
      vi. Jones Walker ANO Sharefile
      vii. CRI
      viii. Teams

The Roman Catholic Church of
the Archdiocese of New Orleans
February 1, 2024

Page |3

(3) **12.8.23** – TS and JK had a Teams meeting titled "ANO MORs training" at 10-11 AM CST
(4) We can tell from our research that "TS'" activity in Everlaw on 12.8.23 is as follows (notably, "TS" had no subsequent activity in Everlaw and was removed by SRBA on January 9th):
    a. 8:13 login, 8:45 logged out (no documents are opened)
    b. 11:08 login, 12:06 logged out – the following activity occurred during this time:
        i. 11:10 – viewed search results for "Binder Deposit and Loan Fund Reference Material"
        ii. 11:11 – opened & viewed page 1 of document ANO (20-10846)_00016497 (same page viewed again at 11:12).
        iii. 11:12 – opened & viewed page 1 of document ANO (20-10846)_00018840 (same page viewed again at 11:27).
        iv. 11:13 – searched for "Contents<<Portfolio B>>"
        v. 12:06 – logged out
        vi. We had Everlaw pull the IP address for TS' 12/8 activity and that IP address - 197.232.135.210 – was located in Kenya (TS' prior IP address was located in California). While not perfect, we believe that this is a strong indication that JK was the actual user on 12/8, rather than TS.
(5) We can tell from the time logs JK submitted to TS in December 2023 for the weeks 11/27-12/1 and 12/4-12/8 that the only ANO time she billed for was a meeting with TS re: ANO on 12.8.23.

As you can see from the above, the breach is limited to financial data, and we do not believe that any sexual abuse claims data or information is at issue. The only sexual abuse information our firm has had access to was contained in the redacted sexual abuse claims spreadsheet we received from the Abuse Committee on 1.13.22 (the "Spreadsheet"). We have no reason to believe at this point that TS shared the Spreadsheet with JK. SRBA saved the Spreadsheet into Everlaw (the firm's litigation software) and, once Dundon executed the Confidentiality Agreement, provided the password to access the Spreadsheet via email to Heather Barlow, Matt Dundon and Phil Preis of Dundon. TS was granted access to Everlaw. Since that time, we know from our research that TS accessed the Spreadsheet in Everlaw only once, on June 24, 2022, and then only for 34 seconds. We can tell from our research that he did not download the Spreadsheet from Everlaw and only viewed page 1. We understand that Dundon never provided TS access to the Spreadsheet via email and Dundon never saved the spreadsheet elsewhere.

Both Dundon and SRBA have been blindsided by TS's breach of trust and have worked as expeditiously as possible to determine what, if any, effect this may have on the Estate and the extent of TS' breach of the protective order. As with our general disposition in this case, it is our goal to be as transparent as possible about this situation and to work with the Debtor and all other parties-in-interest to ensure that any such effects are minimized to the greatest extent possible. In that vein, we wish to share this letter with counsel for the Abuse Committee, the Apostolates and the U.S. Trustee's Office ASAP. So as not to run afoul of the mediation privilege in disclosing the documents we know to be at issue (detailed above), which documents we obtained from the

The Roman Catholic Church of
the Archdiocese of New Orleans
February 1, 2024

P a g e | 4

Debtor subject to the mediation privilege and protective order, we ask that the Debtor consent to such disclosure.

Given TS' breach of the Court's protective order, we expect to also make such disclosures to the Court as soon as possible. Before doing so, we would like to discuss next steps with you at your very earliest convenience. Please let us know your availability next Monday (2/5) and Wednesday (2/7) for a call to discuss.

    With warmest regards, I remain

                  Very truly yours,

                  STEWART ROBBINS BROWN, & ALTAZAN, LLC

By:   Brooke W. Altazan

Matthew Dundon

cc: Commercial Committee Members (via email only)

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| IN RE: | CASE NO. 20-10846 |
| THE ROMAN CATHOLIC CHURCH OF THE ARCHDIOCESE OF NEW ORLEANS | SECTION "A" |
| *Debtor* [1] | CHAPTER 11 |

**ORDER GRANTING *EX PARTE* MOTION FOR STATUS CONFERENCE**

**CONSIDERING** the *Ex Parte Motion for Status Conference* (the "**Motion**") filed by the Official Committee of Unsecured Commercial Creditors (the "**Commercial Committee**") [ECF No. ___], and it appearing that good cause exists for granting the relief requested therein,

**IT IS ORDERED** that a status conference will be held before the Honorable Judge Meredith S. Grabill of the United States Bankruptcy Court for the Eastern District of Louisiana, Section A, on _____, _____ ____, 2024, at ___:___ __.m. CST to discuss the breach of the Court's protective order outlined in the correspondence attached to the Motion.

**IT IS FURTHER ORDERED** that, pursuant to General Order 2021-2, parties in interest and their counsel may attend the status conference (i) IN PERSON, in Courtroom B-709, 500 Poydras Street, New Orleans, LA 70130, (ii) BY TELEPHONE through the dial-in for Section A: 503.517.1385; Conference Code 129611; or (iii) by telephone using the dial in number and video using https://gotomeet.me/JudgeGrabill.

**IT IS FURTHER ORDERED** that the Commercial Committee shall serve this Order on the required parties who will not receive a copy through the ECF system pursuant to the Federal

---

[1] The last four digits of the Debtor's federal tax identification number are 8966. The Debtor's principal place of business is located at 7887 Walmsley Ave., New Orleans, LA 70125.

Rules of Bankruptcy Procedure, this Court's Complex Case Procedures, and any Orders limiting notice, and file a certificate of service to that effect within three (3) days.

New Orleans, Louisiana, this _____ day of _____, 2024.

                                                                                    _____
                                                                                       MEREDITH S. GRABILL
                                                                     UNITED STATES BANKRUPTCY JUDGE