## IN THE UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| In re: | Case No. 20-10846 |
| **THE ROMAN CATHOLIC CHURCH OF THE ARCHDIOCESE OF NEW ORLEANS,** | Section "A" |
| Debtor.[1] | Chapter 11 |

## CERTAIN ABUSE SURVIVORS' OBJECTION TO DEBTOR'S MOTION TO MODIFY ORDER TO INCREASE THE MONTHLY CAP OF ORDINARY COURSE PROFESSIONAL DENECHAUD AND DENECHAUD, L.L.C. [REC. DOC. 2983]

**NOW INTO COURT,** through undersigned counsel, come **CERTAIN SEXUAL ABUSE SURVIVORS[2],** who object to the *Debtor's Motion to Modify Order To Increase The Monthly Cap of Ordinary Course Professional Denechaud and Denechaud, L.L.C.*

The Debtor's motion to increase the fees by almost 50% for yet another law-firm, Denechaud & Denechaud LLC ("Denechaud"), should be denied for four distinct reasons. First, the motion should be denied because neither the Debtor nor Denechaud can satisfy its burden that the increase is reasonable in a Chapter 11 proceeding, especially one which has become one of the oldest and costliest religious bankruptcies in history. The Debtor has failed to identify which lawyers and staff from Denechaud will work on the bankruptcy or what their hourly rates may be. In fact, the Debtor has failed to explain what work it has performed in the last four years and what work it expects to perform in the future. The Debtor's flaccid explanation that the market rate of fees has increased over the last four years is meaningless without this information – and misleading since the New Orleans hourly rate for bankruptcy work has

---

[1] The last four digits of the Debtor's federal tax identification number are 8966. The Debtor's principal place of business is located at 7887 Walmsley Ave., New Orleans, LA 70125.

[2] "Certain Sexual Abuse Survivors" are those identified in Rec. Doc. 2340.

certainly not increased almost 50% in that timeframe.  The Debtor also offers no support for its explanation.

Second, the Debtor's request should be denied because both the Debtor and Denechaud have repeatedly violated this Court's management orders by failing to file a Notice of Excess Fees when billing greater than the monthly $28,000 fee cap.  According to the Debtor's Statements of Ordinary Course Professionals, Denechaud's total fees and expenses have exceeded the $28,000 cap from between approximately $100 and $50,000 per month, without any Notice of Excess Fees being filed.  The Debtor's and Denechaud's repeated violations should not be rewarded at the expense of sexual abuse survivors.

Third, the Debtor's request should be denied because Denechaud actively facilitated misleading authorities about what the Archdiocese knew about the breadth and scope of the generations of abuse enabled by them.  Denechaud sent misleading reports to local authorities which sought to deny or stall investigations of its clergy.  Looking at the evidence in the most favorable light for it, Denechaud was at the very least a witness to the Archdiocese's crimes. Looking through a more realistic lens, Denechaud acted as one of the means to hide, delay, and deny the pursuit of crimes.  Denechaud does not "deserve" a raise and likely should not continue to represent the Debtor.

Fourth, documents show that Denechaud has acted in a criminal defense attorney capacity in its representation of the Archdiocese in the past.  The recent search warrant served on the Archdiocese demonstrates that the Archdiocese is under active criminal investigation for pre and post-petition activity.  Denechaud's past representation of the Archdiocese in criminal matters raises the question of whether the request for an increase in legal fees will include criminal defense legal advice.  Bankruptcy Courts have consistently ruled that estate funds

cannot be used to pay criminal counsel in connection with a criminal investigation of the debtor. Therefore, none of the criminal defense can be paid by the estate without the Debtor satisfying its burden that it is in the best interest of the estate – an argument the Debtor has failed to make.

## JURISDICTION AND VENUE

1. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334.

2. Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

## BACKGROUND

3. This case was initially filed as a voluntary Chapter 11 Petition on May 1, 2020.

4. On June 25, 2020, the Debtor filed a *Motion for Entry of an Order Authorizing the Debtor to Employ Professionals in the Ordinary Course of Business*.  As part of that Motion, the Debtor requested that Denechaud & Denechaud ("Denechaud") be hired as an "Ordinary Course Professional," stating their type of service to be "Legal Services." [Rec. Doc. 191.]

5. On July 20, 2020, an Order was issued authorizing the Debtor to employ professionals used in the ordinary course of business effective as of the petition date.  [Rec. Doc. 269.]

6. On July 24, 2020, Denechaud filed a declaration stating in part that their firm would advise and assist the debtor in a range of legal matters, including employment, corporate matters, school operation, real-estate, and provide "support" to bankruptcy counsel. [Rec. Doc. 283.]

7. On April 25, 2024, the Debtor filed a *Motion to Modify Order to Increase the Monthly Cap of Ordinary Course Professional Denechaud and Denechaud, L.L.C*.  [Rec. Doc. 2983.]

8.      The motion requests that Denechaud's Monthly Cap on total compensation and reimbursement be increased from $28,000 to $41,000, a nearly 50% increase, with little explanation as to why the increase is necessary.

9.      Certain Abuse Survivors concerns are substantial.

10.     As of March 2024, the Debtor has paid a cumulative amount of **$36,330,968.39** to various professionals and vendors -- $15,484,111.18 (43%) to the Debtor's bankruptcy specific professionals and vendors, $13,451,309.09 (37%) to the Official Committee of Unsecured Creditors and their professionals, $4,442,736.10 (12%) to the Debtor's Non-Bankruptcy professionals (Ordinary Course Professionals), and $2,952,785.02 (8%) to the Commercial Committee of Creditors and their professionals. *See Schedule of Payments to Professionals*, at 1 [Rec. Doc. 2906-6].

11.     The fees and expenses the Debtor has paid to date are almost three times the average of similar religious organization bankruptcies until plan confirmation – an approximate average of $8.66 million.

12.     Over the course of this bankruptcy, Denechaud has been paid approximately **$1,352,884.40** in fees and other expenses as an "Ordinary Course Professional."[3]

13.     Every dollar paid to these Ordinary Course Professionals is one less dollar paid to the abuse survivors.

## The Debtor and Denechaud fail to satisfy their burden.

14.     Debtor's request to increase Denechaud's fees fails to include the requisite specificity to justify an increase in fees in one of the oldest and costliest religious bankruptcies in

---

[3] *See Debtor's Statements of Ordinary Course Professionals*, at 1 [Rec Docs. 514, 602, 769, 893, 1090, 1191, 1400, 1707, 1961, 2234, 2401, 2713, 2931]; *Debtor's Monthly Financial Report – Payments to Professionals*, at 1 [Rec. Doc. 2982-6].

history.  The Debtor fails to identify which attorneys have been (and will in the future) work the file.  The Debtor fails to identify the hourly rate for any of these unidentified attorneys or their staff.

15.     Without this fundamental information, neither the Debtor nor Denechaud are able to meet its burden that the increase is reasonable or necessary.

16.     The Debtor also fails to identify the nature or duration of the past work it has engaged in and fails to explain whether it expects to work more or less in the future.

17.     The Debtor's "trust-us" arguments and failure to scrutinize bills has caused this bankruptcy to become the second most expensive religious bankruptcy in history with approximately $40M being paid over more than four years.[4]

18.     Ultimately, the Debtor's request is an audacious attempt to increase fees for more lawyers in its bankruptcy.  After paying at least 53 lawyers from Jones Walker, the Debtor blithely wants to pay some of its other lawyers even more without justification.

19.     The Debtor has no shortage of law firms at its disposal.  Excluding Jones Walker and Denechaud, since the bankruptcy has been filed, the Debtor has retained and paid the following seven law firms for various legal services: Hammonds, Sills, Adkins, Guice, Noah & Perkins, LLP; DeShazo Adams, LLC; Bradley Murchison Kelly & Shea LLC; Jones Fussell, LLP; Kinney, Ellinghausen, Richard & Deshazo; Gaudry, Ranson, Higgins & Gremillion, LLC; and Berrigan Litchfield, LLC.  None of these firms have sought an increase in their hourly rates.

---

[4] In fact, any pretension that Denechaud's request is related to litigation is meaningless, since the automatic stay has been in place for more than four years.

20.     The Debtor's half-hearted explanation that fees have increased over time is without support or context, since nowhere does the Debtor identify Denechaud's hourly rate before or after the bankruptcy.

**Debtor and Denechaud repeatedly violated the Court's Order.**

21.     On July 20, 2020, this Court entered an Order pertaining to the retention of "ordinary course professionals".  The Order required ordinary course professionals to file a notice with the court if its fees exceeded the amount allocated to it:

> [T]to the extent an Ordinary Course Professional seeks compensation in excess of the Monthly Cap, the Ordinary Course Professional will file with the Court <u>a notice of fees in excess of the Monthly Cap (the "Notice of Excess Fees") and an invoice setting forth in reasonable detail, the nature of the services rendered, all time entries for the month, and all disbursements actually incurred for the month in which the Excess Fees were incurred</u>. (For avoidance of doubt, this invoice will list all time entries and all fees incurred by the Ordinary Course Professional for the relevant month.). Interested parties shall then have fourteen (14) days to file an objection to the Notice of Excess Fees with the Court. If after 14 days no objection is filed, the Excess Fees shall be deemed approved, and the Ordinary Course Professional may be paid 100 percent of its fees and 100 percent of its expenses without the need to file a fee application.

*Order*, at 3 (07/20/2020) (emphasis supplied) [Rec. Doc. 269].

22.     According to the Debtor's Statements of Ordinary Course Professionals, the total fees and expenses of Denechaud have been over the $28,000 cap from between approximately $100 and $50,000 per month, <u>without any Notice of Excess Fees being filed</u>.  *Monthly Operating Reports*, at 77 (04/25/24) [Rec. Doc. 2982]; at 74 (03/25/24) [Rec. Doc. 2906] and at 65 (1/24/2024) [Rec. Doc. 2802].

23.     While some of the overages may be due to expense reimbursement, this is not the case for all of the overages.  For example, in the most recent reporting, the Debtor reported Denechaud's $28,000 legal fee payment on March 7, 2024 and, on the same day, reported

four more entries of legal fees to Denechaud, totaling an additional $4,288.  *Monthly Operating Report*, at 77 (04/25/24) [Rec. Doc. 2982].

24.     The Debtor's and Denechaud's repeated violations of this Court's Order are grounds to refuse the request.

**Denechaud misled authorities about the scope and breadth of the generations of abuse.**

25.     The Debtor's request should also be denied because Denechaud actively facilitated misleading authorities about what the Archdiocese knew about the scope and breadth of the generations of abuse enabled by them.  Denechaud sent misleading reports to local authorities which sought to deny or stall investigations of its clergy.

26.     Looking at the evidence in the most favorable light for it, Denechaud was at the very least a witness to the Archdiocese's crimes.  Looking through a more realistic lens, Denechaud acted as the means to hide, delay, and deny the pursuit of crimes.  Denechaud does not "deserve" a raise and likely should not continue to represent the Debtor.

27.     The Archdiocese and both living Archbishops are currently targets to a criminal investigation conducted by the Louisiana State Police.  The Archdiocese has been served with an Orleans Parish Criminal District Court issued search warrant.  The Probable Cause Affidavit in support of the search warrant and abuse documents point to Denechaud as active participants in the cover up.

**The Search Warrant and Affidavit of Probable Cause**

28.     On April 23, 2023, the Louisiana State Police served the Debtor with a criminal search warrant signed by Orleans Parish Criminal Court Judge Juana Matine Lombard.  The warrant requested in pertinent part: "ALL documents related to the sexual abuse of a

minor by clergy for the Archdiocese of New Orleans." *Archdiocese Search Warrant*, at 4

attached as Exhibit 1.

29.     The warrant requests "Documents, emails, letters, transfer, assignment records, etc. (as

defied in the included Definition List), which is in the custody/control of the Archdiocese

of New Orleans – 7887 Walmsley Avenue, New Orleans, Louisiana 70125." *Id.* at 1.

30.     In support of the Archdiocese Search Warrant, State Police Officer Scott Rodrique

represented under oath as follows:

> [B]ased on victim interviews and documents previously sealed by a
> federal bankruptcy judge, it was additionally alleged that <u>high ranking
> members of the Archdiocese of New Orleans not only knew about claims
> of widespread sexual abuse of minors dating back decades, but that the
> claims were ignored, and in many cases, covered up and **not reported to
> law enforcement**</u>.

>              *       *       *

> Subsequently, additional allegations were made against other high-
> ranking members of the Archdiocese of New Orleans. The allegations
> continued to include claims that the Archdiocese was aware of,
> disregarded, and/or covered up widespread claims of sexual abuse of
> minors dating back years. The allegations indicated that <u>many claims
> reported to the Archdiocese were not reported to law enforcement</u> and, in
> some cases, monetary payments were made to victims and/or their
> families by the Archdiocese to dismiss the allegations. Others claims
> alleged, that accused priests and clergyman were moved to other
> congregations within the Archdiocese of New Orleans, and, in some
> cases, reassigned to other Archdiocese to hide them from their accusers.

*4/25/2024 Affidavit for Search and Seizure Warrant*, at 9 (emphasis supplied).

31.     At least some documents subject to this warrant will show that Bordelon, at the very

least, witnessed the coverup and, at its worst, facilitated the Archdiocese's cover up of

felonies committed by various clergy.

**Bordelon Letter to NOPD**

32.     Before this bankruptcy, Denechaud attorney Richard Bordelon represented the Archdiocese on issues related to clergy sex abuse for decades.

33.     At the time of the bankruptcy, Bordelon and other members of Denechaud were enrolled in at least 30 sex abuse lawsuits filed against the Debtor filed in New Orleans Civil District Court and later removed to the Eastern District of Louisiana.

34.     On December 18, 2002, Bordelon sent a letter to the New Orleans Police Department's Lieutenant David M. Benelli and Sergeant Jenerio Sanders.  This letter was copied to criminal defense attorney Ralph Capitelli and blind copied to Archbishop Alfred Hughes, Monsignor Roger Morin, Reverend Gerald Seiler, and attorney Don Richard.  *See 12/18/2002 Bordelon Letter to NOPD*, at 1, attached as Exhibit 2 (Filed Under Seal).

35.     In the letter, Bordelon represented to the NOPD ████████████████████ ████████████████████████████████████.  *Id.* at 1.  Bordelon represented to NOPD that ████████████████████████████████████ ██████████████████████████.  *Id.*

36.     This was false.  In fact, at the time he sent the letter, the Archdiocese and Bordelon knew ████████████████████████████[5] ████████████████████████████ ██████████████.

**Bordelon's Knowledge and Omissions**

37.     On June 14, 1996, <u>six years</u> before Bordelon's letter to the NOPD, the Archdiocese was informed of ████████████████████████████████████ ████████████████████████████████████

---

[5] The Bordelon letter contains many more intentional misrepresentations than discussed herein.

████████████████. In a letter to then-Archbishop Schulte, Msgr. Raymond Hebert included a ████████████████████████████. *LTR Hecker to Schulte*, at 1 (06/19/96), attached as Exhibit 3 (Filed under seal). ████████████████████ ████████████████████████████. *Id.*

38.     Fr. Hecker's response as written out by Monsignor Raymond Hebert is a ████████. Fr. Hecker ██████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████. *Id.*

39.     On October 24, 1999, <u>over three years before Bordelon's letter to the NOPD</u>, Sister Carmelita Centanni, the former Victims' Assistance Coordinator for the Archdiocese, prepared a ████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████. *Carmelita Summary of Hecker Allegations*, at 1, attached as Exhibit 4.

40.     On November 4, 1999, <u>three years before Bordelon's letter to the NOPD</u>, Fr. Hecker submitted a ████████████████████████. ████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

████. *Statement of Msgr. Lawrence Hecker Given in Person to Msgr. Ray Hebert*, at 1-2 (11/04/99), attached to the State's *Opposition to Hecker's Request for Bail Reduction* as Exhibit B. (Exhibit 5 Filed Under Seal).[6]

41.   After his ████████, in November 1999, the Archdiocese sent ███████████ ████████████████████████████."

42.   On December 23, 1999, <u>two (2) years before Bordelon's letter to NOPD</u>, a final report was issued ███████████████████████████████████████████████ ████████. ("████████████████████████████████████████ ████████████████████████████████."); ("███████████ ████████████████████████████."). *See Dr. Richard Koening Comprehensive Psychodiagnostic Assessment*, at 9, attached to the State's *Opposition to Hecker's Request for Bail Reduction* as Exhibit D and filed into the public record in Orleans Parish Criminal District Court.

43.   Although he attempted to claim that he ████████████████████ ███████████████████████████████████████████████████ ████████████. *Id.*

44.   The *Psychodiagnostic Assessment* concluded: "████████████████ ███████████████████████████████████████████████████

---

[6] A copy of *Fr. Hecker's Statement* has previously been filed into the public docket in the criminal case against Fr. Hecker in Orleans Parish Criminal District Court as attachments to the State's *Opposition to Hecker's Request for Bail Reduction*. *See State v. Hecker*, No. 559-997 (Orleans Parish, Criminal District Court) (Sec. "C").

██████████████████████████████████████████████████." *Id.* at 10 (emphasis supplied).

45.    Fr. Hecker received ██████████████████████████████████ ████████████████. Dr. Richard Koening characterized ██████████████████:



*Id.* at 2 (emphasis supplied).

46.    Ultimately, Dr. Koening recommended: ███████████████████████ ████████████████████████████████████████████ ████████████████████. *Id.* at 2. There is no evidence in his personnel file that ██████████████████████████████████████████ ████████████████████████████████████████████ ████████████.

47.    In his 2002 letter, Bordelon's entire statement to the NOPD ██████████ is as follows:

*LTR from Bordelon to NOPD*, at 3.

12

48.     In addition to ██████, Bordelon's letter to the NOPD ████████████████████

████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████

██████.

49.     As with ██████, Bordelon's letter ██████████████████████████████████████

████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████.

**Bordelon's ██████████████ and Assistance with ██████████████**

50.     In 2002, prior to Bordelon's letter to the NOPD, Archbishop Hughes ordered ██████

██████████████████████████.   On April 25, 2002, the IRB rendered the "██████

████████████████████████████████████████████████████." Contained in

that ██████ were the names and roles of certain people:

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████.

*See IRB Report*, at 4 (04/25/2002), attached as Exhibit 6 (Filed Under Seal).

51.     In addition to having reviewed the files, Bordelon and his partner were also appointed ██

████████████████████████████████.

████████████████████████████████████████████████████

████████████████████████.

*Id.* at 3.

52.     Bordelon, as part of this █████████, reviewed "███████████████████████████

███████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████

████." *Id.*

53.     Bordelon, and by extension Denechaud, can only represent the Debtor if they are

considered to be "disinterested".  The bankruptcy code provides that:

> [W]ith the court's approval, may employ, for a specified special purpose,
> other than to represent the trustee in conducting the case, an attorney that
> has represented the debtor, if in the best interest of the estate, <u>and if such
> attorney does not represent or hold any interest adverse to the debtor or to
> the estate</u> with respect to the matter on which such attorney is to be
> employed.

11 U.S.C. § 327(e) (emphasis supplied).

54.     The professional requirement of "no adverse interests" is designed to ensure that the

estate professionals have undivided loyalty and provide the trustee or the debtor-in-

possession with untainted advice and assistance in keeping with their fiduciary duties.

55.     Here, Denechaud is not disinterested.  Denechaud's conduct in submitting ███████

███████████████████████ places its conduct directly at odds with the Archdiocese.

As the party on whose behalf the reporting is being made, the Archdiocese may possibly

███████████████████████████████████████████████████████████████████

████████████████████████.  The Archdiocese may even argue that ████

████████████████████████████████████.

56.     Whether during the course of the State criminal investigation the Archdiocese turns on

Bordelon or vice-versa, the interests of the Archdiocese and Bordelon are no longer

aligned.  If they are not aligned, then Denechaud is not disinterested.

57.     Even if Denechaud is not yet a target in the criminal investigation and can convince the criminal investigators that it was just performing its duties as instructed by its client, Denechaud's interests remain in the ████████████████ identified in the Search Warrant.

**Denechaud cannot bill the Debtor for criminal defense work.**

58.     To the extent that the reason for the request of a fee increase is in any way related to providing assistance for criminal defense, the Application should be denied.

59.     As a general rule, a debtor has no right to use estate assets to fund his criminal defense. *In re Duque*, 48 B.R. 965, 975-76 (S.D. Fla.1984) (denying the request to appoint criminal counsel for the debtor even under threat of criminal RICO); *Barnette v. Evans,* 673 F.2d 1250, 1251 (11th Cir. 1982) ("The purpose of bankruptcy is to protect those in financial, not moral, difficulty. The bankruptcy courts were not created as a haven for criminals.") (emphasis supplied); *Official Committee of Disputed Litigation Creditors v. McDonald Invest., Inc*., 42 B.R. 981, 987 (N.D. Tex. 1984) (recognizing that the Debtor has no right to employ criminal defense counsel unless it can satisfy its burden that hiring criminal defense counsel is "in the best interest of the estate in this case").

60.     Courts have rejected the argument that it was in the best interest of the estate to employ criminal counsel or to pay the cost of services relating to a debtor's criminal defense. *In re Stoecker*, 114 B.R. 965, 969-70 (Bankr. N.D. Ill. 1990).

61.     The Probable Cause Affidavit identifies the Archdiocese as an entity as well as Aymond and Hughes personally as likely criminal targets.

62.     Although Denechaud's opaque request for an increase does not mention criminal defense, the history of Denechaud's representation of the Archdiocese, the aforementioned documents of Denechaud's representations to law enforcement on behalf of the Archdiocese, and Bordelon's personal involvement in the cover-up, the likely conclusion is that Denechaud is positioning itself to (again) assist in criminal investigations.

63.     The timing also indicates that Denechaud's request is related to the search warrant.  The Archdiocese was notified about the search warrant on April 22, 2024.  Denechaud's Application was filed three days later on April 25, 2024.

64.     In this case, the Archdiocese and Aymond personally have not even argued (much less tried to satisfy) its burden that it is in the best interest of the estate to use funds to pay for their criminal defense.

65.     Accordingly, the Court should instruct the Debtor that no funds are to be paid to counsel for any criminal defense work until they have satisfied their burden by making the required showing that it is in the best interest of the Debtor.

## **CONCLUSION**

WHEREFORE, Movers respectfully submit that the Debtor's Motion to Increase the Cap for Denechaud & Denechaud, LLC, be denied.

Respectfully submitted,

S/Soren E. Gisleson
SOREN E. GISLESON (#26302)
HERMAN, HERMAN & KATZ
909 Poydras Street, Suite 1860
New Orleans, La 70112
Tel: (504) 581-4892
Fax: (504) 561-6024
sgisleson@hhklawfirm.com

-AND-

RICHARD C. TRAHANT (# 22653)
ATTORNEY AT LAW
2908 Hessmer Avenue
Metairie, LA 70002
Tel: (504) 780-9891
Fax: (504) 780-9891
trahant@trahantlawoffice.com

-AND-

JOHN H. DENENEA, JR. (#18861)
SHEARMAN~DENENEA, L.L.C.
4240 Canal Street
New Orleans, LA  70119
Telephone: (504) 304-4582
FAX: (504) 304-4587
jdenenea@midcitylaw.com

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing *Objection* will be served upon all parties by electronic case filing for those parties receiving notice via the Court's Electronic Case Filing system.

*/s/ Soren E. Gisleson*
Soren E. Gisleson