UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: | § § § | CASE NO: 20-10846 |
| THE ROMAN CATHOLIC CHURCH OF THE ARCHDIOCESE OF NEW ORLEANS, | § § § § § | CHAPTER 11<br><br>COMPLEX CASE |
| DEBTOR. | § § § | SECTION A |

# ORDER

Before the Court is the *Debtor's Motion For Authority To Sell 3003-3009 S. Carrollton Avenue, Free and Clear of All Claims, Liens, Interests, and Encumbrances Pursuant to §§ 363(b) and 363(f) of the Bankruptcy Code*, [ECF Doc. 3130], (the "Motion"),[1] filed by the Debtor.

Considering the record and pleadings, the applicable law, and finding good cause,

**IT IS ORDERED** that the Motion is **GRANTED**.

**IT IS FURTHER ORDERED** that the sale of the immovable property bearing municipal address 3003-3009 S. Carrollton Avenue, New Orleans, LA 70118 (the "Property")[2] is hereby approved for a purchase price of no less than $850,000.00 (the "Purchase Price") pursuant to the terms of the *Agreement to Purchase and Sell* (the "Purchase Agreement"), a copy of which is attached hereto as **Exhibit 1**.

---

[1] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion.

[2] For the avoidance of doubt, the Property does not include 3017-3019 S. Carrollton Avenue, New Orleans, Louisiana 70118.

**IT IS FURTHER ORDERED** that the Debtor is authorized to take any and all actions necessary to consummate the transaction approved pursuant to this Order and contemplated by the Purchase Agreement.

**IT IS FURTHER ORDERED** that upon closing of the sale, the Property shall be transferred to the Purchaser free and clear of any claims, liens, interests, and/or encumbrances (collectively, the "Interests"), with such Interests (if any) attaching to the proceeds of the sale in the order of their priority, with the same validity, force, extent, and effect which they now have as against the Property; subject to any claims, defenses and/or offsets that the Debtor or its estate may possess with respect thereto.

**IT IS FURTHER ORDERED** that the Purchaser is a good-faith purchaser within the meaning of Bankruptcy Code § 363(m) and, as such, is entitled to the full protections of Bankruptcy Code § 363(m).

**IT IS FURTHER ORDERED** that, as provided by Bankruptcy Rule 7062, this Order shall be effective and enforceable immediately upon entry. The Court also hereby waives the 14-day stay set forth in Bankruptcy Rule 6004(h) in order that the sale may take place prior to the expiration of such 14-day period.

**IT IS FURTHER ORDERED** that pursuant to the Listing Agreement approved by the Broker Retention Order dated September 21, 2023, [ECF No. 2496], the Debtor is authorized and directed to pay TMC, upon the closing of the sale, a real estate commission (the "Commission") equal to five percent (5.00%) of the gross amount of the Purchase Price. Further, pursuant to the Purchase Agreement, TMC is directed to share the Commission evenly with the Purchaser's Broker.

**IT IS FURTHER ORDERED** that contemporaneously with the closing of the sale, the Debtor is authorized and directed to deposit the proceeds of the sale according to the following terms:

1. The Debtor will deposit the Purchase Price, less any amount required by this Order to be paid at or after the closing of the sale (the "Sale Proceeds");

2. The Debtor will use a segregated account at Hancock Whitney Bank (the "Segregated Account"), not subject to any setoff rights as may be asserted by Hancock Whitney Bank as to its existing claims, if any, for the sole purpose of holding the Sale Proceeds and any other funds ordered by the Court to be held in the Segregated Account; and

3. The Debtor will not be permitted to use the Sale Proceeds in the Segregated Account for any purpose absent further order of this Court.

**IT IS FURTHER ORDERED** that the failure to specifically include any particular provision of the Purchase Agreement in this Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Court that the Purchase Agreement be authorized and approved in its entirety; *provided, however*, that in the event of an inconsistency between this Order and any particular provision of the Purchase Agreement, this Order shall control.

**IT IS FURTHER ORDERED** that the Court shall retain jurisdiction to hear and determine all matters arising from or related to the implementation of this Order.

**IT IS FURTHER ORDERED** that the Debtor shall serve this Order via first-class U.S. Mail on the required parties who will not receive a copy through the Court's CM/ECF system

pursuant to the Federal Rules of Bankruptcy Procedure and this Court's Local Rules and file a certificate of service to that effect within three (3) days.

New Orleans, Louisiana, July 17, 2024.

_____
MEREDITH S. GRABILL
UNITED STATES BANKRUPTCY JUDGE

# AGREEMENT TO PURCHASE AND SELL
### (Page 1 of 9)

Effective Date. April 19, 2024

The parties, hereto and hereafter defined and referred to as PURCHASER and SELLER, agree to purchase and sell the Property described herein based on the price and terms as stipulated in this Agreement.

The PURCHASER is identified, collectively, as **DR. COURTNEY BRASHIER AND JAMES BRASHIER AND/OR ASSIGNS**. The SELLER is identified as **THE ROMAN CATHOLIC CHURCH OF THE ARCHDIOCESE OF NEW ORLEANS**, herein represented by Very Reverend Patrick R. Carr, Third Vice President and Vicar of Finance. All parties stated are now hereby identified and herewith referred to as Purchaser and Seller. The sole brokers involved in this transaction are TMC Realty, LLC d/b/a The McEnery Company ("Seller's Broker") and McEnery Residential, LLC ("Purchaser's Broker;" together with Seller's Broker, the "Brokers").

**Section 1: PROPERTY DESCRIPTION.** The property is identified by the municipal address of 3003-3009 S. Carrollton Avenue, New Orleans, Louisiana 70118 (the "Property").[1] The Property is further identified by Exhibits A, B, C and D attached hereto, and all parties hereby agree that verification of the precise location and size of the Property may, at the Purchaser's election, be confirmed through procurement of a new survey of the site to be paid for by the Purchaser.

**Section 2: PURCHASE PRICE & TERMS.** The Property is sold and purchased subject to title, zoning restrictions, servitudes of record, all applicable laws and local ordinances, and real estate commissions for the sum of **Eight Hundred Fifty Thousand Dollars and No/100 ($850,000.00)** (the "Purchase Price") to be paid in ALL CASH at the Act of the Sale.

**Section 3: DEPOSIT.** Upon acceptance of this offer, Seller and Purchaser shall immediately be bound by all of its terms and conditions, and Purchaser becomes obligated to deposit immediately in the escrow account of Seller's Broker the sum of **Twenty Thousand Dollars and No/100 ($20,000.00)** (the "Deposit") in cash or check. Failure to do so within three (3) business days shall be considered a breach of this Agreement, and Seller may terminate this Agreement at its option. The Deposit is to be non-interest bearing and shall be placed in any federally insured banking or savings and loan institution, without responsibility on the part of Seller's Broker in case of failure or suspension of such institution. Said Deposit is applicable to the Purchase Price at an Act of Sale and fully refundable within the "Due Diligence Period," which shall commence on the Effective Date of this Agreement and run through the **sixtieth (60th) calendar day** thereafter. If, prior to the expiration of the Due Diligence Period, Purchaser does not provide written notice of intent to cancel all terms of this Agreement as prescribed herein, the entire amount of this Deposit will become fully non-refundable; and still fully applicable to the Purchase Price.

**Section 4: DUE DILIGENCE PERIOD.** This Agreement to purchase the Property described above is conditioned on Purchaser acceptance of the Property based on due diligence including but not limited to general inspections, evaluations and tests of surveying, condition assessments of existing improvements, environmental site assessment, site and floor planning, historic tax credit financing potential, building size and floor plan confirmation, review and acceptance of the current zoning designation of the Property, engineering, and tests of financial feasibility that the Purchaser may require; and at Purchaser's option obtaining of lawful and proper zoning designations or waivers necessary to accomplish the purposes for which Purchaser intends for the Property.

---

[1] For the avoidance of doubt, the Property does not include 3017-3019 S. Carrollton Avenue, New Orleans, Louisiana 70118.

#102208346v2

*The McEnery Co. PSA Contract*

**EXHIBIT 1**

# AGREEMENT TO PURCHASE AND SELL
### (Page 2 of 9)

All tests performed are done so at the sole cost of Purchaser. Purchaser shall have until the Due Diligence Deadline (as defined below) to perform all such tests and inspections.

Purchaser shall hold Seller harmless and shall defend and indemnify Seller from all costs, damage, outlay and expense occasioned by Purchaser's exercise of its rights granted in this Section. Purchaser's indemnity obligations shall survive the closing or termination of this Agreement.

In the event that any of the results of the tests, inspections, and evaluations performed are deemed by the Purchaser as unsatisfactory, the Purchaser may elect to provide a notice of cancellation of this Agreement on or before the **sixtieth (60th) calendar day** after the Effective Date (the "Due Diligence Deadline"). If the Purchaser notifies the Seller's Broker and the Seller of such cancellation on or before the Due Diligence Deadline, then the Purchaser's Deposit will be returned to Purchaser in full, and this Agreement will become null and void and have no continuing force under law. Failure of the Purchaser to notify the Seller's Broker and the Seller of a notice of cancellation on or before the Due Diligence Deadline shall constitute notice of intent to proceed to the Act of Sale, in which case the Deposit becomes non-refundable but still applicable to the Purchase Price.

**Section 5: ACCESS.** Purchaser and Purchaser's representatives have the right, during the Due Diligence Period, to enter the Property at their own cost and risk to make the surveys, assessments, inspections and tests (collectively, the "Inspections") that Purchaser reasonably considers necessary to satisfy the conditions of the Due Diligence Period. Seller must provide Purchaser and Purchaser's representatives with reasonable access to the Property at reasonable times to conduct the Inspections. Seller has the right to designate a representative to accompany Purchaser or Purchaser's representatives on an inspection.

Purchaser shall provide a certificate of insurance, in a form acceptable to Seller and naming Seller as additional insured thereon, evidencing insurance coverage of the Purchaser Actors prior to entering the Property for the Inspections.

Purchaser and its successors and assigns shall indemnify, defend at its sole cost and expense and hold Seller, Seller's heirs, legal representatives, lessees, tenants, successors and assigns, as well as owner, member, trustee, beneficiary, director or officer of Seller ("Seller Indemnified Parties") harmless from and against any and all claims, losses, liabilities, costs, causes of action, settlements, awards, penalties, fees, assessments, fines, charges, demands, liens, damages, reasonable attorney's fees, and judgments of every kind or character, known or unknown, fixed or contingent, arising in whole or in part out of or related to the due diligence activities, feasibility study, investigation, inspections, activities, presence, acts or omissions of Purchaser, its servants, agents, employees, contractors, subcontractors, licensees, or any other person or entity acting by, through or under Purchaser while on the Property (collectively, the "Purchaser Actors") including without limitation any claims arising from negligence, personal injury, death, property damage or nuisance (the "Indemnified Damages"). Notwithstanding the forgoing, Purchaser shall not be required to indemnify the Seller Indemnified Parties for the gross negligence or willful misconduct of the Seller. The provisions of this indemnity shall survive termination of this Agreement.

**Section 6: POSSESSION AND OCCUPANCY.** Possession and occupancy of the Property shall occur on the day of the passing of the Act of Sale. The Seller shall deliver the Property vacant and unencumbered by any binding lease agreements. The Seller hereby warrants that there are no binding lease agreements in place with lease terms that exceed the Act of Sale date contemplated by this Agreement.

#102208346v2

*The McEnery Co. PSA Contract*

## AGREEMENT TO PURCHASE AND SELL
(Page 3 of 9)

**Section 7: LIENS.** All improvement liens, mechanics liens and assessments of any kind bearing against the Property and resulting from the actions of Seller at time of Act of Sale are to be paid by Seller to the extent permitted under §§ 105(a), 363, and 365 of the Bankruptcy Code, subject to the Permitted Exceptions.

**Section 8: PRORATIONS.** Real estate taxes, if any, and rentals are to be prorated to the date of Act of Sale.

**Section 9: RIGHT OF ASSIGNMENT.** Purchaser has the right to assign this Agreement to any entity, subject to Seller's reasonable right to approve the assignee.

**Section 10: CLOSING COSTS.** Seller shall be responsible for the fees of its own outside legal counsel, as well as any transfer taxes. Purchaser shall be responsible for the fees of its closing attorney, additional outside legal counsel, due diligence related expenses, premiums for any lender or owner's title insurance policies, the cost of a survey, the cost of any title abstract and title examination, and preparation and recordation of the Act of Sale, and Purchaser related document recording costs. Any other costs, charges, and/or expenses shall be borne in accordance with custom.

**Section 11: ACT OF SALE.** Time being of the essence, the Act of Sale, at expense of Purchaser, is to be passed before Purchaser's Notary Public within **thirty-five (35) calendar days** after the Due Diligence Deadline. The Act of Sale shall occur at a location within the Greater New Orleans Metropolitan Area. The Act of Sale shall occur during normal business hours and during a business day.

**Section 12: MULTIPLE COUNTERPARTS.** Whether by e-mail or facsimile or by original copy, signature by both Purchaser and Seller of this Agreement in multiple counterparts shall constitute an executed agreement.

**Section 13: LOUISIANA LAW REGARDING DEPOSITS.** In the event the parties fail to execute an Act of Sale by the date specified herein, and/or a dispute exists as to ownership of, or entitlement to the Deposit or funds held in escrow, Seller's Broker shall abide by the rules and regulations set forth by the Louisiana Real Estate Commission governing such matters, which instruct Seller's Broker to deposit the funds into the registry of any court of proper jurisdiction and venue.

**Section 14: PROPERTY CONDITION; WAIVER OF WARRANTIES.** The Property will be sold with no warranty of title, except that Seller will warrant title against its own acts and the acts of anyone claiming by, through or under it, subject to Permitted Exceptions (as defined below). Purchaser and Seller agree that the Property shall be sold "AS IS" without any implied or express warranty whatsoever, except that Purchaser shall have full substitution and subrogation in and to all the rights and actions of warranty which Seller has or may have against all preceding owners and possessors. The following language shall be included in the Act of Sale:

(a)  Seller hereby disclaims any implied or express warranty, guaranty or representation, oral or written, past, present or future, of, as to, or concerning (i) the nature and condition of the Property, including the suitability thereof for any and all activities and uses which Purchaser may elect to conduct thereon; (ii) the existence or non-existence of any environmental hazards or conditions thereon (including the presence of asbestos, toxic mold and/or lead based paint) or compliance with all applicable environmental laws, rules or regulations; and (iii) the compliance of the Property or its operations with any laws, ordinances or regulations of any governmental or other body.

#102208346v2

*The McEnery Co. PSA Contract*

# AGREEMENT TO PURCHASE AND SELL
### (Page 4 of 9)

(b)     Purchaser acknowledges that neither Seller nor any party, whomsoever, acting or purporting to act in any capacity whatsoever on behalf of the Seller has made any direct, indirect, explicit or implicit statement, representation or declaration, whether by written or oral statement or otherwise, and upon which the Purchaser has relied, concerning the existence or non-existence of any quality, characteristic or condition of the Property herein conveyed. Purchaser has had full, complete and unlimited access to the Property herein conveyed for all surveys, tests and inspections which Purchaser, in Purchaser's sole discretion, deems sufficiently necessary for the protection of Purchaser's interests.

(c)     Purchaser agrees that Seller shall not be responsible or liable to Purchaser for any construction defect, errors, omissions or on account of any other conditions affecting the Property, if any, as Purchaser is purchasing the Property AS IS, WHERE IS and WITH ALL DEFECTS AND VICES, WHETHER LATENT OR APPARENT, KNOWN OR UNKNOWN. Purchaser hereby fully releases Seller, its members, employees, officers, directors, representatives and agents from any and all claims that it may now have or hereafter acquire against Seller, its members, employees, officers, directors, partners, representatives and agents for any cost, loss, liability, damage, expense, demand, action or cause of action arising from or related to any construction defects, errors, omissions, or other conditions affecting the Property. Purchaser further acknowledges and agrees that this release shall be given full force and effect, according to each of its expressed terms and provisions, including, but not limited to, those relating to unknown and unsuspected claims, damages and causes of action. Purchaser expressly waives the warranty of fitness and warranty against redhibitory vices imposed by Louisiana Civil Code Articles 2475 and 2524 or any other applicable state or federal law. Purchaser further waives any rights it may have in redhibition or to a reduction in or restitution of Purchase Price and revenues and/or costs pursuant to Louisiana Civil Code Articles 2520 to 2548, inclusive, in connection with the purchase of the Property. Purchaser expressly acknowledges such waivers and Purchaser's express exercise of its rights to waive warranty pursuant to Louisiana Civil Code Article 2548.

(d)     As allowed by law to its fullest extent, pursuant to contract, Purchaser agrees to further waive and release Seller from any and all claims, demands, causes of action, liens, loss, damage, liabilities, costs and expenses (including reasonable attorney fees, court costs, consultant's fees, remediation, cleanup or other response costs) of any and every kind or character, known or unknown, fixed or contingent, suffered or incurred by Purchaser, its successors or assigns, as a successor in interest to the Seller, as owner of the Property, under the Resource Conservation and Recovery Act, 42 U.S.C.A. §§ 6901 et seq.; the Comprehensive Environmental Response, Compensation and Liability Act, 42 U.S.C.A. §§ 9607 et seq., as amended by the Superfund Amendment and Reauthorization Act of 1986, Pub. L. No. 99-499, 100 Stat. 1613 (codified as amended in various sections of 42 U.S.C.A. App. §§ 93-633, 88); the Hazardous Materials Transportation Act, Pub. L. No. Stat. 2156 (codified as amended in various sections of 46 U.S.C.A.); the Clean Water Act, 33 U.S.C.A. §§ 1251 et seq.; the Clean Air Act, 42 U.S.C.A. §§ 7401 et seq.; the Toxic Substances Control Act, 15 U.S.C.A. §§ 2601 et seq.; the Louisiana Environmental Quality Act, La Rev Stat Ann §§ 30:2001 et seq.; or any other applicable federal, state or local laws, rules, ordinances, permits, approvals, orders or regulations as they now exist or may subsequently be modified, supplemented or amended, relating to the environment.

**Section 15: MERCHANTABLE TITLE.** Purchaser's obligation to acquire the Property is subject to the condition that, at the closing, Seller delivers to Purchaser merchantable title to the Property subject only to the Permitted Exceptions, and Purchaser's obligation to purchase the Property is contingent upon Purchaser being able to obtain an ATLA owner's title policy at Purchaser's cost ensuring that Purchaser is obtaining merchantable title free and clear of any liens and encumbrances other than the Permitted Exceptions.

#102208346v2

*The McEnery Co. PSA Contract*

# AGREEMENT TO PURCHASE AND SELL
### (Page 5 of 9)

During the Due Diligence Period, Purchaser, at Purchaser's sole cost and expense, may inspect the condition of Seller's title to the Property. Purchaser shall notify Seller in writing on or before the Due Diligence Deadline of any title matter that renders Seller's title to the Property unmerchantable, except for the Permitted Exceptions (as defined below) ("Title Objections"). If Purchaser notifies Seller of a Title Objection during the Due Diligence Period, Seller has the option to either: (a) terminate this Agreement, in which event neither party shall have any further rights or obligations under this Agreement (except for the ones that expressly survive termination of this Agreement) and the Deposit must be returned to Purchaser; or (b) elect to attempt to cure the Title Objections at the Seller's sole cost and expense by providing a written notice of this election to Purchaser no later than 30 days after receipt of notice of a Title Objection.

If Seller fails to elect to attempt to cure the Title Objections within this 30-day period, Seller will be deemed to have elected to terminate this Agreement.

If Seller elects to attempt to cure the Title Objections, Seller has until the closing to cure the Title Objections and, if additional time is required to cure the Title Objections, the closing will be extended for a period not to exceed 30 days to allow Seller additional time to attempt to cure the Title Objections.

If Seller is unable to cure the Title Objections by the closing, as extended as set forth above, this Agreement is terminated, in which event neither party shall have any further rights or obligations under this Agreement (except for the ones that expressly survive termination of this Agreement) and the Deposit will be returned to Purchaser.

As used within this Agreement, "Permitted Exceptions" means: (a) liens for real estate taxes that are not yet due and payable at the time of the closing; (b) liens and encumbrances that may be discharged out of the Purchase Price payable to Seller; (c) expired mineral reservations and expired mineral leases; and (d) all other matters existing and appearing of record as of the date of this Agreement to which Purchaser does not object in writing before the end of the Due Diligence Period.

**Section 16: DEFAULT.** In the event Seller fails to comply with this Agreement for any reason other than merchantable title, within the time specified, then Purchaser shall have the right either to demand the return of Purchaser's Deposit in full, at which time this Agreement shall be null and void, or Purchaser shall have the right to have any such default cured as referenced above.

In the event Purchaser fails to comply with this Agreement within the time specified, Seller shall have the right to reoffer the property for sale and may declare the Deposit, ipso facto, forfeited without formality. The Deposit monies shall be the Seller's only cure under a Purchaser default.

Attorney's Fees. The prevailing party in any action or proceeding arising out of or pertaining to this Agreement has the right to recover from the other party all reasonable attorney's fees, court costs, real estate commissions due under this sale, and other expenses incurred in connection to this Agreement.

**Section 17: TIME IS OF THE ESSENCE.** Time is of the essence, and all deadlines are final except where modification, changes, or extensions are made in writing and signed by all parties to this Agreement.

**Section 18: REAL ESTATE COMMISSION.** Pursuant to separate listing agreements between Seller's Broker and Seller, a real estate commission equivalent to six percent (6.00%) of the first $375,000.00 of the Purchase Price and five percent (5.00%) of the remainder of the Purchase Price shall be due to Seller's Broker.

## AGREEMENT TO PURCHASE AND SELL
**(Page 6 of 9)**

The commission, which shall be paid by the Seller, is due and payable ONLY upon the Act of Sale. In the event of an Act of Sale, Seller's Broker has agreed to share the commission evenly with Purchaser's Broker by paying Purchaser's Broker fifty percent (50%) of the total commission. Purchaser and Seller hereby acknowledge that no other real estate brokers are involved in the sale, and no commission is due to any real estate broker other than Seller's Broker and Purchaser's Broker. The Purchaser is not responsible for payment of any real estate commission in conjunction with this transaction.

**Section 19: DISCLOSURE.** The Brokers and their agents are not responsible for oral representations made to Purchaser or Seller. This Agreement and any attachments referenced thereto, shall constitute, and does contain, all the terms and conditions of the agreement between the parties.

**Section 20: NOTICE.** Any notice provided for herein must be in writing and will be deemed given when deposited by certified mail (regardless of when or if received by the addressee), sent via email, facsimile transmission, or when actually delivered in person to the parties or their designated agents at the following address or at such other addressee as they may from time to time direct.

| | |
|---|---|
| SELLER: | THE ROMAN CATHOLIC CHURCH OF THE ARCHDIOCESE OF NEW ORLEANS<br>7887 Walmsley Avenue<br>New Orleans, Louisiana 70125<br>Attention: Fr. Patrick R. Carr, Third Vice President and Vicar of Finance<br>pcarr@arch-no.org<br><br>With copy to:<br>The McEnery Company<br>810 Union Street, Fourth Floor<br>New Orleans, Louisiana 70112<br>Attention: Pat Browne III<br>pat@mceneryco.com |
| PURCHASER: | DR. COURTNEY BRASHIER AND JAMES BRASHIER<br>4223 Chestnut Street<br>New Orleans, Louisiana 70115<br>Attention: Dr. Courtney Brashier and James Brashier<br>drcbraisher@gmail.com<br>brashier.james@cadenceinsurance.com<br><br>With copy to:<br>McEnery Residential, LLC<br>4901 Magazine Street<br>New Orleans, Louisiana 70115<br>Attention: Gillian Talbot and Jen Lott<br>gilliantalbotrealtor@gmail.com<br>jenlstpaul@gmail.com |

# AGREEMENT TO PURCHASE AND SELL
**(Page 7 of 9)**

**Section 21: DEED RESTRICTION.** Purchaser acknowledges the following restrictions on the Property which restrictions shall, to the fullest extent allowed by law, run with the land and be binding on Purchaser and any future owners (the following restrictions are collectively referred to as the "Use Restrictions"):

The Property shall not be used for the following uses or purposes:

1. An abortion clinic or medical-service-type facility that includes the provision of abortion services or counseling that promotes and/or encourages individuals to obtain abortions; or
2. A counseling service that includes as part of its options and/or recommendation to clients the consideration of abortion as an alternative to carrying a pregnancy through birth; or
3. An organization that advocates, in any manner, abortion or right of free choice of an individual to elect abortion.

**Section 22: SELLER BANKRUPTCY DISCLOSURE.** Purchaser hereby acknowledges that Seller is a debtor in possession in proceedings commenced under Chapter 11 of the Bankruptcy Code, captioned *In re The Roman Catholic Church of the Archdiocese of New Orleans*, Case No. 20-10846 (Bankr. E.D. La.) (the "Chapter 11 Case"). Purchaser herein acknowledges and agrees that this Agreement, as may be amended, and any and all obligations of Seller are and shall be subject to approval of the bankruptcy court having jurisdiction over the Chapter 11 Case (the "Bankruptcy Court") and that the Act of Sale shall be passed only upon issuance of an Order authorizing sale of the Property ("Sale Order") after all appropriate procedures have been followed, including but not limited to, provision of notice to appropriate creditors and parties in interest. Seller hereby agrees to file a motion requesting authority from the Bankruptcy Court to sell the Property as contemplated in this Agreement (the "Sale Motion"). Seller shall make a good faith effort to file the Sale Motion on or before June 27, 2024, in which case the Sale Motion will be noticed for hearing on July 18, 2024. The Sale Order shall provide (i) that Purchaser shall be in "good faith" and entitled to all of the protections afforded by § 363(m) of the Bankruptcy Code, (ii) that except as provided in this Agreement, Purchaser is not assuming nor shall it in any way whatsoever be liable or responsible, as a successor or otherwise, for any liabilities, debts, or obligations of the Seller or any liabilities, debts, or obligations in any way whatsoever relating to or arising from the Seller's operation or use of the Property and (iii) that the Property shall be sold free and clear of all claims, liens, interests, and encumbrances pursuant to § 363(f) of the Bankruptcy Code, with any such claims, liens, interests, or encumbrances attaching to the proceeds of the Sale in the order of their priority, with the same validity, force, extent, and effect which they now have as against the Property; subject to any claims, defenses and/or offsets that the Debtor or its estate may possess with respect thereto.

If Seller fails to file the Sale Motion by June 27, 2024, Purchaser may, in its sole discretion, terminate this Agreement and the Deposit shall be returned to Purchaser and neither party shall have any further obligation to the other. Further, in the event the Bankruptcy Court does not approve of the sale contemplated by this Agreement, this Agreement shall terminate as of the date of such non-approval, the Deposit shall be returned to Purchaser, and neither party shall (i) be liable to the other party for costs incurred pursuant to this Agreement or (ii) have any further rights or obligations hereunder, except as expressly set forth herein to survive termination of this Agreement.

All claims, actions, proceedings, and lawsuits brought in connection with, arising out of, related to, or seeking enforcement of this Agreement shall be brought in the Courts of the State of Louisiana located in Orleans Parish or in the Bankruptcy Court during the pendency of the Chapter 11 Case.

## AGREEMENT TO PURCHASE AND SELL
### (Page 8 of 9)

**Section 23: SUPERIOR OFFER.** On or about October 20, 2023, Broker publicly listed the Property for sale by launching webpages that feature photographs, an offering memorandum, and hyperlinks to the LACDB and CREXI databases in which the Property is listed. The Property will remain listed in the foregoing manner until the Act of Sale passes. Notwithstanding anything else contained herein, if, on or before the day of the passing of the Act of Sale, Seller receives a higher or better offer, as determined in the reasonable discretion of Seller, from an arms-length, good faith offeror, to purchase the Property, Purchaser has a right to match said offer within 5 business days of Seller providing to Purchaser a written copy of said offer. If Purchaser does not match said offer, as determined in the reasonable discretion of Seller, to purchase the Property, Seller has the right to terminate this Agreement by providing written notice to Purchaser. In the event of Seller's termination as provided herein, this Agreement shall terminate as of the date of Seller's notice, the Deposit shall be returned to Purchaser, and neither party shall (i) be liable to the other party for costs incurred pursuant to this Agreement or (ii) have any further rights or obligations hereunder, except as expressly set forth herein to survive termination of this Agreement.

**Section 24: AUTHORITY.** Purchaser and Seller shall provide such proof of authority and authorization to enter into this Agreement and the transactions contemplated hereby, subject to the approval of the Bankruptcy Court as required in Section 22 above, and such proof of the power and authority of the individual(s) executing or delivering any documents or certificates on behalf of Purchaser and Seller as may be reasonably required by the closing agent. In the event the Bankruptcy Court's Sale Order authorizes the Seller to execute the closing documents, said order shall satisfy this section's requirements of the Seller.

**Section 25: EXPIRATION.** This offer to purchase and sell shall remain binding and irrevocable through 5:00 p.m. CST on April 19, 2024. The parties hereto have executed this Agreement on the dates hereinafter set forth.

**[SIGNATURES ON THE FOLLOWING PAGE]**

#102208346v2

*The McEnery Co. PSA Contract*

# AGREEMENT TO PURCHASE AND SELL
### (Page 9 of 9)

**SELLER:**

**THE ROMAN CATHOLIC CHURCH OF THE ARCHDIOCESE OF NEW ORLEANS**

By: _____*Patrick Carr*_____
  AD96222B7B1F433...

Very Reverend Patrick R. Carr
Its: Third Vice President and Vicar of Finance

Date: 4/22/2024

**PURCHASER:**
**DR. COURTNEY BRASHIER AND JAMES BRASHIER**

By: _*Courtney Brashier*_  (dotloop verified 04/22/24 10:42 AM EDT  8TSW-UVOT-WENB-LYQO)
Dr. Courtney Brashier

Date: 04/19/2024

By: _*James Brashier*_  (dotloop verified 04/22/24 9:37 AM CDT  ZNN5-YRHI-ULNZ-IWDE)
James Brashier

Date: 04/19/2024

#102208346v2

*The McEnery Co. PSA Contract*

**Exhibit A**



#102208346v2

*The McEnery Co. PSA Contract*

**Exhibit B**



**Exhibit C**



#102208346v2

*The McEnery Co. PSA Contract*

# Exhibit D

PROPERTY DESCRIPTION

Case No.: 2004-12231
Municipal No., if applicable: 3013 SOUTH CARROLLTON AVENUE and 3017 SOUTH CARROLLTON AVENUE
Previous Acquisition: CIN 211354    MIN 590325
Sheriff's Sale Book A-130, Page 90

THOSE CERTAIN PORTIONS OF GROUND, TOGETHER WITH ALL OF THE BUILDINGS AND IMPROVEMENTS THEREON LOCATED, IN THE SEVENTH DISTRICT OF THE CITY OF NEW ORLEANS, STATE OF LOUISIANA, IN SQUARE NO. 456 THEREOF, WHICH SQUARE 456 IS BOUNDED BY CARROLLTON AVENUE, FIG, SHORT AND COLAPISSA STREETS, AND ARE DESIGNATED AS LOT NOS. 17, PART OF LOT 16 AND LOT 18. LOT 18 COMMENCES 90 FEET, 2 INCHES, 2 LINES FROM THE INTERSECTION OF FIG STREET AND CARROLLTON AVENUE AS PER SURVEY OF W.J. SEGHERS, DATED APRIL 20, 1921, AND MEASURES THENCE 30 FEET, 6 LINES FRONT ON CARROLLTON AVENUE, SAME WIDTH IN THE REAR, BY DEPTHS OF 125 FEET EACH. SAID PROPERTY BEARS THE MAILING ADDRESS OF 3013 SOUTH CARROLLTON AVE. ACQUIRED COB 774 FOLIO 345 AND COB 709 FOLIO 509.
LOT 17, SAID SQUARE 456, ADJOINS LOT 18 AND COMMENCES 120 FEET FROM THE INTERSECTION OF FIG STREET AND CARROLLTON AVENUE, AND MEASURES THENCE 30 FEET, 0 INCHES, 6 LINES FRONT ON CARROLLTON AVENUE, SAME WIDTH IN THE REAR, BY DEPTHS OF 125 FEET EACH.
PART OF LOT 16, SAID SQUARE 456, ADJOINS THE REAR OF LOT 17 AND MEASURES 40 FEET FRONT ON COLAPISSA STREET, SAME WIDTH IN THE REAR, BY DEPTHS OF 30 FEET, 0 INCHES, 6 LINES EACH. LOT 17 AND THE DESCRIBED PORTION OF LOT 16 ARE MAILING ADDRESS 3017 SOUTH CARROLLTON AVENUE AND WERE ACQUIRED AT COB 709 FOLIO 509.

#102208346v2

*The McEnery Co. PSA Contract*