**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| In re: | § | |
| | § | **Case No. 20-10846** |
| **THE ROMAN CATHOLIC CHURCH** | § | |
| **OF THE ARCHDIOCESE OF NEW** | § | **Section "A"** |
| **ORLEANS,** | § | |
| | § | **Chapter 11** |
| Debtor.[1] | § | |
| | § | |

---

### DEBTOR'S OBJECTION TO U.S. FIRE INSURANCE COMPANY'S AND INTERNATIONAL INSURANCE COMPANY'S MOTION FOR AN ORDER COMPELLING PRODUCTION OF DOCUMENTS PURSUANT TO THEIR BANKRUPTCY RULE 2004 REQUESTS ON THE DEBTOR

NOW INTO COURT, through undersigned counsel, comes The Roman Catholic Church of the Archdiocese of New Orleans, the above-captioned debtor and debtor-in-possession (the "**Debtor**" or "**Archdiocese**"), who files this objection ("**Objection**") to *U.S. Fire Insurance Company's and International Insurance Company's Motion for an Order Compelling Production of Documents Pursuant to Their Bankruptcy Rule 2004 Requests on the Debtor* [ECF No. 3709] (the "**Motion**") filed by U.S. Fire Insurance Company and International Insurance Company (collectively, "**Movants**").  In support of this Objection, the Debtor respectfully states as follows:

#### Preliminary Statement

1.      Movants, two of the Debtor's excess insurance carriers, seek an Order compelling the Debtor to produce three categories of documents: (1) all documents provided to the Louisiana State Police ("**LASP**") in response to a criminal search warrant served on the Debtor in April 2024 (Request #3); (2) the Debtor's document retention and destruction policy (Request #7); and (3) all

---

[1] The last four digits of the Debtor's federal tax identification number are 8966. The Debtor's principal place of business is located at 7887 Walmsley Ave., New Orleans, LA  70125.

documents that the Debtor and the Official Committee of Unsecured Creditors (the "**Committee**") have exchanged concerning the sexual abuse claims (Request #1).

2.      The Motion was filed prematurely following a discovery conference in which the Debtor advised that: (a) the Committee and the insurers had received copies of all documents provided to the LASP, except that the copies provided to the LASP (1) did not contain redactions that had been made to some of the documents previously produced to the Committee and the insurers due to confidentiality provisions in various settlement agreements, and (2) had different bates numbers than those previously produced to the Committee and the insurers; (b) it would consider Movants' request for an actual copy of the bates-labeled documents provided to the LASP; (c) it believed that it already had provided all of the other documents requested; and (d) it would provide any additional documents if located.  Despite this discovery conference, Movants rushed into filing the Motion in an apparent attempt to manufacture a dispute where none exists.

### Relevant Background

3.      On December 3, 2024, the Court issued an Order allowing all parties in interest to propound formal or informal Rule 2004 discovery requests on the Debtor or any other party in interest by December 6, 2024.  [ECF No. 3554].  Pursuant to the Order, responses would be due on a rolling basis through January 3, 2025.  [*Id.*].

4.      On December 6, 2024, Movants filed and served Rule 2004 Requests directed to the Debtor consisting of nine requests.  [ECF No. 3568].  That same day, the Debtor also served its own Rule 2004 Requests upon Movants.

5.      On January 3, 2025, Movants served their responses and objections to the Debtor's requests.  Movants did not produce a single document.

#103515048v1

6.     That same day, the Debtor served its objections and responses to Movants' requests. [ECF No. 3709-2].  In connection with its responses, the Debtor clearly stated that it previously had produced the vast majority of the documents requested by Movants, made a good faith effort to assist Movants in identifying where such documents were located, and produced additional documents that previously had not been produced.  Among other things, the Debtor: (a) referred Movants to volumes and bates numbers of responsive documents that previously had been produced to them; (b) provided a Personnel and Abuse Document Chart for guidance; and (c) provided a ShareFile link to the new documents that were being produced, including documents regarding Hope Haven and Madonna Manor, cover letters sent to the LASP, and additional insurance documents.

7.     On January 6, 2025, the Debtor provided Movants with a ShareFile link to additional documents that were being produced, specifically, miscellaneous documents and agreements concerning Catholic entities that are not owned, operated, or controlled by the Debtor or the Apostolates.

8.     Later, on January 21, 2025, the Debtor provided Movants with a copy of a financial document that had been produced to the Committee that day.

9.     On January 24, 2025, the Debtor produced to the Committee and all insurers production volume 73, consisting of additional documents relating to late-filed abuse claims and other miscellaneous documents.

10.     At Movants' request, on January 27, 2025, Debtor's counsel met and conferred with Movants' counsel by telephone regarding the Debtor's responses to Movants' requests.  During the call, in response to questions by Movants' counsel, Debtor's counsel clarified that production volume 73 had been added to an existing ShareFile folder containing prior productions.  In other

#103515048v1

words, production volume 73 was the only "new" production made on January 24, 2025. Additionally, Movants' counsel asked the Debtor to amend and clarify its responses to Requests for Production Nos. 1 (documents exchanged with the Committee regarding sexual abuse claims), 3 (documents provided to the LASP), and 7 (document retention and destruction policies).

11.     Although Debtor's counsel agreed to consider these requests, Movants filed the Motion two days later, prior to receiving the Debtor's response and without notice to the Debtor. Had Movants meaningfully conferred with the Debtor, Movants would have known that the Motion was unnecessary.

## Argument

### A.  Movants Must Establish "Good Cause" for the Requested Relief.

12.     Rule 2004 of the Federal Rules of Bankruptcy Procedure ("**Rule 2004**") authorizes this Court to order the examination of any entity relating "to the acts, conduct, or property or to the liabilities and financial condition of the debtor, or to any matter which may affect the administration of the debtor's estate, or to the debtor's right to a discharge."  Fed. R. Bankr. P. 2004(a)-(b).  While the scope of a Rule 2004 examination is broad, it is not limitless.  *See, e.g.*, *In re Buccaneer Res., LLC*, No. 14-60041, 2015 Bankr. LEXIS 4203, at *19 (Bankr. S.D. Tex. Dec. 10, 2015) ("Though long recognized that the scope of a 2004 examination is broad, it is not limitless.") (citing *In re Eagle-Picher Indus., Inc.*, 169 B.R. 130, 134 (Bankr. S.D. Ohio 1994); *In re Texaco, Inc.*, 79 B.R. 551, 553 (Bankr. S.D.N.Y. 1987)).  The discovery requested "should not be so broad as to be more disruptive and costly to the debtor than beneficial to the [movant]."  *In re Brown*, No. 18-10617, 2018 Bankr. LEXIS 3138, at *11 (Bankr. S.D.N.Y. Oct. 11, 2018) (citations omitted).

4

13.     In evaluating the propriety of Rule 2004 discovery, "the Court must 'balance the competing interests of the parties, weighing the relevance of and necessity of the information sought by examination.'"  *In re SunEdison, Inc.*, 562 B.R. 243, 249 (Bankr. S.D.N.Y. 2017) (quoting *In re Drexel Burnham Lambert Grp., Inc.*, 123 B.R. 702, 712 (Bankr. S.D.N.Y. 1991)). Significantly, "[t]hat documents meet the requirement of relevance does not alone demonstrate that there is good cause for requiring their production." *Id.* (quoting *Drexel Burnham*, 123 B.R. at 712).

14.     Movants, as the parties seeking Rule 2004 discovery, bear "the burden to show good cause for the examination [they] seek[ ], and relief lies within the sound discretion of the Bankruptcy Court." *Id.* (citing *Picard v. Marshall (In re Bernard L. Madoff Inv. Secs. LLC)*, Adv. No. 08-01789, 2014 Bankr. LEXIS 4603, 2014 WL 5486279, at \*2 (Bankr. S.D.N.Y. Oct. 30, 2014); *In re Bd. of Dirs. of Hopewell Int'l Ins. Ltd.*, 258 B.R. 580, 587 (Bankr. S.D.N.Y. 2001)).

## B.  The Debtor Has Provided, or Agreed to Provide, All Documents Requested.

### a.  LASP Warrant Production.

15.     As explained to Movants' counsel on at least three separate occasions, the Debtor believes that the Committee and the insurers already have received access to copies of all documents provided to the LASP.  As previously explained, the only difference is that the copies provided to the LASP (1) do not contain certain redactions for confidentiality reasons that had been made to the documents previously produced to the Committee and the insurers, and (2) have different bates numbers than those previously produced to the Committee and the insurers.

16.     In response to discovery requests for abuse-related documents, certain redactions were made to documents produced to the Committee due to confidentiality provisions in various settlement agreements with abuse survivors prohibiting the disclosure of information regarding the

5

survivor. Those documents were shared with the insurers with the same redactions. However, copies of such documents were provided to the LASP without these redactions and with unique bates numbers.

17. The Debtor was concerned that it may violate the confidentiality provisions in the settlement agreements if it were to produce unredacted copies of these documents to the Committee and the insurers. The Debtor further believed that it was unnecessary to do so because the substance of the redacted documents was clear. Nevertheless, because of the concerns expressed by Movants that they want to see the actual documents provided to the LASP to ensure they have received all such documents, the Debtor is willing to share with the Committee and the insurers the identical production given to the LASP, provided that the Court enters an Order authorizing it to be produced subject to an "Insurer and Committee Attorneys' Eyes Only" confidentiality designation. As explained below, an Order and such a designation are necessary to comply with the confidentiality provisions in certain settlement agreements and to ensure the confidentiality of the information.

18. There never was any intention of the Debtor to keep from the Committee or the insurers documents that had been provided to the LASP. Indeed, on at least three separate occasions, the Debtor has explained to Movants the way in which the documents had been provided to the Committee and insurers, and to the LASP, and the reasons for the differences.

19. _*First*_, in December 2024, counsel for Movants sent an email that raised the issue of whether the Debtor had failed to produce certain abuse-related documents to Movants that had been produced to the LASP. According to counsel for Movants, the press ran pictures and videos of the police leaving the Debtor's offices with boxes of documents after serving the search warrant; therefore, it was contended that the documents pictured must not have been previously produced.

6

Debtor's counsel responded that he was not aware of any such pictures or videos and explained that the Committee and the insurers already had received the same documents that were produced to the LASP, although the documents were produced with different redactions and in a different order.

20. **_Second_**, on January 3, 2025, in response to Movants' Request for Production No. 3, which formally sought a complete set of the documents provided to the LASP, the Debtor once again explained that the Committee and the insurers already had received copies of all documents provided to the LASP, although the documents contained different redactions.[2] As part of its response, the Debtor also produced to Movants seven (7) cover letters that its criminal defense counsel sent to the LASP in connection with the warrant productions. Those cover letters disclose the unique bates ranges used for the productions to the LASP. The Debtor further noted that if it were to locate any documents that had not been produced to the Committee and the insurers, such documents would be produced as soon as possible.

21. **_Third_**, during a telephonic meet and confer on January 27, 2025, Debtor's counsel yet again explained to counsel for Movants that over the course of this bankruptcy hundreds of thousands of pages of financial and abuse-related documents were produced to the Committee via ShareFile on a rolling basis and subsequently shared with the insurers. Debtor's counsel reiterated that all documents given to the LASP had been provided to the Committee and insurers, albeit with different redactions and bates numbers. Debtor's counsel explained that the documents at issue are replete with the names of survivors who entered into pre-petition settlement agreements with the Debtor that require their identities to be kept confidential. When the documents were produced to the Committee in discovery, Committee counsel agreed that the Debtor could redact the names

---

[2] *See* ECF No. 3709-2.

of the referenced survivors to comply with the confidentiality provisions. Those documents subsequently were shared with the insurers with the same redactions. However, upon the advice of criminal defense counsel, the same documents generally were redacted **_only_** for purposes of the attorney-client privilege when provided to the LASP.

22.     In the discovery conference, when Movants' counsel requested an exact copy of the documents in the form provided to the LASP (i.e., bates-numbered copies without redactions), Debtor's counsel stated that they did not want to violate the confidentiality provisions in certain settlement agreements and continued to have confidentiality concerns, but would consider the request.

23.     Two days later, without waiting for a response or notifying the Debtor, Movants filed the Motion, doubling down on the patently false tale that "[n]ews photos and videos show the State leaving the Archdiocese headquarters in May 2024 after the State's service of its search warrant without a corresponding document supplementation of the bankruptcy production." [ECF No. 3709, ¶ 4]. The very article upon which Movants rely to support this frivolous claim is devoid of any such images or videos. *See* [ECF No. 3709-3].

24.     To be clear, the Debtor provided to the LASP seven batches of documents, which collectively comprise more than 248,000 pages and bear the unique bates prefix "ANO (23-161476)__." Those documents generally were redacted only for purposes of the attorney-client privilege, whereas the same documents also had been redacted in accordance with confidential settlement agreements when produced to the Committee and the insurers. (Privilege logs were provided to the Committee and the insurers detailing such redactions.) As explained to counsel for Movants, to produce to the Committee and the insurers the bates-numbered documents provided to the LASP, but with the redactions which would be required under the various

settlement agreements, would require the Debtor to search through more than 248,000 pages to locate and redact the survivor names at issue.  Such an undertaking would be impracticable, if not impossible.   Moreover, the Debtor maintained that such an endeavor should be entirely unnecessary because the same documents already had been produced to the Committee and the insurers in redacted form.

25.     However, because of the questions raised by Movants, the Debtor now proposes a workaround that would allow production to the Committee and the insurers of the actual unredacted, bates-labeled documents provided to the LASP.

26.     The Fifth Circuit strictly enforces the obligation to comply with confidentiality provisions in settlement agreements.  *See, e.g., Toon v. Wackenhut Corr. Corp.*, 250 F.3d 950, 952-55 (5th Cir. 2001) (affirming district court's imposition of sanctions on counsel who failed to file a motion under seal "without any valid reason to violate the confidentiality provision").  However, if a confidential settlement agreement requested in discovery is relevant to a claim or defense, a party may be obligated to produce it subject to a protective order or other appropriate instruction from the Court.  *See Childers v. Rent-A-Ctr. E., Inc.*, No. 21-960, 2024 U.S. Dist. LEXIS 167999, at *5 (E.D. La. Sep. 17, 2024) ("Discovery of confidential settlement agreements is generally available under an appropriate protective order."); *see also St. Bernard Par. v. Lafarge N. Am., Inc.*, 914 F.3d 969, 975 (5th Cir. 2019) (same); *Cleveland Constr., Inc. v. Whitehouse Hotel Ltd. P'ship*, No. 01-2666, 2004 U.S. Dist. LEXIS 3058, at *4-5 (E.D. La. Feb. 25, 2004) ("The confidentiality provision of the agreement does not preclude its discovery, especially when a protective order can be entered to protect against disclosure of the agreement outside this litigation.").  Some cases also suggest that a court order may be appropriate in these circumstances. *See, e.g., Newby v. Enron Corp. (In re Enron Corp. Sec.)*, 623 F. Supp. 2d 798, 838 (S.D. Tex.

2009) ("Confidentiality clauses in private settlement agreements cannot preclude a court-ordered disclosure pursuant to a valid discovery request."); *Liberty Ins. Underwriters, Inc. v. Labarre*, No. 18-08612, 2022 U.S. Dist. LEXIS 240931, at *8-9 (E.D. La. Jan. 14, 2022) ("Confidentiality clauses in private settlement agreements cannot preclude a court-ordered disclosure pursuant to a valid discovery request . . . . The confidentiality of Defendants' settlement agreement . . . can be preserved in this action by an appropriate protective order.") (internal citations omitted).

27.    In an ordinary case, a simple protective order may be sufficient to preserve the confidentiality of material exchanged in discovery.  That is not so here.  Indeed, the repeated, egregious protective order violations committed during this Chapter 11 Case have created the unfortunate expectation that any material produced—even if designated "Confidential"—will be broadcast to the world.[3]

28.    The experience of this case teaches that simply designating the LASP warrant production as "Confidential" and producing it to all parties subject to this Court's Protective Order

---

[3] In 2022, this Court concluded that an attorney to then-Committee members, "beginning on December 31, 2021, provided on multiple occasions confidential information he received to a third party and the media in direct violation of this Court's Protective Order."  [ECF No. 1574, p. 3; *see also* ECF No. 1844].  As a result of such "bad-faith actions," the Court sanctioned counsel in the amount of $400,000. [ECF No. 1844, pp. 26-29].  These protective order violations resulted in the identity of a survivor who wished to remain anonymous being published in the news.

And just last week, hundreds of emails involving the New Orleans Saints organization—documents that had been designated "Confidential" pursuant to a state court protective order—were featured in local, national, and international news reports.  *See* David Hammer & Ramon Antonio Vargas, *Emails Show New Orleans Saints, Pelicans Helped Catholic Church Spin Clergy Abuse Scandal,* WWL-TV (Feb. 3, 2025), https://www.wwltv.com/article/news/investigations/david-hammer/saints-pelicans-execs-clergy-abuse-list-emails-church-sex-abuse-scandal-archbishop/289-1e9357b9-1579-4a31-9572-c729d19c627b;    Jim Mustian & Brett Martel, *NFL Emails Reveal Extent of Saints' Damage Control for Clergy Sex Abuse Crisis,* ASSOCIATED PRESS  (Feb. 3, 2025),  https://apnews.com/article/new-orleans-saints-catholic-church-sex-abuse-77f92deb50e6333fa04a9db1897f8171; Ramon Antonio Vargas & David Hammer, *The Saints Clergy-Abuse Emails: Five Takeaways From Our Investigation,* GUARDIAN (Feb. 3, 2025), https://www.theguardian.com/us-news/2025/feb/03/new-orleans-clergy-abuse-takeaways.

likely would not be sufficient to preserve the confidentiality of the survivor identities at issue. Some higher level of protection is required.

29.    As a compromise, the Debtor is willing to produce the exact form of documents provided to the LASP, provided that the Court enters an Order authorizing such documents to be produced subject to an "Insurer and Committee Attorneys' Eyes Only" confidentiality designation.[4]

### b. Document Retention and Destruction Policy.

30.    Request for Production No. 7 calls for the document retention and destruction policy of the Debtor in place over the period for which coverage is sought from Movants and two other insurers, Sparta and Travelers.  In response to this request, the Debtor referred Movants to the bates ranges of documents that previously had been produced to the Committee and the insurers.[5]

31.    As reported during the meet and confer on January 27, 2025, Debtor's counsel believed that no other responsive documents exist.  The Debtor has since amended its response to refer Movants to the bates ranges of one additional responsive document that previously was produced and to state that no other responsive documents have been located.

### c. Documents Exchanged Between the Debtor and the Committee Concerning the Sexual Abuse Claims.

32.    Movants also complain that the Debtor has not provided them with certain documents that the Debtor and the Committee have exchanged concerning the sexual abuse claims.

---

[4] Pursuant to the Debtor's proposal, such designation would limit disclosure to the following persons: (a) counsel, and staff working under the express direction of such counsel, for the Debtor's insurance carriers; and (b) counsel, and staff working under the express direction of such counsel, for the Committee.

[5] *See* ECF No. 3709-2.

#103515048v1

This, too, is false.  In response to Request for Production No. 1, the Debtor explained that it previously had produced to the insurers all non-privileged responsive documents regarding the sexual abuse claims.  It further noted that, pursuant to and subject to the mediation privilege, the Debtor also had produced to the insurers certain documents that had been provided to the Committee pursuant to the mediation privilege.[6]

33.     During the meet and confer on January 27, 2025, Movants' counsel specifically requested a copy of a claims matrix prepared by Blank Rome LLP, the Debtor's special insurance counsel.  Although this document is attorney work product, it nevertheless was provided to the Committee and insurers subject to the mediation privilege.  Movants overlooked that they already had the document that they were demanding.  Immediately following the meet and confer, Debtor's counsel confirmed via email to Movants' counsel that Blank Rome's claims matrix previously had been provided to the insurers subject to the mediation privilege.  Debtor's counsel also re-sent the document to them.

34.     The Debtor has since amended its response to Request for Production No. 1 to state that the insurers have received copies of the following documents that were provided to the Committee subject to the mediation privilege: (1) Blank Rome's "Claims Matrix" Excel File; and (2) Jones Walker's "Claims Lists" Excel File.  To the best of the Debtor's knowledge, no other responsive documents exist.

## Conclusion

For the foregoing reasons, the Debtor respectfully requests that this Court enter an Order: (a) authorizing the Debtor to share the identical production given to the LASP with the Committee and the insurers, subject to an "Insurer and Committee Attorneys' Eyes Only" confidentiality

---

[6] *See* ECF No. 3709-2.

#103515048v1

designation;[7] (b) denying the Motion; and (c) granting the Debtor all other and further relief to which it is entitled at law or equity.

Dated: February 13, 2025       Respectfully submitted,

*/s/ Mark A. Mintz*
R. PATRICK VANCE (#13008)
ELIZABETH J. FUTRELL (#05863)
MARK A. MINTZ (#31878)
SAMANTHA A. OPPENHEIM (#38364)
Jones Walker LLP
201 St. Charles Avenue, 51st Floor
New Orleans, LA   70170
Telephone: (504) 582-8000
Facsimile:  (504) 589-8260
Email:  pvance@joneswalker.com
Email:  efutrell@joneswalker.com
Email:  mmintz@joneswalker.com
Email:  soppenheim@joneswalker.com

**ATTORNEYS FOR
THE ROMAN CATHOLIC CHURCH OF
THE ARCHDIOCESE OF NEW ORLEANS**

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of this Objection is being served (a) on February 13, 2025 by electronic case filing for those parties receiving notice via the Court's Electronic Case Filing system; and (b) by email or First Class U.S. Mail, postage prepaid, on all other parties requiring service under the Court's *Ex Parte Order Authorizing the Debtor to Limit Notice and Establishing Notice Procedures* [ECF No. 22], to be sent by Donlin Recano & Company, Inc. ("**DRC**").  DRC shall file a certificate of service to that effect once service is complete.

*/s/ Mark A. Mintz*
Mark A. Mintz

---

[7] As discussed above, the Debtor requests that such designation limit disclosure to the following persons: (a) counsel, and staff working under the express direction of such counsel, for the Debtor's insurance carriers; and (b) counsel, and staff working under the express direction of such counsel, for the Committee.

#103515048v1