## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: | § § § | CASE NO: 20-10846 |
| THE ROMAN CATHOLIC CHURCH OF THE ARCHDIOCESE OF NEW ORLEANS, | § § § § | CHAPTER 11 COMPLEX CASE |
| DEBTOR. | § § § | SECTION A |

### ORDER

Before the Court is the *Debtor's Expedited Motion For Authority To Amend Oakmere Lease Pursuant To §§ 105(a) and 363(b) of the Bankruptcy Code* (the "Motion"), [ECF Doc. 4062].

Considering the record and pleadings, the applicable law, and finding good cause,

**IT IS ORDERED** that the Motion is **GRANTED**.

**IT IS FURTHER ORDERED** that the lease of Parcels L-1 and M-3, Woodmere North, located in Harvey, Louisiana, consisting of approximately 6.47 acres of immovable property (collectively, the "Oakmere Property"), is hereby approved pursuant to the terms of the *Second Lease Extension and Amendment Agreement* (the "Second Amendment"), a copy of which is attached hereto as **Exhibit 1**.

**IT IS FURTHER ORDERED** that all other terms of the *Lease Agreement*, attached hereto as **Exhibit 2** (the "Lease Agreement"), as amended by the *First Lease Extension and Amendment Agreement*, attached hereto as **Exhibit 3** (the "First Amendment"), also are approved and shall remain in effect.

**IT IS FURTHER ORDERED** that the Debtor is authorized to take any and all actions necessary to consummate the transaction approved pursuant to this Order and contemplated by the Second Amendment.

**IT IS FURTHER ORDERED** that Laureate Academy, Inc. is a good-faith lessee within the meaning of 11 U.S.C. § 363(m) and, as such, is entitled to the full protections of 11 U.S.C. § 363(m).

**IT IS FURTHER ORDERED** that, as provided by FED. R. BANKR. P. 7062, this Order shall be effective and enforceable immediately upon entry.  The Court also hereby waives the 14-day stay set forth in FED. R. BANKR. P. 6004(h) in order that the transaction may take place prior to the expiration of such 14-day period.

**IT IS FURTHER ORDERED** that the monthly rent received by the Debtor pursuant to the Second Amendment shall be deposited according to the following terms:

1. The Debtor will use a segregated account at Hancock Whitney Bank (the "Segregated Account"), not subject to any setoff rights as may be asserted by Hancock Whitney Bank as to its existing claims, if any, for the sole purpose of holding the monthly rent proceeds and any other funds ordered by the Court to be held in the Segregated Account; and

2. The Debtor will not be permitted to use the monthly rent proceeds in the Segregated Account for any purpose absent further order of this Court.

**IT IS FURTHER ORDERED** that the failure to specifically include any particular provision of the Second Amendment (or any provision of the Lease Agreement or First Amendment) in this Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Court that the Lease Agreement (as amended by the First Amendment and the Second Amendment) be authorized and approved in their entirety; *provided, however*, that in the

event of an inconsistency between this Order and any particular provision of Lease Agreement (as amended by the First Amendment and the Second Amendment), this Order shall control.

**IT IS FURTHER ORDERED** that the Court shall retain jurisdiction to hear and determine all matters arising from or related to the implementation of this Order.

**IT IS FURTHER ORDERED** that the Debtor is instructed to serve this Order by first-class U.S. Mail within three days on all parties not receiving electronic notice through this Court's CM/ECF system pursuant to applicable Federal Rules of Bankruptcy Procedure, this Court's Local Rules, this Court's Complex Case Procedures, and any Order issued by this Court limiting notice and file a certificate of service into the record.

New Orleans, Louisiana, June 26, 2025.

_____
MEREDITH S. GRABILL
UNITED STATES BANKRUPTCY JUDGE

## SECOND LEASE EXTENSION AND AMENDMENT AGREEMENT

**THIS SECOND LEASE EXTENSION AND AMENDMENT AGREEMENT** (this "Second Amendment") is entered into as of the __ day of June, 2025 (the "Second Amendment Effective Date") by and between **THE ROMAN CATHOLIC CHURCH OF THE ARCHDIOCESE OF NEW ORLEANS**, a Louisiana non-profit corporation, herein represented by Very Reverend Patrick R. Carr, Third Vice President and Vicar of Finance ("Lessor"), and **LAUREATE ACADEMY, INC.**, a Louisiana non-profit corporation, herein represented by _____ ("Lessee").

### RECITALS

WHEREAS, Lessor, as lessor/landlord, and Lessee, as lessee/tenant, entered into that certain Lease Agreement commencing June 1, 2018 (the "Lease Agreement"), which was amended by that certain First Lease Extension and Amendment Agreement dated as of May 26, 2021 (the "First Amendment").  The Lease Agreement, as amended by the First Amendment, is hereinafter referred to as the "Lease."  Capitalized terms used in this Second Amendment shall have the meanings provided in the Lease (unless otherwise provided herein);

WHEREAS, the Lessor and Lessee desire to modify certain provisions of the Lease as more particularly described in this Second Amendment;

NOW, THEREFORE, in consideration of the foregoing, Lessor and Lessee agree to amend the Lease as follows:

I.

The Recitals set forth above are hereby incorporated in and made a part of this Second Amendment by this reference.

II.

Section 1, paragraph 2 of the Lease is hereby amended by deleting said section in its entirety and replacing the same with the following:

Those certain Parcels L-1 and M-3, Woodmere North, Harvey, Louisiana shown on **Exhibit A** attached hereto (the "Land") together with all the buildings located thereon, including the buildings that were formally known as St. Rosalie School and consisting of the school buildings and cafeteria/multipurpose room and kitchen and recreational areas including the covered pavilion and green space (the "Buildings"). The Land and Buildings are hereinafter referred to collectively as the "Leased Premises." For informational purposes only, the improvements thereon bear municipal addresses 2114-2115 Oakmere Drive, Harvey, Louisiana 70058. In addition, Lessor acknowledges that Lessee had the right to place on the Leased Premises one or more modular buildings, as set forth in Section VI of the First Amendment.

III.

Exhibit A attached to the Lease is hereby deleted, and Exhibit A attached hereto is hereby made a part of the Lease.

EXHIBIT
1

IV.

The Section entitled "Term" in the Lease is hereby amended by deleting said section in its entirety and replacing the same with the following:

> The Lease shall commence at 12:00 AM on July 1, 2021 and end at 11:59 PM on June 30, 2028 (hereinafter the "Term").

V.

The Section entitled "Consideration" in the Lease is hereby amended by deleting said section in its entirety and replacing the same with the following:

> This Lease is made in consideration of the obligations assumed by Lessee herein and in further consideration of a monthly rental as follows:
>
> 1. Rent from July 1, 2021 – June 30, 2022, shall be $12,075.00 per month;
> 2. Rent from July 1, 2022 – June 30, 2023, shall be $12,316.50 per month;
> 3. Rent from July 1, 2023 – June 30, 2024, shall be $12,562.83 per month;
> 4. Rent from July 1, 2024 – June 30, 2025, shall be $12,814.08 per month;
> 5. Rent from July 1, 2025 – June 30, 2026, shall be $14,736.19 per month;
> 6. Rent from July 1, 2026 – June 30, 2027, shall be $14,736.19 per month; and
> 7. Rent from July 1, 2027 – June 30, 2028, shall be $14,736.19 per month.

VI.

The following is added as Section 24 to the Lease:

> 24. Sale of Leased Premises by Lessor and Lessee's Right of First Refusal / Right of First Option.
>
> a.      *Unsolicited Offer.*  If during the Term of this Lease, Lessor receives an unsolicited bona fide arm's length offer to purchase its interest in the Leased Premises (the "Unsolicited Offer") from any third party (the "Transferee") which Lessor desires to accept, Lessor shall deliver a notice of same (the "Transfer Notice") to Lessee. The Transfer Notice shall set forth the terms of such offer and shall state the desire of Lessor to sell the Leased Premises on such terms and conditions. Thereafter, Lessee shall have the right and option to purchase the Leased Premises at the price and upon the terms and conditions specified in the Unsolicited Offer. If Lessee desires to exercise the option to purchase, it shall give an exercise notice (the "Counternotice") to Lessor within 10 days after receipt of the Transfer Notice. The closing of the purchase and sale of the Leased Premises pursuant to this option shall occur at the time set forth in the Unsolicited Offer (the "Closing Date"), provided that Lessee shall not be required to close the transaction before the 15th day following the date of the Counternotice. Lessee's failure to give a timely Counternotice (or its notice of refusal to purchase) shall be deemed a waiver of its rights to accept the Unsolicited Offer.
>
> b.      *Solicited Offer.*  If at any time during the Term, Lessor decides to market the Leased Premises for sale to a third person (as opposed to accepting an unsolicited offer as provided in subpart (a) above), Lessee shall have the right of first offer of the Leased Premises as hereinafter set forth below:

    i.      Lessor shall deliver to Lessee the terms on which Lessor intends to sell the Leased Premises (the "Proposed Offer"), and Lessee may, within 15 days of its receipt of the Proposed offer, elect to purchase the Leased Premises on the same terms as those set forth in such Proposed Offer by delivery of a written exercise notice to Lessor.  Lessee's failure to give a timely written exercise notice to Lessor will be deemed a permanent waiver of its right to accept the Proposed Offer, and Lessor may thereafter, for a period of 365 days from the date of Lessee's refusal or deemed refusal to accept the Proposed Offer, market and sell the Leased Premises free and clear of any obligation to Lessee under this subpart (b) except as provided in subpart (b)(ii) immediately below.

    ii.      If Lessor should desire to sell the Leased Premises for a purchase price that is at least 5% less than the purchase price set forth in the then-current Proposed Offer, Lessor shall provide Lessee with a revised Proposed Offer on the revised terms, and Lessee may within 15 days thereafter, elect by delivery of written notice to Lessor to purchase the Leased Premises on the same terms as those set forth in that revised Proposed Offer.

    iii.      Lessor shall, however, have no obligation to give Lessee a right of first offer, as provided in this subpart (b), unless the Lease is at the time of Lessor's Proposed Offer or revised Proposed Offer in full force and effect, without default by Lessee beyond any applicable grace period.

*c.*    *No Application to Lessor Affiliates.*  The rights granted by this Section 24 shall not apply to a transfer, by way of sale, gift, or devise, including a trust, to or for a party related to Lessor, or to any transfer, in whole or in part, from one such related party to another, but shall apply to any subsequent transfer to a third person. If the then-owner of the Leased Premises shall be an entity, a related party shall include an affiliate, subsidiary or parent corporation, a successor by merger or consolidation, or the holder or holders of the majority of the securities of such entity.

*d.*    *No Application to Lessor's Mortgagees.*  This Section 24 shall not apply to a sale or transfer of the Leased Premises pursuant to a foreclosure of any mortgage, or deed in lieu of foreclosure, covering Lessor's interest in the Leased Premises; provided, however, that the restrictions contained in this Section 24 shall bind any successor, grantee or transferee of such mortgagee(s).

*e.*    *Termination of Rights.*  If Lessor sells the Leased Premises after Lessee either (i) fails to exercise its right and option to purchase the Leased Premises at the price and upon the terms and conditions specified in an Unsolicited Offer or (ii) fails to accept a Proposed Offer within the specified time, subject to the limitations described above, the Lessee's rights under subparts (a) and (b) shall cease to exist, but the Lease, as amended, shall continue otherwise on all of the other terms, covenants, and conditions set forth in this Lease.

f.      In the event Lessee exercises its rights under this Section 24, it shall be entitled to a credit against the purchase price for an amount equal to fifty percent (50%) of the rent actually due and paid by Lessee to Lessor for that portion of the Term commencing July 1, 2025 and expiring June 30, 2028. For avoidance of doubt, the maximum amount of such credit shall be $265,251.42.

<div align="center">VII.</div>

**LESSOR BANKRUPTCY DISCLOSURE.** Lessee hereby acknowledges that Lessor is a debtor in possession in proceedings commenced under Chapter 11 of the Bankruptcy Code, captioned In re The Roman Catholic Church of the Archdiocese of New Orleans, Case No. 20-10846 (Bankr. E.D. La.) (the "Chapter 11 Case"). Lessee herein acknowledges and agrees that this Second Amendment, and any and all obligations of Lessor are and shall be subject to approval of the bankruptcy court having jurisdiction over the Chapter 11 Case (the "Bankruptcy Court") including, without limitation, that an act of sale pursuant to the Right of First Refusal / Right of First Option shall be passed only upon issuance of an Order authorizing sale of the Leased Premises ("Sale Order") after all appropriate procedures have been followed, including but not limited to, provision of notice to appropriate creditors and parties in interest.

In the event the Bankruptcy Court does not approve of the sale, the Lessee's rights under Section 24 shall cease to exist, but the Lease (as amended) shall continue otherwise on all of the other terms, covenants, and conditions set forth in the Lease (as amended).

All claims, actions, proceedings, and lawsuits brought in connection with, arising out of, related to, or seeking enforcement of the Lease (including this Second Amendment) shall be brought in the Courts of the State of Louisiana located in Orleans Parish or in the Bankruptcy Court during the pendency of the Chapter 11 Case.

<div align="center">VIII.</div>

**SUPERIOR OFFER.** Notwithstanding anything else contained herein, if, on or before the day of the passing of the act of sale contemplated by the right of first refusal or right of first option, Lessor receives a higher or better offer, as determined in the reasonable discretion of Lessor, from an arms-length, good faith offeror, to purchase the Leased Premises, Lessee has a right to match said offer within five (5) business days of Lessor providing to Lessee a written copy of said offer. If Lessee does not match said offer, as determined in the reasonable discretion of Lessor, to purchase the Leased Premises, Lessor has the right to terminate the sale contemplated by the right of first refusal / right of first offer by providing written notice to Lessee. In the event of Lessor's termination as provided herein, the Lessee's rights under Section 24 shall cease to exist, but the Lease (as amended) shall continue otherwise on all of the other terms, covenants, and conditions set forth in the Lease (as amended), and neither party shall be liable to the other for the termination of such sale.

<div align="center">IX.</div>

a.  Entire Agreement. This Second Amendment contains the entire agreement between the parties with respect to the matters covered by this Second Amendment. There have been no additional oral or written representations or agreements.

b.  Terms. For purposes of this Second Amendment, whenever the context requires, the singular number shall include the plural, and vice versa; the masculine gender shall

include the feminine and neuter genders, the feminine gender shall include the masculine and neuter genders, the neuter gender shall include the masculine and feminine genders; and the words include and including, and variations thereof, shall not be deemed to be terms of limitation, but rather shall be deemed to be followed by the words without limitation.

c. <u>Effect on Original Lease</u>. Except as expressly amended or modified herein, all of the provisions, conditions and terms of the Lease shall remain unchanged and in full force and effect as originally written.

d. <u>Conflict</u>. In the event of any conflict or inconsistency between any provisions, conditions or terms of this Second Amendment and the Lease, the provisions, conditions and terms of this Second Amendment shall govern and control.

e. <u>No Drafting Presumption</u>. The parties to this Second Amendment agree and acknowledge that each has had significant input into the drafting of this Second Amendment. Consequently, and notwithstanding the provisions of Articles 2056 or 2057 of the Louisiana Civil Code to the contrary, nothing contained in this Second Amendment shall be presumptively construed against a party on the basis of any drafting responsibility. Further, the parties agree and acknowledge that the drafting of this Second Amendment was facilitated and expedited by the specific undertaking of the parties and their respective counsel, and in order to induce each other to make reasonable drafting accommodations, that no revision (by insertion or deletion) to any draft of this Second Amendment either shall constitute or ever be used by or on behalf of any of them as an interpretive aid or as the basis of any contention to the effect that any such deletion or insertion or change from prior drafts proves facts or circumstances concerning the intent or agreement of a party in a subsequent draft or drafts.

f. <u>Counterparts</u>. This Second Amendment may be executed in any number of counterparts and such counterparts, each of which when combined together shall constitute one and the same agreement.

g. <u>Electronic Signatures</u>. The parties agree that this Second Amendment and any related documents may be signed electronically in accordance with the Louisiana Uniform Electronic Transactions Act (La. R.S. 9:2601 et seq.). The parties consent to conduct transactions by electronic means and agree that any electronic signatures appearing on this Second Amendment or related documents are the same as handwritten signatures for the purposes of validity, enforceability, and admissibility.

h. <u>Severability</u>. If any provision of this Second Amendment or the application thereof to any person or circumstance shall, to any extent, be deemed invalid or unenforceable by a final order of a court of competent jurisdiction, the remainder of this Second Amendment, or the application of such term or provision to persons whose circumstances are other than those as to which it is held to be invalid or unenforceable, shall not be affected thereby.

i. <u>Written Modification Requirement</u>. No modification, alteration, or amendment of this Second Amendment shall be binding unless it has been committed in writing and executed by both Lessor and Lessee.

j.  <u>Successors and Assigns</u>. This Second Amendment, and all of the covenants, conditions and provisions, shall be binding upon and shall inure to the benefit of the parties hereto, and their respective heirs, administrators, executors, successors, assigns and representatives.

k.  <u>Governing Law</u>. This Second Amendment shall be governed by and construed and interpreted in accordance with the laws of the State of Louisiana.

l.  <u>No Agency</u>.  Nothing in this Second Amendment shall be deemed or construed by any party hereto or by any third person to create the relationship of principal and agent or of limited or general partners or of joint venturers or of any other association between the parties hereto, or any of their respective mortgagees.

m.  <u>Time of the Essence</u>.  Time is of the essence with respect to the performance of every provision of this Second Amendment.

*[Signature pages follow]*

**IN WITNESS WHEREOF**, the undersigned Lessee has executed this **SECOND LEASE EXTENSION AND AMENDMENT AGREEMENT** as of the Second Amendment Effective Date.

WITNESSES:                                  **LESSEE:**

                                            **LAUREATE ACADEMY, INC.**,
                                            a Louisiana non-profit corporation
_____

Print:_____
                                            By: _____
                                                 Name:
                                                 Title:
_____

Print:_____

**WITNESS WHEREOF**, the undersigned Lessor has executed this **SECOND LEASE EXTENSION AND AMENDMENT AGREEMENT** as of the Second Amendment Effective Date.

WITNESSES:                                     **LESSOR:**

                                               **THE ROMAN CATHOLIC CHURCH OF THE ARCHDIOCESE OF NEW ORLEANS**, a
_____   Louisiana non-profit corporation

Print:_____

                                               By: _____
_____       Name: Very Reverend Patrick R. Carr
                                                   Title: Third Vice President & Vicar of Finance
Print:_____

**EXHIBIT A**

**PLAT OF RESUBDIVISION SHOWING
PARCELS L-1 AND M-3**



Second Lease Extension
                                    and Amendment Agreement

## **LEASE AGREEMENT**

1)     <u>PARTIES.</u> THE ROMAN CATHOLIC CHURCH OF THE ARCHDIOCESE OF NEW ORLEANS, a Louisiana non-profit corporation, herein represented by Jeffrey J. Entwisle its Secretary, duly authorized, hereinafter referred to as Lessor, hereby leases to LAUREATE ACADEMY, INC., a Louisiana non-profit corporation, herein represented by William Aaron its President, duly authorized, hereinafter referred to as Lessee, the following described premises:

Certain portions of Parcel L-1, Woodmere North, Harvey, Louisiana (the "Land") with certain buildings bearing municipal address 2115 Oakmere Drive, New Orleans, Louisiana, which buildings were formally known as St. Rosalie School and consist of the school buildings and cafeteria/multipurpose room and kitchen (the "Buildings") and recreational areas including the covered pavilion and green space, all as is more particularly shown on that plat of survey by Dufrene Surveying and Engineering Inc., dated August 2, 2004, a copy of which is attached hereto as Exhibit "A" ( the Land and Buildings are hereinafter referred to collectively as the "Leased Premises"). The buildings labeled "St. John Bosco Church" and "New Life Center" on the survey of Dufrene Surveying and Engineering, Inc. are excluded from and shall form no part of the Leased Premises.

Lessee shall also be entitled to use of such other property of Lessor as is reasonably necessary for ingress and egress to and from the Leased Premises and to shared use with Lessor of the parking areas adjacent to the Buildings for staff parking and for traffic flow during carpool, except that Lessor shall be entitled to exclusive use of the parking areas on Sundays and during church events, including but not limited to, weddings, funerals, and holy days of obligation.

Lessor shall be entitled to shared use of cafeteria/multi-purpose room and kitchen for church parish use before 6:00 AM and after 6:00 PM on weekdays and at any time on weekends. In addition, Lessor shall be entitled to use of the cafeteria/multipurpose room and kitchen starting at 2:00 PM during the Lenten season beginning on the first Friday of Lent and continuing for three consecutive Friday's thereafter. A non-exclusive list of anticipated church parish events/uses is attached hereto as Exhibit "B".

The parking areas, cafeteria/multipurpose room and kitchen shall be, hereinafter collectively referred to as the "Shared Use Areas." Lessee understands and agrees that Lessor relies on use of the Shared Use Area(s) and, that in order to facilitate Lessor's use thereof, Lessee agrees to cooperate with Lessor in maintaining a shared calendar of events for Lessor's use thereof. Lessor will endeavor to provide seven (7) days advance notice of any particular time it anticipates a need for use of the cafeteria/multipurpose area and/or kitchen if, under the circumstances, such notice is practicable.

2)     <u>TERM.</u> This Lease shall commence on June 1, 2018, and terminate at 11:59 P.M., on June 30, 2021 (the "Primary Lease Term").

EXHIBIT

2

Lessee may be permitted to enter the Leased Premises prior to the commencement date of this Lease for the limited purpose of bringing movable property to the Leased Premises and for preparing the Leased Premises for use during the Lease Term ("Early Entry") provided that Lessor consents to the date Early Entry may begin. With the exception of the payment of rent, which shall commence as set forth herein below, all other terms and conditions of this Lease shall be applicable during the Early Entry period.

3)   RENEWAL OPTION. Provided Lessee is not in Default of the terms of this Lease, Lessee shall have the option to renew this Lease for one (1) additional, immediately consecutive, three (3) year term following the expiration of the Primary Lease Term, and, if applicable, one (1) immediately consecutive, three (3) year term following the first renewal term, all upon the same or substantially the same terms and conditions as set forth herein, except that rent during such renewal term(s) shall be subject to negotiation by Lessor and Lessee. In the event that for any reason Lessor and Lessee are unable to agree on the amount of rent to be paid during any renewal term, then this option shall be null and void and this Lease shall terminate at the end of the then-current term.  In order for renewal of this Lease to be considered, Lessee shall provide to Lessor notice in writing of its desire to renew the Lease at least one hundred eighty (180) days prior to the expiration of the then-current term.

4)   CONSIDERATION.  During the Primary Lease Term Lessee shall pay to Lessor a monthly rent of ELEVEN THOUSAND FIVE HUNDRED AND NO/100 ($11,500.00) DOLLARS.  All rent shall be paid to Lessor on or before the first (1st) day of each month during the Primary Lease Term.

5)   USE OF PREMISES.  The Leased Premises shall be used for the operation of an elementary school and related uses thereto (hereinafter "Permitted Use"), but for no other purpose without the prior written consent of Lessor, which consent shall be in Lessor's sole discretion. The Leased Premises shall not be used for any purpose that violates any law, whether such violation is by Lessee or any guest or invitee, nor in any manner creating a nuisance.

Lessee covenants and agrees that, as an essential element of the consideration of this Lease, no part of the Leased Premises will be used at any time for any purpose that contradicts the teachings and beliefs of The Roman Catholic Church, as determined by Lessor in its sole discretion, or for any of the following specific purposes:

1. An abortion clinic or medical-service-type facility which includes the provision of abortion services or counseling which promotes and/or encourages individuals to obtain abortions; or

2. Counseling service which includes as part of its options and/or recommendations to clients the consideration of abortion as an alternative to carrying a pregnancy through birth; or

3. An organization that advocates, in any manner, abortion or right of free choice  of an individual to elect abortion.

6)  CONDITION, REPAIR, MAINTENANCE, AND UPKEEP.  Lessee acknowledges that it has made an inspection of the Leased Premises, finds the same suitable for its intended purpose, and accepts said premises in its present "AS-IS" condition. Lessor does not warrant that the Leased Premises are free of defects or any other hazards, nor does Lessor warrant that the Leased Premises are in compliance with federal, state or local codes for health, safety, and/or accessibility, including but not limited to the requirements as set forth by the Life Safety Code, any health code, the Louisiana Department of Education, the Department of Environmental Protection, the Fire Marshal, or any other such regulatory agencies or codes. Lessee shall at its own cost and expense obtain any and all licenses and permits necessary for its intended use of the Leased Premises.

Lessee accepts the Leased Premises in its present condition.  Lessee will at Lessee's sole expense keep and maintain in good repair the entire Leased Premises, including, without limitation, interior walls, floors, ceilings, utilities, lighting and plumbing. Lessor shall not be responsible for any repair or maintenance of any nature to the Leased Premises, except that Lessor shall be responsible for maintaining the HVAC, roof, underground plumbing, foundations, and exterior walls (not including doors, floors or stairs).  Notwithstanding the foregoing, Lessor shall not be liable to make any repair or replacement occasioned by Lessee's act(s) or negligence, which repairs and/or replacements Lessee shall be responsible to make at its sole cost and expense.

Lessor shall not be obliged to make any repair for which it is responsible hereunder unless it has been notified in writing by the Lessee of the need of such repair and shall have had a reasonable period of time to make such repair. Lessor shall not be liable for any damage or loss caused by leaks, stoppage of water, sewer or drains or any other defects about the Leased Premises, unless it shall have failed to repair the defect within a reasonable time following written demand to do so. Lessor, its employees, agents, and/or contractors shall have the right to enter the Leased Premises at any reasonable time for the purpose of making repairs necessary for the preservation of the property.

7)  UTILITIES/OTHER COSTS. Lessee shall be responsible for payment of all utilities to the Leased Premises including, but not limited to, the cost of water, sewerage, gas, electric current, and for the cost of security and fire monitoring services. Lessee shall be responsible for payment of the full cost of any telephone and/or internet services it may require and for the cost of necessary janitorial services, and sanitation/dumpster services. Should Lessee desire to re-key the Building locks, it will be responsible for the cost thereof and shall provide to Lessor a set of keys immediately upon completion. Lessee shall also be responsible for maintaining the plants, shrubs and trees on the Leased Premises and for other customary grounds upkeep, except that Lessor agrees to provide grass cutting, on an as needed basis.  Lessee shall maintain a termite contract on the Buildings at its cost during the entire lease term.

Page 3 of 10

8) <u>IMPROVEMENTS/PRIOR APPROVAL.</u> Lessee is obligated not to make any permanent additions, alterations, or improvements whatsoever to the Leased Premises without Lessor's prior written consent, which consent shall be in Lessor's sole discretion. In the event that Lessor approves any addition, alteration or improvement, then, before the commencement of any demolition and/or construction, any and all plans and specifications for any proposed improvement(s) and/or alteration(s) shall be approved in writing by The Archdiocese of New Orleans Building Office. Lessee shall not perform any work in or about the Leased Premises on any occasion unless the work is supervised by a contractor licensed to do business in Louisiana.

If Lessor grants consent for any improvement(s) and/or alteration(s) hereunder, Lessee warrants that all improvement(s) and/or alteration(s) shall be performed in a good and workmanlike manner and in accordance with all applicable regulations and laws of the Parish of Jefferson, State of Louisiana, and any other applicable governing or licensing agency.

9) <u>OWNERSHIP OF IMPROVEMENTS.</u> Notwithstanding Louisiana Civil Code Article 2695 or any provision of Louisiana law to the contrary, any improvements, alterations, additions, permanent attachments, component parts, and permanent fixtures installed by Lessee in or about the Leased Premises shall, upon expiration or termination of this Lease for any reason, become the property of Lessor, and Lessor shall owe no compensation or payment therefore to Lessee. In the alternative, Lessor may require Lessee to remove any improvements, alterations, permanent attachments, component parts, and/or permanent fixtures installed by Lessee. Such removal shall be at the sole cost and expense of Lessee and Lessee shall be obligated to return the Leased Premises to Lessor in substantially the same condition as it existed prior to any installation or alteration.

10) <u>LIENS, JUDGMENTS AND ENCUMBRANCES; DEFENSE, HOLD HARMLESS, AND INDEMNITY.</u> No consent of Lessor for Lessee to make improvements or repairs to the Leased Premises shall be deemed to permit Lessor's interest to become subject to labor or material liens. Lessee agrees to defend, indemnify, and hold Lessor harmless from and against the payment of all losses, damages, legal costs, and charges, inclusive of attorney's fees, incurred by Lessor or expended by Lessor in or about the prosecution or defense of any suit or other proceeding in the discharging of the Leased Premises, or any part thereof, from any lien, judgment, or encumbrance created, or permitted to be created, by Lessee upon or against the Leased Premises or against Lessee's leasehold estate, and also any costs and charges, inclusive of attorney's fees, incurred on account of proceedings by Lessor in obtaining possession of the Leased Premises after termination of the Lease by forfeiture or otherwise.

11) <u>LEASEHOLD MORTGAGE.</u> Lessee shall not mortgage or otherwise hypothecate its leasehold estate and/or its interest or rights hereunder, or any part thereof, without the written consent of Lessor, which consent shall be in Lessor's sole discretion.

12)   LIABILITY; INDEMNITY. Lessee assumes full responsibility for the condition of the Leased Premises. To the fullest extent permitted bv law, Lessor is not responsible for vices or defects, latent or otherwise, in the Leased Premises, or the consequences thereof. Lessor shall not be liable for any damage to person or property, regardless of cause, sustained by Lessee or its members, agents, employees, contractors, quests, or invitees, while in or about the Leased Premises, and any such liability is assumed by Lessee. The foregoing assumption of responsibility and liability by Lessee shall be fully co-extensive with the legal responsibilities of Lessor as to all persons and property.

Lessee agrees to defend, indemnify, and hold harmless The Roman Catholic Church of the Archdiocese of New Orleans and St. John Bosco Roman Catholic Church, Harvey, Louisiana and their members, directors, officers, employees, agents, successors, assigns and their related entities from any and all claims, causes of action and/or lawsuits, judgments, damages, (including consequential damages), penalties, fines, liabilities, losses, costs, and expenses of any kind or nature, which arise out of or are in anyway related to Lessee's use or occupancy of the Leased Premises pursuant to this Lease including, but not limited to, any such claims, causes of action and/or lawsuits alleging bodily injury, personal injury, sexual misconduct, pain, mental anguish and/or death, and/or property loss or damage, arising from the negligence, intentional acts, fault or willful misconduct of Lessee, its employees, agents, invitees, visitors, or contracting parties, premises liability and/or defects in the Leased Premises, or Lessee's performance of and/or failure to perform its obligations under this Lease, and to pay reasonable attorneys' fees related thereto.

Lessee acknowledges that for the purposes of this Section 12, the term Leased Premises shall include all Shared Use Areas and sidewalks, driveways and walkways servicing the Leased Premises.

This assumption of responsibility and liability by Lessee includes without limitation all liability assumable by Lessee under Louisiana Civil Code Article 2699 and Louisiana Revised Statute Section 9:3221. LESSEE ACKNOWLEDGES THAT THIS LIABILITY AND INDEMNITY PROVISION IS AN ESSENTIAL ELEMENT OF THE CONSIDERATION OF THIS LEASE AND THAT THE LESSOR WOULD NOT HAVE ENTERED INTO THIS LEASE WITHOUT LESSEE AGREEING TO THIS PROVISION.

Acknowledged   _WDA_
                   Lessee

13)   INSURANCE. Lessee shall at all times during the full term of this Lease and during the full term of any hold-overs, extensions, or other rental agreements carry and maintain at its own cost and expense a policy or policies of commercial general liability insurance against all claims for personal injury or injuries, including death and property damage occurring in, on, or about the Leased Premises, including coverage for damaged to leased premises, such insurance to afford protection to the limits of not less than $1,000,000.00

Dollars combined single limit, per occurrence, and $2,000,000.00 Dollars aggregate, in respect to injury to persons (including death), and in respect to property damage or destruction, including loss of use thereof. Lessee shall also maintain in full force a policy of insurance with coverage for sexual and physical abuse of minors with limits of not less than $1,000,000.00 combined single limit, per occurrence, and $2,000,000.00 Dollars aggregate. Notwithstanding the foregoing, in the event that Lessee procures insurance with greater limits, this provision shall in no way be interpreted to limit Lessor's collection to the aforementioned required minimum required insurance limits, and Lessee shall be deemed to be contractually bound to provide insurance coverage to Lessor to the full limit of such policy. Said policy or policies of insurance shall name Lessor and St. John Bosco Roman Catholic Church, Harvey, Louisiana, as additional insureds, not merely as certificate holders, and such policy or policies shall be endorsed as such if necessary. All such insurance shall be procured from an insurance company or companies satisfactory to Lessor. Said insurer(s) must be a Louisiana Admitted Insurer authorized to do business in the State of Louisiana with an A or A+ A.M. Best Rating. All such policies shall provide that the same may not be cancelled or altered except upon thirty (30) days prior written notice to Lessor. All such policies shall be primary to any insurance or self-insurance of Lessor and/or St. John Bosco and/or any self-insurance program which Lessor and/or St. John Bosco, may participate. Further, the insurance must not require waivers of subrogation of any kind by either Lessor or St. John Bosco.

Lessor makes no representation that the limits of liability specified to be carried by Lessee under the terms of this Lease are adequate to protect Lessee against Lessee's undertaking under this Lease and, in the event Lessee believes that any such insurance coverage called for under this Lease is insufficient, Lessee shall provide, at its own expense, such additional insurance as Lessee deems adequate.

Lessee understands that neither Lessor, its agents and/or representatives carries Hazard or Flood Insurance on Lessee's contents in the Leased Premises. Lessor is not responsible for damage or loss of Lessee's personal property. Lessor encourages Lessee to acquire adequate insurance to protect itself and its personal property. In the event that any loss, cost, damage or expense resulting from theft, fire or any other casualty or occurrence is incurred by Lessee, Lessee hereby releases Lessor from any and all liability it may have on account of such loss, costs, damage, or expense and waives any right of subrogation which might otherwise exist in, or accrue to, any person to the full extent of such losses, costs, damages, or expenses. Under no circumstances shall any insurance or self-insurance of Lessor inure to the benefit of Lessee.

14)    SAFE ENVIRONMENT. Lessee agrees that it and any and all of its employees, volunteers, agents and/or representatives will abide by any and all laws in regard to abuse and/or neglect of children and, further, will abide by any and all policies of the Archdiocese of New Orleans, including but not limited to the policies in regard to abuse and/or neglect of minors, background checks, and the Archdiocese of New Orleans Safe

Environment Program, including participation in any required training, all without any obligation of Lessor to oversee or manage such compliance.

15)   SIGNS OR DECORATIONS.  Lessee is obligated not to display in, on, or above the Leased Premises any sign or decoration, the nature of which, in the sole discretion of Lessor, is dangerous, unsightly, or detrimental to the Property or to Lessor. Before installation of any sign, Lessee shall provide to Lessor the proposed wording, location and design and a description of where/how any such sign will be affixed to the building for consideration and approval by Lessor. Lessee is obligated to promptly remove at or before the expiration of this Lease any and all signs placed in or upon any part of the Leased Premises and is obligated to pay the cost of said removal.

16)   SERVICE CHARGES AND ASSESSMENTS. The Leased Premises presently are exempt from Louisiana ad valorem property taxes under Article 7, Section 21(B) of the Louisiana Constitution of 1974, as amended. Should, during the term of this Lease or any renewal thereof, the State of Louisiana, Parish of Jefferson, or any other Louisiana state or municipal agency or entity, assess a tax, fee, ad valorem tax, or assessment on the Leased Premises based upon this Lease or Lessee's use of the Leased Premises, Lessee shall be obligated, at its own expense, to pay said tax, fee or assessment, and Lessor shall have no responsibility in connection therewith. Lessor shall send all such bills which it receives to Lessee, and Lessee shall be obligated to timely pay the same, or Lessee shall be in default of this Lease.

Notwithstanding anything to the contrary, Lessee or Lessor shall retain the right to challenge any determination by any agency or entity that the Leased Premises is subject to any such tax, assessment, or fee. In the event that Lessor or Lessee challenges said tax, assessment, or fee the parties hereto agree to mutually cooperate with the efforts of each other in said challenge.

17)   DAMAGE BY FIRE OR OTHER CASUALTY. If the Leased Premises are destroyed, or damaged by fire our other casualty to an extent so as to render it wholly unfit for the purposes for which it is leased, this Lease shall automatically terminate, provided such destruction or damage is not caused by the act(s) or negligence of Lessee, its invitees, guests, agents, or servants, or in any way arising out of the Lessee's use of the Leased Premises and/or Shared Use Area(s). In such an event all insurance benefits pertaining to destruction of the Building or the Leased Premises shall be the property of Lessor, regardless of whether such insurance was obtained by Lessor or Lessee. If Lessee failed to provide insurance in the full amount specified herein, Lessee shall pay to Lessor the amount of the deficiency. The Lessee shall also pay to Lessor the amount of any deductible.

If, however, the Leased Premises are damaged by fire or other casualty and can be repaired within one hundred twenty (120) days after the date of such fire or other casualty, this Lease, at Lessor's option, shall not terminate and Lessor shall give notice to

Lessee, within thirty (30) days after such fire or other casualty, that Lessor will repair such damage, subject to the reimbursement obligations of Lessee, if any.

Lessor, at its option, may modify plans for repairs to limit its expenditure to sums received by it from the insurer. Lessee shall be entitled to a reduction or remission of rent, if any, such as shall be just and proportionate, except if the damage was caused by Lessee's act of negligence, but shall not be entitled to any other damages. If Lessor fails to complete such repairs within said one hundred (120) day period this Lease shall not terminate and Lessee shall not be entitled to damages, but shall be entitled only to a further just and proportionate reduction or remission of any rent.

18) <u>DEFAULT BY LESSEE</u>. Except as otherwise provided herein, should Lessee fail to comply with any of the terms, covenants, agreements or conditions contained in this Lease, Lessee shall be in default hereunder. After fifteen (15) days from the mailing by Lessor of notice of said default, and if Lessee remains in default, Lessor shall have the right, at Lessor's option, to terminate this Lease effective immediately. The foregoing provision is without prejudice to any remedy which might otherwise be available to Lessor under the laws of Louisiana. Notwithstanding anything herein to the contrary, in the event that Lessee fails to comply with any ordinance, law, or regulation, Lessee shall be *ipso facto* in default without the need for notice of such default and Lessor shall have the right to terminate this Lease effective immediately.

Should Lessor terminate this Lease as provided in this section, Lessor may re-enter said Leased Premises and remove all persons, or personal property, without legal process, and all claims for damages by reason of such re-entry are expressly waived.

Lessor's failure to strictly and promptly enforce any of the terms of this Lease shall not operate as a waiver of Lessor's right. Lessor hereby expressly reserves the right to always enforce the terms of this Lease or to cancel this Lease regardless of any indulgences or extensions previously granted.

In the event Lessee defaults in the performance of any of the terms, covenants, agreements or conditions contained in this Lease and Lessor places the enforcement of this Lease for recovery of the possession of the Leased Premises in the hands of an attorney, and/or files suit upon the same, Lessee agrees to pay reasonable attorney's fees incurred by Lessor.

19) <u>SUBLEASE; ASSIGNMENT</u>. Lessee shall not assign or permit any assignment by operation of law of this Lease or any interest hereunder, or sublet or permit the Leased Premises or any part thereof to be used by any party other than Lessee without the prior consent of Lessor, which consent shall be in Lessor's absolute and sole discretion. If the Leased Premises or any part thereof is sublet, any such sublease agreement shall be approved by Lessor and shall contain all of the provisions of this Lease. Regardless of Lessor's consent, no subletting or assignment shall release Lessee of Lessee's obligations or alter the primary liability of Lessee to perform all of its obligations under this Lease. In the event of default by any assignee or any sub lessee, Lessor may proceed directly

against Lessee without the necessity of exhausting remedies against any assignee or sub lessee.

20) <u>SURRENDER OF PREMISES</u>. At the expiration of this Lease, or its termination for other causes, Lessee is obligated to immediately surrender possession of the Leased Premises. Should Lessor allow or permit Lessee to remain in or upon the Leased Premises after the expiration or termination of this Lease, said action shall not be construed as a reconduction of this Lease.

21) <u>OTHER PROVISIONS</u>.

The parties to this Lease understand and agree that the provisions herein shall, between them, have the effect of law, but in reference to matters not provided for herein, this Lease shall be governed by the laws of the State of Louisiana.

All the provisions contained herein shall be binding upon and shall inure to the benefit of the parties hereto, their heirs, executors, administrators, successors, assigns, affiliates, nominees and representatives.

Failure of Lessor to require strict performance by Lessee of any of the covenants, provisions, or conditions of this Lease, on one or more occasions, shall not constitute a waiver by Lessor of the right thereafter to require strict compliance with said covenants, provisions, and conditions.

Unless otherwise specified, the following rules of construction and interpretation apply: (i) captions are for convenience and reference only and in no way define or limit the construction of the terms and conditions hereof; (ii) use of the term "including" will be interpreted to mean "including but not limited to"; (iii) whenever a party's consent is required under this Agreement, except as otherwise stated in this Agreement or as same may be duplicative, such consent will not be unreasonably withheld, conditioned or delayed; (iv) exhibits, if any, are an integral part of this Agreement and are incorporated by reference into this Agreement; (v) use of the terms "termination" or "expiration" are interchangeable; (vi) reference to a default will take into consideration any applicable notice, grace and cure periods; (vii) to the extent there is any issue with respect to any alleged, perceived or actual ambiguity in this Agreement, the ambiguity shall not be resolved on the basis of who drafted the Agreement; (viii) the singular use of words includes the plural where appropriate and (ix) if any provision of this Agreement is held invalid, illegal or unenforceable, the remaining provisions of this Agreement shall remain in full force if the overall purpose of the Agreement is not rendered impossible and the original purpose, intent or consideration is not materially impaired.

Any provisions of this Lease relating to indemnification shall survive the termination or expiration hereof. In addition, any terms and conditions contained in this Lease that by their

sense and context are intended to survive the termination or expiration of this Agreement shall so survive.

This Agreement may be executed in any number of counterparts, which taken together shall constitute one fully-executed agreement.

23) <u>NOTICE</u>. All notices (including, without limitation, approvals, consents and exercises of rights or options) required or permitted to be given hereunder may be served by a party or such party's attorneys (and may be given to the other party or its attorneys), shall be in writing and shall be deemed served, if by personal delivery or by facsimile, on the date the same is actually received by the addressee thereof, or if by mail, two business days after the same is deposited with the United States Postal Service (or its successors) for mailing by Certified Mail, Return Receipt Requested, posted fully prepaid, addressed as hereinafter set forth, or, if by overnight messenger service (e.g., Federal Express) on the date of delivery by such overnight messenger service to the address as hereinafter set forth. All notices shall be addressed as follows or to such other address as the party entitled to receive such notice may, from time to time hereinafter, designate by giving written notice pursuant hereto:

If to Lessor:    The Roman Catholic Church of the Archdiocese
               of New Orleans
               Attn: Chief Financial Officer
               7887 Walmsley Ave.
               New Orleans, LA 70125

With a copy to:  St. John Bosco Roman Catholic Church
               Attn: Pastor
               2114 Oakmere Dr.
               Harvey, LA 70058

If to Lessee:    Laureate Academy
               Attn: Board Chair
               2115 Oakmere Dr.
               Harvey, LA 70058

**LESSOR**                                    **LESSEE**

**The Roman Catholic Church of**              **Laureate Academy, Inc.**
**the Archdiocese of New Orleans**

By: Jeffrey J. Entwisle                       By: William Aaron
Date: 4/13/18                                 Date: 4-4-18

# EXHIBIT A



LOTS L-1 & M-3
HARVEY CANAL PROPERTY
JEFFERSON PARISH, LOUISIANA
WOODMERE BOULEVARD (SIDE)
EDGEWOOD STREET
OAKMERE DRIVE
COUSINS BOULEVARD (SIDE)
COUSINS
CANAL
DRIVE
POST
L-1
M-3
LEGEND
SCALE IN FEET

Exhibit "B"

**Anticipated Church Parish Use of Cafeteria/Multipurpose Room and Kitchen**

- Parish school of religion – once a week (currently Wednesday through April)

- Knights of Columbus

- Fish Fry's in Lent

- Coffee & Donuts – 3rd Sunday of month

- Dinners – once or twice a year

- Pastoral council – once a month

- Come Lord Jesus Bible Study – weekly (usually Wednesday at 6:30pm)

- Women's Society – once a month

- Rummage Sale in July

- Men's Club – once a month

- Teens Club – twice a month

- Meetings twice a month

- Car wash & various fundraisers throughout the year

- Life Line Screening – twice a year on a Saturday

- Bingo – quarterly

- St. John Bosco Feast Day (this weekend – falls around Jan. 31st)

- Funerals & receptions occasionally

- Holiday events – parish Christmas party, trunk or treating, etc.

- Girl Scouts – couple times a year on Friday evening/Saturday AM

18704

## FIRST LEASE EXTENSION AND AMENDMENT AGREEMENT

This First Lease Extension and Amendment Agreement is made effective as of the date of the last of the parties to sign below by and between THE ROMAN CATHOLIC CHURCH OF THE ARCHDIOCESE OF NEW ORLEANS, a Louisiana non-profit corporation, hereinafter referred to as "Lessor," and LAUREATE ACADEMY, INC. a Louisiana non-profit corporation, hereinafter referred to as "Lessee":

WHEREAS, Lessor and Lessee entered into a Lease Agreement commencing June 1, 2018, and ending at 11:59 PM on June 30, 2021 (the "Lease"), whereby Lessor leased to Lessee certain property bearing municipal address 2115 Oakmere Drive, Harvey, Louisiana, all as more particularly set forth in the Lease; and

WHEREAS, Lessee and Lessor desire to renew the Lease for an additional term commencing on July 1, 2021, and terminating June 30, 2025.

NOW, THEREFORE, in consideration of the terms and provisions of the Lease Agreement referred to above, and this First Lease Extension and Amendment Agreement, the parties hereto agree to the following:

I.

The recitals set for hereinabove are hereby incorporated by reference as if copied herein in full.

II.

Section 1, paragraph 2, of the Lease shall be amended to henceforth read as follows:

Certain portions of Parcel L-1, Woodmere North, Harvey, Louisiana (the "Land") together with certain buildings bearing municipal address 2115 Oakmere Drive, Harvey, Louisiana, which buildings were formally known as St. Rosalie School and consist of the school buildings and cafeteria/multipurpose room and kitchen (the "Buildings") and recreational areas including the covered pavilion and green space, all as is more particularly shown on that plat of survey by Dufrene Surveying and Engineering Inc., dated August 2, 2004, a copy of which is attached hereto as Exhibit "A". In addition, Lessee shall be entitled to place upon the Land one (1) modular building with (10) classrooms and at a future date one additional modular building presently labeled "Future Building B", as shown on a site plan of KVS architecture dated February 15, 2021, a copy of which is attached hereto as Exhibit "A-1". The Land and Buildings are hereinafter referred to collectively as the "Leased Premises". The buildings labeled "St. John Bosco Church" and "New Life Center" on the survey of Dufrene Surveying and Engineering, Inc. are excluded from and shall form no part of the Leased Premises.

III.

The Lease Agreement Section entitled "Term" shall henceforth read as follows:

The Lease shall commence at 12:00 AM on July 1, 2021 and end at 11:59 PM on June 30, 2025 (hereinafter the "Renewal Term").

IV.

The Lease Agreement Section entitled "Renewal Option" shall henceforth read as follows:

Provided Lessee is not in Default of the terms of this Lease, Lessee shall have the option to renew this Lease for one (1) additional, immediately consecutive, five (5) year term following the expiration of the Renewal Term, all upon the same or substantially the

**EXHIBIT**

**3**

same terms and conditions as set forth herein, except that rent during such renewal term shall be subject to negotiation by Lessor and Lessee. In the event that Lessor and Lessee are unable to agree on the amount of rent to be paid during any renewal term for any reason, then this option shall be null and void and this Lease shall terminate at the end of the then-current term.  In order for renewal of this Lease to be considered, Lessee shall provide to Lessor notice in writing of its desire to renew the Lease at least one hundred eighty (180) days prior to the expiration of the first renewal term.

IV.

The Lease Agreement Section entitled "Consideration" shall henceforth read as follows:

This Lease is made in consideration of the obligations assumed by Lessee herein and in further consideration of a monthly rental as follows:

1.   Rent from July 1, 2021  -  June 30, 2022, shall be $12,075.00 per month;
2.   Rent from July 1, 2022  -  June 30, 2023, shall be $12,316.50 per month;
3.   Rent from July 1, 2023  -  June 30, 2024, shall be $12,562.83 per month; and
4.   Rent from July 1, 2024  -  June 30, 2025, shall be $12,814.08 per month

V.

Section 7 of the Lease is amended such that Lessee, not Lessor, shall be responsible for all lawn mowing and other necessary grounds upkeep.  In all other respects, Section 7 shall remain unmodified.

VI.

Section 8 entitled "Improvements/Prior Approval" shall henceforth read as follows:

Lessee is obligated not to make any permanent additions, alterations, or improvements whatsoever to the Leased Premises without Lessor's prior written consent, which consent shall be in Lessor's sole discretion. In the event that Lessor approves any addition, alteration or improvement, then, before the commencement of any demolition and/or construction, any and all plans and specifications for any proposed improvement(s) and/or alteration(s) shall be approved in writing by The Archdiocese of New Orleans Building Office. Lessee shall not perform any work in or about the Leased Premises on any occasion unless the work is supervised by a contractor licensed to do business in Louisiana.

If Lessor grants consent for any improvement(s) and/or alteration(s) hereunder, Lessee warrants that all improvement(s) and/or alteration(s) shall be performed in a good and workmanlike manner and in accordance with all applicable regulations and laws of the Parish of Jefferson, State of Louisiana, and any other applicable governing or licensing agency.

Notwithstanding the foregoing, Lessor has agreed that Lessee may, at Lessee's sole cost and expense, place upon the Leased Premises one modular building housing ten (10) classrooms and one additional modular building with no more than ten (10) additional classrooms, both in locations to be mutually agreeable to Lessor and Lessee. In addition, Lessee may construct concrete or asphalt foundations and required adjacent parking and walkways, the location and size of which are subject to final approval by Lessor.

The modular building(s) shall be removed by Lessee from the Leased Premises on or before the termination or expiration of the Renewal Term or any extended term. Lessee shall be solely responsible for all costs and expenses of removal of the building(s) from the Leased Premises. Lessee shall remove all wires, pipes, piers and foundations above or below the surface of the property upon which the building sits and in its immediate vicinity. Lessee shall be responsible for the cost of remedying any damage to Lessor's property caused by or related to placement and/or removal of the building(s) upon the Leased Premises. All work shall be performed by a Louisiana licensed contractor

approved by Lessor in writing. All contractors and or subcontractors shall carry insurance acceptable to Lessor in its sole discretion. In addition, prior to entering into any contract, Lessee shall provide a copy of such contract to Lessor for its approval and Lessee shall be responsible for negotiating any changes requested by Lessor in its sole discretion. All contracts shall require performance and payments bonds in the full amount of the contract. Lessee shall defend, indemnify and hold Lessor' harmless from and against any liens burdening Lessor's property as a result of any work performed on or materials placed upon the Leased Premises pursuant to this Lease and shall promptly bond out or otherwise cause said liens to be removed.

Section 9, entitled "Ownership of Improvements" is amended as follows:

Notwithstanding anything to the contrary, any modular buildings placed upon the Leased Premises by Lessee with the permission of Lessor shall be and at all times remain the property of Lessee, which property Lessee shall remove in accordance with the provisions set forth above upon expiration or earlier termination of the Lease.

In all other respects, the terms and provisions of the Lease Agreement, as hereby renewed and extended, shall remain the same.

LESSOR

THE ROMAN CATHOLIC CHURCH OF
THE ARCHDIOCESE OF NEW ORLEANS

By: _Jeffrey J. Eatwell_
Date: _6/26/2021_

LESSEE

LAUREATE ACADEMY, INC

By: _David A. Huete_
Date: _15 May 2021_

# EXHIBIT A



LOTS L-1 & M-3
HARVEY CANAL PROPERTY
JEFFERSON PARISH, LOUISIANA
WOODMERE BOULEVARD (SIDE)
EDGEWOOD STREET
OAKMERE DRIVE
COUSINS BOULEVARD (SIDE)
CANAL
COUSINS
DRIVE
POST
L-1
M-3
LEGEND
SCALE IN FEET

# EXHIBIT A-1



COUSINS CANAL

STORAGE BLDG.

CLASSROOM BUILDING

GYMNASIUM

FUTURE BLDG 'B'

OAKMERE DRIVE

CLASSROOM BUILDING

ST. JOHN BOSCO CATHOLIC CHURCH

CAFETERIA

BOILER RM.

UTILITY YARD

BLDG 'A' 10 CLASSROOMS

WOODMERE PARK

CONC. PARKING

Site Plan
1" = 30'

MODULAR CLASSROOM ADDITION
LAUREATE ACADEMY CHARTER SCHOOL
2115 OAKMERE DRIVE, HARVEY, LA 70058

A1.0

DRAWING:

DATE: 2.15.21

PROJECT NO:

REVISIONS:

KVS
architecture
235 Girod Street, Mandeville, Louisiana
985.674.3077 www.kvsarchitecture.com