**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF LOUISIANA**

IN RE:                                                     CASE NO. 20-10846

THE ROMAN CATHOLIC CHURCH
OF THE ARCHDIOCESE OF                              SECTION "A"
NEW ORLEANS

      *Debtor[1]*                                      CHAPTER 11

---

**COMMERCIAL COMMITTEE'S OBJECTION TO (A) DISCLOSURE STATEMENT FOR THE JOINT CHAPTER 11 PLAN OF REORGANIZATION FOR THE ROMAN CATHOLIC CHURCH OF THE ARCHDIOCESE OF NEW ORLEANS AND ADDITIONAL DEBTORS, PROPOSED BY THE DEBTOR, THE ADDITIONAL DEBTORS, AND THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS, DATED AS OF JULY 15, 2025 AND (B) PLAN PROPONENTS' MOTION FOR ENTRY OF AN ORDER (I) APPROVING THE ADEQUACY OF THE JOINT DISCLOSURE STATEMENT, (II) APPROVING THE SOLICITATION AND VOTING PROCEDURES WITH RESPECT TO CONFIRMATION OF THE JOINT PROPOSED CHAPTER 11 PLAN, (III) APPROVING BALLOTS AND NOTICES, AND (IV) GRANTING RELATED RELIEF**

---

The Official Committee of Unsecured Commercial Creditors (the "Commercial Committee") in the above captioned chapter 11 bankruptcy case (the "Bankruptcy Case") of The Roman Catholic Church of the Archdiocese of New Orleans (the "Debtor" or "Archdiocese") submits this objection (the "Objection") to:

  (a) the *Disclosure Statement for the Joint Chapter 11 Plan of Reorganization for the Roman Catholic Church of the Archdiocese of New Orleans and Additional Debtors, Proposed by the Debtor, the Additional Debtors, and the Official Committee of Unsecured Creditors, Dated as of July 15, 2025* (the "Disclosure Statement");[2] and

  (b) the *Motion for Entry of an Order (I) Approving the Adequacy of the Joint Disclosure Statement, (II) Approving the Solicitation and Voting Procedures With Respect to*

---

[1]   The last four digits of the Debtor's federal tax identification number are 8966. The Debtor's principal place of business is located at 7887 Walmsley Ave., New Orleans, LA 70125.

[2]   Doc. No. 4151. Unless otherwise specified, Doc. Nos. refer to Case No. 20-10846.

*Confirmation of the Joint Proposed Chapter 11 Plan, (III) Approving Ballots and Notices, and (IV) Granting Related Relief* (the "Motion"),[3]

both of which were filed jointly by the Archdiocese, the Official Committee of Unsecured Creditors (the "Abuse Committee"), and the Additional Debtors (collectively, the "Plan Proponents"). In support, the Commercial Committee respectfully avers as follows:

## PRELIMINARY STATEMENT

1. "Disclosure is the 'pivotal' concept in chapter 11 reorganization."[4] And this concept is of exceptional significance at this stage of the Bankruptcy Case. Specifically, and as the Fifth Circuit has observed: "the disclosure statement is the primary notice mechanism informing a creditor's vote for or against a plan."[5] It "must clearly and succinctly inform the average unsecured creditor what it is going to get, when it is going to get it, and what contingencies there are to getting its distribution."[6] Without sufficient and accurate information,[7] creditors are unable to make an informed decision to accept or reject a plan of reorganization.[8]

2. This Bankruptcy Case is on an exceptionally fast track towards one of two results: (1) plan confirmation; or (2) dismissal. And in pursuit of plan confirmation, parties in interest are not given the full 28 days' notice that FED. R. BANKR. P. 3017(a)(1)(A) prescribes; instead, they

---

[3]   Doc. No. 4152.

[4]   *Westland Oil Dev. Corp. v. MCorp Mgmt. Sols., Inc.*, 157 B.R. 100, 102 (S.D. Tex. 1993) (citing 5 COLLIER ON BANKRUPTCY, ¶ 1125.03 (15th ed. 1992))).

[5]   *Spicer v. Laguna Madre Oil & Gas II, L.L.C. (In re Tex. Wyo. Drilling, Inc.)*, 647 F.3d 547, 551 (5th Cir. 2011) (citing 11 U.S.C. § 1125)).

[6]   *In re Ferretti*, 128 B.R. 16, 19 (Bankr. D.N.H. 1991).

[7]   *In re Cardinal Congregate I*, 121 B.R. 760, 766 (Bankr. S.D. Ohio 1990) (noting "the manifest importance of making a Disclosure Statement's contents as accurate and consistent as possible.").

[8]   *In re Budd Co.*, 550 B.R. 407, 413 (Bankr. N.D. Ill. 2016) ("The Disclosure Statement should be clearly written with sufficient information as to enable the creditors to make '[an] informed judgment about the plan'" (citing 11 U.S.C. § 1125(a)(1))) (alteration to original).

only have 16 days' notice.[9] In turn, the Commercial Committee (and other parties) have only 13 days to file an objection.[10] Thus, to properly analyze the Disclosure Statement, it is beyond imperative that the Disclosure Statement is timely filed, with all information that is required by the Bankruptcy Code.

3.      But that hasn't happened. The Plan Proponents filed the Disclosure Statement without several pages of notes regarding the financial statements attached to and made a part of the Disclosure Statement; financial statements underpinning many decisions which creditors are going to be asked to make. Notes explaining how financial projections and analyses are conducted that are critical to the ability of creditors to examine, weigh, and ultimately decide whether the Proposed Plan (as defined below) represents a fair result (or not). These financial notes have been withheld, according to the Plan Proponents, because they needed to ensure the information was accurate. Frankly, if there are concerns that the material explaining and supporting the feasibility and Liquidation Analysis[11] is inaccurate, it raises concerns over the accuracy of the feasibility and Liquidation Analysis. And this is especially paramount given the parties are gearing up for what appears to be a strongly contested cramdown confirmation, where the various valuations of the Archdiocese's assets and claims are of pivotal importance. Despite the Disclosure Statement's importance under the Bankruptcy Code, as currently drafted, the Disclosure Statement lacks adequate information to enable creditors to make an informed decision at a critical juncture in this Bankruptcy Case.

---

[9]     Doc. No. 4105 at ¶¶ 1 and 6.

[10]    Doc. No. 4105 at ¶ 4.

[11]    Capitalized terms used, but not otherwise defined, shall have the same meaning to them as ascribed in the Disclosure Statement.

4.      Even further, the Plan Proponents only provided the notes to the Commercial Committee's counsel (cloaked in various privileges)[12] on the evening of Saturday, July 26, 2025, leaving scant time before the objection deadline to scrutinize whether this information satisfies the adequate information threshold. Whether this was intentional gamesmanship or not, the cold reality is that this unfairly compresses an already severely compressed timeline and deeply prejudices parties' abilities to provide a fair review and analysis of a complicated document. This information should have been included with the Disclosure Statement upon filing, especially considering the exceptionally compressed time frame given for parties in interest to review and analyze the Disclosure Statement.  Indeed, the Plan Proponents are required to provide "adequate disclosure, not selective disclosure."[13] Under these circumstances, the Plan Proponents have not timely filed the Disclosure Statement as required under this Court's Scheduling Order (defined below).

5.      The Commercial Committee and Plan Proponents discussed the missing notes and the Commercial Committee's potential objections on July 25, 2025. While the Commercial Committee is hopeful that the parties can agree on appropriate inserts which may resolve some of the objections noted below, others cannot be cured simply with inserts prepared by the Commercial Committee. These must be addressed by the Plan Proponents.

6.      While the Commercial Committee has, as mentioned, received the missing notes, as well as a draft first amended disclosure statement and plan, as none of these materials are of record, and were provided under a myriad of privileges, the newly provided materials are not

---

[12]   The Commercial Committee is not aware whether these notes were provided to other parties in interest; however, they have not been filed in the Bankruptcy Case, despite the Commercial Committee's prior request. Due to the Plan Proponents' transmittal of such notes as being subject to possible privileges, the Commercial Committee does not discuss the information contained therein within the instant objection, but reserves all related rights.

[13]   *Westland*, 157 B.R. at 103.

discussed in this objection.  Further, the Commercial Committee reserves its right to modify, supplement, or amend this objection once such materials (or any other additions or revisions to the disclosure statement) are filed.

### SUMMARY OF OBJECTION

7.      For purposes of convenience, the Commercial Committee will summarize its Objection as follows:

8.      *First*, the Disclosure Statement fails to contain adequate information regarding several crucial issues that will undoubtedly influence a creditor's decision to accept or reject the Proposed Plan.

9.      One of these areas is the full extent of the Archdiocese's assets that may be available to satisfy their claims. A significant portion of funding under the Proposed Plan comes from a settlement with the Settling Insurers; however, creditors cannot assess whether these settlements are worthwhile when, as here, the limits of each respective policy that the Settling Insurer seeks to buyback are not disclosed. Additionally, no value is given (market or liquidation) to nearly 75% of the Archdiocese's immovable property portfolio identified on Exhibit 6 of the Disclosure Statement;[14] nor is any explanation given why these properties cannot be valued. Moreover, the Archdiocese proposes releasing and retaining various causes of action,[15] which, again, are not valued, let alone estimated. And what follows from this is a skewed Feasibility and Liquidation Analysis where the full value of the Archdiocese's assets is not disclosed, which gives creditors a warped picture of the Archdiocese's circumstances.

---

[14]    Doc. No. 4151-6.

[15]    *See*, *e.g.*, Doc. No. 4151 at Art. VI, § 6.08; Art. IX, § 9.10.

10.     Furthermore, the Disclosure Statement understates how the *Memorandum of Understanding*[16] was ultimately reached and why it is an appropriate resolution for this Bankruptcy Case. No discussion is given to how the nearly $1.221 billion liability for Abuse Claims was calculated,[17] what factors influence it, and whether the Archdiocese accepted the valuation from the Abuse Committee's expert, Stout Risius Ross, LLC (and if so, why it did not challenge this figure). Also left unaddressed is how it is appropriate to allow the Deposit and Loan Fund Program (whereby the Archdiocese has allocated $72 million for its own use in connection with the Proposed Plan and the Bankruptcy Case) to remain unclassified and pass through unimpaired[18] while creditors' rights are being impaired.

11.     Additionally, the Plan Proponents attempt to withhold the Plan Supplements until a mere ten (10) days before the deadline to object to the Proposed Plan – months after the solicitation packages are to be mailed to creditors.[19] For this same reason, the voting procedures are improper because they seek to enable the Plan Proponents to withhold crucial information from creditors until a mere ten (10) days before the objection deadline to the Proposed Plan.

12.     *Finally*, because the Proposed Plan cannot be confirmed, the Estate should not be burdened with the expense of printing and mailing the solicitation materials to creditors. The Proposed Plan is neither fair, nor equitable, fails to appropriately classify claims, unfairly discriminates against certain classes of claims, and it has not been proposed in good faith.

13.     Taken together, the Court should deny the relief requested.

---

[16]   Doc. No. 4020-1.

[17]   Doc. No. 4151-3.

[18]   Doc. No. 4151 at Art. VI, § 6.05.

[19]   Doc. No. 4050-1 at ¶ 219.

## BACKGROUND

14.     On May 1, 2020, the Archdiocese commenced the Bankruptcy Case by filing a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"). Since then, the Archdiocese has remained in possession of its property and continues to operate as a debtor in possession under 11 U.S.C. §§ 1107 and 1108.

15.     The Court, on April 28, 2025, entered an *Order to Show Cause*, noting, among other things, that "no coalition of parties has proposed a confirmable plan."[20] Therefore, the Court ordered the Debtor to appear and show cause why the Bankruptcy Case "should not be dismissed for cause, including the inability to effectuate a plan of reorganization."[21]

16.     Less than a month later, the Plan Proponents filed a *Memorandum of Understanding* outlining the key provisions of a joint plan of reorganization.[22]

17.     Thereafter, on July 2, 2025, the Court entered that certain *Order Scheduling Trial and Pretrial Deadlines in Connection With (I) Confirmation of Plan Proponents' Joint Amended Plan of Reorganization, (II) Motions to Approve Settlements With Insurers, (III) Certain Abuse Survivors' Motion to Dismiss Bankruptcy Pursuant to 11 U.S.C. § 1112(b), and (IV) The Court's Order to Show Cause Issued Against the Debtor, Dated April 28, 2025* (the "Scheduling Order").[23]

18.     On July 15, 2025, the Plan Proponents filed: (a) the Motion;[24] (b) the Disclosure Statement;[25] and (c) the *Joint Chapter 11 Plan of Reorganization for the Roman Catholic Church*

---

[20]   Doc. No. 3949 at pg. 3.

[21]   Doc. No. 3949 at pg. 4.

[22]   Doc. No. 4020-1.

[23]   Doc. No. 4105.

[24]   Doc. No. 4152.

*of the Archdiocese of New Orleans and Additional Debtors, Proposed by the Debtor, the*

*Additional Debtors, and the Official Committee of Unsecured Creditors, Dated as of July 15,*

*2025* (the "Proposed Plan").[26]

## LAW AND ARGUMENT

19.     There are three (3) broad strokes underlying the Commercial Committee's

Objection. *First*, the Disclosure Statement fails to include crucial and fundamental information

that is necessary to make an informed decision concerning the Proposed Plan. *Second*, the

Proposed Plan, as currently drafted, is unconfirmable. *Third*, the voting procedures are improper.

**I.      The Disclosure Statement Does Not Contain Adequate Information as Required by 11 U.S.C. § 1125.**

20.     11 U.S.C. § 1125(b) charges the Plan Proponents with producing, and this Court

with approving, "a written disclosure statement…containing adequate information." The term

"adequate information" is defined by 11 U.S.C. § 1125(a)(1), which, in pertinent part:

> [M]eans information of a kind, and in sufficient detail, as far as is
> reasonably practicable in light of the nature and history of the
> debtor and the condition of the debtor's books and records,
> including a discussion of the potential material Federal tax
> consequences of the plan to the debtor, any successor to the debtor,
> and a hypothetical investor typical of the holders of claims or
> interests in the case, that would enable such a hypothetical investor
> of the relevant class to make an informed judgment about the
> plan[.][27]

21.     Whether the Disclosure Statement contains "adequate information" is analyzed on

a case-by-case basis; and this Court is given discretion to make this determination.[28] To evaluate

---

[25]     Doc. No. 4151.

[26]     Doc. No. 4150.

[27]     11 U.S.C. § 1125(a)(1) (alterations to original).

[28]     *Mabey v. Sw. Elec. Power Co. (In re Cajun Elec. Power Coop.)*, 150 F.3d 503, 518 (5th Cir. 1998) ("The legislative history of § 1125 indicates that, in determining what constitutes 'adequate information' with respect

a disclosure statement's adequacy, many bankruptcy courts in the Fifth Circuit[29] have looked to

the nineteen (19) factors articulated by *In re Metrocraft Pub. Servs., Inc.*, which are:

> (1) the events which led to the filing of a bankruptcy petition; (2) a
> description of the available assets and their value; (3) the
> anticipated future of the company; (4) the source of information
> stated in the disclosure statement; (5) a disclaimer; (6) the present
> condition of the debtor while in Chapter 11; (7) the scheduled
> claims; (8) the estimated return to creditors under a Chapter 7
> liquidation; (9) the accounting method utilized to produce financial
> information and the name of the accountants responsible for such
> information; (10) the future management of the debtor; (11) the
> Chapter 11 plan or a summary thereof; (12) the estimated
> administrative expenses, including attorneys' and accountants'
> fees; (13) the collectibility of accounts receivable; (14) financial
> information, data, valuations or projections relevant to the
> creditors' decision to accept or reject the Chapter 11 plan; (15)
> information relevant to the risks posed to creditors under the plan;
> (16) the actual or projected realizable value from recovery of
> preferential or otherwise voidable transfers; (17) litigation likely to
> arise in a nonbankruptcy context; (18) tax attributes of the debtor;
> and (19) the relationship of the debtor with affiliates.[30]

22.    Several of these factors merit discussion; however, given they are non-exhaustive,

the Commercial Committee will be addressing additional issues with the Disclosure Statement.

**A. Available Assets and Their Value**

23.    11 U.S.C. § 541(a)(1) instructs that the Estate is comprised of "all legal or

equitable interests of the debtor in property as of the commencement of the case." And this

---

to a particular disclosure statement, 'both the kind and form of information are left essentially to the judicial
discretion of the court' and that 'the information required will necessarily be governed by the circumstances of
the case.'" (quoting S. REP. NO. 95- 989, at 121 (1978), reprinted in 1978 U.S.C.C.A.N. 5787, 5907)).

[29]    *See*, *e.g.*, *In re Divine Ripe, L.L.C.*, 554 B.R. 395, 401 (Bankr. S.D. Tex. 2016) ("This Court adopts the
*Metrocraft* factors, non-exhaustively, as factors to consider for the purposes of determining the sufficiency of
'adequate information' in a disclosure statement."); *In re United States Brass Corp.*, 194 B.R. 420, 424-25
(Bankr. E.D. Tex. 1996) (citing *Metrocraft* factors); *In re Cypresswood Land Partners, I*, 409 B.R. 396, 424
(Bankr. S.D. Tex. 2009) ("The Court approved the Debtor's Amended Disclosure Statement as containing
adequate information at the confirmation hearing, specifically finding that the Amended Disclosure Statement
met the *Metrocraft* standard.") (citation omitted).

[30]    *In re Metrocraft Pub. Servs., Inc.*, 39 B.R. 567, 568 (Bankr. N.D. Ga. 1984). *See also*, 7 COLLIER ON
BANKRUPTCY ¶ 1125.02[2] (Richard Levin & Henry J. Sommer eds., 16th ed.).

definition is to be broadly construed.[31] Yet, many Estate assets are not adequately disclosed in the Disclosure Statement; and in many cases, no value is ascribed. This, in turn, results in a flawed Liquidation Analysis (as discussed *infra*).

24.     For instance, a significant portion of funding under the Plan, at least, with respect to Abuse Claims, comes from the purported Settling Insurers. While no settlement has been approved (let alone proposed by separate motion), the Plan Proponents note these settlements (which, are a buyback of the insurance policies),[32] will generate over $29,000.000.00 to fund the Settlement Trust.[33]

25.     But a simple explanation of what the Settling Insurers will purchase the policies for does not adequately inform creditors of the value of such policies (certainly not before any settlement has been approved). By default, the Archdiocese's Estate includes its insurance policies.[34] And considering the Archdiocese is now – after several years of professing all of its creditors will be paid in full – claiming it is insolvent, the proceeds of its insurance policies are classified as property of the Estate.[35] Indeed, in *Martinez v. OGA Charters, L.L.C. (In re Charters, L.L.C.)*, the Fifth Circuit recognized that "over $400 million in related claims

---

[31]  *United States v. Whiting Pools, Inc.*, 462 U.S. 198, 205 (1983) ("§ 541(a)(1)'s scope is broad.") (cleaned up).

[32]  Doc. No. 4151 at Art. VII, § 7.26 ("The Settling Insurers agreed to buy back their policies in exchange for differing amounts, under certain conditions.").

[33]  Specifically, the Settling Insurers and the amounts paid to the Settlement Trust are as follows: (a) SPARTA (contingent upon providing financial assurance) - $21,000,000.00; (b) United States Fire Insurance Company and International Insurance Company - $5,000,000.00; (c) Catholic Mutual Relief Society of America - $2,000,000.00; (d) Puritan Insurance Company - $85,000.00; (e) National Union Insurance Company of Pittsburgh, PA - $290,000.00; and (f) Twin City Fire Insurance Company and First State Insurance Company - $900,000.00. *See* Doc. No. 4151 at Art. VII, § 7.26.

[34]  *Houston v. Edgeworth (In re Edgeworth)*, 993 F.2d 51, 55 (5th Cir. 1993) ("courts are generally in agreement that an insurance policy will be considered property of the estate.") (collecting cases)

[35]  *Martinez v. OGA Charters, L.L.C. (In re Charters, L.L.C.)*, 901 F.3d 599, 603 (5th Cir. 2018) ("where a siege of tort claimants threaten the debtor's estate over and above the policy limits, we classify the proceeds as property of the estate.").

threaten[ed] the debtor's estate over and above the $5 million policy limit, [which gave] rise to an equitable interest of the debtor in having the proceeds applied to satisfy as much of those claims as possible."[36]

26.     The Disclosure Statement peppers information concerning the various Settling Insurer's policies *except* the applicable limits. Thus, creditors cannot assess (nor are they told) what the full value of these policies could be. This, in turn, affects the ability for creditors to evaluate whether any of the settlements proposed are, in fact, a good settlement in light of the claims asserted and any policy limitations. Therefore, it is necessary for the Plan Proponents to provide further disclosure concerning each applicable policy and why the proposed settlement amount results in a just return. It is not sufficient that the Plan Proponents comply with a separate motion deadline.

27.     Similarly, Exhibit 6 of the Disclosure Statement, which delineates the "Immovable Property of the Debtor," only values fifty-two (52) pieces of immovable property; the remaining one hundred and forty-eight (148) pieces (***nearly 75% of the Archdiocese's immovable property identified on Exhibit 6***)[37] are ***not valued***.[38] And why the Archdiocese cannot, despite the Bankruptcy Case pending for over five (5) years, estimate the value of these properties is not addressed. When juxtaposed against the impairment of numerous creditors' rights under the Proposed Plan (some more significantly than others), it raises questions (and concerns) over why the Archdiocese is retaining the vast majority of its immovable property portfolio. As this will be one of the many critical pieces of information that will inform a

---

[36]   *OGA Charters*, 901 F.3d at 604 (citations omitted).

[37]   A list of the parcels of immovable property to which the Plan Proponents do not ascribe any value to is attached hereto as **Exhibit "A"**.

[38]   Doc. No. 4151-6.

11

creditor's decision to accept or reject the Proposed Plan, it must be adequately disclosed. Indeed, in *Metrocraft*, the Court concluded that "[a]bsent a valuation of the assets with some factual basis…the disclosure statement does not provide adequate information as required by the Bankruptcy Code."[39] Given this element is lacking, the Disclosure Statement fails to provide adequate information.

**B. Realizable Recovery From Avoidable Transfers.**

28.     Similarly, causes of action, including those under chapter 5 of the Bankruptcy Code, are property of the Archdiocese's Estate.[40] The Disclosure Statement, however, does not address (or estimate) the value of any of these causes of action. In fact, when the creditors follow where the Disclosure Statement points them to for additional information, they reach a dead end. For instance, Section 6.08 of the Disclosure Statement vaguely notes that there are potential "Avoidance Rights"[41] against the Tolling Parties which includes "the Non-Debtor Catholic Entities, as discussed in more detail at Sections 7.03 and 8.16[.]" Yet, Section 7.03 concerns "The Claims Bar Dates" and Section 8.16 concerns the "Non-Occurrence of Effective Date" – neither of which provide any probative information relative to Avoidance Rights or the Tolling Parties. It cannot be said that the Disclosure Statement contains adequate information in this respect.

29.     A similar issue was considered by the Southern District of Texas in *Westland Oil Dev. Corp. v. MCorp Management Solutions, Inc.* There, the debtor argued it was excused from

---

[39]     *Metrocraft*, 39 B.R. at 570 (alterations to original).

[40]     *See, e.g., Briar Capital Working Fund Capital, L.L.C. v. Remmert (In re S. Coast Supply Co.)*, 91 F.4th 376, 382 (5th Cir. 2024).

[41]     The term "Avoidance Rights" is not defined by the Disclosure Statement or Proposed Plan.

estimating the value of a cause of action in its disclosure statement because "causes of action are difficult to value."[42] But the court was not convinced:

> A claim with potential is a potential asset. The creditors have a right to know what the debtor's assets are even though the potential may be contingent, dependent, or conditional. While [the debtor] did not have to give an exact dollar value for the claim, it was obliged to give an estimate.[43]

30.     In response to the debtor's failure to "make a good faith attempt at disclosure," the court opined: "The code requires adequate disclosure, not selective disclosure."[44] A similar instruction was given by the court in *Metrocraft*:

> The debtor acknowledges that the bankruptcy estate may have claims for preferential transfers, but no light is shed on the nature of these preferential transfers or their approximate amount. Admittedly, the precise amount of such preferential transfers cannot be stated prior to this Court's determination on such claims. Nevertheless, the debtor is not excused from discussing the amount of preferences in approximate terms and setting forth what steps have been taken toward settling or litigating these claims.[45]

31.     Since the Disclosure Statement provides that "the Avoidance Rights will be released as of the Effective Date,"[46] creditors are entitled to know what such Avoidance Rights entail and the potential recovery that they can yield if they are *not* released.[47]

---

[42]   *Westland*, 157 B.R. at 103.

[43]   *Westland*, 157 B.R. at 103.

[44]   *Westland*, 157 B.R. at 103 (alteration to original).

[45]   *Metrocraft*, 39 B.R. at 570-71.

[46]   Doc. No. 4151 at Art. VI, § 6.08.

[47]   Creditors are only informed of what the Non-Debtor Catholic Entities are remitting under a settlement, not the full value of such claims. *See* Doc. No. 4151 at Art. IV, § 4.07 ("In exchange for the release, the Non-Debtor Catholic Entities are contributing $5,000,000 in cash and the proceeds from the sale of the Affordable Housing Facilities as set forth in Section 4.08 of this Disclosure Statement. The Debtor is releasing claims against the Non-Debtor Catholic Entities including, but not limited to claims asserting that: (a) property of the Non-Debtor Catholic Entities are property of the estate, (b) potential claims that the Archdiocese, the Additional Debtors, and the Non-Debtor Catholic Entities are a single business enterprise / alter ego and should all be treated as if

32.     The Disclosure Statement also mentions certain Preserved Estate Causes of Action, which according to Section 9.10, "will re-vest in the Reorganized Archdiocese[.]" Such Preserved Estate Causes of Action, according to the Disclosure Statement, are "listed on Plan Supplement 12.11(a)[.]"[48] Yet, if this Court approves the Motion and Disclosure Statement as is, creditors will reach another dead end. Stated simply, none of the Plan Supplements have been filed. And the Plan Proponents do not appear to have any intention to file them soon; in fact, the Plan Proponents have given themselves a filing deadline of ten (10) days before the objection deadline to the Proposed Plan (i.e., October 20, 2025), which, is well after solicitation packages have been transmitted to parties.[49] Thus, the Disclosure Statement fails to provide adequate information in this regard.

### C. Estimated Return to Creditors in Chapter 7.

33.     The consequence of inadequately disclosing the Archdiocese's assets (such as the immovable property values, insurance values, and avoidance actions) is that the Feasibility and Liquidation Analyses are flawed. These assets must be valued. Similar to the present case, and in response to the debtor's failure to provide a valuation of certain assets, the court in *Metrocraft* noted:

> Absent a valuation of the assets with some factual basis, and absent a concise statement addressing the prospects of a Chapter 7 liquidation, the disclosure statement does not provide adequate information as required by the Bankruptcy Code.[50]

---

they were in the same bankruptcy case, and (c) claims for avoidance actions under Chapter 5 of the Bankruptcy Code and under State Law.").

[48]   Doc. No. 4151 at Art. IX, § 9.10.

[49]   Doc. No. 4150-1 at ¶ 219; Doc. No. 4105 at ¶ 8.

[50]   *Metrocraft*, 39 B.R. at 570.

34.     The Commercial Committee will reiterate its initial comments that the Plan Proponents failed to file several pages of information that was supposed to be attached to the Disclosure Statement in the first instance. Again, if there is a question that the information which is supposed to explain and justify the Liquidation Analysis is inaccurate, then the Liquidation Analysis itself may be inaccurate.

35.     Presentation of legitimate values of all assets, and projected expenses within the Liquidation Analysis is a key component of adequate disclosure. Any creditor reviewing a Disclosure Statement needs to be presented with a fair and accurate picture of what a debtor's property is worth.  Any creditor looking at whether to vote in favor of a plan needs to see what the outcome would likely be under alternative options such as conversion or dismissal.  This Disclosure Statement fails to provide its audience with a host of important information relevant to any "informed" voting decision.

**D.  Present Condition of the Debtor While in Chapter 11**

36.     Section 4.15 of the Disclosure Statement provides little information with regard to the Archdiocese's operations after the Petition Date; and Exhibit 8 of the Disclosure Statement is a single page of a financial summary, which, considering the footnote identifies the page as A-12, it's likely this is part of a larger document.[51] As one court has explained, "It is not enough that the Disclosure Statement refers its reader to the monthly operating reports filed by the debtor with this Court; the Disclosure Statement should contain a detailed *textual description* of the debtor's postpetition performance."[52]

---

[51]   Doc. No. 4151-8.

[52]   *Cardinal*, 121 B.R. at 767 (emphasis added).

### E. Accounting Method.

37.     The Disclosure Statement does not identify what accounting method was used to prepare the financials.

### F. The Memorandum of Understanding and Other Matters.

38.     The Proposed Plan and Disclosure Statement are the product of the *Memorandum of Understanding* filed in the Bankruptcy Case by the Plan Proponents.[53] Yet, little discussion is given to how the terms of the *Memorandum of Understanding* were ultimately reached and why it (as manifested in the Proposed Plan) is an appropriate resolution for this Bankruptcy Case.[54] For instance, a significant element of the Proposed Plan is the valuation of the Abuse Claims, which, the Abuse Committee's expert consultant, Stout Risius Ross, LLC ("Stout"),[55] estimates will be valued at $1,221,000,000.00.[56] Yet, no rationale is provided as to how this figure was reached, what factors may influence this amount, how much specific types of Abuse Claims may be entitled to, and which of the 660 non-duplicative Abuse Claims[57] may not be valid (or what may impact the validity of such Abuse Claims). Moreover, the Disclosure Statement contains no discussion of the Debtor's view of the value of the abuse claims. Did the Debtor simply accept the Stout valuation despite having experts of its own who presumably have been looking at and valuing these claims?

---

[53]   Doc. No. 4020-1.

[54]   Doc. No. 4151 at Art. VII, § 7.25 ("Following a mediation held on May 16, 2025, the Debtor, Non-Debtor Catholic Entities, and Committee entered into a Memorandum of Understanding, which outlined the broad terms of the settlement that forms the basis of this Joint Plan.").

[55]   Doc. No. 1555.

[56]   Doc. No. 4151-3.

[57]   Doc. No. 4151 at Art. III, § 3.02.

39.     In a related vein, the Plan Proponents do not address how (or why) they determined that the claims in the classes other than Class 3 (Known Abuse Claims), Class 4 (Unknown Abuse Claims), Class 6 (Bond Claims), and Class 7 (General Unsecured Claims and Unsecured Trade Claims), should be paid in full. Also left unaddressed is how the Plan Proponents determined the treatment to the Bond Claims (other than asserting in a conclusory fashion that it "would have made it impossible for the Debtor to confirm a plan absent all Abuse Claimants accepting the plan"),[58] as well as the General Unsecured Claims and Unsecured Claims. Notably, under the Archdiocese's projections, after it pays off the Promissory Note to the Settlement Trust in 2029, the Archdiocese is still left with $18 million in unrestricted cash.[59] Thus, creditors in these classes are left to wonder why the Archdiocese cannot devote more cash (and immovable property) towards paying their claims consistent with the treatment afforded to the other classes of creditors.

40.     Similarly, the Plan Proponents do not address why, in light of the treatment afforded to impaired creditors, it is appropriate to allow the Deposit and Loan Fund Program and Priest Benefits (defined below) to ride through the Bankruptcy Case unimpaired,[60] or why such claims are not placed in their own respective classes (as they were classified in the Archdiocese's prior plan of reorganization).[61]

---

[58]   Doc. No. 4151 at Art. VII, § 7.05.

[59]   Doc. No. 4151-2.

[60]   Doc. No. 4151 at Art. V, § 5.04; Art. VI, § 6.05.

[61]   Doc. No. 3384 at Art. III, § 3.6 (Classifying "Pension and Retiree Medical Benefits Claims" in Class 7 and "Portfolio Claims" in Class 8). Indeed, "Portfolio Claims," which, were defined as "any Claim of the Archdiocesan Parishes and Archdiocesan Agencies with respect to deposits such Entity has made into Portfolio B," (Doc. No. 3384-1 at ¶ 228) were "subordinated to the payment of (a) the Archdiocese's Settlement Consideration to be paid to the Settlement Trust, and (b) the indebtedness evidenced by the 2017 Bonds[.]" Doc. No. 3384-1 at Art. IV, § 4.8.

41.     Furthermore, while the Disclosure Statement asserts that the Reorganized Debtor will retain the right and ability to object to claims,[62] the Disclosure Statement provides no discussion of what claims the Debtor/Plan Proponents believe to be objectionable.  At the very least, the Disclosure Statement should provide some indication of who it believes have asserted objectionable claims, and the basis for such objections.  Claims for non-abuse creditors have been filed for years at this point.  Creditors who are being asked to vote on a plan should have some knowledge of whether the Debtor intends to ask for disallowance of their claims at a later date.  And on a related note, the Disclosure Statement should have some discussion of what happens to any funds that would have been paid to such a creditor if an objection is successful.

42.     The Plan Proponents wish to advise creditors through the Disclosure Statement that "the fair and equitable determination" is not required to confirm the Proposed Plan.[63] Considering the reason given for this statement is that "there is effectively no equity interest in the Archdiocese,"[64] the Plan Proponents appear to be reading the absolute priority rule in place of the fair and equitable requirement. While the absolute priority rule may be a part of the fair and equitable determination, it is not a replacement. In any event, it is improper for the Plan Proponents to suggest either standard to be inapplicable when the Court has not made any such ruling.

43.     Moreover, and as discussed *infra*, despite the Scheduling Order requiring the Plan Proponents to file their Proposed Plan by July 15, 2025,[65] the Plan Proponents have self-

---

[62]    Doc. No. 4151 at Art. I.

[63]    Doc. No. 4151 at Art. X, § 10.05(b).

[64]    Doc. No. 4151 at Art. X, § 10.05(b).

[65]    Doc. No. 4105 at ¶ 1.

calendared an October 20, 2025 deadline to file the Plan Supplements.[66] Thus, not only have the Plan Proponents failed to file a complete plan by the Scheduling Order's deadline, but they will also be withholding these documents well past the August 28, 2025 deadline to transmit solicitation packages,[67] until a mere ten (10) days before the deadline to file an objection to the Proposed Plan. And the information contained in the Plan Supplements is important for the creditors' consideration. Thus, it cannot be said that this satisfies 11 U.S.C. § 1125's requirement of adequate disclosure.

44.     Taken together, there are numerous deficiencies with the Disclosure Statement and it therefore fails to satisfy the "adequate information" threshold. Given "a hypothetical investor" cannot "make an informed judgment about the plan," the Court should not approve the Disclosure Statement.[68]

## II.     The Disclosure Statement Cannot be Approved at this Time Because the Proposed Plan is Patently Unconfirmable.

45.     Previously, certain Louisiana bankruptcy courts have followed the "body of jurisprudence" providing that, even if a disclosure statement contains "adequate information" under 11 U.S.C. § 1125(b), it "should not be approved if the proposed plan, as a matter of law, cannot be confirmed."[69] Indeed, if a debtor cannot confirm a plan to begin with, "the estate

---

[66]   Doc. No. 4150-1 at ¶ 219 (defining "Plan Supplements Filing Date" as "unless otherwise provided in the Joint Plan, the date that is ten (10) days before the deadline to File written objections to the Confirmation of the Joint Plan.").

[67]   Doc. No. 4105 at ¶ 8.

[68]   11 U.S.C. § 1125(a)(1).

[69]   *In re Allied Gaming Mgmt.*, 209 B.R. 201, 202 (Bankr. W.D. La. 1997) (collecting cases). *See also*, *In re Miller*, No. 96-81663, 2008 Bankr. LEXIS 4831, at *10 (Bankr. W.D. La. Jan. 22, 2008) (recognizing that a disclosure statement may be disapproved if the proposed plan cannot be confirmed) (collecting cases); *Brass Corp.*, 194 B.R. at 422 ("Disapproval of the adequacy of a disclosure statement may sometimes be appropriate where it describes a plan of reorganization which is so fatally flawed that confirmation is impossible." (citing *Cardinal*, 121 B.R. at 764)).

should not be burdened (both in terms of time and expense) with going through the printing, mailing, noticing, balloting, and other exercises in the confirmation process[.]"[70] In this situation, the Third Circuit has relied upon 11 U.S.C. § 105(a) as a means "'to control its own docket[.]'"[71]

46.      In order for the Proposed Plan to be confirmed, it must, *inter alia*, comply with the provisions of the Bankruptcy Code.[72] The Commercial Committee will note several issues; however, for the avoidance of doubt, it explicitly reserves all rights to raise all these arguments (and others not included) to the Proposed Plan (and any revised or amended plans) at a later date.

## A.  Fair and Equitable

47.      As noted *supra*, the Plan Proponents suggest "the fair and equitable determination" is not required to confirm the Proposed Plan.[73] To be clear, this statement is not limited to the absolute priority rule, which, according to Bruce Markell, "[f]or over fifty years…has been the cornerstone of reorganization practice and theory,"[74] but the fair and equitable requirement in its entirety. Even assuming *arguendo* the Court had determined the absolute priority rule does not apply (which, for the avoidance of doubt, the Commercial Committee reserves all rights and arguments to challenge), the fair and equitable requirement includes more than the absolute priority rule. Indeed, mere "technical compliance with all the

---

[70]   *Allied Gaming*, 209 B.R. at 202.

[71]   *In re Am. Capital Equip., LLC*, 688 F.3d 145, 154 (3d Cir. 2012) ("The rationale is that the court's equitable powers under 11 U.S.C. § 105 'surely enable it to control its own docket' and thus, a '[c]ourt [should] not proceed with the time-consuming and expensive proposition of hearings on a disclosure statement and plan when the plan may not be confirmable because it does not comply with [confirmation requirements].'" (quoting *In re Kehn Ranch, Inc.*, 41 B.R. 832, 833 (Bankr. D.S.D. 1984))).

[72]   *See* 11 U.S.C. § 1129(a)(1) ("The court shall confirm a plan only if [inter alia] [t]he plan complies with the applicable provisions of this title") (cleaned up).

[73]   Doc. No. 4151 at Art. X, § 10.05(b).

[74]   Bruce A. Markell, *Owners, Auctions, and Absolute Priority in Bankruptcy Reorganizations*, 44 STAN. L. REV. 69, 123 (1991).

requirements in § 1129(b)(2) does not assure that the plan is 'fair and equitable.'"[75] The language preceding the requirements of § 1129(b)(2) uses the term "includes," which, according to 11 U.S.C. § 102(3), is not limiting.[76] Consequently, § 1129(b)(2) "is not to be interpreted as requiring that every plan not prohibited be approved."[77] Instead the "court must consider the entire plan in the context of the rights of the creditors under state law and the particular facts and circumstances when determining whether a plan is 'fair and equitable.'"[78] Simply put: "To be 'fair and equitable' under § 1129(b)(1) a plan must be literally fair and equitable."[79]

48.   After professing to all creditors for the five (5) year duration of the Bankruptcy Case that they will be paid in full, the Archdiocese is doing a complete about face. Instead of liquidating its vast portfolio of immovable property or pursuing valuable avoidance actions, it proposes keeping this property for itself, or releasing it so it can exit bankruptcy and leave its non-tort creditors in the dust – some with the potential for a paltry payout of 1% of its principal claim (in addition to a substantial discount for bondholders). When value is ascribed to the Archdiocese's immovable property as well as the avoidance actions it proposes releasing, it is likely the Archdiocese has more to offer unsecured creditors. And if the Archdiocese is solvent, it is required to pay its claims, in full, with interest, if authorized under the terms of its contract.[80]

---

[75]   *In re D & F Constr., Inc.*, 865 F.2d 673, 675 (5th Cir. 1989) (citation omitted).

[76]   *D & F Constr.*, 865 F.2d at 675 ("Section 102(3) of the bankruptcy code states that the word 'includes' is not limiting." (citing 11 U.S.C. § 102(3))).

[77]   *D & F Constr.*, 865 F.2d at 675.

[78]   *D & F Constr.*, 865 F.2d at 675 (citing *In re Spanish Lake Associates*, 92 B.R. 875, 878 (Bankr. E.D. Mo. 1988); *In re Edgewater Motel, Inc.*, 85 B.R. 989, 998 (Bankr. E.D. Tenn. 1988)).

[79]   *In re Manion*, 127 B.R. 887, 889-90 (Bankr. N.D. Fla 1991) (citing *In re EGH Grove Tower Associates*, 105 B.R. 310, 313 (Bankr. E.D.N.C. 1989)).

[80]   *Ultra Petro. Corp. v. Ad Hoc Comm. of OpCo Unsecured Creditors* (*In re Ultra Petro. Corp.*), 51 F.4th 138, 150 (5th Cir. 2022) ("For some three centuries of bankruptcy law, courts have held that an equitable exception to the usual rules applies in the unusual case of a solvent debtor. When a debtor proves solvent—that is, when

49.     But even if the Archdiocese is insolvent, the proposed treatment is neither fair, nor equitable. At the same time the Archdiocese is impairing creditors' rights, it proposes keeping its debts to various affiliated parties fully intact. One instance is the Deposit and Loan Fund, which, according to the Disclosure Statement "maintains funds deposited by the Archdiocese, the Additional Debtors, and the Non-Debtor Catholic Entities[.]"[81] Notably, when this Court authorized the Archdiocese to use its cash management system, it specified that "Absent further Order of this Court, (a) *the Archdiocese will not approve any Loan from the Deposit and Loan Fund to the Archdiocese*, including any Archdiocesan School[.]"[82] It appears, however, they have done just that. In Section 6.05 of the Disclosure Statement, the Plan Proponents disclose that "funds from the Deposit and Loan Fund Program have been segregated for funding the Joint Plan as well as funding operational losses during the bankruptcy," which, is essentially a loan for its own use. And that, along with the Deposit and Loan Program, "will pass through the bankruptcy case pursuant to section 10.7 of the [Proposed] Plan."[83] Likewise, Section 5.04 of the Disclosure Statement provides that the Priest Retirement Plan and Priest

---

the debtor's assets exceed its liabilities—bankruptcy's ordinary suspension of post-petition interest is itself suspended. When a debtor can pay its creditors interest on its unpaid obligations in keeping with the valid terms of their contract, it must."). *See also*, *American Iron & Steel Mfg. Co. v. Seaboard Air Line Railway*, 233 U.S. 261, 266 (1914) ("[I]f, as a result of good fortune or good management, the [debtor's] estate prove[s] sufficient to discharge the claims in full, interest as well as principal should be paid."); *Debentureholders Protective Committee of Continental Inv. Corp. v. Continental Inv. Corp.*, 679 F.2d 264, 269 (1st Cir. 1982) ("Where the debtor is solvent, the bankruptcy rule is that where there is a contractual provision, valid under state law, providing for interest on unpaid installments of interest, the bankruptcy court will enforce the contractual provision with respect to both installments due before and . . . after the petition was filed.").

[81]    Doc. No. 4151 at Art. VI, § 6.05.

[82]    Doc. No. 174 at ¶ 17 (emphasis added).

[83]    Doc. No. 4151 at Art. VI, § 6.05. *See also*, Doc. No. 4150 at Art. X, § 10.7 ("Notwithstanding anything else to the contrary in this Article 10 and except as otherwise specifically set forth in this Joint Plan, the Parish Service Agreements, the Temporalities Manual, and all oral agreements between the Archdiocesan Parishes and the Archdiocese will be neither assumed nor rejected under Bankruptcy Code § 365 and will instead pass through and be treated on and after the Effective Date for all purposes as if the Archdiocese Chapter 11 Case and the Additional Debtors' Chapter 11 Cases had never been filed.").

Retiree Medical Benefits (together, the "Priest Benefits") will, also under Section 10.07 of the Proposed Plan, "pass through unaffected[.]"[84]

50.      Given the Archdiocese has additional resources it can devote to pay its creditors, who, have been waiting for over five (5) years, the Proposed Plan is neither fair, nor equitable.

## B.  Classifications

51.      According to the Fifth Circuit in *In re Greystone III Joint Venture*, there are two (2) reasons for classifying claims against a debtor.[85] *First*, and because "[e]ach class of creditors will be treated in the debtor's plan of reorganization based upon the similarity of its members' priority status and other legal rights against the debtor's assets[,] [p]roper classification is essential to ensure that creditors with claims of similar priority against the debtor's assets are treated similarly."[86] *Second*, and regardless of whether the Plan Proponents must run the gauntlet of a cramdown (which, is almost certain at this point), "[c]lassification of claims [] affects the integrity of the voting process, [because], if claims could be arbitrarily placed in separate classes, it would almost always be possible for the debtor to manipulate 'acceptance' by artful classification."[87] In short, there is "one clear rule that emerges from otherwise muddled caselaw on § 1122 claims classification: thou shalt not classify similar claims differently in order to gerrymander an affirmative vote on a reorganization plan."[88] It appears this instruction has been disregarded.

---

[84]   Doc. No. 4151 at Art. V, § 5.04.

[85]   *In re Greystone III Joint Venture*, 995 F.2d 1274, 1277 (5th Cir. 1991).

[86]   *Greystone*, 995 F.2d at 1277 (cleaned up).

[87]   *Greystone*, 995 F.2d at 1277.

[88]   *Greystone*, 995 F.2d at 1279.

52.     For instance, the Plan Proponents have drawn a distinction between Known Abuse Claims (Class 3) and Unknown Abuse Claims (Class 4), which courts have concluded is a distinction without a difference. The Minnesota Bankruptcy Court in *In re Archdiocese of St. Paul & Minneapolis* confronted the issue of whether it was appropriate to separately classify pending tort claims and future tort claims (i.e., "current claims that have not been filed").[89] The court noted "[t]here is no basis provided for in the plan or the disclosure statement for treating these classes differently or whether discrimination is essential to confirmation or consummation of the plan."[90] Specifically, the classes had "very different remedies" – the pending tort claims were paid from the trust, while the "future tort claims" were "forced to assert claims against the reorganized debtor with no or little property and no insurance coverage left after confirmation."[91] Thus, the Court concluded "[s]uch discrimination is not necessary for the debtor's reorganization" and constitutes "unfair treatment in violation of section 1129(b)."[92]

53.     With respect to the Proposed Plan, and while both classes are entitled to distributions from the Settlement Trust, the Unknown Abuse Claims are paid from the Unknown Claims Reserve[93] and the known Abuse Claims are paid from the Settlement Trust. To be clear, an Unknown Abuse Claim is still, by its own definition, an Abuse Claim;[94] however, in contrast to the Known Abuse Claims, it has not been filed by the Additional Debtors' Abuse Claims Bar

---

[89]   *In re Archdiocese of Saint Paul & Minneapolis*, 579 B.R. 188, 205 (Bankr. D. Minn. 2017).

[90]   *Archdiocese of Saint Paul*, 579 B.R. at 205.

[91]   *Archdiocese of Saint Paul*, 579 B.R. at 205.

[92]   *Archdiocese of Saint Paul*, 579 B.R. at 205.

[93]   As defined in Doc. No. 4150-6 at § 9.2

[94]   Doc. No. 4150-1 at ¶ 294 (defining "Unknown Abuse Claim" as "an Abuse Claim").

Date.[95] But in the end, this distinction is illusory because these Abuse Claims are ultimately allowed to the extent there is a "valid legal excuse" for failing to file by the Additional Debtors' Abuse Claims Bar Date. In other mass tort bankruptcies, such as *Johns-Manville*, the "distinction between 'present' and 'future' victims is, at best, nominal."[96] Particularly noteworthy in this instance is that the Unknown Abuse Claims Representative is entitled to vote for the entirety of Class 4.[97] And because this class is identified as impaired, whether the Plan Proponents are successful in a cramdown could be decided by a single vote.[98]

### C. Good Faith

54.    11 U.S.C. § 1129(a)(3) precludes the Proposed Plan from being confirmed unless it "has been proposed in good faith and not by any means forbidden by law." The Fifth Circuit has instructed "that 'the requirement of good faith must be viewed in light of the totality of the circumstances surrounding establishment of a Chapter 11 plan, keeping in mind the purpose of the Bankruptcy Code is to give debtors a reasonable opportunity to make a fresh start.'"[99] As the Court is aware, the genesis for the Proposed Plan is a *Memorandum of Understanding* among the Plan Proponents containing a number of key provisions for a joint chapter 11 plan of

---

[95]    Doc. No. 4150-1 at ¶ 13.

[96]    *In re Johns-Manville Corp.*, 68 B.R. 618, 628 (Bankr. S.D.N.Y. 1986).

[97]    Doc. No. 4150 at Art. IV, § 4.4(d) ("The Unknown Abuse Claims Representative is entitled to vote to accept or reject the Joint Plan on account of the Unknown Abuse Claims against the Debtor or any Additional Debtors, as the representative of the Unknown Abuse Claimants.").

[98]    *Greystone*, 995 F.2d at 1279 ("Unless there is some requirement of keeping similar claims together, nothing would stand in the way of a debtor seeking out a few impaired creditors (or even one such creditor) who will vote for the plan and placing them in their own class." (quoting *In re U.S. Truck Co.*, 800 F.2d 581, 596 (6th Cir. 1986))).

[99]    *Mabey*, 150 F.3d at 519 (quoting *Financial Sec. Assur. v. T-H New Orleans Ltd. Pshp. (In re T-H New Orleans Ltd. Pshp.)*, 116 F.3d 790, 802 (5th Cir. 1997)).

reorganization.[100] The vast majority of these key provisions focus on the treatment and rights afforded to the Abuse Committee's constituency under the plan, such as:

(a) The amount and sources of funding to the Trust that would ultimately be responsible for satisfying the Abuse Claims;

(b) The Abuse Committee having the (apparently sole) ability to nominate the settlement trustee, determine the allocation of funds deposited in the Trust (whether from the Archdiocese, Additional Debtors, or settling insurers), and the appointment of the Abuse Claims Reviewer; and

(c) The Plan Proponents determining how to share the proceeds of "certain designated assets" that are to be liquidated by a broker chosen by the Plan Proponents.

55.     Little, if any, attention was given to the rights and treatment of remaining Archdiocese creditors in the Commercial Committee's constituency. As the Plan Proponents are aware, the Court directed the United States Trustee to appoint the Commercial Committee because their voice needed to be heard[101] and proper consideration must be given to the Commercial Committee constituency. Unfortunately, the Plan Proponents' myopic considerations have prevailed in the Proposed Plan: the Additional Debtors' creditors can ride through the bankruptcy, non-abuse tort claims can pursue insurers with the Archdiocese providing a backstop, while the Bond Claims are slashed in value, and the General Unsecured/Trade Creditors are slated to recover, unless they can or elect to qualify for the Convenience Class election, a mere 1% on the principal amount of their claims. When a plan heavily favors a specific party at the expense of others, courts have found the good faith element absent.[102]

---

[100]  Doc. No. 4020-1.

[101]  Doc. No. 745.

[102]  *See, e.g., In re ACandS, Inc.*, 311 B.R. 36, 43 (Bankr. D. Del. 2004) ("The plan under consideration falls short of this standard in nearly every respect. Although ACandS was represented during the course of the prepackage negotiations, the correspondence among plaintiffs' asbestos counsel presented at trial indicates that the plan was largely drafted by and for the benefit of the prepetition committee. It was the prepetition committee that drafted

**D.  Unfair Discrimination.**

56.     As the Southern District of Texas Bankruptcy Court in *In re Sentry Operating Co. of Tex., Inc.* recognized, "the Bankruptcy Code is premised on the rule of equality of treatment."[103] And in this vein, § 1129(b)(1) requires a plan to "not discriminate unfairly[.]" Admittedly, some *discrimination* is permitted; however, many Courts[104] have relied upon Bruce A. Markell's proposed test to analyze when discrimination shifts from fair to unfair:

> a Chapter 11 plan is presumptively subject to denial of confirmation on the basis of unfair discrimination, even though it provides fair and equitable treatment for all classes, when there is (1) a dissenting class; (2) another class of the same priority; and (3) a difference in the plan's treatment of the two classes that results in either (a) a materially lower percentage recovery for the dissenting class (measured in terms of the net present value of all payments), or (b) regardless of percentage recovery, an allocation under the plan of materially greater risk to the dissenting class in connection with its proposed distribution.[105]

57.     Instead of appropriately classifying the Deposit and Loan Fund Program and Priest Benefits, the Plan Proponents seek to allow the liabilities to pass through the Bankruptcy Case unaffected and unimpaired.[106] At that same time, the Plan Proponents propose significantly altering the Bond Claims and unless the General Unsecured/Trade Creditors can qualify (or

---

(or more likely directed debtor's counsel in drafting) the prepetition trust, and apparently chose the trustee for the trust; it was the prepetition committee that decided how the security agreement would be crafted and how many classes of security interests would be formed; and it was the prepetition committee that decided who was going to get what.").

[103]   *In re Sentry Operating Co. of Tex., Inc.*, 264 B.R. 850, 863 (Bankr. S.D. Tex. 2001).

[104]   *See, e.g.*, *In re Westbank Holdings, LLC*, No. 22-10082, 2023 Bankr. LEXIS 1063, at *35 (Bankr. E.D. La. Apr. 19, 2023) ("As other courts have done, this Court implements the well-founded 'rebuttable-presumption' test for unfair discrimination proposed by Professor and former Bankruptcy Judge Bruce A. Markell.") (collecting cases).

[105]   *Sentry*, 264 B.R. at 863-64 (quoting Bruce A. Markell, *A New Perspective on Unfair Discrimination in Chapter 11*, 72 Am. Bankr. L.J. 227, at 228 (1998).

[106]   Doc. No. 4151 at Art. V, § 5.04; Art. VI, § 6.05.

elect) treatment as a Convenience Claim, they are left with a mere 1% on the principal amount of their claims. Given this results in a materially lower percentage recovery for these classes, there is a presumption of unfair discrimination and the burden now rests with the Plan Proponents to overcome that presumption.[107]

### III.     The Voting Procedures are Improper.

58.     Despite the Scheduling Order requiring the Plan Proponents to file their Proposed Plan by July 15, 2025, the Plan Proponents have given themselves an October 20, 2025 deadline to file the Plan Supplements,[108] which are to be "incorporated by reference and made part of the [Proposed] Plan as if fully set forth in the [Proposed] Plan."[109]

59.     Thus, not only have the Plan Proponents not filed a complete plan by the Scheduling Order's deadline, but they also intend to withhold these documents well past the August 28, 2025 deadline to transmit solicitation packages, until a mere ten (10) days before the deadline to file an objection to the Proposed Plan. The information contained in the Plan Supplements is important for creditors' consideration, including, but not limited to: (a) Insurance Settlement Agreements; (b) List of the Settling Insurers' Policies; (c) List of the Non-Settling Insurers' Policies; and (d) Debtor's Preserved Estate Causes of Action.[110]

60.     With respect to the Class 7 Ballot, a summary of the potential treatment under the Proposed Plan should be provided (i.e., they will be given 1% of their claim unless they make a Convenience Class Election). Moreover, claimants in Class 7 are only informed that if their

---

[107] *Sentry*, 264 B.R. at 864.

[108] Doc. No. 4150-1 at ¶ 219 (defining "Plan Supplements Filing Date" as "unless otherwise provided in the Joint Plan, the date that is ten (10) days before the deadline to File written objections to the Confirmation of the Joint Plan.").

[109] Doc. No. 4150 at Art. I, § 1.4 (alterations to original).

[110] Doc. No. 4150 at pg. 3.

claim exceeds $50,000.00, they may make the Convenience Class Election.[111] This contradicts the Proposed Plan which provides that a Convenience Claim also includes "a General Unsecured Claim or an Unsecured Trade Claim against the Archdiocese if the Allowed Amount of such Claim is equal to or less than $50,000[.]"[112] To avoid any confusion, the Class 7 Ballot should specify that an election will be automatic if their amount of their claim is less than or equal to $50,000.00.

## CONCLUSION

61.    Taken together, the Plan Proponents have failed to satisfy the threshold of adequate information found in 11 U.S.C. § 1125. Similarly, because the Proposed Plan cannot be confirmed, the Plan Proponents should not burden the Estate with the costs and expenses associated with printing and mailing copies to creditors.

## RESERVATION

62.    The Commercial Committee explicitly reserves all rights, provided by law and equity, to contest the Proposed Plan or any revised plan of reorganization filed by the Plan Proponents or any other entity and nothing contained herein shall be deemed a waiver of such rights. Moreover, the Commercial Committee further reserves all rights, provided by law and equity, to contest the Disclosure Statement and any amended disclosure statement filed by the Plan Proponents or any other entity and nothing contained herein shall be deemed a waiver of such rights.

---

[111]   Doc. No. 4152-1 at pg. 69.

[112]   Doc. No. 4150-1 at ¶ 105.

**WHEREFORE**, the Commercial Committee requests that this Court (i) decline to approve the Disclosure Statement; or (ii) order the Plan Proponents to file an amendment disclosure statement and plan of reorganization curing all deficiencies.   The Commercial Committee further requests this Court grant any other such relief it deems necessary and just.

Respectfully Submitted,

**STEWART ROBBINS BROWN & ALTAZAN, LLC**

By:   */s/ Paul D. Stewart, Jr.*
Paul D. Stewart, Jr. (LA. Bar # 24661)
dstewart@stewartrobbins.com
William S. Robbins (LA. Bar # 24627)
wrobbins@stewartrobbins.com
Brandon A. Brown (La. Bar #25592)
bbrown@stewartrobbins.com
Brooke W. Altazan (La. Bar #32796)
baltazan@stewartrobbins.com
301 Main St., Suite 1640
Baton Rouge, LA 70801-0016
Telephone: (225) 231-9998
Facsimile: (225) 709-9467

***Counsel to the Official Committee of Unsecured Commercial Creditors of The Roman Catholic Church of the Archdiocese of New Orleans***

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the above and foregoing was served this 28th day of July 2025, on all parties who have registered to receive notice via the Court's electronic case notification system.

*/s/Paul Douglas Stewart, Jr.*
Paul Douglas Stewart, Jr

# **Exhibit A**

| Number | Civil Parish | ADDRESS | OCCUPANT | RECORD OWNER | TAX PARCEL ID | Market Value | Liquidation Value |
|---|---|---|---|---|---|---|---|
| 1 | Terrebonne | (Marshland) | n/a | Roman Catholic Church Of The Archdiocese Of New Orleans, Et Al. | 41080 | | |
| 2 | Terrebonne | (Misc. Land) | n/a | Roman Catholic Church Diocese of New Orleans | 57708 | | |
| 3 | Terrebonne | (Misc. Land) | n/a | Roman Catholic Church Diocese of New Orleans | 52474 | | |
| 4 | Terrebonne | (Woodland) | n/a | Roman Catholic Church Diocese of New Orleans | 36811 | | |
| 5 | St. John the Baptist | 100 Dominican Dr. Laplace, LA 70068 | St. Charles Catholic School | The Roman Catholic Church Of The Archdiocese Of New Orleans | 9400000700 | | |
| 6 | Jefferson | 1000  Starrett Rd., 8600 W. Metairie Ave., and 925 Atlanta St. Metairie, LA 70003 | Our Lady of Divine Providence Catholic Church | Roman Catholic Church Of The Archdiocese Of New Orleans | 9910011845 | -- | $0.00 |
| 7 | Orleans | 1025 Oretha C. Haley Blvd. New Orleans, LA 70113 | RCCANO Offices / Catholic Charities Office (Parking) | The Roman Catholic Church Of The Archdiocese Of New Orleans | 102106402 | | $0.00 |
| 8 | Orleans | 1032 S Rampart St. New Orleans, LA 70113 | RCCANO Offices / Catholic Charities Office (Parking) | The Roman Catholic Church Of The Archdiocese Of New Orleans | 102106406 | | $0.00 |
| 9 | Orleans | 1042 S Rampart St. New Orleans, LA 70113 | RCCANO Offices / Catholic Charities Office (Parking) | The Roman Catholic Church Of The Archdiocese Of New Orleans | 102106407 | | $0.00 |
| 10 | St. Charles | 10771 River Road Ama, LA 70031 | St. Mark Catholic Church | The Roman Catholic Church Of The Archdiocese Of New Orleans | 200500B00001 | | $0.00 |
| 11 | St. Charles | 10774 River Road Ama, LA 70031 | St. Mark Catholic Church | The Roman Catholic Church Of The Archdiocese Of New Orleans | 2.24501E+11 | | $0.00 |
| 12 | St. Charles | 10779 River Road Ama, LA 70031 | St. Mark Catholic Church | The Roman Catholic Church Of The Archdiocese Of New Orleans | 2.01102E+11 | | $0.00 |
| 13 | Orleans | 1100-1116 Chartres St. New Orleans, LA 70116 | Catholic Cultural Heritage Center / Old Ursuline Covenant / St. Mary Church | The Roman Catholic Church Of The Archdiocese Of New Orleans (Assessed in name of Our Lady Of Victory) | 208100523 | - | $0.00 |
| 14 | Orleans | 14001 Dwyer Blvd. New Orleans, LA 70129 | Mary Queen of Vietnam | The Roman Catholic Church Of The Archdiocese Of New Orleans | 39W972902 | | $0.00 |
| 15 | Orleans | 14408 Peltier Dr. New Orleans, LA 70129 | CAC Thanh Tu Dao | Roman Catholic Church Of The Archdiocese Of New Orleans | 39W968902 | -- | $0.00 |
| 16 | Orleans | 14418 Peltier Dr. New Orleans, LA 70129 | CAC Thanh Tu Dao | Roman Catholic Church Of The Archdiocese Of New Orleans | 39W968903 | -- | $0.00 |
| 17 | Orleans | 14424 Peltier Dr. New Orleans, LA 70129 | CAC Thanh Tu Dao | Roman Catholic Church Of The Archdiocese Of New Orleans | 39W968904 | -- | $0.00 |
| 18 | St. Charles | 14538 River Road Destrehan, LA 70047 | St. Charles Borromeo Catholic Church | The Roman Catholic Church Of The Archdiocese Of New Orleans | 302101000001 302101000002 302101000003 302101000004 | | $0.00 |
| 19 | Orleans | 15049 Veronica St. New Orleans, LA | Vacant Land | The Roman Catholic Church Of The Archdiocese Of New Orleans | 513901405 | | $0.00 |
| 20 | St. Tammany | 16118 Hwy. 190 (4354-4530 Ronald Reagan Hwy) Covington, LA 70433 | St. Scholastica Academy Athletic Complex | The Roman Catholic Church Of The Archdiocese Of New Orleans | 106-014-8423 | | $0.00 |
| 21 | St. Charles | 16883 River Road Hahnville, LA 70057 | Holy Rosary Cemetery | Roman Catholic Church Of The Archdiocese Of New Orleans | 160100001878 | | $0.00 |
| 22 | St. Charles | 178 St. Mark Ave. Ama, LA 70031 | St. Mark Catholic Church (Community | The Roman Catholic Church Of The Archdiocese Of New Orleans | 20110150000A | | $0.00 |

Exhibit "A"

| 23 | Jefferson | 1901 Severn Ave. Metairie, LA 70001 | Archbishop Rummel High School | Roman Catholic Church Of The Archdiocese Of New Orleans | 9820041664 | -- | $0.00 |
| 24 | Jefferson | 1916 N Arnoult Rd. Metairie, LA 70001 | Residence - N. Arnoult Drive | Roman Catholic Church Of The Archdiocese Of New Orleans | 9820003755 | | $0.00 |
| 25 | St. John the Baptist | 2004 East Frisco Dr. | Ascension of Our Lord Catholic Church | The Roman Catholic Church Of The Archdiocese Of New Orleans | 0410004018 | | $0.00 |
| 26 | St. Tammany | 20370 Smith Road | St. Benedict (Adjacent Property) | The Roman Catholic Church Of The Archdiocese Of New Orleans | 107-120-8608 | | $0.00 |
| 27 | St. Tammany | 20370 Smith Road | St. Benedict (Adjacent Property) | The Roman Catholic Church Of The Archdiocese Of New Orleans | 107-014-5106 | | $0.00 |
| 28 | St. Charles | 208 Angus Dr. | St. Anthony of Padua Church | Roman Catholic Church Of The Diocese Of New Orleans | 20170000000E | | $0.00 |
| 29 | Terrebonne | 209 South Hollywood Rd. | Maria Immaculate Catholic Church | Roman Catholic Church Of The Archdiocese Of New Orleans | 41759 | | $0.00 |
| 30 | Jefferson | 2108 Magnolia Ridge St. | St. John Bosco (Residence) | The Roman Catholic Church Of The Archdiocese Of New Orleans D/B/A St. John Bosco, Catholic Church | 9400005472 | | $0.00 |
| 31 | Jefferson | 2115 Oakmere Dr. | St. John Bosco Church and Laureate | Roman Catholic Church Of The Archdiocese Of New Orleans | 9400004268 | | $0.00 |
| 32 | Jefferson | 2136 Matador St. | St. Martha Church (residence) | The Roman Catholic Church Of The Archdiocese Of New Orleans | 9300008307 | | $0.00 |
| 33 | St. Charles | 234 Angus Dr. | St. Anthony of Padua Church | Roman Catholic Church Of The Archdiocese Of New Orleans | 20170000000B | | $0.00 |
| 34 | St. Charles | 234 Angus Dr. | St. Anthony of Padua Church | Roman Catholic Church Of The Diocese Of New Orleans | 20170000000D | | $0.00 |
| 35 | St. Bernard | 2501 Archbishop Hannan | | The Roman Catholic Church Of Archdiocese Of New Orleans | 45630000R1C2 | | $0.00 |
| 36 | Jefferson | 2548 Apollo Ave. | St. Martha Church (residence) | The Roman Catholic Church Of The Archdiocese Of New Orleans | 9300002864 | | $0.00 |
| 37 | St. Bernard | 2621 Colonial Blvd. | Our Lady of Lourdes | The Roman Catholic Church Of The Archdiocese Of New Orleans | A899000000Z4 | | $0.00 |
| 38 | Orleans | 2901 S Carrollton Ave (2925 S. | Notre Dame Seminary, Archbishop | The Roman Catholic Church Of The Archdiocese Of New Orleans (Pt. A. Seminary) | 716327320 | | $0.00 |
| 39 | Orleans | 3200 Canal St. | Sacred Heart of Jesus Catholic Church | The Roman Catholic Church Of The Archdiocese Of New Orleans | 105205318 | - | $0.00 |
| 40 | Jefferson | 333 S Jamie Blvd. | St. Bonaventure Church | Roman Catholic Church Of The Archdiocese Of New Orleans | 9500006916 | -- | $0.00 |
| 41 | Jefferson | 3500 Ames Blvd. | Visitation of Our Lady Catholic Church | The Roman Catholic Church Of The Diocese Of New Orleans | 9430005628 | | $0.00 |
| 42 | St. Bernard | 3700 Jean Lafitte Pkwy. | Prince of Peace Church Rectory and | The Roman Catholic Church Of The Archdiocese Of New Orleans | 350500000DD1 | | $0.00 |
| 43 | Orleans | 3748 Pere Antoine Alley (615 Pere | | Roman Catholic Church Of The Archdiocese Of New Orleans | 207101408 | | $0.00 |
| 44 | St. Tammany | 416 E Rutland St. | St. Scholastica Academy | Roman Catholic Church of The Archdiocese of New Orleans D/B/A Scholastica Academy | 106-006-5994 | | $0.00 |
| 45 | St. Tammany | 424 E 21St / 111-113 S. Jahncke | St. Scholastica Academy | The Roman Catholic Church Of The Archdiocese Of New Orleans | 106-009-0247 | | $0.00 |
| 46 | Jefferson | 425 10Th St. | Holy Guardian Angels Mission Church | Roman Catholic Church Of The Archdiocese Of New Orleans | 9500006761 | -- | $0.00 |

| 47 | Jefferson | 4313 Richland Ave. | St. Clement of Rome Church | Roman Catholic Church Of The Archdiocese Of New Orleans | 9820008316 | | $0.00 |
| 48 | Jefferson | 4408 Cleary Ave. | St. Clement of Rome Church | Roman Catholic Church Of The Archdiocese Of New Orleans | 9820021331 | | $0.00 |
| 49 | Jefferson | 4412 Era St. | St. Clement of Rome Church | Roman Catholic Church Of The Archdiocese Of New Orleans | 9820021203 | | $0.00 |
| 50 | Jefferson | 4413 Art St. | St. Clement of Rome Church | Roman Catholic Church Of The Archdiocese Of New Orleans | 9820041665 | | $0.00 |
| 51 | Orleans | 4415 Joycelyn Dr. | | The Roman Catholic Church Of The Archdiocese Of New Orleans | 513834223 | | $0.00 |
| 52 | Orleans | 4420 Fields St. | Near St. Joseph Algiers on Westbank | The Roman Catholic Church Of The Archdiocese Of New Orleans | 513834216 | | $0.00 |
| 53 | Jefferson | 4841 Meadowdale St. | St. Ann Church and National Shrine (St. | Roman Catholic Church Of The Archdiocese Of New Orleans | 9820017526 | -- | $0.00 |
| 54 | Jefferson | 4844 Loveland St. | St. Ann Church and National Shrine (St. | Roman Catholic Church Of The Archdiocese Of New Orleans | 9820015523 | -- | $0.00 |
| 55 | Jefferson | 4845 Meadowdale St. | St. Ann Church and National Shrine (St. | Roman Catholic Church Of The Archdiocese Of New Orleans | 9820024868 | -- | $0.00 |
| 56 | Jefferson | 4848 Loveland St. | St. Ann Church and National Shrine (St. | Roman Catholic Church Of The Archdiocese Of New Orleans | 9820041645 | -- | $0.00 |
| 57 | Jefferson | 4849 Meadowdale St. | St. Ann Church and National Shrine (St. | Roman Catholic Church Of The Archdiocese Of New Orleans | 9820041666 | -- | $0.00 |
| 58 | Jefferson | 4909 Loveland St. | St. Ann Church and National Shrine (St. | Roman Catholic Church Of The Archdiocese Of New Orleans | 9820013872 | -- | $0.00 |
| 59 | Jefferson | 4940 Meadowdale St. | St. Ann Church and National Shrine (St. | Roman Catholic Church Of The Archdiocese Of New Orleans | 9820038106 | -- | $0.00 |
| 60 | Orleans | 54423 Middle Rd | Storage Area (Old Gentilly Road) | The Roman Catholic Church Of The Archdiocese Of New Orleans | 39W828304 | | $0.00 |
| 61 | Orleans | 54427 Middle Rd | Storage Area (Old Gentilly Road) | The Roman Catholic Church Of The Archdiocese Of New Orleans | 39W828308 | | $0.00 |
| 62 | Orleans | 54436 Middle Rd | Storage Area (Old Gentilly Road) | The Roman Catholic Church Of The Archdiocese Of New Orleans | 39W828318 | | $0.00 |
| 63 | Orleans | 54445 Middle Rd | Storage Area (Old Gentilly Road) | The Roman Catholic Church Of The Archdiocese Of New Orleans | 39W828327 | | $0.00 |
| 64 | St. Tammany | 58203 Hwy. 433 | St. Genevieve Church (Adjacent | The Roman Catholic Church Of The Archdiocese Of New Orleans | 128-067-7507 | | $0.00 |
| 65 | Jefferson | 617 2nd Ave. | St. Rosalie Church | The Roman Catholic Church Of The Archdiocese Of New Orleans | 9400001919 | -- | $0.00 |
| 66 | Jefferson | 620 1St Ave. | St. Rosalie Church | The Roman Catholic Church Of The Archdiocese Of New Orleans | 9400001866 | -- | $0.00 |
| 67 | Orleans | 6420 Kathy Ct | Near St. Joseph Algiers on Westbank | The Roman Catholic Church Of The Archdiocese Of New Orleans | 513834210 | | $0.00 |
| 68 | Orleans | 6430 Kathy Ct | Near St. Joseph Algiers on Westbank | The Roman Catholic Church Of The Archdiocese Of New Orleans | 513834211 | | $0.00 |
| 69 | Orleans | 6440 Kathy Ct | Near St. Joseph Algiers on Westbank | The Roman Catholic Church Of The Archdiocese Of New Orleans | 513834212 | | $0.00 |
| 70 | Orleans | 6450 Kathy Ct | Near St. Joseph Algiers on Westbank | The Roman Catholic Church Of The Archdiocese Of New Orleans | 513834213 | | $0.00 |

| 71 | Orleans | 6828 Chef Menteur Hwy | St. Paul the Apostle RCC, New Orleans, | The Roman Catholic Church of the Archdiocese of New Orleans | 39W920058 | | $0.00 |
| 72 | St. Tammany | 687 St. Genevieve Lane | St. Genevieve Church (Adjacent | The Roman Catholic Church Of The Archdiocese Of New Orleans | 128-067-9097 | | $0.00 |
| 73 | Orleans | 721 Chartres St. | St. Louis Cathedral | Roman Catholic Church Of The Archdiocese Of New Orleans | 207101314 | - | $0.00 |
| 74 | St. John the Baptist | 1900 Greenwood Dr | Ascension of Our Lord Catholic Church | The Roman Catholic Church Of The Archdiocese Of New Orleans | 9400000800 | | $0.00 |
| 75 | Jefferson | 8151 Barataria Blvd. | St. Pius X Church | Of New Orleans | 9600003273 | | $0.00 |
| 76 | Jefferson | 901 Beverly Garden Dr. | St. Angela Merici Catholic Church | Roman Catholic Church Of The Archdiocese Of New Orleans | 9820041657 | -- | $0.00 |
| 77 | Jefferson | 901 Beverly Garden Dr. | St. Angela Merici Catholic Church | Roman Catholic Church Of The Archdiocese Of New Orleans | 9820041658 | -- | $0.00 |
| 78 | Jefferson | 908 N Starrett Rd | Our Lady of Divine Providence Catholic | Roman Catholic Church Of The Archdiocese Of New Orleans | 9910011851 | -- | $0.00 |
| 79 | Jefferson | 908 N Starrett Rd | Our Lady of Divine Providence Catholic | Roman Catholic Church Of The Archdiocese Of New Orleans | 9910011854 | -- | $0.00 |
| 80 | Jefferson | Avondale, LA 70094 | Assumption of Mary Church | Roman Catholic Church Of The Archdiocese Of New Orleans | 9500007086 | | $0.00 |
| 81 | Jefferson | Avondale, LA 70094 | Assumption of Mary Church | Roman Catholic Church Of The Archdiocese Of New Orleans | 9500007091 | | $0.00 |
| 82 | Jefferson | Avondale, LA 70094 | Assumption of Mary Church | Roman Catholic Church Of The Archdiocese Of New Orleans | 9500007092 | | $0.00 |
| 83 | Jefferson | Avondale, LA 70094 | Assumption of Mary Church | Roman Catholic Church Of The Archdiocese Of New Orleans | 9500007093 | | $0.00 |
| 84 | Jefferson | Avondale, LA 70094 | Assumption of Mary Church | Roman Catholic Church Of The Archdiocese Of New Orleans | 9500007094 | | $0.00 |
| 85 | Jefferson | Barataria Blvd. | St. Pius X Church | The Society Of The Roman Catholic Church Of The Archdiocese Of New Orleans | 9600003275 | | $0.00 |
| 86 | Jefferson | Barataria Blvd. | St. Joachim Church | The Roman Catholic Church Of The Archdiocese Of New Orleans | 9430005354 | | $0.00 |
| 87 | Jefferson | Bridge City, LA, 70096 | Holy Guardian Angels Mission Church | The Roman Catholic Church Of The Archdiocese Of New Orleans | 9500006025 | -- | $0.00 |
| 88 | Jefferson | Bridge City, LA, 70096 | Holy Guardian Angels Mission Church | Roman Catholic Church Of The Archdiocese Of New Orleans | 9500006760 | -- | $0.00 |
| 89 | Jefferson | Bridge City, LA, 70096 | Holy Guardian Angels Mission Church | Roman Catholic Church Of The Archdiocese Of New Orleans | 9500006762 | -- | $0.00 |
| 90 | Jefferson | Bridge City, LA, 70096 | Holy Guardian Angels Mission Church | Roman Catholic Church Of The Archdiocese Of New Orleans | 9500006763 | -- | $0.00 |
| 91 | Jefferson | Bridge City, LA, 70096 | Holy Guardian Angels Mission Church | Roman Catholic Church Of The Archdiocese Of New Orleans | 9500006764 | -- | $0.00 |
| 92 | Jefferson | Bridge City, LA, 70096 | Holy Guardian Angels Mission Church | Roman Catholic Church Of The Archdiocese Of New Orleans | 9500006765 | -- | $0.00 |
| 93 | Jefferson | Bridge City, LA, 70096 | Holy Guardian Angels Mission Church | Roman Catholic Church Of The Archdiocese Of New Orleans | 9500006766 | -- | $0.00 |
| 94 | Jefferson | Bridge City, LA, 70096 | Holy Guardian Angels Mission Church | Roman Catholic Church Of The Archdiocese Of New Orleans | 9500006767 | -- | $0.00 |
| 95 | Jefferson | Bridge City, LA, 70096 | Holy Guardian Angels Mission Church | Roman Catholic Church Of The Archdiocese Of New Orleans | 9500006768 | -- | $0.00 |

| 96 | Jefferson | Bridge City, LA, 70096 | Holy Guardian Angels Mission Church | Roman Catholic Church Of The Archdiocese Of New Orleans | 9500006769 | -- | $0.00 |
| 97 | Lafourche | Brule Guillot Road | (Vacant Land) | The Roman Catholic Church Of The Diocese Of New Orleans (2/16Th), et als. | 0010206300 | | $0.00 |
| 98 | St. John the Baptist | 799 Fairway Dr. (Corner Of | Ascension of Our Lord Catholic Church | The Roman Catholic Church Of The Archdiocese Of New Orleans | 9400000600 | | $0.00 |
| 99 | St. Tammany | Cross Gates Blvd. | St. Luke the Evangelist Catholic Church | The Roman Catholic Church Of The Archdiocese Of New Orleans | 110-101-0891 | | $0.00 |
| 100 | Jefferson | Cumberland St. | Our Lady of Divine Providence Catholic | Roman Catholic Church Of The Archdiocese Of New Orleans | 9910011848 | -- | $0.00 |
| 101 | Jefferson | Cumberland St. | Our Lady of Divine Providence Catholic | Roman Catholic Church Of The Archdiocese Of New Orleans | 9910011849 | -- | $0.00 |
| 102 | Orleans | Dauphine St. | St. Louis Cathedral Academy | The Roman Catholic Church Of The Archdiocese Of New Orleans | 207102704 | | $0.00 |
| 103 | St. Tammany | East 20th Ave. | St. Scholastica Academy | The Roman Catholic Church Of The Archdiocese Of New Orleans | 106-126-4206 | | $0.00 |
| 104 | St. Tammany | East Boston St. | St. Scholastica Academy | The Roman Catholic Church Of The Archdiocese Of New Orleans | 106-106-2689 | | $0.00 |
| 105 | Jefferson | Field at W. Napoleon and Severn | Archbishop Rummel High School | Roman Catholic Church Of The Archdiocese Of New Orleans | 9820041642 | | $0.00 |
| 106 | Jefferson | Former Cumberland St. | Our Lady of Divine Providence Catholic | Roman Catholic Church Of The Archdiocese Of New Orleans | 9910011856 | -- | $0.00 |
| 107 | Jefferson | Fulton St. / Montana Ave. | Archbishop Chapelle High School | Roman Catholic Church Of The Diocese Of New Orleans | 9910011853 | -- | $0.00 |
| 108 | St. | Gus Baldwin Road | Vacant Land | High School And Pope John Paul, II High School | 118-114-1724 | | $0.00 |
| 109 | St. Tammany | Holy Trinity Drive | Vacant Land | The Roman Catholic Church Of The Archdiocese Of New Orleans | 112-023-1339 | | $0.00 |
| 110 | St. Tammany | Howze Beach Road | unknown | The Roman Catholic Church Of The Archdiocese Of New Orleans | 137-077-8850 | | $0.00 |
| 111 | Jefferson | Metairie, LA 70003 | Elmwood Canal Property | Roman Catholic Church Of The Archdiocese Of New Orleans | 9820041655 | | $0.00 |
| 112 | Jefferson | Metairie, LA 70006 | Archdiocese of New Orleans Retreat | Roman Catholic Church Of The Archdiocese Of New Orleans | 9820040824 | | $0.00 |
| 113 | Lafourche | n/a | (Unknown) | The Roman Catholic Church For The Diocese Of New Orleans (1.2289%), et als. | 0010002000 0010001800 | | $0.00 |
| 114 | Plaquemines | n/a | | The Roman Catholic Church Of Diocese Of New Orleans | 8203000 | | $0.00 |
| 115 | Plaquemines | n/a | | Of The Said Diocese Known As Notre Dame Seminary) | No Assessment Located | | $0.00 |
| 116 | Plaquemines | n/a | Fronts on Mississippi River (1 Arpent x | The Roman Catholic Church Of The Archdiocese Of New Orleans | No Assessment Located | | $0.00 |
| 117 | Plaquemines | n/a | | The Roman Catholic Church Of The Archdiocese Of New Orleans, For The Use And Benefit Of St. Jude Church | No Assessment Located | | $0.00 |
| 118 | St. Bernard | N/A | (Unknown) | The Roman Catholic Church Of The Archdiocese Of New Orleans | 789900000045 | | $0.00 |
| 119 | St. Tammany | | St. John of the Cross | The Roman Catholic Church Of The Archdiocese Of New Orleans | 121-808-4291 | | $0.00 |

| | | | | | | |
|---|---|---|---|---|---|---|
| 120 | St. Tammany | | St. John of the Cross | The Roman Catholic Church Of The Archdiocese Of New Orleans, Inc. | 121-041-7467 | | $0.00 |
| 121 | St. Tammany | 306 St. Mary St., Madisonville, LA | | Roman Catholic Church Of The Archdiocese Of New Orleans | 101-000-0701 | | $0.00 |
| 122 | St. Tammany | 72040 Maple St., Abita Springs, LA | | Roman Catholic Church Of The Archdiocese Of New Orleans | 115-031-3386 | | $0.00 |
| 123 | St. Tammany | Prats Dairy Road | | Roman Catholic Church Of The Archdiocese Of New Orleans And Jacobs Well LLC | ** NOTE: NO ASSESSMENT WAS FOUND | | $0.00 |
| 124 | St. Tammany | N/A | | Roman Catholic Church Of The Archdiocese Of New Orleans And Jacobs Well LLC | UNABLE TO LOCATE ASSESSMENT | | $0.00 |
| 125 | St. Tammany | N/A | | Roman Catholic Church Of The Archdiocese Of New Orleans | TOWNSHIP AND RANGE DOES NOT CURRENLT | | $0.00 |
| 126 | Lafourche | n/a - along Bayou Lafourche | | The Roman Catholic Church Of The Diocese Of New Orleans | No Assessment Located | | $0.00 |
| 127 | Orleans / Jefferson | NOT VERIFIED | (Now Orleans Parish) | Roman Catholic Corporation Of The Diocese Of New Orleans | NEW ORLEANS BETWEEN 1874 AND 1876 | | $0.00 |
| 128 | St. Tammany | Oak Harbor Blvd. | Vacant Land | The Roman Catholic Church Of The Archdiocese Of New Orleans | 137-080-0678 | | $0.00 |
| 129 | Jefferson | Portion Of Former Cumberland St. | Our Lady of Divine Providence Catholic | Roman Catholic Church Of The Archdiocese Of New Orleans | 9910012529 | -- | $0.00 |
| 130 | St. Tammany | Rue De La Paix or Port Louis Access | Land/Swamp | The Roman Catholic Church Of The Archdiocese Of New Orleans | 104-003-1526 | | $0.00 |
| 131 | St. Tammany | Unknown | Unknown | The Roman Catholic Church Of The Archdiocese Of New Orleans | 114-029-5000 | | $0.00 |
| 132 | St. Tammany | Unknown | Unknown | The Roman Catholic Church Of The Archdiocese Of New Orleans | 114-023-0197 | | $0.00 |
| 133 | Jefferson | Veterans Memorial Blvd. | Archbishop Chapelle High School | Roman Catholic Church Of The Archdiocese Of New Orleans | 9910011850 | | $0.00 |
| 134 | Jefferson | Veterans Memorial Blvd. | Archbishop Chapelle High School | Roman Catholic Church Of The Archdiocese Of New Orleans | 9910011855 | -- | $0.00 |
| 135 | Jefferson | | St. Pius X Church | | 9600003280 | | $0.00 |
| 136 | Jefferson | | St. Pius X Church (Unknown Location) | The Roman Catholic Church Of The Diocese Of New Orleans | No Assessment Located | | $0.00 |
| 137 | Orleans | | Blessed Francis Xavier Seelos RCC, New | The Roman Catholic Church of the Archdiocese of New Orleans | | | $0.00 |
| 138 | Orleans | | Mary Queen of Viet Nam - Our Lady of | The Roman Catholic Church of the Archdiocese of New Orleans | | | $0.00 |
| 139 | Orleans | | Mary Queen of Viet Nam - Our Lady of | The Roman Catholic Church of the Archdiocese of New Orleans | | | $0.00 |
| 140 | Orleans | | Mary Queen Viet Nam RCC, New | The Roman Catholic Church of the Archdiocese of New Orleans | | | $0.00 |
| 141 | St. Tammany | | St. Anne Drive | The Roman Catholic Church Of The Archdiocese Of New Orleans | 114-116-9262 | | $0.00 |
| 142 | St. Tammany | 122 S. Massachusetts St. | St. Scholastica Academy | Congregation of St. Peter's Roman Catholic Church | 106-140-1058 | | $0.00 |
| 143 | Orleans | 823 St. Ann St. | | | 207102720 | | $0.00 |

| 144 | Orleans | 1201 Oretha Castle Haley Blvd., | John the Baptist Head Start | The Roman Catholic Church Of The Archdiocese Of New Orleans | 102106609 | | $0.00 |
| 145 | Jefferson | approximately 200' fronting A.J. | | The Society of the Roman Catholic Church of the Archdiocese of New Orleans | Unknown | | $0.00 |
| 146 | Orleans | 1401 Erato St. | St. Teresa of Avila | The Roman Catholic Church Of The Archdiocese Of New Orleans* (see notes) | 102104626 | | $0.00 |
| 147 | Orleans | 2824 Dauphine St., New Orleans | Project Lazarus | The Roman Catholic Church Of The Archdiocese Of New Orleans* (see notes) | 39W107406 | | $0.00 |
| 148 | St. John the Baptist | Garyville, Louisiana | St. Hubert Parish | The Roman Catholic Church Of The Archdiocese Of New Orleans | 9600000200 | | $0.00 |