# EXHIBIT 3

# Liquidation Analysis of the Debtor

## LIQUIDATION ANALYSIS EXECUTIVE SUMMARY

As referenced in section 10.03 of the Disclosure Statement, the Debtor and Additional Debtors must meet the requirements of the "Best Interest of Creditors Test," which requires a comparison of distributions under the Joint Plan to a hypothetical liquidation under chapter 7 of the Bankruptcy Code. The Debtor and Additional Debtors must obtain the consent of all creditors in all impaired classes *or* must show that all impaired creditors are receiving at least as much as such creditors would receive in a hypothetical liquidation under chapter 7. In order to show this comparison, the Debtor and Additional Debtors have prepared this hypothetical liquidation analysis (the "**Liquidation Analysis**"), based on certain estimates and assumptions and prepared by Keegan Linscott & Associates, PC. While the Debtor and Additional Debtors consider these estimates and assumptions to be reasonable under the circumstances, all estimates and assumptions are inherently subject to significant uncertainties (economic, operations, legal, natural disasters, etc.), and the Debtor and Additional Debtors cannot guarantee that these values would come to fruition in an actual chapter 7 liquidation.

The following numbers are based on the latest numbers available for the Debtor and Additional Debtors as of June 30, 2025 (the "**Liquidation Date**"). It is assumed for all purposes below that on the Liquidation Date, the Bankruptcy Court would appoint chapter 7 trustees for both the Debtor and the Additional Debtors to begin the process of liquidating the Debtor's and Additional Debtors' assets in order to distribute the proceeds from the liquidation to the various creditors of the Debtor and Additional Debtors in accordance with the priority scheme contained in the Bankruptcy Code.

The Liquidation Analysis assumes that the chapter 7 trustees will retain certain professionals to assist them with the liquidation process, including legal counsel (for bankruptcy purposes and litigation of Abuse Claims), accounting professionals, brokers, and real estate agents. Further, it is assumed that the liquidation process would take five years to complete, taking into account the loss of key personnel, the nature of a forced and rushed sale process, the restrictive use/nature of some of the Debtor's and Additional Debtors' assets that would limit the pool of potential buyers, and the protracted litigation of Abuse Claims and potential contribution and indemnity claims. The immediate closing of the Debtor's and Additional Debtors' operations and the forced layoffs of all personnel would also likely trigger potential employee claims (severance and WARN Act claims). These fees and expenses would be entitled to administrative and priority status, which would be paid prior to any payout to general unsecured creditors. Also included in these costs and fees are fees owed to the U.S. Trustee and Clerk of the Bankruptcy Court. In addition, the chapter 7 trustees will be entitled to a percentage of funds that are distributed to creditors, estimated at 3%.

Many of the available assets of the Debtor and Additional Debtors come from donors and are subject to donor restrictions, thereby preventing those assets from being used to pay any Abuse Claims or any Claims other than those for which they were designated. This is true in both a chapter 11 and a chapter 7 liquidation. However, there has been dispute in this case over which funds are truly restricted and which are not. A GAAP analysis has been used to value restricted funds. The Joint Plan avoids that issue through an agreed-upon payment amount into the Settlement Trust

{00383827-9}

while a chapter 7 liquidation would likely restart that dispute, resulting in further litigation fees and costs.

Although both the Debtor and the Additional Debtors have insurance policies that may cover many of the claims against the Debtor and Additional Debtors (both Abuse Claims and Non-Abuse Claims), neither the Debtor Liquidation Analysis nor the Additional Debtors Liquidation Analysis includes recovery from insurance proceeds or the sale of the Debtor's or Additional Debtors' interest in certain insurance policies. Any potential sale of the policies or ability of a chapter 7 trustee to monetize a claim against an insurance carrier is entirely speculative. As such, no value has been ascribed to the so-called "insurance assets" in the hypothetical chapter 7 liquidation. The Joint Plan, on the other hand, monetizes some of these assets through settlements with the Settling Insurers using a policy buyback. The Debtor and Additional Debtors also have assigned their respective interests in the policies with the Non-Settling Insurers to the Settlement Trust for the benefit of the Abuse Claimants.

The liquidation analysis assumes no contributions from insurance or third-party payments for the Abuse Claims because such payments are speculative and would be considered "collateral sources of recovery." The insurance policies are deemed to have no value for purposes of this liquidation analysis because:

a) outside of a chapter 11 case, the Abuse Claimants will have a direct right of action against the insurers under Louisiana law;
b) there are over 150 insureds (including the Debtor and Additional Debtors), and outside of the Joint Plan, there is no ability to allocate insurance payouts among the insured entities;
c) SPARTA is in a precarious financial condition and may not repurchase its policies at all;
d) noticing and providing due process to claimants who have claims against the insurance policies would be cost prohibitive in a chapter 7 liquidation;
e) coverage issues that may exist; and
f) the estate cannot sue the insurers and obtain the proceeds of the policies because the policies are indemnity policies.

The liquidation analysis also assumes no contributions from third parties to offset liability for the Abuse Claims. The reasons are the following:

a) There are potential coverage issues and solvency issues of insurers;
b) The Non-Debtor Catholic Entities have no exposure for Abuse Claims; and
c) No information is available concerning religious orders' ability to pay or applicable insurance coverage. Prior to the bankruptcy filing, the orders provided minimal funds to pay claims.

The liquidation analysis of the Additional Debtors excludes the assets of any Additional Debtors who have not had claims filed against them by any of the applicable bar dates. In a hypothetical chapter 7 liquidation, the assets of those entities would not be available to Abuse

{00383827-9}

Claimants in the other cases. In the Joint Plan, the Additional Debtors all contribute to the Settlement Trust regardless of whether an Additional Debtor has claims against it or not.

There is no value attributed to a potential single business enterprise claim being asserted by or against the Debtor, the Additional Debtors, and the Non-Debtor Catholic Entities. Each of the Additional Debtors and the Non-Debtor Catholic Entities does not comingle money against between entities, and has separate bank accounts, separate EIN numbers, separate employees, and separate boards of directors. Some of the Additional Debtors and Non-Debtor Catholic Entities have audited financial statements and other indicia of separateness, making the success of a single business enterprise claim highly speculative at best.

Both the Debtor and Additional Debtors have "executory contracts" with certain counterparties that will either be assumed during the bankruptcy (meaning the Debtor/Additional Debtors will continue to perform under the contracts) or will "ride through" the bankruptcy unaffected with the same outcome. In a chapter 7 liquidation, however, those executory contracts would all be rejected by the chapter 7 trustee, and the counterparties would have claims for rejection damages, to be paid *pari pasu* with the other general unsecured creditors, further diminishing the payout under a liquidation analysis.

The value of the Abuse Claims in the liquidation analysis represents the midpoint of a report by Stout Risius Ross, LLC, the Committee's expert consultant on sexual abuse. I have not seen the report, and the number I have used was provided to me orally based on a range of $752 million to $1.69 billion. I understand that the report will be updated, and I will adjust my liquidation analysis based upon my review of the final report.

### Debtor (Archdiocese) Liquidation Analysis

In a hypothetical liquidation, the Debtor estimates that the total value that would be available to unsecured creditors (including Abuse Claimants) is **$209,230,813**. The total unsecured claims amount is projected to be **$1,429,299,271**, resulting in a *pro rata* recovery of **14.6%**. As stated above, this Liquidation Analysis excludes contributions to be made by the Settling Insurers, whereas under the Joint Plan, the Setting Insurers are contributing $29,275,000 to the Settlement Trust.

The Archdiocese hypothetical liquidation also excludes approximately $60,000,000 in contributions from the Additional Debtors, $5,000,000.00 from the Non-Debtor Catholic Entities, and the proceeds from the sale of the Affordable Housing Facilities estimated to be between $65,000,000 and $80,000,000.

The sale of non-church real estate owned by the Archdiocese assumes a bulk sale discount of 15% and accounts for the fact that the chapter 7 trustee would incur costs to hold the property until sale and address deferred maintenance for the properties. The assumed purchase price also accounts for an internal rate of return for a buyer on its investment.

Churches have been valued for liquidation at $100,000 per church. The sale of churches presents challenges and costs that do not exist with other properties. For example, any potential buyer would have to account for: a) the historic designation of some of the churches; b) the costs

{00383827-9}

of repurposing the properties; c) litigation over repurposing; d) re-zoning issues; e) IRS issues related to the sale of property of a 501(c)(3) to a for-profit entity; f) state law limitations; and g) First Amendment and other religious freedom issues that may impair the sale of the church. Indeed, a recent article in THE ADVOCATE indicates that a large number of churches and schools on the market have not been sold due to difficulties in the market and with these particular properties. The article is available at https://www.nola.com/news/business/la-agencies-struggle-to-sell-real-estate-in-slow-market/article_d6da3501-f71c-4a63-a979-1c8de98e4bfa.html.

The below estimates are based upon numbers available to the Debtor as of June 30, 2025.

**Available Assets.** The additional assets included in the liquidation scenario include the following: unrestricted cash and cash equivalents on hand; accounts receivable; accounts receivable from tuition and fees; loans receivable; unrestricted investments; inventory; real property; vehicles; furniture and fixtures; and art and collectibles. Grants are excluded from the liquidation value, as are certain prepaid expenses of the Debtor and pledges receivable because they would not be available to a chapter 7 trustee.

Unrestricted Cash and Cash Equivalents: The Debtor expects a 100% recovery on unrestricted cash and cash equivalents in a chapter 7 liquidation. As of the Liquidation Date, the Debtor holds approximately $68,622,085 in unrestricted cash and cash equivalents.

Accounts and Loans Receivable: The accounts receivable are comprised of third-party receivables as well as Archdiocesan Agency and Archdiocesan Parish assessments. The delinquency of the assessments has increased in recent years. In addition, under the hypothetical liquidation for the Additional Debtors, there is only expected to be a payout approximating 12.6%, which would include payments to the Debtor for their accounts receivable. The Debtor does not anticipate a full recovery in a chapter 7 liquidation, and accounts receivable have been discounted to 50% of their book value. Loans receivable from certain affiliates are discounted to 25% of the book value. If the Additional Debtors filed for relief, the notes and assessments due from the Additional Debtors would be unsecured claims against the Additional Debtors' estates, and the recovery would approximate 12.6% due to the size of the Abuse Claims.

Accounts Receivable – Tuition and Fees: These receivables are related to pre-billed tuition for the Debtor's schools for the 2025-2026 school year. In effect, the Debtor grosses up its balance sheet by booking accounts receivable and deferred revenue. Because these amounts are offset by deferred revenue in the liquidation analysis, they are included in their entirety.

Inventory and Other Assets: Inventory and certain other assets are discounted to 50% of the book value. Inventory consists of food and other supply-type items at the Debtor's high schools which would yield very little in a liquidation.

Real Property: Real property values are discounted to $100,000,000 in a liquidation scenario. This liquidation value was estimated based on an approximate 40% reduction to the Fair Market Value (FMV) of the Debtor's property. The FMV of the properties was determined based on independent third-party appraisals. The 40% reduction to arrive at liquidation value considers the approximate 1200 properties from the Debtor and Additional Debtors in a hypothetical

{00383827-9}

liquidation that would flood the market and depress sales value. The reduction also recognizes the need for a potential bulk sale of certain properties and a five-year term over which the properties would be sold. The reduction further considers the commission and closing costs for the properties. Church real property has been discounted to $100,000 per church to account for the issues related to the sale of a church and costs attributable to readying the property for sale.

Other Fixed Assets, Artwork and Religious Items: Vehicles values are based on the Kelly Blue Book value. Furniture and fixtures values are based on 15% of net book value. Art and collectibles values are based on appraised values from third-party appraisers.

Investments: The Debtor records investments in its books for investments held in Portfolio A and Portfolio B. Portfolio A investments are held by the Catholic Community Foundation, and the Debtor records a contra-account in its books for investments of third parties. The Debtor's total investments in Portfolio A as of the Liquidation Date are $113,652,955. The value of the Debtor's investments in Portfolio A is based upon the most recent unitization report that is a mark-to-market value for the Investments of the Debtor. It is largely prepared by the Catholic Community Foundation based upon information provided by its investment advisors at the end of each month. The Debtor's investments are segregated between restricted and unrestricted funds. All restricted fund investments are excluded entirely from the liquidation value. The Debtor expects a 100% recovery on unrestricted investments in Portfolio A under a chapter 7 liquidation.

Portfolio B investments relate to the funds invested under the Debtor's Deposit and Loan Program. The Debtor has $23,221,806 in investments as of the Liquidation Date, which is expected to be fully realized in a liquidation. The Debtor has an obligation to the depositors under this program, and there is a deficiency to the depositors in the amount of $111,924,355, which is reflected in the liquidation analysis.

Prepaid Expenses: The Debtor's administrative offices and high schools have certain prepaid expenses related to insurance, professional fees, and tuition-related matters. In a liquidation scenario, the Debtor does not expect to realize any refund of these amounts because the expense amounts will generally continue during the Chapter 11 and be worked off over time, and the tuition amounts will be offset against deferred revenue.

Pledges Receivable: The Debtor has certain pledges from donors that have not been collected as of the Liquidation Date. Because the Debtor will cease operations in a liquidation, it is not expected that donors will fulfill and pay their pledges, as the activities the donor is supporting will no longer exist.

Beneficial Interest in Charitable Remainder Trust: The Debtor is a named beneficiary in a Trust administered by a third party. If the Debtor liquidates, it is assumed the Debtor will be removed as a beneficiary of that Trust, which will result in no value for the Debtor.

Excluded Assets: The Debtor does not expect any recovery from grants receivable because the nature of the grant can no longer be fulfilled when the Debtor stops operations. The Debtor also does not expect to recover any funds from its equity investment in the CUP (Catholic Umbrella Pool).

{00383827-9}

**Additional Administrative Costs.** Administrative costs in a chapter 7 liquidation include chapter 7 trustee fees, professional fees, shut-down costs, and residual costs and fees from the chapter 11.

Chapter 7 trustee fees are estimated at 3% of the available assets for distribution, excluding any recovery from insurance proceeds, or $7,646,314. Further, chapter 7 professional fees are estimated at $12,000,000, which assumes a five-year liquidation process and fees related to: pursuing and litigating claims against other Catholic organizations for contributions or indemnification; litigating Abuse Claims; and legal fees associated with asset liquidation.

The liquidation costs also include what are termed "shut-down costs." These costs primarily include the personnel and property-related costs needed to close and fully liquidate the Debtor's operations and assets over the five-year anticipated shut-down period. From a personnel perspective, it is anticipated that the Debtor will be subject to the WARN Act and will incur significant costs for these claims. It is also anticipated that the Debtor will need to retain existing personnel for varying periods of time to assist the chapter 7 trustee in the areas of accounting and finance, IT, legal, property, repair and maintenance, insurance and risk management, and archives. From a property perspective, costs will include property, casualty, and liability insurance for the properties based on the properties being empty and shuttering the properties, ensuring security at the properties to protect them from vandalism and vagrancy, utility costs, and some repair and maintenance costs. It is expected that the properties will be subject to property taxes because they will no longer be exempt. The shut-down costs are estimated at $19,500,000. These estimated shut-down costs do not have any provision for a weather event of any significance, which could greatly increase these costs.

Lastly, also included in the administrative costs are residual chapter 11 costs, calculated as two quarters of the average U.S. Trustee fees throughout the case ($500,000), and four months of residual chapter 11 professional fees at $1,500,000 a month ($6,000,000).

The number and dollar amount of the unsecured claims is greater in a chapter 7 than under the Joint Plan. The increase in unsecured claimants is a function of the rejection damages that would result from the inability of a chapter 7 trustee to assume the executory contract giving rise to rejection damages.

**Distributions to Unsecured Creditors.** The unsecured creditor pool includes Abuse Claims, Non-Abuse Claims, prepetition accounts payable, prepetition capital lease obligations, prepetition bonds payable, and prepetition employment benefits and pensions. The Debtor estimates the total amount of unsecured claims to be **$1,429,299,271**. With **$209,230,813** projected to be available to general unsecured creditors, after payment in full of all senior classes (Administrative and Priority Claims), general unsecured creditors would receive a **14.6%** payment on their claims.

**Footnotes to Exhibit 3 (Debtor's Liquidation Analysis).** The spreadsheet depicting the Debtor's Liquidation Analysis on Exhibit 3 references certain explanatory footnotes as follows:

{00383827-9}

Note 1: Financial information presented is as of May 31, 2025, which is the most recent data available. Losses are expected to continue after May 31, 2025, which may reduce the liquidation value.

Note 2: Liquidation value is assumed to be 50% of book value.

Note 3: Prepaid expenses include approximately $2,296,000 for the Debtor's high schools.

Note 4: Portfolio A funds are shown net of third-party funds.

Note 5: Includes accounts payable and unpaid reorganization expenses as of May 31, 2025.

Note 6: Estimated at 3% of available assets, excluding any insurance proceeds.

Note 7: Including pursuit of and potential litigation with other Catholic organizations for contribution or indemnification claims.

Note 8: Amount represents midpoint of Abuse Claims per Stout, the Committee's expert (range of claims is $752 million to $1.69 billion).

Note 9: Does not include any recoveries related to insurance coverage for tort claims.

Note 10: Assumes four months of unpaid legal and professional costs at Effective Date.

Note 11: Estimated at two quarters of average U.S. Trustee fees.

Note 12: Excludes accrued liabilities for survivor claims.

Note 13: Based on average Kelly Blue Book value.

Note 14: Estimated at 15% of book value.

Note 15: Includes bond principal.

Note 16: Assumes five-year wind down with half of the properties remaining being sold each year.

Note 17: Liquidation value is assumed to be 25% of book value.

Note 18: Value is based on third-party appraisals obtained by the Debtor.

**Additional Debtors' Liquidation Analysis**

The Additional Debtors were examined on a legal entity basis for each Additional Debtor but have been consolidated for this Liquidation Analysis into one comprehensive report.

In a hypothetical liquidation, the Additional Debtors estimate that the total value that would be available to unsecured creditors (including Abuse Claimants) is **$167,409,245**. The total

{00383827-9}

unsecured claims amount is projected to be **$1,326,564,719**, resulting in a pro rata recovery of **12.6%.** As is the case with the Debtor's Liquidation Analysis, the Additional Debtors' Liquidation Analysis excludes contributions to be made by the Settling Insurers, whereas under the Joint Plan, the Setting Insurers are contributing $29,275,000 to the Settlement Trust. The hypothetical liquidation also excludes a $5,000,000 contribution from the Non-Debtor Catholic Entities, a $65,000,000 contribution from the Debtor, and the value of the assigned insurance policies with the Non-Settling Insurers that are available under the Joint Plan. The hypothetical liquidation includes additional administrative fees that would be associated with a chapter 7 liquidation, such as chapter 7 trustee and professional fees; costs associated with shutting down operations, laying off employees, and securing and insuring real property owned by the Additional Debtors; and various residual costs and professional fees from the chapter 11 bankruptcy. As stated in the Disclosure Statement, 1793 Group was formed in 2025 for the express purpose of facilitating payments from the Additional Debtors into the Joint Plan. The hypothetical liquidation also excludes funds from the sale of the Affordable Housing Facilities that would be due directly to the Settlement Trust. In a chapter 7 liquidation, 1793 Group would not be able to serve this purpose, and each Additional Debtor would have to be liquidated with funds segregated by entity and distributed on an entity-by-entity basis, further adding to the administrative costs associated with chapter 7 liquidations.

**Available Assets.** The Additional Debtors' available assets in a hypothetical liquidation include cash and cash equivalents, accounts receivable, notes receivable, unrestricted investment funds, real property, plant and equipment, and other miscellaneous assets for entities that have Abuse Claims asserted against them. Certain Additional Debtors are not implicated in the Abuse Proofs of Claim filed in the Debtor's Chapter 11 Case. As such, the liquidation value of the assets and liabilities related to these Additional Debtors has been excluded from the liquidation value in Exhibit 5. It is assumed that the Additional Debtors that have no Abuse Claims against them have sufficient funds to pay their debts and that no funds would be available to the survivors or other creditors. Exhibit 4 to the Disclosure Statement identifies the Additional Debtors that are implicated in the Abuse Proofs of Claim filed in the Debtor's Chapter 11 Case.

Cash and Cash Equivalents: Based on the Additional Debtors' most recent financial assessment, as of June 30, 2025, the Additional Debtors' combined cash on hand is $98,977,624. The Additional Debtors anticipate a recovery of $73,789,693, after removing the entities who do not have any Abuse Claims asserted against them and who would not otherwise become Additional Debtors.

Accounts and Notes Receivable: The Additional Debtors' accounts receivable primarily consist of amounts due from Portfolio B and tuition for the Parish Schools that are run by the corresponding parish. Note that these schools are separate from the Archdiocesan Schools that are directly operated by the Archdiocese. In a hypothetical liquidation for the Debtor, the Additional Debtors would only receive 14.6% of their Portfolio B funds. Because the Additional Debtors do not expect a significant recovery from the accounts receivable, receivables have been discounted to 25%, or $17,069,423 after removing the entities who do not have an Abuse Claim asserted against them and who would not otherwise become Additional Debtors.

{00383827-9}

The Additional Debtors have $9,500,000 in outstanding notes receivable and expect a recovery of $6,000,000, again discounting the notes that are payable to entities who do not have an Abuse Claim asserted against them and who would not otherwise become an Additional Debtor.

<u>Investment Funds</u>: Just as with the Debtor, the Additional Debtors have investments that are divided between restricted and unrestricted funds. The Additional Debtors expect a 100% recovery on investments under a chapter 7 liquidation, subject to a reduction of the restricted investments, addressed below. The Additional Debtors have $89,205,761 available investments (both restricted and unrestricted) based on a mark-to-market value. This value is largely prepared by the Catholic Community Foundation based upon information provided by its investment advisors at the end of each month. Removing the entities who do not have Abuse Claims asserted against them, the Additional Debtors anticipate a recovery of $46,944,068 for distribution to creditors.

<u>Real Property, Plant, and Equipment</u>: Real property of the Additional Debtors falls into two categories: church property (property used as a church) and non-church property (property not used as a church). Church property is valued for liquidation purposes at $100,000 per property due to its limited use and the process of repurposing it after the sale to a non-church property. See discussion above in Debtor (Archdiocese) Liquidation Analysis for the rationale behind the church valuations.

Non-church property liquidation values are discounted from the replacement cost of the property by two factors. After removing properties for the entities who do not have an Abuse Claim asserted against them, a reduction of 65% is applied to replacement cost value to arrive at fair market value. This 65% factor was determined using a sample of approximately 40 third-party fair market appraisals as compared to replacement cost value. Second, the liquidation value was estimated based on an approximate 40% reduction to the Fair Market Value (FMV) of the Additional Debtor's property. The 40% reduction to arrive at liquidation value considers the approximate 1200 properties from the Debtor and Additional Debtors in a hypothetical liquidation that would flood the market and depress sales value. The reduction also recognizes the need for a potential bulk sale of certain properties and a five-year term over which the properties would be sold. The reduction further considers the commission and closing costs for the properties. The liquidation value is estimated at $135,170,401 for the Additional Debtors' real property, plant and equipment. The Additional Debtors have not obtained a fair-market-value appraisal of all their real estate.

<u>Other Assets</u>: The Additional Debtors estimate that their other assets have a book value of $12,324,843 based on their latest inventory and financial information. Over 80% of the Other Assets is food and related inventory held by two of the Additional Debtors. After removing the entities who do not have Abuse Claims asserted against them, the Additional Debtors apply a discount of 50% of the book value given the forced sale. The estimated liquidation value of the other assets is $538,722.

<u>Excluded Assets</u>: The Additional Debtors have excluded all restricted investment funds from available assets in a chapter 7 liquidation as well as all assets owned by other entities who

are listed as Additional Debtors but who have no Abuse Claims asserted against them. The Additional Debtors calculate that they hold $6,231,394 in custodial funds for the benefit of non-debtor entities and $10,121,668 in restricted cash and investments. The Additional Debtors have also excluded all prepaid expenses of the Additional Debtors and do not expect to recover any of those payments. However, the chapter 7 trustee fees and costs for litigating against Additional Debtors without Abuse Claims asserted against them are included because the Bankruptcy Code requires a hypothetical liquidation of the entities who are included in the Joint Plan regardless of whether there are Abuse Claims asserted against them.

**Additional Administrative Costs.** Once in bankruptcy, the Additional Debtors will begin to incur post-petition administrative costs such as post-petition payables for employees and other operating expenses until the Additional Debtors are officially closed. The Additional Debtors estimate these costs (to be paid prior to any distributions in the ordinary course of business) to be $500,000, based on the assumption of $5,000 per Additional Debtor (with 100 Additional Debtors filing).

Other administrative costs include chapter 7 trustee fees, professional fees, shut-down costs, and residual costs and fees from the chapter 11.

Chapter 7 trustee fees are estimated at $10,000,000, excluding any recovery from insurance proceeds. These fees are based on an estimate of 3% of the funds distributed to creditors for all of the Additional Debtors. Further, chapter 7 professional fees are estimated at $25,000,000, which assumes a five-year liquidation process and fees related to: pursuing and litigating claims against other organizations for contributions or indemnification; litigating Abuse Claims; and legal fees associated with asset liquidation. The total is based on an assumption of $250,000 in professional fees per Additional Debtor (with 100 Additional Debtors filing).

The liquidation costs also include what are termed "shut-down costs." These costs primarily include the personnel and property-related costs need to close and fully liquidate the debtor's operations and assets over the five-year anticipated shut-down period. From a personnel perspective, it is anticipated that some of the Additional Debtors will be subject to the WARN Act and will incur significant costs for these claims. It is also anticipated that the Additional Debtors will need to retain existing personnel for varying periods of time to assist the chapter 7 trustee in the areas of accounting and finance, IT, legal, property, repair and maintenance, insurance and risk management, and archives. From a property perspective, costs will include property, casualty, and liability insurance for the properties based on the properties being empty and shuttering the properties, ensuring security at the properties to protect them from vandalism and vagrancy, utility costs, and some repair and maintenance costs. It also is expected the properties will be subject to property taxes because they will no longer be exempt. The shut-down costs are estimated at $59,500,000. These estimated shut-down costs do not have any provision for a weather event of any significance, which could greatly increase these costs.

**Distributions to Unsecured Creditors.** The unsecured creditor pool includes Abuse Claims, Non-Abuse Claims, prepetition accounts payable, prepetition capital lease obligations, prepetition bonds payable, and prepetition employment benefits and pensions. The Additional

Debtors estimate the total amount of unsecured claims to be **$1,326,564,719**. With **$167,409,245** projected to be available to general unsecured creditors, after payment in full of all senior classes (Administrative and Priority Claims), general unsecured creditors would receive a **12.6%** payment on their claims.

**Footnotes to Exhibit 5 (Additional Debtors' Liquidation Analysis).** The spreadsheet depicting the Additional Debtors' Liquidation Analysis on Exhibit 5 references certain explanatory footnotes as follows:

Note 1: Financial information presented is as of December 31, 2024, which is the most recent data available. Losses are expected to continue after December 31, 2024, which may reduce the liquidation value.

Note 2: Liquidation value is assumed to be 25% of book value for Additional Debtors with Abuse Claims against them.

Note 3: Liquidation value is assumed to be 50% of book value for Additional Debtors with Abuse Claims against them.

Note 4: Includes accounts payable and accrued expenses estimated at $5,000 per Additional Debtor with Abuse Claims against them.

Note 5: Estimated at 3% of available assets, excluding any insurance proceeds for all Additional Debtors.

Note 6: Including pursuit of and potential litigation with other Catholic organizations for contribution or indemnification claims. Estimated at $250,000 per Additional Debtor for 100 Additional Debtors.

Note 7: Assumes five-year wind down with half of the properties remaining being sold each year for 100 Additional Debtors.

Note 8: Amount represents midpoint of Abuse Claims per Stout, the Committee's expert (range of claims is $752 million to $1.69 billion).

Note 9: Does not include any recoveries related to insurance coverage for tort claims.

Note 10: Estimated at $2,500 per Additional Debtor for 100 Additional Debtors.

Note 11: Estimated at $5,000 per Additional Debtor for 100 Additional Debtors.

Note 12: Accounts payable, accrued expenses, and FEMA-related payables.

Note 13: Represents estimated liquidation value for Additional Debtors' property for Additional Debtors with Abuse Claims against them.

{00383827-9}

**Archdiocese of New Orleans**
**Case No.: 20-10846**
**Liquidation Analysis**
**As of May 31, 2025**

| Account Description | 5/31/2025 Balance Sheet Amount | 5/31/2025 Liquidation Value | Global FN Reference |
|---|---:|---:|---|
| **ASSETS** | | | |
| Cash and cash equivalents | $ 68,622,085 | $ 68,622,085 | |
| Petty cash | 17,851 | 17,851 | |
| Grants receivable | 184,345 | - | |
| Accounts receivable | 32,788,070 | 16,394,035 | 2 |
| Accounts receivable- tuition and fees, net | 29,948,814 | 29,948,814 | |
| Prepaid expenses | 5,791,646 | - | 3 |
| Pledges receivable, net | 2,202,781 | - | |
| Loans receivable from Affiliates, net | 15,381,959 | 4,212,579 | 17 |
| Investments - Portfolio A | 262,775,204 | 113,652,955 | 2 |
| Investments - Portfolio B | 23,221,806 | 23,221,806 | |
| Investments - unrestricted - CUP | 357,199 | - | |
| Investments - unrestricted - Other | 833 | - | |
| Inventory | 283,253 | 141,627 | 2 |
| Other current assets | 63,053 | 31,527 | 2 |
| Real Property, net | 114,342,699 | 100,000,000 | |
| Vehicles, net | 400,000 | 500,000 | 13 |
| Furniture and Fixtures, net | 4,500,000 | 675,000 | 14 |
| Art and collectibles | - | 2,463,240 | 18 |
| Beneficial interest in charitable remainder trust | 800,164 | - | |
| Other assets | 122,000 | 61,000 | 2 |
| **Total Assets** | $ 561,803,762 | $ 359,942,518 | |
| LESS: | | | |
| Post-petition payables - unrestricted | | $ (2,588,616) | 5 |
| Accrued expenses | | (9,001,572) | |
| Custodial funds (agency payables) | | (1,464,593) | |
| Accrued liability for self-insured claims | | (1,528,505) | 12 |
| Deferred Revenue | | (47,058,580) | |
| Restricted Custodial Cash | | (4,063,315) | |
| Donor Restricted Assets: | | | |
|    Restricted cash - by donor | | (1,876,996) | |
|    Investments - Portfolio A - Restricted by Donor | | (35,041,712) | |
|    Investments - Portfolio B - Restricted by Donor | | (2,441,502) | |
| Total Donor Restricted Assets | | $ (39,360,210) | |
| Total: Post-petition payables - unrestricted | | $ (105,065,391) | |
| **Total Assets Available Prior to Chapter 7** | | $ 254,877,127 | |
| Less: | | | |
| Chapter 7 Trustee Fees | | $ (7,646,314) | 6,9 |
| Chapter 7 Attorney and Financial Professional Fees | | (12,000,000) | 7 |
| Shut-down costs | | (19,500,000) | 16 |
| Residual Costs of Chapter 11 Administration | | (500,000) | 11 |
| Residual Legal and Professional Costs of Chapter 11 | | (6,000,000) | 10 |
| Subtotal | | $ (45,646,314) | |
| **Amount available to unsecured creditors** | | $ 209,230,813 | 9 |
| | | | |
| **Unsecured Debts:** | | | |
| Tort Claimant Payables | | $ (1,221,000,000) | 8 |
| Accounts payable - Prepetition | | (1,332,883) | |
| Capital lease obligations - Prepetition | | (790,590) | |
| Bonds payable - Prepetition | | (37,970,000) | 15 |
| Portfolio B deficiency | | (111,924,355) | |
| Accrued other post employment benefits - Prepetition | | (25,435,054) | |
| Accrued pension liability - Prepetition | | (30,846,389) | |
| Total | | $ (1,429,299,271) | |