**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| **In re:** | § | |
| | § | **Case No. 20-10846** |
| **THE ROMAN CATHOLIC CHURCH OF** | § | |
| **THE ARCHDIOCESE OF NEW** | § | |
| **ORLEANS,** | § | **Section "A"** |
| | § | |
| | § | **Chapter 11** |
| | § | |
| **Debtor.**[1] | § | |

**PACHULSKI STANG ZIEHL & JONES LLP'S AND TROUTMAN PEPPER LOCKE LLP'S REPLY IN SUPPORT OF FIFTEENTH INTERIM APPLICATION FOR ALLOWANCE AND PAYMENT OF COMPENSATION AND REIMBURSEMENT OF EXPENSES OF PACHULSKI STANG ZIEHL & JONES LLP AS CO-COUNSEL FOR THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS FOR THE PERIOD OF MARCH 1, 2025 THROUGH JUNE 30, 2025, AND FIFTEENTH INTERIM APPLICATION OF TROUTMAN PEPPER LOCKE LLP AS CO-COUNSEL TO THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS FOR ALLOWANCE OF COMPENSATION AND REIMBURSEMENT OF EXPENSES FOR THE PERIOD FROM MARCH 1, 2025 THROUGH JUNE 30, 2025**

Pachulski Stang Ziehl & Jones LLP ("PSZJ") and Troutman Pepper Locke LLP ("TPL" and together with PSZJ, "Committee Counsel") file this *Reply* (the "Reply") in support of the *Fifteenth Interim Application for Allowance and Payment of Compensation and Reimbursement of Expenses of Pachulski Stang Ziehl & Jones LLP as Co-Counsel for the Official Committee of Unsecured Creditors for the Period of March 1, 2025 through June 30, 2025* (Doc. 4184) and the *Fifteenth Interim Application of Troutman Pepper Locke LLP as Co-Counsel to the Official Committee of Unsecured Creditors for Allowance of Compensation and Reimbursement of Expenses for the Period from March 1, 2025 through June 30, 2025* (Doc. 4205) (together, the "Fee Applications"). Committee Counsel also file this Reply in response to Certain Abuse Survivors' *Consolidated Objection's* (sic) *to Pachulski Stang Ziehl & Jones LLP's and Troutman*

---

[1] The last four digits of the Debtor's federal tax identification number are 8966. The Debtor's principal place of business is located at 7887 Walmsley Ave., New Orleans, LA 70125.

*Pepper Locke LLP's Fourteenth* (sic) *and Fifteenth Interim Applications for Allowance of Compensation and Reimbursement of Expenses* (Doc. 4264) (the "Objection") as follows:

1.       During the Application Period, the Official Committee of Unsecured Creditors (the "Committee") pressed through difficult negotiations to reach a hard-fought settlement opportunity for abuse survivors. Because of these efforts, this Bankruptcy Case may soon be resolved after more than five years. As memorialized in the *Second Amended Joint Chapter 11 Plan* [Doc. No. 4235] (the "Joint Plan"), this settlement includes the following significant benefits:

      a.       A settlement trust fund that, based on multiple bids for the Christopher Homes Assets, is expected to exceed **$220 million**.

      b.       The prospect of obtaining additional future compensation from either litigation against, or a settlement with, the last, remaining non-settling insurer, which provided coverage for over ten (10) years and has the most significant exposure of any insurer.

      c.       Access to funding from the Non-Debtor Catholic Entities, which are entities not subject to abuse claims.

      d.       Distribution of initial settlement funds within weeks of the Plan Effective Date instead of after years of further, protracted litigation.

      e.       Avoidance of dismissal, which would likely result in, among other things, the Debtor's bondholders (who hold nearly $40 million in bonds) obtaining judgment and collecting ahead of abuse-survivor claimants.

      f.       Implementation of non-monetary procedures that will create a public archive of abuse files, implement an abuse-survivor "Bill of Rights," revolutionize the Debtor's abuse-prevention, intake, and reporting procedures, and establish a firm

foundation for a safer and more responsive Archdiocese going forward.

2.      Despite this groundbreaking resolution, the Objectors do not support the Joint Plan. They have pronounced it "dead on arrival" to the Court, the press, and other survivors, and now, to leverage Committee Counsel, ask this Court to disallow all fees related to mediation and plan drafting—the very work that made possible hundreds of millions of dollars in compensation for survivors. (Doc. 4264 at 6-7). While Fifth Circuit law might, at one time, have arguably conditioned fees on the success of plan confirmation, the Fifth Circuit abandoned that approach ten (10) years ago and now applies a "reasonably likely to benefit the estate" standard. *See Barron & Newburger, P.C. v. Texas Skyline, Ltd. (In re Woerner)*, 783 F.3d 266, 268 (5th Cir. 2015) (en banc), *reversing In re Pro-Snax Distributors, Inc.*, 157 F.3d 414 (5th Cir. 1998). Services may be reasonable if they constitute "good gambles." *Id.* at 274. The Objectors' declaration—"No plan confirmation, no fees for the proponents"—is therefore legally unwarranted. (Doc. 4264 ¶ 27). The Joint Plan, with its substantial fund to compensate survivors in the very near future, plus additional funds made possible through on-going mediation efforts, represents exactly such a "good gamble."

3.      The Objection's remaining criticisms are similarly flawed, although Committee Counsel recognize that this Court may require a more developed evidentiary record to address them. To respond to each such objection briefly:

a.      Duplication of Services. Committee Counsel recognize that sometimes multiple attorneys attend the same calls or hearings. Different lawyers play distinct roles in this case and must often participate in the same call or court hearing—particularly when plan drafting involving multiple different issues will be addressed. Committee Counsel can explain the necessity for having multiple attendees at the same hearing, call, or conference at a future evidentiary hearing.

145866664v5

b.      Travel Expenses. Committee Counsel have worked carefully to limit travel costs by having out-of-state counsel appear by telephone and video whenever possible. Additionally, Committee Counsel note that the difference in hotel rates remains relatively insignificant given the complexity of the Bankruptcy Case and the fees involved overall.

c.      Allegedly Disenfranchising Abuse Survivors. The Committee has not sought to designate any votes or otherwise disenfranchise any abuse survivor. Indeed, the Committee anticipates that all abuse survivors with claims filed as of the Voting Record Date will receive ballots in short order. The time entry referenced in Paragraph 44 of the Objection (which was submitted by John Lucas of PSZJ and not Rick Kuebel of TPL) relates to news stories in which one of the Objectors' clients (among other survivors) commented directly to the press, attacking the settlement before any disclosure statement and plan were filed and soliciting creditors to reject any plan that incorporated the settlement.[2] Committee Counsel are surely justified in spending time to evaluate the implications of these and similar statements, including several from counsel that suggest undue influence on survivors' individual voting decisions and an attempt to poison the well at the pre-disclosure stage.[3]

d.      Excessive Rates. Billable rates have been a discussion point at various times in this Bankruptcy Case. As Committee Counsel have noted before, the rates they charge

---

[2] See, e.g., Ramon Vargas, New Orleans archdiocese says it reached abuse settlement as lawyers say deal falls about $100m short, The Guardian, May 22, 2025 (available at https:// https://www.theguardian.com/us-news/2025/may/22/new-orleans-clergy-abuse-lawyers-settlement); Rob Masson, Clergy sex abuse survivors split on $180M settlement offer from Archdiocese, Fox 8 (WVUE), May 22, 2025 (available at https:// https://www.fox8live.com/2025/05/22/clergy-sex-abuse-survivors-split-180m-settlement-offer-archdiocese/).

[3] Committee Counsel further notes that the alleged text messages between Rick Kuebel and James Adams were taken out of context. On May 23, 2025, Mr. Adams reached out to Mr. Kuebel (as many survivors do) with questions. Mr. Kuebel responded and invited a further discussion with his counsel's consent. Mr. Adams did not respond further. Mr. Kuebel never billed for these communications.

145866664v5

in this case represent a substantial discount off the "market" rates they would ordinarily receive for Chapter 11 work on a national level. This Court can consider the reasonability of these rates at the final fee application stage. At that time, Committee Counsel will demonstrate that their rates are reasonable for this matter given, among other considerations, this case's extraordinary breadth, length, and complexity. Indeed, Committee Counsel know of no other diocesan Chapter 11 case where plan proponents have attempted to obtain confirmation of a plan in the context of an open window in which to bring abuse claims.

4.      With all that said, Committee Counsel remain intently focused on plan discovery, solicitation, and plan confirmation—as this Court has directed. The Objection is a sideshow, a litigation tactic likely designed to gain inappropriate leverage over Committee Counsel. An evidentiary hearing on the allowance of interim fees would, at this critical stage of the case, waste valuable time and money. Since all the Objectors' arguments are preserved for final fee applications, Committee Counsel request that this Court overrule the Objection without prejudice. Should the Objectors desire to proceed, they can prosecute their fee objections after plan confirmation (likely to be heard in January 2026). Until then, Committee Counsel will remain dedicated to achieving confirmation of the Joint Plan, to be followed shortly thereafter by the completion of claims review and the distribution of compensation to survivors—all developments that the Objectors, for some reason, seem focused on preventing.

145866664v5

Dated:  August 19, 2025

Respectfully submitted,

*By:  Bradley C. Knapp*
James I. Stang (CA Bar No. 94435)
(admitted pro hac vice)
Iain A.W. Nasatir (CA Bar No. 148977)
(admitted pro hac vice)
Andrew W. Caine (CA Bar No. No. 110345)
(admitted pro hac vice)
Karen B. Dine (NY Bar 2625366)
(admitted pro hac vice)
Pachulski Stang Ziehl & Jones LLP
10100 Santa Monica Blvd., Suite 1300
Los Angeles, CA  90067
Telephone: (310) 277-6910
Facsimile: (310) 201-0760

**-and-**

Omer F. Kuebel, III (La #21682)
Bradley C. Knapp (La #35867)
Troutman Pepper Locke LLP
601 Poydras Street, Suite 2660
New Orleans, Louisiana 70130-6036
Telephone: (504) 558-5111
Facsimile: (504) 558-5200
Email: rick.kuebel@troutman.com
          brad.knapp@troutman.com

**-and-**

W. Steven Bryant (*admitted pro hac vice*)
Texas Bar. No. 24027413
Federal I.D. No. 32913
Troutman Pepper Locke LLP
300 Colorado St., Suite 2100
Austin, Texas 78701
Telephone: (512) 305-4726
Facsimile: (512) 305-4800
Email: steven.bryant@troutman.com

*Co-Counsel to the Official Committee of Unsecured Creditors*

145866664v5

## CERTIFICATE OF SERVICE

I hereby caused a true and correct copy of the foregoing *Reply* to be served on August 19, 2025, upon all parties by electronic case filing for those parties receiving notice via the Court's Electronic Case Filing system and by U.S. Mail on the all other parties requiring service under the Special Notice List, as set forth in the Court's May 1, 2020 *Ex Parte Order Authorizing the Debtor to Limit Notice and Establishing Notice Procedures* [Doc. No. 22].


*/s/ Bradley C. Knapp_____*
Bradley C. Knapp

145866664v5