**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| In re: | § § | |
| | § | Case No. 20-10846 |
| THE ROMAN CATHOLIC CHURCH | § | |
| OF THE ARCHDIOCESE OF NEW | § | Section "A" |
| ORLEANS, | § | |
| | § | Chapter 11 |
| Debtor. | § | |
| | § | |

**ARGENT INSTITUTIONAL TRUST COMPANY, AS INDENTURE TRUSTEE'S RESPONSE TO DEBTOR'S REQUEST FOR STATUS CONFERENCE**

Argent Institutional Trust Company, as indenture trustee (the "Bond Trustee"), and successor-in-interest to TMI Trust Company, by and through counsel, hereby responds to the above-captioned Debtor's *Notice Of Filing Third Amended Joint Plan and Request for Status Conference* [ECF No. 4332][1] (the "Request"), and requests that the Court (i) compel the Debtor and the Additional Debtors to immediately produce all responsive documents to the Bond Trustee; (ii) find that the Debtor and Additional Debtors are in contempt of the Court's *Order* preapproving discovery requests [ECF No. 4261] (the "Discovery Order"), (iii) extend certain discovery and pre-trial deadlines and (iv) impose sanctions against the Debtor and Additional Debtors as requested herein.

In further support hereof the Bond Trustee states as follows:

**RESPONSE**

After the Debtor let this case languish for five years before filing a reorganization plan that had the support of *any* major constituency, this case is now on a highly accelerated track to confirmation. Under the Court's *Order Scheduling Trial and Pretrial Deadlines* [ECF No. 4105]

---

[1] The Bond Trustee reserves all rights and objections to the Third Amended Plan filed by the Plan Proponent [ECF No. 4331].

1

(the "Pretrial Order") the Bond Trustee essentially has less than three months to conduct the financial and other discovery needed to understand the Debtor and its affiliates' complex financial web. The overwhelming tasks facing the Bond Trustee in the upcoming weeks include valuing well over 1,000 pieces of real estate, valuing the Debtor's hypothetical liability for the survivor claims, valuing the Debtor's hypothetical liability under its retired priest pension and medical plans, understanding the Debtor's unique structure for its financial obligations that seemingly permits the Archbishop to unilaterally direct or waive payments among the Debtor and its insiders, and understanding the impact of adding more than 100 additional debtors to this case hours or days before confirmation. This effort will require reviewing tens of thousands of documents, taking numerous depositions, preparing and producing multiple expert reports, briefing complex and nuanced legal issues and preparing for a two-week trial where the Debtor – armed with the clear advantage of fully understanding its finances, and having had years to prepare – will evidently try to become the first and only Catholic debtor to confirm a "cram down" plan over the objection of a creditor even though it is solvent and has the ability to pay its proposed settlement with the survivors and all of its other creditors including the Bondholders in full.

On September 8, 2025, the Debtor announced that it has taken a major step forward toward confirmation. Specifically, on that date the Plan Proponents filed a Third Amended Plan (ECF No. 4331), which seems to indicate that the Debtor has resolved its survivor claim liability and that the survivors will vote for the Plan. The revised plan also improved the proposed treatment of certain other unsecured creditors (other than the Bond Trustee) as the Debtor now proposes to either pay all of its other creditors in full or to have their claims "pass through" the bankruptcy. The sole exception to this favorable treatment is that the Debtor continues to propose to slash the

amounts owed to the Bond Trustee by approximately 90% and to cram down this treatment over the Bondholders' certain objection in order to pay for the increased costs of this case.

For the Debtor to seek to confirm its proposed plan on the back of a single creditor class is neither fair, nor equitable. Needless to say, the Bond Trustee will oppose this proposed treatment at confirmation. To do this, however, the Bond Trustee needs a fair and efficient discovery process. To this point, the proposed process has been flawed. On July 2, 2025 the Court entered its Pretrial Order, which was subsequently amended on August 11, 2025 [ECF No. 4249], setting various discovery and pretrial deadlines in this case. Shockingly, and despite the fact that the accelerated nature of this case benefits only it, the Debtor has treated the Court's deadlines more as suggestions than hard and fast orders. In fact, as discussed at the August 25, 2025 hearing in this case, the Debtor did not provide complete discovery responses to the Bond Trustee, as required by the Court and Federal Rule of Civil Procedure 34, within 14 days of being served with the Bond Trustee's discovery responses. Instead, the Debtor served the Bond Trustee with pages of written objections and directed the Bond Trustee to its "data room" to try and find a proverbial needle in the haystack, i.e., the Debtor provided the Bond Trustee a classic "document dump."

This discovery gamesmanship would not be appropriate in any case, let alone in a case such as this where the Bond Trustee is under extreme time pressure to complete the herculean tasks needed to understand the finances of the Debtor so that the Bond Trustee can defend against the obviously disparate treatment of the Bondholders under the Plan. Indeed, the Court warned the Debtor months ago that a "document dump" approach to discovery would not be countenanced by the Court and instructed the Debtor to provide the Bond Trustee with clear instructions as to the location of responsive documents in the data room. Despite the Debtor's callous disregard for the Court's clear order, the Court did not sanction the Debtor for its failure to comply with the

Discovery Order, instead giving the Debtor an additional 16 days, until September 5th, to produce compliant responses to the Bond Trustee. This delay was not an insignificant break for the Debtor, as it meant that the Bond Trustee and its professionals had 16 *fewer* days to review and analyze discovery in this case, notwithstanding the fact that the Bond Trustee's expert reports are due to be served on October 2, 2025, 43 days from when the Debtor's discovery responses were originally due. In other words, the Debtor's discovery malfeasance has already resulted in the Bond Trustee's financial experts having their preparation time cut by over one-third, with no cost or penalty for the Debtor.

Apparently emboldened by the Court's leniency on its initial discovery deadline, the Debtor continues to push the bounds of contempt of the Discovery Order by not producing communications responsive to the Bond Trustee's discovery requests, or a privilege log identifying documents being withheld based on a claim of privilege, as required by the Discovery Order. The Discovery Order *required* that privilege logs be served on or before **September 5, 2025**. *See* Discovery Order at ¶2. On the morning of September 5th, the amended deadline for the Debtor to produce its revised discovery responses and a privilege log, counsel for the Debtor contacted undersigned counsel asking for an agreement that responsive communications be limited to the last year, despite the fact that the Discovery Order contained no such limitation, and stated that the Debtor had not completed its review of its emails and would likely not have a privilege log to produce that day.[2] After that call, undersigned counsel expected to receive confirmation as to whether the Debtor would produce the responsive emails and privilege log. Instead, on the

---

[2] It is important to note that the parties have agreed that it is unnecessary to log communications between counsel and their clients, or among co-counsel, i.e., clearly attorney client/work product documents. The Bond Trustee is only seeking communications between and among the Plan Proponents and other third parties, i.e., emails between the Debtor and Additional Debtors or the Committees, and their professionals.

4

afternoon of September 5th, the Debtor's counsel emailed the Court asking for a status conference. Undersigned counsel has since learned, during a meet and confer call with counsel for the Committee and the Debtor, initiated by the Bond Trustee's counsel, on Monday September 8, 2025, that the Debtor has abandoned its search for responsive communications and has deferred to the Committee's counsel's search of its records. The Bond Trustee's counsel is informed that the Debtor will only be providing a privilege log of communications with the Additional Debtor's counsel at some point within the next few days. The Debtor's refusal to search its records for responsive communications is a contemptuous violation of the Court's Discovery Order and should not be countenanced. The Additional Debtors are similarly in contempt of the Discovery Order and have not produced *any* emails or a privilege log.[3] And the Additional Debtors have not even attempted to contact the Bond Trustee's counsel to discuss their discovery malfeasance.

There is simply no excuse for the Debtor's and its insiders repeated and flagrant flouting of the Court's Orders. The Court set the pre-trial and discovery deadlines on an accelerated track to accommodate the *Debtor's* attempts to confirm a plan before the end of this year to avoid dismissal of this case. The Court also required the parties to propound "soft" discovery requests on the Debtor and other Plan Proponents by June 20, 2025, giving the Debtor and Additional Debtors an additional two months to marshal their responses. The fact that they did not use that time wisely to prepare their responses to the discovery requests that they *knew* were coming falls squarely on their shoulders, as should any harm that comes as a result. The Court has given the Debtor and its insiders ample time and resources to prepare and file their Plan, and to prepare for

---

[3] The Official Committee of Unsecured Creditors timely produced a privilege log, supposedly on behalf of all of the Plan Proponents, and emails to the Bond Trustee; however, the Bond Trustee has raised objections to that privilege log, and conducted a meet and confer conference call on Monday September 8, 2025. The Committee has indicated that a revised log will be produced within the week, however the Bond Trustee has no assurances when it will be produced. The Bond Trustee understands that this log was created entirely by counsel for the Committee based on a search of its records alone.

5

discovery. There is no legitimate excuse for the Debtor and Additional Debtors' supposed inability to abide by the same deadlines that all other parties must follow. This noncompliance has already cost the Bond Trustee time and money that it does not have, and the Debtor should not be permitted to continue to erode the Bond Trustee's due process rights. The Debtor should not be permitted to provide as little information as it can get away with while it "runs out the clock" on an already accelerated discovery and trial schedule as a means to deprive the Bond Trustee of due process and cut the Bonds by over 90%.

Moreover, the Debtor did not seek and has not received relief from the Court's deadline in the Discovery Order to produce a privilege log *before* that deadline passed. Apparently, based on the Court's past leniency, the Debtor believes that it is better to beg for forgiveness than ask for permission when flouting the Court's Orders. In effect the Debtor and Additional Debtors bought themselves (for no apparent cost) at least five additional days to comply with the Discovery Order (and thus have taken five additional days from the Bond Trustee). Every day that passes without providing the Bond Trustee the documents that it needs harms the Bond Trustee and benefits the Debtor. Unless the Court extends the deadlines for the Bond Trustee to produce its expert report and conduct discovery, there is no way for the Bond Trustee to get back the time that the Debtor has usurped, and the Debtor knows this. The Debtor apparently believes that it is above the rules and Orders of this Court that govern all of the *other* parties in this case.

Against this backdrop, the Court should order that the Debtor and Additional Debtors *immediately* produce all responsive emails to the Bond Trustee and find that they have waived any asserted claim of privilege with respect to those emails. Courts in this jurisdiction, and many others, have routinely held that it is within the court's discretion to find a waiver of an asserted privilege for failing to timely produce a privilege log. *See Janko v. Fresh Mkt., Inc.*, 2015 U.S.

Dist. LEXIS 102420, at *8-9 (M.D. La. Aug. 5, 2015) ("[f]ailure to produce a privilege log pursuant to Rule 26 'is, on its own, sufficient to warrant a finding that any privilege, even if it had been established . . . has been waived.'") (quoting *Agee v. Wayne Farms, L.L.C.*, No. 06-cv-268, 2007 U.S. Dist. LEXIS 73396, 2007 WL 2903208, at *3 (S.D. Miss. Oct. 1, 2007)); *Coldwell Banker Real Estate Corp. v. O'Neal*, No. 06-2515, 2006 U.S. Dist. LEXIS 94159, at *3 (E.D. La. Dec. 29, 2006) ("[i]n other contexts in which a privilege log is required, failure to provide the log has resulted in a finding that any privilege has been waived"); *see also Blackard v. Hercules, Inc.*, No. 2:12-cv-175-KS-MTP, 2014 U.S. Dist. LEXIS 75934, at *15 (S.D. Miss. June 4, 2014) ("[w]hile waiver based on such conduct may seem like a harsh penalty, such a policy is necessary to prevent gamesmanship. If a party is allowed to withhold documents without giving opposing parties notice that the documents exist but are being withheld, the opposing party will obviously be unable to contest the validity of a privilege or protection asserted for those documents") (internal citations and quotation marks omitted); *Nance v. Thompson Med. Co.*, 173 F.R.D. 178, 182 (E.D. Tex. 1997) ("[w]aiver of either the attorney-client privilege or the attorney work product privilege can also occur when a party fails to state a privilege objection in the 'privilege log' as required under Federal Rule of Civil Procedure 26(b)(5).")

The Court set September 5, 2025 as the deadline to produce a privilege log. Discovery Order at ¶2. This order was a firm deadline, not a mere suggestion as the Debtor and Additional Debtors appear to believe. The Debtor and Additional Debtors did not seek or receive an extension of that deadline from the Court. Nor did they get the Court's approval to not search their emails for responsive documents. Instead, the Debtor and Additional Debtors took it upon themselves to ignore the deadline and discovery requirements entirely. The Court should not countenance this contemptuous behavior but rather should sanction the Debtor and Additional Debtors for it. The

7

Court should require the Debtor and Additional Debtors to immediately produce all responsive documents to the Bond Trustee and reimburse the Bond Trustee for the additional costs it has incurred in connection with their continuing non-compliance with this Court's Orders. Moreover, the Court should extend the Bond Trustee's deadlines to produce expert reports, conduct discovery and object to the Plan for an amount of time equal to the Debtor and Additional Debtors' delays in complying with the Court's Orders.

## CONCLUSION

WHEREFORE, the Bond Trustee respectfully requests that the Court: (i) Enforce its Discovery Order and find that the Debtor and Additional Debtors are in contempt thereof; (ii) Find that the Debtor and Additional Debtors have waived their claim of privilege over responsive documents; (iii) Order the Debtor and Additional Debtors to immediately produce all responsive documents to the Bond Trustee; (iv) Sanction the Debtor and Additional Debtors for the costs associated with their discovery malfeasance; (v) Extend the discovery and pre-trial deadlines in this case to compensate the Bond Trustee for the Debtor and Additional Debtors' delays in complying with the Court's Discovery Order; and (vi) Grant any other or further relief as the Court deems appropriate under the circumstances.

DATED: September 9, 2025

Respectfully submitted,

*/s/ Colleen A. Murphy*
Colleen A. Murphy
Kevin J. Walsh
Charles W. Azano
Christopher Marks
GREENBERG TRAURIG, LLP
One International Place Suite, 2000
Boston, MA 02110
Telephone: (617) 310-6000
Email: Colleen.Murphy@gtlaw.com
Kevin.Walsh@gtlaw.com
Chip.Azano@gtlaw.com
Chris.Marks@gtlaw.com

Annette Jarvis
Carson Heninger
GREENBERG TRAURIG, LLP
222 S. Main Street, Suite 1730
Salt Lake City, UT 84101
Telephone: (801) 478-6907
Email: Annette.Jarvis@gtlaw.com
Carson.Heninger@gtlaw.com

-and-

*/s/ David S. Rubin*
David S. Rubin (La. 11525)
BUTLER SNOW LLP
445 North Boulevard, Suite 300
Baton Rouge, LA 70802
Telephone: (225) 325-8728
Email: david.rubin@butlersnow.com

*Attorneys for Argent Institutional Trust Company*