## UNITED STATES BANKRUPTCY COURT
### EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re: | § | |
| | § | **Case No. 20-10846** |
| **THE ROMAN CATHOLIC CHURCH** | § | |
| **OF THE ARCHDIOCESE OF NEW** | § | **Section "A"** |
| **ORLEANS,** | § | |
| | § | **Chapter 11** |
| Debtor. | § | |
| | § | |

---

## ARGENT INSTITUTIONAL TRUST COMPANY, AS INDENTURE TRUSTEE'S OMNIBUS OBJECTION TO RULE 30(b)(6) NOTICES OF DEPOSITION

Pursuant to the Court's August 28, 2025 Order [ECF No. 4320], Argent Institutional Trust Company, as indenture trustee (the "Bond Trustee"), and successor-in-interest to TMI Trust Company, by and through counsel, hereby objects to certain of the matters for examination listed in the Rule 30(b)(6) Notices of Deposition filed by Official Committee of Unsecured Creditors (the "Committee") [ECF No. 4367] (the "Committee Notice") and the Debtor and Additional Debtors[1] [ECF No. 4373] (the "Debtor's Notice" collectively with the Committee Notice referred to herein as the "Notices") as follows:

### PRELIMINARY STATEMENT

As an initial matter, there is simply no legitimate reason for all three of the Plan Proponents to take the deposition of the Bond Trustee.[2] Aside from the fact that it is not a good use of estate resources for the Committee, the Debtor and the Additional Debtors to undertake these

---

[1] Capitalized terms used herein and not otherwise defined shall have the same meaning as set forth in Exhibit A to the Plan [ECF No. 4331-1].

[2] Indeed, the Committee did not even specifically include the Bond Trustee in its "may call" witness list [ECF No. 4277], and only listed its expert, Stout, who will be rendering an opinion on the aggregate value of the Abuse Claims under a hypothetical chapter 7 liquidation. The Committee merely reserved the right to call "any witness called or designated by any other party" at trial, which defeats the purpose of the "may call" list process which was designed to determine what party would be taking which deposition during discovery.

unnecessary and duplicative efforts, particularly where all of their interests are identical, i.e., to confirm the Plan, the Bond Trustee is not even truly a fact witness in connection with any confirmation issues. The Bond Trustee was not involved in the drafting or negotiation of the Plan, the Bond Trustee is not an expert witness who will be testifying on valuation of the Debtor's assets or liabilities and the Bond Trustee cannot be required to testify about legal theories identified and/or developed by its counsel or their attorney work product.

Yet, the Plan Proponents have propounded a combined 37 matters upon which they seek to depose the Bond Trustee, which together comprise a blatant fishing expedition whose only purpose is to harass the Bond Trustee. Indeed, the Plan Proponents' areas of inquiry overtly seek legal opinions and work product of the Bond Trustee's counsel, expert opinions on the valuation of the Debtor's and Additional Debtors' assets and liabilities, legal interpretations of the Bond Documents and utterly irrelevant information about the Bond Trustee's communications with its constituents generally over the last five years and prior settlements in this case. The Plan Proponents even go so far as to seek testimony about the settlement strategy of bondholders, the selection process of the Bond Trustee's counsel, the sale of the Bonds nearly 10 years ago (long before the Bond Trustee was involved in this case) and the Bond Trustee's allegation in the pending adversary proceeding which the Court has stated will be subject to a separate discovery process.

At bottom, the matters for examination propounded on the Bond Trustee are overly broad, specifically designed to harass the Bond Trustee, inflate the cost of this litigation and invade legally privileged information without any legitimate basis to do so. For these reasons, and as more particularly discussed herein, the Court should substantially limit the scope of the Bond Trustee's deposition.[3]

---

[3] The Bond Trustee reserves and preserves all of its rights to object to any specific question asked of the Bond Trustee during its deposition as permitted under the Federal Rules of Civil Procedure, the Federal Rules of Evidence,

## <u>OBJECTIONS</u>[4]

### A.  The Notices Seek Expert Testimony from the Bond Trustee.

What appears to be a common theme throughout the Notices is the desire by the Plan Proponents to question the Bond Trustee regarding matters that squarely fall within the purview of the experts who are preparing reports and who will be called to testify at the confirmation hearing in this case.  Specifically, matters 1-2, 6-7, 11, 13-14 and 22 in the Debtor's Notice seek testimony concerning the valuation of the Debtor's and Additional Debtor's assets and liabilities. The Bond Trustee is neither a fact nor expert witness competent to testify about these matters and the Court should strike those requests.

Similarly, the Committee's matter number 8 seeks testimony regarding the potential recovery on the Bond Claims under a hypothetical chapter 7 liquidation.  In addition to the fact that the Committee's matter number 8 obviously seeks to discover what is attorney work product, the Bond Trustee has hired an expert to analyze this subject matter and produce a report to the Plan Proponents.  That expert, BDO, can be deposed by the Committee following the production of its report on October 2, 2025.  The Bond Trustee is not the appropriate witness for this line of questioning and the Committee's matter number 8 should be stricken.

### B.  The Notices Seek Testimony that Invades the Attorney Client Privilege and Attorney Work Product.

Another common theme in the Notices is the Plan Proponents' efforts to depose the Bond Trustee regarding its *counsel's* legal analysis of the Plan, which is undoubtedly attorney client privileged and attorney work product.  The Bond Trustee is not an attorney and its understanding

---

the Federal Rules of Bankruptcy Procedure and this Court's Local Rules and specifically does not waive any such objection herein.

[4]     Attached hereto as Exhibit A is a summary of the arguments as they relate to each objected-to matter for examination. The summary chart is for the convenience of the Court and in the event of any inconsistency between it and the following objections, this objection shall govern.

of the legal basis for any asserted or contemplated objection to the Plan came from discussions with its counsel.  Indeed, the Debtor Notice includes topics that on their face seek to invade the Bond Trustee's attorney client and attorney work product privileges, including matters 3-5, 8, 10, and 12 because the Bond Trustee's only source of information for these matters is its counsel.  In addition, in matter number 18 the Debtor is requesting that it be permitted to question the Bond Trustee on "the process by which Greenberg Traurig, LLP was selected as counsel for the Bond Trustee, including but not limited to, who selected Greenberg Traurig, LLP."  What possible relevance to confirmation this line of questioning could have is a mystery, and in any event, the process by which the Bond Trustee, or any other party, selects its counsel is privileged.

Similarly, the Committee seeks to depose the Bond Trustee on the legal basis for various objections to the Plan that have been articulated in this case, i.e., requests 7, 9 and 12 in the Committee Notice.[5]  Again, the Bond Trustee is not an attorney, and its only knowledge of the legal positions articulated in this case is based on communications with its counsel, which are privileged and not subject to discovery.  The Committee should not be allowed to invade the attorney client privilege or discover attorney work product and matters 7, 9 and 12 in the Committee Notice should be stricken.

### C. The Notices Seek Testimony Regarding the Bond Trustee Settlement that is Irrelevant to the Confirmation of the Plan as Articulated by the Plan Proponents.

The Committee Notice states the Committee's intention to depose the Bond Trustee regarding issues surrounding the Bond Trustee Settlement, which matters have no relevance to confirmation of the Plan, including the communications between the Bond Trustee and anyone

---

[5]     Moreover, to the extent that the Committee's matters for examination seeking the "factual basis" are an attempt to discovery the attorney work product or attorney client privileged materials, the Bond Trustee objects to those matters. *See* Committee Notice matters 1, 2, 6, 7, 8, and. 9.

else regarding the settlement.[6]  *See* Committee Notice at matter 4.  Put simply, there is no legitimate reason that the Committee needs to conduct discovery regarding the Bond Trustee Settlement Agreement, or communications related thereto in connection with confirmation of the Plan.  The Bond Trustee's views on the Settlement, and *its* communications regarding the Settlement, are irrelevant and not probative of whether the Plan is confirmable because the Debtor has chosen to disregard the Settlement.  This line of questioning appears to have no purpose other than to allow the Committee to relitigate its objections to the Bond Trustee Settlement, which were resolved years ago, and to harass the Bond Trustee.

The Court should not permit the Plan Proponents to question the Bond Trustee on irrelevant matters that have no bearing on the confirmation of the Plan.

**D.  The Plan Proponents Should Not be Allowed to Delve into Other Irrelevant Lines of Questioning.**

The Notices identify a number of matters that have no relevance, whatsoever, to Plan confirmation, but which are solely aimed at harassing the Bond Trustee and questioning it regarding the Bondholders for whom the Bond Trustee acts.  Specifically, the Debtor intends to question the Bond Trustee regarding its communications with the "Bondholders" over the last five years of this case. *See* Debtor Notice at matter 19.  This line of questioning is totally irrelevant, far too broad and simply not necessary to this proceeding.  The Bond Trustee's communications with its constituents cannot possibly have any probative value in connection with Plan confirmation.

The Debtor also seeks to question the Bond Trustee on "how the Bonds were marketed, the information regarding the Archdiocese available to You and/or relied upon by You at the time the

---

[6]     In contrast, the Plan Proponents' communications concerning the Bond Trustee Settlement Agreement are highly relevant to confirmation under section 1129(a)(3) of the Bankruptcy Code because those communications bear on the Plan proposal process and the Bond Trustee's allegations that the Plan was not negotiated or formulated in good faith but rather as a product of collusion between the Debtor and Committee to minimize the Bondholders' recovery.

Bonds were marketed, who the Bonds were marketed to, and when the Bonds were marketed" *See* Debtor Notice at matter 15.  First, it is not clear what the Debtor is asking about with this matter for examination.  There is no time period stated, and it uses the vague and undefined term "marketed."[7]  Assuming that the Debtor is referring to the period of time during which the Bonds were issued by the Louisiana Public Facilities Authority, the Bond Trustee has already addressed this issue in connection with the written discovery requests propounded in this case.  To be clear, Argent Institutional Trust Company was *not* involved with the issuance of the Bonds and did not become Bond Trustee until years after the Bonds were issued.  The Bond Trustee has no knowledge of facts concerning the underwriting or sale process of the Bonds.  Second, even assuming that the Bond Trustee did have firsthand information about the "marketing" of the Bonds, which it does not, the question being posed is not one that is properly for the Bond Trustee, who did not buy the Bonds and was not the party "relying" on information.  This line of questioning is obviously aimed at harassing the Bond Trustee.

Similarly, the Committee seeks to question the Bond Trustee on "the manner and process of all communications between any representative of the Bond Trustee and the Bondholders" [matter 11] and "the Bond Trustee's actual knowledge regarding the identity and contact information for each current and former bondholder, the amount of the bond debt held by each, and the timing and circumstances of any transfers of their bonds" [matter 13].  Neither of these topics is relevant or appropriate in connection with confirmation of the Plan.  The "manner and process" by which the Bond Trustee communicates with its constituents is completely irrelevant under any circumstance.  Moreover, voting on the Plan is currently underway and Donlin Recano

---

[7]     The Bonds are publicly traded securities and have been continuously bought and sold since they were initially issued in 2017.

has begun soliciting Bondholders as stated in its certificate of service [ECF NO. 4336].[8] The Committee, which is not the party undertaking the solicitation process, has absolutely no basis for questioning the Bond Trustee about the identities of the holders of the Bonds.  Setting that aside, the Bond Trustee has been very clear that it does not know every holder of the Bonds, nor does it know all the *prior* holders of the Bonds, or what amount of the Bonds those prior holders owned or when or why they sold their Bonds. This convoluted and irrelevant line of questioning is clearly aimed at harassing the Bond Trustee and should not be allowed.[9]

The Committee also seeks to question the Bond Trustee regarding the terms of the Bond Indenture and apparently seeks a legal opinion from the Bond Trustee on how the Bond Documents operate. *See* Committee Notice at matter 10.[10]  The Committee should not be permitted to try to extract a legal analysis of the Bond Documents or the roles of the various parties to those documents.  The Bond Trustee's understanding of how those documents operate is not relevant to the confirmation of the Plan. If the Committee is truly curious about those matters, it should consult its own counsel. The Troutman Pepper Locke firm, at least, has a large group of attorneys who are experts in tax-exempt municipal bonds.  Asking the Bond Trustee to read the Bond Documents and opine on the rights and remedies of the parties thereto is simply not appropriate.[11]

---

[8]    Similarly, the Debtor's matter number 16 seeks "Identification of all Bondholders as of the voting record date."  This line of questioning from the Debtor is similarly not relevant and, as stated herein and previously, it is not the Bond Trustee's role to track who owns the Bonds.

[9]    At best this line of questioning, along with the Debtor's matter number 15, may be relevant to the claims articulated by the Bond Trustee concerning the Debtor's liability under various state and federal securities laws. However, the parties have agreed to not conduct discovery on those claims during the case in light of the Debtor's agreement that those claims will be classified in Class 8 under the Plan.  If the Committee's 13th matter is aimed at discovering facts about these securities law claims then it should be stricken based on the parties' prior agreement.

[10]    *See also* Committee Matter 3 ("The nature of the Bond Documents and Bond Indenture").

[11]    The Plan contemplates that the Bond Documents will be amended, but, despite the Court's admonition that the Debtor needed to get amended documents to the Bondholders and the Bond Trustee within a reasonable period, and despite the fact that the Debtor promised to deliver proposed amended documents to the Bond Trustee by August

### E. The Debtor is Attempting to Invade the Various Committee Privileges that the Bond Trustee is Bound By.

The Debtor Notice identifies at least two topics that would require the Bond Trustee to discuss matters that are covered by the confidentiality restrictions placed on it while a member of each of the Committees in this case. Specifically, the Debtor's matter 20 seeks "your communications with any creditors of the Debtor or the Additional Debtors, including, the substance of those communications, the date of the communications, and the purpose of the communications from the Petition Date to present." Matter 21 in the Debtor Notice seeks testimony on "your communications with the Commercial Committee, including, the substance of those Communications, the date of the communications, and the purpose of the communications from the Petition Date to present." Discussion of these topics would require the Bond Trustee to violate the confidentiality provisions placed on it as a result of its membership on the Committees. The Debtor should not be permitted to delve into these matters, particularly where the category is so broad and irrelevant to confirmation of the Plan.

To the extent that the Debtor is attempting to engage in a fishing expedition regarding solicitation issues, the Court has set a deadline for any party to file a motion under Section 1126(e), and if such a motion is filed, the Debtor can obtain discovery about plan solicitation at that time. The Debtor is not entitled to do "pre-motion" discovery or engage in a Rule 2004-style fishing expedition to harass the Bond Trustee about communications with other creditors.

---

29th, the Bond Trustee has yet to receive drafts of the Amended Bond Documents. The Bond Trustee's recent request for drafts of the Amended Bond Documents has also gone unanswered.

**F. The Debtor is Seeking Discovery in Connection with the Bond Trustee's Adversary Proceeding.**

The Court should also preclude the Debtor from questioning the Bond Trustee regarding its allegations in its equitable subordination Adversary Proceeding[12] concerning the Debtor and the Additional Debtors' concealment of the acts that gave rise to the Abuse Claims prior to the Petition Date.  Matter 24 in the Debtor Notice seeks testimony on "your contention that the Debtor has covered up any Abuse Claims prior to the Petition Date and/or after the Petition Date, including, the facts, witnesses, and documents to support this contention" and matter 12 seeks testimony on "your contention that You have rights against the Additional Debtors and the Non-Debtor Catholic Entities, including, the facts, witnesses, and documents to support this contention." Both topics go squarely to the Bond Trustee's allegations in the Adversary Proceeding.

The Bond Trustee has not been permitted to conduct discovery on its claims in the Adversary Proceeding in connection with the confirmation related discovery process, and if the Debtor is allowed to question the Bond Trustee on the allegations in that case, the Bond Trustee should likewise be allowed to conduct discovery at this time, including document requests interrogatories and depositions.  Otherwise, the Debtor should not be allowed to depose the Bond Trustee on matters 12 and 24 in the Debtor Notice.

The same is true for the Committee's matter 1, which seeks testimony on "the factual basis supporting (i) the Bond Trustee's alleged rights and/or claims against the Additional Debtors and any Affiliates and (ii) the Bond Trustee's alleged ability to collect from assets of the Additional Debtors and any Affiliates to pay the Bond Claims." Aside from the fact that the Committee (which

---

[12]        The Adversary Proceeding is styled *Argent Institutional Trust Company, as Trustee v. The Roman Catholic Church of the Archdiocese of New Orleans et al.* Adv. Proc. No. 25-01049.

has only been appointed in this bankruptcy case and not the future bankruptcy cases of the Additional Debtors) has no independent standing to seek discovery concerning whatever rights the Bond Trustee may or may not have against the Additional Debtors, the Committee is seeking discovery regarding the Bond Trustee's claims raised in the Adversary Proceeding, which should not be permitted. For both of these reasons, i.e., that this line of questioning is only relevant to the pending Adversary Proceeding and the Committee is not entitled to discovery on these matters, period, the Court should strike matter number 1 in the Committee Notice.

## **CONCLUSION**

WHEREFORE, the Bond Trustee respectfully requests that the Court limit the matters upon which the Bond Trustee may be examined in this case as requested herein and grant any other or further relief as the Court deems appropriate under the circumstances.

DATED: September 19, 2025

Respectfully submitted,

/s/ Colleen A. Murphy
Colleen A. Murphy
Kevin J. Walsh
Charles W. Azano
Christopher Marks
GREENBERG TRAURIG, LLP
One International Place Suite, 2000
Boston, MA 02110
Telephone: (617) 310-6000
Email: Colleen.Murphy@gtlaw.com
        Kevin.Walsh@gtlaw.com
        Chip.Azano@gtlaw.com
        Chris.Marks@gtlaw.com


/s/ David S. Rubin
David S. Rubin (La. 11525)
BUTLER SNOW LLP
445 North Boulevard, Suite 300
Baton Rouge, LA 70802
Telephone: (225) 325-8728
Email: david.rubin@butlersnow.com

*Attorneys for Argent Institutional Trust Company*

**EXHIBIT A**

| Topic No. | Exam Topic | Bond Trustee's Objections (pg. no. of Bond Trustee's Omnibus Objection to Rule 30(b)(6) Notices) |
|---|---|---|
| | **Debtor Notice** | |
| 1 | Your contention regarding the value of the Archdiocese's real and personal property, including, the facts, witnesses, and documents to support this contention. | Seeks testimony concerning valuation of the Debtor and Additional Debtor's assets and liabilities. The Bond Trustee is neither a fact nor an expert witness capable of testifying about these matters (pg. 3). |
| 2 | Your contention regarding what real and personal property of the Archdiocese should or could be sold to pay the Bondholders in full, including, the facts, witnesses, and documents to support this contention. | Seeks testimony concerning valuation of the Debtor and Additional Debtor's assets and liabilities. The Bond Trustee is neither a fact nor an expert witness capable of testifying about these matters (pg. 3). |
| 3 | Your contention that the Joint Plan is not fair and equitable, including, the facts, witnesses, and documents to support this contention. | Seeks to invade Bond Trustee's attorney-client privilege and attorney work product because the only source of information to answer this question is counsel (pg. 4). |
| 4 | Your contention that the Joint Plan discriminates unfairly, including, the facts, witnesses, and documents to support this contention. | Seeks to invade Bond Trustee's attorney-client privilege and attorney work product because the only source of information to answer this question is counsel (pg. 4). |
| 5 | Your contention that the Joint Plan was not proposed in good faith, including, the facts, witnesses, and documents to support this contention. | Seeks to invade Bond Trustee's attorney-client privilege and attorney work product (pg. 4). |
| 6 | Your contention regarding the liquidation value of the Archdiocese's real property, including, the facts, witnesses, and documents to support this contention. | Seeks testimony concerning valuation of the Debtor and Additional Debtor's assets and liabilities. The Bond Trustee is neither a fact nor an expert witness capable of testifying about these matters (pg. 3). |
| 7 | Your contention regarding the liquidation value of the Archdiocese's personal property, including, the facts, witnesses, and documents to support this contention. | Seeks testimony concerning valuation of the Debtor and Additional Debtor's assets and liabilities. The Bond Trustee is neither a fact nor an expert witness capable of testifying about these matters (pg. 3). |

| Topic No. | Exam Topic | Bond Trustee's Objections (pg. no. of Bond Trustee's Omnibus Objection to Rule 30(b)(6) Notices) |
|---|---|---|
| 8 | Your contention that the Bond Trustee Settlement Agreement is unenforceable or is being breached by the Debtor, including, the facts, witnesses, and documents to support this contention. | Seeks to invade Bond Trustee's attorney-client privilege and attorney work product because the only source of information to answer this question is counsel (pg. 4). In the context proposed, the Bond Trustee Settlement Agreement is irrelevant to Plan confirmation (pg. 5). |
| 10 | Your contention as to the application of Canon Law with respect to the Bond Claims in the Joint Plan and how Canon Law applies to the Joint Plan. | Seeks to invade Bond Trustee's attorney-client privilege and attorney work product pg. 4). |
| 11 | Your valuation of the Abuse Claims, including, the facts, witnesses, and documents to support this valuation. | Seeks testimony concerning valuation of the Debtor and Additional Debtor's assets and liabilities. The Bond Trustee is neither a fact nor an expert witness capable of testifying about these matters (pg. 3). |
| 12 | Your contention that You have rights against the Additional Debtors and the Non-Debtor Catholic Entities, including, the facts, witnesses, and documents to support this contention. | Seeks to invade Bond Trustee's attorney-client privilege and attorney work product because the only source of information to answer this question is counsel (pg. 4). This question relates to the Adversary Proceeding in connection with the confirmation-related discovery process, in which the Bond Trustee has not been permitted discovery on its claims. Allowing this question but not the Bond Trustee's discovery in the Adversary Proceeding would contradict the transparency and fairness principles of the discovery process (pg. 10). |
| 13 | Your analysis of the Debtor's ability to pay creditors, including, the facts, witnesses, and documents to support this analysis. | Seeks testimony concerning valuation of the Debtor and Additional Debtor's assets and liabilities. The Bond Trustee is neither a fact nor an expert witness capable of testifying about these matters (pg. 3). |

| Topic No. | Exam Topic | Bond Trustee's Objections (pg. no. of Bond Trustee's Omnibus Objection to Rule 30(b)(6) Notices) |
|---|---|---|
| 14 | Your assessment of the credit risk of the Archdiocese, including, the facts, witnesses, and documents to support this assessment. | Seeks testimony concerning valuation of the Debtor and Additional Debtor's assets and liabilities. The Bond Trustee is neither a fact nor an expert witness capable of testifying about these matters (pg. 3). |
| 15 | How the Bonds were marketed, the information regarding the Archdiocese available to You and/or relied upon by You at the time the Bonds were marketed, who the Bonds were marketed to, and when the Bonds were marketed. | This question is vague; both the time period and the term "marketed" are undefined (pg. 5). The current Bond Trustee (Argent Institutional Trust Company) is a successor trustee and was not involved in the initial Bond issuance and has no personal knowledge of facts related to the issuance of the Bonds (pg. 6). |
| 16 | Identification of all Bondholders as of the voting record date. | This line of questioning is irrelevant as the Solicitation Agent has already begun plan solicitation. Moreover, the Bond Trustee does not, and is not required to, maintain a list of all bondholders. |
| 18 | The process by which Greenberg Traurig, LLP was selected as counsel for the Bond Trustee, including but not limited to, who selected Greenberg Traurig, LLP. | Seeks to invade Bond Trustee's attorney client privilege and attorney work product because the only source of information to answer this question is counsel (pg. 4). |
| 19 | Your communications with the Bondholders, including, the substance of those communications, the date of the communications, and the purpose of the communications from the Petition Date to present. | Seeks information that is irrelevant to Plan confirmation, unnecessary, too broad, and has no probative value (pg. 5). |
| 20 | Your communications with any creditors of the Debtor or the Additional Debtors, including, the substance of those communications, the date of the communications, and the purpose of the communications from the Petition Date to present. | Seeks information that would require the Bond Trustee to violate confidentiality provisions to which it is subject (pg. 8). The question is also overly broad and irrelevant to Plan confirmation (pg. 9). |

| Topic No. | Exam Topic | Bond Trustee's Objections (pg. no. of Bond Trustee's Omnibus Objection to Rule 30(b)(6) Notices) |
|---|---|---|
| 21 | Your communications with the Commercial Committee, including, the substance of those Communications, the date of the communications, and the purpose of the communications from the Petition Date to present. | Seeks information that would require the Bond Trustee to violate confidentiality provisions to which it is subject (pg. 8). The question is also overly broad and irrelevant to Plan confirmation (pg. 9). The question is more appropriately answered through a Section 1126(e) motion for which the Court has set a deadline (pg. 9). |
| 22 | Your contention regarding the value of the Abuse Claims, including, the facts, witnesses, and documents to support this contention. | Seeks testimony concerning valuation of the Debtor's and Additional Debtor's assets and liabilities. The Bond Trustee is neither a fact nor an expert witness capable of testifying about these matters (pg. 3). Seeks information that would require the Bond Trustee to violate confidentiality provisions to which it is subject (pg. 9). The question is also overly broad and irrelevant to Plan confirmation (pg. 9). The question is more appropriately answered through a Section 1126(e) motion for which the Court has set a deadline (pg. 9). |
| 24 | Your contention that the Debtor has covered up any Abuse Claims prior to the Petition Date and/or after the Petition Date, including, the facts, witnesses, and documents to support this contention. | This question relates to the Adversary Proceeding in connection with the confirmation-related discovery process, in which the Bond Trustee has not been permitted discovery on its claims. If this question is permitted, the Bond Trustee should likewise be allowed to conduct discovery at this time. Allowing this question but not the Bond Trustee's discovery in the Adversary Proceeding would contradict the transparency and fairness principles of the discovery process (pg. 10). |

| Committee Notice (Doc 4367) | | |
|---|---|---|
| Topic No. | Exam Topic | Bond Trustee's Objections(pg. no. of Bond Trustee's Omnibus Objection to Rule 30(b)(6) Notices) |
| 1 | The factual basis supporting (i) the Bond Trustee's alleged rights and/or claims against the Additional Debtors and any Affiliates and (ii) the Bond Trustee's alleged ability to collect from assets of the Additional Debtors and any Affiliates to pay the Bond Claims. | Seeks to invade Bond Trustee's attorney-client privilege and attorney work product because Bond Trustee is not an attorney and knowledge of the legal positions articulated in the case derive from communications with counsel, which are privileged and not subject to discovery (pg. 4). This seek information that is only relevant to the Adversary Proceeding and the Committee does not have standing to discovery on Adversary Proceeding matters (pg. 9). |
| 2 | The factual basis supporting the Bond Trustee's claimed restriction over the real property sales of the Debtor, the Additional Debtors, and/or any Affiliates of either. | Seeks to invade Bond Trustee's attorney-client privilege and attorney work product because Bond Trustee is not an attorney and knowledge of the legal positions articulated in the case derive from communications with counsel, which are privileged and not subject to discovery (pg. 4). |
| 3 | The nature of the Bond Documents and Bond Indenture. | Seeks a legal opinion from the Bond Trustee. (pg. 7). |
| 4 | The Bond Trustee Settlement Agreement and the Bond Trustee Settlement Approval Order, and any related communications with Bondholders or other parties. | Seeks information about Bond Trustee Settlement, which are irrelevant to the confirmation of the Plan, especially because the Debtor has disregarded the terms of the Bond Trustee Settlement (pp. 4-5). Seeks to harass the Bond Trustee (pg. 5). Seeks to relitigate the Committee's objections to the Bond Trustee Settlement, which were resolved years ago (pg. 5). |

| Topic No. | Exam Topic | Bond Trustee's Objections(pg. no. of Bond Trustee's Omnibus Objection to Rule 30(b)(6) Notices) |
|---|---|---|
| 6 | The factual basis supporting the Bond Trustee's contention that the Debtor is obligated to pay the Bond Trustee Professional Fee Claim and/or the Bond Trustee's Claim. | Seeks to invade Bond Trustee's attorney-client privilege and attorney work product because Bond Trustee is not an attorney and knowledge of the legal positions articulated in the case derive from communications with counsel, which are privileged and not subject to discovery (pg. 4). |
| 7 | The factual and/or legal basis supporting the Bond Trustee's objections to the Joint Plan, including the contention that the Joint Plan's proposed treatment of the Bond Claims will not preserve the Bonds' exemption from federal and state income tax following the Effective Date. | Seeks to invade Bond Trustee's attorney-client privilege and attorney work product because Bond Trustee is not an attorney and knowledge of the legal positions articulated in the case derive from communications with counsel, which are privileged and not subject to discovery (pg. 4). |
| 8 | The factual basis supporting the Bond Trustee's contention, if any, that the Class 6 Bond Claims will not receive or retain under the Joint Plan property of a value, as of the Effective Date, at least equal to or more than the value of the property the Bond Claims would receive in a hypothetical Chapter 7 liquidation of the Debtor, Additional Debtors and Affiliates occurring on the Effective Date. | Seeks expert testimony from the Bond Trustee, a non-expert. (pg. 3). Seeks to invade Bond Trustee's attorney-client privilege and attorney work product because Bond Trustee is not an attorney and knowledge of the legal positions articulated in the case derive from communications with counsel, which are privileged and not subject to discovery (pg. 4). |
| 9 | The factual and/or legal basis supporting the Bond Trustee's contention, if any, that the Joint Plan's proposed treatment of the Bond Claims will not satisfy Bankruptcy Code § 1129(b) if the Class 6 Bond Claims vote to reject the Joint Plan, including without limitation any contention by the Bond Trustee that the Joint Plan discriminates unfairly against the Bond Claims and/or is not "fair and equitable" with respect to the Bond Claims. | Seeks to invade Bond Trustee's attorney-client privilege and attorney work product because Bond Trustee is not an attorney and knowledge of the legal positions articulated in the case are derived from communications with counsel, which are privileged and not subject to discovery (pg. 4). |

| Topic No. | Exam Topic | Bond Trustee's Objections(pg. no. of Bond Trustee's Omnibus Objection to Rule 30(b)(6) Notices) |
|---|---|---|
| 10 | The roles of the Bond Trustee and Bondholders in actions seeking to enforce rights under the Bond Documents, including without limitation under the Bond Indenture. | This question seeks a legal opinion from the Bond Trustee; the Bond Trustee is not a legal expert (nor would be the appropriate legal expert for the Committee) and the question is irrelevant to Plan confirmation (pg. 7). |
| 11 | The manner and process of all communications between any representative of the Bond Trustee and the Bondholders. | This topic is irrelevant to Plan confirmation; how the Bond Trustee communicates with bondholders has no bearing on Plan confirmation (pgs. 6-7). |
| 12 | The process and methodology among the Bond Trustee and Bondholders for evaluating, calculating, and/or deciding on potential settlements of the Bond Claims and/or any other obligations or liabilities the Debtor may have under the Bond Documents. | Seeks to invade Bond Trustee's attorney-client privilege and attorney work product because Bond Trustee is not an attorney and knowledge of the legal positions articulated in the case derive from communications with counsel, which are privileged and not subject to discovery (pg. 4). |
| 13 | The Bond Trustee's actual knowledge regarding the identity and contact information for each current and former bondholder, the amount of the bond debt held by each, and the timing and circumstances of any transfers of their bonds. | This topic is irrelevant to Plan confirmation; how the Bond Trustee communicates with bondholders has no bearing on Plan confirmation (pgs. 6-7). |