**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| In re: | § | |
| | § | **Case No. 20-10846** |
| THE ROMAN CATHOLIC CHURCH OF | § | |
| THE ARCHDIOCESE OF NEW | § | **Section "A"** |
| ORLEANS, | § | |
| | § | **Chapter 11** |
| Debtor.[1] | § | |
| | § | |

---

**FOURTH AMENDED JOINT CHAPTER 11 PLAN OF REORGANIZATION FOR THE ROMAN CATHOLIC CHURCH OF THE ARCHDIOCESE OF NEW ORLEANS AND ADDITIONAL DEBTORS, PROPOSED BY THE DEBTOR, THE ADDITIONAL DEBTORS, AND THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS, DATED AS OF SEPTEMBER 23, 2025**

| | |
|---|---|
| JONES WALKER LLP<br>R. Patrick Vance (#13008)<br>Elizabeth J. Futrell (#05863)<br>Mark A. Mintz (#31878)<br>Samantha A. Oppenheim (#38364)<br>201 St. Charles Avenue, 51st Floor<br>New Orleans, LA 70170<br>Telephone: (504) 582-8000<br>Facsimile: (504) 589-8260<br>Email: pvance@joneswalker.com<br>        efutrell@joneswalker.com<br>        mmintz@joneswalker.com<br>        soppenheim@joneswalker.com<br><br>**ATTORNEYS FOR**<br>**THE ROMAN CATHOLIC CHURCH OF THE**<br>**ARCHDIOCESE OF NEW ORLEANS**<br><br>HELLER, DRAPER, & HORN, L.L.C.<br>Douglas S. Draper<br>Greta S. Brouphy<br>Michael E. Landis<br>650 Poydras Street, Suite 2500<br>New Orleans, Louisiana 70130<br>Telephone: 504-299-3300<br>Facsimile: 504-299-3399<br>E-mail: ddraper@hellerdraper.com<br>        gbrouphy@hellerdraper.com<br>        mlandis@hellerdraper.com<br><br>**ATTORNEYS FOR**<br>**THE ADDITIONAL DEBTORS** | PACHULSKI STANG ZIEHL & JONES LLP<br>James I. Stang (CA Bar 94435) (pro hac vice)<br>Iain A.W. Nasatir (CA Bar 148977) (pro hac vice)<br>Andrew W. Caine (CA Bar 110345) (pro hac vice)<br>Karen B. Dine (NY Bar 2625366) (pro hac vice)<br>10100 Santa Monica Blvd., Ste. 1300<br>Los Angeles, CA 90067<br>Telephone: (310) 277-6910<br>Facsimile: (310) 201-0760<br>Email: jstang@pszjlaw.com<br>        inasatir@pszjlaw.com<br>        acaine@pszjlaw.com<br>        kdine@pszjlaw.com<br><br>TROUTMAN PEPPER LOCKE LLP<br>Omer F. Kuebel, III (La #21682)<br>Bradley C. Knapp (La #35867)<br>601 Poydras Street, Suite 2660<br>New Orleans, Louisiana 70130-6036<br>Telephone: (504) 558-5210<br>Facsimile: (504) 910-6847<br>Email: rick.kuebel@troutman.com<br>        brad.knapp@troutman.com<br><br>TROUTMAN PEPPER LOCKE LLP<br>W. Steven Bryant (TX Bar No. 2427413)<br>300 Colorado Street, Ste. 2100<br>Austin, Texas 78701<br>Telephone: (512) 305-4726<br>Facsimile: (512) 305-4800<br>Email: steven.bryant@troutman.com<br><br>**ATTORNEYS FOR THE OFFICIAL COMMITTEE**<br>**OF UNSECURED CREDITORS** |

---

[1] The last four digits of the Debtor's federal tax identification number are 8966. The Debtor's principal place of business is located at 7887 Walmsley Ave., New Orleans, LA 70125.

**TABLE OF CONTENTS**

ARTICLE 1   DEFINED TERMS AND RULES OF INTERPRETATION                    1

ARTICLE 2   UNCLASSIFIED CLAIMS                                          2

ARTICLE 3   CLASSIFICATION, VOTING, AND ACCEPTANCE                       3

ARTICLE 4   TREATMENT OF CLASSIFIED CLAIMS                               4

ARTICLE 5   MEANS FOR IMPLEMENTATION OF THE JOINT PLAN                   11

ARTICLE 6   THE SETTLEMENT TRUST AND RELATED MATTERS                     16

ARTICLE 7   SETTLING INSURERS AND NON-SETTLING INSURERS                  28

ARTICLE 8   ADMINISTRATION OF NON-ABUSE CLAIMS                           33

ARTICLE 9   DISTRIBUTIONS ON ACCOUNT OF NON-ABUSE CLAIMS                 34

ARTICLE 10  EXECUTORY CONTRACTS AND UNEXPIRED LEASES                     36

ARTICLE 11  CONDITIONS TO THE EFFECTIVE DATE                             39

ARTICLE 12  ADDITIONAL EFFECTS OF CONFIRMATION                          41

ARTICLE 13  RETENTION OF JURISDICTION                                    49

ARTICLE 14  MISCELLANEOUS                                                51

## PLAN EXHIBITS

| | |
|---|---|
| PLAN EXHIBIT A | Defined Terms |
| PLAN EXHIBIT B-1 | Additional Debtors |
| PLAN EXHIBIT B-2 | Non-Debtor Catholic Entities |
| PLAN EXHIBIT C | Abuse Claim Release and Certification |
| PLAN EXHIBIT D-1 | Settlement Trust Agreement |
| PLAN EXHIBIT D-2 | Allocation Protocol |
| PLAN EXHIBIT E | Non-Monetary Plan Provisions |
| PLAN EXHIBIT F | Additional Debtors' Abuse Claims Bar Date Notice |
| PLAN EXHIBIT G | Additional Debtors' Abuse Claims Bar Date Publication Notice |
| PLAN EXHIBIT H | Additional Debtors' Abuse Proof of Claim Form |
| PLAN EXHIBIT I | Reserved |
| PLAN EXHIBIT J | Additional Debtors' Non-Trade Claims Bar Date Publication Notice |
| PLAN EXHIBIT K | Additional Debtors' Non-Trade Proof of Claim Form |


## PLAN SUPPLEMENTS

| | |
|---|---|
| PLAN SUPPLEMENT 4.6 | Amended Bond Documents |
| PLAN SUPPLEMENT 5.3(a)(ii) | First Settlement Trust Promissory Note and First Settlement Trust Promissory Note Letter of Credit |
| PLAN SUPPLEMENT 5.3(a)(iv) | Second Settlement Trust Promissory Note and Second Settlement Trust Promissory Note Letter of Credit |
| PLAN SUPPLEMENT 5.3(a)(vii) | Affordable Housing Facilities Sale Escrow Agreement |
| PLAN SUPPLEMENT 5.7(a) | Reorganized Archdiocese's Directors and Officers |
| PLAN SUPPLEMENT 5.7(b) | Reorganized Additional Debtors' Directors and Officers |
| PLAN SUPPLEMENT 6.3 | Settlement Trustee Disclosures |
| PLAN SUPPLEMENT 6.5 | Abuse Claims Reviewer Disclosures |
| PLAN SUPPLEMENT 7.1(a) | Insurance Settlement Agreements |
| PLAN SUPPLEMENT 7.1(f) | List of the Settling Insurers' Policies |
| PLAN SUPPLEMENT 7.2 | List of the Non-Settling Insurers' Policies |
| PLAN SUPPLEMENT 10.1(a) | Rejected Executory Contracts and Leases (if any) |
| PLAN SUPPLEMENT 10.1(b) | Assumption and Cure Schedule |
| PLAN SUPPLEMENT 12.12(a) | Debtor's Preserved Estate Causes of Action |
| PLAN SUPPLEMENT 12.12(b) | Additional Debtors' Preserved Estate Causes of Action |

This *Fourth Amended Joint Chapter 11 Plan of Reorganization*, as the same may be amended and supplemented, (the "**Joint Plan**") for the Archdiocese and the Additional Debtors (as listed in Plan Exhibit B-1) is proposed by the Archdiocese, the Additional Debtors, and the Creditors' Committee. For a discussion of the Archdiocese's and Additional Debtors' history, operations, historical financial information, projections and more, please refer to the accompanying *Second Amended Modified Disclosure Statement for the Joint Plan*, as the same may be amended and supplemented from time to time, (the "**Disclosure Statement**"). All creditors are encouraged to consult the Disclosure Statement before voting to accept or reject the Joint Plan. The contents of the Joint Plan should not be construed as legal, business, or tax advice. Creditors should consult with their own legal counsel and accountant as to legal, tax, and other matters concerning their Claims.

## ARTICLE 1
## DEFINED TERMS AND RULES OF INTERPRETATION

**Section 1.1.**     **Definitions.** For the purposes of the Joint Plan and Disclosure Statement, except as expressly provided and unless the context otherwise requires, all capitalized terms have the meanings ascribed to them in Plan Exhibit A.

**Section 1.2.**     **Interpretation, Other Capitalized Terms, and Rules of Construction.**  For purposes of the Joint Plan, unless otherwise provided herein: (a) whenever from the context it is appropriate, each term, whether stated in the singular or the plural, will include both the singular and the plural; (b) unless otherwise provided in the Joint Plan, any reference in the Joint Plan to a contract, instrument, release, or other agreement or document being in a particular form or on particular terms and conditions means that such document will be substantially in such form or substantially on such terms and conditions; (c) any reference in the Joint Plan to an existing document, schedule or exhibit Filed or to be Filed means such document, schedule or exhibit, as it may have been or may be amended, modified, or supplemented pursuant to the Joint Plan; (d) any reference to an Entity as a Creditor includes that Entity's successors and assigns; (e) unless otherwise stated, all references in the Joint Plan to Articles or Sections are references to Articles or Sections of the Joint Plan, as the same may be amended, waived or modified from time to time in accordance with the terms hereof; (f) the words "herein," "hereof," "hereto," "hereunder" and other words of similar import refer to the Joint Plan as a whole and not to any particular Article, Section, or clause contained in the Joint Plan; (g) the words "include," "includes" and "including," and variations thereof, will not be deemed to be terms of limitation and will be deemed to be followed by the words "without limitation;" (h) the phrase "relating to", "related to" and various thereof, will mean, directly or indirectly, "with regard to, by reason of, based on, arising out of, relating to, or in any way connected with;" (i) subject to the provisions of any contract, certificate of incorporation, by-law, instrument, release, or other agreement or document entered into in connection with the Joint Plan, the rights and obligations arising pursuant to the Joint Plan will be governed by, and construed and enforced in accordance with the applicable federal law, including the Bankruptcy Code and Bankruptcy Rules; (j) any term used herein that is not otherwise defined but that is used in the Bankruptcy Code or the Bankruptcy Rules will have the meaning assigned to that term in the Bankruptcy Code or the Bankruptcy Rules, as the case may be; (k) any immaterial effectuating provisions may be interpreted by the Reorganized Archdiocese or applicable Reorganized Additional Debtors in such a manner that is consistent with the overall purpose and intent of the Joint Plan all without further notice to or action, order, or approval of the Bankruptcy Court or any other Entity; (l) captions and headings to Articles or Sections are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of the Joint Plan; and (m) the rules of construction set forth in section 102 of the Bankruptcy Code will apply.

**Section 1.3.**     **Computation of Time.** Except as otherwise specifically provided in the Joint Plan, in computing any period prescribed or permitted by the Joint Plan, the provisions of Bankruptcy Rule 9006(a) apply.

1

**Section 1.4. Plan Exhibits and Plan Supplements.** All Plan Exhibits and Plan Supplements are hereby incorporated by reference and made part of the Joint Plan as if fully set forth in the Joint Plan. The Plan Exhibits and Plan Supplements will be deemed approved by the Bankruptcy Court pursuant to the Confirmation Order. Creditors may inspect a copy of the Plan Supplements, after they are Filed, at the Claims and Voting Agent's website, https://www.donlinrecano.com/Clients/rcano/Index.

## ARTICLE 2
## UNCLASSIFIED CLAIMS

In accordance with section 1123(a)(l) of the Bankruptcy Code, certain Claims have not been classified, and, thus, are excluded from the Classes of Claims in Article 3 of the Joint Plan. Each Creditor holding an unclassified Claim is conclusively presumed to have accepted the Joint Plan and, therefore, is not entitled to vote to accept or reject the Joint Plan.

**Section 2.1 Administrative Claims and Administrative Claims Bar Date against the Debtor and/ or any Additional Debtors.**

(a) *Treatment*. Except to the extent that the Creditor holding an Allowed Administrative Claim against the Debtor and/or any Additional Debtors agrees to less favorable treatment of such Claim, in satisfaction, settlement, release and extinguishment of such Administrative Claim, each Creditor holding an Allowed Administrative Claim other than a Professional Fee Claim or an Administrative Trade Claim will receive from the applicable Reorganized Archdiocese or Reorganized Additional Debtor Cash equal to the Allowed amount of such Claim within the later of fifteen (15) days after (i) the Effective Date and (ii) the date on which such Administrative Claim becomes an Allowed Administrative Claim.

(b) *Administrative Claims Bar Date*. Except as provided in Sections 2.1(c), 2.2 and 2.3 of the Joint Plan, on or before the Administrative Claims Bar Date, which is thirty (30) days after the Effective Date, Creditors holding Administrative Claims that are required to, but do not, File a request for payment of such Administrative Claims on or before the Administrative Claims Bar Date will be forever barred, estopped, and enjoined from asserting such Administrative Claims against the applicable Debtor, Reorganized Archdiocese, Additional Debtors, and Reorganized Additional Debtors, and such Administrative Claims will be deemed compromised, settled, and released as of the Effective Date.

(c) *Creditors Who Are Not Required to File Requests for Payment on or before the Administrative Claims Bar Date*. Creditors are not required to File a request for payment regarding the following Claims on or before the Administrative Claims Bar Date: (i) the Professional Fee Claims, which will be paid in accordance with Section 2.2 of the Joint Plan; (ii) the Administrative Trade Claims, which will be paid in accordance with Section 2.3 of the Joint Plan; (iii) the DIP Credit Card Claim and Letters of Credit Claims, which will be paid in accordance with Section 2.4 of the Joint Plan; and (iv) the Cure Claims, which will be paid in accordance with Section 10.1(c) of the Joint Plan.

(d) *Objections to Certain Administrative Claims*. Objections to Filed requests for the payment of an Administrative Claim other than Professional Fee Claims and Administrative Trade Claims must be Filed and served on the Creditor holding such Claim within the later of (i) one hundred and twenty (120) days after the Effective Date, and (ii) ninety (90) days after the Filing of the applicable request for payment.

**Section 2.2 Professional Fee Claims against the Debtor or any Additional Debtors.**

(a) *Treatment*. Except to the extent that the holder of an Allowed Professional Fee Claim against the Debtor and/or any Additional Debtors agrees to less favorable treatment of such Claim, the applicable Reorganized Archdiocese or Reorganized Additional Debtor will pay the

Allowed amount of each Professional Fee Claim, in full, in Cash, within fifteen (15) days from the date such Claim becomes an Allowed Professional Fee Claim.

(b) *Professional Fee Claims Bar Date.* On or before the Professional Fee Claims Bar Date, which is forty-five (45) days after the Effective Date, Creditors asserting a Professional Fee Claim for services rendered before the Effective Date must File a Fee Application seeking final Allowance of such Professional Fee Claim.

**Section 2.3 Administrative Trade Claims against the Debtor and/or any Additional Debtors.** Except to the extent that Creditor holding an Administrative Trade Claim against the Debtor and/or any Additional Debtors agrees to less favorable treatment of such Claim, the applicable Reorganized Archdiocese or Reorganized Additional Debtor will pay each Allowed Administrative Trade Claim pursuant to the terms and conditions of the particular transaction giving rise to such Administrative Trade Claim; provided, however, that each Allowed Cure Claim will be paid in accordance with Section 10.1(c) of the Joint Plan.

**Section 2.4 DIP Credit Card Claim and Letters of Credit Claims against the Debtor.** Except to the extent that HWB agrees to less favorable treatment of the DIP Credit Card Claim or Letter of Credit Claims, the applicable Debtor or Reorganized Archdiocese will pay the DIP Credit Card Claim and Letters of Credit Claims pursuant to the terms and conditions of the documents that govern the same.

**Section 2.5 Priority Tax Claims against the Debtor and/or any Additional Debtor.** Except to the extent that Creditor holding an Allowed Priority Tax Claim against the Debtor and/or any Additional Debtors agrees to less favorable treatment of such Claim, the applicable Reorganized Archdiocese or Reorganized Additional Debtor will pay each Allowed Priority Tax Claim in full, in Cash, within fifteen (15) days from the later of (a) the Effective Date, and (b) the date such Claim becomes an Allowed Priority Tax Claim**.**

**Section 2.6 Elimination of Treatment for Certain Unclassified Claims.** To the extent the Debtor or Additional Debtors, as applicable, do not owe any amounts on the Effective Date for the DIP Credit Card Claim, Letters of Credit Claims, or Priority Tax Claims, the treatment set forth above will be deemed automatically eliminated from the Joint Plan.

**Section 2.7 U.S. Trustee Fees and Post-Confirmation Reports.** Within fifteen (15) days from the Effective Date, the Reorganized Archdiocese and Reorganized Additional Debtors will pay, in full, in Cash, any fees due and owing to the U.S. Trustee as of the Confirmation Date. On and after the Effective Date, the applicable Reorganized Archdiocese and Reorganized Additional Debtors will be responsible for (i) Filing any required Post-Confirmation Reports in accordance with the applicable U.S. Trustee guidelines or Order and (ii) paying quarterly fees due to the U.S. Trustee, until the entry of an applicable Final Decree. For the avoidance of doubt, the following will not constitute a disbursement within the meaning of 28 U.S.C. § 1930(a)(6): (a) any Settlement Trust Distribution, including any Settlement Trust Distribution to any Settlement Trust Beneficiary and/or (b) any compensation or expenses paid from the Settlement Trust, including to any Professional retained by the Settlement Trust.

## ARTICLE 3
## CLASSIFICATION, VOTING, AND ACCEPTANCE

Except for those Claims addressed in Article 2 of the Joint Plan, all Claims are placed in the Classes that are described in Articles 3 and 4 of the Joint Plan. A Claim is placed in a particular Class solely to the extent that the Claim falls within the description of that Class, and the portion of a Claim that does not fall within such description will be classified in another Class, to the extent that such portion falls within the description of such other Class. A Claim is also placed in a particular Class for the purpose of receiving Distributions or Settlement Trust Distributions pursuant to the Joint Plan solely to the extent that such Claim (a) is an Allowed Claim in that Class, and (b) has not been paid, released, or otherwise settled before the

Effective Date. There are no equity interests in the Debtor or Additional Debtors within the meaning of the Bankruptcy Code.

> **Section 3.1     Elimination of Vacant Classes and Subclasses**. Any Class that does not contain any Allowed Claims or any Claims that are temporarily Allowed for voting purposes under Bankruptcy Rule 3018 as of the date of commencement of the Confirmation Hearing will be eliminated from the Joint Plan for purposes of (a) voting to accept or reject the Joint Plan and (b) determining whether such Class has accepted or rejected the Joint Plan pursuant to section 1129(a)(8) of the Bankruptcy Code.

> **Section 3.2     Deemed Acceptance If No Votes Cast.** If no Creditor who is eligible to vote in a particular Class votes to accept or reject the Joint Plan, the Joint Plan will be deemed accepted by the Creditors in such Class.

> **Section 3.3     Acceptance by Impaired Classes.** An Impaired Class will have accepted the Joint Plan if, not counting the vote of any Creditor designated under section 1126(e) of the Bankruptcy Code, (a) the Creditors holding at least two-thirds (2/3) in dollar amount of the Allowed Claims that actually vote in such Class have voted to accept the Joint Plan, and (b) the Creditors holding more than one-half (1/2) in number of the Allowed Claims that actually vote in such Class have voted to accept the Joint Plan.

> **Section 3.4     Nonconsensual Confirmation of the Joint Plan.** The Debtor, the Additional Debtors, and the Creditors' Committee reserve the right to request Confirmation under section 1129(b) of the Bankruptcy Code with respect to any Impaired Class that has not accepted or is deemed to have rejected the Joint Plan pursuant to section 1126 of the Bankruptcy Code.

> **Section 3.5     Classification and Voting**. Below is a chart identifying Classes of Claims, a description of whether each Class is Impaired, and the voting rights of each Class:

| Class No. | Class Description | Impaired or Unimpaired | Voting Rights |
|---|---|---|---|
| 1 | **Other Priority Claims** (Against the Debtor and the Additional Debtors) | Unimpaired | No, deemed to accept |
| 2 | **Secured Claims** (Against the Debtor and the Additional Debtors) | Unimpaired | No, deemed to accept |
| 3 | **Known Abuse Claims** (Against the Debtor and the Additional Debtors) | Impaired | Yes |
| 4 | **Unknown Abuse Claims** (Against the Debtor and the Additional Debtors) | Impaired | Yes |
| 5 | **Non-Insurer Contribution Claims** (Against the Debtor and the Additional Debtors) | Impaired | No, deemed to reject |
| 6 | **Bond Claims** (Against the Debtor) | Impaired | Yes |
| 7 | **General Unsecured Claims and Unsecured Trade Claims—Debtor** (Against the Debtor) | Impaired | Yes |
| 8 | **Non-Abuse Personal Injury Claims--Debtor** (Against the Debtor) | Impaired | Yes |
| 9 | **Unsecured Trade Claims—Additional Debtors** (Against the Additional Debtors) | Unimpaired | No, deemed to accept |
| 10 | **Additional Debtors' Non-Trade Unsecured Claims— Additional Debtors** (Against the Additional Debtors) | Unimpaired | No, deemed to accept |

# ARTICLE 4
# TREATMENT OF CLASSIFIED CLAIMS

> **Section 4.1     Class 1 (Other Priority Claims).** Class 1 includes Other Priority Claims against the Debtor and/or the Additional Debtors.

4

(a)     *Treatment*. Except to the extent that the Creditor holding an Allowed Other Priority Claim against the Debtor and/or an applicable Additional Debtor agrees to less favorable treatment of such Claim, the Reorganized Archdiocese or applicable Additional Debtor will pay each Allowed Other Priority Claim against the Debtor or applicable Additional Debtor in full, in Cash, within fifteen (15) days from the later of (i) the Effective Date, and (ii) the date such Claim becomes an Allowed Other Priority Claim.

(b)     *Voting*. Because Other Priority Claims are Unimpaired by the Joint Plan, each Creditor holding an Other Priority Claim is presumed to have accepted the Joint Plan with respect to such Claim. No Creditor holding an Other Priority Claim, therefore, is entitled to vote to accept or reject the Joint Plan on account of such Claim.

**Section 4.2      Class 2 (Secured Claims).**   Class 2 consists of any Secured Claims against the Debtor and/or Additional Debtors. Although all Secured Claims have been placed in one Class for the purposes of nomenclature, each Secured Claim will be treated as being in a separate Subclass for all purposes, including for the purpose of receiving Distributions under the Joint Plan.

(a)     *Treatment*. Except to the extent that the Creditor holding an Allowed Secured Claim against the Debtor and/or an applicable Additional Debtor agrees to less favorable treatment of such Claim, each Creditor holding an Allowed Secured Claim against the applicable Debtor or Additional Debtor will receive, at the sole option of the applicable Reorganized Archdiocese or Reorganized Additional Debtor, one of the following in full and final satisfaction of, and in exchange for, such Allowed Secured Claim: (i) Cash equal to the full Allowed amount of such Claim; (ii) Reinstatement of such Claim; (iii) the return or abandonment to such Creditor of the Collateral that secures such Claim; or (iv) such other treatment as will render such Claim Unimpaired pursuant to section 1124 of the Bankruptcy Code.

(b)     *Voting*.  Because Secured Claims are Unimpaired by the Joint Plan, each Creditor holding a Secured Claim is presumed to have accepted the Joint Plan with respect to such Claim. No Creditor holding a Secured Claim, therefore, is entitled to vote to accept or reject the Joint Plan on account of such Claim.

**Section 4.3      Class 3 (Known Abuse Claims).**   Class 3 consists of the Known Abuse Claims against the Debtor and/or any Additional Debtors.

(a)     *Treatment*. Except to the extent that a Known Abuse Claimant against the Debtor and/or any Additional Debtors agrees to less favorable treatment of such Known Abuse Claim and except as otherwise provided in Section 12.14 of the Joint Plan regarding Non-Settling Insurers, each Known Abuse Claimant will, in full and final satisfaction, settlement, release, and discharge of its Known Abuse Claim against the Debtor and/or any Additional Debtors, receive such Settlement Trust Distributions as and to the extent provided in the Settlement Trust Documents. The Abuse Claims Reviewer's review or determination of a Known Abuse Claim will not affect the rights of a Non-Settling Insurer. Subject to the Debtor's and Additional Debtors' rights under the Bankruptcy Code, Non-Settling Insurers retain all coverage defenses under their Non-Settling Insurers' Policies and applicable non-bankruptcy law. Additionally:

(i)     The Reorganized Debtor and the Reorganized Additional Debtors will reasonably cooperate with any inquiries made by the Settlement Trustee and/or the Abuse Claims Reviewer regarding the administration and implementation of the Allocation Protocol.

(ii)    Any Known Abuse Claimant's Claim or Cause of Action for punitive or exemplary damages related to Abuse constitutes a Penalty Claim, is hereby Disallowed with respect to the Settlement Trust, and shall receive no

5

Settlement Trust Distribution or any other Distribution on account of such Claim or Cause of Action.

(b)     On and after the Effective Date, (i) no Abuse Claimant may challenge the merit, validity, or amount of any Known Abuse Claim, and (ii) any pending objections to a Known Abuse Claim will be deemed withdrawn. The Settlement Trustee shall succeed to the rights of the Creditors' Committee to object to Known Abuse Claims, and, as of the Effective Date, the Settlement Trust and the Settlement Trustee shall constitute the successors-in-interest to the Creditors' Committee for purposes of any objections to Known Abuse Claims, including any pending as of the Effective Date. Only the Settlement Trustee, a Non-Settling Insurer, and a Settling Insurer (but only to the extent set forth in Section 7.6) may object to a Known Abuse Claim. Neither the Debtor, the Reorganized Archdiocese, the Additional Debtors, the Reorganized Additional Debtors, or any other Entity besides the Settlement Trustee, a Non-Settling Insurer, or a Settling Insurer may object to a Known Abuse Claim. No decision regarding whether to object (or not object) to a Known Abuse Claim or whether to settle or otherwise dispose of any objection to a Known Abuse Claim will affect the rights or obligations of a Non-Settling Insurer.

(c)     *Channeling Injunction – Protected Parties and Settling Insurers*. Pursuant to the Injunctions set forth in Article 12 of the Joint Plan, each Known Abuse Claim against any Protected Party or any of the Settling Insurers will be permanently channeled to the Settlement Trust, and (subject to Section 12.14 of the Joint Plan regarding Non-Settling Insurers) such Known Abuse Claim will thereafter be asserted exclusively against the Settlement Trust and resolved in accordance with the Settlement Trust Documents. Known Abuse Claimants holding Channeled Claims are enjoined from prosecuting any pending, or Filing any future, litigation, Claims, or Causes of Action asserting such Channeled Claims against the Protected Parties or Settling Insurers. Additionally, such Known Abuse Claimants may not proceed in any manner against any Protected Parties or Settling Insurers in any forum whatsoever, including any state, federal, or non-U.S. court or any administrative or arbitral forum, and are required to pursue their Channeled Claims solely against the Settlement Trust as provided in the Settlement Trust Documents.

(d)     *Voting*. Each Known Abuse Claimant is entitled to vote to accept or reject the Joint Plan on account of such Claims.

**Section 4.4     Class 4 (Unknown Abuse Claims).** Class 4 consists of the Unknown Abuse Claims against the Debtor and/or any Additional Debtors.

(a)     *Treatment*. Except to the extent that an Unknown Abuse Claimant against the Debtor and/or any Additional Debtors agrees to less favorable treatment of such Unknown Abuse Claim <u>and</u> except as otherwise provided in Section 12.14 of the Joint Plan regarding Non-Settling Insurers, each Unknown Abuse Claimant will, in full and final satisfaction, settlement, release, and discharge of its Unknown Abuse Claim against the Debtor and/or any Additional Debtors, receive such Settlement Trust Distributions as and to the extent provided in the Settlement Trust Documents. The Abuse Claims Reviewer's review or determination of an Unknown Abuse Claim will not affect the rights of a Non-Settling Insurer. Subject to the Debtor's and Additional Debtors' rights under the Bankruptcy Code, Non-Settling Insurers retain all coverage defenses under their Non-Settling Insurers' Policies and applicable non-bankruptcy law. Additionally:

(i)     The Reorganized Debtor and the Reorganized Additional Debtors will reasonably cooperate with any inquiries made by the Settlement Trustee and/or the Abuse Claims Reviewer regarding the administration and implementation of the Allocation Protocol.

(ii)    Any Unknown Abuse Claimant's Claim or Cause of Action for punitive or exemplary damages related to Abuse constitutes a Penalty Claim, is

6

hereby Disallowed with respect to the Settlement Trust, and shall receive no Settlement Trust Distribution or any other Distribution on account of such Claim or Cause of Action.

(b) On and after the Effective Date, (i) no Abuse Claimant may challenge the merit, validity, or amount of any Unknown Abuse Claim, and (ii) any pending objections to any Unknown Abuse Claim will be deemed withdrawn. The Settlement Trustee shall succeed to the rights of the Creditors' Committee to object to Unknown Abuse Claims, and, as of the Effective Date, the Settlement Trust and the Settlement Trustee shall constitute the successors-in-interest to the Creditors' Committee for purposes of any objections to Unknown Abuse Claims, including any pending as of the Effective Date. The Settlement Trustee, a Non-Settling Insurer, and a Settling Insurer (but only to the extent set forth in Section 7.6) may object to an Unknown Abuse Claim. Neither the Debtor, the Reorganized Archdiocese, the Additional Debtors, the Reorganized Additional Debtors, or any other Entity besides the Settlement Trustee, a Non-Settling Insurer, or a Settling Insurer may object to an Unknown Abuse Claim. No decision regarding whether to object (or not object) to an Unknown Abuse Claim or whether to settle or otherwise dispose of any objection to an Unknown Abuse Claim will affect the rights or obligations of a Non-Settling Insurer.

(c) *Channeling Injunction – Protected Parties and Settling Insurers*. Pursuant to the Injunctions set forth in Article 12 of the Joint Plan, each Unknown Abuse Claim against any Protected Party or any of the Settling Insurers will be permanently channeled to the Settlement Trust, and (subject to Section 12.14 of the Joint Plan regarding Non-Settling Insurers), such Unknown Abuse Claim will thereafter be asserted exclusively against the Settlement Trust and resolved in accordance with the Settlement Trust Documents. Unknown Abuse Claimants holding Channeled Claims are enjoined from prosecuting any pending, or Filing any future, litigation, Claims, or Causes of Action asserting such Channeled Claims against the Protected Parties or Settling Insurers. Additionally, such Unknown Abuse Claimants may not proceed in any manner against any Protected Parties or Settling Insurers in any forum whatsoever, including any state, federal, or non-U.S. court or any administrative or arbitral forum, and are required to pursue their Channeled Claims solely against the Settlement Trust as provided in the Settlement Trust Documents.

(d) *Voting*. The Unknown Abuse Claims Representative is entitled to vote to accept or reject the Joint Plan on account of the Unknown Abuse Claims against the Debtor or any Additional Debtors, as the representative of the Unknown Abuse Claimants.

**Section 4.5 Class 5 (Non-Insurer Contribution Claims).** Class 5 consists of the Non-Insurer Contribution Claims against the Debtor and/or any Additional Debtors.

(a) *Treatment*. In accordance with section 502(e)(1) of the Bankruptcy Code, each Non-Insurer Contribution Claim against the Debtor and/or any Additional Debtors will be extinguished as of the Effective Date. Additionally, in exchange for the Channeling Injunction provided in the Joint Plan, as of the Effective Date, the Non-Insurer Contribution Claims of the Non-Debtor Catholic Entities who hold Non-Insurer Contribution Claims against the Debtor and/or any Additional Debtors are hereby released and waived. Class 5 Claims will receive no Distribution or Settlement Trust Distribution.

(b) *Voting*. Creditors holding Non-Insurer Contribution Claims against the Debtor and/or any Additional Debtors are deemed to have rejected the Joint Plan under section 1126(g) of the Bankruptcy Code because no Distribution will be made to such Creditors on account of such Claims. Therefore, no Creditor holding a Non-Insurer Contribution Claim against the Debtor or any Additional Debtors is entitled to vote on the Joint Plan on account of such Non-Insurer Contribution Claim.

**Section 4.6** **Class 6 (Bond Claims).** Class 6 consists of the Bond Claims against the Debtor.

(a) *Treatment of Post-Petition Bond Payments.* On the Effective Date, the Post-Petition Bond Payments will be treated as a payment under the Plan in calculating whether the Plan meets the requirements of section 1129(a)(7) of the Bankruptcy Code.

(b) *Amount of Bond Claim.* On the Effective Date (i) the principal amount of the Bond Claims shall be reduced, without prepayment premium or penalty, by the total Post-Petition Bond Payments (totaling <u>$9,302,062.50</u>) received from the Debtor, with such Post-Petition Bond Payments treated as payments of principal as provided in Section 4.6(a), (ii) the Bond Trustee's Claim and the Bond Trustee's Professional Fee Claim will receive no recovery under this Joint Plan and will be valued for purposes of this Joint Plan at $0.00, and (iii) any portion of the Bond Claims representing Claims for unmatured, post-petition interest will receive no recovery and will be Disallowed pursuant to Bankruptcy Code § 502(b)(2). After the application of such Post-Petition Bond Payments, the determination that the Bond Trustee's Claim and the Bond Trustee's Professional Fee Claim shall receive no recovery, and the Disallowance of any Claim for unmatured, post-petition interest, the Bond Claims will be Allowed, collectively, in the reduced amount of **<u>$28,667,937.50</u>**.

(c) *Treatment.* Beginning on the Effective Date, and except to the extent that a Creditor holding an Allowed Bond Claim agrees to less favorable treatment, each Creditor holding an Allowed Bond Claim shall receive, in full and final satisfaction, compromise, settlement, and release of, and in exchange for, such Allowed Bond Claim, its pro rata share of ten (10) annual Cash payments based on the following formula: The product of (i) a fraction with a numerator equal to the Allowed Bond Claims and a denominator equal to all Unsecured Claims against the Debtor that would be paid in the hypothetical chapter 7 case described in the Liquidation Analysis and (ii) the amount available to be distributed to all Unsecured Claims against the Debtor in the hypothetical chapter 7 case described in the Liquidation Analysis. For example, if (i) the Allowed Bond Claims were $29 million, (ii) the total Unsecured Claims (including the Bond Claims) in the Liquidation Analysis were $1,429,299,271, and (iii) the total assets available for distribution to Creditors holding Unsecured Claims in the Liquidation Analysis were $209,230,813, then the Allowed Bond Claims would receive the present value of 2.02% of the $209,230,813 (i.e., a present value of $4,245,222.61). The present value amount determined by the preceding formula shall be amortized over ten (10) years and paying an 8.5% interest rate. Additionally, such Creditor's pro rata share of the Cash payments set forth above may be reduced by the application of amounts payable to the Bond Trustee in accordance with the Amended Bond Documents. The treatment of the Bond Claims outlined in this Section 4.6 will be memorialized in the Amended Bond Documents, which Amended Bond Documents shall (i) substantially conform to this Joint Plan as set forth in Plan Supplement 4.6 and (ii) be executed and delivered to the Bond Trustee by the Archdiocese or the Reorganized Archdiocese on or before the Effective Date.

(d) *Voting.* Because the Bond Claims against the Debtor are Impaired by the Joint Plan, Creditors holding Bond Claims are entitled to vote to accept or reject the Joint Plan on account of such Claims.

**Section 4.7** **Class 7 (General Unsecured Claims and Unsecured Trade Claims—Debtor)**. Class 7 consists of General Unsecured Claims and Unsecured Trade Claims against the Debtor.

(a) *Treatment.*

(i) *Regular Claims Treatment.* Except to the extent that a Creditor holding an Allowed General Unsecured Claim or an Allowed Unsecured Trade Claims agrees to less favorable treatment, each Creditor holding an Allowed General Unsecured Claim or an Allowed Unsecured Trade Claim

8

that is not a Convenience Claim, will receive Cash from the Reorganized Archdiocese equal to one hundred percent (100%) of the principal amount of such Claim within one year after the later of (i) the Effective Date and (ii) the date such Claim becomes an Allowed Claim.  For the avoidance of doubt, the Debtor shall retain the right to object to any General Unsecured Claim or Unsecured Trade Claim that is not a Convenience Claim, after the Effective Date.

        **(ii)**    *Convenience Class Election and Treatment*. Every Creditor holding a General Unsecured Claim or an Unsecured Trade Claim against the Debtor may make the Convenience Class Election if the amount of such Creditor's General Unsecured Claim or Unsecured Trade Claim exceeds $50,000. A Creditor may make a Convenience Class Election by submitting a properly completed Ballot to the Claims and Voting Agent by the Voting Deadline. Upon making a Convenience Class Election, the Creditor holding such General Unsecured Claim or Unsecured Trade Claim affirmatively and irrevocably agrees to: (i) waive its right to treatment of such Claim under Section 4.7(a)(i), (ii) receive treatment of such Claim as a Convenience Claim, and (iii) vote to accept the Joint Plan as a Creditor holding a Convenience Claim in Class 7. Except to the extent that a Creditor holding an Allowed Convenience Claim agrees to less favorable treatment, each Creditor holding an Allowed Convenience Claim will receive Cash from the Reorganized Archdiocese equal to the lesser of (i) $50,000 or (ii) the Allowed Amount of such Convenience Claim within fifteen (15) days after the later of (i) the Effective Date and (ii) the date such Claim becomes an Allowed Claim.

        (b)    *Voting*. Because the General Unsecured Claims and Unsecured Trade Claims against the Debtor are Impaired by the Joint Plan, each Creditor holding a General Unsecured Claim or an Unsecured Trade Claim against the Debtor is entitled to vote to accept or reject the Joint Plan on account of such Claim. Any Creditor that properly makes a Convenience Class Election with respect to its General Unsecured Claim or Unsecured Trade Claim is deemed to vote to accept the Joint Plan as a Creditor holding a Convenience Claim in Class 7.

    **Section 4.8**    **Class 8 (Non-Abuse Personal Injury Claims—Debtor).** Class 8 consists of the Non-Abuse Personal Injury Claims against the Debtor.

        (a)    *Treatment*.  On the Effective Date, Creditors holding Non-Abuse Personal Injury Claims against the Debtor may litigate such Non-Abuse Personal Injury Claims against the Reorganized Archdiocese (including by commencing, or recommencing, litigation in any court exercising competent jurisdiction), and such litigation will not be stayed or enjoined, whether by the Joint Plan or any provision of the Bankruptcy Code. However, such Creditors may only recover on account of such Allowed Non-Abuse Personal Injury Claims as follows: (i) first, from such Cash, funds, or other property as may be available under the Preserved Coverage or any other applicable insurance policy or policies, if any, until occurrence limits applicable to the Non-Abuse Personal Injury Claim under such insurance policy or policies are fully exhausted and (ii) second, from the Reorganized Archdiocese in an amount equal to the balance of such Allowed Non-Abuse Personal Injury Claim still remaining (if any) after such Creditor recovers all Cash, funds, or other property from such applicable insurance policy or policies (which payment the Reorganized Archdiocese shall make to the Creditor in Cash by no later than fifteen (15) days after the Creditor sends written notification to the Reorganized Archdiocese of the exhaustion of such applicable insurance policy or policies). Until such occurrence limits are exhausted, a Non-Abuse Personal

Injury Claimant may not recover (and is hereby enjoined from taking any action to collect or otherwise recover) such Non-Abuse Personal Injury Claim from the Reorganized Archdiocese. Nothing in the Joint Plan will enlarge the rights or Claims of Creditors holding Non-Abuse Personal Injury Claims or limit or waive any defenses to such Claims. Nothing in the Joint Plan affects, diminishes, or impairs any rights a Creditor holding a Non-Abuse Personal Injury Claim may have against Entities other than the Debtor or the Reorganized Archdiocese, including such other Entities' joint and several or extra-contractual liability, if any, for such Non-Abuse Personal Injury Claim.

(b)      *Voting*.  Because the Non-Abuse Personal Injury Claims against the Debtor are Impaired by the Joint Plan, any Creditor holding a Class 8 Non-Abuse Personal Injury Claim against the Debtor is entitled to vote to accept or reject the Joint Plan on account of such Claim.

(c)      *Reservation of Rights With Respect to Non-Abuse Personal Injury Claims.* Subject in all respects to the Insurance Settlement Agreements, including the releases therein (i.e., solely to the extent of Preserved Coverage, if any, with respect to any Settling Insurers' Policies), the insurance rights of the Debtor or other Covered Parties that pertain to Non-Abuse Personal Injury Claims are expressly reserved for each Covered Party, as applicable, and the Plan Documents will not, and will not be deemed to, transfer, grant, or assign such insurance rights to the Settlement Trust. For the avoidance of doubt, the insurance rights of any Entity that is not a Covered Party are expressly reserved for such Entity and the Plan Documents will not, and will not be deemed to, transfer, grant, or assign such rights to the Settlement Trust.

**Section 4.9      Class 9 (Unsecured Trade Claims—Additional Debtors)**. Class 9 consists of Unsecured Trade Claims against the Additional Debtors.

(a)      *Treatment*. Except to the extent that the Creditor holding an Allowed Unsecured Trade Claim against an applicable Additional Debtor agrees to less favorable treatment of such Claim, the applicable Reorganized Additional Debtor will pay each Allowed Unsecured Trade Claim of such Reorganized Additional Debtor in accordance with the terms and conditions otherwise governing such Allowed Unsecured Trade Claims so that such Allowed Unsecured Trade Claims are rendered Unimpaired by the Joint Plan and pass through after the Effective Date for all purposes as if the Additional Debtors' Chapter 11 Cases had never been filed.

(b)      *Voting*. Because the Allowed Unsecured Trade Claims against the Additional Debtors are Unimpaired by the Joint Plan, each Creditor holding an Unsecured Trade Claim against an Additional Debtor (or Additional Debtors) is presumed to have accepted the Joint Plan with respect to such Claim. Therefore, no Creditor holding such a Class 9 Unsecured Trade Claim against the Additional Debtors is entitled to vote to accept or reject the Joint Plan on account of such Claim.

**Section 4.10      Class 10 (Additional Debtors' Non-Trade Unsecured Claims—Additional Debtors)**. Class 10 consists of all Additional Debtors' Non-Trade Unsecured Claims against any Additional Debtors.

(a)      *Treatment*.  Subject to the requirement that all Additional Debtors' Non-Trade Unsecured Claims (other than Previously Asserted Claims) File Proofs of Claim for such Additional Debtors' Non-Trade Unsecured Claims in accordance with Section 6.12 of this Joint Plan, each holder of an Allowed Additional Debtors' Non-Trade Unsecured Claim shall retain all rights possessed under such Allowed Additional Debtors' Non-Trade Unsecured Claims and under non-bankruptcy law so that such Additional Debtors' Non-Trade Unsecured Claims are rendered Unimpaired by the Joint Plan and pass through after the Effective Date for all purposes as if the Additional Debtors' Chapter 11 Cases had never been filed.

10

(b)  *Voting*. Because the Allowed Additional Debtors' Non-Trade Unsecured Claims against the Additional Debtors are Unimpaired by the Joint Plan, each Creditor holding an Additional Debtors' Non-Trade Unsecured Claim against an Additional Debtor (or Additional Debtors) is presumed to have accepted the Joint Plan with respect to such Claim. Therefore, no Creditor holding such a Class 10 General Unsecured Claim against the Additional Debtors is entitled to vote to accept or reject the Joint Plan on account of such Claim.

(c)  *Reservation of Rights with Respect to Non-Abuse Personal Injury Claims.* Subject in all respects to the Insurance Settlement Agreements, including the releases therein (i.e., solely to the extent of Preserved Coverage, if any, with respect to any Settling Insurers' Policies), the insurance rights of the Additional Debtors or other Covered Parties that pertain to Non-Abuse Personal Injury Claims of the Additional Debtors are expressly reserved for each Covered Party, as applicable, and the Plan Documents will not, and will not be deemed to, transfer, grant, or assign such insurance rights to the Settlement Trust. For the avoidance of doubt, the insurance rights of any Entity that is not a Covered Party are expressly reserved for such Entity and the Plan Documents will not, and will not be deemed to, transfer, grant, or assign such rights to the Settlement Trust.

## ARTICLE 5
## MEANS FOR IMPLEMENTATION AND FUNDING OF THE JOINT PLAN

**Section 5.1    Creation of the Settlement Trust for the Benefit of Abuse Claimants.** In accordance with Article 6 of the Joint Plan, on or before the Effective Date, the Settlement Trust will be established for the purposes of (a) assuming responsibility for the liabilities of the Debtor and Additional Debtors for the Abuse Claims and (b) receiving, liquidating, and distributing Settlement Trust Assets in accordance with the Joint Plan and Settlement Trust Documents. The Settlement Trust Agreement is attached as Plan Exhibit D-1, and the Allocation Protocol is attached as Plan Exhibit D-2.

**Section 5.2    Plan Funding Entities**. As more fully set forth in Section 5.3, the Debtor, the Additional Debtors, the Contributing Non-Debtor Catholic Entities, and the Settling Insurers shall fund the Settlement Trust. The Debtor shall fund its portion of the Debtor and Additional Debtor Settlement Consideration from the Debtor's Assets directly to the Settlement Trust. The Settling Insurers shall fund the Settling Insurers' Settlement Consideration as outlined in the relevant Insurance Settlement Agreement. The Additional Debtors and the Contributing Non-Debtor Catholic Entities shall collectively contribute their portion of the Debtor and Additional Debtor Settlement Consideration to 1793 Group, a newly formed Louisiana non-profit corporation, which will transfer such consideration to the Settlement Trust upon the Effective Date. Additionally, 1793 Group shall also receive, on behalf of all the Contributing Non-Debtor Catholic Entities, the Additional Debtors, or the Reorganized Additional Debtors certain proceeds from the sale of the Affordable Housing Facilities to which the Additional Debtors may be entitled under Section 5.3(a)(v). Finally, 1793 Group will also make on behalf of the Additional Debtors or the Reorganized Additional Debtors any and all payments, if any, that the Additional Debtors or the Reorganized Additional Debtors may be obligated to make to the Debtor or the Reorganized Archdiocese under Section 12.10 (The Debtor's Settlement of Certain Claims).

**Section 5.3    Settlement Consideration with respect to the Abuse Claims**. From and after the Effective Date, any Cash, proceeds, or other property received by the Settlement Trust will constitute Settlement Trust Assets.

(a)  *The Debtor and Additional Debtor Settlement Consideration*. The consideration provided by the Debtor and Additional Debtor in connection with this Joint Plan (the "**Debtor and Additional Debtor Settlement Consideration**") consists of the following:

(i)  *Cash on the Effective Date.* As a condition to the occurrence of the Effective Date, the Debtor (directly) and the Additional Debtors and Non-

11

Debtor Catholic Entities (indirectly through 1793 Group) will transfer Cash in the collective amount of $130,000,000 to the Settlement Trust; provided further that, prior to the Effective Date, the Debtor (directly) and the Additional Debtors and Non-Debtor Catholic Entities (indirectly through 1793 Group) may transfer Cash in the collective amount of $130,000,000 into the Affordable Housing Facilities Sale Escrow Account to be funded to the Settlement Trust upon the occurrence of the Effective Date.

(ii) *First Settlement Trust Promissory Note.* On the Effective Date, the Debtor and Additional Debtors will execute and deliver to the Settlement Trust the First Settlement Trust Promissory Note in the principal amount of $20 million. The First Settlement Trust Promissory Note will mature on July 15, 2026. The First Settlement Trust Promissory Note will be secured by the First Settlement Trust Promissory Note Letter of Credit, issued in the amount of the First Settlement Trust Promissory Note not to exceed $20 million by a federally insured bank or financial institution acceptable to the Creditors' Committee.[2] The First Settlement Trust Promissory Note Letter of Credit shall not be delivered until March 16, 2026 to the extent that the First Settlement Trust Promissory Note has not yet been paid. The First Settlement Trust Promissory Note Letter of Credit shall not be called until July 15, 2026 to the extent that the First Settlement Trust Promissory Note has not yet been paid on or before July 15, 2026. A copy of the First Settlement Trust Promissory Note and the First Settlement Trust Promissory Note Letter of Credit is attached as Plan Supplement 5.3(a)(ii).

(iii) *Sale of Affordable Housing Facilities.* The Debtor, Additional Debtors, and Creditors' Committee have selected NEWMARK Affordable Housing Advisors to act as the Affordable Housing Facilities Broker to market the Affordable Housing Facilities for sale. The Debtor, the Additional Debtors, and the Affordable Housing Entities have selected [____•____][3] (the "**Affordable Housing Facilities Buyer**") as the buyer of the Affordable Housing Facilities. The Creditors' Committee[4] shall be a consulting party with regards to the Affordable Housing Facilities Buyer's purchase of the Affordable Housing Facilities, and the terms and conditions of such purchase shall be set forth in a purchase and sale

---

[2] The Debtor and the Additional Debtors may, in their discretion, substitute the First Settlement Trust Promissory Note Letter of Credit or any portion thereof with Cash distributed to the Creditors' Committee to be held in escrow in the Affordable Housing Facilities Sale Escrow Account pending the Effective Date and transfer to the Settlement Trust. Further, the Debtor and the Additional Debtors may, in their discretion, substitute the First Settlement Trust Promissory Note Letter of Credit with already-paid portions of the Second Settlement Trust Promissory Note Letter of Credit. For clarification and by way of example, if before March 31, 2026, the Settlement Trust has received $47 million from CHI sale proceeds, then the amount callable on the $50 million letter of credit will be $3 million. If the Settlement Trust has received $50 million from CHI sale proceeds, then the $50 million letter of credit would be canceled. If the Settlement Trust by March 16, 2026 received $54 million from CHI sale proceeds, then the face amount of the $20 million First Settlement Trust Promissory Note Letter of Credit would be $16 million.

[3] To be provided.

[4] After the Effective Date, the Settlement Trustee shall be substituted for the Creditors' Committee and shall succeed to the Creditors' Committee's consultation rights under this section.

agreement that shall otherwise conform to the requirements of this Section 5.3(a) of the Joint Plan.

(iv)     *The Second Settlement Trust Promissory Note.* By no later than five (5) Business Days after the Confirmation Date, the Debtor and the Additional Debtors will execute the Second Settlement Trust Promissory Note in the principal amount of $50 million and deliver it to the Creditors' Committee (or to the Settlement Trust if the Effective Date has already occurred). The Second Settlement Trust Promissory Note shall be non-interest bearing and shall mature on March 31, 2026. The Second Settlement Trust Promissory Note shall be secured by the Second Settlement Trust Promissory Note Letter of Credit, a $50 million irrevocable letter of credit issued by a federally insured bank or financial institution acceptable to the Creditors' Committee.[5] Copies of the Second Settlement Trust Promissory Note and the Second Settlement Trust Promissory Note Letter of Credit are attached as Plan Supplement 5.3(a)(iv).

(v)     *Affordable Housing Facilities Sale Proceeds.* If the sale of the Affordable Housing Facilities closes before the occurrence of the Effective Date, the Affordable Housing Facilities Sale Escrow Account shall be funded, at closing, from the proceeds of such sale in the amounts of both the First Settlement Trust Promissory Note and the Second Settlement Trust Promissory Note, in accordance with the priority of payments set forth in this section. Following the Effective Date, all funds in the Affordable Housing Facilities Sale Escrow Account shall be immediately deposited into the Settlement Trust. At the closing of the sale of the Affordable Housing Facilities, whether such closing occurs before or after the occurrence of the Effective Date, the net proceeds from the sale of the Affordable Housing Facilities shall be applied in the following order of payment priority:

(a)  If the Second Settlement Trust Promissory Note Letter of Credit has not yet been called, the first $50 million of proceeds shall be paid to the Settlement Trust (or into the Affordable Housing Facilities Sale Escrow Account, as the case may be) to satisfy the Second Settlement Trust Promissory Note and release the Second Settlement Trust Promissory Note Letter of Credit (which Second Settlement Trust Promissory Note Letter of Credit shall be released upon satisfaction of the Second Settlement Trust Promissory Note). If the Second Settlement Trust Promissory Note Letter of Credit has already been called and the Second Settlement Trust Promissory Note thereby released, the first $50 million shall be paid to the Additional Debtors.

(b)  If the Effective Date has occurred, the next $20 million will be paid to the Settlement Trust to satisfy the First Settlement Trust Promissory Note. If the Effective Date has not occurred, the next $20

---

[5] The Debtor and the Additional Debtors may, in their discretion, substitute the Second Settlement Trust Promissory Note Letter of Credit or any portion thereof with Cash distributed to the Creditors' Committee to be held in escrow in the Affordable Housing Facilities Sale Escrow Account pending the Effective Date and transfer to the Settlement Trust.

13

million will be paid into the Affordable Housing Facilities Sale Escrow Account.

(c) Any net proceeds exceeding $70 million shall be paid to the Additional Debtors.

(vi) *Calling the Second Settlement Trust Promissory Note Letter of Credit*. If the sale of the Affordable Housing Facilities has not closed as of the Effective Date, then

(a) If the Effective Date has not occurred by March 31, 2026, the Creditors' Committee shall call the Second Settlement Trust Promissory Note Letter of Credit on April 1, 2026 (or the next, succeeding Business Day) and shall immediately fund the $50 million it receives from calling the Second Settlement Trust Promissory Note Letter of Credit into the Affordable Housing Facilities Settlement Trust Escrow Account and shall release the Second Settlement Trust Promissory Note.

(b) If the Effective Date has occurred on or before March 31, 2026, the Settlement Trustee shall call the Second Settlement Trust Promissory Note Letter of Credit on April 1, 2026 (or the next, succeeding Business Day) and shall immediately fund the $50 million he receives from calling the Second Settlement Trust Promissory Note Letter of Credit into the Settlement Trust and shall release the Second Settlement Trust Promissory Note.

(vii) *Affordable Housing Facilities Sale Escrow Account*. If the Affordable Housing Facilities Sale Escrow Account is established, the Affordable Housing Facilities Sale Escrow Account funds shall remain in the Affordable Housing Facilities Sale Escrow Account until: (a) the Confirmation Order has become a Final Order; (b) an appellate court has entered an Order reversing the Confirmation Order and such Order has become a Final Order; or (c) until such time as the Debtor, the Additional Debtors, the Creditors' Committee, and Certain Abuse Survivors' Counsel shall otherwise agree to in writing. If the Confirmation Order is affirmed by a Final Order, the amounts in the Affordable Housing Facilities Sale Escrow Account shall be immediately deposited in the Settlement Trust upon the occurrence of the Effective Date. If the Confirmation Order is reversed by a Final Order, the amounts in the Affordable Housing Facilities Sale Escrow Account shall be returned to the Debtor. A copy of the Affordable Housing Facilities Sale Escrow Agreement is attached as Plan Supplement 5.3(a)(vii).

(viii) *Settlement Trust Guarantee*. This mechanism ensures the Settlement Trust receives approximately $230 million, comprised of:

- $130 million in cash from the Debtor and the Additional Debtors;

- $20 million from the First Settlement Trust Promissory Note secured by the First Settlement Trust Promissory Note Letter of Credit;

14

- $50 million from the Second Settlement Trust Promissory Note secured by the Second Settlement Trust Promissory Note Letter of Credit; and

- Approximately $30 million from the Settling Insurers ($29,275,000) in the form of the Settling Insurers' Settlement Consideration.

(ix) *Non-Settling Insurance Rights Transfer.* On the Effective Date, the Non-Settling Insurance Rights Transfer to the Settlement Trust will become effective, as set forth in Section 7.2 of this Joint Plan.

(x) *Additional Plan Consideration.* On the Effective Date, the Debtor and the Additional Debtors will provide the Additional Plan Consideration.

(b) *The Settling Insurers' Settlement Consideration.* In accordance with the respective Insurance Settlement Agreements, the Settling Insurers will transfer to the Settlement Trust or Escrow Agent certain amounts as follows: (i) SPARTA, in the amount of $21,000,000;[6] (ii) U.S. Fire/International, in the amount of $5,000,000; (iii) Catholic Mutual, in the amount of $2,000,000; (iv) Puritan, in the amount of $85,000; (v) National Union, in the amount of $290,000; and (vi) Twin City, in the amount of $900,000 (collectively, the "**Settling Insurers' Settlement Consideration**"). The Settling Insurers' Policies are listed on Plan Supplement 7.1(f), and the Insurance Settlement Agreements are attached as Plan Supplement 7.1(a).

**Section 5.4** **Non-Monetary Plan Provisions**. Subject to the occurrence of the Effective Date, the Debtor, the Reorganized Archdiocese, the Additional Debtors, the Reorganized Additional Debtors, and the Non-Debtor Catholic Entities have agreed to undertake the Non-Monetary Plan Provisions (Plan Exhibit E—*The Roman Catholic Church of the Archdiocese of New Orleans' Non-Monetary Plan Provisions to Foster Child Safety and Prevent Child Sexual Abuse*).

**Section 5.5** **Settlement Trust Distributions.** Abuse Claimants will receive Settlement Trust Distributions on account of their Claims in accordance with the Settlement Trust Documents. **For the avoidance of doubt, Abuse Claimants will not receive any portion of the Settling Insurers' Settlement Consideration without having signed an Abuse Claim Release and Certification that releases all Claims against the Settling Insurers.**

**Section 5.6** **Distributions to Creditors Holding Allowed Non-Abuse Claims.** The Debtor or Reorganized Archdiocese, or the Additional Debtors, the Reorganized Additional Debtors, or the 1793 Group (as the case may be) will serve as the source of funds to make Distributions to Creditors holding Allowed Non-Abuse Claims against the Debtor or the Additional Debtors, in accordance with Sections 2.1 through 2.7 and Sections 4.1, 4.2, 4.6, 4.7, 4.8, 4.9, and 4.10 of the Joint Plan.

**Section 5.7** **Continued Corporate Existence and Vesting of Assets.** As of the Effective Date: (a) the Archdiocese will continue, as the Reorganized Archdiocese, to exist as a legal entity, with all of the powers of such legal entity under applicable law and without prejudice to any right to alter or terminate such existence (by merger, dissolution or otherwise) under applicable law; (b) each Additional Debtor will continue, as a Reorganized Additional Debtor, to exist as a legal entity, with all of the powers of such legal entity under applicable law and without prejudice to any right to alter or terminate such existence (by

---

[6] SPARTA's contribution of $21,000,000 and status as a Settling Insurer is contingent on SPARTA providing financial assurance acceptable to the Creditors' Committee in the Creditors' Committee's discretion by the commencement of the Confirmation Hearing. If SPARTA fails to provide such financial assurance, SPARTA will become a Non-Settling Insurer, and litigation rights will be preserved against SPARTA and any insurance guarantee fund, should SPARTA trigger guarantee fund coverage.

merger, dissolution or otherwise) under applicable law, and (c) property of the respective Estates, and any property acquired by the applicable Debtor, Reorganized Archdiocese, Additional Debtor, or Reorganized Additional Debtor will vest in the applicable Reorganized Archdiocese or Reorganized Additional Debtor free and clear of all Claims, Liens, charges, and other interests, except as expressly provided in this Joint Plan. Except as otherwise provided by this Joint Plan (such as, for a non-exclusive example, the restrictions imposed under Section 5.3 on the marketing and sale of the Affordable Housing Facilities and the disposition of any sales proceeds therefrom), the Reorganized Archdiocese and Reorganized Additional Debtors may, on and after the Effective Date, operate, use, acquire, and dispose of property, and compromise or settle any Non-Abuse Claim, without supervision or approval by the Bankruptcy Court, free of any restrictions of the Bankruptcy Code or Bankruptcy Rules. On and after the Effective Date, the Archdiocese and the Additional Debtors will continue to operate in accordance with the principles of their respective missions, Canon Law, and applicable laws.

**Section 5.8    Officers and Directors after the Effective Date.**

(a)    *The Reorganized Archdiocese.* In accordance with section 1129(a)(5) of the Bankruptcy Code, Plan Supplement 5.7(a) discloses the identities and affiliations of the Entities proposed to serve as directors and officers of the Reorganized Archdiocese on and after the Effective Date.

(b)    *The Reorganized Additional Debtors.* In accordance with section 1129(a)(5) of the Bankruptcy Code, Plan Supplement 5.7(b) discloses the identities and affiliations of the Entities proposed to serve as directors and officers of the Reorganized Additional Debtors on and after the Effective Date.

**Section 5.9    Further Authorization.** The Reorganized Archdiocese and Reorganized Additional Debtors will be entitled to seek such Orders, judgments, injunctions, rulings, and other assistance as each deems necessary to implement the intentions and purposes, and to give full effect to the provisions, of the Joint Plan.

**Section 5.10    Appointment of Unknown Abuse Claims Representative—Unknown Abuse Claims of Additional Debtors.** On the Effective Date, Michael R. Hogan, who is the Unknown Abuse Claims Representative for the Debtor and the Reorganized Archdiocese, shall be appointed as the legal representative of all Abuse Claimants holding Unknown Abuse Claims against the Additional Debtors, and the Unknown Abuse Claims Representative Appointment Order shall be amended to provide that Michael R. Hogan is the Unknown Abuse Claims Representative for all Abuse Claimants holding Unknown Abuse Claims against both the Reorganized Archdiocese and the Reorganized Additional Debtors. Furthermore, the Debtor, in addition to satisfying its obligations under Section 5.3 of this Joint Plan with respect to the Debtor and Additional Debtor Settlement Consideration, shall pay additional Cash to the Settlement Trust up to a maximum amount of $1,500,000 on account of an Unknown Abuse Claim (or Unknown Abuse Claims). The Debtor shall pay such additional amount by no later than sixty (60) days after receiving a written request for payment of such amount from the Unknown Claims Representative.

## ARTICLE 6

## THE SETTLEMENT TRUST AND RELATED MATTERS

**Section 6.1    Creation of the Settlement Trust and Assignment and Assumption of Channeled Claims.**

(a)    On the Effective Date, the Settlement Trust will be established in accordance with the Settlement Trust Documents. The Settlement Trust is intended to qualify as a "Designated" or "Qualified Settlement Fund" pursuant to Section 468B of the Internal Revenue Code and the Treasury Regulations promulgated thereunder. The Archdiocese is the "transferor" within the meaning of Treasury Regulation Section 1.468B-1(d)(1). The Settlement Trustee will be classified

16

as the "administrator" within the meaning of Treasury Regulation Section 1.468B-2(k)(3). The Settlement Trust Documents are incorporated herein by reference.

(b)      On the Effective Date, the liability of the Debtor, Additional Debtors, and Settling Insurers for, and obligation to pay, Abuse Claims will become the responsibility of the Settlement Trust. Abuse Claims will be paid by the Settlement Trust from the Settlement Trust Assets in accordance with the Settlement Trust Documents. Additionally, as of the Effective Date, the transfer to, vesting in, and assumption by the Settlement Trust of the Settlement Trust Assets as contemplated by the Joint Plan will discharge all obligations and liabilities of and bar any recovery or action against the Protected Parties and Settling Insurers for or in respect of all Channeled Claims. The Confirmation Order will provide for such discharge.

(c)      The Settlement Trust will have no liability or responsibility for Non-Abuse Claims, and Creditors holding Non-Abuse Claims will have no recourse to the Settlement Trust or Settlement Trust Assets with respect to such Claims.

**Section 6.2      Vesting of Settlement Trust Assets**. As of the Effective Date, title to all rights and interests in the Settlement Trust Assets will be free and clear of any and all Liens, Claims, or interests of any kind in or on such property.

**Section 6.3      Appointment of the Settlement Trustee.** As of the Effective Date, the Settlement Trustee will be Donald C. Massey; provided, however, the Settlement Trustee may (a) act in accordance with the terms of the Settlement Trust Agreement (Plan Exhibit D-1) from such earlier date as authorized by the Debtor, Additional Debtors, and Creditors' Committee, and (b) seek compensation for such services as permitted by the Joint Plan and Settlement Trust Documents. Plan Supplement 6.3 includes appropriate disclosures of the Settlement Trustee.

**Section 6.4      The Settlement Trust Advisory Committee.** As set forth in the Settlement Trust Agreement, the Settlement Trust Advisory Committee will be appointed on the Effective Date and shall have the duties, functions, rights, and obligations described in the Settlement Trust Agreement. The initial Settlement Trust Advisory Committee will consist of five (5) members, who will be entitled to reimbursement of expenses for their service to the extent set forth in the Settlement Trust Agreement.

**Section 6.5      The Abuse Claims Reviewer and the Allocation Protocol.** As of the Effective Date, the Abuse Claims Reviewer will be Richard Arsenault. Plan Supplement 6.5 includes appropriate disclosures of the Abuse Claims Reviewer, including the Abuse Claims' Reviewer's compensation (which shall be paid by the applicable Debtor, Reorganized Archdiocese, Additional Debtors, and/or Reorganized Additional Debtors). The Abuse Claims Reviewer will have the duties, functions, rights, and obligations described in the Settlement Trust Agreement and Allocation Protocol (Plan Exhibit D-2).

**Section 6.6      Medicare Reimbursement and Reporting Obligations**.

(a)      The Settlement Trust will register as a "Responsible Reporting Entity" under the reporting provisions of MMSEA. The Settlement Trust will confirm whether an Abuse Claimant holding an Abuse Claim that occurred after December 5, 1980 is enrolled in Medicare Parts A and B (fee-for-service), Part C (Medicare Advantage), or Medicare Part D (drug coverage). This includes implementing an appropriate process to gather the necessary information for querying CMS on such determination, including the claimant's first and last name, date of birth, gender, address, and social security number or health insurance claim number. The Settlement Trust will timely submit all reports required under MMSEA because of any Abuse Claim that occurred after December 5, 1980. The Settlement Trust, as a Responsible Reporting Entity, will follow all applicable guidance published by CMS and/or any other agency or successor entity charged with responsibility for tracking, assessing, or receiving reports made under MMSEA to determine whether, and, if so, how, to report to such agency or agencies under MMSEA.

(b)       For Abuse Claims that occurred after December 5, 1980, before remitting funds to any Entity on account of such an Abuse Claim (other than an Non-Insurer Contribution Claim), the Settlement Trustee will obtain: (i) a certification that said Entity (or such Entity's authorized representative) has provided or will provide for the payment and/or resolution of any obligations owing or potentially owing under the MSP Provisions, or any related rules, regulations, or guidance, in connection with, or relating to, such Abuse Claim, and (ii) an agreement that such Entity indemnify the Settlement Trust for any such obligations. The failure by one or more Abuse Claimants to follow these provisions will not delay or impair the payment by the Settlement Trust to any other Abuse Claimant following these provisions.

(c)       The Settlement Trust will submit reimbursement to CMS for Medicare Claims relating to Abuse Claims. With respect to all Abuse Claims, the Settlement Trust will maintain sufficient funds to pay any potential reimbursements to CMS in full and consider the potential future interests of CMS.

(d)       Nothing in this Section 6.6 of the Joint Plan implies, or constitutes an admission, that the Debtor, Reorganized Archdiocese, Additional Debtors, Reorganized Additional Debtors, any other Covered Party, or any Settling Insurer are "applicable plans" within the meaning of MMSEA, or that they have any legal obligation to report any actions undertaken by the Settlement Trust or contributions to the Settlement Trust under MMSEA or any other statute or regulation.

**Section 6.7     Settlement Trustee's Immunity; Liability; Indemnification.**

(a)       In connection with the performance of the Settlement Trustee's functions and in Settlement Trustee's sole and absolute discretion, the Settlement Trustee may consult with its attorneys, accountants, financial advisors, and agents, and will not be liable for any act taken, omitted to be taken, or suffered to be done in accordance with advice or opinions rendered by such Entities. Notwithstanding such authority, the Settlement Trustee has no obligation to consult with its attorneys, accountants, financial advisors, or agents, and its determination not to do so will not impose any liability on the Settlement Trustee unless such determination is based on the Settlement Trustee's recklessness, gross negligence, willful misconduct, or fraud.

(b)       No recourse will ever be had, directly or indirectly, against the Settlement Trustee personally, or against any employee, contractor, agent, attorney, accountant, or other professional that the Settlement Trust retains in accordance with the Settlement Trust Documents or the Joint Plan, by legal or equitable proceedings or by virtue of any statute or otherwise, nor upon any promise, contract, instrument, undertaking, obligation, covenant, or agreement executed by the Settlement Trustee in implementation of the Settlement Trust Documents or the Joint Plan, or by reason of the creation of any indebtedness by the Settlement Trust for any purpose authorized by the Settlement Trust Documents or the Joint Plan, it being expressly understood and agreed that all such liabilities, covenants, and other obligations of the Settlement Trust, whether in writing or otherwise, will be enforceable only against, and be satisfied only from, the Settlement Trust Assets. Notwithstanding the foregoing, the Settlement Trustee may be held liable for specific acts or omissions resulting from the Settlement Trustee's willful misconduct, gross negligence, fraud, breach of the fiduciary duty of loyalty, recklessness, or willful violation of any confidentiality agreement; and if liability on such grounds is established, recourse may be had directly against the Settlement Trustee. The Settlement Trustee will not be required to obtain a bond.

(c)       The Settlement Trust will defend, indemnify, and hold harmless the Settlement Trustee and the Settlement Trustee's employees, contractors, agents, attorneys, accountants, or other professionals, to the fullest extent that an Entity organized under the laws of Louisiana may indemnify and defend against all liabilities, expenses, claims, damages, or losses incurred by the Settlement Trust in the performance of its duties under the Settlement Trust Documents and Joint Plan; provided, however, neither the Settlement Trustee, nor the Settlement Trustee's employees, contractors, agents, attorneys, accountants, or other professionals, will be defended, indemnified or

18

held harmless in any way for any liability, expense, Claim, damage, or loss for which they are ultimately liable in accordance with this Section 6.7 of the Joint Plan.

(d)     Subject to the occurrence of the Settlement Agreement Effective Date and each Settling Insurer's payment of the Settlement Consideration, and subject to the limitations set forth below, the Settlement Trust shall defend, indemnify, and hold harmless the Settling Insurers with respect to any Claim against any Settling Insurer that is under, arises out of, relates (directly or indirectly) to, or connects in any way with the Subject Insurance Policies or that was otherwise released pursuant to any Insurance Settlement Agreement, including any Claims made by (i) any Entity who is an insured (as a named insured, additional insured, or otherwise) under any of the Subject Insurance Policies; (ii) any Entity who has made, will make, or can make (a) an Abuse Claim or (b) a Related Insurance Claim; and (iii) any Entity who has actually or allegedly acquired or been assigned the right to make a Claim under any of the Subject Insurance Policies (collectively, the "**Indemnified Claims**"), as set forth below:

(i)     The Settling Insurers shall have the right (but not the obligation) to (a) seek to enforce the Injunctions against any Entity seeking to assert an Indemnified Claim, and (b) defend against any Indemnified Claims (to the extent such Claim is determined to not be barred by the Injunctions) identified in this Section 6.7. With the Settling Insurers' consent, such consent not to be unreasonably withheld, the Settlement Trustee can satisfy the obligations contained in (a) and (b) above.  An amount equal to 1.19% of the Settlement Consideration for each Settling Insurer (the "**Indemnity Cost Reserve**") shall be reserved from the Settlement Consideration for payment of reasonable attorneys' fees, expenses, costs, and other amounts incurred by the Settling Insurers in defending against such Indemnified Claims, which amount shall be released from reserve if no Indemnified Claims are asserted within 30 days after the Revival Window has closed under every applicable Revival Window Law.   The Indemnity Cost Reserve is a reserve amount provided for each individual Settling Insurer and cannot be aggregated.

(ii)     The Settlement Trust shall not in any way assist, any Entity in the establishment or pursuit of any Claim against any Settling Insurer that is under, arises out of, relates (directly or indirectly) to, or connects in any way with the Subject Insurance Policies or that was otherwise released pursuant to any Insurance Settlement Agreement.

(iii)     The Settlement Trust and Archdiocese shall support and join in the enforcement of the Injunctions against any Entity seeking to assert an Indemnified Claim; *provided that* if the Settling Insurer(s) elect(s) not to enforce the Injunctions in accordance with this Section 6.7, the Settlement Trust shall (a) seek to enforce the Injunctions against such Entity, and (b) defend against any Indemnified Claims (to the extent such Claim is determined to not be barred by the Injunctions).

(iv)     To the extent that a Final Order is entered against any Settling Insurer with respect to any Indemnified Claim, the Settlement Trust shall indemnify and hold harmless such Settling Insurer with respect thereto up to the Settling Insurers' Settlement Consideration; *provided that* to the extent the Settling Insurer(s) elect(s) not to enforce the Injunctions or defend against the Indemnified Claims, the Settlement Trust's indemnity obligation shall be limited to the amount of the Indemnity Cost Reserve; *provided further* that if the Settlement Trust breaches its obligation set forth in this Section 6.7(ii) hereof, the Settlement Trust's indemnity obligation shall not be so limited and shall instead be up to each Settling Insurer's Settling Insurers' Settlement Consideration.  In no event shall the Settlement Trust's indemnity obligation exceed each

19

individual Settling Insurer's Settling Insurers' Settlement Consideration.  To the extent the Settling Insurer's Settling Insurers' Settlement Consideration has been distributed in accordance with the Joint Plan, the Settlement Trust's indemnification obligation shall be so reduced.

(v)   The indemnification provided for in this Section 6.7 shall not impose liability on the Settlement Trustee or Settlement Trust professionals for their own acts or omissions; *further*, funds provided for the administration of the Settlement Trust or payment of the Settlement Trustee or Settlement Trust professionals shall not be subject to indemnification claims as provided for herein.

(e)   The Settlement Trust will not be responsible for any Claim by a Covered Party for contribution, indemnity, equitable indemnity, subrogation or equitable subrogation, allocation or reallocation, or reimbursement or any direct or indirect recovery, on account of or with respect to any Abuse Claim against a Non-Settling Insurer.

(f)   The Debtor will indemnify and hold harmless the Settlement Trust with respect to any Indemnified Claims that relate to any claim against the Diocese of Baton Rouge SD.

**Section 6.8    Legal Effect of Settlement Trust Distributions**. The evaluation or determination of Abuse Claims under the Joint Plan or the Settlement Trust Documents and the payment of Settlement Trust Distributions: (a) will not be construed as an admission of liability by any of the Debtor, Reorganized Archdiocese, Additional Debtors, Reorganized Additional Debtors, Settlement Trust, or Settling Insurers and (b) will not have any *res judicata* or collateral estoppel or preclusive effect on the Reorganized Archdiocese, the Reorganized Additional Debtors, the Settlement Trust, or the Non-Settling Insurers. For the avoidance of doubt, such evaluations or determinations under the Joint Plan or Settlement Trust Documents are for the sole purpose of Settlement Trust Distributions. Such evaluations or determinations have no binding legal effect on the Reorganized Archdiocese, the Reorganized Additional Debtors, the Settlement Trust, or the Non-Settling Insurers and will not constitute findings and/or conclusions of fact or liability regarding any Abuse Claim.

**Section 6.9    Judgment Reduction for Settling Insurer Contribution Claims.** The Channeling Injunction will channel all Non-Settling Insurer Contribution Claims against Protected Parties or Settling Insurers and all Non-Insurer Contribution Claims against Protected Parties or Settling Insurers to the Settlement Trust in accordance with Article 12 of this Joint Plan. If, for any reason any court does not recognize the channeling of the Non-Settling Insurer Contribution Claims to the Settlement Trust, or such Claims are not channeled for any reason, then the following provisions will apply:

(a)   The Settling Insurers will retain their Settling Insurer Contribution Claims, provided, however, that:

(i)   the Settling Insurers will not pursue any Settling Insurer Contribution Claims against any Non-Settling Insurer (A) that asserts a Non-Settling Insurer Contribution Claim solely against the Settlement Trust; (B) whose Non-Settling Insurer Contribution Claim is satisfied and extinguished entirely by the application of this Section 6.9 of the Joint Plan; or (C) that does not assert a Non-Settling Insurer Contribution Claim against the Settling Insurers; and

(ii)   if a Non-Settling Insurer asserts its Non-Settling Insurer Contribution Claim only against the Settlement Trust, then the Settling Insurers will assign any Settling Insurer Contribution Claims they may hold against such Non-Settling Insurer to the Settlement Trust, and the Settlement Trust

will be free to assert such Settling Insurer Contribution Claims against such Non-Settling Insurer.

(b)     If a Non-Settling Insurer releases its Non-Settling Insurer Contribution Claims, if any such exist, that it may have against a Settling Insurer, then such released Settling Insurer will release its Settling Insurer Contribution Claims against such releasing Non-Settling Insurer.

(c)     If a Non-Settling Insurer asserts a Non-Settling Insurer Contribution Claim against any Settling Insurer, and:

> (i)     the Settlement Trust fully indemnifies the Settling Insurer, then the Settling Insurer will assign its Settling Insurer Contribution Claims to the Settlement Trust; or

> (ii)    the Settlement Trust partially, but not fully, indemnifies the Settling Insurer for such Claim, then the Settling Insurer will retain its Settling Insurer Contribution Claims and may assert those Claims against the Non-Settling Insurer asserting the Non-Settling Insurer Contribution Claim against the Settling Insurer. Any recovery by the Settling Insurer exceeding the amount necessary to satisfy the Settlement Trust's full indemnity obligation plus litigation costs will be turned over to the Settlement Trust.

(d)     In any Insurance Action involving, on the one hand, an Abuse Claimant, a Covered Party, and/or the Settlement Trust, as applicable, and, on the other hand, one or more Non-Settling Insurers, where a Non-Settling Insurer has asserted, asserts, or could assert any Non-Settling Insurer Contribution Claim against a Settling Insurer, then any judgment or award obtained by such Abuse Claimant, Covered Party, and/or the Settlement Trust against such Non-Settling Insurer will be automatically reduced by the amount, if any, that such Settling Insurer is liable to pay such Non-Settling Insurer as a result of its Non-Settling Insurer Contribution Claim, so that the Non-Settling Insurer Contribution Claim is thereby satisfied and extinguished entirely ("**Reduction Amount**"). In any Insurance Action involving, on the one hand, an Abuse Claimant, a Covered Party, and/or the Settlement Trust, and, on the other hand, a Non-Settling Insurer, where the respective Settling Insurer is not a party, such Abuse Claimant, Covered Party, and/or Settlement Trust will obtain a finding from that court or arbitrator(s), as applicable, of the Reduction Amount before entry of judgment against such Non-Settling Insurer. If such a reduction is not made as described above, then any Non-Settling Insurer Contribution Claim by any Non-Settling Insurer against any Settling Insurer will be reduced by the Reduction Amount, as determined by the court or arbitrator(s) in which such Non-Settling Insurer Contribution Claim is filed. Settling Insurers will be required to cooperate in good faith with the Abuse Claimant, Covered Party, and/or Settlement Trust to take reasonable steps to defend against any Non-Settling Insurer Contribution Claim, in each case at the sole expense of the Entity requesting such cooperation. If the reduction eliminates the Non-Settling Insurer's Non-Settling Insurer Contribution Claim, then any determination regarding the reimbursement of costs and expenses, including legal fees, will be determined by a court of competent jurisdiction.

(e)     If an Abuse Claimant, a Covered Party, and/or the Settlement Trust, on the one hand, and a Non-Settling Insurer, on the other hand, enter into an agreement settling one or more Abuse Claims, such agreement will include a provision whereby such Non-Settling Insurer releases its Non-Settling Insurer Contribution Claims against each Settling Insurer so long as each Settling Insurer releases its Settling Insurer Contribution Claims against such Non-Settling Insurer. If such settlement agreement fails to include such a release provision, and the Non-Settling Insurer has asserted, asserts, or could assert a Non-Settling Insurer Contribution Claim against Settling Insurers, then any settlement amount in such settlement agreement will be deemed automatically

reduced by the Reduction Amount. In such event, the settling parties will obtain a finding from the applicable court or arbitrator(s) of the Reduction Amount. If (a) the settlement agreement was entered into without litigation or arbitration such that no judge or arbitrator can determine the Reduction Amount, or (b) such a reduction is not otherwise made as described above, then any Non-Settling Insurer Contribution Claim by any Non-Settling Insurer against any Settling Insurer will be reduced by the Reduction Amount, as determined by the court or arbitrator(s) in which such Non-Settling Insurer Contribution Claim is filed. Settling Insurers will be required to cooperate in good faith with the Abuse Claimant, the Covered Party, and/or the Settlement Trust to take reasonable steps to defend against any Non-Settling Insurer Contribution Claim by a Non-Settling Insurer, in each case at the sole expense of the Entity requesting such cooperation. If the reduction eliminates the Non-Settling Insurer's Non-Settling Insurer Contribution Claim, then any determination regarding the reimbursement of costs and expenses, including legal fees, will be determined by a court of competent jurisdiction.

(f)     To ensure that the reduction contemplated in this Section 6.9 of the Joint Plan is accomplished, the Settling Insurers will be entitled to: (i) notice, within a reasonable time of the initiation of any future Insurer Action against or future settlement negotiations with any Non-Settling Insurer in which a Non-Settling Insurer Contribution Claim is asserted against any Settling Insurer, and periodic notices thereafter on at least an annual basis of the status of such Insurer Action or negotiations; (ii) the opportunity to participate in the Insurer Action or settlement negotiations, but only to the extent necessary to accomplish the reduction contemplated in this Section 6.9 of the Joint Plan; (iii) the reasonable cooperation of the applicable Abuse Claimant, Covered Party and/or Settlement Trust, at the sole cost and expense of the Settling Insurers, so that the Settling Insurers can assert this Section 6.9 of the Joint Plan as a defense in any Insurer Action against any of them for any Non-Settling Insurer Contribution Claim; and (iv) have the court or appropriate tribunal issue such orders as are necessary to effectuate the judgment, award, or settlement reduction in order to protect the Settling Insurers from any Non-Settling Insurer Contribution Claim. The notice required above will be given by (a) the Covered Party and/or the Settlement Trust that is a party to such Insurer Action or settlement negotiations; (b) if none of the foregoing is such a party, the Non-Settling Insurer that is a party to such Insurer Action or settlement negotiations; or (c) if no Abuse Claimant, Covered Party, the Settlement Trust, or Non-Settling Insurer is a party to such Insurer Action or settlement negotiations, the Abuse Claimant bound by this Joint Plan.

(g)     The above procedures will bind, and inure to the benefit of, the Settling Insurers.

**Section 6.10     Judgment Reduction for Co-Defendant Parties**.

(a)     The release of Abuse Claims as contemplated in this Joint Plan and in the Settlement Trust Documents are provided in good faith by Abuse Claimants. Without limiting the discharges, releases, and injunctions set forth in the Joint Plan and Confirmation Order, including the Injunctions, pursuant to applicable non-bankruptcy law, (i) any Co-Defendant Party will not be entitled to recover against any Covered Parties, the Settlement Trust, or any other Entity on account of any Claim against any Covered Party for contribution, and (ii) any Abuse Claim against such Co-Defendant Party will be reduced against such Co-Defendant Party to the extent of (A) any amount stipulated by the releases provided for in the Joint Plan and the Settlement Trust Documents, or (B) in the amount of the Settlement Trust Distribution received by the Abuse Claimant holding such Abuse Claim, or (C) in the amount of the Covered Party's equitable share of the damages under any applicable non-bankruptcy law, whichever is the greatest.

(b)     To facilitate the foregoing judgment reduction, notwithstanding anything in the Settlement Trust Documents to the contrary, the Settlement Trustee will be authorized to and will, upon the written request of a Co-Defendant Party that identifies a particular Abuse Claimant

holding an Abuse Claim against the Co-Defendant Party, disclose to such Co-Defendant Party the amount of the Settlement Trust Distribution made by the Settlement Trust, if any, to such Abuse Claimant.

(c)     The foregoing provisions of this Section 6.10 of the Joint Plan will be binding upon, and inure to the benefit of, the Co-Defendant Parties.

**Section 6.11     Additional Debtors' Abuse Claims Bar Date.**

(a)     *Establishment of Additional Debtors' Abuse Claims Bar Date*. Except for Abuse Claims that are Previously Asserted Claims (which Abuse Claims are classified and treated in accordance with Sections 4.3 and 4.4 of the Joint Plan), all Abuse Proofs of Claim against any Additional Debtor, if any, must be Filed by no later than the Additional Debtors' Abuse Claims Bar Date.

Any Known Abuse Claim against any Additional Debtor that is not a Previously Asserted Claim and for which a timely Abuse Proof of Claim is not Filed will be automatically Disallowed, forever barred from assertion, and unenforceable against any Additional Debtors or any Reorganized Additional Debtors, their respective Estates, or their respective property, without the need for any objection by any Reorganized Additional Debtors or further notice to, or action, order, or approval of the Bankruptcy Court, and any such Abuse Proof of Claim against any Additional Debtors will be deemed fully satisfied, released, and discharged, notwithstanding anything in the Abuse Proof of Claim to the contrary.

For the avoidance of doubt, the fact that a Known Abuse Claim against any Additional Debtor is or may be time-barred or subject to a statute of limitations or other defense under applicable non-bankruptcy law does not excuse such Abuse Claimant from compliance with the Joint Plan, including this Section 6.11, the Additional Debtors' Abuse Claims Bar Date, or the Confirmation Order.

(b)     *Additional Debtors' Abuse Claims Bar Date Procedures*. The following procedures govern the Filing of Abuse Proofs of Claim that i) assert Abuse Claims against any Additional Debtors and (ii) that do not qualify as Previously Asserted Claims:

(i)     Any Abuse Proof of Claim asserted against an Additional Debtor must conform substantially to the Additional Debtors' Abuse Proof of Claim Form (Plan Exhibit H).

(ii)     Any Abuse Proof of Claim asserted against an Additional Debtor must be submitted as follows: (i) If sent by mail, to Donlin, Recano & Company, LLC, Re: The Roman Catholic Church of the Archdiocese of New Orleans, P.O. Box 2053, New York, NY 10272-2042, or (ii) If sent by hand delivery or overnight courier, send to: Donlin, Recano & Company, LLC, c/o Angeion Group, Re: The Roman Catholic Church of the Archdiocese of New Orleans, 200 Vesey Street, 24th Floor, New York, NY 10281; or (iii) If submitted electronically, by using the interface available at: https://www.donlinrecano.com/Clients/rcano/FileSexualAbuseClaim.

(iii)     Any Abuse Proof of Claim asserted against an Additional Debtor will be deemed Filed only when received by the Claims and Voting Agent on or before the Additional Debtors' Abuse Claims Bar Date.

(iv)     Any Abuse Proof of Claim asserted against an Additional Debtor must (A) be signed by the Abuse Claimant or the Abuse Claimant's legal representative (including documentation confirming the legal ability of the signatory to act on behalf of the Abuse Claimant), (B) include supporting

23

documentation (if voluminous, attach a summary) or an explanation as to why documentation is not available, and (C) be in the English language.

(v)      Any Abuse Proof of Claim asserted against an Additional Debtor and sent by facsimile, telecopy, or electronic mail transmission will not be accepted.

(vi)      Pursuant to Bankruptcy Rule 3003(c)(2), all Abuse Claimants holding Abuse Claims against Additional Debtors that fail to comply with this Section 6.11 of this Joint Plan by timely Filing an Abuse Proof of Claim in appropriate form will not be treated as a Creditor with respect to such Abuse Claim for the purpose of Settlement Trust Distributions.

(vii)      Parties asserting against an Additional Debtor an Abuse Claim that arose before the Additional Debtors' Petition Date must use the Additional Debtors' Abuse Proof of Claim Form.

(viii)      Due to the sensitive nature of the information requested in the Additional Debtors' Abuse Proof of Claim Form, the Confidentiality Protocol, as stated in the Archdiocese Claims Bar Date Order [ECF Doc. No. 461], will apply to all Additional Debtors' Abuse Proof of Claim Forms submitted by Abuse Claimants.

(ix)      The Claims and Voting Agent will assign to each Abuse Claimant Filing an Additional Debtors' Abuse Proof of Claim Form against an Additional Debtor a unique identifier code and will maintain a confidential list of the identities of such claimants, their corresponding identifier code, and their respective Additional Debtors' Abuse Proof of Claim Forms.

(x)      The Debtor will cause the Additional Debtors' Abuse Claims Bar Date Notice (Plan Exhibit F) and the Additional Debtors' Abuse Proof of Claim Form (Plan Exhibit H) to be posted on the website established by the Claims and Voting Agent for the Chapter 11 Cases.

(xi)      Pursuant to Bankruptcy Rules 2002(l) and 9008, the Debtor and Additional Debtors may publish notice of the Additional Debtors' Abuse Bar Date substantially in the form of the Additional Debtors' Abuse Claims Bar Date Publication Notice (Plan Exhibit G).

(xii)      The Additional Debtors may (A) post a link on their respective websites to the Additional Debtors' Abuse Claims Bar Date Notice and the Additional Debtors' Abuse Proof of Claim Form, or (B) provide additional notice to the extent they consider appropriate.

(c)      The Debtor, Additional Debtors, and Claims and Voting Agent are authorized and empowered to take such steps and perform such acts as may be necessary to implement and effectuate the terms of this Section 6.11 of this Joint Plan.

(d)      Nothing in this Section 6.11 of this Joint Plan will (i) prejudice the right of the Additional Debtors, the Reorganized Additional Debtors, the Settlement Trust, the Settlement Trustee, any Covered Party, or any Non-Settling Insurers to dispute or assert offsets or defenses to any Abuse Claim, (ii) limit the releases, discharges, and injunctions set forth elsewhere in the Joint Plan or the Confirmation Order, or (iii) be construed to modify, amend, or enlarge any Creditor's rights with respect to any Claim.

**Section 6.12**      **Additional Debtors' Non-Trade Claims Bar Date.**

(a)     *Establishment of Additional Debtors' Non-Trade Claims Bar Date*. Except for Additional Debtors' Non-Trade Unsecured Claims that are Previously Asserted Claims, all Proofs of Claim asserting Additional Debtors' Non-Trade Unsecured Claims against any Additional Debtor must be Filed by no later than the Additional Debtors' Non-Trade Claims Bar Date.

Any Additional Debtors' Non-Trade Unsecured Claim (other than a Previously Asserted Claim) against any Additional Debtor for which a timely Proof of Claim is not Filed will be automatically Disallowed, forever barred from assertion, and unenforceable against any Additional Debtors or any Reorganized Additional Debtors, their respective Estates, or their respective property, without the need for any objection by any Reorganized Additional Debtors or further notice to, or action, order, or approval of the Bankruptcy Court, and any such Proof of Claim against any Additional Debtors will be deemed fully satisfied, released, and discharged, notwithstanding anything in the Proof of Claim to the contrary.

For the avoidance of doubt, the fact that an Additional Debtors' Non-Trade Unsecured Claim against any Additional Debtor is or may be time-barred or subject to a statute of limitations or other defense under applicable non-bankruptcy law does not excuse such Creditor from compliance with the Joint Plan, including this Section 6.12, the Additional Debtors' Non-Trade Claims Bar Date, or the Confirmation Order.

(b)     *Additional Debtors' Non-Trade Claims Bar Date Procedures*. The following procedures govern the Filing of Proofs of Claim that (i) assert Additional Debtors' Non-Trade Unsecured Claims against any Additional Debtors and (ii) that do not qualify as Previously Asserted Claims:

(i)     Any Proof of Claim asserting an Additional Debtors' Non-Trade Unsecured Claim against an Additional Debtor must conform substantially to the Additional Debtors' Non-Trade Proof of Claim Form (Plan Exhibit K).

(ii)     Any Proof of Claim asserting an Additional Debtors' Non-Trade Unsecured Claim against an Additional Debtor must be submitted as follows: (i) If sent by mail, to Donlin, Recano & Company, LLC, Re: The Roman Catholic Church of the Archdiocese of New Orleans, P.O. Box 2053, New York, NY 10272-2042, or (ii) If sent by hand delivery or overnight courier, send to: Donlin, Recano & Company, LLC, c/o Angeion Group, Re: The Roman Catholic Church of the Archdiocese of New Orleans, 200 Vesey Street, 24th Floor, New York, NY 10281; or (iii) If submitted electronically, by using the interface available at: https://bankruptcy.angeiongroup.com/Clients/rcano/FileClaim.

(iii)     Any Proof of Claim asserting an Additional Debtors' Non-Trade Unsecured Claim against an Additional Debtor will be deemed Filed only when received by the Claims and Voting Agent on or before the Additional Debtors' Non-Trade Claims Bar Date.

(iv)     Any Proof of Claim asserting an Additional Debtors' Non-Trade Unsecured Claim against an Additional Debtor must (A) be signed by the Creditor or the Creditor's legal representative (including documentation confirming the legal ability of the signatory to act on behalf of the Creditor), (B) include supporting documentation (if voluminous, attach a summary) or an explanation as to why documentation is not available, and (C) be in the English language.

(v)      Any Proof of Claim asserting an Additional Debtors' Non-Trade Unsecured Claim against an Additional Debtor and sent by facsimile, telecopy, or electronic mail transmission will not be accepted.

(vi)      Parties asserting against an Additional Debtor an Additional Debtors' Non-Trade Unsecured Claim that arose before the Additional Debtors' Petition Date must use the Additional Debtors' Non-Trade Proof of Claim Form.

(vii)     The Claims and Voting Agent will assign to each Creditor Filing an Additional Debtors' Non-Trade Proof of Claim Form against an Additional Debtor a unique identifier code and will maintain a list of such Creditors, their corresponding identifier code, and their respective Additional Debtors' Non-Trade Proof of Claim Forms.

(viii)    The Debtor will cause the Additional Debtors' Non-Trade Claims Bar Date Notice (Plan Exhibit I) and the Additional Debtors' Non-Trade Proof of Claim Form (Plan Exhibit K) to be posted on the website established by the Claims and Voting Agent for the Chapter 11 Cases.

(ix)      Pursuant to Bankruptcy Rules 2002(l) and 9008, the Debtor and Additional Debtors may publish notice of the Additional Debtors' Non-Trade Claims Bar Date substantially in the form of the Additional Debtors' Non-Trade Claims Bar Date Publication Notice (Plan Exhibit J).

(x)       The Additional Debtors may (A) post a link on their respective websites to the Additional Debtors' Non-Trade Claims Bar Date Notice and the Additional Debtors' Non-Trade Proof of Claim Form, or (B) provide additional notice to the extent they consider appropriate.

(c)      The Debtor, Additional Debtors, and Claims and Voting Agent are authorized and empowered to take such steps and perform such acts as may be necessary to implement and effectuate the terms of this Section 6.12 of this Joint Plan.

(d)      Nothing in this Section 6.12 of this Joint Plan will (i) prejudice the right of the Additional Debtors, the Reorganized Additional Debtors, any Covered Party, or any Non-Settling Insurers to dispute or assert offsets or defenses to any Additional Debtors' Non-Trade Unsecured Claim, (ii) limit the releases, discharges, and injunctions set forth elsewhere in the Joint Plan or the Confirmation Order, or (iii) be construed to modify, amend, or enlarge any Creditor's rights with respect to any Claim.

**Section 6.13    Miscellaneous Provisions.**

(a)      *Registry of Abuse Claimants Who Are Settlement Trust Beneficiaries*. The Settlement Trustee will maintain a registry of each Abuse Claimant who is a Settlement Trust Beneficiary to evidence such Abuse Claimant's beneficial interest.

(b)      *Non-Transferability of Beneficial Interests in the Settlement Trust.* Except for any transfer of a beneficial interest in the Settlement Trust made by operation of non-bankruptcy law that does not require notice to the Settlement Trustee, any transfer of beneficial interests in the Settlement Trust will be ineffective until and unless the Settlement Trustee receives written notice of such transfer.

(c)      *Tax Matters*. The Settlement Trust will not be deemed to be the same legal entity as the applicable Debtor, Reorganized Archdiocese, Additional Debtors, or Reorganized Additional Debtors, but only (i) the assignee of the Settlement Trust Assets, and (ii) a representative of any

Estates for delineated purposes within the meaning of section 1123(b)(3) of the Bankruptcy Code. The Settlement Trust is expected to be Tax exempt.

(d)  *Any Pending Objections Deemed Withdrawn.* Any pending objection to any Abuse Claim that was Filed by an Entity is deemed withdrawn without prejudice as of the Effective Date.

(e)  *Notation on Claims Register Regarding Abuse Claims.* On the Effective Date, all Abuse Proofs of Claim will be marked on the Claims Register as "Channeled to the Settlement Trust," and will be resolved exclusively in accordance with the Settlement Trust Documents.

(f)  *Abuse Claim Withdrawal.* An Abuse Claimant may withdraw his or her Abuse Claim at any time by providing written notice to the Settlement Trustee and filing a notice of withdrawal with the Bankruptcy Court. If withdrawn, (i) the Abuse Claim will be withdrawn with prejudice and may not be reasserted, (ii) such Abuse Claimant will be subject to the Injunctions as provided by this Joint Plan, and (iii) any reserve maintained by the Settlement Trustee on account of such Abuse Claim will be available for Settlement Trust Distributions in accordance with the Settlement Trust Documents.

(g)  *No Settlement Trust Distributions on Account of Penalty Claims or Post-Petition Interest.* No Settlement Trust Distribution will be made on account of an Abuse Claim for (a) any Penalty Claim, or (b) any interest that may have accrued on such Abuse Claim after the applicable Archdiocese's Petition Date or Additional Debtors' Petition Date. For the avoidance of doubt, all Penalty Claims will be subject to the Injunctions as provided by this Joint Plan.

(h)  *Single Recovery.* In no case will the aggregate Settlement Trust Distributions on account of any Abuse Claim exceed one hundred percent (100%) of the Abuse Claim (including applicable interest).

(i)  *Venue.* The Confirmation Order will provide that, without the permission of the Bankruptcy Court, no judicial, administrative, arbitral, or other Action will be commenced in any forum other than the Bankruptcy Court against the Settlement Trustee in its official capacity, with respect to such Settlement Trustee's status, duties, powers, acts, or omissions as Settlement Trustee.

(j)  *Unclaimed or Excess Settlement Trust Property.* Before the Settlement Trust is terminated, the Settlement Trustee shall contribute to a non-profit corporation doing business in the State of Louisiana any Settlement Trust Distribution in the amount of $500 or less that constitutes Unclaimed Property as of the expected termination date of the Settlement Trust. All Settlement Trust Distributions totaling over $500 that constitute Unclaimed Property as of the expected termination of the Settlement Trust shall be transferred to the Louisiana Department of Treasury in accordance with the laws of the State of Louisiana governing unclaimed or abandoned property.

(k)  *No Liability.* The Debtor, Reorganized Archdiocese, Additional Debtors, and Reorganized Additional Debtors will not have nor incur any liability to, or be subject to any right of action by, any Entity for any act, omission, transaction, event, or other circumstance in connection with or related to the Settlement Trustee, the Settlement Trust Documents, the Abuse Claims Reviewer, or the administration of the Settlement Trust.

(l)  *Modification of the Settlement Trust Documents and Consent Rights.* The Settlement Trust Documents may be amended or modified, but only with the prior written consent of the Reorganized Archdiocese, Reorganized Additional Debtors, Covered Parties, the Settlement Trust, and the Settling Insurers to the extent that such amendment or modification is (i) inconsistent with the Joint Plan or Insurance Settlement Agreements, (ii) adds any obligation or imposes any duty on the Reorganized Archdiocese, Reorganized Additional Debtors, Covered Parties, the Settlement Trustee, or the Settling Insurers, or (iii) adversely affects the Reorganized Archdiocese, Reorganized Additional Debtors, Covered Party, the Settlement Trustee, or Settling Insurers.

27

(m)    *Other Notice*. The Settlement Trustee will promptly provide notice to the Reorganized Archdiocese and Reorganized Additional Debtors of any amendments or modifications of the identity of any successor Settlement Trustee or Settlement Trust Advisory Committee members.

**Section 6.14    Termination.** The Settlement Trust will terminate after the liquidation, administration, and distribution of the Settlement Trust Assets in accordance with this Joint Plan, and its full performance of any and all other duties and functions set forth in the Joint Plan or Settlement Trust Agreement; provided, however, that the Settlement Trust will terminate on or before the later of (a) the twentieth (20th) anniversary of the Effective Date, or (b) the death of the last Abuse Claimant.

## ARTICLE 7
## SETTLING INSURERS AND NON-SETTLING INSURERS

**Section 7.1    The Settling Insurers and Insurance Settlement Agreements.**

(a)    *Binding Effect*. Each Insurance Settlement Agreement will be effective and binding upon all Entities (and any of those Entities' successors and assigns) on the date that such Insurance Settlement Agreement is made effective under the Insurance Settlement Order approving that Insurance Settlement Agreement. The Insurance Settlement Agreements are collectively attached as Plan Supplement 7.1(a). Payments by each Settling Insurer to the Settlement Trust, and the releases by the Protected Parties, Non-Debtor Catholic Entities and the Settling Insurers pursuant to the Insurance Settlement Agreements will occur and/or be effective according to the terms of each such Insurance Settlement Agreement. The Insurance Settlement Agreements will survive the Confirmation, effectiveness, and consummation of the Joint Plan. The rights of the parties under any Insurance Settlement Agreement will be determined exclusively under the applicable Insurance Settlement Agreement, and those provisions of the applicable Insurance Settlement Order and the Confirmation Order.

(b)    *Sale Free and Clear of Subject Interests in and to Settling Insurers' Policies*. As provided in the Insurance Settlement Orders, subject to the occurrence of the Effective Date, each Settling Insurer Policy (other than the Preserved Coverage), including without limitation all Coverage Claims and Related Insurance Claims, will be sold to the issuing Settling Insurer, pursuant to sections 105, 363, and 1123 of the Bankruptcy Code, free and clear of all Liens, Claims and Subject Interests of all Entities, to the extent provided for in each applicable Insurance Settlement Agreement and the applicable Insurance Settlement Order. As required by any Insurance Settlement Agreement, the Non-Debtor Catholic Entities shall assign the Non-Debtor Catholic Entities' Subject Interests, if any, in the relevant Settling Insurers' Policies to the Archdiocese Estate, and the Archdiocese Estate shall sell the Subject Interests of such Non-Debtor Catholic Entities to the Settling Insurer free and clear of all Liens, Claims and Subject Interests of any Entity in such Settling Insurers' Policies pursuant to sections 105, 363, 1124 and/or 1141 of the Bankruptcy Code.

(c)    *Waiver/Consent*. In consideration of the releases and Injunctions and other covenants set forth in the Joint Plan, subject to the occurrence of the Effective Date and the satisfaction of the other conditions precedent to the effectiveness of the Insurance Settlement Agreements, and upon receipt by the Settlement Trust or Escrow Agent pursuant to the Escrow Agreement of the Settling Insurers' Settlement Consideration, each of the Protected Parties: (i) irrevocably and unconditionally, without limitation, releases, acquits, forever discharges, and waives any Claims it has or might have now or in the future against the Settling Insurers with respect to any Claim arising from or relating to any Settling Insurer Policies; and (ii) consents to the sale of the Debtor's and Covered Parties' Claims and Subject Interests, if any, related to the Settling Insurer Policies in accordance with the Insurance Settlement Agreements, and to the contribution of the proceeds from such sale and settlement to the Settlement Trust, as provided in

the Joint Plan. Nothing in this Section 7.1 of the Joint Plan will be construed to bar either: (x) an Abuse Claim against any Excluded Party; or (y) a Claim by such Entity for insurance coverage in connection with a Claim described in the foregoing subsection (x) under an insurance policy other than any Settling Insurers' Policy.

(d) *Timing*. The injunctions, releases, and discharges to which any Settling Insurer is entitled pursuant to such Insurance Settlement Agreement, the Joint Plan, the Confirmation Order, any Insurance Settlement Order, and the Bankruptcy Code will become effective as provided in such Insurance Settlement Agreement and the Insurance Settlement Order approving such Insurance Settlement Agreement.[7]

(e) *The Settling Insurers' Policies*. The Settling Insurers' Policies are listed on Plan Supplement 7.1(f).

(f) *Settling Insurers' Reinsurance Recoveries*. Notwithstanding anything in the Insurance Settlement Agreements or the Joint Plan, nothing in the Insurance Settlement Agreements or the Joint Plan is intended to or shall be construed to apply to or have any effect on the Settling Insurers' rights to reinsurance recoveries under any applicable reinsurance treaties, certificates, or contracts that cover losses arising under or in connection with the Subject Insurance Policies or any other binder, certificate, or policy of insurance issued by a Settling Insurer.

**Section 7.2    Non-Settling Insurers and the Non-Settling Insurance Transfer.**

(a) *Non-Settling Insurers and the Non-Settling Insurers' Policies*. Plan Supplement 7.2 includes both a list of the Non-Settling Insurers and a description of the known Non-Settling Insurers' Policies.

(b) *Non-Settling Insurance Rights Transfer*. As of the Effective Date, the Debtor and the Covered Parties will transfer to the Settlement Trust, and the Settlement Trust will receive and accept, the Non-Settling Insurance Rights Transfer. Additionally:

(i) The Settlement Trust will be solely responsible for satisfying, to the extent required under applicable law, any premiums, deductibles, self-insured retentions, and fronting obligations under or related to the Non-Settling Insurers' Policies arising in any way out of any and all Abuse Claims.

(ii) The Settlement Trust will comply with any and all notice obligations required under the Subject Insurance Policies and applicable law pertaining to Abuse Claims.

(iii) The Non-Settling Insurance Rights Transfer is made to the extent permitted by applicable law.

(iv) The Non-Settling Insurance Rights Transfer is absolute and does not require any further action by the Covered Parties, the Settlement Trust, the Bankruptcy Court, or any other Entity, but is subject to any and all rights and defenses the Non-Settling Insurers have under the applicable law.

(v) The Non-Settling Insurance Rights Transfer is not an assignment of any insurance policy itself.

---

[7] The support of the Unknown Abuse Claims Representative for the releases and protections of the Settling Insurers, in a manner acceptable to the Settling Insurers, is a condition precedent to the effectiveness of the Insurance Settlement Agreements.

**(vi)**     The Non-Settling Insurance Rights Transfer will be governed by the Bankruptcy Code and applicable non-bankruptcy law.

**(vii)**    Subject in all respects to the Insurance Settlement Agreements, including the releases therein, the insurance rights of the Debtor, Additional Debtors, or other Covered Parties that pertain to Non-Abuse Personal Injury Claims are expressly reserved for each Covered Party, as applicable, and the Plan Documents will not, and will not be deemed to, transfer, grant, or assign such insurance rights to the Settlement Trust. For the avoidance of doubt, the insurance rights of any Entity that is not a Covered Party are expressly reserved for such Entity and the Plan Documents will not, and will not be deemed to, transfer, grant, or assign such rights to the Settlement Trust.

**(viii)**   The applicable Debtor, Reorganized Archdiocese, Additional Debtors, and Reorganized Additional Debtors will timely provide the Settlement Trust with such documents or other information as is reasonably requested by the Settlement Trust to pursue recoveries in connection with Non-Settling Insurers' Policies.

(c)      *No Impact on Insurance Rights Not Related to Abuse Claims*. For the avoidance of doubt, the Non-Settling Insurance Rights Transfer that is the subject of this Section 7.2 of the Joint Plan will not, and will not be deemed to, transfer, grant, or assign to the Settlement Trust any insurance rights of the Debtor, the Additional Debtors, or the other Covered Parties that pertain to any Non-Abuse Personal Injury Claims. Subject in all respects to the Insurance Settlement Agreements, including the releases therein, the insurance rights of the Covered Parties that pertain to Non-Abuse Personal Injury Claims are expressly reserved for the Debtor, the Additional Debtors, and each Covered Party, as applicable, and the Plan Documents will not, and will not be deemed to, transfer, grant, or assign such rights to the Settlement Trust. Moreover, for the avoidance of doubt, the insurance rights of any Entity that is not the Debtor, an Additional Debtor, or other Covered Party are expressly reserved for such Entity (including any rights of any director, manager, officer or employee of the Debtor, the Additional Debtors or any other Entity under any D&O Liability Insurance Policies), and the Plan Documents will not, and will not be deemed to, transfer, grant, or assign such rights to the Settlement Trust.

**Section 7.3      Non-Settling Insurance Rights Transfer Back-Up.** Except as otherwise expressly provided herein, the Debtor and the other Covered Parties will make the Non-Settling Insurance Rights Transfer to the Settlement Trust as required by this Joint Plan. If the Covered Party is, at any time, legally precluded from transferring its rights, titles, privileges, interests, claims, demands, or entitlements to any proceeds, payments, benefits, Causes of Action, choses in action, defense, or indemnity, now existing or hereafter arising, accrued or unaccrued, liquidated or unliquidated, matured or unmatured, Disputed or undisputed, fixed or contingent, arising under or attributable to the Insurance Rights subject to the Non-Settling Insurance Rights Transfer, then the Covered Party will: (a) take such actions reasonably requested by the Settlement Trustee to pursue any such Insurance Rights for the benefit of the Settlement Trust; and (b) promptly transfer to the Settlement Trust any amounts recovered under or on account of any of such Insurance Rights; provided, however, that while any such amounts are held by or under the control of any Covered Party, such amounts will be held for the benefit of the Settlement Trust.

**Section 7.4      Insurance Neutrality and Related Matters.**

(a)      *Insurance Neutrality.*

Nothing in the Joint Plan, the Settlement Trust Documents, the Confirmation Order, any other Plan Document, any Insurance Settlement Order, or any other Order, judgment, conclusion of law, finding of fact, determination or statement (written or oral, on or off the record) made by

30

the Bankruptcy Court (or any other court exercising jurisdiction over one or more of the Chapter 11 Cases under 28 U.S.C. sec. 1334) to the contrary (including any other provision that purports to be preemptory, supervening, or grants a release):

(i) constitutes an adjudication, judgment, trial, determination on the merits, finding, or conclusion of law against an Insurer, that:

(A) establishes or liquidates the liability (in the aggregate or otherwise) of (1) the Debtor or any Additional Debtor with respect to any Abuse Claims, or (2) any Insurer with respect to any Abuse Related Insurance Claim;

(B) establishes the liability or obligation of the Debtor, any Additional Debtor, or the Settlement Trust with respect to any Abuse Claim;

(C) establishes that the aggregate value of the Abuse Claims is equal to the amount to be paid by the Debtor or any Additional Debtor to the Settlement Trust;

(D) establishes that it is reasonable, in good faith, or consistent with the terms and conditions of any Subject Insurance Policies for the Debtor, any Additional Debtor, or the Settlement Trust, to settle, allow, assign any value to, liquidate, and/or pay (or present to any Insurers for payment) any Abuse Claim on any terms or conditions contemplated by the Joint Plan, the Settlement Trust Documents, any other Plan Document, or any other document or agreement;

(E) establishes that the Joint Plan, any other Plan Document, or any other document or agreement (including the Allocation Protocol) are reasonable or consistent with any procedures that were used to evaluate, settle, or pay Abuse Claims against the Debtor before the Archdiocese's Petition Date or against any Additional Debtor on the Additional Debtors' Petition Date, or under the terms and conditions of any Subject Insurance Policies or applicable non-bankruptcy law;

(F) establishes that the conduct of the Debtor, the Additional Debtors, the Non-Debtor Catholic Entities, the Creditors' Committees, the Non-Settling Insurers, the Settlement Trustee, or the Abuse Claimants (collectively, the "**Neutrality Parties**"), in connection with the negotiation, development, settlement, and/or implementation of the Joint Plan (including the aggregate value or amount of the Settlement Consideration), the other Plan Documents, or any related documents or agreements was, is, or will be consistent with the terms and conditions of any Subject Insurance Policies or applicable non-bankruptcy law;

(G) establishes that any Insurers were invited to participate in or participated in, consulted on, negotiated, and/or consented to the Settlement Trust Documents and the other Plan Documents; and

(ii) has any *res judicata*, collateral estoppel or other preclusive effect with respect to any matter set forth in this Section 7.4(a) of the Joint Plan, or will otherwise prejudice, diminish, impair, or affect (under principles of waiver, estoppel, or otherwise) any defense, Claim, or right any Insurers

31

may have under any Subject Insurance Policies or applicable non-bankruptcy law with respect thereto; provided, however, without limiting the foregoing, but subject to Section 7.4(c) of the Joint Plan, the Debtor, the Additional Debtors, the Creditors' Committee, and the Settling Insurers expressly agree that they are not litigating any issue set forth in this Section 7.4(a) of the Joint Plan, or any other Insurers' coverage defenses, rights, obligations, or other coverage issue of any kind in any Chapter 11 Cases; subject in all respects to the Insurance Settlement Agreements;

**(iii)** constitutes a decision on any matter at issue, or which may be raised as an issue, in any Action against any Insurers, and, therefore, any judgment, order, finding of fact, conclusion of law, determination or other statement of the Bankruptcy Court or issued or affirmed by the District Court, or entered by any other court exercising jurisdiction over any Chapter 11 Cases under 28 U.S.C. § 1334, including any Confirmation Order, the Settlement Trust Documents, and/or other Plan Documents, and any finding, conclusion or determination entered in connection therewith is not intended – and will not be construed – to constitute a finding, conclusion, or determination regarding any matter set forth in this Section 7.4(a) of the Joint Plan, or any other issue for any insurance coverage purpose whatsoever, and the neither the Protected Parties, the Creditors' Committee, the Settlement Trustee, any Abuse Claimant, nor the Abuse Claims Reviewer will contend otherwise in any Action against any Insurers;

**(iv)** subject to Section 7.4(c) of the Joint Plan, impair any Insurer's legal, equitable, or contractual rights under any Subject Insurance Policies or with respect to Abuse Related Insurance Claims, or any policyholder's legal, equitable or contractual rights under any Subject Insurance Policies or with respect to Abuse Related Insurance Claims;

**(v)** subject to Section 7.4(b) and Section 7.4(c) of the Joint Plan, impair any Non-Settling Insurer's Non-Settling Insurer Contribution Claims, which may be asserted as a defense or counterclaim against the applicable Neutrality Party in any Action against any such Non-Settling Insurer; and

**(vi)** to the extent the Non-Settling Insurer Contribution Claims are determined to be valid, the liability (if any) of such Non-Settling Insurers to the Settlement Trust will be reduced by the amount of such Non-Settling Insurer Contribution Claims. For avoidance of doubt, and notwithstanding anything to the contrary in this Section 7.4(a) of the Joint Plan, all Non-Settling Insurer Contribution Claims will be channeled to the Settlement Trust in accordance with Article 12 of the Joint Plan, and no Non-Settling Insurer Contribution Claim will be the basis for any affirmative recovery against the Archdiocese, the Reorganized Archdiocese, the Additional Debtors, or the Reorganized Additional Debtors or the Settling Insurers.

(b) *Denial of Coverage as Sole Remedy.* Notwithstanding anything to the contrary in the Joint Plan, the sole remedy of any Non-Settling Insurers for any failure by the applicable Debtor, Reorganized Archdiocese, Additional Debtors, or Reorganized Additional Debtors to observe and perform any of the Post-Effective Date Insurance Obligations (if any) or any other duties or obligations that may exist under a Non-Settling Insurer's Subject Insurance Policy will be limited

to asserting any defenses to providing insurance coverage under the applicable Non-Settling Insurer's Subject Insurance Policies, and nothing in the Joint Plan will serve as a basis for any Non-Settling Insurers to seek or be granted any affirmative relief against the applicable Archdiocese, Reorganized Archdiocese, Additional Debtors, Reorganized Additional Debtors, or Settling Insurer.

(c)     *Contrary Positions Prohibited; Enforceability*. On and after entry of the Confirmation Order, no Protected Party, Abuse Claimant, or the Settlement Trustee will assert any Claim, right, or argument in any Action against any Insurer that is contrary to Section 7.4 of the Joint Plan. Each such Protected Party, Abuse Claimant, and the Settlement Trustee may seek to enforce Section 7.4 of the Joint Plan.

(d)     *Preservation of Plan Provisions Among Persons Other Than Non-Settling Insurers*. For the avoidance of doubt, nothing set forth in Section 7.4 of the Joint Plan shall impair any provision of the Joint Plan, including, without limitation, the Injunctions, or any other release or injunctive provisions set forth in the Joint Plan, as between and among (i) any Neutrality Parties who are not Non-Settling Insurers or (ii) any Person who is not a Neutrality Party and each of the Neutrality Parties.

**Section 7.5     Post-Effective Date Insurance Obligations.** After the Effective Date, the Reorganized Archdiocese and Reorganized Additional Debtors will use reasonable efforts to comply with the Post-Effective Date Insurance Obligations. The Bankruptcy Court will retain jurisdiction to adjudicate any disputes that may arise with respect to the Post-Effective Date Insurance Obligations.

**Section 7.6     Settling Insurers' Objection Rights.** Where any of the Settling Insurers' Policies are implicated by a Known Abuse Claim or Unknown Abuse Claim, and the holder of such Claim or the Unknown Claims Representative, as applicable, has commenced an action against a Settling Insurer, the Settling Insurer may object to such Claim or defend on any grounds in that action to the extent provided by law. The Protected Parties shall cooperate in good faith regarding a Settling Insurer's defense or objection.

## ARTICLE 8

## ADMINISTRATION OF NON-ABUSE CLAIMS

**Section 8.1     Reservation of Rights to Object to Non-Abuse Claims.** Unless a Non-Abuse Claim against the Debtor or any Additional Debtor is expressly described as an Allowed Claim in the Joint Plan, or otherwise becomes an Allowed Claim before the Effective Date, on the Effective Date, the applicable Reorganized Archdiocese or Reorganized Additional Debtor will be deemed to have reserved any and all of the rights, interests, and objections of the applicable Debtor, Additional Debtors, the Creditors' Committees, or the Estates to object to any Non-Abuse Claims, or motions or requests that seek a Distribution or other payment of or on account of such Non-Abuse Claims, whether an Administrative Claim, Priority Claim, Secured Claim, or Unsecured Claim, including any and all rights, interests, and objections to the validity or amount of any Non-Abuse Claims, Liens, and interests, whether under the Bankruptcy Code, other applicable law, or contract. The failure to object to any Non-Abuse Claim in any Chapter 11 Cases will be without prejudice to the applicable Reorganized Archdiocese's and Reorganized Additional Debtors' rights to contest or otherwise defend against such Non-Abuse Claim in the Bankruptcy Court when and if such Claim is sought to be enforced by the Creditor holding such Claim.

**Section 8.2     Administration of Non-Abuse Claims**. From and after the Effective Date, the applicable Reorganized Archdiocese and Reorganized Additional Debtors will retain responsibility for administering, disputing, objecting to, compromising, or otherwise resolving and making Distributions, if any, with respect to Non-Abuse Claims.

**Section 8.3      Claim Objection Bar Date (Non-Abuse Claims)**. Unless otherwise provided in the Joint Plan or by Order entered by the Bankruptcy Court, any objections by the applicable Reorganized Archdiocese or Reorganized Additional Debtor to a Non-Abuse Claim will be Filed by no later than the Claims Objection Bar Date (Non-Abuse Claims), or any Bankruptcy Court approved extension thereof. The Reorganized Archdiocese and Reorganized Additional Debtors reserve the right to extend the Claims Objection Bar Date (Non-Abuse Claims) by Filing a motion, with notice to the Post-Confirmation Notice Parties, based upon a reasonable exercise of their business judgment. A motion seeking to extend the Claims Objection Bar Date (Non-Abuse Claims) will not be deemed an amendment to the Joint Plan.

**Section 8.4      Determination of Non-Abuse Claims.** From and after the Effective Date, any Non-Abuse Claim as to which a Proof of Claim or motion or request for payment was timely Filed in any Chapter 11 Cases, or deemed timely Filed by Order entered by the Bankruptcy Court or pursuant to this Joint Plan, may be determined and liquidated pursuant to: (a) an Order entered by the Bankruptcy Court; (b) applicable bankruptcy law; (c) an agreement of the parties without the need for Bankruptcy Court approval; (d) applicable non-bankruptcy law; or (e) the lack of (i) an objection to such Claim, (ii) an application to equitably subordinate such Claim, or (iii) an application to otherwise limit recovery with respect to such Claim, Filed by the applicable Reorganized Archdiocese or Reorganized Additional Debtor on or before any applicable deadline for Filing such objection or request for payment with respect to such Claim. Any such Non-Abuse Claim so determined and liquidated will be deemed to be an Allowed Non-Abuse Claim for such liquidated amount and will be satisfied in accordance with the Joint Plan. Nothing contained in this Section 8.4 of the Joint Plan will constitute, or be deemed a waiver of, any Claims, rights, or Causes of Action that the applicable Debtor, Reorganized Archdiocese, Additional Debtor, or Reorganized Additional Debtor may have against any Entity in connection with or arising out of any Non-Abuse Claim.

**Section 8.5      No Distributions Pending Allowance.** No Distributions will be made with respect to a Disputed Non-Abuse Claim, or any portion thereof, unless and until all objections to such Disputed Non-Abuse Claim have been settled or withdrawn, or have been determined by a Final Order, and such Disputed Non-Abuse Claim has become an Allowed Non-Abuse Claim.

**Section 8.6      Estimation of Non-Abuse Claims.** To effectuate Distributions to Non-Abuse Claims under this Joint Plan, and avoid undue delay in the administration of any Chapter 11 Cases, after notice and a hearing (which notice may be limited to the Creditor holding the applicable Disputed Non-Abuse Claim), the Reorganized Archdiocese and Reorganized Additional Debtors will have the right to seek an Estimation Order related to any Disputed Non-Abuse Claim; provided, however, the Bankruptcy Court or the District Court, as applicable, will determine whether the Disputed Non-Abuse Claims are subject to estimation under section 502(c) of the Bankruptcy Code, and the timing and procedures for such estimation proceedings, if any.

**Section 8.7      Disallowance of Certain Priest Pension Claims.** Notwithstanding anything else to the contrary in the Joint Plan (including any assumption or pass-through of liability set forth in this Joint Plan), all Priest Pension Claims to or for the benefit of any Archdiocesan Priest against whom there have been allegations of Abuse of a minor or vulnerable adult where the Archdiocesan Priest is identified in either (A) the Report Regarding Clergy Abuse or (B) by an Order entered by the Bankruptcy Court before the Confirmation Date are hereby Disputed under this Joint Plan and shall be Disallowed as of the Effective Date. Neither the Reorganized Archdiocese nor any Reorganized Additional Debtor will make any Distribution with respect to any such Disallowed Priest Pension Claim.

## ARTICLE 9
## DISTRIBUTIONS ON ACCOUNT OF NON-ABUSE CLAIMS

**Section 9.1      Distributions Effective upon Tender**. Whenever the Joint Plan requires a Distribution to a Creditor holding a Non-Abuse Claim, such Distributions will be deemed made and effective upon tender thereof by the applicable Reorganized Archdiocese or Reorganized Additional Debtor

to the Creditor to whom the Distribution is due. If any Creditor refuses a tender, the amount tendered and refused will be held by the applicable Reorganized Archdiocese or Reorganized Additional Debtor for the benefit of that Creditor pending final adjudication of the dispute. When and if the dispute is finally adjudicated, and the Creditor receives the Distribution previously tendered and refused, the Creditor will be obliged to apply the Distribution in accordance with the Joint Plan as of the date of the tender. While the dispute is pending and after adjudication thereof, the Creditor will not have the right to claim interest or other charges, or to exercise any other rights that would be enforceable by the Creditor if the applicable Reorganized Archdiocese or Reorganized Additional Debtor failed to pay the tendered Distribution.

Section 9.2 **Non-Abuse Claims against the Debtor and/or any Additional Debtors and Setoff.** To the extent permitted under applicable law, on and after the Effective Date, the applicable Reorganized Archdiocese and/or Reorganized Additional Debtors may set off against any Distribution due on account of a Non-Abuse Claim, the Claims, rights, and Estate Causes of Action of any nature that the Reorganized Archdiocese or Reorganized Additional Debtors may hold against the Creditor holding such Non-Abuse Claim that are not otherwise waived, released, or compromised in accordance with the Joint Plan; provided, however, neither such a setoff, nor the Allowance of any Non-Abuse Claim under the Joint Plan, will constitute a waiver or release by the applicable Reorganized Archdiocese or Reorganized Additional Debtors of any of the Claims, rights, and Estate Causes of Action that the Reorganized Archdiocese or Reorganized Additional Debtors possess against such Creditor.

Section 9.3 **No Distributions on Account of Penalty Claims or Post-Petition Interest**. No Distribution will be made on account of a Non-Abuse Claim for (a) any Penalty Claim or (b) any interest that may have accrued on such Non-Abuse Claim after the applicable Archdiocese's Petition Date or the Additional Debtors' Petition Date.

Section 9.4 **No Distribution on Account of Late-Filed Non-Abuse Claims**. No Distribution will be made on account of a Late-Filed Non-Abuse Claim unless it is Allowed either (a) by the Bankruptcy Court, after notice and hearing, or (b) a written agreement between the Creditor holding such Late-Filed Non-Abuse Claim and the applicable Debtor, Reorganized Archdiocese, Additional Debtor, or Reorganized Additional Debtor.

Section 9.5 **Single Recovery.** In no case will the aggregate value of any Distribution on account of any Allowed Non-Abuse Claim exceed one hundred percent (100%) of the Allowed Non-Abuse Claim.

Section 9.6 **Withholding Taxes**. The Reorganized Archdiocese and Reorganized Additional Debtors will comply with all withholding and reporting requirements imposed by any federal, state, local, or foreign taxing authority, and all Distributions to Creditors holding Allowed Non-Abuse Claims will be subject to any such withholding and reporting requirements. As a condition to making any Distribution under the Joint Plan, the applicable Reorganized Archdiocese or Reorganized Additional Debtors may require the Creditor holding an Allowed Non-Abuse Claim to furnish the applicable Reorganized Archdiocese or Reorganized Additional Debtors with such Creditor's taxpayer identification number and such other information and certification as may be deemed necessary to comply with applicable Tax reporting and withholding laws.

Section 9.7 **Distribution Record Date.**

(a) *Allowed Non-Abuse Claims*. Except as otherwise provided in the Joint Plan, the Reorganized Archdiocese and Reorganized Additional Debtors will have no obligation to recognize the transfer of, or the sale of any participation in, any Non-Abuse Claim that occurs after the Distribution Record Date and will be entitled for all purposes herein to recognize and make Distributions only to those Creditors holding Non-Abuse Claims as of the Distribution Record Date.

(b)      *Pending Transfers*. Except as otherwise provided in a Final Order, the transferees of Non-Abuse Claims that are transferred pursuant to Bankruptcy Rule 3001 before the Distribution Record Date will be treated as Creditors holding such Non-Abuse Claims for all purposes, notwithstanding the expiration of any period provided by Bankruptcy Rule 3001 for objection to such a transfer before the Distribution Record Date.

**Section 9.8      *De Minimis* Distributions**. No Distribution will be made by the Reorganized Archdiocese or any Reorganized Additional Debtors on account of an Allowed Non-Abuse Claim against the Debtor or an Additional Debtor if the amount to be distributed to the applicable Creditor holding such Allowed Non-Abuse Claim has an economic value of less than $50.00.

**Section 9.9      Special Provisions Regarding Unimpaired and Reinstated Claims and Reservation of Setoff Rights.** Except as otherwise specifically provided in the Joint Plan, nothing herein will be deemed to affect, diminish, or impair the Debtor's, Reorganized Archdiocese's, Additional Debtors', or Reorganized Additional Debtors' rights and defenses, both legal and equitable, with respect to any Unimpaired or Reinstated Claims, including legal and equitable defenses to, or setoff against, such Unimpaired or Reinstated Claims.

**Section 9.10  Allowed Claims Paid by Third Parties.** To the extent a Creditor receives a Distribution on account of an Allowed Claim and also receives payment from a party other than the applicable Debtor, Additional Debtors, Reorganized Archdiocese, or Reorganized Additional Debtors on account of such Allowed Claim, such holder will, within thirty (30) days of receipt thereof, repay or return the Distribution to the applicable Reorganized Archdiocese or the Reorganized Additional Debtor to the extent the Creditor's total recovery on account of such Allowed Claim from the third party and under the Joint Plan exceeds the amount of the Allowed Claim as of the date of any such Distribution.

**Section 9.11  Saturdays, Sundays, or Legal Holidays.** If any Distribution or act under the Joint Plan is required to be made or performed on a date that is not a Business Day, then the making of such Distribution or the performance of such act may be completed on the next succeeding Business Day and will be deemed to have been completed as of the required date.

**ARTICLE 10**
**EXECUTORY CONTRACTS AND UNEXPIRED LEASES**

**Section 10.1      Executory Contracts or Unexpired Leases to Be Rejected or Assumed.**

(a)      *Rejection*. Except as otherwise provided in the Joint Plan or in any contract, instrument, release, or other agreement or document entered into in connection with the Joint Plan, each Executory Contract or Unexpired Lease listed the Rejection Schedule (Plan Supplement 10.1(a)) will be deemed rejected pursuant to section 365 of the Bankruptcy Code. The Rejection Schedule will be served on parties to the Executory Contracts or Unexpired Leases listed therein. The Confirmation Order will constitute an Order approving each such rejection, pursuant to section 365 of the Bankruptcy Code as of the Effective Date; provided, however, the Archdiocese and Additional Debtors reserve the right to amend Plan Supplement 10.1(a) to (i) delete any Executory Contract or Unexpired Lease listed therein, thus providing for its assumption, or (ii) add any Executory Contract or Unexpired Lease thereto, thus providing for its rejection. The applicable Archdiocese and Additional Debtors will provide notice of any amendments to Plan Supplement 10.1(a) to the parties to the Executory Contracts or Unexpired Leases affected thereby. The Confirmation Order will constitute an Order, effective as of the Effective Date, approving the rejection of each Executory Contract and Unexpired Lease hereunder.

(b)      *Approval of Assumptions and Cure Claims*. The Confirmation Order will constitute an Order, effective as of the Effective Date, approving the assumption of the Preserved Coverage and each Executory Contract and Unexpired Lease that is not rejected pursuant to Section 10.1(a) of the Joint Plan, pursuant to section 365 of the Bankruptcy Code. The only adequate

36

assurance of future performance will be the promise of the applicable Reorganized Archdiocese or Reorganized Additional Debtors to perform any and all obligations under the applicable assumed Executory Contract or Unexpired Lease. The Assumption and Cure Schedule (Plan Supplement 10.1(b)) will be served on parties to the Executory Contracts or Unexpired Leases listed therein; provided, however, the Archdiocese and Additional Debtors reserve the right to amend the Assumption and Cure Schedule (Plan Supplement 10.1(b)) to (i) delete any Executory Contract or Unexpired Lease listed therein, thus providing for its rejection, or (ii) add any Executory Contract or Unexpired Lease thereto, thus providing for its assumption. The Archdiocese and Additional Debtors, as applicable, will provide notice of any amendments to the Assumption and Cure Schedule (Plan Supplement 10.1(b)) to the parties to the Executory Contracts or Unexpired Leases affected thereby. The Confirmation Order will constitute an Order, effective as of the Effective Date, approving the assumption of each Executory Contract and Unexpired Lease hereunder.

**THE ASSUMPTION OF ANY EXECUTORY CONTRACT OR UNEXPIRED LEASE PURSUANT TO THE JOINT PLAN OR OTHERWISE WILL RESULT IN THE FULL RELEASE AND SATISFACTION OF ANY CLAIMS OR DEFAULTS, WHETHER MONETARY OR NONMONETARY, ARISING UNDER ANY ASSUMED EXECUTORY CONTRACT OR UNEXPIRED LEASE AT ANY TIME BEFORE THE DATE THE APPLICABLE DEBTOR, REORGANIZED ARCHDIOCESE, ADDITIONAL DEBTORS, OR REORGANIZED ADDITIONAL DEBTORS ASSUMES SUCH EXECUTORY CONTRACT OR UNEXPIRED LEASE. ANY PROOFS OF CLAIM FILED WITH RESPECT TO AN EXECUTORY CONTRACT OR UNEXPIRED LEASE THAT HAS BEEN ASSUMED WILL BE DEEMED DISALLOWED AND EXPUNGED, WITHOUT FURTHER NOTICE TO OR ACTION, ORDER OR APPROVAL OF THE BANKRUPTCY COURT.**

(c)     *Payment of Cure Claims*. Unless otherwise agreed in a written agreement between the applicable Creditor and the applicable Debtor, Reorganized Archdiocese, Additional Debtor, or Reorganized Additional Debtor, in full and final satisfaction of, and in exchange for, each Cure Claim, the applicable Reorganized Archdiocese or Reorganized Additional Debtor will pay each Allowed Cure Claim in full, in Cash, within fifteen (15) days after the later of (i) the Effective Date, or (ii) the date such Claim becomes an Allowed Cure Claim.

(d)     *Dispute*.   In the event of a dispute pertaining to assumption, the Cure Claim payments required by section 365(b)(1) of the Bankruptcy Code will be made following the entry of a Final Order that resolves the dispute and approves the assumption. On or before the Plan Supplements Filing Date, the applicable Archdiocese and Additional Debtor will provide a copy of the Assumption and Cure Notice and the Cure Claims for the Executory Contracts and Unexpired Leases listed therein to each applicable contract and lease counterparty. Any objection by any counterparty to an Executory Contract or Unexpired Lease to a proposed assumption or related Cure Claim must be Filed, served, and actually received by the applicable Archdiocese or Additional Debtor by the date on which objections to the Confirmation are due (or such other date as may be provided in the applicable assumption notice). Any counterparty to an Executory Contract or Unexpired Lease that fails to object timely to the proposed assumption or Cure Claim will be deemed to have assented to such assumption and the amount of the applicable Cure Claim.

**Section 10.2     Rejection Damage Claims and the Rejection Damage Claims Bar Date**. Notwithstanding anything to the contrary in the Archdiocese Claims Bar Date Order, without the need for any further notice to, or action, Order, or approval of the Bankruptcy Court, if the rejection of an Executory Contract or Unexpired Lease pursuant to Section 10.1(a) of the Joint Plan gives rise to a Rejection Damage Claim, such Claim will be forever barred and will not be enforceable against the applicable Debtor, Reorganized Archdiocese, Additional Debtor, or Reorganized Additional Debtor unless a Proof of Claim asserting the Rejection Damage Claim is Filed by the Rejection Damage Claims Bar Date.

**Section 10.3    Policies of Insurance.**

(a)    On the Effective Date, the Debtor's and Additional Debtors' insurance policies in force and not expired by their term on the Effective Date, other than the Settling Insurers' Policies, will continue in accordance with their terms and, to the extent applicable, will be deemed assumed by the applicable Reorganized Archdiocese and Reorganized Additional Debtors pursuant to section 365 of the Bankruptcy Code and this Article 10 of the Joint Plan. Nothing in the Joint Plan will affect, impair, or prejudice the rights of the insurance carriers, the insureds, or the Reorganized Archdiocese and Reorganized Additional Debtors under such insurance policies, other than the Settling Insurers' Policies, in any manner, and such insurance carriers, the insureds, the Reorganized Archdiocese, the Reorganized Additional Debtors, and the Settlement Trust will retain all rights and defenses under such insurance policies, subject to the Non-Settling Insurance Rights Transfer. All insurance policies in force and not expired by their term on the Effective Date under this Joint Plan, the Confirmation Order, the Bankruptcy Code, and other applicable law are non-executory contracts for all purposes.

(b)    Notwithstanding anything herein to the contrary, the Reorganized Archdiocese and Reorganized Additional Debtors will be deemed to have assumed all the D&O Liability Insurance Policies pursuant to section 365(a) of the Bankruptcy Code, effective as of the Effective Date. Entry of the Confirmation Order will constitute the Bankruptcy Court's approval of the Reorganized Archdiocese's and Reorganized Additional Debtors' foregoing assumption of the unexpired D&O Liability Insurance Policies.

**Section 10.4    Existing Benefits Programs.** On the Effective Date, all Existing Benefits Programs will be honored except for any Disallowed Priest Pension Claims (including any Priest Pension Claims Disallowed by Section 8.7 of this Joint Plan).

**Section 10.5    Priest Pension Plan and Retiree Medical Benefits.**  On the Effective Date, all Priest Pension Claims (other than Disallowed Priest Pension Claims) and Priest Retiree Medical Benefits Claims will be satisfied in compliance with the Priest Pension Plan and Priest Retiree Medical Benefits.

**Section 10.6    Workers' Compensation Programs**. On the Effective Date, the Reorganized Archdiocese and Reorganized Additional Debtors will continue to honor their obligations under: (a) all applicable workers' compensation laws in all applicable states; and (b) the Workers' Compensation Programs. All Proofs of Claims on account of workers' compensation, including the Workers' Compensation Program, will be deemed withdrawn automatically and without any further notice to or action, order, or approval of the Bankruptcy Court; provided, however, that (a) nothing in the Joint Plan will limit, diminish, or otherwise alter any defenses, Estate Causes of Action, or other rights under applicable non-bankruptcy law with respect to the Workers' Compensation Programs; and (b) nothing herein will be deemed to impose any obligations on the Debtor, the Reorganized Archdiocese, the Additional Debtors, the Reorganized Additional Debtors, or their insurers in addition to what is provided for under the terms of the Workers' Compensation Program and applicable state law.

**Section 10.7    Claims Incurred After the Effective Date**. The Reorganized Archdiocese and Reorganized Additional Debtors may pay Claims that they incur after the Effective Date in the ordinary course of business, without application for or Court approval, subject to any agreements with such Creditors and applicable law.

**Section 10.8    Pass-Through of Parish-Related Agreements.** Notwithstanding anything else to the contrary in this Article 10 and except as otherwise specifically set forth in this Joint Plan, the Parish Service Agreements, the Temporalities Manual, and all oral agreements between the Archdiocesan Parishes and the Archdiocese (**Pass-Through Parish Related Agreements**)  will be neither assumed nor rejected under Bankruptcy Code § 365 and will instead pass through and be treated on and after the Effective Date

38

for all purposes as if the Archdiocese Chapter 11 Case and the Additional Debtors' Chapter 11 Cases had never been filed. All rights, claims, and liabilities of the Archdiocesan Parishes and the Archdiocese under such Parish Service Agreements, the Temporalities Manual, and any oral agreements between the Archdiocesan Parishes and the Archdiocese will remain unaltered and unimpaired for all purposes, except in all cases, for the avoidance of doubt and to the extent applicable, any rights, Claims, and liabilities associated with the Insurance Settlement Agreements as otherwise set forth in this Joint Plan. Notwithstanding the foregoing, in any calendar year, the Debtor shall not make a payment on the Pass-Through Parish Related Agreements if:

      (a)    payments to Class 6 Claims are not current;

      (b)    the payment on the Pass-Through Parish Related Agreement would impair the feasibility of the Joint Plan or the ability of the Debtor to make the next annual payment to the Class 6 Claims under the Joint Plan; and

      (c)    the payment in any plan year is in excess of $3,000,000. For purposes of calculating this limitation, amounts not paid in a prior year may be carried over on a cumulative basis to future years.

The foregoing restriction on payment shall continue only until the Class 6 Claims have been paid the full amount due under this Joint Plan.

**Section 10.9    Reservation of Rights.** Nothing contained in any Plan Document will constitute an admission by any Entity that any contract or lease is in fact an Executory Contract or Unexpired Lease of the Debtor or any Additional Debtor, or that the applicable Debtor, Reorganized Archdiocese, Additional Debtor, or Reorganized Additional Debtor has any liability thereunder. If there is a dispute regarding whether a contract or lease is or was executory or unexpired at the time of assumption, the applicable Debtor, Reorganized Archdiocese, Additional Debtor, or Reorganized Additional Debtor will have fifteen (15) days after entry of a Final Order resolving such dispute to alter the treatment of such contract or lease, in which case the deemed assumption provided for in the Joint Plan will not apply to such contract or lease.

## ARTICLE 11
## CONDITIONS TO THE EFFECTIVE DATE

**Section 11.1    Conditions Precedent to Confirmation**. Confirmation of this Joint Plan will not occur unless all of the following conditions precedent have been satisfied:

      (a)    the Confirmation Order is in form and substance acceptable to the Debtor, Additional Debtors, and the Creditors' Committee;

      (b)    the Confirmation Order approves and implements the Injunctions set forth in the Joint Plan;

      (c)    the Plan Documents will be in form and substance acceptable to the Debtor, the Additional Debtors, and the Creditors' Committee; and

      (d)    the Bankruptcy Court shall have granted the Insurance Settlement Motions (with both such Insurance Settlement Orders and Insurance Settlement Agreements in a form and substance acceptable to the Debtor, the Additional Debtors, the Creditors' Committee and the applicable Settling Insurer).

**Section 11.2    Conditions Precedent to the Effective Date.** The Effective Date will not occur unless all of the following conditions precedent have been satisfied, unless waived in accordance with Section 11.3 of this Joint Plan:

(a)     the Confirmation Order, in form and substance acceptable to the Debtor, the Additional Debtors, and the Creditors' Committee, will have been entered by the Bankruptcy Court and will have become a Final Order; provided that if any appeal of the Confirmation Order is determined by a court of competent jurisdiction to be equitably moot due to substantial consummation as provided in the Joint Plan, the Confirmation Order will be considered a Final Order as of the date that the order determining such appeal to be moot has become a Final Order;

(b)     the Settlement Trust Documents will have become effective in accordance with the terms of the Joint Plan;

(c)     the Settlement Trust will have been established and funded with the Settlement Consideration in accordance with Section 5.3 and Section 7.2 of the Joint Plan;

(d)     the Additional Debtors' Petition Date will have occurred;

(e)     the Debtor and the Additional Debtors will have obtained all authorizations, consents, certifications, approvals, rulings, opinions or other documents that are necessary to implement and effectuate the Joint Plan, including any and all canonical approvals;

(f)     all actions, documents, and agreements necessary to implement and effectuate the Joint Plan will have been effected or executed;

(g)     the Debtor will have executed and delivered the Amended Bond Documents to the Bond Trustee; and

(h)     the Bankruptcy Court shall have entered Insurance Settlement Orders approving all the Insurance Settlement Agreements (with both such Insurance Settlement Orders and Insurance Settlement Agreements in a form and substance acceptable to the Debtor, the Additional Debtors, the Creditors' Committee, and applicable Settling Insurer), and such Insurance Settlement Orders shall have become Final Orders.

**Section 11.3     Waiver of Conditions**. The conditions set forth in Section 11.2 of this Joint Plan may be waived by the written consent of the Debtor, the Additional Debtors, the Creditors' Committee, and applicable Settling Insurer.

**Section 11.4     Filing Notice of Occurrence of the Effective Date.** The Reorganized Archdiocese will File a notice of occurrence of the Effective Date by no later than three (3) days after the Effective Date. Such Notice must state (a) that all conditions to the Joint Plan's becoming effective have been satisfied and (b) the date of the Effective Date.

**Section 11.5     Timing of Effective Date.** The Effective Date shall occur on or before the ninetieth (90th) calendar day after the Confirmation Date, which Effective Date may be extended upon (a) consent of the Plan Proponents or (b) Order of the Bankruptcy Court. Notwithstanding anything in this Article XI to the contrary, the applicable Debtor, Reorganized Archdiocese, Additional Debtors, or Reorganized Additional Debtors shall provide the Debtor and Additional Debtor Settlement Consideration on or before December 31, 2025 or as otherwise indicated in Section 5.3(a).

**Section 11.6     Effect of Non-Occurrence of Conditions**. If either (a) the Effective Date does not occur in accordance with Section 11.5 of this Joint Plan or (b) substantial consummation of this Joint Plan does not occur, then this Joint Plan will be null and void in all respects and nothing contained in the Plan Documents or the Disclosure Statement will: (i) constitute a waiver or release of any Claims by or against the applicable Debtor, Reorganized Archdiocese, Additional Debtors, or Reorganized Additional Debtors; (ii) prejudice in any manner the rights of the applicable Debtor, Reorganized Archdiocese, Additional Debtors, or Reorganized Additional Debtors; (iii) constitute an admission, acknowledgement, offer, or undertaking by the applicable Debtor, Reorganized Archdiocese, Additional Debtors, or Reorganized Additional Debtors in any respect, including in any proceeding or case against the Archdiocese or Additional Debtors; or (iv) be admissible in any Action against the Debtor, Reorganized Archdiocese,

Additional Debtors, or Reorganized Additional Debtors in any court or other forum. In that event, the Archdiocese, Additional Debtors, and all Creditors will be restored to the *status quo ante* as of the day immediately preceding the Confirmation Date as though Confirmation never occurred.

**ARTICLE 12**
**ADDITIONAL EFFECTS OF CONFIRMATION**

**Section 12.1      Binding Effect**. As of the Effective Date, all provisions of the Joint Plan, including all agreements, instruments, and other documents Filed in connection with the Joint Plan by the Debtor, Reorganized Archdiocese, Additional Debtors, or Reorganized Additional Debtors will be binding upon the Debtor, Additional Debtors, Estates, Reorganized Archdiocese, Reorganized Additional Debtors, Settling Insurers, Non-Settling Insurers, Creditors holding Claims against the Debtor or any Additional Debtor (including all Abuse Claimants), each such Creditor's respective successors and assigns, and all other Entities that are affected in any manner by the Joint Plan, regardless of whether the Claim of such Creditor is Impaired under the Joint Plan or whether such Creditor has accepted the Joint Plan. Except as otherwise expressly provided in the Joint Plan, all agreements, instruments, and other documents Filed in connection with the Joint Plan will be given full force and effect and will bind all Entities referred to therein on and after the Effective Date, whether or not such agreements are actually issued, delivered, or recorded on or after the Effective Date, and whether or not such Entities have actually executed any such agreement.

**Section 12.2      Discharge and Discharge Injunctions.**

(a)      *Discharge of the Debtor*.  Except as expressly provided in the Insurance Settlement Agreements, Joint Plan (including but not limited to section 12.14 below), or Confirmation Order, all consideration distributed under the Joint Plan, as well as the Debtor and Additional Debtor Settlement Consideration, will be in exchange for, and in complete satisfaction, settlement, discharge, and termination of, all Claims of any nature whatsoever against or in the Debtor or any of its assets or properties based upon any act, omission, transaction, occurrence, or other activity of any nature that occurred prior to the Confirmation Date, and, as of the Effective Date, the Debtor will be deemed discharged, and each Creditor and any successor, assign, and affiliate of such Creditor will be deemed to have forever waived and discharged the Debtor, to the fullest extent permitted by section 1141 of the Bankruptcy Code, of and from any and all Claims, rights, liabilities, and debts of the kind specified in section 502 of the Bankruptcy Code, based upon any act, omission, transaction, occurrence, or other activity of any nature that occurred prior to the Confirmation Date, in each case whether or not (a) a Proof of Claim based upon such debt is Filed or deemed Filed under section 501 of the Bankruptcy Code, (b) a Claim (including an Abuse Claim) based upon such debt is Allowed under section 502 of the Bankruptcy Code, (c) a Claim based upon such debt is or has become an Expunged Claim, or (d) an Abuse Claimant holding an Abuse Claim based upon such debt is deemed to have accepted the Joint Plan.

Without limiting the foregoing, the Archdiocesan Schools are not separate Entities from the Debtor, and all Abuse Claims asserted against the Archdiocesan Schools are discharged and released in accordance with the preceding paragraph.

In the event any Entity takes any action that is prohibited by, or is otherwise inconsistent with, the injunction provisions in the Joint Plan or the Confirmation Order, then, upon notice to the Bankruptcy Court by an affected party, the action or proceeding in which the Claim of such Entity is asserted will automatically be transferred to the Bankruptcy Court or District Court for enforcement of the Joint Plan. In a successful action to enforce the injunctive provisions of this Section 12.2(a) of the Joint Plan in response to a willful violation thereof, the moving party may seek an award of costs (including reasonable attorneys' fees) against the non-moving party, and such other legal or equitable remedies as are just and proper, after notice and a hearing.

**Notwithstanding any other provision of this Joint Plan, if any court of competent jurisdiction enters a Final Order releasing a Non-Settling Insurer of its duty to defend and/or indemnify the Debtor, the Reorganized Archdiocese, or any other Covered Party or Settling Insurer due, in whole or in part, to the Debtor's or the Reorganized Archdiocese's breach of its Post-Effective Date Insurance Obligations, the Debtor and/or the Reorganized Archdiocese shall be liable for any such breach causing a loss of insurance coverage under any Non-Settling Insurers' Policies, and the Debtor and the Reorganized Archdiocese shall not have a discharge of any Claim that becomes uninsured as a result, and any release or discharge of such Claim under section 1141 of the Bankruptcy Code and this Joint Plan shall be null and void. The Settlement Trustee and the Reorganized Archdiocese shall have the right at their respective discretion to intervene and be heard as parties-in-interest in any Action related to an Abuse Claim in which (i) the Debtor's or the Reorganized Archdiocese's Post-Effective Date Insurance Obligations or (ii) the duty of a Non-Setting Insurer to defend and/or indemnify the Debtor, the Reorganized Archdiocese, or any other Covered Party, are implicated, disputed, or otherwise raised.**

(b)     *Discharge of the Additional Debtors*. Except as expressly provided in the Insurance Settlement Agreements, Joint Plan (including but not limited to section 12.14 below), or Confirmation Order, all consideration distributed under the Joint Plan, as well as the Debtor and Additional Debtor Settlement Consideration, will be in exchange for, and in complete satisfaction, settlement, discharge, and termination of all Claims of any nature whatsoever against or in the Additional Debtors or any of their assets or properties based upon any act, omission, transaction, occurrence, or other activity of any nature that occurred prior to the Confirmation Date, and, as of the Effective Date, the Additional Debtors will be deemed discharged, and each Creditor and any successor, assign, and affiliate of such Creditor will be deemed to have forever waived and discharged the Additional Debtors, to the fullest extent permitted by section 1141 of the Bankruptcy Code, of and from any and all Claims, rights, liabilities, and debts of the kind specified in section 502 of the Bankruptcy Code, based upon any act, omission, transaction, occurrence, or other activity of any nature that occurred prior to the Confirmation Date, in each case whether or not (a) a Proof of Claim based upon such debt is Filed or deemed Filed under section 501 of the Bankruptcy Code, (b) a Claim (including an Abuse Claim) based upon such debt is Allowed under section 502 of the Bankruptcy Code, (c) a Claim based upon such debt is or has become an Expunged Claim, or (d) an Abuse Claimant holding an Abuse Claim based upon such debt is deemed to have accepted the Joint Plan.

Without limiting the foregoing, the Parish Schools are not separate Entities from the Additional Debtors, and all Abuse Claims asserted against the Parish Schools are discharged and released in accordance with the preceding paragraph.

If any Entity takes any action that is prohibited by, or is otherwise inconsistent with, the injunction provisions in the Joint Plan or the Confirmation Order, then, upon notice to the Bankruptcy Court by an affected party, the action or proceeding in which the Claim of such Entity is asserted will automatically be transferred to the Bankruptcy Court or District Court for enforcement of the Joint Plan. In a successful action to enforce the injunctive provisions of this Section 12.2(b) of the Joint Plan in response to a willful violation thereof, the moving party may seek an award of costs (including reasonable attorneys' fees) against the non-moving party, and such other legal or equitable remedies as are just and proper, after notice and a hearing.

**Notwithstanding any other provision of the Joint Plan, if any court of competent jurisdiction enters a Final Order releasing any Non-Settling Insurer of its duty to defend and/or indemnify an Additional Debtor (or Additional Debtors), a Reorganized Additional Debtor (or Reorganized Additional Debtors), or any other Covered Party or Settling Insurer due, in whole or in part, to such Additional Debtor's(s') or such Reorganized Additional**

**Debtor's(s') breach of its (or their) Post-Effective Date Insurance Obligations, then such Additional Debtor(s) and/or Reorganized Additional Debtor(s) shall be liable for any breach causing a loss of insurance coverage under any Non-Settling Insurers' Policies, and such Additional Debtor(s) and/or Reorganized Additional Debtor(s) shall not have a discharge of any Claim that becomes uninsured as a result, and any release or discharge of such Claim under section 1141 of the Bankruptcy Code and this Joint Plan shall be null and void. The Settlement Trustee and such Reorganized Additional Debtor (or Reorganized Additional Debtors) shall have the right at their respective discretion to intervene and be heard at any time as parties-in-interest in any Action related to an Abuse Claim in which (i) the Additional Debtor's (or Additional Debtors') or the Reorganized Additional Debtor's(s') Post-Effective Date Insurance Obligations or (ii) the duty of a Non-Setting Insurer to defend and/or indemnify the Additional Debtors, the Reorganized Additional Debtors, or any other Covered Party, are implicated, disputed, or otherwise raised.**

(c)      *Discharge Injunction – Debtor.* As of the Effective Date, except as expressly provided in the Insurance Settlement Agreements, the Joint Plan, or the Confirmation Order, all Creditors holding Claims of any nature whatsoever against or in the Debtor or any of its assets or properties based upon any act, omission, transaction, occurrence, or other activity of any nature that occurred prior to the Confirmation Date will be precluded and permanently enjoined from prosecuting or asserting any such discharged Claim against the Debtor, the Reorganized Archdiocese, or the property of the Debtor or the Reorganized Archdiocese. In accordance with the foregoing, except as expressly provided in the Joint Plan, the Insurance Settlement Agreements, the Confirmation Order, or the Insurance Settlement Orders, the Confirmation Order will be a judicial determination of discharge or termination of all Claims, and other debts and liabilities against or in the Debtor pursuant to sections 105, 524, and 1141 of the Bankruptcy Code, and such discharge will void any judgment obtained against the Debtor or the Reorganized Archdiocese at any time to the extent such judgment relates to a discharged Claim.

Without limiting the foregoing, the Archdiocesan Schools are not separate Entities from the Debtor, and the discharge injunction set forth in the preceding paragraph will include the Archdiocesan Schools and will apply to all discharged Claims against the Archdiocesan Schools.

(d)      *Discharge Injunction – Additional Debtors*. As of the Effective Date, except as expressly provided in the Insurance Settlement Agreements, the Joint Plan, or the Confirmation Order, all Creditors holding Claims of any nature whatsoever against or in any Additional Debtors or any of the assets or properties of any Additional Debtors based upon any act, omission, transaction, occurrence, or other activity of any nature that occurred prior to the Confirmation Date will be precluded and permanently enjoined from prosecuting or asserting any such discharged Claim against the Additional Debtors, the Reorganized Additional Debtors, or the property of the Additional Debtors or Reorganized Additional Debtors. In accordance with the foregoing, except as expressly provided in the Joint Plan, the Insurance Settlement Agreements, the Confirmation Order, or the Insurance Settlement Orders, the Confirmation Order will be a judicial determination of discharge or termination of all Claims, and other debts and liabilities against or in the Additional Debtors pursuant to sections 105, 524, and 1141 of the Bankruptcy Code, and such discharge will void any judgment obtained against the Additional Debtors or the Reorganized Additional Debtors at any time to the extent such judgment relates to a discharged Claim.

Without limiting the foregoing, the Parish Schools are not separate Entities from the applicable Additional Debtors, and the discharge injunction set forth in the preceding paragraph will include the Parish Schools and will apply to all discharged Claims against the Parish Schools.

**Section 12.3      Exculpations and Limitation of Liability, and Exculpation Injunction.**

(a)  From and after the Effective Date, to the maximum extent permitted by law, no Exculpated Party will have or incur any liability for, and each Exculpated Party will be released from, any Claims, Causes of Action, or liability, and each Exculpated Party is hereby exculpated from any Claim, obligation, suit, judgment, damage, demand, debt, right, Cause of Action, Estate Cause of Action, remedy, loss, and liability for conduct occurring on or after the applicable Archdiocese's Petition Date or the Additional Debtors' Petition Date in connection with or arising out of: (a) the Filing and administration of any Chapter 11 Cases; (b) the negotiation and pursuit of the Disclosure Statement, the Joint Plan, or the Plan Documents, as well as the solicitation of votes for, or Confirmation of, the Joint Plan; (c) the funding or consummation of the Joint Plan, the Settlement Trust, the Plan Documents, or any related agreements, instruments, or other documents, as well as any offer, issuance, and/or Distribution under the Joint Plan or any Settlement Trust Distributions or other disbursements made by the Settlement Trust, whether or not such Distributions, Settlement Trust Distributions, or other disbursements occur following the Effective Date; (d) the implementation of the Joint Plan; and (e) any negotiations, transactions, and documentation in connection with the foregoing clauses (a)-(d); provided, however, the foregoing will not apply to any acts or omissions of an Exculpated Party arising out of or related to acts or omissions that constitute bad faith, fraud, gross negligence, criminal misconduct, or willful misconduct. The Exculpations will be in addition to, and not in limitation of, all other releases, indemnities, exculpations, any other applicable law or rules, or any other provisions of the Joint Plan, which protect such Exculpated Parties from liability.

(b)  The Exculpated Parties have participated in good faith and in compliance with the applicable laws with regard to the solicitation of votes and any distribution of consideration made pursuant to the Joint Plan or Settlement Trust and, therefore, are not, and on account of such distributions, will not be liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Joint Plan, any Distributions made pursuant to the Joint Plan, or any Settlement Trust Distributions or other disbursements made by the Settlement Trust.

(c)  As of the Effective Date, all Creditors are, and will be, expressly, conclusively, absolutely, unconditionally, irrevocably, and forever stayed, restrained, prohibited, barred and enjoined from taking any of the following actions against any Exculpated Party and, solely to the extent provided by section 1125(e) of the Bankruptcy Code, any Entity described in section 1125(e) or its or their property or successors or assigns on account of or based on the subject matter of such Claims, whether directly or indirectly, derivatively or otherwise with respect to any liability or obligation for which an Exculpated Party is discharged, exculpated, or released under the Joint Plan (which, as set forth in this Section 12.3(a) does not include any liability or obligation arising out of or related to acts or omissions of such Exculpated Party that constitute bad faith, fraud, gross negligence, criminal misconduct, or willful misconduct): (i) commencing, conducting, or continuing in any manner, directly or indirectly, any suit, Action, or other proceeding (including any judicial, arbitral, administrative or other proceeding) in any forum; (ii) enforcing, attaching (including any prejudgment attachment), collecting, or in any way seeking to recover any judgment, award, decree, or other Order; (iii) creating, perfecting, or in any way enforcing in any matter, directly or indirectly, any Lien or encumbrance; and/or (v) setting off, seeking reimbursement, contributions from, or subrogation against, or otherwise recouping in any manner, directly or indirectly, any amount against any liability or obligation that is discharged or released under the Joint Plan.

**Section 12.4**  *Channeling Injunction Regarding Abuse Claims against the Protected Parties and Settling Insurers*. **In consideration of the undertakings of the Protected Parties and Settling Insurers, their respective contributions to the Settlement Trust, and other consideration, and, where applicable, pursuant to their respective settlements with the Debtor and/or any Additional Debtors**

and to further preserve and promote the agreements between and among the Protected Parties and Settling Insurers, and to supplement where necessary the injunctive effect of the discharge as provided in section 1141 and 524 of the Bankruptcy Code, and pursuant to sections 105 and 363 of the Bankruptcy Code:

(a) Any and all Channeled Claims against the Protected Parties and Settling Insurers are channeled into the Settlement Trust and will be treated, administered, determined, and resolved under the procedures and protocols and in the amounts established under the Joint Plan and the Settlement Trust Documents as the sole and exclusive remedy for all Entities holding Channeled Claims;

(b) all Entities that have held or asserted, currently hold or assert, or that may in the future hold or assert, any Channeled Claims against the Protected Parties and Settling Insurers will be permanently and forever stayed, restrained, enjoined, and barred from taking any action, directly or indirectly, for the purpose of asserting, enforcing, collecting, recovering, or receiving payments, satisfaction, or recovery from any Protected Party or any of the Settling Insurers, including:

(i) commencing, conducting, or continuing, in any manner, whether directly or indirectly, any suit, Action, or other proceeding of any kind in any forum with respect to any such Channeled Claim against any Protected Party, Settling Insurer, or any property or interest in property of any Protected Party or Settling Insurer;

(ii) enforcing, levying, attaching, collecting, or otherwise recovering, by any manner or means, either directly or indirectly, any judgment, award, decree, or other Order against any Protected Party, Settling Insurer, or any property or interest in property of any Protected Party or Settling Insurer with respect to any such Channeled Claim;

(iii) creating, perfecting, or enforcing, by any manner or means, whether directly or indirectly, any Lien or encumbrance of any kind against any Protected Party, Settling Insurer, or any property or interest in property of any Protected Party or Settling Insurer with respect to any such Channeled Claim;

(iv) asserting, implementing, or effectuating any Channeled Claim of any kind or accomplishing any setoff, right of subrogation, indemnity, contribution, or recoupment of any kind, whether directly or indirectly, against: (A) any obligation due to any Protected Party or Settling Insurer, (B) any Protected Party or Settling Insurer, or (C) any property or interest in property of any Protected Party or Settling Insurer; and

(v) taking any act, in any manner, in any place whatsoever, that does not conform to, or comply with, the provisions of the Joint Plan and the Plan Documents.

(c) The foregoing Channeling Injunction is an integral part of this Joint Plan and is essential to the Joint Plan's consummation and implementation. The channeling of the Channeled Claims as provided in this Section 12.4 of the Joint Plan will inure to the benefit of the Protected Parties and the Settling Insurers. In a successful action to enforce the injunctive provisions of this Section 12.4 of the Joint Plan in response to a willful violation thereof, the moving party may seek an award of costs (including reasonable attorneys' fees)

45

**against the non-moving party, and such other legal or equitable remedies as are just and proper, after notice to the Post-Confirmation Notice Parties and a hearing.**

(d)     Notwithstanding anything to the contrary in Section 12.4 of the Joint Plan, the Channeling Injunction will not enjoin the following:

(i)     the right of any Entity to the treatment afforded to such Entity under the Joint Plan;

(ii)     the right of any Entity to assert any Claim for payment of Settlement Trust expenses solely against the Settlement Trust;

(iii)     the Settlement Trustee's enforcing rights under the Settlement Trust Documents;

(iv)     the Settling Insurers' enforcing rights under the Insurance Settlement Agreements;

(v)     the rights of the Settlement Trust, the Settlement Trustee, Abuse Claimants, Covered Parties, the Reorganized Archdiocese, and the Reorganized Additional Debtors (in each case, to the extent permitted or required under this Joint Plan) to prosecute any Claims against the Non-Settling Insurers based on or arising from the Non-Settling Insurance Rights Transfer or otherwise; or

(vi)     the rights of the Covered Parties with respect to Non-Insurer Contribution Claims against, or with respect to, the Settlement Trust.

**Section 12.5     *Supplemental Settling Insurers' Injunction*. Pursuant to sections 105(a) and 363 of the Bankruptcy Code, and in consideration of the undertakings of the Settling Insurers pursuant to any Insurance Settlement Agreement and the Joint Plan, including the Settling Insurers' purchases of the Settling Insurers' Policies pursuant to section 363(f) of the Bankruptcy Code and the Insurance Settlement Orders, any and all Entities who have held, now hold, or who may in the future hold any Claims against any Protected Party, any Covered Party, or any Settling Insurer, which, directly or indirectly, relate to, any of the Settling Insurers' Policies, are hereby permanently and forever stayed, enjoined, barred, and restrained from taking any action, directly or indirectly, to assert, enforce, collect, or recover, or attempt to assert, enforce, collect, or recover, any such Claim against any Settling Insurer, and/or any Settling Insurers' Policies, including:**

(a)     **commencing, conducting, or continuing, in any manner, whether directly or indirectly, any suit, Action, or other proceeding of any kind in any forum with respect to any such Claim against any Settling Insurer, or any property or interest in property of any Settling Insurer;**

(b)     **enforcing, levying, attaching, collecting, or otherwise recovering, by any manner or means, either directly or indirectly, any judgment, award, decree, or other Order against any Settling Insurer, or any property or interest in property of any Settling Insurer with respect to any such Claim;**

(c)     **creating, perfecting, or enforcing, by any manner or means, whether directly or indirectly, any Lien or encumbrance of any kind against any Settling Insurer, or any property or interest in property of any Settling Insurer with respect to such Claim;**

(d)     **asserting, implementing, or effectuating any Claim of any kind or accomplishing any setoff, right of subrogation, indemnity, contribution, or recoupment of any kind, whether directly or indirectly, against: (A) any obligation due to any Settling**

46

**Insurer, (B) any Settling Insurer, or (C) any property or interest in property of any Settling Insurers; and**

(e)      **taking any act, in any manner, in any place whatsoever, that does not conform to, or comply with, the provisions of the Joint Plan and the Plan Documents.**

The Supplemental Settling Insurers' Injunction will not apply to the rights of any Settling Insurer to any reinsurance recoveries, as provided in Section 7.1(f) of the Joint Plan.

**Section 12.6      Injunction against Interference with the Joint Plan**. Upon entry of the Confirmation Order, all Creditors holding Claims will be precluded and enjoined from taking any actions to interfere with the implementation and consummation of the Joint Plan.

**Section 12.7      General Settlement of Claims.** Pursuant to section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019, and in consideration for the classification, Distributions, Settlement Trust Distributions, releases, and other benefits provided under the Joint Plan, on the Effective Date, the Joint Plan constitutes a good faith compromise and settlement of any and all Claims and controversies resolved pursuant to the Joint Plan.

**Section 12.8      Gatekeeper Injunction.  Subject in all respects to Article 12 of the Joint Plan, no Enjoined Party may assert a Claim or cause of action of any kind or institute any proceeding of any kind against any of the Covered Parties, Settling Insurers, or Settlement Trust that arises from or is in any manner related to the Chapter 11 Cases, the negotiation of the Joint Plan, the negotiation of the Insurance Settlement Agreements, the administration of the Joint Plan by the Settlement Trust and the Debtor, or the property to be distributed under the Joint Plan, or transactions in furtherance of the foregoing without the Bankruptcy Court 1) determining, after Notice and Hearing, that such claim or cause of action (a) is a colorable claim of any kind against the Debtor, the Additional Debtors, the Settlement Trust, or the Settling Insurers; (b) did not arise prior to the Effective Date of the Joint Plan; and (c) is not a Claim owned by the Debtor or Settling Insurers against such Protected Party, Settling Insurer, or the Settlement Trust and 2) subject in all respects to the Injunctions, specifically authorizing such Enjoined Party to initiate a proceeding to assert such Claim or cause of action against such Protected Party, Settling Insurer, or the Settlement Trust.**

**To the extent that a Claim or cause of action is filed against a Covered Party, Settling Insurer, or the Settlement Trust, without the Bankruptcy Court authorizing such Claim or cause of action in accordance with the preceding paragraph, the Claim or cause of action shall be deemed a willful violation of the Injunctions contained in this Joint Plan if the Claim or cause of action is not dismissed within 10 days of the lawyer filing such Claim or cause of action being provided notice that the Claim or cause of action is in violation of the Injunctions contained in the Joint Plan and this provision. The Bankruptcy Court, for any willful violation of the Injunctions contained in this Joint Plan and this provision, shall assess the attorney filing such Claim or cause of action and the named plaintiff in the Claim or cause of action reasonable legal fees incurred by the party enforcing the respective Injunction and this provision.**

**Section 12.9      Exceptions to Exculpation, Injunction, and Release Provisions**. Notwithstanding any provision of the Joint Plan or Confirmation Order to the contrary, no exculpation (including the Exculpations), injunction (including the Injunctions), or release provision contained in the Joint Plan or Confirmation Order will provide any protection or benefit to any Excluded Party.

**Section 12.10   The Debtor's Settlement of Certain Claims.** For other good and valuable consideration, pursuant to Bankruptcy Rule 9019, as of the Effective Date, the Debtor and Reorganized Archdiocese irrevocably and unconditionally, without limitation, release, acquit, forever discharge, and waive any and all (a) Single Business Enterprise Claims, (b) Avoidance Actions against the Additional Debtors or the Non-Debtor Catholic Entities, and (c) Claims or Causes of Action asserted in the Portfolios Adversary Proceeding. The foregoing release is an integral part of the Joint Plan and is essential to the Joint

Plan's consummation and implementation. For the avoidance of doubt, the release contained in this Section 12.10 of the Joint Plan does not release any Non-Debtor Catholic Entity from liability due on or with respect to any Preserved Estate Causes of Action, including the following: (i) the Archdiocesan Agency Assessments; (ii) Archdiocesan Parish Assessments; (iii) Deposit and Loan Notes Receivables; (iv) any liability or obligation relating to or arising out of any Parish Service Agreement; (v) any liability related to or arising out of the Priest Pension Plan or the Priest Retiree Medical Benefits (other than any Disallowed Priest Pension Claim), (vi) any of the Debtor's Administrative Claims against any of the Additional Debtors; or (vii) any charges for services subcontracted by the Archdiocese or owed to other Entities, including legal fees, bank-investment charges and services, employee benefits charges and services, insurance premiums, and self-insured retentions and deductibles.

**Section 12.11   Avoidance Actions.** On the Effective Date, the Archdiocese and the Additional Debtors, on behalf of themselves and their Estates, will release any and all Avoidance Actions, and the Archdiocese and the Additional Debtors, and any Entity acting on behalf of the Archdiocese or the Additional Debtors, will be deemed to have waived the right to pursue any and all Avoidance Action. No Avoidance Actions will revert, or be transferred, to any Creditor or the Settlement Trust.

**Section 12.12   Reservation and Retention of Preserved Estate Causes of Action and Defenses of the Archdiocese and Additional Debtors.** Except to the extent such rights, Claims, Estate Causes of Action, defenses, and counterclaims are otherwise dealt with in the Joint Plan or are expressly and specifically released in connection with the Joint Plan, the Confirmation Order, or any settlement agreement approved during any Chapter 11 Cases, in accordance with section 1123(b) of the Bankruptcy Code, as of the Effective Date, the Reorganized Archdiocese and the Reorganized Additional Debtors reserve any and all rights, Claims, Estate Causes of Action, defenses, and counterclaims of, or accruing to, the applicable Debtor, Reorganized Archdiocese, Additional Debtor, or Reorganized Additional Debtors, whether or not litigation relating thereto is pending on the Effective Date, including any types of Preserved Estate Causes of Action described in Plan Supplement 12.12(a), and as to the Additional Debtors and Reorganized Additional Debtors, any types of Preserved Estate Causes of Action described in Plan Supplement 12.12(b). Except as provided in the Joint Plan or Confirmation Order, on the Effective Date, the Preserved Estate Causes of Action and defenses of the Debtor will re-vest in the Reorganized Archdiocese, and the Preserved Estate Causes of Action and defenses of the Additional Debtors will re-vest in the Reorganized Additional Debtors.

Without limiting the generality of the foregoing, notwithstanding any otherwise applicable principle of law or equity including any principles of judicial estoppel, *res judicata*, collateral estoppel, issue preclusion, or any similar doctrine, **THE FAILURE TO LIST, DISCLOSE, DESCRIBE, IDENTIFY, OR REFER TO A RIGHT, CLAIM, ESTATE CAUSE OF ACTION, DEFENSE, OR COUNTERCLAIM, OR POTENTIAL RIGHT, CLAIM, ESTATE CAUSE OF ACTION, DEFENSE, OR COUNTERCLAIM, IN THE JOINT PLAN, THE SCHEDULES, PLAN SUPPLEMENTS 12.12(a) AND 12.12(b), OR ANY OTHER DOCUMENT FILED WITH THE BANKRUPTCY COURT, WILL IN NO MANNER WAIVE, ELIMINATE, MODIFY, RELEASE, OR ALTER ANY RIGHT OF THE APPLICABLE DEBTOR, REORGANIZED ARCHDIOCESE, ADDITIONAL DEBTORS, OR REORGANIZED ADDITIONAL DEBTORS TO COMMENCE, PROSECUTE, DEFEND AGAINST, SETTLE, AND REALIZE UPON ANY RIGHTS, CLAIMS, ESTATE CAUSES OF ACTION, DEFENSES, OR COUNTERCLAIMS THAT THE ARCHDIOCESE, the ADDITIONAL DEBTORS, OR THEIR ESTATES HAVE, OR MAY HAVE, AS OF THE EFFECTIVE DATE**.

**Section 12.13   Term of Pre-Confirmation Injunctions or Stays.** Unless otherwise provided herein, any and all injunctions or stays arising before the Confirmation Date in accordance with sections 105 or 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, will remain in full force and effect until the Effective Date.

**Section 12.14  Non-Settling Insurance Coverage.** Notwithstanding any Joint Plan provisions other than those set forth in this Section 12.14 of the Joint Plan (and subject in all respects to the provisions of this Section 12.14 of the Joint Plan):

(a)     Abuse Claimants specifically reserve, and do not release, any Claims, to the extent such Claims implicate coverage under any Non-Settling Insurer's Policies, that they may have against (i) the Settlement Trust, as successor to the Debtor and the Additional Debtors as set forth herein or (ii) the Debtor and the Additional Debtor solely if a court of competent jurisdiction determines in a Final Order that the Settlement Trust's assumption of responsibility for the Debtor's and/or Additional Debtor's liability for, and obligation to pay, Abuse Claims nullifies or renders inaccessible coverage from the Non-Settling Insurer for the Abuse Claim of an Abuse Claimant; provided, however, that (notwithstanding anything else herein to the contrary) recourse for such claims is limited to the Non-Settling Insurer and the proceeds of the Non-Settling Insurer's Policies; and provided further that any recovery for such claims will be paid in accordance with the Settlement Trust Documents. The Debtor, the Additional Debtors, and the Co-Insured Parties deny any liability with respect to any Abuse Claims implicating Non-Settling Insurers' coverage obligations.

(b)     Pursuant to the Settlement Trust Documents, Abuse Claimants may commence and name or continue an action against (a) the Settlement Trust, as successor to the Debtor and the Additional Debtors as set forth herein, or (b) the Debtor and an Additional Debtor, solely if a court of competent jurisdiction determines in a Final Order that the Settlement Trust's assumption of responsibility for the Debtor's and/or Additional Debtor's liability for, and obligation to pay, Abuse Claims nullifies or renders inaccessible coverage from the Non-Settling Insurer for the Abuse Claim of an Abuse Claimant, provided that in any such action the sole remedy will be a judgment against the Non-Settling Insurers. Any recovery for such claims will be paid only in accordance with the Settlement Trust Documents. Any recovery from the prosecution of such action is deemed assigned to the Settlement Trust to the extent provided in the Joint Plan and the Settlement Trust Documents. The discharge provided for in the Joint Plan does not apply to and will not limit in any way any obligations of Non-Settling Insurers contained in any Non-Settling Insurers' Policies.

(c)     For the avoidance of doubt, recourse for the Abuse Claims referred to in this Section 12.14 of the Joint Plan is limited to Non-Settling Insurers, the Non-Settling Insurers' Policies, and the proceeds of the Non-Settling Insurers' Policies.

**Section 12.15  Ratification of Sale Injunction. Pursuant to sections 105(a), 363, and 1123 of the Bankruptcy Code, and in consideration of the undertakings of the Settling Insurers pursuant to the Insurance Settlement Agreements, including the Settling Insurers' purchase of the Settling Insurers' Policies free and clear of all Liens, Claims, and Subject Interests pursuant to section 363(f) of the Bankruptcy Code, this Joint Plan hereby incorporates by reference, adopts, and ratifies (and the Confirmation Order shall adopt and ratify) the injunction of Claims against a Settling Insurer with respect to any Subject Insurance Policy set forth in the Insurance Settlement Order(s) (each, a "Sale Injunction") in all respects. The Sale Injunction(s) are in addition to and independent of the injunctions in Sections 12.4 and 12.5 herein.**

### ARTICLE 13
### RETENTION OF JURISDICTION

**Section 13.1     Bankruptcy Court.** Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, on and after the Effective Date, the Bankruptcy Court will retain exclusive jurisdiction over any and all matters arising out of, or related to, any Chapter 11 Cases or the Joint Plan pursuant to sections 105(a) and 1142 of the Bankruptcy Code, including jurisdiction to:

(a)      resolve any matters related to (i) the assumption or rejection of any Executory Contract or Unexpired Lease to which the Debtor or any Additional Debtor is party or with respect to which the applicable Debtor, Reorganized Archdiocese, Additional Debtor, or Reorganized Additional Debtor may be liable, and to hear, determine, and, if necessary, liquidate, any Claims arising therefrom, including Cure Claims pursuant to section 365 of the Bankruptcy Code, and (ii) any dispute regarding whether a contract or lease is or was executory or expired;

(b)      determine, adjudicate, or decide any other applications, adversary proceedings, contested matters, and any other matters pending on the Effective Date;

(c)      ensure that Distributions and Settlement Trust Distributions to Creditors holding Allowed Claims are accomplished as provided herein;

(d)      resolve disputes as to the ownership of any Claim;

(e)      Allow, Disallow, determine, liquidate, classify, estimate, or establish the Priority, Secured, or Unsecured status, or amount of any Claim, including the resolution of (i) any request for payment of any Administrative Claim, (ii) any objections to the secured or unsecured status, priority, amount, or Allowance of Claims, or (iii) any dispute concerning any excusable neglect issues related to any Late-Filed Abuse Claim or Late-Filed Non-Abuse Claim;

(f)      resolve any Claim or Cause of Action against an Exculpated Party, or the applicable Debtor, Reorganized Archdiocese, Additional Debtor, or Reorganized Additional Debtor that arises from, or is related to, any Chapter 11 Cases, the negotiation of the Joint Plan, the administration of the Joint Plan, the Plan Documents, Distributions, Settlement Trust Distributions, or any conduct or transaction in furtherance of the foregoing;

(g)      make any determination with respect to Article 12 of the Joint Plan, including enforcement thereof, and jurisdiction to adjudicate the merits of any underlying colorable Claim or Cause of Action;

(h)      enter and implement such Orders as may be appropriate in the event the Confirmation Order is for any reason stayed, revoked, reversed, modified, or vacated;

(i)      enter such Orders in aid of implementation of the Joint Plan, to the extent authorized by section 1142 of the Bankruptcy Code;

(j)      consider any modifications of the Joint Plan, to cure any defect or omission, or to reconcile any inconsistency in any Order, including the Confirmation Order;

(k)      hear and determine all applications for compensation and reimbursement of expenses of Professionals under sections 330, 331, and 503(b) of the Bankruptcy Code;

(l)      hear and determine disputes arising in connection with the interpretation, implementation, consummation, or enforcement of the Joint Plan or Confirmation Order;

(m)      hear and determine any issue for which the Joint Plan requires an Order;

(n)      hear and determine matters concerning state, local, and federal Taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code;

(o)      hear and determine disputes arising in connection with compensation and reimbursement of expenses of Professionals for services rendered during the period commencing on the applicable Archdiocese's Petition Date or the Additional Debtors' Petition Date through and including the Effective Date;

(p)      hear and determine any Preserved Estate Causes of Action;

50

(q)     hear and determine any matter regarding the existence, nature, and scope of the releases, injunctions and discharge of the Archdiocese, Additional Debtors, or Settling Insurers;

(r)     hear and determine any matter, case, controversy, Action, suit, dispute, or Cause of Action (i) regarding the existence, nature, and scope of the discharge, releases, injunctions (including the Injunctions), and exculpation (including the Exculpations) provided under the Joint Plan, and (ii) enter such Orders as may be necessary or appropriate to implement such discharge, releases, injunctions, exculpations, and other provisions;

(s)     hear and determine conflicts and disputes among the Settlement Trust, the Reorganized Archdiocese, the Reorganized Additional Debtors, and all Creditors, including whether the applicable Debtor, Reorganized Archdiocese, Additional Debtors, or Reorganized Additional Debtors have failed to comply with the Post-Effective Date Insurance Obligations;

(t)     issue injunctions, provide declaratory relief, or grant such other legal or equitable relief as may be necessary or appropriate to restrain interference with the Joint Plan, the Archdiocese or its property, the Reorganized Archdiocese or its property, the Additional Debtors or their property, the Reorganized Additional Debtors or their property, the Estates, the Settlement Trust or its property, the Settlement Trustee, the Professionals, or the Confirmation Order;

(u)     resolve any and all disputes related to the Non-Monetary Plan Provisions, including any action seeking specific performance of the Non-Monetary Plan Provisions;

(v)     issue injunctions, enter and implement other Orders, or take such other actions as may be necessary or appropriate to restrain interference by any Entity with the consummation or enforcement of the Joint Plan;

(w)     adjudicate all disputes arising from or relating to Distributions under the Joint Plan or Settlement Trust Distributions under the Settlement Trust Documents;

(x)     enforce all Orders previously entered by the Bankruptcy Court;

(y)     enter a Final Decree; and

(z)     hear any other matter not inconsistent with the Bankruptcy Code.

**Section 13.2     By the District Court.** Pursuant to sections 105, 1123(a)(5), and 1142(b) of the Bankruptcy Code, and 28 U.S.C. § 1334, on and after the Effective Date, the District Court will retain original, but not exclusive, jurisdiction to hear and determine any and all matters arising under the Bankruptcy Code or arising in or related to any Chapter 11 Cases.

## ARTICLE 14
## MISCELLANEOUS

**Section 14.1     No Successor Liability**. Except as otherwise expressly provided in the Joint Plan, neither the Reorganized Archdiocese nor the Reorganized Additional Debtors, pursuant to the Joint Plan or otherwise, assume, agree to perform, pay, or indemnify any Entity, or otherwise have any responsibility for any liabilities or obligations of the Debtor relating to or arising out of the operations of or assets of the Debtor or Additional Debtors, whether arising before, on or after the Effective Date. The applicable Debtor, Additional Debtors, Reorganized Archdiocese, or Reorganized Additional Debtors will not be deemed to be a successor to the applicable Debtor or Additional Debtors by reason of any theory of law or equity, and none will have any successor or transferee liability of any kind or character; provided, however, (a) the Reorganized Archdiocese and Reorganized Additional Debtors will assume and remain liable for their respective obligations specified in the Joint Plan, the Plan Documents, and the Confirmation Order, and (b) the Settlement Trust will assume the obligations of the Settlement Trust that are specified in the Settlement Trust Documents, Joint Plan, and Confirmation Order.

51

**Section 14.2    Certain Transfer Taxes.** Pursuant to section 1146(c) of the Bankruptcy Code, the following will not be subject to a stamp Tax, real estate transfer Tax, sales or use Tax or similar Tax as follows: (a) the creation of any mortgage, Lien, or other security interest; (b) the making or assignment of any lease or sublease; (c) any transaction related to the Joint Plan, including the sale of the Affordable Housing Facilities; or (d) the making or delivery of any deed, bill of sale or other instrument of transfer or assignment or any plan of merger, consolidation, liquidation or dissolution under, in furtherance of or in connection with the Joint Plan.

**Section 14.3    Operations between the Confirmation Date and Effective Date**. During the period from the Confirmation Date through and until the Effective Date, the Debtor and Additional Debtors may continue to operate as a debtor-in-possession, subject to any and all applicable Orders of the Bankruptcy Court.

**Section 14.4    Dissolution of Creditors' Committees.** On the Effective Date, the Creditors' Committees will dissolve automatically, whereupon their members, Professionals, and agents will be released from any further duties and responsibilities in the Archdiocese's Chapter 11 Case and under the Bankruptcy Code, provided, however, that such parties will continue to be bound by any obligations arising under confidentiality agreements, joint defense/common interest agreements (whether formal or informal), mediation and settlement privileges, and protective Orders entered during any of the Chapter 11 Cases, which will remain in full force and effect according to their terms. For the avoidance of doubt, the Creditors' Committees and Creditors' Committees' Professionals will continue to have a right to be heard with respect to all Fee Applications for their Professional Fee Claims and appeals from the Confirmation Order.

**Section 14.5    Indemnification of Members, Managers, Officers, and Employees.** Any obligation of the Archdiocese or Additional Debtors to indemnify any individual serving at any time on or before the Effective Date, as one of its respective officers, employees, council members, or volunteers by reason of such individual's service in such capacity, to the extent provided in any of the applicable constituent documents, by a written agreement with the Archdiocese, or under the laws of the State of Louisiana, will be deemed and treated as Executory Contracts that are assumed by the applicable Reorganized Archdiocese or Reorganized Additional Debtors, pursuant to the Joint Plan and section 365 of the Bankruptcy Code as of the Effective Date; provided, however, under no circumstances will the applicable Debtor or Reorganized Archdiocese, or Additional Debtors or Reorganized Additional Debtors, assume or be responsible for any alleged indemnification of any Perpetrator or other individual against whom the applicable Archdiocese or Additional Debtor has determined or may, in the future, determine, that there are credible allegations of Abuse, or such individual has or may have engaged in some other conduct that otherwise would excuse the applicable Reorganized Archdiocese or Reorganized Additional Debtors from providing such indemnification to such individual.

**Section 14.6    Good Faith and Section 1125 of the Bankruptcy Code.** As of, and subject to the occurrence of, the Confirmation Date, the Debtor, Additional Debtors, Creditors' Committee, and the Settling Insurers will be deemed to have solicited acceptances of the Joint Plan in good faith and in compliance with the applicable provisions of the Bankruptcy Code, including sections 1125(a) and 1125(e) of the Bankruptcy Code, and any applicable non-bankruptcy law, rule, or regulation governing the adequacy of disclosures in connection with such solicitation.

**Section 14.7    Additional Reservation of Rights.** In accordance with the Joint Plan, the Debtor and Additional Debtors reserve the right to sell property of their respective Estates in any Section 363 Sale, or compromise Estate Causes of Action on behalf of the applicable Estate, at any time before the Effective Date, subject to Bankruptcy Court approval.

**Section 14.8    Special Provisions Governing Unimpaired Claims**. Except as otherwise provided in the Joint Plan, nothing will affect the rights and defenses of the applicable Debtor, Reorganized Archdiocese, Additional Debtor, or Reorganized Additional Debtor with respect to any Unimpaired Claims,

52

including any and all rights with respect to legal and equitable defenses to, or setoffs or Final Orders against, such Unimpaired Claims.

Section 14.9    **Tax Exemption.** Pursuant to section 1146 of the Bankruptcy Code, the delivery or recording of an instrument of transfer on or after the Confirmation Date will be deemed to be made pursuant to and under the Joint Plan, including any transfer by the Debtor and/or any Additional Debtors, or any subsequent transfer by the Reorganized Archdiocese or Reorganized Additional Debtor to the Settlement Trust, or by the Settlement Trustee of property from the Settlement Trust or the sale of the Affordable Housing Facilities and will not be taxed under any law imposing a stamp Tax, transfer Tax, state deed Tax, or similar Tax or fee.

Section 14.10    **Retention of Professionals on and After the Effective Date.** On and after the Effective Date, the Reorganized Archdiocese and Reorganized Additional Debtors may employ and pay any professional without any further notice to or action, Order, or approval of the Bankruptcy Court.

Section 14.11    **Protections against Discriminatory Treatment.** Consistent with section 525 of the Bankruptcy Code and the Supremacy Clause of the U.S. Constitution, no Entity, including Governmental Units, will discriminate against the Reorganized Archdiocese or Reorganized Additional Debtors or deny, revoke, suspend, or refuse to renew a license, permit, charter, franchise, or other grant to, condition such a grant to, discriminate with respect to such a grant against, the Reorganized Archdiocese or Reorganized Additional Debtors, or another Entity with whom the Reorganized Archdiocese or Reorganized Additional Debtors has been associated, solely because the Archdiocese or Additional Debtors have been a debtor under chapter 11 of the Bankruptcy Code, may have been insolvent before the commencement of any Chapter 11 Cases, or has not paid a debt that is dischargeable in any Chapter 11 Cases.

Section 14.12    **Non-Severability.** If, before the entry of the Confirmation Order, any term or provision of the Joint Plan is held by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court, at the request of the Debtor, Additional Debtor, and Creditors' Committee will have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision will then be applicable as altered or interpreted. Notwithstanding any such holding, alteration, or interpretation, the remainder of the terms and provisions of the Joint Plan will remain in full force and effect and will in no way be affected, impaired, or invalidated by such holding, alteration, or interpretation. The terms and provisions of the Joint Plan, including Article 12 of the Joint Plan, are mutually dependent and non-severable. The Confirmation Order will constitute a judicial determination and will provide that each term and provision of the Joint Plan, as it may have been altered or interpreted in accordance with the foregoing, is (a) valid and enforceable pursuant to its terms, (b) integral to the Joint Plan and may not be deleted or modified without the written consent of the applicable Debtor, Reorganized Archdiocese, Additional Debtor, or Reorganized Additional Debtor, and (c) non-severable and mutually dependent.

Section 14.13    **Modification of the Joint Plan.** Subject to the restrictions on modification set forth in section 1127 of the Bankruptcy Code and Bankruptcy Rules 2002 and 3019 and the Insurance Settlement Agreements, the Debtor, Additional Debtors, and Creditors' Committee reserve the right to jointly alter, amend, or modify the Joint Plan before the substantial consummation of the Joint Plan. An Order of the Bankruptcy Court approving any amendment or modification made to the Joint Plan will constitute an Order in aid of consummation of the Joint Plan and will not require the re-solicitation of votes on the Joint Plan. The Joint Plan may not be altered, amended or modified without the express consent of the Debtor, Additional Debtors, and the Creditors' Committee.

Section 14.14    **Revocation or Withdrawal of the Joint Plan.** The Debtor, Additional Debtors, and Creditors' Committee each reserve the right to revoke or withdraw their respective status as plan

53

proponents to the Joint Plan at any time before the Confirmation Date by Filing a notice of withdrawal or revocation.

**Section 14.15    Substantial Consummation**. On the Effective Date, the Joint Plan will be deemed to be substantially consummated under sections 1101 and 1127(b) of the Bankruptcy Code.

**Section 14.16    Filing Additional Documents.** At any time before substantial consummation, the Settlement Trust, the applicable Debtor, Reorganized Archdiocese, Additional Debtors, or Reorganized Additional Debtors may File with the Bankruptcy Court or execute, as appropriate, such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Joint Plan, or otherwise to comply with applicable law.

**Section 14.17    Powers of Officers.** The officers of the applicable Debtor, Reorganized Archdiocese, Additional Debtors, and Reorganized Additional Debtors will have the power to enter into or execute any documents or agreements that they deem reasonable and appropriate to effectuate the terms of the Joint Plan.

**Section 14.18    Effective Date Actions Simultaneous.** Unless the Joint Plan or Confirmation Order provides otherwise, actions required to be taken on the Effective Date will take place and be deemed to have occurred simultaneously, and no such action will be deemed to have occurred before the taking of any other such action.

**Section 14.19    Successors and Assigns.** The rights, benefits, and obligations of any Entity named or referred to in the Joint Plan will be binding on, and will inure to the benefit of, any heir, executor, administrator, successor or assign of such Entity.

**Section 14.20    Headings.** Headings are used in the Joint Plan for convenience and reference only and will not constitute a part of the Joint Plan for any other purpose.

**Section 14.21    Conflicts.** The terms of the Joint Plan will govern in the event of any inconsistency between the Joint Plan and Disclosure Statement. In the event of any inconsistency with the Joint Plan and Confirmation Order, the Confirmation Order will govern with respect to such inconsistency. If there is any inconsistency between the terms of the Confirmation Order and the terms of any final, executed Plan Exhibit or Plan Supplement, the terms of the final, executed Plan Exhibit or Plan Supplement will govern and control. The terms of the Insurance Settlement Order will govern in the event of any inconsistency between the Insurance Settlement Order and the Joint Plan, Disclosure Statement, Confirmation Order, or Plan Documents. Notwithstanding anything to the contrary in the Joint Plan, in the event of any inconsistency between (a) the Insurance Settlement Agreements, on the one hand, and (b) the Joint Plan, on the other, the terms of the applicable Insurance Settlement Agreement shall control and govern; and in the event of any inconsistency between the (x) Insurance Settlement Order, on the one hand, and (y) the Joint Plan and Confirmation Order, on the other, the terms of the Insurance Settlement Order shall control and govern.

**Section 14.22    Governing Law**. Except to the extent that the Bankruptcy Code is applicable, the rights and obligations arising under the Joint Plan will be governed by and construed and enforced as provided in the laws of the State of Louisiana, without giving effect to the principles of conflict of laws thereof.

**Section 14.23    Entire Agreement**. The Plan Documents set forth the entire agreement and undertakings relating to the subject matter thereof and supersede all prior discussions, negotiations, understandings, and documents. No Entity will be bound by any terms, conditions, definitions, warranties, understandings, or representations with respect to the subject matter hereof, other than as expressly provided in the Joint Plan or other Plan Documents, or as may be agreed to by the affected parties in writing after the Effective Date.

**Section 14.24    Post-Confirmation Notices.** On and after the Effective Date, Post-Confirmation Notices will be deemed to have been duly given when such Notices are served on the Post-Confirmation

54

Notice Parties. After the Effective Date, the Reorganized Archdiocese, Reorganized Additional Debtors, and Settlement Trustee are authorized to limit the list of Entities receiving documents pursuant to Bankruptcy Rule 2002 to those Entities who have Filed a renewed request to receive documents pursuant to Bankruptcy Rule 2002.

**Section 14.25     No Admissions.** Other than as expressly provided under the Joint Plan or the Confirmation Order, nothing in the Joint Plan or Disclosure Statement, or any document or pleading Filed in connection therewith, will constitute or be deemed to constitute an admission that the Debtor or any Additional Debtor is subject to, or liable for, any Claim, or is liable for or guilty of any wrongdoing or misconduct of any type.

**Section 14.26     Duplicate Proofs of Claim.** Any duplicate Proof of Claim that has been paid or satisfied, or any Proof of Claim that is clearly marked as amended or superseded by a subsequently Filed Proof of Claim that remains on the Claims Register, may be adjusted or expunged on the Claims Register by the Claims and Voting Agent at the direction of the Reorganized Archdiocese upon stipulation between the parties in interest, without an objection having to be Filed, and without any further notice to or action, Order, or approval of the Bankruptcy Court.

**Section 14.27     Consent to Jurisdiction.** Upon default under the Joint Plan, the (a) Debtor and Reorganized Archdiocese, (b) the Additional Debtors and the Reorganized Additional Debtors, (c) the Contributing Non-Debtor Catholic Entities, (d) the Settlement Trust, (e) the Settlement Trustee, (f) the Creditors' Committees, (g) the Settlement Trust Advisory Committee, (h) the Unknown Abuse Claims Representative, (i) the Abuse Claims Reviewer, and (j) the successors, if any, to (a) through (i) hereof, consent to the jurisdiction of the Bankruptcy Court, and agree that the Bankruptcy Court is and will be the preferred forum for all proceedings relating to any such default.

**Section 14.28     Immediate Binding Effect.** Notwithstanding Bankruptcy Rules 3020(e), 6004(h), 7062, or otherwise, upon the occurrence of the Effective Date, the terms of the Joint Plan (including the Plan Supplements) will be immediately effective and enforceable and deemed binding upon and inure to the benefit of the Debtor, the Additional Debtors, Creditors holding Claims, any Covered Parties, and each of their respective successors and assigns, including the Reorganized Archdiocese and Reorganized Additional Debtors.

**Section 14.29     Closing the Chapter 11 Cases.** As soon as practicable after the Effective Date, when the applicable Reorganized Archdiocese and Reorganized Additional Debtors deem appropriate, the Reorganized Archdiocese or Reorganized Additional Debtors will seek authority from the Bankruptcy Court to close any applicable Chapter 11 Case in accordance with the Bankruptcy Code and Bankruptcy Rules; provided, however, that entry of a Final Decree closing any Chapter 11 Cases will, whether or not specified therein, be without prejudice to the right of the Reorganized Archdiocese, the Reorganized Additional Debtors, the Settlement Trustee, or any other party in interest to reopen the applicable Chapter 11 Case for any matter over which the Bankruptcy Court or District Court has retained jurisdiction under the Joint Plan. Any Order closing any Chapter 11 Case will provide that the Bankruptcy Court or District Court, as appropriate, will retain (a) jurisdiction to enforce, by injunctive relief or otherwise, the Confirmation Order, any other Orders entered in the Chapter 11 Cases, and the obligations created by any Plan Document, and (b) any and all other jurisdiction and authority granted to it under any Plan Document. The existence and continued operation of the Settlement Trust will not prevent the Bankruptcy Court from closing any Chapter 11 Cases or entering a Final Decree. In any Action involving the Settlement Trust or any Action seeking the specific performance of the Non-Monetary Plan Provisions, any costs incurred in reopening the applicable Chapter 11 Case, including any statutory fee, will be paid solely paid by the Settlement Trustee from the Settlement Trust Assets.

Dated as of September 23, 2025.

**THE ROMAN CATHOLIC CHURCH OF THE ARCHDIOCESE OF NEW ORLEANS**

By: _____
　　Most Reverend Gregory M. Aymond
　　Archbishop

**THE ADDITIONAL DEBTORS**

By: _____
　　Very Reverend Patrick R. Carr

**OFFICIAL COMMITTEE OF UNSECURED CREDITORS**

By: _____
　　Patricia M. Moody, Committee Chair

56

Dated: September 23, 2025

 /s/ Mark A. Mintz_____
JONES WALKER LLP
R. Patrick Vance (#13008)
Elizabeth J. Futrell (#05863)
Mark A. Mintz (#31878)
Samantha A. Oppenheim (#38364)
201 St. Charles Avenue, 51st Floor
New Orleans, LA  70170
Telephone:  (504) 582-8000
Facsimile:  (504) 589-8260
Email:  pvance@joneswalker.com
            efutrell@joneswalker.com
            mmintz@joneswalker.com
            soppenheim@joneswalker.com

**ATTORNEYS FOR**
**THE ROMAN CATHOLIC CHURCH OF**
**THE ARCHDIOCESE OF NEW ORLEANS**

 /s/ Douglas S. Draper_____
HELLER, DRAPER, & HORN, L.L.C.
Douglas S. Draper
Greta S. Brouphy
Michael E. Landis
650 Poydras Street, Suite 2500
New Orleans, Louisiana 70130
Telephone: 504-299-3300
Facsimile: 504-299-3399
E-mail: ddraper@hellerdraper.com
            gbrouphy@hellerdraper.com
            mlandis@hellerdraper.com

**ATTORNEYS FOR**
**THE ADDITIONAL DEBTORS**

 /s/ James S. Stang_____
PACHULSKI STANG ZIEHL & JONES LLP
James I. Stang (CA Bar 94435) (pro hac vice)
Iain A.W. Nasatir (CA Bar 148977) (pro hac vice)
Andrew W. Caine (CA Bar 110345) (pro hac vice)
Karen B. Dine (NY Bar 2625366) (pro hac vice)
10100 Santa Monica Blvd., Ste. 1300
Los Angeles, CA  90067
Telephone:  (310) 277-6910
Facsimile:  (310) 201-0760
Email:  jstang@pszjlaw.com
            inasatir@pszjlaw.com
            acaine@pszjlaw.com
            kdine@pszjlaw.com

 /s/ Bradley C. Knapp_____
TROUTMAN PEPPER LOCKE LLP
Omer F. Kuebel, III (La #21682)
Bradley C. Knapp (La #35867)
601 Poydras Street, Suite 2660
New Orleans, Louisiana 70130-6036
Telephone: (504) 558-5210
Facsimile: (504) 910-6847
Email:   rick.kuebel@troutman.com
            brad.knapp@troutman.com

TROUTMAN PEPPER LOCKE LLP
W. Steven Bryant (TX Bar No. 2427413)
300 Colorado Street, Ste. 2100
Austin, Texas 78701
Telephone: (512) 305-4726
Facsimile: (512) 305-4800
Email: steven.bryant@troutman.com

**ATTORNEYS FOR THE OFFICIAL**
**COMMITTEE OF UNSECURED CREDITORS**