## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re: | § | |
| | § | **Case No. 20-10846** |
| **THE ROMAN CATHOLIC CHURCH** | § | |
| **OF THE ARCHDIOCESE OF NEW** | § | **Section "A"** |
| **ORLEANS,** | § | |
| | § | **Chapter 11** |
| Debtor.[1] | § | |

## MOTION FOR ENTRY OF ORDER PURSUANT
## TO SECTIONS 362(A) AND 105(A) OF THE BANKRUPTCY CODE
## AND BANKRUPTCY RULE 9019 (1) APPROVING STIPULATION PERMITTING
## RELIEF FROM THE AUTOMATIC STAY FOR CERTAIN ABUSE CLAIM ACTIONS,
## (2) REMANDING REMOVED ABUSE CLAIM ACTIONS,
## AND (3) GRANTING RELATED RELIEF

**A HEARING WILL BE CONDUCTED ON THIS MATTER ON OCTOBER 16, 2025, AT 1:30 P.M. IN COURTROOM B-709, 500 POYDRAS STREET, NEW ORLEANS, LOUISIANA 70130, OR BY TELEPHONE THROUGH THE DIAL-IN 1-504-517-1385, CONFERENCE CODE 129611. IF YOU OBJECT TO THE RELIEF REQUESTED IN THIS PLEADING, YOU MUST RESPOND IN WRITING. UNLESS DIRECTED OTHERWISE BY THE COURT, YOU MUST FILE YOUR RESPONSE WITH THE CLERK OF THE BANKRUPTCY COURT NO LATER THAN SEVEN (7) DAYS BEFORE THE HEARING DATE. YOU MUST SERVE A COPY OF YOUR RESPONSE ON THE PERSON WHO SENT YOU THE NOTICE; OTHERWISE, THE COURT MAY TREAT THE PLEADING AS UNOPPOSED AND GRANT THE RELIEF REQUESTED.**

---

[1] The last four digits of the Debtor's federal tax identification number are 8966. The Debtor's principal place of business is located at 7887 Walmsley Ave., New Orleans, LA 70125.

The Official Committee of Unsecured Creditors (the "Survivors' Committee") in the above-captioned chapter 11 case (the "**Chapter 11 Case**") of The Roman Catholic Church of the Archdiocese New Orleans, the debtor and debtor in possession herein (the "**Debtor**" or "**Archdiocese**"),by and through its counsel, files this Motion (the "**Motion**"), with the consent of the Debtor and the Additional Debtors,[2]  pursuant to sections 105(a) and 362 of Title 11 of the United States Code, 11 U.S.C. §§ 101, *et. seq.* (the "**Bankruptcy Code**") and Rule 4001 and 9019 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**") for entry of an order, substantially in the form attached hereto as *Exhibit A* (the "**Proposed Order**"): (a) approving the stipulation attached as *Exhibit 1* to the Proposed Order (the "**Stipulation**") modifying the automatic stay for the limited purposes described below and in the Stipulation; (b) remanding all cases removed by the Debtor and identified on Exhibit B to the Stipulation (the "**Removed Abuse Claim Actions**"); (c) approving this Motion and authorizing the Survivors' Committee, Debtor and Additional Debtors to take all actions necessary to effectuate the Stipulation; (d) waiving the fourteen (14) day stay period imposed on the order; and (e) granting such other and further relief as the Court deems just and proper under the circumstances. In support of this Motion, the Survivors' Committee respectfully represents as follows:

## I.    PRELIMINARY STATEMENT

1.    On August 11, 2025, the Bankruptcy Court approved the *Disclosure Statement for the Second Amended Joint Chapter 11 Plan of Reorganization for The Roman Catholic Church of the Archdiocese of New Orleans and Additional Debtors, Proposed by the Debtor, the Additional Debtors, and the Official Committee of Unsecured Creditors, Dated as of August 6, 2025,* [ECF 4242], (the "**Disclosure Statement**") relating to *Second Amended Joint Chapter 11*

---

[2] The Additional Debtors are identified on Exhibit B-1 to the Joint Plan.

*Plan of Reorganization for The Roman Catholic Church of the Archdiocese of New Orleans and Additional Debtors, Proposed by the Debtor, the Additional Debtors, and the Official Committee of Unsecured Creditors, Dated as of August 6, 2025*, [ECF 4235], (as amended, modified, or supplemented from time to time, the "**Joint Plan**").[3]

2.      Under the Joint Plan, a trust will be formed for the payment of Abuse Claims (the "**Trust**"). The Trust will be funded on or near the Effective Date of the Joint Plan with, among other contributions, cash from the Archdiocese, the Additional Debtors, and the Settling Insurers.

3.      In accordance with the Memorandum of Understanding [ECF 4020-1][4] reached among the Debtor, Additional Debtors and the Survivors' Committee, the Debtor and Additional Debtors agreed to permit relief from the automatic stay of Bankruptcy Code Section 362(a) (the "**Automatic Stay**") to permit Abuse Claimants that support the Joint Plan to file and/or prosecute state or federal court actions against the Debtors and/or Additional Debtors relating to Abuse Claims that implicate the insurance coverage issued by the Non-Settling Insurer, including, but not limited to the pursuit of rights under state or federal rights against the Non-Settling Insurer with respect to the Non-Settling Insurer Policies (the "**Abuse Claim Actions**").

4.      The Survivors' Committee proposes that the Debtor, Additional Debtors, and the Survivors' Committee enter into the Stipulation regarding relief from the Automatic Stay for the Abuse Claim Actions to further the Joint Plan and the proposed settlement with Abuse Claimants embodied therein.  In the absence of settlement with the Non-Settling Insurer, despite extensive

---

[3]Unless otherwise defined in this Motion, capitalized terms have the meanings ascribed to them, as applicable, in the Joint Plan Exhibit A (Defined Terms), a copy of which is attached to the Joint Plan.

[4] On September 4, 2025, the Plan Proponents and Certain Abuse Survivors entered into an additional memorandum of understanding (the two memorandum of understanding, the "**MOUs**") that resolves Certain Abuse Survivors' objections to the Joint Plan. *See Notice of Filing Third Amended Joint Plan and Request for Status Conference* [ECF 4332].  Additionally, on September 16, 2025, the Court entered the *Order Granting Certain Abuse Survivors Motion to Withdraw Motion to Dismiss [ECF 3965]* [ECF 4358] (the "**Withdrawal Order**").

mediation, there is no basis for continuing to prohibit Abuse Claimants from pursuing Abuse Claim Actions relating to the Non-Settling Insurer's policies.

## II.    JURISDICTION AND VENUE

5.     This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

6.     Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

7.     The statutory predicates for the relief requested by this Motion are Bankruptcy Code sections 105(a) and 362 and Bankruptcy Rules 4001 and 9019.

## III.    <u>GENERAL FACTUAL BACKGROUND</u>

8.     On May 1, 2020 (the "**Petition Date**"), the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. The Debtor is operating its businesses and properties as debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

9.     The Office of the United States Trustee (the "**U.S. Trustee**") appointed (a) the Survivors' Committee on May 20, 2020, [ECF 94], which has been reconstituted from time to time.

10.     The Archdiocese was established as a diocese in 1793, and became an archdiocese in 1850. In 1941, the Archdiocese was incorporated as a nonprofit corporation under the laws of the state, and the corporation is an organization classified under section 501(c)(3) of the Internal Revenue Code of 1986, as amended. Additional information regarding the Debtors is set forth in the *Declaration of Fr. Patrick R. Carr in Support of the First Day Motions* [ECF 14] and in the Disclosure Statement.

### THE INSURANCE POLICIES

11.     The Archdiocese administers an insurance program for itself, the Additional Debtors and the Non-Debtor Catholic Entities (the "**Insurance Program**"). The Insurance Program includes various types of insurance, including, but not limited to, property, business interruption, commercial general liability, excess liability, personal misconduct, directors' and officers' liability, healthcare liability, professional liability, flood, and cybersecurity insurance. As the Archdiocese administered the Insurance Program before the Petition Date, a portion of the costs of these coverages have been allocated to various Additional Debtors and Non-Debtor Catholic Entities, and the Additional Debtors and Non-Debtor Catholic Entities were responsible for reimbursing the Archdiocese for their share of the insurance premiums.

12.     The Insurance Program includes commercial liability insurance, including primary, umbrella, and excess liability policies that protect the Archdiocese, Additional Debtors, Non-Debtor Catholic Entities, and other Co-Insured Parties for Claims arising out of alleged Abuse (collectively, the "**Archdiocese Insurance Policies**").

13.     Subject to coverage defenses that may exist, the Archdiocese Insurance Policies covering the time period from February 1, 1973, to July 1, 1989, are largely insured by United States Fire & Guaranty Insurance Company (n/k/a "**Travelers Insurance Group**"). Travelers Insurance Group is a Non-Settling Insurer. The Stipulation relates only to Abuse Claims that implicate coverage under the Archdiocese Insurance Policies issued by Travelers Insurance Group (the "**Non-Settling Insurer Policies**").

### ABUSE CLAIMS

14.     As of the Petition Date, the Debtor was defending 34 lawsuits filed between 2018 and 2020 in Louisiana state court by claimants alleging sexual abuse by clergy (the "**Pre-**

**Petition Abuse Cases**"). Upon filing for bankruptcy relief, the Pre-Petition Abuse Cases were stayed pursuant to the Automatic Stay. The Debtor subsequently removed the Removed Abuse Claim Actions to the U.S. District Court for the Eastern District of Louisiana, where they remain stayed.[5]

15.     On October 1, 2020, the Court entered the *Order Fixing Time for Filing Proofs of Claims; Approving Proof of Claim Forms; Providing for Confidentiality Protocols; and Approving Form and Manner of Notice* [Docket #461] (the "**Bar Date Order**"). The Bar Date Order set a claims bar date of March 1, 2021 (the "Bar Date") for general unsecured claims, including claims related to sexual abuse.

16.     Many Abuse claims have been filed both before and after the Bar Date alleging abuse. The vast majority of the claimants who filed Abuse Claims did not sue the Debtor, the Additional Debtors or the Non-Settling Insurer prior to the chapter 11 filing.

17.     Because of the Automatic Stay, holders of Abuse Claims against the Debtor, Additional Debtors or the Non-Settling Insurer have not been able to file Abuse Claim Actions against the Debtor, or Additional Debtors, or the Non-Settling Insurer.

18.     Certain Abuse Survivors previously filed the Certain Abuse Survivors' Motion To Dismiss Bankruptcy Pursuant to 11 U.S.C. § 1112(b) [ECF Doc. 3965] (the "Prior Motion to Dismiss").   The Certain Abuse Survivors moved to withdraw the Prior Motion to Dismiss [ECF 4356], and the Court entered the Withdrawal Order effectuating the withdrawal of the Prior Motion to Dismiss.   For the avoidance of doubt, having participated or joined in the Prior Motion to Dismiss does not prevent any counsel or Abuse Claimant from joining in the

---

[5] While there has been some activity in *J.W. Doe v. Roman Catholic Church of the Archdiocese of New Orleans, et al.*, Case No. 20-cv-1321, related to discovery and records access issues, the removed matters remain stayed with respect to any trial on the merits.

Stipulation and obtaining relief from the Automatic Stay in accordance with the terms of the Stipulation.

### *Background Related to the 3-Year Revival Window*

19.     Before 1993, civil claims related to the sexual abuse of a minor were subject to a one-year prescriptive period in Louisiana. La. Civ. Code Art. 3492. In 1993, the Louisiana legislature enacted La. Rev. Stat. 9:2800.9, which gave individuals who were sexually abused as minors the right to bring a civil claim until ten years after the age of majority (or 28).[6] This was the law when the Debtor filed its chapter 11 case.

20.     On June 14, 2021, months after the Bar Date had passed, the Louisiana legislature amended La. Rev. Stat. 9:2800.9(A)(1) and eliminated the prescription period applicable to civil claims for the sexual abuse of a minor (the "**2021 Amendment**"). It provides, "An action against a person for sexual abuse of a minor or for physical abuse of a minor resulting in permanent impairment or permanent physical injury or scarring does not prescribe." 2021 La. Act 322.  The 2021 Amendment also opened up a three-year revival window (the "**Revival Window**") for claims previously prescribed, providing:

> For a period of three years following the effective date of this Act, any party *whose action under R.S. 9:2800.9* was barred by liberative prescription prior to the effective date of this Act shall be permitted to file an action under R.S. 9:2800.9 against a party whose alleged actions are the subject of R.S. 9:2800.9. It is the intent of the legislature to revive for a period of three years any claim against a party, authorized by R.S. 9:2800.9, that prescribed prior to the effective date of this Act.

2021 La. Acts 322 (emphasis added).

---

[6] Prior to its amendment in 2021,  La. R.S. § 9:2800.9(a)(1) read, "An action against a person for sexual abuse of a minor, or for physical abuse of a minor resulting in permanent impairment or permanent physical injury or scarring, is subject to a liberative prescriptive period of ten years. This prescription commences to run from the day the minor attains majority, and this prescription shall be suspended for all purposes until the minor reaches the age of majority. Abuse has the same meaning as provided in Louisiana Children's Code Article 603. This prescriptive period shall be subject to any exception of preemption provided by law."

21.     In response to challenges by Catholic institutions that the 2021 Amendment was unconstitutional and did not revive claims that arose before 1993 (when La. Rev. Stat. 9:2800.9 was first passed), the Legislature amended the statute again (effective June 10, 2022) to make crystal clear that pre-1993 claims are revived (the "**2022 Amendment**").[7] The 2022 Amendment provides, "Any person whose cause of action related to sexual abuse of a minor was barred by liberative prescription shall be permitted to file an action under R.S. 9:2800.9 on or before June 14, 2024*. It is the express intent of the legislature to revive until June 14, 2024, any cause of action related to sexual abuse of a minor that previously prescribed under any Louisiana prescriptive period*." 2022 La. Acts 386 (emphasis added).

22.     The Debtor and other Catholic institutions challenged the constitutionality of the 2022 Amendment as well.  On June 12, 2024, the Louisiana Supreme Court held that the 2022 Amendment was Constitutional.  *Bienvenu, v. Defendant,* 386 So. 3d 280 (La. 2024).  The requested relief in the Motion is not intended to, nor should it affect any defense to an Abuse Claim Action, including any challenge to the constitutionality of the 2021 Amendment or the 2022 Amendment.

23.     Pursuant to the Stipulation, Abuse Claimants whose counsel[8] execute a joinder to the Stipulation in the form attached as Exhibit A to the Stipulation (a "**Joinder**") can proceed with pursuing Pre-Petition Abuse Actions or initiating an Abuse Action against the Debtor, the Additional Debtors or the Non-Settling Insurer (each such Abuse Action, a "**Released Abuse Claim Action**").

---

[7] On June 23, 2023, the Louisiana Supreme Court declined to rule on the constitutionality of the 2021 Amendment, but held that it did not a revive a claim brought prior to the enactment of  La. Rev. Stat. 9:2800.9 in 1993. *See T.S v. Congregation of Holy Cross Southern Province, Inc*., 2023 La. LEXIS 1368, *8 (La. June 27, 2023).  The Supreme Court remanded the case and observed that the complaint might be amended to plead the window under the 2022 Amendment which does not reference La. Rev. Stat. 9:2800.9.

[8] For the avoidance of doubt, any counsel that is a signatory to either of the MOUs is eligible to execute a Joinder.

24.     A Released Abuse Claim Action must implicate the Archdiocese Insurance Policies issued by the Non-Settling Insurer and cannot implicate an Archdiocese Insurance Policy issued by a Settling Insurer.  Nothing in the Stipulation prohibits any party from seeking relief from the Automatic Stay.   Nor does the Stipulation require any Abuse Claimant to vote to accept the Joint Plan.  However, the Abuse Action of any Abuse Claimant that votes to reject the Plan will not be eligible to be included as a Released Abuse Claim Action.

25.     The Debtor, Additional Debtor or the Survivors' Committee may object to the Automatic Stay being lifted for any Abuse Action that implicates an Archdiocese Insurance Policy issued by a Settling Insurer or if the Abuse Claimant or his or her counsel files an objection to the Joint Plan or seeks to dismiss the Chapter 11 Case[9] or if an Abuse Claimant has voted to reject the Joint Plan.

26.     Abuse Claimants with Released Abuse Claim Actions are also referred to as "**Plaintiffs**."  Abuse Claimants may file and prosecute Released Abuse Claims Action and proceed to trial, subject to the following terms:

a.  The Plaintiffs may file complaints (and any other documents necessary to initiate litigation) and prosecute, and any court where a Released Abuse Claim Action is pending may proceed with all necessary actions to adjudicate, the Released Abuse Claims Actions through final judgment, including against the Debtor and all non-Debtor defendants.

b.  The Debtor is authorized to pay reasonable defense fees and costs in the Released Abuse Claims Actions that are not paid by the Non-Settling Insurer.

c.  Entry of a judgment against any defendant in the Released Abuse Claim Actions shall not create a lien against any non-insurance asset of the Debtor or any Additional Debtor. Nothing in the Stipulation should be construed to prevent a lien from attaching to the Debtor's and/or any Additional Debtors' interest in any insurance policies or the proceeds of such policies issued by the Non-Settling

---

[9] For the avoidance of doubt, having participated or joined in the Prior Motion to Dismiss does not prevent any counsel or Abuse Claimant from joining in the Stipulation and obtaining relief from the Automatic Stay in accordance with the terms of the Stipulation.

Insurer, or the assets of any defendant that is not the Debtor or an Additional Debtor or the enforcement of such lien.

d. No Plaintiff may create or take any action to effectuate the creation or imposition of any lien against any non-insurance asset(s) of the Debtor or any Additional Debtors.

e. No Plaintiff may collect, levy, execute, or otherwise enforce any judgment against any non-insurance asset(s) of the Debtor or any Additional Debtor or the Archdiocese Insurance Policies of any Settling Insurer.

f. No Plaintiff may vote to reject the Joint Plan, object to or join in an objection to confirmation of the Joint Plan, or file or participate in any motion to dismiss the Chapter 11 case.[10]

g. Prior to the Effective Date of the Joint Plan, no Plaintiff may collect, levy, execute, or otherwise enforce any judgment against or collect on any settlement with the Non-Settling Insurer except with the written agreement of the Debtor, applicable Additional Debtor and the Survivors' Committee.  Following the Effective Date of the Joint Plan, any judgment or settlement with respect to the Non-Settling Insurer shall be treated in accordance with the terms of the Joint Plan and Settlement Trust Documents.

27.     Pursuant to the Stipulation, the Debtor agrees that all of the Removed Abuse Claim Actions may be remanded back to the court of original jurisdiction.

28.     The Survivors' Committee files this Motion to formally notice a motion requesting relief from the Automatic Stay and approving the compromise in this Bankruptcy Case as to the remaining relief contained in the Stipulation.

## IV.     BASIS FOR RELIEF REQUESTED

### A.     Approval of the Stipulation Under Bankruptcy Rules 9019 and 4001 and Sections 105(a) and 362(d) of the Bankruptcy Code Is Appropriate.

29.     This Court has the right and the power to approve this Stipulation.  *See* Fed. R. Bankr. P. 4001 and 9019; see also 11 U.S.C. § 105; see also 11 U.S.C. § 362.

---

[10] For the avoidance of doubt, having participated or joined in the Prior Motion to Dismiss does not prevent any counsel or Abuse Claimant from joining in the Stipulation and obtaining relief from the Automatic Stay in accordance with the terms of the Stipulation.

30.     Bankruptcy Rule 9019 provides that "[o]n motion . . . and after notice and a hearing, the court may approve a compromise or settlement." Fed. R. Bankr. P. 9019(a). Settlements are favored in the bankruptcy context to "minimize litigation and expedite the administration of a bankruptcy estate." *Myers v. Martin (In re Martin)*, 91 F.3d 389, 393 (3d Cir. 1996). The approval of a settlement is within the "sound discretion" of the Court. *RiverCity v. Herpel* (*In re Jackson Brewing Co.)*, 624 F.2d 599, 603 (5th Cir. 1980).

31.     Pursuant to Bankruptcy Rule 9019(a), the Court may approve a settlement if it is fair, reasonable, and in the best interests of the estate. *See, e.g., Official Comm. v. Moeller (In re Age Ref., Inc.)*, 801 F.3d 530, 540 (5th Cir. 2015); *see also Jackson Brewing*, 624 F.2d at 602. A settlement should be approved unless it falls below the lowest point in the range of reasonableness, based on a comparison between the terms of the settlement and the costs and benefits of further litigation. *See, e.g., Jackson Brewing Co.*, 624 F.2d at 602 (court must compare the "terms of the compromise with the likely rewards of litigation"); *Cook v. Waldron*, 2006 U.S. Dist. LEXIS 31411, at *10 (S.D. Tex. April 18, 2006) (court should "canvass the issues" to decide if settlement falls "below the lowest point in the range of reasonableness").

32.     In evaluating a proposed settlement, courts consider (i) the "'probability of success in the litigation, with due consideration for the uncertainty in fact and law,'" (ii) the "'complexity and likely duration of the litigation and any attendant expense, inconvenience and delay,'" and (iii) "'[a]ll other factors bearing on the wisdom of the compromise.'" *Cajun Elec. Power Coop.*, 119 F.3d at 356 (quoting *Jackson Brewing Co.*, 624 F.2d at 602). Assessing the first factor—success on the merits—does not require a "mini-trial" on the merits. *Id.* The "other factors" include "the best interests of the creditors, 'with proper deference to their reasonable views,'" as well as "'the extent to which the settlement is truly the product of arms-length

bargaining, and not of fraud or collusion.'" *Id.* (quoting *Conn. Gen. Life Ins. Co. v. United Cos. Fin. Corp. (In re Foster Mortg. Corp.)*, 68 F.3d 914, 917-18 (5th Cir. 1995)).

33.     Bankruptcy Rule 4001(d) governs an agreement to modify or terminate the automatic stay, requiring a motion, copy of the agreement, and a proposed form of order.  This motion is filed in compliance with Bankruptcy Rule 4001.

34.     Section 105(a) of the Bankruptcy Code provides, in relevant part, that "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."  11 U.S.C. § 105(a).  Section 105(a) has been construed to give bankruptcy courts "broad authority" "to take any action that is necessary or appropriate to prevent an abuse of process…"  *See Marrama v. Citizens Bank of Mass.*, 549 U.S. 365, 375, 127 S. Ct. 1105, 166 L. Ed. 2d 956 (2007).

35.     Upon the filing of a bankruptcy petition, section 362 of the Bankruptcy Code automatically stays, among other things, the commencement or continuation of any proceeding against a debtor or "to recover a claim against the debtor that arose before the commencement of the case..." 11 U.S.C. § 362(a).

36.     Section 362(d) of the Bankruptcy Code authorizes the Court to grant relief from the automatic stay for cause.  11 U.S.C. § 362(d)(1).  Section 362(d)(1) specifically provides that "[o]n request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay…for cause…"  *Id.*  Although the Bankruptcy Code itself does not define "cause," courts determine whether cause exists to lift the automatic stay on a case-by-case basis.

37.     Section 362(a)(3) also acts to stay "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate." 11 U.S.C. § 362(a)(3).  As discussed in hearings in Fall 2020 regarding prior motions,[11] stay relief might implicate insurance policies that may cover the Abuse Claims.  Indeed, the Archdiocese Insurance Policies and their proceeds may be property of the estate that are protected by the Automatic Stay. *See e.g. In re BSA*, 642 B.R. 504, 571 (Bankr. D. Del 2022) (holding that insurance policies covering sexual abuse claims are property of the estate), *aff'd*, 650 B.R. 87 (D. Del. 2023); *Diocese of Buffalo v. JMH 100 (In re Diocese of Buffalo*, 626 B.R. 866, 869 (Bankr. W.D.N.Y., 2021)("The property of a bankruptcy estate can include insurance policies of a debtor. . . . If the abuse claims are not insured, the litigation does not impact any insurance asset and section 362(a)(3) would not prohibit litigation against separately incorporated affiliates.").

38.     Courts have held that the stay applies to post-petition actions against non-debtor third parties that are also covered by the debtor's liability insurance policy where the policy is property of the debtor's estate and would be depleted by defense costs. *SN Liquidation, Inc. v. Icon Int'l, Inc. (In re SN Liquidation, Inc.)*, 388 B.R. 579, 584-85 (Bankr. D. Del. 2008)(holding that creditor violated the stay when it filed a post-petition lawsuit against non-debtor third parties because debtor's insurance policy was property of the estate and would be depleted by the defendants' indemnification claims for defense costs); *Roman Catholic Diocese v. LG 35 Doe (In re Roman Catholic Diocese of Syracuse),* 628 B.R. 571, 579 (Bankr. N.D.N.Y. 2021) ("Diminishing the estate's joint insurance policies and the corresponding $25.7 million fund through continued litigation will not only violate § 362(a)(3) but also reduce coverage available

---

[11] Hearings held on August 20 [ECF Doc. 131], September 30 [ECF Doc. 378 and 380] and October 20, 2020 [ECF Doc. 378, 380, 401]

to the approximately 96% of child-victims who chose not to object to a stay of state court actions.").

39.     As the proceeds of the Insurance Policies may be property of the estate and the Additional Debtor Defendants may be covered by these same policies and have asserted claims for indemnification, pursuant to the Stipulation, the Abuse Claimants may also pursue Abuse Claims Actions against the Non-Settling Insurer and the Additional Debtors.

**B.     Cause Exists to Lift the Stay with Respect to the Debtor and (if it Applies) the Additional Debtors and the Non-Settling Insurer.**

40.     The automatic stay has three main purposes: "(1) to provide the debtor a breathing spell from his or her creditors by stopping all collection efforts, (2) to protect creditors from each other by stopping the race for the debtor's assets and preserving the assets for the benefit of all creditors and (3) to provide for an orderly liquidation or administration of the estate." *Prewitt v. N. Coast Vill., Ltd. (In re N. Coast Vill., Ltd.),* 135 B.R. 641, 643 (9th B.A.P. Cir. 1992) (citing House Report No. 95-595, 95th Cong., 1st Sess. At 340-41 (1977); *see also Commonwealth Oil Ref. Co. v. U.S. Envtl. Prot. Agency (In re Commonwealth Oil Ref. Co.),* 805 F.2d 1175, 1182 (5th Cir. 1986) ("The purpose of the automatic stay is to give the debtor a "breathing spell" from his creditors, and also, to protect creditors by preventing a race of the debtor's assets.")

41.     Creditors may obtain relief from the automatic stay by showing "cause." 11 U.S.C. § 362(d)(1). "Cause" as used in 11 U.S.C. § 362(d)(1) is not defined in the Bankruptcy Code and "whether cause exists must be determined on a case by case basis." *In re Xenon Anesthesia of Tex., PLLC*, 510 B.R. 106, 112 (Bankr. S.D.Tex. 2014). The Bankruptcy Code gives courts broad discretion to provide appropriate relief from the automatic stay. *In re Leblanc*, 2020 Bankr. LEXIS 3167, * 5 (Bankr. E.D. La. Nov. 10, 2020).

42.     As this Court has noted:

> When ruling on modifications to the automatic stay to allow litigation to proceed in another forum, some courts have considered whether the litigation that the movant wishes to continue would result in "great prejudice" to the estate or debtor and whether "the hardship to the [movant] caused by the continuance of the stay considerably outweighs the hardship caused to the debtor by modification of the stay."

*In re Leblanc*, 2020 Bankr. LEXIS 3167, * 5 (*citing In re Fowler*, 259 B.R. 856, 859-60 (Bankr. E.D. Tex. 2001) (quoting *In re McGraw*, 18 B.R. 140, 142 (Bankr. W.D. Wis. 1982)).

43.     To determine whether cause exists, courts in this Circuit typically apply the *Sonnax* factors.[12] *In re Sonnax Indus., Inc.*, 907 F.2d 1280, 1286 (2d Cir. 1990).  *See also In re Xenon Anesthesia of Tex., PLLC*, 510 B.R. at 112. Not all of the Sonnax Factors may be relevant to each case. *In re Leblanc*, *2020* Bankr. LEXIS 3167, * 9.  "A court need only apply the factors that are relevant to the particular case, and does not need to give each factor equal weight." *In re Project Orange Assocs., LLC*, 432 B.R. 89, 104 (Bankr. S.D.N.Y. 2010)  *See Kronemyer v. Am. Contractors Indem. Co., (In re Kronemyer)*, 405 B.R. 915, 921 (9th Cir. BAP 2009) (finding that the *Curtis* factors are "appropriate, nonexclusive factors to consider in deciding whether to grant relief from the automatic stay to allow pending litigation to continue in another forum"); *see also In re Curtis*, 40 B.R. 795 (Bankr. D. Utah 1984).

44.     The Survivors' Committee submits that approval of the Stipulation under Bankruptcy Rule 4001 and 9019 and sections 105(a) and 362(d) of the Bankruptcy Code on a

---

[12] The *Sonnax* factors are: (1) whether relief would result in a partial or complete resolution of the issues; (2) lack of any connection with or interference with the bankruptcy case; (3) whether the other proceeding involves the debtor as a fiduciary; (4) whether a specialized tribunal with the necessary expertise has been established to hear the cause of action; (5) whether the debtor's insurer has assumed full responsibility for defending it; (6) whether the action primarily involves third parties; (7) whether litigation in another forum would prejudice the interests of other creditors; (8) whether the judgment claim arising from the other action is subject to equitable subordination; (9) whether movant's success in the other proceeding would result in a judicial lien avoidable by the debtor; (10) the interests of judicial economy and the expeditious and economical resolution of litigation; (11) whether the parties are ready for trial in the other proceeding; and (12) impact of the stay on the parties and the balance of harms.  *See Sonnax Indus., Inc.*, 907 F.2d at 1286.

consensual basis with the Debtors and Additional Debtors is appropriate under the circumstances.

45.     The Survivors' Committee submits that it is in the best interests of the Estate to modify the Automatic Stay in accordance with the terms and conditions of the Stipulation. Modifying the Automatic Stay upon the limited terms set forth in the Stipulation, to allow the Released Abuse Claim Actions to go forward, is consistent with the litigation process set forth in the Joint Plan.   The Survivors' Committee believes that allowing certain Abuse Claimants to begin that litigation process now will not interfere with the Debtor and Additional Debtors seeking confirmation of the Joint Plan.  Relief from the Automatic Stay ends the long delay of Abuse Claimants from proceeding with their Abuse Actions, and, assuming the Plan is confirmed, advances litigation that will ultimately increase the value of the Trust Assets available to compensate Abuse Claimants.

46.     The Debtor and Additional Debtors are amenable to consensually granting relief from the Automatic Stay to Abuse Claimants who have executed either of the MOUs and are not actively working against the Debtor and Additional Debtors by attempting to prevent confirmation of the Joint Plan or currently seeking dismissal of the Bankruptcy Case or if an Abuse Claimant has not voted to reject the Joint Plan.  The Survivors' Committee submits that the requested relief will advance its reorganization effort and ultimately enhance the value of the Trust is reasonable as the Joint Plan limits the amount that the Debtor or Additional Debtors are required to pay to resolve Abuse Claims.

47.     If the Joint Plan is not confirmed, and the Bankruptcy Case is dismissed, then litigation will then go forward against the Debtor, Additional Debtors and all of the Insurers. The Debtor and Additional Debtors are not willing to consent in advance to relief from the

Automatic Stay for those Abuse Claimants actively attempting to prevent confirmation of the Plan. However, nothing in the Stipulation prevents any Abuse Claimant from seeking relief from the Automatic Stay.

48. "[C]ause" is clearly present to warrant approval of the Stipulation under Bankruptcy Rule 4001 and 9019 and sections 105(a) and 362(d) of the Bankruptcy Code.

**C.     Waiver Of The 14 Day Stay Is Appropriate Pursuant to Bankruptcy Rule 4001(a)(4).**

49. Bankruptcy Rule 4001(a)(4) provides that an order granting a motion for relief from the automatic stay is stayed until the expiration of fourteen (14) days after the order is entered, unless the court orders otherwise. *See* Fed. R. Bankr. P. 4001(a)(4). The Survivors' Committee requests that the 14-day stay period imposed by Fed. R. Bankr. Proc. 4001(a)(4) be waived so that the parties can move forward immediately upon entry of the Bankruptcy Court order approving this Motion.

## V.     NOTICE & SERVICE

50. Notice of this Motion has been given to (i) the Non-Settling Insurer; (ii) the U.S. Trustee; and (iii) all other parties requiring service under the Special Notice List, as set forth in the Court's May 1, 2020 *Ex Parte Order Authorizing the Debtor to Limit Notice and Establishing Noticing Procedures* [Doc. No. 22]. The Survivors' Committee submits that for the relief requested, no other or further notice need be given.

## VI.     NO PRIOR REQUEST

51. The Survivors' Committee has not applied previously to this Court with respect to the relief request in the Motion.

## VII.    RESERVATION OF RIGHTS

52.     Nothing in the Proposed Order, this Motion, or the Stipulation, is intended or shall be deemed to constitute an admission as to the validity of any claim against the Debtor or the Additional Debtors.  This Motion, the Stipulation, the Proposed Order, and any supporting documents, filed contemporaneously herewith, are made without prejudice to, and do not constitute a waiver of, any of the Debtor's or Additional Debtors' rights, remedies, or defenses.

## CONCLUSION

53.     **WHEREFORE**, the Survivors' Committee respectfully request that the Court enter the Proposed Order attached as Exhibit A and grant such other and further relief as the Court deems just and proper.

Dated: September 25, 2025

/s/____*Andrew W. Caine*_____
PACHULSKI STANG ZIEHL & JONES LLP
James I. Stang (CA Bar No. 94435) (pro hac vice)
Iain A.W. Nasatir (CA Bar 148977) (pro hac vice)
Andrew W. Caine (CA Bar 110345) (pro hac vice)
10100 Santa Monica Blvd., Ste. 1300
Los Angeles, CA  90067
Telephone:  (310) 277-6910
Email:  jstang@pszjlaw.com
          inasatir@pszjlaw.com
          acaine@pszjlaw.com

**ATTORNEYS FOR THE OFFICIAL
COMMITTEE  OF UNSECURED
CREDITORS**

**EXHIBIT A**

1

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| | § | |
| IN RE: | § | CASE NO. 20-10846 (MSG) |
| | § | |
| THE ROMAN CATHOLIC CHURCH | § | CHAPTER 11 |
| OF THE ARCHDIOCESE OF NEW | § | |
| ORLEANS, | § | SECTION A |
| | § | |
| DEBTOR. | § | COMPLEX CASE |
| | § | |
| | § | |

**[PROPOSED] ORDER ON MOTION FOR ENTRY OF ORDER PURSUANT
TO SECTIONS 362(A) AND 105(A) OF THE BANKRUPTCY CODE
AND BANKRUPTCY RULE 9019 (1) APPROVING STIPULATION PERMITTING
RELIEF FROM THE AUTOMATIC STAY FOR CERTAIN ABUSE CLAIM ACTIONS,
(2) REMANDING REMOVED ABUSE CLAIM ACTIONS,
AND (3) GRANTING RELATED RELIEF**

Upon the motion, dated September 25, 2025 ("**Motion**")[1] of the Official Committee of Unsecured Creditors in the above-captioned chapter 11 case of The Roman Catholic Church of the Archdiocese of New Orleans, the lead debtor and debtor-in-possession (the "**Debtor**" or "**Archdiocese**") through its respective counsel, for entry of an order (this "**Order**") (1) approving the stipulation by and among the Archdiocese, the Additional Debtors, and the Survivors' Committee (collectively with the foregoing, the "**Parties**"), pursuant to Sections 105(a) and 362(a) of Title 11 of the United States Code ("**Bankruptcy Code**") and Rules 2002(a)(2), 6004, and 9019 of the Federal Rules of Bankruptcy Procedure ("**Bankruptcy Rules**"), and substantially in the form attached to this Order as **Exhibit 1** (the "**Stipulation**"); (1) approving the stipulation permitting relief from the Automatic Stay for certain Abuse Claim Actions; (2) remanding Removed Abuse Claim Actions; and (3) granting related relief; and the Bankruptcy Court having reviewed the Motion and the Stipulation; and it appearing that due and adequate notice of the

---

[1] Capitalized terms used and not otherwise defined herein have the meaning ascribed thereto in the Motion.

Motion and Stipulation having been given to all Entities entitled thereto, and that no other or further notice need be given; and the Bankruptcy Court on October 16, 2025 having held a hearing (the "**Hearing**") to consider the relief requested in the Motion; and upon the record of the Hearing; and, after due deliberation, including, without limitation, for the reasons stated by the Bankruptcy Court on the record of the Hearing, it appearing that the relief requested in the Motion and granted herein is in the best interests of the Debtor and its estate (the "**Estate**"), its creditors, and other parties in interest; and good sufficient cause appearing therefor,

**IT IS HEREBY FOUND AND DETERMINED THAT**:

A.     This Bankruptcy Court has jurisdiction over the Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157(a)-(b) and 1334(b). This matter is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue of this case and the Motion in this district is proper under 28 U.S.C. §§ 1408 and 1409.

B.     The statutory predicates for the relief sought in the Motion are Sections 105(a) and 362 of the Bankruptcy Code and Bankruptcy Rules 2002, 4001 and 9019, and Rule 9019-1 of the Local Rules of the United States Bankruptcy Court for the Eastern District of Louisiana.

C.     It is necessary and appropriate for the Bankruptcy Court to retain jurisdiction to, among other things, interpret and enforce the terms and provisions of this Order and the Stipulation, and to adjudicate, if necessary, to the extent provided under 28 U.S.C. § 1334(b), any and all disputes arising from or relating to the Stipulation or this Order.

D.     Proper, timely, adequate and sufficient notice of the Hearing and Motion and the relief requested therein has been provided by the Survivors' Committee in accordance with applicable provisions of the Bankruptcy Code and the Bankruptcy Rules.

E.     The Survivors' Committee demonstrated (i) good, sufficient, and sound business purpose and justification and compelling circumstances for entry into the Stipulation and the

terms of the Stipulation are fair, reasonable, and in the best interests of the Debtor and the Additional Debtors and their creditors pursuant to Bankruptcy Rule 9019.

F.     The Stipulation was negotiated, proposed, and entered into without collusion, in good faith, and from arm's length bargaining positions.

**NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED THAT:**

1.     The Motion, and the relief sought therein (including without limitation the approval of the Stipulation) is GRANTED and APPROVED, in all respects as set forth herein.

2.     The findings of fact set forth above and conclusions of law stated herein, in addition to any findings of fact and conclusions of law stated by the Bankruptcy Court at the Hearing, shall constitute this Bankruptcy Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to the Motion pursuant to Bankruptcy Rule 9014. To the extent any finding of fact later shall be determined to be a conclusion of law, it shall be so deemed, and to the extent any conclusion of law later shall be determined to be a finding of fact, it shall be so deemed.

3.     Any and all objections, if any, to the Motion or the relief requested therein that have not been withdrawn, waived, or settled, and all reservations of rights included in such objections, are hereby overruled on the merits with prejudice.

4.     The Stipulation is approved in its entirety, pursuant to Sections 105(a) and 362(a) of the Bankruptcy Code and Bankruptcy Rule 9019.

5.     All factors set forth in *Official Committee of Unsecured Creditors v. Cajun Elec. Power Coop. by & through Mabey* (*In re Cajun Elec. Power Coop.*), 119 F. 3d 349, 356 (5th Cir. 1997), either weigh in favor of the Settlement Agreement or do not apply.

6.      The terms and provisions of the Stipulation and this Order shall be binding notwithstanding any subsequent appointment of any trustee(s) examiner(s) or receiver(s) under any chapter of the Bankruptcy Code or any other law.

7.      All time periods set forth in this Order shall be calculated in accordance with Bankruptcy Rule 9006(a).

8.      The Stipulation may be modified, amended, or supplemented by the Parties, in a writing signed by the Parties, and in accordance with the terms thereof, without further order of this Bankruptcy Court; *provided* that such modification, amendment, or supplement does not constitute a material change to the relief sought in the Motion and approved by this Order.

9.      Each of the Removed Abuse Claim Actions is hereby remanded back to the court of original jurisdiction for each such Removed Abuse Claim Action.

**IT IS SO ORDERED.**

New Orleans, Louisiana, _____, 2025

_____
        MEREDITH S. GRABILL
        UNITED STATES BANKRUPTCY JUDGE

**EXHIBIT 1**

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| IN RE: | § | CASE NO. 20-10846 (MSG) |
| | § | |
| THE ROMAN CATHOLIC CHURCH | § | CHAPTER 11 |
| OF THE ARCHDIOCESE OF NEW | § | |
| ORLEANS, | § | SECTION A |
| | § | |
| DEBTOR. | § | COMPLEX CASE |
| | § | |
| | § | |

**STIPULATION AMONG DEBTOR, ADDITIONAL DEBTORS AND**
**OFFICIAL COMMITTEE OF UNSECURED CREDITORS CONCERNING**
**RELIEF FROM AUTOMATIC STAY AND**
**REMANDING CERTAIN ABUSE ACTIONS TO STATE COURT**

NOW INTO COURT, through undersigned counsel, come The Roman Catholic Church of the Archdiocese of New Orleans, the above-captioned debtor and debtor-in-possession (the "**Debtor**" or "**Archdiocese**"), the Additional Debtors; and the Official Committee of Unsecured Creditors (the "**Survivors' Committee**"), who submit this stipulation (this "**Stipulation**") concerning relief from the automatic stay to permit Abuse Claimants to file and/or to prosecute lawsuits with respect to their Abuse Claims and remanding certain Abuse Claim Actions to state court on the terms and conditions as set forth herein.

## RECITALS

A.    On May 1, 2020, the Archdiocese filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**"), commencing the above-captioned chapter 11 case (this "**Chapter 11 Case**").

B.    On May 1, 2020 (the "**Petition Date**"), the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. The Debtor is operating its businesses and properties as debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

C.    The Office of the United States Trustee (the "**U.S. Trustee**") appointed (a) the Survivors' Committee on May 20, 2020, [ECF 94], which has been reconstituted from time to time.

D.    On August 11, 2025, the Bankruptcy Court approved the *Disclosure Statement for the Second Amended Joint Chapter 11 Plan of Reorganization for The Roman Catholic Church of the Archdiocese of New Orleans and Additional Debtors, Proposed by the Debtor, the Additional Debtors, and the Official Committee of Unsecured Creditors, Dated as of August 6, 2025,* [ECF 4242], (the "**Disclosure Statement**") relating to *Second Amended Joint Chapter 11 Plan of Reorganization for The Roman Catholic Church of the Archdiocese of New Orleans and Additional Debtors, Proposed by the Debtor, the Additional Debtors, and the Official Committee of Unsecured Creditors, Dated as of August 6, 2025*, [ECF 4235], (as amended, modified, or supplemented from time to time, the "**Joint Plan**").[1]

E.    The Archdiocese was established as a diocese in 1793, and became an archdiocese in 1850. In 1941, the Archdiocese was incorporated as a nonprofit corporation under the laws of

---

[1] Unless otherwise defined in this Stipulation, capitalized terms have the meanings ascribed to them, as applicable, in the Joint Plan Exhibit A (Defined Terms), a copy of which is attached to the Joint Plan.

the state, and the corporation is an organization classified under section 501(c)(3) of the Internal Revenue Code of 1986, as amended.

F.      The Archdiocese administers an insurance program for itself, the Additional Debtors and the Non-Debtor Catholic Entities (the "**Insurance Program**"). The Insurance Program provides various types of insurance, including, but not limited to, insurance for property, business interruption, commercial general liability, excess liability, personal misconduct, directors' and officers' liability, healthcare liability, professional liability, flood, and cybersecurity insurance.  As the Archdiocese administered the Insurance Program before the Petition Date, a portion of the costs of these coverages was allocated to various Additional Debtors and Non-Debtor Catholic Entities, and the Additional Debtors and Non-Debtor Catholic Entities were responsible for reimbursing the Archdiocese for their share of the insurance premiums.

G.      The Insurance Program includes commercial liability insurance, including primary, umbrella, and excess liability policies that protect the Archdiocese, Additional Debtors, Non-Debtor Catholic Entities, and other Co-Insured Parties for Claims arising out of alleged Abuse (collectively, the "**Archdiocese Insurance Policies**").

H.      Subject to coverage defenses that may exist, the Archdiocese Insurance Policies covering the time period from February 1, 1973, to July 1, 1989, are largely insured by United States Fire & Guaranty Insurance Company (n/k/a "**Travelers Insurance Group**").  Travelers Insurance Group is a Non-Settling Insurer under the terms of the Joint Plan.

I.      As of the Petition Date, the Debtor was defending 34 lawsuits filed between 2018 and 2020 in Louisiana state court by claimants alleging sexual abuse by clergy (the "**Pre-Petition Abuse Cases**"). Upon filing for bankruptcy relief, the Pre-Petition Abuse Cases were stayed pursuant to section 362(a) of the Bankruptcy Code (the "**Automatic Stay**"). The Debtor

subsequently removed the Abuse Claim Actions identified on Exhibit B (the "**Removed Abuse Claim Actions**") to the U.S. District Court for the Eastern District of Louisiana, where they remain stayed.

J.        On October 1, 2020, the Court entered the *Order Fixing Time for Filing Proofs of Claims; Approving Proof of Claim Forms; Providing for Confidentiality Protocols; and Approving Form and Manner of Notice* [Docket #461] (the "**Bar Date Order**"). The Bar Date Order set a claims bar date of March 1, 2021 (the "<u>Bar Date</u>") for general unsecured claims, including claims related to sexual abuse.

K.        Many Abuse Claims have been filed both before and after the Bar Date. The vast majority of the claimants who filed Abuse Claims did not sue the Debtor or the Additional Debtors prior to the chapter 11 filing.

L.        Because of the Automatic Stay, holders of Abuse Claims against the Debtor or Additional Debtors have not been able to file Abuse Claim actions against the Debtor, Additional Debtors, or the Non-Settling Insurer (the Pre-Petition Abuse Claims and any unfiled litigation claims of the Abuse Claimants against the Debtor, Additional Debtors or Non-Settling Insurer, collectively, the "**Abuse Claim Actions**").

M.        Before 1993, civil claims related to the sexual abuse of a minor were subject to a one-year prescriptive period in Louisiana. La. Civ. Code Art. 3492. In 1993, the Louisiana legislature enacted La. Rev. Stat. 9:2800.9, which gave individuals who were sexually abused as

minors the right to bring a civil claim until ten years after the age of majority (or 28).[2] This was the law when the Debtor filed its chapter 11 case.

N.        On June 14, 2021, months after the Bar Date had passed, the Louisiana legislature amended La. Rev. Stat. 9:2800.9(A)(1) and eliminated the prescription period applicable to civil claims for the sexual abuse of a minor (the "**2021 Amendment**"), providing "[a]n action against a person for sexual abuse of a minor or for physical abuse of a minor resulting in permanent impairment or permanent physical injury or scarring does not prescribe." 2021 La. Act 322.  The 2021 Amendment also opened up a three-year revival window (the "**Revival Window**") for claims previously prescribed, providing:

> For a period of three years following the effective date of this Act, any party whose action under R.S. 9:2800.9 was barred by liberative prescription prior to the effective date of this Act shall be permitted to file an action under R.S. 9:2800.9 against a party whose alleged actions are the subject of R.S. 9:2800.9. It is the intent of the legislature to revive for a period of three years any claim against a party, authorized by R.S. 9:2800.9, that prescribed prior to the effective date of this Act.

2021 La. Acts 322 (emphasis added).

O.        In response to challenges by Catholic institutions that the 2021 Amendment was unconstitutional and did not revive claims that arose before 1993 (when La. Rev. Stat. 9:2800.9 was first passed), the Legislature amended the statute again (effective June 10, 2022) to make crystal clear that pre-1993 claims are revived (the "**2022 Amendment**").[3] The 2022 Amendment

---

[2] Prior to its amendment in 2021,  La. R.S. § 9:2800.9(a)(1) read, "An action against a person for sexual abuse of a minor, or for physical abuse of a minor resulting in permanent impairment or permanent physical injury or scarring, is subject to a liberative prescriptive period of ten years. This prescription commences to run from the day the minor attains majority, and this prescription shall be suspended for all purposes until the minor reaches the age of majority. Abuse has the same meaning as provided in Louisiana Children's Code Article 603. This prescriptive period shall be subject to any exception of preemption provided by law."

[3] On June 23, 2023, the Louisiana Supreme Court declined to rule on the constitutionality of the 2021 Amendment, but held that it did not a revive a claim brought prior to the enactment of  La. Rev. Stat. 9:2800.9 in 1993. *See T.S v. Congregation of Holy Cross Southern Province, Inc*., 2023 La. LEXIS 1368, *8 (La. June 27, 2023).  The Supreme Court remanded the case and observed that the complaint might be amended to plead the window under the 2022 Amendment which does not reference La. Rev. Stat. 9:2800.9.

provides, "Any person whose cause of action related to sexual abuse of a minor was barred by liberative prescription shall be permitted to file an action under R.S. 9:2800.9 on or before June 14, 2024*. It is the express intent of the legislature to revive until June 14, 2024, any cause of action related to sexual abuse of a minor that previously prescribed under any Louisiana prescriptive period*." 2022 La. Acts 386 (emphasis added). The Revival Window was subsequently extended by the Louisiana Legislature until June 14, 2027.

P.      The Debtor and other Catholic institutions challenged the constitutionality of the 2022 Amendment as well.  On June 12, 2024, the Louisiana Supreme Court held that the 2022 Amendment was constitutional.  *Bienvenu, v. Defendant,* 386 So. 3d 280 (La. 2024). Defendants in child sex abuse litigation continue to raise constitutional concerns regarding the Revival Window, which have not yet been resolved.

Q.      This Stipulation is not intended to, nor should it in any way, affect any defense to an Abuse Claim Action, including any challenge to the constitutionality of the 2021 Amendment or the 2022 Amendment.

 **NOW, THEREFORE**, the Debtor, the Additional Debtors, and the Committee hereby stipulate and agree, and the Court hereby orders, as follows:

1.      Pursuant to this Stipulation, Abuse Claimants who execute a joinder to this Stipulation in the form attached as Exhibit A (the "**Joinder**") can proceed pursuant to state and/or federal law with pursuing Pre-Petition Abuse Actions or initiating an Abuse Action against the Debtor, the Additional Debtors or the Non-Settling Insurer ("**Released Abuse Claim Action**").

2.      A Released Abuse Claim Action must implicate the Archdiocese Insurance Policies issued by the Non-Settling Insurer and cannot implicate an Archdiocese Insurance Policy issued by a Settling Insurer.  Nothing in this Stipulation prohibits any party from seeking relief from the Automatic Stay.

3.      The Debtor, Additional Debtor or the Committee may object to the Automatic Stay being lifted for any Abuse Action that implicates an Archdiocese Insurance Policy issued by a Settling Insurer, or if the Abuse Claimant or his or her counsel files an objection to the Joint Plan or seeks to dismiss the Chapter 11 Case,[4] or if the Abuse Claimant votes to reject the Joint Plan.

4.      The Abuse Claimant must serve Notice via electronic or first class mail on the following (the **Notice Parties**") of any Released Abuse Claim Action within 14 days of Plaintiff taking any action to file, prosecute, or pursue a Released Abuse Claim Action:

Counsel for the Debtor:

> Jones Walker LLP
> 201 St. Charles Avenue, 51st Floor
> New Orleans, LA  70170
> Telephone: (504) 582-8000
> Facsimile: (504) 589-8260

ATTN:

> R. Patrick Vance (pvance@joneswalker.com)
> Elizabeth J. Futrell (efutrell@joneswalker.com)
> Mark A. Mintz (mmintz@joneswalker.com)
> Samantha A. Oppenheim (soppenheim@joneswalker.com)

Counsel for the Additional Debtors:

> HELLER, DRAPER, & HORN, L.L.C.
> 650 Poydras Street, Suite 2500

---

[4] For the avoidance of doubt, having participated or joined in the Prior Motion to Dismiss does not prevent any counsel or Abuse Claimant from joining in the Stipulation and obtaining relief from the Automatic Stay in accordance with the terms of the Stipulation.

New Orleans, Louisiana 70130
Telephone: 504-299-3300
Facsimile: 504-299-3399

ATTN:

Douglas S. Draper (ddraper@hellerdraper.com)
Greta S. Brouphy (gbrouphy@hellerdraper.com)
Michael E. Landis (mlandis@hellerdraper.com)

Counsel for the Survivors' Committee

Pachulski Stang Ziehl & Jones LLP
10100 Santa Monica Blvd., Suite 1300
Los Angeles, CA 90067
Telephone: (310) 277-6910
Facsimile: (310) 201-0760

ATTN:

James I. Stang (jstang@pszjlaw.com)
Iain A. W. Nasatir. (inasatir@pszjlaw.com)
Andrew W. Caine (acaine@pszjlaw.com)

Counsel for the Non-Settling Insurer

DENTONS US LLP
650 Poydras Street, Suite 2850
New Orleans, LA 70130-6132
Telephone: (504) 524-5446

ATTN:

Jerry A. Beatmann, Jr. (jay.beatmann@dentons.com)

DENTONS US LLP
233 South Wacker Drive, Suite 5900
Chicago, IL 60606-6361
Telephone: (312) 876-8000

ATTN:

Patrick C. Maxcy (patrick.maxcy@dentons.com)
Keith Moskowitz (keith.moskowitz@dentons.com)

5.      Abuse Claimants with Released Abuse Claim Actions are also referred to as

"**Plaintiffs**."  Abuse Claimants may file and prosecute Released Abuse Claims Action and

proceed to trial, subject to the following terms:

    a.  The Plaintiffs may file complaints (and any other documents necessary to initiate litigation) and prosecute, and any court where a Released Abuse Claim Action is pending may proceed with all necessary actions to adjudicate, the Released Abuse Claims Actions through final judgment, including against the Debtor and all non-Debtor defendants.

    b.  The Debtor is authorized to pay reasonable defense fees and costs in the Released Abuse Claims Actions that are not paid by the Non-Settling Insurer.

    c.  Entry of a judgment against any defendant in the Released Abuse Claim Actions shall not create a lien against any non-insurance asset of the Debtor or any Additional Debtor. Nothing in this Stipulation should be construed to prevent a lien from attaching to the Debtor's and/or any Additional Debtors' interest in any insurance policies or the proceeds of such policies issued by the Non-Settling Insurer, or the assets of any defendant that is not the Debtor or an Additional Debtor or the enforcement of such lien.

    d.  No Plaintiff may create or take any action to effectuate the creation or imposition of any lien against any non-insurance asset(s) of the Debtor or any Additional Debtors.

    e.  No Plaintiff may collect, levy, execute, or otherwise enforce any judgment against any non-insurance asset(s) of the Debtor or any Additional Debtor or the Archdiocese Insurance Policies of any Settling Insurer.

    f.  No Plaintiff may vote to reject the Joint Plan, object to or join in an objection to confirmation of the Joint Plan, or file or participate in any motion to dismiss the Chapter 11 case.[5]

    g.  Prior to the Effective Date of the Joint Plan, no Plaintiff may collect, levy, execute, or otherwise enforce any judgment against or collect on any settlement with the Non-Settling Insurer except with the written agreement of the Debtor, applicable Additional Debtor and the Survivors' Committee.  Following the Effective Date of the Joint Plan, any judgment or settlement with respect to the Non-Settling Insurer shall be treated in accordance with the terms of the Joint Plan and Settlement Trust Documents.

6.      The Parties agree that all Abuse Claimants may make written settlement demands

on the Debtor and any non-Debtor defendant(s) and request that the Debtor and any non-Debtor

---

[5] For the avoidance of doubt, having participated or joined in the Prior Motion to Dismiss does not prevent any counsel or Abuse Claimant from joining in the Stipulation and obtaining relief from the Automatic Stay in accordance with the terms of the Stipulation.

defendant(s) tender those demands on the Non-Settling Insurer and request that the Non-Settling Insurer pay those demands. The Parties further agree that such demands are not a violation of the Automatic Stay.

7.       Nothing in this Stipulation prohibits any party from seeking relief from the Automatic Stay.   All rights of the Debtors and Additional Debtors to any such request for relief are reserved.

8.       The Debtor also hereby agrees that any Removed Abuse Claim Action may be remanded to the court of original jurisdiction for such action, and the Debtor will take such action as is reasonably necessary to effectuate such remand.

Dated: as of September __, 2025

/s/_____
JONES WALKER LLP
R. Patrick Vance (#13008)
Elizabeth J. Futrell (#05863)
Mark A. Mintz (#31878)
Samantha A. Oppenheim (#38364)
201 St. Charles Avenue, 51st Floor
New Orleans, LA   70170
Telephone: (504) 582-8000
Email:  pvance@joneswalker.com
         efutrell@joneswalker.com
         mmintz@joneswalker.com
         soppenheim@joneswalker.com

**ATTORNEYS FOR THE ROMAN CATHOLIC CHURCH  OF THE ARCHDIOCESE OF NEW ORLEANS**

/s/_____
PACHULSKI STANG ZIEHL & JONES LLP
James I. Stang (CA Bar No. 94435) (pro hac vice)
Iain A.W. Nasatir (CA Bar 148977) (pro hac vice)
Andrew W. Caine (CA Bar 110345) (pro hac vice)
10100 Santa Monica Blvd., Ste. 1300
Los Angeles, CA  90067
Telephone:  (310) 277-6910
Email:   jstang@pszjlaw.com
          inasatir@pszjlaw.com
          acaine@pszjlaw.com

**ATTORNEYS FOR THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS**

/s/_____
HELLER, DRAPER, & HORN, L.L.C.
Douglas S. Draper
650 Poydras Street, Suite 2500
New Orleans, Louisiana 70130
Telephone: 504-299-3300
E-mail: ddraper@hellerdraper.com

**ATTORNEYS FOR THE ADDITIONAL DEBTORS**

EXHIBIT A

FORM OF JOINDER TO STIPULATION

## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: | § | CASE NO. 20-10846 (MSG) |
| | § | |
| THE ROMAN CATHOLIC CHURCH | § | CHAPTER 11 |
| OF THE ARCHDIOCESE OF NEW | § | |
| ORLEANS, | § | SECTION A |
| | § | |
| DEBTOR. | § | COMPLEX CASE |
| | § | |

## JOINDER TO STIPULATION AMONG DEBTOR, ADDITIONAL DEBTORS AND OFFICIAL COMMITTEE OF UNSECURED CREDITORS CONCERNING RELIEF FROM AUTOMATIC STAY

The undersigned counsel represents Abuse Claimants ("**Plaintiff**") with Abuse Claims and/or Abuse Actions against the Debtor, Additional Debtors and/or the Non-Setting Insurer, hereby joins in the Stipulation Among the Debtor, Additional Debtors, and the Official Committee of Unsecured Creditors (the "**Stipulation**")[1] approved by the Bankruptcy Court in the above-captioned case [Docket No. _____].

On behalf of each Plaintiff that plans to prosecute or pursue a Released Abuse Claim Action, undersigned counsel hereby warrants and represents as follows:

1.      Plaintiff is the holder of an Abuse Claim against the Debtor,  Additional Debtor(s), and/or the Non-Settling Insurer.

2.      Plaintiff's Abuse Claim falls within the coverage period of the Non-Settling Insurer.

3.      Counsel is a signatory to one of the MOUs or has not objected to or joined in any objection to confirmation of the Joint Plan nor has the Plaintiff filed or joined in any motion to dismiss the above-captioned bankruptcy case.[2]

---

[1] Capitalized terms used and not otherwise defined herein have the meaning ascribed thereto in the Stipulation.
[2] For the avoidance of doubt, having participated or joined in the Prior Motion to Dismiss does not prevent any counsel or Abuse Claimant from joining in the Stipulation and obtaining relief from the Automatic Stay in accordance with the terms of the Stipulation.

4936-2488-0476.8 05067.002

4.      Plaintiff has not voted to reject the Joint Plan.  If Plaintiff votes to reject the Joint Plan following the submission of this Joinder, Plaintiff's Abuse Claim Action will no longer be a Released Abuse Claim Action.

5.      Plaintiff agrees as follows if granted relief from the Automatic Stay with respect to the Abuse Claim Action:

a.   The Plaintiff may file complaints (and any other documents necessary to initiate litigation) and prosecute, and any court where the Abuse Claim Action is pending may proceed with all necessary actions to adjudicate, the Abuse Claim Action through final judgment, including against the Debtor and all non-Debtor defendants.

b.   Entry of a judgment against any defendant in the Abuse Claim Action shall not create a lien against any non-insurance asset of the Debtor or any Additional Debtor.

c.   Plaintiff will not create or take any action to effectuate the creation or imposition of any lien against any non-insurance asset(s) of the Debtor or any Additional Debtors.

d.   Plaintiff will not collect, levy, execute, or otherwise enforce any judgment against any non-insurance asset(s) of the Debtor or any Additional Debtor or the Archdiocese Insurance Policies of any Settling Insurer.

e.   Plaintiff will not file or join in any objection to confirmation of the Joint Plan or any motion to dismiss the Bankruptcy Case.[3]

f.   Plaintiff will not vote to reject the Joint Plan.

g.   Prior to the Effective Date of the Joint Plan, no Plaintiff may collect, levy, execute, or otherwise enforce any judgment against or collect on any settlement with the Non-Settling Insurer except with the written agreement of the Debtor, applicable Additional Debtor and the Survivors' Committee.  Following the Effective Date of the Joint Plan, any judgment or settlement with respect to the Non-Settling Insurer shall be treated in accordance with the terms of the Joint Plan and Settlement Trust Documents.

6.      The Abuse Claimant will provide this Joinder via electronic or first class mail on the following (the "**Notice Parties**"):

---

[3] For the avoidance of doubt, having participated or joined in the Prior Motion to Dismiss does not prevent any counsel or Abuse Claimant from joining in the Stipulation and obtaining relief from the Automatic Stay in accordance with the terms of the Stipulation.

Counsel for the Debtor:

> Jones Walker LLP
> 201 St. Charles Avenue, 51st Floor
> New Orleans, LA  70170
> Telephone: (504) 582-8000
> Facsimile: (504) 589-8260

ATTN:

> R. Patrick Vance (pvance@joneswalker.com)
> Elizabeth J. Futrell (efutrell@joneswalker.com)
> Mark A. Mintz (mmintz@joneswalker.com)
> Samantha A. Oppenheim (soppenheim@joneswalker.com)

Counsel for the Additional Debtors:

> HELLER, DRAPER, & HORN, L.L.C.
> 650 Poydras Street, Suite 2500
> New Orleans, Louisiana 70130
> Telephone: 504-299-3300
> Facsimile: 504-299-3399

ATTN:

> Douglas S. Draper (ddraper@hellerdraper.com)
> Greta S. Brouphy (gbrouphy@hellerdraper.com)
> Michael E. Landis (mlandis@hellerdraper.com)

Counsel for the Survivors' Committee

> Pachulski Stang Ziehl & Jones LLP
> 10100 Santa Monica Blvd., Suite 1300
> Los Angeles, CA 90067
> Telephone: (310) 277-6910
> Facsimile: (310) 201-0760

ATTN:

> James I. Stang (jstang@pszjlaw.com)
> Iain A. W. Nasatir. (inasatir@pszjlaw.com)
> Andrew W. Caine (acaine@pszjlaw.com)
> Karen B. Dine (kdine@pszjlaw.com)

Counsel for the Non-Settling Insurer

DENTONS US LLP
650 Poydras Street, Suite 2850
New Orleans, LA 70130-6132
Telephone: (504) 524-5446

ATTN:

Jerry A. Beatmann, Jr. (jay.beatmann@dentons.com)

DENTONS US LLP
233 South Wacker Drive, Suite 5900
Chicago, IL 60606-6361
Telephone: (312) 876-8000

ATTN:

Patrick C. Maxcy (patrick.maxcy@dentons.com)
Keith Moskowitz (keith.moskowitz@dentons.com)

7.      Plaintiff will provide notice via electronic or first class mail on the Notice Parties

of any Released Abuse Claim Action within 14 days of Plaintiff taking any action to file,

prosecute, or pursue a Released Abuse Claim Action identifying the Released Abuse Claim

Action and identifying all of the defendants with respect to Released Abuse Claim Action.

8.      The Debtor, Additional Debtor or the Committee may object to the Automatic

Stay being lifted for any Abuse Action that implicates an Archdiocese Insurance Policy issued by

a Settling Insurer, if the Abuse Claimant or his or her counsel files an objection to the Joint Plan

or seeks to dismiss the Chapter 11 Case, or if the Abuse Claimant has voted to reject the Joint

Plan.

9.      If the Plaintiff violates any of the terms set forth in Paragraphs 3 and 4 above,

then following notice of such breach to the Plaintiff by the Debtor, Additional Debtor, and/or the

Survivors' Committee, Plaintiff acknowledges and agrees that the Automatic Stay will

automatically be reinstated and the Plaintiff must immediately cease any prosecution of the

Abuse Claim Action.  Any continued prosecution of the Abuse Claim Action after receipt of the

notice of the breach will be deemed to be a willful violation of the Automatic Stay.


[Date/Signature]

# EXHIBIT B

## REMOVED ABUSE ACTIONS

| STATE COURT ACTION |
| --- |
| Civil Action No. 20-1317, F(5) A. A. Doe vs. Archdiocese of New Orleans Indemnity, et al. |
| Civil Action No. 20-1331, F(5) John Roe, III vs. Roman Catholic Archdiocese of the New Orleans, et al |
| Civil Action No. 20-1341, F(5) John Doe vs. Roman Catholic Archdiocese of the New Orleans |
| Civil Action No. 20-1352, F(5) West Roe vs. Roman Catholic Church of the Archdiocese of New Orleans, et al |
| Civil Action No. 20-1353, F(5) CC Doe vs. Roman Catholic Archdiocese of the New Orleans, et al |
| Civil Action No. 20-1752, F(2) S.D. Doe vs. Archdiocese of the New Orleans Indemnity, Inc., et al |
| Civil Action No. 20-1819, F(3) Zach Roe vs. Catholic Charities Archdiocese of New Orleans, et al |
| Civil Action No. 20-1835, F(5) Chuck Roe vs. Catholic Charities Archdiocese of New Orleans |
| Civil Action No. 20-1318, BB Doe v. The Roman Catholic Church for the Archdiocese of New Orleans, et al. |
| Civil Action No. 20-1320, John Doe v. The Roman Catholic Church of the Archdiocese of New Orleans, et al. |
| Civil Action No. 20-1321, J.W. Doe v. Archdiocese of New Orleans Indemnity, Inc., et al. |
| Civil Action No. 20-1328, John Doe v. The Roman Catholic Church of the Archdiocese of New Orleans, et al. |
| Civil Action No. 20-1330, John Roe I v. The Roman Catholic Church of the Archdiocese of New Orleans, et al. |

| |
|---|
| Civil Action No. 1331, John Roe III v. The Roman Catholic Church of the Archdiocese of New Orleans, et al. |
| Civil Action No. 1335, Linda Lee Stonebreaker v. The Roman Catholic Church for the Archdiocese of New Orleans, et al. |
| Civil Action No. 1336, Neal Alan Pollet v. John Doe |
| Civil Action No. 1337, Raymond Roe v. The Roman Catholic Church of the Archdiocese of New Orleans, et al. |
| Civil Action No. 1338, James Doe v. Archdiocese of New Orleans Indemnity, Inc., et al. |
| Civil Action No. 1339, Lon Doe v. Archdiocese of New Orleans Indemnity, Inc., et al. |
| Civil Action No. 1340, Ed Roe v. The Roman Catholic Church of the Archdiocese of New Orleans, et al. |
| Civil Action No. 1341, John Doe v. Defendant A, et al. |
| Civil Action No. 1349, John A. Doe v. The Roman Catholic Church of the Archdiocese of New Orleans |
| Civil Action No. 1351, John Roe II v. The Roman Catholic Church of the Archdiocese of New Orleans, et al. |
| Civil Action No. 1352, West Roe v. The Roman Catholic Church of the Archdiocese of New Orleans, et al. |
| Civil Action No. 1353, CC Doe v. The Roman Catholic Church of the Archdiocese of New Orleans, et al. |
| Civil Action No. 1355, Bob Roe v. The Roman Catholic Church of the Archdiocese of New Orleans, et al. |
| Civil Action No. 1356, Jeff Roe v. The Roman Catholic Church of the Archdiocese of New Orleans, et al. |
| Civil Action No. 1358, FF Doe v. The Roman Catholic Church for the Archdiocese of New Orleans, et al. |
| Civil Action No. 1359, Jane Doe and John Doe v. Defendant 1 [SEALED CASE] |
| Civil Action No. 1362, John Doe v. ABC [SEALED CASE] |

| |
|---|
| Civil Action No. 1363, Tom Doe v. Archdiocese of New Orleans Indemnity, Inc., et al. |
| Civil Action No. 1364, John Doe v. The Roman Catholic Church for the Archdiocese of New Orleans[SEALED CASE] |
| Civil Action No. 1366, John Doe v. ABC [SEALED CASE] |
| Civil Action No. 1368,John Doe v. Defendant A, et al. [SEALED CASE] |
| Civil Action No. 1374, John Doe v. Defendant A, et al. [SEALED CASE] |
| Civil Action No. 1379, John Roe IV v. The Roman Catholic Church of the Archdiocese of New Orleans, et al. |
| Civil Action No. 1392, Brad Roe v. The Roman Catholic Church of the Archdiocese of New Orleans, et al. |
| Civil Action No. 1422, JB Doe v. St. Paul's School, Inc., et al. |
| Civil Action No. 1752, S.D. Doe v. Archdiocese of New Orleans Indemnity Inc., et al. |
| Civil Action No. 1754, J.L. Doe v. Archdiocese of New Orleans Indemnity Inc., et al. |
| Civil Action No. 1755, W.G. Doe v. Archdiocese of New Orleans Indemnity Inc., et al. |
| Civil Action No. 1819, Zach Roe v. Catholic Charities Archdiocese of New Orleans, et al. |
| Civil Action No. 1835, Chuck Roe v. Catholic Charities Archdiocese of New Orleans |
| Civil Action No. 1829, Ralph Roe v. Catholic Charities Archdiocese of New Orleans, et al. |