## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re: | § | |
| | § | **Case No. 20-10846** |
| **THE ROMAN CATHOLIC CHURCH** | § | |
| **OF THE ARCHDIOCESE OF NEW** | § | **Section "A"** |
| **ORLEANS,** | § | |
| | § | **Chapter 11** |
| Debtor.[1] | § | |
| | § | |

---

### DEBTOR'S RESPONSE TO ARGENT INSTITUTIONAL TRUST COMPANY, AS INDENTURE TRUSTEE'S EMERGENCY REQUEST FOR A STATUS CONFERENCE

NOW INTO COURT, through undersigned counsel, comes The Roman Catholic Church of the Archdiocese of New Orleans, the above-captioned debtor and debtor-in-possession (the "**Debtor**" or "**Archdiocese**"), who files this response ("**Response**") to *Argent Institutional Trust Company, as Indenture Trustee's Emergency Request for a Status Conference,* [ECF No. 4523], (the "**Request**"), filed by Argent Institutional Trust Company, as Indenture Trustee ("**Argent**" or the "**Bond Trustee**"). In support of this Response, the Debtor respectfully states as follows:

### Preliminary Statement

1. As further detailed below, the Bond Trustee's Request is procedurally improper and substantively meritless. The Voting Deadline expired yesterday, and the results are unequivocal: 99.63% of creditors who submitted Ballots (excluding the Bondholder class) voted in favor of the Joint Plan, which carried every single class except Class 6 (the Bond Claims). The Fifth Amended Joint Plan materially improves the treatment of the Bond Claims by approximately $13 million, making resolicitation legally unnecessary. Moreover, the Bond Trustee seeks relief

---

[1] The last four digits of the Debtor's federal tax identification number are 8966. The Debtor's principal place of business is located at 7887 Walmsley Ave., New Orleans, LA 70125.

through an improper procedural vehicle after this Court previously admonished it for that same conduct.

## Relevant Background

2.      On October 28, 2025, Argent filed its Request, seeking a status conference to discuss the *Fifth Amended Joint Chapter 11 Plan of Reorganization for the Roman Catholic Church of the Archdiocese of New Orleans and Additional Debtors, Proposed by the Debtor, the Additional Debtors, and the Official Committee of Unsecured Creditors, Dated as of October 27, 2025*, [ECF No. 4518], (the "**Fifth Amended Joint Plan**" or "**Joint Plan**").  Notably, the Bond Trustee has not filed any motion, preferring, instead, to continue its inappropriate pattern of requesting substantive relief during status conferences before the Court.

3.      Previously, on September 9, 2025, Argent filed its *Response to Debtor's Request for Status Conference*, [ECF No. 4334].  In that response, Argent, amazingly, sought an order compelling the production of documents from the Debtor and the Additional Debtors, and even more shockingly, asked this Court to sanction the Debtor and the Additional Debtors.

4.      During that September 9, 2025, status conference, this Court admonished the Bond Trustee:

> I got to tell you that this is procedurally inappropriate, the way that it's drafted, the way it's presented to the Court.  It's . . . not noticed for hearing. I don't have -- there's no opportunity for a response. You're asking the Court for relief and so you need to follow the Rules . . . .[2]

5.      Similarly, the Bond Trustee is now seeking, through its own status conference request, affirmative relief from this Court, including additional discovery, additional expert

---

[2] Transcript of September 9, 2025, Status Conference, p. 32, ll. 17-22, [ECF No. 4348].

reports, and resolicitation of the Joint Plan.  As previously cautioned by this Court, a request for substantive relief must be embodied in a motion and properly set for hearing.

6.      The Voting Deadline for the Fifth Amended Joint Plan expired on October 29, 2025. The voting results demonstrate overwhelming creditor support for the Joint Plan and underscore the impropriety of the Bond Trustee's request.  As detailed below, 99.63% of creditors who submitted Ballots (excluding creditors in Class 6) have voted in favor of the Joint Plan.  Every single class except the Bondholder class accepted the Joint Plan by wide margins.

7.      Notably, even among Bondholders who voted, preliminary results show that 14 voted in favor of the Joint Plan and 59 voted against—meaning approximately one in five Bondholders who cast Ballots supported the Joint Plan despite the Bond Trustee's opposition.  The Bond Trustee now asks this Court to delay or derail a reorganization plan that has achieved near-universal creditor approval, including overwhelming support from hundreds of abuse survivors who have been awaiting resolution for over five years.

## Argument

### A. The Fifth Amended Joint Plan Substantially Improves the Treatment of Class 6 Claims.

8.      The Fifth Amended Joint Plan changes the treatment of the Bond Claims in Class 6 by: (1) transferring to the Bond Trustee or its designee(s) eight (8) identified parcels of immovable property with an aggregate value of $13,057,693;[3] and (2) increasing the contemplated

---

[3] The value of the properties was determined by BDO Consulting Group, LLC, the Bond Trustee's expert, in an expert report dated October 6, 2025.

#110108385v2

cash consideration from approximately $6,470,046.33 over ten (10) years to $7,200,000 over twelve (12) years.[4]

9.      Indeed, it is difficult to comprehend the Bond Trustee's opposition to the Joint Plan. Using the valuation of the Bond Trustee's own expert, the Bondholders, through the Fifth Amended Joint Plan, will receive a little over $20.2 million to pay a $28.6 million claim.  This results in a recovery of approximately 70.6%.  The Bond Trustee's insistence on payment in full, as an unsecured creditor, is especially specious when one remembers that the Bondholders received more than $9 million in payments during the pendency of the Chapter 11 Case, in preference to every other class.

10.      Adding insult to injury, even assuming that the Bond Trustee is correct in its valuation of the Abuse Claims, the Bondholders will realize a greater percentage recovery than Abuse Claimants.  For example, the Bond Trustee's expert values the Abuse Claims against the Debtor and the Additional Debtors at $350 million.  Under the Joint Plan, the Abuse Claimants are receiving $200 million from the Debtors and the Additional Debtors, resulting a recovery, using the Bond Trustee's numbers, of 57%.  The Bond Trustee estimates Abuse Claims against the Debtor to be $165 million.  The Debtor is paying $65 million in cash, resulting in a 40% recovery. The Bondholders, as unsecured claimants, are receiving a substantial recovery and more than other similarly-situated creditors.

11.      The Bondholders, despite being treated better than almost any class, are the only class to have voted to reject the Joint Plan.  Preliminary voting results following yesterday's Voting Deadline demonstrate overwhelming creditor support:

---

[4] *See* Fifth Amended Joint Plan, [ECF No. 4518], at § 4.6; Plan Supplement 4.6(c)(i), [ECF No. 4520-1].

#110108385v2

- 99.63% of all creditors who submitted Ballots (excluding creditors in Class 6) voted in favor of the Joint Plan;

- Holders of claims in every single class except Class 6 (Bond Claims) accepted the Joint Plan by wide margins;

- Hundreds of abuse survivors voted overwhelmingly to accept the Joint Plan despite receiving lower percentage recoveries than the Bondholders; and

- Bondholders stand alone in opposition to a plan that materially improves their treatment.

The relief requested by the Bond Trustee would delay or undermine a reorganization plan that has achieved near-universal creditor approval and would prejudice the overwhelming majority of creditors who voted to move forward.

**B. Resolicitation Is Unnecessary.**

12.     11 U.S.C. § 1127(a) provides that "[t]he proponent of a plan may modify such plan at any time before confirmation."  Section 1127(c), in turn, requires that plan modification satisfy disclosure requirements of section 1125 of the Bankruptcy Code.  "This does not necessarily mandate the preparation of a new disclosure statement and resolicitation of the plan, however . . . . Further disclosure occurs only when . . . the modification materially and adversely impacts parties who previously voted for the plan."  *In re Am. Solar King Corp.*, 90 B.R. 808, 823 (Bankr. W.D. Tex. 1988).  "Thus, an improvement to the position of the creditors affected by the modification will not require resolicitation of a modified plan."  *In re Cape Quarry, LLC*, No. 19-12367, 2020 Bankr. LEXIS 3232, at *6 (Bankr. E.D. La. Nov. 16, 2020).

13.     Here, as explained *supra*, the treatment of the Bond Claims is improved by the Fifth Amended Joint Plan, increasing the Bondholders' recovery by at least $13 million.  Further, the Bondholders already have voted to reject the Joint Plan.  Therefore, the Joint Plan cannot

materially and adversely affect parties that previously voted in favor of the plan. *Cf. Am. Solar King*, 98 B.R. at 823.

### C. Additional Discovery Is Inappropriate.

14.     The Bond Trustee insists on deposing the Debtor's bond counsel "regarding how the treatment of the Bonds will be effectuated under the Plan to preserve the tax exemption on the Bonds." [ECF No. 4253, p. 1].

15.     The Debtor has made reasonable efforts to structure the treatment of the Bond Claims in a manner that may preserve tax-exempt status for the Bondholders' benefit.  However, the Debtor notes that it has no legal obligation to preserve tax-exempt status for unsecured creditors, and the Joint Plan's core obligation is to make the contemplated payments. The Debtor's efforts to accommodate the Bondholders' tax considerations were undertaken voluntarily and in good faith. The Bond Trustee's response—demanding additional discovery, expert reports, depositions, and delay—is disproportionate to any legitimate concern about the Joint Plan's treatment of the Bonds.

16.     The Bond Trustee has known since July 2025 that the Debtor intended to reissue the Bonds.[5]  During the several months that have elapsed since that time, the Bond Trustee neither sought discovery on this issue, nor requested information from the Debtor's bond counsel.  Having slept on its rights, the Bond Trustee cannot now manufacture an emergency.  The Bond Trustee voluntarily chose to wait until after the filing of the Plan Supplements to investigate these issues.

---

[5] *See Joint Chapter 11 Plan of Reorganization for the Roman Catholic Church of the Archdiocese of New Orleans and Additional Debtors, Proposed by the Debtor, the Additional Debtors, and the Official Committee of Unsecured Creditors, Dated as of July 15, 2025*, [ECF No. 4150], at § 4.6(c) ("The treatment of the Bond Claims . . . will be memorialized in the Amended Bond Documents, which Amended Bond Documents shall . . .  be executed and delivered to the Bond Trustee . . .on or before the Effective Date.").

#110108385v2

17.     The Bondholders already have voted to reject the Joint Plan.  The Bond Trustee's inartful attempt to delay the inevitable cramdown should not be countenanced or condoned.  The Debtor remains willing to discuss any reasonable concerns that the Bond Trustee may have about implementation of the Joint Plan, but additional discovery, trial continuances, and resolicitation are not warranted.  In addition to being unnecessary, such drastic measures would prejudice the substantial body of creditors—including hundreds of abuse survivors—that has voted overwhelmingly to accept the Joint Plan.

**WHEREFORE**, for the foregoing reasons, the Debtor respectfully requests that this Court deny any request for additional discovery, expert designation extensions, trial continuances, or resolicitation.

Dated: October 30, 2025                    Respectfully submitted,

*/s/ Samantha A. Oppenheim*
R. PATRICK VANCE (#13008)
ELIZABETH J. FUTRELL (#05863)
MARK A. MINTZ (#31878)
SAMANTHA A. OPPENHEIM (#38364)
Jones Walker LLP
201 St. Charles Avenue, 51st Floor
New Orleans, LA   70170
Telephone: (504) 582-8000
Facsimile:  (504) 589-8260
Email:  pvance@joneswalker.com
Email:  efutrell@joneswalker.com
Email:  mmintz@joneswalker.com
Email:  soppenheim@joneswalker.com

**ATTORNEYS FOR
THE ROMAN CATHOLIC CHURCH OF
THE ARCHDIOCESE OF NEW ORLEANS**

#110108385v2

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the foregoing Response is being served (a) on October 30, 2025 by electronic case filing for those parties receiving notice via the Court's Electronic Case Filing system, and (b) by email or First Class U.S. Mail, postage prepaid, on all other parties requiring service under the Court's *Ex Parte Order Authorizing the Debtor to Limit Notice and Establishing Notice Procedures* [ECF No. 22], to be sent by Donlin Recano & Company, LLC ("**DRC**"). DRC shall file a certificate of service to that effect once service is complete.

*/s/ Samantha A. Oppenheim*
Samantha A. Oppenheim