## UNITED STATES BANKRUPTCY COURT

## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re: | § | |
| | § | **Case No. 20-10846** |
| **THE ROMAN CATHOLIC CHURCH OF** | § | |
| **THE ARCHDIOCESE OF NEW** | § | **Section "A"** |
| **ORLEANS,** | § | |
| | § | **Chapter 11** |
| Debtor.[1] | § | |
| | § | |

---

**SUPPLEMENTAL AFFIDAVIT OF DONLIN RECANO AND COMPANY, INC.
REGARDING SERVICE OF SOLICITATION PACKAGES WITH RESPECT TO THE
SECOND AMENDED JOINT CHAPTER 11 PLAN OF REORGANIZATION FOR THE
ROMAN CATHOLIC CHURCH OF THE ARCHDIOCESE OF NEW ORLEANS AND
ADDITIONAL DEBTORS, PROPOSED BY THE DEBTOR, THE ADDITIONAL DEBTORS,
AND THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS, DATED AS OF
<u>AUGUST 6, 2025</u>**

STATE OF NEW YORK  )
          ) ss:
COUNTY OF KINGS   )

I, Alexander Calderon, declare:

1. I am over the age of 18 years and not a party to this chapter 11 case.

2. I am employed by Donlin, Recano & Company, LLC ("<u>DRC</u>"), 200 Vesey Street, 24th Floor, New York, NY 10281.

3. Acting under my supervision, DRC, caused to serve a true and accurate copy of the following materials:

 a. a USB Flash Drive, which contains PDF files of the following documents, collectively;

   I. *Order (I) Approving the Adequacy of the Joint Disclosure Statement, (II) Approving the Solicitation and Voting Procedures with Respect to Confirmation of the Joint Proposed Chapter 11 Plan, (III) Approving Ballots and Notices, and (IV) Granting Related Relief;* (Docket No. 4253);

   II. *Second Amended Joint Chapter 11 Plan of Reorganization for the Roman Catholic Church of the Archdiocese of New Orleans and Additional Debtors,*

---

[1] The last four digits of the Debtor's federal tax identification number are 8966.  The Debtor's principal place of business is located at 7887 Walmsley Ave., New Orleans, LA 70125.

       *Proposed by the Debtor, the Additional Debtors, and the Official Committee of Unsecured Creditors, Dated as of August 6, 2025;* (Docket No. 4235); and

III.    *Second Amended Modified Disclosure Statement for the Second Amended Joint Chapter 11 Plan of Reorganization for the Roman Catholic Church of the Archdiocese of New Orleans and Additional Debtors, Proposed by the Debtor, the Additional Debtors, and the Official Committee of Unsecured Creditors, Dated as of August 6, 2025;* (Docket No. 4242).

b.  *Ballot for Known Abuse Claims (Class 3),* attached hereto as <u>Exhibit A</u>;

c.  *Letter from the Official Committee of Unsecured Creditors to Abuse Claimants Recommending they Vote to <u>Accept</u> the Joint Plan,* attached hereto as <u>Exhibit B</u>;

d.  *The Roman Catholic Church of the Archdiocese of New Orleans Support Letter,* attached hereto as <u>Exhibit C</u>;

e.  *Solicitation and Voting Procedures*, attached hereto as <u>Exhibit D</u>;

f.  *Notice of (A) Confirmation Hearing, (B) Establishment of Voting Record Date, (C) Solicitation and Voting Procedures, (D) Voting Deadline, and (E) Deadline for Objecting to the Joint Plan and the Insurance Settlement Motion*, attached hereto as <u>Exhibit E</u>; and

g.  Postage pre-paid return envelope addressed to DRC.

upon the following parties:

- On the 11th day of September 2025, via U.S First Class Mail, as set forth on <u>Exhibit F</u>, attached hereto;
- On the 12th day of September 2025, via U.S First Class Mail, as set forth on <u>Exhibit G</u>, attached hereto;
- On the 26th day of September 2025, via U.S First Class Mail, as set forth on <u>Exhibit H</u>, attached hereto;
- On the 30th day of September 2025, via U.S First Class Mail, as set forth on <u>Exhibit I</u>, attached hereto;
- On the 1st day of October 2025, via U.S First Class Mail, as set forth on <u>Exhibit J</u>, attached hereto;
- On the 3rd day of October 2025, via U.S First Class Mail, as set forth on <u>Exhibit K</u>, attached hereto;
- On the 6th day of October 2025, via U.S First Class Mail, as set forth on <u>Exhibit L</u>, attached hereto;
- On the 7th day of October 2025, via U.S First Class Mail, as set forth on <u>Exhibit M</u>, attached hereto;
- On the 8th day of October 2025, via U.S First Class Mail, as set forth on <u>Exhibit N</u>, attached hereto;
- On the 9th day of October 2025, via U.S First Class Mail, as set forth on <u>Exhibit O</u>, attached hereto;
- On the 14th day of October 2025, via U.S First Class Mail, as set forth on <u>Exhibit P</u>, attached hereto;
- On the 16th day of October 2025, via U.S First Class Mail, as set forth on <u>Exhibit Q</u>, attached hereto;

I declare under penalty of perjury that the foregoing is true and correct to the best of my personal knowledge. Executed this 31st day of October 2025, New York, New York.

By _Alexander Calderon_

Alexander Calderon

Sworn before me this
31st day of October 2025

_John Burlacu._

Notary Public

JOHN BURLACU
Notary Public - State of New York
No. 01BU6376078
Qualified in Nassau County
My Comm. Expires June 4, 2026

EXHIBIT A

Class: «pclass»

«SEQ»

## **BALLOT FOR KNOWN ABUSE CLAIMS (CLASS 3)**

### **Summary of Joint Plan and Voting Information**

You are receiving this Ballot because you may have a Known Abuse Claim (Class 3) against the Archdiocese of New Orleans (the "**Archdiocese**" or "**Debtor**") or one of the 157 related Catholic entities ("**Catholic Entities**" or "**Additional Debtors**") listed on Schedule 1 to the Appendix. You have the right to vote on the proposed Joint Chapter 11 Plan of Reorganization (the "**Joint Plan**").

This summary is designed to help you quickly understand your rights. Full legal details are in the attached materials including the Appendix to the Ballot, and you are encouraged to review the Ballot in its entirety.

<span style="color:red">**IMPORTANT: The Debtor, Additional Debtors, and Survivors' Committee all RECOMMEND that you vote to ACCEPT the Joint Plan.**</span>

**What is this vote about?**

The Archdiocese filed for Chapter 11 bankruptcy in May 2020.  The Archdiocese and the Catholic Entities have agreed to compensate people with valid claims that they were sexually abused by clergy or church personnel.

The Archdiocese and the Catholic Entities have proposed a Joint Plan to resolve abuse claims and other debts. This vote is your chance to say whether you accept or reject that Joint Plan.  The Catholic Entities plan to file for bankruptcy if at least two-thirds of sexual abuse claimants who vote support the Joint Plan.

**Note: The court may still approve the Joint Plan even if it's rejected by voters, if certain legal requirements are met.**

**CRITICAL VOTING ELIGIBILITY (the "Voting Record Date")**

**You can vote on the Joint Plan if you are:**

1. A sexual abuse claimant who filed a claim or a lawsuit against the Archdiocese by August 14, 2025;
2. A sexual abuse claimant who filed a lawsuit against any of the Catholic Entities by August 14, 2025; or
3. A sexual abuse claimant who filed a claim against the Catholic Entities by October 15, 2025.

**How do I vote?**

1. Choose whether to accept or reject the Joint Plan.
2. Sign and date the form.

«instance» «ballotid»

Class: «pclass»

«SEQ»

3. Return your Ballot so it is received by **Wednesday, October 29, 2025,** at **11:59 p.m. Central Time.**

You can vote:

- **Online at: https://bankruptcy.angeiongroup.com/Clients/rcano/Vote** - You will need your unique eBallot ID#: **«EballotID»**
- **By mail**: Use the enclosed envelope and send to:

Donlin, Recano & Company, LLC
Re: Archdiocese of New Orleans -- Voting
P.O. Box 2053
New York, NY 10272-2042

- **By overnight delivery or hand delivery to:**

Donlin, Recano & Company, LLC, c/o Angeion Group
Re: The Roman Catholic Church of the Archdiocese of New Orleans
Attn: Voting Department
200 Vesey Street, 24th Floor
New York, NY 10281

If you need help, contact the Claims and Voting Agent at 1-877-476-4389 or email DRCVote@angeiongroup.com.

**Ballots must be fully completed, signed, and received by the Voting Deadline. Late or incomplete Ballots will not be counted.**

---

## BALLOT -- CLASS 3: KNOWN ABUSE CLAIMS

<u>Item 1</u> **-- Vote on the Joint Plan (choose one):**

| | |
|---|---|
| ☐   **ACCEPT** (vote FOR Joint Plan) | ☐   **REJECT** (vote AGAINST the Joint Plan) |

«instance» «ballotid»

«SEQ»

(abs)                               (a/r) 

**Item 2** – **Signature and Contact Information (will be kept confidential):**

By signing this Ballot, I certify that:

(a)  I am an Abuse Claimant, an authorized signatory for, or legal representative of an Abuse Claimant, with a Known Abuse Claim against the Archdiocese or one of the Additional Debtors as of the Voting Record Date, and, in either case, I have the full power and authority to vote to accept or reject the Joint Plan;

> **IF SIGNED BY AN AUTHORIZED SIGNATORY OR A LEGAL REPRESENTATIVE, SUCH SIGNATORY OR LEGAL REPRESENTATIVE** must submit documentation evidencing such signatory's or legal representative's authority to vote to accept or reject the Joint Plan on behalf of the Abuse Claimant. To the extent that this Ballot is being executed by counsel to the Abuse Claimant, counsel must submit the documentation evidencing the express authority for such counsel to vote to accept or reject the Joint Plan on behalf of the Abuse Claimant in the bankruptcy case or cases of the Debtor and/or the Additional Debtors.  **Such documentation must be: (a) delivered to the Claims and Voting Agent via mail, overnight delivery, or hand delivery using the applicable address set forth above in this Ballot; or (b) uploaded through the E-Balloting Portal;**

(b)  The Abuse Claimant has received a copy of the Disclosure Statement and the Solicitation Package, including the Survivors' Committee Letter that contains a schedule of the town hall meetings regarding the Joint Plan; <u>and</u>

(c)  No other Ballots with respect to the Abuse Claimant's Known Abuse Claim have been cast or, if any other Ballot has been cast with respect to such Claim, then any such earlier Ballot is hereby revoked.

Name of Abuse Claimant: _____

Signature: _____

Name of Signer (if not the claimant): _____

Title (if not the claimant): _____

Address: _____

Phone: _____

Email: _____

Date Completed: _____

«instance» «ballotid»

Class: «pclass»

«SEQ»

**SUBMISSION DEADLINE: This Ballot (and any authorization documentation that may be required) must be ACTUALLY RECEIVED by Wednesday, October 29, 2025, at 11:59 p.m. Central Time or the Ballot will NOT be counted.**

---

**Appendix – Disclosures, Legal Requirements and Additional Instructions**

The Appendix attached as part of this Ballot contains important disclosures and information relating to the Joint Plan.  It also includes instructions and legal requirements for submission of the Ballot.  The Appendix can also be downloaded from: https://www.donlinrecano.com/Clients/rcano/Index

«instance» «ballotid»

Class: «pclass»

«SEQ»

## UNITED STATES BANKRUPTCY COURT
### EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re: | § | |
| | § | **Case No. 20-10846** |
| **THE ROMAN CATHOLIC CHURCH OF** | § | |
| **THE ARCHDIOCESE OF NEW ORLEANS,** | § | **Section "A"** |
| | § | |
| **Debtor**. | § | **Chapter 11** |
| | § | |

---

### APPENDIX TO BALLOT FOR KNOWN ABUSE CLAIMS (CLASS 3)

#### Disclosures Regarding the Joint Plan and Voting Process

> **YOU HAVE A RIGHT TO VOTE TO ACCEPT OR REJECT THE JOINT PLAN OF THE DEBTOR AND ADDITIONAL DEBTORS. You are receiving a Ballot because our records indicate that you may be an Abuse Claimant holding a Known Abuse Claim against the Debtor and/or any Additional Debtor in Class 3, as of the Voting Record Date.**

**PLEASE READ AND FOLLOW THE ENCLOSED INSTRUCTIONS
CAREFULLY BEFORE COMPLETING YOUR BALLOT.**

**THE BALLOT MUST BE COMPLETED, EXECUTED, AND RETURNED SO
THAT IT IS ACTUALLY RECEIVED BY THE CLAIMS AND VOTING AGENT
ON OR BEFORE OCTOBER 29, 2025, AT 11:59 P.M. (CENTRAL TIME)
(THE "VOTING DEADLINE") IN ACCORDANCE WITH
THE PROCEDURES DESCRIBED HEREIN**

The Roman Catholic Church of the Archdiocese of New Orleans (the "**Debtor**" or the "**Archdiocese**"), the additional debtors listed on the attached **Schedule 1** (the "**Additional Debtors**"), and the Official Committee of Unsecured Creditors (the "**Survivors' Committee**") are soliciting votes with respect to a jointly proposed plan of reorganization (the "**Joint Plan**"). You have received a copy of the Joint Plan, a Bankruptcy Court-approved disclosure statement containing adequate information to make an informed decision on whether to accept or reject the Joint Plan (the "**Disclosure Statement**"), and a copy of the Survivors' Committee's letter to Abuse Claimants (the "**Survivors' Committee Letter**"), which includes a schedule of the town hall meetings regarding the Joint Plan. The Bankruptcy Court approved the Disclosure Statement but has not yet considered approval of the Joint Plan.

**YOU SHOULD REVIEW THE DISCLOSURE STATEMENT AND THE JOINT PLAN BEFORE
YOU VOTE, AND YOU MAY WISH TO SEEK LEGAL ADVICE BEFORE YOU VOTE.**

You are entitled to one (1) vote regardless of how many acts of Abuse may have occurred, and your Known Abuse Claim shall be valued at one dollar ($1.00) **for voting purposes only**, but not for any other purposes including the compensation you may receive on the Known Abuse Claim.

If the Joint Plan is approved by the Bankruptcy Court, it will be binding on you, regardless of whether or not you vote or affirmatively vote to reject the Joint Plan. To have your vote counted, you must complete, sign, and return your Ballot so that it is **actually received** by the Claims and Voting Agent on or before **October 29, 2025, at 11:59 p.m. (Central Time)**.

«instance» «ballotid»

Class: «pclass»

«SEQ»

## Instructions for Submitting Your Ballot

**AS DESCRIBED BELOW, YOU MAY SUBMIT YOUR BALLOT ONLINE
VIA THE CLAIMS AND VOTING AGENT'S E-BALLOTING PORTAL.**

**IF YOU WOULD LIKE TO RETURN A PAPER COPY OF THE BALLOT
(INSTEAD OF SUBMITTING ONLINE), PLEASE COMPLETE, SIGN, AND
DATE THE FORM AND RETURN IT (WITH AN ORIGINAL SIGNATURE)
PROMPTLY BY FIRST CLASS MAIL TO:**

**Donlin, Recano & Company, LLC, c/o Angeion Group
Re: The Roman Catholic Church of the Archdiocese of New Orleans
Attn: Voting Department
P.O. Box 2053
New York, NY 10272- 2042
(A pre-addressed, postage pre-paid envelope is provided.)**

**OR BY OVERNIGHT COURIER, OR HAND DELIVERY TO:**

**Donlin, Recano & Company, LLC, c/o Angeion Group
Re: The Roman Catholic Church of the Archdiocese of New Orleans
Attn: Voting Department
200 Vesey Street, 24th Floor
New York, NY 10281**

**YOUR BALLOT MUST BE ACTUALLY RECEIVED BY THE CLAIMS
AND VOTING AGENT ON OR BEFORE THE VOTING DEADLINE
OF OCTOBER 29, 2025, AT 11:59 P.M. (CENTRAL TIME).**

**YOU MAY ALSO SUBMIT YOUR BALLOT ONLINE VIA THE
CLAIMS AND VOTING AGENT'S E-BALLOTING PORTAL
IN ACCORDANCE WITH THE INSTRUCTIONS BELOW.**

To submit your Ballot via the Claims and Voting Agent's online portal, please visit https://bankruptcy.angeiongroup.com/Clients/rcano/Vote.

IMPORTANT NOTE: You will need the following information to retrieve and submit your customized electronic Ballot:

Unique eBallot ID#: **«EballotID»**

The Claims and Voting Agent's online portal is the sole manner in which Ballots will be accepted via electronic or online transmission. **Ballots submitted by facsimile, email, or other means of electronic transmission will not be accepted or counted.**

Creditors using the Claims and Voting Agent's online portal should **NOT** also submit paper forms.

**If you have any questions, please contact the Claims and Voting Agent:**
(i) by calling 1-877-476-4389 (toll free); and/or (ii) by emailing DRCVote@angeiongroup.com.
**Voting Instructions for Known Abuse Claims (Class 3)**

«instance» «ballotid»

Class: «pclass»

«SEQ»

1. Ballots must be delivered to the Claims and Voting Agent (i) at an appropriate address listed above; or (ii) via the Claims and Voting Agent's E-Balloting Portal by visiting https://bankruptcy.angeiongroup.com/Clients/rcano/Vote, clicking on the "E-Ballot" link and following the instructions set forth on the website. Holders of Claims entitled to vote are encouraged to submit their Ballot via the E-Balloting Portal. Please choose only one method of submitting your Ballot. If you choose to submit your Ballot via the E-Balloting Portal, DO NOT also submit a paper Ballot.

2. To ensure that your vote is counted, you <u>must</u> complete the Ballot and take the following steps: (a) clearly indicate your decision either to accept or reject the Joint Plan in the boxes provided in Item 1 of your Ballot; <u>and</u> (b) sign, date and return an original of your Ballot to the applicable address listed above. A Ballot submitted by the E-Balloting Portal shall be deemed to bear an original signature.

3. Unless the Ballot being furnished is timely submitted on or before October 29, 2025, at 11:59 p.m. Central Time (or as the same may be extended, in writing, by the Plan Proponents), the Plan Proponents will reject such Ballot as invalid and, therefore, will not count it in connection with Confirmation of the Joint Plan.

4. The Debtor will File with the Bankruptcy Court by on or before November 6, 2025, a voting report (the "**Voting Report**"). Among other things, the Voting Report will delineate every Ballot that does not conform to the voting instructions or that contains any form of irregularity including, but not limited to, those Ballots that are late or (in whole or in material part) illegible, unidentifiable, lacking signatures or lacking necessary information, received via facsimile or any other electronic means (other than the E-Balloting Portal), or damaged (collectively, in each case, the "**Irregular Ballots**"). The Voting Report will indicate the Plan Proponents' intentions regarding each Irregular Ballot.

5. The method of delivery of Ballots to the Claims and Voting Agent is at the election and risk of each Creditor. Except as otherwise provided herein, such delivery will be deemed made only when the Claims and Voting Agent **actually receives** the originally executed Ballot or the E-Ballot is submitted through the E-Balloting Portal. Instead of effecting delivery by first-class mail, it is recommended, though not required, that Creditors use an overnight or hand delivery service if not using the E-Balloting Portal. In all cases, Creditors should allow sufficient time to assure timely delivery.

6. An executed Ballot is required to be submitted by the Entity submitting such Ballot.

7. Delivery of a Ballot to the Claims and Voting Agent by facsimile, electronic email, or any electronic means (other than the E-Balloting Portal) will not be valid.

8. No Ballot should be sent to any Plan Proponent, the Plan Proponents' agents (other than the Claims and Voting Agent), or the Plan Proponents' financial or legal advisors, and, if so sent, will not be counted.

9. If multiple Ballots are received from the same Creditor with respect to the same Claim before the Voting Deadline, the last properly executed Ballot timely received will be deemed to reflect that voter's intent and will supersede and revoke any prior received Ballot.

10. Creditors must vote all of their Claims within a particular Class either to accept or reject the Joint Plan, and may not split any votes. Accordingly, a Ballot that attempts to partially reject and partially accept the Joint Plan will not be counted.

11. The Abuse Claimant, an authorized representative of the Abuse Claimant or authorized legal counsel for the Abuse Claimant, must sign the Ballot. If you are signing as an authorized representative or as legal counsel, you must submit the documentation evidencing the express authority for you to vote to accept or reject the Joint Plan. As noted in Item 2 of the Ballot, if you are signing the Ballot

«instance» «ballotid»

«SEQ»                                                                           Class: «pclass»

in your capacity as a trustee, executor, administrator, guardian, attorney in fact, or otherwise acting in a fiduciary or representative capacity, you must indicate such capacity when signing and, you must submit documentation evidencing your authority to vote to accept or reject the Joint Plan on behalf of the Abuse Claimant.  If you are signing the Ballot in your capacity as legal counsel to the Abuse Claimant, you must submit the documentation evidencing the express authority for such counsel to vote to accept or reject the Joint Plan on behalf of Abuse Claimant in the bankruptcy case or cases of the Debtor and/or the Additional Debtors.  **Such documentation must be: (a) delivered to the Claims and Voting Agent via mail, overnight delivery, or hand delivery using the applicable address set forth in the Ballot and instructions; or (b) uploaded through the E-Balloting Portal.**

12.     If a Claim has been estimated or otherwise Allowed only for voting purposes by Order of the Bankruptcy Court, such Claim will be temporarily Allowed in the amount so estimated or Allowed by the Bankruptcy Court for voting purposes only, and not for purposes of Allowance or Distribution.

13.     After the Voting Deadline, no Ballot may be withdrawn or modified without the prior written consent of the Plan Proponents.

14.     Your Ballot does not constitute, and will not be deemed to be, (a) a Proof of Claim, or (b) an assertion or admission of a Claim.

---

**IF THE CLAIMS AND VOTING AGENT DOES NOT <u>ACTUALLY RECEIVE</u> YOUR BALLOT ON OR BEFORE THE VOTING DEADLINE, WHICH IS OCTOBER 29, 2025, AT 11:59 P.M. (CENTRAL TIME), THEN YOUR VOTE WILL <u>NOT</u> BE COUNTED.**

---

**NO PERSON HAS BEEN AUTHORIZED TO GIVE ANY INFORMATION OR ADVICE, OR TO MAKE ANY REPRESENTATION REGARDING OR ON BEHALF OF THE DEBTOR OR ADDITIONAL DEBTORS, OTHER THAN WHAT IS CONTAINED IN THE SOLICITATION PACKAGE MAILED HEREWITH.**

Class: «pclass»

«SEQ»

## SCHEDULE 1

## ADDITIONAL DEBTORS

I.      **Archdiocesan Parishes**

1.     All Saints Roman Catholic Church, New Orleans, Louisiana
2.     Annunciation of the Blessed Virgin Mary Roman Catholic Church, Bogalusa, Louisiana
3.     Ascension of Our Lord Roman Catholic Church, LaPlace, Louisiana
4.     Assumption of Mary Roman Catholic Church, Avondale, Louisiana
5.     Assumption of the Blessed Virgin Mary Roman Catholic Church, Braithwaite, Louisiana[1]
6.     Blessed Francis Xavier Seelos Roman Catholic Church, New Orleans, Louisiana
7.     Blessed Sacrament-St. Joan of Arc Roman Catholic Church, New Orleans, Louisiana
8.     Blessed Trinity Roman Catholic Church, New Orleans, Louisiana
9.     Christ the King Roman Catholic Church, Gretna, Louisiana
10.    Corpus Christi-Epiphany Roman Catholic Church, New Orleans, Louisiana
11.    Divine Mercy Roman Catholic Church, Kenner, Louisiana
12.    Good Shepherd Roman Catholic Church, New Orleans, Louisiana
13.    Holy Family Roman Catholic Church, Franklinton, Louisiana
14.    Holy Family Roman Catholic Church, Luling, Louisiana
15.    Holy Name of Mary Roman Catholic Church, New Orleans, Louisiana
16.    Holy Spirit Roman Catholic Church, New Orleans, Louisiana
17.    Immaculate Conception Roman Catholic Church, Marrero, Louisiana
18.    Immaculate Conception Roman Catholic Church, New Orleans, Louisiana
19.    Mary Queen of Peace Roman Catholic Church, Mandeville, Louisiana
20.    Mary Queen of Vietnam Roman Catholic Church, New Orleans, Louisiana
21.    Mary, Help of Christians Roman Catholic Church, Harvey, Louisiana, formerly known as St. Rosalie Roman Catholic Church, Harvey, Louisiana
22.    Mater Dolorosa Roman Catholic Church, New Orleans, Louisiana
23.    Most Holy Name of Jesus Roman Catholic Church, New Orleans, Louisiana
24.    Most Holy Trinity Roman Catholic Church, Covington, Louisiana
25.    Our Lady of Divine Providence Roman Catholic Church, Metairie, Louisiana
26.    Our Lady of Grace Roman Catholic Church, Reserve, Louisiana
27.    Our Lady of Lavang Roman Catholic Church, New Orleans, Louisiana
28.    Our Lady of Lourdes Roman Catholic Church, Slidell, Louisiana
29.    Our Lady of Lourdes Roman Catholic Church, Violet, Louisiana
30.    Our Lady of Perpetual Help Roman Catholic Church, Belle Chasse, Louisiana
31.    Our Lady of Perpetual Help Roman Catholic Church, Kenner, Louisiana
32.    Our Lady of Prompt Succor Roman Catholic Church, Chalmette, Louisiana
33.    Our Lady of Prompt Succor Roman Catholic Church, Westwego, Louisiana
34.    Our Lady of the Holy Rosary Roman Catholic Church, Hahnville, Louisiana
35.    Our Lady of the Lake Roman Catholic Church, Mandeville, Louisiana
36.    Our Lady of the Rosary Roman Catholic Church, New Orleans, Louisiana
37.    Resurrection of Our Lord Roman Catholic Church, New Orleans, Louisiana
38.    Sacred Heart of Jesus Roman Catholic Church, Lacombe, Louisiana
39.    Sacred Heart of Jesus Roman Catholic Church, Norco, Louisiana
40.    St. Agnes Le Thi Thanh Roman Catholic Church, Marrero, Louisiana
41.    St. Agnes Roman Catholic Church, Jefferson, Louisiana

---

[1] Assumption of the Blessed Virgin Mary Roman Catholic Church, Braithwaite, Louisiana, and St. Thomas Roman Catholic Church, Pointe a La Hache, Louisiana operate jointly as one Archdiocesan Parish.

Class: «pclass»

«SEQ»

42.     St. Alphonsus Roman Catholic Church, New Orleans, Louisiana
43.     St. Andrew the Apostle Roman Catholic Church, New Orleans, Louisiana
44.     St. Angela Merici Roman Catholic Church, Metairie, Louisiana
45.     St. Ann Roman Catholic Church and Shrine, Metairie, Louisiana
46.     St. Anselm Roman Catholic Church, Madisonville, Louisiana
47.     St. Anthony of Barataria Roman Catholic Church, Lafitte, Louisiana
48.     St. Anthony of Padua Roman Catholic Church, Luling, Louisiana
49.     St. Anthony of Padua Roman Catholic Church, New Orleans, Louisiana
50.     St. Anthony Roman Catholic Church, Gretna, Louisiana
51.     St. Augustine Roman Catholic Church, New Orleans, Louisiana
52.     St. Benedict Roman Catholic Church, Covington, Louisiana
53.     St. Benilde Roman Catholic Church, Metairie, Louisiana
54.     St. Bernard Roman Catholic Church, St. Bernard, Louisiana
55.     St. Catherine of Siena Roman Catholic Church, Metairie, Louisiana
56.     St. Charles Borromeo Roman Catholic Church, Destrehan, Louisiana
57.     St. Christopher Roman Catholic Church, Metairie, Louisiana
58.     St. Clement of Rome Roman Catholic Church, Metairie, Louisiana
59.     St. Cletus Roman Catholic Church, Gretna, Louisiana
60.     St. David Roman Catholic Church, New Orleans, Louisiana
61.     St. Dominic's Roman Catholic Church, New Orleans, Louisiana
62.     St. Edward the Confessor Roman Catholic Church, Metairie, Louisiana
63.     St. Francis of Assisi Roman Catholic Church, New Orleans, Louisiana
64.     St. Francis Xavier Roman Catholic Church, Metairie, Louisiana
65.     St. Genevieve Roman Catholic Church, Slidell, Louisiana
66.     St. Jane de Chantal Roman Catholic Church, Abita Springs, Louisiana
67.     St. Jerome Roman Catholic Church, Kenner, Louisiana
68.     St. Joachim Roman Catholic Church, Marrero, Louisiana
69.     St. Joan of Arc Roman Catholic Church, LaPlace, Louisiana
70.     St. John of the Cross Roman Catholic Church, Lacombe, Louisiana
71.     St. John Paul II Roman Catholic Church, Waggaman, Louisiana, formerly known as Our Lady of the Angels Roman Catholic Church, Waggaman, Louisiana
72.     St. John the Baptist Roman Catholic Church, Edgard, Louisiana
73.     St. John the Baptist Roman Catholic Church, Folsom, Louisiana
74.     St. Joseph Roman Catholic Church, Algiers, Louisiana
75.     St. Joseph the Worker Roman Catholic Church, Marrero, Louisiana
76.     St. Joseph's Roman Catholic Church, Gretna, Louisiana
77.     St. Josephine Bakhita Roman Catholic Church, New Orleans, Louisiana, formerly known as St. Mary of the Angels Roman Catholic Church, New Orleans, Louisiana
78.     St. Katharine Drexel Roman Catholic Church, New Orleans, Louisiana
79.     St. Louis, King of France, Roman Catholic Church, Metairie, Louisiana
80.     St. Luke the Evangelist Roman Catholic Church, Slidell, Louisiana
81.     St. Margaret Mary Roman Catholic Church, Slidell, Louisiana
82.     St. Maria Goretti Roman Catholic Church, New Orleans, Louisiana
83.     St. Mark Roman Catholic Church, Ama, Louisiana
84.     St. Martha Roman Catholic Church, Harvey, Louisiana
85.     St. Martin de Porres Roman Catholic Church, New Orleans, formerly known as Transfiguration of the Lord Roman Catholic Church, New Orleans, Louisiana
86.     St. Mary Magdalen Roman Catholic Church, Metairie, Louisiana
87.     St. Mary's Roman Catholic Church, New Orleans, Louisiana
88.     St. Matthew the Apostle Roman Catholic Church, River Ridge, Louisiana
89.     St. Michael the Archangel Roman Catholic Church, Paradis, Louisiana, formerly known as St. John the Baptist Roman Catholic Church, Paradis, Louisiana

«instance» «ballotid»

Class: «pclass»

«SEQ»

90.     St. Patrick's Roman Catholic Church, New Orleans, Louisiana
91.     St. Patrick's Roman Catholic Church, Port Sulphur, Louisiana
92.     St. Paul the Apostle Roman Catholic Church, New Orleans, Louisiana
93.     St. Peter Claver Roman Catholic Church, New Orleans, Louisiana
94.     St. Peter Roman Catholic Church, Reserve, Louisiana
95.     St. Peter's Roman Catholic Church, Covington, Louisiana
96.     St. Philip Neri Roman Catholic Church, Metairie, Louisiana
97.     St. Pius X Roman Catholic Church, New Orleans, Louisiana
98.     St. Raymond and St. Leo the Great Roman Catholic Church, New Orleans, Louisiana
99.     St. Rita Roman Catholic Church, Harahan, Louisiana
100.    St. Rita Roman Catholic Church, New Orleans, Louisiana
101.    St. Thomas Roman Catholic Church, Pointe a La Hache, Louisiana[2]
102.    Sts. Peter and Paul Roman Catholic Church, Pearl River, Louisiana
103.    The Congregation of St. Rita Roman Catholic Church of Harahan
104.    The Visitation of Our Lady Roman Catholic Church, Marrero, Louisiana

## II.     Suppressed Archdiocesan Parishes[3]

1.     Blessed Sacrament, Inc.
2.     Epiphany, Inc.
3.     Immaculate Heart of Mary, Inc.
4.     Incarnate Word, Inc.
5.     Our Lady of Good Counsel, Inc.
6.     Our Lady of Good Harbor, Inc.

---

[2] As noted earlier, Assumption of the Blessed Virgin Mary Roman Catholic Church, Braithwaite, Louisiana, and St. Thomas Roman Catholic Church, Pointe a La Hache, Louisiana operate jointly as one Archdiocesan Parish.

[3] The Suppressed Archdiocesan Parishes no longer operate as separate church parishes. The Suppressed Archdiocesan Parishes were not dissolved, and may own property.

Following Hurricane Katrina, the operations of certain of the Suppressed Archdiocesan Parishes were combined with Archdiocesan Parishes. In 2024, in the ongoing aftermath of Hurricane Ida and a result of storm damage, the shift of demographics and Catholic population, decreased or low Mass attendance, sacramental statistics, and financial difficulties encountered, the following additional Suppressed Archdiocesan Parishes were canonically merged with neighboring Archdiocesan Parishes: (a) St. Hubert Roman Catholic Church, Garyville, Louisiana, now known as St. Hubert, Inc., was canonically merged into St. Peter Roman Catholic Church, Reserve, Louisiana; (b) (i) St. James Major Roman Catholic Church, New Orleans, Louisiana, now known as St. James Major, Inc., and (ii) St. Gabriel Roman Catholic Church, New Orleans, Louisiana, now known as St. Gabriel, Inc., were both canonically merged into Transfiguration of the Lord Roman Catholic Church, New Orleans, Louisiana, now known as St. Martin de Porres Roman Catholic Church, New Orleans, Louisiana; (c) St. John Bosco Roman Catholic Church, Harvey, Louisiana, now known as St. John Bosco, Inc., was canonically merged into St. Rosalie Roman Catholic Church, Harvey, Louisiana, now known as Mary, Help of Christians Roman Catholic Church, Harvey, Louisiana; (d) St. Bonaventure Roman Catholic Church, Avondale, Louisiana, now known as St. Bonaventure, Inc., was canonically merged into Our Lady of the Angels Roman Catholic Church, Waggaman, Louisiana, now known as St. John Paul II Roman Catholic Church, Waggaman, Louisiana; (e) St. Gertrude Roman Catholic Church, Des Allemands, Louisiana, now known as St. Gertrude, Inc., was canonically merged into St. John the Baptist Roman Catholic Church, Paradis, Louisiana, now known as St. Michael the Archangel Roman Catholic Church, Paradis, Louisiana; (f) Our Lady Star of the Sea Roman Catholic Church, New Orleans, Louisiana, now known as Our Lady Star of the Sea, Inc., was canonically merged into St. Mary of the Angels Roman Catholic Church, New Orleans, Louisiana, now known as St. Josephine Bakhita Roman Catholic Church, New Orleans, Louisiana; and (g) St. Theresa of Avila Roman Catholic Church, New Orleans, Louisiana, now known as St. Theresa of Avila, Inc., had its canonical territory divided so that (i) the area north of the Pontchartrain Expressway was canonically merged into St. Patrick's Roman Catholic Church, New Orleans, Louisiana, and (ii) the area south of the Pontchartrain Expressway was canonically merged into St. Alphonsus Roman Catholic Church, New Orleans, Louisiana.

«instance» «ballotid»

Class: «pclass»

«SEQ»

7.  Our Lady of Lourdes, New Orleans, Louisiana, Inc.
8.  Our Lady of the Sacred Heart, New Orleans, Louisiana, Inc.
9.  Our Lady Star of the Sea, Inc., formerly known as Our Lady Star of the Sea Roman Catholic Church, New Orleans, Louisiana
10. St. Ann, New Orleans, Louisiana, Inc.
11. St. Bonaventure, Inc., formerly known as St. Bonaventure Roman Catholic Church, Avondale, Louisiana
12. St. Frances Xavier Cabrini, Inc.
13. St. Francis de Salles, Inc.
14. St. Gabriel, Inc., formerly known as St. Gabriel Roman Catholic Church, New Orleans, Louisiana
15. St. Gertrude, Inc., formerly known as St. Gertrude Roman Catholic Church, Des Allemands, Louisiana
16. St. Henry's, Inc.
17. St. Hubert, Inc., formerly known as St. Hubert Roman Catholic Church, Garyville, Louisiana
18. St. James Major, Inc., formerly known as St. James Major Roman Catholic Church, New Orleans, Louisiana
19. St. John Bosco, Inc., formerly known as St. John Bosco Roman Catholic Church, Harvey, Louisiana
20. St. John the Baptist, New Orleans, Louisiana, Inc.
21. St. Julian Eymard, Inc.
22. St. Lawrence the Martyr, Inc.
23. St. Louise de Marillac, Inc.
24. St. Maurice, Inc.
25. St. Monica, Inc.
26. St. Philip the Apostle, Inc.
27. St. Raymond's, Inc.
28. St. Rose of Lima, Inc.
29. St. Theresa of Avila, Inc., formerly known as St. Theresa of Avila Roman Catholic Church, New Orleans, Louisiana
30. St. Theresa of the Child Jesus, Inc.
31. The Congregation of Saints Peter and Paul Roman Catholic Church
32. The Congregation of St. Cecelia Roman Catholic Church
33. The Congregation of the Annunciation Roman Catholic Church
34. The Congregation of the Holy Trinity Roman Catholic Church

### III.    Archdiocesan Agencies

1.  Archdiocesan Spirituality Center
2.  Catholic Charities Archdiocese of New Orleans
3.  Catholic Charities Children's Day Care Centers
4.  Catholic Charities Group Homes (merged into Catholic Charities Archdiocese of New Orleans)
5.  Clarion Herald Publishing Company
6.  Korean Catholic Community of New Orleans, Inc.
7.  Notre Dame Seminary
8.  Our Lady of Mount Carmel Latin Mass Community, Covington, Louisiana
9.  Pace Greater New Orleans
10. Padua House (merged into Catholic Charities Archdiocese of New Orleans)
11. Philmat, Inc.
12. Project Lazarus
13. Roman Catholic Center of Jesus the Lord
14. School Food and Nutrition Services of New Orleans, Inc.
15. Second Harvest Food Bank of Greater New Orleans and Acadiana

«instance» «ballotid»

«crednoseq») «I1»

Class: «pclass»

«SEQ»

16.     St. Jude Community Center, Inc.
17.     St. Michael Special School
18.     St. Thérèse Catholic Academy
19.     The Society for the Propagation of the Faith, Archdiocese of New Orleans

«instance» «ballotid»

(«crednoseq») «l1»

## SCHEDULE 2

## ART. 12 EXCERPTS

## [JOINT PLAN SECTIONS 12.2, 12.3, 12.4, 12.5, 12.8, & 12.15]

**Section 12.2      Discharge and Discharge Injunctions.**

**(a)** *Discharge of the Debtor*. Except as expressly provided in the Insurance Settlement Agreements, Joint Plan (including but not limited to section 12.14 below), or Confirmation Order, all consideration distributed under the Joint Plan, as well as the Debtor and Additional Debtor Settlement Consideration, will be in exchange for, and in complete satisfaction, settlement, discharge, and termination of, all Claims of any nature whatsoever against or in the Debtor or any of its assets or properties based upon any act, omission, transaction, occurrence, or other activity of any nature that occurred prior to the Confirmation Date, and, as of the Effective Date, the Debtor will be deemed discharged, and each Creditor and any successor, assign, and affiliate of such Creditor will be deemed to have forever waived and discharged the Debtor, to the fullest extent permitted by section 1141 of the Bankruptcy Code, of and from any and all Claims, rights, liabilities, and debts of the kind specified in section 502 of the Bankruptcy Code, based upon any act, omission, transaction, occurrence, or other activity of any nature that occurred prior to the Confirmation Date, in each case whether or not (a) a Proof of Claim based upon such debt is Filed or deemed Filed under section 501 of the Bankruptcy Code, (b) a Claim (including an Abuse Claim) based upon such debt is Allowed under section 502 of the Bankruptcy Code, (c) a Claim based upon such debt is or has become an Expunged Claim, or (d) an Abuse Claimant holding an Abuse Claim based upon such debt is deemed to have accepted the Joint Plan.

Without limiting the foregoing, the Archdiocesan Schools are not separate Entities from the Debtor, and all Abuse Claims asserted against the Archdiocesan Schools are discharged and released in accordance with the preceding paragraph.

In the event any Entity takes any action that is prohibited by, or is otherwise inconsistent with, the injunction provisions in the Joint Plan or the Confirmation Order, then, upon notice to the Bankruptcy Court by an affected party, the action or proceeding in which the Claim of such Entity is asserted will automatically be transferred to the Bankruptcy Court or District Court for enforcement of the Joint Plan. In a successful action to enforce the injunctive provisions of this Section 12.2(a) of the Joint Plan in response to a willful violation thereof, the moving party may seek an award of costs (including reasonable attorneys' fees) against the non-moving party, and such other legal or equitable remedies as are just and proper, after notice and a hearing.

**Notwithstanding any other provision of the Joint Plan, if any court of competent jurisdiction enters a Final Order releasing a Non-Settling Insurer of its duty to defend and/or indemnify the Debtor, the Reorganized Archdiocese, or any other Covered Party or Settling Insurer due, in whole or in part, to the Debtor's or the Reorganized Archdiocese's breach of its Post-Effective Date Insurance Obligations, the Debtor and/or the Reorganized Archdiocese shall be liable for any such breach causing a loss of insurance coverage under any Non-Settling Insurers' Policies, and the Debtor and the Reorganized Archdiocese shall not have a discharge of any Claim that becomes uninsured as a result, and any release or discharge of such Claim under section 1141 of the Bankruptcy Code and the Joint Plan shall be null and void. The Settlement Trustee and the Reorganized Archdiocese shall have the right at their respective discretion to intervene and be heard as parties-in-interest in any Action related to an Abuse Claim in which (i) the Debtor's or the Reorganized Archdiocese's Post-Effective Date Insurance Obligations or (ii) the duty of a Non-Setting Insurer to defend**

«SEQ»

**and/or indemnify the Debtor, the Reorganized Archdiocese, or any other Covered Party, are implicated, disputed, or otherwise raised.**

(b)      *Discharge of the Additional Debtors*. Except as expressly provided in the Insurance Settlement Agreements, Joint Plan (including but not limited to section 12.14 below), or Confirmation Order, all consideration distributed under the Joint Plan, as well as the Debtor and Additional Debtor Settlement Consideration, will be in exchange for, and in complete satisfaction, settlement, discharge, and termination of all Claims of any nature whatsoever against or in the Additional Debtors or any of their assets or properties based upon any act, omission, transaction, occurrence, or other activity of any nature that occurred prior to the Confirmation Date, and, as of the Effective Date, the Additional Debtors will be deemed discharged, and each Creditor and any successor, assign, and affiliate of such Creditor will be deemed to have forever waived and discharged the Additional Debtors, to the fullest extent permitted by section 1141 of the Bankruptcy Code, of and from any and all Claims, rights, liabilities, and debts of the kind specified in section 502 of the Bankruptcy Code, based upon any act, omission, transaction, occurrence, or other activity of any nature that occurred prior to the Confirmation Date, in each case whether or not (a) a Proof of Claim based upon such debt is Filed or deemed Filed under section 501 of the Bankruptcy Code, (b) a Claim (including an Abuse Claim) based upon such debt is Allowed under section 502 of the Bankruptcy Code, (c) a Claim based upon such debt is or has become an Expunged Claim, or (d) an Abuse Claimant holding an Abuse Claim based upon such debt is deemed to have accepted the Joint Plan.

Without limiting the foregoing, the Parish Schools are not separate Entities from the Additional Debtors, and all Abuse Claims asserted against the Parish Schools are discharged and released in accordance with the preceding paragraph.

If any Entity takes any action that is prohibited by, or is otherwise inconsistent with, the injunction provisions in the Joint Plan or the Confirmation Order, then, upon notice to the Bankruptcy Court by an affected party, the action or proceeding in which the Claim of such Entity is asserted will automatically be transferred to the Bankruptcy Court or District Court for enforcement of the Joint Plan. In a successful action to enforce the injunctive provisions of this Section 12.2(b) of the Joint Plan in response to a willful violation thereof, the moving party may seek an award of costs (including reasonable attorneys' fees) against the non-moving party, and such other legal or equitable remedies as are just and proper, after notice and a hearing.

**Notwithstanding any other provision of the Joint Plan, if any court of competent jurisdiction enters a Final Order releasing any Non-Settling Insurer of its duty to defend and/or indemnify an Additional Debtor (or Additional Debtors), a Reorganized Additional Debtor (or Reorganized Additional Debtors), or any other Covered Party or Settling Insurer due, in whole or in part, to such Additional Debtor's(s') or such Reorganized Additional Debtor's(s') breach of its (or their) Post-Effective Date Insurance Obligations, then such Additional Debtor(s) and/or Reorganized Additional Debtor(s) shall be liable for any breach causing a loss of insurance coverage under any Non-Settling Insurers' Policies, and such Additional Debtor(s) and/or Reorganized Additional Debtor(s) shall not have a discharge of any Claim that becomes uninsured as a result, and any release or discharge of such Claim under section 1141 of the Bankruptcy Code and the Joint Plan shall be null and void. The Settlement Trustee and such Reorganized Additional Debtor (or Reorganized Additional Debtors) shall have the right at their respective discretion to intervene and be heard at any time as parties-in-interest in any Action related to an Abuse Claim in which (i) the Additional Debtor's (or Additional Debtors') or the Reorganized Additional Debtor's(s') Post-Effective Date Insurance Obligations or (ii) the duty of a Non-Setting Insurer to defend and/or indemnify the Additional Debtors, the Reorganized Additional Debtors, or any other Covered Party, are implicated, disputed, or otherwise raised.**

2

Class: «pclass»

«SEQ»

(c)     *Discharge Injunction – Debtor.* As of the Effective Date, except as expressly provided in the Insurance Settlement Agreements, the Joint Plan, or the Confirmation Order, all Creditors holding Claims of any nature whatsoever against or in the Debtor or any of its assets or properties based upon any act, omission, transaction, occurrence, or other activity of any nature that occurred prior to the Confirmation Date will be precluded and permanently enjoined from prosecuting or asserting any such discharged Claim against the Debtor, the Reorganized Archdiocese, or the property of the Debtor or the Reorganized Archdiocese. In accordance with the foregoing, except as expressly provided in the Joint Plan, the Insurance Settlement Agreements, the Confirmation Order, or the Insurance Settlement Orders, the Confirmation Order will be a judicial determination of discharge or termination of all Claims, and other debts and liabilities against or in the Debtor pursuant to sections 105, 524, and 1141 of the Bankruptcy Code, and such discharge will void any judgment obtained against the Debtor or the Reorganized Archdiocese at any time to the extent such judgment relates to a discharged Claim.

Without limiting the foregoing, the Archdiocesan Schools are not separate Entities from the Debtor, and the discharge injunction set forth in the preceding paragraph will include the Archdiocesan Schools and will apply to all discharged Claims against the Archdiocesan Schools.

(d)     *Discharge Injunction – Additional Debtors*. As of the Effective Date, except as expressly provided in the Insurance Settlement Agreements, the Joint Plan, or the Confirmation Order, all Creditors holding Claims of any nature whatsoever against or in any Additional Debtors or any of the assets or properties of any Additional Debtors based upon any act, omission, transaction, occurrence, or other activity of any nature that occurred prior to the Confirmation Date will be precluded and permanently enjoined from prosecuting or asserting any such discharged Claim against the Additional Debtors, the Reorganized Additional Debtors, or the property of the Additional Debtors or Reorganized Additional Debtors. In accordance with the foregoing, except as expressly provided in the Joint Plan, the Insurance Settlement Agreements, the Confirmation Order, or the Insurance Settlement Orders, the Confirmation Order will be a judicial determination of discharge or termination of all Claims, and other debts and liabilities against or in the Additional Debtors pursuant to sections 105, 524, and 1141 of the Bankruptcy Code, and such discharge will void any judgment obtained against the Additional Debtors or the Reorganized Additional Debtors at any time to the extent such judgment relates to a discharged Claim.

Without limiting the foregoing, the Parish Schools are not separate Entities from the applicable Additional Debtors, and the discharge injunction set forth in the preceding paragraph will include the Parish Schools and will apply to all discharged Claims against the Parish Schools.

**Section 12.3     Exculpations and Limitation of Liability, and Exculpation Injunction.**

(a)     From and after the Effective Date, to the maximum extent permitted by law, no Exculpated Party will have or incur any liability for, and each Exculpated Party will be released from, any Claims, Causes of Action, or liability, and each Exculpated Party is hereby exculpated from any Claim, obligation, suit, judgment, damage, demand, debt, right, Cause of Action, Estate Cause of Action, remedy, loss, and liability for conduct occurring on or after the applicable Archdiocese's Petition Date or the Additional Debtors' Petition Date in connection with or arising out of: (a) the Filing and administration of any Chapter 11 Cases; (b) the negotiation and pursuit of the Disclosure Statement, the Joint Plan, or the Plan Documents, as well as the solicitation of votes for, or Confirmation of, the Joint Plan; (c) the funding or consummation of the Joint Plan, the Settlement Trust, the Plan Documents, or any related agreements, instruments, or other documents, as well as any offer, issuance, and/or Distribution under the Joint Plan or any Settlement Trust Distributions or other disbursements made by the Settlement Trust, whether or not such Distributions, Settlement Trust Distributions, or other disbursements occur following the Effective Date; (d) the implementation of the Joint Plan; and (e) any negotiations, transactions, and

3

documentation in connection with the foregoing clauses (a)-(d); provided, however, the foregoing will not apply to any acts or omissions of an Exculpated Party arising out of or related to acts or omissions that constitute bad faith, fraud, gross negligence, criminal misconduct, or willful misconduct. The Exculpations will be in addition to, and not in limitation of, all other releases, indemnities, exculpations, any other applicable law or rules, or any other provisions of the Joint Plan, which protect such Exculpated Parties from liability.

(b)      The Exculpated Parties have participated in good faith and in compliance with the applicable laws with regard to the solicitation of votes and any distribution of consideration made pursuant to the Joint Plan or Settlement Trust and, therefore, are not, and on account of such distributions, will not be liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Joint Plan, any Distributions made pursuant to the Joint Plan, or any Settlement Trust Distributions or other disbursements made by the Settlement Trust.

(c)      As of the Effective Date, all Creditors are, and will be, expressly, conclusively, absolutely, unconditionally, irrevocably, and forever stayed, restrained, prohibited, barred and enjoined from taking any of the following actions against any Exculpated Party and, solely to the extent provided by section 1125(e) of the Bankruptcy Code, any Entity described in section 1125(e) or its or their property or successors or assigns on account of or based on the subject matter of such Claims, whether directly or indirectly, derivatively or otherwise with respect to any liability or obligation for which an Exculpated Party is discharged, exculpated, or released under the Joint Plan (which, as set forth in this Section 12.3(a) does not include any liability or obligation arising out of or related to acts or omissions of such Exculpated Party that constitute bad faith, fraud, gross negligence, criminal misconduct, or willful misconduct): (i) commencing, conducting, or continuing in any manner, directly or indirectly, any suit, Action, or other proceeding (including any judicial, arbitral, administrative or other proceeding) in any forum; (ii) enforcing, attaching (including any prejudgment attachment), collecting, or in any way seeking to recover any judgment, award, decree, or other Order; (iii) creating, perfecting, or in any way enforcing in any matter, directly or indirectly, any Lien or encumbrance; and/or (v) setting off, seeking reimbursement, contributions from, or subrogation against, or otherwise recouping in any manner, directly or indirectly, any amount against any liability or obligation that is discharged or released under the Joint Plan.

**Section 12.4      *Channeling Injunction Regarding Abuse Claims against the Protected Parties and Settling Insurers*. In consideration of the undertakings of the Protected Parties and Settling Insurers, their respective contributions to the Settlement Trust, and other consideration, and, where applicable, pursuant to their respective settlements with the Debtor and/or any Additional Debtors and to further preserve and promote the agreements between and among the Protected Parties and Settling Insurers, and to supplement where necessary the injunctive effect of the discharge as provided in section 1141 and 524 of the Bankruptcy Code, and pursuant to sections 105 and 363 of the Bankruptcy Code:**

**(a)      Any and all Channeled Claims against the Protected Parties and Settling Insurers are channeled into the Settlement Trust and will be treated, administered, determined, and resolved under the procedures and protocols and in the amounts established under the Joint Plan and the Settlement Trust Documents as the sole and exclusive remedy for all Entities holding Channeled Claims;**

**(b)      all Entities that have held or asserted, currently hold or assert, or that may in the future hold or assert, any Channeled Claims against the Protected Parties and Settling Insurers will be permanently and forever stayed, restrained, enjoined, and barred from taking any action, directly or indirectly, for the purpose of asserting, enforcing, collecting,**

4

recovering, or receiving payments, satisfaction, or recovery from any Protected Party or any of the Settling Insurers, including:

(i)      commencing, conducting, or continuing, in any manner, whether directly or indirectly, any suit, Action, or other proceeding of any kind in any forum with respect to any such Channeled Claim against any Protected Party, Settling Insurer, or any property or interest in property of any Protected Party or Settling Insurer;

(ii)     enforcing, levying, attaching, collecting, or otherwise recovering, by any manner or means, either directly or indirectly, any judgment, award, decree, or other Order against any Protected Party, Settling Insurer, or any property or interest in property of any Protected Party or Settling Insurer with respect to any such Channeled Claim;

(iii)    creating, perfecting, or enforcing, by any manner or means, whether directly or indirectly, any Lien or encumbrance of any kind against any Protected Party, Settling Insurer, or any property or interest in property of any Protected Party or Settling Insurer with respect to any such Channeled Claim;

(iv)     asserting, implementing, or effectuating any Channeled Claim of any kind or accomplishing any setoff, right of subrogation, indemnity, contribution, or recoupment of any kind, whether directly or indirectly, against: (A) any obligation due to any Protected Party or Settling Insurer, (B) any Protected Party or Settling Insurer, or (C) any property or interest in property of any Protected Party or Settling Insurer; and

(v)      taking any act, in any manner, in any place whatsoever, that does not conform to, or comply with, the provisions of the Joint Plan and the Plan Documents.

(c)      The foregoing Channeling Injunction is an integral part of the Joint Plan and is essential to the Joint Plan's consummation and implementation. The channeling of the Channeled Claims as provided in this Section 12.4 of the Joint Plan will inure to the benefit of the Protected Parties and the Settling Insurers. In a successful action to enforce the injunctive provisions of this Section 12.4 of the Joint Plan in response to a willful violation thereof, the moving party may seek an award of costs (including reasonable attorneys' fees) against the non-moving party, and such other legal or equitable remedies as are just and proper, after notice to the Post-Confirmation Notice Parties and a hearing.

(d)      Notwithstanding anything to the contrary in Section 12.4 of the Joint Plan, the Channeling Injunction will not enjoin the following:

(i)      the right of any Entity to the treatment afforded to such Entity under the Joint Plan;

(ii)     the right of any Entity to assert any Claim for payment of Settlement Trust expenses solely against the Settlement Trust;

(iii)    the Settlement Trustee's enforcing rights under the Settlement Trust Documents;

(iv)     the Settling Insurers' enforcing rights under the Insurance Settlement Agreements;

5

**(v)** the rights of the Settlement Trust, the Settlement Trustee, Abuse Claimants, Covered Parties, the Reorganized Archdiocese, and the Reorganized Additional Debtors (in each case, to the extent permitted or required under the Joint Plan) to prosecute any Claims against the Non-Settling Insurers based on or arising from the Non-Settling Insurance Rights Transfer or otherwise; or

**(vi)** the rights of the Covered Parties with respect to Non-Insurer Contribution Claims against, or with respect to, the Settlement Trust.

**Section 12.5** *Supplemental Settling Insurers' Injunction.* **Pursuant to sections 105(a) and 363 of the Bankruptcy Code, and in consideration of the undertakings of the Settling Insurers pursuant to any Insurance Settlement Agreement and the Joint Plan, including the Settling Insurers' purchases of the Settling Insurers' Policies pursuant to section 363(f) of the Bankruptcy Code and the Insurance Settlement Orders, any and all Entities who have held, now hold, or who may in the future hold any Claims against any Protected Party, any Covered Party, or any Settling Insurer, which, directly or indirectly, relate to, any of the Settling Insurers' Policies, are hereby permanently and forever stayed, enjoined, barred, and restrained from taking any action, directly or indirectly, to assert, enforce, collect, or recover, or attempt to assert, enforce, collect, or recover, any such Claim against any Settling Insurer, and/or any Settling Insurers' Policies, including:**

**(a)** **commencing, conducting, or continuing, in any manner, whether directly or indirectly, any suit, Action, or other proceeding of any kind in any forum with respect to any such Claim against any Settling Insurer, or any property or interest in property of any Settling Insurer;**

**(b)** **enforcing, levying, attaching, collecting, or otherwise recovering, by any manner or means, either directly or indirectly, any judgment, award, decree, or other Order against any Settling Insurer, or any property or interest in property of any Settling Insurer with respect to any such Claim;**

**(c)** **creating, perfecting, or enforcing, by any manner or means, whether directly or indirectly, any Lien or encumbrance of any kind against any Settling Insurer, or any property or interest in property of any Settling Insurer with respect to such Claim;**

**(d)** **asserting, implementing, or effectuating any Claim of any kind or accomplishing any setoff, right of subrogation, indemnity, contribution, or recoupment of any kind, whether directly or indirectly, against: (A) any obligation due to any Settling Insurer, (B) any Settling Insurer, or (C) any property or interest in property of any Settling Insurers; and**

**(e)** **taking any act, in any manner, in any place whatsoever, that does not conform to, or comply with, the provisions of the Joint Plan and the Plan Documents.**

The Supplemental Settling Insurers' Injunction will not apply to the rights of any Settling Insurer to any reinsurance recoveries, as provided in Section 7.1(f) of the Joint Plan.

**Section 12.8** **Gatekeeper Injunction**. **Subject in all respects to Article 12 of the Joint Plan, no Enjoined Party may assert a Claim or cause of action of any kind or institute any proceeding of any kind against any of the Covered Parties, Settling Insurers, or Settlement Trust that arises from or is in any manner related to the Chapter 11 Cases, the negotiation of the Joint Plan, the negotiation of the Insurance Settlement Agreements, the administration of the Joint Plan by the Settlement Trust and the Debtor, or the property to be distributed under the Joint Plan, or transactions in furtherance of the foregoing without the Bankruptcy Court 1) determining, after Notice and Hearing, that such claim or cause of action (a) is a colorable claim of any kind against the Debtor, the Additional Debtors,**

6

«SEQ»

the Settlement Trust, or the Settling Insurers; (b) did not arise prior to the Effective Date of the Joint Plan; and (c) is not a Claim owned by the Debtor or Settling Insurers against such Protected Party, Settling Insurer, or the Settlement Trust and 2) subject in all respects to the Injunctions, specifically authorizing such Enjoined Party to initiate a proceeding to assert such Claim or cause of action against such Protected Party, Settling Insurer, or the Settlement Trust.

To the extent that a Claim or cause of action is filed against a Covered Party, Settling Insurer, or the Settlement Trust, without the Bankruptcy Court authorizing such Claim or cause of action in accordance with the preceding paragraph, the Claim or cause of action shall be deemed a willful violation of the Injunctions contained in the Joint Plan if the Claim or cause of action is not dismissed within 10 days of the lawyer filing such Claim or cause of action being provided notice that the Claim or cause of action is in violation of the Injunctions contained in the Joint Plan and this provision. The Bankruptcy Court, for any willful violation of the Injunctions contained in the Joint Plan and this provision, shall assess the attorney filing such Claim or cause of action and the named plaintiff in the Claim or cause of action reasonable legal fees incurred by the party enforcing the respective Injunction and this provision.

Section 12.15   Ratification of Sale Injunction. Pursuant to sections 105(a), 363, and 1123 of the Bankruptcy Code, and in consideration of the undertakings of the Settling Insurers pursuant to the Insurance Settlement Agreements, including the Settling Insurers' purchase of the Settling Insurers' Policies free and clear of all Liens, Claims, and Subject Interests pursuant to section 363(f) of the Bankruptcy Code, the Joint Plan hereby incorporates by reference, adopts, and ratifies (and the Confirmation Order shall adopt and ratify) the injunction of Claims against a Settling Insurer with respect to any Subject Insurance Policy set forth in the Insurance Settlement Order(s) (each, a "Sale Injunction") in all respects. The Sale Injunction(s) are in addition to and independent of the injunctions in Sections 12.4 and 12.5 herein.

## SCHEDULE 3

### SETTLING INSURERS

Sparta Insurance Company and American Employers' Insurance Company ("**SPARTA**");[1]

United States Fire Insurance Company ("**U.S. Fire**"), International Insurance Company ("**International**"), and Westchester Fire Insurance Company and Westchester Surplus Lines Insurance Company individually and, to the extent that policies issued by U.S. Fire and/or International were novated to or assumed by either or both of them ("**U.S. Fire/International**");

Catholic Mutual Relief Society of America ("**Catholic Mutual**");

Puritan Insurance Company, The Manhattan Fire and Marine Insurance Company, and Westport Insurance Corporation ("**Puritan**");

National Union Fire Insurance Company of Pittsburgh, Pa. ("**National Union**"); and

Twin City Fire Insurance Company and First State Insurance Company ("**Twin City**").

The Settling Insurers include the following: (i) each of the foregoing Entities' past, present and future affiliates, divisions, reinsurers, and retrocessionaires, including Entities released pursuant to any Insurance Settlement Agreement; (ii) each of the foregoing Entities' respective past, present and future affiliates, holding companies, merged companies, related companies, divisions and acquired companies, including the Entities released pursuant to any Insurance Settlement Agreement; (iii) each of the foregoing Entities' respective past, present and future directors, officers, shareholders, employees, subrogees, partners, principals, agents, attorneys, joint ventures, joint venturers, Related Parties, and Claims handling administrators; and (iv) each of the foregoing Entities' respective predecessors, successors, assignors, and assigns, whether known or unknown, and all Entities acting on behalf of, by, through or in concert with them. Notwithstanding the foregoing, to the extent that any such Insurer has not executed its respective Insurance Settlement Agreement prior to the Confirmation Hearing, such Insurer shall not be deemed a Settling Insurer.

---

[1] SPARTA's contribution of $21,000,000 and status as a Settling Insurer is contingent on SPARTA providing financial assurance acceptable to the Survivors' Committee in the Survivors' Committee's discretion by the commencement of the Confirmation Hearing. If SPARTA fails to provide such financial assurance, SPARTA will become a Non-Settling Insurer, and litigation rights will be preserved against SPARTA and any insurance guarantee fund, should SPARTA trigger guarantee fund coverage.

Class: «pclass»

«SEQ»

## RE: RCANO

▯▯‖‖▯▯▯▯▯▯
(«seq»/«pclass»)
«l1»
«l2»
«l3»
«l4»
«l5»
«l6»

BID: «ballotid»

▯▯▯▯▯▯▯▯▯▯▯

EXHIBIT B

---

### LETTER FROM THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS TO ABUSE CLAIMANTS
### RECOMMENDING THEY VOTE TO **ACCEPT** THE JOINT PLAN

---

The Official Committee of Unsecured Creditors is the representative of the holders of Abuse Claims against the Roman Catholic Church of the Archdiocese of New Orleans, appointed by the Office of the United States Trustee, a division of the United States Department of Justice. The Survivors' Committee consists of four survivors of sexual abuse—two of whom were abused at Hope Haven and Madonna Manor. The Survivors' Committee has worked tirelessly on your behalf for the past five years to reach a reasonable settlement of more than 650 sexual abuse claims, including unprecedented protections for children and adult abuse survivors. For the reasons set forth below, the Survivors' Committee recommends that you vote to **ACCEPT** the reorganization plan, dated August 6, 2025, (as amended, modified, or supplemented from time to time, the "**Joint Plan**"), enclosed with this letter.[1]

The Survivors' Committee negotiated this Joint Plan under the Court's threat that the bankruptcy case will be dismissed if a plan is not approved by December 31, 2025. While some attorneys and Abuse Claimants advocate for dismissal, the Survivors' Committee does not believe that dismissal is in the interests of all Survivors. A summary comparing the Joint Plan to the possibility of dismissal is included in this letter.

If the case is dismissed, Survivors will be compensated only by litigating their claims in a court proceeding in which the Archdiocese and other defendants are likely to take aggressive and hostile positions, possibly including depositions of the Survivor, employers, family members, friends, doctors and therapists and medical exams by physicians of the Archdiocese's choosing. If the Survivor is successful after a lengthy litigation process that could include years of appeals, the Archdiocese and the other defendants can file bankruptcy again to delay payment. Moreover, the Archdiocese's insurers will retain their coverage defenses and litigate whether they have to pay anything. The Survivors' Committee understands that many Survivors will abandon the litigation option in light of these risks and likely delays, including Survivors' continued emotional and psychological pain, age and, often, poor health.

As importantly, the agreed child and adult survivor protection measures will NOT be instituted if the case is dismissed. The Survivors' Committee has crafted and aggressively negotiated for protections, including a Survivor Bill of Rights of unprecedented robustness in diocese abuse cases. These child protection measures are critical to the Survivors' Committee's recommendation to accept the Joint Plan and include increased accountability and abuser discipline and transparency through oversight, record keeping and disclosure, and the publication of abuse related documents through an archive to be administered by an approved third-party academic institution.

This Plan is a vast improvement over the Archdiocese's previously filed plan in terms of compensation to be paid to Survivors and child protection measures. Under the Joint Plan, the Archdiocese and its parishes, schools, and related Catholic entities (collectively, the "**Affiliates**") will create a Settlement Trust into which the Archdiocese and Affiliates will pay $150 million. The Joint Plan also contemplates the sale of the senior housing facilities, known as Christopher Homes. Depending on the outcome of the sale process, the Settlement Trust could receive additional cash in an estimated range of approximately $30,904,000 to $55,924,000. In addition, most of the insurers who insured the Archdiocese and its affiliates for liability for sexual abuse have agreed to pay a combined $29.25 million in cash to the Settlement Trust, and the Archdiocese will transfer to the Settlement Trust its rights against Non-Settling Insurers.

The Joint Plan allows Survivors with claims against Non-Settling Insurers to sue for the maximum compensation provided by the policies. The Joint Plan provides for how recoveries against Non-Settling Insurers are shared by the litigating Survivors and the Settlement Trust. The Joint Plan also allows

---

[1]  A capitalized term used but not defined herein shall have the meaning ascribed to it in the Joint Plan.

Survivors with claims against non-Affiliates, such as religious orders, to sue to recover deserved compensation.

The Joint Plan contemplates that nearly all of the Affiliates will each file their own bankruptcies if the recommended plan is accepted. These Affiliates, with acceptance of the recommended plan, should emerge from their bankruptcies at the same time as the Archdiocese emerges from its bankruptcy case. The coordination of these bankruptcies will facilitate the prompt funding of the Settlement Trust and disbursement of compensation and include the Affiliates' commitment to the child and adult protection measures.

If the Joint Plan is approved, Survivors will be able to share in the settlement fund pursuant to the terms of the Joint Plan and exhibits thereto, the Debtor and the Affiliates that have filed bankruptcies will receive a bankruptcy discharge of the abuse claims, and the Settling Insurers will have no further responsibility for paying abuse claims. The Joint Plan provides an efficient and speedy means for allocating compensation to each Survivor.

The Survivors' Committee supports the Joint Plan because it provides robust protections for children, reasonable compensation for Survivors and avoids the uncertainty and delay of continued litigation against the Debtors, the Affiliates and the Settling Insurers. The Survivors' Committee believes that the Joint Plan is in the best interests of all creditors, especially you, a Holder of an Abuse Claim (Class 3), and urges you to vote to **ACCEPT** the Joint Plan.

**The Disclosure Statement contains extensive information with respect to the Joint Plan and we encourage you and your counsel to review the Disclosure Statement and Joint Plan carefully before voting. Additionally, we have included with this letter a set of FAQs regarding the Joint Plan along with information regarding upcoming town hall meetings in which Survivors can listen to a presentation and write question for the panelists to answer.** The deadline to vote to accept or reject the Joint Plan is **October 29, 2025, at 11:59 PM (Central Time)**. Please complete and submit your ballot in accordance with the instructions contained in the solicitation package so that it is received no later than **October 29, 2025, at 11:59 p.m.**

Sincerely,

*Official Committee of Unsecured Creditors*

2

This Chart compares the benefits to Abuse Claimants under the Joint Plan compared to what Abuse Claimants could expect if the bankruptcy case is dismissed.

## SUMMARY OF JOINT PLAN VERSUS CASE DISMISSAL OPTIONS

| Joint Plan | Bankruptcy Case Dismissal |
|---|---|
| **Guaranteed Recovery:**<br><br>On the Effective Date of the Joint Plan, a settlement fund of $159,275,000 in cash and a 4-year $20 million promissory note will be placed into the Settlement Trust solely for the benefit of Abuse Claimants to pay Abuse Claims. | **No Guaranteed Recovery:**<br><br>May get a judgment against an Entity that has no assets when you try to enforce any judgment you receive. If you get a judgment against a solvent entity, collection is still uncertain. |
| **Additional Recoveries:**<br><br>1) Payment of the 20,000,000 promissory note by the Archdiocese and the Additional Debtors.<br>2) Payment of the net proceeds of the Christopher Homes affordable housing properties (estimate $30 million to $55 million). Anticipated to be received 3rd quarter of 2026.<br>3) Judgment against the Non-Settling Insurers. | **No Additional Recoveries:**<br><br>You will only receive a judgment against a specific Entity. You will only be able to collect against that Entity to the extent that Entity has assets. You will not be able to collect against the Christopher Homes affordable housing sales proceeds.<br><br>You may be able to collect against an insurance company you have a claim against if the Court does not uphold policy defenses. |
| **Insurance Settlements:**<br><br>The Joint Plan provides for more than $29 million from the Settling Insurers, including $21 million from SPARTA Insurance Company ("SPARTA") contingent on SPARTA providing financial assurance acceptable to the Survivors' Committee in its sole discretion. If Travelers Insurance Company settles, this insurance settlement amount will increase. | **No Insurance Settlements:**<br><br>No dedicated funds from insurance companies. |
| **Guaranteed Timing of Payment**<br><br>First payments to the Settlement Trust made by the Effective Date, currently scheduled for December 31, 2025. Payments to Abuse Claimants in early 2026. | **Unknown Timing of Payment**<br><br>In federal court in New Orleans, the average time from filing a lawsuit to trial is 2 years. Even if you get a judgment, it will likely be appealed adding an additional 1 to 2 years before you get a final judgment. You also run the risk that a subsequent bankruptcy will be filled before you can collect on your judgment. |
| **Equal Timing of Payment:** | **Unequal Timing of Payment:** |

3

| | |
|---|---|
| Abuse Claimants will be paid at the same time as other Abuse Claimants. | You will not be paid on your claim until your judgement is final.  Others who obtain judgements ahead of yours will be paid first and may exhaust the assets of the Entities you have a judgment against. |
| **No New Proof Is Needed:**<br><br>Your existing Abuse Claim documentation is sufficient to evaluate your claim. You have the option to supplement your Claim with additional information. While testimony in Court is permitted, it is not required. Under the Joint Plan you can remain anonymous, and you will not have to appear in person in Court or be involved in any depositions, document production, or incur any additional expert costs. | **More Proof Is Needed:**<br><br>Abuse Claimants will have to obtain Certificates of Merit, file a lawsuit, participate in document production, participate in depositions (possibly including family members, employers, and friends), attend independent medical exams, publicly identify themselves, testify at trial, and potentially defend appeals, all without a guaranteed payment. |
| **Travelers Insurance Company**<br><br>Abuse Claimants with Claims covered by Travelers (February 1, 1973, to July 1, 1989) have the option to receive their distribution from the Settlement Trust and can bring litigation against Travelers in the Court system. | **Travelers Insurance Company**<br><br>Abuse Claimants will receive no money until they get a judgment against the defendants they sue.  As noted above, obtaining a final judgment could take up to four years. |
| **Child Protection Procedures and Survivor Bill of Rights**<br><br>The Joint Plan has the most detailed and comprehensive Non-Monetary Plan Provisions ever agreed to by any Catholic Diocese. | **Child Protection Procedures and Survivor Bill of Rights**<br><br>The Non-Monetary Provisions are only enforceable if the Joint Plan is confirmed. If the Bankruptcy Case is dismissed, they cannot be enforced, and no public archive of abuse records will be created. |
| **Claim Evaluation:**<br><br>Abuse Claims will be evaluated by an Abuse Claims Reviewer chosen by the Survivors' Committee. Your recovery will be consistent with the Trust Distribution Protocol proposed by the Survivors' Committee. This process provides consistent, predictable outcomes for Abuse Claimants as a whole and provides that your recovery will, in most respects, be equal to all other Abuse Survivors who possess similar claims. | **Claim Evaluation:**<br><br>Your claim and judgement will be decided by either a judge or a jury after a trial. During the trial you and your family will be subject to deposition by the defense lawyers, and your claims will be scrutinized and evaluated by other experts selected by the defendants |
| **Settlement Trust Protected From Other Creditors:** | **No Protection From Other Creditors:** |

4

| | |
|---|---|
| Confirmation of the Joint Plan ensures a dedicated fund—the Settlement Trust—for the payment of Abuse Claims. Other creditors, including Bondholders, will be paid out of separate funds. | All creditors will be competing for the same assets. For example, Bondholders will likely sue the Archdiocese, and, due to the nature of the claim, they would likely obtain a judgment before you do, potentially allowing them to seize Archdiocesan assets that could have been used to pay your Claim. Bondholders seek $40 million plus past-due interest and unpaid attorneys' fees. |

5

## FAQs

1.  How is the Settlement Trust funded?

The Settlement Trust will be funded with a total of approximately $179.3 million. This amount includes $130 million from the Archdiocese and its affiliates payable on the Joint Plan effective date. It also includes a $20 million promissory note payable over 4 years starting in July 2026. Finally, the amount includes $29,275,000 from insurance companies that have agreed to the settlement.

The Settlement Trust may receive additional funding through the sale of affordable living / senior housing facilities known as the Christopher Homes. A sale process has begun for these assets and will be on-going during the Joint Plan confirmation process. A significant portion of the net proceeds from the sale of Christopher Homes will also fund the Settlement Trust.

2.  What does the Settlement Trustee do?

The Settlement Trustee will oversee the Settlement Trust including accepting the settlement funds, investing the settlement funds, and managing their distribution. The Settlement Trustee will also coordinate litigation against the insurance company that has not agreed to a settlement and will be involved with any broader settlement involving that insurance company. The Settlement Trustee will also enforce the non-monetary plan provisions discussed below and file reports regarding the trust activity with the Bankruptcy Court.

The Settlement Trust includes an oversight committee staffed with Survivor representatives, which will advise the Settlement Trustee regarding significant decisions related to the Settlement Trust.

3.  How are the Abuse Claims reviewed?

Each claim will be reviewed by a professional claim reviewer. The claim reviewer will also accept supplemental information provided by claimants. Each claim will be scored on a 100-point scale based on the nature of the abuse, the impact of the abuse, and other factors set out in the Trust Allocation Protocol. Survivors will be notified of their score and can request reconsideration for a fee. The Settlement Trustee will use the score to calculate distributions to abuse claimants.

4.  How does the Joint Plan address insurers who did not settle?

As of the time of this document, one insurer has not settled. The Joint Plan provides that abuse claimants with claims during the coverage years of the insurer that did not settle can file a lawsuit against the insurer in state court. The Settlement Trustee will decide which lawsuits will get filed first with a goal of asserting maximum pressure on the insurer. Survivors who successfully litigate will receive point enhancements set out in the Trust Allocation Protocol.

5.  What does the Joint Plan do to prevent future abuse claims?

The Joint Plan includes a document called *The Roman Catholic Church of the Archdiocese of New Orleans' Non-Monetary Joint Plan Provisions to Foster Child Protection and Prevent Child Sexual Abuse* (the "Non-Monetary Provisions"). These Non-Monetary Provisions will change how the Archdiocese operates going forward and will increase oversight, accountability, and transparency. Among other things, outside experts will evaluate the Archdiocese's child-protection programs and will recommend improvements. In addition, the Archdiocese will create a document archive stored at a secular university that will enable Survivors and the public to study the history of abuse at the Archdiocese and its affiliates.

6

Lastly, the Archdiocese will also hold public forums in which Survivors can meet with the Archbishop, share their experiences, and express their concerns. The Survivors' Committee expects that the Non-Monetary Provisions will help prevent future abuse. The Non-Monetary Provisions will only be implemented if the Joint Plan is confirmed.

## TOWN HALL INFORMATION

The Survivors' Committee will hold multiple online town hall meetings to help inform Survivors regarding the Joint Plan. At these meetings, the Survivors' Committee will give a presentation regarding the Joint Plan and answer questions submitted by participants.  The town hall meetings will be held as follows:

- September 12, 2025 at 3 PM Central.
- September 24, 2025 at 12 PM Central.
- October 20, 2025, at 7 PM Central.

Meeting access link:

https://troutman.zoom.us/j/99658068802?pwd=XlK0nfUM2cDwYxjS293Sd9SVBsbxae.1

Meeting password: 337876

7

EXHIBIT C

**The Roman Catholic Church of the
Archdiocese of New Orleans**

August 14, 2025

Dear Survivors and Other Creditors,

      As you are aware, we have filed the *Second Amended Joint Chapter 11 Plan of Reorganization for The Roman Catholic Church of the Archdiocese of New Orleans and Additional Debtors, Proposed by the Debtor, the Additional Debtors, and the Official Committee of Unsecured Creditors, Dated as of August 6, 2025*, [ECF 4235] (as amended, modified, or supplemented from time to time, the "**Joint Plan**"). The Joint Plan is supported by the parishes, local Catholic agencies, and the Official Committee of Unsecured Creditors (the "**Committee**"). I am grateful that we have found common ground with the Committee.

> **YOU ARE RECEIVING THIS LETTER BECAUSE YOU ARE ENTITLED TO VOTE ON THE JOINT PLAN. THEREFORE, YOU SHOULD READ THIS LETTER CAREFULLY AND DISCUSS IT WITH YOUR ATTORNEY. IF YOU DO NOT HAVE AN ATTORNEY, YOU MAY WISH TO CONSULT ONE.**
>
> **THE ARCHDIOCESE STRONGLY URGES YOU TO PROPERLY AND TIMELY SUBMIT YOUR BALLOT CASTING A VOTE TO ACCEPT THE JOINT PLAN. BALLOTS SHOULD BE SUBMITTED IN ACCORDANCE WITH THE INSTRUCTIONS INDICATED ON YOUR BALLOT.**
>
> **THE VOTING DEADLINE IS <u>OCTOBER 29, 2025, AT 11:59 P.M.</u> (PREVAILING CENTRAL TIME).**

      I kindly ask you to support the Joint Plan.

Sincerely yours in Christ,

*[signature]*

Very Reverend Patrick R. Carr

EXHIBIT D

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| In re: | § | |
| | § | **Case No. 20-10846** |
| **THE ROMAN CATHOLIC CHURCH OF** | § | |
| **THE ARCHDIOCESE OF NEW** | § | **Section "A"** |
| **ORLEANS,** | § | |
| | § | **Chapter 11** |
| Debtor.[1] | § | |
| | § | |

**SOLICITATION AND VOTING PROCEDURES**

     **PLEASE TAKE NOTICE** that, on August 12, 2025, the United States Bankruptcy Court for the Eastern District of Louisiana (the "**Bankruptcy Court**") entered an Order (the "**Disclosure Statement Order**"), [ECF 4253],[2] that: (a) authorizes the Roman Catholic Church of the Archdiocese New Orleans, the debtor and debtor-in-possession herein (the "**Debtor**" or "**Archdiocese**") in this chapter 11 case (the "**Chapter 11 Case**"), the Additional Debtors, and the Official Committee of Unsecured Creditors (collectively the "**Plan Proponents**" and each a "**Plan Proponent**"), to solicit votes on the *Second Amended Joint Chapter 11 Plan of Reorganization for The Roman Catholic Church of the Archdiocese of New Orleans and Additional Debtors, Proposed by the Debtor, the Additional Debtors, and the Official Committee of Unsecured Creditors, Dated as of August 6, 2025*, [ECF 4235] (as amended, modified, or supplemented from time to time, the "**Joint Plan**"); (b) approves the corresponding *Second Amended Modified Disclosure Statement for Second Amended Joint Chapter 11 Plan of Reorganization for The Roman Catholic Church of the Archdiocese of New Orleans and Additional Debtors, Proposed by the Debtor, the Additional Debtors, and the Official Committee of Unsecured Creditors, Dated as of August 6, 2025*, [ECF 4242], (the "**Disclosure Statement**"), as containing "adequate information" pursuant to section 1125 of the Bankruptcy Code; (c) approves the solicitation materials and documents to be included in the solicitation packages (the "**Solicitation Package**"); and (d) approves procedures for soliciting, receiving, and tabulating votes on the Joint Plan and Filing objections to the Joint Plan.

     **PLEASE TAKE FURTHER NOTICE** that, among other things, the Disclosure Statement Order approves these Solicitation and Voting Procedures (these "**Procedures**"), and provides as follows:

**A.     THE VOTING RECORD DATE**

     The record date for purposes of determining which Creditors holding Claims in the Voting Classes are entitled to vote to accept or reject the Joint Plan (the "**Voting Record Date**") shall be **August 14, 2025, at 11:59 p.m. (Central Time)**; provided, however, that if a Known Abuse Claimant files an Abuse Proof of Claim against an Additional Debtor, then the Voting Record Date for such Known Abuse Claim shall be **October 15, 2025, at 11:59 p.m. (Central Time)**.

**B.     THE VOTING DEADLINE**

     The Bankruptcy Court has established **October 29, 2025, at 11:59 p.m. (Central Time)**, as the voting deadline (the "**Voting Deadline**") for the Joint Plan.  The Plan Proponents may extend the Voting Deadline, in their discretion, without further Order of the Bankruptcy Court.  To be counted as votes to accept or reject the Joint Plan, all Ballots (as defined below) must be properly executed, completed, and

---

[1] The last four digits of the Debtor's federal tax identification number are 8966.  The Debtor's principal place of business is located at 7887 Walmsley Ave., New Orleans, LA  70125.

[2] Capitalized terms not otherwise defined herein will have the same meaning as set forth in the Joint Plan or the Disclosure Statement Order.

delivered to Donlin, Recano & Company, LLC (the "**Claims and Voting Agent**") so that such Ballots *are actually received on or before the Voting Deadline* by one of the following methods: (i) first class mail (using the reply envelope provided in the Solicitation Package or otherwise); (ii) overnight courier; (iii) hand delivery; or (iv) the E-Balloting Portal (for Claims in Classes 3, 4, 7, and 8) or email (for Claims in Class 6).  The proper return address for the Claims and Voting Agent is shown on each Ballot.  The voting and tabulation procedures found at Section E.1 through Section E.4 of these Procedures govern the procedures for voting, allowance for voting purposes, and Ballot tabulation.

## C.    CONFIRMATION OBJECTION DEADLINE

The last day to File a written objection to Confirmation of the Joint Plan is **October 30, 2025, at 11:59 p.m. (Central Time)** (the "**Confirmation Objection Deadline**").

## D.    FORM, CONTENT, AND MANNER OF NOTICES

1. **The Solicitation Package.**  The following materials will constitute the Solicitation Package:

   a.    The approved Disclosure Statement, attached to the Disclosure Statement Order as **Schedule 1**, together with the Joint Plan and other exhibits;

   b.    These Procedures;

   c.    The applicable form of ballot, in substantially the form of the ballots attached to the Disclosure Statement Order as **Schedule 3A** through **Schedule 3E** (each, a "**Ballot**" and collectively, the "**Ballots**");

   d.    A letter from the Debtor in substantially the form attached to the Disclosure Statement Order as **Schedule 4A**, which urges the Creditors holding Claims in each of the Voting Classes to vote to accept the Joint Plan (the "**Archdiocese Support Letter**"), and for Class 3 Claims, a letter from the Creditors' Committee, in substantially the form attached to the Disclosure Statement Order as **Schedule 4B**, recommending that Known Abuse Claimants vote to accept the Joint Plan (the "**Survivors' Committee Letter**");

   e.    The Notice of the Confirmation Hearing, in substantially the form attached to the Disclosure Statement Order as **Schedule 5** (the "**Confirmation Hearing Notice**");

   f.    The Disclosure Statement Order (without exhibits); and

   g.    A pre-addressed, postage pre-paid reply envelope.

2. **Distribution of the Solicitation Package.**  On or before **August 28, 2025, at 11:59 p.m. (Central Time)** (the "**Solicitation Deadline**"):

   a.    The Plan Proponents will distribute, or cause to be distributed by first-class mail, postage prepaid, the following documents in the Solicitation Package in electronic format (i.e., on a CD-ROM or flash drive) to Creditors holding Claims in Voting Classes: (i) the Disclosure Statement (with exhibits); and (ii) an approved copy of the Proposed Order (without exhibits).

   b.    All other contents of the Solicitation Package, including (i) the Archdiocese Support Letter and, if applicable, the Survivors' Committee Letter;[3] (ii) the Confirmation Hearing Notice; (iii) these Procedures; (iv) the applicable Ballot; and (v) a pre-addressed, postage pre-paid reply envelope, will be provided, by first-class mail, postage prepaid in paper format only.

---

[3] The Survivors' Committee Letter shall be included as a separate document at the top of the Class 3 Solicitation Package and may be printed on colored paper.

       c.       The Plan Proponents also will mail, or cause to be mailed, by first-class mail, postage prepaid, the materials in the Solicitation Package (excluding Ballots) to the U.S. Trustee.

Any party that receives any portion of the Solicitation Package in electronic format, but would prefer paper format, may request paper copies of the materials previously received in electronic format, at the Debtor's expense, by:  (a) writing the Claims and Voting Agent at Donlin, Recano & Company, LLC, Re: The Roman Catholic Church of the Archdiocese of New Orleans, Attn: Voting Department, P.O. Box 2053, New York, NY 10272- 2042; (b) telephoning the Claims and Voting Agent at 1-877-476-4389 (toll free); and/or (c) emailing the Claims and Voting Agent at drcvote@angeiongroup.com.

If a Known Abuse Claimant is represented by counsel, then the Class 3 Solicitation Package shall be distributed to counsel of record.  Further, one Solicitation Package (containing unique Ballots) may be distributed to each law firm that is counsel of record for a Known Abuse Claimant, regardless of how many Known Abuse Claimants the law firm represents, unless such counsel requests additional copies as provided in the preceding paragraph.  Additionally, counsel for Known Abuse Claimants may request that the Claims and Voting Agent provide, via electronic mail, a link to the E-Balloting Portal along with the unique Ballot identifier for each Known Abuse Claimant represented by such counsel.

Within 72 hours of receipt of the Class 3 Solicitation Package, counsel for a Known Abuse Claimant shall forward the Class 3 Solicitation Package to its Known Abuse Claimant client by first-class mail, postage prepaid, or electronic mail.  Within three (3) Business Days after such counsel has forwarded the Class 3 Solicitation Package, counsel shall file a certificate of service attesting that it has done so.  The certificate of service shall be filed under seal to protect the confidentiality of the clients' identity.  The Plan Proponents shall have standing to seek sanctions against counsel who fail to comply with this requirement and to seek designation of the votes of those Known Abuse Claimants whose counsel failed to comply with this requirement.

Following the Solicitation Deadline, the Claims and Voting Agent will distribute a Class 3 Solicitation Package to a Known Abuse Claimant (or counsel, if applicable) no later than two (2) Business Days (or as soon as reasonably possible) after the Known Abuse Claimant files an Abuse Proof of Claim against an Additional Debtor.[4]

The Claims and Voting Agent is authorized to assist in (a) distributing the Solicitation Packages, (b) receiving, tabulating, and reporting on Ballots cast to accept or reject the Joint Plan by Creditors, (c) responding to inquiries from Creditors and other parties in interest relating to the Disclosure Statement, the Joint Plan, the Ballots, the Solicitation Package, and all other related documents and matters related thereto, including the procedures and requirements for voting to accept or reject the Joint Plan and for objecting to the Joint Plan, (d) soliciting votes on the Joint Plan, and (e) if necessary, contacting Creditors regarding the Joint Plan.

The Plan Proponents will not mail Solicitation Packages or other solicitation materials to Creditors that have already been paid in full during the Chapter 11 Case, or that are authorized to be paid in full in the ordinary course of business pursuant to an order previously entered by this Bankruptcy Court in the Chapter 11 Case.

To avoid duplication and reduce expenses, the Plan Proponents will make every reasonable effort to ensure that any Creditor who has Filed or purchased duplicative Claims against the Debtor or Additional Debtors that are classified under the Joint Plan in the same Voting Class receives no more than one Solicitation Package (and, therefore, one Ballot) on account of such Claim and with respect to that Class as against the Debtor or Additional Debtors.

---

[4] A new Solicitation Package need not be distributed to a Known Abuse Claimant to whom a Solicitation Package already was distributed on account of a Previously Asserted Claim.

3. **Confirmation Hearing Notice.** No later than the Solicitation Deadline, the Plan Proponents will serve the Confirmation Hearing Notice, substantially in the form of **Schedule 5** to the Disclosure Statement Order, on all known Creditors and all parties required to be notified under Bankruptcy Rule 2002 (the "**2002 List**") as of the Voting Record Date (regardless of whether such parties are entitled to vote on the Joint Plan).

4. **Non-Voting Status Notice to Creditors Holding Claims Not Entitled to Vote on the Joint Plan.** Instead of the Solicitation Package, the Plan Proponents will distribute, or cause to be distributed, a notice, substantially in the form of **Schedule 6** to the Disclosure Statement Order (the "**Non-Voting Status Notice**"), to Creditors holding Claims in a Non-Voting Class, holding Unclassified Claims, or holding a Disputed Claim:

| Class No. or Plan Section | Description of Claims Not Entitled to Vote |
|---|---|
| Section 2.1 | Administrative Claims |
| Section 2.3 | Administrative Trade Claims |
| Section 2.4 | DIP Credit Card Claim |
| Section 2.5 | Priority Tax Claims |
| Class 1 | Other Priority Claims |
| Class 2 | Secured Claims |
| Class 5 | Non-Insurer Contribution Claims |
| Class 9 | Unsecured Trade Claims—Additional Debtors |
| Class 10 | Additional Debtors' Non-Trade Unsecured Claims—Additional Debtors |

The Plan Proponents are not required to mail Non-Voting Status Notices to the following: (a) Creditors holding Claims that have already been paid in full during the Chapter 11 Case, or that are authorized to be paid in full in the ordinary course of business pursuant to an order previously entered by this Bankruptcy Court; or (b) any party to whom the Scheduling Order was sent, but was subsequently returned as undeliverable without a forwarding address.

5. **Plan Supplements Notice.** The Plan Proponents will send the Plan Supplements Notice, substantially in the form attached to the Disclosure Statement Order as **Schedule 7**, on the date the Plan Proponents file the Plan Supplement(s) or as soon as practicable thereafter.

6. **Notices in Respect of Executory Contracts and Unexpired Leases.** Counterparties to Executory Contracts and Unexpired Leases that receive a notice of assumption (the "**Assumption and Cure Notice**") or notice of rejection (the "**Rejection Notice**"), substantially in the forms attached as **Schedule 8** and **Schedule 9** to the Disclosure Statement Order, respectively, may File an objection to the Joint Plan's proposed rejection, assumption, and/or proposed Cure Amount, as applicable. Such objections must be Filed on or before the Confirmation Objection Deadline, as set forth on **Schedule 8** and **Schedule 9**.

E. **VOTING AND TABULATION PROCEDURES**

1. **Creditors Entitled to Vote.** Only the following Creditors who hold a Claim in the Voting Classes will be entitled to vote with regard to such Claims, as follows:

    a.      Creditors who, on or before the Voting Record Date, have Filed a Proof of Claim that (i) has not been expunged, Disallowed, disqualified, withdrawn, or superseded before the Voting Record Date, and (ii) is not the subject of a pending objection, other than a "reduce and allow" objection, Filed with the Bankruptcy Court at least seven days before the Voting Deadline, pending a Resolution Event as provided herein; provided, however, that a Creditor holding a Claim that is the subject of a pending objection on a "reduce and allow" basis will receive a Solicitation Package

and be entitled to vote such Claim in the reduced amount contained in such objection absent further Order of the Bankruptcy Court;

b. Creditors whose Claims arise (i) pursuant to an agreement or settlement with the Debtor, as reflected in a document Filed with the Bankruptcy Court, (ii) in an Order entered by the Bankruptcy Court, or (iii) in a document executed by the Debtor pursuant to authority granted by the Bankruptcy Court, in each case regardless of whether a Proof of Claim has been Filed;

c. Creditors who hold any Disputed Claim that has been temporarily Allowed for voting purposes only pursuant to Bankruptcy Rule 3018;

d. The assignee of any Claim that was transferred on or before the Voting Record Date by any Entity described in subparagraphs (a) through (c) above; <u>provided, however,</u> that such transfer or assignment has been fully effectuated pursuant to the procedures set forth in Bankruptcy Rule 3001(e) and such transfer is reflected on the Claims Register on the Voting Record Date; and

e. Creditors who have Filed or purchased duplicate Claims within the same Voting Class will be provided with only one Solicitation Package and one Ballot for voting a single Claim in such Class, regardless of whether the Debtor has objected to such duplicate Claims.

2. <u>**Establishing Claim Amounts for Voting Purposes Only.**</u>  Any amounts filled in on Ballots by the Plan Proponents through the Claims and Voting Agent are not binding for purposes of Allowance, Distribution, or Settlement Trust Distribution.  In tabulating votes, for voting purposes only, the following hierarchy will be used to determine the amount of the Claim associated with each Creditor's vote, as follows:

a. The Claim amount (i) settled and/or agreed upon by the Debtor and Plan Proponents, as reflected in a document Filed with the Bankruptcy Court, (ii) set forth in an Order of the Bankruptcy Court, or (iii) set forth in a document executed by the Debtor or the Plan Proponents pursuant to authority granted by the Bankruptcy Court;

b. The Claim amount Allowed (temporarily or otherwise) pursuant to a Resolution Event pursuant to these Procedures;

c. The Claim amount contained in a Proof of Claim that has been timely Filed by the applicable Claims Bar Date (or deemed timely Filed by the Bankruptcy Court under applicable law), except for any amounts asserted on account of any interest that accrued after the Petition Date; <u>provided, however</u>, that any Ballot cast by a Creditor holding a Claim who timely Filed a Proof of Claim in respect of (i) a Contingent Claim or a Claim in a wholly-unliquidated or unknown amount (based on a reasonable review by the Plan Proponents and/or the Claims and Voting Agent) that is not the subject of an objection will count toward satisfying the numerosity requirement of section 1126(c) of the Bankruptcy Code, and will count as a Ballot for a Claim in the amount of one dollar ($1.00) solely for the purposes of satisfying the dollar amount provisions of section 1126(c) of the Bankruptcy Code, and (ii) a partially liquidated and partially unliquidated Claim, which Claim will be Allowed for voting purposes only in the liquidated amount;

d. Each Known Abuse Claim will vote at one dollar ($1.00) solely for the purposes of satisfying the dollar amount provisions of section 1126(c) of the Bankruptcy Code;

e.     Each Unknown Abuse Claim (represented by the Unknown Abuse Claims Representative) will vote at one dollar ($1.00) solely for the purposes of satisfying the dollar amount provisions of section 1126(c) of the Bankruptcy Code;

f.     A Claim listed in the Schedules as Contingent, Disputed, or unliquidated will vote at one dollar ($1.00) solely for the purposes of satisfying the dollar amount provisions of section 1126(c) of the Bankruptcy Code, provided such Claim is not superseded by a timely Filed Proof of Claim; and

h.     In the absence of any of the foregoing, such Claim will be Disallowed for voting purposes.

3.  **Resolution of Disputed Claims for Voting Purposes; Resolution Event.**

a.     Absent a further Order of the Bankruptcy Court, if any Plan Proponent Files, on or before fifteen (15) days before the Voting Deadline, an objection to a Claim in a Voting Class on a "reduce and allow" basis, the Creditor holding such Claim will be entitled to vote such Claim in the reduced amount contained in such objection.

b.     Absent a further Order of the Bankruptcy Court, if any Plan Proponent Files, on or before  fifteen (15) days before the Voting Deadline, an objection to a Claim in a Voting Class *other than* on a "reduce and allow" basis: (i) the filing Plan Proponent will cause the applicable Creditor to be served with both (A) a Non-Voting Status Notice and (B) a Confirmation Hearing Notice; and (ii) the applicable Creditor will not be entitled to vote to accept or reject the Joint Plan on account of such Claim unless a Resolution Event (as defined below) occurs.

c.     A "**Resolution Event**" means the occurrence of one or more of the following events no later than two (2) Business Days before the Voting Deadline:

   i.     An Order of the Bankruptcy Court is entered allowing such Claim pursuant to section 502(b) of the Bankruptcy Code, after notice and a hearing;

   ii.    An Order of the Bankruptcy Court is entered temporarily allowing such Claim for voting purposes only pursuant to Bankruptcy Rule 3018(a), after notice and a hearing;

   iii.   A stipulation or other agreement is executed between the Creditor holding such Claim and the applicable Plan Proponent resolving the objection and allowing such Claim in an agreed upon amount; or

   iv.    The pending objection is voluntarily withdrawn by the objecting party.

d.     No later than one (1) Business Day (or as soon as reasonably possible) following the occurrence of a Resolution Event, the Debtor will cause the Claims and Voting Agent to distribute, via email, hand delivery, or overnight courier service a Solicitation Package and a pre-addressed, postage pre-paid envelope to the relevant Creditor to the extent such Creditor has not already received a Solicitation Package containing a Ballot.

4.  **Ballot Tabulation Procedures.**  The following voting procedures and standard assumptions will be used in tabulating Ballots, subject to the Plan Proponents' right to waive any of the below specified requirements for completion and submission of Ballots so long as such requirement is not otherwise required by the Bankruptcy Code, Bankruptcy Rules, Local Rules, or Complex Case Procedures:

<u>Voting Instructions</u>

a. Ballots must be delivered to the Claims and Voting Agent in accordance with the instructions set forth in the applicable Ballot.

b. To be counted, Ballots must be completed, signed, dated, and returned using one of the applicable delivery methods set forth in the Ballot. A Ballot submitted by the E-Balloting Portal (if applicable) shall be deemed to bear an original signature.

c. Unless the Ballot being furnished is timely submitted on or before October 29, 2025, at 11:59 p.m. Central Time (or as the same may be extended, in writing, by the Plan Proponents), the Plan Proponents will reject such Ballot as invalid and, therefore, will not count it in connection with Confirmation of the Joint Plan.

d. The Debtor will File with the Bankruptcy Court on or before November 6, 2025, a voting report (the "**Voting Report**"). Among other things, the Voting Report will delineate every Ballot that does not conform to the voting instructions or that contains any form of irregularity including, but not limited to, those Ballots that are late or (in whole or in material part) illegible, unidentifiable, lacking signatures or lacking necessary information, received via facsimile or any other electronic means (other than the E-Balloting Portal for Claims in Classes 3, 4, 7, and 8 or email for Claims in Class 6), or damaged (collectively, in each case, the "**Irregular Ballots**"). The Voting Report will indicate the Plan Proponents' intentions regarding each Irregular Ballot.

e. The method of delivery of Ballots to the Claims and Voting Agent is at the election and risk of each Creditor. Except as otherwise provided in the Ballot, such delivery will be deemed made only when the Claims and Voting Agent **actually receives** the originally executed Ballot or the E-Ballot (if applicable) is submitted through the E-Balloting Portal. Instead of effecting delivery by first-class mail, it is recommended, though not required, that Creditors use an overnight or hand delivery service if not using the E-Balloting Portal. In all cases, Creditors should allow sufficient time to assure timely delivery.

f. An executed Ballot is required to be submitted by the Entity submitting such Ballot.

g. Delivery of a Ballot to the Claims and Voting Agent by facsimile, electronic email, or any electronic means (other than the E-Balloting Portal for Claims in Classes 3, 4, 7, and 8 or email for Claims in Class 6), will not be valid.

h. No Ballot should be sent to any Plan Proponent, the Plan Proponents' agents (other than the Claims and Voting Agent), or the Plan Proponents' financial or legal advisors, and, if so sent, will not be counted.

i. If multiple Ballots are received from the same Creditor with respect to the same Claim before the Voting Deadline, the last properly executed Ballot timely received will be deemed to reflect that voter's intent and will supersede and revoke any prior received Ballot.

j. Creditors must vote all of their Claims within a particular Class either to accept or reject the Joint Plan, and may not split any votes. Accordingly, a Ballot that attempts to partially reject and partially accept the Joint Plan will not be counted.

k. A person signing a Ballot in its capacity as a trustee, executor, administrator, guardian, attorney-in-fact, officer of a corporation, or otherwise acting in a fiduciary or representative capacity of a Creditor must indicate such capacity when signing.

For the avoidance of doubt, a Ballot submitted by the E-Balloting Portal (if applicable) shall be deemed to bear an original signature.

l.  If a Claim has been estimated or otherwise Allowed only for voting purposes by Order of the Bankruptcy Court, such Claim will be temporarily Allowed in the amount so estimated or Allowed by the Bankruptcy Court for voting purposes only, and not for purposes of Allowance or Distribution.

m.  After the Voting Deadline, no Ballot may be withdrawn or modified without the prior written consent of the Plan Proponents.

n.  The Ballot does not constitute, and will not be deemed to be, (a) a Proof of Claim, or (b) an assertion or admission of a Claim.

o.  To the extent that an instruction herein conflicts with an instruction set forth in a Ballot, the instruction in the applicable Ballot shall control.

Other Voting Procedures

p.  Subject to a contrary Order of the Bankruptcy Court, the Plan Proponents may waive any defects or irregularities as to any particular Irregular Ballot at any time, either before or after the close of voting, and any such waivers will be documented in the Voting Report.

q.  No Entity will be under any duty to provide notification of defects or irregularities with respect to delivered Ballots other than as provided in the Voting Report nor will any Entity incur any liability for failure to provide such notification.

r.  Unless waived by the Plan Proponents or as ordered by the Bankruptcy Court, any defects or irregularities in connection with deliveries of Ballots must be cured before the Voting Deadline or such Ballots will not be counted.

s.  Subject to any Order of the Bankruptcy Court, the Plan Proponents reserve the right to reject any Ballots not in proper form, the acceptance of which, in the opinion of the Plan Proponents, would not be in accordance with the provisions of the Bankruptcy Code or the Bankruptcy Rules; provided, however, any such rejections will be documented in the Voting Report.

t.  If an objection to a Claim is Filed, such Claim will be treated in accordance with these Procedures.

u.  The following Ballots will not be counted in determining the acceptance or rejection of the Joint Plan: (i) any Ballot that is illegible or contains insufficient information to permit the identification of the Creditor holding such Claim; (ii) any Ballot cast by any Entity that does not hold a Claim in a Voting Class; (iii) any Ballot lacking a signature; (iv) any Ballot not marked to accept or reject the Joint Plan or marked both to accept and reject the Joint Plan; and (v) any Ballot submitted by any Entity not entitled to vote pursuant to the Procedures.

v.  The Plan Proponents are authorized to stipulate with the Creditor that establishes the amount of such Creditor's Claim for voting purposes.

w.  Where any portion of a single Claim has been transferred to a transferee, all Creditors holding any portion of such single Claim will be (a) treated as a single creditor and (b) required to vote every portion of such Claim collectively to accept or reject the Joint Plan.  If (a) a Ballot, (b) a group of Ballots within a Voting Class received from a single Creditor, or (c) a group of Ballots received from the various

Creditors holding multiple portions of a single Claim partially reject and partially accept the Joint Plan, such Ballots will not be counted.

x.  No fees, commissions, or other remuneration will be payable to any broker, dealer, or other person for soliciting Ballots to accept the Joint Plan.

y.  The Ballot is not a letter of transmittal and may not be used for any purpose other than to vote to accept or reject the Joint Plan. Accordingly, at this time, Creditors holding Claims should not surrender certificates or instruments representing or evidencing their Claims, and neither the Debtor nor the Claims and Voting Agent will accept delivery of any such certificates or instruments surrendered together with a Ballot.

## F.    NON-SUBSTANTIVE MODIFICATIONS

The Plan Proponents reserve the right, before distribution, to make non-substantive or immaterial changes to the Disclosure Statement, Joint Plan, Solicitation Packages, Ballots, the Archdiocese Support Letter, the Survivors' Committee Letter, these Procedures, Confirmation Hearing Notice, Non-Voting Status Notice, Plan Supplements Notice, Assumption and Cure and Rejection Notices, and related documents without further order of the Bankruptcy Court, including changes to correct typographical and grammatical errors, if any, and to make conforming changes to the Disclosure Statement, the Joint Plan, and any other materials in the Solicitation Package.

*[Signature Page Follows]*

Dated: August 14, 2025

| | |
|---|---|
| /s/ Mark A. Mintz | /s/ James S. Stang |
| JONES WALKER LLP | PACHULSKI STANG ZIEHL & JONES LLP |
| R. Patrick Vance (#13008) | James I. Stang (CA Bar 94435) (pro hac vice) |
| Elizabeth J. Futrell (#05863) | Iain A.W. Nasatir (CA Bar 148977) (pro hac vice) |
| Mark A. Mintz (#31878) | Andrew W. Caine (CA Bar 110345) (pro hac vice) |
| Samantha A. Oppenheim (#38364) | Karen B. Dine (NY Bar 2625366) (pro hac vice) |
| 201 St. Charles Avenue, 51st Floor | 10100 Santa Monica Blvd., Ste. 1300 |
| New Orleans, LA  70170 | Los Angeles, CA  90067 |
| Telephone: (504) 582-8000 | Telephone:  (310) 277-6910 |
| Facsimile: (504) 589-8260 | Facsimile: (310) 201-0760 |
| Email: pvance@joneswalker.com | Email:   jstang@pszjlaw.com |
|            efutrell@joneswalker.com |            inasatir@pszjlaw.com |
|            mmintz@joneswalker.com |            acaine@pszjlaw.com |
|            soppenheim@joneswalker.com |            kdine@pszjlaw.com |

**ATTORNEYS FOR**
**THE ROMAN CATHOLIC CHURCH OF**
**THE ARCHDIOCESE OF NEW ORLEANS**

/s/ Douglas S. Draper

HELLER, DRAPER, & HORN, L.L.C.
Douglas S. Draper
Greta S. Brouphy
Michael E. Landis
650 Poydras Street, Suite 2500
New Orleans, Louisiana 70130
Telephone: 504-299-3300
Facsimile: 504-299-3399
E-mail: ddraper@hellerdraper.com
         gbrouphy@hellerdraper.com
         mlandis@hellerdraper.com

**ATTORNEYS FOR**
**THE ADDITIONAL DEBTORS**

/s/ Bradley C. Knapp

TROUTMAN PEPPER LOCKE LLP
Omer F. Kuebel, III (La #21682)
Bradley C. Knapp (La #35867)
601 Poydras Street, Suite 2660
New Orleans, Louisiana 70130-6036
Telephone: (504) 558-5210
Facsimile: (504) 910-6847
Email:  rkuebel@lockelord.com
         bknapp@lockelord.com

TROUTMAN PEPPER LOCKE LLP
W. Steven Bryant (TX Bar No. 2427413)
300 Colorado Street, Ste. 2100
Austin, Texas 78701
Telephone: (512) 305-4726
Facsimile: (512) 305-4800
Email: steven.bryant@troutman.com

**ATTORNEYS FOR THE OFFICIAL**
**COMMITTEE OF UNSECURED CREDITORS**

EXHIBIT E

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re: | § | |
| | § | **Case No. 20-10846** |
| **THE ROMAN CATHOLIC CHURCH OF** | § | |
| **THE ARCHDIOCESE OF NEW** | § | **Section "A"** |
| **ORLEANS,** | § | |
| | § | **Chapter 11** |
| Debtor.[1] | § | |
| | § | |

NOTICE OF (A) CONFIRMATION HEARING,
(B) ESTABLISHMENT OF VOTING RECORD DATE, (C) SOLICITATION
AND VOTING PROCEDURES, (D) VOTING DEADLINE, AND (E) DEADLINE
FOR OBJECTING TO THE JOINT PLAN AND THE INSURANCE SETTLMENT MOTION

**PLEASE TAKE NOTICE** that:

1.      On August 12, 2025, the United States Bankruptcy Court for the Eastern District of Louisiana (the "**Bankruptcy Court**") entered an Order (the "**Disclosure Statement Order**"), [ECF 4253],[2] that: (a) authorizes the Roman Catholic Church of the Archdiocese New Orleans, the debtor and debtor-in-possession herein (the "**Debtor**" or "**Archdiocese**") in this chapter 11 case (the "**Chapter 11 Case**"), the Additional Debtors, and the Official Committee of Unsecured Creditors (collectively the "**Plan Proponents**" and each a "**Plan Proponent**"), to solicit votes on the *Second Amended Joint Chapter 11 Plan of Reorganization for The Roman Catholic Church of the Archdiocese of New Orleans and Additional Debtors, Proposed by the Debtor, the Additional Debtors, and the Official Committee of Unsecured Creditors, Dated as of August 6, 2025*, [ECF 4235], (as amended, modified, or supplemented from time to time, the "**Joint Plan**"); (b) approves the corresponding *Second Amended Modified Disclosure Statement for the Second Amended Joint Chapter 11 Plan of Reorganization for The Roman Catholic Church of the Archdiocese of New Orleans and Additional Debtors, Proposed by the Debtor, the Additional Debtors, and the Official Committee of Unsecured Creditors, Dated as of August 6, 2025,* [ECF 4242], (the "**Disclosure Statement**"), as containing "adequate information" pursuant to section 1125 of the Bankruptcy Code; (c) approves the solicitation materials and documents to be included in the solicitation packages (the "**Solicitation Package**"); and (d) approves procedures for soliciting, receiving, and tabulating votes on the Joint Plan and Filing objections to the Joint Plan.

2.      On July 29, 2025, the Archdiocese filed its *Motion for Entry of Orders Pursuant to Sections 363 and 105(a) of the Bankruptcy Code and Bankruptcy Rule 9019 Approving Insurance Settlement Agreements and Policy Buybacks with Certain Insurers and Granting Related Relief*, [ECF 4181], (the "**Insurance Settlement Motion**"). The Insurance Settlement Motion seeks entry of orders approving proposed settlement agreements (the "**Insurance Settlement Agreements**"), injunctions and policy buy-

---

[1] The last four digits of the Debtor's federal tax identification number are 8966.  The Debtor's principal place of business is located at 7887 Walmsley Ave., New Orleans, LA  70125.

[2] Capitalized terms not otherwise defined herein will have the same meaning as set forth in the Joint Plan or the Disclosure Statement Order.

backs with the "**Settling Insurers**."[3]   Pursuant to the Insurance Settlement Agreements, the Settling Insurers will buy back the Settling Insurers' Policies and any Related Insurance Claims and Coverage Claims (the "**Purchased Property**"), excluding certain limited preserved coverage with respect to Catholic Mutual (the "**Preserved Coverage**").

3.       In connection with the Insurance Settlement Motion, the Archdiocese and Additional Debtors are seeking to settle and sell, free and clear of all liens, claims, encumbrances, and other Subject Interests, the Purchased Property.  **This "free and clear" sale of the Purchased Property entails certain releases, injunctions, and other protective provisions in favor of the Settling Insurers.  The sale proposed in the Insurance Settlement Motion requires approval of an injunction (the "Sale Injunction") that will permanently enjoin all Entities who have held or asserted, or may in the future hold or assert (1) any and all Claims held by any Entity against any of the Covered Parties or Settling Insurers in relation to the Settling Insurers' Policies, and (2) all Subject Interests held by any Entity in any of the Settling Insurers' Policies (other than the Preserved Coverage).**

4.       **Confirmation Hearing**.   The Bankruptcy Court will hold a hearing to consider Confirmation of the Joint Plan and approval of the Insurance Settlement Motion (the "**Confirmation Hearing**") commencing on **November 12, 2025, at 9:00 a.m. (Central Time)**, before the Honorable Meredith S. Grabill, in the Bankruptcy Court located at 500 Poydras Street, Suite B-601, New Orleans, LA 70130.  You may participate in the Confirmation Hearing (a) in person, (b) by telephone through the Bankruptcy Court's Teleconference Line, 504-517-1385, Conference Code 129611, or (c) by video at https://gotomeet.me/JudgeGrabill (audio will still be through the dial in Conference Code above).  Parties in interest are directed to the Bankruptcy Court's General Order 2021-2 for information on hearings, available at https://www.laeb.uscourts.gov/.  The Confirmation Hearing may be adjourned from time to time without further notice other than by such adjournment being announced during the Confirmation Hearing, or by a notice of adjournment Filed with the Bankruptcy Court.

5.       The Plan Proponents are soliciting acceptances of the Joint Plan from Creditors who hold Claims in the following Classes established in the Joint Plan (the "**Voting Classes**"):  Class 3 (Known Abuse Claims); Class 4 (Unknown Abuse Claims); Class 6 (Bond Claims); Class 7 (General Unsecured Claims and Trade Claims—Debtor); and Class 8 (Non-Abuse Personal Injury Claims—Debtor).

6.       **Voting Record Date**.  **August 14, 2025, at 11:59 p.m. (Central Time)** is the date for determining which holders of Claims in the Voting Classes are entitled to vote on the Joint Plan (the "**Voting Record Date**"); provided, however, that if a Known Abuse Claimant files an Abuse Proof of Claim against an Additional Debtor, then the Voting Record Date for such Known Abuse Claim shall be **October 15, 2025, at 11:59 p.m. (Central Time)**.

7.       **Voting Deadline**.  **October 29, 2025, at 11:59 p.m. (Central Time)** is the deadline to vote on the Joint Plan (the "**Voting Deadline**").  If you receive a Solicitation Package, including a Ballot, and intend to vote on the Joint Plan, you ***must***:  (a) carefully follow the instructions in the Ballot; (b) complete ***all*** of the required information on the Ballot; and (c) execute and return your completed Ballot

---

[3] As further defined in the Joint Plan and applicable Insurance Settlement Agreements, the Settling Insurers include, without limitation, (a) SPARTA Insurance Company and American Employers' Insurance Company ("**SPARTA**") (subject to condition precedent); (b) United States Fire Insurance Company ("**U.S. Fire**"), International Insurance Company ("**International**"), and Westchester Fire Insurance Company and Westchester Surplus Lines Insurance Company individually and, to the extent that policies issued by U.S. Fire and/or International were novated to or assumed by either or both of them ("**U.S. Fire/International**"); (c) Catholic Mutual Relief Society of America ("**Catholic Mutual**"); (d) Puritan Insurance Company, The Manhattan Fire and Marine Insurance Company, and Westport Insurance Corporation ("**Puritan**"); (e) National Union Fire Insurance Company of Pittsburgh, Pa. ("**National Union**"); and (f) Twin City Fire Insurance Company and First State Insurance Company ("**Twin City**"), along with the Related Persons of the foregoing.

according to and as set forth in detail in the instructions on the Ballot so that it is ***actually received*** by Donlin, Recano & Company, LLC (the "**Claims and Voting Agent**"), as instructed in the Ballot, on or before the Voting Deadline. ***A failure to follow such instructions may disqualify your vote.***

8. **Creditors Entitled to Vote**.  Only Creditors who hold a Claim in a Voting Class will be entitled to vote with respect to such Claims, as set forth in the Solicitation and Voting Procedures (attached to the Disclosure Statement Order as Schedule 2) (the "**Procedures**").

9. **Establishing Claim Amounts for Voting Purposes Only**.  Any amounts filled in on Ballots by the Plan Proponents through the Claims and Voting Agent are not binding for purposes of Allowance or Distribution.  In tabulating votes, for voting purposes only, the standard set forth in the Procedures will be used to determine the amount of the Claim associated with each Creditor's vote.

10. **Confirmation Objection Deadline**.  Objections to the Joint Plan or Insurance Settlement Motion must be made in writing and Filed with the Bankruptcy Court on or before **October 30, 2025, at 11:59 p.m. (Central Time)** (the "**Confirmation Objection Deadline**").  At the Confirmation Hearing, the Bankruptcy Court has the discretion to only consider those objections made in writing and timely Filed on or before the Confirmation Objection Deadline.  If you are an Abuse Claimant, you may file your objection under seal, so that it is not accessible to the public.  Failure to file and serve any objection to the Joint Plan or Insurance Settlement Motion in conformity with the foregoing procedures may result in the objecting party not being heard at the Confirmation Hearing.

11. **The Joint Plan contains, among other things, the following:**

---

**IMPORTANT INFORMATION ABOUT THE RELEASES, INJUNCTIONS, EXCULPATION PROVISIONS, GATEKEEPER INJUNCTION, AND BAR DATES CONTAINED IN THE JOINT PLAN, AND THE RELEASES AND INJUNCTION PURSUANT TO THE INSURANCE SETTLEMENTS**

**YOUR RIGHTS MAY BE AFFECTED BY THE JOINT PLAN AND INSURANCE SETTLEMENT MOTION.  THEREFORE, YOU SHOULD READ THE DISCLOSURE STATEMENT, JOINT PLAN, INSURANCE SETTLEMENT MOTION, INSURANCE SETTLEMENT AGREEMENTS, AND RELATED MATERIALS CAREFULLY AND DISCUSS THEM WITH YOUR ATTORNEY. IF YOU DO NOT HAVE AN ATTORNEY, YOU MAY WISH TO CONSULT ONE.**

**A.  THE JOINT PLAN CONTAINS RELEASES AND INJUNCTIONS THAT RELATE TO AND AFFECT THE RIGHTS, CLAIMS, AND/OR CAUSES OF ACTION THAT CREDITORS, INCLUDING ABUSE CLAIMANTS, MAY HAVE AGAINST THE DEBTOR, REORGANIZED DEBTOR, THE ADDITIONAL DEBTORS, AND THE REORGANIZED ADDITIONAL DEBTORS AS PROVIDED IN ARTICLE 12 OF THE JOINT PLAN.**

**B.  THE JOINT PLAN CONTAINS INJUNCTIONS IN FAVOR OF THE SETTLING INSURERS AS PROVIDED IN SECTIONS 12.4, 12.5, AND 12.15 OF THE JOINT PLAN THAT ENJOIN (1) ANY AND ALL CLAIMS HELD BY ANY ENTITY AGAINST ANY OF THE PROTECTED PARTIES AND ALL CLAIMS AGAINST THE SETTLING INSURERS IN RELATION TO THE SETTLING INSURERS' POLICIES, AND (2) ALL SUBJECT INTERESTS HELD BY ANY ENTITY IN ANY OF THE SETTLING INSURERS' POLICIES.**

**C.  THE JOINT PLAN CONTAINS CERTAIN EXCULPATORY AND LIMITATION OF LIABILITY PROVISIONS THAT RELATE TO AND AFFECT THE RIGHTS, CLAIMS, AND/OR CAUSES OF ACTION THAT CREDITORS, INCLUDING ABUSE CLAIMANTS, MAY HAVE AGAINST THE EXCULPATED PARTIES AS PROVIDED IN SECTION 12.3 OF THE JOINT PLAN.**

---

**D. THE JOINT PLAN CONTAINS A GATEKEEPER INJUNCTION IN SECTION 12.8 REQUIRING ENJOINED PARTIES TO DEMONSTRATE THEY HAVE A COLORABLE CLAIM THAT IS NOT RELEASED, ENJOINED, OR OTHERWISE BARRED BEFORE ASSERTING ANY SUCH CLAIM. FAILURE TO SEEK RELIEF FROM THE BANKRUPTCY COURT BEFORE FILING SUCH CLAIM CAN RESULT IN AN AWARD OF ATTORNEYS' FEES.**

**E. IF APPROVED BY THE BANKRUPTCY COURT, THE JOINT PLAN WILL ESTABLISH A BAR DATE OF DECEMBER 2, 2025 BY WHICH CERTAIN CREDITORS, INCLUDING ABUSE CLAIMANTS, WHO HAVE NOT ALREADY FILED A PROOF OF CLAIM IN THE CHAPTER 11 CASE OR FILED SUIT AGAINST THE ARCHDIOCESE OR AN ADDITIONAL DEBTOR BY AUGUST 14, 2025, MUST FILE A PROOF OF CLAIM. FAILURE TO FILE A PROOF OF CLAIM IN ACCORDANCE WITH SECTIONS 6.11 AND 6.12 OF THE JOINT PLAN WILL RESULT IN DISALLOWANCE OF CERTAIN CLAIMS AGAINST THE ADDITIONAL DEBTORS.**

**BEFORE YOU VOTE, YOU SHOULD REVIEW THE ENTIRE DISCLOSURE STATEMENT, JOINT PLAN, INSURANCE SETTLEMENT AGREEMENTS, AND INSURANCE SETTLEMENT MOTION INCLUDING, BUT NOT LIMITED TO, THE PROVISIONS DISCUSSED ABOVE.**

12.    **The Plan Supplements**.  The Plan Proponents will File Plan Supplements on or before **October 20, 2025, at 11:59 p.m. (Central Time)**, and will serve a Notice of Filing on parties in interest.

13.    **Obtaining Solicitation Materials**.

a.    If you have any procedural questions regarding the Insurance Settlement Motion, the Disclosure Statement or the Joint Plan, or if you would like to obtain a copy of a Ballot, you should contact the noticing, claims, and voting agent retained by the Debtor in the Chapter 11 Case, Donlin, Recano & Company, LLC (the "**Claims and Voting Agent**"), by: (a) telephoning the Claims and Voting Agent at 1-877-476-4389 (toll free); (b) visiting the restructuring website, maintained by the Claims and Voting Agent, at https://www.donlinrecano.com/Clients/rcano/Index; (c) writing the Claims and Voting Agent, at Donlin, Recano & Company, LLC, Re: The Roman Catholic Church of the Archdiocese of New Orleans, Attn: Voting Department, P.O. Box 2053, New York, NY 10272-2042; and/or (d) emailing the Claims and Voting Agent at DRCVote@angeiongroup.com.

b.    If you do not need a Ballot, but would like to inspect and/or obtain a copy of the Disclosure Statement, the Joint Plan, the Disclosure Statement Order, the Insurance Settlement Motion, or the Insurance Settlement Agreements, you may inspect and print copies by visiting (a) the Court's website at https://www.laeb.uscourts.gov/archdioceseofneworleansch11 (without charge), (b) the Bankruptcy Court's electronic case management system website at https://ecf.laeb.uscourts.gov (fee charged), or (c) the restructuring website, maintained by the Claims and Voting Agent, at https://www.donlinrecano.com/Clients/rcano/Index.

c.    All pleadings and other documents Filed in the Chapter 11 Case are available for inspection and copying (a) by visiting the restructuring website, maintained by the Claims and Voting Agent, at https://www.donlinrecano.com/Clients/rcano/Dockets (without charge), or (b) on the Bankruptcy Court's electronic case management system website at http://www.laeb.uscourts.gov (fee charged).

d.    To access documents on the Bankruptcy Court's electronic case management system, you will need a PACER password and login, which can be obtained at pacer.psc.uscourts.gov.

---

**BINDING NATURE OF THE JOINT PLAN**

IF CONFIRMED, THE JOINT PLAN AND RELATED DOCUMENTS WILL BIND ALL CREDITORS TO THE MAXIMUM EXTENT PERMITTED BY APPLICABLE LAW, WHETHER OR NOT SUCH CREDITOR WILL RECEIVE OR RETAIN ANY PROPERTY OR INTEREST IN PROPERTY UNDER THE JOINT PLAN, HAS FILED A PROOF OF CLAIM, FAILED TO VOTE TO ACCEPT OR REJECT THE JOINT PLAN, OR VOTED TO REJECT THE JOINT PLAN.

---

Dated: August 14, 2025

*/s/ Mark A. Mintz*
JONES WALKER LLP
R. Patrick Vance (#13008)
Elizabeth J. Futrell (#05863)
Mark A. Mintz (#31878)
Samantha A. Oppenheim (#38364)
201 St. Charles Avenue, 51st Floor
New Orleans, LA  70170
Telephone:  (504) 582-8000
Facsimile:  (504) 589-8260
Email:  pvance@joneswalker.com
          efutrell@joneswalker.com
          mmintz@joneswalker.com
          soppenheim@joneswalker.com

**ATTORNEYS FOR**
**THE ROMAN CATHOLIC CHURCH OF**
**THE ARCHDIOCESE OF NEW ORLEANS**

*/s/ Douglas S. Draper*
HELLER, DRAPER, & HORN, L.L.C.
Douglas S. Draper
Greta S. Brouphy
Michael E. Landis
650 Poydras Street, Suite 2500
New Orleans, Louisiana 70130
Telephone: 504-299-3300
Facsimile: 504-299-3399
E-mail: ddraper@hellerdraper.com
          gbrouphy@hellerdraper.com
          mlandis@hellerdraper.com

**ATTORNEYS FOR**
**THE ADDITIONAL DEBTORS**

*/s/ James S. Stang*
PACHULSKI STANG ZIEHL & JONES LLP
James I. Stang (CA Bar 94435) (pro hac vice)
Iain A.W. Nasatir (CA Bar 148977) (pro hac vice)
Andrew W. Caine (CA Bar 110345) (pro hac vice)
Karen B. Dine (NY Bar 2625366) (pro hac vice)
10100 Santa Monica Blvd., Ste. 1300
Los Angeles, CA  90067
Telephone:  (310) 277-6910
Facsimile:  (310) 201-0760
Email:  jstang@pszjlaw.com
          inasatir@pszjlaw.com
          acaine@pszjlaw.com
          kdine@pszjlaw.com

*/s/ Bradley C. Knapp*
TROUTMAN PEPPER LOCKE LLP
Omer F. Kuebel, III (La #21682)
Bradley C. Knapp (La #35867)
601 Poydras Street, Suite 2660
New Orleans, Louisiana 70130-6036
Telephone: (504) 558-5210
Facsimile: (504) 910-6847
Email:  rkuebel@lockelord.com
          bknapp@lockelord.com

TROUTMAN PEPPER LOCKE LLP
W. Steven Bryant (TX Bar No. 2427413)
300 Colorado Street, Ste. 2100
Austin, Texas 78701
Telephone: (512) 305-4726
Facsimile: (512) 305-4800
Email: steven.bryant@troutman.com

**ATTORNEYS FOR THE OFFICIAL**
**COMMITTEE OF UNSECURED CREDITORS**

EXHIBIT F

**The Roman Catholic Church of the Archdiocese of New Orleans**
**Of 012**
**US First Class Mail**
**Exhibit Page**

10/30/2025 05:49:44 PM

NAME AND ADDRESS INTENTIONALLY REDACTED.
NAME AND ADDRESS INTENTIONALLY REDACTED.
NAME AND ADDRESS INTENTIONALLY REDACTED.
NAME AND ADDRESS INTENTIONALLY REDACTED.

Records Printed : **4**

EXHIBIT G

**The Roman Catholic Church of the Archdiocese of New Orleans**
**US First Class Mail**
**Exhibit Page**

10/30/2025 05:55:42 PM

NAME AND ADDRESS INTENTIONALLY REDACTED.   NAME AND ADDRESS INTENTIONALLY REDACTED.   NAME AND ADDRESS INTENTIONALLY REDACTED.

Records Printed :   **3**

EXHIBIT H

**The Roman Catholic Church of the Archdiocese of New Orleans**
**US First Class Mail**
**Exhibit Page**

| | | | |
|---|---|---|---|
| NAME AND ADDRESS INTENTIONALLY REDACTED. | NAME AND ADDRESS INTENTIONALLY REDACTED. | NAME AND ADDRESS INTENTIONALLY REDACTED. | NAME AND ADDRESS INTENTIONALLY REDACTED. |
| NAME AND ADDRESS INTENTIONALLY REDACTED. | NAME AND ADDRESS INTENTIONALLY REDACTED. | NAME AND ADDRESS INTENTIONALLY REDACTED. | |

Records Printed :   **7**

EXHIBIT I

The Roman Catholic Church of the Archdiocese of New Orleans
US First Class Mail
Of 0?
Exhibit Page

NAME AND ADDRESS INTENTIONALLY REDACTED.

Records Printed :  1

EXHIBIT J

**The Roman Catholic Church of the Archdiocese of New Orleans**
**US First Class Mail**
**Exhibit Page**

| | | | |
|---|---|---|---|
| NAME AND ADDRESS INTENTIONALLY REDACTED. | NAME AND ADDRESS INTENTIONALLY REDACTED. | NAME AND ADDRESS INTENTIONALLY REDACTED. | NAME AND ADDRESS INTENTIONALLY REDACTED. |
| NAME AND ADDRESS INTENTIONALLY REDACTED. | NAME AND ADDRESS INTENTIONALLY REDACTED. | NAME AND ADDRESS INTENTIONALLY REDACTED. | |

Records Printed :   **7**

EXHIBIT K

**The Roman Catholic Church of the Archdiocese of New Orleans**
**US First Class Mail**
**Exhibit Page**

| NAME AND ADDRESS INTENTIONALLY REDACTED. | NAME AND ADDRESS INTENTIONALLY REDACTED. | NAME AND ADDRESS INTENTIONALLY REDACTED. | NAME AND ADDRESS INTENTIONALLY REDACTED. |
|---|---|---|---|
| NAME AND ADDRESS INTENTIONALLY REDACTED. | NAME AND ADDRESS INTENTIONALLY REDACTED. | | |

Records Printed :   **6**

EXHIBIT L

**The Roman Catholic Church of the Archdiocese of New Orleans**
**US First Class Mail**
**Exhibit Page**

10/30/2025 06:04:53 PM

NAME AND ADDRESS INTENTIONALLY REDACTED          NAME AND ADDRESS INTENTIONALLY REDACTED          NAME AND ADDRESS INTENTIONALLY REDACTED          NAME AND ADDRESS INTENTIONALLY REDACTED

Records Printed :   **4**

EXHIBIT M

**The Roman Catholic Church of the Archdiocese of New Orleans**
**US First Class Mail**
**Exhibit Page**

NAME AND ADDRESS INTENTIONALLY REDACTED

Records Printed :   **1**

EXHIBIT N

**The Roman Catholic Church of the Archdiocese of New Orleans**
**of the**
**US First Class Mail**
**Exhibit Page**

Page # : 1 of 1

NAME AND ADDRESS INTENTIONALLY REDACTED        NAME AND ADDRESS INTENTIONALLY REDACTED        NAME AND ADDRESS INTENTIONALLY REDACTED

Records Printed :   **3**

EXHIBIT O

**The Roman Catholic Church of the Archdiocese of New Orleans**
**of 102**
**US First Class Mail**
**Exhibit Page**

Page # : 1 of 1

NAME AND ADDRESS INTENTIONALLY REDACTED          NAME AND ADDRESS INTENTIONALLY REDACTED

Records Printed : **2**

# EXHIBIT P

**The Roman Catholic Church of the Archdiocese of New Orleans**
**US First Class Mail**
**Exhibit Page**

10/30/2025 06:11:48 PM

NAME AND ADDRESS INTENTIONALLY REDACTED  NAME AND ADDRESS INTENTIONALLY REDACTED  NAME AND ADDRESS INTENTIONALLY REDACTED  NAME AND ADDRESS INTENTIONALLY REDACTED

Records Printed : **4**

EXHIBIT Q

**The Roman Catholic Church of the Archdiocese of New Orleans**
**US First Class Mail**
**Exhibit Page**

10/30/2025 06:16:43 PM

NAME AND ADDRESS INTENTIONALLY REDACTED          NAME AND ADDRESS INTENTIONALLY REDACTED          NAME AND ADDRESS INTENTIONALLY REDACTED          NAME AND ADDRESS INTENTIONALLY REDACTED

Records Printed :  **4**