**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| In re: | § | |
| | § | Case No. 20-10846 |
| **THE ROMAN CATHOLIC CHURCH** | § | |
| **OF THE ARCHDIOCESE OF NEW** | § | Section "A" |
| **ORLEANS,** | § | |
| | § | Chapter 11 |
| Debtor.[1] | § | |

**DECLARATION OF FR. PATRICK R. CARR IN SUPPORT OF
MOTION FOR ENTRY OF ORDERS PURSUANT TO SECTIONS 363 AND
105(A) OF THE BANKRUPTCY CODE AND BANKRUPTCY RULE 9019
APPROVING SETTLEMENT AGREEMENTS AND POLICY
BUY-BACKS WITH CERTAIN INSURERS AND GRANTING RELATED RELIEF**

I, Fr. Patrick R. Carr, declare as follows:

1. I am a Certified Public Accountant, a member of the Finance Council, and currently serve as Vicar of Finance for the Roman Catholic Church of the Archdiocese of New Orleans (the "**Archdiocese**" or "**Debtor**"). I have served as Vicar of Finance since August 2019. From July to October 2022, I also served as the Archdiocese's interim Chief Financial Officer. I also serve as Pastor of St. Rita Parish. I am familiar with the assets, liabilities, and sources of income for the Archdiocese.[2]

2. I make this Declaration based upon: (a) my personal knowledge of certain facts stated herein, (b) information supplied to me by others associated with the Archdiocese, (c) my

---

[1] The last four digits of the Debtor's federal tax identification number are 8966. The Debtor's principal place of business is located at 7887 Walmsley Ave., New Orleans, LA 70125.

[2] Capitalized terms not otherwise defined herein shall have the meaning ascribed to them in the Motion (as defined below) and/or the *Fifth Amended Joint Chapter 11 Plan of Reorganization for The Roman Catholic Church of the Archdiocese of New Orleans and Additional Debtors, Proposed by the Debtor, the Additional Debtors, and the Official Committee of Unsecured Creditors, Dated as of October 27, 2025*, [ECF No. 4518], (as amended, modified, or supplemented from time to time, the "**Plan**"). On October 27, 2025, copies of the Insurance Settlement Agreements in substantially final form were filed along with redlines showing changes to the model Insurance Settlement attached to the Motion. *See* ECF Nos. 4520-10 through 4520-21.

#110113638v7

**PP Ex. 11**

review of relevant documents, (d) consultation with professionals engaged by the Archdiocese, and (e) my experience and knowledge of Archdiocesan operations. If I were called to testify, I would testify to the facts as set forth herein.

3. I am authorized by the Archdiocese to submit this Declaration in support of the *Motion for Entry of Orders Pursuant to Sections 363 and 105(a) of the Bankruptcy Code and Bankruptcy Rule 9019 Approving Settlement Agreements and Policy Buy-Backs with Certain Insurers and Granting Related Relief* [ECF No. 4181] (the "**Motion**").

## BACKGROUND

4. Since 2020, the Archdiocese, the Committee, and the Settling Insurers have participated in numerous rounds of in-person mediation sessions and countless Zoom meetings, telephone calls, and email exchanges regarding, among other things, insurance coverage that may be available to compensate Abuse Claimants.

5. In particular, on September 15, 2021, the Bankruptcy Court appointed Judge Gregg W. Zive to serve as mediator. *See* Order Granting Joint Motion to Appoint Mediator [ECF No. 1058]. On March 11, 2024 and January 24, 2025, respectively, the Bankruptcy Court further appointed John W. Perry, Jr. and Hon. Christopher Sontchi (Ret.) to serve as additional mediators [ECF Nos. 2892, 3694]. The Settling Insurers participated in various mediation sessions under the supervision of one or all of these well-credentialed, Court-approved, independent mediators, as well.

6. In or about May 2025, these extensive arm's-length mediation efforts culminated in the Archdiocese and the Committee reaching settlements with the Settling Insurers.[3]

---

[3] United States Fidelity & Guaranty Company, affiliate of Travelers Indemnity Company, ("**Travelers**") is now the lone insurer to the Archdiocese with whom the Archdiocese and the Committee have not reached an agreement.

7. I was a direct participant in the negotiations that resulted in the proposed settlements. It is my belief that the Insurance Settlement Agreements are the result of hard-fought, good-faith negotiations between the Archdiocese, the Committee, and the Settling Insurers.

8. In addition to the $29,275,000 in funding provided by the Settling Insurers, the Plan provides for additional funding from the Archdiocese, Additional Debtors, and Non-Debtor Catholic Entities, in the amount of $200,000,000. Together, these sources will provide approximately $230,000,000 to fund the Settlement Trust established under the Plan. Additional recoveries may also be available through the Plan's assignment to the Settlement Trust of insurance claims against Travelers.

## SETTLEMENT WITH THE SETTLING INSURERS

9. The Insurance Settlement Agreements provide for settlement payments of $21,000,000 from SPARTA, $5,000,000 from U.S. Fire/International, $2,000,000 from Catholic Mutual, $85,000 from Puritan, $290,000 from National Union, and $900,000 from Twin City in exchange for respective full and complete "buy-backs" of the Subject Insurance Policies. The negotiated settlements also contemplate that, in exchange for the payment of the respective Settlement Amounts, among other things: (i) the Settling Insurers will receive releases from the Debtor, Additional Debtors, and Non-Debtor Catholic Entities; (ii) any Channeled Claim that could otherwise have been asserted against the Debtor, Additional Debtors, any Co-Insured Parties, or their collective insurance policies will be channeled to the Settlement Trust; (iii) the respective Subject Insurance Policies will be sold back to the respective Settling Insurers free and clear of any claims or interests of all Entities in the Archdiocese Policies (other than, with respect to Catholic Mutual, the Preserved Coverage (as defined in the Catholic Mutual Settlement Agreement) in respect to certain non-Abuse personal injury or bodily injury claims and the

#110113638v7

Archdiocese Bound Parties' rights or continuing obligations in connection with such Preserved Coverage); and (iv) in furtherance of such "free and clear" sale, the Settling Insurers will receive the benefit of injunctions (pursuant to the Plan and the Court's order approving the Motion) enjoining claimants from pursuing such claims or interests against the Settling Insurers. If the Insurance Settlement Agreements are approved and consummated, the payments made by the Settling Insurers pursuant thereto would be a significant accomplishment, made through the extensive mediation process. In recognition thereof, the Archdiocese, the Additional Debtors (and other Archdiocese Signatory Parties), and the Committee have agreed to accept the amounts offered by each of the Settling Insurers. In addition, the Unknown Claims Representative has also supported the Insurance Settlements.

10. In evaluating the Settlement Agreements, the Archdiocese consulted with its professionals including lead bankruptcy counsel Jones Walker LLP and special insurance counsel Blank Rome LLP. Litigation risks, insurance defense strengths and weaknesses, the parties' respective positions in mediation, and the strengths, weaknesses, and potential settlement values of various claims asserted against the Archdiocese and Additional Debtors were all factors that the Archdiocese considered in connection with its analysis.

11. As part of its evaluation of the proposed settlement with the Settling Insurers, the Archdiocese considered the potential liability of the Archdiocese and Additional Debtors for Abuse Claims. In addition, the Archdiocese considered the option of attempting to prosecute an insurance coverage action to obtain a declaratory judgment as to the availability of coverage under relevant insurance policies, and the delay, costs, and risks associated with such litigation, including, but not limited to, incurring professional and administrative fees while such action is pending, the possibility of adverse decisions which would leave the Archdiocese and Additional

4

Debtors with little or no coverage, and the impact of prolonged litigation. The Archdiocese considered other potential ways to resolve its disputes with the Settling Insurers and to monetize the value of its insurance policies. Ultimately, however, the Archdiocese determined, in consultation with the Committee, that the certainty of a negotiated settlement with these Settling Insurers was in the best interest of the Archdiocese and survivors.

12. After conferring with the professionals employed by the Archdiocese, I believe that the Insurance Settlement Agreements (both individually and collectively) represent a fair and reasonable compromise and are in the best interest of the Archdiocese and Additional Debtors' estates and all of their creditors, including specifically, abuse survivors. More specifically, entering into the Insurance Settlement Agreements will result in a cash infusion of $29,275,000 into the Archdiocese's estate to fund the Settlement Trust and will eliminate the risk to the Archdiocese of unfavorable litigation outcomes and additional litigation expenses in coverage litigation.

13. I also believe that the Settling Insurers would not be willing to agree to the terms set forth in the respective Insurance Settlement Agreements, including the monetary contribution that would be provided to the Settlement Trust, absent the protections provided for in the Insurance Settlement Agreements, including a full and complete policy buy-back, the releases provided by the Debtor, Additional Debtors, and Non-Debtor Catholic Entities in the Insurance Settlement Agreements and the Plan, and the Sale Injunction, Supplemental Settling Insurers' Injunction, and Gatekeeper Injunction provided in the Plan. Thus, the releases and injunctions that would benefit the Settling Insurers are an essential condition of the Debtor and Additional Debtors (and the Settlement Trust) receiving the substantial benefits of the Insurance Settlement Agreements.

#110113638v7

14. It is my belief that the Archdiocese and Additional Debtors are exercising sound business judgment by entering into the Insurance Settlement Agreements, as further confirmed by the Committee's support for the Motion.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Dated: November 4, 2025

By:    */s/ Fr. Patrick R. Carr*
       Fr. Patrick R. Carr

#110113638v7