# *In re:*

# *The Roman Catholic Church of the Archdiocese of New Orleans*

Expert Report of Katheryn R. McNally

of

Stout Risius Ross, LLC

September 4, 2025

PP Ex.

**12**

1

**Confidential Subject to Protective Order**

**Table of Contents**

I.     INTRODUCTION ....................................................................................................................... 2

II.    VALUATION OF ANO SEXUAL ABUSE CLAIMS ............................................................ 2

   A.    Identification of Valued ANO Sexual Abuse Claims ................................................ 3

      i.    Withdrawn ANO Sexual Abuse Claims ................................................................ 3

      ii.   Duplicate ANO Sexual Abuse Claims ................................................................... 3

      iii.  Adult ANO Sexual Abuse Claims .......................................................................... 4

      iv.   Minor Abuser ANO Sexual Abuse Claims ........................................................... 5

      v.    ANO Non-Sexual Abuse Claims ............................................................................ 6

      vi.   Valued ANO Sexual Abuse Claims ....................................................................... 6

   B.    Valuation of ANO Sexual Abuse Claims ................................................................... 8

      i.    Comparable Verdicts ............................................................................................. 9

      ii.   Aggravating Factors ............................................................................................ 14

      iii.  Adjustments for Aggravating Factors ................................................................ 15

      iv.   Discount Scaling Factors ..................................................................................... 17

   C.    Comparison of Claim Valuation Estimate to Comparable Settlements ................... 23

III.   PREVIOUSLY RESOLVED ANO SEXUAL ABUSE CLAIMS ........................................ 27

   A.    Difference in Statute of Limitations Claim Defenses .............................................. 28

   B.    Claim Value Trends ................................................................................................. 29

IV.    CONCLUSION ...................................................................................................................... 30

V.     DATA AND DOCUMENTS CONSIDERED ....................................................................... 31

VI.    EMPLOYMENT AND PROFESSIONAL QUALIFICATIONS .......................................... 31

**Confidential Subject to Protective Order**

## I.     **INTRODUCTION**

I am a Managing Director of Stout Risius Ross, LLC ("Stout," fka The Claro Group, LLC), which has been retained by the Official Committee of Unsecured Creditors (the "Survivors' Committee") in the chapter 11 case of The Roman Catholic Church of the Archdiocese of New Orleans ("Debtor," "ANO," or "Archdiocese") to provide valuation services with respect to sexual abuse claims filed against the Debtor as part of the bankruptcy case.

As part of this case, I was asked by counsel to the Survivors' Committee ("Counsel") to provide a reasonable range of claim value for claims filed in the chapter 11 case of The Archdiocese of New Orleans by over 600 survivors of sexual abuse ("ANO Sexual Abuse Claims" or "ANO Sexual Abuse Claimants"). In this Report, I use the terms "I" or "Stout" to describe work that I performed or that was performed by a member of my team under my direction.

### *Summary of Opinion*

Based on the analysis and the assumptions included herein, my opinion is that a reasonable range of claim value for the ANO Sexual Abuse Claims is $755.5 million to $1.70 billion.

## II.     **VALUATION OF ANO SEXUAL ABUSE CLAIMS**

For purposes of arriving this opinion, Stout implemented a three-step approach:

A.  Identify ANO Sexual Abuse Claims to be included as part of the analysis ("Valued ANO Sexual Abuse Claims");

B.  Apply valuation methodology based on generally-accepted principles in litigation risk assessment and case and claim valuation; and

C.  Compare Stout's valuation of the ANO Sexual Abuse Claims to Comparable Settlements to assess the reasonableness of the resulting valuation estimate.

Certain valuation inputs are inherently uncertain and complete information on each of the ANO Sexual Abuse Claims is not available. With this backdrop, a reliable valuation necessarily acknowledges a range of possible aggregate claim values. Stout's valuation was developed with the objective of estimating a range of claim value for all ANO Sexual Abuse Claims in the aggregate.

2

**Confidential Subject to Protective Order**

For a given sexual abuse claim, there are often multiple parties with potential liability, including one or more institutional entities, the perpetrator, or other individuals. The claim valuation estimate presented herein is intended to capture only the estimated share of claim value of the ANO Sexual Abuse Claims attributable to the Archdiocese, Reorganized Archdiocese, Additional Debtors, and Reorganized Additional Debtors (collectively the "Protected Parties").[1]

### A. <u>Identification of Valued ANO Sexual Abuse Claims</u>

In order to identify those claims to be included in Stout's valuation estimate, Stout evaluated whether any of the 828 Proof of Claim ("POC") forms[2] filed in this case reflected claims with profiles or attributes that warranted potential exclusion. A total of 202 POC forms were excluded from Stout's analysis because they fall into one or more of the following categories:

- Withdrawn ANO Sexual Abuse Claims
- Duplicate ANO Sexual Abuse Claims
- Adult ANO Sexual Abuse Claims
- Minor Abuser ANO Sexual Abuse Claims
- ANO Non-Sexual Abuse Claims

Stout's evaluation of these excluded categories is explained in further detail below.

### i. <u>Withdrawn ANO Sexual Abuse Claims</u>

Stout analyzed the 828 POC forms and compared these filings to a claim list provided by the Debtor (the "Debtor's Claims List")[3] to identify withdrawn POCs. Stout relied on the Debtor's information for purposes of identifying a comprehensive list of withdrawn POC forms ("Withdrawn ANO Sexual Abuse Claims").

As a result of this review, Stout identified three POC forms that were withdrawn and therefore excluded from Stout's valuation analysis.

### ii. <u>Duplicate ANO Sexual Abuse Claims</u>

Stout analyzed the remaining 825 ANO Sexual Abuse Claims to identify ANO Sexual Abuse Claimants that may have filed more than one POC form. In my experience, it is not unusual for claimants

---

[1] As defined in the Second Amended Joint Chapter 11 Plan of Reorganization for The Roman Catholic Church of The Archdiocese of New Orleans and Additional Debtors, Proposed By The Debtor, The Additional Debtors, and The Official Committee of Unsecured Creditors, Dated as of August 6, 2025 (the "Plan").
[2] Includes all claims received as of June 13, 2025.
[3] July 1 2025 - Claims Lists – CONFIDENTIAL.xlsx. Not attached due to Confidentiality Order restrictions.

3

**Confidential Subject to Protective Order**

to file multiple POC forms in a mass tort or class action context. To identify potential duplicate claims, Stout identified POC forms that contain the same responses for certain name or contact information questions on more than one POC forms, which, is a reasonable and customary step to identify potential duplicates. The POC form fields below were examined to identify where more than one POC form may have been filed by the same claimant ("Duplicate ANO Sexual Abuse Claims"):

- First Name and Last Name
- Date of Birth
- Last Four Digits of Social Security Number

As a result of this analysis, Stout identified 167 POC forms that were potentially duplicative. Additionally, Stout also reviewed the 81 ANO Sexual Abuse Claims identified as duplicates on the Debtor's Claims List. All 81 duplicates identified in the Debtor's Claims List were also included in the 167 potential duplicates identified by Stout. Thus, Stout identified an additional 86 POC forms that were not included on the Debtor's Claims List as potential duplicates. In total, 167 Duplicate ANO Sexual Abuse Claims were excluded from Stout's valuation analysis.[4]

### iii. Adult ANO Sexual Abuse Claims

Stout sought to exclude from its valuation analysis claims that were filed by survivors of sexual abuse that may have occurred exclusively after the survivor's 18th birthday ("Adult ANO Sexual Abuse Claims"). The Adult ANO Sexual Abuse Claims may have value and are not being included in the valuation estimate; therefore, their exclusion is a conservative approach.

Stout analyzed the remaining 658 POC forms and identified 21 Adult ANO Sexual Abuse Claims. While the general methodology to value Adult ANO Sexual Abuse Claims would follow the same framework as the methodology presented herein, the inputs and assumptions would vary in certain respects. For example, as further detailed in Section II.B.i and Section II.C herein, Stout leverages both verdicts and settlements involving claims of childhood sexual abuse to inform its valuation estimates. Those datapoints may or may not be appropriate comparables for purposes of informing claim valuation estimates for claims filed by survivors of sexual abuse that occurred exclusively as an adult, such as the Adult ANO Sexual Abuse Claims. My experience is that claims brought by survivors of sexual abuse as adults can command sizeable settlements, albeit potentially lower than those brought by survivors of childhood sexual abuse, all other factors being consistent.

---

[4] For purposes of Stout's analysis, Stout considered responses provided in all POC forms filed by a given claimant.

**Confidential Subject to Protective Order**

There have been several high-profile sexual abuse matters in recent years that involved sexual abuse of adults that resolved for average claim payments above $250,000 (Harvey Weinstein survivors,[5] OSU Dr. Strauss survivors,[6] University of Michigan Dr. Anderson survivors[7]) with many more recent settlements resolving claims falling within the statute of limitations exceeding $1,000,000 per adult survivor (USC Dr. Tyndall survivors,[8] UCLA Dr. Heaps survivors,[9] Columbia Dr. Hadden survivors[10]).

Given the differing nature of adult sexual abuse claims compared to childhood sexual abuse claims and the potential differences in claim value, the Adult ANO Sexual Abuse Claims were excluded from Stout's valuation analysis.

### iv.  Minor Abuser ANO Sexual Abuse Claims

Stout sought to exclude from its valuation analysis claims filed by survivors of sexual abuse in which the abuser or abusers may have been exclusively other minors ("Minor Abuser ANO Sexual Abuse Claims"). The Minor Abuser ANO Sexual Abuse Claims may have value and are not being included in the valuation estimate; therefore, their exclusion is a conservative approach.

Stout analyzed the remaining 637 POC forms and identified four Minor Abuser ANO Sexual Abuse Claims. Although the age of the abusers was not explicit in every instance, the narratives in the POC forms—for example, references to abuse by "older altar boys" or "students"—support the assumption that the abusers were minors. While the general methodology to value Minor Abuser ANO Sexual Abuse Claims would follow the same framework as the methodology presented herein, the inputs and assumptions would vary in certain respects. For example, as further detailed in Section II.B.i and Section II.C herein, Stout leverages both verdicts and settlements involving allegations against adult abusers to inform its valuation

---

[5] Harvey Weinstein survivors settled for an average of over $300,000 per claimant, with the most serious allegations resulting in payouts of $500,000 or more. Reference: "Harvey Weinstein: Court Agrees $17m Payout for Accusers," *BBC*, January 25, 2021, https://www.bbc.com/news/business-55791641. Accessed December 2, 2021.

[6] In 2020, The Ohio State University agreed to pay nearly $47 million to 185 survivors of sexual abuse, an average of $252,000 per claim. Reference: "Lawsuits Against Ohio State University Over Sex Abuse By a Team Doctor are Dismissed," *NPR*, The Associated Press, September 22, 2021, https://www.npr.org/2021/09/22/1039899108/ohio-state-sex-abuse-doctor-richard-strauss. Accessed December 2, 2021.

[7] In 2022, The University of Michigan reached a settlement with 1,050 survivors of sexual abuse totaling $460M, an average of over $438,000 per claimant. Reference: "U. of Michigan reaches $490M settlement over sexual abuse by a former sports doctor," *NPR*, January 19, 2022, https://www.npr.org/2022/01/19/1074071024/university-michigan-sexual-abuse-sports-doctor. Accessed August 26, 2025.

[8] In 2021, The University of Southern California agreed to pay $852 million to 710 survivors of sexual abuse, an average of $1.2 million per claim. Reference: Romo, V., "USC Agrees to $852 Million Settlement to End Sex Abuse Litigation," *NPR*, March 25, 2021, https://www.npr.org/2021/03/25/981435791/usc-agrees-852-million-settlement-to-end-sex-abuse-litigation. Accessed August 27, 2025.

[9] In 2022, The University of California agreed to pay $243.6 million to 203 survivors of sexual abuse, an average of $1.2 million per claim. Reference: "UCLA settles gynecologist sexual abuse lawsuit for more than $100 million," *NPR*, February 8, 2022, https://www.npr.org/2022/02/08/1079145840/ucla-gynecologist-sexual-abuse-settlement. Accessed August 27, 2025.

[10] In 2025, The Columbia University agreed to pay $750 million to 576 survivors of sexual abuse, an average of $1.3 million per claim. Reference: Andrawis, M., "$750M Settlement for Survivors of Former OB-GYN's Sexual Abuse," *ABA*, May 9, 2025, https://www.americanbar.org/groups/health_law/news/2025/5/750m-settlement-survivors-former-ob-gyns-sexual-abuse/. Accessed August 27, 2025.

5

estimates. Those datapoints may or may not be appropriate comparables for purposes of informing claim valuation estimates for claims filed by survivors of sexual abuse in which the abuser or abusers may have been exclusively other minors, such as the Minor Abuser ANO Sexual Abuse Claims. My experience is that such claims can command sizeable settlements, albeit potentially lower than those involving allegations against an adult, all other factors being consistent.[11]

Given the differing nature of minor-on-minor sexual abuse claims compared to adult-on-minor sexual abuse claims and the potential differences in claim value, the Minor Abuser ANO Sexual Abuse Claims were excluded from Stout's valuation analysis.

### v. ANO Non-Sexual Abuse Claims

Stout sought to exclude from its valuation analysis claims that did not detail allegations that were explicitly sexual in nature ("ANO Non-Sexual Abuse Claims"). The ANO Non-Sexual Abuse Claims may have value and are not being included in the valuation estimate; therefore, their exclusion is a conservative approach.

Stout analyzed the remaining 633 POC forms and identified seven ANO Non-Sexual Abuse Claims. These claims described other types of abuse, such as non-sexual verbal or non-sexual physical abuse. While the general methodology to value ANO Non-Sexual Abuse Claims would follow the same framework as the methodology presented herein, the inputs and assumptions would vary in certain respects. For example, as further detailed in Section II.B.i and Section II.C herein, Stout leverages both verdicts and settlements involving allegations of sexual abuse to inform its valuation estimates. Those datapoints may or may not be appropriate comparables for purposes of informing claim valuation estimates for claims filed by survivors of other types of abuse, such as the ANO Non-Sexual Abuse Claims. Such claims may command sizeable settlements.

Given the differing nature of non-sexual abuse claims compared to sexual abuse claims and the potential differences in claim value, the ANO Non-Sexual Abuse Claims were excluded from Stout's valuation analysis.

### vi. Valued ANO Sexual Abuse Claims

After removing ANO Sexual Abuse Claims that fall into one or more of the categories described above, the remaining 626 ANO Sexual Abuse Claims are considered Valued ANO Sexual Abuse Claims and are analyzed for purposes of Stout's valuation analysis. Table 1 below summarizes the ANO Sexual

---

[11] For example, this is evidenced in the BSA TDP which systematically assigns lower base and maximum values to claims involving youth perpetrators compared to adult perpetrators for the same or similar acts. See Exhibit A to the *Third Modified Fifth Amended Chapter 11 Plan of Reorganization (with Technical Modifications) for Boy Scouts of America and Delaware BSA, LLC* ("BSA TDP").

**Confidential Subject to Protective Order**

Abuse Claims excluded or assigned zero value for the purposes of valuation and Exhibit 1 identifies the associated ANO Sexual Abuse Claims.

**Table 1: Valued ANO Sexual Abuse Claims**

| ANO Sexual Abuse Claims | POC Forms |
|---|---|
| **POC Forms Analyzed for Purposes of this Report** | **828** |
| Less: Withdrawn ANO Sexual Abuse Claims | (3) |
| Less: Duplicate ANO Sexual Abuse Claims | (167) |
| Less: Adult ANO Sexual Abuse Claims | (21) |
| Less: Minor Abuser ANO Sexual Abuse Claims | (4) |
| Less: ANO Non-Sexual Abuse Claims | (7) |
| **Valued ANO Sexual Abuse Claims** | **626** |

For purposes of Stout's analysis, the 626 Valued ANO Sexual Abuse Claims were assigned to one of the allegation categories ("Abuse Tiers") listed in Table 2 below based on allegations provided in their POC form. These allegation categorizations are consistent with categories utilized by Stout in other, similar engagements and are generally consistent with allegation categorizations utilized in various compensation programs developed for purposes of distributing funds among a pool of sexual abuse survivors.[12] The Abuse Tier assigned to each of the 626 Valued ANO Sexual Abuse Claims can be found in Exhibit 1 to this Report.

**Table 2: Valued ANO Sexual Abuse Claims by Abuse Tier**

| Abuse Tier | All Valued ANO Sexual Abuse Claims | | Known Abuse Tiers Only | |
|---|---|---|---|---|
| | Number of Valued ANO Sexual Abuse Claims | Percent of All Valued ANO Sexual Abuse Claims | Number of Valued ANO Sexual Abuse Claims | Percent of Known Abuse Tier Valued ANO Sexual Abuse Claims |
| Penetration | 220 | 35.1% | 220 | 36.2% |
| Oral Sex | 106 | 16.9% | 106 | 17.5% |
| Masturbation | 61 | 9.7% | 61 | 10.0% |
| Fondling under Clothing | 110 | 17.6% | 110 | 18.1% |
| Fondling over Clothing, Kissing, Unwanted Touching | 92 | 14.7% | 92 | 15.2% |
| Nudity/Pornography | 13 | 2.1% | 13 | 2.1% |
| Sex talk, no physical touching | 5 | 0.8% | 5 | 0.8% |
| Unknown Abuse Tier | 19 | 3.0% | N/A | N/A |
| | **626** | **100%** | **607** | **100%** |

Stout's methodology for valuing the Valued ANO Sexual Abuse Claims is described below.

---

[12] See allocation protocols detailed in: (i) BSA TDP; (ii) Exhibit Claims Matrix Protocol, *In re: Catholic Bishop of Spokane*, Case No. 04-08822-FPC11 (Bankr. E.D. Dec. 09, 2009), Docket No. 2374-1.

**Confidential Subject to Protective Order**

### B.  Valuation of ANO Sexual Abuse Claims

Applying well-established litigation risk assessment techniques,[13] Stout has assisted clients in the valuation of tens of thousands of individual sexual abuse claims in recent years and in the valuation of tens of thousands of mass tort claims of various types. Stout has experience working closely with institutional defendants and their counsel in the face of large-scale sexual abuse claims in the tort system. Although every matter has its own specific set of facts and circumstances, the analyses I performed for the ANO Sexual Abuse Claims rely upon generally accepted methodologies and concepts utilized in these types of assignments.  In this capacity, I have performed many similar valuation estimates over the course of my career.

A fundamental tenet of negotiated settlements, and by extension the value of claims in the tort system, is that they reflect not only the quantum of potential damages, but also the inherent uncertainty as to whether the defendant will be found liable for such damages. [14]  At the most basic level, the valuation methodology implemented by Stout reflects these two fundamental building blocks of claim valuation:



Stout utilized these litigation risk assessment techniques for purposes of valuing the 626 Valued ANO Sexual Abuse Claims at issue in this case, through the following steps:

1. Analyze available information for observed verdicts, awards, or judgements in comparable cases ("Verdict Sample"),[15] focusing on the amount of compensatory damages apportioned to institutional defendants ("Comparable Verdicts"). Comparable Verdicts exclude punitive damages, pre- and post-judgment interest, and amounts apportioned to non-institutional defendants such as the perpetrator.

---

[13] Alan E. Friedman, *An Analysis of Settlement*, 22 Stan. L. Rev. 67 (1969); Marc B. Victor, *Decision Tree Analysis: A Means of Reducing Litigation Uncertainty and Facilitating Good Settlements*, 31 Ga. St. U. L. Rev. 715 (2015); See generally Robert B. Calihan et al., *The Role of Risk Analysis in Dispute and Litigation Management*, A.B.A. (2004). Marjorie Corman Aaron, *The Handbook of Dispute Resolution: Finding Settlement with Numbers, Maps, and Trees* ch. 13 (1st ed. 2005), at 1.
[14] *Ibid.*
[15] The Verdict Sample is intended to gather datapoints that provide an estimate for the amount that may be awarded in damages to a survivor of childhood sexual abuse, such as the Valued ANO Sexual Abuse Claimants. The Verdict Sample is the starting point for identifying Comparable Verdicts.

Confidential Subject to Protective Order

2. Apply adjustments to reflect the aggregate prevalence of certain allegations or claim attributes generally considered to impact claim value,[16] either by influencing potential damages (e.g. abuse frequency) or the likelihood of liability (e.g. evidence of negligence by a Protected Party) ("Aggravating Factors"); and

3. Identify additional hurdles to establishing liability in the tort system and develop discount factors for such additional hurdles ("Discount Scaling Factors").



The section below describes Stout's methodology of collecting and analyzing Comparable Verdicts.

### i. **Comparable Verdicts**

It is a common principle that the amount of a potential verdict and the probability of obtaining the verdict is what drives settlements—the higher the likely verdict, all other factors being consistent, the higher the settlement.[17] The valuation of sexual abuse claims properly starts with an estimate of the potential amount that the plaintiff(s) may be awarded, before any claim or settlement discounts (similar to an estimated verdict, award, or judgment).

In an effort to establish objective, data-driven estimates for potential verdict values as a starting point from which to make adjustments, Stout performed research using the platforms VerdictSearch, Lexis,

---

[16] As evidenced in various Trust Distribution Procedures and Allocation Protocol in matters involving sexual abuse claims. *See* Exhibit 5 and Exhibit 6, introduced later in this Report.

[17] Alan E. Friedman, *An Analysis of Settlement*, 22 Stan. L. Rev. 67 (1969).

9

Westlaw, and Bloomberg to extract cases involving allegations of sexual abuse.[18],[19] Cases were considered for potential inclusion in Stout's analysis if they met the following criteria:

- Case resulted in a verdict, award, or judgment (i.e., not a settlement);
- Case included a verdict, award, or judgment against an institutional defendant (i.e., not only individuals); and
- Case involved allegations of sexual abuse.

Based on Stout's review of the ANO Sexual Abuse Claims, Stout performed a further review of the cases to identify those that involved allegations and survivor profiles sufficiently similar to the ANO Sexual Abuse Claims to be considered a comparable case for valuation purposes. Cases excluded for purposes of Stout's claim valuation estimate fall into one or more of the following categories:

- Foster care abuse and claims against children's welfare agencies;
- Cases alleging a failure of a medical professional to identify or report sexual abuse of a survivor outside of such medical setting;
- Claims involving a survivor described as "mentally retarded," "mentally disabled," "special needs," or a "mental patient" in the case description;
- Claims involving sexual abuse by another minor due to alleged lack of proper supervision; or
- Claims involving a survivor that alleged sexual abuse exclusively as an adult.

---

[18] Heather Heavin & Michaela Keet, *A Spectrum of Tools to Support Litigation Risk Assessment: Promise and Limitations,* 15(2) Can. J. of L. and Tech. 265 (2017).
[19] Stout performed broad searches using the following search terms: "sexual abuse," "molest," "diocese," "archdiocese," and "Boy Scouts." Research includes available verdicts through July 31, 2025.

**Confidential Subject to Protective Order**

A scatterplot of the inflation-adjusted[20] verdicts observed among the Verdict Sample is shown in Chart 1 below and a full listing can be found in <u>Exhibit 2.</u>

## **Chart 1: Verdict Sample - Inflation Adjusted Verdict Values**



Chart 1 above depicts an upward trend in the average verdict value per claimant across the Verdict Sample, after adjusting for inflation. The inflation adjusted average among all datapoints shown above is $11,323,551 (*n=83*),[21] the average since the beginning of 2013 is $13,082,160 (*n=48*), and the average since the beginning of 2018 is $17,556,977 (*n=25*). Given the observed upward trend over time, which is further detailed and supported in Section III.B of this Report, it is appropriate to focus analysis on more recent verdicts that more closely reflect the current exposure profile for institutional defendants. For purposes of its valuation estimate, Stout relied on verdicts since the beginning of 2013, balancing the tradeoff between focusing on more recent verdicts which may reflect more current claim value trends and the need for a sufficient sample from which to derive its valuation estimates. This lookback period is a conservative approach relative to focusing exclusively on more recent verdicts.

Stout sought to calculate the share of compensatory damages apportioned to institutional defendants in these cases and removed amounts attributable to:

---

[20] Inflation-Adjusted Comparable Verdict Values based on U.S Bureau of Labor Statistics Consumer Price Index ("CPI") inflation data as of April 30, 2025 (All US City Average). *See* New Eng. Info. Off., *Consumer Price Index US City Average (1982-84 = 100)*, U.S. Bureau of Lab. Stats., https://www.bls.gov/regions/new-england/data/consumerpriceindex_us_table.htm (last visited August 13, 2025) [hereinafter CPI US City Average Data].
[21] One verdict, *'Jane Doe, Pro Ami v. Crime Prevention Agency Inc.'* (2018, GA), with an inflation-adjusted average verdict value of $1.275B has been excluded from the Verdict Sample as a statistical outlier (mean-shift outlier detection methodology, k-NN=4).

11

Confidential Subject to Protective Order

- Defendants other than institutional defendants,[22] such as the perpetrator or other individuals;
- Prejudgment and post-judgment interest; or
- Punitive damages.

As a result of this research and analysis, out of 48 verdicts returned in or after 2013, Stout identified 41 for which the institutional share of compensatory damages could be quantified directly.[23] A further breakdown of these 41 Comparable Verdicts is presented in <u>Exhibit 3</u>. Excluding punitive damages, pre- and post-judgment interest, and amounts apportioned to non-institutional defendants is a conservative approach.

A summary of the verdicts relied upon for purposes of Stout's claim valuation estimate is shown in Table 3 below. While all figures presented exclude verdicts that are statistical outliers, Table 3 below provides summary statistics both including and excluding two verdicts in which the institutional share of compensatory damages exceeds $25 million.[24]

**Table 3: Inflation-Adjusted Verdict Values 2013+[25]**

|  | Average Per Plaintiff | |
|---|---|---|
|  | **Verdict Sample** | **Verdict Sample Excluding 2 Verdicts** |
| **Case Count** | **41** | **39** |
| **Total Award** | $12,913,983 | $10,305,375 |
| Less: Non-Institutional Share of Damages | $2,481,158 | $2,000,574 |
| Institutional Share of Damages | $10,432,825 | $8,304,801 |
| Less: Prejudgment/Post-judgment Interest | $0 | $0 |
| Less: Punitive/Other Damages | $3,167,576 | $3,330,016 |
| ***Institutional Share of Compensatory Damages*** | ***$7,265,249*** | ***$4,974,785*** |

---

[22] For purposes of Stout's analysis, institutional defendants include corporate entities, educational institutions or school districts, not-for-profits, religious organizations, hospitals or other medical providers, local government entities, or other organizational entities.

[23] This level of detail could not be ascertained for seven verdicts. The inflation-adjusted average across these seven verdicts is $14,067,194.

[24] Cases '*B.B. et al. v. Moreno Valley Unified Sch. Dist.*' (2023, CA) and '*Jane Doe, a minor, by and through her Guardian ad Litem, John Doe v. Union School District, Samuel Neipp, Jacqueline Horejs, Mary L. Berkey, Carole Carlson, and Roes 1 through 125, inclusive / Jane Doe 2 v. Union School District, an entity of unknown form; Samuel Neipp, an individual; and Does 1 through 50 / Jane Doe 1, and Jane Doe 2, a minor, by and through her Guardian Ad Litem, Janice Doe v. Union School District, Samuel Neipp, Jacqueline Horejs, Mary L. Berkey, Carole Carlson, and Roes 1 through 100, inclusive*' (2022, CA) awarded inflation-adjusted institutional compensatory values of $63.3M, and $40.5M respectively.

[25] In the table, Other Damages captures awards in two Comparable Verdicts that do not fall within compensatory or punitive, including $8M in litigation expenses and a $10 award on a CUPTA claim. These damages are reduced from any values that are considered for valuation.

12

**Confidential Subject to Protective Order**

The Verdict Sample did not produce sufficient data to develop an average for every Abuse Tier. In order to control for the potential differences in the nature of abuse allegations found among the verdicts as compared to the ANO Sexual Abuse Claims, Stout first calculated summary statistics related to 31 cases involving or potentially involving allegations of penetration,[26] reflecting an average share of compensatory damages apportioned to institutional defendants of $8,614,173 (or $5,626,923[27] after exclusion of two verdicts with damages exceeding $25 million). These statistics served as the benchmark from which to derive values for the remaining Abuse Tiers.

Table 4 below summarizes certain statistics with respect to the inflation-adjusted compensatory damages apportioned to institutional defendants among the 31 cases involving allegations of penetration.

**Table 4: Inflation-Adjusted Institutional Share of Compensatory Damages 2013+, Penetration**

|  | Penetration Verdict Sample | Penetration Verdict Sample Excluding 2 Verdicts |
|---|---|---|
| Case Count | 31 | 29 |
| Minimum | $267,210 | $267,210 |
| 20th Percentile | $1,178,647 | $1,134,667 |
| Median | $4,171,624 | $4,053,291 |
| Mean | $8,614,173 | $5,626,923 |
| 80th Percentile | $11,037,567 | $9,582,807 |
| Maximum | $63,341,349 | $21,417,610 |

For purposes of its claim valuation estimate, Stout relied upon the Verdict Sample statistics presented in Table 4 above that exclude the two verdicts in which the institutional share of compensatory damages exceeds $25 million, which is a conservative approach. In order to leverage these data points to develop potential damages estimates for other Abuse Tiers, Stout applied downward adjustments to reflect potentially lower values for non-penetrative claims. The reductions applied by Stout and summarized in Table 5 below are consistent with relative adjustments by Abuse Tier applied in the Boy Scouts of America TDP and the Catholic Bishop of Spokane Claims Matrix Protocol. A summary of these sources can be found in Exhibit 4 to this Report.

---

[26] Cases fell into one of three categories: 1) included allegations of penetration, 2) included sexual abuse allegations not involving penetration, and 3) unable to determine. For purposes of Stout's analysis, verdicts where the case involved, or may have involved, allegations of penetration (i.e., categories 1 and 3) are treated as verdicts involving penetration.

[27] C.I. 90 ($3,998,779, $7,255,067)

13

Confidential Subject to Protective Order

**Table 5: Comparable Verdict Values by Abuse Tier**

| Abuse Tier | 20th Percentile | Mean | 80th Percentile | % Reduction from Penetration |
|---|---|---|---|---|
| Penetration | $ 1,134,667 | $ 5,626,923 | $ 9,582,807 | |
| Oral Sex | $ 851,000 | $ 4,220,192 | $ 7,187,105 | *25.0%* |
| Masturbation | $ 567,334 | $ 2,813,461 | $ 4,791,404 | *50.0%* |
| Fondling under Clothing | $ 283,667 | $ 1,406,731 | $ 2,395,702 | *75.0%* |
| Fondling over Clothing, Kissing, Unwanted Touching | $ 141,833 | $ 703,365 | $ 1,197,851 | *87.5%* |
| Nudity/Pornography | $ 141,833 | $ 703,365 | $ 1,197,851 | *87.5%* |
| Sex talk, no physical touching | $ 3,572 | $ 17,714 | $ 30,168 | *99.7%* |
| Unknown Abuse Tier | $ - | $ - | $ - | *100.0%* |

The values by Abuse Tier shown above are leveraged as a starting point to value the Valued ANO Sexual Abuse Claims, before adjustments for Aggravating Factors and Discount Scaling Factors.

### ii. Aggravating Factors

For purposes of Stout's valuation, it is anticipated that damage estimates may vary among each ANO Sexual Abuse Claim depending, in part, on the presence of certain Aggravating Factors. Prior to estimating a range of claim values for the 626 Valued ANO Sexual Abuse Claims, Stout performed analyses of these claims in order to better understand the prevalence of Aggravating Factors. In Trust Distribution Plans ("TDP"), these claim attributes can also be referred as "Evaluation Factors," as discussed in more detail in Exhibit 5.

In addition, Exhibit 5 presents Stout's analysis of the Valued ANO Sexual Abuse Claims with respect to the data availability and prevalence of Aggravating Factors. While a more comprehensive listing of typical Aggravating Factors is provided in Exhibit 5, they generally fall within three categories:

- Nature and Circumstances of Abuse;
- Impact of Abuse; and
- Abuser Profile / Claimant Involvement.[28]

Certain Aggravating Factors speak more specifically to attributes that might make a given sexual abuse allegation more severe, holding constant the categorical nature of abuse and setting aside potential legal risks or related discounts (e.g., frequency of abuse, number of abusers, impact of abuse, etc.). Other Aggravating Factors speak more specifically to claim attributes that may give rise to stronger or weaker legal claims, such as the ability to prove negligence. In my experience, the list of Aggravating Factors found

---

[28] In certain TDPs/Allocation Protocols, the Abuser Profile and Claimant Involvement evaluation factors are also classified as "Additional Factors" or "Other Factors."

14

Confidential Subject to Protective Order

in Allocation Protocols and TDPs is consistent with attributes considered in the valuation of claims in the tort system and may inform where, within a reasonable range of claim values for sexual abuse claims, a given claim may fall.

While the prevalence of many Aggravating Factors could not be reliably ascertained from the data available on the Valued ANO Sexual Abuse Claims, the attributes that can be observed reflect a potentially wide distribution of relative severity and strength of claims. A detailed analysis of available data with respect to Aggravating Factors among the Valued ANO Sexual Abuse claims can be found in <u>Exhibit 5</u>.

### iii. <u>Adjustments for Aggravating Factors</u>

While additional factors may be considered, the three categories of Aggravating Factors outlined above represent the types of Aggravating Factors Stout most commonly observes in practice. Although certain Allocation Protocols and TDPs introduce point systems and other scoring mechanisms to value claims relative to each other, there is little information on how these factors are weighed against each other within each category as there is typically no specific formula provided. Thus, the application of these factors differs among cases. A summary of the relative weightings of Aggravating Factor categories in other sexual abuse claim Allocation Protocols or TDPs is attached hereto in <u>Exhibit 6</u>.

None of the Allocation Protocols or TDPs presented in <u>Exhibit 6</u> provide specific language regarding how to apply points (or multipliers) within a category of Aggravating Factors. For example, the documentation does not address how to assign points or multipliers to someone abused one time versus someone abused 100 times - even the relative weighting of Aggravating Factors across these broad categories is not consistently applied.

Given the lack of formulaic guideposts for quantifying each Aggravating Factor and the fact that certain Aggravating Factors were not specifically addressed by questions in the POC forms, Stout did not calculate a specific multiplier or point assignment for each of the individual Valued ANO Sexual Abuse Claims.

For purposes of preparing an aggregate valuation across *all* Valued ANO Sexual Abuse Claims it is not necessary to know the prevalence of Aggravating Factors for each Valued ANO Sexual Abuse Claim individually. Rather, an assumption is made about the aggregate prevalence of Aggravating Factors relative to the claims in the Comparable Verdicts. Stout's aggregate valuation range appropriately considers the possibility that Aggravating Factors could either be less prevalent or more prevalent among the Valued ANO Sexual Abuse Claims than the claims in the Comparable Verdicts.

For purposes of Stout's analysis, Stout sought to develop both the low end and high end of a reasonable range of aggregate claim value for the Valued ANO Sexual Abuse Claims, characterized as

15

Confidential Subject to Protective Order

Scenario A and Scenario B for purposes of this Report. For purposes of Scenario A, Stout established a range between the average institutional share of compensatory damages of $5,626,923 and the 20th percentile of $1,134,667 for the most severe Abuse Tier.[29] For purposes of Scenario B, Stout established a range between the average institutional share of compensatory damages of $5,626,923 and the 80th percentile of $9,582,807 for the most severe Abuse Tier. Similar ranges were developed for other Abuse Tiers, as shown below in Table 6.

**Table 6: Scenario A and Scenario B Claim Value Ranges**

| Abuse Tier | % Reduction from Penetration | Scenario A | | Scenario B | |
| --- | --- | --- | --- | --- | --- |
| | | 20th Percentile | Mean Expected Verdict Value | Mean Expected Verdict Value | 80th Percentile |
| Penetration | | $ 1,134,667 | $ 5,626,923 | $ 5,626,923 | $ 9,582,807 |
| Oral Sex | *25.0%* | $ 851,000 | $ 4,220,192 | $ 4,220,192 | $ 7,187,105 |
| Masturbation | *50.0%* | $ 567,334 | $ 2,813,461 | $ 2,813,461 | $ 4,791,404 |
| Fondling under Clothing | *75.0%* | $ 283,667 | $ 1,406,731 | $ 1,406,731 | $ 2,395,702 |
| Fondling over Clothing, Kissing, Unwanted Touching | *87.5%* | $ 141,833 | $ 703,365 | $ 703,365 | $ 1,197,851 |
| Nudity/Pornography | *87.5%* | $ 141,833 | $ 703,365 | $ 703,365 | $ 1,197,851 |
| Sex talk, no physical touching | *99.7%* | $ 3,572 | $ 17,714 | $ 17,714 | $ 30,168 |
| Unknown Abuse Tier | *100.0%* | $ - | $ - | $ - | $ - |

As detailed in Exhibit 5, there is a wide range in Aggravating Factors among the Valued ANO Sexual Abuse Claimants that answered questions specific to Aggravating Factors. This suggests that some Valued ANO Sexual Abuse Claimants are more likely to be valued higher than average whereas others are likely to be valued lower than the average. However, since the data available for measuring Aggravating Factors for each claim is incomplete, for purposes of preparing an aggregate valuation across all claims, Stout assumed that the Valued ANO Sexual Abuse Claimants would fall at the midpoint between the low and high end of the respective ranges as shown above in Table 6 and summarized below in Table 7.

---

[29] This is consistent with the BSA TDP, which scales base claim values for a given abuse category (*e.g.*, penetration) using a factor of 4.5 to, reflecting the range of claim severity within a given Abuse Tier. For example, a penetration claim with the most severe allegations based on nature of abuse, abuser profile, and impact of abuse, would have a base claim value 4.5 times higher than a penetration with the least severe allegations based on those same considerations.

16

Confidential Subject to Protective Order

**Table 7: Scenario A and Scenario B Midpoint Claim Value**

| Abuse Tier | % Reduction from Penetration | Scenario A Midpoint Claim Value | Scenario B Midpoint Claim Value |
|---|---|---|---|
| Penetration | | $ 3,380,795 | $ 7,604,865 |
| Oral Sex | 25.0% | $ 2,535,596 | $ 5,703,649 |
| Masturbation | 50.0% | $ 1,690,398 | $ 3,802,432 |
| Fondling under Clothing | 75.0% | $ 845,199 | $ 1,901,216 |
| Fondling over Clothing, Kissing, Unwanted Touching | 87.5% | $ 422,599 | $ 950,608 |
| Nudity/Pornography | 87.5% | $ 422,599 | $ 950,608 |
| Sex talk, no physical touching | 99.7% | $ 10,643 | $ 23,941 |
| Unknown Abuse Tier | 100.0% | $ - | $ - |

The values shown in Table 7 above were then further subject to claim-specific Discount Scaling Factors, as discussed below.

### iv.  Discount Scaling Factors

In the generally-accepted approach to claim valuation, damages are reduced to reflect potential claim weaknesses and/or legal defenses.[30] These discount factors vary from case to case and from claimant to claimant. In addition to the claim weaknesses and/or legal defenses accounted for in the aggregate Aggravating Factor adjustment, for purposes of estimating the Valued ANO Sexual Abuse Claims, Stout applied claim-specific Discount Scaling Factors in each of the following areas:

a.  No Affiliation

b.  Additional Potential Institutional Defendants

c.  Familial Relationship

d.  Missing Information

e.  No or Partial Abuser Identification

f.  Potentially Released Claims

g.  Prior Recoveries from Entities Other Than Archdiocese of New Orleans

h.  BSA Claims

i.  Late Claims

The claim-specific Discount Scaling Factors are discussed in more detail below.

---

[30] Victor, *supra* note 13.

17

Confidential Subject to Protective Order

### a.   No Affiliation Claims

Stout assigned zero value to 69 Valued ANO Sexual Abuse Claims that the Debtor asserts have no affiliation with ANO. Stout relied on the Debtor's Claims Listing for purposes of identifying a comprehensive list of claims that it asserts may not be affiliated with ANO. Per the Debtor's Claims Listing, 69 Valued ANO Sexual Abuse Claims were identified by the Debtor as potentially having no affiliation with ANO. Therefore, Stout applied a 100% discount to these 69 valued ANO Sexual Abuse Claims. Because the Debtor's assertion is not dispositive, discounting all 69 claims by 100% is a conservative approach.

### b.   Additional Potential Institutional Defendants

As discussed at the beginning of Section II of this Report, Stout's methodology is developed to value only ANO's share of potential liability for the Valued ANO Sexual Abuse Claims. As such, Stout sought to assign a discount to Valued ANO Sexual Abuse Claims that may implicate one or more institutional defendant in addition to Protected Parties.

Stout identified claims that may have an additional potential institutional defendant through review of the Debtor's Claims Listing as well as the POC Forms. Across these two sources, 197 claims are associated with a Religious Order[31] or other potential institutional defendant. To the extent there is one or more additional potential institutional defendant associated with a given claim, claim value is assumed to be apportioned pari-passu, on average (e.g., claims with one additional potential institutional defendant are discounted 50%, claims associated with two additional potential institutional defendants 67%, etc.).

### c.   Familial Relationship

To the extent a sexual abuse survivor has a relationship with their abuser outside of the relationship established through the institutional defendant, it is possible that damages awarded against such institutional defendant may be reduced due to apportionment or otherwise. The Comparable Verdicts include cases where the survivor had a relationship with the abuser separate and apart from the connection to the institutional defendant, and therefore, to some extent, the Comparable Verdicts already account for potential reduced liability for the institutional defendant(s) on account of the separate relationship. Five Valued ANO Sexual Abuse Claimants indicated a familial relationship with the abuser. For purposes of Stout's valuation

---

[31] 152 Valued ANO Sexual Abuse Claims are identified as involving a Religious Order and are not included in the No Affiliation category, as discussed in Section II.B.iv.a. An additional 36 Valued ANO Sexual Abuse Claims are identified as involving a Religious Order and are also included in the No Affiliation category; these claims are treated as No Affiliation claims in Section II.B.iv.a above.

18

Confidential Subject to Protective Order

estimate, the Archdiocese's share of potential liability for these Valued ANO Sexual Abuse Claims is reduced to reflect the possibility that ANO may be apportioned a lower share or amount of liability in these instances. Stout applied a 50% discount to five Valued ANO Sexual Abuse Claims, assuming the liability may be apportioned pari-passu, on average.[32]

### d. __Missing Information__

Stout assigned zero value to 21 Valued ANO Sexual Abuse Claims that did not contain a location of abuse, did not contain the date of abuse or their age at the time of abuse, did not provide abuser name(s) or description(s), or did not contain sufficient detail to ascertain the nature of the alleged abuse. I consider this to be a conservative approach.

I understand that POC forms may be supplemented in the future and more claim details may be provided by claimants as part of any potential fund distribution procedures, and as such, the details regarding alleged abuse dates, the nature of the alleged abuse, and other claim or claimant attributes may develop over time. To the extent a missing information ANO Sexual Abuse Claim is amended or supplemented to provide more details, a non-zero value may be warranted for this claim and I reserve the right to supplement or amend Stout's analysis.

### e. __Partial Name or Description only Abuser Identification__

ANO Sexual Abuse Claimants that identified their abuser in the POC form were placed into one of four categories by Stout:

- Full Name Provided;
- Partial Name Provided;
- Description Only Provided; or
- None Given.

All Valued ANO Sexual Abuse Claims fall into one of these four categories. Nine Valued ANO Sexual Abuse Claims did not provide any abuser identifying information and were assigned zero value for purposes of Stout's analysis, as discussed above in Section II.B.iv.d. In the tort system, holders of ANO Sexual Abuse Claims that cannot identify their abuser would likely face additional legal hurdles, however, they may also have the benefit of document discovery and time in order to ascertain their abuser's identity.

---

[32] The value associated with the five Valued ANO Sexual Abuse Claimants that indicated a familial relationship with the abuser is $3,380,795 and $7,604,865 in Scenario A and Scenario B, respectively.

**Confidential Subject to Protective Order**

Stout assumes claimants who provided a partial name would be more likely than not to identify their abuser's identity given the benefit of document discovery and time and, thus, Stout estimates a likelihood of between 50% and 100%, with a midpoint of 75%. As such, a 25% discount has been applied to those claimants. Stout assumes claimants who are not able to provide a full or partial name but provide a description are less likely than not to be able to identify their abuser even with the benefit of document discovery and time and, thus, Stout estimates a likelihood of between 0% and 50%, with a midpoint of 25%. As such these claimants received a 75% discount. Stout applied a 25% discount to 112 Valued ANO Sexual Abuse Claims that provided a partial name and a 75% discount to 75 Valued ANO Sexual Abuse Claims that provided a description only.[33] To the extent that any of these 187 Valued ANO Sexual Abuse Claim is amended or supplemented to provide more details, a non-zero value may be warranted for this claim and I reserve the right to supplement or amend Stout's analysis.

### f.  Potentially Released Claims

Stout assigned zero value to fifteen Valued ANO Sexual Abuse Claims that may have previously given ANO a release for the claim. Stout relied on the Debtor's Claims Listing for purposes of identifying a comprehensive list of potentially released claims. I understand that some of these Valued ANO Sexual Abuse Claimants may or may not agree that their claims were previously released or that such release bars claims for purposes of this chapter 11 case. Five of these fifteen Valued ANO Sexual Abuse Claims indicated on the POC form that they had not previously given ANO a release for their claims.[34] I believe assigning zero value to all fifteen claims to be a conservative approach.

### g.  Prior Recoveries From Entities Other Than Archdiocese of New Orleans

As discussed in Section II of this Report, Stout's methodology is developed to value only ANO's share of potential liability for the Valued ANO Sexual Abuse Claims. As such, Stout analyzed the extent to which survivors received prior payments related to their sexual abuse claims from entities other than ANO.

The POC form asks claimants if they have previously settled any claim related to the sexual abuse described.[35] Twelve Valued ANO Sexual Abuse Claimants indicated that they had received a prior

---

[33] The value associated with the 187 Valued ANO Sexual Abuse Claimants that did not provide a full name of their abuser is $153,245,101 and $344,714,271 in Scenario A and Scenario B, respectively.

[34] Per POC form Part 5 question C: "Regardless of whether a complaint was ever filed against any party because of the sexual abuse, have you settled any claim relating to the sexual abuse you have described in this Sexual Abuse Survivor Proof of Claim?"

[35] *Ibid.*

Confidential Subject to Protective Order

settlement. Of these, ten were also listed in the Debtor's Claims Listing as potentially released and Stout applied a 100% discount to these claims, as discussed above. Of the two remaining Valued ANO Sexual Abuse Claimants, one does not identify the settling party on the POC form. Because this claim was not included in the Debtor's Claims Listing as potentially released, Stout assumed this settlement involved an entity other than ANO. The other POC form identified an entity other than ANO. Therefore, Stout applied a 50% discount to these two Valued ANO Sexual Abuse Claims, consistent with the methodology described in Section II.B.iv.b above.

### h. BSA Claims

Stout considered the impact of ANO's designation as a "Participating Chartered Organization" and "Limited Protected Party" under the Boy Scouts of America ("BSA") Plan,[36] which I understand from Counsel may afford ANO certain protections with respect to abuse claims.[37] In light of these protections, Stout assigned zero value to Valued ANO Sexual Abuse Claims potentially subject to the BSA channeling injunction. While the Debtor identified eleven such claims,[38] Stout assumed for purposes of its analysis thirteen ANO Sexual Abuse Claims were BSA-related based on details in the POC forms, such as allegations of abuse at BSA-sponsored events or by Scout leaders. Accordingly, Stout applied a 100% discount to thirteen Valued ANO Sexual Abuse Claims.

### i. Late Claims

Stout assigned zero value to three Valued ANO Sexual Abuse Claims filed after May 16, 2025 ("Late Claims").[39] Of the 626 Valued ANO Sexual Abuse Claims, three appear to have been received after this date based on the date the POC Form was stamped "Received" for claimants who submitted physical copies of the POC Form, and based on the file date for claimants who filed electronic POC Forms. Stout understands from Counsel that these claims do not necessarily have zero value simply by nature of their status as a Late Claim; therefore, excluding these claims is a conservative approach.

---

[36] Second Amended Joint Chapter 11 Plan of Reorganization for The Roman Catholic Church of The Archdiocese of New Orleans and Additional Debtors, Proposed By The Debtor, The Additional Debtors, and The Official Committee of Unsecured Creditors, Dated as of August 6, 2025.
[37] Debtor's Expedited Motion for Entry of an Order, Pursuant to §§ 105(a) and 363 of the Bankruptcy Code and Bankruptcy Rule 9019, (i) Authorizing the Debtor to "Opt In" to Treatment as a Participating Chartered Organization under the Boy Scouts of America Chapter 11 Plan, Dated as of March 23, 2022.
[38] *See* Second Amended Modified Disclosure Statement for the Second Amended Joint Chapter 11 Plan of Reorganization for The Roman Catholic Church of The Archdiocese of New Orleans and Additional Debtors, Proposed By The Debtor, The Additional Debtors, and The Official Committee of Unsecured Creditors, Dated as of August 6, 2025.
[39] As defined in the Second Amended Joint Chapter 11 Plan of Reorganization for The Roman Catholic Church of The Archdiocese of New Orleans and Additional Debtors, Proposed By The Debtor, The Additional Debtors, and The Official Committee of Unsecured Creditors, Dated as of August 6, 2025.

21

**Confidential Subject to Protective Order**

For the purposes of this Report, Counsel has instructed Stout to assume that no party will object to ANO Sexual Abuse Claims based upon a claim being filed after the claims bar date of March 1, 2021. Stout's valuation was developed with that assumption, which I understand is consistent with the Plan.

Table 8 below summarizes the number of Valued ANO Sexual Abuse Claims that are subject to each of the Discount Scaling Factors described above.

**Table 8: Summary of Discount Scaling Factors**

| Discount Scaling Factor | Discount Applied | Count of Valued ANO Sexual Abuse Claims |
|---|---|---|
| No Affiliation Claims | 100% | 69 |
| Additional Potential Institutional Defendants | pari-passu | 197 |
| Familial Relationship | 50% | 5 |
| Missing Information | 100% | 21 |
| Description Only Abuser Identification | 75% | 75 |
| Partial Name Abuser Identification | 25% | 112 |
| Potentially Released Claims | 100% | 15 |
| Prior Recoveries From Entities Other Than Archdiocese of New Orleans | 50% | 2 |
| BSA Claims | 100% | 13 |
| Late Claims | 100% | 3 |

Valued ANO Sexual Abuse Claims may fall more than one of the Discount Scaling Factor categories shown above and would therefore be counted more than once in Table 8 above. In total, 396 of the 626 Valued ANO Sexual Abuse Claims are subject to one or more claim-specific Discount Scaling Factors. Of these, 110 are subject to a Discount Scaling Factor of 100% and are therefore valued at zero for purposes of the aggregate claim valuation estimate.

### j.  Results

Using the valuation methodology detailed herein, a reasonable range of claim value for ANO Sexual Abuse Claims in the aggregate is between $755.5 million and $1.70 billion. While this Report offers an opinion of the value of the ANO Sexual Abuse Claims in the aggregate and not individually, claim-level detail of this aggregate claim valuation estimate is attached hereto as Exhibit 1. This valuation is intended to capture the estimated share of claim value attributable to the Protected Parties. Table 9 below summarizes the results of the claim valuation estimate.

22

**Confidential Subject to Protective Order**

**Table 9: Claim Valuation Estimate**

| Abuse Tier | Number of Valued ANO Sexual Abuse Claims | Scenario A | | Scenario B | |
|---|---|---|---|---|---|
| | | Aggregate Claim Valuation Estimate | Average Claim Valuation per Valued ANO Sexual Abuse Claim | Aggregate Claim Valuation Estimate | Average Claim Valuation per Valued ANO Sexual Abuse Claim |
| Penetration | 220 | $ 437,238,226 | $ 1,987,446 | $ 983,537,189 | $ 4,470,624 |
| Oral Sex | 106 | $ 174,525,093 | $ 1,646,463 | $ 392,582,143 | $ 3,703,605 |
| Masturbation | 61 | $ 63,389,908 | $ 1,039,179 | $ 142,591,219 | $ 2,337,561 |
| Fondling under Clothing | 110 | $ 55,390,101 | $ 503,546 | $ 124,596,207 | $ 1,132,693 |
| Fondling over Clothing, Kissing, Unwanted Touching | 92 | $ 21,182,794 | $ 230,248 | $ 47,649,232 | $ 517,926 |
| Nudity/Pornography | 13 | $ 3,697,745 | $ 284,442 | $ 8,317,821 | $ 639,832 |
| Sex talk, no physical touching | 5 | $ 53,216 | $ 10,643 | $ 119,706 | $ 23,941 |
| Unknown Abuse Tier | 19 | $ - | $ - | $ - | $ - |
| | 626 | $ 755,477,083 | $ 1,206,832 | $ 1,699,393,517 | $ 2,714,686 |

As discussed below, the Comparable Settlements provide a framework to assess the reasonableness of the estimated valuation range.

### C. Comparison of Claim Valuation Estimate to Comparable Settlements

Historical settlements can be informative benchmarks in determining the value of sexual abuse claims to the extent one can control for variables suspected to impact claim value, such as the statute of limitations, and isolate like-claims that were resolved via arms-length negotiations between the parties and in the absence of externalities, such as insolvency risk, that may influence settlement outcomes.

In order to assess the overall reasonableness of the valuation, the results were compared to amounts paid by other religious institutions in comparable matters in the tort system ("Comparable Settlements"). For purposes of this comparison, Comparable Settlements are all settlements known to Stout as of the date of this Report since January 2013 that meet the following parameters:

- Involved allegations of sexual abuse;

- Survivor(s) experienced sexual abuse as children;

- Alleged perpetrator was affiliated with a religious institution;

- Exclude sexual abuse claims resolved in bankruptcy;[40]

- Exclude sexual abuse claims resolved as part of a class action;[41] and

- Exclude sexual abuse claims resolved as part of a victims' compensation program (or similar program).[42]

---

[40] Settlements reached in a bankruptcy setting are not appropriate benchmarks for purposes of valuing sexual abuse claims because, among other potential reasons: (i) they are, by definition, reflective of the Debtor's ability to pay; (ii) the availability and amount of insurance coverage varies from Debtor-to-Debtor; and (iii) the presence of solvent released parties that may be liable for some share of the sexual abuse claims varies from case-to-case and may impact available assets for resolution.

[41] To date, Stout is not aware of any class action settlements that solely resolved claims of childhood sex abuse.

[42] Settlements reached as part of a victims' compensation program (or similar program) are not appropriate benchmarks for purposes of valuing sexual abuse claims because; (i) compensation programs, by design, only include settlements in which the claimant was willing to accept an offer made within the program and therefore exclude settlements where a sexual abuse claimant

23

Confidential Subject to Protective Order

A list of the Comparable Settlements is in <u>Exhibit 7</u>.

In addition to the above-listed parameters, Stout focused on settlements that resolved claims that largely fell within the statute of limitations.[43] Whether a statute of limitations defense is available to a defendant is a key driver of the value of sexual abuse claims in a civil action. As a statute of limitations defense creates potentially significant risk that a sexual abuse claimant may recover nothing for their sexual abuse claim, if a defendant were to prevail on such defense, the statute of limitations is often a central valuation issue with respect to sexual abuse claims against an institutional defendant. This is consistent with the concept that verdicts drive settlements. In other words, the increased likelihood that a defendant may prevail—resulting in $0 recovery to the plaintiff—drives down settlement value, all other factors being consistent.[44] Differences in claim value based on the applicability of statute of limitations defenses are evidenced in the bankruptcy system[45] and the tort system. I understand from Counsel that the claims at issue in this Chapter 11 case generally fall within the statute of limitations revival period established by Louisiana legislation enacted in 2021, which temporarily eliminated the civil statute of limitations for childhood sexual abuse survivors (the "Louisiana Revival Window"), and are therefore not subject to related claim defenses. This legislation created a three-year window (June 14, 2021 to June 14, 2024) for survivors to initiate legal claims, regardless of when the abuse occurred (the "Louisiana Revival Window").[46] This window was subsequently extended through June 14, 2027.[47]

To observe the impact that the statute of limitations can have on the value of childhood sexual abuse claims, one can compare the average value of Comparable Settlements in the tort system that resolved claims that fell within the statute of limitations versus the average settlement in Comparable Settlements that resolved claims falling outside of the statute of limitations.

---

thought the offer would undervalue their claim and chose not to participate in the voluntary program; (ii) diocesan victims' compensation programs typically include caps on the amount that may be paid to a claimant, typically dependent upon the nature of the abuse, creating a false maximum for payments under the program; and (iii) settlements reached within a compensation program are not a product of an arms-length negotiation between two parties.

[43] Per Counsel's instruction, Statute of Limitation designations are based on two CHILD USA reports: (i) Alice Nasar Hanan, Esq., *Revival Laws for Child Sex Abuse*, CHILD USA (2024); (ii) Marci A. Hamilton, Esq., et al., *History of Child Sex Abuse Statutes of Limitation Reform in the United States 2002 to 2021*, CHILD USA (2022).

[44] Alan E. Friedman, *An Analysis of Settlement*, 22 Stan. L. Rev. 67 (1969); Heather Heavin & Michaela Keet, *A Spectrum of Tools to Support Litigation Risk Assessment: Promise and Limitations*, 15 Can. J.L. & Tech 265 (2017); Marc B. Victor, *Decision Tree Analysis: A Means of Reducing Litigation Uncertainty and Facilitating Good Settlements*, 31 Ga. St. U. L. Rev. 715 (2015).

[45] For example, under the Trust Distribution Procedures set forth in the *Third Modified Fifth Amended Chapter 11 Plan of Reorganization for Boy Scouts of America and Delaware BSA, LLC*, claims are subject to varying Mitigating Scaling Factors depending on the timeliness of their filing. In particular, claims deemed to be time-barred may have their payment awards substantially reduced as a result of the application of these Mitigating Scaling Factors. *See* Third Modified Fifth Am. Chapter 11 Plan of Reorganization (With Technical Modifications) for Boy Scouts of America and Delaware BSA, LLC at ¶ D(iv), *In re Boy Scouts of America and Delaware BSA, LLC*, Case No. 20-10343-LLS (Bankr. D. Del. Sept. 6, 2022), Dkt. No. 10296, Ex. A.

[46] *Supra* note 38.

[47] *Ibid.*

24

Confidential Subject to Protective Order

A summary of the inflation-adjusted[48] Comparable Settlements and their statute of limitations status is presented below in Table 10:

**Table 10: Average Settlement Value in Comparable Settlements by Statute of Limitations Status 2013+**

| | Comparable Settlements | | | | | | |
|---|---|---|---|---|---|---|---|
| | Number of Settlements | | | Settlement Average (Inflation-Adjusted) | | | |
| Time Period | Within SOL | Outside SOL | Total | Within SOL | Outside SOL | Multiple | Total |
| **2013 - 2025** | 33 | 26 | 59 | $2,376,936 | $1,053,148 | 2.3 | $1,793,572 |

Based on this analysis of Comparable Settlements, a 2.3x[49] settlement value multiple is observed on average for claims falling within the statute of limitations ($2.4 million per claim, on average) as compared to those falling outside ($1.1 million per claim, on average). This is illustrative of the point that the statute of limitations defense is a key driver of sexual abuse claim value in the tort system as sexual abuse claims settled outside the statute of limitations are, on average, settled at a discount relative to sexual abuse claims settled within the statute of limitations. It would be inappropriate to directly compare settlement payments to survivors that are not subject to statute of limitations claim defenses to those that potentially were.

Because I understand from Counsel that the childhood sexual abuse claims at issue in this Chapter 11 case are not subject to statute of limitations defenses and because this claim defense is a key driver of claim value in tort system settlements, the Comparable Settlements that may have been subject to claim defenses related to the statute of limitations are not appropriate benchmarks for claim value for the ANO Sexual Abuse Claims. Chart 2 below summarizes the Comparable Settlements that largely resolved clams falling within the statute of limitations.

---

[48] Inflation-Adjusted Comparable Verdict Values based on U.S Bureau of Labor Statistics Consumer Price Index ("CPI") inflation data as of April 30, 2025 (All US City Average). *See* New Eng. Info. Off., *Consumer Price Index US City Average (1982-84 = 100)*, U.S. Bureau of Lab. Stats., https://www.bls.gov/regions/new-england/data/consumerpriceindex_us_table.htm (last visited August 13, 2025) [hereinafter CPI US City Average Data].

[49] I understand that jurisdictional differences mean that the strength of a statute of limitations defense may vary, particularly based on the facts and allegations of a particular claim. As a result, there is no one-size-fits-all discount related to the statute of limitations defense.

25

Confidential Subject to Protective Order

**Chart 2: Comparable Settlements**



These datapoints reflect agreed-upon amounts in settlement of childhood sexual abuse claims between the religious institution and the sexual abuse survivors. Consistent with the valuation methodology detailed in Section II.B herein, the settling parties would have considered both the potential outcomes at trial (i.e., potential damages) and the likelihood of such outcomes (i.e., likelihood of liability) when reaching these negotiated settlement amounts.

On average, these settling parties valued these claims on the higher end of Stout's valuation range. As shown in Table 11 below, the claim valuation estimate is consistent with settlements in other Comparable Settlements.

**Table 11: Valuation of Valued ANO Sexual Abuse Claims vs. Comparable Settlements**

| Potentially Comparable Settlements Within SOL | | | ANO Claim Valuation Average Claim Value | |
| --- | --- | --- | --- | --- |
| Time Period | Number of Settlements | Settlement Average (Inflation-Adjusted) | Scenario A | Scenario B |
| 2013 - 2025 | 33 | $2,376,936 | $1,206,832 | $2,714,686 |

As shown above, the analysis of Comparable Settlements reinforces the reasonableness of the valuation estimate.

26

Confidential Subject to Protective Order

### III.   PREVIOUSLY RESOLVED ANO SEXUAL ABUSE CLAIMS

To date, Stout is aware of 139 settlements entered into between ANO and survivors of childhood sexual abuse. A list of the prior ANO settlements with sexual abuse survivors ("Prior ANO Abuse Settlements") is in Exhibit 8. Of the 139 settlements, 132 had non-redacted settlement amounts. The Debtor paid at least $12,079,136[50] to these 132 claimants. Among the Prior ANO Abuse Settlements with non-redacted settlement amounts, the average settlement per survivor is $91,509, or $121,247 an inflation-adjusted basis.[51] Chart 3 below shows the distribution of these prior ANO settlements with childhood sexual abuse survivors.

**Chart 3: Prior ANO Settlements with Sexual Abuse Survivors**



As discussed in Section II.C above, historical settlements can be informative benchmarks in determining the value of sexual abuse claims to the extent one can control for variables suspected to impact claim value. However, the historical settlements entered into between the Archdiocese and survivors of childhood sexual abuse are not reliable indicators of the value of the ANO Sexual Abuse Claims pending in this chapter 11 case for at least two reasons:

---

[50] Seven settlement amounts were redacted and therefore are not included in this total.

[51] Inflation-adjusted settlement amounts are based on U.S Bureau of Labor Statistics Consumer Price Index ("CPI") inflation data as of April 30, 2025 (All US City Average). *See* Consumer Price Index US City Average (1982-84 = 100), U.S. Bureau of Lab. Stat., https://www.bls.gov/regions/new-england/data/consumerpriceindex_us_table.htm (last visited August 13, 2025).

**Confidential Subject to Protective Order**

- <u>Statute of Limitations</u>: Unlike the claims pending in this chapter 11 case, the Prior ANO Abuse Settlements likely resolved claims that were subject to statute of limitations claim defenses; and

- <u>Claim Value Trends</u>: Because the application of monetary inflation to claim settlement values does not fully capture the notable upward trends in sexual abuse claim value and related social inflation over recent years, the inflation-adjusted settlement average among the Prior ANO Abuse Settlements would likely underestimate what similar claims would resolve for in today's environment, all other factors being consistent.

Statute of limitations and claim value trend considerations are discussed in more detail below.

## A. <u>Difference in Statute of Limitations Claim Defenses</u>

Based on my experience, instructions from Counsel, and review of the underlying settlement documentation, it is likely that certain claims resolved prior to the Louisiana Revival Window would have been subject to statute of limitations defenses.

These settlements, all resolved between 1993 and 2020,[52] predate the Louisiana Revival Window. I understand from Counsel that prior to 2021, Louisiana law required survivors of childhood sexual abuse to file civil claims by their 28th birthday, or within ten years of discovering the injury, whichever occurred later.[53] Stout reviewed 139 settlement agreements and extracted attributes relevant to assessing each claim's status with respect to the statute of limitations. Of these 139 settlements, 132 had non-redacted settlement amounts. These settlements ranged from $5,000 (or $7,228 inflation-adjusted) to $1.5 million (or $1.9 million inflation-adjusted). Of the 139 settlements, 120 had non-redacted date of birth and settlement date information. All but one of these claims appear to have been settled after the claimant's 28th birthday and therefore may have been subject to statute of limitations claim defenses. Although one $10,000 settlement in 2019 related to a claim that may have been made prior to the expiration of the statute of limitations, the agreement provides no detail on the severity of the allegations or other factors that may have influenced the settlement.

As discussed in detail in Section II.C herein, claims subject to statute of limitations claim defenses have a lower valuation profile than those that are not, all other factors being consistent. Because the childhood sexual abuse claims at issue in this Chapter 11 case are not subject to statute of limitations

---

[52] Four of the settlement agreements were redacted such that the settlement date was not visible.

[53] *See* CHILD USA, *Louisiana Governor Signs H.B. 492 Opening Revival Window for Child Sex Abuse Survivors* (June 15, 2021), https://childusa.org/wp-content/uploads/2021/06/LA-HB-492-Signage-PR-2021-06-15-Final-Edits.pdf.

Confidential Subject to Protective Order

defenses and because this claim defense is a key driver of claim value, these ANO settlements with sexual abuse survivors are not appropriate benchmarks for claim value for the ANO Sexual Abuse Claims.

As discussed below, the dated nature of these settlements creates an additional hurdle for their usability in this context.

### B. Claim Value Trends

The Prior ANO Abuse Settlements also do not all reflect the shift in societal attitudes and increased value placed on childhood sexual abuse claims since the time period during which most of these settlements were reached. This is known as the manifestation of "social inflation," a term coined largely by the insurance industry to describe increased claim values over time for reasons other than economic factors.[54] These reasons include, in part, jurors' changing attitudes towards institutions, large jury awards, and a generally more plaintiff-friendly environment.[55] In addition to being studied and quantified within the insurance industry, it is observable specifically among the Verdict Sample depicted in Chart 1 in Section II.B.i of the Report

Because the application of monetary inflation to claim settlement values does not fully capture the notable upward trends in sexual abuse claim value and social inflation over recent years, the inflation-adjusted settlement average among the Prior ANO Abuse Settlements would likely underestimate what similar claims would resolve for in today's environment, even if all other attributes (such as statute of limitations claim defenses) were held constant.

For at least these two reasons (statute of limitations differences and claim value trends), the Prior ANO Abuse Settlements are not reliable benchmarks for the ANO Sexual Abuse Claims pending in this chapter 11 case.

---

[54] *See* Swiss Re Institute, *Social Inflation and Liability Claims Trends 2024*, Swiss Re Management Ltd. (Apr. 2024); Cary Silverman & Christopher E. Appel, *Nuclear Verdicts: An Update on Trends, Causes, and Solutions*, U.S. Chamber Institute for Legal Reform (May 30, 2024), https://instituteforlegalreform.com/wp-content/uploads/2024/05/ILR-May-2024-Nuclear-Verdicts-Study.pdf; Scott M. Seaman, *The Ultimate Social Inflation Survival Guide: Containing Rising Claims Costs in a World Rife with Economic Inflation, Litigation Funding, Nuclear Verdicts, and Anti-Corporate Sentiment*, Hinshaw & Culberson LLP (2025); Social Inflation: *The Growth of Nuclear Verdicts*, Arthur J. Gallagher & Co. (Jan. 2025), https://www.ajg.com/news-and-insights/features/social-inflation-the-growth-of-nuclear-verdicts/.

[55] *Ibid.*

29

**Confidential Subject to Protective Order**

## IV.     <u>CONCLUSION</u>

A comparison of the aggregate claim valuation estimate for the Valued ANO Sexual Abuse claims to Comparable Verdicts and Comparable Settlements is shown in Table 12 below.

**<u>Table 12: Claim Valuation Estimate vs. Comparable Verdicts and Comparable Settlements</u>**

|  | Claim Average |
|---|---|
| **Comparable Verdicts:** | |
| Average - Excluding Statistical Outlier | $ 12,913,983 |
| Average - Excluding Statistical Outlier and Non-Institutional Share of Damages | $ 10,432,825 |
| Average - Excluding Statistical Outlier, Non-Institutional Share of Damages and Two Large Verdicts | $ 8,304,801 |
| Average - Excluding Statistical Outlier, Non-Institutional Share of Damages, Two Large Verdicts and Punitive/Other Damages | $ 4,974,785 |
| **Comparable Settlements:** | |
| Average - Within Statute of Limitations | $ 2,376,936 |
| Average - Outside Statute of Limitations | $ 1,053,148 |
| **ANO Sexual Abuse Claims - Aggregate Claim Valuation Estimate:** | **$1,206,832 - $2,714,686** |

As previously discussed, this claim valuation estimate is intended to provide a reasonable range of value for the ANO Sexual Abuse Claims in the aggregate and not for any one claim individually. In addition, the aggregate value of the ANO Sexual Abuse Claims may be influenced upward or downward by various factors; however, the range provided is intended to capture the net impact such factors in each direction. The aggregate claim valuation estimate presented herein is conservative in the following respects:

- The verdict statistics used for purposes of the claim valuation estimate exclude punitive damages;

- The verdict statistics used for purposes of the claim valuation estimate exclude pre- and post-judgment interest;

- A verdict sample dating back to 2013 may not fully capture more recent claim value trends resulting in higher average verdicts;

- Stout did not value certain claim categories, such as Adult ANO Sexual Abuse Claims, Minor Abuser ANO Sexual Abuse Claims, and ANO Non-Sexual Abuse Claims;

- Stout applied a 100% discount to ANO Sexual Abuse Claims that did not contain a location of abuse, did not contain the date of abuse or their age at the time of abuse, did not provide abuser name(s) or description(s), or did not contain sufficient detail to ascertain the nature of the alleged abuse;

30

**Confidential Subject to Protective Order**

- Stout applied a 100% discount to ANO Sexual Abuse Claims that the Debtor asserts have no affiliation to the Debtor.

A reasonable range of claim value for the Valued ANO Sexual Abuse Claims is $755.5 million to $1.70 billion. This claim valuation estimate was developed using a generally-accepted approach to claim valuation and its reasonableness is supported by amounts paid by other religious institutions in comparable matters in the tort system.

## V.    DATA AND DOCUMENTS CONSIDERED

A full list of the data and documents Stout considered for the purposes of this Report is attached hereto as Exhibit 9, and includes the following categories:

- POCs for sexual abuse claims filed in this Chapter 11 case and related Complaints;
- Debtor's Claims Listing
- Prior settlement documents produced by the Debtor;
- Studies, reports, and articles;
- Second Amended Joint Chapter 11 Plan of Reorganization for The Roman Catholic Church of The Archdiocese of New Orleans and Additional Debtors, Proposed By The Debtor, The Additional Debtors, and The Official Committee of Unsecured Creditors, Dated as of August 6, 2025;
- Second Amended Modified Disclosure Statement for the Second Amended Joint Chapter 11 Plan of Reorganization for The Roman Catholic Church of The Archdiocese of New Orleans and Additional Debtors, Proposed By The Debtor, The Additional Debtors, and The Official Committee of Unsecured Creditors, Dated as of August 6, 2025;
- Various sexual abuse claim Allocation Protocols and Trust Distribution Procedures in this and other matters;
- Publicly available information on comparable cases; and
- Other materials as identified in Exhibit 9.


## VI.    EMPLOYMENT AND PROFESSIONAL QUALIFICATIONS

I am qualified to render the opinions expressed herein based on my education, training, knowledge, and experience in the fields of economic damages quantification and statistical analysis.

31

Confidential Subject to Protective Order

I am a Managing Director in the Disputes, Claims and Investigations group at Stout Risius Ross, LLC, supporting clients on complex business disputes and litigation. Stout's team of CPAs, MBAs, and finance professionals has deep experience assisting clients with data analyses and damages calculations in complex litigation. Our expertise includes claims quantification, damages quantification, claims estimation, and insurance policy allocation services over a wide range of situations, including expert testimony.

I earned a BS in Finance from Miami University in 2004 and an MBA from the University of Chicago Booth School of Business in 2009. I am currently a Managing Director at Stout, where I have been employed since September 2022 when Stout acquired my prior employer, The Claro Group, LLC, where I had been employed since its inception in September 2005. My entire career has been focused on financial consulting services, specializing in providing complex claims consulting. I have also served as an Adjunct Lecturer of Statistics and Economics at Northwestern University. My resume is attached hereto as Exhibit 10.

Over the course of my career, I have assisted over one hundred clients on a wide range of issues. I previously have been retained as an expert witness as well as in an expert consulting capacity. The underlying matters have included numerous sexual misconduct cases, high-profile class action cases, damages quantification under the False Claims Act, environmental contribution and recovery matters under CERCLA, insurance recovery matters, and creditor-debtor disputes, among others. I have extensive experience in the valuation of sexual abuse claims and the allocation of related liabilities to insurance coverage. I have provided these services in connection with several of the largest and highest-profile matters in recent history, including Michigan State University/Nassar, University of Southern California/Tyndall, and the Boy Scouts of America Chapter 11 cases. I have also been retained on behalf of the creditor committees in a number of diocesan Chapter 11 cases. My role and services provided varies, but typically involves the valuation or quantification of damages or amounts in dispute, requiring data analysis, expenditure review and quantification, statistical modeling, and/or allocation of damages among insurance policies (where applicable). While each matter has its own facts, the analyses I performed for purposes of this Report relied upon standard procedures and methodologies typically relied upon in a valuation context. I have attended several conferences focusing on sexual abuse claims and other mass tort claims and have presented at multiple events on the topic of sexual abuse claim valuation.

During the previous four years, I have provided deposition testimony in the Boy Scouts of America Chapter 11 proceeding, deposition testimony in the matter Tisha Hilario v. Allstate Insurance Company, deposition and Confirmation Hearing testimony in the Chapter 11 proceeding of The Diocese of Camden,

32

Confidential Subject to Protective Order

New Jersey, deposition and trial testimony in an Adversary Proceeding in the Chapter 11 proceeding of The Diocese of Rochester, New York.

Stout's employment in the ANO's Chapter 11 case has been approved by the Bankruptcy Court, by order entered May 19, 2022 [Docket. No. 1555], and Stout's compensation will be in accordance with the Court's order. I am being compensated for my time on this matter at a billing rate of $635 per hour. The compensation is in no way contingent or based on the content of my opinions or the outcomes of this matter. I am independent from the parties and their legal advisors.

This Report is intended to make clear which of the facts and matters are within my own knowledge and which are not. I believe that the facts stated herein are true insofar as they are within my own knowledge and the opinions and findings expressed herein represent my true and complete professional opinion. The analyses and findings contained herein are subject to change as more data, documents, or other information become available and I reserve the right to supplement or amend Stout's analysis.

By

Katheryn R. McNally

Managing Director

Stout Risius Ross

Signed: _____

Dated: 9/4/2025 _____

Roman Catholic Archdiocese of New Orleans
Exhibit 1
Claim Valuation

CONFIDENTIAL PURSUANT TO PROTECTIVE ORDER

Roman Catholic Archdiocese of New Orleans
Exhibit 1
Claim Valuation

CONFIDENTIAL PURSUANT TO PROTECTIVE ORDER

| Claim ID | Count of POC Forms | Excluded from Valuation | | | | Nature of Abuse: Allegation Tier | Midpoint Claim Value After Adjustment for Aggravating Factors (Scenario A) | Midpoint Claim Value After Adjustment for Aggravating Factors (Scenario B) | No Affiliation Claims | | Additional Potential Institutional Defendants | | | Familial Relationship | | Missing Information | | Partial Name or Description Only Abuser Identification | | Potentially Released Claims | | Prior Recoveries from Entities Other Than ANO | | RSA Claims | | Late Claims | | Overall Discount Scaling Factor | Claim Valuation Net of Discounts (Scenario A) | Claim Valuation Net of Discounts (Scenario B) |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | Withdrawn Claims | Adult Claim | Minor Abuser Claim | Non-Sexual Abuse Claim | | | | No Affiliation Claim | Discount Factor | Religious Order Claims or Identified by the Debtor | Additional Potential Institutional Defendants Identified by Stout | Total Additional Potential Defendants | Discount Factor | Familial Relationship | Discount Factor | Missing Information | Discount Factor | Abuser Identification | Discount Factor | Potentially Released Claim | Discount Factor | Prior Recoveries from Entities Other Than ANO | Discount Factor | RSA Claim | Discount Factor | Late Claim | Discount Factor | | | |

Roman Catholic Archdiocese of New Orleans
Exhibit 1
Claim Valuation

| | | Excluded from Valuation | | | | | No Affiliation Claims | | Additional Potential Institutional Defendants | | | Familial Relationship | | Missing Information | | Partial Name or Description Only Abuser Identification | | Potentially Released Claims | | Prior Recoveries from Entities Other Than ANO | | RSA Claims | | Late Claims | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|

Roman Catholic Archdiocese of New Orleans
Exhibit 1
Claim Valuation

CONFIDENTIAL PURSUANT TO PROTECTIVE ORDER

| Claim ID | Count of POC Forms | Excluded from Valuation | | | | Nature of Abuse: Allegation Tier | Midpoint Claim Value After Adjustment for Aggravating Factors (Scenario A) | Midpoint Claim Value After Adjustment for Aggravating Factors (Scenario B) | No Affiliation Claims | | Additional Potential Institutional Defendants | | | Familial Relationship | | Missing Information | | Partial Name or Description Only Abuser Identification | | Potentially Released Claims | | Prior Recoveries from Entities Other Than ANO | | RSA Claims | | Late Claims | | Overall Discount Scaling Factor | Claim Valuation Net of Discounts (Scenario A) | Claim Valuation Net of Discounts (Scenario B) |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | Withdrawn Claims | Adult Claim | Minor Abuser Claim | Non-Sexual Abuse Claim | | | | No Affiliation Claim | Discount Factor | Religious Order Claims or Identified by the Debtor | Additional Potential Institutional Defendants Identified by Stout | Total Additional Potential Defendants | Discount Factor | Familial Relationship | Discount Factor | Missing Information | Discount Factor | Abuser Identification | Discount Factor | Potentially Released Claim | Discount Factor | Prior Recoveries from Entities Other Than ANO | Discount Factor | RSA Claim | Discount Factor | Late Claim | Discount Factor | | | |

CONFIDENTIAL PURSUANT TO PROTECTIVE ORDER

Roman Catholic Archdiocese of New Orleans
Exhibit 1
Claim Valuation
CONFIDENTIAL PURSUANT TO PROTECTIVE ORDER

Roman Catholic Archdiocese of New Orleans
Exhibit 2
Verdict Sample

CONFIDENTIAL PURSUANT TO PROTECTIVE ORDER

| Ref. No. | Case Name | Date | State | Number of Claimants | Verdict Total | Verdict Average per Plaintiff | Inflation Factor | Inflation-Adjusted Verdict Avg per Plaintiff | Excluded from Verdict Sample | Westlaw | VerdictSearch | Lexis | Bloomberg Law |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 | Kavanaugh, Pro Ami v. Archdiocese of San Francisco | 3/31/2005 | CA | 1 | $437,000 | $437,000 | 1.660 | $725,232 | | X | | | |
| 2 | Simons, Pro Ami v. Roman Catholic Diocese of Oakland | 4/30/2005 | CA | 1 | $180,000 | $180,000 | 1.648 | $296,727 | | X | | | |
| 3 | Simons, Pro Ami v. Roman Catholic Diocese of Oakland | 4/30/2005 | CA | 1 | $24,000,000 | $24,000,000 | 1.648 | $39,563,618 | | X | | | |
| 4 | Bob Thatcher v. Roman Catholic Bishop of Oakland, a corporation sole; John Doe v. Roman Catholic Bishop of Oakland, a corporation sole | 4/13/2005 | CA | 2 | $1,930,000 | $965,000 | 1.648 | $1,590,787 | | | X | X | X |
| 5 | John Salberg, Kenneth Archambault, Jane Doe and John Doe v. the San Francisco Archdiocese | 4/20/2005 | CA | 4 | $5,780,000 | $1,445,000 | 1.648 | $2,382,059 | | | X | X | X |
| 6 | Jane Doe 1, Individually and on Behalf of Jane Doe 2, a Minor Child v. The Bethlehem Foundation and Xavier Monte Williams | 8/12/2005 | TX | 1 | $560,000 | $560,000 | 1.633 | $914,690 | | X | X | X | X |
| 7 | Michl Uhde vs. Diocese of Davenport | 9/18/2006 | IA | 1 | $1,536,800 | $1,536,800 | 1.581 | $2,429,757 | | X | X | X | X |
| 8 | Deutsch/Mohr-McDermott v. Masonic Home for Children | 10/6/2006 | CA | 2 | $3,531,200 | $1,765,600 | 1.590 | $2,806,718 | | X | X | X | X |
| 9 | "Jane Doe" and "John Roe" v. Matthew Maiello Youth Minister, Rev. Thomas Haggerty, St. Raphael R.C. Church, Bishop Wiliaim Murphy, R.C. Diocese of Rockville Centre | 5/18/2007 | NY | 2 | $11,450,000 | $5,725,000 | 1.543 | $8,831,739 | | X | X | X | X |
| 10 | Branum v. Overton County School Board; et al | 7/17/2007 | TN | 32 | $1,280,000 | $40,000 | 1.540 | $61,603 | | X | | | |
| 11 | Carol Lynne Maner v. Fayette County Board of Education | 7/19/2007 | KY | 1 | $3,700,000 | $3,700,000 | 1.540 | $5,698,258 | | | X | X | |
| 12 | Three Minor Males v. Masonic Homes of California Inc., Grand Lodge of Free and Accepted Masons, | 7/24/2007 | CA | 3 | $12,564,600 | $4,188,200 | 1.540 | $6,450,120 | | X | X | X | X |
| 13 | James Wisniewski v. Catholic Diocese of Belleville | 8/27/2008 | IL | 1 | $5,000,000 | $5,000,000 | 1.464 | $7,321,212 | | X | X | X | X |
| 14 | Marianne V., Katharina C., and Diana C. v. Los Angeles Unified School District | 10/21/2008 | CA | 3 | $1,617,620 | $539,207 | 1.481 | $798,691 | | X | X | X | X |
| 15 | David Navari vs. The Diocese of Burlington VT | 12/17/2008 | VT | 1 | $3,592,500 | $3,592,500 | 1.526 | $5,481,934 | | X | X | X | X |
| 16 | Hollingsworth v. City of New York; Johnson; Nelson | 2/9/2010 | NY | 1 | $915,000 | $915,000 | 1.480 | $1,354,277 | | X | | | |
| 17 | Kerry Lewis v. Corporation of the Presiding Bishop of the Church of Jesus Christ of Latter-Day Saints, a foreign corporation sole registered to do business in the State of Oregon; Corporation of the President of the Church of Jesus Christ of Latter-Day Saints and Successors, a foreign corporation sole registered to do business in the State of Oregon; The Boy Scouts of America, a congressionally chartered corporation, authorized to do business in Oregon; and Cascade Pacific Council, Boy Scouts of America, an Oregon non-profit corporation | 4/23/2010 | OR | 1 | $19,900,000 | $19,900,000 | 1.471 | $29,282,371 | | X | X | X | X |
| 18 | C.E., K.B., A.S., R.B., T.A, G.G., R.A., M.K. and A.T. v. Robert Sperlik, Karen Grindle, and South Berwyn School District 100 | 7/6/2010 | IL | 9 | $3,550,000 | $394,444 | 1.471 | $580,410 | | | X | X | X |
| 19 | John M. Vai v. Francis DeLuca and St Elizabeth Roman Catholic Parish | 12/8/2010 | DE | 1 | $60,000,000 | $60,000,000 | 1.464 | $87,817,264 | | | X | X | X |
| 20 | Valerie Geloms, as Maternal Aunt, Temporary Custodian, and Next Friend of D.M.L.T., a Minor Child vs. Calvary Chapel Church, Inc., D/B/A Calvary Christian Academy; Calvary Chapel of Fort Lauderdale, Inc.; and Rodger Allen Thoman | 1/28/2011 | FL | 1 | $360,000 | $360,000 | 1.457 | $524,406 | | X | | X | |
| 21 | Plaintiff, Pro Ami v. Defilippo; Superior Ambulance | 5/11/2011 | MI | 1 | $12,500,000 | $12,500,000 | 1.420 | $17,749,884 | | | X | X | |
| 22 | Tim Doe v. St. Francis Hospital and Medical Center; | 7/1/2011 | CT | 1 | $2,750,000 | $2,750,000 | 1.420 | $3,904,827 | | | X | X | |
| 23 | Jane Doe, Individually and as Parent and Legal Guardian of Jane Doe, a Minor v. Project Patch, an Oregon General Nonprofit Corporation; Ryan Vanhook, an Individual; and Denise Tank, an Individual | 8/22/2011 | ID | 1 | $2,300,000 | $2,300,000 | 1.416 | $3,256,874 | | X | | X | |
| 24 | John Doe, Jane Doe and Jane Doe II v. The Episcopal School of Dallas Inc. | 9/21/2011 | TX | 1 | $7,125,000 | $7,125,000 | 1.414 | $10,073,932 | | | X | X | |
| 25 | Lance McCoy v. Bryant Newmsis, Freddie Henricks Track Club and Amateur Athletic Union, | 10/19/2011 | MD | 1 | $2,400,000 | $2,400,000 | 1.417 | $3,400,338 | | X | X | X | |
| 26 | Plaintiff, Pro Ami v. The Hartford Roman Catholic Diocesan Corporation | 2/10/2012 | CT | 1 | $1,000,000 | $1,000,000 | 1.409 | $1,409,078 | | | X | X | |
| 27 | Confidential vs. Mehrdadi | 3/20/2012 | CA | 2 | $4,025,000 | $2,012,500 | 1.398 | $5,628,844 | | X | X | X | |
| 28 | Confidential vs. Carlsbad Unified School District | 6/18/2012 | CA | 2 | $4,500,000 | $2,250,000 | 1.398 | $3,145,351 | | X | X | X | X |
| 29 | E.H. vs. Chino Valley Unified School District | 6/25/2012 | CA | 1 | $5,590,000 | $5,590,000 | 1.398 | $7,814,449 | | X | X | X | X |
| 30 | Confidential vs. Watchtower Bible and Tract Society of New York Inc. | 6/27/2012 | CA | 1 | $28,000,001 | $28,000,001 | 1.398 | $39,142,141 | | X | X | X | X |
| 31 | S.O. v. Oblate Fathers Western Province Inc. | 7/5/2012 | WA | 1 | $8,000,000 | $8,000,000 | 1.400 | $11,201,725 | | X | X | X | X |
| 32 | Eckert v. Rivenburg | 7/13/2012 | IN | 1 | $200,000 | $200,000 | 1.400 | $280,043 | | X | | | |
| 33 | Menzies vs. Los Angeles Unified School District | 9/10/2012 | CA | 1 | $200,000 | $200,000 | 1.386 | $277,256 | | X | | | |
| 34 | Abbigail Guiterrez, Individually and as Guardian For N.L., a Minor v. Olympia School District | 9/10/2012 | WA | 1 | $1,425,000 | $1,425,000 | 1.386 | $1,975,450 | | X | | X | |
| 35 | J.D. v. Catholic Diocese of Green Bay Inc. | 11/1/2012 | WI | 1 | $400,000 | $400,000 | 1.393 | $557,369 | | X | | X | |
| 36 | Confidential v. Los Angeles Unified School District of Del., | 1/8/2013 | CA | 1 | $23,000,000 | $23,000,000 | 1.393 | $32,040,494 | | X | X | X | X |
| 37 | Adam Doe, Brian Doe and Cole Doe v. Capital Area Council of the Boy Scouts of America | 3/8/2013 | TX | 3 | $1,500,000 | $500,000 | 1.378 | $689,073 | | | X | X | X |
| 38 | Simpkins v. Grace Brethren Church of Del., | 6/17/2013 | OH | 1 | $3,660,000 | $3,660,000 | 1.374 | $4,945,791 | | | X | | |
| 39 | Doe v. G.K.'s Gym Inc. d/b/a GK Gymnastics | 10/24/2013 | CO | 1 | $295,000 | $295,000 | 1.374 | $405,207 | | X | | | |
| 40 | Jane Doe, a minor, by and through her Guardian ad Litem, Karen Doe v. Child Development, Inc., Trace Child Development Center, Keith Edward Woodhouse, and Does 1-25, | 12/18/2013 | CA | 1 | $1,061,500 | $353,833 | 1.377 | $487,056 | | | X | X | X |
| 41 | C.E., a Minor by and through his Natural Guardian S.E., vs. Florida Baptist Convention, Inc. | 1/18/2014 | FL | 1 | $12,500,000 | $12,500,000 | 1.371 | $17,142,639 | | X | X | X | X |
| 42 | Brandon "Doe," by his Guardian Ad Litem, Andy "Doe," and Austin "Doe," by his Guardian Ad Litem, Gordon "Doe" v. Pacific Health Systems LC and Robert Poizner | 6/25/2014 | CA | 2 | $6,500,000 | $3,250,000 | 1.346 | $4,374,300 | | | X | X | X |
| 43 | Jose Lopez v. Defendant Doe 1, Linda Vista Church; Defendant Doe 2, Supervisory Organization; Defendant Doe 3, Perpetrator; and Does 4 through 100, inclusive | 10/29/2014 | CA | 1 | $13,500,000 | $13,500,000 | 1.351 | $18,239,809 | | | X | X | X |
| 44 | Doe v. Fairfield County Council of Boy Scouts of America, Inc.; Connecticut Yankee Council, Inc.; Boy Scouts of America; The Boy Scouts of America Corporation | 12/12/2014 | CT | 1 | $9,852,110 | $9,852,110 | 1.366 | $13,459,736 | | X | X | X | X |
| 45 | A.S. v. South San Antonio Independent School District | 1/21/2015 | TX | 1 | $4,500,000 | $4,500,000 | 1.372 | $6,176,869 | | X | | | |
| 46 | Gillespie v. Calcasieu Parish Sch. Bd. | 3/5/2015 | LA | 1 | $550,000 | $550,000 | 1.367 | $751,686 | | X | | X | |
| 47 | S.W. by her Guardian ad Litem Schnieta Johnson v. U.S. Metro Group, Luis Morales, and Does 1 to 100 | 3/20/2015 | CA | 1 | $2,650,000 | $2,650,000 | 1.359 | $3,600,332 | | X | X | X | X |
| 48 | A.R., a minor child, by and through her parents and Conservators, Rachel Graves and Dustin Russell, v. North Eastern Services-Lakeside, Inc., a Utah corporation; North Eastern Services, Inc., a Utah Corporation | 10/2/2015 | UT | 1 | $12,500,000 | $12,500,000 | 1.349 | $16,859,953 | | | X | | |
| 49 | D.C., Pro Ami v. Los Angeles Unified School District | 10/29/2015 | CA | 2 | $6,185,700 | $3,092,850 | 1.349 | $4,171,624 | | X | X | X | X |
| 50 | Weis v. Diocese of Duluth | 11/4/2015 | MN | 1 | $8,166,000 | $8,166,000 | 1.352 | $11,037,567 | | X | X | X | |
| 51 | Jane Doe, a Minor by and through Mother Doe and Father Doe, Parents and Natural Guardians, vs. Bright Horizons Children's Centers, LLC, Bright Horizons Family Solutions, Inc., and Kidstop at Boynton Beach, Inc., d/b/a Discovery Preschool Centers | 3/17/2016 | FL | 1 | $3,000,000 | $3,000,000 | 1.347 | $4,041,393 | | X | X | X | X |
| 52 | A.M., a minor, by and through her Guardian Ad Litem, M.M., v. Pomona Unified School District, Steven Andrews, and Krystana Walks-Harper | 5/10/2016 | CA | 1 | $8,050,000 | $8,050,000 | 1.335 | $10,749,742 | | | X | X | X |
| 53 | Doe 101 and Doe 102 v. Feeny and Walden Entertainment; | 7/27/2016 | MN | 2 | $2,073,078 | $1,036,539 | 1.333 | $1,381,870 | | X | | | |
| 54 | Jane Doe No.22, by and through Jane Doe's Mother and Father as parents and natural guardians, Jane Doe's Mother, Jane Doe's Father, Jane Doe No. 24, v. School Board of Highlands County, Florida, and Maria Gonzalez, | 8/18/2016 | FL | 1 | $3,000,000 | $1,500,000 | 1.332 | $1,997,901 | | | X | X | X |
| 55 | C.C. v. Trinity Christian Center of Santa Ana Inc. | 6/5/2017 | CA | 1 | $2,000,000 | $2,000,000 | 1.310 | $2,619,216 | | X | | X | |
| 56 | Hagan v. Army and Navy Academy | 6/28/2017 | CA | 1 | $1,885,000 | $1,885,000 | 1.310 | $2,468,611 | | X | X | | |
| 57 | M J a/k/a Elissa Wall v. Warren Jeffs, The Fundamentalist Church Of Jesus Christ Of Latter Day Saints, Formerly Known In Part As The Work Or The Priesthood Work And Also Known As The Corporation Of The President Of The Fundamentalist Church Of Jesus Christ Of Latter Day Saints, The Corporation Of The Presiding Bishop Of The Fundamentalist Church Of The Presiding Bishop Of The Fundamentalist Church Of Jesus Christ Of Latter Day Saints; The United Effort Plan Trust, And Does 1 Through 20 | 7/13/2017 | UT | 1 | $16,000,000 | $16,000,000 | 1.311 | $20,968,193 | | X | | | |
| 58 | Doe, Pro Ami v. Park; Hacienda La Puente Unified School District; McReynolds | 12/14/2017 | CA | 1 | $8,000,000 | $8,000,000 | 1.301 | $10,410,183 | | X | X | X | X |
| 59 | W.S.B. v. Corbett Community Church a/k/a Corbett Christian Church | 2/20/2018 | OR | 1 | $800,000 | $800,000 | 1.288 | $1,030,704 | | X | X | X | |

Roman Catholic Archdiocese of New Orleans
Exhibit 2
Verdict Sample

CONFIDENTIAL PURSUANT TO PROTECTIVE ORDER

| | Background Information | | | | Nominal Verdict Total | | Inflation Factor[2] | Inflation-Adjusted Verdict Avg per Plaintiff | Excluded from Verdict Sample[3] | Source | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Ref. No. | Case Name | Date[1] | State | Number of Claimants | Verdict Total | Verdict Average per Plaintiff | | | | Westlaw | VerdictSearch | Lexis | Bloomberg Law |
| 60 | Nevaeh Thompson v. New York City Department of Education, and Antonio K'Tori, | 3/30/2018 | NY | 1 | $16,000,000 | $16,000,000 | 1.285 | $20,567,573 | | X | X | X | X |
| 61 | Jane Doe, Pro Ami v. Crime Prevention Agency Inc. | 5/22/2018 | GA | 1 | $1,000,000,000 | $1,000,000,000 | 1.275 | $1,275,080,687 | X | X | X | X | X |
| 62 | S.W., Pro Ami v. Westerly School of Long Beach; Durzo | 6/6/2018 | CA | 1 | $25,300,000 | $25,300,000 | 1.273 | $32,208,206 | | X | X | | |
| 63 | K.R., Pro Ami, N.F. v. Visionquest National Ltd. | 6/26/2018 | PA | 1 | $1,530,000 | $1,530,000 | 1.273 | $1,947,769 | | X | X | | |
| 64 | James Doe by his Guardian Ad Litem Loretta Sinette v. San Diego Unified School District and Toni Sutton | 8/8/2018 | CA | 1 | $2,100,000 | $2,100,000 | 1.272 | $2,671,744 | | X | X | X | X |
| 65 | T.W. v. Boys and Girls Clubs of South Puget Sound | 8/31/2018 | WA | 1 | $1,530,000 | $1,530,000 | 1.272 | $1,946,556 | | X | | | |
| 66 | Holly McGowan and Alexis Nunez v. Watchtower Bible & Tract Society of New York, Christian Congregation of Jehovah's Witnesses (CCJW), and Thompson Falls Congregation of Jehovah's Witnesses | 9/24/2018 | MT | 1 | $34,960,000 | $34,960,000 | 1.271 | $44,426,547 | | X | | X | |
| 67 | Jane Doe v. Elizabeth H. Faulk Foundation, | 10/12/2018 | FL | 1 | $11,750,000 | $11,750,000 | 1.269 | $14,905,357 | | | | X | |
| 68 | A.N.P. v. Fosgett; Murrieta Valley Unified School District; Mooney | 11/6/2018 | CA | 1 | $1,500,000 | $1,500,000 | 1.273 | $1,909,206 | | X | | | |
| 69 | Jane B.M. Doe and "Jane M.M. Doe" v. El Monte Union High School District, El Monte Unified School District, Angelita Gonzales Hernandez and Does 1 to 10 | 3/7/2019 | CA | 1 | $5,000,000 | $5,000,000 | 1.262 | $6,309,844 | | | X | X | X |
| 70 | Jane Doe, a Minor, by and through her Guardian Ad Litem, Roosevelt Doe; Jane Roe, a Minor, by and through her Guardian Ad Litem, and Tovah Roe; and Jane Moe, a Minor, by and through her Guardian Ad Litem, Whitney Moe v. Elk Grove Unified School District; Eric Ernest Echols-Gollas; Robin Riley; Laura Anderson; Lesley McKillop; Doe Yard Supervisor; Mike Smith; and Does 1-25, Inclusive, | 3/13/2019 | CA | 3 | $1,650,000 | $550,000 | 1.262 | $694,083 | | | X | X | X |
| 71 | SMH v. Eric Schmitt, Attorney General of the State of Missouri, and Sarah Steelman, Commissioner of Administration, state of Missouri | 7/25/2019 | MO | 1 | $4,000,000 | $4,000,000 | 1.250 | $5,001,267 | | | | X | |
| 72 | Jo-Ann Taylor, as Conservator for Jane Doe, a minor v. The Devereux Foundation, Inc. a Pennsylvania corporation, and Gwendolyn B. Skinner, | 11/19/2019 | GA | 1 | $60,000,000 | $60,000,000 | 1.247 | $74,833,209 | | X | X | X | |
| 73 | Doe 1 v. Cicero Sch. Dist. 99 | 11/19/2019 | IL | 1 | $2,500,000 | $2,500,000 | 1.247 | $3,118,050 | | X | | | |
| 74 | J.J., an Individual, and K.K., and Individual v. Gresham-Barlow School District; State of Oregon; and Jeff Hays | 1/6/2020 | OR | 1 | $3,000,000 | $3,000,000 | 1.244 | $3,730,594 | | X | X | X | |
| 75 | P.N., R.C., D.V. and K.S. v. YMCA of Pierce and Kitsap Counties | 3/12/2020 | WA | 4 | $860,000 | $215,000 | 1.243 | $267,210 | | X | | | |
| 76 | Jane Doe, a minor, by and through her Guardian Ad Litem, John Doe v. Union School District, Samuel Neipp, Jacqueline Horejs, Mary L. Berkey, Carole Carlson, and Roes 1 through 125, inclusive / Jane Doe 2 v. Union School District, an entity of unknown form; Samuel Neipp, an individual; and Does 1 through 50 / Jane Doe 1, and Jane Doe 2, a minor, by and through her Guardian Ad Litem, Janice Doe v. Union School District, Samuel Neipp, Jacqueline Horejs, Mary L. Berkey, Carole Carlson, and Roes 1 through 100, inclusive | 3/29/2022 | CA | 2 | $102,500,000 | $51,250,000 | 1.116 | $57,184,400 | | | X | X | X |
| 77 | Michael Malvin v. David Savage, Rockville Centre Union Free School District and Lynbrook Union Free School District | 10/17/2022 | NY | 1 | $30,000,000 | $30,000,000 | 1.076 | $32,293,498 | | | X | X | |
| 78 | S.G. v. City of Perth Amboy et al. | 2/6/2023 | NJ | 1 | $331,000 | $331,000 | 1.066 | $352,956 | | X | | | |
| 79 | B.B. et al. v. Moreno Valley Unified Sch. Dist. | 10/10/2023 | CA | 2 | $135,000,000 | $67,500,000 | 1.043 | $70,379,277 | | X | | | |
| 80 | T. B. v. The Young Men's Christian Association of Pierce and Kitsap Counties D/B/A YMCA of Pierce and Kitsap Counties, A Nonprofit Corporation | 2/28/2024 | WA | 1 | $7,500,000 | $7,500,000 | 1.034 | $7,753,016 | | X | | X | |
| 81 | Aaron Barton, as guardian of A.B., a minor v. PeachState Hospitality, LLC | 7/16/2024 | GA | 1 | $29,400,000 | $29,400,000 | 1.020 | $29,984,654 | | | X | X | |
| 82 | C.B. v. Board of Educ. of J. Sterling Morton High Sch. Dist. 201 | 3/11/2025 | IL | 1 | $15,000,000 | $15,000,000 | 1.003 | $15,046,717 | | X | | | |
| 83 | Jane Doe, a minor, by and through her guardian ad litem Agustina Karina Flores; John Doe, a minor, by his guardian ad litem Victoria Macias; Jane GJ Doe, a minor, by her guardian ad litem Blanca Gamez; Jane DR Doe, a minor by her guardian ad litem, Silvia Picos; Jane DS Doe; Jane RY Doe; Susana D.; and Yazmin R. v. Mountain View School District; Miramonte Elementary School; and Joseph Alfred Baldenebro | 4/14/2025 | CA | 6 | $48,000,000 | $8,000,000 | 1.000 | $8,000,000 | | | X | X | |
| 84 | Loustteau v. Congregation of Holy Cross | 6/25/2025 | LA | 1 | $2,375,000 | $2,375,000 | 0.995 | $2,361,997 | | | | X | |

**Notes**

[1] For purposes of Inflated-Adjusted Verdict Amounts, assume last day of the year or month when no exact date provided.

[2] Inflation-Adjusted Verdict Amounts based on U.S Bureau of Labor Statistics Consumer Price Index (CPI) inflation data as of April 30, 2025.

[3] Verdict Ref. 61 was excluded from the Verdict Sample on the basis of being a statistical outlier (mean-shift outlier detection methodology, k-NN=4).

Roman Catholic Archdiocese of New Orleans
Exhibit 1
Composite Verdicts

CONFIDENTIAL PURSUANT TO PROTECTIVE ORDER

Roman Catholic Archdiocese of New Orleans
Exhibit 3
Composite Verdicts

CONFIDENTIAL PURSUANT TO PROTECTIVE ORDER

| | | | | | Background Information | | | Nominal Verdict Detail | | | | Nominal Apportionment of Verdict | | | Nominal Breakdown of Institutional Share | | | Inflation-Adjusted Figures | | | | Source | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Ref. No. | Case Name | Date | Years of Abuse | State | Case Description | Nature of Abuse Category | Number of Claimants | Verdict Total | Verdict Average per Claimant | Compensatory Damages Plaintiff | Total Punitive Damages Plaintiff | Perp Share Plaintiff | Institutional Share Plaintiff | Other Share Plaintiff | Punitive Damages Plaintiff | Compensatory Damages Plaintiff | Other Compensatory Plaintiff | Inflation Factor | Total Award | Non-Institutional Share of Damages | Institutional Share of Punitive/Other Damages | Institutional Share of Compensatory Damages | Verdict | VerdictSearch | Lexis | Bloomberg Law |
| 44 | Doe v. Fairfield County Council of Boy Scouts of America, Inc.; Connecticut Yankee Council, Inc., Boy Scouts of America Corporation | 12/12/2014 | 1970s | CT | | Unable to Determine | 1 | $9,852,110 | $9,852,110 | $7,000,000 | $2,852,110 | $0 | $9,852,110 | $0 | $2,852,110 | $7,000,000 | $0 | 1.344 | $13,439,736 | $0 | $3,896,490 | $9,563,246 | X | | | |
| 45 | A.S. v. South San Antonio Independent School District | 1/21/2015 | 2004-2005 | TX | | Unable to Determine | 1 | $4,500,000 | $4,500,000 | $4,500,000 | $0 | $0 | $4,500,000 | $0 | $0 | $4,500,000 | $0 | 1.373 | $6,176,869 | $0 | $0 | $6,176,869 | X | | | |
| 46 | Gillespie v. Calcasieu Parish Sch. Bd. | 2/27/2015 | Unknown | LA | | Allegations of Penetration | 1 | $550,000 | $550,000 | $250,000 | $300,000 | $300,000 | $225,000 | $25,000 | $300,000 | $225,000 | $25,000 | 1.367 | $751,686 | $444,176 | | $307,508 | X | | | |
| 47 | S.W. by her Guardian ad Litem Schmitz Johnson v. U.S. Metro Group, Les Morales, and Does 1 to 100 | 3/20/2015 | 2010 | CA | | Allegations Not Involving Penetration | 1 | $2,450,000 | $2,450,000 | $2,450,000 | $0 | $1,060,000 | $1,390,000 | $0 | $0 | $1,390,000 | $0 | 1.395 | $3,488,132 | $1,446,133 | $0 | $2,168,199 | X | | | |
| 48 | D.C. Per Ann v. Los Angeles Unified School District | 10/29/2015 | 2010-2011 | CA | | Unable to Determine | 2 | $6,185,700 | $3,092,850 | $3,092,850 | $0 | $0 | $3,092,850 | $0 | $0 | $3,092,850 | $0 | 1.389 | $8,173,424 | $0 | $0 | $8,173,424 | X | X | X | X |
| 50 | Weis v. Diocese of Duluth | 11/4/2015 | Unknown | MN | | Unable to Determine | 1 | $8,164,000 | $8,164,000 | $8,164,000 | $0 | $0 | $8,164,000 | $0 | $0 | $8,164,000 | $0 | 1.352 | $11,037,567 | $0 | $0 | $11,037,567 | X | | | |
| 51 | Jane Doe, a Minor by and through Mother Doe and Father Doe, Parents and Natural Guardians, vs. Bright Horizons Children's Centers, LLC; Bright Horizons Family Solutions, Inc.; and Kidstop at Boynton Beach, Inc. d/b/a Discovery Preschool Centers | 3/17/2016 | 2013 | FL | | Unable to Determine | 1 | $3,000,000 | $3,000,000 | $3,000,000 | $0 | $0 | $3,000,000 | $0 | $0 | $3,000,000 | $0 | 1.347 | $4,041,293 | $0 | $0 | $4,041,293 | X | | | |

44

Roman Catholic Archdiocese of New Orleans
Exhibit 1
Compensable Verdicts

CONFIDENTIAL PURSUANT TO PROTECTIVE ORDER

| Ref. No. | Case Name | Date | Years of Abuse | State | Case Description | Nature of Abuse Category | Number of Claimants | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 32 | A.M., a minor, by and through her Guardian Ad Litem, M.M., v. Pomona Unified School District, Steven Andrews, and Keystone Walks-Harper | 3/16/2016 | 2010-2011 | CA | | Unable to Determine | 1 | | | | | | | | | | | | | |
| 33 | Doe 101 and Doe 102 v. Feeny and Walden Entertainment | 7/27/2016 | N/A | MO | | Unable to Determine | 2 | | | | | | | | | | | | | |
| 34 | Jane Doe No.22, by and through Jose Doe's Mother and Father as parents and natural guardians, Jane Doe's Mother, Jane Doe's Father, Jane Doe No. 24, v. School Board of Highlands County, Florida, and Maria Gonzalez | 8/18/2016 | 2009-2011 | FL | | Unable to Determine | 2 | | | | | | | | | | | | | |
| 35 | C.C. v. Trinity Christian Center of Santa Ana Inc. | 6/5/2017 | Unknown | CA | | Allegation of Penetration | 1 | | | | | | | | | | | | | |
| 36 | Hagan v. Army and Navy Academy | 6/28/2017 | 2006 | CA | | Allegations Not Involving Penetration | 1 | | | | | | | | | | | | | |
| 37 | Doe, Pre Ann v. Park, Hacienda La Puente Unified School District, McReynolds | 12/14/2017 | 2014 | CA | | Allegations Not Involving Penetration | 1 | | | | | | | | | | | | | |
| 38 | W.S.B. v. Corbett Community Church a/k/a Corbett Christian Church | 2/20/2018 | 1981 | OR | | Allegations Not Involving Penetration | 1 | | | | | | | | | | | | | |
| 39 | Nevaeh Thompson v. New York City Department of Education, and Antonio R Tiano | 3/30/2018 | 2007-2009 | NY | | Allegations Not Involving Penetration | 1 | | | | | | | | | | | | | |

Roman Catholic Archdiocese of New Orleans
Exhibit 3
Composite Verdicts

CONFIDENTIAL PURSUANT TO PROTECTIVE ORDER

Roman Catholic Archdiocese of New Orleans
Exhibit 1
Composite Verdicts

CONFIDENTIAL PURSUANT TO PROTECTIVE ORDER

| Ref. No. | Case Name | Date | Years of Abuse | State | Case Description | Nature of Abuse / Category | Number of Claimants | Verdict Total | Verdict Average per Claimant | Compensatory Damages Plaintiff | Total Punitive Damages Plaintiff | Prop Share Plaintiff | Institutional Share Plaintiff | Other Share Plaintiff | Punitive Damages Plaintiff | Compensatory Damages Plaintiff | Other Damages Plaintiff | Inflation Factor | Total Award | Non-Institutional Share of Damages | Institutional Share of Punitive/Other Damages | Institutional Share of Compensatory Damages | Westlaw | VerdictSearch | Lexis | Bloomberg Law |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 70 | | 3/13/2019 | 2015-2016 | CA | | Allegations Not Involving Penetration | 1 | $1,450,000 | $550,000 | $550,000 | $0 | $171,667 | $378,333 | $0 | $0 | $378,333 | $0 | 1.192 | $656,083 | $214,638 | $0 | $677,445 | X | X | X | X |
| 72 | Jo-Ann Taylor, as Conservator for Jane Doe, a minor v. The Diocesan Foundation, Inc. v Francisican corporation, and Gwendolyn B. Skinner | 11/19/2019 | 2011 | GA | | Allegation of Penetration | 1 | $60,000,000 | $60,000,000 | $10,000,000 | $50,000,000 | $5,000,000 | $55,000,000 | $0 | $50,000,000 | $5,000,000 | $0 | 1.107 | $74,633,200 | $6,236,101 | $62,561,007 | $6,236,101 | X | X | X | X |
| 73 | Doe 1 v. Cicero Sch. Dist. 99 | 11/19/2019 | N/A | IL | | Guilt to Detention | 1 | $2,500,000 | $2,500,000 | $2,500,000 | $0 | 0 | $2,500,000 | $0 | $0 | $2,500,000 | $0 | 1.247 | $3,118,050 | $0 | $0 | $3,118,050 | X | X | X | X |
| 74 | J.L. an Individual, and K.R., and Individual v. Gresham-Barlow School District State of Oregon, and Jeff Rose | 1/6/2020 | 2005-2008 | OR | | Allegation of Penetration | 1 | $3,000,000 | $3,000,000 | $3,000,000 | $0 | 0 | $3,000,000 | $0 | $0 | $3,000,000 | $0 | 1.244 | $3,730,594 | $0 | $0 | $3,730,594 | X | X | X | X |
| 75 | P.N., R.C., D.V. and K.S., make P to 16 years of age, filed a claim against defendant YMCA of Pierce and Kitsap Counties | 3/12/2020 | 1970s | WA | | Allegation of Penetration | 1 | $864,000 | $215,000 | $215,000 | $0 | 0 | $215,000 | $0 | $0 | $215,000 | $0 | 1.245 | $267,210 | $0 | $0 | $267,210 | X | X | X | X |
| 78 | | 3/29/2022 | 2009-2017 | CA | | Allegation of Penetration | 2 | $102,500,000 | $51,250,000 | $51,250,000 | $0 | $14,017,500 | $36,212,500 | $0 | $0 | $36,212,500 | $0 | 1.116 | $57,184,409 | $16,667,161 | $0 | $40,517,248 | X | X | X | X |
| 79 | S.G. v. City of Perth Amboy, et al. | 2/4/2025 | 1986-1990 | NJ | | Guilt to Detention | 1 | $331,000 | $331,000 | $331,000 | $0 | 0 | $331,000 | $0 | $0 | $331,000 | $0 | 1.066 | $352,956 | $0 | $0 | $352,956 | X | X | X | X |

Roman Catholic Archdiocese of New Orleans
Exhibit 3
Comparable Verdicts

CONFIDENTIAL PURSUANT TO PROTECTIVE ORDER

**Roman Catholic Archdiocese of New Orleans**
**Exhibit 4**
**Abuse Tier Scaling**

CONFIDENTIAL PURSUANT TO PROTECTIVE ORDER

| Abuse Tier | Claim Value | | | |
| --- | --- | --- | --- | --- |
| | BSA TDP | | Spokane Matrix | |
| | Min | Max | Min | Max |
| Penetration | $600,000 | $2,700,000 | $750,000 | $1,500,000 |
| Oral Sex | $450,000 | $2,025,000 | $750,000 | $1,500,000 |
| Masturbation | $300,000 | $1,350,000 | $150,000 | $750,000 |
| Fondling under Clothing | $150,000 | $675,000 | $150,000 | $750,000 |
| Fondling over Clothing, Kissing, Unwanted Touching | $75,000 | $337,500 | $75,000 | $150,000 |
| Nudity/Pornography | $75,000 | $337,500 | $15,000 | $75,000 |
| Sex talk, no physical touching | $3,500 | $8,500 | $15,000 | $75,000 |

| Abuse Tier | Reduction from Penetration (%) | | | |
| --- | --- | --- | --- | --- |
| | BSA TDP | | Spokane Matrix | |
| | Min | Max | Min | Max |
| Penetration | 0.0% | 0% | 0.0% | 0% |
| Oral Sex | 25.0% | 25.0% | 0.0% | 0.0% |
| Masturbation | 50.0% | 50.0% | 80.0% | 50.0% |
| Fondling under Clothing | 75.0% | 75.0% | 80.0% | 50.0% |
| Fondling over Clothing, Kissing, Unwanted Touching | 87.5% | 87.5% | 90.0% | 90.0% |
| Nudity/Pornography | 87.5% | 87.5% | 98.0% | 95.0% |
| Sex talk, no physical touching | 99.4% | 99.7% | 98.0% | 95.0% |

For purposes of estimating a range of values for the 626 Valued ANO Sexual Abuse Claims, Stout analyzed the available data from the POC forms to assess the prevalence of certain claim attributes, often referred to in Trust Distribution Plans ("TDPs") as Aggravating Factors. These factors capture elements that may influence the relative severity and/or strength of each claim. While not all potentially relevant attributes could be fully ascertained from the POC form data, those that were identifiable indicate a potentially wide distribution of claim severity and strength, as discussed in more detail below.

## Background

Stout's analysis of Aggravating Factors aligns with similar practices observed in numerous matters involving Catholic dioceses and other entities that have faced large numbers of sexual abuse claims and sought bankruptcy protection. In many instances, the Plan of Reorganization includes the assignment of someone to review and value the survivor claims. This individual is often identified as a Tort Claims Reviewer, Abuse Claims Reviewer or Survivor Claims Reviewer ("Reviewer"). The Plan of Reorganization (or the related Disclosure Statement, as in this case) often includes an Allocation Protocol or Distribution Process that dictates the parameters under which the Reviewer assigns values to claims or otherwise distributes funds available to pay sexual abuse claimants. In my experience, such distribution plans generally take two forms:

- Valuation Plans: Certain distribution plans establish parameters by which claims are assigned a claim value, expressed in dollars, and the resulting amount then serves as the basis from which payments are made to the sexual abuse survivor. Examples of this include the Archdiocese of Spokane's Matrix Protocol as well as the Boy Scouts of America's Trust Distribution Procedures. Typically a baseline matrix value is established for each category of abuse (e.g., $600,000 for penetration claims), and the baseline value is increased based on the prevalence of Aggravating Factors. Aggravating Factors are claim or allegation attributes generally considered to increase the severity of abuse or the claim valuation, all else equal. After adjustment upward for any applicable Aggravating Factors, certain discount factors or mitigating factors may be applied in the form of a discount to arrive at final claim amounts.

- Point Allocation Plans: Many Diocesan distribution plans establish a point system under which a fixed amount of trust assets are distributed among the accepted claims based on the relative number of points assigned to each claim. In Point Allocation Plans, typically all claim attributes that may move a claim value up or down are all included as Evaluation Factors, which necessarily means that Evaluation Factors, in concept, are broader than Aggravating Factors. In addition to the

1

inclusion of traditional Aggravating Factors, Evaluation Factors typically include the categorical nature of abuse (e.g., penetration vs. masturbation) as well as potential claim-reducing factors (e.g., prior settlements). This differentiates Evaluation Factors from Aggravating Factors in Valuation Plans.

The Allocation Protocol or Trust Distribution Procedures typically list the Aggravating Factors the Reviewer will consider in its valuation of each survivor claim. Although certain Aggravating Factors may be categorized differently in different plans, this process usually includes consideration of numerous Aggravating Factors categorized in the following areas:

- Nature and Circumstances of Abuse;
- Abuser Profile / Claimant Involvement;[1] and
- Impact of Abuse.

Stout's analysis of the prevalence of Aggravating Factors among the Valued ANO Sexual Abuse Claims is provided below.

### Aggravating Factors Among the Valued ANO Sexual Abuse Claims

For ANO, several of the Aggravating Factors, addressed in more detail below, were the subject of specific questions on the POC form, enabling Stout to calculate reliable estimates as to the prevalence of such attributes among the 626 Valued ANO Sexual Abuse Claims. Many other Aggravating Factors, however, were not the subject of specific questions on the POC form. Such attributes were only observed to the extent the ANO Sexual Abuse Claimant offered such information unsolicited in a narrative section of the POC form. Given the inconsistent nature of such responses, the prevalence of many Aggravating Factors could not be reliably ascertained from the data available, as detailed below.

### a. Nature and Circumstances of Abuse

The following is a list of some items typically considered when evaluating the Aggravating Factors relative to the Nature and Circumstances of Abuse:[2]

- The age of the survivor at the time of abuse;

---

[1] In certain TDPs/Allocation Protocols, the Abuser Profile and Claimant Involvement evaluation factors are also classified as "Additional Factors" or "Other Factors."

[2] In Point Allocation Plans, the abuse tier (*e.g.*, penetration vs. masturbation) is generally considered under the Nature and Circumstances of Abuse Evaluation Factor category. In Valuation Plans, a baseline value or range of values is established specific to each abuse tier and the Nature and Circumstances of Abuse Aggravating Factors address other potentially relevant considerations.

2

Roman Catholic Archdiocese of New Orleans         Confidential Pursuant to Protective Order
Exhibit 5
Aggravating Factors

- The duration and/or frequency of abuse;

- Control of environment / location where abuse took place;

- Whether or not the abuser developed grooming behaviors with the survivor;

- Whether or not the use of coercion, threats, force, violence or stalking occurred;

- Whether or not the survivor had external situations in his or her life at the time of the abuse that would lead the survivor to be classified as a vulnerable victim; and

- Whether or not there were multiple abusers.

Of the considerations above, the POC form did not specifically request information regarding control of environment; grooming behaviors; the use of coercion, threats, force, violence or stalking; nor were there specific questions to help identify vulnerable victims. While some survivors did volunteer this information in narrative responses, Stout could not assume that the absence of narrative support for these considerations equated to the absence of that factor in the survivor's Nature and Circumstances of Abuse.

Table 1 below summarizes the age of the survivor at the start of abuse among the 626 Valued ANO Sexual Abuse Claims. Roughly 61% of these Valued ANO Sexual Abuse Claims were 11 years old or younger at the start of abuse.

**Table 1: Age of Valued ANO Sexual Abuse Claimants at Start of Abuse**

| Age at Start of Abuse | All Valued ANO Sexual Abuse Claims | |
|---|---|---|
| | Count | Percentage |
| Under 5 | 23 | 4% |
| 5-11 | 355 | 57% |
| 12-14 | 168 | 27% |
| 15-17 | 69 | 11% |
| Unknown | 11 | 2% |
| **Total** | **626** | **100%** |

Table 2 below summarizes the reported frequency of abuse for these 626 Valued ANO Sexual Abuse Claims. Nearly 25% of these 626 Valued ANO Sexual Abuse Claims reported abuse occurring ten or more times and nearly 10% reported abuse occurring 100 or more times. Not all claimants, however, provided a specific number of incidents. 35% of claims described the abuse as occurring repeatedly over varying periods of time without specifying the exact number of incidents.

3

**Table 2: Frequency of Abuse Among Valued ANO Sexual Abuse Claims**

| Frequency of Abuse | All Valued ANO Sexual Abuse Claims | |
| --- | --- | --- |
| | Count | Percentage |
| 1 | 116 | 19% |
| 2 - 9 | 133 | 21% |
| 10 - 99 | 93 | 15% |
| 100+ | 55 | 9% |
| Many (Exact Unknown) | 216 | 35% |
| Unknown | 13 | 2% |
| **Total** | **626** | **100%** |

Table 3 below summarizes the prevalence of multiple abusers among the 626 Valued ANO Sexual Abuse Claims. Nearly 20% of these 626 Valued ANO Sexual Abuse Claimants allege that they were sexually abused by more than one abuser.

**Table 3: Number of Abusers of Valued ANO Sexual Abuse Claims**

| Number of Abusers | All Valued ANO Sexual Abuse Claims | |
| --- | --- | --- |
| | Count | Percentage |
| Single | 500 | 80% |
| Multiple | 118 | 19% |
| Unknown | 8 | 1% |
| **Total** | **626** | **100%** |

The POC form requests the claimant to describe the nature of sexual abuse they experienced, including the circumstances, frequency, and types of sexual abuse. This information is used to evaluate the relative severity of the allegations in connection with the Nature and Circumstances of Abuse Aggravating Factor. The attributes that can be observed reflect a potentially wide distribution of relative severity.

### b. Abuser Profiles / Claimant Involvement

The following items are considerations when evaluating the Aggravating Factors relative to the Abuser Profile:

4

**Roman Catholic Archdiocese of New Orleans**  **Confidential Pursuant to Protective Order**
**Exhibit 5**
**Aggravating Factors**

- Whether or not the abuser was a credibly accused abuser by the Archdiocese, or other evidence of negligence by the Archdiocese or other ANO entities;

- Whether or not others alleged abuse at the hands of the abuser;

- Whether or not the survivor reported the abuse;

- Whether or not the survivor filed a lawsuit; and

- Whether or not the claimant participated in publicizing the issue of clergy sex abuse or helped establish the legal or factual basis for such claims, to the benefit of all claimants.

In determining which alleged abusers were either credibly accused abusers by the Archdiocese or if others alleged abuse by the abuser, Stout considered the following:

- Archdiocese of New Orleans Credibly Accused List.[3]

- Abusers who did not appear on the Archdiocese of New Orleans Credibly Accused List but had abuse alleged by multiple ANO Sexual Abuse Claimants.

Table 4 below summarizes the abuser category for these 626 Valued ANO Sexual Abuse Claims. Roughly 51% of these 626 Valued ANO Sexual Abuse Claims met one of these two criteria.

**Table 4: Abuser Category of Valued ANO Sexual Abuse Claims**

| Abuser Category | All Valued ANO Sexual Abuse Claims | |
|---|---|---|
| | Count | Percentage |
| Credibly Accused | 174 | 28% |
| Not Credibly Accused; Accused by Multiple Claimants | 144 | 23% |
| Other | 308 | 49% |
| **Total** | **626** | **100%** |

Regarding the other factors often considered related to Abuser Profile / Claimant Involvement, the POC form specifically asks claimants whether or not they reported the abuse to anyone involved with the

---

[3] Sourced from the Archdiocese of New Orlean's publicly-available list of Credibly Accused abusers, per their website. (https://nolacatholic.org/2018-report)

5

Roman Catholic Archdiocese of New Orleans          Confidential Pursuant to Protective Order
Exhibit 5
Aggravating Factors

Archdiocese. Of the 626 Valued ANO Sexual Abuse Claims, roughly 36% responded yes to reporting the abuse to the Archdiocese, as summarized in Table 5 below.[4]

**Table 5: Number of Claimants who Reported to Anyone Involved with the Archdiocese about the Sexual Abuse**

| Reported? | All Valued ANO Sexual Abuse Claims | |
|---|---|---|
| | Count | Percentage |
| Yes | 226 | 36% |
| No | 392 | 63% |
| Unknown | 8 | 1% |
| **Total** | **626** | **100%** |

The POC form also asks whether the survivor has filed a lawsuit related to the abuse. Of the 626 Valued ANO Sexual Abuse Claims, roughly 11% responded that they had, as summarized in Table 6 below.

**Table 6: Number of Claimants who Filed a Lawsuit Regarding ANO Sexual Abuse**

| Lawsuit Filed? | All Valued ANO Sexual Abuse Claims | |
|---|---|---|
| | Count | Percentage |
| Yes | 67 | 11% |
| No | 550 | 88% |
| Unknown | 9 | 1% |
| **Total** | **626** | **100%** |

The POC form solicited information on only a subset of attributes potentially relevant to assessing relative allegation severity with regards to the Abuser Profile / Claimant Involvement Aggravating Factor. The attributes that can be observed reflect a potentially wide distribution of relative severity.

---

[4] This question and related Table 5 captures only the percentage of Valued ANO Sexual Abuse Claimants that assert they reported the abuse to someone involved with the Archdiocese and does not account for what knowledge of the abuse or abuser the Archdiocese may have otherwise had.

**Roman Catholic Archdiocese of New Orleans**                    **Confidential Pursuant to Protective Order**
**Exhibit 5**
**Aggravating Factors**

### c. Impact of Abuse

The POC form specifically asks claimants to identify any impacts they experienced as a result of the sexual abuse. Claimants were able to select all applicable impacts from the following list:

- Psychological / emotional health (including depression, anxiety, suicidal thoughts, feeling numb, difficulty managing or feeling emotions including anger);
- Post-traumatic stress reactions (including intrusive images, feelings from the abuse, numbing or avoidance behaviors);
- Physical health (including chronic disease, chronic undiagnosed pain or physical problems);
- Education (not graduating high school, being unable to finish training or education);
- Employment (including difficulties with supervisors, difficulty maintaining steady employment, being fired from jobs);
- Intimate relationships (including difficulty maintaining emotional attachments, difficulty with sexual behavior, infidelity);
- Social relationships; (including distrust of others, isolating yourself, not being able to keep healthy relationships);
- Alcohol and/or substance abuse (including other addictive behaviors such as gambling);
- Have you ever sought counseling or other mental health treatment for any reason even if you did not connect that treatment as being related to the sexual abuse that you described above? and
- Other (please explain and add any other information you remember to the categories above).

Table 7 below summarizes the number of Valued ANO Sexual Abuse Claims that checked the boxes listed above on the POC form.

7

**Table 7: Prevalence of Reported Impacts of Abuse Among Valued ANO Sexual Abuse Claims**

| Impact of Abuse | All Valued ANO Sexual Abuse Claims | |
| --- | --- | --- |
| | Count | Percentage |
| Psychological/Emotional Health | 600 | 96% |
| Post-Traumatic Stress Reactions | 555 | 89% |
| Physical Health | 216 | 35% |
| Education | 320 | 51% |
| Employment | 328 | 52% |
| Intimate Relationships | 545 | 87% |
| Social Relationships | 547 | 87% |
| Alcohol and/or Substance Abuse | 388 | 62% |
| Have you ever sought counseling or mental health treatment? | 426 | 68% |
| Other | 211 | 34% |

Table 8 below summarizes the number of reported Impacts of Abuse among these 626 Valued ANO Sexual Abuse Claims.

**Table 8: Number of Reported Impacts of Abuse Among Valued ANO Sexual Abuse Claims**

| Number of Indicated Impacts of Abuse | All Valued ANO Sexual Abuse Claims | |
| --- | --- | --- |
| | Count | Percentage |
| 0 | 11 | 2% |
| 1 | 6 | 1% |
| 2 | 16 | 3% |
| 3 | 27 | 4% |
| 4 | 39 | 6% |
| 5 | 73 | 12% |
| 6 | 97 | 15% |
| 7 | 120 | 19% |
| 8 | 106 | 17% |
| 9 | 84 | 13% |
| 10 | 47 | 8% |
| **Total** | **626** | **100%** |

Similar to other Aggravating Factors specifically addressed in the POC form, there is a fairly wide range of responses across the Valued ANO Sexual Abuse Claims regarding Impact of Abuse in many of these categories. Not surprisingly, there is a high percentage of survivors who report emotional, mental,

8

intimate and social issues as a result of the abuse. However, the checkboxes on the POC form indicating an individual suffers from these impacts are generally broad in nature. For example, the section begins with the explanation stating, "Please describe how you believe you were impacted, harmed, damaged, or injured as a result of the sexual abuse you described above." The first box is followed by this description,

"Psychological / emotional health (including depression, anxiety, shame, suicidal thoughts, feeling numb, difficulty managing or feeling emotions including anger)." Simply checking this box does not provide significant insight into the severity of the issue. As discussed previously, certain survivors may have volunteered additional information in a narrative, but absent that or receipt of additional information, there is no way to reliably ascertain the severity of the impact across the Valued ANO Sexual Abuse Claims that checked the physiological / emotional health box.

The POC form solicited information on only a subset of attributes potentially relevant to assessing relative allegation severity with regards to the Impact of Abuse Aggravating Factor. The attributes that are able to be observed reflect a potentially wide distribution of relative severity.

**<u>Conclusion</u>**

While the prevalence of many Aggravating Factors could not be reliably ascertained from the data available, the attributes that can be observed reflect a potentially wide distribution of relative severity and strength of claims.

9

Roman Catholic Archdiocese of New Orleans
Exhibit 6
Relative Aggravating Factor Weightings among Allocation Protocols/TDPs

CONFIDENTIAL PURSUANT TO PROTECTIVE ORDER

| Trust / Plan | Year | Scoring Type | Points or Multiplying Factors in TDPs | | | Total |
| | | | Nature / Circumstances | Impact | Abuser Profile / Claimant Involvement[1] | |
|---|---|---|---|---|---|---|
| Norwich | 2025 | Points | | | | 100 |
| Syracuse | 2024 | Points | No Breakdown Provided - Same Evaluation Factors Considered | | | 200 |
| Rockville Centre | 2024 | Points | | | | 100 |
| Harrisburg[2] | 2022 | Points | 50 | 40 | 35 | 125 |
| Santa Fe | 2022 | Points | | | | 110 |
| Agana (Guam) | 2022 | Points | No Breakdown Provided - Same Evaluation Factors Considered | | | N/a |
| Camden | 2022 | Points | 55 | 40 | 5 | 100 |
| Boy Scouts of America | 2021 | Multiplying Factors | 1.5 | 1.5 | 2 | 5 |
| Winona-Rochester | 2021 | Points | 45 | 45 | 10 | 100 |
| New Ulm | 2020 | Points | 55 | 40 | 5 | 100 |
| St. Could | 2020 | Points | 45 | 45 | 10 | 100 |
| Duluth | 2019 | Points | 50 | 50 | 45 | 145 |
| Minneapolis / St. Paul | 2018 | Points | 40 | 40 | 110 | 190 |
| Great Falls | 2018 | Points | No Breakdown Provided - Same Evaluation Factors Considered | | | 100 |
| Crosier Father & Brothers | 2018 | Points | 50 | 50 | 0 | 100 |
| Stockton | 2016 | Points | 60 | 40 | 0 | 100 |
| Gallup | 2016 | Points | 60 | 40 | 0 | 100 |
| Milwaukee | 2015 | Points | 10 | 4 | 7 | 21 |
| Helena | 2015 | Points | 70 | 30 | 0 | 100 |
| Christian Brothers | 2013 | Points | 60 | 30 | 10 | 100 |

| Trust / Plan | Year | Scoring Type | Relative Weighting | | | Total |
| | | | Nature / Circumstances | Impact | Abuser Profile / Claimant Involvement[1] | |
|---|---|---|---|---|---|---|
| Norwich | 2025 | Points | | | | |
| Syracuse | 2024 | Points | 100% | | | |
| Rockville Centre | 2024 | Points | | | | |
| Harrisburg[2] | 2022 | Points | 40% | 32% | 28% | 100% |
| Santa Fe | 2022 | Points | | | | |
| Agana (Guam) | 2022 | Points | 100% | | | |
| Camden | 2022 | Points | 55% | 40% | 5% | 100% |
| Boy Scouts of America | 2021 | Multiplying Factors | 30% | 30% | 40% | 100% |
| Winona-Rochester | 2021 | Points | 45% | 45% | 10% | 100% |
| New Ulm | 2020 | Points | 55% | 40% | 5% | 100% |
| St. Could | 2020 | Points | 45% | 45% | 10% | 100% |
| Duluth | 2019 | Points | 34% | 34% | 31% | 100% |
| Minneapolis / St. Paul | 2018 | Points | 21% | 21% | 58% | 100% |
| Great Falls | 2018 | Points | 100% | | | |
| Crosier Father & Brothers | 2018 | Points | 50% | 50% | 0% | 100% |
| Stockton | 2016 | Points | 60% | 40% | 0% | 100% |
| Gallup | 2016 | Points | 60% | 40% | 0% | 100% |
| Milwaukee | 2015 | Points | 48% | 19% | 33% | 100% |
| Helena | 2015 | Points | 70% | 30% | 0% | 100% |
| Christian Brothers | 2013 | Points | 60% | 30% | 10% | 100% |

**Notes:**

[1] In certain TDPs/Allocation Protocols, the Abuser Profile and Claimant Involvement evaluation factors are also classified as "Additional Factors" or "Other Factors."

[2] In the Harrisburg protocols, the base point value range for Claimant Involvement is 10, however the Trust Distribution Plan allows for an additional 25 points to be awarded for Exceptional Contributions to a Global Settlement, which is a common characteristic among Claimant Involvement evaluation factors.

Roman Catholic Archdiocese of New Orleans
Exhibit 7
Comparable Settlements

CONFIDENTIAL PURSUANT TO PROTECTIVE ORDER

| | | | | | Background Information | | | Settlement Total | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Ref. No. | Case Name / Settling Institution | State | Settlement Date[1] | Date (For Inflation) | Case Description | Number of Claimants | | Settlement Amount | Average Settlement Amount | Inflation Factor[2] | Inflation-Adjusted Average Settlement Amount | Statute of Limitations[3] |
| 1 | Doe v. Roe Archdiocese | CA | 3/4/2013 | 3/4/2013 | From 1974 to 1999, parish priest Michael Baker allegedly sexually abused at least four minors, whose ages ranged from 12 to 14. The abuse included fondling, sodomy, and oral copulation. The four alleged victims, now adults, suffered emotional distress, posttraumatic stress disorder, and substance abuse, among other problems. They sued the priest's archdiocese, alleging fraud and failure to prevent abuse. Suit alleged that the cardinal was told in the mid-1980s that Baker had abused two children yet still placed him in positions where he had access to children. The parties settled for $10 million. | 4 | | $10,000,000 | $2,500,000 | 1.378 | $3,445,363 | Likely / Mostly Outside SOL |
| 2 | Diocese of Green Bay | WI | Article dated 3/19/2013 | 3/19/2013 | The Catholic Diocese of Green Bay agreed to pay $700,000 in settlement of a civil lawsuit brought by two brothers who were molested by the Rev. John Feeney in the 1970s. Outagamie County Judge Nancy Krueger dismissed the case on Monday, based on the agreement reached by the diocese and Todd and Troy Merryfield. The settlement matches the verdict reached at a trial last year. Krueger subsequently overturned the verdict and ordered a new trial after finding a member of the jury was biased. The case would have been re-tried in May. Green Bay Bishop David Ricken issued a statement Tuesday, apologizing to the Merryfields and all victims of child sexual abuse. John Peterson, an attorney for the brothers, said the settlement eliminates what would've been a long road ahead all involved. He predicted the case would've gone to appeal regardless of the verdict and would have likely ended up before the state Supreme Court. There was a chance that on appeal, the case would've gone to trial for a third time. The Merryfields filed the lawsuit in 2008. They claimed the diocese knew Feeney had a history of sexual misconduct when it installed him as a priest at Freedom's St. Nicholas Church. They said the diocese falsely portrayed Feeney as safe, even though church officials knew he was a danger to children. The Merryfields attended religious education courses as children at the Freedom church. Feeney assaulted the brothers, then ages 12 and 14, in 1978. | 2 | | $700,000 | $350,000 | 1.378 | $482,351 | Likely / Mostly Outside SOL |
| 3 | Jane Doe 173, by and through her parents and guardians, Mother Doe 173 and Father Doe 173, and on their own behaves, v. Shawn Ratigan, Diocese of Kansas City - St. Joseph, and Bishop Robert Finn | MO | 5/16/2013 | 5/16/2013 | On June 2, 2011, Jane Doe 173 and her parents, Mother Doe 173 and Father Doe 173, filed an action against defendants, Father Shawn Ratigan, Diocese of Kansas City - St. Joseph, and Bishop Robert Finn, in the U.S. District Court for the Western District of Missouri. The action was assigned to Judge Gary A. Fenner. Plaintiffs alleged that Ratigan, a Roman Catholic priest, had taken pornographic photographs of Jane Doe 173, a minor, and had uploaded the pictures to his computer and distributed them over the internet. At the time of the alleged activity, Ratigan was under the direct supervision, employ, and control of Bishop Finn and the Diocese. Through an amended complaint filed on May 16, 2013, plaintiffs asserted claims under federal child pornography prohibition laws set out at 18 U.S.C.S. §§ 2251, 2252 and 2255. According to a news article published on May 16, 2013, the parties reached a $ 600,000.00 settlement of the action after Judge Fenner granted partial summary judgment to the Diocese and Finn. Nothing had yet been filed in the court record on that day to confirm the settlement.  Award: $600,000 | 1 | | $600,000 | $600,000 | 1.377 | $826,277 | Likely / Mostly Within SOL |
| 4 | B.T. v. Catholic Diocese of Kansas City-St. Joseph | MO | 7/24/2013 | 7/24/2013 | B.T. was an altar boy at the Nativity of Mary church, where Thomas O'Brien served as a priest. Over a period of about two years, O'Brien allegedly sodomized B.T. and forced him and other altar boys to perform sex acts on him on church grounds. B.T. turned 14, he committed suicide. More than 25 years later, one of the victims revealed O'Brien's sexual abuse of B.T. B.T.'s estate sued the Catholic Diocese of Kansas City-St. Joseph, alleging it failed to supervise O'Brien and fraudulently concealed facts that would have revealed the reason for B.T.'s suicide. Suit also named O'Brien, alleging liability for the abuse. The plaintiff charged that, among other things, the diocese had received 50 complaints about O'Brien's inappropriate relations with children. The parties settled for about $ 2.25 million. O'Brien paid $ 2,500, and the diocese paid the rest. | 1 | | $2,250,000 | $2,250,000 | 1.373 | $3,089,902 | Likely / Mostly Outside SOL |
| 5 | Diocese of Charlotte | NC | 9/6/2013 | 9/6/2013 | In May 2009, the parents of plaintiff Jane Doe, 13, reported to the police that their daughter had been sexually abused by defendant Paul Lawrence Berrell, who was the girl's teacher and choir leader at Asheville Catholic School. The abuse reportedly included Berrell taking pictures of Doe performing sexual acts. Berrell was arrested and charged. In 2011, he pled guilty to child pornography charges stemming from his alleged abuse of Doe and was sentenced to 28 years in prison. Doe's parents sued Berrell, The Roman Catholic Diocese of Charlotte North Carolina, the Diocese of Charlotte and Berrell's supervisor, Rev. John Schneider. The plaintiffs alleged that the church had a pattern of hiring and protecting sexual predators and that Schneider not only permitted Berrell to repeatedly molest their daughter, but promoted Berrell's illegal activities and helped him avoid detection. The plaintiffs maintained that Berrell was transferred to the Diocese in Charlotte in 2007 after having been removed from several other parishes amidst allegations of improper relationships with minors. The plaintiffs claimed the church and Schneider were aware of the previous incidents, yet allowed Berrell to continue working with children. They further alleged that Schneider attempted to destroy evidence to prevent Berrell's prosecution once Doe's allegations came to light. The parties negotiated a $1.54 million settlement, with Jane Doe receiving $1.2 million and her parents receiving $340,000. | 1 | | $1,540,000 | $1,540,000 | 1.370 | $2,109,871 | Likely / Mostly Within SOL |

CONFIDENTIAL PURSUANT TO PROTECTIVE ORDER

| | | | | | Background Information | | Settlement Total | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Ref. No. | Case Name / Settling Institution | State | Settlement Date[1] | Date (For Inflation) | Case Description | Number of Claimants | Settlement Amount | Average Settlement Amount | Inflation Factor[2] | Inflation-Adjusted Average Settlement Amount | Statute of Limitations[3] |
| 6 | Jane Doe 49, by and through John Doe 50 and Jane Doe 51 v. Catholic Diocese of Kansas City-St. Joseph and Robert Finn | MO | 10/25/2013 | 10/25/2013 | A Jackson County circuit judge approved a $ 1.35 million settlement that resolves a lawsuit involving claims that a priest took inappropriate photos of a young girl. Following a closed-door hearing in Independence on Oct. 25, Judge Kenneth Garrett signed off on the agreement between the Catholic Diocese of Kansas City-St. Joseph and the girl's parents. The case — one of several stemming from allegations against the Rev. Shawn Ratigan — initially had been set for trial earlier in October. Sarah Brown, an attorney for the plaintiffs, declined to comment after the hearing, saying they wanted to protect their clients' privacy. The diocese, however, announced the results of the settlement in a statement. "The Diocese today reiterates its great sorrow for the harm and grief visited upon children and their families by the actions of Shawn Ratigan," the Diocese said. "We further recommit ourselves to fostering safe environments for children and promptly reporting suspicions of abuse to law enforcement." The suit, filed in August 2011, alleged that Ratigan had taken covert photos of the plaintiff when she was 9 years old or younger. The suit also alleged that the head of the diocese, Bishop Robert Finn, allowed Ratigan continued access to children even after learning of the contents of Ratigan's computer. | 1 | $1,350,000 | $1,350,000 | 1.374 | $1,854,338 | Likely / Mostly Within SOL |
| 7 | John Doe M.R. v. Father James Urbanic, Missionaries of the Precious Blood Kansas City Province Inc. and Catholic Diocese of Kansas City-St. Joseph | MO | 12/13/2013 | 12/13/2013 | A $130,000 settlement ended a lawsuit alleging that a priest sexually abused a student at a St. Joseph Catholic high school. The suit alleged that Father James Urbanic, a religion instructor at Bishop LeBlond High School in St. Joseph from 1971 to 1978, touched the plaintiff inappropriately during the mid-1970s. The plaintiff, identified as John Doe M.R., is now an adult and lives in another state, according to court records. The petition, filed in 2012 in Buchanan County Circuit Court, also alleged that Urbanic's superiors were warned of his behavior as early as 1975 but that no action was taken. The suit named the priest, the Catholic Diocese of Kansas City-St. Joseph and the Missionaries of the Precious Blood, a religious order with which Urbanic was affiliated. The defendants denied the allegations. | 1 | $130,000 | $130,000 | 1.377 | $178,947 | Likely / Mostly Outside SOL |
| 8 | Archdiocese of Los Angeles | CA | Article dated 2/19/2014 | 2/19/2014 | The Los Angeles Diocese has agreed to settle sex abuse claims filed by 17 victims for $13 million just before the trial of father Nicolas Aguilar Rivera was scheduled to begin. Santa Barbara's former auxiliary bishop Thomas Curry, who has been accused of "thwarting" the police investigation of the crimes at the time they were first reported in the late 1980s, was slated to appear as witness in that trial, as was former Cardinal Roger Mahony. According to church and police documents, Curry — at that time Mahony's right-hand man — met with the accused priest after two families complained to him. Curry notified Aguilar the police had been alerted and "that he was in a good deal of danger." Aguilar said he would return to Mexico — where he was from — and Curry made no effort to dissuade him or alert authorities. Later, Mahony would insist the archdiocese did everything within its powers to get Aguilar to return to face his charges. Attorneys for the plaintiffs have argued that Mahony and Curry had to have known Aguilar had a history of pedophilia given the coded warnings made by Aguilar's superior's in Mexico at the time he transferred to Los Angeles. | 17 | $13,000,000 | $764,706 | 1.366 | $1,044,862 | Likely / Mostly Outside SOL |
| 9 | Jane Doe 127, by and through John Doe 128 and Jane Doe 129 v. Catholic Diocese of Kansas City-St. Joseph, Robert Finn and Shawn Ratigan | MO | 2/21/2014 | 2/21/2014 | The suits alleged that Rev. Shawn Ratigan had taken covert photos of the plaintiffs. The suits also alleged that the head of the diocese, Bishop Robert Finn, allowed Ratigan continued access to children even after learning of the contents of Ratigan's computer. The Catholic Diocese of Kansas City-St. Joseph announced the results of the settlement in a statement but did not admit fault. Diocese officials allegedly found disturbing images on Ratigan's laptop in December 2010 but didn't report it to police for five months. Finn was convicted in 2012 in Jackson County Circuit Court of a misdemeanor for failing to report suspicions of child abuse. Ratigan pleaded guilty in 2012 to federal child pornography charges and was sentenced to 50 years in prison.

Result: $ 525,000 ; $ 80,076 each for plaintiff's parents, $ 150,000 annuity for minor plaintiff, $ 214,848 in attorneys' fees and expenses. | 3 | $525,000 | $175,000 | 1.366 | $239,113 | Likely / Mostly Within SOL |

CONFIDENTIAL PURSUANT TO PROTECTIVE ORDER

| | Background Information | | | | | | Settlement Total | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Ref. No. | Case Name / Settling Institution | State | Settlement Date[1] | Date (For Inflation) | Case Description | Number of Claimants | Settlement Amount | Average Settlement Amount | Inflation Factor[2] | Inflation-Adjusted Average Settlement Amount | Statute of Limitations[3] |
| 10 | Jane Doe, a minor, brought by her parent and guardian, Baratta, Russell & Baratta v. Sean Theisen and Immanuel Evangelical Lutheran Church | PA | 6/8/2014 | 6/8/2014 | In late 2010 and early 2011, plaintiff Jane Doe, 14, began dating Sean Theisen, 23, after the two met on Facebook. Theisen was a part-time sexton/janitor of the Immanuel Evangelical Lutheran Church, at 1013 Cottman Ave. in North Philadelphia. Doe alleged that on one occasion, in January 2011, the two kissed at the church, and on March 13, they engaged in consensual sexual intercourse in the church's elevator, during non-work hours. On March 23, the teen claimed that Theisen broke up with her, which prompted her to report the incident to her father. The next day, Theisen was arrested and charged with statutory sexual assault. He pleaded guilty, and on July 23, 2012, he was ordered to serve five years probation plus two years consecutive probation. Following the end of her relations with Thesien, the teen reportedly began engaging in self-harming behavior. The teen sued Theisen and Immanuel Evangelical Lutheran Church on claims of assault and battery and negligent infliction of emotional distress, asserting that the church failed to properly screen Theisen before hiring him. According to plaintiff's counsel, Theisen regularly brought his adult girlfriend to the premises, where, on several occasions, he engaged in sexual acts with her. The plaintiff alleged that this proved the church failed to properly supervise Theisen, causing his use of the premises for his own whims, knowing there would be no repercussions. The church maintained that the act did not occur during the course and scope of Theisen's employment, and that it was a criminal act which the church could not have foreseen. Following the close of discovery, the parties, during a court-ordered settlement conference, settled for $450,000. | 1 | $450,000 | $450,000 | 1.346 | $605,672 | Likely / Mostly Within SOL |
| 11 | John Does v. Corporation of the Catholic Archbishop of Seattle | WA | 6/24/2014 | 6/24/2014 | 1950's-1984 - Plffs are 30 males that are between the ages of 45 to 70. Plffs claimed they were sexually abused as children at two schools owned by the Archdiocese: O'Dea High School in Seattle, Washington, and Briscoe Memorial School, a former orphanage and boarding school in Kent, Washington. Despite knowing that the Christian Brothers, who ran the schools, posed a danger to children, the Seattle Archdiocese allowed them to continue teaching and administrating at the schools. As a result, multiple Christian Brothers physically and sexually assaulted numerous children over the years.

Result: PLAINTIFF SETTLEMENT for $12,125,000 | 30 | $12,125,000 | $404,167 | 1.346 | $543,983 | Likely / Mostly Outside SOL |
| 12 | Diocese of Kansas City-St. Joseph | MO | Article dated 10/16/2014 | 10/16/2014 | After 11 days of testimony from three dozen witnesses related to a lawsuit alleging clergy sexual abuse, jurors never received for deliberation the case brought by a former altar boy against the Kansas City-St. Joseph, Mo., diocese. Instead, a global $9.95 million settlement resolved the suit and 29 others against the diocese, just hours before closing arguments were set to begin. A statement from the diocese said the claims were filed between 2010 and early 2014 and involved allegations dating back 20 years or more. Insurers will cover "a significant amount of the settlement," it said, with the diocese responsible for the remaining balance. The diocese indicated the agreement resolves all outstanding historical sexual abuse claims. A case related to former priest Shawn Ratigan remains pending. "The Diocese sincerely hopes that this settlement can bring about some closure to those hurt by abuse in the past. The Diocese also prays for a healing which can bring peace to the hearts of all of those hurt by child sexual abuse," the statement said. The agreement came on the cusp of closing arguments in the trial brought by Jon David Couzens against the diocese. Couzens, 44, alleged in a 2011 suit that he was sexually abused on numerous occasions and at times alongside three other altar boys in the early 1980s by Msgr. Thomas O'Brien at Nativity of the Blessed Virgin Mary Church, in Independence. The case was the first for the diocese to reach the trial stage. Attorney Rebecca Randles, who represented all 30 claims, told NCR the trial served as "the impetus for the settlement," for which talks had been ongoing since April. "From our perspective, it allowed us to really analyze the risk that we face, but I'm sure that's exactly what the deal was with the diocese as well," she said outside the courtroom Wednesday. Even without a jury decision, Randles called the Couzens trial "incredibly significant" in that it allowed the story to be told under oath for the first time. | 30 | $9,950,000 | $331,667 | 1.351 | $448,114 | Likely / Mostly Outside SOL |
| 13 | J.H. v. Corporation of the Catholic Archbishop of Seattle | WA | 5/17/2015 | 5/17/2015 | Plff, female age 63, employed in retail. As a minor, Plff was sexually abused by Father Michael J. Cody beginning in 1968 when he was assigned to Skagit County by the Archdiocese of Seattle. Prior to his assignment in Skagit County, Father Cody had been diagnosed as a pedophile and had admitted to sexually abusing other young girls. On the eve of trial, the Archdiocese admitted liability for its negligent and reckless conduct.

Result: PLAINTIFF SETTLEMENT for $1,200,000, just prior to closing argument. | 1 | $1,200,000 | $1,200,000 | 1.349 | $1,618,780 | Likely / Mostly Outside SOL |

CONFIDENTIAL PURSUANT TO PROTECTIVE ORDER

Roman Catholic Archdiocese of New Orleans
Exhibit 7
Comparable Settlements

| | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| **Background Information** | | | | | | | **Settlement Total** | | | | |
| Ref. No. | Case Name / Settling Institution | State | Settlement Date[1] | Date (For Inflation) | Case Description | Number of Claimants | Settlement Amount | Average Settlement Amount | Inflation Factor[2] | Inflation-Adjusted Average Settlement Amount | Statute of Limitations[3] |
| 14 | Archdiocese of Chicago | IL | Article dated 5/18/2015 | 5/18/2015 | A man in his late 20s who said he was abused by former priest and convicted sex offender Daniel McCormack settled a claim with the Roman Catholic Archdiocese of Chicago for $1.25 million, according to his attorney. The victim claimed that he was repeatedly sexually assaulted during the fourth and fifth grades by McCormack while he was a student at St. Ailbe Catholic Church on Chicago's South Side, said the plaintiff's attorney, Eugene Hollander. The man said he suppressed the memories of the childhood abuse until he heard news about the Jerry Sandusky scandal at Penn State University in 2011. He filed a lawsuit in Cook County Circuit Court the following year. Hollander said unlike most of the sexual abuse claims against McCormack, the alleged abuse of his client occurred at McCormack's first pastoral assignment. McCormack was assigned to St. Ailbe's from 1994 to 1997. In 2007, he pleaded guilty to five charges of criminal sexual abuse at his last assignment at St. Agatha Catholic Church in North Lawndale. | 1 | $1,250,000 | $1,250,000 | 1.349 | $1,686,229 | Likely / Mostly Within SOL |
| 15 | Jane does 1-8 v. Corporation of the Catholic Archbishop of Seattle | WA | Month and year provided, March 2016 | 3/31/2016 | Plffs are eight women who brought this action against the Def., alleging sexual abuse by former priest Michael Cody, a known pedophile. Plffs claimed that the Defs. allowed Cody to serve in various Catholic parishes in Washington during the 1960s and into the late 1970s, even though it knew he was a pedophile, according to documents from what's known as Cody's "secret file" in the archdiocese. Then-Archbishop Thomas Connolly was largely responsible for moving Cody to unsuspecting parishes. Of the eight women, Cody abused six of them while he served at St. Charles Parish in Burlington, Washington, from 1968 to 1972. He abused the other two women while he was assigned to Assumption Parish in Bellingham from 1972 to 1975. Cody petitioned for removal from the priesthood in 1989, and the Catholic Church officially did so in 2005. Cody died last year. Result: PLAINTIFF SETTLEMENT for $9,100,000 | 8 | $9,100,000 | $1,137,500 | 1.347 | $1,532,362 | Likely / Mostly Outside SOL |
| 16 | Diocese of Savannah | GA | Article dated 7/6/2016 | 7/6/2016 | A settlement was reached in the lawsuit against the Catholic Diocese of Savannah on charges of alleged sexual abuse by a priest. The lawsuit, filed in Jasper County South Carolina, named former priest, and convicted child molester Wayland Yoder Brown who's accused of abusing a 13-year-old boy in the late 1980s. It also named the bishop at the time of the alleged crime Raymond Lessard as well as acting Bishop Gregory Hartmayer. The suit claimed that multiple warnings were given to the church hierarchy about Brown's behavior by clergy members as early as 1969. He was a priest for the Diocese from 1979 until 1982 then again in 1987. In 2003, Brown was convicted of molesting two minors in Maryland. He served 5 years of a 10 year sentence. The $4.5 million dollar settlement is the largest for a case of its kind in Georgia. | 1 | $4,500,000 | $4,500,000 | 1.333 | $5,999,208 | Likely / Mostly Within SOL |
| 17 | Diocese of Portland ME | ME | Article dated 8/15/2016 | 8/15/2016 | The Roman Catholic Diocese of Portland, Maine, has settled a lawsuit by six men who said church leaders concealed sex abuse allegations against a former priest. The victims settled for $1.2 million. Boston lawyer Mitchell Garabedian said Monday that the men were childhood victims of the Rev. James Vallely decades ago. The lawsuits were filed in November by men from Maine, New Hampshire and New York. The Boston Globe reported the men accused the diocese of covering up abuse by Vallely. They alleged Vallely sexually abused them as children from 1958 to 1977. Garabedian, who has represented dozens of sex abuse victims, has said the Portland diocese had knowledge of multiple accusations but didn't remove Vallely from ministry. Garabedian said church leaders could have removed Vallely from ministry but instead chose to transfer him to another parish "where children were placed at risk of further sexual abuse by a serial pedophile priest." Vallely died in 1997. A spokesman for the Portland diocese said in a statement that it hopes the settlement "brings a measure of peace to the people involved," though it will not address the charges directly. "The diocese respects the privacy and confidentiality of the victims/survivors involved in cases of sexual abuse of minors by clerics," spokesman Dave Guthro said in the statement. | 6 | $1,200,000 | $200,000 | 1.332 | $266,387 | Likely / Mostly Outside SOL |

CONFIDENTIAL PURSUANT TO PROTECTIVE ORDER

| | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| **Background Information** | | | | | | | | **Settlement Total** | | | |
| Ref. No. | Case Name / Settling Institution | State | Settlement Date[1] | Date (For Inflation) | Case Description | Number of Claimants | Settlement Amount | Average Settlement Amount | Inflation Factor[2] | Inflation-Adjusted Average Settlement Amount | Statute of Limitations[3] |
| 18 | Diocese of Buffalo and Diocese of Honolulu | HI | Year provided, 2016 | 12/31/2016 | The Catholic Diocese of Buffalo quietly paid $1.5 million in 2016 to a man who alleged a priest sexually abused him when he was a teenager more than three decades ago. It was the diocese's second financial settlement of a lawsuit alleging abuse by James A. Spielman, a former diocesan priest who served in at least six Western New York parishes and taught religion at Archbishop Walsh High School in Olean. The settlement is the largest that has come to light so far in the Buffalo Diocese for a clergy sex abuse case. The News found the case in a recent search of federal court records from Hawaii, where the lawsuit was filed. The alleged victim, who is 52, lives in Texas. In 2014, he sued Spielman and the Buffalo Diocese, along with the high school, the Diocese of Honolulu and the Southdown Institute, a facility near Toronto where offending priests were sent for psychological treatment and rehabilitation. He said he was 14 to 17 years-old and attending Archbishop Walsh High School, when Spielman repeatedly molested him at the school and other locations in both the Buffalo and Honolulu dioceses from 1979 through 1982. The alleged victim accused the diocese of knowing that Spielman had molested children in the past, covering up the abuse and transferring Spielman from parish to parish despite his history of abuse. The diocese denied the claims in court papers. The News is withholding the name of the man who sued. He could not be reached for comment, and The News does not disclose the names of sexual abuse victims without their consent. The Buffalo Diocese and Archbishop Walsh High School, which had been operated by the diocese at the time of the alleged abuse and is now an independent school, agreed to settle with the victim for $1.5 million, according to court documents. The Diocese of Honolulu paid $25,000 | 1 | $1,500,000 | $1,500,000 | 1.329 | $1,993,077 | Likely / Mostly Within SOL |
| 19 | John A. Doe and John B. Doe v. The Archdiocese of Chicago, The Catholic Bishop of Chicago, a corporation sole, and Cardinal Francis George | IL | 1/3/2017 | 1/3/2017 | From 2004 to 2005, plaintiff John A. Doe, 16, a student and his brother, plaintiff John B. Doe, 14, also a student, were allegedly sexually abused on a weekly basis by St. Agatha's Catholic Church and Our Lady of West Side School's Catholic pastor Daniel McCormack. The abuse reportedly occurred during the boys' participation in an after-school program run by the church on its Chicago premises. John A. Doe and John B. Doe claimed emotional distress as a result of the alleged abuse. The Doe brothers sued the entities which ordained and hired McCormack as a Roman Catholic priest within the Chicago Archdiocese. The brothers also sued Cardinal George Francis, the bishop of the Archdiocese of Chicago. The brothers' lawsuit alleged a breach of duty of care and wanton disregard for the wellbeing of young people. Francis had been named as a defendant in the lawsuit until his death in 2015. Plaintiffs' counsel contended that McCormack had a prior history of abusing minors and a previous inappropriate sexual contact with a minor boy in Mexico and Archdiocese entities had known about the prior abuse. The brothers contended that, in or around 1999, McCormack's prior employer reported the allegations to the Archdiocese entities, but the Archdiocese failed to disclose the abuse to the state's Department of Family Services, in violation of the Abused and Neglected Reporting Act. The lawsuit claimed that the Archdiocese knew McCormack had a history of sexually abusing minors and that he had sexually abused children/student at a parish where he had previously been employed, yet the Archdiocese negligently hired McCormack in spite of his history. Plaintiff's counsel claimed the Archdiocese failed to investigate the prior abuse and promoted McCormack within the Archdiocese, allowing him to supervises after-school programs and coach youth basketball. It was alleged that the Archdiocese failed to disclose McCormack's history of abuse to a parish when McCormack was promoted to pastor of the parish in 2000. The Doe brothers claimed they were abused on school grounds during after-school programs, recreational activities and basketball tournaments. They alleged they were also abused in McCormack's residence on parish grounds and in various other locations on school grounds. Plaintiff's counsel argued that the school hired McCormack and had an obligation to its students to ensure its employees acted appropriately and that school officials were aware of the abuse and failed to investigate the claims. | 2 | $2,700,000 | $1,350,000 | 1.321 | $1,783,376 | Likely / Mostly Within SOL |
| 20 | Archdiocese of Baltimore | MD | Article dated 1/6/2017 | 1/6/2017 | A woman who 24 years ago tried to warn the Catholic Church in Maryland that a priest had shown her the body of a murdered teaching nun recently earned a $50,000 settlement from the Archdiocese of Baltimore (AOB) for clergy sexual-abuse "injuries" she reportedly received while attending a Baltimore girls' Catholic high school in the late 1960s. The mediated settlement marked the latest startling development in one of the most tangled and perplexing homicide "cold cases" in Maryland history . . . the 1969 slaying of a 26-year-old teaching nun, Sister Catherine Cesnik, who reportedly had been trying to blow the whistle on widespread sexual abuse by two priests at Archbishop Keough High School in southwest Baltimore. | 1 | $50,000 | $50,000 | 1.321 | $66,051 | Likely / Mostly Outside SOL |

| | Background Information | | | | | | Settlement Total | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Ref. No. | Case Name / Settling Institution | State | Settlement Date[1] | Date (For Inflation) | Case Description | Number of Claimants | Settlement Amount | Average Settlement Amount | Inflation Factor[2] | Inflation-Adjusted Average Settlement Amount | Statute of Limitations[3] |
| 21 | Archdiocese of Chicago | IL | 3/17/2017 | 3/17/2017 | The Archdiocese of Chicago will pay $3.15 million to settle lawsuits brought by three men who allege they were sexually abused by a notorious former pastor of a West Side Catholic church more than a decade ago. The accusers, all identified in court papers as John Doe, said former priest and convicted sex offender Daniel McCormack sexually abused them more than once during their participation in an after-school program called S.A.F.E. at Our Lady of the Westside Catholic School. The settlements were reached March 17, according to Lyndsay Markley, an attorney for the three plaintiffs. "The archdiocese does not comment on the details of settlements out of respect for the privacy of those involved," said spokeswoman Colleen Tunney-Ryan. The lawsuits filed in Cook County Circuit Court in 2015 allege that the archdiocese and the late Cardinal Francis George had evidence that McCormack was unfit to work with children even before he was ordained in 1994, yet still allowed him to serve as a teacher, basketball coach and priest. McCormack alone already has cost the archdiocese millions of dollars in settlements, and there are additional cases pending. Though the archdiocese has maintained a pledge by the late Cardinal Joseph Bernardin that no money from the collection plate would be used to cover sex abuse settlements, insurance no longer covers any claims involving McCormack, and the scandal has had an impact on the long-term financial stability of the church. So far, the sale of unused real estate has covered the costs. | 3 | $3,150,000 | $1,050,000 | 1.316 | $1,381,597 | Likely / Mostly Within SOL |
| 22 | Archdiocese of Seattle | WA | Article dated 9/25/2017 | 9/25/2017 | The Seattle Archdiocese has paid $1.3 million to settle a sex abuse lawsuit involving a former member of a religious order who taught in its schools. A man sued the archdiocese in 2015, alleging the church knew Edward Courtney abused students at two archdiocesan schools in Seattle but later recommended him for a teaching job at a public school outside Tacoma. The man alleged Courtney abused him in 1981 and 1982 at the public school. Courtney was not criminally charged in the case, or named as a defendant in the lawsuit. Efforts to locate Courtney Monday were not immediately successful. The lawsuit alleges the archdiocese and Christian Brothers should have reported Courtney to the authorities rather than give him access to children. The plaintiff's attorney, Michael Pfau, says the settlement was finalized last week. | 1 | $1,300,000 | $1,300,000 | 1.300 | $1,689,633 | Likely / Mostly Outside SOL |
| 23 | D.W. v. Corporation of the Catholic Archbishop of Seattle; Franklin Pierce School District | WA | 2/27/2018 | 2/27/2018 | 1981 - Plff, male age 48, Police Officer. As a minor, Plff was sexually abused by Edward Courtney, a former Archdiocese employee when Courtney was working as a public school teacher at Parkland Elementary near Tacoma, Washington. Plff filed a claim against the Archdiocese because the Archdiocese removed Courtney from its private school system for molesting children, but despite knowing that he was a sexual predator with a long history of abusing children, the Archdiocese did nothing to report him to the authorities. Instead, the Archdiocese helped Courtney get a job in the public school system where he molested Plff and other children. Plff contended that the Def. School District was also at fault because it received multiple reports that Courtney was abusing students at Parkland Elementary, but failed to remove Courtney from the school or report him to law enforcement. For example, Plff in court pleadings cited the testimony of a former school secretary who testified that a student wrote a letter to the principal complaining that Courtney had sexually abused him. Plff alleged that the principal allowed Courtney to remain at the school, which enabled him to continue abusing Plff and other students. | 1 | $2,450,000 | $2,450,000 | 1.288 | $3,156,531 | Likely / Mostly Outside SOL |
| 24 | Doe & Roe v. Willow Creek Community Church | IL | Year and month provided, February 2018 | 2/28/2018 | Willow Creek Community Church agreed to pay more than $3 million to settle lawsuits over the sexual abuse of two developmentally disabled boys by a church volunteer, court records show. The second and largest of the settlements, for $1.75 million, was made in February, before the Tribune revealed unrelated claims that the evangelical megachurch's founder, the Rev. Bill Hybels, engaged in inappropriate conduct with women, eventually leading to his early retirement and, this month, the resignation of the church's two leading pastors and its entire board of elders. Sobczak, now 24, is serving a seven-year prison sentence after pleading guilty to sexually abusing an 8-year-old boy with special needs at the church and an older boy who was not connected to Willow Creek. In 2013, Sobczak pleaded guilty to sexually abusing another disabled boy, around age 9, at the church, and initially received probation in that case. The civil lawsuits filed against the church by the families of the two younger boys, identified by the pseudonyms Jack Roe and John Doe, claim Sobczak abused one of the boys repeatedly, and that the church should have acted on warning signs before he molested his second victim. Sobczak was a volunteer "buddy" for Willow Creek's Special Friends program for children with intellectual or developmental disabilities or other special needs. Attorneys for the family of Jack Roe wrote that he was 8 years old when Sobczak molested him in February 2013. That day, the boy told his mother, who told church officials, who contacted police, which triggered the criminal investigation and the first sexual abuse charge against Sobczak. The lawsuits alleged that Sobczak abused John Doe multiple times prior to that. | 2 | $3,250,000 | $1,625,000 | 1.288 | $2,093,617 | Likely / Mostly Within SOL |

Roman Catholic Archdiocese of New Orleans
Exhibit 7
Comparable Settlements

CONFIDENTIAL PURSUANT TO PROTECTIVE ORDER

| Background Information | | | | | | Settlement Total | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Ref. No. | Case Name / Settling Institution | State | Settlement Date[1] | Date (For Inflation) | Case Description | Number of Claimants | Settlement Amount | Average Settlement Amount | Inflation Factor[2] | Inflation-Adjusted Average Settlement Amount | Statute of Limitations[3] |
| 25 | Order of St Augustine | MA | Article dated 7/17/2018 | 7/17/2018 | A Roman Catholic order has agreed to pay $1 million to eight people who say they were sexually abused by two priests in Massachusetts. The Boston Globe reports attorney Mitchell Garabedian the settlement with his clients and the Order of Saint Augustine was decided last month. The Augustinians say they settled due to a "desire to promote healing." Garabedian says five men and three women were abused by the Revs. John Gallagher and Robert Turnbull in the 1970s and early 1980s. The victims were 9 to 12 years old at the time. Garabedian says one of the victims wrote about her abuse to the late Cardinal Bernard Law, which proved that the former archbishop of Boston knew of sexual abuse by priests. | 8 | $1,000,000 | $125,000 | 1.273 | $159,121 | Likely / Mostly Outside SOL |
| 26 | Diocese of Joliet | IL | Article dated 8/31/2018 | 8/31/2018 | A suburban Chicago Catholic diocese has agreed to pay $1.4 million to settle a lawsuit filed by three men who say they were molested by their priest when they were boys. The three men, who requested anonymity, say they were repeatedly abused by Father Leonard Mateo of the Roman Catholic Diocese of Joliet between 1980 and 1982. They were all under the age of 11. They made the allegations against Mateo in 2014. Plaintiffs' attorneys said Bishop Joseph Imesch admitted in a deposition that priests with credible sexual abuse allegations were allowed to continue ministry within the Diocese of Joliet without any warning to parishioners. "This is a priest who was continuously moved from one parish to the next upon allegations of sexual misconduct, normalizing his sexual abuse of children and dispelling any notion it was wrong," attorney Antonio M. Romanucci said. The settlement reached in Will County Circuit Court will be distributed between the plaintiffs. | 3 | $1,400,000 | $466,667 | 1.272 | $593,721 | Likely / Mostly Outside SOL |
| 27 | Diocese of Brooklyn | NY | Article dated 9/18/2018 | 9/18/2018 | Four men who were repeatedly sexually abused as children by a religion teacher at a Roman Catholic church reached a $27.5 million settlement with the Diocese of Brooklyn and a local after-school program on Tuesday, in one of the largest settlements ever awarded to individual victims of abuse within the church. The victims were repeatedly abused by Angelo Serrano, 67, who taught catechism classes and helped organize the religious education programs at St. Lucy's-St. Patrick's Church, in Clinton Hill, Brooklyn. The abuse occurred inside the church, in Mr. Serrano's apartment located in an old schoolhouse behind the church and at the affiliated afterschool program, lawyers for the victims said. The sexual assaults in Brooklyn took place between 2003 and 2009, the lawyers said, when the boys were between the ages of 8 and 12. One of the boys reported the abuse to his mother, who contacted the police. Mr. Serrano was arrested in September 2009, and pleaded guilty two years later to first-degree sexual conduct charges; he is serving a 15-year sentence at the Fishkill Correctional Facility. Seeking punitive damages from the diocese, two of the victims filed a lawsuit in 2013, and the other two victims later brought lawsuits as well. The pastors at the church during the time the abuse occurred, the Rev. Stephen P. Lynch and the Rev. Frank Shannon, were named as co-defendants. With the case set for trial, the Diocese of Brooklyn agreed to settle. But in a statement released on Tuesday, the diocese still seemed to minimize its role in allowing the abuse. "The diocese and another defendant have settled these lawsuits brought by the four claimants who were sexually abused by Angelo Serrano at his private apartment many years ago," the statement said. "Mr. Serrano was a volunteer worker at a local parish; he was not clergy or an employee of the diocese or parish." The Brooklyn diocese, which includes Queens, is already in the process of settling hundreds of older abuse cases where the victims can no longer sue because of the statute of limitations. | 4 | $27,500,000 | $6,875,000 | 1.271 | $8,736,628 | Likely / Mostly Within SOL |
| 28 | Archdiocese of New Orleans | LA | Year provided, 2018 | 12/31/2018 | The Archdiocese of New Orleans pays a $550,000 settlement to a man who was an altar boy when George Brignac was in charge of the altar boy program at Our Lady of the Rosary and was a student of Brignac's at the school there. He claims Brignac raped him and otherwise molested him regularly between 1978 and 1982, at Brignac's house and in his car. The least 15 other Brignac victims receive settlements from the archdiocese totaling roughly $3 million. Meanwhile, Archbishop Gregory Aymond in November releases a list of 57 priests and deacons faced with credible child sex abuse allegations. Brignac's name is first on the roster, which spurs another wave of abuse claims against the archdiocese | 1 | $550,000 | $550,000 | 1.277 | $702,285 | Likely / Mostly Outside SOL |

Roman Catholic Archdiocese of New Orleans
Exhibit 7
Comparable Settlements

CONFIDENTIAL PURSUANT TO PROTECTIVE ORDER

| | Background Information | | | | | | Settlement Total | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Ref. No. | Case Name / Settling Institution | State | Settlement Date[1] | Date (For Inflation) | Case Description | Number of Claimants | Settlement Amount | Average Settlement Amount | Inflation Factor[2] | Inflation-Adjusted Average Settlement Amount | Statute of Limitations[3] |
| 29 | John Doe, a minor, by and through his mother, Jane Doe v. San Ramon Valley Unified School District, New Life Church of Alamo and Kevin Lopez | CA | Article dated 1/10/2019 | 1/10/2019 | The law firm of Cerri, Boskovich & Allard is announcing a $1.548 million settlement resulting from sexual abuse committed by convicted wrestling coach and youth group leader Kevin Lopez. Attorney Lauren Cerri represented the victim in his lawsuit against both the San Ramon Valley Unified School District and New Life Church of Alamo. The lawsuit alleged that one year before Lopez was arrested, the administration at California High School in the San Ramon Valley Unified School District violated mandatory reporting laws by failing to report suspected sexual abuse and by conducting its own investigation after receiving two complaints about Lopez's sexual improprieties. The District agreed to settle the case against it for $699,000. In the case against New Life Church of Alamo, "evidence revealed that the Church received numerous complaints about Lopez's red flag grooming behavior and not only ignored the warning signs but also allowed Lopez to chaperone kids to camps and mission trips in California and Mexico," said Cerri. "Lopez was seen cuddling in bed and 'spooning' with our client in Mexico and the Church did not report the incident. It took no action whatsoever to stop the easily preventable sexual abuse that occurred after that trip." The Church's insurance company agreed to pay $849,000 to settle the case, $549,000 more than the $300,000 sexual abuse insurance coverage that its insurance policy provided. The Church also reevaluated and strengthened its child protection policies as a result of the abuse. | 1 | $1,548,000 | $1,548,000 | 1.274 | $1,972,853 | Likely / Mostly Within SOL |
| 30 | Diocese of Bridgeport | CT | Article dated 3/20/2019 | 3/20/2019 | The Roman Catholic Diocese of Bridgeport has agreed to pay $3.55 million to five men who claim in lawsuits they were sexually abused as children by priests. The claimed abuse occurred from the late 1980s to the early 2000s by three priests, the Rev. Walter Coleman, the Rev. Robert Morrissey and the Rev. Larry Jensen, in Bridgeport, Brookfield, Danbury and Ridgefield. The settlements were reached following mediation with the law firm, Tremont, Sheldon, Robinson and Mahoney, of Bridgeport, which represented the five plaintiffs. "As a result of countless hours of effort and hard work over the past 25 years, our law firm has been able to develop a collection of materials and information which we use to get our clients compensation for the abuse they have suffered," said attorney Douglas Mahoney. "While the money can never take away their pain, we hope that the resolution will allow them to take a small step forward with their healing." Connecticut has a five-year statute of limitations on criminal charges, but in 2002 extended the limit on filing lawsuits until the alleged victims reach the age of 48. Legislatures in New York and Pennsylvania are debating similar laws but are facing stiff opposition from the church. Two of the men in the new lawsuits were altar boys at St. Patrick's Church, now known as The Cathedral Parish in Bridgeport, and students at St. Patrick's School when they were allegedly abused in the 1970s and 1980s by Coleman, who was pastor of the parish. The third man claims he was sexually abused by Coleman at St. Joseph's Parish in Brookfield in the 1980s, when Coleman was reassigned there as pastor. The fourth plaintiff was allegedly sexually abused by Morrissey at St. Mary's Parish in Ridgefield in the 1990s. The fifth plaintiff first met Jensen in the early 2000s at an Emmaus retreat. Emmaus is a youth ministry operated by the diocese for decades, and thousands of children throughout Fairfield County have attended its overnight retreats. | 5 | $3,550,000 | $710,000 | 1.262 | $895,998 | Likely / Mostly Within SOL |
| 31 | Erie Diocese | PA | Article dated 3/26/2019 | 3/26/2019 | The Roman Catholic Diocese of Erie has reached a $2 million settlement with a man who was allegedly sexually abused as a minor by a former priest in the diocese for nearly eight years. The victim, who is being referred to as "John Doe," was allegedly assaulted while Poulson was assigned to St. Michael's Church in Fryburg and St. Anthony of Padua Church in Cambridge Springs from 2002 to 2010. The male, now in his 20s, has only been identified as "Victim No. 1" in the criminal case, but details of his abuse allege that Poulson made Doe say confession after the assaults. Poulson, 65, of Oil City, was defrocked earlier this month after pleading guilty to corruption of minors and endangering the welfare of children. He was sentenced in January to two and a half to 14 years in prison for sexually assaulting one boy and attempting to assault another at a Jefferson County cabin between 2002 and 2010. Prosecutors said the Erie Diocese had received complaints about what they say were Poulson's "sexual predator tendencies" as far back as 2010, but did not report him to law enforcement until the grand jury issued a subpoena in September 2016. He was accused of abusing an altar boy more than 20 times in various rectories. The $2 million settlement is believed to be the largest settlement the Diocese of Erie has made to any victims of clergy sexual abuse, according to attorney Mitchell Garabedian. | 1 | $2,000,000 | $2,000,000 | 1.262 | $2,523,938 | Likely / Mostly Within SOL |

| | Background Information | | | | | | Settlement Total | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Ref. No. | Case Name / Settling Institution | State | Settlement Date[1] | Date (For Inflation) | Case Description | Number of Claimants | Settlement Amount | Average Settlement Amount | Inflation Factor[2] | Inflation-Adjusted Average Settlement Amount | Statute of Limitations[3] |
| 32 | Jane Doe, a minor, by and through her guardian ad litem Ms. Doe v. The Roman Catholic Archdiocese of Los Angeles, San Gabriel Mission High School and Ivan Barajas | CA | Article dated 4/16/2019 | 4/16/2019 | The Archdiocese of Los Angeles has agreed to pay $8 million to a teenager who was sexually abused by the athletic director at her Catholic high school who had continued to work despite prior allegations of misconduct. A court finalized the settlement last week of a negligence lawsuit, said David Ring, an attorney for the teenager. The archdiocese has paid out more than $740 million in sexual abuse settlements over the past 15 years. Ring said the $8 million is the largest payment to a single individual in any of the cases. "The Archdiocese recognizes that there was serious harm done to the life of the victim-survivor," the archdiocese said in a statement. "We hope that the settlement will allow her to heal and move forward with her education and lifetime goals. The Archdiocese apologizes for the impact that this caused in her life." Juan Ivan Barajas, a health teacher and athletic director at San Gabriel Mission High School, began having sex with the girl, then 15, in 2016 and eventually kidnapped her, according to court documents. He took her to Las Vegas after his wife discovered evidence of the abuse on his cellphone, the records said. After five days on the run, Barajas was arrested and the girl was rescued. The lawsuit alleged that the archdiocese failed to take action despite repeated complaints of misconduct by Barajas involving other students at the all-girls school. A year before Barajas was arrested, a coach at the school reported to the principal that on more than 50 occasions Barajas took a girl into his office where the two were alone, the Times said, citing court documents. The plaintiff in the lawsuit is emotionally scarred and suffers panic attacks and flashbacks, according to court records. Her attorney said the teenager is graduating from a non-Catholic high school and wants to attend college. "She's still struggling emotionally," he said. "She's come a long way but she has a long way to go." | 1 | $8,000,000 | $8,000,000 | 1.255 | $10,042,575 | Likely / Mostly Within SOL |
| 33 | Hanna Boys Center | CA | Article dated 6/26/2019 | 6/26/2019 | "I felt like I was suffering in silence, and if I did speak that it wouldn't even matter, Robert Kennedy said. "That's what I kept telling myself." On Wednesday the Santa Rosa man spoke for the first time outside of court about his experience, standing at a press conference outside the Hanna Boys Center and later in an exclusive interview. The account he shared followed news Tuesday that he and his brother, another of Kevin Scott Thorpe's victims, had reached a $6.8 million settlement in their pair of lawsuits against Hanna Boys Center and the affiliated Santa Rosa Diocese of the Catholic Church. The settlement is the latest development in a painful and tumultuous period for the vulnerable 74-year-old boys center, which has struggled after a wave of troubles linked to Thorpe's misconduct, a related whistleblower case and ensuing turmoil in the ranks of staff and board leaders. The facility is on three years of probation after nearly losing its license in the wake of Thorpe's arrest, a second staff misconduct case and the whistleblower suit that resulted in a $1.1 million jury award. A state licensing agency said Thorpe had as many as seven young victims at Hanna, but his criminal case focused only on four, including the two brothers. Kennedy was 13 when he and his older brother, 15, arrived at Hanna Boys Center in 2006, directed there by an aunt who found herself overwhelmed by the arrival of three nephews sent to her from Ohio where they had spent three years fending for themselves. Their father, a physically abusive man, was in jail, and their mother was addicted to drugs and eventually was jailed herself. Kennedy's brother, who now lives in Fresno, graduated from Archbishop Hanna - the center's high school - in 2010 and has continued to struggle emotionally, though he now has a wife and a daughter. Kennedy left Hanna Boys Center in 2012, and says Thorpe informed him after graduation that he had been in a sexual relationship with both brothers. The two siblings have never been discussed in it to this day. | 2 | $6,800,000 | $3,400,000 | 1.252 | $4,258,180 | Likely / Mostly Within SOL |

Roman Catholic Archdiocese of New Orleans
Exhibit 7
Comparable Settlements

CONFIDENTIAL PURSUANT TO PROTECTIVE ORDER

| | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Background Information** | | | | | | | | **Settlement Total** | | | | |
| Ref. No. | Case Name / Settling Institution | State | Settlement Date[1] | Date (For Inflation) | Case Description | Number of Claimants | | Settlement Amount | Average Settlement Amount | Inflation Factor[2] | Inflation-Adjusted Average Settlement Amount | Statute of Limitations[3] |
| 34 | Diocese of Little Rock | AR | Article dated 6/28/2019 | 6/28/2019 | The Catholic Diocese of Little Rock confirmed Thursday night that it paid nearly $800,000 to five men who say an Arkansas priest sexually abused them when the men were boys in the early 1970s. North Little Rock attorney Josh Gillispie filed a legal claim on behalf of the men that said the Rev. John J. McDaniel sexually abused them while the men were students at Our Lady of the Holy Souls Catholic Church in Little Rock. Dennis Lee, a spokesman for the Diocese of Little Rock, confirmed the diocese agreed to pay $790,000 to settle the case after reaching an agreement with the men through a third-party mediator last month. The settlement is the first publicly acknowledged payment by the Diocese of Little Rock since the diocese released a list of clergy who worked in Arkansas at some point and had credible or substantiated claims of sexual abuse against them. It is unknown how many accusations there are or whether the diocese plans to settle other cases. "The abuse that Fr. McDaniel visited upon these trusting, innocent boys was unusually horrific, even compared to other priest abuse cases," Gillispie said in a statement announcing the settlement. The men were between 12 and 15 years old at the time, he said. Gillispie said the abuse happened on campus, and witnesses reported seeing McDaniel take boys to his rectory bedroom. Attorneys and the church settled their case out of court, and it blocks the men from filing lawsuits against the Diocese of Little Rock, Gillispie said. The settlement did not include nondisclosure agreements, which allows the men to speak freely about their experiences, Gillispie said. He added that such deals are rare for clergy-abuse settlements. The Diocese of Little Rock included McDaniel on its list of clergy "credibly accused" of sexual abuse. Nearly two dozen clergy members were added to the church's list, and 12 had credible accusations lodged against them in Arkansas. The others served in the state but had accusations made outside Arkansas. McDaniel served at multiple churches across the state and finished his career at the Little Rock church before his death in 1974, according to information from the diocese. Gillispie said he wants to draw attention to Arkansas laws that cap lawsuits and criminal charges from being filed after a certain amount of time passes. A few states, including New York and California, have passed laws extending the statute of limitations for child sex crimes. Some also included legal paths for victims to file lawsuits at any age for a set amount of time. | 5 | | $790,000 | $158,000 | 1.252 | **$197,880** | Likely / Mostly Outside SOL |
| 35 | Diocese of Crookston | MN | Article dated 7/18/2019 | 7/18/2019 | The Diocese of Crookston announced July 17 it has reached a $5 million settlement with victims/survivors of clergy sexual abuse. The settlement resolves 15 lawsuits for sexual abuse claims filed between April 2016 and May 2017 because of the Minnesota Child Victims Act. The legislation lifted the statute of limitations on abuse cases in Minnesota, opening a three-year window that allowed victims an opportunity to file civil claims even on cases alleged to have happened decades ago. "To all victims and survivors of sexual abuse by clergy, as the bishop of Crookston I apologize for the harm done to you by those entrusted with your spiritual care. Although you can never be fully compensated for your suffering, we are thankful this litigation has now come to a good end and are hopeful this settlement offers you justice and will be helpful for healing," Bishop Michael J. Hoeppner said in a letter to Catholics of the diocese. Last September, a U.S. Bankruptcy Court judge approved the Archdiocese of St. Paul and Minneapolis's plan for reorganization, including a $210 million settlement for victim/survivor remuneration. The reorganization process is at various stages for the dioceses of Duluth, New Ulm, St. Cloud and Winona-Rochester. | 15 | | $5,000,000 | $333,333 | 1.250 | **$416,772** | Likely / Mostly Within SOL |
| 36 | Archdiocese of Portland | OR | Article dated 8/2/2019 | 8/2/2019 | The Archdiocese of Portland has agreed to settle eight claims of sexual abuse involving former North Bend priest Rev. Pius Brazauskas. Together the settlements add up to nearly $4 million. The alleged abuse stems from about 1975 to 1985 involving boys who at the time of the abuse were between 5 and 16 years old. At the time, Brazauskas was in his 70s. Brazauskas died on March 1, 1990. He was 84 years old. A January 2018 lawsuit filed in U.S. District Court for the District of Oregon identified three victims as J.B., S.R. and S.F. They were the first sexual abuse allegations against Brazauskas. After the lawsuit was filed, five more men came forward, said Peter Janci, attorney for the victims. Janci said he believes this is the largest group to come forward to credibly accuse a single priest in Oregon since 2004, when the Archdiocese of Portland declared bankruptcy. He said even though so much is known about sexual abuse in the Catholic Church, this case represents what's still out there. | 8 | | $4,000,000 | $500,000 | 1.250 | **$625,190** | Likely / Mostly Within SOL |

CONFIDENTIAL PURSUANT TO PROTECTIVE ORDER

| | | | | | Background Information | | Settlement Total | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Ref. No. | Case Name / Settling Institution | State | Settlement Date[1] | Date (For Inflation) | Case Description | Number of Claimants | Settlement Amount | Average Settlement Amount | Inflation Factor[2] | Inflation-Adjusted Average Settlement Amount | Statute of Limitations[3] |
| 37 | Archdiocese of Seattle | WA | Article dated 1/10/2020 | 1/10/2020 | The Archdiocese of Seattle announced Thursday it has reached a $1.7 million settlement involving a Snohomish priest accused of sexually abusing a child in the 1980s. The Rev. Dennis Champagne served at St. Michael parish in Snohomish from 1979 to 1999. He was put on administrative leave in 2002, after the archdiocese received a complaint of sexual abuse. In 2006, he was placed on "permanent prayer and penance," a penalty by the Roman Catholic Church that removes a priest from public ministry, but stops short of removing his title. "He is not permitted to administer sacraments, wear clerical attire, or present himself publicly as a priest," a statement from the archdiocese says. "He is asked to pray for healing and to do penance on behalf of those who have been abused." Where or how the alleged abuse took place was not specified. By the time the abuse was reported, it was past the statute of limitations for a criminal investigation, according to the archdiocese. The statement from the archdiocese did not identify who would receive the settlement money. The agreement was reached through mediation, archdiocese spokeswoman Helen McClenahan wrote in an email. Champagne served as a parish priest at St. Michael from 1971 to 1979 before being named pastor there. After he left Snohomish, he served at St. John Bosco Parish in Pierce County and Immaculate Conception Parish in Steilacoom, until he was placed on administrative leave in June 2002. After an investigation, a review board working under the archdiocese made the recommendation to remove Champagne from service. The board's recommendation went to the archbishop, who forwarded it to the Vatican. The Vatican made the final decision to punish Champagne. Champagne was among the 16 Snohomish County priests named in a list of Catholic clergy accused of sexually abusing children and teens. The list — released by the Archdiocese of Seattle in 2016 in a step toward further transparency and accountability — identifies priests who have died, who have been defrocked or who are living a life of "permanent prayer and penance." Those on the list have either admitted to abusing children or the church has found the allegations against them were credible. | 1 | $1,700,000 | $1,700,000 | 1.244 | $2,114,003 | Likely / Mostly Outside SOL |
| 38 | Archdiocese of Los Angeles, Lawrence Lovell (perp), Claretian Missionaries | CA | Article dated 1/28/2020 | 1/28/2020 | A California Catholic Diocese on Tuesday settled the first child sexual abuse case since the passing of the Child Victims Act back in September 2019. Attorneys representing Richard Barrios, 47, allegedly abused as a child by convicted pedophile priest Lawrence Lovell, announced a $1.9 million settlement with the Archdiocese of Los Angeles, Lawrence Lovell and the Claretian Missionaries. In the lawsuit, Barrios alleged that he was sexually abused by Father Lawrence Lovell throughout a two-year period from 1982 through 1984 when the victim was 9 to 11 years old. According to the lawsuit, the abused took place in the San Gabriel Mission Church while Barrios was an altar boy. Barrios said when he was 15-16 years old, he disclosed his abuse to church authorities. Lovell served in the Phoenix Diocese before he went to Los Angeles, and he was reassigned to Phoenix after he left Los Angeles in 1984. In 1986 he was removed from ministry after he was convicted in Los Angeles of abusing a 14-year-old boy and placed on 3 years of probation. Lovell was indicted in 2003 for sexually abusing children in both Yavapai County, where he had been assigned to Sacred Heart Parish in Prescott, and in Maricopa County. He reached plea agreements in both cases, pleading guilty to single counts of child molestation and sexual conduct with a minor and received a 14-year prison sentence at the Central Arizona Correctional Facility. According to the Arizona Department of Corrections website, Lovell is set to be released on March 7, 2021. This latest case was brought forward under the Child Victims Act, a law that created a three-year window in the state's statute of limitations allowing victims of past childhood sexual abuse to seek justice. | 1 | $1,900,000 | $1,900,000 | 1.244 | $2,362,709 | Likely / Mostly Within SOL |
| 39 | Archdiocese of Chicago | IL | Article dated 4/20/2020 | 4/20/2020 | The Archdiocese of Chicago has agreed to pay a $2.1 million settlement in a lawsuit that alleged a 7-year-old girl was sexually assaulted at a Catholic church camp in 2015, according to a news release from the law firm representing the girl. The law firm, Romanucci & Blandin, did not name the camp where the abuse occurred, but a spokesman said it happened at a church in suburban Cook County. The girl, who is now 12, was repeatedly abused by a camp counselor at the church, playground and in a classroom, according to Antonio Romanucci, one of the girl's attorneys. The girl told a teacher about what happened, and the teacher notified the girl's father, according to the release. "When the father confronted the priest and church leaders, they discouraged the father from calling police, saying the allegations would ruin the girl's reputation and negatively impact attendance at the church," Romanucci said in the release. The archdiocese declined to comment. The counselor who the girl said abused her had a "suspected history" of mental health concerns, according to the release. "The church leaders involved had knowledge that this man should not be responsible for young girls, and chose to look the other way," said Martin Gould, another of the girl's attorneys. | 1 | $2,100,000 | $2,100,000 | 1.251 | $2,627,529 | Likely / Mostly Within SOL |

CONFIDENTIAL PURSUANT TO PROTECTIVE ORDER

| | Background Information | | | | | | Settlement Total | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Ref. No. | Case Name / Settling Institution | State | Settlement Date[1] | Date (For Inflation) | Case Description | Number of Claimants | Settlement Amount | Average Settlement Amount | Inflation Factor[2] | Inflation-Adjusted Average Settlement Amount | Statute of Limitations[3] |
| 40 | Order of St Augustine | MA | Article dated 8/27/2020 | 8/27/2020 | A Catholic order has agreed to pay nearly $1.4 million to 11 "courageous" clergy sexual abuse victims who claimed that a Lawrence priest abused them in the 1970s, their lawyer announced on Thursday. Boston attorney Mitchell Garabedian, who specializes in sexual abuse cases, said he settled the clergy sexual abuse claims with the Augustinian Order in February for a total amount of $1,375,000. The 10 women and one man — now in their 50s — claimed that Father John J. Gallagher sexually abused them at St. Mary's School in Lawrence, where they were students. Gallagher, who died in 2006, was also previously accused of abusing three women when they were children at the Lawrence parish — which led to a $1 million settlement in 2018. The abuse of the 11 victims happened from about 1974 to 1978 while they were about 8 to 14 years old, according to Garabedian. The abuse happened in the gym and cafeteria areas at St. Mary's School and the swimming pool areas of the Lawrence Reform School and the Lawrence YMCA, Garabedian said. | 11 | $1,375,000 | $125,000 | 1.234 | $154,277 | Likely / Mostly Outside SOL |
| 41 | Diocese of Columbus | OH | Month and year provided, August 2020 | 8/31/2020 | The Roman Catholic Diocese of Columbus is paying a $1 million settlement to a survivor of clergy sexual abuse. The settlement resolves a lawsuit from July 2018. The survivor said he was sexually abused by a Catholic school teacher as a student at St. Charles Preparatory School. St. Charles is an all-male school in Columbus, OH. In the lawsuit, Kevin Heidtman accused Monsignor Thomas Bennett, a St. Charles Preparatory School teacher, of sexual abuse. Heidtman claims Bennett abused him approximately six times at St. Charles from 2002–2003. He also argued the diocese knew Bennett was abusing him and other St. Charles students but didn't stop Bennett. In March 2019, the Columbus Diocese published a list of credibly accused clergy. To compile the list, the diocese investigated almost 2,000 clergy members dating back to 1868. Bennett is not listed on the diocese's list of credibly accused clergy. In November 2020, the diocese added a footnote to the list. The footnote says the lawsuit regarding Bennett is complete, but the diocese has not yet determined the credibility of accusations against him. | 1 | $1,000,000 | $1,000,000 | 1.234 | $1,234,216 | Likely / Mostly Outside SOL |
| 42 | Archdiocese of Chicago | IL | Article dated 12/4/2020 | 12/4/2020 | The Archdiocese of Chicago has agreed to pay $1.5 million to settle a lawsuit filed by a man who says he was sexually abused as a child by a defrocked priest who was convicted of sexually abusing several boys, the man's attorney said Thursday. The settlement agreement announced in a news release by attorney Lyndsay Markley is the latest dark chapter in the story of Daniel McCormack, one of the most notorious pedophiles in the history of the archdiocese. It is just the latest archdiocese settlement with men who alleged they were abused as children by McCormack, pushing the total payments in such suits past $11 million. After the Chicago Tribune reported that the church agreed to pay more than $7.5 million in 2017 alone, it agreed to pay another $2.9 million the next year. The allegations against McCormack date back decades and involve more than two dozen boys, according to news reports. In 2007, he was sentenced to five years in prison after pleading guilty to sexually abusing five boys. In 2009, just before he was eligible for parole, he was designated by the state as a sexually violent person so that he could be held after his release date at a secure state facility. Then, in 2018, a judge at the urging of prosecutors found McCormack to be sexually violent and ordered that he stay in custody indefinitely in a state facility for sex offenders. It wasn't immediately clear Thursday if he remains in custody. | 1 | $1,500,000 | $1,500,000 | 1.232 | $1,847,372 | Likely / Mostly Within SOL |
| 43 | Archdiocese of Chicago | IL | Article dated 6/23/2021 | 6/23/2021 | Two men who said they were sexually molested decades ago by a notorious Catholic priest who was imprisoned for molesting other boys have agreed to a settlement of $880,000 from the Archdiocese of Chicago, attorneys announced Wednesday. The men alleged Norbert Maday sexually abused them repeatedly starting when they were as young as 10 years old while they were altar boys and students at St. Bede the Venerable Elementary School on the city's South Side, attorneys Jason Friedl and Martin Gould said. Based on lawsuits, court cases and documents, the two men were among at least 14 boys whom Maday molested at the six parishes where he was assigned from 1967 to 1986, the attorneys said, adding that they believe Maday died in recent years. Maday figured prominently in reports about the sexual abuse scandal that rocked the Catholic Church in the United States and around the world, as it played out in Chicago. He has been named in lawsuits and in 2014, documents related to Maday appeared among thousands of pages that showed senior Chicago Archdiocese leaders had helped hide the abuse of children. | 2 | $880,000 | $440,000 | 1.181 | $519,514 | Likely / Mostly Outside SOL |

CONFIDENTIAL PURSUANT TO PROTECTIVE ORDER

| | Background Information | | | | | | Settlement Total | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Ref. No. | Case Name / Settling Institution | State | Settlement Date[1] | Date (For Inflation) | Case Description | Number of Claimants | Settlement Amount | Average Settlement Amount | Inflation Factor[2] | Inflation-Adjusted Average Settlement Amount | Statute of Limitations[3] |
| 44 | Archdiocese of Chicago | IL | Article dated 4/26/2022 | 4/26/2022 | A settlement has been reached between the Archdiocese of Chicago and five people who accused five separate priests of sexual abuse, including a high-profile priest who passed away in 2019. At the time of his death in November 2019, Father George Clements was under a cloud of suspicion following two allegations of sexual abuse against minors, leading the former pastor of Holy Angels Parish in Bronzeville to step aside. He died before the Archdiocese's Independent Review Board left one case undetermined and didn't find reason to believe abuse occurred in the other. On Tuesday, a legal settlement was announced that for the first time names Father Clements as the alleged sexual abuser of a now 54-year-old Chicago-area man who said he was 7 years old when the abuse started. "My client was sexually abused for five years, from approximately 1974 to 1979," said attorney Mitchell Garabedian said. "He was sexually abused in the rectory of Holy Angels Church, in Father Clement's car and on a camping trip." The $800,000 dollar settlement was reached in February and includes five separate cases of alleged abuse that are said to have taken place in the 1960s and 1970s. In addition to Clements, the settlement named Father Daniel Holihan, Father Joseph Fitzharris, Father Michael Weston and Brother Edward Courtney. All are either deceased or no longer in active ministry. To be clear, the legal settlement reached between the Archdiocese and the victims attorneys specifically includes a clause that specifies there is no admission of wrongdoing. But victim advocates say a monetary settlement in any form is the only avenue for the accusers who come forward outside the legal statute of limitations. For its part, the Archdiocese said that it does not comment on lawsuits, claims or settlements. But they added, that under current policy, Clements name will not be added to their list of clergy with substantiated allegations against them because he died before his case could be evaluated by their review board. | 5 | $800,000 | $160,000 | 1.110 | $177,536 | Likely / Mostly Outside SOL |
| 45 | Seacoast Grace Church | CA | Article Dated 4/29/2022 | 4/29/2022 | Greenberg Gross Partner Brian Williams announced a $2.5 million settlement with Seacoast Grace Church in Cypress, California. The church was charged for enabling repeated sexual abuse against three underage girls. The abuse took place at the hands of then-Youth Pastor, Kenneth McCall. Three women, Julie Lusk, Denise Dial, and Jane Doe, had bravely filed lawsuits for systemic sexual abuse they each suffered between 1976 and 1983. In each case, McCall exploited his position of trust and as a result, disregarded his spiritual obligations to these young girls. The abuse began when they were only 12 years old. Despite multiple complaints, the abuse continued for years. Church leaders ignored, forgave and allowed McCall's abuse to continue due to concern for the reputation of the church and bringing and worries that the accusations would divide the congregations. All three victims suffered life-long trauma, including PTSD. The plaintiffs showed tremendous courage in bringing their cases forward. The new California law gave these women the chance to finally be heard and achieve some measure of justice. The California Law Claims Law allows victims of childhood sexual assault to take legal action against their perpetrator, or a person or entity who owed them a duty of care, regardless of when the actual assault occurred. However, any lawsuit must be filed by December 31, 2022. "The window created by AB 218 is a remarkable tool for survivors of childhood sexual assault. It provides survivors with the power to be heard, and an opportunity to seek justice. This particular lawsuit is a perfect example of these benefits, and I could not be more proud of these women for having the courage to come forward." Attorney Williams stated. | 3 | $2,500,000 | $833,333 | 1.110 | $924,666 | Likely / Mostly Within SOL |
| 46 | Archdiocese of Seattle | WA | Article dated 4/29/22 | 4/29/2022 | The Archdiocese of Seattle said Thursday it will pay $375,000 to settle two separate claims of sexual abuse in the 1970s and 1980s. The Roman Catholic archdiocese said in a news release that it settled a case involving allegations of childhood sexual abuse in the early to mid-1970s by David Pearson, a volunteer at St. Joseph Parish in Issaquah. Pearson has died. The archdiocese also said it settled a case involving an allegation of sexual abuse by Father Paul Conn in about 1987 when he served at Queen of Angels Parish in Port Angeles. Conn served as a parochial vicar at Queen of Angels from 1985 until 1988, the news release said. In 1988, the archdiocese said it learned of sexual abuse allegations and passed the report to police. Conn later pleaded guilty to six counts of indecent liberties and served time in prison. From the time of his arrest, he was not allowed to serve as a priest, the archdiocese said. Conn was identified on the archdiocese's list of about 80 clergy who have been credibly accused of sexually abusing minors when the list was first published in 2016. | 2 | $375,000 | $187,500 | 1.110 | $208,050 | Likely / Mostly Outside SOL |
| 47 | Archdiocese of Chicago | IL | Article dated 5/17/2022 | 5/17/2022 | The Archdiocese of Chicago will pay a reported $1.2 million to a person who claimed he was abused multiple times by Daniel McCormack, the defrocked priest at St. Agatha Catholic Church on the West Side. The settlement avoids a lawsuit. The attorney for the victim said his client was 12 years-old when he was sexually abused by McCormack multiple times in 2005. The attorney for the victim, Lindsay Markley, said the church must be held accountable and compensation will help his client heal from trauma. | 1 | $1,200,000 | $1,200,000 | 1.098 | $1,317,001 | Likely / Mostly Within SOL |

Roman Catholic Archdiocese of New Orleans
Exhibit 7
Comparable Settlements

CONFIDENTIAL PURSUANT TO PROTECTIVE ORDER

| Background Information | | | | | | | Settlement Total | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Ref. No. | Case Name / Settling Institution | State | Settlement Date[1] | Date (For Inflation) | Case Description | Number of Claimants | Settlement Amount | Average Settlement Amount | Inflation Factor[2] | Inflation-Adjusted Average Settlement Amount | Statute of Limitations[3] |
| 48 | Episcopal Diocese of Chicago | IL | Article Dated 6/3/2022 | 6/3/2022 | Without admitting wrongdoing, the Diocese of Chicago reached a settlement in May for $750,000 with a man who was sexually abused by a priest in the diocese three decades ago. The Chicago Sun-Times reported the settlement June 3, under a headline reading that the episode "puts Bishop Chilton Knudsen's actions under scrutiny." Knudsen, the retired Bishop of Maine, currently serves as assisting bishop in the Diocese of Chicago — where she worked on the diocesan staff before becoming a bishop. The Bishop of Chicago at the time was the Rt. Rev. Frank Griswold, who later became presiding bishop. Knudsen was serving as pastoral care officer on Griswold's staff on May 28,1990, when an 18-year-old man met with her and said he had been sexually abused for four years by Richard Kearney, ending when the youth was about 16. Kearney had been vicar of St. Bride's Episcopal Church in Oregon, Illinois, where the young man was active in the parish, according to a diocesan spokesperson. | 1 | $750,000 | $750,000 | 1.083 | $811,972 | Likely / Mostly Outside SOL |
| 49 | Archdiocese of Chicago | IL | Month and year provided, June 2022 | 6/30/2022 | A woman who says disgraced priest Robert Boley repeatedly sexually abused her as a child will receive a $1.75 million settlement from the Archdiocese of Chicago and the local Carmelite province, her attorneys announced Friday. The woman, who was not named, said Boley abused her multiple times in a classroom when she attended St. Cyril Catholic School, 6423 S. Woodlawn Ave., her attorneys said. Boley, who was assigned to the St. Clara-St. Cyril Parish in Woodlawn from 1987-1989, was the girl's teacher at the now-defunct school, she said through her attorneys. The priest kept the girl inside for recess and sexually assaulted her, making her read the Bible during the abuse, the woman said. He also called her a bad child and told her God was angry with her, she said. | 1 | $1,750,000 | $1,750,000 | 1.083 | $1,894,601 | Likely / Mostly Outside SOL |
| 50 | Roman Catholic Diocese of Albany | NY | Article dated 7/5/2022 | 7/5/2022 | The Roman Catholic Diocese of Albany recently paid $750,000 to a 47-year-old Saratoga County man who was allegedly sexually abused as a child by a former priest, marking the organization's first major settlement in the hundreds of pending lawsuits that were filed under New York's Child Victims Act. The unannounced settlement was reached in early June during negotiations in which the diocese's attorney, Michael L. Costello, had warned the alleged victim, Stephen J. Mittler, that if his case remained on track for its July 25 trial date the diocese would file for bankruptcy before a jury was picked, according to Matthew J. Kelly, Mittler's attorney. It was the diocese's first case scheduled for trial under the CVA. Mittler's lawsuit was filed against the diocese and 73-year-old Mark A. Haight, of Schenectady, a former priest who was ordained in 1976 and stands accused of sexually abusing boys for more than a decade. Haight, who will pay an additional $2,000 to Mittler under the settlement, was shuffled through parishes and schools before his final post at Glens Falls Hospital. Abuse allegations surfaced at nearly every assignment; the church's response was to keep moving Haight rather than contacting police or terminating him. Haight was removed around 1997 from his post at Glens Falls Hospital, where he had worked for nearly seven years without the diocese informing hospital officials of his history. Haight resigned from the priesthood that year, not long after the diocese paid two settlements to his victims. One of the payments included $997,500 made to a man who said he had been abused by the priest as a teenager in the 1970s and '80s. Records disclosed by the diocese during the pre-trial discovery phase of Mittler's case indicate former Bishop Howard J. Hubbard, who also stands accused of sexually abusing children, had twice sent Haight to treatment programs at facilities used by the Catholic church to treat sexually abusive clergy: House of Affirmation in California in 1985 and Servants of the Paraclete in New Mexico in 1989. Testimony and the records turned over by the diocese during pre-trial discovery indicate that Hubbard and church leaders had received their first sexual misconduct complaint against Haight not long after he was ordained more than a decade earlier. In 1980, rather than seek treatment for alleged pedophilia as Hubbard directed, Haight took a five-year leave of absence from the church and landed a job teaching children. The former bishop, according to court records, wrote a letter of recommendation for the priest without mentioning his sexual abuse history. In a deposition last year, when Hubbard was asked about the practice of moving priests accused of sexual abuse to other parishes or assignments after some had received treatment, he acknowledged that the diocese did that instead of calling police. In Haight's case, he was never prosecuted for alleged wrongdoing and is not on any sexual offender registries. His residence in Schenectady is three blocks from a middle school. | 1 | $750,000 | $750,000 | 1.083 | $812,068 | Likely / Mostly Within SOL |

Roman Catholic Archdiocese of New Orleans
Exhibit 7
Comparable Settlements

CONFIDENTIAL PURSUANT TO PROTECTIVE ORDER

| | | | | | Background Information | | | Settlement Total | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Ref. No. | Case Name / Settling Institution | State | Settlement Date[1] | Date (For Inflation) | Case Description | Number of Claimants | | Settlement Amount | Average Settlement Amount | Inflation Factor[2] | Inflation-Adjusted Average Settlement Amount | Statute of Limitations[3] |
| 51 | Lake Elsinore - Church of Latter-day Saints | CA | 4/25/2023 | 4/25/2023 | A Riverside County jury has awarded $2.28 billion - perhaps the largest amount in a child sexual-assault case in U.S. history - to the stepdaughter of a one-time Lake Elsinore church elder who admitted in his criminal trial decades ago committing lewd acts on a minor. Before the jury on Tuesday, April 25, ordered the man to pay $836 million in general damages and $1.44 billion in punitive damages, the Church of Jesus Christ of Latter-day Saints settled out of court for $1 million and the woman's mother agreed to pay $200,000, according to the attorney for the woman, who is now 41. In the Lake Elsinore case, the victim alleged in her lawsuit that the abuse began around 1987 and that after she joined the church, the abuse continued in the church sanctuary, parking lot and gymnasium. According to the civil lawsuit, in 1994, when the girl was 13, she told a church bishop about her accusations and so he organized a meeting with her, him and the parents. "The bishop talked about forgiveness", the lawsuit says. The mother, in a court filing, denied the allegation that she knew about the assaults but did nothing to stop them. | 1 | | $1,000,000 | $1,000,000 | 1.057 | $1,057,463 | Likely / Mostly Within SOL |
| 52 | Archdiocese of St. Louis | MO | Article dated 6/10/2023 | 6/10/2023 | The Archdiocese of St. Louis in Missouri has agreed to pay $1 million to settle a lawsuit filed by a man who said he was sexually abused by a priest at the Ascension Catholic Church in Chesterfield about 30 years ago. The alleged abuse began in 1993 when the victim was in fourth grade and continued until 1995. The victim repressed any memories of the incidents until he was an adult, according to the lawsuit. John Doe says he began recovering repressed memories in 2013. He filed a lawsuit in 2018 alleging church officials failed to protect him. A trial was scheduled for September but the settlement was reached this week - signaling the plaintiff had a strong case. On Thursday, a lawyer for the victim confirmed the has agreed to settle, adding he stands by the allegations. | 1 | | $1,000,000 | $1,000,000 | 1.051 | $1,051,411 | Likely / Mostly Outside SOL |
| 53 | Archdiocese of Philadelphia | PA | Article dated 8/12/2023 | 8/12/2023 | The Archdiocese of Philadelphia will pay $3.5 million to settle a civil case alleging a now-deceased priest sexually assaulted a teenage boy nearly two decades ago, and church officials knew of similar reports about the priest dating back to the 1970s, attorneys for the victim announced Wednesday. The plaintiff was a 14-year-old student in religious classes at St. Katherine of Siena Parish in Wayne when the sexual assault occurred in 2006, his attorneys said. They said Monsignor John Close assaulted the boy after hearing his confession. The plaintiff, now 30, reported the episode in 2018. Many survivors of child sexual abuse do not report the abuse until years later. Lawmakers in Pennsylvania sought a two-year window for child sexual abuse survivors to file otherwise outdated lawsuits over their claims, but a partisan fight in the Legislature kept the proposal bottled up with no resolution in sight. | 1 | | $3,500,000 | $3,500,000 | 1.045 | $3,656,962 | Likely / Mostly Within SOL |
| 54 | Mount Carmel High School | IL | Article dated 11/21/2023 | 11/21/2023 | A Catholic religious order has agreed to pay $2.9 million to settle claims of child sexual assault by a Catholic brother and former teacher that allegedly continued occurring after the student brought the claims to the attention of upper administration at Mount Carmel High School. The settlement with the Order of the Carmelites, filed in September, alleges that Brother Robert Murphy, a former teacher at Mount Carmel High School, sexually assaulted a boy more than a dozen times while he was a student at the school from 1982 to 1986. The settlement claims the student made a school disciplinarian aware of the abuse but that no action was taken against Murphy. The student met Murphy in the summer of 1982 prior to the start of the school year when Murphy supervised activities sponsored by the school, the settlement says. The suit alleges Murphy "paid an inappropriate amount of attention" to the student and in one instance locked the student in a classroom to sexually assault him. Attorney Mark Brown said his client came to him after 30 years of suppressing the memories of the abuse he experienced at Mount Carmel. "He was basically trapped living his life," said Brown, managing partner at Lane Brown LLC. "He was the only one who knew what he was going through." The Carmelites, based out of Darien, run and operate the all-boys high school on the South Side of Chicago. The religious order removed Murphy from public ministry in 2002 after reexamining old allegations he had engaged in sexual misconduct with children in Georgia and at Mount Carmel during the1970s and 1980s. Mediation began in June and when a settlement was not reached, Brown drafted a lawsuit against the Carmelites. The parties then returned to the table and reached a settlement before the suit could be filed. Murphy remains a Carmelite Brother, Brown said. The Carmelites could not be reached for comment. The court documents remain private as it was settled before being filed in court. | 1 | | $2,900,000 | $2,900,000 | 1.045 | $3,029,808 | Likely / Mostly Within SOL |

Roman Catholic Archdiocese of New Orleans
Exhibit 7
Comparable Settlements

CONFIDENTIAL PURSUANT TO PROTECTIVE ORDER

| | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Ref. No. | Case Name / Settling Institution | State | Settlement Date[1] | Date (For Inflation) | Case Description | Number of Claimants | Settlement Amount | Average Settlement Amount | Inflation Factor[2] | Inflation-Adjusted Average Settlement Amount | Statute of Limitations[3] |
| 55 | Providence High School | IL | Article dated 11/24/2023 | 11/24/2023 | If Robert Krankvich could ask a question of the Rev. Richard McGrath, the Catholic priest who Krankvich says raped him when he was a student at Providence Catholic High School in New Lenox in the 1990s, it would be: "Why? Why me?" The Augustinian Catholic religious order that McGrath belongs to and the school it runs that's owned by the Diocese of Joliet has reached a $2 million settlement on the eve of a trial over a lawsuit Krankvich filed, lawyers confirmed. Church officials admitted no wrongdoing in agreeing to the payout to end the civil case. But records reviewed by the Chicago Sun-Times and interviews by the newspaper show there were warning signs about McGrath. The diocese — the arm of the church for DuPage and Will counties that brought in the Augustinians to run Providence in the 1980s — has said it is looking at closing or merging numerous parishes and elementary schools, partly over finances. Diocesan officials have declined to say how much money they have spent on settlements and other costs linked to child sex abuse accusations against clergy members and others over the years. Earlier this year, McGrath was questioned under oath about accusations in the lawsuit that he raped Krankvich. The priest responded that he never engaged in "any unlawful, immoral or sexually improper conduct with any student." He also was asked whether he had ever viewed child pornography during the time he was president of Providence. McGrath declined to answer, citing his Fifth Amendment right against self-incrimination. | 1 | $2,000,000 | $2,000,000 | 1.045 | $2,089,523 | Likely / Mostly Within SOL |
| 56 | The Diocese of Orange and the Archdiocese of Los Angeles | CA | 2/26/2024 | 2/26/2024 | The Diocese of Orange and the Archdiocese of Los Angeles have agreed to pay a combined settlement believed to be the largest ever in a sex abuse case filed on behalf of an individual against a religious institution. The case involving two of the most notorious sex predators in California reached a $10-million settlement on Friday, January 26, according to a local report from East Bay Times. The case focuses primarily on the sexual crimes of Fr. Eleuterio Ramos and Fr. Siegfried Widera. In 2020, a piece of California legislation provided a three-year window during which the state would lift the statute of limitations for lawsuits regarding decades-old sex abuse cases. This week's settlement resolves one of the first suits to go to trial since 2020. The Archdiocese of Los Angeles, where Ramos first began committing sexual assault on minors almost immediately following his ordination, will pay out $500,000, while the Diocese of Orange will pay the larger sum of $9.5 million. Ramos sexually assaulted the plaintiff when he was just five years old, according to the victim's sworn testimony, and Widera later assaulted the same child when he was ten. Most of the abuse took place under the Diocese of Orange's jurisdiction after it split from the Los Angeles Archdiocese in 1976. Orange settled five abuse cases against Ramos that alleged abuse in the 1990s. | 5 | $10,000,000 | $2,000,000 | 1.034 | $2,067,471 | Likely / Mostly Within SOL |
| 57 | Archdiocese of Los Angeles | CA | Article dated 10/17/2024 | 10/16/2024 | The Archdiocese of Los Angeles on Wednesday said it has agreed to pay $880 million to settle claims of clergy sexual abuse dating back several decades, which the victims' attorneys say is the largest such settlement with a Catholic archdiocese. The settlement covers 1,353 child sexual abuse claims dating back to the 1940s and filed after California's Assembly Bill 218 was enacted in 2019, which allowed civil claims of older sexual abuse cases involving minors to be reopened. In a letter to the city's Catholic residents, LA Archbishop José H. Gomez wrote: "I am sorry for every one of these incidents, from the bottom of my heart," adding that he hoped the settlement "will provide some measure of healing for what these men and women have suffered." Gomez said the church would fund the settlement by drawing from its "reserves, investments, and loans, along with other Archdiocesan assets and payments." "While there is no amount of money that can replace what was taken from these 1,353 brave individuals who have suffered in silence for decades, there is justice in accountability. We are grateful to the brave survivors who came forward to hold those responsible accountable and to protect the children of the future," the Plaintiffs' Liaison Counsel said in a press release. | 1,353 | $880,000,000 | $650,407 | 1.016 | $660,979 | Likely / Mostly Within SOL |
| 58 | Diocese of Orange | CA | Article dated 12/18/2024 | 12/18/2024 | The Diocese of Orange has agreed to pay $3.5 million to a man who alleges he was sexually abused by a former administrator at Mater Dei High School in the late 1970s. The settlement concludes a lawsuit filed in 2019 against the diocese and brings the amount the Catholic Church has paid out in civil cases involving Msgr. Michael Harris to at least $10 million. Harris has denied molesting minors and was never criminally charged. The man, identified in court documents as John Doe, wrote in a statement read by his attorney during a news conference Wednesday that he's still trying to overcome the pain of the abuse he suffered more than four decades ago. In a statement this week, the Diocese of Orange said it "vigorously defended" the claim and was prepared to take it to trial but opted instead to settle the case. The diocese's insurers funded the settlement. In his lawsuit, the man alleged he was sexually abused by Harris at Mater Dei in 1978. | 1 | $3,500,000 | $3,500,000 | 1.016 | $3,557,556 | Likely / Mostly Within SOL |

CONFIDENTIAL PURSUANT TO PROTECTIVE ORDER

| | | | | | | | Settlement Total | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | Background Information | | | | | | | |
| Ref. No. | Case Name / Settling Institution | State | Settlement Date[1] | Date (For Inflation) | Case Description | Number of Claimants | Settlement Amount | Average Settlement Amount | Inflation Factor[2] | Inflation-Adjusted Average Settlement Amount | Statute of Limitations[3] |
| 59 | Archdiocese of Hartford | CT | Article dated 7/9/2025 | 7/9/2025 | The Archdiocese of Hartford reached a $2.4 million settlement with a man who says he was repeatedly sexually abused as a child by a former priest Fr. Adolph Renkiewicz. The lawsuit filed in 2023 against the archdiocese claims that the Rev. Adolphe Renkiewicz, a priest at St. Adalbert's Church and St. Adalbert's School in Enfield in the late 1980s and 1990s, sexually abused the boy more than 100 times from 1985 to 1990 when the child served as an alter boy.. In an official statement, the Archdiocese of Hartford said it follows a long-established policy of not commenting on abuse allegations or settlements. However, it reiterated its continued apology and commitment to working with survivors of clergy sexual abuse. | 1 | $2,400,000 | $2,400,000 | 0.993 | $2,383,262 | Likely / Mostly Within SOL |

Notes:

[1] For purposes of Inflated-Adjusted Settlement Amounts, assume last day of the year or month when no exact date provided.

[2] Inflation-Adjusted Settlement Amounts based on U.S Bureau of Labor Statistics Consumer Price Index (CPI) inflation data as of April 30, 2025.

[3] Per Counsel's instruction, Statute of Limitation designations are based on two CHILD USA reports: (i) Alice Nasar Hanan, Esq., *Revival Laws for Child Sex Abuse*, CHILD USA (2024); (ii) Marci A. Hamilton, Esq., et al., *History of Child Sex Abuse Statutes of Limitation Reform in the United States 2002 to 2021*, CHILD USA (2022).

Confidential Pursuant to Protective Order

| Ref. No. | Claimant Initials | Date of Birth | Settlement Date | Age at Date of Settlement | Nominal Total Settlement Amount | Inflation-Adjusted Total Settlement Amount[140] |
|---|---|---|---|---|---|---|
| 1 | | Unknown or Redacted | 9/1/1993 | Unknown | $7,000 | $15,476 |
| 2 | | Unknown or Redacted | 6/19/2003 | Unknown | $45,000 | $78,583 |
| 3 | | Unknown or Redacted | 5/5/2005 | Unknown | $79,039 | $130,429 |
| 4 | | Unknown or Redacted | 5/27/2005 | Unknown | $25,000 | $41,255 |
| 5 | | | 1/14/2010 | 44 | $125,000 | $185,057 |
| 6 | | | 1/15/2010 | 49 | $110,000 | $162,850 |
| 7 | | | 7/16/2010 | 65 | $300,000 | $441,439 |
| 8 | | | 7/26/2010 | 53 | $156,150 | $229,769 |
| 9 | | | 7/26/2010 | 57 | $150,000 | $220,719 |
| 10 | | | 9/10/2010 | 50 | $115,000 | $168,887 |
| 11 | | | 9/24/2010 | 45 | $40,000 | $58,743 |
| 12 | | | 12/28/2010 | 40 | $10,000 | $14,636 |
| 13 | | | 12/28/2010 | 50 | $10,000 | $14,636 |
| 14 | | | 1/3/2011 | 45 | $75,000 | $109,251 |
| 15 | | | 1/4/2011 | 41 | $27,500 | $40,059 |
| 16 | | | 1/11/2011 | 60 | $15,000 | $21,850 |
| 17 | | | 2/3/2011 | 64 | $75,000 | $108,715 |
| 18 | | | 2/7/2011 | 62 | $60,000 | $86,972 |
| 19 | | | 2/8/2011 | 57 | $42,500 | $61,605 |
| 20 | | | 2/8/2011 | 64 | $25,000 | $36,238 |
| 21 | | | 2/10/2011 | 51 | $57,500 | $83,348 |
| 22 | | | 2/11/2011 | 56 | $39,500 | $57,257 |
| 23 | | | 2/14/2011 | 59 | $35,000 | $50,734 |
| 24 | | | 2/14/2011 | 40 | $28,500 | $41,312 |
| 25 | | | 2/16/2011 | 58 | $47,500 | $68,853 |
| 26 | | | 3/1/2011 | 60 | $15,000 | $21,533 |
| 27 | | | 3/3/2011 | 62 | $55,000 | $78,954 |
| 28 | | | 3/3/2011 | 63 | $42,500 | $61,010 |
| 29 | | | 3/7/2011 | 62 | $48,750 | $69,982 |
| 30 | | | 3/8/2011 | 57 | $35,000 | $50,244 |
| 31 | | | 3/9/2011 | 78 | $26,000 | $37,324 |
| 32 | | | 3/9/2011 | 66 | $5,000 | $7,178 |
| 33 | | | 3/9/2011 | 64 | $5,000 | $7,178 |
| 34 | | | 3/10/2011 | 67 | $15,000 | $21,533 |
| 35 | | | 3/10/2011 | 59 | $10,000 | $14,355 |
| 36 | | | 3/15/2011 | 66 | $42,500 | $61,010 |
| 37 | | | 3/15/2011 | 62 | $20,000 | $28,711 |
| 38 | | | 3/15/2011 | 61 | $18,500 | $26,557 |
| 39 | | | 3/15/2011 | 70 | $18,000 | $25,840 |
| 40 | Redacted[40] | Unknown or Redacted | 3/16/2011 | Unknown | $95,000 | $136,376 |
| 41 | | Unknown or Redacted | 3/16/2011 | Unknown | $95,000 | $136,376 |
| 42 | | | 3/28/2011 | 65 | $48,500 | $69,624 |
| 43 | | | 3/28/2011 | 62 | $18,000 | $25,840 |
| 44 | | | 3/30/2011 | 49 | $21,500 | $30,864 |
| 45 | | | 3/30/2011 | 68 | $5,000 | $7,178 |
| 46 | | | 3/31/2011 | 58 | $25,000 | $35,888 |
| 47 | | | 3/31/2011 | 78 | $5,000 | $7,178 |
| 48 | | | 4/4/2011 | 52 | $23,500 | $33,519 |
| 49 | | | 4/5/2011 | 43 | $47,500 | $67,752 |
| 50 | | | 4/5/2011 | 40 | $37,500 | $53,488 |
| 51 | | | 4/5/2011 | 59 | $15,000 | $21,395 |
| 52 | | | 4/11/2011 | 56 | $30,000 | $42,791 |
| 53 | | | 4/11/2011 | 49 | $20,000 | $28,527 |
| 54 | | | 4/15/2011 | 49 | $35,000 | $49,922 |
| 55 | | | 4/18/2011 | 49 | $57,500 | $82,015 |
| 56 | | | 4/19/2011 | 59 | $12,500 | $17,829 |
| 57 | | | 4/20/2011 | 55 | $35,000 | $49,922 |
| 58 | | | 4/20/2011 | 64 | $32,500 | $46,356 |
| 59 | | | 4/22/2011 | 50 | $60,000 | $85,581 |

Roman Catholic Archdiocese of New Orleans
Exhibit 8
Prior ANO Settlements With Sexual Abuse Survivors

Confidential Pursuant to Protective Order

| Ref. No. | Claimant Initials | Date of Birth | Settlement Date | Age at Date of Settlement | Nominal Total Settlement Amount | Inflation-Adjusted Total Settlement Amount[140] |
|---|---|---|---|---|---|---|
| 60 | [60] | | 4/25/2011 | 61 | $20,000 | $28,527 |
| 61 | [61] | | 7/11/2011 | 67 | $17,500 | $24,849 |
| 62 | [62] | | 10/10/2011 | 65 | $40,000 | $56,672 |
| 63 | [63] | | 10/13/2011 | 56 | $45,000 | $63,756 |
| 64 | [64] | | 4/2/2012 | 53 | $20,000 | $27,885 |
| 65 | [65] | | 4/4/2012 | 64 | $20,000 | $27,885 |
| 66 | [66] | | 8/6/2012 | 60 | $55,000 | $76,586 |
| 67 | [67] | | 11/24/2012 | 58 | $37,500 | $52,253 |
| 68 | [68] | | 12/17/2012 | 43 | $57,500 | $80,338 |
| 69 | [69] | Unknown or Redacted | 2/26/2013 | Unknown | $87,500 | $120,903 |
| 70 | [70] | Unknown or Redacted | 3/24/2013 | Unknown | $45,000 | $62,017 |
| 71 | [71] | Unknown or Redacted | 4/9/2013 | Unknown | $160,000 | $220,733 |
| 72 | [72] | Unknown or Redacted | 4/30/2013 | Unknown | $88,750 | $122,438 |
| 73 | [73] | | 5/25/2013 | 51 | $175,000 | $240,997 |
| 74 | [74] | Unknown or Redacted | 6/25/2014 | Unknown | $100,000 | $134,594 |
| 75 | [75] | | 12/15/2014 | 39 | $500,000 | $683,089 |
| 76 | [76] | | 2/20/2017 | 52 | $119,447 | $157,298 |
| 77 | [77] | | 4/25/2017 | 45 | $17,500 | $22,959 |
| 78 | [78] | | 9/15/2017 | 30 | $100,000 | $129,972 |
| 79 | [79] | Unknown or Redacted | 6/11/2018 | Unknown | $550,000 | $700,178 |
| 80 | [80] | | 6/27/2018 | 45 | $1,500,000 | $1,909,577 |
| 81 | Redacted[81] | | 8/30/2018 | 36 | $50,000 | $63,613 |
| 82 | [82] | Unknown or Redacted | 10/26/2018 | Unknown | $100,000 | $126,854 |
| 83 | [83] | | 11/8/2018 | 51 | $495,000 | $630,038 |
| 84 | [84] | | 12/14/2018 | 56 | $90,000 | $114,919 |
| 85 | [85] | | 12/31/2018 | 53 | $100,000 | $127,688 |
| 86 | [86] | | 1/3/2019 | 42 | $900,000 | $1,147,007 |
| 87 | [87] | Unknown or Redacted | 1/4/2019 | Unknown | $72,500 | $92,398 |
| 88 | [88] | | 1/4/2019 | 62 | $25,000 | $31,861 |
| 89 | [89] | | 1/16/2019 | 71 | $25,000 | $31,861 |
| 90 | [90] | | 1/18/2019 | 61 | $45,000 | $57,350 |
| 91 | [91] | | 1/28/2019 | 57 | $125,000 | $159,307 |
| 92 | [92] | | 2/27/2019 | 51 | $90,000 | $114,218 |
| 93 | [93] | | 3/16/2019 | 49 | $158,750 | $200,338 |
| 94 | [94] | | 3/25/2019 | 66 | $30,000 | $37,859 |
| 95 | [95] | | 3/31/2019 | 49 | $30,000 | $37,859 |
| 96 | [96] | | 4/6/2019 | 62 | $395,000 | $495,852 |
| 97 | [97] | | 4/8/2019 | 83 | $110,000 | $138,085 |
| 98 | [98] | | 4/15/2019 | 60 | $75,000 | $94,149 |
| 99 | [99] | | 4/29/2019 | 52 | $100,000 | $125,532 |
| 100 | [100] | | 5/1/2019 | 62 | Redacted | Unknown |
| 101 | [101] | | 5/1/2019 | 54 | Redacted | Unknown |
| 102 | [102] | | 5/1/2019 | 49 | Redacted | Unknown |
| 103 | [103] | | 5/10/2019 | 60 | $75,000 | $93,949 |
| 104 | [104] | | 5/10/2019 | 56 | $35,000 | $43,843 |
| 105 | [105] | | 5/11/2019 | 38 | $25,000 | $31,316 |
| 106 | [106] | | 5/15/2019 | 71 | $85,000 | $106,476 |
| 107 | [107] | Unknown or Redacted | 5/15/2019 | Unknown | $30,000 | $37,580 |
| 108 | [108] | | 5/21/2019 | 52 | $150,000 | $187,898 |
| 109 | [109] | | 5/21/2019 | 36 | $35,000 | $43,843 |
| 110 | [110] | | 5/21/2019 | 27 | $10,000 | $12,527 |
| 111 | [111] | | 5/28/2019 | 59 | $128,000 | $160,340 |
| 112 | [112] | | 5/30/2019 | 71 | $25,000 | $31,316 |
| 113 | [113] | | 6/5/2019 | 52 | $15,000 | $18,786 |
| 114 | [114] | | 6/6/2019 | 51 | $25,000 | $31,310 |
| 115 | [115] | | 6/6/2019 | 58 | $20,000 | $25,048 |
| 116 | Redacted[116] | | 6/10/2019 | 57 | $130,000 | $162,813 |
| 117 | [117] | | 6/13/2019 | 52 | $125,000 | $156,551 |

**Roman Catholic Archdiocese of New Orleans**
**Exhibit 8**
**Prior ANO Settlements With Sexual Abuse Survivors**

<span style="float:right">Confidential Pursuant to Protective Order</span>

| Ref. No. | Claimant Initials | Date of Birth | Settlement Date | Age at Date of Settlement | Nominal Total Settlement Amount | Inflation-Adjusted Total Settlement Amount[140] |
|---|---|---|---|---|---|---|
| 118 | [118] | | 6/28/2019 | 33 | $30,000 | $37,572 |
| 119 | [119] | | 7/7/2019 | 57 | $200,000 | $250,063 |
| 120 | [120] | | 7/9/2019 | 61 | $275,000 | $343,837 |
| 121 | [121] | | 7/20/2019 | 66 | $60,000 | $75,019 |
| 122 | [122] | | 7/30/2019 | 51 | $70,000 | $87,522 |
| 123 | [123] | | 9/17/2019 | 60 | $80,000 | $99,952 |
| 124 | [124] | | 9/17/2019 | 59 | $80,000 | $99,952 |
| 125 | [125] | | 11/16/2019 | 59 | $40,000 | $49,889 |
| 126 | [126] | | 12/12/2019 | 60 | $150,000 | $187,253 |
| 127 | [127] | | 1/2/2020 | 53 | $50,000 | $62,177 |
| 128 | [128] | | 1/9/2020 | 75 | $10,000 | $12,435 |
| 129 | [129] | | 1/10/2020 | 53 | $15,000 | $18,653 |
| 130 | [130] | | 1/21/2020 | 61 | $325,000 | $404,148 |
| 131 | Redacted[131] | | 2/2/2020 | 55 | $35,000 | $43,405 |
| 132 | [132] | | 2/3/2020 | 50 | $18,750 | $23,252 |
| 133 | [133] | | 2/17/2020 | 56 | $80,000 | $99,211 |
| 134 | [134] | | 2/20/2020 | 68 | $75,000 | $93,010 |
| 135 | [135] | | 5/2/2012 | 48 | $25,000 | $34,897 |
| 136 | Redacted[136] | Unknown or Redacted | Redacted | Unknown | Redacted | Unknown |
| 137 | Redacted[137] | Unknown or Redacted | Redacted | Unknown | Redacted | Unknown |
| 138 | Redacted[138] | Unknown or Redacted | Redacted | Unknown | Redacted | Unknown |
| 139 | Redacted[139] | Unknown or Redacted | Redacted | Unknown | Redacted | Unknown |

**Notes:**

[1] ANO (20-10846)_00098776.pdf

[2] ANO (20-10846)_00100284.pdf

[3] ANO (20-10846)_00161232.pdf

[4] ANO (20-10846)_00100074.pdf

[5] ANO (20-10846)_00115500.pdf

[6] ANO (20-10846)_00115846.pdf

[7] ANO (20-10846)_00116310.pdf

[8] ANO (20-10846)_00115420.pdf

[9] ANO (20-10846)_00115680.pdf

[10] ANO (20-10846)_00115871.pdf

[11] ANO (20-10846)_00116333.pdf

[12] ANO (20-10846)_00115454.pdf

[13] ANO (20-10846)_00115782.pdf

[14] ANO (20-10846)_00116291.pdf

[15] ANO (20-10846)_00116059.pdf

[16] ANO (20-10846)_00115616.pdf

[17] ANO (20-10846)_00116025.pdf

[18] ANO (20-10846)_00115539.pdf

[19] ANO (20-10846)_00116184.pdf

[20] ANO (20-10846)_00115425.pdf

[21] ANO (20-10846)_00115907.pdf

[22] ANO (20-10846)_00116198.pdf

[23] ANO (20-10846)_00115805.pdf

[24] ANO (20-10846)_00116043.pdf

[25] ANO (20-10846)_00115440.pdf

[26] ANO (20-10846)_00115656.pdf

[27] ANO (20-10846)_00115712.pdf

[28] ANO (20-10846)_00116009.pdf

[29] ANO (20-10846)_00116139.pdf

[30] ANO (20-10846)_00115700.pdf

[31] ANO (20-10846)_00115825.pdf

[32] ANO (20-10846)_00115672.pdf

[33] ANO (20-10846)_00116272.pdf

[34] ANO (20-10846)_00115587.pdf

Roman Catholic Archdiocese of New Orleans
Exhibit 8
Prior ANO Settlements With Sexual Abuse Survivors

| Ref. No. | Claimant Initials | Date of Birth | Settlement Date | Age at Date of Settlement | Nominal Total Settlement Amount | Inflation-Adjusted Total Settlement Amount[140] |
|---|---|---|---|---|---|---|
| [35] | ANO (20-10846)_0115572.pdf | | | | | |
| [36] | ANO (20-10846)_0116125.pdf | | | | | |
| [37] | ANO (20-10846)_0116173.pdf | | | | | |
| [38] | ANO (20-10846)_0116237.pdf | | | | | |
| [39] | ANO (20-10846)_0115754.pdf | | | | | |
| [40] | ANO (20-10846)_0115666.pdf | | | | | |
| [41] | ANO (20-10846)_0136260.pdf | | | | | |
| [42] | ANO (20-10846)_0116105.pdf | | | | | |
| [43] | ANO (20-10846)_0115627.pdf | | | | | |
| [44] | ANO (20-10846)_0116228.pdf | | | | | |
| [45] | ANO (20-10846)_0115495.pdf | | | | | |
| [46] | ANO (20-10846)_0115602.pdf | | | | | |
| [47] | ANO (20-10846)_0115562.pdf | | | | | |
| [48] | ANO (20-10846)_0115931.pdf | | | | | |
| [49] | ANO (20-10846)_0115990.pdf | | | | | |
| [50] | ANO (20-10846)_0116159.pdf | | | | | |
| [51] | ANO (20-10846)_0116213.pdf | | | | | |
| [52] | ANO (20-10846)_0115941.pdf | | | | | |
| [53] | ANO (20-10846)_0115816.pdf | | | | | |
| [54] | ANO (20-10846)_0115981.pdf | | | | | |
| [55] | ANO (20-10846)_0115917.pdf | | | | | |
| [56] | ANO (20-10846)_0115893.pdf | | | | | |
| [57] | ANO (20-10846)_0116263.pdf | | | | | |
| [58] | ANO (20-10846)_0115478.pdf | | | | | |
| [59] | ANO (20-10846)_0115642.pdf | | | | | |
| [60] | ANO (20-10846)_0115463.pdf | | | | | |
| [61] | ANO (20-10846)_0115726.pdf | | | | | |
| [62] | ANO (20-10846)_0115926.pdf | | | | | |
| [63] | ANO ESI (20-10846)_0043857.pdf | | | | | |
| [64] | ANO (20-10846)_0116004.pdf | | | | | |
| [65] | ANO (20-10846)_0115881.pdf | | | | | |
| [66] | ANO (20-10846)_0116086.pdf | | | | | |
| [67] | ANO (20-10846)_0112365.pdf | | | | | |
| [68] | ANO (20-10846)_0115774.pdf | | | | | |
| [69] | ANO (20-10846)_0116338.pdf | | | | | |
| [70] | ANO (20-10846)_0113044.pdf | | | | | |
| [71] | ANO (20-10846)_0113039.pdf | | | | | |
| [72] | ANO (20-10846)_0116193.pdf | | | | | |
| [73] | ANO (20-10846)_0096849.pdf | | | | | |
| [74] | ANO (20-10846)_0115556.pdf | | | | | |
| [75] | ANO (20-10846)_0115636.pdf | | | | | |
| [76] | ANO (20-10846)_0112950.pdf | | | | | |
| [77] | ANO (20-10846)_0112960.pdf | | | | | |
| [78] | ANO (20-10846)_0115435.pdf | | | | | |
| [79] | ANO (20-10846)_0116345.pdf | | | | | |
| [80] | ANO (20-10846)_0115860.pdf | | | | | |
| [81] | ANO (20-10846)_0116153.pdf | | | | | |
| [82] | ANO (20-10846)_0115975.pdf | | | | | |
| [83] | ANO (20-10846)_0115835.pdf | | | | | |
| [84] | ANO (20-10846)_0112990.pdf | | | | | |
| [85] | ANO (20-10846)_0115800.pdf | | | | | |
| [86] | ANO (20-10846)_0115957.pdf | | | | | |
| [87] | ANO (20-10846)_0115905.pdf | | | | | |
| [88] | ANO (20-10846)_0116075.pdf | | | | | |
| [89] | ANO (20-10846)_0116168.pdf | | | | | |
| [90] | ANO (20-10846)_0113007.pdf | | | | | |
| [91] | ANO (20-10846)_0115449.pdf | | | | | |
| [92] | ANO (20-10846)_0115567.pdf | | | | | |

Confidential Pursuant to Protective Order

Roman Catholic Archdiocese of New Orleans
Exhibit 8
Prior ANO Settlements With Sexual Abuse Survivors

Confidential Pursuant to Protective Order

| Ref. No. | Claimant Initials | Date of Birth | Settlement Date | Age at Date of Settlement | Nominal Total Settlement Amount | Inflation-Adjusted Total Settlement Amount[140] |
|---|---|---|---|---|---|---|

[93]ANO (20-10846)_00113027.pdf

[94]ANO (20-10846)_00112965.pdf

[95]ANO (20-10846)_00116305.pdf

[96]ANO (20-10846)_00112970.pdf

[97]ANO (20-10846)_00115796.pdf

[98]ANO (20-10846)_00116300.pdf

[99]ANO (20-10846)_00115721.pdf; This settlement related to the alleged abuse of a single claimant, however the survivor's spouse was also party to this settlement agreement.

[100]ANO (20-10846)_00112980.pdf

[101]ANO (20-10846)_00113012.pdf

[102]ANO (20-10846)_00113017.pdf

[103]ANO (20-10846)_00112975.pdf

[104]ANO (20-10846)_00113034.pdf

[105]ANO (20-10846)_00115689.pdf

[106]ANO (20-10846)_00113022.pdf

[107]ANO (20-10846)_00112985.pdf

[108]ANO (20-10846)_00115999.pdf

[109]ANO (20-10846)_00116020.pdf

[110]ANO (20-10846)_00115651.pdf

[111]ANO (20-10846)_00116222.pdf

[112]ANO (20-10846)_00115743.pdf

[113]ANO (20-10846)_00115524.pdf

[114]ANO (20-10846)_00115866.pdf

[115]ANO (20-10846)_00115738.pdf

[116]ANO (20-10846)_00116053.pdf

[117]ANO (20-10846)_00116207.pdf

[118]ANO (20-10846)_00115517.pdf

[119]ANO (20-10846)_00115529.pdf

[120]ANO (20-10846)_00115748.pdf

[121]ANO (20-10846)_00115840.pdf

[122]ANO (20-10846)_00115970.pdf

[123]ANO (20-10846)_00115694.pdf

[124]ANO (20-10846)_00115964.pdf

[125]ANO (20-10846)_00115512.pdf

[126]ANO (20-10846)_00116285.pdf

[127]ANO (20-10846)_00115731.pdf

[128]ANO (20-10846)_00160442.pdf

[129]ANO (20-10846)_00116081.pdf

[130]ANO (20-10846)_00116069.pdf

[131]ANO (20-10846)_00115472.pdf

[132]ANO (20-10846)_00116279.pdf

[133]ANO (20-10846)_00116321.pdf

[134]ANO (20-10846)_00115791.pdf

[135]ANO (20-10846)_00116096.pdf

[136]ANO (20-10846)_00098932.pdf

[137]ANO (20-10846)_00162794.pdf

[138]ANO (20-10846)_00163520.pdf

[139]ANO (20-10846)_00164397.pdf

[140]Inflation-Adjusted Settlement Amounts based on U.S Bureau of Labor Statistics Consumer Price Index (CPI) inflation data as of  April 30, 2025.

| File Type | File Description |
|---|---|
| Claimant Filings | 143530066.pdf |
| Claimant Filings | 143530065.pdf |
| Claimant Filings | 143530064.pdf |
| Claimant Filings | 143530063.pdf |
| Claimant Filings | 143530062.pdf |
| Claimant Filings | 143530061.pdf |
| Claimant Filings | 143530060.pdf |
| Claimant Filings | 143530059.pdf |
| Claimant Filings | 143530058.pdf |
| Claimant Filings | 143530057.pdf |
| Claimant Filings | 143530056.pdf |
| Claimant Filings | 143530055.pdf |
| Claimant Filings | 143530054.pdf |
| Claimant Filings | 143530053.pdf |
| Claimant Filings | 143530052.pdf |
| Claimant Filings | 143530051.pdf |
| Claimant Filings | 143530050.pdf |
| Claimant Filings | 143530049.pdf |
| Claimant Filings | 143530048.pdf |
| Claimant Filings | 143530047.pdf |
| Claimant Filings | 143530046.pdf |
| Claimant Filings | 143530045.pdf |
| Claimant Filings | 143530044.pdf |
| Claimant Filings | 143530043.pdf |
| Claimant Filings | 143530042.pdf |
| Claimant Filings | 143530041.pdf |
| Claimant Filings | 143530040.pdf |
| Claimant Filings | 143530039.pdf |
| Claimant Filings | 143530038.pdf |
| Claimant Filings | 143530037.pdf |
| Claimant Filings | 143530036.pdf |
| Claimant Filings | 143530035.pdf |
| Claimant Filings | 143530034.pdf |
| Claimant Filings | 143530033.pdf |
| Claimant Filings | 143530032.pdf |
| Claimant Filings | 143530031.pdf |
| Claimant Filings | 143530030.pdf |
| Claimant Filings | 143530029.pdf |
| Claimant Filings | 143530028.pdf |
| Claimant Filings | 143530027.pdf |
| Claimant Filings | 143530026.pdf |
| Claimant Filings | 143530025.pdf |
| Claimant Filings | 143530024.pdf |
| Claimant Filings | 143530023.pdf |
| Claimant Filings | 143530022.pdf |
| Claimant Filings | 143530021.pdf |
| Claimant Filings | 143530020.pdf |
| Claimant Filings | 143530019.pdf |
| Claimant Filings | 143530018.pdf |
| Claimant Filings | 143530017.pdf |
| Claimant Filings | 143530016.pdf |
| Claimant Filings | 143530015.pdf |
| Claimant Filings | 143530014.pdf |
| Claimant Filings | 143530013.pdf |
| Claimant Filings | 143530012.pdf |
| Claimant Filings | 143530011.pdf |
| Claimant Filings | 143530010.pdf |
| Claimant Filings | 143530009.pdf |
| Claimant Filings | 143530008.pdf |
| Claimant Filings | 143530007.pdf |
| Claimant Filings | 143530006.pdf |
| Claimant Filings | 143530005.pdf |

Roman Catholic Archdiocese of New Orleans
Exhibit 9
Data and Documents Considered

Confidential Pursuant to Protective Order

| File Type | File Description |
|---|---|
| Claimant Filings | 143530004.pdf |
| Claimant Filings | 143530003.pdf |
| Claimant Filings | 143530002.pdf |
| Claimant Filings | 143530001.pdf |
| Claimant Filings | 143530000.pdf |
| Claimant Filings | 143520651.pdf |
| Claimant Filings | 143520650.pdf |
| Claimant Filings | 143520649.pdf |
| Claimant Filings | 143520648.pdf |
| Claimant Filings | 143520647.pdf |
| Claimant Filings | 143520646.pdf |
| Claimant Filings | 143520645.pdf |
| Claimant Filings | 143520644.pdf |
| Claimant Filings | 143520643.pdf |
| Claimant Filings | 143520642.pdf |
| Claimant Filings | 143520641.pdf |
| Claimant Filings | 143520640.pdf |
| Claimant Filings | 143520639.pdf |
| Claimant Filings | 143520638.pdf |
| Claimant Filings | 143520637.pdf |
| Claimant Filings | 143520636.pdf |
| Claimant Filings | 143520635.pdf |
| Claimant Filings | 143520634.pdf |
| Claimant Filings | 143520633.pdf |
| Claimant Filings | 143520632.pdf |
| Claimant Filings | 143520631.pdf |
| Claimant Filings | 143520630.pdf |
| Claimant Filings | 143520629.pdf |
| Claimant Filings | 143520628.pdf |
| Claimant Filings | 143520627.pdf |
| Claimant Filings | 143520626.pdf |
| Claimant Filings | 143520625.pdf |
| Claimant Filings | 143520624.pdf |
| Claimant Filings | 143520623.pdf |
| Claimant Filings | 143520622.pdf |
| Claimant Filings | 143520621.pdf |
| Claimant Filings | 143520620.pdf |
| Claimant Filings | 143520619.pdf |
| Claimant Filings | 143520618.pdf |
| Claimant Filings | 143520617.pdf |
| Claimant Filings | 143520616.pdf |
| Claimant Filings | 143520615.pdf |
| Claimant Filings | 143520614.pdf |
| Claimant Filings | 143520613.pdf |
| Claimant Filings | 143520612.pdf |
| Claimant Filings | 143520611.pdf |
| Claimant Filings | 143520610.pdf |
| Claimant Filings | 143520609.pdf |
| Claimant Filings | 143520608.pdf |
| Claimant Filings | 143520607.pdf |
| Claimant Filings | 143520606.pdf |
| Claimant Filings | 143520605.pdf |
| Claimant Filings | 143520604.pdf |
| Claimant Filings | 143520603.pdf |
| Claimant Filings | 143520602.pdf |
| Claimant Filings | 143520601.pdf |
| Claimant Filings | 143520600.pdf |
| Claimant Filings | 143520599.pdf |
| Claimant Filings | 143520598.pdf |
| Claimant Filings | 143520597.pdf |
| Claimant Filings | 143520596.pdf |
| Claimant Filings | 143520595.pdf |

| File Type | File Description |
|---|---|
| Claimant Filings | 143520594.pdf |
| Claimant Filings | 143520593.pdf |
| Claimant Filings | 143520592.pdf |
| Claimant Filings | 143520591.pdf |
| Claimant Filings | 143520590.pdf |
| Claimant Filings | 143520589.pdf |
| Claimant Filings | 143520588.pdf |
| Claimant Filings | 143520587.pdf |
| Claimant Filings | 143520586.pdf |
| Claimant Filings | 143520585.pdf |
| Claimant Filings | 143520584.pdf |
| Claimant Filings | 143520583.pdf |
| Claimant Filings | 143520582.pdf |
| Claimant Filings | 143520581.pdf |
| Claimant Filings | 143520580.pdf |
| Claimant Filings | 143520579.pdf |
| Claimant Filings | 143520578.pdf |
| Claimant Filings | 143520577.pdf |
| Claimant Filings | 143520576.pdf |
| Claimant Filings | 143520575.pdf |
| Claimant Filings | 143520574.pdf |
| Claimant Filings | 143520573.pdf |
| Claimant Filings | 143520572.pdf |
| Claimant Filings | 143520571.pdf |
| Claimant Filings | 143520570.pdf |
| Claimant Filings | 143520569.pdf |
| Claimant Filings | 143520568.pdf |
| Claimant Filings | 143520567.pdf |
| Claimant Filings | 143520566.pdf |
| Claimant Filings | 143520565.pdf |
| Claimant Filings | 143520564.pdf |
| Claimant Filings | 143520563.pdf |
| Claimant Filings | 143520562.pdf |
| Claimant Filings | 143520561.pdf |
| Claimant Filings | 143520560.pdf |
| Claimant Filings | 143520559.pdf |
| Claimant Filings | 143520558.pdf |
| Claimant Filings | 143520557.pdf |
| Claimant Filings | 143520556.pdf |
| Claimant Filings | 143520555.pdf |
| Claimant Filings | 143520554.pdf |
| Claimant Filings | 143520553.pdf |
| Claimant Filings | 143520552.pdf |
| Claimant Filings | 143520551.pdf |
| Claimant Filings | 143520550.pdf |
| Claimant Filings | 143520549.pdf |
| Claimant Filings | 143520548.pdf |
| Claimant Filings | 143520547.pdf |
| Claimant Filings | 143520546.pdf |
| Claimant Filings | 143520545.pdf |
| Claimant Filings | 143520544.pdf |
| Claimant Filings | 143520543.pdf |
| Claimant Filings | 143520542.pdf |
| Claimant Filings | 143520541.pdf |
| Claimant Filings | 143520540.pdf |
| Claimant Filings | 143520539.pdf |
| Claimant Filings | 143520538.pdf |
| Claimant Filings | 143520537.pdf |
| Claimant Filings | 143520536.pdf |
| Claimant Filings | 143520535.pdf |
| Claimant Filings | 143520534.pdf |
| Claimant Filings | 143520533.pdf |

Roman Catholic Archdiocese of New Orleans
Exhibit 9
Data and Documents Considered

| File Type | File Description |
|---|---|
| Claimant Filings | 143520532.pdf |
| Claimant Filings | 143520531.pdf |
| Claimant Filings | 143520530.pdf |
| Claimant Filings | 143520529.pdf |
| Claimant Filings | 143520528.pdf |
| Claimant Filings | 143520527.pdf |
| Claimant Filings | 143520527 Addendum.pdf |
| Claimant Filings | 143520526.pdf |
| Claimant Filings | 143520525.pdf |
| Claimant Filings | 143520524.pdf |
| Claimant Filings | 143520523.pdf |
| Claimant Filings | 143520522.pdf |
| Claimant Filings | 143520521.pdf |
| Claimant Filings | 143520520.pdf |
| Claimant Filings | 143520519.pdf |
| Claimant Filings | 143520518.pdf |
| Claimant Filings | 143520517.pdf |
| Claimant Filings | 143520516.pdf |
| Claimant Filings | 143520515.pdf |
| Claimant Filings | 143520514.pdf |
| Claimant Filings | 143520513.pdf |
| Claimant Filings | 143520512.pdf |
| Claimant Filings | 143520511.pdf |
| Claimant Filings | 143520510.pdf |
| Claimant Filings | 143520509.pdf |
| Claimant Filings | 143520508.pdf |
| Claimant Filings | 143520507.pdf |
| Claimant Filings | 143520506.pdf |
| Claimant Filings | 143520505.pdf |
| Claimant Filings | 143520504.pdf |
| Claimant Filings | 143520503.pdf |
| Claimant Filings | 143520502.pdf |
| Claimant Filings | 143520501.pdf |
| Claimant Filings | 143520500.pdf |
| Claimant Filings | 143520499.pdf |
| Claimant Filings | 143520498.pdf |
| Claimant Filings | 143520497.pdf |
| Claimant Filings | 143520496.pdf |
| Claimant Filings | 143520495.pdf |
| Claimant Filings | 143520494.pdf |
| Claimant Filings | 143520493.pdf |
| Claimant Filings | 143520492.pdf |
| Claimant Filings | 143520491.pdf |
| Claimant Filings | 143520490.pdf |
| Claimant Filings | 143520489.pdf |
| Claimant Filings | 143520488.pdf |
| Claimant Filings | 143520487.pdf |
| Claimant Filings | 143520486.pdf |
| Claimant Filings | 143520485.pdf |
| Claimant Filings | 143520484.pdf |
| Claimant Filings | 143520483.pdf |
| Claimant Filings | 143520482.pdf |
| Claimant Filings | 143520481.pdf |
| Claimant Filings | 143520480.pdf |
| Claimant Filings | 143520479.pdf |
| Claimant Filings | 143520478.pdf |
| Claimant Filings | 143520477.pdf |
| Claimant Filings | 143520476.pdf |
| Claimant Filings | 143520475.pdf |
| Claimant Filings | 143520474.pdf |
| Claimant Filings | 143520473.pdf |
| Claimant Filings | 143520472.pdf |

| File Type | File Description |
|---|---|
| Claimant Filings | 143520471.pdf |
| Claimant Filings | 143520470.pdf |
| Claimant Filings | 143520469.pdf |
| Claimant Filings | 143520468.pdf |
| Claimant Filings | 143520467.pdf |
| Claimant Filings | 143520466.pdf |
| Claimant Filings | 143520465.pdf |
| Claimant Filings | 143520464.pdf |
| Claimant Filings | 143520463.pdf |
| Claimant Filings | 143520462.pdf |
| Claimant Filings | 143520461.pdf |
| Claimant Filings | 143520460.pdf |
| Claimant Filings | 143520459.pdf |
| Claimant Filings | 143520458.pdf |
| Claimant Filings | 143520457.pdf |
| Claimant Filings | 143520456.pdf |
| Claimant Filings | 143520455.pdf |
| Claimant Filings | 143520454.pdf |
| Claimant Filings | 143520453.pdf |
| Claimant Filings | 143520452.pdf |
| Claimant Filings | 143520451.pdf |
| Claimant Filings | 143520450.pdf |
| Claimant Filings | 143520449.pdf |
| Claimant Filings | 143520448.pdf |
| Claimant Filings | 143520447.pdf |
| Claimant Filings | 143520446.pdf |
| Claimant Filings | 143520445.pdf |
| Claimant Filings | 143520444.pdf |
| Claimant Filings | 143520443.pdf |
| Claimant Filings | 143520442.pdf |
| Claimant Filings | 143520441.pdf |
| Claimant Filings | 143520440.pdf |
| Claimant Filings | 143520439.pdf |
| Claimant Filings | 143520438.pdf |
| Claimant Filings | 143520437.pdf |
| Claimant Filings | 143520436.pdf |
| Claimant Filings | 143520435.pdf |
| Claimant Filings | 143520434.pdf |
| Claimant Filings | 143520433.pdf |
| Claimant Filings | 143520432.pdf |
| Claimant Filings | 143520431.pdf |
| Claimant Filings | 143520430.pdf |
| Claimant Filings | 143520429.pdf |
| Claimant Filings | 143520428.pdf |
| Claimant Filings | 143520427.pdf |
| Claimant Filings | 143520426.pdf |
| Claimant Filings | 143520425.pdf |
| Claimant Filings | 143520424.pdf |
| Claimant Filings | 143520423.pdf |
| Claimant Filings | 143520422.pdf |
| Claimant Filings | 143520421.pdf |
| Claimant Filings | 143520420.pdf |
| Claimant Filings | 143520419.pdf |
| Claimant Filings | 143520418.pdf |
| Claimant Filings | 143520417.pdf |
| Claimant Filings | 143520416.pdf |
| Claimant Filings | 143520415.pdf |
| Claimant Filings | 143520414.pdf |
| Claimant Filings | 143520413.pdf |
| Claimant Filings | 143520412.pdf |
| Claimant Filings | 143520411.pdf |
| Claimant Filings | 143520410.pdf |

| File Type | File Description |
|---|---|
| Claimant Filings | 143520409.pdf |
| Claimant Filings | 143520408.pdf |
| Claimant Filings | 143520407.pdf |
| Claimant Filings | 143520406.pdf |
| Claimant Filings | 143520405.pdf |
| Claimant Filings | 143520404.pdf |
| Claimant Filings | 143520403.pdf |
| Claimant Filings | 143520402.pdf |
| Claimant Filings | 143520401.pdf |
| Claimant Filings | 143520400.pdf |
| Claimant Filings | 143520399.pdf |
| Claimant Filings | 143520398.pdf |
| Claimant Filings | 143520397.pdf |
| Claimant Filings | 143520396.pdf |
| Claimant Filings | 143520395.pdf |
| Claimant Filings | 143520394.pdf |
| Claimant Filings | 143520393.pdf |
| Claimant Filings | 143520392.pdf |
| Claimant Filings | 143520391.pdf |
| Claimant Filings | 143520390.pdf |
| Claimant Filings | 143520389.pdf |
| Claimant Filings | 143520388.pdf |
| Claimant Filings | 143520387.pdf |
| Claimant Filings | 143520386.pdf |
| Claimant Filings | 143520385.pdf |
| Claimant Filings | 143520384.pdf |
| Claimant Filings | 143520383.pdf |
| Claimant Filings | 143520382.pdf |
| Claimant Filings | 143520381.pdf |
| Claimant Filings | 143520380.pdf |
| Claimant Filings | 143520379.pdf |
| Claimant Filings | 143520378.pdf |
| Claimant Filings | 143520377.pdf |
| Claimant Filings | 143520376.pdf |
| Claimant Filings | 143520375.pdf |
| Claimant Filings | 143520374.pdf |
| Claimant Filings | 143520373.pdf |
| Claimant Filings | 143520372.pdf |
| Claimant Filings | 143520371.pdf |
| Claimant Filings | 143520370.pdf |
| Claimant Filings | 143520369.pdf |
| Claimant Filings | 143520368.pdf |
| Claimant Filings | 143520367.pdf |
| Claimant Filings | 143520366.pdf |
| Claimant Filings | 143520365.pdf |
| Claimant Filings | 143520364.pdf |
| Claimant Filings | 143520363.pdf |
| Claimant Filings | 143520362.pdf |
| Claimant Filings | 143520361.pdf |
| Claimant Filings | 143520360.pdf |
| Claimant Filings | 143520359.pdf |
| Claimant Filings | 143520358.pdf |
| Claimant Filings | 143520357.pdf |
| Claimant Filings | 143520356.pdf |
| Claimant Filings | 143520355.pdf |
| Claimant Filings | 143520354.pdf |
| Claimant Filings | 143520353.pdf |
| Claimant Filings | 143520352.pdf |
| Claimant Filings | 143520351.pdf |
| Claimant Filings | 143520350.pdf |
| Claimant Filings | 143520349.pdf |
| Claimant Filings | 143520348.pdf |

| File Type | File Description |
|---|---|
| Claimant Filings | 143520347.pdf |
| Claimant Filings | 143520346.pdf |
| Claimant Filings | 143520345.pdf |
| Claimant Filings | 143520344.pdf |
| Claimant Filings | 143520343.pdf |
| Claimant Filings | 143520342.pdf |
| Claimant Filings | 143520341.pdf |
| Claimant Filings | 143520340.pdf |
| Claimant Filings | 143520339.pdf |
| Claimant Filings | 143520338.pdf |
| Claimant Filings | 143520337.pdf |
| Claimant Filings | 143520336.pdf |
| Claimant Filings | 143520335.pdf |
| Claimant Filings | 143520334.pdf |
| Claimant Filings | 143520333.pdf |
| Claimant Filings | 143520332.pdf |
| Claimant Filings | 143520331.pdf |
| Claimant Filings | 143520330.pdf |
| Claimant Filings | 143520329.pdf |
| Claimant Filings | 143520328.pdf |
| Claimant Filings | 143520327.pdf |
| Claimant Filings | 143520326.pdf |
| Claimant Filings | 143520325.pdf |
| Claimant Filings | 143520324.pdf |
| Claimant Filings | 143520323.pdf |
| Claimant Filings | 143520322.pdf |
| Claimant Filings | 143520321.pdf |
| Claimant Filings | 143520320.pdf |
| Claimant Filings | 143520319.pdf |
| Claimant Filings | 143520318.pdf |
| Claimant Filings | 143520317.pdf |
| Claimant Filings | 143520316.pdf |
| Claimant Filings | 143520315.pdf |
| Claimant Filings | 143520314.pdf |
| Claimant Filings | 143520313.pdf |
| Claimant Filings | 143520312.pdf |
| Claimant Filings | 143520311.pdf |
| Claimant Filings | 143520310.pdf |
| Claimant Filings | 143520309.pdf |
| Claimant Filings | 143520308.pdf |
| Claimant Filings | 143520307.pdf |
| Claimant Filings | 143520306.pdf |
| Claimant Filings | 143520305.pdf |
| Claimant Filings | 143520304.pdf |
| Claimant Filings | 143520303.pdf |
| Claimant Filings | 143520302.pdf |
| Claimant Filings | 143520301.pdf |
| Claimant Filings | 143520300.pdf |
| Claimant Filings | 143520299.pdf |
| Claimant Filings | 143520298.pdf |
| Claimant Filings | 143520297.pdf |
| Claimant Filings | 143520296.pdf |
| Claimant Filings | 143520295.pdf |
| Claimant Filings | 143520294.pdf |
| Claimant Filings | 143520293.pdf |
| Claimant Filings | 143520292.pdf |
| Claimant Filings | 143520291.pdf |
| Claimant Filings | 143520290.pdf |
| Claimant Filings | 143520289.pdf |
| Claimant Filings | 143520288.pdf |
| Claimant Filings | 143520287.pdf |
| Claimant Filings | 143520286.pdf |

| File Type | File Description |
|---|---|
| Claimant Filings | 143520285.pdf |
| Claimant Filings | 143520284.pdf |
| Claimant Filings | 143520283.pdf |
| Claimant Filings | 143520282.pdf |
| Claimant Filings | 143520281.pdf |
| Claimant Filings | 143520280.pdf |
| Claimant Filings | 143520279.pdf |
| Claimant Filings | 143520278.pdf |
| Claimant Filings | 143520277.pdf |
| Claimant Filings | 143520276.pdf |
| Claimant Filings | 143520275.pdf |
| Claimant Filings | 143520274.pdf |
| Claimant Filings | 143520273.pdf |
| Claimant Filings | 143520272.pdf |
| Claimant Filings | 143520271.pdf |
| Claimant Filings | 143520270.pdf |
| Claimant Filings | 143520269.pdf |
| Claimant Filings | 143520268.pdf |
| Claimant Filings | 143520267.pdf |
| Claimant Filings | 143520266.pdf |
| Claimant Filings | 143520265.pdf |
| Claimant Filings | 143520264.pdf |
| Claimant Filings | 143520263.pdf |
| Claimant Filings | 143520262.pdf |
| Claimant Filings | 143520261.pdf |
| Claimant Filings | 143520260.pdf |
| Claimant Filings | 143520259.pdf |
| Claimant Filings | 143520258.pdf |
| Claimant Filings | 143520257.pdf |
| Claimant Filings | 143520256.pdf |
| Claimant Filings | 143520255.pdf |
| Claimant Filings | 143520254.pdf |
| Claimant Filings | 143520253.pdf |
| Claimant Filings | 143520252.pdf |
| Claimant Filings | 143520251.pdf |
| Claimant Filings | 143520250.pdf |
| Claimant Filings | 143520249.pdf |
| Claimant Filings | 143520248.pdf |
| Claimant Filings | 143520247.pdf |
| Claimant Filings | 143520246.pdf |
| Claimant Filings | 143520245.pdf |
| Claimant Filings | 143520244.pdf |
| Claimant Filings | 143520243.pdf |
| Claimant Filings | 143520242.pdf |
| Claimant Filings | 143520241.pdf |
| Claimant Filings | 143520240.pdf |
| Claimant Filings | 143520239.pdf |
| Claimant Filings | 143520238.pdf |
| Claimant Filings | 143520237.pdf |
| Claimant Filings | 143520236.pdf |
| Claimant Filings | 143520235.pdf |
| Claimant Filings | 143520234.pdf |
| Claimant Filings | 143520233.pdf |
| Claimant Filings | 143520232.pdf |
| Claimant Filings | 143520231.pdf |
| Claimant Filings | 143520230.pdf |
| Claimant Filings | 143520229.pdf |
| Claimant Filings | 143520228.pdf |
| Claimant Filings | 143520227.pdf |
| Claimant Filings | 143520226.pdf |
| Claimant Filings | 143520225.pdf |
| Claimant Filings | 143520224.pdf |

| File Type | File Description |
|---|---|
| Claimant Filings | 143520223.pdf |
| Claimant Filings | 143520222.pdf |
| Claimant Filings | 143520221.pdf |
| Claimant Filings | 143520220.pdf |
| Claimant Filings | 143520219.pdf |
| Claimant Filings | 143520218.pdf |
| Claimant Filings | 143520217.pdf |
| Claimant Filings | 143520216.pdf |
| Claimant Filings | 143520215.pdf |
| Claimant Filings | 143520214.pdf |
| Claimant Filings | 143520213.pdf |
| Claimant Filings | 143520212.pdf |
| Claimant Filings | 143520211.pdf |
| Claimant Filings | 143520210.pdf |
| Claimant Filings | 143520209.pdf |
| Claimant Filings | 143520208.pdf |
| Claimant Filings | 143520207.pdf |
| Claimant Filings | 143520206.pdf |
| Claimant Filings | 143520205.pdf |
| Claimant Filings | 143520204.pdf |
| Claimant Filings | 143520203.pdf |
| Claimant Filings | 143520202.pdf |
| Claimant Filings | 143520201.pdf |
| Claimant Filings | 143520200.pdf |
| Claimant Filings | 143520199.pdf |
| Claimant Filings | 143520198.pdf |
| Claimant Filings | 143520197.pdf |
| Claimant Filings | 143520196.pdf |
| Claimant Filings | 143520195.pdf |
| Claimant Filings | 143520194.pdf |
| Claimant Filings | 143520193 [Redacted].pdf |
| Claimant Filings | 143520193.pdf |
| Claimant Filings | 143520192.pdf |
| Claimant Filings | 143520191.pdf |
| Claimant Filings | 143520190.pdf |
| Claimant Filings | 143520189.pdf |
| Claimant Filings | 143520188.pdf |
| Claimant Filings | 143520187.pdf |
| Claimant Filings | 143520186.pdf |
| Claimant Filings | 143520185.pdf |
| Claimant Filings | 143520184.pdf |
| Claimant Filings | 143520183.pdf |
| Claimant Filings | 143520182.pdf |
| Claimant Filings | 143520181.pdf |
| Claimant Filings | 143520180.pdf |
| Claimant Filings | 143520179.pdf |
| Claimant Filings | 143520178.pdf |
| Claimant Filings | 143520177.pdf |
| Claimant Filings | 143520176.pdf |
| Claimant Filings | 143520175.pdf |
| Claimant Filings | 143520174.pdf |
| Claimant Filings | 143520173.pdf |
| Claimant Filings | 143520172.pdf |
| Claimant Filings | 143520171.pdf |
| Claimant Filings | 143520170.pdf |
| Claimant Filings | 143520169.pdf |
| Claimant Filings | 143520168.pdf |
| Claimant Filings | 143520167.pdf |
| Claimant Filings | 143520166.pdf |
| Claimant Filings | 143520165.pdf |
| Claimant Filings | 143520164.pdf |
| Claimant Filings | 143520163.pdf |

| File Type | File Description |
|---|---|
| Claimant Filings | 143520162.pdf |
| Claimant Filings | 143520161.pdf |
| Claimant Filings | 143520160.pdf |
| Claimant Filings | 143520159.pdf |
| Claimant Filings | 143520158.pdf |
| Claimant Filings | 143520157.pdf |
| Claimant Filings | 143520156.pdf |
| Claimant Filings | 143520155.pdf |
| Claimant Filings | 143520154.pdf |
| Claimant Filings | 143520153.pdf |
| Claimant Filings | 143520152.pdf |
| Claimant Filings | 143520151.pdf |
| Claimant Filings | 143520150.pdf |
| Claimant Filings | 143520149.pdf |
| Claimant Filings | 143520148.pdf |
| Claimant Filings | 143520147.pdf |
| Claimant Filings | 143520146.pdf |
| Claimant Filings | 143520145.pdf |
| Claimant Filings | 143520144.pdf |
| Claimant Filings | 143520143.pdf |
| Claimant Filings | 143520142.pdf |
| Claimant Filings | 143520141.pdf |
| Claimant Filings | 143520140.pdf |
| Claimant Filings | 143520139.pdf |
| Claimant Filings | 143520138.pdf |
| Claimant Filings | 143520137.pdf |
| Claimant Filings | 143520136.pdf |
| Claimant Filings | 143520135.pdf |
| Claimant Filings | 143520134.pdf |
| Claimant Filings | 143520133.pdf |
| Claimant Filings | 143520132.pdf |
| Claimant Filings | 143520131.pdf |
| Claimant Filings | 143520130.pdf |
| Claimant Filings | 143520129.pdf |
| Claimant Filings | 143520128.pdf |
| Claimant Filings | 143520127.pdf |
| Claimant Filings | 143520126.pdf |
| Claimant Filings | 143520125.pdf |
| Claimant Filings | 143520124.pdf |
| Claimant Filings | 143520123.pdf |
| Claimant Filings | 143520122.pdf |
| Claimant Filings | 143520121.pdf |
| Claimant Filings | 143520120.pdf |
| Claimant Filings | 143520119.pdf |
| Claimant Filings | 143520118.pdf |
| Claimant Filings | 143520117.pdf |
| Claimant Filings | 143520116.pdf |
| Claimant Filings | 143520115.pdf |
| Claimant Filings | 143520114.pdf |
| Claimant Filings | 143520113.pdf |
| Claimant Filings | 143520112.pdf |
| Claimant Filings | 143520111.pdf |
| Claimant Filings | 143520110.pdf |
| Claimant Filings | 143520109.pdf |
| Claimant Filings | 143520108.pdf |
| Claimant Filings | 143520107.pdf |
| Claimant Filings | 143520106.pdf |
| Claimant Filings | 143520105.pdf |
| Claimant Filings | 143520104.pdf |
| Claimant Filings | 143520103.pdf |
| Claimant Filings | 143520102.pdf |
| Claimant Filings | 143520101.pdf |

| File Type | File Description |
|---|---|
| Claimant Filings | 143520100.pdf |
| Claimant Filings | 143520099.pdf |
| Claimant Filings | 143520098.pdf |
| Claimant Filings | 143520097.pdf |
| Claimant Filings | 143520096.pdf |
| Claimant Filings | 143520095.pdf |
| Claimant Filings | 143520094.pdf |
| Claimant Filings | 143520093.pdf |
| Claimant Filings | 143520092.pdf |
| Claimant Filings | 143520091.pdf |
| Claimant Filings | 143520090.pdf |
| Claimant Filings | 143520089.pdf |
| Claimant Filings | 143520088.pdf |
| Claimant Filings | 143520087.pdf |
| Claimant Filings | 143520086.pdf |
| Claimant Filings | 143520085.pdf |
| Claimant Filings | 143520084.pdf |
| Claimant Filings | 143520083.pdf |
| Claimant Filings | 143520082.pdf |
| Claimant Filings | 143520081.pdf |
| Claimant Filings | 143520080.pdf |
| Claimant Filings | 143520079.pdf |
| Claimant Filings | 143520078.pdf |
| Claimant Filings | 143520077.pdf |
| Claimant Filings | 143520076.pdf |
| Claimant Filings | 143520075.pdf |
| Claimant Filings | 143520074.pdf |
| Claimant Filings | 143520073.pdf |
| Claimant Filings | 143520072.pdf |
| Claimant Filings | 143520071.pdf |
| Claimant Filings | 143520070.pdf |
| Claimant Filings | 143520069.pdf |
| Claimant Filings | 143520068.pdf |
| Claimant Filings | 143520067.pdf |
| Claimant Filings | 143520066.pdf |
| Claimant Filings | 143520065.pdf |
| Claimant Filings | 143520064.pdf |
| Claimant Filings | 143520063.pdf |
| Claimant Filings | 143520062.pdf |
| Claimant Filings | 143520061.pdf |
| Claimant Filings | 143520060.pdf |
| Claimant Filings | 143520059.pdf |
| Claimant Filings | 143520058.pdf |
| Claimant Filings | 143520057.pdf |
| Claimant Filings | 143520056.pdf |
| Claimant Filings | 143520055.pdf |
| Claimant Filings | 143520054.pdf |
| Claimant Filings | 143520053.pdf |
| Claimant Filings | 143520052.pdf |
| Claimant Filings | 143520051.pdf |
| Claimant Filings | 143520050.pdf |
| Claimant Filings | 143520049.pdf |
| Claimant Filings | 143520048.pdf |
| Claimant Filings | 143520047.pdf |
| Claimant Filings | 143520046.pdf |
| Claimant Filings | 143520045.pdf |
| Claimant Filings | 143520044.pdf |
| Claimant Filings | 143520043.pdf |
| Claimant Filings | 143520042.pdf |
| Claimant Filings | 143520041.pdf |
| Claimant Filings | 143520040.pdf |
| Claimant Filings | 143520039.pdf |

| File Type | File Description |
|---|---|
| Claimant Filings | 143520038.pdf |
| Claimant Filings | 143520037.pdf |
| Claimant Filings | 143520036.pdf |
| Claimant Filings | 143520035.pdf |
| Claimant Filings | 143520034.pdf |
| Claimant Filings | 143520033.pdf |
| Claimant Filings | 143520032.pdf |
| Claimant Filings | 143520031.pdf |
| Claimant Filings | 143520030.pdf |
| Claimant Filings | 143520029.pdf |
| Claimant Filings | 143520028.pdf |
| Claimant Filings | 143520027.pdf |
| Claimant Filings | 143520026.pdf |
| Claimant Filings | 143520025.pdf |
| Claimant Filings | 143520024.pdf |
| Claimant Filings | 143520023.pdf |
| Claimant Filings | 143520022.pdf |
| Claimant Filings | 143520021.pdf |
| Claimant Filings | 143520020.pdf |
| Claimant Filings | 143520019.pdf |
| Claimant Filings | 143520018.pdf |
| Claimant Filings | 143520017.pdf |
| Claimant Filings | 143520016.pdf |
| Claimant Filings | 143520015.pdf |
| Claimant Filings | 143520014.pdf |
| Claimant Filings | 143520013.pdf |
| Claimant Filings | 143520012.pdf |
| Claimant Filings | 143520011.pdf |
| Claimant Filings | 143520010.pdf |
| Claimant Filings | 143520009.pdf |
| Claimant Filings | 143520008.pdf |
| Claimant Filings | 143520007.pdf |
| Claimant Filings | 143520006.pdf |
| Claimant Filings | 143520005.pdf |
| Claimant Filings | 143520004.pdf |
| Claimant Filings | 143520003.pdf |
| Claimant Filings | 143520002.pdf |
| Claimant Filings | 143520001.pdf |
| Claimant Filings | 143500434.pdf |
| Claimant Filings | 143500433.pdf |
| Claimant Filings | 143500432.pdf |
| Claimant Filings | 143500431.pdf |
| Claimant Filings | 143500430.pdf |
| Claimant Filings | 143500429.pdf |
| Claimant Filings | 143500420.pdf |
| Claimant Filings | 143500387.pdf |
| Claimant Filings | 143500340.pdf |
| Claimant Filings | 143500339.pdf |
| Claimant Filings | 143500338.pdf |
| Claimant Filings | 143500337.pdf |
| Claimant Filings | 143500336.pdf |
| Claimant Filings | 143500335.pdf |
| Claimant Filings | 143500334.pdf |
| Claimant Filings | 143500333.pdf |
| Claimant Filings | 143500332.pdf |
| Claimant Filings | 143500331.pdf |
| Claimant Filings | 143500330.pdf |
| Claimant Filings | 143500329.pdf |
| Claimant Filings | 143500328.pdf |
| Claimant Filings | 143500327.pdf |
| Claimant Filings | 143500326.pdf |
| Claimant Filings | 143500325.pdf |

Roman Catholic Archdiocese of New Orleans
Exhibit 9
Data and Documents Considered

Confidential Pursuant to Protective Order

| File Type | File Description |
|---|---|
| Claimant Filings | 143500324.pdf |
| Claimant Filings | 143500323.pdf |
| Claimant Filings | 143500322.pdf |
| Claimant Filings | 143500321.pdf |
| Claimant Filings | 143500320.pdf |
| Claimant Filings | 143500319.pdf |
| Claimant Filings | 143500318.pdf |
| Claimant Filings | 143500317.pdf |
| Claimant Filings | 143500316.pdf |
| Claimant Filings | 143500315.pdf |
| Claimant Filings | 143500314.pdf |
| Claimant Filings | 143500313.pdf |
| Claimant Filings | 143500312.pdf |
| Claimant Filings | 143500311.pdf |
| Claimant Filings | 143500310.pdf |
| Claimant Filings | 143500309.pdf |
| Claimant Filings | 143500308.pdf |
| Claimant Filings | 143500307.pdf |
| Claimant Filings | 143500306.pdf |
| Claimant Filings | 143500305.pdf |
| Claimant Filings | 143500304.pdf |
| Claimant Filings | 143500303.pdf |
| Claimant Filings | 143500302.pdf |
| Claimant Filings | 143500301.pdf |
| Claimant Filings | 143500300.pdf |
| Claimant Filings | 143500299.pdf |
| Claimant Filings | 143500298.pdf |
| Claimant Filings | 143500297.pdf |
| Claimant Filings | 143500296.pdf |
| Claimant Filings | 143500295.pdf |
| Claimant Filings | 143500294.pdf |
| Claimant Filings | 143500293.pdf |
| Claimant Filings | 143500292.pdf |
| Claimant Filings | 143500291.pdf |
| Claimant Filings | 143500290.pdf |
| Claimant Filings | 143500289.pdf |
| Claimant Filings | 143500288.pdf |
| Claimant Filings | 143500287.pdf |
| Claimant Filings | 143500280.pdf |
| Claimant Filings | 143500279.pdf |
| Claimant Filings | 143500278.pdf |
| Claimant Filings | 143500277.pdf |
| Claimant Filings | 143500276.pdf |
| Claimant Filings | 143500275.pdf |
| Claimant Filings | 143500274.pdf |
| Claimant Filings | 143500273.pdf |
| Claimant Filings | 143500272.pdf |
| Claimant Filings | 143500271.pdf |
| Claimant Filings | 143500270.pdf |
| Claimant Filings | 143500269.pdf |
| Claimant Filings | 143500268.pdf |
| Claimant Filings | 143500267.pdf |
| Claimant Filings | 143500266.pdf |
| Claimant Filings | 143500265.pdf |
| Claimant Filings | 143500264.pdf |
| Claimant Filings | 143500263.pdf |
| Claimant Filings | 143500262.pdf |
| Claimant Filings | 143500261.pdf |
| Claimant Filings | 143500260.pdf |
| Claimant Filings | 143500259.pdf |
| Claimant Filings | 143500258.pdf |
| Claimant Filings | 143500257.pdf |

**Roman Catholic Archdiocese of New Orleans**
**Exhibit 9**
**Data and Documents Considered**

| File Type | File Description |
|---|---|
| Claimant Filings | 143500256.pdf |
| Claimant Filings | 143500255.pdf |
| Claimant Filings | 143500247.pdf |
| Claimant Filings | 143500246.pdf |
| Claimant Filings | 143500236.pdf |
| Claimant Filings | 143500229.pdf |
| Claimant Filings | 143500190.pdf |
| Claimant Filings | 143500069.pdf |
| Claimant Filings | 143500046.pdf |
| Claimant Filings | 143500044.pdf |
| Claimant Filings | 143500043.pdf |
| Claimant Filings | 143500040.pdf |
| Claimant Filings | 143500039.pdf |
| Claimant Filings | 143500038.pdf |
| Claimant Filings | 143500037.pdf |
| Claimant Filings | 143500036.pdf |
| Claimant Filings | 143500035.pdf |
| Claimant Filings | 143500033.pdf |
| Claimant Filings | 143500009.pdf |
| Claimant Filings | 143530068.pdf |
| Claimant Filings | 143530067.pdf |
| Claimant Filings | 143500070.pdf |
| Claimant Filings | July 1 2025 - Claims Lists – CONFIDENTIAL.xlsx |
| Court Documents | Declaration of Fr. Patrick R. Carr in Support of First Day Motions, *In Re: The Roman Catholic Church of the Archdiocese of New Orleans*, Case No. 20-10846 (Bankr. E.D.L.A. May 1, 2020), Docket. No. 14 |
| Court Documents | Second Amended Joint Chapter 11 Plan of Reorganization for The Roman Catholic Church of The Archdiocese of New Orleans and Additional Debtors, Proposed by The Debtor, The Additional Debtors, and The Official Committee of Unsecured Creditors, Dated as of August 6, 2025, *In Re: The Roman Catholic Church of the Archdiocese of New Orleans*, Case No. 20-10846 (Bankr. E.D.L.A. Aug. 6, 2025), Docket. No. 4253 |
| Court Documents | Form 201: Voluntary Petition for Non-Individuals Filing for Bankruptcy, *In Re: The Roman Catholic Church of the Archdiocese of New Orleans*, Case No. 20-10846 (Bankr. E.D.L.A. May 1, 2020), Docket. No. 1-1 |
| Court Documents | Second Amended Modified Disclosure Statement for The Second Amended Joint Chapter 11 Plan Of Reorganization for The Roman Catholic Church of The Archdiocese of New Orleans and Additional Debtors, Proposed by The Debtor, The Additional Debtors, and The Official Committee of Unsecured Creditors, Dated as of August 6, 2025, *In Re: The Roman Catholic Church of the Archdiocese of New Orleans*, Case No. 20-10846 (Bankr. E.D.L.A. Aug. 8, 2025), Docket. No. 4242 |
| Court Documents | Debtor's Expedited Motion for Entry of an Order, Pursuant to §§ 105(a) and 363 of the Bankruptcy Code and Bankruptcy Rule 9019, (i) Authorizing the Debtor to "Opt In" to Treatment as a Participating Chartered Organization under the Boy Scouts of America Chapter 11 Plan, To the Extent Necessary, and (II) Granting Related Relief, In re The Roman Catholic Church of the Archdiocese of New Orleans, No.20-10846 (Bankr. E.D.L.A. Mar. 23, 2022), Docket. No. 1368 |
| Settlement Agreement | ANO (20-10846)_00113017.pdf |
| Settlement Agreement | ANO (20-10846)_00113012.pdf |
| Settlement Agreement | ANO (20-10846)_00113007.pdf |
| Settlement Agreement | ANO (20-10846)_00112990.pdf |
| Settlement Agreement | ANO (20-10846)_00112985.pdf |
| Settlement Agreement | ANO (20-10846)_00112980.pdf |
| Settlement Agreement | ANO (20-10846)_00112975.pdf |
| Settlement Agreement | ANO (20-10846)_00112970.pdf |
| Settlement Agreement | ANO (20-10846)_00112965.pdf |
| Settlement Agreement | ANO (20-10846)_00112960.pdf |
| Settlement Agreement | ANO (20-10846)_00112950.pdf |
| Settlement Agreement | ANO (20-10846)_00112365.pdf |
| Settlement Agreement | ANO (20-10846)_00100284.pdf |
| Settlement Agreement | ANO (20-10846)_00100074.pdf |
| Settlement Agreement | ANO (20-10846)_00098932.pdf |
| Settlement Agreement | ANO (20-10846)_00098776.pdf |
| Settlement Agreement | ANO (20-10846)_00096849.pdf |
| Settlement Agreement | ANO ESI (20-10846)_00043857.pdf |
| Settlement Agreement | ANO (20-10846)_00164397.pdf |
| Settlement Agreement | ANO (20-10846)_00163520.pdf |
| Settlement Agreement | ANO (20-10846)_00162794.pdf |
| Settlement Agreement | ANO (20-10846)_00161232.pdf |

| File Type | File Description |
|---|---|
| Settlement Agreement | ANO (20-10846)_00160442.pdf |
| Settlement Agreement | ANO (20-10846)_00136260.pdf |
| Settlement Agreement | ANO (20-10846)_00116345.pdf |
| Settlement Agreement | ANO (20-10846)_00116338.pdf |
| Settlement Agreement | ANO (20-10846)_00116333.pdf |
| Settlement Agreement | ANO (20-10846)_00116321.pdf |
| Settlement Agreement | ANO (20-10846)_00116310.pdf |
| Settlement Agreement | ANO (20-10846)_00116305.pdf |
| Settlement Agreement | ANO (20-10846)_00116300.pdf |
| Settlement Agreement | ANO (20-10846)_00116291.pdf |
| Settlement Agreement | ANO (20-10846)_00116285.pdf |
| Settlement Agreement | ANO (20-10846)_00116279.pdf |
| Settlement Agreement | ANO (20-10846)_00116272.pdf |
| Settlement Agreement | ANO (20-10846)_00116263.pdf |
| Settlement Agreement | ANO (20-10846)_00116237.pdf |
| Settlement Agreement | ANO (20-10846)_00116228.pdf |
| Settlement Agreement | ANO (20-10846)_00116222.pdf |
| Settlement Agreement | ANO (20-10846)_00116213.pdf |
| Settlement Agreement | ANO (20-10846)_00116207.pdf |
| Settlement Agreement | ANO (20-10846)_00116198.pdf |
| Settlement Agreement | ANO (20-10846)_00116193.pdf |
| Settlement Agreement | ANO (20-10846)_00116184.pdf |
| Settlement Agreement | ANO (20-10846)_00116173.pdf |
| Settlement Agreement | ANO (20-10846)_00116168.pdf |
| Settlement Agreement | ANO (20-10846)_00116159.pdf |
| Settlement Agreement | ANO (20-10846)_00116153.pdf |
| Settlement Agreement | ANO (20-10846)_00116139.pdf |
| Settlement Agreement | ANO (20-10846)_00116125.pdf |
| Settlement Agreement | ANO (20-10846)_00116105.pdf |
| Settlement Agreement | ANO (20-10846)_00116086.pdf |
| Settlement Agreement | ANO (20-10846)_00116081.pdf |
| Settlement Agreement | ANO (20-10846)_00116075.pdf |
| Settlement Agreement | ANO (20-10846)_00116069.pdf |
| Settlement Agreement | ANO (20-10846)_00116059.pdf |
| Settlement Agreement | ANO (20-10846)_00116053.pdf |
| Settlement Agreement | ANO (20-10846)_00116043.pdf |
| Settlement Agreement | ANO (20-10846)_00116025.pdf |
| Settlement Agreement | ANO (20-10846)_00116020.pdf |
| Settlement Agreement | ANO (20-10846)_00116009.pdf |
| Settlement Agreement | ANO (20-10846)_00116004.pdf |
| Settlement Agreement | ANO (20-10846)_00115999.pdf |
| Settlement Agreement | ANO (20-10846)_00115990.pdf |
| Settlement Agreement | ANO (20-10846)_00115981.pdf |
| Settlement Agreement | ANO (20-10846)_00115975.pdf |
| Settlement Agreement | ANO (20-10846)_00115970.pdf |
| Settlement Agreement | ANO (20-10846)_00115964.pdf |
| Settlement Agreement | ANO (20-10846)_00115957.pdf |
| Settlement Agreement | ANO (20-10846)_00115941.pdf |
| Settlement Agreement | ANO (20-10846)_00115931.pdf |
| Settlement Agreement | ANO (20-10846)_00115926.pdf |
| Settlement Agreement | ANO (20-10846)_00115917.pdf |
| Settlement Agreement | ANO (20-10846)_00115907.pdf |
| Settlement Agreement | ANO (20-10846)_00115905.pdf |
| Settlement Agreement | ANO (20-10846)_00115893.pdf |
| Settlement Agreement | ANO (20-10846)_00115881.pdf |
| Settlement Agreement | ANO (20-10846)_00115871.pdf |
| Settlement Agreement | ANO (20-10846)_00115866.pdf |
| Settlement Agreement | ANO (20-10846)_00115860.pdf |
| Settlement Agreement | ANO (20-10846)_00115846.pdf |
| Settlement Agreement | ANO (20-10846)_00115840.pdf |
| Settlement Agreement | ANO (20-10846)_00115835.pdf |
| Settlement Agreement | ANO (20-10846)_00115825.pdf |

| File Type | File Description |
|---|---|
| Settlement Agreement | ANO (20-10846)_00115816.pdf |
| Settlement Agreement | ANO (20-10846)_00115805.pdf |
| Settlement Agreement | ANO (20-10846)_00115800.pdf |
| Settlement Agreement | ANO (20-10846)_00115796.pdf |
| Settlement Agreement | ANO (20-10846)_00115791.pdf |
| Settlement Agreement | ANO (20-10846)_00115782.pdf |
| Settlement Agreement | ANO (20-10846)_00115774.pdf |
| Settlement Agreement | ANO (20-10846)_00115754.pdf |
| Settlement Agreement | ANO (20-10846)_00115748.pdf |
| Settlement Agreement | ANO (20-10846)_00115743.pdf |
| Settlement Agreement | ANO (20-10846)_00115738.pdf |
| Settlement Agreement | ANO (20-10846)_00115731.pdf |
| Settlement Agreement | ANO (20-10846)_00115726.pdf |
| Settlement Agreement | ANO (20-10846)_00115721.pdf |
| Settlement Agreement | ANO (20-10846)_00115712.pdf |
| Settlement Agreement | ANO (20-10846)_00115700.pdf |
| Settlement Agreement | ANO (20-10846)_00115694.pdf |
| Settlement Agreement | ANO (20-10846)_00115689.pdf |
| Settlement Agreement | ANO (20-10846)_00115680.pdf |
| Settlement Agreement | ANO (20-10846)_00115672.pdf |
| Settlement Agreement | ANO (20-10846)_00115666.pdf |
| Settlement Agreement | ANO (20-10846)_00115656.pdf |
| Settlement Agreement | ANO (20-10846)_00115651.pdf |
| Settlement Agreement | ANO (20-10846)_00115642.pdf |
| Settlement Agreement | ANO (20-10846)_00115636.pdf |
| Settlement Agreement | ANO (20-10846)_00115627.pdf |
| Settlement Agreement | ANO (20-10846)_00115616.pdf |
| Settlement Agreement | ANO (20-10846)_00115602.pdf |
| Settlement Agreement | ANO (20-10846)_00115587.pdf |
| Settlement Agreement | ANO (20-10846)_00115572.pdf |
| Settlement Agreement | ANO (20-10846)_00115567.pdf |
| Settlement Agreement | ANO (20-10846)_00115562.pdf |
| Settlement Agreement | ANO (20-10846)_00115556.pdf |
| Settlement Agreement | ANO (20-10846)_00115539.pdf |
| Settlement Agreement | ANO (20-10846)_00115529.pdf |
| Settlement Agreement | ANO (20-10846)_00115524.pdf |
| Settlement Agreement | ANO (20-10846)_00115517.pdf |
| Settlement Agreement | ANO (20-10846)_00115512.pdf |
| Settlement Agreement | ANO (20-10846)_00115500.pdf |
| Settlement Agreement | ANO (20-10846)_00115495.pdf |
| Settlement Agreement | ANO (20-10846)_00115478.pdf |
| Settlement Agreement | ANO (20-10846)_00115472.pdf |
| Settlement Agreement | ANO (20-10846)_00115463.pdf |
| Settlement Agreement | ANO (20-10846)_00115454.pdf |
| Settlement Agreement | ANO (20-10846)_00115449.pdf |
| Settlement Agreement | ANO (20-10846)_00115440.pdf |
| Settlement Agreement | ANO (20-10846)_00115435.pdf |
| Settlement Agreement | ANO (20-10846)_00115425.pdf |
| Settlement Agreement | ANO (20-10846)_00115420.pdf |
| Settlement Agreement | ANO (20-10846)_00113044.pdf |
| Settlement Agreement | ANO (20-10846)_00113039.pdf |
| Settlement Agreement | ANO (20-10846)_00113034.pdf |
| Settlement Agreement | ANO (20-10846)_00113027.pdf |
| Settlement Agreement | ANO (20-10846)_00113022.pdf |
| Settlement Comps | Roman Catholic Archdiocese of Los Angeles, San Gabriel Mission HS _$8M.pdf |
| Settlement Comps | Hanna Boys Center _$6.8M.pdf |
| Settlement Comps | Diocese of Little Rock _$790K.pdf |
| Settlement Comps | Diocese of Crookston _$5M.pdf |
| Settlement Comps | Archdiocese of Portland _$4M.pdf |
| Settlement Comps | Archdiocese of Seattle _$1.7M.pdf |
| Settlement Comps | Archdiocese of Los Angeles _$1.9M.pdf |
| Settlement Comps | Archdiocese of Chicago _$2.1M.pdf |

Roman Catholic Archdiocese of New Orleans
Exhibit 9
Data and Documents Considered

Confidential Pursuant to Protective Order

| File Type | File Description |
|---|---|
| Settlement Comps | Order of St. Augustine_$1.375M.pdf |
| Settlement Comps | Diocese of Columbus_$1M.pdf |
| Settlement Comps | Archdiocese of Chicago_$1.5M.pdf |
| Settlement Comps | Archdiocese of Chicago_$880K.pdf |
| Settlement Comps | Archdiocese of Chicago_$800K.pdf |
| Settlement Comps | Seacoast Grace Church_$2.5M.pdf |
| Settlement Comps | Archdiocese of Seattle_$375K.pdf |
| Settlement Comps | Archdiocese of Chicago_$1.2M.pdf |
| Settlement Comps | Episcopal Diocese of Chicago_$750K.pdf |
| Settlement Comps | Archdiocese of Chicago_$1.75M.pdf |
| Settlement Comps | Diocese of Albany_$750K.pdf |
| Settlement Comps | Lake Elsinore_$1M.pdf |
| Settlement Comps | Archdiocese of St. Louis_$1M.pdf |
| Settlement Comps | Archdiocese of Philadelphia_$3.5M.pdf |
| Settlement Comps | Mount Carmel High School_$2.9M.pdf |
| Settlement Comps | Providence High School_$2M.pdf |
| Settlement Comps | Diocese of Orange and LA_$10M.pdf |
| Settlement Comps | Archdiocese of Los Angeles_$880M.pdf |
| Settlement Comps | Diocese of Orange_$3.5M.pdf |
| Settlement Comps | Archdiocese of Hartford_$2.4M.pdf |
| Settlement Comps | Doe v. Roe Archdiocese_$10M.pdf |
| Settlement Comps | Diocese of Green Bay_$700K.pdf |
| Settlement Comps | Diocese of Kansas City-St. Joseph_$600K.pdf |
| Settlement Comps | Diocese of Kansas City-St.Joseph_$2.25M.pdf |
| Settlement Comps | Diocese of Charlotte_$1.54M.pdf |
| Settlement Comps | Diocese of Kansas City-St. Joseph_$1.35M.pdf |
| Settlement Comps | Diocese of Kansas City_$130K.pdf |
| Settlement Comps | Archdiocese of Los Angeles_$13M.pdf |
| Settlement Comps | Diocese of Kansas City-St. Joseph_$525K.pdf |
| Settlement Comps | Immanuel Evangelical Lutheran Church_$450K.pdf |
| Settlement Comps | Corporation of the Catholic Archbishop of Seattle_$12.125M.pdf |
| Settlement Comps | Diocese of Kansas City-St. Joseph_$9.95M.pdf |
| Settlement Comps | Corporation of the Catholic Archbishop of Seattle_$1.2M.pdf |
| Settlement Comps | Archdiocese of Chicago_$1.25M.pdf |
| Settlement Comps | Corporation of the Catholic Archbishop of Seattle_$9.1M.pdf |
| Settlement Comps | Diocese of Savannah_$4.5M.pdf |
| Settlement Comps | Diocese of Portland,ME_$1.2M.pdf |
| Settlement Comps | Diocese of Buffalo and Diocese of Honolulu_$1.5M.pdf |
| Settlement Comps | Archdiocese of Chicago_$2.7M.pdf |
| Settlement Comps | Archdiocese of Baltimore_$50K.pdf |
| Settlement Comps | Archdiocese of Chicago_$3.15M.pdf |
| Settlement Comps | Archdiocese of Seattle_$1.3M.pdf |
| Settlement Comps | Corporation of the Catholic Archbishop of Seattle_$2.45M.pdf |
| Settlement Comps | Willow Creek Community Church_$3.25M.pdf |
| Settlement Comps | Order of St. Augustine_$1M.pdf |
| Settlement Comps | Diocese of Joliet_$1.4M.pdf |
| Settlement Comps | Diocese of Brooklyn_$27.5M.pdf |
| Settlement Comps | Archdiocese of New Orleans_$550K.pdf |
| Settlement Comps | San Ramon Valley Unified School District, New Life Church of Alamo_$1.55M.pdf |
| Settlement Comps | Diocese of Bridgeport_$3.55M.pdf |
| Settlement Comps | Erie Diocese_$2M.pdf |
| Studies, Reports, & Articles | Leading National Experts on Justice for Child Sexual Abuse Victims Applaud Passage of Elimination of Statutes of Limitation and 3-Year Lookback Window for Survivors to Sue,  Child USA (June 16, 2021)<br>https://childusa.org/wp-content/uploads/2021/06/LA-HB-492-Signage-PR-2021-06-15-Final-Edits.pdf |
| Studies, Reports, & Articles | Vanessa Romo, USC Agrees To $852 Million Settlement To End Sex Abuse Litigation, NPR (Mar. 25, 2021)<br>https://www.npr.org/2021/03/25/981435791/usc-agrees-852-million-settlement-to-end-sex-abuse-litigation |
| Studies, Reports, & Articles | Social Inflation: The Growth of Nuclear Verdicts, Arthur J. Gallagher & Co. (Jan. 2025)<br>https://www.ajg.com/news-and-insights/features/social-inflation-the-growth-of-nuclear-verdicts/ |
| Studies, Reports, & Articles | Cary Silverman & Christopher E. Appel, Shook, Hardy & Bacon LLP, Nuclear Verdicts: An Update on Trends, Causes, and Solutions, U.S. Chamber of Commerce Institute (May 30, 2024)<br>https://instituteforlegalreform.com/wp-content/uploads/2024/05/ILR-May-2024-Nuclear-Verdicts-Study.pdf |

Roman Catholic Archdiocese of New Orleans
Exhibit 9
Data and Documents Considered

| File Type | File Description |
|---|---|
| Studies, Reports, & Articles | Lawsuits Against Ohio State University Over Sex Abuse By A Team Doctor Are Dismissed, The Associated Press (Sep. 22, 2021) https://www.npr.org/2021/09/22/1039899108/ohio-state-sex-abuse-doctor-richard-strauss |
| Studies, Reports, & Articles | Harvey Weinstein: Court agrees $17m payout for accusers, BBC (Jan. 25, 2021) https://www.bbc.com/news/business-55791641 |
| Studies, Reports, & Articles | New Eng. Info. Off., Consumer Price Index US City Average (1982-84 = 100), U.S. Bureau of Lab. Stat. https://www.bls.gov/regions/new-england/data/consumerpriceindex_us_table.htm (last visited Aug. 13, 2025). |
| Studies, Reports, & Articles | Michaela Bantilan Andrawis, $750M Settlement for Survivors of Former OB-GYN's Sexual Abuse, ABA (May 9, 2025) https://www.americanbar.org/groups/health_law/news/2025/5/750m-settlement-survivors-former-ob-gyns-sexual-abuse/ |
| Studies, Reports, & Articles | Daniel Victor, Georgia Jury Returns $1 Billion Verdict in Sexual Assault Case, WRAL (May 23, 2018) https://www.wral.com/story/georgia-jury-returns-1-billion-verdict-in-sexual-assault-case/17576347/ |
| Studies, Reports, & Articles | Natalie Weatherford, Taylor & Ring Secures $25 Million Sexual Abuse Verdict Against Santa Barbara Unified School District, Taylor Ring (Dec. 19, 2023) https://www.taylorring.com/blog/taylor-ring-secures-25-million-sexual-abuse-verdict-against-santa-barbara-unified-school-district/ |
| Studies, Reports, & Articles | Taylor & Ring Secures $27M Settlement in Bullying Case Against Moreno Valley USD, Taylor Ring (Sep. 14, 2023) https://www.taylorring.com/blog/taylor-ring-files-claim-against-moreno-valley-unified-school-district-for-the-death-of-a-bullied-13-year-old/ |
| Studies, Reports, & Articles | UCLA settles gynecologist sexual abuse lawsuit for more than $100 million, NPR (Feb. 8, 2022) https://www.npr.org/2022/02/08/1079145840/ucla-gynecologist-sexual-abuse-settlement |
| Studies, Reports, & Articles | U. of Michigan reaches $490M settlement over sexual abuse by a former sports doctor, NPR (Jan. 19, 2022) https://www.npr.org/2022/01/19/1074071024/university-michigan-sexual-abuse-sports-doctor |
| Studies, Reports, & Articles | Alan E. Friedman, Note, An Analysis of Settlement, 22 Stan. L. Rev. 67 (1969). |
| Studies, Reports, & Articles | Robert B. Calihan, et al., The Role of Risk Analysis in Dispute and Litigation Management, American Bar Association (2004) https://litigationrisk.com/Paper%20on%20Risk%20Analysis%20for%20ABA%20Forum%20on%20Franchising.pdf |
| Studies, Reports, & Articles | Marc B. Victor, Decision Tree Analysis: A Means of Reducing Litigation Uncertainty and Facilitating Good Settlements, 31 Ga. St. U. L. Rev. 715 (2015) https://readingroom.law.gsu.edu/cgi/viewcontent.cgi?article=2804&context=gsulr |
| Studies, Reports, & Articles | Scott M. Seaman, The Ultimate Social Inflation Survival Guide: Containing Rising Claims Costs in a World Rife with Economic Inflation, Litigation Funding, Nuclear Verdicts, and Anti-Corporate Sentiment (Hinshaw & Culbertson LLP 2025). |
| Studies, Reports, & Articles | Alice Nasar Hanan, Esq., Revival Laws for Child Sex Abuse Claims in U.S. States , CHILD USA (2024) |
| Studies, Reports, & Articles | Yang, Jiawei, et al. Mean-Shift Outlier Detection (2018) |
| Studies, Reports, & Articles | Swiss Re Institute, Social Inflation and Liability Claims Trends 2024, Swiss Re Management Ltd. (Apr. 2024). |
| Studies, Reports, & Articles | Marjorie Corman Aaron, The Handbook of Dispute Resolution: Finding Settlement with Numbers, Maps, and Trees ch. 13 (1st ed. 2005) |
| Studies, Reports, & Articles | Heather Heavin & Michaela Keet, A Spectrum of Tools to Support Litigation Risk Assessment: Promise and Limitations, 15(2) Can. J. of L. & Tech. 265 (2017). |
| Studies, Reports, & Articles | Marci A. Hamilton, Esq., et al., History of U.S. Child Sex Abuse Statutes of Limitation Reform in the United States 2002 to 2021 , CHILD USA (2022) |
| TDPs/Allocation Protocols | Third Modified Eighth Amended Plan of Reorganization, In re The Diocese of Camden, New Jersey , Case No. 20-21257-JNP (Bankr. D. NJ. Feb. 23, 2024), Docket No. 3659 |
| TDPs/Allocation Protocols | First Am. Joint Chapter 11 Plan of Reorganization Proposed by The Christian Brothers' Institute and The Christian Brothers of Ireland, Inc. and The Official Committee of Unsecured Creditors, In re The Christian Brothers' Institute , et al. , Case No. 11-22820-RDD (Bankr. D. N.Y. Dec. 9, 2013), Docket No. 620 |
| TDPs/Allocation Protocols | Joint Plan of Reorganization as Modified on March 22, 2018, In re for Crosier Fathers and Brothers Province Inc., a Minnesota non-profit corporation , Case No. 17-41681 (Bankr. D. Del. Mar. 23, 2018), Docket No. 171 |
| TDPs/Allocation Protocols | Disclosure Statement for Modified Plan of Reorganization Proposed by The Roman Catholic Diocese of Rockville Centre, New York and Additional Debtors, In re The Roman Catholic Diocese of Rockville Centre, New York , Case No. 20-12345-MG (Bankr. S.D.N.Y. Nov. 6, 2024), Docket No. 3375 |
| TDPs/Allocation Protocols | Third Modified Joint Chapter 11 Plan of Reorganization of The Diocese Of Duluth, In re Diocese of Duluth , Case No. 15-50792 (Bankr. D. MN. Oct. 15, 2019), Docket No. 413 |
| TDPs/Allocation Protocols | Debtors' First Amended and Restated Plan of Reorganization, In re The Roman Catholic Church Of The Diocese Of Gallup , Case No. 13-13676-T11 (Bankr. D. NM. May 3, 2016), Docket No. 567 |
| TDPs/Allocation Protocols | Modified First Amended Chapter 11 Plan of Reorganization Proposed by The Roman Catholic Bishop of Great Falls, Montana, In re Roman Catholic Bishop of Great Falls, Montana, a Montana Religious Corporate Sole , Case No. 17-60271-JDP (Bankr. D. MT. Aug. 15, 2018), Docket No. 422 |
| TDPs/Allocation Protocols | Fifth Amended Joint Chapter 11 Plan of Reorganization for The Archbishop of Agaña, In re Archbishop of Agaña, a corporation sole , Case No. 19-00010 (Bankr. D. GU. Sep. 28, 2022), Docket No. 1044 |
| TDPs/Allocation Protocols | Amended Joint Chapter 11 Plan of Reorganization for The Roman Catholic Diocese of Harrisburg, In re Roman Catholic Diocese of Harrisburg , Case No. 1:20-bk-00599-HWV (Bankr. D. PA. Dec. 21, 2022), Docket No. 1470 |

Roman Catholic Archdiocese of New Orleans
Exhibit 9
Data and Documents Considered

Confidential Pursuant to Protective Order

| File Type | File Description |
|---|---|
| TDPs/Allocation Protocols | Second Amended Joint Chapter 11 Plan of Reorganization Proposed by The Roman Catholic Bishop of Helena, Montana and the Official Committee of Unsecured Creditors, *In re Roman Catholic Bishop of Helena*, Case No. 14-60074 (Bankr. D. MT. Mar. 4, 2015), Docket No. 473 |
| TDPs/Allocation Protocols | Third Amended Joint Chapter 11 Plan of Reorganization of The Archdiocese of Saint Paul and Minneapolis, *In re The Archdiocese of Saint Paul and Minneapolis*, Case No. 15-30125 (Bankr. D. MN. Sep. 19, 2018), Docket No. 1262 |
| TDPs/Allocation Protocols | Second Amended Chapter 11 Plan of Reorganization Dated September 25, 2015, Proposed by The Archdiocese of Milwaukee, *In re Archdiocese of Milwaukee*, Case No. 11-20059-svk (Bankr. D. WI. Nov. 6, 2015), Docket No. 3313 |
| TDPs/Allocation Protocols | Second Amended Joint Chapter 11 Plan of Reorganization, *In re The Diocese of New Ulm*, Case No. 17-30601 (Bankr. D. WI. Mar. 6, 2020), Docket No. 360 |
| TDPs/Allocation Protocols | Seventh Am. Joint Chapter 11 Plan of Reorganization Proposed By The Norwich Roman Catholic Diocesan Corporation, The Official Committee of Unsecured Creditors, The Catholic Mutual Relief Society of America, And The Association of Parishes of The Roman Catholic Diocese of Norwich, Connecticut, *In re The Norwich Roman Catholic Diocesan Corporation*, Case No. 21-20687 (Bankr. D. CT. Mar. 25, 2025), Docket No. 1935 |
| TDPs/Allocation Protocols | Debtor's First Amended Plan of Reorganization, *In re The Roman Catholic Church of the Archdiocese of Sante Fe*, Case No. 18-13027-T11 (Bankr. D. NM. Nov. 3, 2022), Docket No. 1151 |
| TDPs/Allocation Protocols | Exhibit Matrix Protocol, *In re Catholic Diocese of Spokane*, Case No. 04-08822-FPC11 (Bankr. E.D.WA. Dec. 9, 2009), Docket No. 2374-1 |
| TDPs/Allocation Protocols | Second Amended Joint Plan of Reorganization, *In re The Diocese of St. Cloud, a Minnesota religious corporation*, Case No. 20-60337 (Bankr. D. MN. Nov. 30, 2020), Docket No. 170 |
| TDPs/Allocation Protocols | Debtor's Plan of Reorganization dated October 26, 2016, In re The Roman Catholic Bishop of Stockton, a corporation sole, Case No. 14-20371 (Bankr. E.D.CA. Oct. 26, 2016) Docket No. 757 |
| TDPs/Allocation Protocols | Fifth Amended Joint Chapter 11 Plan of Reorganization for The Roman Catholic Diocese of Syracuse, New York, *In re The Roman Catholic Diocese of Syracuse, New York*, Case No. 20-30663-5-WAK (Bankr. N.D.N.Y. Nov. 27, 2024), Docket No. 2337 |
| TDPs/Allocation Protocols | Fifth Amended Joint Chapter 11 Plan of Reorganization of The Diocese Of Winona-Rochester, *In re Diocese of Winona-Rochester*, Case No. 18-33707 (Bankr. D. MN. Oct. 11, 2021), Docket No. 398 |
| TDPs/Allocation Protocols | Third Modified Fifth Am. Chapter 11 Plan of Reorganization (With Technical Modifications) for Boy Scouts of America and Delaware BSA, LLC, *In re Boy Scouts of America and Delaware BSA*, LLC, Case No. 20-10343-LSS (Bankr. D. DE. Sep. 6, 2022), Docket No. 10297 |
| Verdict Comps | B.B. Et Al. v. Moreno Valley Unified School District_$135M_Westlaw.pdf |
| Verdict Comps | Bethlehem Foundation_Bloomberg.pdf |
| Verdict Comps | Bethlehem Foundation_Lexis.PDF |
| Verdict Comps | Bethlehem Foundation_VerdictSearch.pdf |
| Verdict Comps | Bethlehem Foundation_Westlaw.pdf |
| Verdict Comps | Bob Thatcher v. Roman Catholic Bishop of Oakland _Bloomberg.pdf |
| Verdict Comps | Bob Thatcher v. Roman Catholic Bishop of Oakland _Lexis.PDF |
| Verdict Comps | Bob Thatcher v. Roman Catholic Bishop of Oakland _VerdictSearch.pdf |
| Verdict Comps | Boys and Girls Club of Puget Sound_Westlaw.pdf |
| Verdict Comps | Boys and Girls Club of South Puget Sound_Lexis.pdf |
| Verdict Comps | Bright Horizons Children's Center_BLoomberg.pdf |
| Verdict Comps | Bright Horizons Childrens Center_Lexis.pdf |
| Verdict Comps | Bright Horizons Children's Center_VerdictSearch.pdf |
| Verdict Comps | Bright Horizons Children's Center_Westlaw.pdf |
| Verdict Comps | Calcasieu Parish School_Lexis.pdf |
| Verdict Comps | Calcasieu Parish School_Westlaw.pdf |
| Verdict Comps | Calvary Chapel Church_Lexis.pdf |
| Verdict Comps | Calvary Chapel Church_Westlaw.pdf |
| Verdict Comps | Capital Area Council_Bloomberg.pdf |
| Verdict Comps | Capital Area Council_Lexis.pdf |
| Verdict Comps | Capital Area Council_VerdictSearch.pdf |
| Verdict Comps | Carlsbad Unified School District_Bloomberg.pdf |
| Verdict Comps | Carlsbad Unified School District_Lexis.pdf |
| Verdict Comps | Carlsbad Unified School District_VerdictSearch.pdf |
| Verdict Comps | Carlsbad Unified School District_Westlaw.pdf |
| Verdict Comps | Child Development Inc._VerdictSearch.pdf |
| Verdict Comps | Child Development Inc_Bloomberg.pdf |
| Verdict Comps | Child Development Inc_Lexis.pdf |
| Verdict Comps | Chino Valley Unified School District_Bloomberg.pdf |
| Verdict Comps | Chino Valley Unified School District_Lexis.pdf |
| Verdict Comps | Chino Valley Unified School District_Westlaw.pdf |
| Verdict Comps | Chino Valley Unified_VerdictSearch.pdf |
| Verdict Comps | Cicero School District_Westlaw.pdf |

| File Type | File Description |
| --- | --- |
| Verdict Comps | Congregation of Holy Cross_Lexis.PDF |
| Verdict Comps | Corbett Christian Church_Lexis.pdf |
| Verdict Comps | Corbett Christian Church_Westlaw.pdf |
| Verdict Comps | Deutsch_Mohr-McDermott v. Masonic Home for Children_Bloomberg.pdf |
| Verdict Comps | Deutsch_Mohr-McDermott v. Masonic Home for Children_Lexis.PDF |
| Verdict Comps | Deutsch_Mohr-McDermott v. Masonic Home for Children_VerdictSearch.pdf |
| Verdict Comps | Deutsch_Mohr-McDermott v. Masonic Home for Children_Westlaw.pdf |
| Verdict Comps | Diocese of Belleville_Bloomberg.pdf |
| Verdict Comps | Diocese of Belleville_Lexis.PDF |
| Verdict Comps | Diocese of Belleville_VerdictSearch.pdf |
| Verdict Comps | Diocese of Belleville_Westlaw.pdf |
| Verdict Comps | Diocese of Burlington_Bloomberg.pdf |
| Verdict Comps | Diocese of Burlington_Lexis.PDF |
| Verdict Comps | Diocese of Burlington_VerdictSearch.pdf |
| Verdict Comps | Diocese of Burlington_Westlaw.pdf |
| Verdict Comps | Diocese of Davenport_Bloomberg.pdf |
| Verdict Comps | Diocese of Davenport_Lexis.PDF |
| Verdict Comps | Diocese of Davenport_VerdictSearch.pdf |
| Verdict Comps | Diocese of Davenport_Westlaw.pdf |
| Verdict Comps | Diocese of Duluth_Lexis.pdf |
| Verdict Comps | Diocese of Duluth_Westlaw.pdf |
| Verdict Comps | Diocese of Green Bay_Lexis.pdf |
| Verdict Comps | Diocese of Green Bay_Westlaw.pdf |
| Verdict Comps | Diocese of Rockville Centre_Bloomberg.pdf |
| Verdict Comps | Diocese of Rockville Centre_Lexis.PDF |
| Verdict Comps | Diocese of Rockville Centre_VerdictSearch.pdf |
| Verdict Comps | Diocese of Rockville Centre_Westlaw.pdf |
| Verdict Comps | El Monte Union High School District_Bloomberg.pdf |
| Verdict Comps | El Monte Union High School District_Lexis.pdf |
| Verdict Comps | El Monte Union High School District_VerdictSearch.pdf |
| Verdict Comps | Elizabeth H Faulk Foundation_Lexis.pdf |
| Verdict Comps | Elk Grove Unified School District_Bloomberg.pdf |
| Verdict Comps | Elk Grove Unified School District_Lexis.pdf |
| Verdict Comps | Elk Grove Unified School District_VerdictSearch.pdf |
| Verdict Comps | Episcopal School of Dallas_Lexis.pdf |
| Verdict Comps | Episcopal School of Dallas_VerdictSearch.pdf |
| Verdict Comps | Fairfield County Council of BSA_Bloomberg.pdf |
| Verdict Comps | Fairfield County Council of BSA_Lexis.pdf |
| Verdict Comps | Fairfield County Council of BSA_VerdictSearch.pdf |
| Verdict Comps | Fairfield County Council of BSA_Westlaw.pdf |
| Verdict Comps | Fayette County Board of Education_Bloomberg.pdf |
| Verdict Comps | Fayette County Board of Education_Lexis.PDF |
| Verdict Comps | Fayette County Board of Education_VerdictSearch.pdf |
| Verdict Comps | Feeny and Walden Entertainment_Lexis.pdf |
| Verdict Comps | Florida Baptist Convention_Bloomberg.pdf |
| Verdict Comps | Florida Baptist Convention_Lexis.pdf |
| Verdict Comps | Florida Baptist Convention_VerdictSearch.pdf |
| Verdict Comps | Florida Baptist Convention_Westlaw.pdf |
| Verdict Comps | Freddie Hendricks Track Club_Bloomberg.pdf |
| Verdict Comps | Freddie Hendricks Track Club_Lexis.pdf |
| Verdict Comps | Freddie Hendricks Track Club_VerdictSearch.pdf |
| Verdict Comps | Freddie Hendricks Track Club_Westlaw.pdf |
| Verdict Comps | Fundamentalist Church of Jesus Christ_Westlaw.pdf |
| Verdict Comps | GK Gymnastics_Westlaw.pdf |
| Verdict Comps | Grace Brethren Church of Del_Lexis.pdf |
| Verdict Comps | Gresham Barlow School District_Lexis.pdf |
| Verdict Comps | Gresham Barlow School_Westlaw.pdf |
| Verdict Comps | Greshman-Barlow School District_VerdictSearch.pdf |
| Verdict Comps | Hacienda La Puente School_Westlaw.pdf |
| Verdict Comps | Hacienda La Puente Unified School District_Bloomberg.pdf |
| Verdict Comps | Hacienda La Puente Unified School District_Lexis.pdf |
| Verdict Comps | Hacienda La Puente_VerdictSearch.pdf |

| File Type | File Description |
|---|---|
| Verdict Comps | Hartford Roman Catholic Diocese_Lexis.pdf |
| Verdict Comps | Hartford Roman Catholic Diocese_Westlaw.pdf |
| Verdict Comps | Hollingsworth v NYC_Westlaw.pdf |
| Verdict Comps | KAVANAUGH PRO AMI ARCHDIOCESE OF SAN FRANCISCO_WestLaw.pdf |
| Verdict Comps | Kerry Lewis v. BSA_Bloomberg.pdf |
| Verdict Comps | Kerry Lewis v. BSA_Lexis.PDF |
| Verdict Comps | Kerry Lewis v. BSA_VerdictSearch.pdf |
| Verdict Comps | Kerry Lewis v. BSA_Westlaw.pdf |
| Verdict Comps | Linda Vista Church VerdictSearch.pdf |
| Verdict Comps | Linda Vista Church_Bloomberg.pdf |
| Verdict Comps | Linda Vista Church_Lexis.pdf |
| Verdict Comps | Los Angeles Unified School District 1.6M_Bloomberg.pdf |
| Verdict Comps | Los Angeles Unified School District 1.6M_Lexis.PDF |
| Verdict Comps | Los Angeles Unified School District 1.6M_VerdictSearch.pdf |
| Verdict Comps | Los Angeles Unified School District 1.6M_Westlaw.pdf |
| Verdict Comps | Los Angeles Unified School District_6.19M_Bloomberg.pdf |
| Verdict Comps | Los Angeles Unified School District_6.19M_Lexis.pdf |
| Verdict Comps | Los Angeles Unified School District_6.19M_VerdictSearch.pdf |
| Verdict Comps | Los Angeles Unified School District_6.19M_Westlaw.pdf |
| Verdict Comps | Los Angeles Unified School District_23M_Bloomberg.pdf |
| Verdict Comps | Los Angeles Unified School District_23M_Lexis.pdf |
| Verdict Comps | Los Angeles Unified School District_23M_VerdictSearch.pdf |
| Verdict Comps | Los Angeles Unified School District_23M_Westlaw.pdf |
| Verdict Comps | Los Angeles Unified School District_200K_Westlaw.pdf |
| Verdict Comps | Masonic Homes_Bloomberg.pdf |
| Verdict Comps | Masonic Homes_Lexis.PDF |
| Verdict Comps | Masonic Homes_VerdictSearch.pdf |
| Verdict Comps | Masonic Homes_Westlaw.pdf |
| Verdict Comps | Mehrdadi_Westlaw.pdf |
| Verdict Comps | Mountain View School District_Lexis.PDF |
| Verdict Comps | Mountain View School District_VerdictSearch.pdf |
| Verdict Comps | Murrieta Valley Unified School District_Westlaw.pdf |
| Verdict Comps | North Eastern Services - Lakeside_Lexis.pdf |
| Verdict Comps | NYC Department of Education_Bloomberg.pdf |
| Verdict Comps | NYC Department of Education_Lexis.pdf |
| Verdict Comps | NYC Department of Education_VerdictSearch.pdf |
| Verdict Comps | NYC Department of Education_Westlaw.pdf |
| Verdict Comps | Oblate Fathers Western Province_VerdictSearch.pdf |
| Verdict Comps | Oblates Fathers Western Province_Bloomberg.pdf |
| Verdict Comps | Oblates Fathers Western Province_Lexis.pdf |
| Verdict Comps | Oblates Fathers Western Province_Westlaw.pdf |
| Verdict Comps | Olympia School District_Lexis.pdf |
| Verdict Comps | Olympia School District_Westlaw.pdf |
| Verdict Comps | Overton County School Board_Lexis.PDF |
| Verdict Comps | Pacific Health Systems_Bloomberg.pdf |
| Verdict Comps | Pacific Health Systems_Lexis.pdf |
| Verdict Comps | Pacific Health_VerdictSearch.pdf |
| Verdict Comps | PeachState Hospitality LLC_Lexis.PDF |
| Verdict Comps | PeachState Hospitality LLC_VerdictSearch.pdf |
| Verdict Comps | Pomona Unified School District_Bloomberg.pdf |
| Verdict Comps | Pomona Unified School District_Lexis.pdf |
| Verdict Comps | Pomona Unified_VerdictSearch.pdf |
| Verdict Comps | Project Patch_Lexis.pdf |
| Verdict Comps | Project Patch_Westlaw.pdf |
| Verdict Comps | Rivenburg_Westlaw.pdf |
| Verdict Comps | Rockville Centre Union Free School District_Lexis.PDF |
| Verdict Comps | Rockville Centre Union Free School District_VerdictSearch.pdf |
| Verdict Comps | Sacramento City Unified School District_Bloomberg.pdf |
| Verdict Comps | Sacramento City Unified School District_Lexis.pdf |
| Verdict Comps | Sacramento City Unified School District_VerdictSearch.pdf |
| Verdict Comps | San Diego Unified School District_Bloomberg.pdf |
| Verdict Comps | San Diego Unified School District_Lexis.pdf |

| File Type | File Description |
|---|---|
| Verdict Comps | San Diego Unified School District_VerdictSearch.pdf |
| Verdict Comps | San Diego Unified School District_Westlaw.pdf |
| Verdict Comps | School Board of Highlands County_Bloomberg.pdf |
| Verdict Comps | School Board of Highlands County_Lexis.pdf |
| Verdict Comps | School Board of Highlands County_VerdictSearch.pdf |
| Verdict Comps | SG v CITY OF PERTH AMBOY ET AL_Westlaw.pdf |
| Verdict Comps | Simons (age 9) v. Diocese of Oakland_Westlaw.pdf |
| Verdict Comps | Simons (age 10) v. Diocese of Oakland_Westlaw.pdf |
| Verdict Comps | South Berwyn School District_Bloomberg.pdf |
| Verdict Comps | South Berwyn School District_Lexis.PDF |
| Verdict Comps | South Berwyn School District_VerdictSearch.pdf |
| Verdict Comps | South San Antonio Independent School District_Westlaw.pdf |
| Verdict Comps | St Francis Hospital and Medical Center_Lexis.pdf |
| Verdict Comps | St. Elizabeth Roman Catholic Parish_Bloomberg.pdf |
| Verdict Comps | St. Elizabeth Roman Catholic Parish_Lexis.PDF |
| Verdict Comps | St. Elizabeth Roman Catholic Parish_VerdictSearch.pdf |
| Verdict Comps | St. Francis Hospital_VerdictSearch.pdf |
| Verdict Comps | Sterling Morton High School District_Westlaw.pdf |
| Verdict Comps | Superior Ambulance_VerdictSearch.pdf |
| Verdict Comps | Superior Ambulance_Westlaw.pdf |
| Verdict Comps | T.B. v. YMCA Pierce and Kitsap Counties_Lexis.PDF |
| Verdict Comps | T.B. v. YMCA Pierce and Kitsap Counties_Westlaw.pdf |
| Verdict Comps | The Devereux Foundation _Lexis.pdf |
| Verdict Comps | The Devereux Foundation_Bloomberg.pdf |
| Verdict Comps | The Devereux Foundation_VerdictSearch.pdf |
| Verdict Comps | The Devereux Foundation_Westlaw.pdf |
| Verdict Comps | Trinity Christian Center of Santa Ana_Lexis.pdf |
| Verdict Comps | Trinity Christian Center of Santa Ana_Westlaw.pdf |
| Verdict Comps | U.S. Metro Group_Bloomberg.pdf |
| Verdict Comps | U.S. Metro Group_Lexis.pdf |
| Verdict Comps | U.S. Metro Group_VerdictSearch.pdf |
| Verdict Comps | U.S. Metro Group_Westlaw.pdf |
| Verdict Comps | Union High School_Bloomberg.pdf |
| Verdict Comps | Union High School_Lexis.PDF |
| Verdict Comps | Union High School_VerdictSearch.pdf |
| Verdict Comps | Visionquest National_VerdictSearch.pdf |
| Verdict Comps | Visionquest National_Westlaw.pdf |
| Verdict Comps | Watchtower (2012)_Bloomberg.pdf |
| Verdict Comps | Watchtower (2012)_Lexis.pdf |
| Verdict Comps | Watchtower (2012)_VerdictSearch.pdf |
| Verdict Comps | Watchtower (2012)_Westlaw.pdf |
| Verdict Comps | Watchtower (2018)_Lexis.pdf |
| Verdict Comps | Watchtower (2018)_Westlaw.pdf |
| Verdict Comps | Westerly School of Long Beach_Bloomberg.pdf |
| Verdict Comps | Westerly School of Long Beach_Lexis.pdf |
| Verdict Comps | Westerly School of Long Beach_VerdictSearch.pdf |
| Verdict Comps | Westerly School of Long Beach_Westlaw.pdf |
| Verdict Comps | YMCA of Pierce and Kitsap Counties_Westlaw.pdf |
| Verdict Comps | AG of the State of Missouri_Lexis.pdf |
| Verdict Comps | Archdiocese of San Francisco_VerdictSearch.pdf |
| Verdict Comps | Archdiocese of San Fransisco_Bloomberg.pdf |
| Verdict Comps | Archdiocese of San Fransisco_Lexis.PDF |
| Verdict Comps | Army and Navy Academy_Bloomberg.pdf |
| Verdict Comps | Army and Navy Academy_Lexis.pdf |
| Verdict Comps | Army and Navy Academy_Verdict Search.pdf |
| Verdict Comps | Army and Navy Academy_Westlaw.pdf |

**Archdiocese of New Orleans**
**Exhibit 10**



# Katie McNally
## Managing Director



Chicago, IL USA
**Office:** +1.312.546.3426
kmcnally@stout.com

### Education

M.B.A., Statistics and Econometrics, Economics, Finance, and Accounting, University of Chicago Booth School of Business

B.S., Finance, Miami University

### Practice Areas

Complex Business Litigation
Economics Consulting
Legacy Long-Tail Liability Claims
Bankruptcy Disputes
Claims Administration & Management

Katie McNally is a Managing Director in the Disputes, Claims, & Investigations group. She was named a Rising Star of the Profession by *Consulting Magazine*, specializing in damages quantification, statistical analyses, complex claims consulting, and litigation risk analysis. In addition to her consulting responsibilities, Ms. McNally served as an Adjunct Lecturer of Statistics and Economics at Northwestern University.

She is regularly retained as both a testifying expert and privileged consulting expert on claims estimation, insurance allocation, statistical sampling and testing issues and other types of damages quantification. She has advised clients on many of the highest-profile mass tort and class action matters in recent history, serving as a trusted business advisor in the valuation and resolution of underlying disputes as well as related insurance recovery. She works closely with clients and their counsel to capture the intersection of economics and the law, and leverages that understanding to provide strategic solutions to her clients.

She has a broad range of experience including concussion claims, sexual abuse and harrassment claims (including Title IX), product recall, medical device, and various types of chemical exposure claims including herbicides/pesticides, airborne chemical releases, asbestos, and others.

**Archdiocese of New Orleans**
**Exhibit 10**



# Katie McNally
Managing Director

## Representative Experience

Retained by the Tort Claimants' Committee in the Boy Scouts chapter 11 proceeding as expert on sexual abuse claim estimation and insurance allocation. Includes deposition testimony.

Retained by a number of creditor committees in diocesan chapter 11 proceedings as expert on sexual abuse claim estimation and/or insurance allocation. Includes deposition and Confirmation Hearing testimony in the chapter 11 proceeding of The Diocese of Camden, New Jersey as well as deposition and trial testimony in an Adversary Proceeding in the chapter 11 proceeding of The Diocese of Rochester, New York (The Continental Insurance Company, successor by merger to Commercial Insurance Company of Newark, New Jersey, and Fireman's Insurance Company of Newark, New Jersey v. The Diocese of Rochester).

In coordination with class action defense counsel, performed liability estimation in support of settlement of two separate large-scale sexual harassment and abuse class actions. Work included detailed analysis of several large university databases (student health, registrar, alumni) in order to identify universe of potential class members for liability estimation and direct notice purposes.

Testifying expert in arbitration involving insurance coverage for claim liabilities in large-scale sexual abuse sexual abuse matter. Retained by institutional defendant to provide opinions on claims analysis and allocation of claim liabilities to insurance policies.

Retained as damages expert in class action filed against Allstate Insurance Company alleging falsely inflated homeowners insurance premiums. Includes deposition testimony.

Worked alongside counsel to develop litigation risk analysis and statistical valuation tool to assess exposure of multiple high-profile sexual abuse matters, each involving hundreds of victims. Modeling incorporated assessment of plaintiff-specific allegations and attributes as well as counsel's assessment of the strengths of various legal defenses. Separately worked with insurance coverage counsel to model various allocation scenarios and support negotiations with insurers.

Worked with Fortune 500™ company to develop litigation risk assessment-based valuation model for hundreds of claimants alleging injuries stemming from exposure to herbicides. Worked closely with client and defense counsel to support global resolution of claims.

Retained as privileged claim valuation and insurance allocation expert in large scale sports hazing matter. Worked closely with client, defense counsel, and coverage counsel to support global resolution of claims.

Provided valuation support related to thousands of claimants alleging injuries and economic losses stemming from large scale natural gas leak. Worked closely with client and counsel through global resolution of claims.

Established methodology to support estimation of potential value of a large class-action settlement involving concussion claims. Valuation used to support negotiations with class counsel and submitted to the court to support sufficiency of the proposed fund. Worked with counsel to support and negotiate several high-dollar insurance settlements for the defendant.

Archdiocese of New Orleans
Exhibit 10



## Katie McNally
### Managing Director

Worked with numerous Fortune 500™ companies to perform ground up valuation of various APH liabilities, including asbestos, in the billions of dollars, including expenditure review and future projections. Performed allocation analysis and calculated settlement demands relating to historical insurance contracts, with continued valuation and strategy support through final settlement.

Testifying expert in London arbitration on behalf of medical device manufacturer seeking recovery of nearly $70 million of defense costs from its insurer. Provided rebuttal opinions on opposing expert's statistical sampling of claims. Performed statistical analysis of over 170,000 fee entries within defense cost database performed sensitivity analysis based on various interpretations of the insurance policy at issue.

Retained by numerous investment funds to perform statistical sampling and due diligence on portfolios of claims and other assets held by acquisition targets.

Testifying damages expert in case alleging violations of the False Claims Act, including economic valuation of non-conforming services provided by 3rd party government contractor and analysis of data alleged to be falsified and submitted to the US government. Includes deposition testimony.

Supported the analysis and coordination of two interdependent experts in support of waste disposal defendant in class action involving allegations of illegal pricing schemes.

Retained by creditor as a disclosed expert in the valuation of litigation-backed assets in a dispute surrounding the Trustee's valuation and method of satisfaction of certain assets in the Lehman Brothers Inc. Liquidation.

As outsourced Chief Financial Officer for a publicly-traded third-party litigation financer, worked with auditors to establish appropriate valuation methodology for fund assets, including litigation-backed assets, and performed valuations for financial reporting under IFRS.

Led engagement with Fortune 50™ company seeking reimbursement for hundreds of millions of dollars of environmental remediation spending from the U.S. government in a multi-stage recovery action. Engagement focused on the review and analysis of historical insurance settlements to defend assertion of double recovery, including coverage and claim value estimation.

Supported the negotiation and sale of dozens of agreed toxic tort insurance claims into the secondary market. Created risk-adjusted claim valuation models using financial statements, actuarial analyses, and other publicly available information.

Retained by large industrial products manufacturer to develop claim reserve and offsetting insurance receivable for future asbestos claim spending and related recovery for financial reporting purposes, including ground-up claim and coverage analysis.

Performed commercial insurance recovery analysis for Fortune 100™ chemicals company for purposes of reporting receivable in SEC filings and, separately, in support of an M&A transaction. Analysis focused on asbestos products claims.

**Archdiocese of New Orleans
Exhibit 10**



# Katie McNally
## Managing Director

Hired by policyholder to audit insurer's retrospective premium computation and analyze insurer loss data to assess reasonableness of asbestos claim loss reserves used in retrospective premium calculation. Assisted client and counsel at mediation, resulting in a favorable outcome.

Performed ground-up analysis of captive insurance company based on the accounting department's general ledger and historical insurance, reinsurance, and risk-pooling contracts. Given findings, advised client on possible go-forward strategies and ultimately assisted with winding down the captive insurance company.

Directed engagement with third-party commercial litigation financer to establish a valuation process for incoming investment opportunities based on the valuation of the underlying disputes, including antitrust, intellectual property, and breach of contract matters.

Responsible for valuation of portfolio of intellectual property investments for purposes of securitization and assisted in the development of due diligence materials for its sale.

Performed analyses on retrospective premium computations in order to determine the share of the retrospective premium borne by two separate entities covered under the same retrospectively-rated insurance policy.

## Testimony (previous 4 years)

Provided deposition and trial testimony in an Adversary Proceeding in the chapter 11 proceeding of The Diocese of Rochester, New York (The Continental Insurance Company, successor by merger to Commercial Insurance Company of Newark, New Jersey, and Fireman's Insurance Company of Newark, New Jersey v. The Diocese of Rochester) (2024)

Provided deposition testimony on behalf of the Tort Claimants' Committee in the chapter 11 proceeding of Boy Scouts of America and Delaware BSA, LLC (2022)

Provided deposition and confirmation hearing testimony on behalf of the Official Committee of Tort Claimant Creditors in the chapter 11 proceeding of The Diocese of Camden, New Jersey (2022)

Provided deposition testimony on behalf of plaintiffs in Hilario v. Allstate Insurance Company (2022)

---