---

TRUST INDENTURE

BETWEEN

LOUISIANA PUBLIC FACILITIES AUTHORITY

AND

WHITNEY BANK

DATED AS OF APRIL 1, 2017

---

$41,895,000
LOUISIANA PUBLIC FACILITIES AUTHORITY
REFUNDING REVENUE BONDS
(ARCHDIOCESE OF NEW ORLEANS PROJECT)
SERIES 2017

---

PP Ex.
19

1

## TABLE OF CONTENTS

\*     \*     \*     \*     \*     \*

## ARTICLE I

## DEFINITIONS AND RULES OF CONSTRUCTION

**SECTION 1.01.** Definitions...................................................................................................3
**SECTION 1.02.** Rules of Construction. .....................................................................................8

## ARTICLE II

## GRANTING CLAUSES

**SECTION 2.01.** Granting Clauses. ...........................................................................................9

## ARTICLE III

## AUTHORIZATION; TERMS AND CONDITIONS OF BONDS

**SECTION 3.01.** Bonds Issuable Under this Article Only. ........................................................10
**SECTION 3.02.** Authorization of Bonds....................................................................................10
**SECTION 3.03.** Form of Bonds. ...............................................................................................11
**SECTION 3.04.** Redemption of Bonds. .....................................................................................12
**SECTION 3.05.** Notice and Effect of Redemption. ...................................................................13
**SECTION 3.06.** Selection of Bonds for Redemption..................................................................14
**SECTION 3.07.** Execution; Limitation of Liability. ..................................................................14
**SECTION 3.08.** Authentication.................................................................................................15
**SECTION 3.09.** Mutilated, Lost, Stolen or Destroyed Bonds....................................................15
**SECTION 3.10.** Registration of Bonds. .....................................................................................15
**SECTION 3.11.** Persons Treated as Owners. ............................................................................16
**SECTION 3.12.** Exchange and Transfer of Bonds......................................................................16
**SECTION 3.13.** Cancellation and Destruction of Surrendered Bonds.......................................16
**SECTION 3.14.** Delivery of the Bonds. .....................................................................................16
**SECTION 3.15.** Book-Entry Registration of Bonds....................................................................17

## ARTICLE IV

## FUNDS AND ACCOUNTS; FLOW OF FUNDS; INVESTMENTS; DEPOSITS; ARBITRAGE

**SECTION 4.01.** Creation and Use of Funds and Accounts.........................................................18
**SECTION 4.02.** Debt Service Reserve Fund...............................................................................18
**SECTION 4.03.** Use of Moneys in the Debt Service Reserve Fund. ..........................................20
**SECTION 4.04.** Custody of the Debt Service Reserve Fund. .....................................................20

i

2

**SECTION 4.05.** Flow of Funds. ...................................................................21
**SECTION 4.06.** Purchase of Bonds. .............................................................21
**SECTION 4.07.** INTENTIONALLY LEFT BLANK. .......................................22
**SECTION 4.08.** Depository of Moneys and Security for Deposits. ...............22
**SECTION 4.09.** Arbitrage. ............................................................................22
**SECTION 4.10.** Amounts Remaining in Funds; Releases. ...........................22
**SECTION 4.11.** Investment of the Debt Service Fund, the Debt Service Reserve Fund
and the Cost of Issuance Account. ...................................22
**SECTION 4.12.** Allocation and Transfer of Investment Income. ................22

## ARTICLE V

## ADDITIONAL BONDS

**SECTION 5.01.** Additional Bonds. ...............................................................23
**SECTION 5.02.** Refunding. ...........................................................................23

## ARTICLE VI

## COSTS OF ISSUANCE

**SECTION 6.01.** Payment of Costs of Issuance. ............................................23

## ARTICLE VII

## ENFORCEMENT OF AGREEMENT

**SECTION 7.01.** Assignment of Agreement. ..................................................24
**SECTION 7.02.** Trustee or Bondholders to Enforce Agreement. ................24

## ARTICLE VIII

## EVENTS OF DEFAULT AND REMEDIES

**SECTION 8.01.** No Extension of Time for Payment of Principal, Premium or Interest. ..........24
**SECTION 8.02.** Events of Default. ...............................................................24
**SECTION 8.03.** Remedies. ............................................................................25
**SECTION 8.04.** Acceleration; Annulment of Acceleration. ........................25
**SECTION 8.05.** Insufficiency in Debt Service Fund and Debt Service Reserve Fund;
Application of Moneys. .....................................................26
**SECTION 8.06.** Discontinuance of Proceedings. ..........................................27
**SECTION 8.07.** Appointment of Receiver. ...................................................27
**SECTION 8.08.** Remedies Not Exclusive. .....................................................27
**SECTION 8.09.** Remedies Vested in Trustee. ...............................................27
**SECTION 8.10.** Bondholders Control Proceedings. .....................................27

**SECTION 8.11.** Individual Bondholder Action Restricted. ........................................................28
**SECTION 8.12.** Waiver and Non-Waiver of Event of Default. ...............................................28
**SECTION 8.13.** Notice of Defaults. ......................................................................................29
**SECTION 8.14.** Opportunity of Corporation to Cure Certain Defaults. ...................................29

## ARTICLE IX

### CONCERNING THE TRUSTEE

**SECTION 9.01.** Acceptance of Trusts. ...................................................................................29
**SECTION 9.02.** Trustee Entitled to Indemnity. ......................................................................30
**SECTION 9.03.** Trustee Not Responsible for Insurance, Taxes, Execution of Indenture,
Acts of the Authority or Application of Moneys Applied in
Accordance with this Indenture. ..................................................................31
**SECTION 9.04.** Compensation. ............................................................................................31
**SECTION 9.05.** Trustee to Preserve Records. ........................................................................31
**SECTION 9.06.** Trustee May be Bondholder. ........................................................................31
**SECTION 9.07.** Trustee Not Responsible. ............................................................................32
**SECTION 9.08.** Trustee May Rely on Certificates. ...............................................................32
**SECTION 9.09.** Qualification of the Trustee. ........................................................................32
**SECTION 9.10.** Resignation and Removal of Trustee. ..........................................................32
**SECTION 9.11.** Successor Trustee. ......................................................................................34
**SECTION 9.12.** Co-Trustee. .................................................................................................34
**SECTION 9.13.** Disclosure Documents. ...............................................................................35
**SECTION 9.14.** Survival. ....................................................................................................35

## ARTICLE X

### SUPPLEMENTAL INDENTURES

**SECTION 10.01.** Supplemental Indentures Not Requiring Consent of Bondholders. .................35
**SECTION 10.02.** Supplemental Indentures Requiring Consent of Bondholders. ........................36
**SECTION 10.03.** Filing. ......................................................................................................36
**SECTION 10.04.** Reliance on Counsel. .................................................................................36
**SECTION 10.05.** Supplement Binding. .................................................................................36
**SECTION 10.06.** Supplemental Agreement. ..........................................................................37
**SECTION 10.07.** Notice to Rating Agencies. .........................................................................37

## ARTICLE XI

### COVENANTS OF THE AUTHORITY

**SECTION 11.01.** Payment of Principal, Premium and Interest. ...............................................37
**SECTION 11.02.** Additional Security. ...................................................................................37
**SECTION 11.03.** Cure Title Defects. .....................................................................................37

iii

4

**SECTION 11.04.** Defend Against Actions....................................................................37
**SECTION 11.05.** Non-Impairment of Security.............................................................38
**SECTION 11.06.** Authority's Obligation Limited..........................................................38
**SECTION 11.07.** Continuing Disclosure Agreement......................................................38

### ARTICLE XII

### DEFEASANCE

**SECTION 12.01.** Payment....................................................................................38
**SECTION 12.02.** Provision for Payment..................................................................38
**SECTION 12.03.** Certifications..........................................................................39

### ARTICLE XIII

### MISCELLANEOUS

**SECTION 13.01.** Covenants of Authority Binds its Successors.......................................39
**SECTION 13.02.** Preservation and Inspection of Documents...........................................39
**SECTION 13.03.** Parties Interested Herein............................................................39
**SECTION 13.04.** No Recourse on the Bonds.............................................................40
**SECTION 13.05.** Severability..........................................................................40
**SECTION 13.06.** Consents and Approvals...............................................................40
**SECTION 13.07.** Notices to Parties...................................................................40
**SECTION 13.08.** Notices to Bondholders...............................................................40
**SECTION 13.09.** Amounts Remaining in Funds; Releases................................................40
**SECTION 13.10.** Applicable Law........................................................................41
**SECTION 13.11.** Captions..............................................................................41
**SECTION 13.12.** Indenture to Constitute a Contract...................................................41
**SECTION 13.13.** Payments Due on Legal Holidays.......................................................41
**SECTION 13.14.** Date of Indenture.....................................................................41

**EXHIBIT A** FORM OF BOND

## TRUST INDENTURE

This **TRUST INDENTURE** dated as of April 1, 2017 (together with any amendments hereto, the "Indenture"), is between the **LOUISIANA PUBLIC FACILITIES AUTHORITY**, a public trust and public corporation of the State of Louisiana (the "Authority"), and **WHITNEY BANK**, as trustee (the "Trustee"), a Mississippi state banking corporation.

### W I T N E S S E T H :

WHEREAS, the Authority is a public trust and public corporation of the State of Louisiana (the "State") created by a certain Indenture of Trust dated August 21, 1974 pursuant to the provisions of Chapter 2-A of Title 9 of the Louisiana Revised Statutes of 1950, as amended (the "Public Trust Act") to promote, encourage and further the accomplishment of all activities which are or may become of benefit to the State and its inhabitants and which have a public purpose, and to procure any funds necessary therefor by mortgage, pledge or other encumbrance of the trust estate dedicated by it therefor and is authorized pursuant to Chapter 14-A of Title 39 of the Louisiana Revised Statutes of 1950, as amended (the "Refunding Act") to refund bonded indebtedness incurred for said facilities; and

WHEREAS, for the benefit of The Roman Catholic Church of the Archdiocese of New Orleans (the "Corporation"), a Louisiana nonprofit corporation and 501(c)(3) corporation, the Authority previously issued its Revenue and Revenue Refunding Bonds (Archdiocese of New Orleans Project) Series 2007 (the "Prior Bonds") for the purpose of providing funds to (i) current refund the Authority's (a) outstanding Equipment and Capital Facilities Pool Loan Program Revenue Bonds, Series 2001A issued in the total aggregate principal amount of $9,000,000 and (b) outstanding Equipment and Capital Facilities Pooled Loan Program Revenue Bonds, Series 2002C issued in the aggregate principal amount of $8,500,000 on behalf of Chateau De Notre Dame and $3,500,000 on behalf of Wynhoven Health Care Center, (ii) finance or refinance the reconstruction, rehabilitation, restoration, construction, furnishing, improving and equipping of school buildings, office buildings, nursing homes and other facilities owned and operated by the Corporation and/or Archdiocesan related, Louisiana nonprofit corporations, (iii) fund a deposit to the debt service reserve fund, (iv) fund capitalized interest, and (iv) pay costs of issuance of the Prior Bonds; and

WHEREAS, the Corporation has requested that the Authority issue $41,895,000 aggregate principal amount of Louisiana Public Facilities Authority Refunding Revenue Bonds (Archdiocese of New Orleans Project) Series 2017 (the "Bonds"), the proceeds of the sale of such Bonds to be loaned to the Corporation pursuant to the Loan Agreement dated as of the date hereof (the "Agreement"), between the Authority and the Corporation, for the purpose of providing funds to, together with other available monies of the Corporation, (i) refund all of the Prior Bonds and (ii) pay the costs of issuance of the Bonds; and

WHEREAS, the Authority is authorized under the provisions of the Refunding Act and other constitutional and statutory authority to issue the Bonds for such purposes and the Authority has determined that it is most advantageous to the Authority and necessary for it to issue its revenue bonds as hereinafter provided for such purposes; and

WHEREAS, pursuant to the Agreement, the Corporation will agree to make payments at such times and in an amount sufficient to make timely payments of principal of, premium, if any, and interest on the Bonds and to pay such other amounts as may be required by the Agreement; and

WHEREAS, the Authority adopted a resolution authorizing the sale and the issuance of the Bonds, the execution and delivery of instruments pertaining to the issuance thereof and other actions to be

1

taken by the Board of Trustees of the Authority in connection with the authorization, issuance, sale and delivery of the Bonds and the application of the proceeds thereof; and

WHEREAS, the fully registered Bonds and the certificate of authentication by the Trustee to be endorsed thereon with respect to the Bonds are to be in substantially the form attached as **Exhibit A** hereto with all necessary and appropriate variations, omissions and insertions as permitted or required under this Indenture; and

WHEREAS, all acts, conditions and things required by the laws of the State to happen, exist and be performed precedent to and in the execution and delivery of this Indenture have happened, exist and have been performed as so required in order to make this Indenture a valid and binding agreement in accordance with its terms; and

WHEREAS, the execution and delivery of this Indenture have been duly authorized by the Authority and the Trustee; and

WHEREAS, each of the parties hereto represents that it is fully authorized to enter into and perform and fulfill the obligations imposed upon it under this Indenture and the parties are now prepared to execute and deliver this Indenture;

WHEREAS, the parties hereto recognize that, under the Refunding Act, this Indenture shall not in any way obligate the State or any public; nonprofit corporation thereof, including without limitation, the Authority, to raise any money by taxation or use other public moneys for any purpose in relation to the Bonds and that neither the State nor the Authority shall pay or promise to pay any debt or meet any financial obligation to any person at any time in relation to the Bonds except from moneys received or to be received under the provisions of this Indenture and the Agreement or derived from the exercise of the rights of the Authority thereunder;

NOW, THEREFORE, in consideration of the mutual covenants herein contained, the Authority and the Trustee hereby covenant and agree as follows:

## ARTICLE I

### DEFINITIONS AND RULES OF CONSTRUCTION

**SECTION 1.01.** <u>Definitions.</u> In addition to words and terms elsewhere defined in this Indenture, the following words and terms as used in this Indenture or the Agreement shall have the following meanings, unless some other meaning is plainly intended:

**"Additional Bonds"** means bonds, if any, issued in one or more series on a parity with the Bonds.

**"Administrative Expenses"** means the necessary, reasonable and direct out-of-pocket expenses incurred by the Authority or the Trustee pursuant to this Indenture and the Agreement, the compensation of the Trustee under this Indenture (including, but not limited to any annual administrative fee charged by the Trustee), and the necessary, reasonable and direct out-of-pocket expenses of the Trustee incurred by the Trustee in the performance of its duties under this Indenture.

**"Agreement"** means the Loan Agreement dated as of April 1, 2017, between the Corporation and the Authority, including any amendments and supplements thereof and thereto as permitted thereunder.

**"Authority"** means the Louisiana Public Facilities Authority, a public trust and public corporation of the State of Louisiana, pursuant to the provisions of the Public Trust Act and pursuant to its Indenture of Trust dated August 21, 1974, or any agency, board, body, commission, department or officer succeeding to the principal functions thereof or to whom the powers conferred upon the Authority by said provisions shall be given by law.

**"Authorized Authority Representative"** means the person(s) at the time designated to act under the Agreement and this Indenture on behalf of the Authority by a written certificate furnished to the Corporation and the Trustee containing the specimen signature of such person(s) and signed on behalf of the Authority by the Chairman or Vice Chairman of the Authority. Such certificate may designate an alternate or alternates.

**"Authorized Denomination"** means $5,000 or any integral multiple thereof.

**"Authorized Corporation Representative"** means the Secretary, Chief Financial Officer or any other officer of the Corporation designated in writing to act hereunder and under the Agreement.

**"Beneficial Owner"** means, so long as the Bonds are in the book-entry system, any person who acquires a beneficial ownership interest in a Bond held by the Securities Depository. If at any time the Bonds are not held in the book-entry system, Beneficial Owner shall mean the Bondholder for purposes of this Indenture.

**"Bond Proceeds Fund"** means the fund of that name created under this Indenture.

**"Bond Register"** means, when used with respect to the Bonds, the registration books maintained by the Trustee pursuant to Section 3.08 of this Indenture.

**"Holder"** or **"owner",** when used with reference to a Bond or Bonds, means the registered owner of any outstanding Bond or Bonds.

**"Bonds"** means the Louisiana Public Facilities Authority Refunding Revenue Bonds (Archdiocese of New Orleans Project) Series 2017 authorized to be issued by the Authority in the aggregate principal amount of $41,895,000 for the purpose of refunding all of the outstanding Prior Bonds and paying costs of issuance of the Bonds.

**"Business Day"** means any day other than (a) a Saturday, (b) a Sunday or (c) any other day on which banking institutions in New York, New York, New Orleans or Baton Rouge, Louisiana, are authorized or required not to be open for the transaction of regular banking business.

**"Closing Date"** means the date on which the Bonds are delivered and payment therefor is received by the Authority.

**"Code"** means the United States Internal Revenue Code of 1986, as amended, and the regulations and rulings promulgated or proposed thereunder or (to the extent applicable) under prior law, including temporary regulations.

**"Continuing Disclosure Undertaking"** means the Continuing Disclosure Undertaking dated as of April 1, 2017 of the Corporation as it may be amended or supplemented from time to time in accordance with the provisions thereof.

**"Corporation"** means The Roman Catholic Church of the Archdiocese of New Orleans, a non-profit corporation organized and existing under the laws of the State, and also includes every successor corporation and transferee of the Corporation until payment or provision for the payment of all of the Bonds.

**"Costs of Issuance Account"** means the account so designated which is established pursuant to this Indenture.

**"Debt Service Fund"** means the fund of that name created under this Indenture.

**"Debt Service Reserve Agreement"** means an agreement which provides that the Permitted Investments on deposit in the Debt Service Reserve Fund will be purchased at the original purchase price and which is entered into by the Corporation with a corporation whose long-term debt is rated by at least two nationally recognized rating agencies in one of the three highest rating categories.

**"Debt Service Reserve Fund"** means the special fund of that name established with the Trustee pursuant to Article IV of this Indenture.

**"Debt Service Reserve Fund Requirement"** means an amount equal to the lesser of (a) 10% of the original principal amount of the Bonds, (b) 100% of the maximum Annual Debt Service Requirements, or (c) 125% of the average annual debt service on the Bonds and, with respect to any Additional Bonds, shall be that amount set forth in the supplemental indenture for such Additional Bonds.

**"Defeasance Obligations"** means

(a)    Direct obligations of, or obligations the principal of and the interest on which are unconditionally guaranteed by, the United States of America;

(b)    Cash;

4

9

(c)     U.S. Treasury Certificates, Notes and Bonds (including State and Local Government Series – "SLGs");

(d)     Direct obligations of the Treasury which have been stripped by the Treasury itself, CATS, TIGRS and similar securities;

(e)     Obligations of the Resolution Funding Corp. (REFCORP). Only the interest component of REFCORP strips which have been stripped by request to the Federal Reserve Bank of New York in book entry form are acceptable.

(f)     Pre-refunded municipal bonds rated "Aaa" by Moody's and "AAA" by Fitch or S&P. If, however, the issue is only rated by Fitch (i.e., there if no Moody's or S&P rating), then the pre-refunded bonds must have been pre-refunded with cash, direct U.S. or U.S. guaranteed obligations, or AAA rated pre-refunded municipals to satisfy this condition; and

(g)     Obligations issued by the following agencies which are backed by the full faith and credit of the United States:

| | |
|---|---|
| (i) | Farmers Home Administration (FmHA) |
| | Certificates of beneficial ownership |
| (ii) | Federal Financing Bank |
| (iii) | General Services Administration |
| | Participation certificates |
| (iv) | U. S. Maritime Administration |
| | Guaranteed Title XI financing |
| (v) | U. S. Department of Housing and Urban Development (HUD) |
| | Project Notes |
| | Local Authority Bonds |
| | New Communities Debentures - U. S. government guaranteed debentures |
| | U. S Public Housing Notes and Bonds - U. S. government guaranteed public housing notes and bonds |

**"Escrow Agreement"** means the Escrow Deposit Agreement dated as of April 1, 2017 among the Authority, the Corporation, and the Escrow Trustee.

**"Escrow Fund"** means the Series 2007 Escrow Fund established under the Escrow Agreement.

**"Escrow Trustee"** means Whitney Bank, Baton Rouge, Louisiana.

**"Fiscal Year"** means any period of twelve consecutive months adopted by the Corporation as its fiscal year for financial reporting purposes, presently the period beginning on July 1 and ending on June 30 of each year.

**"Fitch"** means Fitch, Inc. and its successors and assigns.

**"Government Obligations"** means

(a)     direct obligations of, or obligations the principal of and the interest on which are unconditionally guaranteed by, the United States of America or any instrumentality or agency of the United States of America including without limitation the interest component of securities issued by

Resolution Funding Corporation which have been stripped to the Federal Reserve Bank of New York in book-entry form.

(b) evidences of a direct ownership interest in future interest or principal payments on obligations issued or guaranteed by the United States of America or any instrumentality or agency of the United States of America, which obligations are held in a custody account by a custodian satisfactory, in the case of the Bonds, to the Trustee or, if such Government Obligations are deposited to effect the refunding of the Bonds or any portion thereof, any bond trustee, pursuant to the terms of a custody agreement; and

(c) obligations issued by any state of the United States of America or any political subdivision, public instrumentality or public authority of any state of the United States of America, which obligations are fully secured by and payable solely from direct obligations of, or obligations the principal of and interest on which are fully guaranteed by, the United States of America or any agency or instrumentality of the United States of America, which security is held pursuant to an agreement in form and substance acceptable to the Trustee, and which obligations or agreement or an escrow comprised thereof are rated in the highest rating category by at least two of the following: Moody's, Fitch and S&P.

**"Indenture"** means this Trust Indenture dated as of April 1, 2017 between the Authority and the Trustee, as it may be amended or supplemented from time to time by in accordance with the provisions hereof.

**"Interest Account"** means the Interest Account within the Debt Service Fund created pursuant to Article IV of this Indenture.

**"Interest Payment Date"** or **"interest payment date"**, when used with respect to the Bonds, means each January 1 and July 1, commencing July 1, 2017.

**"Moody's"** means Moody's Investors Service, a Delaware corporation, and its successors and assigns.

**"Outstanding"** or **"outstanding"**, when used with reference to Bonds, means all Bonds which have been authenticated and issued under this Indenture except:

(a) Bonds canceled by the Trustee pursuant to this Indenture;

(b) Bonds for the payment of which moneys or Defeasance Obligations shall be held in trust for their payment by the Trustee as provided in the defeasance provisions of this Indenture;

(c) Bonds deemed to have been paid in accordance with Article XII hereof;

(d) Bonds in exchange for which other Bonds shall have been authenticated and delivered by the Trustee as provided in this Indenture; and

(e) for all purposes regarding consents and approvals or directions of Bondholders under the Agreement or this Indenture, Bonds held by or for the Authority, the Corporation or any person controlling, controlled by or under common control with either of them.

**"Participants"** means those broker-dealers, banks and other financial institutions from time to time for which DTC holds Bonds as securities depository.

6

**"Payments"** means the amounts of repayments of the Loan with respect to the Bonds to be made by the Corporation as provided in the Agreement, together with other amounts due under the Agreement.

**"Permitted Investments"** means any of the following which at the time are legal investments under the laws of the State of Louisiana for moneys held hereunder and then proposed to be invested therein:

(a)      Government Obligations;

(b)      obligations issued by any state of the United States of America, or any political subdivision thereof, rated by at least two nationally recognized rating agencies in one of the three highest rating categories, and obligations fully secured by and payable solely from an escrow fund held by a trustee consisting of cash or (a) above;

(c)      (1) debt obligations of any United States corporation or trust, which obligations are rated by at least two nationally recognized rating agencies in one of the three highest rating categories, or (2) commercial paper of same rated by at least two nationally recognized rating agencies in the highest rating category (without incorporating refinements or gradation of rating category by numerical modifier or otherwise);

(d)      certificates of deposit or time deposits of any bank, trust company or savings and loan which deposits are fully insured by a federally sponsored deposit insurance program;

(e)      bankers acceptances of any bank which bank or its parent holding company's debt conforms to the rating requirements of (c) above;

(f)      repurchase agreements, entered in conformance with prevailing industry standard guidelines, of obligations listed in (a) above, delivered versus payment to the trustee and continuously collateralized at 102% or greater, with counterparties having debt rated in conformance with the rating requirements of (c) above;

(g)      investment agreements of any corporation which agreements or the corporation's long term debt is rated by at least two nationally recognized rating agencies in one of the three highest rating categories; and

(h)      shares of a money market fund or commingled trust which fund or trust's investments are restricted to the Permitted Investments, including, without limitation any money market mutual fund for which the Trustee or an affiliate of the Trustee serves as investment manager, administrator, shareholder servicing agent, and/or custodian or subcustodian, notwithstanding that (i) the Trustee or an affiliate of the Trustee receives fees from funds for services rendered, (ii) the Trustee collects fees for services rendered pursuant to this Indenture, which fees are separate from the fees received from such funds, and (iii) services performed for such funds and pursuant to this Indenture may at times duplicate those provided to such funds by the Trustee or an affiliate of the Trustee.

**"Prior Bonds"** means the Authority's Revenue and Revenue Refunding Bonds (Archdiocese of New Orleans Project) Series 2007, being refunded by the Bonds.

**"Principal Account"** means the Principal Account within the Debt Service Fund created pursuant to Article IV of this Indenture.

**"Prior Projects"** means the facilities financed or refinanced with the proceeds of the Prior Bonds.

**"Public Trust Act"** means the Louisiana Public Trust Act, constituting Chapter 2-A of Title 9 being Louisiana Revised Statutes 9:2341-2347, inclusive of 1950, as amended and supplemented.

**"Record Date"** when used with respect to the Bonds, means each December 15 and June 15, as the case may be, next preceding an Interest Payment Date, or, if such day shall not be a Business Day, the next preceding Business Day.

**"Refunding Act"** means Chapter 14-A of Title 39 of the Louisiana Revised Statutes of 1950, as amended and supplemented.

**"S&P"** means S&P Global Ratings, a division of S&P Global, Inc., or any successor thereto.

**"Securities Depository"** means The Depository Trust Company, a limited-purpose trust company organized under the laws of the State of New York, and its successors and assigns, including any successor securities depositories appointed pursuant to this Indenture.

**"State"** means the State of Louisiana.

**"Tax Regulatory Agreement"** means the Tax Regulatory Agreement dated as of April 1, 2017, among the Authority, the Corporation and the Trustee.

**"Trust Estate"** shall have the meaning defined in Section 2.01 hereof.

**"Trustee"** means the state banking corporation or national banking association with corporate trust powers qualified to act as Trustee under this Indenture which may be designated (originally or as a successor) as Trustee for the owners of the Bonds issued and secured under the terms of this Indenture, initially Whitney Bank.

**SECTION 1.02.**   Rules of Construction.   (a)  Words of the masculine gender shall be deemed and construed to include correlative words of the feminine and neuter genders.

(b)     Unless the context shall otherwise indicate, the word "person" shall include the plural as well as the singular number, and "person" shall mean any individual, corporation, partnership, joint venture, association, joint stock company, trust, unincorporated organization or government or any agency or political subdivision thereof.

(c)     Provisions calling for the redemption of Bonds or the calling of Bonds for redemption do not mean or include the payment of Bonds at their stated maturity or maturities.

(d)     All references in this Indenture to designated "Articles", "Sections" and other subdivisions are to the designated Articles, Sections and other subdivisions of this Indenture.  The words "herein", "hereof", "hereunder" and other words of similar import refer to this Indenture as a whole and not to any particular Article, Section or other subdivision.

**ARTICLE II**

**GRANTING CLAUSES**

SECTION 2.01.    Granting Clauses.  In consideration of the acceptance by the Trustee of the trusts and duties set forth in this Indenture on behalf of the owners of all Bonds issued and secured hereunder; of the purchase and acceptance of the Bonds issued and secured by this Indenture by the owners thereof; of the payment of the purchase price of the Bonds to the Trustee for application as provided hereinafter; and in order to secure the payment of any and all Bonds at any time outstanding hereunder, according to the tenor and effect thereof and the premium, if any, and interest thereon, the payment of all costs, fees and charges specified herein, and the payment of all other sums if any, from time to time due to the owners of all Bonds secured hereunder and to the Trustee or its successors and assigns, or to others, according to the intent and meaning of all such Bonds and this Indenture, up to a maximum amount of $200,000,000, and for the purpose of securing the performance and observance by the Authority of all the covenants and conditions herein contained, the Authority does hereby PLEDGE, TRANSFER, ASSIGN AND DELIVER TO AND IN FAVOR OF the Trustee, and its successor or successors in trust, for the benefit of the owners of all Bonds secured hereunder, its interest in the following described properties, rights, interests and benefits which are collectively called the "Trust Estate":

(a)    All right, title and interest of the Authority in, to and under the Agreement, including the interest of the Authority in and to all payments, proceeds, revenues, income, receipts, issues, benefits and other moneys received or derived by the Authority under the Agreement including, without limitation, the Payments (except the administrative payments) to be paid by the Corporation pursuant to the Agreement to the Trustee for the account of the Authority pursuant to Section 4.02 of the Agreement, saving and excepting, however, the Authority's rights to exculpation, indemnification and payment of expenses by the Corporation under the Agreement;

(b)    All cash, moneys, securities and investments which may at any time and from time to time, pursuant to the provisions of this Indenture, be paid to the Trustee or be in the hands of the Trustee, except with respect to arbitrage rebate payments made to the Trustee under the terms of the Tax Regulatory Agreement by the Corporation, and except as the interest of said Trustee in such cash, moneys, securities and investments may otherwise appear in this Indenture; provided, however, that nothing in this Indenture shall be construed to affect any property held by the Trustee in any capacity other than as Trustee hereunder; and

(c)    To the extent not covered by the clauses above, all proceeds of any and all of the foregoing.

TO HAVE AND TO HOLD all and singular the Trust Estate, whether now owned or hereafter acquired, unto the Trustee and its successor or successors and assigns forever; in trust, nevertheless subject to the terms and conditions and trusts herein set forth, for the equal benefit, security and protection of all and singular the present and future owners of all of the Bonds issued under and secured by this Indenture, without preference, priority or distinction as to lien or otherwise, except as may otherwise be provided herein, of any one Bond over any other Bond or of principal over interest or interest over principal, all as herein provided, and for the uses and purposes, and upon the terms, agreements and conditions set forth herein.

The Trust Estate assigned hereunder is also assigned to secure the payment of any and all sums which the Trustee may expend or become obligated to expend (including but not limited to court costs and attorneys' fees) to preserve and protect any of the Trust Estate or to cure any default of the Corporation under the Agreement or arising out of any such default or incident of delay in payment of sums and the performance of obligations thereunder, or in pursuing or exercising any right, rights, remedy or remedies consequent upon the default of the Corporation thereunder.

PROVIDED, HOWEVER, that if the Authority, its successors or assigns, shall well and truly pay, or cause to be paid, or provide for the payment pursuant to the provisions of this Indenture, the principal of the Bonds, premium, if any, and the interest due or to become due thereon, at the times and in the manner set forth in the Bonds and this Indenture, according to the true intent and meaning thereof, and shall well and truly keep, perform and observe all the covenants and agreements as provided in and pursuant to the terms of this Indenture to be kept, performed and observed by it, and shall pay or cause to be paid to the Trustee all sums of money due or to become due to it in accordance with the terms and provisions hereof, then upon such performance and payments this Indenture and the rights created hereby shall cease, terminate and be void as provided in Article XII hereof; otherwise this Indenture shall be and remain in full force and effect.

The Authority hereby covenants and agrees with, and does hereby covenant unto the Trustee, that it has good right and lawful authority to transfer and assign the Trust Estate to the extent and in the manner herein provided; that the Authority will not suffer any lien or encumbrance to exist upon the Trust Estate, or any part thereof, superior to the security or lien to accrue or be created under this Indenture; or do or suffer any act or thing whereby the security hereof may be diminished or impaired; and the Authority further does covenant, and by these presents hereby covenants and agrees to defend or cause to be defended forever the title to each and every part of said Trust Estate against the claims and demands of all persons whomsoever.

THIS INDENTURE FURTHER WITNESSETH and it is expressly declared that all Bonds issued and secured hereunder are to be issued, authenticated and delivered and all of said Trust Estate hereby conveyed, transferred, assigned, confirmed, pledged and encumbered is to be dealt with and disposed of under, upon and subject to the terms, conditions, stipulations, covenants, agreements, trusts, uses and purposes as hereinafter expressed, and the Authority has agreed and covenanted, and does hereby agree and covenant with the Trustee and with the respective owners, from time to time, of the Bonds, or any part thereof as follows:

## ARTICLE III

## AUTHORIZATION; TERMS AND CONDITIONS OF BONDS

**SECTION 3.01.**  Bonds Issuable Under this Article Only.  No Bonds may be issued under the provisions of this Indenture except in accordance with the provisions of this Article.

**SECTION 3.02.**  Authorization of Bonds.  There is hereby authorized to be issued under this Indenture a series of bonds designated "Louisiana Public Facilities Authority Refunding Revenue Bonds (Archdiocese of New Orleans Project) Series 2017 in the aggregate principal amount of $41,895,000 for the purpose of providing funds to, together with other available monies of the Corporation, (i) refund all of the Prior Bonds in accordance with the provisions of the Escrow Agreement and (ii) pay the costs of issuance of the Bonds.

Each Bond shall be dated the Closing Date.  The Bonds shall be issued as fully registered bonds in denominations of $5,000 or any integral multiple thereof within a maturity.  The principal of and premium, if any, of the Bonds shall be payable to the registered owners thereof upon surrender of the Bonds at the principal corporate trust office of the Trustee.  The interest on the Bonds, when due and payable, shall be paid by check or draft mailed by the Trustee on such due date to each person in whose name a Bond is registered, at the address(es) as they appear on the Bond Register maintained by the Trustee at the close of business on the applicable Record Date irrespective of any transfer or exchange of the Bonds subsequent to such Record Date and prior to such Interest Payment Date, unless the Authority shall default in payment of interest due on such Interest Payment Date.  In the event of any such default, such defaulted interest shall be payable on a payment date established by the Trustee to the persons in

whose names the Bonds are registered at the close of business on a special record date for the payment of such defaulted interest established by notice mailed by the Trustee to the registered owners of the Bonds not less than 15 days preceding such special record date. Payment as aforesaid shall be made in such coin or currency of the United States of America as, at the respective times of payment, is legal tender for the payment of public and private debts. The provisions of this paragraph are subject to Section 3.15 hereof as the Bonds are initially issued as book-entry bonds registered in the name of CEDE & CO.

The Bonds shall be numbered from No. R-1 upwards and shall bear interest from the date thereof, payable on each Interest Payment Date, commencing July 1, 2017, computed on the basis of a 360-day year having twelve 30-day months, until the principal amount of the Bonds is paid at maturity or upon redemption, at the rates, and shall mature, subject to prior redemption as hereafter set forth, on July 1 of each of the years and in the principal amounts as follows:

| Maturity Date (July 1) | Principal Amount | Interest % |
|---|---|---|
| 2017 | $1,350,000 | 2.00% |
| 2018 | 1,255,000 | 5.00 |
| 2019 | 1,320,000 | 5.00 |
| 2020 | 1,385,000 | 2.25 |
| 2021 | 1,415,000 | 5.00 |
| 2022 | 1,485,000 | 5.00 |
| 2023 | 1,560,000 | 5.00 |
| 2024 | 1,640,000 | 5.00 |
| 2025 | 1,720,000 | 5.00 |
| 2026 | 1,805,000 | 5.00 |
| 2027 | 1,900,000 | 5.00 |
| 2028 | 1,995,000 | 5.00 |
| 2029 | 2,090,000 | 5.00 |
| 2030 | 2,195,000 | 5.00 |
| 2031 | 2,305,000 | 5.00 |
| 2032 | 2,420,000 | 5.00 |
| 2033 | 2,545,000 | 5.00 |
| 2037 | 11,510,000 | 5.00 |

Each Bond shall bear interest payable from the Interest Payment Date next preceding the date of its authentication to which interest has been paid or duly provided for, except that if any Bond shall be authenticated on any Interest Payment Date to which interest has been paid, it shall bear interest from such date and except if any Bond shall be authenticated prior to July 1, 2017, it shall bear interest from the Closing Date.

**SECTION 3.03.** Form of Bonds. The Bonds issued under this Indenture shall be substantially in the form set forth in **Exhibit A** attached hereto and made a part hereof with such appropriate variations, additions, omissions and insertions as are permitted or required by this Indenture. All Bonds may have endorsed thereon such legends or text as may be necessary or appropriate to conform to any applicable rules and regulations of any governmental authority or of any securities exchange on which the Bonds may be listed or any usage or requirement of law with respect thereto. All Bonds may

bear identifying CUSIP numbers, but any failure to include such numbers or any error in any CUSIP number so included shall not in any way affect the validity of the Bonds.

**SECTION 3.04.** <u>Redemption of Bonds.</u> The Bonds are subject redemption prior to maturity as follows:

*Optional Redemption*. The Bonds maturing on or after July 1, 2028, are subject to redemption prior to their respective stated maturities at the option of the Authority (which option shall be exercised upon request of the Corporation), from any source of available funds, in whole or in part on any date on or after July 1, 2027 (in such maturities as are designated by the Corporation or, if the Corporation fails to designate such maturities, in inverse order of maturity, and by lot within a maturity), at a redemption price of par plus accrued interest to the redemption date.

*Mandatory Sinking Fund Redemption*. The Bonds maturing on July 1, 2037 and bearing interest at 5.00% are subject to mandatory sinking fund redemption prior to maturity, in part, by lot in such manner as may be designated by the Trustee, at a redemption price of par plus accrued interest to the redemption date, on July 1 of each of the following years and in the following amounts:

| Year | Principal Amount |
|------|-----------------|
| 2034 | $2,670,000 |
| 2035 | 2,805,000 |
| 2036 | 2,945,000 |
| 2037* | 3,090,000 |

\* Final maturity

The required redemptions mentioned in this subsection (c) may be satisfied by purchases of the respective maturity of the Bonds as provided in Section 4.05 hereof.

*Extraordinary Redemption.* The Bonds are subject to extraordinary redemption in whole or in part on any date at the principal amount thereof plus accrued interest to the redemption date and without premium, if the Corporation shall have elected to make prepayment of all Payments payable under the Agreement as provided therein (and the Corporation shall have delivered to the Trustee a copy, duly certified by an Authorized Corporation Representative, of a resolution of the Corporation making such determination and requesting such redemption) because the Corporation is required or ordered by legislative, judicial or administrative action of the United States of America or the State or any agency, department or subdivision thereof to operate the facilities financed or refinanced by the Prior Bonds in a manner inconsistent with the stated goals, purposes and policies of the Corporation, and such action is applicable to the Corporation because the Corporation is a party to the Agreement.

The Bonds are also subject to extraordinary redemption in whole or in part on any date at the principal amount thereof plus accrued interest to the redemption date and without premium, if as a result of any changes in the State Constitution or the Constitution of the United States of America or legislative, judicial or administrative action of the United States of America or the State or any agency, department or subdivision thereof, (a) the Indenture or the Agreement shall have become void or unenforceable or impossible of performance in accordance with the intention of the parties as expressed therein, or (b) the interest on the Bonds shall no longer be excluded from the gross income of the owners thereof for federal income tax purposes.

The Bonds are also subject to extraordinary redemption in whole or in part on any date at the principal amount thereof plus accrued interest to the redemption date and without premium, in the event of damage, destruction or condemnation of all or a part of the Prior Projects after determination by the Corporation (a) finding that the reasonable fair market value of the Prior Projects damaged, destroyed or condemned is equal to or greater than 5% of the fair market value of all of the Properties of the Corporation and (b) determining to apply all or a portion of any casualty loss or condemnation awards related to such Prior Projects to the redemption of the Bonds.

*Redemption of Additional Bonds*.  Any Additional Bonds issued under the provisions of Article V of this Indenture may be made subject to redemption, either in whole or in part and at such times and prices, as may be provided in the resolution or resolutions of the Authority authorizing the issuance of such Additional Bonds.

**SECTION 3.05.**     Notice and Effect of Redemption. Not less than 30 days before the redemption date of any Bonds, the Trustee shall cause a notice of any such redemption, signed by an authorized officer of the Trustee to be mailed, postage prepaid, to all Bondholders of record owning Bonds to be redeemed in whole or in part, at their addresses as they appear on the Bond Register, but any defect in such mailing of any such notice shall not affect the validity of the proceedings for such redemption.  Each such notice shall set forth the date fixed for redemption, the redemption price to be paid and, if less than all of the Bonds then outstanding shall be called for redemption, the numbers of such Bonds to be redeemed and, in the case of Bonds to be redeemed in part only, the notice of redemption shall state also that on or after the redemption date, upon surrender of such Bond, a new Bond in principal amount equal to the unredeemed portion of such Bond will be issued.  Any notice of optional redemption given pursuant to this paragraph may be rescinded by written notice given to the Trustee by the Corporation no later than five (5) Business Days prior to the date specified for redemption.  The Trustee shall give notice of such rescission within one Business Day of its receipt thereof in the same manner, and to the same persons, as notice of such redemption was given pursuant to this paragraph.

With respect to any notice of optional redemption of Bonds, unless upon the giving of such notice such Bonds or portions thereof shall be deemed to have been paid within the meaning hereof, such notice shall state that such redemption shall be conditioned upon the receipt by the Trustee on or prior to the date fixed for such redemption of moneys sufficient to pay the principal of, premium, if any, and interest on such Bonds or portions thereof to be redeemed, and that if such moneys shall not have been so received said notice shall be of no force and effect and the Authority shall not be required to redeem such Bonds or portions thereof.  In the event that such notice of redemption contains such a condition and such moneys are not so received, the redemption shall not be made and the Trustee shall within five (5) days thereafter give notice, in the manner in which the notice of redemption was given, that such moneys were not so received.

On the date so designated for redemption, notice having been given in the manner and under the conditions hereinabove provided and money for payment of the redemption price being held in the Debt Service Fund in trust for the owners of the Bonds or portions thereof to be redeemed, the Bonds or portions of Bonds so called for redemption shall become and be due and payable at the redemption price provided for redemption of such Bonds or portions of Bonds on such date, interest on the Bonds or portions of Bonds so called for redemption shall cease to accrue, such Bonds or portions of Bonds shall cease to be entitled to any benefit or security under this Indenture, and the owners of such Bonds or portions of Bonds shall not have rights in respect thereof except to receive payment of the redemption price thereof and, to the extent provided in the next paragraph, to receive Bonds for any unredeemed portions of Bonds.

In case part, but not all, of an outstanding Bond shall be selected for redemption, the registered owner thereof or his legal representative shall present and surrender such Bond to the Trustee for payment of the principal amount thereof so called for redemption, and the Trustee shall authenticate and deliver to or upon the order of such registered owner or his legal representative, without charge therefor, for the unredeemed portion of the principal amount of the Bond so surrendered, a new Bond.

Bonds and portions of Bonds which have been duly called for redemption under the provisions of this Article, or with respect to which irrevocable instructions to call for redemption have been given to the Trustee in form satisfactory to it, and for the payment of the redemption price for which moneys, or Defeasance Obligations, shall be held by the Trustee in a segregated account in trust for the owners of the Bonds or portions thereof to be redeemed, shall not thereafter be deemed to be outstanding under the provisions of this Indenture and shall cease to be entitled to any security or benefit under this Indenture other than the right to receive payment from such moneys.

Each owner, by purchase and acceptance of any Bond, irrevocably grants to the Corporation the option to purchase such Bond at any time such Bond is subject to optional redemption as described in clause (a) above at a purchase price equal to then applicable redemption price of such Bond, plus accrued interest. The Corporation may only exercise such option, after the Corporation shall have delivered an opinion of Bond Counsel to the Trustee to the effect that such purchase is authorized or permitted by this Indenture and will not adversely affect the excludability from gross income for federal income tax purposes of interest on the Bonds, and shall have directed the Trustee to provide notice of mandatory purchase, such notice to be provided, as and to the extent applicable, in accordance with this Section 3.03. Bonds to be so purchased shall be selected by the Trustee in the same manner as Bonds called for redemption pursuant to this Indenture. On the date fixed for purchase of any Bond in lieu of redemption as described in this Section, the Corporation shall pay the purchase price of such Bond to the Trustee in immediately available funds, and the Trustee shall pay the same to the owners of the Bonds being purchased against delivery thereof. No such purchase of any Bond in lieu of redemption as described in this paragraph shall operate to extinguish the indebtedness of the Authority evidenced by such Bond. No owner may elect to retain a Bond subject to mandatory purchase in lieu of redemption.

**SECTION 3.06.** Selection of Bonds for Redemption. The portion of any Bond to be redeemed shall be in the principal amount of $5,000 or an integral multiple thereof. If a portion of any Bond shall be called for redemption, a new Bond in principal amount equal to the unredeemed portion thereof shall be issued to the registered owner upon the surrender thereof. In the event of redemption in part of a Bond that is subject to mandatory sinking fund redemption pursuant to subsection (c) above, the principal amount of the Bond so redeemed shall be credited against the sinking fund installments specified by the Corporation or, in the event that the Corporation fails to designate such installments, in inverse order of maturity. For the purposes of this Section, each $5,000 portion of principal shall be counted as one Bond.

**SECTION 3.07.** Execution; Limitation of Liability. The Bonds shall be executed on behalf of the Authority with the manual or facsimile signatures of the Chairman or Vice Chairman and the Secretary-Treasurer or an Assistant Secretary of the Authority, and shall have impressed or imprinted thereon the official seal of the Authority or a facsimile thereof. The Bonds, together with interest and premium, if any, thereon, shall not constitute a debt of the State or any political subdivision thereof. The Bonds, together with interest thereon, shall be limited obligations of the Authority and shall be secured by and payable solely out of revenues derived from payments made pursuant to the Agreement. The Authority shall not be obligated to pay the principal of the Bonds or the interest or premium, if any, thereon or other costs incident thereto except from payments made pursuant to the Agreement. THE BONDS ARE LIMITED AND SPECIAL OBLIGATIONS OF THE AUTHORITY AND DO NOT CONSTITUTE OR CREATE AN OBLIGATION, GENERAL OR SPECIAL, DEBT, LIABILITY OR

MORAL OBLIGATION OF THE STATE OR ANY POLITICAL SUBDIVISION THEREOF WITHIN THE MEANING OF ANY CONSTITUTIONAL OR STATUTORY PROVISIONS WHATSOEVER AND NEITHER THE FAITH OR CREDIT NOR THE TAXING POWER OF THE STATE OR OF ANY POLITICAL SUBDIVISION THEREOF IS PLEDGED TO THE PAYMENT OF THE PRINCIPAL OF, PREMIUM, IF ANY, OR THE INTEREST ON THE BONDS. THE BONDS ARE NOT A GENERAL OBLIGATION OF THE AUTHORITY (WHICH HAS NO TAXING POWER AND RECEIVES NO FUNDS FROM ANY GOVERNMENTAL BODY) BUT ARE A LIMITED AND SPECIAL REVENUE OBLIGATION OF THE AUTHORITY PAYABLE SOLELY FROM THE INCOME, REVENUES AND RECEIPTS DERIVED OR TO BE DERIVED FROM PAYMENTS MADE PURSUANT TO THE AGREEMENT. In case any officer of the Authority whose signature or whose facsimile signature shall appear on the Bonds shall cease to be such officer before the delivery of such Bonds, such signature or the facsimile signature thereof shall nevertheless be valid and sufficient for all purposes, the same as if he had remained in office until delivery.

**SECTION 3.08.** Authentication. No Bond shall be valid or obligatory for any purpose or be entitled to any security or benefit under this Indenture unless and until a certificate of authentication substantially in the form set forth in **Exhibit A** attached hereto and made a part hereof shall have been duly executed by a duly authorized representative of the Trustee, and such executed certificate of the Trustee upon any such Bond shall be conclusive evidence that such Bond has been authenticated and delivered under this Indenture. The Trustee's certificate of authentication on any Bond shall be deemed to have been executed by it if signed by an authorized representative of the Trustee, but it shall not be necessary that the same representative sign the certificate of authentication on all of the Bonds issued hereunder.

**SECTION 3.09.** Mutilated, Lost, Stolen or Destroyed Bonds. In the event any outstanding Bond, whether temporary or definitive, is mutilated, lost, stolen or destroyed, the Authority may execute and, upon its request, the Trustee may authenticate a new Bond of the same principal amount and of like tenor as the mutilated, lost or stolen or destroyed Bond; provided that, in the case of any mutilated Bond, such mutilated Bond shall first be surrendered to the Trustee, and in the case of any lost, stolen or destroyed Bond, there shall be first furnished to the Authority and the Trustee evidence of such loss, theft or destruction in form satisfactory to the Authority and the Trustee, together with an indemnity satisfactory to them. In the event any such Bond shall have matured, instead of issuing a substitute Bond the Authority may authorize the payment of the same. The Authority and the Trustee may charge the owner of such Bond with their reasonable fees and expenses in this connection. Any Bond issued under the provisions of this Section in lieu of any Bond alleged to be destroyed, lost or stolen shall constitute an original additional contractual obligation on the part of the Authority, whether or not the Bond so alleged to be destroyed, lost or stolen be at any time enforceable by anyone, and shall be equally and proportionately entitled to the benefits of this Indenture together with all other Bonds in substitution for which such Bonds were issued.

**SECTION 3.10.** Registration of Bonds. The Trustee shall be the bond registrar for the Bonds. So long as any of the Bonds shall remain outstanding, there shall be maintained and kept for the Authority, at the principal corporate trust office of the Trustee, the Bond Register for the registration and transfer of the Bonds and, upon presentation thereof for such purpose at said office, the Trustee shall register or cause to be registered therein, and permit to be transferred thereon, under such reasonable regulations as it may prescribe, any Bond.

Each Bond shall be transferable only upon the Bond Register at the principal corporate trust office of the Trustee at the written request of the registered owner thereof or his legal representative duly authorized in writing upon surrender thereof, together with a written instrument of transfer satisfactory to the Trustee duly executed by the registered owner or his legal representative duly authorized in writing.

Upon the transfer of any such Bond, the Trustee shall issue in the name of the transferee, in authorized denominations, one or more Bonds of the same aggregate principal amount as the surrendered Bonds.

**SECTION 3.11.**    Persons Treated as Owners.  The Authority and the Trustee may, for the purpose of receiving payment of, or on account of, the principal of, premium, if any, and interest on any Bond and for all other purposes, deem and treat the person in whose name such Bond shall be registered upon the Bond Register as the absolute owner of such Bond, whether or not such Bond is overdue, and neither the Authority nor the Trustee shall be affected by any notice to the contrary.

Payment made to the person deemed to be the owner of any Bond for the purpose of such payment in accordance with the provisions of this Section shall be valid and effectual, to the extent of the sum or sums so paid, to satisfy and discharge the liability upon such Bond in respect of which such payment was made.

**SECTION 3.12.**    Exchange and Transfer of Bonds.  As long as any of the Bonds remain outstanding, there shall be permitted the exchange of Bonds at the principal corporate trust office of the Trustee.  Any Bond or Bonds upon surrender thereof at the principal corporate trust office of the Trustee with a written instrument of transfer satisfactory to the Trustee, duly executed by the registered owner or his legal representative duly authorized in writing, may, at the option of the registered owner thereof, be exchanged for an equal aggregate principal amount of other Bonds in denominations of $5,000 or any integral multiple thereof.

For every such exchange or transfer of Bonds, the Authority or the Trustee may make a charge sufficient to reimburse it for any tax, fee or other governmental charge required to be paid with respect to such exchange or transfer, which sum or sums shall be paid by the person requesting such exchange or transfer as a condition precedent to the exercise of the privilege of making such exchange or transfer.

The Trustee shall not be required to register the transfer or exchange of (a) any Bonds during the 15 day period next preceding the selection of Bonds to be redeemed and thereafter until the date of the mailing of a notice of redemption of Bonds selected for redemption, or (b) any Bonds selected, called or being called for redemption in whole or in part, except in the case of any Bond to be redeemed in part, the portion thereof not so to be redeemed.

**SECTION 3.13.**    Cancellation and Destruction of Surrendered Bonds.  Upon the surrender to the Trustee of any temporary or mutilated Bonds, or Bonds transferred or exchanged for other Bonds, or Bonds paid at maturity by the Authority, the same shall forthwith be cancelled and destroyed by the Trustee, and the Trustee, upon the request of the Authority, shall deliver its certificate of such destruction to the Authority.

**SECTION 3.14.**    Delivery of the Bonds.  Upon the execution and delivery of this Indenture, the Authority shall execute and deliver to the Trustee, and the Trustee shall authenticate the Bonds and deliver them to the purchasers thereof as shall be directed by the Authority as hereinafter in this Section provided.

Prior to or simultaneously with the delivery by the Trustee of the Bonds there shall be filed with the Trustee:

(a)    A copy, duly certified by the Secretary-Treasurer or an Assistant Secretary of the Authority, of the resolution or resolutions adopted by said Authority authorizing the execution and delivery of this Indenture, the Agreement, the Tax Regulatory Agreement, the Escrow Agreement and all other instruments contemplated thereby and the authorization, issuance, sale and delivery of the Bonds;

(b)      A copy, duly certified by an Authorized Corporation Representative, of the resolution or resolutions of the Corporation authorizing the execution and delivery of this Indenture, the Agreement and the Tax Regulatory Agreement, the Escrow Agreement, and all other instruments contemplated thereby and approving this Indenture and the authorization, issuance, sale and delivery of the Bonds;

(c)      Original executed counterparts of this Indenture, the Agreement and the Tax Regulatory Agreement;

(d)      Signed copies of all opinions of counsel required in connection with the issuance of the Bonds and the transactions contemplated thereby; and

(e)      A request and authorization to the Trustee on behalf of the Authority and signed by its Chairman, Vice Chairman, Secretary-Treasurer or an Assistant Secretary to authenticate and deliver the Bonds to the purchasers thereof and specifying the amounts to be deposited in the Costs of Issuance Account and the Escrow Fund, created under the Escrow Agreement.

(f)      A signed copy of the legal opinion of bond counsel, addressed to the Trustee, to the effect that (i) the Bonds are exempt from the registration requirements of the Securities Act of 1933, as amended and this Indenture is exempt from qualification under the Trust Indenture Act of 1939, as amended; and (ii) authorizing the Trustee to rely upon bond counsel's approving opinion as if it were addressed to the Trustee.

The Authority hereby authorizes and directs the Trustee to execute and deliver the Tax Regulatory Agreement.

**SECTION 3.15.**      Book-Entry Registration of Bonds.  The Bonds shall be initially issued in the name of Cede & Co., as nominee for DTC, as registered owner of the Bonds, and held in the custody of DTC.  The Authority and the Trustee acknowledge that the Authority has executed and delivered a Blanket Issuer Letter of Representations with DTC and that the terms and provisions of said Letter of Representations shall govern in the event of any inconsistency between the provisions of this Indenture and said Letter of Representations.  A single bond certificate for each maturity of the Bonds bearing interest at a particular interest rate will be issued and delivered to DTC.  The Beneficial Owners will not receive physical delivery of Bond certificates except as provided herein.  Beneficial Owners are expected to receive a written confirmation of their purchase providing details of each Bond acquired.  For so long as DTC shall continue to serve as securities depository for the Bonds as provided herein, all transfers of beneficial ownership interest will be made by book-entry only, and no investor or other party purchasing, selling or otherwise transferring beneficial ownership of Bonds is to receive, hold or deliver any Bond certificate.

For every transfer and exchange of the Bonds, the Beneficial Owner may be charged a sum sufficient to cover such Beneficial Owner's allocable share of any tax, fee or other governmental charge that may be imposed in relation thereto.

The Authority, the Corporation and the Trustee will recognize DTC or its nominee as the Bondholder for all purposes, including notices and voting.

Neither the Authority, the Trustee nor the Corporation are responsible for the performance by DTC of any of its obligations, including, without limitation, the payment of moneys received by DTC, the forwarding of notices received by DTC or the giving of any consent or proxy in lieu of consent.

17

Whenever during the term of the Bonds the beneficial ownership thereof is determined by a book entry at DTC, the requirements of this Indenture of holding, delivering or transferring Bonds shall be deemed modified to require the appropriate person to meet the requirements of DTC as to registering or transferring the book entry to produce the same effect.

If at any time DTC ceases to hold the Bonds, all references herein to DTC shall be of no further force or effect.

## ARTICLE IV

## FUNDS AND ACCOUNTS; FLOW OF FUNDS; INVESTMENTS; DEPOSITS; ARBITRAGE

**SECTION 4.01.** Creation and Use of Funds and Accounts. Upon delivery of and payment for the Bonds, the following special trust funds and accounts shall be established with the Trustee and maintained so long as any Bonds issued under this Indenture are for the following purposes:

(a) The *Bond Proceeds Fund* shall be maintained with the Trustee and used to receive the proceeds of the Bonds, to transfer to the Escrow Fund the sum specified in the request and authorization delivered pursuant to Section 3.14 hereof, and to retain such sum, in a special account called the Costs of Issuance Account, as shall be specified in the request and authorization delivered pursuant to Section 3.14.

(b) The *Debt Service Fund* and its corresponding Accounts shall be maintained with the Trustee and used for the following purposes:

(i) The *Interest Account* shall be used to receive the portions of the Payments applicable to interest on the Bonds; to receive the investment income therefrom and to utilize such investment income to reduce the next required interest installment of the Payments; and to pay the interest on the Bonds as it becomes due and payable; and

(ii) The *Principal Account* shall be used to receive the portion of the Payments applicable to the principal requirements of the Bonds; to receive the investment income therefrom and to utilize such investment income to reduce the next required principal installment of the Payments; to pay the principal of the Bonds as it becomes due and payable whether at maturity or upon scheduled sinking fund redemption; and, if funds are available for such purpose and at the written direction of the Authority, to effect the redemption of the Bonds prior to their maturity in accordance with the redemption provisions thereof or the purchase of Bonds prior to their maturity in the open market at a price not in excess of the principal amount thereof, premium, if any, plus accrued interest.

(c) The *Debt Service Reserve Fund* shall be (i) used for the transfer to the Debt Service Fund for payment of interest on or principal of the Bonds, when due, at any time when there is not sufficient money in the Debt Service Fund for such purpose from any other source, (ii) transferred to the Debt Service Fund upon an acceleration of the maturity of the Bonds, and (iii) transferred to the Debt Service Fund for payment of the last maturing payments of interest on or principal of the Bonds as the same become due and payable.

**SECTION 4.02.** Debt Service Reserve Fund. On the date of delivery of the Bonds, no moneys or Permitted Investments are required to be deposited into the Debt Service Reserve Fund. The Corporation shall be required to deposit the Debt Service Requirement into the Debt Service Reserve

Fund in accordance with the provisions of Section 4.04 of the Agreement. The funding of the Debt Service Reserve Fund shall not be satisfied from the proceeds of any borrowing (not including indebtedness incurred pursuant to obtaining a letter of credit or insurance policy) if such funding is required in connection with a springing reserve.

Upon final payment of all Bonds outstanding, the balance of amounts remaining in the Debt Service Reserve Fund shall be paid to the Corporation.

At the time any Additional Bonds are issued, an amount equal to the Debt Service Reserve Fund Requirement for such Additional Bonds shall be deposited in the Debt Service Reserve Fund (after taking into account any amounts on deposit in the Debt Service Reserve Fund in excess of the then current Debt Service Reserve Fund Requirement as a result of any earnings on investments of amounts in the Debt Service Reserve Fund). In addition, there shall be deposited into the Debt Service Reserve Fund any other amount delivered to the Trustee specifically designated for deposit thereto. The Corporation may deliver to the Trustee an irrevocable letter of credit, surety bond, guarantee or policy of insurance which is equal to, or together with moneys on deposit therein, is equal to the Debt Service Reserve Fund Requirement, if such letter of credit, policy of insurance, surety bond or guarantee meets the requirements set forth below.

Any irrevocable letter of credit, surety bond, guarantee, policy of insurance, or other comparable obligation held by the Trustee shall meet the following requirements: the senior debt of the obligor shall be, at the time of issuance of such obligation, if the Bonds are then rated by Moody's, rated in a bond rating category by Moody's and, if the Bonds are then rated by Fitch, rated in a Bond rating category by Fitch, equal to or higher than the rating then assigned by the applicable rating agency or agencies to the Bonds, and there shall be delivered an Opinion of Counsel which states that such obligation constitutes a legal, valid and binding obligation of the obligor thereon and is enforceable in accordance with its terms, except to the extent that the enforceability thereof may be limited by senior debt, bankruptcy, insolvency, reorganization, moratorium or other laws for the relief of debtors as applied to such obligor and by general principles of equity which permit the exercise of judicial discretion.

In determining the balance of such letter of credit, guarantee, surety bond or policy of insurance, if such obligor undertakes to pay, to the extent of its stated amount, on any date for payment of principal of and interest on the Bonds, the difference between the amount of principal and interest then coming due and the combined balance of the Debt Service Fund and the Debt Service Reserve Fund, and on its expiration date, unless replaced by a substitute obligation described in this sentence, an amount equal to the difference between the Debt Service Reserve Fund Requirement and the balance of the Debt Service Reserve Fund (without giving effect to this sentence), all upon demand or order by the Trustee (accompanied by such documents as may reasonably be required to evidence such difference), then the stated amount of such obligation shall be credited to the Debt Service Reserve Fund.

In the event that any such obligation shall not be renewed, extended or replaced, the Trustee shall draw on or make claim against such obligation prior to the expiration date thereof to the extent described above.

Any amounts drawn from the Debt Service Reserve Fund must be replenished within 12 months.

Upon final payment of all Bonds outstanding, the balance of amounts remaining in the Debt Service Reserve Fund shall be paid to the Corporation.

Payments shall be applicable only to the extent the Debt Service Reserve Fund is funded.

If required to be funded, the Trustee, shall accept the cash or letter of credit or surety bonds provided by the Corporation. There also shall be retained in the Debt Service Reserve Fund interest and other income received on investments of Debt Service Reserve Fund moneys; provided, however, in no event shall moneys on deposit in the Debt Service Reserve Fund exceed the Debt Service Reserve Requirement and in such event such excess moneys shall be transferred to the Principal Account or Interest Account within the Debt Service Fund. Anything in this Indenture to the contrary notwithstanding, moneys on deposit in the Debt Service Reserve Fund shall be invested so as to not to be in violation of the yield restrictions set forth in the Tax Regulatory Agreement. Investments in the Debt Service Reserve Fund shall be valued in accordance with Section 4.11 hereof; in no event shall such investments have an average weighted term in excess of five years or such longer period unless there is a Debt Service Reserve Agreement, in which case the Permitted Investments in the Debt Service Reserve Fund may mature no later than the final maturity of the Bonds.

If amounts on deposit in the Debt Service Reserve Fund shall be on any valuation date under Section 4.11 hereof less than the Debt Service Reserve Requirement because of a decrease in the market value of Permitted Investments in the Debt Service Reserve Fund, the Corporation shall make up such deficiency not later than the next valuation date. If deposits in the Debt Service Reserve Fund are less than the Debt Service Reserve Requirement due to a withdrawal required by this Indenture, the Corporation shall make up such deficiency in twelve substantially equal monthly payments beginning in the month after the withdrawal.

**SECTION 4.03.** Use of Moneys in the Debt Service Reserve Fund. Except as provided in Sections 4.02 and 4.11 hereof, moneys in the Debt Service Reserve Fund shall be used solely for the payment of the principal of and interest on the Bonds in the event moneys in the Principal Account and Interest Account are insufficient to make such payments when due, whether on an interest payment date, redemption date, sinking fund redemption date, maturity date or otherwise. Moneys in the Debt Service Reserve Fund may be used to pay premium on the Bonds if the Bonds are being redeemed in full. The Trustee shall, on the fifth day prior to any such payment date for principal of or interest on the Bonds, determine if sufficient funds are available in the Principal Account and Interest Account, as applicable, to make such payments when due and, if sufficient funds are not available in such funds, shall make the required transfers, if any, to the Bond Interest Fund or Bond Principal Fund to cure such deficiency. Upon the occurrence of an Event of Default hereunder and the exercise by the Trustee of the remedy specified in Section 8.05 hereof, any moneys in the Debt Service Reserve Fund or other amounts available under Section 8.05 hereto shall be transferred by the Trustee to the Debt Service Fund, and with respect to any moneys in excess of the amount required to be transferred to the Debt Service Fund and applied in accordance with Section 8.05 hereof. On the final maturity date of the Bonds, any moneys in the Debt Service Reserve Fund may be used to pay the principal of and interest on the Bonds on such final maturity date. In the event of the redemption of the Bonds in whole, any moneys in the Debt Service Reserve Fund shall be transferred to the Bond Principal Fund and applied to the payment of the principal of and premium, if any, on the Bonds.

At such times as moneys are to be transferred out of the Debt Service Reserve Fund for deposit into the Principal Account and Interest Account pursuant to this Section, the Trustee shall use cash or Permitted Investments in such order of priority as the Corporation, shall direct or as otherwise set forth herein. If no Corporation direction has been received, the Trustee shall determine the priority of use of amounts in the Debt Service Reserve Fund.

**SECTION 4.04.** Custody of the Debt Service Reserve Fund. The Debt Service Reserve Fund shall be in the custody of the Trustee but in the name of the Corporation and the Corporation hereby authorizes and directs the Trustee to withdraw sufficient funds from the Debt Service Reserve Fund to pay the principal of premium, if any, and interest on the Bonds which authorization and direction the

Trustee hereby accepts. In the event there shall be a deficiency in the Principal Account and Interest Account on any payment date, the Trustee shall promptly make up such deficiency from the Debt Service Reserve Fund in the manner provided in Section 4.04 of the Agreement.

**SECTION 4.05.** Flow of Funds. The Authority covenants and agrees to cause the Corporation to pay the Payments in the amounts, time and manner as provided in Section 4.02 of the Agreement and the Trustee agrees to cause the Payments with respect to the Bonds to be applied in the amounts, time and manner as hereinafter provided:

(a) Into the Interest Account of the Debt Service Fund, semiannually on or before each January 1 and July 1 commencing July 1, 2017, an amount equal to the interest due and payable on the Bonds on such January 1 or July 1, as the case may be;

(b) Into the Principal Account of the Debt Service Fund, annually on or before each July 1, commencing July 1, 2017, an amount equal to the principal amount of the Bonds maturing or scheduled for redemption on such July 1;

(c) Monthly following any drawing on the Debt Service Reserve Fund in accordance with Section 4.2 hereof, an amount equal to one-twelfth (1/12th) of the amount necessary to cause the amount on deposit in the Debt Service Reserve Fund to equal the Debt Service Reserve Fund Requirement within twelve months;

(d) Into any of the foregoing funds an amount sufficient to make up any deficiency in any prior payment required to be made into such fund and to restore any loss resulting from investment or other causes from such fund.

The required payments for (a) and (b) above shall be reduced by any surplus amount contained in or investment income received in or transferred to the Interest and/or Principal Accounts.

**SECTION 4.06.** Purchase of Bonds. In lieu of scheduled sinking fund redemption of Bonds, the Trustee may at the written direction of the Corporation, purchase Bonds then outstanding that are subject to mandatory sinking fund redemption in any twelve month period immediately preceding any July 1 in an aggregate principal amount not exceeding the principal amount of such Bonds required to be redeemed on such July 1 at a price not to exceed the principal thereof plus accrued interest to date of delivery of such Bonds. Payment shall be made on the date of delivery of any Bonds so purchased from moneys in the Debt Service Fund or from moneys made available by the Corporation. The principal amount of Bonds of such Series to be called for redemption on any such July 1 shall be reduced by any such Bonds purchased (or presented for cancellation) by the Trustee during the preceding twelve (12) month period. No such purchase shall be made in the 30-day period immediately preceding any such July 1, in order for the Trustee to give the notice of redemption required by Article III of this Indenture.

In lieu of the foregoing, the Corporation may submit to the Trustee for cancellation any of the Bonds which shall be subject to redemption on the next succeeding July 1, provided that the Trustee shall be under no obligation to accept Bonds for cancellation during the 30-day period immediately preceding any such July 1.

The purchase of Bonds in the market or cancellation of Bonds of such Series presented by the Corporation pursuant to this Section 4.05 shall reduce the amount of Bonds to be called by the Trustee on the next succeeding July 1.

Upon the retirement of any Bonds by purchase or redemption, the Trustee shall file with the Authority and the Corporation a statement briefly describing such Bonds and setting forth the date of redemption, the amount of the redemption price of such Bonds and the amount paid as interest thereon. The expenses in connection with the redemption of any Bonds shall be paid by the Corporation pursuant to the Agreement to the extent that sufficient funds therefor shall not be available, when needed, in the Debt Service Fund.

**SECTION 4.07.** INTENTIONALLY LEFT BLANK.

**SECTION 4.08.** Depository of Moneys and Security for Deposits. All of the funds and accounts established hereunder shall be special trust accounts held by the Trustee in trust for the benefit of the owners of the Bonds and shall not be subject to lien or attachment by any creditors of the Trustee, the Authority or the Corporation, except for Bondholders. Uninvested sums in these funds and accounts shall be continually secured as are deposits of uninvested sinking funds of political subdivisions of the State.

**SECTION 4.09.** Arbitrage. Notwithstanding all the provisions hereof and subject to the provisions of the Tax Regulatory Agreement, moneys in the various funds and accounts created hereunder shall not be allowed to accumulate or be invested in a manner which would result in the loss of exclusion from gross income for Federal income tax purposes of interest on the Bonds or in such manner which would result in the Bonds constituting "arbitrage bonds" within the meaning of Section 148 of the Code.

**SECTION 4.10.** Amounts Remaining in Funds; Releases. It is agreed by the parties hereto that any amounts remaining in the Funds and Accounts existing pursuant to this Indenture upon the expiration or sooner cancellation or termination of the Agreement, as provided therein, after payment in full of all Bonds then outstanding under this Indenture (or provisions for the payment thereof having been made in accordance with Article XII of this Indenture), and the fees, charges and expenses of the Authority and the Trustee and all other amounts required to be paid under the Agreement and under this Indenture, other than amounts payable as arbitrage rebate under Section 148(f) of the Code, shall belong to and be paid to the Corporation.

**SECTION 4.11.** Investment of the Debt Service Fund, the Debt Service Reserve Fund and the Cost of Issuance Account. Subject to Section 4.09 hereof, any moneys held as part of the Debt Service Fund, Debt Service Reserve Fund, or Cost of Issuance Account shall, on instructions signed by an Authorized Corporation Representative, be invested by the Trustee in obligations described in paragraphs (a), (b), (c), (d) or (h) of the definition of Permitted Investments maturing in the amounts and at the times necessary to provide funds to make the payments to which such moneys are applicable as determined by the Trustee. All such Permitted Investments purchased shall mature or be redeemable on a date or dates prior to the time when the moneys so invested will be required for expenditure. The value of the investments in such Funds shall be determined annually and shall be valued at the market value thereof, exclusive of accrued interest; where the market price is not readily available, the market value may be determined in such manner as the Trustee deems reasonable. The Trustee shall sell and reduce to cash a sufficient portion of such investments whenever the cash balance in a Fund is insufficient for the purposes of such Fund. The Trustee may make any and all investments permitted by the provisions of this Section through its trust or bond departments. If there is any insufficiency in the Debt Service Reserve Fund as a result of a valuation the Corporation shall make up such deficiency not later than the next valuation date.

**SECTION 4.12.** Allocation and Transfer of Investment Income. Any investments shall be held by or under the control of the Trustee and shall be deemed at all times a part of the Fund from which the investment was made. Any loss resulting from such investments shall be charged to such Fund. Any

interest or other gain from any Fund from any investment or reinvestment pursuant to Section 4.11 hereof shall be allocated and transferred subject to the Tax Regulatory Agreement, as follows:

(a)     Any interest or other gain realized as a result of any investments or reinvestments of moneys in the Debt Service Fund or Cost of Issuance Account Fund shall be retained therein.

(b)     Any interest or other gain realized as a result of any investments or reinvestments of moneys in the Debt Service Reserve Fund shall be transferred to the Principal Account of the Debt Service Fund if the amount on deposit in the Debt Service Reserve Fund is in excess of the Debt Service Reserve Fund Requirement.

## ARTICLE V

### ADDITIONAL BONDS

**SECTION 5.01.**     Additional Bonds.     Additional Bonds may be issued in one or more series by the Authority at the request of the Corporation under a supplement to this Indenture to pay all or part of the additional cost of any new Project so long as:

(a)     No Event of Default under this Indenture has occurred and is then continuing and the Authority shall have approved the issuance of such additional bonds;

(b)     There shall have been filed with the Trustee an opinion of an attorney or firm of attorneys generally recognized as having expertise in matters relating to municipal bonds to the effect that the exclusion from "gross income" for Federal income tax purposes of the interest on the Bonds then outstanding under this Indenture shall not be adversely affected; and

(c)     The Corporation satisfies the requirements of Section 6.09 of the Agreement and in satisfying Section 6.09 thereof, the Corporation shall take into account all outstanding Bonds and Additional Bonds, if any, and any proposed Additional Bonds.

Such series of Additional Bonds shall be appropriately designated, shall be dated, shall bear interest at a rate or rates not exceeding the maximum rate then permitted by law, shall be numbered, shall have the same requirement with respect to the Debt Service Reserve Fund as is the case for the Bonds, shall have such paying agents and shall have such maturities and redemption provisions, all as may be provided in the supplement to this Indenture or the separate indenture authorizing the issuance of such series of Additional Bonds.

**SECTION 5.02.**     Refunding.     Refunding Bonds may be issued under and secured by a supplement to this Indenture for the purpose of providing funds for the refunding of the Bonds and Additional Bonds, upon compliance with Section 5.01 above and Section 6.09 of the Agreement.

## ARTICLE VI

### COSTS OF ISSUANCE

**SECTION 6.01.**     Payment of Costs of Issuance.     There shall be paid into the Costs of Issuance Account in the Bond Fund the amounts required to be so paid pursuant to this Indenture and any supplemental indenture and such amounts shall be applied to the payment of the legal, administrative, financing and incidental expenses of the Authority and the Corporation relating to the Bonds. Payments from the Costs of Issuance Account pursuant to this paragraph shall be made by the Trustee in accordance with a certificate or certificates signed by an Authorized Corporation Representative stating the names of the payees, the purpose of each payment in terms sufficient for identification and the respective amounts

of each payment. The Trustee shall make payments from the Costs of Issuance Account upon receipt of statements from the parties listed in such certificate of the Corporation; to the extent such statements are within the maximum amounts set forth in said certificate.

Upon the earlier of June 20, 2017, or receipt of a certificate signed by an Authorized Corporation Representative stating that all costs of issuance of the Bonds have been paid, the Trustee shall transfer any moneys remaining in the Cost of Issuance Account, at the option of the Corporation, to the Interest Account or Principal Account.

## ARTICLE VII

## ENFORCEMENT OF AGREEMENT

**SECTION 7.01.** <u>Assignment of Agreement.</u> The Authority has assigned all of its right, title and interest in, to and under the Agreement (except for rights relating to exculpation, indemnification and payment of expenses and administrative payments thereunder) to the Trustee as security for the Bonds and hereby agrees that the Agreement may be enforced by the Trustee and/or the owners of the Bonds issued hereunder in accordance with the terms hereof and thereof. Notwithstanding such assignment, the Authority agrees to cause the Corporation to comply with the terms contained in the Agreement and the rights of the Bondholders and the Trustee shall be governed by the provisions of this Indenture and the Agreement.

**SECTION 7.02.** <u>Trustee or Bondholders to Enforce Agreement.</u> The Trustee may, and upon request of the owners of at least 25% of the aggregate principal amount of the Bonds then outstanding shall, subject to the provisions of Section 8.10 and Article IX hereof, strictly and promptly enforce the provisions of the Agreement so long as any of the Bonds remain outstanding under this Indenture provided if the Trustee shall receive conflicting or inconsistent requests from two or more groups of Bondholders, the Trustee shall follow the request of the group of Bondholders representing the largest percentage of outstanding Bonds (determined based on the principal amount thereof.) All rights of action (including the right to file proof of claims) to enforce the Agreement under this Indenture or under any of the Bonds may be enforced by the Trustee without the possession of the Bonds and without their production in any trial or other proceeding relating thereto. Any such suit or proceeding instituted by the Trustee shall be brought in its name as Trustee for the Bondholders without the necessity of joining as plaintiffs or defendants any of the Bondholders. Neither the Trustee nor the Authority shall consent to any amendment or supplement to the Agreement unless the conditions set forth in Article VII of the Agreement are satisfied.

## ARTICLE VIII

## EVENTS OF DEFAULT AND REMEDIES

**SECTION 8.01.** <u>No Extension of Time for Payment of Principal, Premium or Interest.</u> The Trustee shall not be authorized to extend the time for any payment of principal, premium, if any, or interest without the prior written consent of or authorization by the owner of the Bonds so affected.

**SECTION 8.02.** <u>Events of Default.</u> Each of the following events is hereby declared an "Event of Default":

(a) The payment of any installment of interest on any of the Bonds shall not be made when the same shall become due and payable;

24

(b)    The payment of the principal of or premium, if any, on any of the Bonds shall not be made when the same shall become due and payable, whether at maturity or by proceedings for mandatory redemption or by acceleration or otherwise;

(c)    An "Event of Default" under Article IX of the Agreement shall have occurred and shall not have been cured within the applicable cure period if any; or

(d)    Default by the Authority in the due and punctual performance of any other of the covenants, conditions, agreements and provisions contained in the Bonds or in this Indenture on the part of the Authority to be performed, if such default shall continue for 60 days after written notice specifying such default and requiring the same to be remedied shall have been given to the Authority and the Corporation by the Trustee, which may give such notice in its discretion and shall give such notice at the written request of the owners of not less than a majority in principal amount of the Bonds then outstanding. Such default shall not become an Event of Default if said default be of the nature that (i) it cannot be corrected within the 60 day period after receipt of notice, but the Authority (or the Corporation pursuant to the provisions of Section 9.14 of this Indenture) promptly shall institute and diligently pursue corrective action until such default is cured, or (ii) the Trustee shall determine that such default is not curable but such default does not affect the validity or enforceability of the Bonds or the exclusion from gross income of interest on the Bonds for federal income tax purposes, this Indenture or the Agreement, an event of nonperformance shall not have occurred under the Agreement (other than as a result of the cross-default provisions), and such default does not impair the security or the obligations provided for or under the Bonds, this Indenture or the Agreement.

The word "default" as used herein means failure of performance when due, exclusive of any period of grace, if any, allowed to correct any such failure.

SECTION 8.03.    Remedies.  Upon the occurrence of an Event of Default, the Authority and the Trustee are subject to Sections 8.04, 8.10 and 8.11, the Bondholders shall have all the rights and remedies as may be allowed by law, this Indenture or pursuant to the provisions of the Agreement by virtue of their assignment hereunder, including but not limited to, acceleration of the maturity of all Bonds, or suit at law or in equity to enforce or enjoin the action or inaction of parties under the provisions of this Indenture or the Agreement.

SECTION 8.04.    Acceleration; Annulment of Acceleration.  (a) Upon the occurrence of an Event of Default described in Section 8.02 of this Indenture, the Trustee may, and upon the written request of the owners of not less than a majority of the aggregate principal amount of Bonds outstanding shall, by notice in writing to the Authority and the Corporation, declare the Bonds then outstanding immediately due and payable, and such Bonds shall become and be immediately due and payable, anything in such Bonds or in the Agreement or this Indenture to the contrary notwithstanding. In such event, there shall be due and payable on the Bonds an amount equal to the principal amount of all the Bonds then outstanding plus all interest accrued thereon and which shall accrue thereon to the date of payment; and

(b)    At any time after the principal of the Bonds shall have been so declared to be due and payable and before the entry of final judgment or decree in any suit, action or proceeding instituted on account of such default, or before the completion of the enforcement of any other remedy under this Indenture or the Agreement, the Trustee may annul such declaration and its consequences with respect to the Bonds if (i) moneys shall have been deposited in the Debt Service Fund sufficient to pay all matured installments of principal (other than principal due solely because of acceleration) and interest; (ii) moneys shall be available sufficient to pay the charges, compensation, expenses, disbursements, advances and liabilities of the Authority and the Trustee; (iii) all other amounts then payable by the Authority or the

Corporation under this Indenture or the Agreement shall have been paid or a sum sufficient to pay the same shall have been deposited with the Trustee; and (iv) every Event of Default known to the Authority or the Trustee (other than a default in the payment of the principal of the Bonds due only because of such declaration) shall have been remedied to the satisfaction of the Authority and the Trustee. No such annulment shall extend to or affect any subsequent Event of Default or impair any right consequent thereon.

(c)     In the event written notice is given by the Bondholders or the Trustee under Section 8.02(e) hereof, the Trustee shall immediately give notice with respect to such default to the Corporation.

**SECTION 8.05.     Insufficiency in Debt Service Fund and Debt Service Reserve Fund; Application of Moneys.** Anything in this Indenture to the contrary notwithstanding, if at any time the moneys in the Debt Service Fund and the Debt Service Reserve Fund shall not be sufficient to pay the interest on, premium, if any, or the principal of the Bonds as the same shall become due and payable (either by their terms or by acceleration of maturities), such moneys, together with any other moneys then available or thereafter becoming available for such purpose, whether through the exercise of the remedies provided for in this Article or otherwise shall, after payment of all fees and expenses of the Trustee, including, without limitation, the costs and expenses of the proceedings resulting in the collection of such moneys and of related expenses, liabilities and advances incurred or made by the Trustee, be applied as follows:

(a)     Unless the principal of all the Bonds shall have become or shall have been declared due and payable, all such moneys shall be applied:

FIRST, to the payment to the persons entitled thereto of all installments of interest then due and payable in the order in which such installments became due and payable and, if the amount available shall not be sufficient to pay any particular installment, then to the payment thereof, ratably, according to the amounts due on such installment, to the persons entitled thereto, without any discrimination or preference except as to any difference in the respective rates of interest specified in the Bonds; then

SECOND, to the payment to the persons entitled thereto of the unpaid principal of any of the Bonds which shall have become due and payable (other than Bonds called for redemption for the payment of which moneys are held pursuant to the provisions of this Indenture) in the order of their due dates, with interest on the principal amount of such Bonds due and payable, and, if the amount available shall not be sufficient to pay in full the principal of the Bonds and their interest thereon, then to the payment thereof ratably, according to the amount of the interest due on such date, and next to the payment of the principal, ratably, according to the amount of such principal due on such date, to the persons entitled thereto without any discrimination or preference; and then

THIRD, to the payment of the interest on and the principal of the Bonds, to the purchase and retirement of Bonds and to the redemption of Bonds, all in accordance with the provisions of this Indenture.

(b)     If the principal of all the Bonds shall have become or shall have been declared due and payable, all such moneys shall be applied to the payment of the principal and interest then due and unpaid upon the Bonds, without preference or priority of principal over interest or of interest over principal, or of any installment of interest over any other installment of interest, or of any Bond over any other Bond, ratably, according to the amounts due respectively for principal and interest, to the persons entitled thereto without any discrimination or preference; and

26

(c)     If the principal of all the Bonds shall have been declared due and payable and if such declaration shall thereafter have been rescinded and annulled, then, subject to the provisions of Section 8.05(b) above, in the event that the principal of all the Bonds shall later become or be declared due and payable, then all such moneys shall be applied in accordance with the provisions of Section 8.05(a) above.

Whenever money is to be applied by the Trustee pursuant to the provisions of this Section, such money shall be applied by the Trustee at such times and from time to time as the Trustee in its sole discretion shall determine, having due regard to the amount of such money available for application and the likelihood of additional money becoming available for application in the future; the deposit of such money or otherwise setting aside such money in trust for the proper purpose shall constitute proper application by the Trustee; and the Trustee shall incur no liability whatsoever to the Authority, to any Bondholder or to any other person for any delay in applying any such money, so long as the Trustee acts with reasonable diligence, having due regard to the circumstances, and ultimately applies the same in accordance with such provisions of this Indenture as may be applicable at the time of application by the Trustee.  Whenever the Trustee shall exercise such discretion in applying such money, it shall fix the date (which shall be an Interest Payment Date unless the Trustee shall deem another date more suitable) upon which such application is to be made and upon such date interest on the amounts of principal to be paid on such date shall cease to accrue.  The Trustee shall give such notice as it may deem appropriate of the fixing of any such date and shall not be required to make payment to the owner of any Bond until such Bond shall be surrendered to the Trustee for appropriate endorsement or for cancellation if fully paid.

**SECTION 8.06.**     Discontinuance of Proceedings.  In case any proceeding taken by the Trustee on account of any Event of Default shall have been discontinued or abandoned for any reason, then and in every such case the Authority, the Trustee and the Bondholders shall be restored to their former positions and rights hereunder, respectively, and all rights, remedies, powers and duties of the Trustee shall continue as though no proceeding had been taken.

**SECTION 8.07.**     Appointment of Receiver.  Upon the occurrence of an Event of Default, and upon filing of a suit or other commencement of judicial proceedings to enforce the rights of the Trustee and of the Bondholders under this Indenture, the Trustee, shall be entitled, as a matter of right, to the appointment of a receiver or keeper of the Trust Estate pending such proceedings, with such powers as the court making such appointment shall confer.

**SECTION 8.08.**     Remedies Not Exclusive.  No remedy by the terms of this Indenture conferred upon or reserved to the Trustee or the Bondholders is intended to be exclusive of any other remedy, but each and every remedy shall be cumulative and shall be in addition to every other remedy given under this Indenture or existing at law or in equity on or after the date of adoption of this Indenture.

**SECTION 8.09.**     Remedies Vested in Trustee.  All rights of action under this Indenture, the Agreement or under any of the Bonds may be enforced by the Trustee without possession of the Bonds and without their production in any trial or other proceeding relating thereto.  Any suit or proceeding instituted by the Trustee may be brought in its name as Trustee without the necessity of joining as plaintiffs or defendants any owners of the Bonds.

**SECTION 8.10.**     Bondholders Control Proceedings.  If an Event of Default shall have occurred and be continuing, notwithstanding anything in this Indenture to the contrary, the owners of at least a 25% of the aggregate outstanding principal amount of Bonds then outstanding shall have the right, at any time by an instrument or instruments in writing executed and delivered to the Trustee, to direct the method and place of conducting any proceeding to be taken in connection with the enforcement of the

27

terms and conditions of this Indenture and the Agreement, provided the direction is in accordance with law and the provisions of this Indenture and, in the sole judgment of the Trustee, is not unduly prejudicial to the interest of Bondholders not joining in such direction, and provided further, that nothing in this Section shall impair the right of the Trustee in its discretion to take any other action under this Indenture which it may deem proper and which is not inconsistent with the direction by Bondholders; and provided further if the Trustee shall receive conflicting or inconsistent directions from two or more groups of Bondholders, the Trustee shall follow the directions of the group of Bondholders representing the largest percentage of outstanding Bonds (determined based on the principal amount thereof). Anything in this Indenture to the contrary notwithstanding the owners of a majority in aggregate principal amount of Bonds then outstanding shall have the right at any time to direct the Trustee with respect to remedies hereunder and under the Agreement subject to Article IX hereof.

**SECTION 8.11.** <u>Individual Bondholder Action Restricted.</u> (a) No owner of any Bond shall have any right to institute any suit, action or proceeding for the enforcement of this Indenture or for the execution of any trust hereunder or for any remedy under this Indenture unless:

(i) An Event of Default has occurred (other than under Sections 8.02(a) or 8.02(b)) as to which the Trustee has actual notice, or as to which the Trustee has been notified in writing; and

(ii) The owners of at least 25% of the aggregate outstanding principal amount of Bonds outstanding shall have made written request to the Trustee to proceed to exercise the powers granted in this Indenture or to institute an action, suit or proceeding in its own name; and these Bondholders shall have offered the Trustee such indemnity as may be satisfactory to the Trustee, and the Trustee shall have failed or refused to exercise the powers granted in this Indenture or to institute an action, suit or proceeding in its own name for a period of 60 days after receipt of the request and offer of indemnity.

(b) No one or more owners of Bonds shall have any right in any manner whatsoever to disturb or prejudice the security of this Indenture or to enforce any right hereunder except in the manner herein provided and then only for the equal benefit of the owners of all outstanding Bonds.

**SECTION 8.12.** <u>Waiver and Non-Waiver of Event of Default.</u> (a) No delay or omission of the Trustee or of any owner of Bonds to exercise any right or power accruing upon any Event of Default shall impair the right or power or shall be construed to be a waiver of an Event of Default or acquiescence therein. Every power and remedy given by this Article to the Trustee and to the owners of the Bonds, respectively, may be exercised from time to time and as often as may be deemed expedient.

(b) The Trustee may waive any Event of Default which in its opinion or in the opinion of its counsel shall have been remedied before the entry of final judgment or decree in any suit, action or proceeding instituted by it under the provisions of this Indenture or before the completion of the enforcement of any other remedy under this Indenture;

(c) Notwithstanding anything contained in this Indenture to the contrary, the Trustee upon written request of the owners of at least a majority of the aggregate principal amount of the Bonds then outstanding, shall waive any Event of Default and its consequences; provided, however, that a default in the payment of the principal of, premium, if any, and interest on any Bond, when due and payable or upon call for redemption, may not be waived after the date the same becomes due and payable without the written consent of the owners of all the Bonds at the time outstanding.

(d)     In case of a waiver by the Trustee of any Event of Default, the Authority, the Trustee and the Bondholders shall be restored to their former positions and rights under this Indenture but no waiver shall extend to any subsequent or other Event of Default or impair any right consequent thereon. The Trustee shall not be responsible to anyone for waiving or refraining from waiving any Event of Default in accordance with this Section.

SECTION 8.13.     Notice of Defaults. (a) Within 30 days after the receipt of notice of an Event of Default or the occurrence of an Event of Default of which the Trustee is deemed to have notice, the Trustee shall (unless the Event of Default has already been cured) give written notice of the Event of Default to the owners of all Bonds then outstanding in the manner provided in Section 14.08 of this Indenture, provided that, except in the case of a default in the payment of principal, redemption price, or interest on any of the Bonds, the Trustee may withhold the notice to the Bondholders if, in its sole judgment, it determines that the withholding of notice is not detrimental to the best interest of the Bondholders; and

(b)     The Trustee shall immediately notify, in writing, the Authority and the Corporation of any Event of Default of which the Trustee has actual notice.

SECTION 8.14.     Opportunity of Corporation to Cure Certain Defaults. The Authority and the Trustee hereby grant the Corporation full authority on the account of the Authority to perform any covenant or obligation and to otherwise fulfill any condition the failure or non-performance of which is or is alleged to be a default under Section 8.02(d) of this Indenture, (after prior written notice of such action), and the Trustee agrees that performance by the Corporation shall be deemed to be performance by the Authority.

## ARTICLE IX

## CONCERNING THE TRUSTEE

SECTION 9.01.     Acceptance of Trusts. The Trustee hereby represents and warrants to the Authority (for the benefit of the Corporation and the Bondholders as well as the Authority) that it is a bank and trust company duly organized and existing under the laws of the United States of America and that it is duly authorized under such laws to accept and execute trusts of the character herein set out. The Trustee accepts and agrees to execute the trusts imposed upon it by this Indenture, but only upon the terms and conditions set forth in this Article and subject to the provisions of this Indenture including the following express terms and conditions, to all of which the parties hereto and the respective owners of the Bonds agree:

(a)     Except during the continuance of an Event of Default within the purview of Section 8.02,

(i)     the Trustee undertakes to perform such duties and only such duties as are specifically set forth in this Indenture, no implied covenants or obligations shall be read into this Indenture against the Trustee; and

(ii)     in the absence of bad faith on its part, the Trustee may conclusively rely as to the truth of the statements and the correctness of the opinions expressed therein, upon certificates or opinions furnished to the Trustee and conforming to the requirements of this Indenture; but in the case of any such certificates or opinions which by any provision hereof are specifically required to be furnished to the Trustee, as the case may be, the Trustee shall be under a duty to examine the same to determine whether or not they conform to requirements of this Indenture.

29

(b)     In case an Event of Default within the purview of Section 8.02 has occurred and is continuing, then the Trustee shall exercise such of the rights and powers vested in it by this Indenture and use the same degree of care and skill in their exercise as the Trustee deems reasonable under the circumstances.

(c)     No provision of this Indenture shall be construed to relieve the Trustee from liability for its own negligent action, its own negligent failure to act, or its own bad faith, except that

(i)     this subsection shall not be construed to limit the effect of subsection (a) of this Section 9.01;

(ii)     the Trustee shall not be liable for any error of judgment made in good faith by a responsible officer or officers of the Trustee unless it shall be proved that the Trustee was negligent in ascertaining the pertinent facts; and

(iii)     the Trustee shall not be liable with respect to any action taken or omitted to be taken by it in good faith and in accordance with the direction of the owners of a majority in aggregate principal amount of the Outstanding Bonds relating to the time, method and place of conducting any proceeding for any remedy available to the Trustee, or exercising any trust or power conferred upon the Trustee, under this Indenture.

(iv)     anything in this Indenture to the contrary notwithstanding, in no event shall the Trustee be liable for special, indirect, punitive or consequential loss or damage of any kind whatsoever (including but not limited to lost profits), even if the Trustee has been advised of the likelihood of such loss or damage and regardless of the form of action.

(d)     Whether or not therein expressly so provided, every provision of this Indenture relating to the conduct or affecting the liability of or affording protection to the Trustee, including without limitation Section 9.03 and 9.04 hereof, shall be subject to the provisions of this Section 9.01. The Trustee also accepts, and agrees to do and perform, the duties and obligations imposed upon it by and under the Agreement, but only upon the terms and conditions set forth in the Agreement and this Indenture. The rights of the Trustee to do things enumerated in this Indenture shall not be construed as a duty.

(e)     The Trustee shall not be required to take notice or be deemed to have notice of any default hereunder except (i) failure by the Authority to cause to be made any payment of principal of, premium, if any, or interest on the Bonds when due and (ii) any default of which the Trustee has actual knowledge, unless the Trustee shall be specifically notified in writing of such default by the Authority or by the Holders of at least 25% in aggregate principal amount of Bonds then outstanding.

**SECTION 9.02.**     <u>Trustee Entitled to Indemnity.</u> The Trustee shall be under no obligation to institute any suit, or to take any remedial proceeding under this Indenture or under the Agreement, or to enter any appearance in or in any way defend against any suit, in which it may be made a defendant (except in the case of the Trustee's own negligence), or to take any steps in the execution of the trusts hereby created or in the enforcement of any rights and powers hereunder or under the Agreement, until it shall be indemnified to its satisfaction against any and all costs and expenses, outlays and counsel fees and other reasonable disbursements, and against all liability; the Trustee may, nevertheless, begin suit, or appear in and defend suit, or do anything else in its judgment proper to be done by it as such Trustee, without indemnity, and in such case the Authority shall reimburse the Trustee from funds available therefor under the Agreement for all costs and expenses, outlays and counsel fees and other reasonable disbursements properly incurred in connection therewith. If the Authority shall fail to make

30

reimbursement, the Trustee may reimburse itself from any moneys in its possession under the provisions of this Indenture and shall be entitled to a preference over any of the Bonds.

**SECTION 9.03.** <u>Trustee Not Responsible for Insurance, Taxes, Execution of Indenture, Acts of the Authority or Application of Moneys Applied in Accordance with this Indenture.</u> The Trustee shall not be under any obligation to effect or maintain insurance or to renew any policies of insurance or to inquire as to the sufficiency of any policies of insurance carried by the Corporation or to report, or make or file claims or proof of loss for, any loss or damage insured against or which may occur, or to keep itself informed or advised as to the payment of any taxes or assessments, or to require any such payment to be made. The Trustee shall have no responsibility in respect of the validity, sufficiency, due execution (other than by the Trustee) or acknowledgment of this Indenture or the validity or sufficiency of the security provided hereunder or in respect of the validity of the Bonds or the due execution or issuance thereof, except as to the authentication thereof.

The Trustee shall not be under any obligation to see that any duties herein imposed upon any party other than itself, or any covenants herein contained on the part of any party other than itself to be performed, shall be done or performed, and the Trustee shall be under no obligation for failure to see that any such duties or covenants are so done or performed.

The Trustee shall not be liable or responsible because of the failure of the Authority or of any of its employees or agents to make any collections or deposits or to perform any act herein required of the Authority or because of the loss of any moneys arising through the insolvency or the act or default or omission of any other depositary in which such moneys shall have been deposited under the provisions of this Indenture. The Trustee shall not be responsible for the application of any of the proceeds of the Bonds or any other moneys deposited with it and paid out, withdrawn or transferred hereunder if such application, payment, withdrawal or transfer shall be made in accordance with the provisions of this Indenture.

The immunities and exemptions from liability of the Trustee hereunder shall extend to its directors, officers, employees and agents.

**SECTION 9.04.** <u>Compensation.</u> Subject to the provisions of any contract relating to the compensation of the Trustee, the Authority shall cause the Corporation to pay to the Trustee as Administrative Expenses its reasonable fees and charges in accordance with the Agreement upon the written request of the Trustee and provided the Authority shall be furnished with sufficient funds to pay all costs and expenses (including attorneys' fees) reasonably incurred by the Authority in connection therewith as such costs and expenses accrue. If the Corporation shall fail to make any payment required by this Section, the Trustee may, but shall be under no obligation to, make such payment from any moneys in its possession under the provisions of this Indenture, and the Trustee shall be entitled to a preference therefor over any of the Bonds Outstanding hereunder.

**SECTION 9.05.** <u>Trustee to Preserve Records.</u> All records and files pertaining to the projects financed with the proceeds of the Prior Bonds in the custody of the Trustee shall be open at all reasonable times to the inspection of the Authority, the Corporation, the owners of 10% of the aggregate principal amount of the Bonds then outstanding, and their agents and representatives.

**SECTION 9.06.** <u>Trustee May be Bondholder.</u> The Trustee and its directors, officers, employees or agents may in good faith buy, sell, own, hold and deal in any of the Bonds issued under and secured by this Indenture, and may join in the capacity of a Bondholder in any action which any Bondholder may be entitled to take with like effect as if such institution were not the Trustee under this Indenture.

**SECTION 9.07.** <u>Trustee Not Responsible.</u> (a) The recitals, statements and representations contained herein (other than those set forth in Section 9.01 hereof) and in the Bonds shall be taken and construed as made by and on the part of the Authority and not by the Trustee, and the Trustee shall not be under any responsibility for the correctness of the same. Provided, however, this section shall not relieve the Trustee from any of its obligations or duties under the Indenture.

(b) The Trustee shall have no responsibility with respect to any information or recital in any official statement, offering memorandum, or other disclosure material prepared or distributed with respect to the Bonds and shall have no responsibility for compliance with any state or federal securities laws in connection with the Bonds.

(c) Except as otherwise expressly provided by the provisions of this Indenture, the Trustee shall not be obligated and may not be requested to give or furnish any notice, demand, report, request, reply, statement, advice or opinion to any holder of any Bond, the Corporation, the Authority, or any other person, and the Trustee shall not incur any liability for failure or refusal to give or furnish the same unless obligated or required to do so by express provisions hereof.

**SECTION 9.08.** <u>Trustee May Rely on Certificates.</u> Subject to the provisions of Section 10.01 hereof, the Trustee shall be protected and shall incur no liability in acting or proceeding, or in not acting or not proceeding, in good faith, reasonably and in accordance with the terms of this Indenture, upon any resolution, order, notice, request, consent, waiver, certificate, statement, affidavit, requisition, bond or other paper or document which it shall in good faith reasonably believe to be genuine and to have been adopted or signed by the proper board or person or to have been prepared and furnished pursuant to any of the provisions of the Agreement or this Indenture, or upon the written opinion of any attorney, engineer, accountant or other expert believed by it to be qualified in relation to the subject matter, and the Trustee shall not be under any duty to make any investigation or inquiry as to any statements contained or matters referred to in any such instrument.

**SECTION 9.09.** <u>Qualification of the Trustee.</u> There shall at all times be a Trustee hereunder. Any successor Trustee hereunder shall be a trust company or commercial bank (having trust powers) organized and doing business under the laws of the United States of America or of any state, authorized under such laws to exercise corporate trust powers, having unimpaired capital and surplus of at least $50,000,000, and subject to supervision or examination by Federal or state authority. If such trust company or bank publishes reports of condition at least annually, pursuant to law or to the requirements of the aforesaid supervising or examining authority, then for the purposes of this Section, the unimpaired capital and surplus of such association or corporation shall be deemed to be its unimpaired capital and surplus as set forth in its most recent report of condition so published. If at any time the Trustee shall cease to be eligible in accordance with the provisions of this Section, it shall resign immediately in the manner and with the effect specified in Section 9.11 hereof.

**SECTION 9.10.** <u>Resignation and Removal of Trustee.</u> (a) No resignation or removal of the Trustee and no appointment of a successor Trustee pursuant to this Article shall become effective until the acceptance of appointment by the successor Trustee under Section 10.12 hereof.

(b) The Trustee may resign at any time by giving written notice thereof to the Authority, the Corporation and the Bondholders. If an instrument of acceptance by a successor Trustee shall not have been delivered to the Trustee within 30 days after the giving of such notice of resignation, the retiring Trustee may petition any court of competent jurisdiction for the appointment of a successor Trustee.

(c)     The Trustee may be removed at any time by an instrument or instruments in writing to the Trustee, if no Event of Default shall have occurred and be continuing, by an instrument in writing signed by an Authorized Corporation Representative or by the owners of 25% in aggregate principal amount of the Bonds then outstanding or by their attorneys, legal representatives or agents and delivered to the Trustee, the Authority and the Corporation (such instruments to be effective only when received by the Trustee).

(d)     If at any time

(i)     the Trustee shall cease to be eligible under Section 10.09 hereof and shall fail to resign after written request therefor by the Corporation or by any Bondholder, or

(ii)     the Trustee shall become incapable of acting or shall be adjudged a bankrupt or insolvent or a receiver of the Trustee or of its property shall be appointed or any public officer shall take charge or control of the Trustee or of its property or affairs for the purpose of rehabilitation, conservation or liquidation,

then, in any such case, (A) the Authority, in its discretion and without obligation, may or the Corporation may remove the Trustee, or (B) any Bondholder may, on behalf of himself and all others similarly situated, petition any court of competent jurisdiction for the removal of the Trustee and the appointment of a successor.

(e)     If the Trustee shall be removed or become incapable of acting, or if a vacancy shall occur in the office of Trustee for any cause other than resignation (it being understood that no vacancy may occur as a result of resignation since the Trustee may not resign unless a successor has been appointed) or if the Trustee tenders its resignation, the Authority with the approval of the Corporation (so long as the Corporation is not in default hereunder) shall promptly appoint a successor provided the Authority shall be furnished with sufficient funds to pay all costs and expenses (including attorneys' fees) reasonably incurred by the Authority in connection therewith as such costs and expenses accrue. If, within one year after such resignation, removal or incapability, or the occurrence of such vacancy, a successor Trustee shall be appointed by an instrument or concurrent instruments in writing executed by the owners of 25% in aggregate principal amount of the Bonds then outstanding and delivered to the Corporation and the retiring Trustee, the successor Trustee so appointed shall, forthwith upon its acceptance of such appointment, become the successor Trustee and supersede the successor Trustee appointed by the Authority. If no successor Trustee shall have been so appointed by the Authority or the Bondholders and accepted appointment in the manner hereinafter provided, any Bondholder who has been a bona fide owner of a Bond for at least six months may, on behalf of himself and all others similarly situated, petition any court of competent jurisdiction for the appointment of a successor Trustee. Notwithstanding any other provision of this Indenture, no removal, resignation or termination of the Trustee shall take effect until a successor Trustee shall be appointed.

Notwithstanding any of the foregoing provisions of this Article, any bank or trust company having power to perform the duties and execute the trusts of this Indenture and otherwise qualified to act as Trustee hereunder into which or with which the bank or trust company acting as Trustee may be merged or consolidated, or to which the assets and business of such bank or trust company may be sold, shall be deemed the successor of the Trustee; provided, however, that notwithstanding the foregoing, in the event of any such merger or consolidation or in the event of the merger or consolidation, sale of substantially all of the assets of, or acquisition of control of any bank holding company that owns or controls the Trustee, the Corporation may, by written notice to the Authority and the Trustee, appoint a successor Trustee meeting the requirements of Section 9.10 hereof, and upon the filing of a written acceptance of the appointment by such successor Trustee with the Authority, the Corporation and its

predecessor, such successor Trustee shall become fully vested with all rights, immunities of powers and trusts of the predecessor Trustee.

(f) The Authority shall give notice of each resignation and each removal of the Trustee and each appointment of a successor Trustee by mailing written notice of such event by first-class mail, postage prepaid, to all Bondholders upon the written request of the Trustee and provided the Authority shall be furnished with sufficient funds to pay all costs and expenses (including attorney's fees) reasonably incurred by the Authority in connection therewith as such costs and expenses accrue. Each notice shall include the name and address of the principal corporate trust office of the successor Trustee.

**SECTION 9.11.** <u>Successor Trustee.</u> Every successor Trustee appointed hereunder shall execute, acknowledge and deliver to its predecessor, and also to the Authority and the Corporation, an instrument in writing accepting such appointment hereunder, and thereupon such successor Trustee, without any further act, shall become fully vested with all the rights, immunities, powers and trusts, and subject to all the duties and obligations, of its predecessors; but such predecessor shall, nevertheless, on the written request of its successor or of the Authority and upon payment of the expenses, charges and other disbursements of such predecessor which are payable pursuant to the provisions of Section 10.04 hereof, execute and deliver an instrument transferring to such successor Trustee all the rights, immunities, powers and trusts of such predecessor hereunder; and every predecessor Trustee shall deliver all property and moneys held by it hereunder to its successor, subject, nevertheless, to its preference, if any, provided for in Sections 10.02 and 10.04 hereof. Should any instrument in writing from the Authority be required by any successor Trustee for more fully and certainly vesting in such Trustee the rights, immunities, powers and trusts hereby vested or intended to be vested in the predecessor Trustee any such instrument in writing shall and will be executed, acknowledged and delivered by the Authority upon the written request of the Trustee and provided the Authority shall be furnished with sufficient funds to pay all costs and expenses (including attorneys' fees) reasonably incurred by the Authority in connection therewith as such costs and expenses accrue.

**SECTION 9.12.** <u>Co-Trustee.</u> It is the purpose hereof that there shall be no violation of any law of any jurisdiction (including particularly the laws of the State) denying or restricting the right of banks or trust companies to transact business as trustee in such jurisdiction. It is recognized that in case of litigation hereunder and in particular in case of the enforcement of this Indenture upon the occurrence of an Event of Default, it may be necessary that the Trustee appoint an additional individual or institution as a separate Trustee or Co-Trustee. The following provisions of this Section are adapted to these ends.

Upon the incapacity or lack of authority of the Trustee, by reason of any present or future law of any jurisdiction, to exercise any of the rights, powers and trusts herein granted to the Trustee or to hold title to the trust estate or to take any other action which may be necessary or desirable in connection therewith, each and every remedy, power, right, claim, demand, cause of action, immunity, estate, title, interest and lien expressed or intended to be exercised by or vested in or conveyed to the Trustee with respect thereto shall be exercisable by and vest in a separate Trustee or Co-Trustee appointed by the Trustee but only to the extent necessary to enable the separate Trustee or Co-Trustee to exercise such rights, powers and trusts, and every agreement and obligation necessary to the exercise thereof by such separate Trustee or Co-Trustee shall run to and be enforceable by either of them.

Should any deed, conveyance or instrument in writing from the Authority be required by the separate Trustee or Co-Trustee so appointed by the Trustee in order to more fully and certainly vest in and confirm to him or it such properties, rights, powers, trusts, duties and obligations, any and all such deeds, conveyances and instruments shall, on request, be executed, acknowledged and delivered by the Authority upon the written request of the Trustee and provided the Authority shall be furnished with sufficient funds to pay all costs and expenses (including attorneys' fees) reasonably incurred by the Authority in

connection therewith as such costs and expenses accrue. In case any separate Trustee or Co-Trustee, or a successor to either, shall die, become incapable of acting, resign or be removed, all the estates, properties, rights, powers, trusts, duties and obligations of such separate Trustee or Co-Trustee, so far as permitted by law, shall vest in and be exercised by the Trustee until the appointment of a new Trustee or successor to such separate Trustee or Co-Trustee.

**SECTION 9.13.** Disclosure Documents. The Trustee shall have no responsibility with respect to any information, statement, or recital in any official statement, offering memorandum or other disclosure material prepared or distributed with respect to the Bonds.

**SECTION 9.14.** Survival. (a) The rights of the Trustee to payment under this Indenture shall survive the Trustee's resignation or removal, the discharge of this Indenture and defeasance of the Bonds.

(b) Notwithstanding anything in this Indenture or the Agreement to the contrary, the rights, protections, indemnities and immunities afforded to the Trustee hereunder shall survive the resignation or removal of such party and the payment in full or defeasance of the Bonds.

# ARTICLE X

## SUPPLEMENTAL INDENTURES

**SECTION 10.01.** Supplemental Indentures Not Requiring Consent of Bondholders. The Authority and the Trustee may, without the consent of, or notice to, any of the Bondholders, enter into an indenture or indentures supplemental to this Indenture as shall not be inconsistent with the terms and provisions hereof for any one or more of the following purposes:

(a) To cure any ambiguity or formal defect or omission in this Indenture;

(b) To grant to or confer upon the Trustee for the benefit of the Bondholders any additional rights, remedies, powers or authority that may be lawfully granted to or conferred upon the Bondholders or the Trustee or either of them;

(c) To subject to the lien and pledge of this Indenture additional revenues, Properties or collateral;

(d) To provide for the issuance of Additional Bonds in conformity with the provisions of Article V of this Indenture and to fix all details with respect thereto or to provide further conditions, limitations or restrictions on the issuance of Additional Bonds;

(e) To modify, amend or supplement this Indenture or any indenture supplemental hereto in such manner as to permit the qualification hereof or thereof under any Federal statute hereafter in effect or under any state Blue Sky Law, and, in connection therewith, if they so determine, to add to this Indenture or any indenture supplemental hereto such other terms, conditions and provisions as may be permitted or required by any said Federal statute or Blue Sky Law; provided, that any such indenture supplemental hereto referred to in this Section 11.01(e) shall not, in the judgment of the Trustee, which may rely on an opinion of counsel, be to the prejudice of the owners of the Bonds; or

(f) To provide any other modifications which, in the sole judgment of the Trustee, are not prejudicial to the interests of the Bondholders.

35

**SECTION 10.02.**    Supplemental Indentures Requiring Consent of Bondholders.  Except for indentures supplemental hereto authorized by Section 10.01 of this Indenture and subject to the terms and provisions contained in this Section 10.02, and not otherwise, the owners of not less than a majority in aggregate principal amount of the Bonds then outstanding shall have the right from time to time, anything contained in this Indenture to the contrary notwithstanding, to consent to and approve the execution by the Authority and the Trustee of such other indenture or indentures supplemental hereto as shall be deemed necessary and desirable by the Authority for the purpose of modifying, altering, amending, adding to or rescinding, in any particular, any of the terms or provisions contained in this Indenture or in any indenture supplemental hereto; provided, however, that nothing contained in this Section 10.02 shall permit, or be construed as permitting, without the consent of the owners of all the Bonds then outstanding (a) an extension of the stated maturity or scheduled sinking fund redemption or reduction in the principal amount or premium, if any, of, or reduction in the rate or extension of the time of payment of interest on, any Bonds, or (b) the creation of any lien on the Trust Estate or any part thereof pledged under this Indenture prior to or on a parity with the lien of this Indenture, or (c) a reduction in the aforesaid aggregate outstanding principal amount of Bonds the owners of which are required to consent to any such indenture supplemental hereto.  No such amendment shall modify the rights, duties or immunities of the Trustee without the written consent of the Trustee.

If at any time the Authority shall request the Trustee to enter into any such supplemental indenture for any of the purposes of this Section 10.02, the Trustee shall, upon being satisfactorily indemnified with respect to expenses, cause notice of the proposed execution of such supplemental indenture to be given to the Bondholders in the manner provided in Section 14.08 of this Indenture.  Such notice shall briefly set forth the nature of the proposed supplemental indenture and shall state that copies thereof are on file at the principal corporate trust office of the Trustee for inspection by all Bondholders.  If, within 90 days or such longer period as shall be prescribed by the Authority following the giving of such notice, the owners of not less than a majority in aggregate principal amount of the Bonds outstanding at the time of the execution of any such supplemental indenture shall have consented to and approved the execution thereof as herein provided, no owner of any Bond shall have any right to object to any of the terms and provisions contained therein, or the operation thereof, or in any manner to question the propriety of the execution thereof, or to enjoin or restrain the Trustee or the Authority from executing the same or from taking any action pursuant to the provisions thereof.  Upon the execution of any such supplemental indenture as in this Section 10.02 permitted and provided, this Indenture shall be and be deemed to be modified and amended in accordance therewith.

So long as no Event of Default or other event of nonperformance under the Agreement has occurred and is continuing, no such supplement shall become effective unless the Corporation shall have given its prior written approval.

**SECTION 10.03.**    Filing.  Copies of any supplemental indenture shall be filed with the Trustee and delivered to the Authority and the Corporation.

**SECTION 10.04.**    Reliance on Counsel.  The Trustee shall be entitled to receive, and shall be fully protected in relying upon, an opinion of counsel, who may be counsel for the Authority, as conclusive evidence that any such proposed supplemental indenture complies with the provisions of this Article prior to joining in the execution of such supplemental indenture.

**SECTION 10.05.**    Supplement Binding.  Upon the execution of any supplemental indenture pursuant to the provisions of this Article, this Indenture shall be deemed to be supplemented, modified and amended in accordance therewith, and the respective rights, duties and obligations under this Indenture of the Trustee, the Authority, the Corporation and the owners of Bonds then outstanding shall

thereafter be determined, exercised and enforced hereunder, subject in all respects to such modification and amendment.

**SECTION 10.06.**    Supplemental Agreement.  The Authority and the Corporation, with the approval of the Trustee in certain events, may consent to supplemental agreements for the purposes and in the manner provided in Article VIII of the Agreement and the Trustee agrees that it shall take the actions required of it as provided thereunder.

**SECTION 10.07.**    Notice to Rating Agencies.  No supplemental indenture shall be executed and delivered pursuant to Sections 10.01 or 10.02 hereof without prior written notice having been given by the Trustee and to any national rating agency by which any of the Bonds are then rated of the Trustee's intention to execute such supplemental indenture.

## ARTICLE XI

## COVENANTS OF THE AUTHORITY

**SECTION 11.01.**    Payment of Principal, Premium and Interest.  The Authority covenants that it will promptly pay, or cause to be paid, the principal of, premium, if any, and the interest on every Bond at the places, on the dates and in the manner provided herein and in said Bonds according to the true intent and meaning thereof but solely from the revenues of the Trust Estate and not from any other fund or source.  The Authority further covenants that it will faithfully perform at all times all of its covenants, undertakings and agreements contained in this Indenture, the Agreement or in any Bond executed, authenticated and delivered hereunder or in any proceedings of the Authority pertaining thereto.

**SECTION 11.02.**    Additional Security.  The Authority covenants, whenever and so often as reasonably required to do so by the Trustee, promptly to execute and deliver or cause to be delivered all such other and further instruments, documents or assurances, and to promptly do or cause to be done all such other further things, as may be necessary or reasonably required in order to further and more fully vest in the Trustee and the owners of the Bonds all rights, interest, powers, benefits, privileges and advantages conferred or intended to be conferred upon them by this Indenture.

**SECTION 11.03.**    Cure Title Defects.  The Authority covenants, whenever and so often as reasonably required to do so by the Trustee, promptly to execute and deliver or cause to be delivered all such other and further instruments, documents or assurances, and to promptly do or cause to be done all such other further things, as may be necessary or reasonably required in order to further and more fully vest in the Trustee and the owners of the Bonds all rights, interest, powers, benefits, privileges and advantages conferred or intended to be conferred upon them by this Indenture.

**SECTION 11.04.**    Defend Against Actions.  The Authority (after being indemnified to its satisfaction) covenants, after being indemnified to its satisfaction, to defend or cause to be defended every suit, action or proceeding at any time brought against the Trustee (except for actions against the Trustee arising from the negligence or willful misconduct of the Trustee) or any owner of Bonds upon any claim arising out of the receipt, application or disbursement of any of the revenues of the Trust Estate or involving the Authority's, the Trustee's or such Bondholders' rights under this Indenture or the Agreement and to indemnify and save harmless, solely from the Trust Estate, the Trustee and Bondholders against any and all liability claimed or asserted by any person whomsoever, arising out of such receipt, application or disbursement of any such revenues; provided, however, that the Trustee or any owner of Bonds at its or his election may appear in and defend against any such suit, action or proceeding; and notwithstanding any contrary provision hereof, this covenant shall continue and remain in full force and effect until all indebtedness, liabilities, obligations and other sums secured hereby have been fully paid and satisfied, and this Indenture has been released of record and the lien hereof discharged.

37

**SECTION 11.05.** <u>Non-Impairment of Security.</u> The Authority covenants that so long as any of the Bonds issued pursuant to this Indenture are outstanding and unpaid, the Authority will not voluntarily consent to any amendment to the Agreement or otherwise take any action which will reduce the amount of moneys made available thereunder to the Trustee, or which will in any manner impair or adversely affect the rights of the Authority or the Trustee or the security provided by this Indenture to the owners from time to time of the Bonds.

**SECTION 11.06.** <u>Authority's Obligation Limited.</u> Nothing in the Agreement or this Indenture is intended to require or obligate nor shall anything therein be interpreted to require or obligate the Authority for any purpose or at any time whatsoever, to provide, apply or expend any funds coming into the hands of the Authority other than from the Trust Estate.

**SECTION 11.07.** <u>Continuing Disclosure Agreement.</u> Pursuant to Section 6.06 of the Agreement, the Corporation has undertaken all responsibility for compliance with continuing disclosure requirements, and the Authority and the Trustee shall have no liability to the holders of the Bonds or any other person with respect to such disclosure matters. Notwithstanding any other provision of this Indenture, failure of the Corporation to comply with the Continuing Disclosure Agreement shall not be considered an Event of Default hereunder; however, the Underwriter (as defined in the Continuing Disclosure Agreement) or the holders of at least a majority in aggregate principal amount of Outstanding Bonds, may take such actions as may be necessary and appropriate, including seeking specific performance by court order, to cause the Corporation to comply with its obligations under Section 6.06 of the Agreement.

## ARTICLE XII

## DEFEASANCE

**SECTION 12.01.** <u>Payment.</u> When all of the Bonds shall have been paid and discharged, and there shall have been paid all fees and charges of the Trustee and the Authority due or to become due through the date on which the last of the Bonds is retired, then this Indenture shall cease, terminate and become null and void, and thereupon the Trustee shall release this Indenture including the cancellation and discharge of the lien hereof, and execute and deliver to the Authority such instruments in writing as shall be requisite to satisfy the lien hereof and if necessary, to enter on the records such satisfaction and discharge and to re-convey to the Authority any property or interest therein or other rights hereby conveyed and such other instruments to evidence such release and discharge as may be reasonably required by the Authority, and the Trustee shall assign and deliver to the Authority any property at the time subject to the lien of this Indenture which may then be in its possession, except amounts in any Fund otherwise required to be paid by this Indenture and except such cash and investments as are held by the Trustee for the payment of interest and premium, if any, on and retirement of the Bonds.

Notwithstanding the foregoing, the obligation of the Corporation to pay the fees and expenses of the Trustee in accordance with the terms of this Indenture and to maintain the exclusion from gross income of interest on the Bonds for federal income tax purposes shall survive the defeasance of the Bonds, the discharge of this Indenture and the termination of the Agreement.

**SECTION 12.02.** <u>Provision for Payment.</u> Any Bonds shall be deemed to have been paid and discharged within the meaning of Section 12.01, if the Trustee or escrow trustee, shall hold, in trust for and irrevocably committed thereto, cash or Defeasance Obligations (which are not subject to redemption at the option of the obligor prior to their maturity) of such maturities and interest payment dates and bearing such interest as will, without further investment or reinvestment of either the principal amount thereof or the interest earnings therefrom (likewise to be held in trust and committed, except as

hereinafter provided), be sufficient for the payment of such Bonds, at their maturity or redemption date, of the principal thereof, together with the redemption premium, if any, and interest accrued to the date of maturity or redemption, as the case may be, or if default in such payment shall have occurred on such date then to the date of the tender of such payment; provided, that if any Bonds are to be redeemed prior to the maturity thereof, notice of such redemption shall have been duly given or provisions satisfactory to the Trustee shall have been duly made for the giving of such notice. Any moneys held in accordance with the provisions of this Section shall be invested only in Defeasance Obligations the maturities or redemption dates and interest payment dates of which, at the option of the owner, shall coincide as nearly as practicable with, but not later than, the time or times at which said moneys will be required for the aforesaid purposes. Any income or interest earned by the Defeasance Obligations held under this Section shall, as determined by the Trustee or the escrow trustee, to the extent not required for the purposes of this Section, be paid to the Corporation as overpayment of Payments.

**SECTION 12.03.** <u>Certifications.</u> The Authority and the Corporation covenant and agree that they will furnish to the Trustee:

(a) Certificates or opinions made by officers of the Authority and the Corporation required by this Indenture stating that provisions of this Article relating to the satisfaction and discharge of this Indenture have been fulfilled; and

(b) An opinion of counsel (who may be counsel for the Authority) stating that in his opinion the provisions of this Article relating to the satisfaction and discharge of this Indenture have been fulfilled.

(c) The Trustee shall receive a mathematical verification of an independent certified public accountant or other recognized financial calculation verifier that the Defeasance Obligations are sufficient to pay the principal of, premium, if any, and interest on the Bonds which are defeased.

## ARTICLE XIII

## MISCELLANEOUS

**SECTION 13.01.** <u>Covenants of Authority Binds its Successors.</u> In the event of the dissolution of the Authority, all of the covenants, stipulations, obligations and agreements contained in this Indenture by or on behalf of or for the benefit of the Authority shall bind or inure to the benefit of the successor or successors of the Authority from time to time and any officer, board, commission, authority, agency or instrumentality to whom or to which any power or duty affecting such covenants, stipulations, obligations and agreements shall be transferred by or in accordance with law, and the word "Authority" as used in this Indenture shall include such successor or successors.

**SECTION 13.02.** <u>Preservation and Inspection of Documents.</u> All documents received by the Trustee under the provisions of this Indenture shall be retained in its possession and shall be subject at all reasonable times to the inspection of the Authority, the Corporation and any Bondholder and their agents and their representatives, any of whom may make copies thereof.

**SECTION 13.03.** <u>Parties Interested Herein.</u> With the exception of rights herein expressly conferred on the Corporation, nothing in this Indenture expressed or implied, is intended or shall be construed to confer upon, or give to, any person or corporation, other than the Authority, the Trustee, the Corporation and the Bondholders, any right, remedy or claim or by reason of this Indenture or any covenant, agreement, condition or stipulation therein.

**SECTION 13.04.**     No Recourse on the Bonds.  No recourse shall be had for the payment of the principal of, premium, if any, or interest on the Bonds or for any claim based thereunder or under this Indenture against any trustee, director, officer, employee or agent of the Authority or of the Trustee.

**SECTION 13.05.**     Severability.  If any one or more of the covenants or agreements provided in this Indenture on the part of the Authority or the Trustee to be performed should be contrary to law, then such covenant or covenants or agreement or agreements shall be deemed severable from the remaining covenants and agreements, and shall in no way affect the validity of the other provisions of this Indenture.

**SECTION 13.06.**     Consents and Approvals.  Whenever the written consent or approval of the Authority, the Trustee or the Corporation shall be required under the provisions of this Indenture, such consent or approval shall not be unreasonably withheld or delayed.

**SECTION 13.07.**     Notices to Parties.  All notices, demands and requests to be given or made hereunder to or by the Authority, the Trustee, or the Corporation, or their designated successors, shall be in writing and shall be properly made if hand delivered or sent by United States mail, postage prepaid, and addressed as follows:

If to the Authority:                Louisiana Public Facilities Authority
                                    2237 South Acadian Thruway, Suite 650
                                    Baton Rouge, LA  70808
                                    Attention: President and Chief Executive Officer

If to the Corporation:              The Roman Catholic Church of the
                                    Archdiocese of New Orleans
                                    7887 Walmsley Avenue
                                    New Orleans, LA  70125
                                    Attention: Chief Financial Officer

If to the Trustee:                  Whitney Bank
                                    445 North Blvd, Suite 201
                                    Baton Rouge, LA 70802
                                    Attention: Senior Vice President and Trust Officer

Notice hereunder shall be deemed effective on the date of its receipt by the addressee.  The above addresses may be changed at any time upon written notice of such change sent by United States mail, postage prepaid, to the other parties by the party effecting the change.

**SECTION 13.08.**     Notices to Bondholders.  Except as otherwise provided herein, any notices or other communications required or permitted to be given to the Bondholders pursuant to this Indenture shall be mailed by first class mail in a sealed envelope, postage prepaid, addressed to each such Bondholder as his address last appears on the Bond Register.  In case, by reason of the suspension of or irregularities in regular mail service, it shall be impractical to mail notice to the Bondholders of any event when such notice is required to be given pursuant to any provision of this Indenture, then any manner of giving such notice as shall be satisfactory to the Trustee shall be deemed to be sufficient giving of such notice.  Any notice herein required may be omitted if the owners of all the Bonds entitled to such notice give to the Trustee a written waiver of such notice.

**SECTION 13.09.**     Amounts Remaining in Funds; Releases.  It is agreed by the parties hereto that any amounts remaining in the Funds and Accounts existing pursuant to this Indenture upon the

expiration or sooner cancellation or termination of the Agreement, as provided therein, after payment in full of all Bonds then outstanding under this Indenture (or provisions for payment thereof having been made in accordance with Article XII of this Indenture), and the fees, charges and expenses of the Authority and the Trustee and all other amounts required to be paid under the Agreement and under this Indenture, shall belong to and be paid to the Corporation.

SECTION 13.10. Applicable Law. This Indenture shall be governed exclusively by the applicable laws of the State, without giving effect to its conflict of laws provisions.

SECTION 13.11. Captions. The table of contents, captions and headings of the several articles and sections of this Indenture are for convenience only and shall not control, affect the meaning of or be taken as an interpretation of any provisions of this Indenture.

SECTION 13.12. Indenture to Constitute a Contract. This Indenture, upon execution by the Authority and the Trustee shall constitute a third party beneficiary contract between the Authority and the Trustee for the benefit of the owners of all Bonds issued hereunder.

SECTION 13.13. Payments Due on Legal Holidays. In any case where the date of maturity of interest on or principal of the Bonds or the date fixed for redemption or purchase of any Bonds or the date fixed for the giving of notice or the taking of any action under this Indenture shall not be a Business Day, then payment of such interest, principal, purchase price and redemption premium, if any, the giving of such notice or the taking of such action need not be made on such date but may be made on the next succeeding Business Day with the same force and effect as if made on the date of maturity or the date fixed for redemption or purchase, and no interest on such payment shall accrue for the period after such date.

SECTION 13.14. Date of Indenture. The dating of this Indenture as of April 1, 2017 is intended as and for the convenient identification of this Indenture and is not intended to indicate that this Indenture was executed and delivered on said date, this Indenture being executed on the dates of the respective acknowledgments hereto attached.

IN WITNESS WHEREOF, the Authority has caused this Indenture to be executed by its Chairman or Vice Chairman and has caused the seal of the Authority to be affixed hereto and attested by its Secretary-Treasurer or an Assistant Secretary and the Trustee has caused this Indenture to be executed in its behalf by a Senior Vice President and Trust Officer of the Trustee, all as of the day and year above written.

LOUISIANA PUBLIC FACILITIES AUTHORITY

By: _____
Chairman

ATTEST:

By: _____
Assistant Secretary

[SEAL]

WHITNEY BANK, as Trustee

By: _____
Senior Vice President & Trust Officer

**EXHIBIT A**
**TO TRUST INDENTURE**

**No. R-___**                                                    $_____

Unless this Bond is presented by an authorized representative of The Depository Trust Company, a New York corporation ("DTC"), to the Trustee, for registration of transfer, exchange or payment, and any Bond issued is registered in the name of Cede & Co. or in such other name as is requested by an authorized representative of DTC (and any payment is made to Cede & Co. or to such other entity as is requested by an authorized representative of DTC), ANY TRANSFER, PLEDGE OR OTHER USE HEREOF FOR VALUE OR OTHERWISE BY OR TO ANY PERSON IS WRONGFUL inasmuch as the registered owner hereof, Cede & Co., has an interest herein.

As provided in the Indenture referred to herein, until the termination of the system of book-entry-only transfers through DTC and notwithstanding any other provision of the Indenture to the contrary, this Bond may be transferred, in whole but not in part, only to a nominee of DTC, or by a nominee of DTC to DTC or a nominee of DTC, or by DTC or a nominee of DTC to any successor securities depository or any nominee thereof.

UNITED STATES OF AMERICA
STATE OF LOUISIANA

LOUISIANA PUBLIC FACILITIES AUTHORITY
REFUNDING REVENUE BONDS
(ARCHDIOCESE OF NEW ORLEANS PROJECT)
SERIES 2017

Maturity Date: _____, 20__                    CUSIP NO. _____

Registered Owner: Cede & Co. (Tax Identification No. 13-2555119)

Bond Date: April 4, 2017

Principal Amount: $_____

Interest Rate: _____%

The LOUISIANA PUBLIC FACILITIES AUTHORITY (the "Authority"), a public trust and public corporation of the State of Louisiana (the "State"), for value received, hereby promises to pay from the source and as hereinafter provided, to the Registered Owner (named above), or registered assigns, on the Maturity Date (stated above), the Principal Amount (stated above) subject to right of prior redemption as provided hereinafter, and to pay interest on said sum on January 1 and July 1 of each year, commencing July 1, 2017 (each an "interest payment date"), from the Bond Date (stated above) at the rate of interest per annum shown above until said principal sum is paid. The principal of, premium, if any, and interest on this Bond are payable in such coin or currency of the United States of America as, at the respective times of payment, is legal tender for the payment of public and private debts. The principal of and premium, if any, on this Bond shall be payable to the registered owner hereof or his assigns upon surrender hereof at

A-1

the corporate trust office of Whitney Bank, as trustee (the "Trustee") designated by it from time to time. The interest on this Bond, when due and payable, shall be paid by check or draft mailed by the Trustee on the interest payment date to the person in whose name this Bond is registered at his address as it appears on the Bond Register maintained by the Trustee at the close of business on the June 15 or December 15, as the case may be, next preceding an interest payment date, or if such day shall not be a business day, the next preceding business day (the "Record Date"), irrespective of any transfer or exchange of this Bond subsequent to such Record Date and prior to such interest payment date, unless the Authority shall default in payment of interest due on such interest payment date. Interest on this bond shall be computed on the basis of a 360-day year having twelve 30-day months. In the event of any such default, such defaulted interest shall be payable on a payment date established by the Trustee to the person in whose name this Bond is registered at the close of business on a special record date for the payment of such defaulted interest established by notice mailed by the Trustee to the registered owner of this Bond not less than 15 days preceding such special record date.

This Bond is one of the duly authorized issue of the Authority's Refunding Revenue Bonds (Archdiocese of New Orleans Project) Series 2017, issued under and secured by a Trust Indenture dated as of April 1, 2017, between the Authority and the Trustee (together with all amendments and supplements thereto, the "Indenture"), pursuant to which the Authority is issuing $41,895,000 principal amount of said bonds (the "Bonds") for the purpose of providing funds to refund all of the Authority's outstanding Revenue and Revenue Refunding Bonds (Archdiocese of New Orleans Project) Series 2007 and pay costs of issuance of the Bonds.

The proceeds of the Bonds are being loaned to The Roman Catholic Church of the Archdiocese of New Orleans (the "Corporation"), pursuant to a Loan Agreement dated as of April 1, 2017 between the Authority and the Corporation (together with all amendments and supplements thereto called the "Loan Agreement") for the foregoing purposes.

The Bonds are issued pursuant to the laws of the State, particularly Chapter 14-A of Title 39 of the Louisiana Revised Statutes of 1950, as amended (the "Refunding Act"), and pursuant to the Indenture, to which Indenture, a fully executed counterpart of which is on file in the corporate trust office of the Trustee in Baton Rouge, Louisiana, reference is hereby made for a more complete description of the assigned revenues constituting the Trust Estate, the nature and extent of the security, the terms and conditions under which the Bonds are issued and secured, the rights, duties and immunities of the Authority, the rights, duties and immunities of the Trustee and the rights of the registered owners of the Bonds. The registered owner of this Bond shall have no rights to institute any suit, action or proceeding for the enforcement of the Indenture or for the execution of any trust thereunder or for any remedy under the Indenture, except as provided in the Indenture, and by acceptance of this Bond, the owner hereof assents to all of the provisions of the Indenture. All terms not defined herein shall have the meanings assigned thereto in the Indenture.

This Bond shall not be valid or become obligatory for any purpose or be entitled to any security or benefit under the Indenture until the certificate of authentication hereon shall have been signed by a duly authorized representative of the Trustee.

The Bonds are limited and special revenue obligations of the Authority and are payable solely from (i) payments received by the Authority from the Corporation pursuant to the Loan Agreement and (ii) all funds held by the Trustee under the Indenture and available for such payment, said payments and funds being herein referred to as the "Trust Estate". The Loan Agreement, a fully executed counterpart of which is on file in the corporate trust office of the Trustee in Baton Rouge, Louisiana, provides that the Corporation is unconditionally obligated to

A-2

make payments in an aggregate amount sufficient, with any other funds available therefor, for the payment in full of the principal, premium, if any, and interest of all Bonds issued and outstanding under the Indenture, to the date of payment thereof, and certain costs, expenses and charges of the Authority and the Trustee. The Loan Agreement imposes upon the Corporation certain obligations respecting the use and operation of its Properties (as defined in the Loan Agreement) and the maintenance and repair of said Properties.

THE BONDS ARE LIMITED AND SPECIAL OBLIGATIONS OF THE AUTHORITY AND DO NOT CONSTITUTE OR CREATE AN OBLIGATION, GENERAL OR SPECIAL, DEBT, LIABILITY OR MORAL OBLIGATION OF THE STATE OR ANY POLITICAL SUBDIVISION THEREOF WITHIN THE MEANING OF ANY CONSTITUTIONAL OR STATUTORY PROVISIONS WHATSOEVER AND NEITHER THE FAITH OR CREDIT NOR THE TAXING POWER OF THE STATE OR OF ANY POLITICAL SUBDIVISION THEREOF IS PLEDGED TO THE PAYMENT OF THE PRINCIPAL OF, PREMIUM, IF ANY, OR THE INTEREST ON THE BONDS. THE BONDS ARE NOT A GENERAL OBLIGATION OF THE AUTHORITY (WHICH HAS NO TAXING POWER AND RECEIVES NO FUNDS FROM ANY GOVERNMENTAL BODY) BUT ARE A LIMITED AND SPECIAL REVENUE OBLIGATION OF THE AUTHORITY PAYABLE SOLELY FROM THE INCOME, REVENUES AND RECEIPTS DERIVED OR TO BE DERIVED FROM PAYMENTS MADE PURSUANT TO THE LOAN AGREEMENT.

EXCHANGE AND TRANSFER OF BONDS

The Bonds are issuable in Authorized Denominations. As long as any of the Bonds remain outstanding, there shall be permitted the exchange of Bonds at the designated corporate trust office of the Trustee. Any Bond or Bonds upon surrender thereof at the designated corporate trust office of the Trustee, with a written instrument of transfer satisfactory to the Trustee, duly executed by the registered owner or his legal representative duly authorized in writing, may, at the option of the registered owner thereof, be exchanged for an equal aggregate principal amount of other Bonds of the same series in Authorized Denominations.

This Bond may be transferred by the registered owner hereof in person or by his legal representative at the designated corporate trust office of the Trustee, and the registration of such transfer shall be made upon the Bond Register by the Trustee in the manner and subject to the limitations and conditions provided in the Indenture and upon surrender and cancellation of this Bond. The Trustee shall not be required to register the transfer or exchange of (a) any Bonds during the 15 day period next preceding the selection of Bonds to be redeemed and thereafter until the date of the mailing of a notice of redemption of Bonds selected for redemption, or (b) any Bonds selected, called or being called for redemption in whole or in part, except in the case of any Bond to be redeemed in part, the portion thereof not so to be redeemed.

This Bond is transferable only at the designated corporate trust office of the Trustee.

REDEMPTION PROVISIONS

*Optional Redemption*

The Bonds maturing on or after July 1, 2028, are subject to redemption prior to their respective stated maturities at the option of the Authority (which option shall be exercised upon request of the Corporation), from any source of available funds, in whole or in part on any date on or after July 1, 2027 (in such maturities as are designated by the Corporation or, if the

A-3

Corporation fails to designate such maturities, in inverse order of maturity, and by lot within a maturity), at a redemption price of par plus accrued interest to the redemption date.

*Mandatory Sinking Fund Redemption*

The Bonds maturing on July 1, 2037 and bearing interest at 5.00% are subject to mandatory sinking fund redemption prior to maturity, in part, by lot in such manner as may be designated by the Trustee, at a redemption price of par plus accrued interest to the redemption date, on July 1 of each of the following years and in the following amounts:

| Year | Principal Amount |
|------|------------------|
| 2034 | $2,670,000 |
| 2035 | 2,805,000 |
| 2036 | 2,945,000 |
| 2037* | 3,090,000 |

*Final Maturity

The required redemptions mentioned in this subsection (c) may be satisfied by purchases of the respective maturity of the Bonds as provided in Section 4.06 of the Trust Indenture.

*Extraordinary Redemption*

The Bonds are subject to extraordinary redemption in whole or in part on any date at the principal amount thereof plus accrued interest to the redemption date and without premium, if the Corporation shall have elected to make prepayment of all Payments payable under the Agreement as provided therein (and the Corporation shall have delivered to the Trustee a copy, duly certified by an Authorized Corporation Representative, of a resolution of the Corporation making such determination and requesting such redemption) because the Corporation is required or ordered by legislative, judicial or administrative action of the United States of America or the State or any agency, department or subdivision thereof to operate the facilities financed or refinanced by the Refunded Bonds in a manner inconsistent with the stated goals, purposes and policies of the Corporation, and such action is applicable to the Corporation because the Corporation is a party to the Agreement.

The Bonds are also subject to extraordinary redemption in whole or in part on any date at the principal amount thereof plus accrued interest to the redemption date and without premium, if as a result of any changes in the State Constitution or the Constitution of the United States of America or legislative, judicial or administrative action of the United States of America or the State or any agency, department or subdivision thereof, (i) the Indenture or the Agreement shall have become void or unenforceable or impossible of performance in accordance with the intention of the parties as expressed therein, or (ii) the interest on the Bonds shall no longer be excluded from the gross income of the owners thereof for federal income tax purposes

The Bonds are also subject to extraordinary redemption in whole or in part on any date at the principal amount thereof plus accrued interest to the redemption date and without premium, in the event of damage, destruction or condemnation with respect to the Corporation (i) finding that

A-4

the reasonable fair market value of the Refunded Projects damaged, destroyed or condemned is equal to or greater than 5% of the fair market value of all of the Properties of the Corporation and (ii) determining to apply all or a portion of any casualty loss or condemnation awards related to the Refunded Projects to the redemption of the Bonds.

*Notice and Method of Redemption*

At least 30 days before the redemption date of any Bonds, the Trustee shall cause a notice of any such redemption, signed by an authorized officer of the Trustee to be mailed, postage prepaid, to all Bondholders of record owning Bonds to be redeemed in whole or in part, at their addresses as they appear on the Bond Register, but any failure to mail any such notice to one or more owners shall not affect the validity of the proceedings for such redemption with respect to the owners to whom notice was duly mailed. Neither the failure to receive any notice nor any defect in such notice so given shall affect the validity of the proceedings for such redemption. Each such notice shall set forth the date fixed for redemption, the redemption price to be paid and, if less than all of the Bonds then outstanding shall be called for redemption, the numbers of such Bonds to be redeemed and, in the case of Bonds to be redeemed in part only, the portion of the principal amount thereof to be redeemed. In case any Bond is to be redeemed in part only, the notice of redemption shall state also that on or after the redemption date, upon surrender of such Bond, a new Bond in principal amount equal to the unredeemed portion of such Bond will be issued.

On the date so designated for redemption, notice having been given in the manner and under the conditions provided in the Indenture and money for payment of the redemption price being held in the Debt Service Fund in trust for the owners of the Bonds or portions thereof to be redeemed, the Bonds or portions of Bonds so called for redemption shall become and be due and payable at the redemption price provided for redemption of such Bonds or portions of Bonds on such date, interest on the Bonds or portions of Bonds so called for redemption shall cease to accrue, such Bonds or portions of Bonds shall cease to be entitled to any benefit or security under the Indenture, and the owners of such Bonds or portions of Bonds shall not have rights in respect thereof except to receive payment of the redemption price thereof and, to the extent provided in the next paragraph, to receive Bonds for any unredeemed portions of Bonds.

With respect to any notice of optional redemption of Bonds, unless upon the giving of such notice such Bonds or portions thereof shall be deemed to have been paid within the meaning of the Indenture, such notice shall state that such redemption shall be conditioned upon the receipt by the Trustee on or prior to the date fixed for such redemption of moneys or Defeasance Obligations, or a combination thereof, sufficient to pay the principal of, premium, if any, and interest on such Bonds or portions thereof to be redeemed, and that if such moneys or Defeasance Obligations, or a combination thereof, shall not have been so received said notice shall be of no force and effect and the Trustee shall not be required to redeem such Bonds or portions thereof. In the event that such notice of redemption contains such a condition and such moneys or Defeasance Obligations, or a combination thereof, are not so received, the redemption shall not be made and the Trustee shall within five (5) days after the scheduled redemption date give notice, in the manner in which the notice of redemption was given, that such moneys or Defeasance Obligations, or a combination thereof, were not so received.

In case part, but not all, of an outstanding Bond shall be selected for redemption, the registered owner thereof or his legal representative shall present and surrender such Bond to the Trustee for payment of the principal amount thereof so called for redemption, and the Trustee

shall authenticate and deliver to or upon the order of such registered owner or his legal representative, without charge therefor, for the unredeemed portion of the principal amount of the Bond so surrendered, a new Bond.

In certain events, on the conditions, in the manner and with the effect set forth in the Indenture, the principal of all the Bonds then outstanding may be declared and may become due and payable before the stated maturity thereof, together with accrued interest thereon.

Modifications or alterations of the Indenture or any agreement supplemental thereto or of the Loan Agreement or any agreement supplemental thereto may be made only to the extent and in the circumstances permitted by the Indenture and the Loan Agreement. The Indenture permits, with certain exceptions as therein provided, the amendment thereof and the modification of the rights and obligations of the Authority and the owners of the Bonds at any time with the consent of the owners of a majority in aggregate principal amount of all Bonds at the time outstanding. The Indenture also contains provisions permitting the owners of a majority in aggregate principal amount of all Bonds at the time outstanding, on behalf of the owners of all Bonds, to waive compliance by the Authority with certain provisions of the Indenture and certain past defaults under the Indenture and their consequences. Any such consent or waiver by the owner of this Bond shall be conclusive and binding upon such owner and all future owners of this Bond and of any Bond issued in lieu hereof whether or not notation of such consent or waiver is made upon this Bond.

This Bond is not an obligation, general or special, debt, liability or moral obligation of the State or of any political subdivision thereof, or any individual trustee of the Authority in his or her individual capacity, but it is a limited and special revenue obligation of the Authority payable solely from the Trust Estate. This Bond is issued with the intent that the laws of the State shall govern its construction.

No recourse under, or upon any statement, obligation, covenant, or agreement contained in the Indenture or in any Bond thereby secured or in the Loan Agreement or in any document or certification whatsoever or under any judgment obtained against the Authority or by the enforcement of any assessment or by any legal or equitable proceeding by virtue of any constitution or statute or otherwise or under any circumstance shall be had against any trustee, employee or officer, as such, of the Authority, either directly or through the Authority, or otherwise, for the payment for, or to, the Authority or any receiver thereof, or for, or to, the owner of any Bond issued under the Indenture or otherwise, of any sum that may be due and unpaid by the Authority upon any such Bond. Any and all personal liability of every nature, whether at law or in equity, or by statute or by constitution or otherwise, of any such trustee, employee or officer, as such, to respond by reason of any act or omission on his or her part or otherwise for the payment for, or to, the Authority or any receiver thereof, or for, or to the owner of any Bond issued under the Indenture or otherwise, of any sum that may remain due and unpaid upon the Bonds thereby secured or any of them, is hereby expressly waived and released as an express condition of, and in consideration for, the execution of the Indenture and the issuance of the Bonds.

It is hereby certified, recited and declared that all acts, conditions and things required to exist, happen and be performed precedent to and in the execution and delivery of the Indenture and the issuance of this Bond do exist, have happened and have been performed in due time, form and manner as required by law.

A-6

     IN WITNESS WHEREOF, the Louisiana Public Facilities Authority has caused this Bond to be executed in its name by the manual or facsimile signature of its Chairman and its official seal to be impressed or printed hereon and attested by the manual or facsimile signature of its Assistant Secretary.

LOUISIANA PUBLIC FACILITIES
AUTHORITY


By: _____
                      Chairman

ATTEST:


By: _____
       Assistant Secretary                                       [SEAL]


### CERTIFICATE OF AUTHENTICATION

     This Bond is one of the Bonds designated therein and described in the within-mentioned Indenture.

WHITNEY BANK, as Trustee


By: _____
                     Authorized Signatory

Authentication Date: _____, 2017

## ASSIGNMENT

For value received the undersigned hereby sells, assigns and transfers unto
_____ the within-mentioned Bond and all rights thereunder,
and hereby irrevocably constitutes and appoints _____ to
transfer the within Bond on the books kept for registration thereof, with full power of substitution
in the premises.

Dated: _____          _____

                                 NOTICE:  The signature to this assignment must
                                 correspond with the name as it appears upon the face of
                                 the within Bond in every particular, without alteration or
                                 enlargement or any change whatever.

Please Insert Social Security
or other Identifying Number of
Assignee

_____

## LEGAL OPINION CERTIFICATE

I, the undersigned Assistant Secretary of the Louisiana Public Facilities Authority, do
hereby certify that attached hereto is a true copy of the complete legal opinion of Foley & Judell,
L.L.P., the original of which was manually executed, dated and issued as of the date of payment
for and delivery of this Bond and was delivered to Raymond James & Associates, Inc.,
representing the original purchaser of the Bonds.

[INSERT LEGAL OPINION HERE]

I further certify that an executed copy of the legal opinion is on file in my office and that
an executed copy thereof has been furnished to the Trustee for this Bond.

_____
Assistant Secretary

A-8