UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| In re:<br><br>THE ROMAN CATHOLIC CHURCH OF THE ARCHDIOCESE OF NEW ORLEANS,<br><br>Debtor | CASE NO. 20-10846<br><br>SECTION "A"<br><br>CHAPTER 11 |

**UNITED STATES TRUSTEE'S OBJECTION
TO MOTION FOR ENTRY OF ORDERS PURSUANT TO SECTIONS 363 AND 105(A)
OF THE BANKRUPTCY CODE AND BANKRUPTCY RULE 9019 APPROVING
INSURANCE SETTLEMENT AGREEMENTS AND POLICY BUYBACKS WITH
<u>CERTAIN INSURERS AND GRANTING RELATED RELIEF</u>**

NOW INTO COURT comes David W. Asbach, Acting United States Trustee for Region 5 (the "United States Trustee"), by and through undersigned counsel, and respectfully submits this objection (the "Objection") to the Motion for Entry of Orders Pursuant to Sections 363 and 105(A) of the Bankruptcy Code and Bankruptcy Rule 9019 Approving Insurance Settlement Agreements and Policy Buybacks with Certain Insurers and Granting Related Relief [ECF Doc. No. 4181] (the "Sale Motion").[1] In support of the Objection,[2] the United States Trustee respectfully states, as follows:

<u>PRELIMINARY STATEMENT</u>

The United States Trustee adopts the arguments set forth in his Objection to the *Fifth Amended Joint Chapter 11 Plan of Reorganization for the Roman Catholic Church of the Archdiocese of New Orleans and Additional Debtors, Proposed by the Debtor, the Additional Debtors, and the Official Committee of Unsecured Creditors, Dated as of October 27, 2025* [ECF Doc. No. 4518] (the "Plan") as it pertains to the impermissible injunctions and releases

---

[1] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Sale Motion.
[2] The United States Trustee reserves the right to object to any supplemental filings, as well as the right to object to confirmation of the plan, including objecting to the plan as unconfirmable on arguments not discussed herein.

contemplated by this Sale Motion and ratified by the Plan. Specifically, this Sale Motion should be denied because (i) it seeks to sell property that is not property of the estate and (ii) it impermissibly seeks to impose releases of claims held by third parties against non-debtors, without the consent of the affected claimants.

## BACKGROUND

1. On May 1, 2020 (the "Petition Date"), the Debtor filed a voluntary petition for relief under Chapter 11 of Title 11, United States Code. [ECF Doc. No. 1].

2. Debtor's Chapter 11 case was filed because of "financial and operational difficulties" ranging from "claims and lawsuits alleging sexual abuse by clergy" to "losses of revenue from offerings and collections at Masses which are no longer publicly celebrated due to the COVID-19 pandemic." [*Decl. of Fr. Carr*, ECF Doc. No. 14, ¶ 9].

3. On the Petition Date, the Debtor filed a *Notice of Designation of a Complex Case*. [ECF Doc. No. 2]. That same day, the Court entered an *Order Granting Chapter 11 Bankruptcy Case Treatment*, thereby ordering that the Procedures for Complex Chapter 11 Cases in the Eastern District of Louisiana[3] (the "Complex Procedures") apply in the above-captioned case. [ECF Doc. No. 18].

4. On May 20, 2020, the U.S. Trustee appointed an Official Committee of Unsecured Creditors (the "Committee") pursuant to 11 U.S.C. § 1102(a). [ECF Doc. No. 94]. The U.S. Trustee reconstituted the Committee on June 10, 2020 [ECF Doc. No. 151], October 8, 2020 [ECF Doc. No. 478], June 7, 2022 [ECF Doc. No. 1575], and June 21, 2022 [ECF Doc. No. 1618]. The Committee members consist of abuse survivors.

---

[3] The Complex Procedures are found in General Order 2019-4, posted on this Court's website at https://www.laeb.uscourts.gov.

5. On March 5, 2021, the United States Trustee appointed an Official Committee of Unsecured Commercial Creditors (the "Commercial Committee"). [ECF Doc. No. 772].

6. No Chapter 11 trustee has been appointed in the bankruptcy case, and the Debtor remains in possession and control of its property as a debtor-in-possession pursuant to 11 U.S.C. §§ 1107 and 1108.

**The Disclosure Statement, Plan, and Sale Motion**

7. On July 29, 2025, the Debtor filed a *Motion for Entry of Orders pursuant to Sections 363 and 105(a) of the Bankruptcy Code and Bankruptcy Rule 9019 Approving Insurance Settlement Agreement and Policy Buybacks with Certain Insurers and Granting Related Relief* [ECF Doc. No. 4181] (the "Sale Motion"). Through the Sale Motion, the Debtor, Additional Debtors, and other Non-Debtor Catholic Entities seek to sell back to the Settling Insurers all right, title, and interest in the Settling Insurers' Policies, in exchange for payment to the Settlement Trust and broad injunctive relief.

8. On August 8, 2025, the Debtor filed a Second Amended Modified Disclosure Statement for the Second Amended Joint Chapter 11 Plan of Reorganization for the Roman Catholic Church of the Archdiocese of New Orleans and Additional Debtors, Proposed by the Debtor, the Additional Debtors, and the Official Committee of Unsecured Creditors, Dated as of August 6, 2025 [ECF Doc. No. 4242] (the "Second Amended Disclosure Statement").

9. The Court entered an Order approving the Second Amended Disclosure Statement on August 12, 2025. [ECF Doc. No. 4253].

10. On October 27, 2025, the Debtor filed the *Fifth Amended Joint Chapter 11 Plan of Reorganization for the Roman Catholic Church of the Archdiocese of New Orleans and Additional*

*Debtors, Proposed by the Debtor, the Additional Debtors, and the Official Committee of Unsecured Creditors, Dated as of October 27, 2025.* [ECF Doc. No. 4518].

11. Under the Plan, five classes of claims are impaired and allowed to vote:

   i. Class 3 – Known Abuse Claims against the Debtor and Additional Debtors
   ii. Class 4 – Unknown Abuse Claims against the Debtor and Additional Debtors
   iii. Class 6 – Bond Claims
   iv. Class 7 – General Unsecured Claims and Unsecured Trade Claims against the Debtor
   v. Class 8 – Non-Abuse Personal Injury Claims against the Debtor

*See* Plan, Section 3.5, p. 7.

12. Under the Plan, Abuse Claims will be "channeled," and holders of Abuse Claims will only be able to look to the Settlement Trust for payment, without any right to pursue direct claims against third parties. *See* Plan, Section 4.3-4.4, pp. 8-10.

13. The Settlement Trust will eventually be funded with approximately $230 million over a period of less than one year. See Plan, Article 5, p. 15.

**Key Provisions of the Sale Motion**

14. The following are provisions and definitions relating to the six separate Settlement agreements by and among the Debtor, the Additional Debtors, the Non-Debtor Catholic Entities, and the following Settling Insurers: (a) SPARTA Insurance Company and American Employers' Insurance Company ("SPARTA");2 (b) United States Fire Insurance Company ("U.S. Fire"), International Insurance Company ("International"), Westchester Fire Insurance Company and Westchester Surplus Lines Insurance Company individually and, to the extent that policies issued by U.S. Fire and/or International were novated to or assumed by either or both of them ("U.S. Fire/International"); (c) Catholic Mutual Relief Society of America ("Catholic Mutual"); (d) Puritan Insurance Company, The Manhattan Fire and Marine Insurance Company, and Westport Insurance Corporation ("Puritan"); (e) National Union Fire Insurance Company of Pittsburgh, Pa.

("National Union"); and (f) Twin City Fire Insurance Company and First State Insurance Company ("Twin City").

15. The term "Purchased Property" means "any and all right, title, and interest (including all Subject Interests) in and to the Archdiocese Policies and the Related Insurance Claims and Coverage Claims." Sale Motion, Exhibit A, p 41.

16. The term "Archdiocese Policies" means "(a) the contracts, binders, certificates, and policies of insurance that are listed on Schedule 1 hereto, and (b) all other known and unknown contracts, binders, certificates, or policies of general liability insurance, in effect on or before the applicable Archdiocese's Petition Date or Additional Debtors' Petition Date that were issued to, or for the benefit of, or subscribed on behalf or that otherwise actually insure, (i) the Archdiocese or any of its predecessors in interest, successors, or assigns, (ii) any of the Additional Debtors or Non-Debtor Catholic Entities, (iii) policies issued to the Archdiocese that name as an insured or additional insured (or related concept under applicable law or document) the Diocese of Houma-Thibodaux or Diocese of Baton Rouge, but not policies issued to either of these dioceses that were not also issued to the Archdiocese or name it as insured, (iv) any Entity owned, created, operated, affiliated with, or controlled by the Archdiocese or the Office of the archbishop for the Archdiocese of New Orleans, or (v) any institution, religious organization or subsidiaries of any organization listed in the declarations of the Archdiocese Policies, or any other organization coming under any named insured's control or active management; in each case of (a) and (b), that were issued, subscribed to, or underwritten in whole or in part or allegedly issued, subscribed to, or underwritten in whole or in part by Insurer or any of its predecessors. For the avoidance of doubt, the "Archdiocese Policies" include any and all known and unknown contracts, binders, certificates, or

policies of general liability insurance that were issued, allegedly issued, or may have been issued by or in the name of American Employers Insurance Company." Sale Motion, Exhibit A, p. 32.

17. The term "Related Insurance Claim" means "(a) any Extra-Contractual Claim and (b) any other Claim that is under, arises out of, relates (directly or indirectly) to, or connects in any way with the Archdiocese Policies, including, without limitation, bad faith Claims." Sale Motion, Exhibit A, p. 41.

18. The Motion contains a proposed order at Exhibit A to the Sale Motion (the "Sale Order"), which contains the following provisions:

> "Pursuant to Sections 105(a) and 363(f) of the Bankruptcy Code, and in consideration of the undertakings of Insurer pursuant to the Settlement Agreement, including Insurer's purchase of the Purchased Property free and clear of all Claims and Interests pursuant to Section 363(f) of the Bankruptcy Code as provided herein, any and all Entities that have held, now hold, or who may in the future hold any Claims or Interests (including without limitation all debt holders, all equity holders, governmental, tax and regulatory authorities, lenders, trade and other creditors, Abuse Claimants, holders of Direct Action Claims, Perpetrators, Non-Settling Insurers, the Archdiocese Bound Parties, and all others holding Claims or Interests of any kind or nature whatsoever, including, without limitation, those Claims released or to be released pursuant to the Settlement Agreement), which Claims or Interests are under, arise out of, relate to, or connect in any way with an Abuse Claim or any of the Purchased Property, including, without limitation, (a) all Abuse Claims (whether Known Abuse Claims or Unknown Abuse Claims), Direct Action Claims, Coverage Claims, Related Insurance Claims, Non-Insurer Contribution

Claims, Insurer Contribution Claims, Medicare Claims, Penalty Claims, any other Channeled Claims, any other Barred Claims, and any other Claims arising from or related in any way to an Abuse Claim or any portion of the Purchased Property, (b) the payment of any of the Claims identified previously, including, without limitation, Abuse Claims, Direct Action Claims, and Coverage Claims and (c) all other Interests, are hereby permanently stayed, enjoined, barred, and restrained from taking any Action, directly or indirectly, to assert, enforce or attempt to assert or enforce any such Claim or Interest against any of (x) the Insurer Released Parties, (y) the assets or property of any Insurer Released Parties, or (z) the Purchased Property, including by:

(a) commencing, conducting, or continuing in any manner, whether directly or indirectly, any suit, action, or other proceeding of any kind, in any forum, with respect to any such Claim or Interest, against any Insurer Released Party, or any property or interest in property of any Insurer Released Party;

(b) enforcing, levying, attaching, collecting, or otherwise recovering, or seeking to accomplish any of the preceding, by any manner or means, either directly or indirectly, any judgment, award, decree, or order against any Insurer Released Party, or any property or interest in property of any Insurer Released Party;

(c) creating, perfecting, or enforcing, by any manner or means, whether directly or indirectly, or seeking to accomplish any of the preceding, any lien of any kind against any Insurer Released Party, or any property or interest in property of any Insurer Released Party;

(d) asserting, implementing, or effectuating any such Claim or Interest of any kind or accomplishing any setoff, right of subrogation, indemnity, contribution or recoupment of any kind, whether directly or indirectly, against: (A) any obligation due to any of the Insurer Released Parties, (B) any of the Insurer Released Parties, or (C) any property or interest in property of any Insurer Released Party; and

(e) taking any act, in any manner, in any place whatsoever, that does not conform to, or comply with, the provisions of this Order.

Sale Order, pp. 21-23.

"This Order shall be binding in all respects upon: (a) the Debtor Parties and their Related Parties; (b) the Debtor Parties' Estates; (c) the other Archdiocese Bound Parties; (d) all creditors of the Debtor Parties; (e) all Abuse Claimants and holders of Direct Action Claims; (f) all holders of Interests whether known or unknown against or on all or any portion of the Purchased Property; (g) any Non-Settling Insurer; (h) the Insurer Released Parties; (i) the Purchased Property; (j) the Unknown Claims Representative; (k) any trustee that may be subsequently appointed in the Bankruptcy Case, whether pursuant to any plan of reorganization or liquidation (including without limitation the Settlement Trustee appointed under the Plan), under Section 1104 of the Bankruptcy Code, or upon a dismissal or conversion of this Bankruptcy Case under Chapter 7 of the Bankruptcy Code; and (l) all Entities receiving notice (or deemed to have received notice pursuant to this Order) of the Approval Motion or the Sale Hearing, including without limitation all Entities listed on Schedule 3 to the Settlement Agreement. The Settlement

>  Agreement shall be binding in all respects upon: (x) the Debtor Parties, their Estates, and their Related Parties; (y) the Archdiocese Bound Parties; and (z) any trustee that may be subsequently appointed in the Bankruptcy Case, whether pursuant to any plan of reorganization or liquidation (including without limitation the Settlement Trustee appointed under the Plan), under Section 1104 of the Bankruptcy Code, or upon a dismissal or conversion of this Bankruptcy Case under Chapter 7 of the Bankruptcy Code."

Sale Order, pp. 16-17.

## ARGUMENT

**The Sale Motion Impermissibly Seeks to Impose Releases of Claims Held by Third Parties Against Non-Debtors.**

19. The Supreme Court held in *Harrington v. Purdue Pharma L.P.*, 603 U.S. 204 (2024), that the Bankruptcy Code does not permit bankruptcy courts to involuntarily alter relationships between non-debtors by imposing nonconsensual releases of, or injunctions barring, claims between them. In *Purdue*, the Supreme Court observed:

> The Sacklers have not filed for bankruptcy and have not placed virtually all their assets on the table for distribution to creditors, yet they seek what essentially amounts to a discharge. They hope to win a judicial order releasing pending claims against them brought by opioid victims. They seek an injunction "permanently and forever" foreclosing similar suits in the future. 1 App. 279. And they seek all this without the consent of those affected. The question we face thus boils down to whether a court in bankruptcy may effectively extend to *nondebtors* the benefits of a Chapter 11 discharge usually reserved for *debtors*.

*Id.*, at 215.

20. The Sale Motion closely parallels the situation in Purdue in that numerous non-debtor third parties that have not filed for bankruptcy are seeking a judicial order releasing pending claims against them brought by Abuse Claimants. In *Purdue*, the Supreme Court held "the bankruptcy code does not authorize a release and injunction that, as part of a plan of reorganization under Chapter 11, effectively seeks to discharge claims against a non-debtor without the consent of affected claimants." *Id.*, at 227. As set forth herein, the Sale Motion and the Sale Order are attempting to use section 363 as an end-run around *Purdue* to impose nonconsensual third-party releases and injunctions—but these provisions go beyond what section 363 allows and thus are not statutorily authorized.

21. *Purdue* held there is no authority in the Bankruptcy Code, other than the provisions under section 524(g) for asbestos cases, for imposing nonconsensual third-party releases in an order confirming a chapter 11 plan. Parties cannot evade *Purdue* by attempting to impose nonconsensual releases in other types of bankruptcy orders. As stated above, the Sale Motion and Sale Order incorporate the nonconsensual third-party releases in the Plan. But in addition, the Sale Order itself contains nonconsensual third-party releases that, as discussed herein, do not fall within section 363(f), and the Debtor cannot achieve through a section 363 sale what it cannot get at plan confirmation. Any relief granted in the Sale Order should be limited to that which the Debtor is entitled under section 363.

22. The Supplemental Settling Insurer Injunction, which is referenced in the Plan, but is independently sought in the Sale Motion, provides, among other things, that numerous third parties are permanently barred from pursuing claims that they have against other non-debtor third parties. Namely, "all Entities" are permanently barred from taking any action to assert or enforce any Claim against certain non-debtor third parties if the claim relates to or is connected in any way

with any of the Purchased Property. Such broadly worded injunction goes beyond claims against the Purchased Property, but rather any action that "relates to" the Purchase Property. *See California Div. of Labor Standards Enforcement v. Dillingham Constr.*, N. A., Inc., 519 U.S. 316, 335, 117 S. Ct. 832, 136 L. Ed.2d 791 (1997) (Scalia, J., concurring) ("[A]pplying the 'relate to' provision according to its terms was a project doomed to failure, since, as many a curbstone philosopher has observed, everything is related to everything else") *cited with approval in Travelers Indem. Co. v. Bailey*, 557 U.S. 137, 149 (2009).

23. These claims of third parties against non-debtor third parties do not belong to the Debtor and thus cannot be sold pursuant to section 363. The Abuse Claimants are not parties to the agreements that the Debtor seeks to approve in the Sale Motion, and the Debtor cannot release the claims without the consent of the affected claimant—which consent it does not have here.

## CONCLUSION

WHEREFORE, for the foregoing reasons, the United States Trustee respectfully requests that the Court sustain this Objection and grant such other relief as it deems just and proper.

Dated: November 6, 2025

Respectfully submitted,
DAVID W. ASBACH
Acting United States Trustee, Region 5

By:*/s/ Amanda B. George*
AMANDA BURNETTE GEORGE (31642)
Acting Assistant United States Trustee
600 S. Maestri St., Suite 840-T
New Orleans, LA 70130
Telephone: (504) 589-4018
Direct: (504) 589-4092
Amanda.B.George@usdoj.gov

**CERTIFICATE OF SERVICE**

    This is to certify that copies of the foregoing United States Trustee's Objection to the Motion for Entry of Orders Pursuant to Sections 363 and 105(A) of the Bankruptcy Code and Bankruptcy Rule 9019 Approving Insurance Settlement Agreements and Policy Buybacks with Certain Insurers and Granting Related Relief were served on November 6, 2025, upon all parties entitled to receive notice through the Court's electronic notification system.

                                                By:*/s/ Amanda B. George*
                                                AMANDA BURNETTE GEORGE (31642)
                                                Acting Assistant United States Trustee
                                                600 S. Maestri St., Suite 840-T
                                                New Orleans, LA 70130
                                                Telephone: (504) 589-4018
                                                Direct: (504) 589-4092
                                                Amanda.B.George@usdoj.gov