**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| In re: § § **THE ROMAN CATHOLIC CHURCH OF THE ARCHDIOCESE OF NEW ORLEANS,** § § § § Debtor. § § | Case No. 20-10846 Section "A" Chapter 11 |

**ARGENT INSTITUTIONAL TRUST COMPANY, AS INDENTURE TRUSTEE'S MOTION IN LIMINE TO EXCLUDE THE EXPERT REPORT AND OPINIONS OF STOUT RISIUS ROSS, LLC**

Argent Institutional Trust Company, as indenture trustee (the "Bond Trustee"), by and through undersigned counsel, respectfully requests that the Court exclude the proffered testimony, opinions and report of Stout Risius Ross, LLC ("Stout") concerning the Roman Catholic Church of the Archdiocese of New Orleans' (the "Debtor") liability to the Survivors holding claims in Class 3 (as defined in the Plan, the "Abuse Claims").

The Official Committee of Unsecured Creditors (the "Committee") commissioned Stout to render an opinion on "the estimated share of claim value of the ANO Sexual Abuse Claims attributable to the Archdiocese, Reorganized Archdiocese, Additional Debtors, and Reorganized Additional Debtors." And Stout did just that; it opined that the combined liability of the Debtor and the Additional Debtors for the Abuse Claims ranges from approximately $700 million to $1.7 billion. The Committee did not ask Stout to opine on the **Debtor's liability** for the Abuse Claims and Stout has not done so. Accordingly, the opinions of Stout are irrelevant to any calculation of the liquidation value **of the Debtor** in a hypothetical chapter 7 case under section 1129(a)(7) of the Bankruptcy Code or the Debtor's individual liability for those claims for the purposes of determining the Debtor's solvency in this case.

The opinions offered by Stout are materially misleading and not relevant to the issue of the Debtor's individual liability for the Abuse Claims. Thus, the Court should not consider those opinions as evidence to prove the Debtor's individual liability for the Abuse Claims. Indeed, Stout offers no opinion of the Debtor's individual liability for those claims but instead lumps the Debtor's potential exposure together with the Additional Debtors and the Debtor's other insiders to provide an aggregate estimate of the liability for that group. Yet, the Plan Proponents are requesting that the Court use Stout's conclusions regarding the possible aggregate liability of the Debtor and Additional Debtors[1] to perform a "best interest of creditors' test" for creditors of the Debtor's estate. In this context, Stout's testimony is purposefully designed to inflate the Debtor's supposed liabilities and minimize the recovery for Bondholders under a hypothetical Chapter 7 liquidation. And the Debtor intends to use that liquidation result as the sole bellwether as to whether the Plan is confirmable over the objection of the Bond Trustee. Thus, the Court should not consider the proffered testimony of Stout on this issue.

Additionally, Stout's opinion is unreliable. Stout makes certain assumptions and ignores certain data and facts that make its opinion inaccurate, further militating in favor of excluding its opinion *in toto*. For example, Stout was instructed by counsel for the Committee to assume that the statute of limitations defense would not be applicable to the Abuse Claims, and on that basis, Stout ignored this factor in valuing the Abuse Claims. Stout also excluded from its analysis comparable settlements entered into by the Debtor prior to the Petition Date. However, the Debtor has asserted that the post-petition change of law related to the "Revival Window" does not affect the Debtor's defenses to the Abuse Claims as of the Petion Date. [ECF No. 3385 at §4.19]. This is precisely the type of defense that a hypothetical chapter 7 trustee would raise against the Abuse

---

[1] The Debtor has identified approximately 105 entities that it believes to have potential liability for the Abuse Claims as those entities with an asterisk next to their names on Exhibit 7 to the Disclosure Statement [ECF No. 4242-7]

Claims in a hypothetical chapter 7 liquidation. Thus, for the purposes of determining what the value of the Debtor's liability for the Abuse Claims would be in a hypothetical liquidation under chapter 7 of the Bankruptcy Code, Stout's assumption that no statute of limitations defense exists significantly skews the analysis by dramatically increasing the liability amount (thus driving down liquidation value and the "cap" on the Bond Trustee's recovery advocated by the Plan Proponents).

Thus, for these reasons, and as further discussed below, the Court should exclude Stout's opinions and report from evidence at trial for the purposes of determining the Debtor's liability for the Abuse Claims.

## ARGUMENT

I. **LEGAL STANDARD**

Rule 702 of the Federal Rules of Evidence governs the admissibility of expert testimony. A qualified expert may testify as to his or her opinion if that opinion is based upon sufficient facts and data, is the result of reliable application of reliable principles and methods to the facts of the case, and if the expert's scientific, technical, or other specialized knowledge will help the finder of fact understand the evidence or determine a fact at issue. *Van Winkle v. Rogers*, No. 6:19-CV-01264, 2022 U.S. Dist. LEXIS 165285, at *2-3 (W.D. La. Sep. 13, 2022). Whether an expert's opinion would be helpful to the trier of fact turns largely on whether the testimony is relevant. *Id.* at *3. "The party offering the testimony must prove by a preponderance of the evidence that the expert's opinion is relevant and reliable." *Whitney Nat'l Bank v. Air Ambulance by B&C Flight Mgmt.*, 516 F. Supp. 2d 802, 816 (S.D. Tex. 2007) (collecting cases).

Expert opinions must also be "the product of reliable principles and methods." Fed. R. Evid. 702(c); *see also see also Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589 (1993); *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 141 (1999) (applying *Daubert* standard to non-scientific expert testimony). (expert's opinions must be reliable). "Expert conclusions based on

incorrect assumptions may be unreliable." *In re Valaris Plc*, No. 20-34114, 2024 Bankr. LEXIS 1000, at *16 (Bankr. S.D. Tex. Apr. 24, 2024). "Incorrect assumptions critical to an expert's opinion make that opinion unreliable." *Whitney Nat'l Bank*, 516 F. Supp. 2d at 817 (citing *Moore v. Ashland Chem., Inc.*, 151 F.3d 269 (5th Cir. 1998) (reliance on inaccurate information makes an expert's analysis and testimony inadmissible)).

Experts must consider all relevant data and avoid "cherry-picking" the facts used in their analyses. *Trevino v. TFS Servs., LLC*, No. 7:22-cv-00158, 2023 U.S. Dist. LEXIS 148906, at *8 (S.D. Tex. Aug. 24, 2023) (citing *Burst v. Shell Oil Co.*, 650 F. App'x 170, 174 (5th Cir. 2016) (per curiam)) ("Reliance on studies that do not support a contention, cherry-picked data, or a dubious methodology may be grounds to reject expert testimony").

Here, Stout cherry-picked facts, ignored relevant data and did not actually analyze (and was never asked to) the Debtor's **individual** potential liability for the Abuse Claims rendering its opinions and report not useful to the Court or parties in this case for determining the Debtor's liability in connection with a hypothetical chapter 7 case analysis under section 1129(a)(7) of the Bankruptcy Code or to calculate the solvency of the Debtor.

## II. STOUT'S OPTIONS AND REPORT ARE NOT RELIABLE OR RELEVANT

The Court should preclude the Plan Proponents from introducing Stout's report or testimony for the purposes of proving the Debtor's individual liability for the Abuse Claims because Stout admittedly did not render an option on what the Debtor's individual liability could be for the Abuse Claims; Stout also ignored potential defenses that a chapter 7 trustee would undoubtedly raise to those claims in its analysis to inflate the potential expected value of the Abuse Claims, thereby lowering the amount the Debtor believes it must pay the Bond Trustee under the Plan.

A. **Stout Does not Render an Opinion of the Debtor's *Individual* Liability for the Abuse Claims**

The Stout report is entirely irrelevant to the issue of determining what the *Debtor's* liability could be for the Abuse Claims in a hypothetical chapter 7 liquidation under section 1129(a)(7) or otherwise, because the only opinion offered by Stout is what the total group liability could be for the Debtor and over 100 of its affiliates. The Stout Report states that:

> For a given sexual abuse claim, there are often multiple parties with potential liability, including one or more institutional entities, the perpetrator, or other individuals. The claim valuation estimate presented herein is intended to capture only the estimated share of claim value of the ANO Sexual Abuse Claims attributable to the Archdiocese, Reorganized Archdiocese, Additional Debtors, and Reorganized Additional Debtors (collectively the "Protected Parties").

Stout Report at p. 3.

The Stout Report also states that: "[t]o the extent there is one or more additional potential institutional defendant associated with a given claim, claim value is assumed to be apportioned *pari-passu*, on average (e.g., claims with one additional potential institutional defendant are discounted 50%, claims associated with two additional potential institutional defendants 67%, etc.)."[2] However, Katie McNally, the corporate representative from Stout, testified at her deposition in this case that she was not asked to, and did not, render an opinion on how the liability for the Abuse Claims is apportioned among the Debtor and the Additional Debtors under the *pari-passu* analysis.

As the Debtor has repeatedly stated during this case, the Debtor and the Additional Debtors are separate legal entities, and when looking at the amount of any one of these potential defendants'

---

[2] The Stout Report clarified that "[f]or purposes of Stout's analysis, institutional defendants include corporate entities, educational institutions or school districts, not-for-profits, religious organizations, hospitals or other medical providers, local government entities, or other organizational entities."

5

liability might be on account of any given Abuse Claim, Stout should have, and could have, applied the same discounting factor to determine what the *individual* liability would be for the Debtor. Stated differently, to properly capture the Debtor's own liability for any given Abuse Claim, Stout could have treated all of the Additional Debtors identified, listed or accused in the proofs of claim as "institutional defendants" and applied the same proportionate discount to calculate the Debtor's proportionate liability for that claim. However, Stout did not treat the Additional Debtors as "institutional defendants" and did not apply any proportional discounts to the claims for which the Debtor and one or more of the Additional Debtors could be liable. Instead, Stout just lumped together possible aggregate liability for the Debtor and the Additional Debtors.

For this reason, Stout's opinion of the potential exposure for the Debtor and Additional Debtors is not relevant or useful to the Court to determine the Debtor's liability for those claims.[3]

### B. Stout Ignored Key Facts Rendering Its Opinions Unreliable

A central issue at trial in this case is what a hypothetical recovery against the Debtor's chapter 7 estate could be for the purpose of determining if the Plan complies with section 1129(a)(7) of the Bankruptcy Code. Stout does not offer an opinion about the liability that the Debtor's hypothetical chapter 7 estate could face on account of the Abuse Claims. Instead, Stout opines on what the aggregate liability might be among the Debtor and its affiliates based on inappropriate assumptions regarding potential defenses that a chapter 7 trustee, or the Debtor itself, could assert in the context of a hypothetical chapter 7 liquidation, and accordingly omitted and did not consider comparable settlements between the Debtor and Survivors pre-petition which skews the results of Stout's calculation. Thus, Stout's conclusion of what the Debtor's potential liability

---

[3] In fact, the only possible way that the Court could determine the Debtor's own liability for Abuse Claims based on Stout's Report is to calculate individual proportionate share of liability for the Debtor and the 105 Additional Debtors, with claims against them, by applying the $1.221 billion of potential liability *pari-passu*, as Stout opines it should, which results in about $11.5 million of exposure for each potential defendant.

could be for the Abuse Claims is not reliable, particularly if used to calculate what that exposure might be in a hypothetical chapter 7 liquidation.

For example, according to Stout:

> Whether a statute of limitations defense is available to a defendant is a key driver of the value of sexual abuse claims in a civil action. As a statute of limitations defense creates potentially significant risk that a sexual abuse claimant may recover nothing for their sexual abuse claim, if a defendant were to prevail on such defense, the statute of limitations is often a central valuation issue with respect to sexual abuse claims against an institutional defendant. This is consistent with the concept that verdicts drive settlements. In other words, the increased likelihood that a defendant may prevail—resulting in $0 recovery to the plaintiff—drives down settlement value, all other factors being consistent. Differences in claim value based on the applicability of statute of limitations defenses are evidenced in the bankruptcy system and the tort system. I understand from Counsel that the claims at issue in this Chapter 11 case generally fall within the statute of limitations revival period established by Louisiana legislation enacted in 2021, which temporarily eliminated the civil statute of limitations for childhood sexual abuse survivors (the "Louisiana Revival Window"), and are therefore not subject to related claim defenses

Stout Report at p. 24.

However, the Debtor disputes that the Louisiana Revival Window applies to the Abuse Claims in this case, as the Debtor stated in its initial disclosure statement filed in this case on September 13, 2024:

> *Inapplicability of the Revival Window to the Debtor*. As set forth below, the Debtor believes that the Revival Window is inapplicable to the Child Sexual Abuse Proofs of Claim Filed in the Chapter 11 Case. The Debtor notes that the Creditors' Committees and lawyers for Abuse Claimants may disagree with the Debtor's position.
>
> The filing of a bankruptcy petition establishes a bankruptcy estate that includes, among other things, "all legal or equitable interests of the debtor in property as of the commencement of the case." *See* 11 U.S.C. § 541(a)(1). Courts broadly construe "property of the estate" as including every conceivable interest of the debtor, future, nonpossessory, contingent, speculative, and derivative. *See* 5 Collier on Bankruptcy ¶ 541.03 (16th ed. 2021). As the Fifth Circuit has

7

>recently observed, it is an "iron rule of bankruptcy" that "creditor claims are fixed for allowance purposes as of the date of filing of the debtor's petition." *NCC Fin., L.L.C. v. Investar Bank, N.A. (In re W Res., L.L.C.)*, No. 21-30291, 2022 U.S. App. LEXIS 10140, *5 (5th Cir. Apr. 14, 2022) (per curium) (citing 11 U.S.C. §§ 506(b), 502(b)(1), 544(a)). In a similar vein, courts have recognized that post-petition events should not justify allowing a claim that would have been disallowed as of the petition date. *See, e.g., In re Robertson*, No. 11-10354, 2014 Bankr. LEXIS 5081, *6-8 (Bankr. M.D. La. Dec. 4, 2014) (disallowing a time barred claim under section 502(b)(1) and relying on Louisiana case law holding that partial payments on prescribed debts do not renounce prescription, as well as the bankruptcy law principle that a creditor's rights in the debtor's bankruptcy are measured as of the petition date).
>
>Additionally, the U.S. Court of Appeals for the Third Circuit has recognized that "the explicit language of section 541 directs courts to evaluate defenses as they existed at the commencement of the bankruptcy" and "prevents courts from taking into account events that occur after the commencement of the bankruptcy case." *See Official Comm. Of Unsecured Creditors v. R.F. Lafferty & Co.*, 267 F.3d 340, 356-57 (3d Cir. 2001).

ECF No. 3384 at §4.19(e). The Debtor also listed a number of other potential defenses that it, and a hypothetical chapter 7 trustee would have to the Abuse Claims. *Id.* at §§4.19(f)-(g). To simply ignore these arguments and assume that a "key driver of value" for the Abuse Claims is non-existent is highly inappropriate "cherry-picking" of facts that courts within the Fifth Circuit find render an expert's opinion unreliable and inadmissible.

## **CONCLUSION**

WHEREFORE, for these foregoing reasons, the Bond Trustee respectfully requests that the Court exclude the opinions and report of Stout at the hearing on Confirmation of the Plan for the purpose of proving the Debtor's liability for the Abuse Claims and grant any other or further relief as the Court deems appropriate under the circumstances.

DATED: November 7, 2025

Respectfully submitted,

*/s/ Colleen A. Murphy*
Colleen A. Murphy
Kevin J. Walsh
Charles W. Azano
Christopher Marks
GREENBERG TRAURIG, LLP
One International Place Suite, 2000
Boston, MA 02110
Telephone: (617) 310-6000
Email: Colleen.Murphy@gtlaw.com
       Kevin.Walsh@gtlaw.com
       Chip.Azano@gtlaw.com
       Chris.Marks@gtlaw.com

-and-

*/s/ David S. Rubin*
David S. Rubin (La. 11525)
BUTLER SNOW LLP
445 North Boulevard, Suite 300
Baton Rouge, LA 70802
Telephone: (225) 325-8728
Email: david.rubin@butlersnow.com

*Attorneys for Argent Institutional Trust Company*