**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| In re: | § § | Case No. 20-10846 |
| **THE ROMAN CATHOLIC CHURCH OF THE ARCHDIOCESE OF NEW ORLEANS,** | § § § § | Section "A" |
| Debtor. | § § § | Chapter 11 |

---

**U.S. FIRE INSURANCE COMPANY'S AND INTERNATIONAL INSURANCE COMPANY'S MEMORANDUM OF LAW IN SUPPORT OF THE 9019/363 MOTION**

U.S. Fire Insurance Company ("U.S. Fire") and International Insurance Company ("International"), settling high-level excess insurers, respectfully submit this memorandum of law and reply (this "Reply") in support of the 9019/363 Motion [Dkt. No. 4181][1] filed by the above-captioned Archdiocese (the "Debtor") and Additional Debtors, and in response to the *United States Trustee's Objection to Motion for Entry of Orders Pursuant to Sections 363 and 105(a) of The Bankruptcy Code and Bankruptcy Rule 9019 Approving Insurance Settlement Agreements and Policy Buybacks with Certain Insurers and Granting Related Relief* (the "UST Sale Objection") [Dkt. No. 4560].

In support of this Reply, U.S. Fire and International respectfully state as follows:

## I. PRELIMINARY STATEMENT

1. The Committee supports approval of the 9019/363 Motion and Insurance Settlement Agreements with U.S. Fire/International and the other Settling Insurers. No one—

---

[1] Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the *Third Amended Order Scheduling Trial and Pretrial Deadlines in Connection With (I) Confirmation of Plan Proponents' Joint Amended Plan of Reorganization, (II) Motions to Approve Settlements with Insurers, and (III) The Court's Order to Show Cause Issued Against the Debtor, Dated April 28, 2025* [Dkt. No. 4506] (the "Scheduling Order") or 9019/363 Motion (as defined therein) at Dkt. No. 4181.

1

including the U.S. Trustee—filed an objection contending that the Insurance Settlement Agreements do not satisfy each of the factual elements of Fed. R. Bankr. P. 9019. The declarations submitted by the Debtor in support of approval of the Insurance Settlement Agreements are not the subject of any motion in limine or written objection.

2. The UST Sale Objection is the only objection to the 9019/363 Motion and is limited to the academic, entirely legal issue of whether a debtor can ever settle with an insurer.[2] In citing *Harrington v. Purdue Pharma L.P.*, 603 U.S. 204 (2024), however, the U.S. Trustee conflates alleged non-consensual releases contained in plan injunctions with the statutorily enumerated sale injunction set forth in section 363. Section 363(f) and (m) protects good faith purchasers like U.S. Fire and International from claims that may be asserted post-sale in connection with the property sold. *Purdue* is thus inapposite. Where statutory authority for releases or injunctions otherwise exist, such as under section 524(g) or, as here, under section 363 of the Bankruptcy Code, *Purdue* plainly does not apply. The Court of Appeals for the Third Circuit addressed this issue at some length in its recent decision affirming the order confirming the plan of reorganization the *Boy Scouts of America* and the insurance settlements and policy buybacks under section 363.

3. For all of these reasons, and the additional reasons below, the UST Sale Objection should be overruled, and the 9019/363 Sale Motion should be approved.

## II. RELEVANT BACKGROUND FACTS

**A. Procedural Background**

4. On May 1, 2020 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code (this "Chapter 11 Case").

---

[2] This is an issue that the Department of Justice has never authorized the Office of United States Trustee to appeal and which the Office of United States Trustee has not appealed.

5. On the Petition Date, the Debtor filed a *Notice of Designation of a Complex Case* [Dkt. No. 2]. That same day, the Court entered an *Order Granting Chapter 11 Bankruptcy Case Treatment* [Dkt. No. 18], thereby ordering that the Procedures for Complex Chapter 11 Cases in the Eastern District of Louisiana (the "Complex Procedures") apply in the above-captioned case.

6. On July 29, 2025, the Debtor and Additional Debtors filed the *Motion for Entry of Orders pursuant to Sections 363 and 105(a) of the Bankruptcy Code and Bankruptcy Rule 9019 Approving Insurance Settlement Agreement and Policy Buybacks with Certain Insurers and Granting Related Relief* [Dkt. No. 4181] (the "9019/363 Motion"). Affixed to the 9019/363 Motion is a proposed Sale Order along with a model settlement agreement by and between the Settling Insurers, Debtor, and other Archdiocese Signatory Parties (including the Additional Debtors).

7. On August 12, 2025, the Court entered an order approving the Second Amended Disclosure Statement proposed by the Debtor, Additional Debtors, and the Official Committee of Unsecured Creditors (the "Committee").

8. On October 27, 2025, further revised and individualized versions of the Insurance Settlement Agreements in substantially final form were filed along with redlines showing changes to the model insurance settlement agreement that was attached to the 9019/363 Motion filed on July 29, 2025. *See* Dkt. Nos. 4520-10 through 4520-21. Among these include the individualized, substantially final Insurance Settlement Agreement for U.S. Fire/International. *See* Dkt. Nos. 4520-12, 4520-13.

9. On October 27, 2025, the Debtor filed the *Fifth Amended Joint Chapter 11 Plan of Reorganization for the Roman Catholic Church of the Archdiocese of New Orleans and Additional Debtors, Proposed by the Debtor, the Additional Debtors, and the Official Committee of Unsecured Creditors, Dated as of October 27, 2025* [Dkt. No. 4518].

10. On November 6, 2025, the U.S. Trustee filed the UST Sale Objection.

### III. ARGUMENTS & AUTHORITIES

11. The U.S. Trustee objects to the 9019/363 Motion on the basis that it (i) purportedly seeks to sell property that is not property of the estate and (ii) impermissibly tries to impose releases of claims held by third parties against non-debtors without the consent of affected claimants. In doing so, however, the U.S. Trustee fundamentally misinterprets the applicable law, as addressed in further detail below. U.S. Fire and International address each in turn.

**A. The Court Should Approve the Sale of the U.S. Fire/International Policies Free and Clear of All Interests Under Section 363(f) of The Bankruptcy Code.**

12. Section 363(f) of the Bankruptcy Code permits a debtor, with court approval, and subject to the satisfaction of certain enumerated conditions, to sell assets free and clear of all liens, claims, interests, charges, and encumbrances (with any such liens, claims, interests, charges, and encumbrances attaching to the net proceeds of the sale with the same rights and priorities therein as in the sold assets). Under section 363(f) of the Bankruptcy Code, a debtor may sell property free and clear of any lien, claim, interest, or encumbrance in such property if, among other things:

> (1) applicable nonbankruptcy law permits sale of such property free and clear of such interest;
>
> (2) such entity consents;
>
> (3) such interest is a lien and the price at which such property is sold is greater than the aggregate value of all liens on such property;
>
> (4) such interest is in bona fide dispute; or
>
> (5) such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

11 U.S.C. § 363(f). Because section 363(f) is stated in the disjunctive, satisfaction of any one of its five requirements will suffice to warrant approval of the proposed sale. *See, e.g.*, *In re Royal Alice Props., LLC*, 637 B.R. 465, 481–82 (Bankr. E.D. La. 2021) (finding sections 363(f)(1) and

363(f)(4) each provided independent basis to allow free and clear sale); *In re Patriot Place, Ltd.*, 486 B.R. 773, 814–15 (Bankr. W.D. Tex. 2013) (noting debtor can sell property if it "can satisfy one of the five different conditions set forth in the subsections of § 363(f)"); *In re Camp Cooley Ltd.*, No. 09-61311, 2011 WL 5037565, at *4 (Bankr. W.D. Tex. Aug. 17, 2011) (allowing sale because "one or more of the standards set forth in section 363(f)(1)-(5) of the Bankruptcy Code has been satisfied").

13. The sale of policies under the U.S. Fire/International Insurance Settlement Agreement free and clear of all claims and interests and set forth therein is appropriate under section 363(f) of the Bankruptcy Code because, as described in the 9019/363 Motion and reiterated here, one or more of the enumerated conditions set forth in section 363(f)(1)–(5) are satisfied with respect to the sale.

14. *As an initial matter*, the policies may be sold free and clear of other interests under section 363(f)(1), which allows a sale free and clear where applicable law permits a sale free and clear of an interest. The policies being sold back to the Settling Insurers were issued to the Debtors, and such policy rights that might be asserted by the Additional Debtors and the Non-Debtor Catholic Entities will be assigned to the Debtor as set forth in the Insurance Settlement Agreement and as part of the Joint Plan. *See, e.g.*, *Martinez v. OGA Charters, L.L.C. (In re Charters, L.L.C.)*, 901 F.3d 599, 602 (5th Cir. 2018) (noting "a debtor's liability insurance policies are generally property of the estate . . . ."); *see also In re W.R. Grace & Co.*, 475 B.R. 34, 81 (D. Del. 2012) (quoting *ACandS, Inc. v. Travelers Cas. & Sur. Co.*, 435 F.3d 252, 260 (3d Cir.2006)) ("It has long been the rule in th[e] [Third] Circuit that insurance policies are considered part of the property of a bankruptcy estate."); *see also MacArthur Co. v. Johns-Manville Corp.*, 837 F.2d 89, 92 (2d Cir. 1988) ("courts have determined that a debtor's insurance policies are property of the estate").

5

15. The Debtor is the owner of the policies, with the Additional Debtors and Non-Debtor Catholic Entities having the right to assign their policy rights, if any, to the Debtor and have the Debtor sell those policy rights back to the Settling Insurers free of any interests of co-insured parties. *See, e.g.*, *In re Dow Corning Corp.*, 198 B.R. 214, 245 (Bankr. E.D. Mich. 1996) ("nonbankruptcy law permits the 'sale' . . . of an insured's cause of action against its insurer free and clear of any interest of an injured party whose tort claim would trigger the insurer's duty to defend and indemnify the insured"); *In re Johns-Manville Corp.*, 837 F.2d at 92–93 (noting that, because numerous courts have determined that a debtor's insurance policies are property of the estate, courts have authorized a settlement of the debtor's insurance coverage claims pursuant to the court's authority to approve the sale of the debtor's property). The U.S. Trustee has not identified any restrictions on such sale under applicable non-bankruptcy law.

16. *Second*, by entering into the U.S. Fire/International Insurance Settlement Agreement, the Debtor, Additional Debtors, and Non-Debtor Catholic Entities have consented to the terms of the U.S. Fire/International Insurance Settlement Agreement, including the buyback of the insurance policies. The Committee, as a Plan Proponent, expressly supports the U.S. Fire/International Insurance Settlement Agreement. No party (be it an alleged covered party, individual claimant, or otherwise) has objected to the 9019/363 Motion as it pertains to U.S. Fire and International aside from the U.S. Trustee.[3]

---

[3] The Debtor provided notice of the U.S. Fire/International settlement (*i.e.*, U.S. Fire/International's status as a Settling Insurer and the general terms thereof) as part of the Solicitation Packages to all holders of Claims entitled to vote on the Joint Plan pursuant to the Second Amended Disclosure Statement Order. *See* Dkt. No. 4253. The Debtor also provided written notice of the 9019/363 Motion to any known Archdiocese Bound Party, holder of an Abuse Claim or party whose rights or interests may reasonably be considered to be impacted by the relief requested in the 9019/363 Motion, and any party identified on Schedule 3 of the U.S. Fire/International Insurance Settlement Agreement. The Debtor further provided notice of the U.S. Fire/International Insurance Settlement Agreement as part of the filing of the Plan Supplements, and the publication notice procedures described in the proposed Sale Order and Insurance Settlement Agreements, proposed Sale Order and Joint Plan.

17. *Third*, the policies may be sold free and clear of claims and interests pursuant to section 363(f)(4). Under section 363(f)(4), a sale free and clear is appropriate where the interests are subject to a bona fide dispute. *See In re Johns-Manville Corp.*, 837 F.2d at 93 (holding that vendor's alleged rights under certain endorsements for indemnity for asbestos claims was in *bona fide* dispute because a dispute existed as to whether "the product liability limits on the policies to which the vendor endorsements attach have been exhausted"). There are unresolved disputes related to the Settling Insurers' policies, including coverage issues and the validity of Abuse Claims that occurred during a period when a policy was in effect. U.S. Fire and International raised coverage defenses based, in part, on allegations made by plaintiffs' lawyers on how they contend Abuse Claims arose.[4] Accordingly, there is a bona fide dispute with respect to the claims and interests that makes section 363(f)(4) of the Bankruptcy Code applicable to the sale of U.S. Fire's and International's policies.

18. *Fourth*, section 363(f)(5) is satisfied here as claimants could be compelled to accept a money satisfaction of their interests. The U.S. Trustee's objection to the 9019/363 Motion based on the fact the Abuse Claimants are not parties to the Insurance Settlement Agreements is flatly contradicted by section 363(f)(5)'s plain text. *Cf.* UST Sale Objection at ¶ 23 (noting "[t]he Abuse Claimants are not parties to the agreements that the Debtor seeks to approve in the Sale Motion," and "the Debtor cannot release the claims without the consent of the affected claimant . . . ."). This is because the only potential interest any Abuse Claimant has in these policies are their proceeds. On this basis, courts have approved the sale of insurance policies free and clear of claims pursuant to section 363(f)(5) of the Bankruptcy Code. *See, generally, e.g., In re Boy Scouts of Am.*, 137 F.4th 126, 151–59 (3d Cir. 2025) (finding settling insurers qualify as good-faith purchasers and

---

[4] *See* Soren Gisleson (counsel for certain abuse survivor claimants), Keep It Legal Podcast: EP15 – Clergy Abuse Litigation with Soren Gisleson (asserting claims not accidental).

dismissing appeal as statutorily moot under section 363(m)); *In re Bird Global*, No. 23-20514 (CLC) (Bankr. S.D. Fla. 2024) [Dkt. No. 1214] (approving free and clear sale of insurer policies under sections 363(f)(1), (2), and (5)), *aff'd sub nom. Wright v. Bird Global,* Case No. 24-CV-23086 (RAR) (S.D. Fla. Aug. 21, 2024); *In re Thorpe Insulation Co.*, No. 07-19271 (BB) (Bankr. C.D. Cal. Nov. 25, 2008) [Dkt. Nos. 1676 and 1677]; *In re Burns and Roe Enters., Inc.*, Case No. 00-41610 (RG) (Bankr. D.N.J. Feb. 17, 2005) [Dkt. No. 1200].

19. That the claims subject to the proposed buyback include Direct Action Claims under Louisiana law does not change the analysis or result. Similar arguments were made by the Guam Committee in the *In re Boy Scouts of American Delaware BSA, LLC* (Case No. 20-10343-LSS) (U.S. Bankr. Del.) with respect to direct actions under Guam law (which is analogous to Louisiana law), *see* Dkt. Nos. 8683, 9023, and rejected by the court; there, the buybacks of settling insurer policies were upheld by the Third Circuit on appeal on statutory mootness grounds. *See In re Boy Scouts of Am.*, 137 F.4th at 151–59. *See also, e.g., W.R. Grace & Co.*, 475 B.R. at 126–27 (rejecting claimants' objections to proposed buyback and settlement because even though Montana law allows a claimant to pursue insurers directly, those claimants must show that they have a right to the insurance proceeds because the insured is in some way liable to the claimants).

20. Because the 9019/363 Motion seeks to sell property of the estate back to U.S. Fire and International, and for the additional reasons set forth below, the UST Sale Objection should be overruled.

**B. The Proposed Sale Order Does Not Impose Non-Consensual Third-Party Releases**.

21. The U.S. Trustee relies on *Harrington v. Purdue Pharma L.P*., 603 U.S. 204 (2024) to argue that the 9019/363 Motion contains nonconsensual third-party releases. But such

interpretation wrongly applies the Supreme Court's decision here, and thus misinterprets the law, for two main reasons.

22. *First*, *Purdue* is facially inapplicable to the Sale Injunction. In *Purdue*, the Supreme Court held that the Bankruptcy Code "does not authorize a release and injunction that, as part of a plan of reorganization under Chapter 11, effectively seeks to discharge claims against a non-debtor without the consent of affected claimants." *Id.* at 227. But here, the Sale Injunction that is defined and set forth in the proposed Sale Order to the U.S. Fire/International Insurance Settlement Agreement does not meet that description. The Sale Injunction will not issue "as part of a plan of reorganization under Chapter 11," but instead will issue upon the Court's entry of the Sale Order. The U.S. Trustee acknowledges this fact whilst confusing plan-related injunctions with the separate Sale Injunction that statutorily protects good faith purchasers like U.S. Fire and International under section 363(m). UST Sale Objection at ¶ 22 (noting the "Supplemental Settling Insurer Injunction [] is referenced in the Plan but *is independently sought* in the Sale Motion.") (emphasis added). This alone demonstrates the Sale Injunction falls outside *Purdue*.

23. *Second*, the majority decision itself demonstrates that *Purdue* does not apply bankruptcy sale orders. Key to the majority's rejection of Purdue Pharma's Chapter 11 plan (and the nonconsensual third-party releases and injunctions contained therein) was the lack of statutory authority for such releases and injunctions **in that context**. *Id.* at 215–21. More precisely, the *Purdue* Court concluded that the plan was unlawful because the statute on which the plan proponents relied *exclusively* for support—Section 1123 of the Bankruptcy Code—failed "to endow [the] bankruptcy court with the . . . power" to impose nonconsensual third-party releases and injunctions through the plan. *Id.* at 218. This is substantially and plainly distinct from the notion, seemingly espoused by the U.S. Trustee, that nonconsensual third-party releases and/or

9

injunctions are always and everywhere impermissible.[5] *Purdue* poses no barrier to a nonconsensual injunction authorized by statute, whether under section 524(g) or the Sale Inunction is under section 363 of the Bankruptcy Code here. *See In re Nash. Eng'g Co.*, No. 3:25-CV-00055 (JCH), 2025 U.S. Dist. LEXIS 188646, at *22–23 (D. Conn. Sep. 25, 2025) (finding *Purdue Pharma* did not bar approval of section 363 sale); *In re Roman Catholic Diocese of Rockville Centre*, 665 B.R. 71, 86 (Bankr. S.D.N.Y. 2024) (ruling that despite U.S. Trustee assertion that release and injunction provisions violated *Purdue*, the settlement and buyback of insurance policies satisfied all requirements of section 363); *see also In re Boy Scouts of Am.*, 137 F.4th at 151–59 (affirming section 363 sale). Under these circumstances, the UST Sale Objection predicated on *Purdue* is deficient and should be rejected.

24. For all of these reasons, the UST Sale Objection should be overruled, and the Court should approve the 9019/363 Motion.

### IV. CONCLUSION

**WHEREFORE**, U.S. Fire and International respectfully request that the Court (i) overrule the UST Sale Objection, grant the 9019/363 Motion, and (ii) award all other relief as is just, equitable, appropriate and consistent with the relief requested herein.

*[Remainder of page intentionally left blank.]*

---

[5] The U.S. Trustee also suggests that the breadth of the Sale Injunction is impermissible. *See* UST Sale Objection at ¶ 22 ("Such broadly worded injunction goes beyond claims against the Purchased Property, but rather any action that 'relates to' the Purchase [sic] Property."). In support, the U.S. Trustee relies on dicta from a Supreme Court decision that blessed a plan injunction containing "relating to" language. *See Travelers Indem. Co. v. Bailey*, 557 U.S. 137, 149 (2009) (citing *California Div. of Labor Standards Enforcement v. Dillingham Constr., N. A.*, 519 U.S. 316, 335 (1997) (Scalia, J., concurring). Accordingly, this argument lacks merit and should be rejected.

Dated: November 14, 2025                                  Respectfully Submitted:

*/s/ John E. W. Baay II*

JOHN E.W. BAAY II (22928)
**LABORDE SIEGEL, L.L.C.**
Hancock Whitney Center
701 Poydras Street, Suite 4800
New Orleans, Louisiana 70139
Telephone: (504) 561-0400
Facsimile: (504) 561-1011
Email: jbaay@labordesiegel.com

TANCRED V. SCHIAVONI (*pro hac vice*)
**O'MELVENY & MYERS LLP**
1301 Avenue of the Americas, Suite 1700
New York, New York 10019
Telephone: +1 (212) 326-2000
Facsimile: +1 (212) 326-2061
Email: tschiavoni@omm.com

EMMA L. JONES (*pro hac vice*)
**O'MELVENY & MYERS LLP**
2801 N. Harwood St., Suite 1600
Dallas, TX 75201
Telephone:  (972) 360-1900
Email:  eljones@omm.com

JOSHUA JILOVEC (*pro hac vice*)
**O'MELVENY & MYERS LLP**
700 Louisiana Street
Suite 2900
Houston, TX 77002-2796
United States
Telephone: (832) 254-1536
Email: jjilovec@omm.com

*Counsel for United States Fire Insurance Company and International Insurance Company*

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a copy of the foregoing document and any corresponding attachments were served this 14th day of November, 2025 by using the Court's electronic filing system and notice of this filing will be sent to all counsel of record receiving electronic notice by such system. I also certify that on this 14th day of November, 2025, I caused a copy of the foregoing document and corresponding attachments to be served by e-mail or first-class U.S. mail, as applicable, on all other parties requiring service under the Court's *Ex Parte Order Authorizing the Debtor to Limit Notice and Establishing Notice Procedures* [Dkt. No. 22], including on the Debtor, Debtor's counsel, the Additional Debtors (and their counsel), counsel for the Official Committee of Unsecured Creditors and Commercial Creditors' Committee, and the U.S. Trustee.

                                                */s/ John E. W. Baay II*
                                                JOHN E.W. BAAY II (22928)