## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: | § | CASE NO: 20-10846 |
| | § | (JOINTLY ADMINISTERED) |
| THE ROMAN CATHOLIC CHURCH | § | |
| OF THE ARCHDIOCESE OF NEW | § | CHAPTER 11 |
| ORLEANS,[1] | § | COMPLEX CASE |
| | § | |
| DEBTOR. | § | SECTION A |
| | § | |

### ORDER (I) APPROVING THE CATHOLIC MUTUAL RELIEF SOCIETY OF AMERICA'S SETTLEMENT AGREEMENT, RELEASE AND BUYBACK, (II) APPROVING THE SALE OF THE ARCHDIOCESE POLICIES FREE AND CLEAR, (III) ENJOINING CLAIMS, AND (IV) GRANTING RELATED RELIEF

Upon the motion, dated July 29, 2025, [ECF Doc. 4181], and supplemented by the filing

of the fully executed Settlement Agreement (as defined below) as part of the Plan supplement on

---

[1]   An Order directing joint administration of the Chapter 11 bankruptcy case of The Roman Catholic Church of The Archdiocese of New Orleans, [No. 20-10846], as lead case, with the Chapter 11 bankruptcy cases of (i) All Saints Roman Catholic Church, New Orleans, Louisiana, [No. 25-12579], (ii) Annunciation Of The Blessed Virgin Mary Roman Catholic Church, Bogalusa, Louisiana, [No. 25-12580], (iii) Ascension Of Our Lord Roman Catholic Church, Laplace, Louisiana, [No. 25-12581], (iv) The Visitation Of Our Lady Roman Catholic Church, Marrero, Louisiana, [No. 25-12582], (v) Assumption Of Mary Roman Catholic Church, Avondale, Louisiana, [No. 25-12583], (vi) Assumption Of The Blessed Virgin Mary Roman Catholic Church Braithwaite, Louisiana, [No. 25-12584], (vii) Blessed Francis Xavier Seelos Roman Catholic Church, New Orleans, Louisiana, [No. 25-12585], (viii) Blessed Sacrament-St. Joan Of Arc Roman Catholic Church, New Orleans, Louisiana, [No. 25-12586], (ix) The Congregation Of St. Rita Roman Catholic Church Of Harahan, [No. 25-12587], (x) Blessed Trinity Roman Catholic Church, New Orleans, Louisiana, [No. 25-12588], (xi) Christ The King Roman Catholic Church, Gretna, Louisiana, [No. 25-12589], (xii) Corpus Christi-Epiphany Roman Catholic Church, New Orleans, Louisiana, [No. 25-12590], (xiii) Divine Mercy Roman Catholic Church, Kenner, Louisiana, [No. 25-12591], (xiv) Good Shepherd Roman Catholic Church, New Orleans, Louisiana, [No. 25-12592], (xv) Sts. Peter And Paul Roman Catholic Church, Pearl River, Louisiana, [No. 25-12593], (xvi) Holy Family Roman Catholic Church, Franklinton, Louisiana, [No. 25-12594], (xvii) St. Thomas Roman Catholic Church, Pointe A La Hache, Louisiana, [No. 25-12595], (xviii) Holy Family Roman Catholic Church, Luling, Louisiana, [No. 25-12596], (xix) St. Rita Roman Catholic Church, New Orleans, Louisiana, [No. 25-12597], (xx) Holy Name Of Mary Roman Catholic Church, New Orleans, Louisiana, [No. 25-12598], (xxi) St. Rita Roman Catholic Church, Harahan, Louisiana, [No. 25-12599], (xxii) Holy Spirit Roman Catholic Church, New Orleans, Louisiana, [No. 25-12600], (xxiii) St. Raymond And St. Leo The Great Roman Catholic Church, New Orleans, Louisiana, [No. 25-12601], (xxiv) Immaculate Conception Roman Catholic Church, Marrero, Louisiana, [No. 25-12602], (xxv) Immaculate Conception Roman Catholic Church, New Orleans, Louisiana, [No. 25-12603], (xxvi) St. Pius X Roman Catholic Church, New Orleans, Louisiana, [No. 25-12604], (xxvii) Mary Queen Of Peace Roman Catholic Church, Mandeville, Louisiana, [No. 25-12605],

(xxviii) St. Philip Neri Roman Catholic Church, Metairie, Louisiana, [No. 25-12606], (xxix) Mary Queen Of Vietnam Roman Catholic Church, New Orleans, Louisiana, [No. 25-12607], (xxx) St. Peter's Roman Catholic Church, Covington, Louisiana, [No. 25-12608], (xxxi) Mary, Help Of Christians Roman Catholic Church, Harvey, Louisiana, [No. 25-12610], (xxxii) St. Peter Roman Catholic Church, Reserve, Louisiana, [No. 25-12611], (xxxiii) Mater Dolorosa Roman Catholic Church, New Orleans, Louisiana, [No. 25-12612], (xxxiv) St. Peter Claver Roman Catholic Church, New Orleans, Louisiana, [No. 25-12613], (xxxv) Most Holy Name Of Jesus Roman Catholic Church, New Orleans, Louisiana, [No. 25-12614], (xxxvi) St. Paul The Apostle Roman Catholic Church, New Orleans, Louisiana, [No. 25-12615], (xxxvii) Most Holy Trinity Roman Catholic Church, Covington, Louisiana, [No. 25-12616], (xxxviii) St. Patrick's Roman Catholic Church, Port Sulphur, Louisiana, [No. 25-12617], (xxxix) Our Lady Of Divine Providence Roman Catholic Church, Metairie, Louisiana, [No. 25-12618], (xl) St. Patrick's Roman Catholic Church, New Orleans, Louisiana, [No. 25-12619], (xli) St. Michael The Archangel Roman Catholic Church, Paradis, Louisiana, [No. 25-12620], (xlii) Our Lady Of Grace Roman Catholic Church, Reserve, Louisiana, [No. 25-12621], (xliii) St. Martin De Porres Roman Catholic Church, New Orleans, Louisiana, [No. 25-12622], (xliv) Our Lady Of Lavang Roman Catholic Church, New Orleans, Louisiana, [No. 25-12623], (xlv) St. Matthew The Apostle Roman Catholic Church, River Ridge, Louisiana, [No. 25-12624], (xlvi) Our Lady Of Lourdes Roman Catholic Church, Slidell, Louisiana, [No. 25-12625], (xlvii) St. Mary's Roman Catholic Church, New Orleans, Louisiana, [No. 25-12626], (xlviii) Our Lady Of Lourdes Roman Catholic Church, Violet, Louisiana, [No. 25-12627], (xlix) St. Mary Magdalen Roman Catholic Church, Metairie, Louisiana, [No. 25-12628], (l) Our Lady Of Perpetual Help Roman Catholic Church, Belle Chasse, Louisiana, [No. 25-12629], (li) Our Lady Of Perpetual Help Roman Catholic Church, Kenner, Louisiana, [No. 25-12630], (lii) Our Lady Of Prompt Succor Roman Catholic Church, Chalmette, Louisiana, [No. 25-12632], (liii) St. Martha Roman Catholic Church, Harvey, Louisiana, [No. 25-12633], (liv) Our Lady Of Prompt Succor Roman Catholic Church, Westwego, Louisiana, [No. 25-12634], (lv) St. Mark Roman Catholic Church, Ama, Louisiana, [No. 25-12635], (lvi) Our Lady Of The Holy Rosary Roman Catholic Church, Hahnville, Louisiana, [No. 25-12636], (lvii) Our Lady Of The Lake Roman Catholic Church, Mandeville, Louisiana, [No. 25-12637], (lviii) St. Maria Goretti Roman Catholic Church, New Orleans, Louisiana, [No. 25-12638], (lix) Our Lady Of The Rosary Roman Catholic Church, New Orleans, Louisiana, [No. 25-12639], (lx) St. Margaret Mary Roman Catholic Church, Slidell, Louisiana, [No. 25-12640], (lxi) Resurrection Of Our Lord Roman Catholic Church, New Orleans, Louisiana, [No. 25-12641], (lxii) St. Luke The Evangelist Roman Catholic Church, Slidell, Louisiana, [No. 25-12642], (lxiii) Sacred Heart Of Jesus Roman Catholic Church, Lacombe, Louisiana, [No. 25-12644], (lxiv) St. Louis, King Of France, Roman Catholic Church, Metairie, Louisiana, [No. 25-12645], (lxv) Sacred Heart Of Jesus Roman Catholic Church, Norco, Louisiana, [No. 25-12646], (lxvi) St. Katharine Drexel Roman Catholic Church, New Orleans, Louisiana, [No. 25-12647], (lxvii) St. Agnes Le Thi Thanh Roman Catholic Church, Marrero, Louisiana, [No. 25-12650], (lxviii) St. Josephine Bakhita Roman Catholic Church, New Orleans, Louisiana, [No. 25-12651], (lxix) St. Agnes Roman Catholic Church, Jefferson, Louisiana, [No. 25-12652], (lxx) St. Joseph's Roman Catholic Church, Gretna, Louisiana, [No. 25-12653], (lxxi) St. Joseph The Worker Roman Catholic Church, Marrero, Louisiana, [No. 25-12654], (lxxii) St. Andrew The Apostle Roman Catholic Church, New Orleans, Louisiana, [No. 25-12655], (lxxiii) St. Joseph Roman Catholic Church, Algiers, Louisiana, [No. 25-12657], (lxxiv) St. Angela Merici Roman Catholic Church, Metairie, Louisiana, [No. 25-12658], (lxxv) St. John The Baptist Roman Catholic Church, Folsom, Louisiana, [No. 25-12659], (lxxvi) St. Ann Roman Catholic Church And Shrine, Metairie, Louisiana, [No. 25-12660], (lxxvii) St. John The Baptist Roman Catholic Church, Edgard, Louisiana, [No. 25-12661], (lxxviii) St. John Paul II Roman Catholic Church, Waggaman, Louisiana, [No. 25-12663], (lxxix) St. Anselm Roman Catholic Church, Madisonville, Louisiana, [No. 25-12664], (lxxx) St. John Of The Cross Roman Catholic Church, Lacombe, Louisiana, [No. 25-12665], (lxxxi) St. Anthony Of Barataria Roman Catholic Church, Lafitte, Louisiana, [No. 25-12667], (lxxxii) St. Joan Of Arc Roman Catholic Church, Laplace, Louisiana, [No. 25-12668], (lxxxiii) St. Joachim Roman Catholic Church, Marrero, Louisiana, [No. 25-12669], (lxxxiv) St. Jerome Roman Catholic Church, Kenner, Louisiana, [No. 25-12670], (lxxxv) St. Anthony Of Padua Roman Catholic Church, Luling,

Louisiana, [No. 25-12671], (lxxxvi) St. Jane De Chantal Roman Catholic Church, Abita Springs, Louisiana, [No. 25-12672], (lxxxvii) St. Anthony Of Padua Roman Catholic Church, New Orleans, Louisiana, [No. 25-12673], (lxxxviii) St. Anthony Roman Catholic Church, Gretna, Louisiana, [No. 25-12674], (lxxxix) St. Augustine Roman Catholic Church, New Orleans, Louisiana, [No. 25-12675], (xc) St. Genevieve Roman Catholic Church, Slidell, Louisiana, [No. 25-12676], (xci) St. Benedict Roman Catholic Church, Covington, Louisiana, [No. 25-12677], (xcii) St. Francis Xavier Roman Catholic Church, Metairie, Louisiana, [No. 25-12678], (xciii) St. Benilde Roman Catholic Church, Metairie, Louisiana, [No. 25-12679], (xciv) St. Francis Of Assisi Roman Catholic Church, New Orleans, Louisiana, [No. 25-12680], (xcv) St. Bernard Roman Catholic Church, St. Bernard, Louisiana, [No. 25-12681], (xcvi) St. Edward The Confessor Roman Catholic Church, Metairie, Louisiana, [No. 25-12682], (xcvii) St. Catherine Of Siena Roman Catholic Church, Metairie, Louisiana, [No. 25-12683], (xcviii) St. Dominic's Roman Catholic Church, New Orleans, Louisiana, [No. 25-12684], (xcix) St. Charles Borromeo Roman Catholic Church, Destrehan, Louisiana, [No. 25-12685], (c) St. David Roman Catholic Church, New Orleans, Louisiana, [No. 25-12686], (ci) St. Christopher Roman Catholic Church, Metairie, Louisiana, [No. 25-12687], (cii) St. Cletus Roman Catholic Church, Gretna, Louisiana, [No. 25-12688], (ciii) St. Clement Of Rome Roman Catholic Church, Metairie, Louisiana, [No. 25-12689], (civ) Blessed Sacrament, Inc., [No. 25-12690], (cv) The Congregation Of The Holy Trinity Roman Catholic Church, [No. 25-12691], (cvi) Epiphany, Inc., [No. 25-12692], (cvii) The Congregation Of The Annunciation Roman Catholic Church, [No. 25-12693], (cviii) The Congregation Of St. Cecelia Roman Catholic Church, [No. 25-12694], (cix) Immaculate Heart Of Mary, Inc., [No. 25-12695], (cx) Incarnate Word, Inc., [No. 25-12696], (cxi) The Congregation Of Saints Peter And Paul Roman Catholic Church, [No. 25-12697], (cxii) St. Theresa Of The Child Jesus, Inc., [No. 25-12698], (cxiii) Our Lady Of Good Harbor, Inc., [No. 25-12699], (cxiv) St. Theresa Of Avila, Inc., [No. 25-12700], (cxv) Our Lady Of Good Counsel, Inc., [No. 25-12701], (cxvi) St. Rose Of Lima, Inc., [No. 25-12702], (cxvii) Our Lady Of Lourdes, New Orleans, Louisiana, Inc., [No. 25-12703], (cxviii) St. Raymond's, Inc., [No. 25-12704], (cxix) Our Lady Of The Sacred Heart, New Orleans, Louisiana, Inc., [No. 25-12705], (cxx) St. Philip The Apostle, Inc., [No. 25-12706], (cxxi) Our Lady Star Of The Sea, Inc., [No. 25-12707], (cxxii) St. Monica, Inc., [No. 25-12708], (cxxiii) St. Ann, New Orleans, Louisiana, Inc., [No. 25-12709], (cxxiv) St. Maurice, Inc., [No. 25-12710], (cxxv) St. Bonaventure, Inc., [No. 25-12711], (cxxvi) St. Louise De Marillac, Inc., [No. 25-12712], (cxxvii) St. Frances Xavier Cabrini, Inc., [No. 25-12713], (cxxviii) St. Lawrence The Martyr, Inc., [No. 25-12715], (cxxix) St. Julian Eymard, Inc., [No. 25-12716], (cxxx) St. Francis De Salles, Inc., [No. 25-12717], (cxxxi) St. John The Baptist, New Orleans, Louisiana, Inc., [No. 25-12718], (cxxxii) St. Gabriel, Inc., [No. 25-12719], (cxxxiii) St. John Bosco, Inc., [No. 25-12720], (cxxxiv) St. Gertrude, Inc., [No. 25-12721], (cxxxv) St. James Major, Inc., [No. 25-12723], (cxxxvi) St. Henry's, Inc., [No. 25-12724], (cxxxvii) St. Hubert, Inc., [No. 25-12725], (cxxxviii) Archdiocesan Spirituality Center, [No. 25-12726], (cxxxix) Catholic Charities Archdiocese Of New Orleans, [No. 25-12727], (cxl) Catholic Charities Children's Day Care Centers, [No. 25-12728], (cxli) Catholic Charities Group Homes, [No. 25-12729], (cxlii) Clarion Herald Publishing Company, [No. 25-12730], (cxliii) Korean Catholic Community Of New Orleans, Inc., [No. 25-12731], (cxliv) Notre Dame Seminary, [No. 25-12732], (cxlv) Our Lady Of Mount Carmel Latin Mass Community, Covington, Louisiana, [No. 25-12733], (cxlvi) Pace Greater New Orleans, [No. 25-12734], (cxlvii) Padua House, [No. 25-12735], (cxlviii) Philmat, Inc., [No. 25-12736], (cxlix) Project Lazarus, [No. 25-12737], (cl) Roman Catholic Center Of Jesus The Lord, [No. 25-12738], (cli) School Food And Nutrition Services Of New Orleans, Inc., [No. 25-12739], (clii) Second Harvest Food Bank Of Greater New Orleans And Acadiana, [No. 25-12740], (cliii) St. Jude Community Center, Inc., [No. 25-12741], (cliv) St. Michael Special School, [No. 25-12742], (clv) St. Therese Catholic Academy, [No. 25-12743], and (clvi) The Society For The Propagation Of The Faith, Archdiocese Of New Orleans, [No. 25-12744], was entered on November 13, 2025, [No. 20-10846, ECF Doc. 4603; No. 25-12579, ECF Doc. 4; No. 25-12580, ECF Doc. 4; No. 25-12581, ECF Doc. 4; No. 25-12582, ECF Doc. 4; No. 25-12583, ECF Doc. 4; No. 25-12584, ECF Doc. 4; No. 25-12585, ECF Doc. 4; No. 25-12586, ECF Doc. 4; No. 25-12587, ECF Doc. 4; No. 25-12588, ECF Doc. 4; No. 25-12589, ECF Doc. 4; No. 25-12590, ECF Doc. 4; No. 25-12591, ECF Doc. 4; No. 25-12592,

November 13, 2025, [ECF Doc. 4610-14], (the "Approval Motion")[2] of The Roman Catholic

Church of the Archdiocese of New Orleans, the lead debtor and debtor-in-possession (the "Debtor"

---

ECF Doc. 4; No. 25-12593, ECF Doc. 4; No. 25-12594, ECF Doc. 4; No. 25-12595, ECF Doc. 4; No. 25-12596, ECF Doc. 4; No. 25-12597, ECF Doc. 4; No. 25-12598, ECF Doc. 4; No. 25-12599, ECF Doc. 4; No. 25-12600, ECF Doc. 4; No. 25-12601, ECF Doc. 4; No. 25-12602, ECF Doc. 4; No. 25-12603, ECF Doc. 4; No. 25-12604, ECF Doc. 4; No. 25-12605, ECF Doc. 4; No. 25-12606, ECF Doc. 4; No. 25-12607, ECF Doc. 4; No. 25-12608, ECF Doc. 4; No. 25-12610, ECF Doc. 4; No. 25-12611, ECF Doc. 4; No. 25-12612, ECF Doc. 4; No. 25-12613, ECF Doc. 4; No. 25-12614, ECF Doc. 4; No. 25-12615, ECF Doc. 4; No. 25-12616, ECF Doc. 4; No. 25-12617, ECF Doc. 4; No. 25-12618, ECF Doc. 4; No. 25-12619, ECF Doc. 4; No. 25-12620, ECF Doc. 4; No. 25-12621, ECF Doc. 4; No. 25-12622, ECF Doc. 5; No. 25-12623, ECF Doc. 4; No. 25-12624, ECF Doc. 4; No. 25-12625, ECF Doc. 4; No. 25-12626, ECF Doc. 4; No. 25-12627, ECF Doc. 4; No. 25-12628, ECF Doc. 4; No. 25-12629, ECF Doc. 4; No. 25-12630, ECF Doc. 4; No. 25-12632, ECF Doc. 4; No. 25-12633, ECF Doc. 4; No. 25-12634, ECF Doc. 4; No. 25-12635, ECF Doc. 4; No. 25-12636, ECF Doc. 4; No. 25-12637, ECF Doc. 4; No. 25-12638, ECF Doc. 4; No. 25-12639, ECF Doc. 4; No. 25-12640, ECF Doc. 4; No. 25-12641, ECF Doc. 4; No. 25-12642, ECF Doc. 4; No. 25-12644, ECF Doc. 4; No. 25-12645, ECF Doc. 4; No. 25-12646, ECF Doc. 4; No. 25-12647, ECF Doc. 4; No. 25-12650, ECF Doc. 4; No. 25-12651, ECF Doc. 4; No. 25-12652, ECF Doc. 4; No. 25-12653, ECF Doc. 4; No. 25-12654, ECF Doc. 4; No. 25-12655, ECF Doc. 4; No. 25-12657, ECF Doc. 4; No. 25-12658, ECF Doc. 4; No. 25-12659, ECF Doc. 4; No. 25-12660, ECF Doc. 4; No. 25-12661, ECF Doc. 4; No. 25-12663, ECF Doc. 4; No. 25-12664, ECF Doc. 4; No. 25-12665, ECF Doc. 4; No. 25-12667, ECF Doc. 4; No. 25-12668, ECF Doc. 4; No. 25-12669, ECF Doc. 4; No. 25-12670, ECF Doc. 4; No. 25-12671, ECF Doc. 4; No. 25-12672, ECF Doc. 4; No. 25-12673, ECF Doc. 4; No. 25-12674, ECF Doc. 4; No. 25-12675, ECF Doc. 4; No. 25-12676, ECF Doc. 4; No. 25-12677, ECF Doc. 4; No. 25-12678, ECF Doc. 4; No. 25-12679, ECF Doc. 4; No. 25-12680, ECF Doc. 4; No. 25-12681, ECF Doc. 4; No. 25-12682, ECF Doc. 4; No. 25-12683, ECF Doc. 4; No. 25-12684, ECF Doc. 4; No. 25-12685, ECF Doc. 4; No. 25-12686, ECF Doc. 4; No. 25-12687, ECF Doc. 4; No. 25-12688, ECF Doc. 4; No. 25-12689, ECF Doc. 4; No. 25-12690, ECF Doc. 4; No. 25-12691, ECF Doc. 4; No. 25-12692, ECF Doc. 4; No. 25-12693, ECF Doc. 4; No. 25-12694, ECF Doc. 4; No. 25-12695, ECF Doc. 4; No. 25-12696, ECF Doc. 4; No. 25-12697, ECF Doc. 4; No. 25-12698, ECF Doc. 4; No. 25-12699, ECF Doc. 5; No. 25-12700, ECF Doc. 4; No. 25-12701, ECF Doc. 4; No. 25-12702, ECF Doc. 4; No. 25-12703, ECF Doc. 4; No. 25-12704, ECF Doc. 4; No. 25-12705, ECF Doc. 4; No. 25-12706, ECF Doc. 4; No. 25-12707, ECF Doc. 4; No. 25-12708, ECF Doc. 4; No. 25-12709, ECF Doc. 4; No. 25-12710, ECF Doc. 4; No. 25-12711, ECF Doc. 4; No. 25-12712, ECF Doc. 4; No. 25-12713, ECF Doc. 4; No. 25-12715, ECF Doc. 4; No. 25-12716, ECF Doc. 4; No. 25-12717, ECF Doc. 4; No. 25-12718, ECF Doc. 4; No. 25-12719, ECF Doc. 4; No. 25-12720, ECF Doc. 4; No. 25-12721, ECF Doc. 4; No. 25-12723, ECF Doc. 4; No. 25-12724, ECF Doc. 4; No. 25-12725, ECF Doc. 4; No. 25-12726, ECF Doc. 4; No. 25-12727, ECF Doc. 4; No. 25-12728, ECF Doc. 4; No. 25-12729, ECF Doc. 3; No. 25-12730, ECF Doc. 4; No. 25-12731, ECF Doc. 4; No. 25-12732, ECF Doc. 4; No. 25-12733, ECF Doc. 4; No. 25-12734, ECF Doc. 4; No. 25-12735, ECF Doc. 4; No. 25-12736, ECF Doc. 4; No. 25-12737, ECF Doc. 4; No. 25-12738, ECF Doc. 4; No. 25-12739, ECF Doc. 4; No. 25-12740, ECF Doc. 4; No. 25-12741, ECF Doc. 4; No. 25-12742, ECF Doc. 4; No. 25-12743, ECF Doc. 4; No. 25-12744, ECF Doc. 4].

2        All references to the "Plan" are to the *Sixth Amended Joint Chapter 11 Plan of Reorganization for The Roman Catholic Church of the Archdiocese of New Orleans and Additional Debtors, Proposed by the Debtor, the Additional Debtors, and The Official Committee of Unsecured Creditors Dated as of November 13, 2025*, [ECF Doc. 4608], and its exhibits and schedules, as amended and modified in accordance with the Settlement Agreement with the consent of the Insurer.  Other capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Settlement Agreement.

or "Archdiocese") and the other debtors and debtors-in-possession (the "Additional Debtors" and, together with the Archdiocese, the "Debtor Parties") in the above-captioned chapter 11 cases, by and through their respective counsel, for entry of an order (this "Order") approving the settlement agreement, releases, insurance policy buyback, and related injunction-in-aid (the "Settlement") by and among the Archdiocese, the Additional Debtors, the other Archdiocese Signatory Parties, the Creditors' Committee, and The Catholic Mutual Relief Society of America ("Insurer" and, collectively with the foregoing, the "Parties"), pursuant to §§ 105(a) and 363 of Title 11 of the United States Code (the "Bankruptcy Code") and Rules 2002(a)(2), 6004, and 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), in each case as described in the Approval Motion and the *Settlement Agreement, Release, and Policy Buyback* attached to this Order as **Exhibit 1** (the "Settlement Agreement"); and the Bankruptcy Court having reviewed the Approval Motion and the Settlement Agreement; and it appearing that due and adequate notice of the Approval Motion and Settlement Agreement having been given to all Entities entitled thereto, and that no other or further notice need be given; and the Bankruptcy Court on November 17, 2025, at 9:00 AM having held a hearing (the "Sale Hearing") to consider the relief requested in the Approval Motion; and upon the record of the Sale Hearing; and, after due deliberation, including, without limitation, for the reasons stated by the Bankruptcy Court on the record of the Sale Hearing, including the testimony of witnesses and the introduction of exhibits as evidence; it appearing that the relief requested in the Approval Motion and granted herein is in the best interests of the Debtor Parties' estates (the "Estates"), their creditors, and other parties in interest; and good sufficient cause appearing therefor,

**IT IS FOUND AND DETERMINED** that:

A.     This Bankruptcy Court has jurisdiction over the Approval Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157(a)-(b) and 1334(b).   This matter is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(A), (N) and (O).   Venue of this case and the Approval Motion in this district is proper under 28 U.S.C. §§ 1408 and 1409.

B.     The statutory predicates for the relief sought in the Approval Motion are §§ 105(a) and 363 of the Bankruptcy Code and Bankruptcy Rules 2002, 6004, 9007, 9008, and 9019, and Rule 9019-1 of the Local Rules of the United States Bankruptcy Court for the Eastern District of Louisiana.

C.     It is necessary and appropriate for the Bankruptcy Court to retain jurisdiction to, among other things, interpret and enforce the terms and provisions of this Order and the Settlement Agreement, and to adjudicate, if necessary, to the extent provided under 28 U.S.C. § 1334(b), any and all disputes arising from or relating to the Settlement Agreement or this Order.

D.     Proper, timely, adequate and sufficient notice of the Sale Hearing and Approval Motion and the relief requested therein, including, without limitation, the Settlement and the transactions described in the Settlement Agreement, including, without limitation, issuance of the injunction-in-aid referenced in the Settlement Agreement and the Approval Motion (all such transactions being collectively referred to, for convenience, as the "Sale Transaction") has been provided by the Debtor Parties in accordance with all applicable provisions of the Bankruptcy Code and the Bankruptcy Rules to all interested Entities, including, without limitation the parties listed on **Schedule 3** of the Settlement Agreement, through service of the Confirmation Hearing Notice (as defined in the Plan) in accordance with the Disclosure Statement Order (also as defined in the Plan).

E.      Notice of the Approval Motion was provided through publication of the Additional Debtors' Abuse Claims Bar Date Publication Notice (**Plan Exhibit G**) in daily and community newspapers throughout Louisiana.

F.      The notices described above were good, sufficient, and appropriate under the circumstances, and no other notice of the Approval Motion or Sale Hearing is required.

G.      The disclosures made by the Debtor Parties concerning the Settlement Agreement, the Sale Transaction, and the Sale Hearing were good, complete, and adequate.

H.      The Unknown Abuse Claims Representative has consented to and approved of the Settlement Agreement and Sale Transaction on behalf of Unknown Abuse Claims in connection with the treatment of such Claims under the Plan.

I.      A reasonable opportunity to object or be heard with respect to the Approval Motion and the relief requested therein has been afforded to all interested Entities.

J.      The Archdiocese Signatory Parties, on their own behalf and on behalf of the Archdiocese Bound Parties, as applicable, have duly executed the Insurance Settlement Agreement by their duly authorized representative, agent, and/or attorney in fact, and have full corporate power and authority to consummate the Sale Transaction pursuant to the Settlement Agreement and all other documents contemplated thereby, and no consents or approvals, other than those expressly provided for in the Settlement Agreement, are required for the Archdiocese Bound Parties to consummate the Sale Transaction.

K.      The Debtor Parties have demonstrated (i) good, sufficient, and sound business purpose and justification and compelling circumstances for the Sale Transaction pursuant to § 363(b) of the Bankruptcy Code and (ii) that the Sale Transaction is fair, reasonable, and in the best interests of their Estates and creditors pursuant to Bankruptcy Rule 9019.  Among other things, the Debtor Parties have demonstrated that:  the Settlement Agreement, and closing thereon, is

necessary and appropriate to realize the value of the Purchased Property (as defined below) and maximize the value of their Estates; the probability of success for their Estates in litigation over the matters resolved by the Settlement Agreement is uncertain; litigation of the matters resolved by the Settlement Agreement would be complex and costly to their Estates; and the Settlement Amount is within the reasonable range of potential litigation outcomes.  As used herein, "Purchased Property" means, collectively, all right, title and interest (including "Interests" as defined below) in and to (i) the Archdiocese Policies issued by Insurer and (ii) the Related Insurance Claims and Coverage Claims owned by the Archdiocese Bound Parties and their Estates; *provided that*, the Purchased Property does not include Insurer's obligations under Certificate No. 8554 issued by Insurer to the Archdiocese to defend and indemnify the protected persons under such certificate with respect to the bodily injury or personal injury claims listed in Schedule 4 attached to the Settlement Agreement, in each case, subject to the limits, declarations, terms and conditions of such certificate (the "Preserved Coverage"), and *provided further that* the Preserved Coverage does not include coverage for any and all Abuse Claims or for any and all other Barred Claims.  The Sale Transaction constitutes a reasonable and sound exercise of the Debtor Parties' business judgment and their powers and duties under applicable law and should be approved. Approval of the Settlement Agreement and consummation of the Sale Transaction are in the best interests of the Debtor Parties' Estates, their creditors (specifically including the Abuse Claimants of the Debtor Parties), and other parties-in-interest, including because the proceeds of and from the Sale Transaction will benefit Abuse Claimants.

L.     The Settlement Agreement was negotiated, proposed, and entered into without collusion, in good faith, and from arm's length bargaining positions.  Without limiting the foregoing, the Settlement Agreement resulted from a lengthy mediation that proceeded pursuant to a prior order of the Bankruptcy Court.  Insurer is not an "insider" or "affiliate" (as those terms

are defined in the Bankruptcy Code) of any of the Debtor Parties. None of the Archdiocese Bound Parties or Insurer have engaged in any conduct that would: (i) cause or permit the avoidance of the Settlement Agreement or the consummation of the Sale Transaction under § 363(n) of the Bankruptcy Code; (ii) cause or permit the imposition of any costs or damages (including without limitation attorneys' fees or punitive damages) under § 363(n) of the Bankruptcy Code; or (iii) prevent the application of § 363(m) of the Bankruptcy Code. The releases, injunctions, policy buyback, and all other components of the Sale Transaction comply with the Bankruptcy Code and all applicable non-bankruptcy law.

M.      Pursuant to the Settlement Agreement and to the maximum extent permitted by applicable law, and except with respect to Preserved Coverage, the Non-Debtor Catholic Entities and Insurer have consented to the assignment of the Non-Debtor Catholic Entities' Interests, if any, in the Archdiocese Policies to the Debtor's Estate, and each Non-Debtor Catholic Entity shall assign the Non-Debtor Catholic Entities' Interests in the Archdiocese Policies to the Debtor's Estate prior to the Settlement Agreement Effective Date, and the Debtor's Estate shall sell the Non-Debtor Catholic Entities' Interests in the Archdiocese Policies to Insurer on the Settlement Agreement Effective Date, in exchange for the Settlement Amount and other consideration provided by Insurer under the Settlement Agreement, pursuant to §§ 363, 1123, and/or 1141 of the Bankruptcy Code, free and clear of all Interests of any Entity in such Archdiocese Policies (the "Non-Debtor Catholic Entity Policy Sale").

N.      Insurer is a good faith purchaser of the Purchased Property under § 363(m) of the Bankruptcy Code and, as such, is entitled to all of the protections afforded thereby, in that, among other things: (i) all payments to be made by or to Insurer, and other agreements or arrangements entered into by Insurer, including without limitation any escrow agreement pertaining to the payment of the Settlement Amount, in connection with the Sale Transaction have been disclosed;

(ii) Insurer neither induced nor caused the Debtor Parties' Chapter 11 filings; (iii) the negotiation and execution of the Settlement Agreement and any other agreements or instruments related thereto was in good faith, the arm's length transaction between Insurer and the other Parties was the product of mediation, and all Parties to the Settlement Agreement were, or had the opportunity to be, represented by counsel; and (iv) Insurer has not violated § 363(n) of the Bankruptcy Code by any action or inaction.  Insurer has at all times acted in good faith with respect to the Settlement Agreement and will continue to be acting in good faith within the meaning of § 363(m) of the Bankruptcy Code in closing the Sale Transaction.

O.      The terms and conditions of the Settlement Agreement are fair and reasonable.  The Settlement Amount provided by Insurer pursuant to the Settlement Agreement (i) is fair and reasonable; (ii) monetizes the Purchased Property at the highest and best amount; (iii) will provide a higher and more certain recovery for the Debtor Parties' creditors than would be provided by any other practical available alternative given the complexity, cost, and uncertainty of such alternatives; (iv) does not increase the insolvency of the Debtor or any of the Additional Debtors, within the meaning of Title IV, Chapter 12 of the Louisiana Civil Code; and (v) constitutes reasonably equivalent value (as defined in § 548 of the Bankruptcy Code) and fair consideration under the Bankruptcy Code and applicable non-bankruptcy law.  The Settlement Amount is within the reasonable range of potential litigation outcomes, and the Debtor Parties' determination to accept the Settlement Amount and otherwise enter into the Settlement Agreement is a valid and sound exercise of their business judgment and consistent with the Debtor Parties' fiduciary duties. The releases to be made pursuant to the Settlement Agreement, including without limitation the releases of the Archdiocese Bound Parties and the Insurer Released Parties, are appropriate and should be approved.

P.      Insurer:  (i) is not a mere continuation of any of the Archdiocese Bound Parties or the Estate of any of the Debtor Parties, nor is there any continuity of enterprise between Insurer and the Debtor Parties or Insurer and any of the other Archdiocese Bound Parties; (ii) is not holding itself out to the public as a continuation of any of the Archdiocese Bound Parties; and (iii) is not a successor to the Debtor Parties, their Estates, or any of the Archdiocese Bound Parties for any purpose, and the Sale Transaction does not amount to a consolidation, merger, or *de facto* merger of Insurer and any of the Archdiocese Bound Parties.

Q.      The Settlement Agreement was not entered into for the purpose of hindering, delaying, or defrauding creditors under the Bankruptcy Code or under the laws of the United States, any state, territory, possession, or the District of Columbia.  Neither Insurer nor any of the Archdiocese Bound Parties are fraudulently entering into the Sale Transaction.

R.      The transfer of the Purchased Property to Insurer (i) does not constitute an avoidable transfer under the Bankruptcy Code or under other applicable bankruptcy or non-bankruptcy law and (ii) does not and will not subject Insurer to any liability whatsoever with respect to the Debtor Parties' operation prior to the closing of the Sale Transaction (i.e., the occurrence of both the Settlement Agreement Effective Date and payment[3] of the Settlement Amount by Insurer to the Settlement Trust or Escrow Agent pursuant to the terms of Insurer's Settlement Agreement) (the "Closing").

S.      Insurer has agreed to purchase the Purchased Property pursuant to its Settlement Agreement and this Order; Insurer has not agreed to purchase, and is not purchasing, any other assets of the Estate of any of the Debtor Parties.  Insurer has not agreed to assume, and after Closing

---

[3]      For the avoidance of doubt, all references to "payment" or "delivery" of the Settlement Amount by Insurer herein shall encompass all transfers of the Settlement Amount contemplated by the Settlement Agreement, including without limitation funding and transfer of funds to the Settlement Trust via letters of credit or escrow accounts.

shall have no obligations with respect to, any liabilities of the Archdiocese Bound Parties.  Without limiting the generality of the foregoing, Insurer:  (i) is not assuming and shall have no liability for any Claims arising from or relating to Abuse, the Purchased Property, or the Bankruptcy Case; and (ii) is not assuming and shall have no liability with respect to the Archdiocese's or any other Archdiocese Bound Party's obligations to Abuse Claimants, any other creditors, future claimants (including without limitation Unknown Abuse Claimants), or the Archdiocese's or any Archdiocese Bound Party's employees, in each case, by reason of the purchase of the Purchased Property under the Settlement Agreement.

T.     The Purchased Property constitutes property of the Debtor Parties' Estates, and the Archdiocese Bound Parties are the lawful owners of the Purchased Property and hold good title thereto.  The transfer of the Purchased Property to Insurer pursuant to the Settlement Agreement will be a legal, valid, binding, and effective transfer of the Purchased Property, and will vest Insurer with all right, title, and interest of the Archdiocese and the Archdiocese Bound Parties in and to the Purchased Property, in each case free and clear of all Interests (as defined below, including, without limitation, any Interests of the Archdiocese Bound Parties, Abuse Claimants, and holders of Direct Action Claims).  Upon Closing, Insurer shall have no liability for any Claims against or liabilities of the Debtor Parties, their Estates, or the other Archdiocese Bound Parties.  Without limiting any of the foregoing, the Archdiocese, the Archdiocese Signatory Parties, and Insurer have agreed that, upon Closing:  (i) the Purchased Property shall be deemed void *ab initio*, terminated, extinguished, and of no further force and effect; and (ii) all limits of liability of the Archdiocese Policies, regardless of how the Archdiocese Policies identify or describe those limits, including all per person, per occurrence, per claim, "each professional incident," per event, per accident, total, and aggregate limits, shall be deemed fully and properly exhausted.

U.      Pursuant to §§ 363(f) and 105(a) of the Bankruptcy Code, and subject to the terms and conditions set forth in the Settlement Agreement, and upon Closing, without the need for further action, the Debtor Parties shall be deemed to have sold, transferred and conveyed the Purchased Property to the Insurer, and the Insurer shall be deemed to have purchased from the Debtor Parties, all right title and interest in and under the Purchased Property, free and clear of all "Interests" of any Entity of any kind or nature whatsoever, to the fullest extent permitted under §§ 363(b) and (f) of the Bankruptcy Code, with such "Interests" including: (a) all mortgages, security interests, notes, security agreements, privileges, conditional sale or other title retention agreements, pledges, liens (including without limitation any statutory lien on real and personal property and any and all "liens" as that term is defined and used in the Bankruptcy Code), licenses, deeds of trust, equity interests, rights of first refusal, consent rights, judgments, demands, encumbrances, easements, restrictions or charges of any kind or nature, if any, including, but not limited to, any restriction on the use, voting, transfer, receipt of income or other exercise of any attributes of ownership (the foregoing collectively referred to in this order as "liens"), and (b) all debts arising in any way in connection with any acts of the Archdiocese Bound Parties and any and all Claims, Subject Interests, obligations, demands, guaranties, options, rights, contractual commitments, executory contracts, unexpired leases, employment agreements, any other employee, workers' compensation, occupational diseases or unemployment or temporary disability related claims, restrictions, rights of lesion beyond moiety, tort claims, and claims, interests and matters of any kind and nature, whether arising prior to or subsequent to the commencement of the Bankruptcy Case, and whether imposed by agreement, understanding, law, equity or otherwise; (c) any and all past, present, or future, actual, alleged or potential demand, liability, duty, obligation, claim, debt, allegation, action, damages, suit, expense, loss, cost, assertion of liability, and/or cause of action of any type whatsoever, whether in law, in equity, in

admiralty, or otherwise, and whether or not presently known, contractual or extra-contractual, direct or indirect (including without limitation, (i) any Abuse Claims, any Direct Action Claims, any Coverage Claims, and all other Barred Claims, and (ii) any claims for "bad faith," unfair claims practices, breach of any implied duty of good faith and fair dealing, including, but not limited to, La. Rev. Stat. §§ 22:1892 and 22:1973, or any claim arising under the Louisiana Direct Action Statute, La. Rev. Stat. § 22:1269, and including all Claims and all "claims" as defined in § 101(5) of the Bankruptcy Code and all "demands" as defined in § 524(g)(5) of the Bankruptcy Code; and (d) any claim, remedy, liability, or demand against the Archdiocese Bound Parties or the Debtor Parties' Estates, including without limitation any asserted by any third party or any other person or entity, now existing or hereafter arising, whether or not such Claim, remedy, liability, or demand is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured, whether or not the facts of or legal bases therefor are known or unknown, under any theory of law, equity, admiralty, or otherwise, by whomever and by whatever procedure asserted, seeking damages or any other kind of relief whatsoever, including without limitation, those in any way relating to, arising out of, connected with, and/or involving the Purchased Property.  Without limiting the generality of the foregoing and without finding that any Entity has any Interest in the Archdiocese Policies:  (i) any Entity with Interests (if any) in or with respect to the Purchased Property who did not object, or who withdrew their objections to the Sale Transaction or the Approval Motion have waived their right to object to the sale of the Purchased Property free and clear of such Entity's Interests in the Purchased Property pursuant to § 363(f)(2) of the Bankruptcy Code; and (ii) any such Entity with Interests in or with respect to the Purchased Property who objected to the Approval Motion and did not withdraw any such objection (a) are the holders of Interests subject to *bona fide* dispute

under Bankruptcy Code § 363(f)(4) and/or (b) can be compelled to accept a monetary satisfaction of their Interests within the meaning of § 363(f)(5) of the Bankruptcy Code.

V.      If the sale of the Purchased Property were not free and clear of all Interests, including without limitation all Abuse Claims, Direct Action Claims, and Coverage Claims, or if the Insurer Released Parties would, or in the future could, be liable for any of the Interests, Insurer would not have entered into the Settlement Agreement and would not consummate the Sale Transaction or pay the Settlement Amount, thus adversely affecting the Debtor Parties, their Estates, and their creditors (including, without limitation, the Abuse Claimants), as well as the other Archdiocese Bound Parties.

W.      Issuing a supplemental injunction under § 105(a) of the Bankruptcy Code as provided herein is essential to give effect to the sale of the Purchased Property to Insurer and this Order's approval of such sale free and clear of Interests pursuant to § 363(f) of the Bankruptcy Code.  The Sale Injunction set forth in Paragraph 23 below not only is a necessary prerequisite for Insurer's assent to the terms and conditions of its Settlement Agreement, such that Insurer will not consummate the Sale Transaction or pay its Settlement Amount in the absence of such an injunction from this Bankruptcy Court, but also is warranted to ensure compliance with this Order. Likewise, Insurer will not consummate the Sale Transaction or pay its Settlement Amount without the benefit of the releases contained in the Settlement Agreement and approval thereof by the Bankruptcy Court.

X.      Neither the Settlement Agreement nor the Sale Transaction constitute a *sub rosa* Chapter 11 plan.  The Settlement Agreement does not impermissibly restructure the rights of the Debtor Parties' creditors nor impermissibly dictate a Chapter 11 plan for the Debtor Parties.

Accordingly,

**IT IS ORDERED** that:

### General Provisions

1.      The Approval Motion, and the relief sought therein (including without limitation the approval of the Settlement Agreements and the Sale Transaction) is **GRANTED** in all respects as set forth herein.

2.      The findings of fact set forth above and conclusions of law stated herein, in addition to any findings of fact and conclusions of law stated by the Bankruptcy Court at the Sale Hearing, shall constitute this Bankruptcy Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to the Approval Motion pursuant to Bankruptcy Rule 9014.  To the extent any finding of fact later shall be determined to be a conclusion of law, it shall be so deemed, and to the extent any conclusion of law later shall be determined to be a finding of fact, it shall be so deemed.

3.      Any and all objections, if any, to the Approval Motion or the relief requested therein that have not been withdrawn, waived, or settled, and all reservations of rights included in such objections, are hereby overruled on the merits with prejudice, and in each case the Entity asserting the objection or reservation of rights is enjoined from taking any action against the Insurer Released Parties or the assets or property of any Insurer Released Parties to recover any Claim or Interest held by such objecting Entity.  Those parties who did not object or who withdrew their objections to the Approval Motion are deemed to have consented to the relief granted herein, pursuant to § 363(f)(2) of the Bankruptcy Code.

### Approval of the Settlement Agreement

4.      The Settlement Agreement is approved in its entirety, pursuant to § 105(a) and 363(b) of the Bankruptcy Code and Bankruptcy Rule 9019.  Without limiting the generality of the

foregoing, the settlement and releases of Claims as set forth in the Settlement Agreement is hereby approved pursuant to Bankruptcy Rule 9019.   All factors set forth in *Official Committee of Unsecured Creditors v. Cajun Elec. Power Coop. by & through Mabey* (*In re Cajun Elec. Power Coop.*), 119 F. 3d 349, 356 (5th Cir. 1997), either weigh in favor of the Settlement Agreement or do not apply.

5.      Pursuant to §§ 363, 1123, and/or 1141 of the Bankruptcy Code, the Non-Debtor Catholic Entity Policy Sale, free and clear of all Interests of any Entity in the Archdiocese Policies, is hereby approved.

6.      Pursuant to § 363(b) of the Bankruptcy Code, each of the Parties is authorized to consummate the Sale Transaction under and in accordance with the terms and conditions of the Settlement Agreement, and the Archdiocese Bound Parties shall at all times act in accordance with the terms thereof.

7.      Any representative, agent, or attorney in fact of the Archdiocese Signatory Parties is authorized to execute any other documentation and perform such other ministerial tasks as may be reasonably necessary to effectuate the Settlement Agreement and the Sale Transaction on behalf of the Archdiocese Bound Parties, including without limitation, any bill of sale substantially in the form attached to the Settlement Agreement as **Exhibit B**.

8.      Subject to all of the terms and conditions of the Settlement Agreement, upon Closing, the Archdiocese Bound Parties and Insurer shall be deemed to have granted the releases as set forth in the Settlement Agreement.

9.      The Parties are authorized to execute and deliver, and empowered to perform under, consummate, and implement the Settlement Agreement, together with all additional instruments and documents that may be reasonably necessary, convenient, or desirable to implement the Settlement Agreement and consummate the Sale Transaction pursuant thereto and effectuate the

provisions of this Order and the transactions approved hereby, and to take all further actions as may be requested by Insurer for the purpose of assigning, transferring, granting, conveying, and conferring to Insurer or reducing to Insurer's possession, the Purchased Property, or as may be necessary or appropriate to the performance of the obligations as contemplated by the Settlement Agreement.

10.     Insurer is authorized and directed to pay the Settlement Amount under and subject to the satisfaction of all terms and conditions of the Settlement Agreement.

11.     The Settlement Amount provided by Insurer for the Purchased Property (i) does not increase the insolvency of the Debtor or any of the Additional Debtors, within the meaning of Title IV, Chapter 12 of the Louisiana Civil Code; and (ii) constitutes reasonably equivalent value and fair consideration under the Bankruptcy Code, and under the laws of the United States, any state, territory, possession, or the District of Columbia.

12.     None of the Insurer Released Parties shall be required to seek or obtain relief from the automatic stay under § 362 of the Bankruptcy Code to enforce any of its or their rights or remedies under the Settlement Agreement or any other document related to the Settlement Agreement or the Sale Transaction.  The automatic stay imposed by § 362 of the Bankruptcy Code is modified solely to the extent necessary to implement the preceding sentence and the other provisions of this Order; *provided*, *however*, that this Bankruptcy Court shall retain jurisdiction over any and all disputes with respect thereto.

13.     This Order shall be binding in all respects upon:  (a) the Debtor Parties and their Related Parties; (b) the Debtor Parties' Estates; (c) the other Archdiocese Bound Parties; (d) all creditors of the Debtor Parties; (e) all Abuse Claimants and holders of Direct Action Claims; (f) all holders of Interests whether known or unknown against or on all or any portion of the Purchased Property; (g) any Non-Settling Insurer; (h) the Insurer Released Parties; (i) the Purchased Property;

(j) the Unknown Claims Representative; (k) any trustee that may be subsequently appointed in the Bankruptcy Case, whether pursuant to any plan of reorganization or liquidation (including without limitation the Settlement Trustee appointed under the Plan), under § 1104 of the Bankruptcy Code, or upon a dismissal or conversion of this Bankruptcy Case under Chapter 7 of the Bankruptcy Code; and (l) all Entities receiving notice (or deemed to have received notice pursuant to this Order) of the Approval Motion or the Sale Hearing, including without limitation all Entities listed on **Schedule 3** to the Settlement Agreement.   The Settlement Agreement shall be binding in all respects upon:  (x) the Debtor Parties, their Estates, and their Related Parties; (y) the Archdiocese Bound Parties; and (z) any trustee that may be subsequently appointed in the Bankruptcy Case, whether pursuant to any plan of reorganization or liquidation (including without limitation the Settlement Trustee appointed under the Plan), under § 1104 of the Bankruptcy Code, or upon a dismissal or conversion of this Bankruptcy Case under Chapter 7 of the Bankruptcy Code.

## Transfer of Assets

14.     The conditions of § 363(f) of the Bankruptcy Code have been satisfied in full; therefore, the Archdiocese may sell the Purchased Property free and clear of any Interests therein.

15.     Pursuant to §§ 105 and 363(b) and (f) of the Bankruptcy Code, Bankruptcy Rule 9019, applicable Louisiana State law, the testimonial and other documentary evidence filed in support of the Approval Motion, and the record of the Sale Hearing, the Archdiocese has set forth the legal authority necessary to support this Bankruptcy Court's findings herein.

16.     Pursuant to §§ 105(a) and 363(f) of the Bankruptcy Code, the Purchased Property and the Archdiocese Bound Parties' rights, title, and interest therein shall upon Closing be transferred to Insurer, free and clear of all Interests (including without limitation the Interests of any of the Archdiocese Bound Parties), and all such Interests are unconditionally and forever released and extinguished as against the Purchased Property.  Without limiting the generality of

the foregoing, the sale of the Purchased Property under the Settlement Agreement shall be free and clear of all Abuse Claims (whether Known Abuse Claims or Unknown Abuse Claims), Direct Action Claims, Coverage Claims, Related Insurance Claims, Non-Insurer Contribution Claims, Insurer Contribution Claims, Medicare Claims, Penalty Claims, any other Channeled Claims, any other Barred Claims, and any other Claims arising from or related in any way to an Abuse Claim or any portion of the Purchased Property.

17.     Upon the Closing, (a) all of the Archdiocese Bound Parties', the Debtor Parties' Estates', and the Settlement Trustee's rights under and with respect to the Purchased Property, if any, shall be permanently and irrevocably extinguished as if the Archdiocese Policies had never been issued and (b) the Insurer Released Parties shall be entitled to all of the protections afforded by § 363(m) of the Bankruptcy Code.

18.     Upon Closing, all Entities (and their respective successors and assigns), including but not limited to all governmental, tax, and regulatory authorities, Archdiocese Bound Parties, Non-Settling Insurers, Abuse Claimants, Direct Action Claimants, trade and other creditors, and any Entities holding Interests (whether legal or equitable, secured or unsecured, matured or unmatured, contingent or non-contingent, senior or subordinated) against, in, or with respect to the Purchased Property, including, without limitation, such Interests arising or accruing under or out of, in connection with, or in any way relating to the transfer of the Purchased Property to Insurer, hereby are forever barred, estopped, and permanently enjoined from asserting such Person's or Entity's Interests against the Purchased Property, the Insurer Released Parties, or the assets or property of any Insurer Released Parties.  Effective upon Closing, none of the Insurer Released Parties shall have any liability for any Claims (a) against the Debtor Parties, their Estates, or any of the Archdiocese Bound Parties or (b) that arise under or related in any way or in respect of the Purchased Property.

19.    The transfer of the Purchased Property to Insurer pursuant to the Settlement Agreement constitutes a legal, valid, and effective transfer of the Purchased Property, and shall vest Insurer with all right, title, and interest of the Archdiocese and the Archdiocese Bound Parties in and to the Purchased Property.  Upon Closing, the Archdiocese Policies shall be terminated and no longer in force or effect, exhausted in retrospect as to all coverages, and all Interests that the Archdiocese or any other Person or Entity (including without limitation any of the other Archdiocese Bound Parties) may have had, may presently have, or may in the future have, in such Purchased Property are released and extinguished, and all such Entities (including without limitation the Archdiocese Bound Parties) hereby are forever barred, estopped, and permanently enjoined from asserting any such Interest against the Purchased Property and/or any of the Insurer Released Parties.  Insurer's payment of the Settlement Amount to the Settlement Trust or Escrow Agent constitutes full and complete performance of any and all obligations under the Purchased Property, including without limitation any performance owed to the Archdiocese Bound Parties, and all limits of coverage under the Archdiocese Policies, including per person, per occurrence, per claim, "each professional incident," per event, per accident, total, and aggregate limits, shall be deemed fully and properly exhausted.

20.    Upon occurrence of the Closing:

(a)    all Interests the Archdiocese Bound Parties may have had, may presently have, or in the future may have in the Purchased Property, as applicable, are released pursuant to the terms of the Settlement Agreement; and

(b)    the Archdiocese Bound Parties accept Insurer's payment of the Settlement Amount to the Settlement Trust or Escrow Agent in full and complete satisfaction of Insurer's past, present, and future obligations, including, without limitation, any obligations to any of the Archdiocese Bound Parties under such Purchased Property or arising therefrom, as to any and all Claims for insurance coverage or policy benefits of any nature whatsoever arising out of or related in any way to such Purchased Property (including Coverage Claims), whether legal or equitable, known or unknown, suspected or unsuspected, fixed or contingent, direct or

21

indirect, and regardless of whether such Claims arise from, relate to, or are in connection with the Abuse Claims, Barred Claims, or otherwise.

### No Successor Liability

21.     The transfer of the Purchased Property to Insurer shall not result in any Insurer Released Parties or the Purchased Property having any of the following:  (a) any liability or responsibility for Interests in or Claims against the Archdiocese Bound Parties or any of their Related Parties; (b) liability whatsoever with respect to or be required to satisfy in any manner, whether at law or in equity, whether by payment, setoff, or otherwise, directly or indirectly, any Claims or Interests; or (c) any liability or responsibility to the Archdiocese Bound Parties except as is expressly set forth in the Settlement Agreement.

22.     Without limiting the generality of the foregoing, none of the Insurer Released Parties shall have any successor or vicarious liabilities of any kind or character, including, but not limited to, under any theory of antitrust, environmental, successor or transferee liability, labor law, successor or successor employer liability, *de facto* merger or joint venture, mere continuation or substantial continuity, whether known or unknown as of Closing, now existing or hereafter arising, whether fixed or contingent, whether asserted or unasserted, whether legal or equitable, whether liquidated or unliquidated, including, but not limited to, liabilities on account of warranties, intercompany loans and receivables between the Archdiocese Bound Parties and any non-debtor subsidiary or affiliate (including, without limitation, any other Archdiocese Bound Party), liabilities relating to or arising from any environmental laws, and any taxes arising, accruing, or payable under, out of, in connection with, or in any way relating to the Purchased Property prior to Closing.

### Sale Injunction

23.     Pursuant to §§ 105(a) and 363(f) of the Bankruptcy Code, and in consideration of the undertakings of Insurer pursuant to the Settlement Agreement, including Insurer's purchase of

the Purchased Property free and clear of all Claims and Interests pursuant to § 363(f) of the Bankruptcy Code as provided herein, any and all Entities that have held, now hold, or who may in the future hold any Claims or Interests (including without limitation all debt holders, all equity holders, governmental, tax and regulatory authorities, lenders, trade and other creditors, Abuse Claimants, holders of Direct Action Claims, Perpetrators, Non-Settling Insurers, the Archdiocese Bound Parties, and all others holding Claims or Interests of any kind or nature whatsoever, including, without limitation, those Claims released or to be released pursuant to the Settlement Agreement), which Claims or Interests are under, arise out of, relate to, or connect in any way with an Abuse Claim or any of the Purchased Property, including, without limitation, (a) all Abuse Claims (whether Known Abuse Claims or Unknown Abuse Claims), Direct Action Claims, Coverage Claims, Related Insurance Claims, Non-Insurer Contribution Claims, Insurer Contribution Claims, Medicare Claims, Penalty Claims, any other Channeled Claims, any other Barred Claims, and any other Claims arising from or related in any way to an Abuse Claim or any portion of the Purchased Property, (b) the payment of any of the Claims identified previously, including, without limitation, Abuse Claims, Direct Action Claims, and Coverage Claims and (c) all other Interests, are hereby permanently stayed, enjoined, barred, and restrained from taking any Action, directly or indirectly, to assert, enforce or attempt to assert or enforce any such Claim or Interest against any of (x) the Insurer Released Parties, (y) the assets or property of any Insurer Released Parties, or (z) the Purchased Property, including by:

(a)     commencing, conducting, or continuing in any manner, whether directly or indirectly, any suit, action, or other proceeding of any kind, in any forum, with respect to any such Claim or Interest, against any Insurer Released Party, or any property or interest in property of any Insurer Released Party;

(b)     enforcing, levying, attaching, collecting, or otherwise recovering, or seeking to accomplish any of the preceding, by any manner or means, either directly or indirectly, any judgment, award, decree, or order against any Insurer Released Party, or any property or interest in property of any Insurer Released Party;

     (c)     creating, perfecting, or enforcing, by any manner or means, whether directly or indirectly, or seeking to accomplish any of the preceding, any lien of any kind against any Insurer Released Party, or any property or interest in property of any Insurer Released Party;

     (d)     asserting, implementing, or effectuating any such Claim or Interest of any kind or accomplishing any setoff, right of subrogation, indemnity, contribution or recoupment of any kind, whether directly or indirectly, against:  (A) any obligation due to any of the Insurer Released Parties, (B) any of the Insurer Released Parties, or (C) any property or interest in property of any Insurer Released Party; and

     (e)     taking any act, in any manner, in any place whatsoever, that does not conform to, or comply with, the provisions of this Order.

The actions described in this Paragraph 23 are "**Enjoined Actions**," and the injunction set forth herein is the "**Sale Injunction**."  The Sale Injunction shall be a permanent injunction against the Enjoined Actions and may not be modified, dissolved, or terminated.

24.     The Sale Injunction shall be effective upon Closing.  The Sale Injunction bars pursuit of the above referenced Claims and/or Interests against the Insurer Released Parties, or the property or assets of each (including, without limitation, the Purchased Property), but against no other person or thing.

25.     In a successful action to enforce this Sale Injunction in response to a willful violation thereof, the moving party may seek an award of costs (including reasonable attorneys' fees) against the non-moving party, and such other legal or equitable remedies as are just and proper, after notice and a hearing.

26.     The Sale Injunction shall not enjoin (a) the right of any Person or Entity against the Settlement Trust or a Non-Settling Insurer, or (b) the Settlement Trustee from enforcing the Settlement Trust Documents.

## Preserved Coverage

27.     Nothing in this Order, the Settlement Agreement or the Sale Transaction affects Insurer's Preserved Coverage or the Archdiocese Bound Parties' rights or continuing obligations

in connection with the Preserved Coverage under the Archdiocese Policies issued by Insurer, all of which shall survive the Settlement Agreement Effective Date, Bankruptcy Plan Effective Date and the closing of the Sale Transaction.

**Additional Provisions**

28.     From and after the date hereof, no Person or Entity shall take or cause to be taken any action that would adversely affect or interfere with the transfer of the Purchased Property to Insurer in accordance with the terms of the Settlement Agreements and this Order.

29.     This Bankruptcy Court hereby retains jurisdiction, regardless of whether a Chapter 11 plan has been confirmed in the Bankruptcy Case and consummated and irrespective of the provisions of any such plan or order confirming such plan, to enforce and implement the terms and provisions of the Settlement Agreement, all amendments thereto, any waivers and consents thereunder, and of any agreement(s) executed in connection therewith in all respects, including but not limited to retaining jurisdiction to: (a) compel delivery of the Purchased Property to Insurer in accordance with the terms of the Settlement Agreement; (b) resolve any dispute, controversy, or claim arising under or related to the Settlement Agreement, or the breach thereof; and (c) interpret, implement, and enforce the provisions of this Order and resolve any disputes related thereto.

30.     Nothing contained in any plan confirmed in the Bankruptcy Case or any order of this Bankruptcy Court confirming such plan shall conflict with or derogate from the provisions of the Settlement Agreement or the terms of this Order.

31.     This Order shall not limit or preclude the entry or effectiveness of any additional releases or injunctions that may be granted protecting the Insurer Released Parties and/or the assets or property of any Insurer Released Parties in connection with, or as part of, any order confirming a Chapter 11 plan.

32.     The failure specifically to include any particular provision of the Settlement Agreement in this Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Bankruptcy Court that the Settlement Agreement be authorized and approved in its entirety.

33.     The transactions contemplated by the Settlement Agreement are undertaken by Insurer in good faith, as that term is used in § 363(m) of the Bankruptcy Code.  Insurer is a good faith purchaser of the Purchased Property and is entitled to all the protections afforded by § 363(m) of the Bankruptcy Code.  Accordingly, any reversal or modification on appeal of the authorization provided herein to consummate the Sale Transaction shall not affect the validity of the Sale Transaction to Insurer.

34.     Insurer has given substantial consideration under the Settlement Agreement for the benefit of the Debtor Parties, their Estates, and creditors, along with the other Archdiocese Bound Parties. Such consideration given by Insurer constitutes valid and valuable consideration for the Purchased Property and the releases set forth in the Settlement Agreement, including, without limitation, the extinguishment and release of all Interests pursuant to this Order.  The consideration provided by Insurer for the Purchased Property under the Settlement Agreement is fair and reasonable; accordingly, the purchase may not be avoided under § 363(n) of the Bankruptcy Code.

35.     The terms and provisions of the Settlement Agreement and this Order shall be binding notwithstanding any subsequent appointment of any trustee(s) examiner(s) or receiver(s) under any Chapter of the Bankruptcy Code or any other law, and all such provisions and terms shall likewise be binding on such trustee(s), examiner(s), or receiver(s) and shall not be subject to rejection or avoidance by the Debtor Parties, their Estates, their creditors, or any examiner(s) or receiver(s).

36.     The failure specifically to include any particular provision of the Settlement Agreement in this Order shall not diminish or impair the effectiveness of such provision, it being the intent of this Bankruptcy Court that the Settlement Agreement and the Parties' performance thereof be authorized and approved in its entirety.

37.     Pursuant to the provisions of the Settlement Agreement, each of the Archdiocese Bound Parties and Insurer shall be authorized to take, or cause to be taken, all appropriate action to do, or cause to be done, all things necessary, proper, or advisable under applicable law or otherwise to consummate and make effective the transactions contemplated by the Settlement Agreement.

38.     All time periods set forth in this Order shall be calculated in accordance with Bankruptcy Rule 9006(a).

39.     All obligations of the Debtor Parties under the Settlement Agreement shall be deemed administrative expenses of their Estates under §§ 503(b) and 507(a)(1) of the Bankruptcy Code.

40.     Each and every federal, state, and local governmental agency or department is hereby directed to accept this Order in lieu of any document necessary to consummate the transactions contemplated by the Settlement Agreement and this Order.

41.     The Settlement Agreement and any related agreements, documents, or other instruments may be modified, amended, or supplemented by the Parties, in a writing signed by the Parties, and in accordance with the terms thereof, without further order of this Bankruptcy Court; *provided* that such modification, amendment, or supplement does not constitute a material change to the relief sought in the Approval Motion and approved by this Order.

**IT IS FURTHER ORDERED** that counsel for the Debtor is instructed to serve this Order by first-class U.S. Mail within three days on all parties not receiving electronic notice through this

Court's CM/ECF system pursuant to applicable Federal Rules of Bankruptcy Procedure, this Court's Local Rules, this Court's Complex Case Procedures, and any Order issued by this Court limiting notice and file a certificate of service into the record.

New Orleans, Louisiana, November 26, 2025.

_____
MEREDITH S. GRABILL
UNITED STATES BANKRUPTCY JUDGE

Execution Version

## SETTLEMENT AGREEMENT, RELEASE, AND POLICY BUYBACK

This Settlement Agreement, Release, and Policy Buyback ("**Settlement Agreement**") is hereby made by, and between, and among The Roman Catholic Archdiocese of New Orleans (the "**Archdiocese**" or "**Debtor**" as further defined in Section 1.1.31 below), the other Archdiocese Signatory Parties (as defined in Section 1.1.15 below), and The Catholic Mutual Relief Society of America ("**Insurer**" as further defined in Section 1.1.49 below).  Insurer, the Archdiocese, the other Archdiocese Signatory Parties, and the Creditors' Committee (as defined below), collectively are the "**Parties**" and each a "**Party**" to this Settlement Agreement.

### RECITALS:

WHEREAS, on May 1, 2020 (the "**Petition Date**" as further defined in Section 1.1.67 below), the Archdiocese filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Eastern District of Louisiana (the "**Bankruptcy Court**" as further defined in Section 1.1.17) pending under Case No. 20-10846 (the "**Bankruptcy Case**" as further defined in Section 1.1.16 below);

WHEREAS, each of the Additional Debtors (as defined in Section 1.1.11 below) intends to file in the Bankruptcy Court a voluntary petition for relief under Chapter 11 of the Bankruptcy Code;

WHEREAS, certain Entities have asserted or may hold Claims, including Abuse Claims, against the Archdiocese Bound Parties (each as defined below);

WHEREAS, Insurer issued, allegedly issued, may have issued, assumed by novation or otherwise, or may be administering the Archdiocese Policies (as defined in Section 1.1.9 below) providing certain coverage to the Archdiocese Bound Parties;

WHEREAS, asserted disputes between the Debtor Parties (as defined below) and Insurer have arisen, and assertable disputes between the Archdiocese Bound Parties and Insurer may arise in the future, concerning the scope and nature of Insurer's responsibilities, if any, to provide insurance coverage to the Archdiocese Bound Parties under the Archdiocese Policies (as further defined in Section 1.1.28 below, the "**Coverage Claims**");

WHEREAS, claimants may contend, as a matter of Louisiana law, particularly La. Rev. Stat § 22:1269 *et seq*., that certain Entities may have Claims arising under or related to the Archdiocese Policies that could entitle them to bring a Direct Action Claim (as defined in Section 1.1.35 below) against Insurer;

WHEREAS, claimants may contend that as a matter of Louisiana law, the time within which Claims relating to Abuse may be asserted against certain of the Archdiocese Bound Parties and/or the Insurer may not have expired with respect to certain Claims;

WHEREAS, the Archdiocese Signatory Parties and Insurer, without any admission of liability or concession of the validity of the positions or arguments advanced by each other, now wish to compromise and resolve fully and finally any and all Coverage Claims and all other disputes between and among them and to release Insurer from any further obligations under the

**EXHIBIT 1**

Archdiocese Policies except with respect to Preserved Coverage (as defined in Section 1.1.67 below);

WHEREAS, Insurer would not pay the full amount of the Settlement Amount (as defined in Section 1.1.81 below) without the buy-back of the Subject Interests (as defined below) in the Archdiocese Policies, including without limitation, the interests of the Archdiocese, Additional Debtors, other Archdiocese Bound Parties and holders of Direct Action Claims, pursuant to section 363 of the Bankruptcy Code, and without the Sale Injunction, the Channeling Injunction, Supplemental Settling Insurers' Injunction, and Gatekeeping Injunction (each as defined below), additionally providing protection to the Insurer Released Parties (as defined below) from Claims against the Insurer Released Parties and their property;

WHEREAS, through this Settlement Agreement and the Plan (as defined in Section 1.1.68 below) the Archdiocese Signatory Parties intend to provide Insurer Released Parties with the broadest possible release of all Claims and Subject Interests with respect to the Archdiocese Policies, except with respect to Preserved Coverage; and

WHEREAS, through this Settlement Agreement and the Plan, as part of the compromise and resolution of the Coverage Claims, the Debtor Parties and Insurer also wish to effect a sale, pursuant to § 363(b), (f), and (m) of the Bankruptcy Code of the Archdiocese Policies, along with the Coverage Claims and Related Insurance Claims (the "**Purchased Property**" as further defined in Section 1.1.71 below), to provide the Insurer Released Parties with the broadest possible release and buyback with respect to the Archdiocese Policies, resulting in the Insurer Released Parties having no obligations now or in the future with respect to the Archdiocese Policies, including without limitation to any Direct Action Claim, except with respect to Preserved Coverage.

NOW, THEREFORE, in consideration of the foregoing recitals and of the mutual covenants contained in this Settlement Agreement, the sufficiency of which is hereby acknowledged, and intending to be legally bound subject to the approval of the Bankruptcy Court pursuant to Section 2 below, the Parties hereby agree as follows:

## 1.    DEFINITIONS

1.1    As used in this Settlement Agreement (as defined above), the following terms shall have the meanings set forth below.

1.1.1    "**Abuse**" means any of the following actual or alleged acts: (a) touching by the Perpetrator of the person's intimate body parts (genitals, breasts, or buttocks), the touching by the person of the Perpetrator's intimate body parts, showing pictures of the person's body or other persons' bodies, taking pictures of the person's body, showing pornography, or making images of the person while naked or engaged in any sexual activity, or any sexualized interaction including observing the person in bathing, toileting, or undressing that was made possible by the Perpetrator's position of authority, or by the inducement of the Perpetrator; or (b) sexual intercourse, simulated intercourse, masturbation, cunnilingus, fellatio, anal intercourse, or any intrusion, however slight, to the genital or anal openings: (i) of the person's body by any part of the Perpetrator's body or any object used by the Perpetrator for this purpose; or (ii) of the person's body by any

part of the body of the Perpetrator or by any part of the body of another person, or by any object used by the Perpetrator or another person for this purpose; (c) inappropriate physical contact and/or contact that infringes upon another's personal, physical boundaries including but not limited to groping, kissing, extended hugging, and/or any unwelcomed touching; (d) grooming or trying to create a special relationship, including but not limited to: talk of a sexual nature, talk of a romantic nature, communications expressing individual love to the person, as opposed to a salutation, providing material resources or experiences which induce the person into a relationship where trust is then violated; or (e) any actual or alleged acts of the kind described in subsections (a)-(c) above that occur between or among minors and that the Perpetrator orchestrates or encourages.  For the avoidance of doubt, "Abuse" also includes: any actual or alleged conduct which (a) is described in the Louisiana Child Victims Act or (b) would constitute (i) a sexual offense as defined in article 603(2) of the Louisiana Children's Code; (ii) sexual battery as defined in LA. REV. STAT. §§ 14:43.1; 14:43.1.1; 14:43.2; 14: or 43.3, (iii) a crime against nature as defined in LA. REV. STAT. § 14:89, or (i) pornography involving juveniles as defined in LA. REV. STAT. § 14:81.1, or with respect to the foregoing subsection (i)-(iv), any predecessor statute that prohibited such conduct at the time of the act.

1.1.2   "**Abuse Action**" means an Action asserting an Abuse Claim against any of the Covered Parties.

1.1.3   "**Abuse Claim**" means any Claim that has been asserted, or could be asserted, against any Settling Party or Non-Settling Insurer, that is attributable to, arises from, is based upon, relates to, or results from, in whole or in part, directly, indirectly, or derivatively alleged Abuse that occurred, in whole or in part, before the applicable Debtor's Petition Date or Additional Debtors' Petition Date, including any such Claim that seeks monetary damages or any other relief, under any legal or equitable theory of liability, including, but not limited to, the following:  vicarious liability; *respondeat superior*; any conspiracy, fraud-based theory, including fraud in the inducement; any negligence-based or employment-based theory, including negligent hiring, negligent, insufficient, or inadequate supervision, retention or misrepresentation; any theory based on misrepresentation, concealment, or unfair practice; public or private nuisance; or any theory, including, without limitation, any theory based on public policy or any acts or failures to act by any Settling Party, or any other Entity for whom any Settling Party is allegedly responsible, including, but not limited to, any such Abuse Claim against any Settling Party, Non-Settling Insurer, or any other Entity for whom any Settling Party or Non-Settling Insurer is alleged to be responsible.  Abuse Claims are:  (a) the Known Abuse Claims, which are treated in Class 3; and (b) the Unknown Abuse Claims, which are treated in Class 4.  For the avoidance of doubt, "Abuse Claim" includes (a) all Unknown Abuse Claims, (b) Claims or causes of action defined or described in the Revival Window Laws against the Archdiocese or any other Archdiocese Bound Party, (c) Direct Action Claims, and (d) any Claim against the Archdiocese or any other Archdiocese Bound Party that is attributable to, arises from, is based upon, relates to, or results from Abuse that, as of the Petition Date is barred by any applicable statute of limitations, and in each case, irrespective of whether (x) such Claims also involve the conduct of joint tortfeasors (or similar concepts under applicable law), (y) such Claims arise under, or were revived pursuant to, the Revival Window Laws, or any future reviver law, statute, or binding

precedential decision passed or issued on or after the Bankruptcy Plan Effective Date, or (z) a proof of claim has been filed, before or after the Claims Bar Date, or not at all, or an Abuse Action has been commenced with respect to such Claim. "Abuse Claim" does not include: (a) Related Insurance Claims or Coverage Claims against Settling Insurers or Non-Settling Insurers; (b) Non-Insurer Contribution Claims with respect to any Abuse Claim; (c) Insurer Contribution Claims with respect to any Abuse Claim; or (d) a Claim against the Diocese of Houma-Thibodaux SD, or the Diocese of Baton Rouge SD, with respect to a Claim against these dioceses only. For the avoidance of doubt, a Claim based on Abuse solely occurring following the applicable Petition Date is not an Abuse Claim. Nothing in this definition shall constitute a waiver of any defense that would otherwise be available under applicable law to any Settling Party, the Settlement Trust, or any other Entity.

1.1.4 "**Abuse Claim Release and Certification**" means a written release in favor of the Insurer Released Parties, in the form of Exhibit C to the Acceptable Plan, or otherwise in form and substance acceptable to the Parties, which an Abuse Claimant must deliver before he or she is entitled to Settlement Trust Distributions, which shall provide that the Claimant releases the Insurer Released Parties from any and all Claims related to his/her Abuse Claim or any of the Archdiocese Policies, subject to Section 12.14 and related provisions of the Plan.

1.1.5 "**Abuse Claimant**" means the holder of an Abuse Claim, including, but not limited to, any Known Abuse Claim, Unknown Abuse Claim, or Direct Action Claim. For the avoidance of doubt, Abuse Claimants are Creditors. The definition of an Abuse Claimant includes the legal representative of the holder of an Abuse Claim, such as a bankruptcy trustee, the estate of a deceased individual who held an Abuse Claim, or the personal executor or personal representative of the estate of a deceased individual who held an Abuse Claim, as the case may be. An Entity holding the following Claim is not an Abuse Claimant: (i) a Non-Insurer Contribution Claim with respect to such Abuse Claim; (ii) an Insurer Contribution Claim with respect to such Abuse Claim; (iii) a Claim against the Diocese of Houma-Thibodaux SD, or the Diocese of Baton Rouge SD, with respect to such Entity's claim against such dioceses only.

1.1.6 "**Acceptable Plan**" means the *Fifth Amended Joint Chapter 11 Plan of Reorganization for The Roman Catholic Church of the Archdiocese of New Orleans and Additional Debtors, Proposed by the Debtor, the Additional Debtors, and The Official Committee of Unsecured Creditors* filed at Docket No. [4518], and its exhibits and schedules, which as may be modified solely in accordance herewith (i.e., with the consent of the Insurer), and such modified plan constituting the "Acceptable Plan" for the purposes hereof.

1.1.7 "**Archdiocesan Parishes**" means all currently Catholic Church parishes and missions, as identified on Exhibit B-1, Part I, of the Acceptable Plan. Each of the Archdiocesan Parishes is organized as a non-profit corporation. For the avoidance of doubt, the definition of Archdiocesan Parishes does not include St. Louis Cathedral, Our Lady of Guadalupe Church & Shrine of St. Jude, or any Suppressed Archdiocesan Parish identified on Exhibit B-1, Part II, of the Acceptable Plan.

1.1.8   "**Archdiocesan Schools**" means the means the following schools that are owned and operated by the Archdiocese: (a) the Academy of Our Lady High School; (b) Archbishop Chapelle High School; (c)Archbishop Hannan High School; (d) Archbishop Rummel High School; (e) Archbishop Shaw High School; (f) Pope John Paul II High School; (g) St. Charles Catholic High School; (h) St. Scholastica Academy; and (i) St. Michael Special School.

1.1.9   "**Archdiocese Policies**" means (a) the contracts, binders, certificates, and policies of insurance that are listed on Schedule 1 hereto, and (b) all other known and unknown contracts, binders, certificates, or policies of general liability insurance, in effect on or before the applicable Archdiocese's Petition Date or Additional Debtors' Petition Date that were issued to, or for the benefit of, or subscribed on behalf or that otherwise actually insure, (i) the Archdiocese or any of its predecessors in interest, successors, or assigns, (ii) any of the Additional Debtors or Non-Debtor Catholic Entities, (iii) policies issued to the Archdiocese that name as an insured or additional insured (or related concept under applicable law or document) the Diocese of Houma-Thibodaux or Diocese of Baton Rouge, but not policies issued to either of these dioceses that were not also issued to the Archdiocese or name it as insured, (iv) any Entity owned, created, operated, affiliated with, or controlled by the Archdiocese or the Office of the archbishop for the Archdiocese of New Orleans, or (v) any institution, religious organization or subsidiaries of any organization listed in the declarations of the Archdiocese Policies, or any other organization coming under any named insured's control or active management; in each case of (a) and (b), that were issued, subscribed to, or underwritten in whole or in part or allegedly issued, subscribed to, or underwritten in whole or in part by Insurer or any of its predecessors.

1.1.10   "**Action**" means any lawsuit, proceeding, or other action in a court, or any arbitration.

1.1.11   "**Additional Debtors**" means the Entities listed on Acceptable Plan Exhibit B-1 and on Schedule 2 hereto.  As used herein, references to the "Additional Debtors" includes the Additional Debtor's Estates.

1.1.12   "**Approval Motion**" means the motion filed in the Archdiocese Bankruptcy Case at Docket No. 4181 seeking approval of this Settlement Agreement as described in Section 2.1 of this Settlement Agreement.

1.1.13   "**Approval Order**" means the order granting the Approval Motion described in Section 2.1 of this Settlement Agreement and providing the relief described in Section 2.1 of this Settlement Agreement and in substantially form attached **Exhibit A,** with only such changes as are satisfactory to Insurer.

1.1.14   "**Archbishop**" has the meaning given to it in Section 3.7.

1.1.15   "**Archdiocese Signatory Parties**" means, collectively, (a) the Debtor Parties and (b) the Non-Debtor Catholic Entities.

1.1.16 "**Bankruptcy Case**" means all of the following: (a) with respect to the Archdiocese, "Bankruptcy Case" has the meaning set forth in the Recitals; and (b) with respect to any given Additional Debtor, "Bankruptcy Case" means the case initiated when such Additional Debtor filed in the Bankruptcy Court a voluntary petition for relief under Chapter 11 of the Bankruptcy Code.

1.1.17 "**Bankruptcy Court**" means the United States Bankruptcy Court for the Eastern District of Louisiana, having subject matter jurisdiction over the Bankruptcy Cases and, to the extent of any reference withdrawal made under section 157(d) of title 28 of the United States Code, the District Court.

1.1.18 "**Bankruptcy Plan Effective Date**" means the date upon which a Plan approved by the Bankruptcy Court that contains terms and conditions consistent with those required by this Settlement Agreement becomes effective.

1.1.19 "**Barred Claim**" means any Claim against a Settling Party that is under, arises out of, relates (directly or indirectly) to, or connects in any way with an Abuse Claim or any of the Archdiocese Policies, including, but not limited to, any: (a) Abuse Claim; (b) Direct Action Claim; (c) Coverage Claim; (d) Related Insurance Claim; (e) Non-Insurer Contribution Claim; (f) Insurer Contribution Claim; (g) Medicare Claim; (h) Penalty Claim; and (i) any other Claim that is otherwise released herein. A Barred Claim further includes any Claim against a Settling Party based on allegations that it is an alter ego or liable as a successor of an Entity that is not a Settling Party or that the Settling Party's corporate veil should be pierced on account of Claims against an Entity that is not a Settling Party or based on any other theory under which the legal separateness of any Person and any other Entity may be disregarded to impose liability for a claim on either such Entity. Notwithstanding the foregoing, Barred Claims do not include any Claims to the extent they are asserted against (x) Non-Settling Insurers or (y) Excluded Parties, notwithstanding that such Entity may also have asserted or be able to assert a Claim for contribution, indemnity, reimbursement, or subrogation against any Settling Party relating to or arising from a such Claim; *provided, however*, that, for the avoidance of doubt, (i) any Claims that assert liability against such Entity in conjunction with a Settling Party will in all events be Barred Claims as to the Settling Party, (ii) any such Claim for contribution, indemnity, reimbursement, or subrogation against a Settling Party is a Barred Claim; and (iii) any Entity who has actually or allegedly acquired or been assigned the right to make a claim for coverage under any Archdiocese Policy is not an Excluded Party for the purposes of this definition.

1.1.20 "**Catholic Charities**" has the meaning set forth in Section 6.3.15.

1.1.21 "**Channeling Injunction**" has the meaning set forth in Section 2.2.2.

1.1.22 "**Claim**" means any past, present or future claim, demand, Action, request, right, cause of action, suit, proceeding or liability of any kind or nature whatsoever, whether sounding in law, equity, tort, warranty, contract, or under any other theory, known or unknown, actual or alleged, asserted or not asserted, suspected or not suspected, anticipated or unanticipated, accrued or not accrued, fixed or contingent, which has been

or may be asserted by or on behalf of any Entity, whether seeking damages (including compensatory, exemplary, punitive, or Penalty claims) or equitable, mandatory, injunctive, or any other type of relief, including cross-claims, counterclaims, third-party claims, lawsuits, administrative proceedings, notices of liability or potential liability, arbitrations, or orders, including without limitation whether by way of direct action, subrogation, contribution, indemnity, alter ego, veil piercing, or regulatory action, or otherwise, regardless of whether such Claims arise under law, in equity, or under statute, before or after the Petition Date(s), or *in rem* or *in personam*, and include all Claims for damages to the environment or based on any theory of *respondeat superior,* vicarious, successor or transferee liability, or change in control, and any other claim within the definition of "claim" in section 101(5) of the Bankruptcy Code.

1.1.23  **"Claims Bar Date"** means the date(s) and time(s) indicated in the Final Order(s) (which may be the Plan Confirmation Order) setting the deadline(s) for filing proofs of Abuse Claim against the Debtor or Additional Debtor(s), as applicable.

1.1.24  **"CMS"** has the meaning set forth in Section 2.4.1.

1.1.25  **"Co-Insured Party"** means  any other Entity that is a "Named Assured" or "named insured" or "protected person" under the Archdiocese Policies, and all other Entities that are determined by agreement or a court of competent jurisdiction to be an "Assured," an "Additional Assured," an "insured," or "protected person" or otherwise entitled to insurance coverage under any Archdiocese Policies.

1.1.26  **"Conditional Payment"** means any payment made to an Abuse Claimant under the MMSEA, including any payment by a Medicare Advantage Organization (as defined in the MSPA).

1.1.27  **"Controlling Document Provision"** has the meaning given to it in Section 2.2.9.

1.1.28  **"Covered Parties"** or **"Archdiocese Bound Parties"** means, collectively, the following Entities: (a) the Debtor Parties; (b) the Reorganized Debtor; (c) the Reorganized Additional Debtors; (d) the Non-Debtor Catholic Entities; (e) the Diocese of Houma-Thibodaux CP and Diocese of Baton Rouge CP; (f) the Parish Schools and Archdiocesan Schools; (g) any Entity owned, created, affiliated with, or controlled by the Archdiocese or the Office of the archbishop for the Archdiocese of New Orleans; (h) any Co-Insured Party; and (i) with respect to each of the foregoing Entities in clauses (a) through (h), such Entities' predecessors, successors, assigns, subsidiaries, direct and indirect past, present, and future affiliates, current and former officers, directors, principals, equity holders, trustees, members, partners, managers, officials, advisory board members, advisory committee members, employees, agents, volunteers, attorneys, financial advisors, accountants, investment bankers, consultants, representatives, and other professionals, and such Entities' respective heirs, executors, and estates.  For the avoidance of doubt, the Entities in clauses (g), (h), and (i) are only Archdiocese Bound Parties in connection with the Archdiocese Policies.

1.1.29  "**Coverage Claims**" has the meaning set forth in the Recitals and further includes any Claim under relating to or arising out of the Archdiocese Policies or the rights and obligations thereunder, or the breach thereof, including any Claim seeking insurance coverage.

1.1.30  "**Creditors' Committee**" means the Official Committee of Unsecured Creditors appointed in the Archdiocese's Chapter 11 Case on May 20, 2020, [Docket Nos. 94 & 114], as such committee may be reconstituted from time to time.

1.1.31  "**Debtor**" or "**Archdiocese**" means, before the Bankruptcy Plan Effective Date, The Roman Catholic Church of the Archdiocese of New Orleans of Louisiana.  As used herein, references to the "Debtor" or "Archdiocese" includes the Debtor's Estate.

1.1.32  "**Debtor Parties**" means (i) the Archdiocese and (ii) all of the Additional Debtors.

1.1.33  "**Diocese of Baton Rouge**" means the Diocese of Baton Rouge.  References to the "Diocese of Baton Rouge CP" refer to the period prior to (i) its founding, (ii) erection, or (iii) July 22, 1961 whichever occurred last; references to the "Diocese of Baton Rouge SD" refer to the period after such date.

1.1.34  "**Diocese of Houma-Thibodaux**" means the Diocese of Houma-Thibodaux.  References to the "Diocese of Houma-Thibodaux CP" refer to the period prior to (i) its founding, (ii) erection, or (iii) June 5, 1977, whichever occurred last; references to the "Diocese of Houma-Thibodaux SD" refer to the period after such date.

1.1.35  "**Direct Action Claim**" means any Claim by any Entity that is a "direct action" as that term is used in La. Rev. Stat § 22:1269 *et.* seq (or similar law in other jurisdictions), against any Insurer Released Party or related to any Archdiocese Policy, including, without limitation, (a) any claim that is similar or related to any Claim that could also be asserted by the Archdiocese or any Archdiocese Bound Party, (b) any Claim that directly or indirectly arises out of, relates to, or is connected with any Abuse Claim, (c) any Claim that directly or indirectly arises out of, relates to, or is in connection with any Insurer Released Party's  handling of any Abuse Claim under the laws of any applicable jurisdiction, or (d) any Claim arising under any law of any jurisdiction that may give a third party a direct Cause of Action against an Insurer Released Party for monetary or other relief.

1.1.36  "**Entity**" means any individual, corporation, corporation sole, partnership, association, limited liability company, joint stock company, proprietorship, unincorporated organization, joint venture, trust, estate, executor, legal representative, or any other entity or organization, as well as any federal, international, foreign, state, or local governmental or quasi-governmental entity, body, or political subdivision or any agency, department, board or instrumentality thereof, any other "Person" within the definition of section 101(41) of the Bankruptcy Code, and any successor in interest, heir executor, administrator, trustee, trustee in bankruptcy, or receiver of any Entity and also has the meaning set forth in section 101(15) of the Bankruptcy Code.

1.1.37 "**Escrow Agent**" means the agent appointed in accordance with the Escrow Agreement.

1.1.38 "**Escrow Agreement**" means the agreement governing the escrow which shall hold the Settlement Amount in escrow and in trust for the benefit of Insurer, and which shall provide for the: (i) transfer of the Settlement Amount, with any accrued interest, to the Settlement Trust following the Settlement Agreement Effective Date, or (ii) return of the Settlement Amount to Insurer, with any accrued interest, upon receipt of notice that the Settlement Agreement has been terminated.

1.1.39 "**Estate**" means the (a) the Debtor's estate, and (b) Additional Debtors' estates, each created pursuant to section 541 of the Bankruptcy Code.

1.1.40 "**Excluded Party**" means the following Entities: (a) the Holy See (State of Vatican City); (b) any Perpetrator; and (c) any archdiocese or diocese (other than the Archdiocese itself), any Religious Order or other Entity that is an affiliate or associated with the Roman Catholic Church (in its capacity as such, and other than (i) the Non-Debtor Catholic Entities; (ii) the Diocese of Houma-Thibodaux CP and Diocese of Baton Rouge CP, (iii) the Parish Schools and Archdiocesan Schools; and (iv) any Co-Insured Party); *provided, however*, that any Entity who has actually or allegedly acquired or been assigned the right to make a claim for coverage under any Archdiocese Policy is not an Excluded Party.

1.1.41 "**Extra-Contractual Claim**" means any Claim against any Insurer Released Party seeking any type of relief, other than coverage or benefits, under or with respect to the Archdiocese Policies. Extra-Contractual Claims include Claims for compensatory, exemplary, or punitive damages, or attorneys' fees, interests, costs, or any other type of relief, alleging any of the following with respect to (a) any Archdiocese Policy; (b) any Claim allegedly or actually covered under a Archdiocese Policy; or (c) the conduct of any Insurer Released Party with respect to (a) or (b): (i) bad faith; (ii) failure to provide insurance coverage under any Archdiocese Policy, including any failure to investigate or to provide a defense or adequate defense; (iii) failure or refusal to compromise and settle any Claim insured under any Archdiocese Policy; (iv) failure to act in good faith; (v) violation or breach of any covenant or duty of good faith and fair dealing, whether express, implied, or otherwise; (vi) violation of any state insurance codes, state surplus lines statutes or similar codes or statutes; (vii) violation of any unfair claims practices act or similar statute, regulation or code, including any statute, regulation, or code relating to unlawful, unfair, or fraudulent competition, business, or trade practices, and/or untrue or misleading advertising; (viii) any type of misconduct; or (ix) any other act or omission of any type by any Insurer Released Party for which the claimant seeks relief other than coverage or benefits under a Archdiocese Policy. "Extra-Contractual Claims" further include all Claims relating to any Insurer Released Party's (x) handling of any Claims under the Archdiocese Policies, (y) conduct in negotiating this Settlement Agreement and/or the Plan, and (z) conduct in the settlement of any Claims. For the avoidance of doubt, Extra-Contractual Claims of the Archdiocese Bound Parties are included within the property Insurer is purchasing hereunder.

1.1.42 "**Final Order**" means an order as to which the time to appeal, petition for *certiorari*, petition for review, or move for reargument or rehearing has expired and as to which no appeal, petition for *certiorari*, or other proceedings for reargument or rehearing will then be pending and in the event that an appeal, *writ of certiorari*, petition for review, or reargument or rehearing thereof has been sought, such order will have been affirmed by the highest court to which such order was appealed, or *certiorari* or review has been denied or from which reargument or rehearing was sought, and the time to take any further appeal, petition for *certiorari*, petition for review, or move for reargument or rehearing will have expired; *provided, however*, that the possibility that a motion under Rule 59 or Rule 60 of the Federal Rules of Civil Procedure or any analogous rule under the Bankruptcy Rules may be filed with respect to such order will not cause such order not to be a Final Order.

1.1.43 "**Gatekeeper Injunction**" has the meaning set forth in Section 2.2.2.

1.1.44 "**HH**" has the meaning set forth in Section 6.3.15.

1.1.45 "**Indemnified Claims**" has the meaning set forth in Section 7.2 of this Settlement Agreement.

1.1.46 "**Indemnity Cost Reserve**" has the meaning set forth in Section 7.2.

1.1.47 "**Injunctions**" means the Sale Injunction, Channeling Injunction, Supplemental Settling Insurers' Injunction, and Gatekeeper Injunction.

1.1.48 "**Insurance Settlement Agreement**" has the meaning set forth in the Acceptable Plan.

1.1.49 "**Insurer**" means The Catholic Mutual Relief Society of America.

1.1.50 "**Insurer Contribution Claim**" means any (a) Non-Settling Insurer Contribution Claim or (b) Settling Insurer Contribution Claim.

1.1.51 "**Insurer Released Party**" means Insurer and its Related Parties, each in their capacities solely as such with respect to the Archdiocese Policies and all Subject Interests therein.

1.1.52 "**Known Abuse Claims**" means any Abuse Claim, other than an Unknown Abuse Claim, against any Settling Party, Settling Insurer, and/or Non-Settling Insurer.

1.1.53 "**Medicare Claims**" means any Claim by CMS, and/or any agent or successor of CMS, charged with responsibility for monitoring, assessing, or receiving reports made under MMSEA or pursuing a Claim under MSP Provisions, relating to any payments in respect of any Abuse Claim, including any Claim for reimbursement of conditional payments, and any Claim relating to reporting obligations.

1.1.54 "**MMSEA**" means § 111 of the Medicare, Medicaid, and SCHIP Extension Act of 2007 (P.L. 110-173), which imposes reporting obligations on those Entities with payment obligations under the MSPA.

1.1.55 "**MSPA**" means 42 U.S.C. §1395y et seq., or any other similar statute or regulation, and any related rules, regulations, or guidance issued in connection therewith or amendments thereto, including the regulations promulgated thereunder, found at 42 C.F.R. §411.1 et seq.

1.1.56 "**Non-Debtor Catholic Entity Policy Sale**" has the meaning set forth in Section 4.6.

1.1.57 "**Non-Debtor Catholic Entities**" collectively means those entities listed on the Acceptable Plan Exhibit B-2 and Schedule 2 hereto who are not Additional Debtors, but which are (a) insured (as a named insured, additional insured, or otherwise) under any of the Archdiocese Policies and/or (b) have actually or allegedly acquired or been assigned the right to make a claim for coverage under any of the Archdiocese Policies (excluding, however, for the avoidance of doubt, the Debtor Parties, the Settlement Trust, and any Abuse Claimant).

1.1.58 "**Non-Insurer Contribution Claim**" means any Claim for contribution, indemnity, equitable indemnity, subrogation, or equitable subrogation, allocation or reallocation, or reimbursement, or any other indirect or derivative recovery (as those terms are defined by the applicable non-bankruptcy law of the relevant jurisdiction), whether contractual or implied by law that is attributable to, arises from, is based upon, relates to, or results from, an Abuse Claim or payment of an Abuse Claim, and any other derivative or indirect Abuse Claim of any kind whatsoever, whether in the nature of or sounding in contract, tort, warranty or any other theory of law or equity whatsoever, other than a Non-Settling Insurer Contribution Claim or a Settling Insurer Contribution Claim.

1.1.59 "**Non-Settling Insurer**" means any insurer (together with its Related Parties) that is not a Settling Insurer.

1.1.60 "**Non-Settling Insurer Contribution Claim**" means all Claims, most commonly expressed in terms of contribution, indemnity, equitable indemnity, subrogation, or equitable subrogation, allocation or reallocation, or reimbursement, or any other indirect or derivative recovery, by a Non-Settling Insurer against any Settling Insurer for the payment of money  where such Non-Settling Insurer contends that it has paid more than its equitable or proportionate share of a Claim.

1.1.61 "**Parish Schools**" means the elementary Catholic schools that are owned and operated by the Archdiocesan Parishes. For the avoidance of doubt, the definition of Parish Schools expressly excludes Catholic schools that are owned and operated by Religious Orders and the Archdiocesan Schools. For the further avoidance of doubt, the Parish Schools are not separately incorporated.

1.1.62 "**Parties**" has the meaning set forth in the first paragraph of this Settlement Agreement.

1.1.63 [**Intentionally Omitted**.]

1.1.64 "**Penalty Claims**" means a Claim against any Settling Party or Settling Insurer for any fine, penalty, or forfeiture, or for multiple, exemplary, or punitive damages, arising before the applicable Archdiocese's Petition Date or Additional Debtors' Petition Date, to the extent that such fine, penalty, forfeiture, or damages are not compensation for actual pecuniary loss suffered by the Creditor holding such Claim.

1.1.65 "**Perpetrator**" means an individual who personally committed or is alleged to have personally committed an act of Abuse. For the avoidance of doubt, the definition of Perpetrator does not include any individual who did not personally commit an act of Abuse or is not alleged to have personally committed an act of Abuse, but against whom an Abuse Claim or Non-Insurer Contribution Claim is asserted nonetheless, or may be asserted, by virtue of such individual's position or service as a member, representative, contractor, consultant, professional, or volunteer of the Archdiocese or any Non-Debtor Catholic Entity or any council or representative body associated with such Entities.

1.1.66 "**Person**" has the meaning ascribed to it in section 101(41) of the Bankruptcy Code.

1.1.67 "**Petition Date**" means (a) with respect to the Archdiocese, May 1, 2020; and (b) with respect to each Additional Debtor, the date(s) on which such Additional Debtor files in the Bankruptcy Court its voluntary petition for relief under Chapter 11 of the Bankruptcy Code.

1.1.68 "**Plan**" refers to the Chapter 11 Plan of Reorganization for the Archdiocese and all Additional Debtors (and all exhibits annexed thereto) which shall, among other things, provide for the resolution of Abuse Claims and Subject Interests in the Archdiocese Policies as set forth herein, and which shall be in form and substance acceptable to Insurer in its sole discretion.

1.1.69 "**Plan Confirmation Order**" has the meaning set forth in Section 2.3.

1.1.70 "**Preserved Coverage**" means Insurer's obligations under Certificate No. 8554 issued by Insurer to the Archdiocese to defend and indemnify the protected persons under such certificate with respect to the bodily injury or personal injury claims listed in the attached Schedule 4, in each case, subject to the limits, declarations, terms and conditions of such certificate; *provided, however*, that Preserved Coverage shall not include coverage for any and all Abuse Claims or any and all other Barred Claims.

1.1.71 "**Purchased Property**" means any and all right, title, and interest (including all Subject Interests) in and to the Archdiocese Policies and the Related Insurance Claims and Coverage Claims.

1.1.72 "**Related Insurance Claim**" means (a) any Extra-Contractual Claim and (b) any other Claim that is under, arises out of, relates (directly or indirectly) to, or connects in any way with the Archdiocese Policies, including, without limitation, bad faith Claims.

1.1.73 "**Related Party**" means, with respect to any Entity, such Entity's (a) predecessors, successors, assigns, and any Entity that assumed the obligation of the

forgoing for the Archdiocese Policies by novation or otherwise (b) direct and indirect past, present, and future Affiliates (as defined in section 101(2) of the Bankruptcy Code), holding companies, merged companies, related companies, subsidiaries, divisions, acquired companies, joint ventures, joint venturers, (c) current and former employees, officers, directors, principals, partners, managing agents, trustees, volunteers, attorneys, financial advisors, accountants, investment bankers, consultants, representatives, brokers, adjusters, reinsurers, retrocessionaires, subrogees, agents, claims handling administrators, and other professionals, and (d) respective heirs, executors, estates, and nominees; and all Entities acting on behalf of, by, through or in concert with them, each solely in their capacities as such with respect to such Entity (and with respect to such Entity (including Insurer) that is an insurer of any Archdiocese Bound Party or has assumed the obligations of such by novation or otherwise, such insurer's applicable insurance policy(ies) (including the Archdiocese Policies)).

1.1.74 "**Religious Order**" means, collectively, an institute of consecrated life and societies of apostolic life which enable people who profess the evangelical counsels of chastity, poverty (or perfect charity), and obedience by religious vows or other sacred bonds, to be joined to the Roman Catholic Church without becoming members of the Roman Catholic Church hierarchy.

1.1.75 "**Reorganized Additional Debtors**" means the Additional Debtors, as reorganized pursuant to and under the Plan, or any successor thereto by merger, consolidation, conversion or otherwise, on or after the Bankruptcy Plan Effective Date, after giving effect to the transactions implementing the Plan.

1.1.76 "**Reorganized Debtor**" means the Debtor, as reorganized pursuant to and under the Plan, or any successor thereto by merger, consolidation, conversion or otherwise, on or after the Bankruptcy Plan Effective Date, after giving effect to the transactions implementing the Plan.

1.1.77 "**Revival Window**" means Section 2 of La. Acts 2021, No. 322, as amended by La. Acts 2022, No. 386, and La. Acts 2024, No. 481.

1.1.78 "**Revival Window Laws**" means the Revival Window, together with any other law that extends the prescriptive period or statute of limitations for asserting Abuse Claims under Louisiana or other applicable state law.

1.1.79 "**Sale Injunction**" has the meaning set forth in Section 2.1.

1.1.80 "**Settlement Agreement Effective Date**" means the first day on which: (a) the Archdiocese Signatory Parties and Insurer have executed this Settlement Agreement; (b) the Unknown Abuse Claims Representative shall have supported the releases provided for herein and the protections granted hereby and in the Plan in favor of the Insurer Released Parties, in a manner acceptable to Insurer in its sole discretion; (c) the Approval Order shall have become a Final Order; (d) the Plan Confirmation Order shall have become a Final Order; and (e) the Settlement Trust shall have been created pursuant to the Plan; *provided, however*, with the prior written consent of the Trustee, not to be

unreasonably withheld, Insurer may elect to waive the conditions set forth in clauses (b) through (e) and pay or direct the payment of the Settlement Amount to the escrow or Settlement Trust prior to the occurrence of the events set forth in (b) through (e) hereof, in which case, the date of such payment shall be the Settlement Agreement Effective Date for all purposes hereunder including the date of the closing of the purchase and sale of the Archdiocese Policies.

1.1.81 "**Settlement Amount**" means the sum of Two Million and 00/100 Dollars ($2,000,000.00) to be paid (in accordance with Section 3.1) by Insurer after satisfaction of all conditions precedent herein in accordance herewith.

1.1.82 "**Settlement Trust**" means the settlement trust established under the Plan for the purposes set forth therein, including assuming liability for all Channeled Claims (as defined in the Acceptable Plan) and Indemnified Claims (as defined herein), subject to the limitations on indemnification and liability contained in Section 7.2 of this Settlement Agreement.

1.1.83 "**Settlement Trust Agreement**" means the agreement between the Debtor and the Settlement Trustee governing the Settlement Trust, in the form of Exhibit D-1 to the Acceptable Plan.

1.1.84 "**Settlement Trust Allocation Protocol**" means the Settlement Trust Allocation Protocol (as defined and used in the Settlement Trust Agreement), in the form of Exhibit D-2 to the Acceptable Plan.

1.1.85 "**Settlement Trust Documents**" means, collectively, (a) the Settlement Trust Agreement, (b) the Settlement Trust Allocation Protocol, and (c) any other agreements, instruments and documents governing the establishment and administration of the Settlement Trust, which shall be consistent with the terms of the Plan, as the same may be amended or modified from time to time in accordance with the terms thereof.

1.1.86 "**Settlement Trustee**" means the Entity appointed to act as the initial trustee of the Settlement Trust pursuant to the terms of the Settlement Trust Documents, along with any successor trustee appointed in accordance with the Settlement Trust Documents.

1.1.87 "**Settling Insurer Contribution Claim**" means all Claims, most commonly expressed in terms of contribution, indemnity, equitable indemnity, subrogation, or equitable subrogation, allocation or reallocation, or reimbursement, or any other indirect or derivative recovery, by a Settling Insurer against any Settling Insurer or Non-Settling Insurer for the payment of money where such Settling Insurer contends that it has paid more than its equitable or proportionate share of a Claim.

1.1.88 "**Settling Insurers**" shall have the meaning set forth in the Acceptable Plan.

1.1.89 "**Settling Insurers' Policies**" shall have the meaning set forth in the Acceptable Plan.

14

1.1.90 "**Settling Parties**" means, collectively, the following Entities: (a) Archdiocese Bound Parties; and (b) the Settling Insurers.

1.1.91 "**Subject Interests**" means all Claims, liens (as defined by Section 101(37) of the Bankruptcy Code), encumbrances, interests, and other rights of any nature, whether at law or in equity, including any rights of contribution, indemnity, defense, subrogation, or similar relief, including: (a) all interests of the Archdiocese in, to and under the Archdiocese Policies; (b) all interests in, to, and under the Archdiocese Policies of any Entity other than the Archdiocese (including all Abuse Claimants and the Archdiocese Bound Parties); and (c) all interests in, to and under the Archdiocese Policies of any other Entity claiming coverage by, through, or on behalf of any Archdiocese Bound Party, including, without limitation, rights and interests as an insured, co-insured or additional insured, insurer or creditors of the Archdiocese Bound Parties; in each case within the meaning of "interest" as used in sections 363(f) and 1123(a)(5)(D) of the Bankruptcy Code. For the avoidance of doubt, a Direct Action Claim constitutes a Subject Interest. The meaning of Subject Interests also includes: (a) all mortgages, security interests, notes, security agreements, privileges, conditional sale or  other title retention agreements, pledges, liens (including without limitation any statutory lien  on real and personal property and any and all "liens" as that term is defined and used in the  Bankruptcy Code), licenses, deeds of trust, equity interests, rights of first refusal, consent  rights, judgments, demands, encumbrances, easements, restrictions or charges of any kind or nature,  if any, including, but not limited to, any restriction on the use, voting, transfer, receipt of  income or other exercise of any attributes of ownership (the foregoing collectively referred to in  this order as "liens"), and (b) all debts arising in any way in connection with any acts of the Archdiocese Bound Parties and any and all Claims, obligations, demands, guaranties, options,   rights, contractual commitments, executory contracts, unexpired leases, employment agreements, any   other employee, workers' compensation, occupational diseases or unemployment or temporary  disability related claims, restrictions, rights of lesion beyond moiety, tort claims, and claims,  interests and matters of any kind and nature, whether arising prior to or subsequent to the  commencement of the Bankruptcy Case, and whether imposed  by agreement, understanding, law, equity or otherwise; (c) any and all past, present, or future, actual, alleged  or potential demand, liability, duty, obligation, claim, debt, allegation, action, damages, suit,  expense, loss, cost, assertion of liability, and/or cause of action of any type whatsoever, whether  in law, in equity, in admiralty, or otherwise, and whether or not presently known, contractual or  extra-contractual, direct or indirect (including without limitation, (i) any Abuse Claims, any  Direct Action Claims, any Coverage Claims, and all other Barred Claims, and (ii) any claims for  "bad faith," unfair claims practices, breach of any implied duty of good faith and fair dealing, including, but not limited to, La. Rev. Stat. §§ 22:1892 and 22:1973, or any claim arising under  the Louisiana Direct Action Statute, La. Rev. Stat. § 22:1269) and including all Claims and all  "claims" as defined in § 101(5) of the Bankruptcy Code and all "demands" as defined in § 524(g)(5) of the Bankruptcy Code;  and (d) any claim, remedy, liability, or demand against the Archdiocese Bound Parties or the Debtor  Parties' Estates, including without limitation any asserted by any third party or any other person  or entity, now existing or hereafter arising, whether or not such Claim, remedy, liability, or  demand is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured, whether or not the facts of or

15

legal bases therefor are known or unknown, under any theory of law, equity, admiralty, or otherwise, by whomever and by whatever procedure asserted, seeking damages or any other kind of relief whatsoever, including without limitation, those in any way relating to, arising out of, connected with, and/or involving the Purchased Property.

1.1.92 "**Supplemental Settling Insurers' Injunction**" has the meaning set forth in Section 2.2.2.

1.1.93 "**Unknown Abuse Claim**" means an Abuse Claim that occurred before the Petition Date and the Abuse Claimant did not file a proof of claim by the applicable Abuse Claims Bar Date, for which there exists a valid legal excuse for not filing, as further defined in the in the Acceptable Plan.

1.1.94 "**Unknown Abuse Claims Representative**" means Michael R. Hogan, the legal representative appointed by the Bankruptcy Court pursuant to the *Order (I) Appointing a Legal Representative to Represent the Interests of Unknown Tort Claimants, and (II) Approving the Retention of Michael R. Hogan as the Unknown Tort Claims Representative, Nunc Pro Tunc To July 26, 2021* (Docket No. 1012 ), any successor legal representative appointed by the Bankruptcy Court, or, on and after the Bankruptcy Plan Effective Date, any successor legal representative appointed in accordance with the applicable Settlement Trust Document.

1.2    Capitalized terms not defined in this Section 1 or elsewhere in this Settlement Agreement shall have the meanings given to them in the Bankruptcy Code.

## 2.    THE BANKRUPTCY CASE AND PLAN OF REORGANIZATION

2.1    On or before July 29, 2025, the Archdiocese shall file a motion in the Bankruptcy Court (the "**Approval Motion**"), in form and substance acceptable to Insurer in its sole discretion, that seeks the entry of an order in substantially the form attached as **Exhibit A** to this Settlement Agreement, or otherwise in form and substance acceptable to Insurer in its sole discretion (the "**Approval Order**"), that:

(a) approves this Settlement Agreement, including Insurer's buyback of the Archdiocese Policies and the Coverage Claims and Related Insurance Claims of the Archdiocese Bound Parties free and clear of all Subject Interests except Preserved Coverage, and otherwise authorizes the Parties to undertake the settlement and the transactions contemplated by this Settlement Agreement, in each case pursuant to sections 363(b), (f),and (m) of the Bankruptcy Code and any other applicable provisions of the Bankruptcy Code;

(b) contains an injunction (the "**Sale Injunction**") that, subject to and conditioned upon the Settlement Agreement Effective Date and the Insurer's payment of the Settlement Amount, bars all Claims except Claims for Preserved Coverage against the Insurer Released Parties and their property and assets of each based on or arising out of any Subject Interests in the Archdiocese Policies including without limitation all Coverage Claims, Related Insurance Claims, and Barred Claims, leaving the Settling Insurers free and clear of all Subject Interests of all Entities, including all

Subject Interests of: the Archdiocese Bound Parties and any other Entity covered by, through, or on behalf of any of the Archdiocese Bound Parties; any Settling Party; any other insurer (including Non-Settling Insurers); any Abuse Claimant; or any holder of a Barred Claim pursuant to sections 363(b), (f), and (m) and 1141 of the Bankruptcy Code;

(c) provides that this Settlement Agreement is binding on the Archdiocese Signatory Parties, all other Settling Parties, any trust created in the Bankruptcy Case(s), and any successors of the foregoing; and

(d) provides, subject to and conditioned upon the Settlement Agreement Effective Date, that the Approval Order is binding on all Persons (including, for the avoidance of doubt, all Persons set forth in the foregoing (c)).

2.1.1   The Archdiocese shall provide written notice of the Approval Motion, which notice shall be in form and substance acceptable to Insurer, to, at a minimum, any known Archdiocese Bound Party, holder of an Abuse Claim, or party whose rights or interests may reasonably be considered to be impacted by the relief requested in the Approval Motion, and any party identified on Schedule 3 hereto.   In addition, the Archdiocese shall include notice of the Approval Motion together with notice provided with respect to confirmation of the Joint Plan, including publication notice of the hearing on the Approval Motion. The Archdiocese will provide a draft service list of the foregoing for Insurer's review and comment.

2.1.2   If any Entity files an objection to the Approval Motion, the Archdiocese and Creditors' Committee shall consult with Insurer in connection with filing any written response thereto.   The Archdiocese Signatory Parties, as applicable, and Creditors' Committee shall take commercially reasonable steps to defend against any objection, appeal, petition, motion, or other challenge to the Bankruptcy Court's entry of the Approval Order.   Insurer will cooperate with the Archdiocese Signatory Parties and Creditors' Committee in this regard, including making commercially reasonable submissions.

2.2   The Archdiocese shall file and prosecute a joint Plan with the Creditors Committee, which shall be in form and substance satisfactory to the Insurer in its sole discretion, substantially in the form as the Acceptable Plan, which the Parties acknowledge and agree satisfies the terms of this Settlement Agreement.  Any modifications to the Plan, the Settlement Trust Documents, the Plan Confirmation Order, or the Approval Order, including those relating to the Channeling Injunction, Supplemental Settling Insurers' Injunction, Gatekeeper Injunction, releases by holders of Abuse Claims, Insurers, Insurance Settlement Agreements, and related definitional terms, including, for the avoidance of doubt, "Abuse," "Abuse Claim," "Abuse Related Insurance Claims," "Channeled Claim," "Covered Parties," "Direct Action Claim," "Enjoined Party," "Insurer Contribution Claim," "Non-Insurer Contribution Claim," "Penalty Claims," "Protected Parties," "Settling Insurers," "Settling Insurer's Policies," "Subject Insurance Policies," "Subject Interests," or any exhibits, schedules, and documents related thereto, must be in all respects consistent with this Settlement Agreement and must not contain any provisions that diminish or impair the benefit of this Settlement Agreement to the Insurer Released Parties without Insurer's written consent in its sole discretion.

2.2.1    The Plan shall create the Settlement Trust, which shall be responsible for making any and all payments to the Abuse Claimants entitled to receive payment under the Plan and which shall assume all liability for Channeled Claims (as defined in the Acceptable Plan).

2.2.2    The Plan shall include: (a) an injunction in substantially the form included in Article 12.4 of the Acceptable Plan (the "**Channeling Injunction**"); and (b) an injunction in substantially the form included in Article 12.5 of the Acceptable Plan (the "**Supplemental Settling Insurers' Injunction**"); and (c) an injunction in substantially the form included in Article 12.8 of the Acceptable Plan (the "**Gatekeeper Injunction**").

2.2.3    The Plan shall incorporate by reference the releases and indemnities set forth in this Settlement Agreement, including that the Settlement Trust shall defend, indemnify, and hold harmless the Insurer Released Parties with respect to all Indemnified Claims as forth in Section 7.2 of this Settlement Agreement.

2.2.4    The Settlement Trust Documents shall provide that as a condition to receiving payment from the Settlement Trust, all Abuse Claimants shall provide an Abuse Claim Release and Certification.

2.2.5    The Plan shall provide for the commencement, prior to the Court's consideration of the Approval Motion, by the Additional Debtors of Chapter 11 cases to be jointly administered with the Bankruptcy Case.

2.2.6    The Plan shall provide a supplemental bar date for the Additional Debtors in a form and substance satisfactory to the Insurer with respect to Abuse Claims against the Additional Debtors and the form, manner, and deadline for filing proofs of claim and the treatment of confidential information contained therein.

2.2.7    The Plan shall provide that confirmation of the Plan will not occur unless all of the following conditions precedent have been satisfied: (a) the Plan Confirmation Order approves and implements the Injunctions and (b) the Bankruptcy Court shall have granted the Approval Motion in form and substance acceptable to Insurer in its sole discretion.

2.2.8    The Plan shall provide that the Bankruptcy Plan Effective Date will not occur unless all of the following conditions precedent have been satisfied or waived (as applicable with consent of Insurer): (a) the Plan Confirmation Order will have been entered by the Bankruptcy Court and become a Final Order, and (b) the Bankruptcy Court shall have entered the Approval Order (with both such Approval Order and this Settlement Agreement in form and substance acceptable to the Insurer) and such Approval Order shall have become a Final Order.

2.2.9    The Plan shall provide that (collectively, as follows, the "**Controlling Document Provision**") in the event of a conflict between (a) the Settlement Agreement, on the one hand, and (b) the Plan, on the other, the terms of the Settlement Agreement shall control and govern; and in the event of a conflict between the (x) Approval Order, on the

one hand, and (y) Plan Confirmation Order, on the other, the terms of the Approval Order shall control and govern.

2.2.10  The Plan shall provide that the execution and delivery of this Settlement Agreement is a condition to entry of the Plan Confirmation Order and the occurrence of the Bankruptcy Plan Effective Date. The inclusion of this Settlement Agreement in the Plan shall not be waivable as a condition to entry of the Plan Confirmation Order or the occurrence of the Bankruptcy Plan Effective Date absent the prior written consent of the Settling Insurers.

2.3     The Debtor Parties shall seek and obtain entry of an order from the Bankruptcy Court, which order shall be in form and substance acceptable to the Parties, that: (i) approves the Plan pursuant to section 1129 of the Bankruptcy Code and any other applicable provision of the Bankruptcy Code; (ii) contains the Channeling Injunction; (iii) ratifies the Sale Injunction as independent of the Channeling Injunction and Supplemental Settling Insurers' Injunction; (iv) contains the Gatekeeper Injunction; (v) provides that this Settlement Agreement is binding on any Settlement Trust created in the Bankruptcy Case, the Reorganized Debtor, the Reorganized Additional Debtors, and any successors of the Settlement Trust, Reorganized Debtor, or Reorganized Additional Debtors, and all of the Archdiocese Bound Parties; and (vi) contains the Controlling Document Provision (the "**Plan Confirmation Order**").

2.3.1    The Plan and Plan Confirmation Order must not be inconsistent with this Settlement Agreement and must not contain any provisions that diminish or impair the benefit of this Settlement Agreement to the Insurer Released Parties.

2.3.2    In seeking to obtain the Plan Confirmation Order, the Debtor and Additional Debtors will: (i) seek a confirmation hearing on an appropriately timely basis; (ii) urge the Bankruptcy Court to overrule any objections and confirm the Plan; and (iii) take all reasonable steps to defend against any objection, petition, motion, or other challenge to the Bankruptcy Court's entry of the Plan Confirmation Order.

2.3.3    Prior to entry of the Plan Confirmation Order, the Archdiocese and/or any applicable Additional Debtor shall oppose any motion to lift any stay pursuant to section 362 of the Bankruptcy Code as to any Abuse Claim that (i) is asserted against any Debtor Party and (ii) implicates, or is reasonably likely to implicate, any Archdiocese Insurance Policies (including by alleging Abuse that took place during any policy period of any Archdiocese Policy).  If, prior to the Plan Confirmation Order becoming a Final Order, the Bankruptcy Court allows any Entity to prosecute any such Abuse Claim, the Debtor Parties shall defend themselves against such Abuse Claims and comply with the terms of any order of the Bankruptcy Court, and Insurer's rights and obligations relating to such litigation shall be determined by, and subject to, the terms and conditions of the Archdiocese Policies, this Settlement Agreement, and any applicable orders of the Bankruptcy Court.

2.3.4    The Plan and Plan Confirmation Order shall provide that the Insurer Released Parties are Settling Insurers entitled to the protection of the Injunctions for all Claims against any Insurer Released Party and to releases, injunctions, and other protections, including injunctions and releases of Abuse Claims against any Covered Party

19

with respect to any Archdiocese Policy, that are equal in breadth to the broadest releases, injunctions, and other protections afforded to any other Settling Insurer under the Plan as confirmed by the Bankruptcy Court, the Plan Confirmation Order, and/or any applicable Insurance Settlement Agreement approved by the Bankruptcy Court, except with respect to Preserved Coverage.

2.3.5    Nothing in this Section or elsewhere in this Settlement Agreement shall bar any party from arguing that any appeal from the Plan Confirmation Order should be dismissed on grounds of statutory or equitable mootness or otherwise.

2.3.6    None of the releases, Injunctions, or other provisions of the Plan with apply to, or have any effect, on the rights of the Settling Insurers to reinsurance recoveries under any applicable reinsurance treaties, certificates, or contracts that cover losses arising under or in connection with any Settling Insurer's Policy.

2.4    The Settlement Trust Documents shall require the Settlement Trust to register as a Responsible Reporting Entity under the reporting provisions of MMSEA.

2.4.1    The Settlement Trust Documents shall require the Settlement Trust, at its sole expense, to timely submit all reports that are required under MMSEA on account of any claims settled, resolved, paid, or otherwise liquidated and to follow all applicable guidance published by the Centers for Medicare & Medicaid Services of the United States Department of Health and Human Services and/or any other agent or successor entity charged with responsibility for monitoring, assessing, or receiving reports made under MMSEA (collectively, "**CMS**") to determine whether or not, and, if so, how, to report to CMS pursuant to MMSEA.

2.4.2    The Settlement Trust Documents shall require the Settlement Trust to obtain, prior to remittance of funds to claimants' counsel or to the claimant, if pro se, in respect of any Abuse Claim, a certification from the claimant to be paid that said claimant has or will provide for the payment and/or resolution of any obligations owing or potentially owing under 42 U.S.C. §1395y(b), or any related rules, regulations, or guidance, in connection with, or relating to, such Abuse Claim.

2.5    The Debtor Parties and Reorganized Debtor and Reorganized Additional Debtors will undertake commercially reasonable actions to cooperate with Insurer in connection with responding to any inquiry from Insurer's regulators, auditors, reinsurers, or retrocessionaires.

2.6    From and after the execution date of this Settlement Agreement and until the earlier of: (A) occurrence of (i) the Settlement Agreement Effective Date and (ii) Insurer's remittance of the Settlement Amount (at which time this covenant is superseded by the releases provided in Section 4); and (B) the date on which this Settlement Agreement is terminated, (i) none of the Insurer Released Parties, the Debtor, the Additional Debtors or Creditors' Committee will initiate any litigation activity against the other in any Bankruptcy Case and (ii) the Archdiocese and the Insurer Released Parties shall cease all litigation activities against each other in the Bankruptcy Case, including that the Insurer Released Parties will neither object to any proposed Plan consistent with this Settlement Agreement, nor serve or compel any discovery in connection with the

Bankruptcy Case; *provided that*: (y) neither the Archdiocese nor any Additional Debtor shall include any provision in any Plan that adversely affects the rights or benefits of the Insurer Released Parties under this Settlement Agreement, or that otherwise violates, or is contrary to, the agreements and covenants contained in this Settlement Agreement; and (z) neither the Archdiocese nor any Additional Debtor shall act, or fail to act, in such a way that otherwise violates, or is contrary to, the agreements and covenants contained in this Settlement Agreement. Notwithstanding the foregoing, the Insurer Released Parties may participate in the Bankruptcy Case for the purpose of supporting or enforcing any of the terms of this Settlement Agreement and protecting their rights.

2.7     From and after the execution date of this Settlement Agreement and until the date on which this Settlement Agreement is terminated, the obligations of the Debtors Parties set forth in this Section 2 shall be binding on the Debtor Parties.

**3.     PAYMENT OF THE SETTLEMENT AMOUNTS**

3.1     By no later than thirty (30) days after (a) the Settlement Agreement Effective Date, and (b) Insurer receiving appropriate instructions for the transmission of the payment to the Escrow Agent or Settlement Trust, Insurer shall pay (or cause to be paid) the Settlement Amount to the Settlement Trust or Escrow Agent pursuant to the Escrow Agreement.   Payment of the Settlement Amount may be by check, ACH transfer, wire transfer, or other method.

3.1.1     [Intentionally Omitted.]

3.2     The delivery of the Settlement Amount to the Escrow Agent or Settlement Trust shall be in full and final settlement of all responsibilities under and arising out of the Archdiocese Policies, the sale of the Purchased Property to Insurer free and clear of all Subject Interests of any Entity, and the other releases provided.

3.3     Subject to the occurrence of the Settlement Agreement Effective Date, the Parties agree:  (i) the Settlement Amount is the total amount that Insurer is obligated to pay on account of any and all Claims under, arising out of, relating to, or in connection with the Archdiocese Policies (including Barred Claims, and any reimbursement obligations for Conditional Payments under the MSPA); (ii) under no circumstance will the Insurer Released Parties ever be obligated to make any additional payments to or on behalf of anyone in connection with the Archdiocese Policies, including any payments in connection with amounts allegedly owed under the MSPA or in connection with any Claims, including any Barred Claim; (iii) under no circumstance will the Insurer Released Parties ever be obligated to make any additional payments to or on behalf of the Archdiocese Bound Parties or any Abuse Claimants in connection with the Archdiocese Policies; and (iv) all limits of liability of the Archdiocese Policies, regardless of how the Archdiocese Policies identify or describe those limits, including all per person, per occurrence, per claim, "each professional incident," per event, per accident, total, and aggregate limits, shall be deemed fully and properly exhausted, *except that* this Section 3.3 shall not apply to Preserved Coverage. The Parties further agree that the Settlement Amount includes the full purchase price of the Archdiocese Policies and Related Insurance Claims and Coverage Claims of the Archdiocese Bound Parties and consideration for the releases and other protections afforded by this Settlement Agreement.

3.4     The Parties represent and agree that (i) the consideration to be provided by Insurer pursuant to this Settlement Agreement constitutes a fair and reasonable compromise and exchange for the consideration granted to the Insurer Released Parties in this Settlement Agreement (including the releases set forth below), and (ii) the consideration to be provided by the Archdiocese Bound Parties to the Insurer Released Parties pursuant to this Settlement Agreement (including the releases set forth below) constitutes a fair and reasonable compromise and exchange for the consideration granted to the Archdiocese Bound Parties in this Settlement Agreement. The Insurer Released Parties are not acting as volunteers, and the Settlement Amount reflects potential liabilities and obligations to the Archdiocese Bound Parties of the amount Insurer allegedly is obligated to pay.

3.5     Each of the Archdiocese Signatory Parties: (i) consents to the sale of the Archdiocese Policies and the Related Insurance Claims of the Archdiocese Bound Parties free and clear of all Subject Interests and Claims of all Persons, including, without limitation, the Archdiocese Bound Parties in accordance with the terms of this Settlement Agreement, and (ii) agrees and acknowledges that the contribution of the proceeds from such sale and settlement to the Settlement Trust, as provided in the Plan and this Settlement Agreement, is a fair and reasonable compromise and exchange for value and constitutes reasonable and adequate consideration for any Subject Interest or Claim the Archdiocese Bound Parties may have in the Archdiocese Policies.

3.6     The Parties further agree that they have attempted to resolve the matters set forth herein in compliance with both state and federal law and believe that the settlement terms adequately consider CMS's interest and do not reflect any attempt to shift responsibility for payment of medical expenses to CMS pursuant to 42 U.S.C. § 1395y(b).  The Parties acknowledge, understand, and agree that any present or future action or decision by CMS, including actions regarding an Abuse Claimant's eligibility or entitlement to receive Medicare or Medicare payments, will not render this Settlement Agreement (including the releases set forth in it) void or ineffective, or in any way affect the finality of this Settlement Agreement.  The Settlement Trust is responsible for all future medical payments, including any and all claims by CMS and/or CMS contractors that have been or may be in the future arising out of, relating (directly or indirectly) in any way to, or in connection with this Settlement Agreement.

3.7     To facilitate the purchase of the Purchased Property as set forth herein, each Archdiocese Bound Party is authorized to designate a lawful attorney in fact, with full powers of substitution, to execute any bill of sale or other document reasonably requested by the Archdiocese or Insurer to accomplish the sale and purchase contemplated herein. A form of Bill of Sale is attached hereto as **Exhibit B**.

## 4.     RELEASES AND SALE FREE AND CLEAR

4.1     Upon the occurrence of the Settlement Agreement Effective Date and Insurer's payment of the Settlement Amount to the Settlement Trust or Escrow Agent, with no further action being required, the Archdiocese Signatory Parties fully, finally, and completely remise, release, acquit, and forever discharge the Insurer Released Parties (including, for the avoidance of doubt, any of their reinsurers or retrocessionaires, solely in their capacity as such), from any and all past, present, and future: (a) Claims that, directly or indirectly, arise out of, relate to, or are in connection

with the Archdiocese Policies or Claims that are covered or are determined to be covered by agreement or a court of competent jurisdiction under the Archdiocese Policies, including, without limitation, any Barred Claims, Direct Action Claims, reimbursement obligations for Conditional Payments under the MSPA, and all Claims that, directly or indirectly, arise from, relate to, or are in connection with the Abuse Claims, the handling of the Abuse Claims or the Bankruptcy Case *provided that*, the Insurer is not released from its obligations under the Archdiocese Policies with respect to the Preserved Coverage. The Archdiocese Signatory Parties further acknowledge, stipulate, and agree that (x) the releases in this Section 4.1 specifically include all Unknown Abuse Claims, and demands that are based in whole or in part on Unknown Abuse Claims and (y) **with respect to all Claims released under this Section 4.1, the Archdiocese Signatory Parties waive any and all provisions, rights, and benefits conferred by Cal. Civ. Code 1542 or any law of any state of the United States, or any principle of common law, which is similar, comparable, or equivalent to Cal. Civ. Code 1542, which provides: "a general release does not extend to claims that the creditor or releasing party does not know or suspect to exist in his or her favor at the time of executing the release, that, if known by him or her, would have materially affected his or her settlement with the debtor or released party"** and (z) the releases in this Section 4.1 shall be equal in breadth to the broadest releases and other protections afforded to any other Settling Insurer under the Plan as confirmed by the Bankruptcy Court, the Plan Confirmation Order, and/or any applicable Insurance Settlement Agreement approved by the Bankruptcy Court.

4.2    Upon the occurrence of the Settlement Agreement Effective Date and Insurer's payment of the Settlement Amount to the Settlement Trust or Escrow Agent, and with no further action being required, Insurer shall fully, finally, and completely remise, release, acquit, and forever discharge the Archdiocese Signatory Parties from any and all past, present, and future Claims that, directly or indirectly, arise out of, relate to, or are in connection with the Archdiocese Policies, including any Barred Claims, and reimbursement obligations for Conditional Payments under the MSPA, and all Claims that, directly or indirectly, arise from, relate to, or are in connection with the Abuse Claims or the Bankruptcy Case, *provided that*, the obligations of the applicable Archdiocese Bound Parties are not released from their obligations under the Archdiocese Policies with respect to the Preserved Coverage.

4.3    Upon the occurrence of the Settlement Agreement Effective Date and Insurer's payment of the Settlement Amount, none of the Archdiocese Signatory Parties or other Archdiocese Bound Parties shall assert against the Insurer Released Parties any Claim with respect to any matter, conduct, transaction, occurrence, fact, or other circumstance that, directly or indirectly, arises out of, relates to, or is in connection with any of the Archdiocese Policies, any Barred Claim, or any other matter released pursuant to Sections 4.1 and 4.2 above.

4.4    Upon the occurrence of the Settlement Agreement Effective Date and Insurer's payment of the Settlement Amount, Insurer hereby buys back the Archdiocese Policies free and clear of all Subject Interests, including without limitation all Coverage Claims and Related Insurance Claims, of all Entities, including all Subject Interests of: the Archdiocese Bound Parties and any other Entity covered by, through, or on behalf of any of the Archdiocese Bound Parties; any Settling Party; any other insurer (including Non-Settling Insurers); and any Abuse Claimant, or any other holder of a Barred Claim. This sale is pursuant to sections 363(b), (f), and (m) and 1141 of the Bankruptcy Code. The Parties acknowledge and agree, and the Approval Order shall

find and conclude, that upon the occurrence of the Settlement Agreement Effective Date and Insurer's payment of the Settlement Amount:

4.4.1 Insurer is a good faith purchaser of the Archdiocese Policies and any Subject Interests therein (including the Coverage Claims and Related Insurance Claims of the Archdiocese Bound Parties), within the meaning of section 363(m) of the Bankruptcy Code, with all the protections afforded such a purchaser under 363(m) of the Bankruptcy Code;

4.4.2 the consideration exchanged constitutes a fair and reasonable settlement and compromise of the Parties' disputes and of their respective rights and obligations relating to the foregoing Archdiocese Policies and Subject Interests therein (including the Coverage Claims and Related Insurance Claims of the Archdiocese Bound Parties), and constitutes reasonably equivalent value;

4.4.3 the releases in this Settlement Agreement and the policy buyback comply with the Bankruptcy Code and applicable non-bankruptcy law;

4.4.4 the Archdiocese Policies and all Subject Interests therein (including, without limitation, to the extent applicable, any Direct Action Claim) shall be terminated and of no further force and effect;

4.4.5 Insurer's payment of the Settlement Amount constitutes Insurer's full and complete performance of any and all obligations under the Archdiocese Policies, including any performance owed to the Archdiocese Bound Parties or any holder or purported holder of any Claim against (including any Abuse Claim or Direct Action Claim) or Subject Interest in, the Archdiocese Policies, and exhausts all limits of liability of the Archdiocese Policies;

4.4.6 All Subject Interests the Archdiocese Bound Parties and any other Entity may have had, may presently have, or in the future may have in the Archdiocese Policies are released pursuant to the terms of this Settlement Agreement and policy buyback;

4.4.7 all per occurrence and/or aggregate limits of coverage under the Archdiocese Policies are fully eroded, exhausted and settled upon the Settlement Agreement Effective Date;

4.4.8 the Insurer would not pay the Settlement Amount without buyback of the Archdiocese Policies upon all of the terms and conditions set forth herein;

4.4.9 the Archdiocese Signatory Parties accept the Settlement Amount in full and complete compromise and satisfaction of all Insurer Released Parties' past, present, and future obligations, including any obligations to any of the Archdiocese Bound Parties under such Archdiocese Policies or arising therefrom, as to any and all Claims for insurance coverage or policy benefits of any nature whatsoever that are under, arise out of, relate (directly or indirectly) to, or connect in any way with the Archdiocese Policies (including without limitation Coverage Claims and Related Insurance Claims of the Archdiocese Bound Parties), whether

legal or equitable, known or unknown, suspected or unsuspected, fixed or contingent, and regardless of whether or not such Claims arise from, relate to, or are in connection with the Abuse Claims, Barred Claims, the Bankruptcy Case, or otherwise; and.

4.4.10   notwithstanding any of the foregoing, nothing in the Sale Approval Order, the Settlement Agreement or the Sale Transaction affects the Preserved Coverage or the Archdiocese Bound Parties' rights or continuing obligations in connection with the Preserved Coverage under the Archdiocese Policies issued by Insurer, all of which shall survive the Settlement Agreement Effective Date, Bankruptcy Plan Effective Date and the closing of the Sale Transaction.

4.5     Upon the occurrence of the Settlement Agreement Effective Date and Insurer's payment of the Settlement Amount, Insurer shall have no obligation to pay, handle, object, or otherwise respond to any Claim against the Archdiocese Bound Parties; and the Archdiocese Bound Parties will: (i) will withdraw, and are deemed to have withdrawn, all outstanding tenders of Claims to the Insurer Released Parties for defense and indemnity; (ii) will not tender any Claims to the Insurer Released Parties; and (iii) will not request that the Insurer Released Parties fund any judgments, settlements, or defense costs that, in each case, are under, arise out of, relate (directly or indirectly) to, or connect in any way with the Archdiocese Policies issued by a Settling Insurer.

4.6     To the maximum extent permitted by applicable law, the Non-Debtor Catholic Entities and Insurer consent to the assignment of the Non-Debtor Catholic Entities' Subject Interests, if any, in the Archdiocese Policies to the Debtor's Estate, and each Non-Debtor Catholic Entity shall assign the Non-Debtor Catholic Entities' Subject Interests in the Archdiocese Policies to the Debtor's Estate prior to the Settlement Agreement Effective Date, and the Debtor's Estate shall sell the Non-Debtor Catholic Entities' Subject Interests in the Archdiocese Policies to Insurer on the Settlement Agreement Effective Date, in exchange for the Settlement Amount and other consideration provided by Insurer under this Agreement, pursuant to sections 363, 1123, and/or 1141 of the Bankruptcy Code, free and clear of all Subject Interests of any Entity in such Archdiocese Policies (the "**Non-Debtor Catholic Entity Policy Sale**"). The Plan Confirmation Order and Approval Order shall so provide and Insurer shall be designated in the Plan Confirmation Order as a good-faith purchaser of the Archdiocese Policies with all the protections afforded such a purchaser under section 363(m) of the Bankruptcy Code.

4.7     Notwithstanding anything in this Settlement Agreement to the contrary, nothing in the Settlement Agreement shall assign, sell or purchase the Preserved Coverage; withdraw or deem withdrawn the tender of the claims listed in attached Schedule 4; erode, exhaust the limits of, or terminate the Preserved Coverage; release the Insurer from providing the Preserved Coverage to the applicable Archdiocese Bound Parties; or release the rights or obligations of the applicable Archdiocese Bound Parties under the Archdiocese Policies with respect to such Preserved Coverage.

4.8     The Archdiocese Signatory Parties further covenant, stipulate and agree that the Insurer Released Parties are Settling Insurers entitled to the protection of the Injunctions for all Abuse Claims against any Insurer Released Party and to releases, injunctions, and other protections, including injunctions and releases of Abuse Claims against any insured or additional

insured covered by any insurance policy issued by any Insurer Released Party, and to the assignment of the Non-Debtor Catholic Entities' Subject Interests, if any, in any Archdiocese Policy to the Debtor's Estate and sale thereof to Insurer, that are equal in breadth to the broadest releases, injunctions, and other protections afforded to any other Settling Insurer under the Plan as confirmed by the Bankruptcy Court, the Plan Confirmation Order, and/or any applicable Insurance Settlement Agreement approved by the Bankruptcy Court. Without limiting the foregoing, the Insurer Released Parties shall receive protections against Claims by Non-Debtor Catholic Entities and any other Entity equal in breadth to the broadest protections received by any other Settling Insurer under the Plan as confirmed by the Bankruptcy Court, the Plan Confirmation Order, or any Insurance Settlement Agreement approved by the Bankruptcy Court.

4.9    If the Archdiocese Signatory Parties, or anyone of them, enter into any agreement (that is embodied in such agreement as approved by the Bankruptcy Court, the Plan, and/or the Plan Confirmation Order) with any other one of the Settling Insurers (including any Non-Settling Insurer who becomes a Settling Insurer) in the Bankruptcy Case, that provides that insurer with releases, injunctions or other protections that are more favorable than those contained in this Settlement Agreement, then this Settlement Agreement shall be deemed to be modified to provide Insurer with those more favorable injunctions, releases or other protections, except with respect to Preserved Coverage.

4.10    Notwithstanding anything in this Settlement Agreement, nothing in this Settlement Agreement is intended to or shall be construed to:

    4.10.1    apply to or have any effect on the Insurer Released Parties' rights to reinsurance recoveries under any applicable reinsurance treaties, certificates, or contracts that cover losses arising under or in connection with the Archdiocese Policies or any other binder, certificate, or policy of insurance issued by Insurer;

    4.10.2    release any Claims that any Insurer Released Party has or might have against any Non-Settling Insurer, except that, to the extent such other insurers have agreed or in the future agree to release any Claims against the Insurer Released Parties arising out of or related in any way to the Abuse Claims, then the Insurer Released Parties also release such Claims against such other insurers to the same extent; or

    4.10.3    release, waive, relinquish, or otherwise affect the Parties' rights and obligations under this Settlement Agreement or the Plan (to the extent not inconsistent with this Settlement Agreement).

## 5.    TERMINATION OF AGREEMENT

5.1    The Parties may terminate this Settlement Agreement by mutual agreement in writing.

5.2    Insurer may terminate this Settlement Agreement upon fifteen (15) days written notice to the other Parties in the event of any of the following occurs prior to the Settlement Agreement Effective Date: (i) any of the Debtor Parties or the Creditors' Committee files a plan inconsistent with this Settlement Agreement; (ii) the Approval Order and the Plan Confirmation Order are not entered by February 15, 2026; (iii) the Bankruptcy Court enters an order that

becomes a Final Order that (a) denies the Approval Motion or (b) is inconsistent with the Approval Order or the Plan Confirmation Order; (iv) a plan that is inconsistent with the terms of this Settlement Agreement is confirmed; or (v) any Bankruptcy Case is dismissed or converted to a case under chapter 7 of the Bankruptcy Code.

5.3     In the event of termination pursuant to this Section 5, unless the Parties agree otherwise in writing, the Parties' interests, rights, and obligations under the Archdiocese Policies shall not be impacted by such termination.

## 6.     REPRESENTATIONS AND WARRANTIES OF THE PARTIES

6.1     The Parties separately represent and warrant as follows:

6.1.1   To the extent it is a corporation, including a non-profit, religious, or charitable corporation, or other legal entity, each such Party has the requisite power and authority to enter into this Settlement Agreement and to perform the obligations contemplated by this Settlement Agreement[1], subject only to approval of the Bankruptcy Court; and

6.1.2   This Settlement Agreement has been analyzed by counsel to the Parties and executed and delivered in good faith pursuant to arm's length negotiations and for value and valuable consideration.

6.2     The Archdiocese Signatory Parties represent and warrant that they have not assigned, and will not assign, any Subject Interests in the Archdiocese Policies to any Entity, except for the avoidance of doubt, the assignment of the Non-Debtor Catholic Entities' Subject Interests in the Archdiocese Policies to the Debtor's Estate.

6.3     The Archdiocese Signatory Parties represent and warrant that (i) all Archdiocese Bound Parties have either signed this agreement, are represented herein by the Archdiocese or the Archdiocese Signatory Parties, or are juridical entities whose existence has been terminated as a matter of applicable non-bankruptcy law and (ii) the Archdiocese Signatory Parties are duly authorized to bind the Archdiocese Bound Parties who are not Archdiocese Signatory Parties. Without limiting the foregoing, the Archdiocese Signatory Parties represent and warrant that:

6.3.1   all entities known to them that are Co-Insured Parties under the Archdiocese Policies (by express reference, assignment, judicial determination or any related concept under applicable law or other document) other than the Debtor, the Additional Debtors, the Parish Schools and Archdiocesan Schools, the Non-Debtor Catholic Entities, and the cemeteries identified in Section 6.3.3, are identified in Schedule 2 hereto, if any;

6.3.2   the Archdiocesan Schools are not separately incorporated and are merely unincorporated operations of the Debtor and the Parish Schools are not separately

---

[1] Specifically, each Archdiocese Signatory Party is duly authorized to execute this Settlement Agreement and any related document and the signatory hereto on behalf of such Archdiocese Signatory Party has full power and authority to bind such Archdiocese Signatory Party. Forms of the related corporate resolutions and incumbency certificate are attached in Schedule 5 and Schedule 6 respectively.

incorporated and are merely unincorporated operations of the Archdiocesan Parishes that are Additional Debtors;

6.3.3    the Debtor, through the Office of Catholic Cemeteries, operates certain cemeteries including, without limitation: All God's Babies Tomb & Holy Innocents Prayer Garden, St. Charles Cemetery, St. Joseph Cemetery #1, St. Joseph Cemetery #2, St. Louis Cemetery #1, St. Louis Cemetery #2, St. Louis Cemetery #3, St. Patrick Cemetery #1, St. Patrick Cemetery #2, St. Patrick Cemetery #3, St. Roch Cemetery #1, St. Roch Cemetery #2, St. Vincent De Paul Cemetery #1, St. Vincent DePaul Cemetery #2, which cemeteries are either: (a) Non-Debtor Catholic Entities or (b) not separately incorporated and are merely unincorporated operations of the Debtor;

6.3.4    Holy Redeemer School, Redeemer-Seton High School, and St. Joseph Benedictine High School were formerly owned and operated by the Archdiocese, but ceased operations and were closed by the Debtor at some point prior to the Petition Date, and were not separately incorporated and were merely unincorporated operations of the Debtor;

6.3.5    St. Robert Bellarmine School was formerly owned and operated by one or more of the Archdiocese Signatory Parties, but ceased operations and was closed by one or more of the Archdiocese Signatory Parties at some point prior to the Petition Date, and it was not separately incorporated and was merely an unincorporated operation of one of the Additional Debtors;

6.3.6    Notre Dame Seminary and the Society of the Propagation of the Faith of the Archdiocese of New Orleans are owned and operated by the Archdiocese and are not separately incorporated, but are merely unincorporated operations of the Debtor;

6.3.7    San Pedro Pescador Church was owned and operated by the Archdiocese, but was closed by the Archdiocese prior to the Petition Date and was not separately incorporated, but was merely an unincorporated operation of the Archdiocese;

6.3.8    the following Roman Catholic Schools: the Academy of the Sacred Heart, Holy Cross, Jesuit, St. Mary's Academy, St. Mary's Dominican, Brother Martin, Mount Carmel Academy, Ursuline Academy, Cabrini, De La Salle, and St. Paul's School, are not Co-Insured Parties, named insured's or additional insureds (or related concept under applicable law or document) under the Archdiocese Policies, or institutions, religious organizations or subsidiaries of any organization listed in the declarations of the Archdiocese Policies, or any other organization coming under any named insured's control and active management, and were themselves not under the control or active management of the Archdiocese.

6.3.9    St. John Vianney Preparatory School was formerly owned and operated by the Debtor, but ceased operations and was closed by at some point prior to the Petition Date, and it was not separately incorporated and was merely an unincorporated operation of the Debtor;

6.3.10 the Louise Home a/k/a as the Louise Headstart Center was an unincorporated ministry of the Debtor;

6.3.11 Holy Guardian Angel was owned and operated by the Debtor, but ceased operations and was closed by at some point prior to the Petition Date, and it was not separately incorporated and was merely an unincorporated operation of the Debtor;

6.3.12 the Social Apostolate Housing Program was an unincorporated ministry of the Debtor;

6.3.13 at all times Tulane Catholic and the Newman Center were and are unincorporated activities of the Debtor, with no existence separate and apart from the Debtor;

6.3.14 Crescent City Convent Corporation, Lyric Realty and Parking Company, Inc., The Chinchuba Deaf-Mute Institute, People for Teens of St. Anthony of Padua Corporation, Kiwanis Foundation of New Orleans, Kiwanis Club of New Orleans, and Seminarians Parents Association, Inc. were never owned, operated, or controlled by the Debtor or the Additional Debtors and were neither insureds nor additional insureds under the Archdiocese Policies;

6.3.15 (a) Catholic Charities Archdiocese of New Orleans ("**Catholic Charities**") owned and operated Hope Haven – Madonna Manor ("**HH**"), which was organized under Louisiana law; (b) HH was dissolved and its status as a juridical person was, thus, terminated as a matter of Louisiana law; (c) at all times, Catholic Charities was the sole member and/ or shareholder of HH; and (d) it is the intention of Catholic Charities that HH be bound by this Agreement as if it remained in existence and had signed the Agreement as a party; and

6.3.16 St. Alphonsus Roman Catholic Church, New Orleans, Louisiana, individually and as successor to St. Theresa of Avila Roman Catholic Church, New Orleans, Louisiana, was never separately incorporated but merely an unincorporated canonical parish within the Archdiocese operated by the Redemptorists/Denver Provence religious order and the Archdiocese's intention was to cover only its exposure at this location under the Archdiocese Policies and not the exposure of the Redemptorists religious order or other third parties.

6.4     The Archdiocese Signatory Parties represent and warrant that they are not aware of any Abuse Claim asserted against any entity associated with the Archdiocese (including any parishes, institutions or religious organizations or any subsidiary of the person or organization listed in the declarations of the Archdiocese Policies, or any other organization coming under the Archdiocese's control and active management), that is not listed on Exhibit B-1 to the Acceptable Plan.

6.5     The Debtor represents and warrants that it will undertake good faith efforts to cause actual notice of the Approval Motion to be sent in accordance with Section 2.1.1 hereof.  Without limitation, the Debtor has sent or will send notice to the entities on Schedule 3.

6.6     The Archdiocese Signatory Parties and Insurer (limited to such Insurer person that worked on and were familiar with this Settlement Agreement and matters referenced therein), respectively, represent and warrant that they have completed a reasonable search for evidence of any policy of insurance issued by Insurer to the Archdiocese Signatory Parties that would afford coverage with respect to any Abuse Claim, Coverage Claim, or Related Insurance Claim and other than the policies identified in Schedule 1, no such policies have been identified.  The Archdiocese Signatory Parties further represent and warrant that, to the best of their knowledge after reasonably diligent investigation: there are no contracts, binders, certificates, and policies of insurance that insure or purport to insure (i) the Archdiocese or any of its predecessors in interest, successors, or assigns, (ii) any of the Additional Debtors or Non-Debtor Catholic Entities, (iii) (x) the Diocese of Houma-Thibodaux or (y) the Diocese of Baton Rouge (excluding, for the avoidance of doubt, policies issued to the Diocese of Houma-Thibodaux SD or Diocese of Baton Rouge SD, but including any such policies issued to the Archdiocese that provide or may provide insurance coverage to the Diocese of Houma-Thibodaux SD or Diocese of Baton Rouge SD), or (iv) any Entity owned, created, affiliated with, or controlled by the Archdiocese or the Office of the archbishop for the Archdiocese of New Orleans, other than the policies identified in Schedule 1. Notwithstanding the foregoing, nothing in this Settlement Agreement, including the Schedules or Exhibits hereto, shall be construed as or deemed to be an admission or evidence that any binder, certificate, or policy of insurance was in fact issued or affords coverage in connection with any Abuse Claims.

6.7     The Debtor Parties represent and warrant that they have not in any way assisted, and covenant that they shall not in any way assist, any Entity in the establishment or pursuit of any Claim, including any Barred Claim, against the Insurer Released Parties.

## 7.     ACTIONS INVOLVING THIRD PARTIES

7.1     For purposes of supporting the releases granted in Section 4 and the extinguishment of any and all rights under the Archdiocese Policies resulting from the purchase and sale thereof contemplated by this Settlement Agreement, the Parties hereby agree as follows:

7.1.1     From and after (i) the occurrence of the Settlement Agreement Effective Date, and (ii) Insurer's payment of the Settlement Amount, if any other insurer of the Archdiocese Bound Parties obtains a judicial determination or binding arbitration award that it is entitled to obtain a sum certain from Insurer as a result of a claim for contribution, subrogation, indemnification, or other similar Claim for any of Insurer's alleged share or equitable share, or to enforce subrogation rights, if any, with respect to the defense or indemnity obligation of Insurer for any Claims or reimbursement obligations for Conditional Payments released or resolved pursuant to this Settlement Agreement, the Archdiocese Signatory Parties, other Archdiocese Bound Parties, and the Settlement Trust shall voluntarily reduce any judgment or Claim against, or settlement with, such other insurers to the extent necessary to satisfy such contribution, subrogation, indemnification, or other Claims against Insurer.  To ensure that such a reduction is accomplished, Insurer shall be entitled to assert this Section 7 as a defense to any action against it brought by any other insurer for any such portion of the judgment or Claim and shall be entitled to request that the court or appropriate tribunal issue such orders as are necessary to effectuate the reduction to protect Insurer from any liability for the judgment or Claim.  Moreover, if a

Non-Settling Insurer asserts that it has a Claim for contribution, indemnity, subrogation, or similar relief against Insurer, such Claim may be asserted as a defense against a Claim by the Archdiocese Signatory Parties, other Archdiocese Bound Parties, or the Settlement Trust in any coverage litigation (and the Archdiocese Signatory Parties, other Archdiocese Bound Parties, and/or the Settlement Trust may assert the legal and equitable rights of Insurer in response thereto); and to the extent such a Claim is determined to be valid by the court presiding over such action, the liability of such Non-Settling Insurer to the Archdiocese Signatory Parties, other Archdiocese Bound Parties, or the Settlement Trust shall be reduced dollar for dollar by the amount so determined.

7.1.2    Unless this Settlement Agreement is terminated, Insurer shall not seek reimbursement for any payments it makes under this Settlement Agreement under theories of contribution, subrogation, indemnification, or similar relief from any other Settling Insurer unless that other insurer first seeks contribution, subrogation, indemnification, or similar relief from Insurer. Notwithstanding the foregoing, nothing in this Settlement Agreement, the Approval Order or the Plan Confirmation Order shall be construed as prohibiting Insurer from seeking recovery (including with respect to the Settlement Amount or otherwise) from its reinsurers or retrocessionaires in their capacity as such.

7.2    Subject to the occurrence of the Settlement Agreement Effective Date and Insurer's payment of the Settlement Amount, and subject to the limitations set forth below, the Settlement Trust shall defend, indemnify, and hold harmless the Insurer Released Parties with respect to any Claim against any Insurer Released Party that is under, arises out of, relates (directly or indirectly) to, or connects in any way with the Archdiocese Policies or that was otherwise released herein, including any Claims made by (i) any Entity who is an insured (as a named insured, additional insured, or otherwise) under any of the Archdiocese Policies; (ii) any Entity who makes (a) an Abuse Claim or (b) a Related Insurance Claim; and (iii) any Entity who has actually or allegedly acquired or been assigned the right to make a Claim under any of the Archdiocese Policies (collectively, the "**Indemnified Claims**"), as set forth below:

7.2.1    The Insurer Released Parties shall have the right (but not the obligation) to (a) seek to enforce the Injunctions against any Entity seeking to assert an Indemnified Claim, and (b) defend against any Indemnified Claims (to the extent such Claim is determined to not be barred by the Injunctions) identified in this Section 7.2. With the Insurer Released Parties' consent, such consent not to be unreasonably withheld, the Settlement Trustee can satisfy the obligations contained in (a) and (b) above. An amount equal to Twenty Thousand and 00/00 Dollars ($20,000.00) (the "**Indemnity Cost Reserve**") shall be reserved from the Settlement Amount for payment of reasonable attorneys' fees, expenses, costs, and other amounts incurred by the Insurer Released Parties in defending against such Indemnified Claims, which amount shall be released from reserve if no Indemnified Claims are asserted within 30 days after the Revival Window has closed under every applicable Revival Window Law.

7.2.2    Neither any Archdiocese Bound Party, nor the Settlement Trust shall in any way assist, any Entity in the establishment or pursuit of any Claim against any Insurer Released Party that is under, arises out of, relates (directly or indirectly) to, or connects in any way with the Archdiocese Policies or that was otherwise released herein.

7.2.3    The Settlement Trust and Archdiocese shall support and join in the enforcement of the Injunctions against any Entity seeking to assert an Indemnified Claim; *provided that* if the Insurer Released Party(ies) elect(s) not to enforce the Injunctions in accordance with Section 7.2.1, the Settlement Trust shall (a) seek to enforce the Injunctions against such Entity, and (b) defend against any Indemnified Claims (to the extent such Claim is determined to not be barred by the Injunctions).

7.2.4    To the extent that a Final Order is entered against any Insurer Released Party with respect to any Indemnified Claim, the Settlement Trust shall indemnify and hold harmless such Insurer Released Party with respect thereto up to the Settlement Amount; *provided that* to the extent the Insurer Released Party(ies) elect not to enforce the Injunctions or defend against the Indemnified Claims, the Settlement Trust's indemnity obligation shall be limited to the amount of the Indemnity Cost Reserve; *provided further* that if the Settlement Trust breaches its obligation set forth in Section 7.2.2 hereof, the Settlement Trust's indemnity obligation shall not be so limited and shall instead be up to the Settlement Amount.  In no event shall the Settlement Trust's indemnity obligation exceed each individual Settling Insurer's Settlement Amount.  To the extent the Settlement Amount has been distributed in accordance with the Plan, the Settlement Trust's indemnification obligation shall be so reduced.

7.2.5    The indemnification provided for herein shall not impose liability on the Settlement Trustee or Settlement Trust professionals for their own acts or omissions; *further*, funds provided for the administration of the Settlement Trust or payment of the Settlement Trustee or Settlement Trust professionals shall not be subject to indemnification claims as provided for herein.

7.3    If any Entity attempts to prosecute a Claim other than any of the claims listed in attached Schedule 4 that is under, arises out of, relates (directly or indirectly) to, or connects in any way with the Archdiocese Policies against the Insurer Released Parties before the Approval Order and Plan Confirmation Order become Final Orders, then promptly following notice to do so from Insurer, the Archdiocese and/or the Additional Debtor(s), as applicable, will file a motion and supporting papers to obtain an order from the Bankruptcy Court pursuant to sections 362 and 105(a) of the Bankruptcy Code protecting the Insurer Released Parties from any such Claims until the Plan Confirmation Order has become a Final Order, the Bankruptcy Case is dismissed, or this Settlement Agreement is terminated under Section 5 hereof.

## 8.    MISCELLANEOUS

8.1    If any action or proceeding of any type whatsoever is commenced or prosecuted by any Entity not a Party to this Settlement Agreement to invalidate, interpret, or prevent the validation or enforcement, or carrying out, of all or any of the provisions of this Settlement Agreement, the Parties mutually agree to cooperate fully in opposing such action or proceeding.

8.2    The Parties will take such steps and execute any documents as may be reasonably necessary or proper to effectuate the purpose and intent of this Settlement Agreement and to preserve its validity and enforceability.

8.3     The Parties shall cooperate with each other in connection with the Approval Motion, the Approval Order, the Plan, the Plan Confirmation Order, and the Bankruptcy Case. Such cooperation shall include consulting with each other upon reasonable request concerning the status of proceedings and providing each other with copies of reasonably requested pleadings, notices, proposed orders, and other documents relating to such proceedings as soon as reasonably practicable prior to any submission thereof.

8.4     Notwithstanding any language to the contrary in this Settlement Agreement, under no circumstance will any Archdiocese Signatory Party be obligated to take any action that violates any obligation or duty owed by such Archdiocese Signatory Party to any other insurer, and if a court of competent jurisdiction determines that a term or condition in this Settlement Agreement does violate any obligation or duty owed by such Archdiocese Signatory Party to any other insurer, the applicable Archdiocese Signatory Party shall be relieved of such term or condition, but the scope and finality of the releases, injunctions, and buybacks set forth in this Settlement Agreement shall not be affected or modified.

8.5     This Settlement Agreement constitutes a single integrated written contract that expresses the entire agreement and understanding between and among the Parties.

8.6     This Settlement Agreement may be modified only by a written amendment signed by all of the Parties, and no waiver of any provision of this Settlement Agreement or of a breach thereof shall be effective unless expressed in a writing signed by the waiving Party. The waiver by any Party of any of the provisions of this Settlement Agreement or of the breach thereof shall not operate or be construed as a waiver of any other provision or breach. Any change or modification of this Agreement that would result in a material adverse change to the rights of the Abuse Claimants or Trust shall require the consent of the Creditors' Committee (if at the time of the proposed change or modification a Trustee has not been appointed) or Settlement Trustee (if at the time of the proposed change or modification a Trustee has been appointed and approved), as applicable, which consent shall not be unreasonably withheld.

8.7     By entering into this Settlement Agreement, none of the Parties has waived or shall be deemed to have waived any rights, obligations, or positions they have asserted or may in the future assert in connection with any matter outside the scope of this Settlement Agreement. No part of this Settlement Agreement, its negotiation, or its performance may be used in any manner in any action, suit, or proceeding as evidence of the rights, duties, or obligations of the Parties with respect to matters outside the scope of this Settlement Agreement. All actions taken and statements made by the Parties or by their representatives relating to this Settlement Agreement or participation in this Settlement Agreement, including its development and implementation, shall be without prejudice or value as precedent.

8.8     This Settlement Agreement represents a compromise of disputed Claims and shall not be deemed an admission or concession regarding liability, culpability, wrongdoing, or insurance coverage. All related discussions, negotiations, and all prior drafts of this Settlement Agreement shall be deemed to fall within the protection afforded to compromises and to offers to compromise by Rule 408 of the Federal Rules of Evidence and any parallel state law provisions. Any evidence of the negotiations or discussions associated with this Settlement Agreement shall be inadmissible in any action or proceeding for purposes of establishing any rights, duties, or

obligations of the Parties, except that they shall be admissible to the extent they would have otherwise been admissible, absent this Section 8.8, in (i) an action or proceeding to enforce the terms of this Settlement Agreement, including any use as set forth in Section 7.1.1, or (ii) any possible action or proceeding between the Insurer Released Parties and any reinsurers. This Settlement Agreement shall not be used as evidence or in any other manner, in any court or dispute resolution proceeding, to create, prove, or interpret the Insurer Released Parties' obligations under the Archdiocese Policies or any other binder, certificate, or policy of insurance issued by Insurer.

8.9     None of the Parties shall make any public statements or disclosures (i) regarding another Party's rationale or motivation for negotiating or entering into this Settlement Agreement, or (ii) asserting or implying in any way that the Parties acted improperly or in violation of any duty or obligation, express or implied, in connection with any matter arising out of, relating to, or in connection with the Archdiocese Policies or any other binder, certificate, or policy of insurance issued or determined by agreement or a court of competent jurisdiction to have been issued by the Insurer Released Parties, including handling of or involvement in connection with any claims asserted thereunder.

8.10     Neither this Settlement Agreement nor the rights and obligations set forth in this Settlement Agreement shall be assigned without the prior written consent of the other Parties.

8.11     This Settlement Agreement was jointly drafted by the Parties, and the wording of this Settlement Agreement was reviewed by legal counsel for each of the Parties, and each of them had sufficient opportunity to propose and negotiate changes prior to its execution. The language of all parts of this Settlement Agreement shall in all cases be construed as a whole according to its meaning and not strictly for or against any Party.

8.12     Section titles and headings contained in this Settlement Agreement are included only for ease of reference and shall have no substantive effect.

8.13     All notices, demands, or other communication to be provided pursuant to this Settlement Agreement shall be in writing and sent by e-mail and Federal Express or other overnight delivery service, costs prepaid, to the Parties at the addresses set forth below, or to such other Entity or address as any of them may designate in writing from time to time:

    If to the Debtor or Reorganized Debtor:

    Mark A. Mintz
    Samantha A. Oppenheim
    Jones Walker LLP
    Telephone: 504-582-8368
    Telephone: 504-582-8641
    Email: mmintz@joneswalker.com
    Email: soppenheim@joneswalker.com

        with copies to:

The Roman Catholic Church of the Archdiocese of New Orleans
        Administrative Offices
7887 Walmsley Ave
New Orleans, LA 70125
Attn: Fr. Patrick R. Carr or Susan A. Zeringue


If to an Archdiocese Signatory Party other than a Debtor Party:

        As set forth on Plan Exhibit B-2.

If to Insurer or the Insurer Released Parties:

Michael Lee
Catholic Mutual Group
Director of Specialty Claims
10843 Old Mill Road
Omaha, NE 68164
mlee@catholicmutual.org

        with copies to:

Everett J. Cygal, Esq.
ArentFox Schiff LLP
233 S. Wacker Drive, Suite 7100
Chicago, IL 60606
everett.cygal@afslaw.com

If to the Settlement Trust:

Donald C. Massey
Couhig Partners, LLC
1100 Poydras Street, Suite 3250
New Orleans, Louisiana 70163
Telephone: (504) 599-5777
Email: dmassey@couhigpartners.com

        with copies to:

Andrew W. Caine
Pachulski, Stang, Ziehl & Jones LLP
10100 Santa Monica Blvd, Suite 1300
Los Angeles, CA 90067
Telephone: 310-277-6910
Email: acaine@pszjlaw.com

8.14     This Settlement Agreement may be executed in multiple counterparts, all of which together shall constitute one and the same instrument.   This Settlement Agreement may be executed and delivered by facsimile, e-mail, or other electronic image, which facsimile, e-mail, or other electronic image counterparts shall be deemed to be originals.

8.15     Nothing contained in this Settlement Agreement shall be deemed or construed to constitute (i) an admission by the Insurer Released Parties that the Archdiocese Bound Parties, or any other Entity, was or is entitled to any insurance coverage under the Archdiocese Policies or any other binder, certificate, or policy of insurance issued by the Insurer Released Parties or as to the validity of any of the positions that have been or could have been asserted by the any of the Archdiocese Bound Parties, (ii) an admission by any of the Archdiocese Bound Parties as to the validity of any of the positions or defenses to coverage that have been or could have been asserted by the Insurer Released Parties or any Claims that have been or could have been asserted by the Archdiocese Bound Parties against the Insurer Released Parties, or (iii) an admission by the Archdiocese Bound Parties or the Insurer Released Parties of any liability whatsoever with respect to any of the Abuse Claims.

8.16     The Parties to this Settlement Agreement, all of the Entities included in the definition of "Insurer Released Parties," and the Settlement Trust are intended beneficiaries of this Settlement Agreement.   Except as set forth in the preceding sentence or otherwise set forth in this Settlement Agreement, there are no third-party beneficiaries of this Settlement Agreement.

8.17     The Archdiocese Signatory Parties and the Insurer Released Parties shall each be responsible for their own fees and costs incurred in connection with the Bankruptcy Case, this Settlement Agreement, and the implementation of this Settlement Agreement, except as specifically set forth herein (including in Section 7).

8.18     The following rules of construction shall apply to this Settlement Agreement:

8.18.1   Unless the context of this Settlement Agreement otherwise requires: (i) words of any gender include each other gender; (ii) words using the singular or plural number also include the plural or singular number, respectively; (iii) the terms "hereof," "herein," "hereby," and derivative or similar words refer to this entire Settlement Agreement; and (iv) the words "include," "includes," or "including" shall be deemed to be followed by the words "without limitation."

8.18.2   References to statutes shall include all regulations promulgated thereunder and references to statutes or regulations shall be construed as including all statutory and regulatory provisions regardless of whether specifically referenced in this Settlement Agreement.

8.18.3   The use of the terms "intend," "intended," or "intent," when describing the intention of the Parties, as the case may be, shall not be construed to create a breach of this Settlement Agreement when the stated intent is not achieved.

8.19     The Bankruptcy Court in the Bankruptcy Case shall retain jurisdiction to interpret and enforce the provisions of this Settlement Agreement, which shall be construed in accordance with Louisiana law without regard to conflicts of law principles thereof.   The Insurer Released

Parties do not, by virtue of this Section 8.19 or any other provision in this Settlement Agreement, consent to the Bankruptcy Court's jurisdiction as to any other matter.

8.20    This Settlement Agreement and each Debtor Party's obligations under this Settlement Agreement shall be binding on each Debtor Party, the Reorganized Debtor, and the Reorganized Additional Debtors (as applicable) and shall survive the entry of the Plan Confirmation Order; *provided, however*, after the occurrence of the Bankruptcy Plan Effective Date, recourse for all obligations, other than those set forth in Sections 6.5, 6.7, and 7 hereof or a remedy of specific performance, shall be to the Settlement Trust; *provided further, however*, if specific performance is not available, each Debtor Party, the Reorganized Debtor, and the Reorganized Additional Debtors (as applicable) may be held liable for an intentional breach of a representation in this Agreement or their bad faith material breach of this Agreement, and if liability on any such ground is established, then recourse may be had directly against the Debtor Party, Reorganized Debtor, and/or Reorganized Additional Debtor(s) responsible.

8.21    The obligations of the Parties herein, other than those conditioned upon the Settlement Agreement Effective Date, shall be binding upon execution hereof by the Parties.

8.22    Nothing in this Settlement Agreement will prevent Insurer from allocating the Settlement Amount among the Archdiocese Policies at Insurer's discretion.

8.23    If any provision of this Settlement Agreement, or the application thereof, shall for any reason or to any extent, be construed to be invalid or unenforceable, the remainder of this Settlement Agreement, and the application of such provision to other circumstances, shall be interpreted so as to best effect the intent of the Parties, unless such determination of invalidity or unenforceability deprives any Party of the substantial benefit of its bargain.

8.24    The Parties agree that all matters relating to the negotiation and terms of this Settlement Agreement (including by way of example and not limitation, all prior drafts, exchanges of terms, and related discussions or correspondence) shall be confidential and are not to be disclosed except by order of court or consent of the Parties in writing.  This Section 8.24 does not prevent or prohibit the Parties from publicly filing on the docket in the Bankruptcy Case the final, executed copy of this Settlement Agreement.

*[Remainder of Page Intentionally Left Blank]*

**IN WITNESS WHEREOF,** the Parties have executed this Agreement by their duly authorized representatives.

### The Roman Catholic Archdiocese of New Orleans

Signed: _____

Print Name:   Fr. Patrick Carr

Title:        Vicar of Finance, Third Vice-President, and Board Member

Date:         November 13, 2025

*[Signatures Continue on Adjacent Pages]*

38

**The Catholic Mutual Relief Society of America**

Signed: _Rody W Oligmueller_ (signature)

Name Printed: Rodney Oligmueller

Title: Assistant Vice President, Specialty Claims

Date: November 13, 2025

*[Signatures Continue on Adjacent Pages]*

**All Archdiocese Signatory Parties**
**Other than the Archdiocese**

Signed: _____

Name Printed: Fr. Patrick Carr

Title:     **Their Authorized Signer Pursuant to**
           **Resolutions**

Date:      November 13, 2025

*[Signatures Continue on Adjacent Pages]*

40

**SCHEDULE 1 – Catholic Mutual Certificates that are "Archdiocese Policies"**

- Certificate Number 8139 (for the term 7/1/89-7/1/90)

- Certificate Number 8554 (initially issued for the 7/1/90-7/1/91 term and annually renewed until the Archdiocese non-renewed effective 7/1/21)

## SCHEDULE 2 – Co-Insured Parties[1]

**Other Co-Insureds Known to Diocesan Signatory Parties**

NONE

For the avoidance of doubt, the following Entities are bound by the terms of the

Settlement Agreement in addition to the Archdiocese:

## **Additional Debtors**

### I.    **Archdiocesan Parishes**

1.    All Saints Roman Catholic Church, New Orleans, Louisiana

2.    Annunciation of the Blessed Virgin Mary Roman Catholic Church, Bogalusa, Louisiana

3.    Ascension of Our Lord Roman Catholic Church, LaPlace, Louisiana

4.    Assumption of Mary Roman Catholic Church, Avondale, Louisiana

5.    Assumption of the Blessed Virgin Mary Roman Catholic Church, Braithwaite, Louisiana[2]

6.    Blessed Francis Xavier Seelos Roman Catholic Church, New Orleans, Louisiana

7.    Blessed Sacrament-St. Joan of Arc Roman Catholic Church, New Orleans, Louisiana

8.    Blessed Trinity Roman Catholic Church, New Orleans, Louisiana

9.    Christ the King Roman Catholic Church, Gretna, Louisiana

10.   Corpus Christi-Epiphany Roman Catholic Church, New Orleans, Louisiana

11.   Divine Mercy Roman Catholic Church, Kenner, Louisiana

12.   Good Shepherd Roman Catholic Church, New Orleans, Louisiana

13.   Holy Family Roman Catholic Church, Franklinton, Louisiana

14.   Holy Family Roman Catholic Church, Luling, Louisiana

15.   Holy Name of Mary Roman Catholic Church, New Orleans, Louisiana

16.   Holy Spirit Roman Catholic Church, New Orleans, Louisiana

17.   Immaculate Conception Roman Catholic Church, Marrero, Louisiana

18.   Immaculate Conception Roman Catholic Church, New Orleans, Louisiana

---

[1]    Without limiting Section 6.4 of the Settlement Agreement, Insurer does not concede that any of the Entities listed on this schedule are "insureds," "additional insureds," or "protected persons" under its Archdiocese Policies.

[2]    Assumption of the Blessed Virgin Mary Roman Catholic Church, Braithwaite, Louisiana, and St. Thomas Roman Catholic Church, Pointe a La Hache, Louisiana operate jointly as one Archdiocesan Parish.

19. Mary Queen of Peace Roman Catholic Church, Mandeville, Louisiana

20. Mary Queen of Vietnam Roman Catholic Church, New Orleans, Louisiana

21. Mary, Help of Christians Roman Catholic Church, Harvey, Louisiana, formerly known as St. Rosalie Roman Catholic Church, Harvey, Louisiana, for itself and as successor to St. John Bosco Roman Catholic Church, Harvey, Louisiana, now known as St. John Bosco, Inc.

22. Mater Dolorosa Roman Catholic Church, New Orleans, Louisiana

23. Most Holy Name of Jesus Roman Catholic Church, New Orleans, Louisiana

24. Most Holy Trinity Roman Catholic Church, Covington, Louisiana

25. Our Lady of Divine Providence Roman Catholic Church, Metairie, Louisiana

26. Our Lady of Grace Roman Catholic Church, Reserve, Louisiana

27. Our Lady of Lavang Roman Catholic Church, New Orleans, Louisiana

28. Our Lady of Lourdes Roman Catholic Church, Slidell, Louisiana

29. Our Lady of Lourdes Roman Catholic Church, Violet, Louisiana

30. Our Lady of Perpetual Help Roman Catholic Church, Belle Chasse, Louisiana

31. Our Lady of Perpetual Help Roman Catholic Church, Kenner, Louisiana

32. Our Lady of Prompt Succor Roman Catholic Church, Chalmette, Louisiana

33. Our Lady of Prompt Succor Roman Catholic Church, Westwego, Louisiana

34. Our Lady of the Holy Rosary Roman Catholic Church, Hahnville, Louisiana

35. Our Lady of the Lake Roman Catholic Church, Mandeville, Louisiana

36. Our Lady of the Rosary Roman Catholic Church, New Orleans, Louisiana

37. Resurrection of Our Lord Roman Catholic Church, New Orleans, Louisiana

38. Sacred Heart of Jesus Roman Catholic Church, Lacombe, Louisiana

39. Sacred Heart of Jesus Roman Catholic Church, Norco, Louisiana

40. St. Agnes Le Thi Thanh Roman Catholic Church, Marrero, Louisiana

41. St. Agnes Roman Catholic Church, Jefferson, Louisiana

42. [Intentionally Omitted]

43. St. Andrew the Apostle Roman Catholic Church, New Orleans, Louisiana

44. St. Angela Merici Roman Catholic Church, Metairie, Louisiana

45. St. Ann Roman Catholic Church and Shrine, Metairie, Louisiana

46. St. Anselm Roman Catholic Church, Madisonville, Louisiana

47. St. Anthony of Barataria Roman Catholic Church, Lafitte, Louisiana

48. St. Anthony of Padua Roman Catholic Church, Luling, Louisiana

49.     St. Anthony of Padua Roman Catholic Church, New Orleans, Louisiana

50.     St. Anthony Roman Catholic Church, Gretna, Louisiana

51.     St. Augustine Roman Catholic Church, New Orleans, Louisiana

52.     St. Benedict Roman Catholic Church, Covington, Louisiana

53.     St. Benilde Roman Catholic Church, Metairie, Louisiana

54.     St. Bernard Roman Catholic Church, St. Bernard, Louisiana

55.     St. Catherine of Siena Roman Catholic Church, Metairie, Louisiana

56.     St. Charles Borromeo Roman Catholic Church, Destrehan, Louisiana

57.     St. Christopher Roman Catholic Church, Metairie, Louisiana

58.     St. Clement of Rome Roman Catholic Church, Metairie, Louisiana

59.     St. Cletus Roman Catholic Church, Gretna, Louisiana

60.     St. David Roman Catholic Church, New Orleans, Louisiana

61.     St. Dominic's Roman Catholic Church, New Orleans, Louisiana

62.     St. Edward the Confessor Roman Catholic Church, Metairie, Louisiana

63.     St. Francis of Assisi Roman Catholic Church, New Orleans, Louisiana

64.     St. Francis Xavier Roman Catholic Church, Metairie, Louisiana

65.     St. Genevieve Roman Catholic Church, Slidell, Louisiana

66.     St. Jane de Chantal Roman Catholic Church, Abita Springs, Louisiana

67.     St. Jerome Roman Catholic Church, Kenner, Louisiana

68.     St. Joachim Roman Catholic Church, Marrero, Louisiana

69.     St. Joan of Arc Roman Catholic Church, LaPlace, Louisiana

70.     St. John of the Cross Roman Catholic Church, Lacombe, Louisiana

71.     St. John Paul II Roman Catholic Church, Waggaman, Louisiana, formerly known as Our Lady of the Angels Roman Catholic Church, Waggaman, Louisiana, for itself and as successor to St. Bonaventure Roman Catholic Church, Avondale, Louisiana, now known as St. Bonaventure, Inc.

72.     St. John the Baptist Roman Catholic Church, Edgard, Louisiana

73.     St. John the Baptist Roman Catholic Church, Folsom, Louisiana

74.     St. Joseph Roman Catholic Church, Algiers, Louisiana

75.     St. Joseph the Worker Roman Catholic Church, Marrero, Louisiana

76.     St. Joseph's Roman Catholic Church, Gretna, Louisiana

77.     St. Josephine Bakhita Roman Catholic Church, New Orleans, Louisiana, formerly known as St. Mary of the Angels Roman Catholic Church, New Orleans, Louisiana, for itself and

as successor to Our Lady Star of the Sea Roman Catholic Church, New Orleans, Louisiana, now known as Our Lady Star of the Sea, Inc.

78.    St. Katharine Drexel Roman Catholic Church, New Orleans, Louisiana

79.    St. Louis, King of France, Roman Catholic Church, Metairie, Louisiana

80.    St. Luke the Evangelist Roman Catholic Church, Slidell, Louisiana

81.    St. Margaret Mary Roman Catholic Church, Slidell, Louisiana

82.    St. Maria Goretti Roman Catholic Church, New Orleans, Louisiana

83.    St. Mark Roman Catholic Church, Ama, Louisiana

84.    St. Martha Roman Catholic Church, Harvey, Louisiana

85.    St. Martin de Porres Roman Catholic Church, New Orleans, formerly known as Transfiguration of the Lord Roman Catholic Church, New Orleans, Louisiana, for itself and as successor to St. James Major Roman Catholic Church, New Orleans, Louisiana, now known as St. James Major, Inc., and St. Gabriel Roman Catholic Church, New Orleans, Louisiana, now known as St. Gabriel, Inc.

86.    St. Mary Magdalen Roman Catholic Church, Metairie, Louisiana

87.    St. Mary's Roman Catholic Church, New Orleans, Louisiana

88.    St. Matthew the Apostle Roman Catholic Church, River Ridge, Louisiana

89.    St. Michael the Archangel Roman Catholic Church, Paradis, Louisiana, formerly known as St. John the Baptist Roman Catholic Church, Paradis, Louisiana, for itself and as successor to St. Gertrude Roman Catholic Church, Des Allemands, Louisiana, now known as St. Gertrude, Inc.

90.    St. Patrick's Roman Catholic Church, New Orleans, Louisiana, for itself and as successor to St. Theresa of Avila Roman Catholic Church, New Orleans, Louisiana, now known as St. Theresa of Avila, Inc.

91.    St. Patrick's Roman Catholic Church, Port Sulphur, Louisiana

92.    St. Paul the Apostle Roman Catholic Church, New Orleans, Louisiana

93.    St. Peter Claver Roman Catholic Church, New Orleans, Louisiana

94.    St. Peter Roman Catholic Church, Reserve, Louisiana, for itself and as successor to St. Hubert Roman Catholic Church, Garyville, Louisiana, now known as St. Hubert, Inc.

95.    St. Peter's Roman Catholic Church, Covington, Louisiana

96.    St. Philip Neri Roman Catholic Church, Metairie, Louisiana

97.    St. Pius X Roman Catholic Church, New Orleans, Louisiana

98.    St. Raymond and St. Leo the Great Roman Catholic Church, New Orleans, Louisiana

99.    St. Rita Roman Catholic Church, Harahan, Louisiana

100.   St. Rita Roman Catholic Church, New Orleans, Louisiana

101.   St. Thomas Roman Catholic Church, Pointe a La Hache, Louisiana[3]

102.   Sts. Peter and Paul Roman Catholic Church, Pearl River, Louisiana

103.   The Congregation of St. Rita Roman Catholic Church of Harahan

104.   The Visitation of Our Lady Roman Catholic Church, Marrero, Louisiana

**II.   Suppressed Archdiocesan Parishes[4]**

1.   Blessed Sacrament, Inc.

2.   Epiphany, Inc.

3.   Immaculate Heart of Mary, Inc.

4.   Incarnate Word, Inc.

5.   Our Lady of Good Counsel, Inc.

6.   Our Lady of Good Harbor, Inc.

7.   Our Lady of Lourdes, New Orleans, Louisiana, Inc.

8.   Our Lady of the Sacred Heart, New Orleans, Louisiana, Inc.

9.   Our Lady Star of the Sea, Inc., formerly known as Our Lady Star of the Sea Roman Catholic Church, New Orleans, Louisiana

10.   St. Ann, New Orleans, Louisiana, Inc.

11.   St. Bonaventure, Inc., formerly known as St. Bonaventure Roman Catholic Church, Avondale, Louisiana

---

[3]   As stated in footnote 2, Assumption of the Blessed Virgin Mary Roman Catholic Church, Braithwaite, Louisiana, and St. Thomas Roman Catholic Church, Pointe a La Hache, Louisiana operate jointly as one Archdiocesan Parish.

[4]   The Suppressed Archdiocesan Parishes no longer operate as separate church parishes.  The Suppressed Archdiocesan Parishes were not dissolved, and may own property.

Following Hurricane Katrina, the operations of certain of the Suppressed Archdiocesan Parishes were combined with Archdiocesan Parishes.  In 2024, in the ongoing aftermath of Hurricane Ida and a result of storm damage, the shift of demographics and Catholic population, decreased or low Mass attendance, sacramental statistics, and financial difficulties encountered, the following additional Suppressed Archdiocesan Parishes were canonically merged with neighboring Archdiocesan Parishes: (a) St. Hubert Roman Catholic Church, Garyville, Louisiana, now known as St. Hubert, Inc., was canonically merged into St. Peter Roman Catholic Church, Reserve, Louisiana; (b) (i) St. James Major Roman Catholic Church, New Orleans, Louisiana, now known as St. James Major, Inc., and (ii) St. Gabriel Roman Catholic Church, New Orleans, Louisiana, now known as St. Gabriel, Inc., were both canonically merged into Transfiguration of the Lord Roman Catholic Church, New Orleans, Louisiana, now known as St. Martin de Porres Roman Catholic Church, New Orleans, Louisiana; (c) St. John Bosco Roman Catholic Church, Harvey, Louisiana, now known as St. John Bosco, Inc., was canonically merged into St. Rosalie Roman Catholic Church, Harvey, Louisiana, now known as Mary, Help of Christians Roman Catholic Church, Harvey, Louisiana; (d) St. Bonaventure Roman Catholic Church, Avondale, Louisiana, now known as St. Bonaventure, Inc., was canonically merged into Our Lady of the Angels Roman Catholic Church, Waggaman, Louisiana, now known as St. John Paul II Roman Catholic Church, Waggaman, Louisiana; (e) St. Gertrude Roman Catholic Church, Des Allemands, Louisiana, now known as St. Gertrude, Inc., was canonically merged into St. John the Baptist Roman Catholic Church, Paradis, Louisiana, now known as St. Michael the Archangel Roman Catholic Church, Paradis, Louisiana; (f) Our Lady Star of the Sea Roman Catholic Church, New Orleans, Louisiana, now known as Our Lady Star of the Sea, Inc., was canonically merged into St. Mary of the Angels Roman Catholic Church, New Orleans, Louisiana, now known as St. Josephine Bakhita Roman Catholic Church, New Orleans, Louisiana; and (g) St. Theresa of Avila Roman Catholic Church, New Orleans, Louisiana, now known as St. Theresa of Avila, Inc., had its canonical territory divided so that (i) the area north of the Pontchartrain Expressway was canonically merged into St. Patrick's Roman Catholic Church, New Orleans, Louisiana, and (ii) the area south of the Pontchartrain Expressway was canonically merged into St. Alphonsus Roman Catholic Church, New Orleans, Louisiana.

12.    St. Frances Xavier Cabrini, Inc.

13.    St. Francis de Salles, Inc.

14.    St. Gabriel, Inc., formerly known as St. Gabriel Roman Catholic Church, New Orleans, Louisiana

15.    St. Gertrude, Inc., formerly known as St. Gertrude Roman Catholic Church, Des Allemands, Louisiana

16.    St. Henry's, Inc.

17.    St. Hubert, Inc., formerly known as St. Hubert Roman Catholic Church, Garyville, Louisiana

18.    St. James Major, Inc., formerly known as St. James Major Roman Catholic Church, New Orleans, Louisiana

19.    St. John Bosco, Inc., formerly known as St. John Bosco Roman Catholic Church, Harvey, Louisiana

20.    St. John the Baptist, New Orleans, Louisiana, Inc.

21.    St. Julian Eymard, Inc.

22.    St. Lawrence the Martyr, Inc.

23.    St. Louise de Marillac, Inc.

24.    St. Maurice, Inc.

25.    St. Monica, Inc.

26.    St. Philip the Apostle, Inc.

27.    St. Raymond's, Inc.

28.    St. Rose of Lima, Inc.

29.    St. Theresa of Avila, Inc., formerly known as St. Theresa of Avila Roman Catholic Church, New Orleans, Louisiana

30.    St. Theresa of the Child Jesus, Inc.

31.    The Congregation of Saints Peter and Paul Roman Catholic Church

32.    The Congregation of St. Cecelia Roman Catholic Church

33.    The Congregation of the Annunciation Roman Catholic Church

34.    The Congregation of the Holy Trinity Roman Catholic Church

**III.    Archdiocesan Agencies**

1.    Archdiocesan Spirituality Center

2.    Catholic Charities Archdiocese of New Orleans

3.    Catholic Charities Children's Day Care Centers

4. Catholic Charities Group Homes (merged into Catholic Charities Archdiocese of New Orleans)

5. Clarion Herald Publishing Company

6. Korean Catholic Community of New Orleans, Inc.

7. Notre Dame Seminary

8. Our Lady of Mount Carmel Latin Mass Community, Covington, Louisiana

9. Pace Greater New Orleans

10. Padua House (merged into Catholic Charities Archdiocese of New Orleans)

11. Philmat, Inc.

12. Project Lazarus

13. Roman Catholic Center of Jesus the Lord

14. School Food and Nutrition Services of New Orleans, Inc.

15. Second Harvest Food Bank of Greater New Orleans and Acadiana

16. St. Jude Community Center, Inc.

17. St. Michael Special School

18. St. Thérèse Catholic Academy

19. The Society for the Propagation of the Faith, Archdiocese of New Orleans


**IV.     Non-Debtor Catholic Entities**


**Archdiocesan Agencies**


1. 7887 Walmsley, Inc.

2. Annunciation Inn, Inc.

3. Archdiocese of New Orleans Indemnity, Inc.

4. Aspiring Scholars

5. Catholic Community Foundation Archdiocese of New Orleans

6. Christopher Homes, Inc.

7. Christopher Inn

8. Dubourg Home

9. Holy Redeemer Catholic Virtual Academy

10. Holy Trinity Drive Land Corporation

11. Iberia Investment Fund II, LLC

12.     Metairie III

13.     Metairie Manor

14.     Monsignor Wynhoven Apartments, Inc.

15.     Nazareth II

16.     Nazareth Manor

17.     New Orleans Archdiocesan Cemeteries

18.     Notre Dame Health System (f/k/a Chateau de Notre Dame)

19.     Rouquette III

20.     St. Anthony's Gardens

21.     St. Bernard II

22.     St. Bernard III

23.     St. Bernard Manor

24.     St. Martin's Manor, Inc.

25.     St. Tammany Catholic Cemetery

26.     St. Tammany Manor

27.     The Apartments at Mater Dolorosa

28.     The Mental Health Association Development Corporation

29.     Villa Additions, doing business as St. Teresa's Villa

30.     Villa St. Maurice, Inc.

## SCHEDULE 3 – Additional Notice Parties

**The Redemptorists/Denver Province**
1633 North Cleveland Avenue
Chicago, IL 60614

**Dominican Province of St. Albert the Great**
1910 S. Ashland Avenue
Chicago, Illinois, 60608-2905

**Congregation of Holy Cross**
P.O. Box 1064
Notre Dame, IN 46556-0541

**St. Elio Roman Catholic Church**
1335 Bayou Dularge Road
Theriot, LA 70397

**Central Catholic High School**
2100 Cedar Street, Unit 1
Morgan City, LA 70380

**Edward Douglas White Catholic High School**
555 Cardinal Drive
Thibodaux, LA 70301

**Chinchuba Institute for the Deaf**
2929 Carrollton
New Orleans, LA 70118

and

1231 Prytania St.
New Orleans, LA 70130

**St. Scholastica Academy**
122 South Massachusetts St.
Covington, Louisiana 70433

**Hope Haven – Madonna Manor**
1231 Prytania
New Orleans LA  70130

7887 Walmsley Ave.
New Orleans, LA 70125

2929 Carrollton
New Orleans, LA 70118

**Holy Cross College, Inc.**
Attn Remy Donnelly
5500 Paris Ave.
New Orleans, LA 70122

**Tulane Catholic**
1037 Audubon St
New Orleans, LA 70118

**University of New Orleans**
2000 Lakeshore Drive
New Orleans, LA 70148

**Our Lady of Peace Catholic Church**
13281 LA-644
South Vacherie, LA 70090

**St. Lucy Child Development Center**
1220 Aycock St
Houma, LA 70360

**St. Augustine High School, Inc.**
c/o Alfred Harrell, III
2600 A.P. Tureaud Ave
New Orleans LA 70119

**St. Joseph's Society of the Sacred Heart**
P.O. Box 65010
Baltimore, MD 21209

**The Community of the Sisters of the Immaculate Conception**
c/o Melanie Baglow
6208 Ithaca Street
Metairie, LA 70003

**Sisters of Mount Carmel**
**Generalate Office**
21388 Smith Road
Covington, LA 70435-6349

**Daughters of St. Paul**
50 St. Paul's Ave.
Jamaica Plain, MA 02130

and

c/o Mary Martha Moss
4403 Veterans Blvd.
Metairie, LA  70006

Crescent City Convent Corporation
210 Baronne St.
New Orleans, LA  70112

**Holy Rosary Academy High School**
2437 Jena St
New Orleans, LA 70115

**St. Brigid Parish**
7887 Walmsey Avenue
New Orleans, LA 70125

**Prince of Peace Parish**
7887 Walmsey Avenue
New Orleans, LA 70125

**St. Nicholas of Myra Mission**
9701 Hammond St
New Orleans, LA 70127

**Infant Jesus of Prague Mission**
c/o St. Martha Parish
2555 Apollo Drive
Harvey, LA 70058

**Catholic Youth Ministry**
1007 Airline Park Blvd
Metaire, LA 70003

**Family Life Apostolate**
7887 Walmsey Avenue
New Orleans, LA 70125

**Ozanam Inn Inc**
P.O. Box 30565
New Orleans, LA 70190

**Gayle & Tom Benson House of Priestly Formation**
2925 South Carrolton
New Orleans, LA 70118

**Stella Maris Maritime Center**
7887 Walmsey Avenue
New Orleans, LA 70125

**Camp Abbey**
CYO Youth Office
1007 Airline Park Blvd
Metaire, LA 70003

**St. Therese Academy**
917 N. Atlanta St
Metaire, LA 70003

**Our Lady of Guadalupe Parish**
411 North Rampart Street
New Orleans, LA 70112

**Lyric Realty and Parking Company, Inc.**
c/o Kenneth D. Boudreaux
1115 Tallowtree Dr.
Mandeville, LA  70448

**Sacred Heart of Jesus Catholic Church**
1111 Highway 55
PO Box 2
Montegut, LA 70377

**Diocese of Houma Thibodaux**
P.O. Box 505
Schriever, LA

**Diocese of Baton Rouge**
Post Office Box 2028
Baton Rouge, Louisiana 70821-2028

**Vandebilt Catholic High School**
209 South Hollywood Road
Houma, LA 70360

**General Services Administration**
1800 F St., NW
Washington, DC 20405

**People For Teens of St. Anthony of Padua Corporation**
4700 Cleveland
New Orleans, LA  70119

**Society of the Sacred Heart**
4120 Forest Park Avenue
St. Louis, MO 63108

**Seminarians Parents Association, Inc.**
718 Wood St
Houma, La 70360

**Society of the Divine Word**
PO Box 6038
Techny, IL 60082

**Ursuline Sisters of the Roman Union, Central Province,**
353 South Sappington
St. Louis, MO 63122

**Salesians of Don Bosco, Eastern Province**
in the USA d/b/a Salesian Society, Inc.
Through its agent for service of process:
Rev. Louis Molinelli, SDB
1000 Barataria Boulevard
Marrero, LA 70072

And

Rev. Louis Molinelli, S.D.B.
1000 Salesian Lane
Marrero, LA 70072

**SCHEDULE 4**
**Bodily Injury or Personal Injury Claimants Within Catholic Mutual Preserved Coverage**

| |
|---|
| MIKKAL PETERSON |
| JO ANN REDMOND WADE |
| GINO CAMINITA |
| LAUREN THEOBOLD |
| BEOLIA MARTIN |
| WARREN DEEMER |
| MELISSA BLUNT |
| TINA GUIDRY JOHNSON |
| MERLE NOULLET |
| KENDRA LAFRANCE |
| TONY MIGLIORE |
| PAMELA MIGLIORE |
| MICAYLA BROWN |
| FATHER KENNETH HAMILTON |
| PATSY PERKINS |
| ANGEL CARDONA |
| LA Fair Housing Action Center, Inc. |
| CARRIE KINARD |
| CCANO-PACE GREATER NEW ORLEANS |

**Schedule 5**

**[Form of Corporate Resolutions]**

<u>CORPORATE RESOLUTION</u>

RESOLUTION OF THE MEMBERSHIP AND BOARD OF DIRECTORS OF [NAME], [ADDRESS], A LOUISIANA NON-PROFIT [CORPORATION][LIMITED LIABILITY COMPANY (hereinafter this "Corporation").

BE IT RESOLVED, that either Very Rev. Patrick Carr or Rev. Leon Poche, as authorized agents of this Corporation, are hereby authorized to transact on behalf of this Corporation any and all business related to the following:

1. Engaging 1793 Group, a Louisiana non-profit corporation, on terms and conditions deemed appropriate in their sole discretion, to assist with and administer on this Corporation's behalf, any and all matters in which this Corporation may have an interest in relation to a Plan of Reorganization filed or anticipated to be filed by The Roman Catholic Church of the Archdiocese of New Orleans in proceedings commenced under Chapter 11 of the Bankruptcy Code, captioned *In re The Roman Catholic Church of the Archdiocese of New Orleans*, Case No. 20-10846 (Bankr. E.D. La.) (the "Chapter 11 Case"), including, but not limited to, preparing and filing a petition in the Chapter 11 Case seeking relief under Chapter 11 of the United States Bankruptcy Code as an additional debtor, executing any and all documents necessary for this Corporation to file for relief  in the Chapter 11 Case, executing on behalf of this Corporation all documents required to comply with the requirements imposed upon parties filing for relief under Chapter 11of the Bankruptcy Code, Bankruptcy Rules, Local Rules for the Eastern District of Louisiana and/or the requirement imposed by the United States Trustee.

2. Engaging the firm of Heller Draper and/or any other attorneys to represent this Corporation in actions or proceedings related to the Chapter 11 Case.

3. Engaging accountants, financial advisors, and any other professionals necessary to administer the Chapter 11 Case on behalf of this Corporation.

4. Making decisions with regard to the payment of fees and costs for which this Corporation may become responsible to pay in the Chapter 11 Case.

5. Making decisions with regard to the filing of any plan within the Chapter 11 case, provided that such shall contain terms and provisions consistent with those set forth in Appendix "A" attached hereto and incorporated herein by this reference.

FURTHER RESOLVED that either Very Rev. Patrick Carr or Rev. Leon Poche, as authorized agents of this Corporation with the power of substitution, is authorized to execute and deliver on behalf of this Corporation each and every Insurance Settlement Agreement with the Settling Insurers, as those terms are defined in the Fourth Amended Joint Chapter 11 Plan of Reorganization for the Roman Catholic Church of the Archdiocese of New Orleans and Additional Debtors, Proposed by the Debtor, the Additional Debtors, and the Official Committee of Unsecured Creditors, Dated as of September 23, 2025 (the "Plan"), and any amendment or modification to the Plan, including, without limitation, the documents attached or referred to in Plan Supplement 7.1(a),  any Bill of Sale required under such Insurance Settlement Agreements,

and any other documents reasonably requested by any such Settling Insurer to effectuate the transactions provided for in its Insurance Settlement Agreement or the Plan.

      FURTHER GIVING AND GRANTING unto either Very Rev. Patrick Carr or Rev. Leon Poche, full power and authority to sign any and all documents and to take any and all actions necessary and proper in furtherance of the foregoing premises by on and on behalf of this Corporation.

      FURTHER GIVING AND GRANTING unto Very Rev. Peter Akpoghiran or any other officer of the Corporation, full power and authority to certify the passage and effectiveness of this Resolution to the Settling Insurers and to take any and all actions necessary and proper in furtherance of the foregoing premises by on and on behalf of this Corporation.

      FURTHER RATIFYING AND CONFIRMING all that either Very Rev. Patrick Carr or Rev. Leon Poche, in his said capacity may do or cause to be done in the premises.

      I, the undersigned President of this Corporation do hereby certify that the above and foregoing is a true and correct copy of a resolution adopted by the Membership and Board of Directors of said corporation in conformity with the Articles of Incorporation and Louisiana law, and that said resolution remains in full force and effect and has not been amended or rescinded.

      WITNESS MY HAND AND SEAL, effective this _____day of _____, 2025

_____
Very Reverend Patrick J. Williams, V.G.

ATTEST

_____
Dirk Wild, Director

2

4922-4535-1762v.79

## **Schedule 6**

### **[Form of Incumbency Certificates]**

## INCUMBENCY CERTIFICATE

I, **Very Rev. Peter Akpoghiran, J.C.D**., the duly elected, qualified, and acting **Vice President** of each of the Louisiana nonprofit corporations or limited liability companies listed on **Exhibit A** attached hereto (each, a "Corporation," and collectively, the "Corporations"), do hereby certify as follows:

1.  That the person named below has been duly elected or appointed and is the qualified and acting officer of each of the Corporations holding the office set forth opposite his/her name.

    **NAME**                                    **TITLE**

    **Very Rev. Patrick J. Williams, V.G.**       **President and Director**

2.  That the foregoing person is duly authorized to act on behalf of each Corporation in such capacity and to exercise the powers and perform the duties incident to said office under the respective Articles of Incorporation and Bylaws of each Corporation.

3.  That attached hereto as **Exhibit B** is a true and correct copy of a resolution adopted at a duly noticed special meeting by the sole member of each of the Corporations and all of the Board of Directors of each said Corporation in attendance at such meeting in conformity with such Articles of Incorporation and Louisiana law and that said resolution remains in full force and effect and has not been amended or rescinded.

    IN WITNESS WHEREOF, I have hereunto set my hand as Vice President of each of the

Corporations as of this ___ day of October, 2025.

_____
Very Rev. Peter Akpoghiran, J.C.D
Vice President of Each Corporation
(See Attached Exhibit A)

State of Louisiana
Parish of Orleans

On this _____ day of October, 2025, before me, the undersigned Notary Public, personally appeared **Very Rev. Peter Akpoghiran, J.C.D.,** who acknowledged that he/she executed the foregoing instrument for the purposes therein contained and in the capacity therein stated.

Notary Public
Printed Name: _____
Notary ID or Bar Roll No.: _____
My Commission Expires: _____

**AFSDOCS:303317248.00**

4922-4535-1762v.79

**EXHIBIT A**

Approval Order

(omitted)

**EXHIBIT B**

## <u>BILL OF SALE AND ASSIGNMENT</u>

**THIS BILL OF SALE AND ASSIGNMENT** is made and entered into as of _____, 2025, by and between The Roman Catholic Archdiocese of New Orleans and its Bankruptcy Estate (the "**Archdiocese**" or "**Debtor**"), the Additional Debtors and their respective Bankruptcy Estates, the Non-Debtor Catholic Entities (collectively, the "**Archdiocese Signatory Parties**"), and The Catholic Mutual Relief Society of America ("**Insurer**").  All capitalized terms used herein without definition have the meanings set forth in the Settlement Agreement, Release, and Policy Buyback by, between, and among the Archdiocese, the other Archdiocese Signatory Parties, and Insurer, as amended or modified (the "**Settlement Agreement**").

### <u>W I T N E S S E T H</u>:

WHEREAS, pursuant to the Settlement Agreement, the Archdiocese Signatory Parties have, on behalf of themselves and all other Archdiocese Bound Parties, agreed to sell and/or convey any and all right, title, and interest (including all Subject Interests) in and to the Purchased Property (as defined in the Approval Order), and Insurer has agreed to purchase and buy-back the Purchased Property, in consideration of the payment of a purchase price of $2,000,000.00 (the "Purchase Price") and other good and valuable consideration as provided in and under the Settlement Agreement and Plan;

WHEREAS, the Approval Order, as filed at Docket No. [*], has approved the Sale Transaction (as defined in the Approval Order) and found that the Purchase Price is a fair and reasonable price for the Purchased Property;

NOW, THEREFORE, in consideration of the payment of the Purchase Price by Insurer as set forth in the Settlement Agreement, and in accordance therewith and with Approval Order, the Debtor Parties do hereby sell, transfer, and assign to Insurer, and Insurer does hereby accept, all of the Archdiocese Bound Parties' right, title, and interest in and to the Purchased Property, and all Subject Interests therein.

[Signatures appear on following pages]

IN WITNESS WHEREOF, the parties have executed this Bill of Sale and Assignment as of the date first above written.


**The Catholic Mutual Relief Society of America**


By: _____
Rodney Oligmueller
Assistant Vice President, Specialty Claims


Date: _____


[Signatures continue on adjacent pages]

**The Roman Catholic Archdiocese of New Orleans**

Signed: _____

Name Printed: _____

Title: _____

Date: _____

[Signatures continue on adjacent pages]

**All Archdiocese Signatory Parties
Other than the Archdiocese**

Signed:       _____

Name Printed: _____

Title:        **Their Authorized Signer Pursuant to Resolutions**
              _____

Date:         _____

[Signatures continue on adjacent pages]