**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| IN RE: | § | **CASE NO: 20-10846** |
| | § | **(JOINTLY ADMINISTERED)** |
| **THE ROMAN CATHOLIC CHURCH** | § | |
| **OF THE ARCHDIOCESE OF NEW** | § | **CHAPTER 11** |
| **ORLEANS,**[1] | § | **COMPLEX CASE** |
| | § | |
| **DEBTOR.** | § | **SECTION A** |

---

[1]     An Order directing joint administration of the Chapter 11 bankruptcy case of The Roman Catholic Church of The Archdiocese of New Orleans, [No. 20-10846], as lead case, with the Chapter 11 bankruptcy cases of (i) All Saints Roman Catholic Church, New Orleans, Louisiana, [No. 25-12579], (ii) Annunciation Of The Blessed Virgin Mary Roman Catholic Church, Bogalusa, Louisiana, [No. 25-12580], (iii) Ascension Of Our Lord Roman Catholic Church, Laplace, Louisiana, [No. 25-12581], (iv) The Visitation Of Our Lady Roman Catholic Church, Marrero, Louisiana, [No. 25-12582], (v) Assumption Of Mary Roman Catholic Church, Avondale, Louisiana, [No. 25-12583], (vi) Assumption Of The Blessed Virgin Mary Roman Catholic Church Braithwaite, Louisiana, [No. 25-12584], (vii) Blessed Francis Xavier Seelos Roman Catholic Church, New Orleans, Louisiana, [No. 25-12585], (viii) Blessed Sacrament-St. Joan Of Arc Roman Catholic Church, New Orleans, Louisiana, [No. 25-12586], (ix) The Congregation Of St. Rita Roman Catholic Church Of Harahan, [No. 25-12587], (x) Blessed Trinity Roman Catholic Church, New Orleans, Louisiana, [No. 25-12588], (xi) Christ The King Roman Catholic Church, Gretna, Louisiana, [No. 25-12589], (xii) Corpus Christi-Epiphany Roman Catholic Church, New Orleans, Louisiana, [No. 25-12590], (xiii) Divine Mercy Roman Catholic Church, Kenner, Louisiana, [No. 25-12591], (xiv) Good Shepherd Roman Catholic Church, New Orleans, Louisiana, [No. 25-12592], (xv) Sts. Peter And Paul Roman Catholic Church, Pearl River, Louisiana, [No. 25-12593], (xvi) Holy Family Roman Catholic Church, Franklinton, Louisiana, [No. 25-12594], (xvii) St. Thomas Roman Catholic Church, Pointe A La Hache, Louisiana, [No. 25-12595], (xviii) Holy Family Roman Catholic Church, Luling, Louisiana, [No. 25-12596], (xix) St. Rita Roman Catholic Church, New Orleans, Louisiana, [No. 25-12597], (xx) Holy Name Of Mary Roman Catholic Church, New Orleans, Louisiana, [No. 25-12598], (xxi) St. Rita Roman Catholic Church, Harahan, Louisiana, [No. 25-12599], (xxii) Holy Spirit Roman Catholic Church, New Orleans, Louisiana, [No. 25-12600], (xxiii) St. Raymond And St. Leo The Great Roman Catholic Church, New Orleans, Louisiana, [No. 25-12601], (xxiv) Immaculate Conception Roman Catholic Church, Marrero, Louisiana, [No. 25-12602], (xxv) Immaculate Conception Roman Catholic Church, New Orleans, Louisiana, [No. 25-12603], (xxvi) St. Pius X Roman Catholic Church, New Orleans, Louisiana, [No. 25-12604], (xxvii) Mary Queen Of Peace Roman Catholic Church, Mandeville, Louisiana, [No. 25-12605], (xxviii) St. Philip Neri Roman Catholic Church, Metairie, Louisiana, [No. 25-12606], (xxix) Mary Queen Of Vietnam Roman Catholic Church, New Orleans, Louisiana, [No. 25-12607], (xxx) St. Peter's Roman Catholic Church, Covington, Louisiana, [No. 25-12608], (xxxi) Mary, Help Of Christians Roman Catholic Church, Harvey, Louisiana, [No. 25-12610], (xxxii) St. Peter Roman Catholic Church, Reserve, Louisiana, [No. 25-12611], (xxxiii) Mater Dolorosa Roman Catholic Church, New Orleans, Louisiana, [No. 25-12612], (xxxiv) St. Peter Claver Roman Catholic Church, New Orleans, Louisiana, [No. 25-12613], (xxxv) Most Holy Name Of Jesus Roman Catholic Church, New Orleans, Louisiana, [No. 25-12614], (xxxvi) St. Paul The Apostle Roman Catholic Church, New Orleans, Louisiana, [No. 25-12615], (xxxvii) Most Holy Trinity Roman Catholic Church, Covington, Louisiana, [No. 25-12616], (xxxviii) St. Patrick's Roman Catholic Church, Port Sulphur, Louisiana, [No. 25-12617], (xxxix) Our Lady Of Divine Providence Roman

Catholic Church, Metairie, Louisiana, [No. 25-12618], (xl) St. Patrick's Roman Catholic Church, New Orleans, Louisiana, [No. 25-12619], (xli) St. Michael The Archangel Roman Catholic Church, Paradis, Louisiana, [No. 25-12620], (xlii) Our Lady Of Grace Roman Catholic Church, Reserve, Louisiana, [No. 25-12621], (xliii) St. Martin De Porres Roman Catholic Church, New Orleans, Louisiana, [No. 25-12622], (xliv) Our Lady Of Lavang Roman Catholic Church, New Orleans, Louisiana, [No. 25-12623], (xlv) St. Matthew The Apostle Roman Catholic Church, River Ridge, Louisiana, [No. 25-12624], (xlvi) Our Lady Of Lourdes Roman Catholic Church, Slidell, Louisiana, [No. 25-12625], (xlvii) St. Mary's Roman Catholic Church, New Orleans, Louisiana, [No. 25-12626], (xlviii) Our Lady Of Lourdes Roman Catholic Church, Violet, Louisiana, [No. 25-12627], (xlix) St. Mary Magdalen Roman Catholic Church, Metairie, Louisiana, [No. 25-12628], (l) Our Lady Of Perpetual Help Roman Catholic Church, Belle Chasse, Louisiana, [No. 25-12629], (li) Our Lady Of Perpetual Help Roman Catholic Church, Kenner, Louisiana, [No. 25-12630], (lii) Our Lady Of Prompt Succor Roman Catholic Church, Chalmette, Louisiana, [No. 25-12632], (liii) St. Martha Roman Catholic Church, Harvey, Louisiana, [No. 25-12633], (liv) Our Lady Of Prompt Succor Roman Catholic Church, Westwego, Louisiana, [No. 25-12634], (lv) St. Mark Roman Catholic Church, Ama, Louisiana, [No. 25-12635], (lvi) Our Lady Of The Holy Rosary Roman Catholic Church, Hahnville, Louisiana, [No. 25-12636], (lvii) Our Lady Of The Lake Roman Catholic Church, Mandeville, Louisiana, [No. 25-12637], (lviii) St. Maria Goretti Roman Catholic Church, New Orleans, Louisiana, [No. 25-12638], (lix) Our Lady Of The Rosary Roman Catholic Church, New Orleans, Louisiana, [No. 25-12639], (lx) St. Margaret Mary Roman Catholic Church, Slidell, Louisiana, [No. 25-12640], (lxi) Resurrection Of Our Lord Roman Catholic Church, New Orleans, Louisiana, [No. 25-12641], (lxii) St. Luke The Evangelist Roman Catholic Church, Slidell, Louisiana, [No. 25-12642], (lxiii) Sacred Heart Of Jesus Roman Catholic Church, Lacombe, Louisiana, [No. 25-12644], (lxiv) St. Louis, King Of France, Roman Catholic Church, Metairie, Louisiana, [No. 25-12645], (lxv) Sacred Heart Of Jesus Roman Catholic Church, Norco, Louisiana, [No. 25-12646], (lxvi) St. Katharine Drexel Roman Catholic Church, New Orleans, Louisiana, [No. 25-12647], (lxvii) St. Agnes Le Thi Thanh Roman Catholic Church, Marrero, Louisiana, [No. 25-12650], (lxviii) St. Josephine Bakhita Roman Catholic Church, New Orleans, Louisiana, [No. 25-12651], (lxix) St. Agnes Roman Catholic Church, Jefferson, Louisiana, [No. 25-12652], (lxx) St. Joseph's Roman Catholic Church, Gretna, Louisiana, [No. 25-12653], (lxxi) St. Joseph The Worker Roman Catholic Church, Marrero, Louisiana, [No. 25-12654], (lxxii) St. Andrew The Apostle Roman Catholic Church, New Orleans, Louisiana, [No. 25-12655], (lxxiii) St. Joseph Roman Catholic Church, Algiers, Louisiana, [No. 25-12657], (lxxiv) St. Angela Merici Roman Catholic Church, Metairie, Louisiana, [No. 25-12658], (lxxv) St. John The Baptist Roman Catholic Church, Folsom, Louisiana, [No. 25-12659], (lxxvi) St. Ann Roman Catholic Church And Shrine, Metairie, Louisiana, [No. 25-12660], (lxxvii) St. John The Baptist Roman Catholic Church, Edgard, Louisiana, [No. 25-12661], (lxxviii) St. John Paul II Roman Catholic Church, Waggaman, Louisiana, [No. 25-12663], (lxxix) St. Anselm Roman Catholic Church, Madisonville, Louisiana, [No. 25-12664], (lxxx) St. John Of The Cross Roman Catholic Church, Lacombe, Louisiana, [No. 25-12665], (lxxxi) St. Anthony Of Barataria Roman Catholic Church, Lafitte, Louisiana, [No. 25-12667], (lxxxii) St. Joan Of Arc Roman Catholic Church, Laplace, Louisiana, [No. 25-12668], (lxxxiii) St. Joachim Roman Catholic Church, Marrero, Louisiana, [No. 25-12669], (lxxxiv) St. Jerome Roman Catholic Church, Kenner, Louisiana, [No. 25-12670], (lxxxv) St. Anthony Of Padua Roman Catholic Church, Luling, Louisiana, [No. 25-12671], (lxxxvi) St. Jane De Chantal Roman Catholic Church, Abita Springs, Louisiana, [No. 25-12672], (lxxxvii) St. Anthony Of Padua Roman Catholic Church, New Orleans, Louisiana, [No. 25-12673], (lxxxviii) St. Anthony Roman Catholic Church, Gretna, Louisiana, [No. 25-12674], (lxxxix) St. Augustine Roman Catholic Church, New Orleans, Louisiana, [No. 25-12675], (xc) St. Genevieve Roman Catholic Church, Slidell, Louisiana, [No. 25-12676], (xci) St. Benedict Roman Catholic Church, Covington, Louisiana, [No. 25-12677], (xcii) St. Francis Xavier Roman Catholic Church, Metairie, Louisiana, [No. 25-12678], (xciii) St. Benilde Roman Catholic Church, Metairie, Louisiana, [No. 25-12679], (xciv) St. Francis Of Assisi Roman Catholic Church, New Orleans, Louisiana, [No. 25-12680], (xcv) St. Bernard Roman Catholic Church, St. Bernard, Louisiana, [No. 25-12681], (xcvi) St. Edward The Confessor Roman Catholic Church, Metairie, Louisiana, [No. 25-12682], (xcvii) St. Catherine Of Siena

Roman Catholic Church, Metairie, Louisiana, [No. 25-12683], (xcviii) St. Dominic's Roman Catholic Church, New Orleans, Louisiana, [No. 25-12684], (xcix) St. Charles Borromeo Roman Catholic Church, Destrehan, Louisiana, [No. 25-12685], (c) St. David Roman Catholic Church, New Orleans, Louisiana, [No. 25-12686], (ci) St. Christopher Roman Catholic Church, Metairie, Louisiana, [No. 25-12687], (cii) St. Cletus Roman Catholic Church, Gretna, Louisiana, [No. 25-12688], (ciii) St. Clement Of Rome Roman Catholic Church, Metairie, Louisiana, [No. 25-12689], (civ) Blessed Sacrament, Inc., [No. 25-12690], (cv) The Congregation Of The Holy Trinity Roman Catholic Church, [No. 25-12691], (cvi) Epiphany, Inc., [No. 25-12692], (cvii) The Congregation Of The Annunciation Roman Catholic Church, [No. 25-12693], (cviii) The Congregation Of St. Cecelia Roman Catholic Church, [No. 25-12694], (cix) Immaculate Heart Of Mary, Inc., [No. 25-12695], (cx) Incarnate Word, Inc., [No. 25-12696], (cxi) The Congregation Of Saints Peter And Paul Roman Catholic Church, [No. 25-12697], (cxii) St. Theresa Of The Child Jesus, Inc., [No. 25-12698], (cxiii) Our Lady Of Good Harbor, Inc., [No. 25-12699], (cxiv) St. Theresa Of Avila, Inc., [No. 25-12700], (cxv) Our Lady Of Good Counsel, Inc., [No. 25-12701], (cxvi) St. Rose Of Lima, Inc., [No. 25-12702], (cxvii) Our Lady Of Lourdes, New Orleans, Louisiana, Inc., [No. 25-12703], (cxviii) St. Raymond's, Inc., [No. 25-12704], (cxix) Our Lady Of The Sacred Heart, New Orleans, Louisiana, Inc., [No. 25-12705], (cxx) St. Philip The Apostle, Inc., [No. 25-12706], (cxxi) Our Lady Star Of The Sea, Inc., [No. 25-12707], (cxxii) St. Monica, Inc., [No. 25-12708], (cxxiii) St. Ann, New Orleans, Louisiana, Inc., [No. 25-12709], (cxxiv) St. Maurice, Inc., [No. 25-12710], (cxxv) St. Bonaventure, Inc., [No. 25-12711], (cxxvi) St. Louise De Marillac, Inc., [No. 25-12712], (cxxvii) St. Frances Xavier Cabrini, Inc., [No. 25-12713], (cxxviii) St. Lawrence The Martyr, Inc., [No. 25-12715], (cxxix) St. Julian Eymard, Inc., [No. 25-12716], (cxxx) St. Francis De Salles, Inc., [No. 25-12717], (cxxxi) St. John The Baptist, New Orleans, Louisiana, Inc., [No. 25-12718], (cxxxii) St. Gabriel, Inc., [No. 25-12719], (cxxxiii) St. John Bosco, Inc., [No. 25-12720], (cxxxiv) St. Gertrude, Inc., [No. 25-12721], (cxxxv) St. James Major, Inc., [No. 25-12723], (cxxxvi) St. Henry's, Inc., [No. 25-12724], (cxxxvii) St. Hubert, Inc., [No. 25-12725], (cxxxviii) Archdiocesan Spirituality Center, [No. 25-12726], (cxxxix) Catholic Charities Archdiocese Of New Orleans, [No. 25-12727], (cxl) Catholic Charities Children's Day Care Centers, [No. 25-12728], (cxli) Catholic Charities Group Homes, [No. 25-12729], (cxlii) Clarion Herald Publishing Company, [No. 25-12730], (cxliii) Korean Catholic Community Of New Orleans, Inc., [No. 25-12731], (cxliv) Notre Dame Seminary, [No. 25-12732], (cxlv) Our Lady Of Mount Carmel Latin Mass Community, Covington, Louisiana, [No. 25-12733], (cxlvi) Pace Greater New Orleans, [No. 25-12734], (cxlvii) Padua House, [No. 25-12735], (cxlviii) Philmat, Inc., [No. 25-12736], (cxlix) Project Lazarus, [No. 25-12737], (cl) Roman Catholic Center Of Jesus The Lord, [No. 25-12738], (cli) School Food And Nutrition Services Of New Orleans, Inc., [No. 25-12739], (clii) Second Harvest Food Bank Of Greater New Orleans And Acadiana, [No. 25-12740], (cliii) St. Jude Community Center, Inc., [No. 25-12741], (cliv) St. Michael Special School, [No. 25-12742], (clv) St. Therese Catholic Academy, [No. 25-12743], and (clvi) The Society For The Propagation Of The Faith, Archdiocese Of New Orleans, [No. 25-12744], was entered on November 13, 2025, [No. 20-10846, ECF 4603; No. 25-12579, ECF 4; No. 25-12580, ECF 4; No. 25-12581, ECF 4; No. 25-12582, ECF 4; No. 25-12583, ECF 4; No. 25-12584, ECF 4; No. 25-12585, ECF 4; No. 25-12586, ECF 4; No. 25-12587, ECF 4; No. 25-12588, ECF 4; No. 25-12589, ECF 4; No. 25-12590, ECF 4; No. 25-12591, ECF 4; No. 25-12592, ECF 4; No. 25-12593, ECF 4; No. 25-12594, ECF 4; No. 25-12595, ECF 4; No. 25-12596, ECF 4; No. 25-12597, ECF 4; No. 25-12598, ECF 4; No. 25-12599, ECF 4; No. 25-12600, ECF 4; No. 25-12601, ECF 4; No. 25-12602, ECF 4; No. 25-12603, ECF 4; No. 25-12604, ECF 4; No. 25-12605, ECF 4; No. 25-12606, ECF 4; No. 25-12607, ECF 4; No. 25-12608, ECF 4; No. 25-12610, ECF 4; No. 25-12611, ECF 4; No. 25-12612, ECF 4; No. 25-12613, ECF 4; No. 25-12614, ECF 4; No. 25-12615, ECF 4; No. 25-12616, ECF 4; No. 25-12617, ECF 4; No. 25-12618, ECF 4; No. 25-12619, ECF 4; No. 25-12620, ECF 4; No. 25-12621, ECF 4; No. 25-12622, ECF 5; No. 25-12623, ECF 4; No. 25-12624, ECF 4; No. 25-12625, ECF 4; No. 25-12626, ECF 4; No. 25-12627, ECF 4; No. 25-12628, ECF 4; No. 25-12629, ECF 4; No. 25-12630, ECF 4; No. 25-12632, ECF 4; No. 25-12633, ECF 4; No. 25-12634, ECF 4; No. 25-12635, ECF 4; No. 25-12636, ECF 4; No. 25-12637, ECF 4; No. 25-12638, ECF 4; No. 25-12639, ECF 4; No. 25-12640, ECF 4; No. 25-12641, ECF 4; No. 25-12642, ECF 4; No. 25-12644, ECF 4; No. 25-12645,

## MEMORANDUM OPINION SUPPLEMENTING CONFIRMATION ORDER

The Court enters this *Memorandum Opinion* to memorialize the oral ruling of the Court made on December 8, 2025, to resolve two remaining objection to plan confirmation:

The Court makes these findings of fact and conclusions of law pursuant to Bankruptcy Rules 7052 and 9014.  The Court's oral findings are hereby incorporated into the written confirmation order that will be issued by this Court.

Before the Court is the objection asserted by Travelers Insurance Company to the confirmation of the (now) Seventh Amended Plan of Reorganization proposed by the Debtor, the Additional Debtors, and the Official Committee of Unsecured Creditors.  As stated on the record at the last hearing, the Seventh Amended Plan has resolved all of Travelers' objections, including any of its "Insurance Neutrality" objections, save two.

---

ECF 4; No. 25-12646, ECF 4; No. 25-12647, ECF 4; No. 25-12650, ECF 4; No. 25-12651, ECF 4; No. 25-12652, ECF 4; No. 25-12653, ECF 4; No. 25-12654, ECF 4; No. 25-12655, ECF 4; No. 25-12657, ECF 4; No. 25-12658, ECF 4; No. 25-12659, ECF 4; No. 25-12660, ECF 4; No. 25-12661, ECF 4; No. 25-12663, ECF 4; No. 25-12664, ECF 4; No. 25-12665, ECF 4; No. 25-12667, ECF 4; No. 25-12668, ECF 4; No. 25-12669, ECF 4; No. 25-12670, ECF 4; No. 25-12671, ECF 4; No. 25-12672, ECF 4; No. 25-12673, ECF 4; No. 25-12674, ECF 4; No. 25-12675, ECF 4; No. 25-12676, ECF 4; No. 25-12677, ECF 4; No. 25-12678, ECF 4; No. 25-12679, ECF 4; No. 25-12680, ECF 4; No. 25-12681, ECF 4; No. 25-12682, ECF 4; No. 25-12683, ECF 4; No. 25-12684, ECF 4; No. 25-12685, ECF 4; No. 25-12686, ECF 4; No. 25-12687, ECF 4; No. 25-12688, ECF 4; No. 25-12689, ECF 4; No. 25-12690, ECF 4; No. 25-12691, ECF 4; No. 25-12692, ECF 4; No. 25-12693, ECF 4; No. 25-12694, ECF 4; No. 25-12695, ECF 4; No. 25-12696, ECF 4; No. 25-12697, ECF 4; No. 25-12698, ECF 4; No. 25-12699, ECF 5; No. 25-12700, ECF 4; No. 25-12701, ECF 4; No. 25-12702, ECF 4; No. 25-12703, ECF 4; No. 25-12704, ECF 4; No. 25-12705, ECF 4; No. 25-12706, ECF 4; No. 25-12707, ECF 4; No. 25-12708, ECF 4; No. 25-12709, ECF 4; No. 25-12710, ECF 4; No. 25-12711, ECF 4; No. 25-12712, ECF 4; No. 25-12713, ECF 4; No. 25-12715, ECF 4; No. 25-12716, ECF 4; No. 25-12717, ECF 4; No. 25-12718, ECF 4; No. 25-12719, ECF 4; No. 25-12720, ECF 4; No. 25-12721, ECF 4; No. 25-12723, ECF 4; No. 25-12724, ECF 4; No. 25-12725, ECF 4; No. 25-12726, ECF 4; No. 25-12727, ECF 4; No. 25-12728, ECF 4; No. 25-12729, ECF 3; No. 25-12730, ECF 4; No. 25-12731, ECF 4; No. 25-12732, ECF 4; No. 25-12733, ECF 4; No. 25-12734, ECF 4; No. 25-12735, ECF 4; No. 25-12736, ECF 4; No. 25-12737, ECF 4; No. 25-12738, ECF 4; No. 25-12739, ECF 4; No. 25-12740, ECF 4; No. 25-12741, ECF 4; No. 25-12742, ECF 4; No. 25-12743, ECF 4; No. 25-12744, ECF 4].

Of import to the Court's ruling is the manner in which the proposed plan treats Class 3 Known Abuse Claims and Class 4 Unknown Abuse Claims. At a high level, the plan provides that a settlement trust will be created on or before the Effective Date and will be funded free and clear with $130 million cash-on-hand on the Effective Date, and, ultimately, with another $70 million from the sale of Christopher Homes, guaranteed by two promissory notes issued by the Debtor and/or Additional Debtors, as well as approximately $30 million from certain Settling Insurers. The transactions with Settling Insurers involved settlements with the Debtors and Additional Debtors under Bankruptcy Rule 9019, culminating in the Settling Insurers' purchase of certain of Debtors' insurance policies free and clear under § 363 of the Bankruptcy Code. The motions to effect those transactions were noticed separate and apart from the plan and approved by separate orders of this Court. No objections were filed before the entry of those orders. The plan recognizes and incorporates those orders. The settlement trustee appointed through the plan has sole fiduciary duty to administer the trust.

Travelers is not a Settling Insurer and none of the funds transferred to the settlement trust are proceeds paid from any settlement between Travelers and the Debtor and Additional Debtors. But on the Effective Date, any and all rights and claims belonging to abuse claimants, the Debtor, and any co-insured party under applicable policies issued by Travelers to the Debtor and/or any co-insured will be transferred to the settlement trust. In exercising his fiduciary duty to administer the trust, the settlement trustee has sole authority to liquidate, settle, or even abandon any claims or causes of action transferred to the settlement trust.

I.      **PLAN OBJECTION ONE:  "The Joint Plan Must Not Impair Travelers' Ability To Object to Abuse Claims" (ECF Doc. 4563, ¶¶ 25-28)**

In its objection, Travelers asserts that its "right to object to Abuse Claims, including those filed after the March 1, 2021 bar date established by this Court . . . should be fully preserved under the Joint Plan."

Let's first talk about Travelers' rights pre-confirmation to object to proofs of claim. Section 502 of the Bankruptcy Code governs allowance of claim or interests and states in relevant part that "[a] claim or interest, proof of which is filed under section 501 of this title, is deemed allowed, unless a party in interest . . . objects."   Section 1109(b) of the Bankruptcy Code provides that "[a] party in interest, including the debtor, the trustee, a creditors' committee, an equity security holders' committee, as creditor, an equity security holder, or any indenture trustee, may raise and may appear and be heard on any issue in a case under this chapter."   The plain wording of § 1109(b) lists entities that are "parties in interest" but that list is not an exclusive one.   "Courts have long recognized that the meaning of the term [party in interest] must be determined on an 'ad hoc' basis, and the categories mentioned in Section 1109 are not meant to exclude other types of interested parties from the purview of that section."  *In re Roman Catholic Diocese of Albany, New York*, No. 23-10244, 2025 WL 2536165, at *2 (Bankr. N.D.N.Y. Sept. 3, 2025) (quoting *Savage & Assocs. P.C. v. K&L Gates LLP (In re Telegent, Inc.)*, 640 F.3d 53, 60 (2d Cir. 2011)).   The Supreme Court recognized in *Truck Insurance Exchange v. Kaiser Gypsum Co.*, that the use of § 1109(b)'s broad language was part of an "effort to encourage and promote greater participation in reorganization cases," as Congress was concerned that "a few insiders, whether representatives of management or major creditors, could use the reorganization process to gain an unfair advantage."  602 U.S. 268, 280 (2024).

Since the passage of the 1978 Bankruptcy Code, courts have been called upon to define who is a party in interest in various contexts and situations that arise during the course of a chapter 11 bankruptcy case. But as observed by Judge Glenn in *In re MF Global Holdings, Ltd.*, although "[a] 'party in interest' is broadly defined by the statute . . . an entity that does not hold a financial stake in the case is generally excluded from the definition of 'party in interest.'" 469 B.R. 177, 188 (Bankr. S.D.N.Y. 2012). And you see that general rule applied over and over again in chapter 11, including by the Supreme Court in *Truck Insurance Exchange*, where the Court held that "an insurer **with financial responsibility for bankruptcy claims** is a 'party in interest' that may object to a chapter 11 plan of reorganization." 602 U.S. at 285.

During the course of this bankruptcy case, hundreds of abuse claimants filed proofs of claim against the Debtor or Additional Debtors—not against Travelers. Unlike the insurer in *Truck Insurance Exchange*, Travelers' liability to defend and pay on abuse claims here has neither been adjudicated nor has Travelers formally accepted responsibility to pay for those claims. In fact, currently pending before the Court is Travelers' motion to terminate the automatic stay to allow it to file a declaratory action in federal district court challenging insurance coverage for abuse claims filed against the Debtor and/or Additional Debtors. [ECF Doc. 4404]. Judge Littlefield in *In re Roman Catholic Diocese of Albany, New York*, asks a great question: How can insurance companies claim standing to object to proofs of claim on the basis that they are likely to contribute to the bankruptcy distribution while simultaneously claiming they are under no obligation to make said contribution? *See* 2025 WL 2536165, at *5. As he correctly pointed out: "[T]he allowance of a claim creates an obligation for the Diocese, not the Insurers; that obligation is not real until either the Insurers concede liability or are otherwise adjudicated to be responsible." *Id*. at *6.

7

Of course, when Judge Littlefield declined to find that the insurers before him had standing to object to proofs of claim, there was no plan on file in that bankruptcy case.  Does the analysis change here now that the Court is considering a plan that would assign the Debtors' and Additional Debtors' interests in insurance claims and recoveries against Travelers to the settlement trust?  The Court is not convinced that it does, especially since, at this time, the only articulated basis for Travelers' objections to abuse claimants' proofs of claim is to find them untimely filed in the bankruptcy case.  The purpose of a bar date in a chapter 11 case is to ensure finality and fix the universe of the **debtor's** liability—not Travelers'.  As observed by Judge Goldblatt in *In re AIO US, Inc.*, "the case law on party-in-interest standing under § 1109(b) limits an objector to asserting its own rights—it may not assert the rights of others."  672 B.R. 261, 273 (Bankr. D. Del. 2025). And as he also acknowledged, "[t]he Supreme Court has, in other contexts, expressed due concern for the risk that a party may seek to weaponize its procedural rights to participate in litigation to serve some ulterior purpose." *Id*. (citing *Bell Atl. v. Twombly*, 550 U.S. 544, 558 (2007) and *Truck Ins. Exchange*, 602 U.S. at 282).

Nevertheless, heeding Judge Goldblatt's advice in *In re AIO US, Inc.*, that "in a close case, one should err on the side of considering an objection on the merits as opposed to disregarding it on the ground that the objector lacks standing, and employ other tools as appropriate to guard against the potential misuse of the procedural right to be heard for tactical purposes," 672, B.R. at 277, the Court will rule on the merits of Travelers' objection.

This plan contemplates that abuse claims will be channeled post-confirmation into the settlement trust for final liquidation and payment, as is common in mass tort bankruptcy cases. Travelers is concerned that the Debtor's agreement to allow as timely filed those abuse claims that were filed after the bar date, but before May 16, 2025 (when the settlement between the Debtor,

the Additional Debtors, and the Committee was announced), "would potentially lead to 'allowance' and payment of many untimely and unwarranted claims to the detriment of the holders of timely-filed Abuse Claims." [ECF Doc. 4563, ¶ 27]. Although the Court commends Travelers' regard for holders of timely filed abuse claims, Travelers' own rights are well protected. The settlement trust will not be funded by any contribution by Travelers without Travelers' consent via settlement or adjudication by a court of competent jurisdiction. Section 7.4 of the plan further reserves all of Travelers' rights and defenses. In the event that the settlement trustee approves the filing of a litigation claim against Travelers in a state or federal court with competent jurisdiction—Travelers is free to assert a defense pertaining to the timeliness of the filing of any proof of claim in this bankruptcy case before that tribunal.

Accordingly, the Court overrules Travelers' objection. To clear up any confusion or incongruency between the plan and the allocation protocol, the Court strikes any grant to Travelers as a Non-Settling Insurer, of the right contained in §§ 4.3(b) and 4.4(b) of the plan to object to proofs of claim filed by abuse claimants as contrary to applicable law.

## II.     PLAN OBJECTION TWO:  "The Joint Plan Fails To Sufficiently Protect Non-Settling Insurer Contribution Claims." (ECF Doc. 4563, ¶¶ 18–24)

With no ability to recover directly from a Settling Insurer for contribution in the event that an abuse claimant or the settlement trust (as assignee of the abuse claimant) obtains a judgment against Travelers in subsequent post-confirmation litigation, § 6.9(d) of the plan provides that Travelers' liability to the settlement trust is offset and reduced by the amount that any Settling Insurer is found liable to pay Travelers.

Travelers' remaining objection is limited to its inability under the plan to seek contribution of defense costs from an abuse claimant or the settlement trust (as assignee of the abuse claimant) in the event that an abuse claimant pursues her claim in a court of competent jurisdiction and

9

Travelers obtains a judgment in that litigation or in separate coverage litigation that it is not liable for the claim. In other words, can Travelers recoup its defense costs if an abuse claimant gets "zero'd out" at trial or if Travelers wins in any action seeking a declaration that there is no coverage obligations for the sexual abuse claims alleged in this case?

At oral argument, Travelers cited *Arceneaux v. Amstar Corporation*, 200 So. 3d 277 (La. 2016), to assert that under Louisiana law, "an insurer that defends an indemnity is responsible for its *pro rata* share when there is overlapping coverage" and that Louisiana law is "clear" that we consider "time on the risk that determines how the *pro rata* shares among co-primary insurers are determined." [ECF Doc. 4765]. Travelers asserted its right to recoup defense costs from alleged co-primary insurers is an equitable one, not based in contract. *See id.*

In Louisiana, as in most, if not all states, an insurer's obligation to defend suits against its insured is broader than its liability for damage claims. The Louisiana Supreme Court articulated the now long-held rule in Louisiana regarding an insurer's duty to defend its insured in 1969 in the case captioned *American Home Assurance Co. v. Czarniecki*,:

> The insurer's duty to defend suits brought against its insured is determined by the allegations of the injured plaintiff's petition, with the insurer being obligated to furnish a defense unless the petition unambiguously excludes coverage.
>
> Thus, if, assuming all the allegations of the petition to be true, there would be both (1) coverage under the policy and (2) liability to the plaintiff, the insurer must defend the insured regardless of the outcome of the suit.

230 So.2d 253, 259 (La. 1969). That pronouncement by the Louisiana Supreme Court became known as the "eight-corners rule"; that is, an insurer must look to the four corners of the petition and the four corners of the policy to determine whether it has a duty to defend. The general rule in Louisiana when an insurer seeks contribution for defense costs from another insurer is to

apportion defense costs equally by head. *See, e.g.*, *Vaughn v. Franklin*, 785 So.2d 79, 89 (La. 1 Cir. 2001).

The *Arceneaux* case cited by Travelers is not reflective of the general rule, but identifies a method of allocating indemnification as well as defense costs that was adopted to deal specifically with long-latency occupational disease cases:

> As to an insurer's duty to indemnify, liability is to be prorated among insurance carriers that were on the risk during periods of exposure to injurious conditions. That indemnification is allocated pro rata is based in large part on Louisiana's adoption of the exposure theory in long latency disease cases. Long latency occupational disease cases are *sui generis* in that a distinct body of jurisprudential law has been developed which applies solely to them. Under the exposure theory, the "occurrence" that triggers coverage under an insurance policy is the plaintiff's exposure to harmful conditions within the policy period. Such a theory was adopted to establish when coverage was triggered in cases that involved diseases when there is a "lengthy temporal separation between the alleged tortious conduct and the appearance of injury." This approach is based on the concept that insurers may limit their liability to discrete and finite periods.

200 So. 3d at 282. Based on specific language in the policy before it, the *Arseneaux* court adopted the reasoning applied in a U.S. Court of Appeals for the Sixth Circuit case, *Insurance Co. of North America v. Forty-Eight Insulations, Inc.*, 633 F.2d 1212 (6th Cir. 1980), to apply a *pro rata* method of apportioning defense costs in the long-latency disease case before it. In *Arseneaux*, that meant apportioning defense costs between an insurer and its insured that was actually considered self-insured for periods of no coverage. The *Arseneaux* court observed:

> The duty to defend arises solely under contract. It is well-settled that "an insurance policy is a contract between the parties and should be construed using the general rules of interpretation of contract set forth in the Civil Code. . . ."
>
> While the duty to defend is broader than the duty to indemnify, neither obligation is broader than the policy's coverage period in the context of long latency disease cases that trigger occurrence-based policies. In addition, the concept of "joint and several" is not a concept that is currently a part of Louisiana's tort law. . . .
>
> Having concluded that defense costs are to be prorated in this case, we now determine the formula for allocation. In this case . . . the amount of time an insurer

11

was on the risk would seem to be the appropriate consideration.  Because the duty to defend is distinct from the duty to indemnify, the details of the policy need not enter the equation of how defense costs are to be allocated so long as the policy is triggered.

200 So. 3d at 286, 289.

This Court has not located a Louisiana case that treats child sexual abuse as a long-latency occupational disease as it has with asbestos-disease and hearing loss.  Indeed, it stretches common sense to imagine characteristics of child sexual abuse to include "lengthy temporal separation between the alleged tortious conduct and the appearance of injury," but that issue is not before the Court.  But whether Louisiana's more general apportionment-by-head method applies or *Arseneaux*'s *pro rata* apportionment applies to insurers seeking to recoup defense costs from other insurers in cases of child sexual abuse claims, Travelers has a problem:  There is no "equitable" right to such contribution under Louisiana law and the record before the Court shows that there is no overlapping coverage for any of the years covered by Travelers.

Travelers relies heavily on the holding in *In re Boy Scouts of America*, 137 F.4th 126, 168 (3d Cir. 2025), for the proposition that a plan of reorganization that denies a non-settling insurer the ability to recover defense costs represents a non-consensual third-party release of the non-settling insurer's claims in violation of the Supreme Court's holding in *Harrington v. Purdue Pharma, L.P.*, 603 U.S. 204 (2024).  [ECF Doc. 4563].  But the facts in that case are markedly different from those here.  In the *Boy Scouts* case, a primary insurer settled with the debtor and an overlapping excess carrier found itself unexpectedly incurring defense costs it had the right to recoup.  Here, as a primary insurer with no overlapping co-primary insurers, Travelers is required to absorb its own defense costs and has no claim of contribution of defense costs from an abuse claimant or the settlement trust (as assignee of the abuse claimant).

For that reason, the existence of the "Judgment Reduction" provision in § 6.9(d) of the plan is sufficient to ensure Travelers can obtain full satisfaction and adequate protection for the loss of any right it may hold to obtain contribution from Settling Insurers.  The Court finds that the *Purdue Pharma* prohibition on non-consensual, third-party releases is not implicated here.

Accordingly, the Court overrules Travelers' objection.

## III.    CONFIRMATION RULING

Before the Court is the *Seventh Amended Joint Chapter 11 Plan of Reorganization for the Roman Catholic Church on the Archdiocese of New Orleans and Additional Debtor, Proposed by the Debtor, the Additional Debtors, and the Official Committee of Unsecured Creditors, Dated as of December 1, 2025*, with attached exhibits, [ECF Doc. 4738].

All objections to the Plan have been either compromised and withdrawn or overruled.

The Court listened to days of testimony from experts and fact witnesses on behalf of the plan proponents, with robust cross-examination by counsel for the United States Trustee and the Bond Trustee.  The testimony included the testimony from Archbishop Gregory Aymond and Archbishop James Checchio and culminated in deeply personal accounts given in this courtroom by 23 abuse survivors.  I also reviewed four written survivor statements that reached the Court over the weekend.

To Survivors:  I would like you to know how valuable and powerful your voices are.  Each of you showed immeasurable courage to stand tall and speak your truth not just for yourselves, but for all  Survivors who could not come forward.

I have sat with the things you told me for almost a week now.

I heard you when you told me the horror of how you were hurt.  I heard you when you told me how you were deceived.  Exploited.  Alone.  Shattered.

I heard you when you told me how you suffered and continue to suffer. How you have been heartbroken.  How you have felt powerless.  And abandoned.  And not believed.  And discarded.

I heard you when you told me you became angry.  And stayed angry.

I heard you when you told me you drank, used drugs, gambled, and binged to try and get away from the all-consuming pain.

I heard you when you told me that your relationships fell apart.  That you didn't know how to trust.  And just couldn't trust.

I heard you when you told me you were homeless.  Couldn't work.  Couldn't sleep or eat.

I heard you when you told me you lost your faith.  When you described your "dark life."

I heard you and ached for you when you told me you wanted to die.

But I also heard you when you told me that you found someone who listened and did not leave.

I heard you when you told me found your faith again.  I heard you recite Philippians 4:13.

14

I heard you when you told me you found healthy love.  And when you told me that you were able to show healthy love.

I heard the power in your voice and saw resilience in your face.

Most of all, I saw and felt hope.

No court system could ever make Survivors whole.

I heard and believed Survivors when they told me that the abuse they suffered continues to affect every aspect of their lives and the lives of their friends and family.  They described a rotting ripple effect resulting from abuse.

To be clear:  The poison of child abuse affects everyone in our community.  Even if you are unaware that you know someone who has suffered abuse, the betrayal of any child in our community destroys the things we all search for.  We yearn for the safety of family, for friendships, for connection, and for the kinds of fellowship that are built through ministries, cultural activities, youth sports, and community outreach by the people in churches, in our schools, and in other public-service organizations.  Child abuse takes those things away.  It sows mistrust.  It breeds isolation.

So let's do something about it today.

Based on the record before it, the Court finds that all elements required for confirmation of this plan under § 1129 of the Bankruptcy Code have been met.  The Court specifically finds that the Plan has been filed in good faith and by no means forbidden by law pursuant to § 1129(a)(3).

The Court also finds that, while not perfect, the non-monetary remedies when implemented represent a good chance that we will not wind up here again. The Court reminds everyone that the non-monetary terms of this Plan represent the floor—not the ceiling—on our efforts to prevent and detect abuse and promote transparency and healing. Thus, the Court finds that the plan proponents have satisfied the requirements of § 1129(a)(11).

Confirmation of this plan is a first step in validating and healing the hurt endured by Survivors and those who love them. Together, the Church, Survivors, and the rest of us have a real opportunity to do something extraordinary. We have the chance to take responsibility. To rebuild trust. And to lead.

I commend the hard work and steadfastness of the professionals and lay volunteers in this case.

This plan is complex and has many moving parts, particularly in light of the non-monetary remedies featuring the Survivors Bill of Rights that will be implemented. I could be mistaken, but I don't believe that this country has seen anything as progressive yet in these cases. Although I know that the Debtor and the Additional Debtors will move as quickly as possible to implement all of the mechanics, many of the terms of the plan depend upon bringing human resources and advisors on board. That said, the Court believes it is a good idea to schedule a status conference for about six months out, on Thursday, May 21, 2026, at 1:30 pm. It will be a great opportunity to see how we're doing.

I would ask the Debtor to make the changes to the two sections of the plan that are affected by the Court's ruling on Travelers' objections, file a clean, final version, and if necessary, send an updated proposed confirmation order to the Court for docketing. I am confident we can process the order today.

New Orleans, Louisiana, December 9, 2025.

_____
MEREDITH S. GRABILL
UNITED STATES BANKRUPTCY JUDGE