**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| IN RE: ) ) | |
| THE ROMAN CATHOLIC CHURCH OF ) THE ARCHDIOCESE OF NEW ) ORLEANS, ) ) ) DEBTOR.[1] ) ) | Case No. 20-10846<br><br>Section "A"<br><br>Chapter 11 |

**TROUTMAN PEPPER LOCKE LLP AND PACHULSKI STANG ZIEHL & JONES LLP's JOINT BRIEF REGARDING STANDING TO OBJECT TO FEE APPLICATIONS**

Troutman Pepper Locke LLP ("TPL") and Pachulski Stang Ziehl & Jones LLP ("PSZJ," and, together with TPL, the "Committee Professionals") file this *Brief Regarding Standing to Object to Fee Applications* pursuant to the Court's December 23, 2025 *Order* (Doc. No. 4811) as follows:

## I. INTRODUCTION

1. The Court should deny Certain Survivor's fee objections based on standing. Time and time again—in this very case—this Court, the District Court, and the Fifth Circuit have made clear that parties must satisfy Article III standing requirements and demonstrate a direct pecuniary interest in order to raise objections or pursue appeals. The Official Committee of Unsecured Creditors (the "Committee") was on the losing side of this issue when it appealed the removal of certain of its members. *In re Roman Catholic Church of the Archdiocese of New Orleans*, Case No. 22-cv-1996, Doc. No. 8 (E.D. La. July 14, 2022). Counsel for Certain Survivors were on the losing side of that issue in their own appeal of the same order. *In re Roman Catholic Church of the*

---

[1] The last four digits of the Debtor's federal tax identification number are 8966. The Debtor's principal place of business is located at 7887 Walmsley Ave., New Orleans, LA 70125.

*Archdiocese of New Orleans*, 101 F.4th 400, 408-409 (5th Cir. 2024). Yet, Certain Survivors again are pursuing objections that fail to implicate any financial interest. Certain Survivors do not have standing and cannot demonstrate an effected pecuniary interest to object to fee applications.

2. Certain Survivors *might* have had standing when they initially objected to the Committee Professionals' interim fee applications. At that time, no plan had been confirmed, and Certain Survivors potentially had a pecuniary interest in whether estate funds would pay professionals or compensate abuse survivors. However, plan confirmation changed everything. Certain Survivors now have a dedicated Settlement Trust,[2] and any and all recovery they will obtain must come from that Settlement Trust or from litigation against, or settlements with, Non-Settling Insurers. Under the confirmed plan, which was nearly unanimously approved by survivors, disallowance of professional fees will not increase the Settlement Trust Assets by a single cent. Rather, Certain Survivors' objection, if successful, would transfer money from the Committee Professionals who obtained substantial compensation for abuse survivors to the very Archdiocese that Certain Survivors previously accused of "gross mismanagement." (Doc. No. 3965). The standing doctrine prevents such an absurd result.

## II. FACTUAL BACKGROUND

3. The Debtor filed this Chapter 11 case on May 1, 2020. (Doc. No. 1). Shortly after the filing, the US Trustee appointed the Committee. (Doc. No. 94). The Committee selected PSZJ and TPL's predecessor firm, Locke Lord LLP, as counsel. (Doc. No. 179, 181). The Court entered orders approving the retention of PSZJ and TPL on July 17, 2020. (Doc. No. 256, 257). Pursuant to

---

[2] Unless otherwise defined, capitalized terms have the meanings set forth in the *Seventh Amended Modified Joint Chapter 11 Plan of Reorganization for the Roman Catholic Church of the Archdiocese of New Orleans and Additional Debtors, Proposed by the Debtor, the Additional Debtors, and the Official Committee of Unsecured Creditors, Dated as of December 8, 2025* (Doc. No. 4762) (the "Confirmed Plan").

2

250663334v8

Section XV of the Court's *General Order Regarding Procedures for Complex Chapter 11 Cases*, Committee Professionals submitted interim fee applications throughout the course of the case.

4. After years of mediation and the assistance of three separate mediators, the Debtor and Committee reached an agreement at mediation resulting in the filing of the *Joint Chapter 11 Plan of Reorganization for the Roman Catholic Church of the Archdiocese of New Orleans and Additional Debtors Proposed by the Debtor, the Additional Debtors, and the Official Committee of Unsecured Creditors, Dated as of July 15, 2025* (the "Initial Plan") (Doc. No. 4150). The Initial Plan provided for dedicated funding to a Settlement Trust for the payment of abuse survivor claims. (*See* Doc. No. 4150 §§ 4.3, 5.3). The Initial Plan further provided that Professional Fee Claims would be paid following final applications by "the applicable Reorganized Archdiocese or Reorganized Additional Debtor." (Doc. 4150 § 2.2).

5. On July 30, 2025, PSZJ filed the *Fifteenth Interim Application for Allowance and Payment of Compensation and Reimbursement of Expenses of Pachulski Stang Ziehl & Jones LLP as Co-Counsel for the Official Committee of Unsecured Creditors for the Period March 1, 2025 through June 30, 2025* ("PSZJ's Fifteenth Application") (Doc. No. 4184). On July 31, 2025, TPL filed the *Fifteenth Interim Application of Troutman Pepper Locke LLP as Co-Counsel to the Official Committee of Unsecured Creditors for Allowance of Compensation and Reimbursement of Expenses for the Period from March 1, 2025 through June 30, 2025* ("TPL's Fifteenth Application" and together with PSZJ's Fifteenth Application, the "Interim Applications") (Doc. No. 4205).

6. Certain Survivors objected to both Interim Applications. (Doc. No. 4264). Committee Professionals filed a reply in support of the Interim Applications on August 19, 2025. (Doc. No. 4288).

7. While Certain Survivors initially opposed the Plan, after certain amendments, they became plan supporters. As counsel for Certain Survivors stated, "Our clients are thrilled. We are, completely changed our position from plan opponents to plan proponents." (Hearing Tr. Sept. 22, 2025 at 7:7-9). The abuse survivor class as a whole was similarly enthusiastic as reflected in the near-unanimous vote (99.59%) to approve the Plan. (Doc. No. 4543).

8. Ultimately, after extensive discovery and a lengthy confirmation hearing, the Court confirmed the Confirmed Plan, in accordance with its *Order Confirming Seventh Amended Modified Joint Chapter 11 Plan of Reorganization for the Roman Catholic Church of the Archdiocese of New Orleans and Additional Debtors, Proposed by the Debtor, the Additional Debtors, and the Official Committee of Unsecured Creditors, Dated as of December 8, 2025* (Doc. No. 4767) (the "Confirmation Order"). Like the Initial Plan, the Confirmed Plan provided for the transfer of certain, specified Settlement Trust Assets to the Settlement Trust. Those assets included, among other things, $130,000,000 in cash on the Effective Date, certain promissory notes totaling $70 million secured by letters of credit, and funds from Settling Insurers, all resulting in total Settlement Trust funding of approximately $230,000,000. (Doc. No. 4762 § 5.3). With respect to Professional Fee Claims, the Confirmed Plan provided that ". . . the applicable Reorganized Archdiocese or Reorganized Additional Debtor will pay the Allowed amount of each Professional Fee Claim, in full, in Cash, within fifteen (15) days from the date such Claim becomes an Allowed Professional Fee Claim." (Doc. No. 4762 § 2.2). In other words, unlike some waterfall plans in which unsecured creditor classes are funded with amounts left over after payment of higher priority claims, the Confirmed Plan sets the exact amount of compensation for the abuse survivor class, and the payment (or non-payment) of the Professional Fee Claims has no effect on abuse survivor compensation.

250663334v8

9. On December 18, 2025, the Court held a hearing on the Interim Applications. At the hearing, counsel for Certain Survivors clarified that they intend to pursue their pending objections to the Interim Applications and that they would also object to forthcoming final fee applications. The Court therefore ordered the parties to brief the issue of standing as it relates to both the pending Interim Applications and any future final fee applications. (Doc. No. 4811).

10. The effective date of the Confirmed Plan was December 26, 2025. (Doc. No. 4817). The occurrence of the effective date dissolved the Committee and relieved the Committee members and Committee Professionals of their duties. (Doc. No. 4762 § 14.4).

### III. ARGUMENTS AND AUTHORITIES

11. Certain Survivors lack standing for at least two reasons. First, Certain Survivors cannot demonstrate standing under Article III, and therefore, their pending objections fail as a matter of law. Second, Certain Survivors cannot satisfy the Fifth Circuit's "pecuniary interest" standard for party-in-interest standing in bankruptcy. Consequently, Certain Survivors' objections to the Interim Applications must be denied, and any similar objection to any future fee applications should be denied as well.

**A. Certain Survivors Lack Article III Standing.**

12. A party invoking federal jurisdiction must establish Article III standing. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992). This constitutional limitation applies in bankruptcy, requiring parties to establish "that he or she suffered an invasion of a legally protected interest that is concrete and particularized and actual or imminent, not conjectural or hypothetical." *In re Roman Catholic Church of the Archdiocese of New Orleans*, 101 F.4th 400, 408-409 (5th Cir. 2024) (citing *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016)); *Clifton Cap. Grp., LLC v. Sharp (In re E. Coast Foods, Inc.)*, 66 F.4th 1214, 1217-18 (9th Cir. 2023) (noting "standing is an essential

and unchanging requirement"). To demonstrate standing, the objecting party must prove that it has "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *In re Alpha Natural Res.*, 2016 Bankr. LEXIS 4374, at *35 (Bankr. E.D. Va. Dec. 20, 2016) (citing *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016)). The party seeking relief has the burden of proving each of these elements. *See FW/PBS, Inc. v. Dallas*, 493 U.S. 215, 231 (1990).

13. The first hurdle—injury in fact—can only be met if the objecting party can demonstrate a "financial interest in the outcome of a given proceeding." *In re Alpha Natural Res.*, 2016 Bankr. LEXIS 4374, at *35. The injury in fact must be "concrete and particularized." *Id.* at *37 (finding no standing for objecting party when treatment of objecting party's claim would not be adversely impacted by granting of fee application). The injury must also be "fairly traceable" and "easily redressable." *Clifton Cap. Grp., LLC*, 66 F.4th at 1222. In bankruptcy cases, "a party does not have standing to object to an application for compensation unless that party has a financial stake in the approval of the application." *In re Moye*, 2012 Bankr. LEXIS 3619, at *6 (Bankr. S.D. Tex. Aug. 7, 2012) (Isgur, J.). If the party will not receive a distribution from the estate, regardless of the outcome of the application for compensation, then the party lacks a financial stake. *Id.*

14. Certain Survivors cannot identify an injury in fact from the approval of either the Interim Applications or any future professional fee applications. Certain Survivors affirmatively accepted the Confirmed Plan, which set forth a defined settlement fund providing payment of survivor abuse claims. Following confirmation, payment of Professional Fee Claims will provide no "injury" whatsoever to the abuse survivor claimants. Under the Confirmed Plan, the Reorganized Debtor or Reorganized Additional Debtor, as applicable—and not the Settlement Trust—must pay Allowed Professional Fee Claims. (Doc. No. 4762 § 2.2). Because survivors' compensation will

stay the same whether this Court grants, reduces, or denies the Professional Fee Claims requested by the Committee Professionals, Certain Survivors cannot establish Article III standing to object to either the Interim Applications or any future final fee applications.

**B.     Certain Survivors Cannot Satisfy the Pecuniary Interest Test.**

15.     Section 1109(b) of the Bankruptcy Code provides that only a "party in interest" may be heard on an issue in a chapter 11 case. 11 U.S.C. §1109(b). As this Court has previously ruled, there is a "general rule" that has been "applied over and over again in chapter 11" to determine who is a "party in interest" in a bankruptcy case: whether the entity holds a financial stake in the case. *In re The Roman Catholic Church of The Archdiocese of New Orleans*, 2025 WL 3545484, at *2 (Bankr. E.D. La. Dec. 9, 2025) (referencing Judge Glenn's opinion in *In re MF Global Holdings, Ltd.*, 469 B.R. 177, 188 (Bankr. S.D.N.Y. 2012)). Courts must make "party in interest" determinations on a case-by-case basis. *In re Friede Goldman Halter Inc.*, 600 B.R. 526, 531 (Bankr. S.D. Miss. 2019); *see also In re E.S. Bankest, L.C.*, 321 B.R. 590, 595 (Bankr. S.D. Fla. 2005) ("An entity may be a real party in interest and have standing in one respect while he may lack standing in another respect.") (internal citations and quotations omitted)).

16.     Parties in interest typically include persons whose pecuniary interests are "directly affected by the bankruptcy proceedings." *Doe v. Roman Catholic Church of Archdiocese of New Orleans*, 588 F.Supp.3d 698, 709-10 (E.D. La. 2022) (analyzing party's standing in bankruptcy case under Bankruptcy Code); *see also In re Cyprus II Partnership*, 358 B.R. 311, 315 (Bankr. S.D. Tex. 2007) (noting same). "A party does *not* have standing to raise objections 'that relate solely to others, or that go to issues that do not directly and adversely affect them pecuniarily.'" *Doe*, 588 F.Supp.3d at 710 (emphasis added) (quoting *In re Plaisance*, 619 B.R. 148, 155 (Bankr. W.D. La. 2020)). Furthermore, merely having a pecuniary interest is not enough to bestow standing; rather, the

pecuniary interest must be direct and not too "remote." *In re Alpha Natural Resources Inc.*, 544 B.R. 848, 856 (Bankr. E.D. Va. 2016) (finding parties lacked pecuniary interest).

17. After plan confirmation, Certain Survivors have no pecuniary interest in the outcome of the Interim Applications or any future final fee applications. To repeat, the Confirmed Plan provides a dedicated fund for payment of Certain Survivors' claims. Professional Fee Claims are paid directly by the Reorganized Debtor and/or the Additional Debtors. (Doc. No. 4762 § 2.2). The payment or non-payment of Professional Fee Claims has no financial impact on the abuse survivor classes or the anticipated recovery of any particular abuse survivor—including Certain Survivors. As a result, Certain Survivors cannot establish even a remote pecuniary interest to support standing to object to the Interim Applications.

### IV. CONCLUSION

18. For these reasons, the Court should overrule Certain Survivors' objections to the Interim Applications and approve the Professional Fee Claims in the full amounts requested by the Committee Professionals. Additionally, the Committee Professionals also request that this Court conclude that its decision regarding Certain Survivors' lack of either Article III standing or any pecuniary interest in the outcome of the Interim Applications will constitute law of the case with respect to any final professional fee applications the Committee Professionals may file in the future, thereby precluding Certain Survivors from objecting to those final professional fee applications as well.[3]

---

[3] *See Matter of AKD Investments*, 79 F.4th 487, 491 (5th Cir. 2023) ("Generally, when a court decides an issue, that decision should continue to govern the same issues in subsequent stages of the same case.") (internal quotations omitted) (citing *Arizona v. California*, 460 U.S. 605, 618 (1983)); *see also In re Baker Sales, Inc.*, 2022 WL 362908, at *4 (Bankr. E.D. La. Feb. 7, 2022) ("The law of the case doctrine is a judicial doctrine that promotes finality and efficiency in the judicial process by encouraging courts to follow their own decisions within any given case.").

Dated: January 8, 2025                    Respectfully submitted,

*By: Bradley C. Knapp*
Bradley C. Knapp (La #35867)
Omer F. Kuebel, III (La #21682)
Troutman Pepper Locke LLP
601 Poydras Street, Suite 2660
New Orleans, Louisiana 70130-6036
Telephone: (504) 558-5111
Facsimile: (504) 558-5200
Email: brad.knapp@troutman.com
      rick.kuebel@troutman.com


W. Steven Bryant (*admitted pro hac vice*)
Texas Bar. No. 24027413
Federal I.D. No. 32913
Troutman Pepper Locke LLP
300 Colorado Street, Ste. 2100
Austin, Texas 78701
Telephone: (512) 305-4726
Facsimile: (512) 305-4800
Email: steve.bryant@troutman.com

-and-

James I. Stang (CA Bar No. 94435)
Andrew W. Caine (CA Bar No. 110345)
Pachulski Stang Ziehl & Jones LLP
10100 Santa Monica Blvd., Suite 1300
Los Angeles, CA 90067
Telephone: (310)-277-6910
Facsimile: (310)-201-0760
Email: jstang@pszjlaw.com
      acaine@pszjlaw.com

*Co-Counsel to the Official Committee of Unsecured Creditors*

**CERTIFICATE OF SERVICE**

    I hereby caused a true and correct copy of the foregoing *Brief Regarding Standing to Object to Fee Applications* to be served on January 8, 2026, upon all parties by electronic case filing for those parties receiving notice via the Court's Electronic Case Filing system and by U.S. Mail on the all other parties requiring service under the Special Notice List, as set forth in the Court's May 1, 2020 *Ex Parte Order Authorizing the Debtor to Limit Notice and Establishing Notice Procedures* [Doc. No. 22].

                */s/ Bradley C. Knapp*
                Bradley C. Knapp