### IN THE UNITED STATES BANKRUPTCY COURT
### EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| In re: | Case No. 20-10846 |
| **THE ROMAN CATHOLIC CHURCH OF THE ARCHDIOCESE OF NEW ORLEANS,** | Section "A" |
| Debtor.[1] | Chapter 11 |

## CERTAIN ABUSE SURVIVORS' REPLY MEMORANDUM IN SUPPORT OF STANDING TO OBJECT TO INTERIM AND FINAL FEE APPLICATIONS

Certain Abuse Survivors ("Survivors") hereby submit this Reply memorandum providing legal support that as creditors they are "persons of interest" who have standing to object to any and all fee applications before and after plan confirmation. Survivors file this Reply in response to the Memorandums filed by Jones Walker [ECF 4824] and former Committee Counsel [ECF 4826].

Jones Walker's and former Committee Counsel's arguments' are unpersuasive because: (1) the Archdiocese is currently in default under the Plan, threatening the viability of the Plan and confirming that standing is present for creditors until their own claims are paid; (2) the Supreme Court's decision in *Truck Insurance Exchange v. Kaiser Gypsum Co.* has little to no bearing on whether creditors to a Plan can object to interim or final fee objections; and (3) alternatively, even if the Court adopts the "pecuniary interest" standard, Survivors enjoy standing because (a) Survivors incurred thousands of dollars during the course of the bankruptcy of which they will seek reimbursement from the Archdiocese and the disgorged/disallowed fees of Jones Walker and former Committee Counsel pursuant to the terms of the Plan and 11 U.S.C. 503(b); (b) the 23 Survivors who filed lawsuits against the Archdiocese, forcing it into bankruptcy, enjoy

---

[1] The last four digits of the Debtor's federal tax identification number are 8966. The Debtor's principal place of business is located at 7887 Walmsley Ave., New Orleans, LA 70125.

standing because they incurred thousands of dollars in court costs that they seek to be reimbursed from the Archdiocese and the disgorged/disallowed fees of Jones Walker and former Committee Counsel; and (c) Survivors' counsel enjoy standing because they intend to file for common benefit compensation for the thousands of hours spent litigating the bankruptcy and request to be paid from the Archdiocese and from the disgorged/disallowed fees of Jones Walker and former Committee Counsel.

I. **The Archdiocese is in default under the Plan, threatening the viability of the Plan and confirming that standing is present for creditors <u>until their own claims are paid.</u>**

The Archdiocese is in default under the Plan. The Plan required the Archdiocese to provide the Plan Trustee with the Irrevocable Letter of Credit ("ILC") securing the $50,000,000.00 note on December 26, 2025, the effective date. The Archdiocese has failed to it for three weeks. The Trustee may need to send a "Notice of Default" providing it thirty days to cure the defect.[2]

The Archdiocese's default under the Plan is just one example of the many problems that may occur before Survivors receive payment of their claims. Even if this default is ultimately corrected, there remain many more deadlines and triggers for full payment to complete. Standing continues until the extinguishment of all of Survivors' claims and the full resolution of the terms in the Plan which is why standing remains present until the payment of claims is completed. *See In re Ridgeway*, 2018 Bankr. LEXIS 531, at *2 (Bankr. E.D. La. 2018) (Dodd, B.J.).

---

[2] Survivors have standing to enforce the terms of the Plan: "The sole parties who have authority and/or standing to seek the specific performance of these Provisions shall be (i) the Settlement Trustee, and (ii) any Child Sexual Abuse Claimant, the parent or legal guardian of a Child Sexual Abuse Claimant who has not attained 18years of age, or if a Child Sexual Abuse Claimant is deceased, one surviving family member as identified in accordance with Section D.2.d above." [ECF 4762-7, at 39]

Survivors have not been paid under the Plan.  Survivors will likely not be paid for some time.  Some combination of variables could occur that could deprive Survivors of the total payments that are due and were the reason that the Survivors voted for the Plan.  Until the payments are completed, Survivors maintain standing to object to interim and final fee applications.

**II.**      **The Supreme Court's decision in *Truck Insurance Exchange v. Kaiser Gypsum Co.* has little to no bearing on whether creditors to a Plan can object to interim or final fee objections.**

Both Jones Walker and former Committee Counsel primarily rely upon *Truck Insurance Exchange v. Kaiser Gypsum Co.*, 602 U.S. 268 (2024).  The case is inapposite or otherwise unhelpful to the question of standing in this case.  In *Truck Insurance*, the Supreme Court was deciding whether an insurer had standing to challenge a Plan even when the plan was considered to be "insurance neutral".  Instead, the Supreme Court addressed whether the insurer was a "party in interest".  Ultimately, the Supreme Court <u>expanded standing</u> for more interested parties beyond those like creditors (who always have standing before a bankruptcy court to challenge a plan and payments under the plan).

In *Truck Insurance*, the Supreme Court addressed the question of "whether an insurer with financial responsibility for a bankruptcy claim is a 'party in interest' under [11 U.S.C. 1109(b)]".  *Id.* at 271.  To resolve this question, the Supreme Court looked to whether an insurer could be "party in interest" for purposes of Plan objections if the Plan was "insurance neutral".  The Supreme Court answered in the affirmative by reasoning that insurers, even in an "insurance neutral plan, may have some type of "financial responsibility" down the road in some contexts.  *Id.* at 281-82.

In this case, *Truck Insurance* does not really lend anything to the standing analysis.  The objector in *Truck Insurance* was not a creditor but instead wanted to be considered a "party in interest" under Section 1109.  However, Section 1109 already confers standing to <u>all creditors</u> of the Debtor.   Survivors are all creditors.  As such, Survivors have standing under Section 1109 before the Bankruptcy Court.  That is the end of the standing analysis before the bankruptcy court.

Ultimately, a creditor is always going to be a "party in interest" under Section 1109 in the bankruptcy court because creditors always have a "direct financial stake in the outcome of the case".  As the Supreme Court noted:  "The general theory behind [§1109(b)] is that <u>anyone holding a direct financial stake in the **outcome of the case** should have an opportunity (either directly or through an appropriate representative) to participate in the adjudication of any issue that may ultimately shape the disposition of his or her interest</u>."  *Id.* at 277-78 (emphasis supplied) (citing 7 Collier on Bankruptcy ¶1109.01 (16th ed. 2023)).

As creditors, Survivors have a financial interest in the "outcome of the case".  That skin in the game allows it to have standing in all controversies ancillary to the outcome of the case, like objecting to fee applications, interim and final.  That standing does not dissipate simply because a Plan has been confirmed.  If (or when) the Archdiocese defaults or violates the terms of the Plan in the future, then Survivors will have standing to bring them to this Court.  The same is true of any challenges to the fees incurred by the Debtor in creating and implementing the Plan.

**III.    Alternatively, even if the Court adopts the "pecuniary interest" standard, Survivors enjoy standing because (a) Survivors incurred thousands of dollars during the course of the bankruptcy of which they will seek reimbursement from the Archdiocese and the disgorged/disallowed fees of Jones Walker and former Committee Counsel pursuant to the terms of the Plan and 11 U.S.C. 503(b); (b) the 23 Survivors who filed lawsuits against the Archdiocese, forcing it into bankruptcy, enjoy standing because they incurred thousands of dollars in court costs that they seek to be reimbursed from the Archdiocese and the disgorged/disallowed fees of Jones Walker and former Committee Counsel; and (c) Survivors' counsel enjoy standing because they intend to file for common benefit compensation for the thousands of hours spent litigating the bankruptcy and request to be paid from the Archdiocese and from the disgorged/disallowed fees of Jones Walker, former Committee Counsel, and any other responsible party.**

Although standing is statutorily granted pursuant to Section 1109, Survivors also easily satisfy the pecuniary interest standard because they have incurred thousands of dollars during the course of the bankruptcy to protect their legal interests and force an end to the bankruptcy.[3] Survivors' counsel has spent thousands of hours protecting Survivors and pressuring a fair resolution. Because Survivors (and their counsel) will file a common benefit motion pursuant to the Plan and Section 503(b), moving the Court to reimburse and/or compensate them from the Archdiocese and/or Jones Walker's and former Committee Counsel's disgorged fees, Survivors enjoy a pecuniary interest in the outcome of all of the fee objections it plans to file.

Survivors demand that payment come from the disgorged/disallowed fees of Jones Walker, Committee Counsel, and any other professional. Equity requires that the overpayment to these lawyers should be transferred to those Survivors (and lawyers) who actually performed the work to bring substantial benefits to the creditor class of survivors, were responsible for bringing the bankruptcy to an end, and increased the overall settlement.

---

[3] Jones Walker's and Committee Counsel's attempt to impose the appellate standard of "pecuniary interest" to the bankruptcy court is transparent and dangerous. No caselaw has been provided that a "creditor" is not a "party in interest" before the bankruptcy court pursuant to Section 1109. Implementing the heightened "pecuniary interest" standard in the bankruptcy court would result in never-ending standing analyses with absurd results like no one gets to object to anyone else's fee applications since the Debtor is the responsible party.

A.   **Survivors incurred thousands of dollars during the course of the bankruptcy which they will seek reimbursement from the Archdiocese and the disgorged/disallowed fees of Jones Walker and former Committee Counsel pursuant to the terms of the Plan and 11 U.S.C. 503(b).**

The Plan provides that creditors and their counsel may file common benefit applications and/or fee applications for costs and efforts related to bringing a "substantial benefit" to a creditor class sections "pursuant to Sections 327, 328, 330, 331 or 503(b) of the Bankruptcy Code". [ECF 4762, at 24]  The Plan set the deadline for filing these motions to 45 days after the effective date.  The Court later extended the deadline for filing until February 27, 2026 with oppositions to be filed by March 31, 2026.  [ECF 4811]

A creditor may recover attorneys' fees in a Chapter 11 case in the Fifth Circuit under specific statutory provisions and circumstances. The primary statutory bases include 11 U.S.C. §§ 503(b)(3)-(4), 506(b), and plan-based or confirmation-order provisions. Additionally, the substantial contribution doctrine under § 503(b)(3)(D) provides a pathway for creditors to recover fees if their actions materially benefit the estate or creditor class.

To date, Survivors have incurred more than **$36,000** in general bankruptcy expenses that will be divided among them and, if not reimbursed, will be deducted from their recovery.  These expenses include five and a half years of payments for hearing transcripts, deposition transcripts, filing fees, pacer costs, and miscellaneous expenses.  A written accounting, properly documented and attested to, will be provided along with their motion for reimbursement filed on or before the filing deadline of February 27, 2026.

Accordingly, Survivors have a pecuniary interest in the existing fee objections and the future objections they will file.  Survivors will seek reimbursement of these costs from the Archdiocese and from the disgorged/disallowed fees of Jones Walker, former Committee Counsel, and other professionals whose final fee applications they may object to.

B.      **The 23 Survivors who filed lawsuits against the Archdiocese, forcing it into bankruptcy, enjoy standing because they incurred thousands of dollars in court costs that they will seek to be reimbursed from the Archdiocese and the disgorged/disallowed fees of Jones Walker and former Committee Counsel.**

23 of the Survivors filed lawsuits in state court which forced the Archdiocese into bankruptcy for the benefit of all survivors. Those 23 survivors are as follows: (1) *James Doe v. Archdiocese of New Orleans Indemnity, Inc.*, et al, No. 19-01371 (Orleans Parish Civil District Court) (removed to EDLA 20-1338); (2) *CJ Doe v. The Roman Catholic Church of the Archdiocese of New Orleans*, et al, No. 18-12393 (Orleans Parish Civil District Court) (removed to EDLA 20-1319); (3) *JW Doe v. Archdiocese of New Orleans Indemnity, Inc.*, et al, No. 19-03947 (Orleans Parish Civil District Court) (removed to EDLA 20-1321); (4) *AA Doe v. Archdiocese of New Orleans Indemnity, Inc*, et al. No. 19-06200 (Orleans Parish Civil District Court) (removed to EDLA 20-1317); (5) *BB Doe v. Archdiocese of New Orleans Indemnity, Inc.*, et al No. 19-10149 (Orleans Parish Civil District Court) (removed to EDLA 20-1318); (6) *Linda Lee Stonebreaker v. Archdiocese of New Orleans Indemnity, Inc.*, No. 19-08551 (Orleans Parish Civil District Court) (removed to EDLA 20-1335); (7) *John Doe v. The Roman Catholic Church of the Archdiocese of New Orleans*, et al. No. 18-10864 (Orleans Parish Civil District Court) (removed to EDLA 20-1320); (8) *Tom Doe v. Archdiocese of New Orleans Indemnity, Inc.*, No. 19-08552 (Orleans Parish Civil District Court) (removed to EDLA 20-1363); (9) *FF Doe v. Archdiocese of New Orleans Indemnity, Inc., et al*, No. 19-11587 (Orleans Parish Civil District Court) (removed to EDLA 20-1358); (10) *Lon Doe v. Archdiocese of New Orleans Indemnity, Inc.*, et al, No. 19-11575 (Orleans Parish Civil District Court) (removed to EDLA 20-1339); (11) *CC Doe v. The Roman Catholic Church of the Archdiocese of New Orleans*, et al, No. 20-29883 (Orleans Parish Civil District Court) (removed to EDLA 20-1353); (12) *John Roe I v. The Roman Catholic Church of the Archdiocese of New Orleans*, et al., No. 18-11369 (removed to

EDLA 20-1330); (13) *John Roe II v. The Roman Catholic Church of the Archdiocese of New Orleans*, et al, No. 2019-11169 (removed to EDLA 20-1351); (14) *John Roe III v. The Roman Catholic Church of the Archdiocese of New Orleans*, et al, No. 19-11171 (Orleans Parish School Board) (removed to EDLA 20-01331); (15) *John Roe IV v. The Roman Catholic Church of the Archdiocese of New Orleans*, et al., No. 19-11173 (removed to EDLA 20-1379); (16) *Bob Roe v. The Roman Catholic Church of the Archdiocese of New Orleans*, et al, No. 19-12224 (Orleans Parish Civil District Court) (removed to EDLA 20-1355); (17) *Raymond Roe v. The Roman Catholic Church of the Archdiocese of New Orleans*, et al., No. 19-12233 (Orleans Parish Civil District Court) (removed to EDLA 20-01337); (18) *Ed Roe v. The Roman Catholic Church of the Archdiocese of New Orleans*, No. 19-12226 (Orleans Parish Civil District Court) (removed to EDLA 20-1340); (19) *West Roe v. The Roman Catholic Church of the Archdiocese of New Orleans*, et al, No. 19-12228 (Orleans Parish Civil District Court) (removed to EDLA 20-1352); (20) *Jeff Roe v. The Roman Catholic Church of the Archdiocese of New Orleans*, et al, No. 19-12237 (Orleans Parish Civil District Court) (removed to EDLA 20-1356); (21) *Brad Roe v. The Roman Catholic Church of the Archdiocese of New Orleans*, et al., No. 20-3463 (Orleans Parish Civil District Court) (removed to EDLA 20-01392); (22) *Ralph Roe v. Catholic Charities Archdiocese of New Orleans*, et al. No. 20-04868 (Orleans Parish Civil District Court) (removed to EDLA. 20-1829); and (23) *Zach Roe v. Catholic Charities Archdiocese of New Orleans*, et al, No. 20-04094 (Orleans Parish Civil District Court) (removed to EDLA 20-1819).

Before the bankruptcy, these Survivors collectively incurred more than **$77,473.00** in filing fees, depositions, and related litigation costs which will be deducted from their respective recoveries. A written accounting, properly documented and attested to, will be provided along with their motion for reimbursement filed on or before the filing deadline of February 27, 2026.

Accordingly, Survivors have a pecuniary interest in the existing fee objections and the future objections they will file.  Survivors will seek reimbursement of these costs from the Archdiocese and from the disgorged/disallowed fees of Jones Walker, former Committee Counsel, and other professionals whose final fee applications they may object to.

**C.      Survivors' counsel enjoy standing because they intend to file for common benefit compensation for the thousands of hours spent litigating the bankruptcy and request to be paid from the Archdiocese and from the disgorged/disallowed fees of Jones Walker, former Committee Counsel, and any other responsible party.**

In addition to Survivors' standing is the standing of Survivors' counsel.  Survivors' counsel spent thousands of hours after the bankruptcy filing over five and a half years to create a substantial benefit for the class of sexual abuse survivor creditors.  Survivors counsel's substantial benefit to the sexual abuse creditors class includes:  (1) forcing the Archdiocese into bankruptcy by aggressively filing and litigating 23 state court lawsuits; (2) writing and shepherding the look-back window statute thru the unanimous passage of the Louisiana legislature; (3) defending the constitutionality of the look-back window for three years and in the Louisiana Supreme Court; (4) shepherding the extension of the look-back window for an additional three years thru the state legislature; (5) reviewing tens of thousands of pages of abuse documents over years to develop an understanding of the depth and breadth of the multi-generational scourge of childhood sexual abuse unleashed by the Archdiocese; (6) spending six months drafting an Evidentiary Memorandum to explain the causes of the generations of childhood sexual abuse enabled by the Archdiocese; (7) drafting, filing, and litigating the *Motion to Appoint Trustee* that led to the appointment of a special master; (8) drafting, filing, and litigating fee objections which saved/protected money for the survivors; (9) drafting, filing, and litigating the Motion to Dismiss which led to the bankruptcy's conclusion; and (10) negotiating

9

an addendum to the settlement that guaranteed an additional $50MM to be paid to survivors with a guarantee for another $20MM.

In the simplest terms, Survivors' counsel involvement in the passage and defense of the constitutionality of the look-back window exponentially improved the payouts to survivors from pennies on the dollar to over a billion-dollar valuation.  In 2020, the Archbishop wrote to the Vatican that the value of all of the abuse claims approximated $8MM and that insurance would pay for most of it.  In 2025, after the passage of the look-back window and the defense of its constitutionality in the Louisiana Supreme Court, the Archdiocese's own economic expert adopted and accepted the valuation of survivors' claims "in the aggregate [as] between **$755.5 million and $1.70 billion**".  In other words, Survivors' counsel's efforts forced the Archdiocese to increase its valuation of sexual abuse claims by **<u>more than 100 times</u>** -- an increase of 10,000% its original valuation.

A full explanation with detailed support and declarations will be filed by February 27, 2026.  The § 503(b)(3)(D) motion will request an amount to be paid by the Archdiocese as well as from the disgorged/disallowed fees of Jones Walker, former Committee Counsel, and any other professional whose fees will be objected to.  *See generally In re Fortune National Resources Corp*., 366 B.R. 549, 550-555 (E.D. La. Bktpcy 2007) (Brown, BJ).

As a result, Survivors and their counsel enjoy standing to object to the interim and final fees because they have a direct pecuniary interest in what Jones Walker, former committee counsel, and any other professional gets paid.  Their fees should be disgorged and/or disallowed and those fees should be provided to the Survivors and their counsel.  Equity demands it.

**WHEREFORE** Survivors submit the instant legal memorandum in support of legal standing to challenge any and all final fee applications and requests for reimbursement from the Court.

Respectfully submitted,

/s/ Soren E. Gisleson
**SOREN E. GISLESON (#26302)**
**JOSEPH E. "JED" CAIN (#29785)**
Herman, Herman & Katz, L.L.C.
909 Poydras St., Suite 1860
New Orleans, Louisiana 70112-4060
Office: 504-581-4892
Fax: 504-561-6024
soren@hkgclaw.com
jed@hkgclaw.com

-AND-

**JOHN H. DENENEA, JR. (#18861)**
**SHEARMAN-DENENEA, L.L.C.**
3004 David Drive
Metairie, Louisiana 70003
Telephone: (504) 304-4582
Facsimile: (504) 304-4587
jdenenea@gmail.com

-AND-

**RICHARD C. TRAHANT (# 22653)**
**ATTORNEY AT LAW**
2908 Hessmer Avenue
Metairie, LA 70002
Telephone: (504) 780-9891
FAX: (504) 780-9891
trahant@trahantlawoffice.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that the foregoing pleading will be served upon all parties by electronic case filing for those parties receiving notice via the Court's Electronic Case Filing system.

*/s/ Soren E. Gisleson*
Soren E. Gisleson