**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| **In re:** | § | **Case No. 20-10846** |
| | § | **(Jointly Administered)** |
| **THE ROMAN CATHOLIC CHURCH OF** | § | |
| **THE ARCHDIOCESE OF NEW** | § | |
| **ORLEANS,** | § | **CHAPTER 11** |
| | § | **COMPLEX CASE** |
| | § | |
| | § | |
| **Debtor**.[1] | § | **SECTION A** |
| | § | |
| | § | |

**THE SETTLEMENT TRUSTEE'S MOTION FOR ENTRY OF AN ORDER (I) APPROVING (A) OMNIBUS CLAIMS OBJECTION PROCEDURES AND FORM OF NOTICE, AND (B) FILING OF SUBSTANTIVE OMNIBUS CLAIM OBJECTIONS; (II) WAIVING THE REQUIREMENT OF BANKRUPTCY RULE 3007(e)(6); AND (III) GRANTING RELATED RELIEF**

Donald C. Massey, as Settlement Trustee (the "Settlement Trustee"), by and through his undersigned counsel, files this motion (this "Motion"), pursuant to sections 105(a) and 502(a) of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq*. (the "Bankruptcy Code"), Rule 3007 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), Rule 3007-1 of the *Local Rules of the United States Bankruptcy Court for the Eastern District of Louisiana* (the "Local Rules"), and section X(B) of the *General Order 2019-4 Regarding Procedures for Complex Chapter 11 Cases for the for the Bankruptcy Court of the Eastern District of Louisiana.* (the "Complex Case Procedures"), for entry of an order, substantially in the form attached hereto as **Exhibit A** (the "Proposed Order"),  (i) approving (a) the omnibus claim objection procedures and form of notice outlined herein, (b) authorizing the Settlement Trustee to file substantive objections to claims in an omnibus format pursuant to Bankruptcy Rules 3007(c) and 3007(d); (ii) waiving the requirement of Bankruptcy Rule 3007(e)(6) that omnibus objections contain objections to no

---

[1] The last four digits of the Debtor's federal tax identification number are 8966. The Debtor's principal place of business is located at 7887 Walmsley Ave., New Orleans, LA 70125.

250614817v6

more than 100 claims; and (iii) granting related relief. In support of this Motion, the Settlement Trustee submits the *Sealed Declaration of Yan Fayerman In Support of The Settlement Trustee's Motion for Entry of An Order (I) Approving (A) Omnibus Claims Objection Procedures and Form of Notice, and (B) Filing of Substantive Omnibus Claim Objections; (II) Waiving the Requirement of Bankruptcy Rule 3007(e)(6); and (III) Granting Related Relief* (the "Fayerman Declaration", attached hereto as **Exhibit B**). In further support of the Motion, the Settlement Trustee respectfully states as follows:

## Jurisdiction and Venue

1.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b).

2.      Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3.      The bases for the relief requested herein are sections 105 and 502 the Bankruptcy Code, Bankruptcy Rules 3007, Local Rule 3001-1, and section X(B) of the Complex Case Procedures.

## Background

### A.    The Bankruptcy Cases

4.      On May 1, 2020 (the "Petition Date"), the Roman Catholic Church of the Archdiocese New Orleans (the "Debtor" or "Archdiocese") filed a voluntary petition for relief under the Bankruptcy Code (this "Chapter 11 Case").

5.      On November 12, 2025 (the "Petition Date"), the Reorganized Additional Debtors filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code (the "Additional Debtors' Chapter 11 Cases").

6.      On May 20, 2020, the Office of the United States Trustee for Region 5 (the "U.S.

2

Trustee") appointed the Official Committee of Unsecured Creditors (the "Committee") [ECF No. 94], which Committee was reconstituted several times on June 10, 2020, October 8, 2020, June 7, 2022, June 21, 2022, and on February 13, 2023. [ECF Nos. 151, 478, 1575, 1618, & 2081]. The Official Committee of Unsecured Commercial Creditors was appointed by the U.S. Trustee on March 5, 2021. [ECF Nos. 772 & 792].

7.       On December 8, 2025, the *Seventh Amended Modified Joint Chapter 11 Plan of Reorganization for the Roman Catholic Church of the Archdiocese of New Orleans and Additional Debtors, Proposed by the Debtor, the Additional Debtors, and the Official Committee of Unsecured Creditors, Dated as of December 8, 2025* [ECF No. 4762] including the First Amended Plan Supplements [ECF No. 4610] (as may be modified, amended, or supplemented from time-to-time hereafter, the "Joint Plan")[2] was filed by the Archdiocese, the Additional Debtors listed on Joint Plan Exhibit B-1, and the Committee (collectively, the "Plan Proponents").

8.       On December 8, 2025, the Court entered the *Order Confirming Seventh Amended Modified Joint Chapter 11 Plan of Reorganization for The Roman Catholic Church of the Archdiocese of New Orleans and Additional Debtors, Proposed by the Debtor, the Additional Debtors, and the Official Committee of Unsecured Creditors, Dated as of December 8, 2025* [ECF No. 4767] (the "Confirmation Order").

**B.       The Settlement Trust**

9.       The *Archdiocese of New Orleans Settlement Trust Agreement* (the "Settlement Trust Agreement"), dated as of December 8, 2025, was executed as part of the Joint Plan, and effective as of the Confirmation Date. The Settlement Trust Agreement established the Settlement Trust (the "Settlement Trust") for the exclusive benefit of the holders of Abuse Claims, as set forth

---

[2] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Joint Plan.

250614817v6

in the Joint Plan, and the Settlement Trust Assets (as defined in Section 1.3 of the Joint Plan) were transferred to the Settlement Trust. *See* Joint Plan, § 6.1. The Settlement Trust was established for the purposes of (a) assuming responsibility for the liabilities of the Debtor and Additional Debtors for the Abuse Claims and (b) receiving, liquidating, and distributing Settlement Trust Assets in accordance with the Joint Plan and Settlement Trust Documents. *See* Joint Plan, § 5.1.

10.     The Effective Date occurred on December 26, 2025. [ECF No. 4817]. Pursuant to the Joint Plan, on the Effective Date, the Settlement Trustee succeeded to the rights of the Committee to object to any Known and Unknown Abuse Claims, and, as of the Effective Date, the Settlement Trust and the Settlement Trustee constitute the successors-in-interest to the Committee for purposes of any objections to Known and Unknown Abuse Claims, including any pending as of the Effective Date. *See* Joint Plan, §§ 4.3(b), 4.4(b). Under the Joint Plan and the Settlement Trust Agreement, the Settlement Trustee shall receive, hold, administer, and distribute the assets of the Settlement Trust for the benefit of the Settlement Trust Beneficiaries.

### C.     Abuse Claims Bar Dates and Procedures

11.     On October 1, 2020, the Court entered an *Order Fixing Time for Filing Proofs of Claims; Approving Proof of Claim Forms; Providing for Confidentiality Protocols; and Approving Form and Manner of Notice* [ECF No. 461], establishing March 1, 2021, as the claims bar date for Abuse Claims asserted against the Archdiocese (the "Archdiocese Claims Bar Date").

12.     The Joint Plan established December 2, 2025, as the claims bar date for Abuse Claims asserted against any Additional Debtors (the "Additional Debtors' Abuse Claims Bar Date," and together with the Archdiocese Claims Bar Date, the "Abuse Claims Bar Dates").

13.     Section 6.11 of the Joint Plan established procedures governing the submission of Abuse Claims against the Additional Debtors (the "Abuse Claims Procedures"). *See* Joint Plan, §

6.11(b)(i)–(xii). The Abuse Claims Procedures required, among other things, that any Abuse Claim submission must (a) be signed by the Abuse Claimant or the Abuse Claimant's legal representative, (b) include supporting documentation, or an explanation as to why documentation is not available. *See* Joint Plan, § 6.11(b)(iv). Individuals asserting claims against the Additional Debtors could either submit their Abuse Claims by mail or electronically through a public-facing abuse claims submission website portal (the "Claims Portal") maintained by Donlin, Recano & Company, LLC ("Donlin Recano"). *See* Joint Plan, § 6.11(b)(ii).

### D. Fraudulent and Wholly Unsupported Claims

14. On October 27, 2025, at around 7:00 a.m. ET, the first of approximately 8,914 abuse claims (the "Fraudulent Claims") were submitted on the Claims Portal.[3] Donlin Recano identified these claims submissions as a purposeful "attack" on the Claims Portal. As set forth in the Sealed Fayerman Declaration, Donlin Recano used robust fraud detection methods to identify the Fraudulent Claims. On October 31, 2025, Donlin Recano informed counsel to the Debtors and Committee of the Fraudulent Claims. Donlin Recano temporarily shut down the Claims Portal and implemented a security protocol to identify the specific behavior and characteristics of the fraudulent submissions in order to identify and successfully interrupt and divert future submissions of this kind. Donlin Recano also implemented additional monitoring metrics to receive e-mail notification when future fraudulent submissions were made of this nature. Soon after being notified of this activity by Donlin Recano, counsel to the Debtors and the Committee informed counsel for the U.S. Trustee.

15. In addition to the Fraudulent Claims, in the course of the claims reconciliation

---

[3] These facts are discussed along with additional detail in the Declaration of Yan Fayerman, which is attached hereto as Exhibit B and submitted under seal due to the confidential nature of the fraud detection techniques used by Donlin Recano.

250614817v6

process, the Settlement Trustee identified certain Abuse Claims that lack sufficient information on the face of the proof of claim and do not have any supporting documentation attached for the Settlement Trustee to determine the basis or validity of the proof of claim (the "Wholly Unsupported Claims"). Claims review is on-going to identify the total scope of Wholly Unsupported Claims.

16.     To avoid the administrative and financial burden of serving an overwhelming number of objections on these claimants, the Settlement Trustee is seeking court approval of modified omnibus objection and notice procedures to object to these legally defective Fraudulent Claims and Wholly Unsupported Claims. Resolution of the Fraudulent Claims and Wholly Unsupported Claims through the proposed modified omnibus objection and notice procedures below will promote efficiency and ensure that allowed Abuse Claims receive distributions as soon as practicable.

## Relief Requested

17.     Pursuant to sections 105 and 502 of the Bankruptcy Code, Bankruptcy Rule 3007, and Local Rule 3007-1, the Settlement Trustee hereby seeks the entry of an order (i) approving (a) the omnibus claim objection procedures and form of notice, (b) authorizing the Settlement Trustee to file substantive objections to claims in an omnibus format pursuant to Bankruptcy Rules 3007(c) and 3007(d); (ii) waiving the requirement in Bankruptcy Rule 3007(e)(6) that omnibus objections contain objections to no more than 100 claims; and (iii) granting related relief.

18.     To streamline the claims objection process and avoid unnecessary dissipation of Settlement Trust Assets, the Settlement Trustee respectfully requests relief from the default limitations in Bankruptcy Rule 3007, so that the Settlement Trustee may prosecute omnibus objections to the Fraudulent Claims and Wholly Unsupported Claims in an orderly and efficient

250614817v6

manner. Absent such relief, the Bankruptcy Rules would proscribe that objections to the Fraudulent Claims be filed either on an individualized basis or, in the case of non-substantive objections, in groupings capped at 100 claims per objection. *See* Bankruptcy Rule 3007(c), (d) & (e)(6); Complex Case Procedures, § X(B).

## Proposed Objection Procedures

19.     The Settlement Trustee seeks approval of the omnibus objection procedures (the "Omnibus Objection Procedures"), substantially in the form attached to the Proposed Order as **Exhibit 1**, to expedite and complete the Fraudulent Claims and Wholly Unsupported Claims reconciliation process in a timely, efficient, and cost-effective manner. The Omnibus Objection Procedures describe the key aspects of the Settlement Trustee's proposed claims objection process, such as (a) the form of omnibus objection (the "Omnibus Objection"), (b) the forms of notice that will be provided to affected claimants, (c) information for claimants on how they may attempt to resolve the objection to their claim, and (d) the implications of failing to resolve or respond to such Omnibus Objection timely.

## Relief Pursuant to Bankruptcy Rules 3007(c)

20.     Although the Settlement Trustee may seek to object to a number of claims on the grounds enumerated in Bankruptcy Rule 3007(d), certain Abuse Claims, such as the Fraudulent Claims and Wholly Unsupported Claims, necessitate objections on additional grounds not set forth expressly therein (collectively, the "Additional Grounds"), including that the claims, in whole or in part:

> a.   seek to recover amounts for which the Debtor or Additional Debtors are not liable;
>
> b.   are inconsistent with the Reorganized Debtor's or Additional Debtors' books and records;

250614817v6

    c.   are disallowed pursuant to section 502 of the Bankruptcy Code;

    d.   fail to specify a Debtor or Additional Debtor against whom the claim is asserted;

    e.   fail to provide information suggesting the Debtor or Additional Debtors are liable; and

    f.   fail to sufficiently specify the basis for the claim or provide sufficient supporting documentation for such claim.

21.    To minimize the cost, confusion, and delay otherwise attendant to preparing and filing individual claim objections, the Settlement Trustee seek to object, as contemplated by Bankruptcy Rule 3007(c), to the Fraudulent Claims and Wholly Unsupported Claims on the Additional Grounds in an omnibus objection format. Preparing and filing thousands of separate, individual objections to these claims as to which it is evident on the face of the claim that the Debtor or Additional Debtors have no liability would be time-consuming, expensive, and impose needless burdens on the Settlement Trustee and the Court. Accordingly, the Settlement Trustee respectfully requests that the Court approve the proposed Omnibus Objection Procedures permitting omnibus claim objections on the Additional Grounds set forth above as well as those enumerated in Bankruptcy Rule 3007(d) not listed in Bankruptcy Rule 3007(d).

**Relief Requested Pursuant to Bankruptcy Rule 3007(e)(6)**

22.    To efficiently address the more than 8,000 Fraudulent Claims and Wholly Unsupported Claims for which objections are warranted, the Settlement Trustee respectfully requests that the Court waive Bankruptcy Rule 3007(e)(6) and authorize the Trustee to object to more than 100 claims in a single omnibus objection as to these categories of claims.

23.    Given the unprecedented circumstances created by the fraudulent submissions, the Court should permit the Settlement Trustee to depart from the default rules and challenge all Fraudulent Claims in a single Omnibus Objection. Requiring strict adherence to the default rule

250614817v6

would compel the Settlement Trustee to generate ninety (90) substantially duplicative omnibus objections over an unnecessarily prolonged period, serving only to increase cost and delay without any corresponding benefit.

24.     Authorizing the Settlement Trustee to challenge the Fraudulent Claims and Wholly Unsupported Claims through omnibus objections will create a streamlined, cost-effective mechanism for disposing of legally defective claims, thereby preserving Settlement Trust Assets for distribution to survivors holding valid Abuse Claims. By contrast, requiring individual objections—or even limiting omnibus objections to 100 claims in the face of thousands of facially disallowable Abuse Claims—would be burdensome, dilatory and without benefit.

### Relief Requested Pursuant to Bankruptcy 3007(a)(2)
### (Fraudulent Claims Only)

25.     Bankruptcy Rule 3007(a)(2) generally requires that an objecting party serve a copy of the claim objection by mail, together with notice of a hearing, on affected claimants. *See* Fed. R. Bankr. P. 3007(a)(2). Here, however, the Fraudulent Claims uniformly reflect sham mailing addresses and facially suspicious or fabricated first and last names, such that the Settlement Trustee would be unable to effectuate meaningful service on these purported claimants. Any attempt at formal postal service would predictably result in returned mail, driving up administrative costs and causing delay, without advancing the interests of due process for claimants who elected to submit deliberately falsified contact information. Consequently, the Settlement Trustee seeks authority for the Settlement Trustee to serve the Omnibus Claim Objection as to the Fraudulent Claims upon each alleged claimant upon the email address provided in connection with each Fraudulent Claim. Anticipating that many, if not most, of these emails will also prove undeliverable due to nonexistent domains or recipients, the Settlement Trustee further proposes that a copy of the Omnibus Claim Objection as to the Fraudulent Claims be posted on the Settlement Trustee's

website with Donlin Recano.

26.     If no response to the Proposed Omnibus Claim Objection is timely filed and served by the Court-approved deadline with respect to any Fraudulent Claim, the Omnibus Objection Procedures provide that the Settlement Trustee may submit a proposed form of order sustaining the Omnibus Claim Objection as to such claims without further notice or hearing. To ensure that no legitimate claimant is prejudiced, the order sustaining the Omnibus Claim Objection will expressly provide that it is without prejudice to the right of any such claimant—who in fact holds a valid claim against the Debtor or Additional Debtors—to later seek reconsideration of a disallowed claim in accordance with applicable law. This structure strikes an appropriate balance between protecting the estate and its legitimate creditors from demonstrably fraudulent claims and preserving an avenue of relief for any bona fide claimant who may have been inadvertently swept within the scope of the Omnibus Objection.[4]

27.     For the avoidance of doubt, the Settlement Trustee seeks authorization for alternative service procedures only with respect to the Fraudulent Claims. The proposed Omnibus Objection Procedures provide that each Omnibus Objection to the Wholly Unsupported Claims will be filed with the Court and served by mail on each such claim holder fully consistent with the ordinary notice requirements of Bankruptcy Rule 3007.

## Basis for Relief

**A.    Relief from the Requirements of Bankruptcy Rule 3007(c) and (e)(6) Is Warranted**

28.     Section 502(a) of the Bankruptcy Code provides that "[a] claim or interest, proof

---

[4] To be clear, based on the investigation conducted by Donlin Recano and the limited information submitted with these claims, the Settlement Trustee believes no legitimate claims are within the Fraudulent Claims.

250614817v6

of which is filed under section 501 of this title, is deemed allowed, unless a party in interest . . .

objects." 11 U.S.C. § 502(a). Bankruptcy Rule 3001 states that "a proof of claim executed and

filed in accordance with these rules shall constitute prima facie evidence of the validity and amount

of the claim." *See* Fed. R. Bankr. P. 3001.

29.     Federal Rule of Bankruptcy Procedure 3007 expressly authorizes a debtor or other

party in interest to object to multiple claims through an "omnibus objection."  Bankruptcy Rule

3007(d)  permits such omnibus objections where the subject claims should be disallowed, in whole

or in part, because they:

> (A)   duplicate other claims;
> (B)   were filed in the wrong case;
> (C)   have been amended by later proofs of claim;
> (D)   were not timely filed;
> (E)   have been satisfied or released during the case in accordance with the Code, applicable rules, or a court order;
> (F)   were presented in a form that does not comply with applicable rules and the objection states that the objector is therefore unable to determine a claim's validity;
> (G)   are interests, not claims; or
> (H)   assert a priority in an amount that exceeds the maximum amount allowable under § 507.

*See* Fed. R. Bankr. P. 3007(d). In addition, Rule 3007(e) provides that an omnibus objection may

ordinarily include no more than 100 claims. *See* Fed. R. Bankr. P. 3007(e)(6).

30.     These requirements, however, are not absolute. Bankruptcy Rule 3007(c) affords

bankruptcy courts the discretion to authorize omnibus objections based upon grounds beyond those

explicitly delineated in Bankruptcy Rule 3007(d). *See* Bankruptcy Rule 3007(c) ("Unless

otherwise ordered by the court or permitted by subdivision (d), objections to more than one claim

shall not be joined in a single objection."); Local Rule 3007-1 ("Unless otherwise ordered by the

presiding judge, the following procedures apply to all claim objections...."); Complex Case

Procedures, § X(B) ("Omnibus claim objections must conform with Rules 3007(d) and (e) of the

250614817v6

Federal Rules of Bankruptcy Procedure unless otherwise ordered by the Court."). Each of these authorities confirms that the Court retains broad discretion to tailor claims objection procedures to the needs and realities of a particular case.

31.     Further, section 105(a) of the Bankruptcy Code allows this Court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]." 11 U.S.C. § 105(a). Consistent with this mandate, the Court has expansive equitable power to fashion any order or decree that is in the interest of preserving or protecting the value of the debtor's assets. *See Coie v. Sadkin (In re Sadkin)*, 36 F.3d 473, 478 (5th Cir. 1994) ("Section 105(a) authorizes a bankruptcy court to fashion such orders as are necessary to further the substantive provisions of the Bankruptcy Code.") (quotation omitted). The modified claims objection procedures requested here fall squarely within that authority and are necessary to preserve the Reorganized Debtor's resources, Settlement Trust resources, and maximize distributions to legitimate creditors.

32.     The sheer number of Fraudulent Claims filed in these Chapter 11 Cases compels adoption of modified omnibus objections procedures under Bankruptcy Rule 3007, Local Rule 3007-1 and section X(B) of the Complex Case Procedures, so that the Settlement Trustee can address—and the Court can resolve—these facially false and illegitimate claims in a manner proportionate to their volume. Strict application of the Bankruptcy Rules and Local Rules applicable to substantive and/or omnibus claim objections would make the assertion of objections and resolution of both the Fraudulent Claims and Wholly Unsupported Claims extremely costly and inefficient, diverting estate resources away from survivors with legitimate claims and consuming judicial resources.

33.     Bankruptcy courts routinely have granted similar relief from the default filing

250614817v6

limitations in other large, complex cases in which thousands of claims were filed.  *See e.g., In re Party City Holdco.*, Case No. 23-90005 (DRJ) (Bankr. S.D. Tex. June 8, 2023) [ECF No.1286]; *In re Autoseis, Inc.*, Case No. 14-20130 (Bankr. S.D. Tex. Oct. 15, 2014) [ECF No. 662]; *In re Linn Energy, Inc.*, Case No. 16-60040 (DRJ)(Bankr. S.D. Tex. Feb. 22, 2017) [ECF No. 1739]; *see also In re Mallinckrodt PLC*, Case No. 20-12522 (JTD) (Bankr. D. Del. July 30, 2021) [ECF No. 3478]; *In re Destination Maternity Corp.*, Case No. 19-12256 (BLS) (Bankr. D. Del. Nov. 15, 2021) [ECF No. 1170]; *In Re PES Holdings, LLC*, Case No. 19-11626 (KG) (Bankr. D. Del. Dec. 9, 2019) [ECF No. 652]; *In re Solstice Marketing Concepts LLC*, No. 21-10306 (MG) (Bankr. S.D.N.Y. May 10, 2022) [ECF No. 217]; *In re KG Winddown, LLC*, No. 20-11723 (MG) (Bankr. S.D.N.Y. Jan. 28, 2021 [ECF No. 432].

### B.    Relief from the Requirements of 3007(a)(2) Is Warranted

34.    The Bankruptcy Rules require that objections to proofs of claim be properly noticed and served on affected claimants. *See* Fed. R. Bankr. P. 3007(a)(2)(A). Where service to a listed mailing address is impracticable, bankruptcy courts have repeatedly recognized email notice as an effective a means of alternate service in appropriate circumstances. *In re Irish Bank Resol. Corp. Ltd. (in Special Liquidation),* 559 B.R. 627, 639 (Bankr. D. Del. 2016)("To satisfy due process, the alternative method approved must be reasonably calculated under the totality of the circumstances, to inform of the pending action and allow the opportunity to respond and object.")(internal quotations and brackets omitted); *see also In re Heckmann Corp. Sec. Litig.*, Case No. 10-378, 2011 WL 5855333, at *4 (D. Del. Nov. 22, 2011) (finding it permissible for courts to authorize email service "[s]o long as the method of service is reasonably calculated to reach the defendant and allow the opportunity to object and respond to the litigation, service through email comports with the due process clause."); *In re International Telemedia Ass'n, Inc.*, 245 B.R. 713, 720–21 (Bank. N.D. Ga. 2000) (authorizing email service and noting that courts

have broad flexibility in tailoring other methods of service to meet the needs of particularly difficult cases and when warranted by the facts).

35.      Consistent with these principles, courts have found that service by email satisfies due process when the movant has supplied some evidence that traditional methods would be ineffective or inadequate, including where the party to be notified has taken affirmative steps to frustrate efforts at service or is engaged in a fraudulent scheme*. See e.g. Microsoft Corp. v. Does*, No. 12-CV-1335 SJ RLM, 2012 WL 5497946, at *2–3 (E.D.N.Y. Nov. 13, 2012) (collecting cases and approving email service on "alleged cybercriminals whose personal identities and physical locations [were] unknown," and who "used sophisticated means to conceal their identities and locations."); *F.T.C. v. Pecon Software Ltd.,* No. 12 CIV. 7186 PAE, 2013 WL 4016272, at *5 (S.D.N.Y. Aug. 7, 2013)(approving email service based upon specific evidence that email addresses were used in connection with the alleged scheme); *In re Barkats*, No. 14-00053, 2014 WL 4437483, at *2 (Bankr. D.D.C. Sept. 8, 2014)(allowing email service where "[p]etitioning creditors have offered evidence that the debtor has been difficult to locate and that he has taken affirmative steps to frustrate the petitioning creditors' efforts at service."); *see also Opperman v. Kong Techs, Inc.*, No. 3:13-cv-00453-JST (N.D. Cal. Nov. 30, 2017) [ECF No. 918] (ordering email service in claims-made class action settlement on 5,500 bot-generated fraudulent claims originating from the same IP address and requiring alleged claimants to submit proof of identity within one week of order).

36.      In this case, the Court's approval of email service as to Omnibus Objection to the Fraudulent Claims is both appropriate and sufficient under the circumstances. Given the volume and nature of the Fraudulent Claims, traditional service methods are impracticable. The Settlement Trustee respectfully submits that this alternate service method provides a reasonable resolution to

250614817v6

the patently Fraudulent Claims of this magnitude.

37.     Authorizing the Omnibus Objection Procedures in these Chapter 11 Cases is an appropriate use of this Court's powers under section 105 of the Bankruptcy Code. The Settlement Trustee believes that the relief requested herein appropriately balances judicial and administrative efficiency with due process rights. Specifically, the Omnibus Objection Procedures will ensure that the Settlement Trust does not incur the unnecessary costs and expenses resulting from the preparation and filing of individual pleadings for each of the objections to Fraudulent Claims. The proposed Omnibus Objection Procedures serve to preserve and protect Settlement Trust assets and are designed to streamline the claims reconciliation process. Accordingly, the Settlement Trustee respectfully request that the Court approve the relief requested herein.

**WHEREFORE**, for the reasons set forth herein, the Settlement Trustee respectfully requests that the Court enter an order, substantially in the form attached hereto as **Exhibit A**, granting the relief requested herein and such other relief as the Court deems appropriate under the circumstances.

250614817v6

Dated:  January 29, 2026

Respectfully submitted,

*By:  Bradley C. Knapp*
Omer F. Kuebel, III (La #21682)
Bradley C. Knapp (La #35867)
Troutman Pepper Locke LLP
601 Poydras Street, Suite 2660
New Orleans, Louisiana 70130-6036
Telephone: (504) 558-5111
Facsimile: (504) 558-5200
Email: rick.kuebel@troutman.com
        brad.knapp@troutman.com

**-and-**

W. Steven Bryant (*admitted pro hac vice*)
Texas Bar. No. 24027413
Federal I.D. No. 32913
Troutman Pepper Locke LLP
300 Colorado St., Suite 2100
Austin, Texas 78701
Telephone: (512) 305-4726
Facsimile: (512) 305-4800
Email: steven.bryant@troutman.com

*Counsel to Donald C. Massey, as Settlement Trustee*

250614817v6