# United States Court of Appeals for the Fifth Circuit

————————

No. 23-30466

————————

United States Court of Appeals
Fifth Circuit

**FILED**

January 2, 2026

Lyle W. Cayce
Clerk

IN THE MATTER OF THE ROMAN CATHOLIC CHURCH OF THE ARCHDIOCESE OF NEW ORLEANS,

*Debtor*,

RICHARD C. TRAHANT,

*Appellant*,

*versus*

OFFICIAL COMMITTEE OF UNSECURED CREDITORS; ROMAN CATHOLIC CHURCH OF THE ARCHDIOCESE OF NEW ORLEANS; APOSTOLATES; ABUSE CLAIMANTS,

*Appellees*,

————————————————————

IN THE MATTER OF THE ROMAN CATHOLIC CHURCH OF THE ARCHDIOCESE OF NEW ORLEANS,

*Debtor*,

RICHARD C. TRAHANT,

*Appellant*,

*versus*

No. 23-30466

OFFICIAL COMMITTEE OF UNSECURED CREDITORS; ROMAN
CATHOLIC CHURCH OF THE ARCHDIOCESE OF NEW ORLEANS;
APOSTOLATES,

*Appellees.*

---

Appeal from the United States District Court
for the Eastern District of Louisiana
USDC No. 2:22-CV-1740
USDC No. 2:22-CV-4101

---

## JUDGMENT

Before RICHMAN, OLDHAM, and RAMIREZ, *Circuit Judges*.[1]

This cause was considered on the record on appeal and was argued by counsel.

IT IS ORDERED and ADJUDGED that the judgment of the District Court is AFFIRMED.

IT IS FURTHER ORDERED that Appellant pay to Appellees the costs on appeal to be taxed by the Clerk of this Court.

The judgment or mandate of this court shall issue 7 days after the time to file a petition for rehearing expires, or 7 days after entry of an order denying a timely petition for panel rehearing, petition for rehearing en banc, or motion for stay of mandate, whichever is later. See FED. R. APP. P. 41(B). The court may shorten or extend the time by order. See 5TH CIR. R. 41 I.O.P.

---

[1] ANDREW OLDHAM, Circuit Judge, concurring in the judgment only.



**Certified as a true copy and issued
as the mandate on Feb 18, 2026**

2

**Attest:**  *Lyle W. Cayce*
**Clerk, U.S. Court of Appeals, Fifth Circuit**

# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

January 2, 2026

Lyle W. Cayce
Clerk

————————

No. 23-30466

————————

In the Matter of The Roman Catholic Church of the Archdiocese of New Orleans,

*Debtor*,

Richard C. Trahant,

*Appellant*,

*versus*

Official Committee of Unsecured Creditors; Roman Catholic Church of the Archdiocese of New Orleans; Apostolates; Abuse Claimants,

*Appellees*,

————————————————————

In the Matter of The Roman Catholic Church of the Archdiocese of New Orleans,

*Debtor*,

Richard C. Trahant,

*Appellant*,

*versus*

OFFICIAL COMMITTEE OF UNSECURED CREDITORS; ROMAN
CATHOLIC CHURCH OF THE ARCHDIOCESE OF NEW ORLEANS;
APOSTOLATES,

*Appellees.*

_____

Appeal from the United States District Court
for the Eastern District of Louisiana
USDC Nos. 2:22-CV-1740, 2:22-CV-4101

_____

Before RICHMAN, OLDHAM, and RAMIREZ, *Circuit Judges*.

PRISCILLA RICHMAN, *Circuit Judge*: *1

This case arises out of the ongoing bankruptcy proceeding involving the Roman Catholic Church of the Archdiocese of New Orleans. Richard Trahant received confidential information regarding sexual abuse allegations against a New Orleans priest while serving as state court counsel for several alleged victims of sexual abuse who were also members of the Official Committee of Unsecured Creditors. Despite a protective order prohibiting the disclosure of confidential information revealed during discovery, Trahant contacted the principal of a local high school to confirm that the priest remained the high school's chaplain. Trahant then sent an email to a journalist listing the priest's name in the subject line, identifying where the priest was employed, and advising the journalist to "[k]eep this guy on your radar." The bankruptcy court held Trahant in contempt for violating the protective order and sanctioned him for his conduct. The district court affirmed.

_____

* This opinion is not designated for publication. *See* 5TH CIR. R. 47.5.

1 ANDREW OLDHAM, Circuit Judge, concurring in the judgment only.

No. 23-30466

Trahant now appeals the bankruptcy court's finding of contempt and imposition of sanctions on various grounds. Because we conclude that the bankruptcy court afforded Trahant due process, had jurisdiction, and did not abuse its discretion, we affirm the district court's judgment.

## I

## A

The Roman Catholic Church of the Archdiocese of New Orleans (Archdiocese) initiated Chapter 11 bankruptcy in response to numerous lawsuits brought against it alleging sexual abuse by priests and laypersons employed or supervised by the Archdiocese. The United States Trustee (Trustee) appointed the Official Committee of Unsecured Creditors (Committee) to represent the interests of the numerous abuse claimants involved in the case. At the time of the events underlying this appeal, the Committee was comprised of six members who each held unsecured tort claims for alleged sexual abuse. Those six members retained counsel to advise them on their individual claims against the Archdiocese and to assist them in fulfilling their duties as Committee members. Richard Trahant served as counsel or co-counsel in state court for four alleged victims of sexual abuse, who were also members of the Committee.

Due to the sensitive nature of the abuse claims, the bankruptcy court entered a protective order governing the use and disclosure of discovery materials. The court amended its protective order several times to accommodate the needs of the parties. At all times, the protective order permitted the Archdiocese to designate any discovery material as "CONFIDENTIAL" when the material contained non-public information.

The protective order further stipulated that the Committee could use such confidential material "solely in connection with Committee's obligations under the Bankruptcy Code, for purposes of the Chapter 11

No. 23-30466

Case." It also stipulated that the Committee could not use the confidential material "for any other purpose, including without limitation any business, competitive, governmental, commercial, administrative, publicity, press release, marketing, or research purpose or function, or in any other legal case, lawsuit, proceeding, investigation, or otherwise except as expressly provided herein, or as ordered by the Court." The protective order prohibited disclosure "[e]xcept with the prior written consent of the person asserting [confidentiality], or in accordance with a prior order of the Court."

The Archdiocese produced to the Committee certain material marked "CONFIDENTIAL." This material included documents related to the Archdiocese's internal investigation of decades-old abuse allegations against a specific priest. The priest was not included in the Archdiocese's previously published "Credibly Accused List" and was not named in a proof of claim filed in the bankruptcy case. According to the Archdiocese, the allegations against the priest were "totally confidential."

As state court counsel for several Committee members, Trahant had access to this confidential material. After learning about the sexual abuse allegations from the disclosed documents, Trahant became concerned that the priest remained a threat to underage high school students in the New Orleans area. He contacted his cousin, the principal of a local high school, to determine whether the priest was still employed as the high school's chaplain. The following exchange occurred over text message:

| | |
|---|---|
| Trahant: | Is [priest] still the chaplain at [high school]? |
| Principal: | Yes |
| Trahant: | You and I need to get together soon. |
| Principal: | Sh*t |
| Trahant: | Indeed. |
| Principal: | You beat me to the text. That's an ominous question coming from you. |

4

The next day, Trahant sent an email to a journalist listing the priest's name in the subject line, identifying where the priest was employed, and advising the journalist to "[k]eep this guy on your radar."

Shortly thereafter, Trahant attended a Committee meeting and requested that the high school be notified of the allegations. The Committee contacted the Archdiocese to ensure the priest was "suspended or removed" from the high school. It was then that the parties learned that the priest was on extended medical leave and not currently in contact with minors at the school. However, the parties also learned that an unidentified person had already contacted high school officials about the allegations. The Archdiocese therefore notified the Committee that this unidentified person had leaked confidential information to officials at the high school. Less than three weeks later, the journalist whom Trahant had contacted published an article naming the priest and disclosing non-public details about the sexual abuse allegations.

**B**

The Archdiocese responded to these events by filing a sealed motion to compel the Committee to investigate the source of the leak and by asking the bankruptcy court to conduct an evidentiary hearing to consider imposing sanctions. The Archdiocese alleged the Committee allowed confidential material to be disclosed to administrators at the high school and the media in violation of the protective order. The bankruptcy court responded to these allegations by permitting the Archdiocese and the Committee to conduct informal discovery to uncover the source of the leak.

After nearly three months of investigating the breach, the Committee and the Archdiocese received discovery responses from the high school revealing that Trahant had contacted the high school principal multiple times. According to the responses, Trahant sent a text message to the

principal inquiring about the status of the priest and had a phone call with the principal discussing the matter a few days later. In light of these revelations, the Committee filed a written declaration by Trahant. There, Trahant admitted that he had contacted the principal but did not disclose that he had communications with the journalist. In an effort to determine the full extent of the breach of confidentiality, the bankruptcy court instructed the Trustee to conduct an independent investigation into the wrongful disclosure of the protected material.

Nearly six months after the initial leak, the Trustee filed its report under seal. The Trustee attached seventy-eight sworn declarations, eighteen transcripts of sworn examinations, and numerous documents, including telephone and text message logs. The Trustee also attached Trahant's deposition wherein he admitted that he had texted the high school principal after receiving confidential information from the discovery materials. In the deposition, Trahant also admitted to contacting the journalist via email. He testified that he knew the reporter would infer from the email that the priest was accused of sexual abuse; he further averred that he intended for the reporter to write about the alleged misconduct.

After reviewing the Trustee's report, the bankruptcy court issued an Order on June 7, 2022 directing the Trustee to relieve Trahant's clients from the Committee. The bankruptcy court concluded: "(i) Trahant had read and was bound by the Protective Order; (ii) knew that he was bound by the Protective Order; and (iii) beginning on December 31, 2021, provided on multiple occasions confidential information he received to a third party and the media in direct violation of this Court's Protective Order." The bankruptcy court, recognizing that it could not interfere with the attorney-client relationship, imputed Trahant's conduct to his clients. The bankruptcy court presumed that further disclosure of confidential information to Trahant's clients could result in additional unauthorized

disclosures to third parties. The Order further stated: "The Court will issue a separate Order To Show Cause to determine appropriate sanctions for Trahant's disclosure of confidential information in violation of this Court's Protective Order." Three days later, Trahant filed a notice of appeal regarding the June 7, 2022 Order, which the Archdiocese moved to dismiss.

Notwithstanding Trahant's appeal, the bankruptcy court later entered an order instructing Trahant to show cause for why he should not be sanctioned for violating the protective order. In doing so, the bankruptcy court granted Trahant access to the Trustee's report, ordered the Archdiocese and the Committee to file invoices identifying professional time spent investigating the protective order violation, and directed Trahant to appear at a show-cause hearing. Trahant immediately filed an emergency motion to stay the show-cause hearing with the district court. The district court denied the motion, concluding that "any action taken against Mr. Trahant at the hearing will leave him with a clear legal remedy: an appeal."

At the show-cause hearing, Trahant's testimony confirmed the relevant facts. He admitted that he learned about the sexual abuse allegations from the confidential discovery materials and knew that he was bound by the protective order. He admitted that he contacted the high school principal and the journalist without permission from the Archdiocese or the Court. Finally, he admitted that he knew both individuals would associate the priest with sexual abuse allegations due to his communications. Additionally, he also stated: "[D]id I plant a seed? Absolutely. Absolutely. Your Honor is a hundred percent right. Yeah, I planted that seed."

The day after the show-cause hearing, the district court denied the Archdiocese's motion to dismiss Trahant's original appeal. The district court reasoned that the "dismissal [was] unwarranted" because the June 7, 2022 Order "appear[ed] to satisfy the finality and contempt elements

required for this appeal to proceed forward." Nevertheless, on October 11, 2022, the bankruptcy court entered an order imposing sanctions against Trahant pursuant to Federal Rule of Civil Procedure 37(b)(2) and 11 U.S.C. § 105(a) for his knowing and willful breach of the protective order. The bankruptcy court acknowledged that it had "made a finding of contempt" against Trahant in the June 7, 2022 Order, and explained that the evidence presented at the show-cause hearing "reconfirmed" its initial finding. The court also noted that "[Trahant's] subsequent evasion and failure to provide information timely to counsel for the Committee and the [Archdiocese] regarding his own conduct constitute[d] bad-faith actions which caused the [Archdiocese], the Committee, and the [Trustee] to divert and expend resources unnecessarily to uncover information that Trahant had all along." The bankruptcy court therefore imposed a $400,000 sanction against Trahant in the October 11, 2022 Order to compensate the parties for the expenses incurred in investigating the breach of the protective order. This sanction accounted for approximately 53% of the $760,884 in attorney's fees and expenses that the Archdiocese and the Committee incurred in investigating and dealing with the breach of the protective order.

Trahant appealed the October 11, 2022 Order, and the district court consolidated the case with Trahant's original appeal from the June 7, 2022 Order. The district court later affirmed the bankruptcy court's finding of contempt and imposition of sanctions. Trahant timely appealed to our court.

## II

In considering bankruptcy appeals, our court sits as a court of second review, "applying the same standards of review to the bankruptcy court's

findings of fact and conclusions of law as applied by the district court."[2] We review contempt findings, as well as the imposition of sanctions, for abuse of discretion.[3] A bankruptcy court abuses its discretion when "its ruling is based on an erroneous []view of the law or on a clearly erroneous assessment of the evidence."[4] When, as here, "the district court has affirmed the bankruptcy court's factual findings, we will only reverse if left with a firm conviction that error has been committed."[5] We review findings of fact for clear error and questions of law de novo.[6]

Trahant asserts that the bankruptcy court erred in three ways. First, he argues the bankruptcy court's June 7, 2022 Order violated his right to procedural due process by holding him in contempt and imposing sanctions without notice or the opportunity to be heard. Second, he contends that the bankruptcy court lacked jurisdiction to find him in contempt and impose the $400,000 sanction in the October 11, 2022 Order because an earlier appeal divested the bankruptcy court of jurisdiction over the matter. Third, Trahant argues that the bankruptcy court abused its discretion by finding him in contempt and sanctioning him for his conduct. We address Trahant's arguments in this order.

---

[2] *In re Lopez*, 897 F.3d 663, 668 (5th Cir. 2018) (internal quotation marks omitted) (quoting *In re Heritage Consol., L.L.C.*, 765 F.3d 507, 510 (5th Cir. 2014)).

[3] *In re Bradley*, 588 F.3d 254, 261 (5th Cir. 2009); *see also Waste Mgmt. of Wash., Inc. v. Kattler*, 776 F.3d 336, 339 (5th Cir. 2015).

[4] *In re Yorkshire, LLC*, 540 F.3d 328, 331 (5th Cir. 2008) (quoting *Chaves v. M/V Medina Star*, 47 F.3d 153, 156 (5th Cir. 1995)).

[5] *In re Bradley*, 588 F.3d at 261 (quoting *In re Terrebonne Fuel & Lube, Inc.*, 108 F.3d 609, 613 (5th Cir. 1997)).

[6] *Id.*

No. 23-30466

### A

"Whether an alleged contemnor was afforded due process is a question of law we review de novo."[7]  The procedural due process guaranteed by the Constitution "requires that one charged with contempt of court be advised of the charges against him, have a reasonable opportunity to meet them by way of defense or explanation, have the right to be represented by counsel, and have a chance to testify and call other witnesses . . . ."[8]  The Supreme Court has made clear that "[d]ue process, unlike some legal rules, is not a technical conception with a fixed content unrelated to time, place and circumstances."[9]  "[D]ue process is flexible and calls for such procedural protections as the particular situation demands."[10]  With this in mind, the starting point for analyzing Trahant's due process claim is a correct understanding of the process the bankruptcy court used when investigating the violation of the protective order and holding Trahant in contempt.

The crux of Trahant's due process argument is that the bankruptcy court entered the June 7, 2022 Order before providing him notice or the opportunity to be heard.  According to Trahant, the June 7, 2022 Order constituted a final contempt order because the bankruptcy court found that he violated the protective order and punished him by imposing non-monetary sanctions.  Trahant contends that he was entitled to the full panoply of procedural safeguards prior to the issuance of the June 7, 2022 Order because

---

[7] *Kattler*, 776 F.3d at 339.

[8] *In re Oliver*, 333 U.S. 257, 275 (1948).

[9] *Mathews v. Eldridge*, 424 U.S. 319, 334 (1976) (internal quotation marks omitted) (alteration in original) (quoting *Cafeteria & Rest. Workers Union v. McElroy*, 367 U.S. 886, 895 (1961)).

[10] *Id.* (alteration in original) (quoting *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972)).

the bankruptcy court exposed him to "public embarrassment and ridicule" and removed his clients from the Committee.

Trahant's argument fails to appreciate the limited scope of the June 7, 2022 Order. Although the bankruptcy court made a preliminary finding that Trahant violated the protective order, it did not sanction Trahant for his conduct at that time. Instead, the court took limited actions that were necessary to protect the integrity of the bankruptcy process. In the words of the bankruptcy court, it removed Trahant's clients from the Committee "to prevent an abuse of process and to ensure adequate representation of [sexual abuse victims]." The bankruptcy court recognized that it could not interfere with the attorney-client relationship, and, therefore, the court imputed Trahant's conduct to his clients. The bankruptcy court rightfully presumed that further disclosure of confidential information to Trahant's clients could result in further unauthorized disclosures to third parties. Because of the sensitive nature of the abuse claims in the discovery materials, we agree with the district court that the bankruptcy court's actions served as "a prudential prophylactic step, not [as] a sanction on Trahant."

To the extent Trahant now contends that the bankruptcy court's actions in the June 7, 2022 Order constituted a form of non-monetary sanctions, we disagree. As a previous panel of this court recently held, Trahant's clients did not have a legally protected interest in remaining on the Committee.[11] That is because "no creditor has a 'right' to serve or continue serving on a Creditors Committee."[12] Moreover, the substantive rights of Trahant's clients as creditors in the bankruptcy case were not impaired by

---

[11] *In re Roman Cath. Church of Archdiocese of New Orleans*, 101 F.4th 400, 408 (5th Cir. 2024).

[12] *Id.*

No. 23-30466

their removal from the Committee.[13]  Trahant therefore cannot claim that the removal of his clients was a non-monetary sanction imposed by the bankruptcy court for his personal conduct.

We also cannot accept Trahant's argument that the June 7, 2022 Order constituted a non-monetary sanction due to his perceived reputational harms.  The bankruptcy court's actions in the June 7, 2022 Order were designed to protect the integrity of the bankruptcy process and ensure that highly sensitive information pertaining to alleged sexual abuse remained confidential.  In addition, the bankruptcy court did not consider its decision regarding Trahant's conduct to be final.  Rather, the court explained that "serious questions remain regarding the extent of the information that was provided to third parties and the media by Trahant."  The bankruptcy court fully contemplated a later assessment of Trahant's liability, after he received adequate notice and an opportunity to rebut the charges against him at a show-cause hearing.  To this point, the bankruptcy court stated in the June 7, 2022 Order that it would issue a separate show-cause order to determine the appropriate sanctions for the alleged conduct.

This case is readily distinguishable from other due process cases in which our court has held that the alleged contemnor's rights were violated.[14]  In *Waste Management of Washington, Inc. v. Kattler*,[15] the attorney who was held in contempt argued that he was not afforded due process because he did not receive adequate notice.[16]  The motion to show cause listed the attorney's

---

[13] *Id.* at 409-10.

[14] *See Waste Mgmt. of Wash., Inc. v. Kattler*, 776 F.3d 336, 339-41 (5th Cir. 2015); *CEATS, Inc. v. TicketNetwork, Inc.*, 71 F.4th 314, 323-24 (5th Cir. 2023).

[15] 776 F.3d 336 (5th Cir. 2015).

[16] *Id.* at 339.

client, not the attorney, "as the sole potential contemnor whose liability was to be addressed at the hearing."[17]  We therefore vacated the contempt order, holding that the notice was insufficient.[18]

The attorney in *Waste Management* challenged a *final* contempt order—he raised his due process claim only *after* the contempt proceeding was completed.[19]  By contrast, Trahant's due process claim pertains to a proceeding that was still ongoing.  The June 7, 2022 Order stated that the bankruptcy court would issue a separate show-cause order, which provided Trahant adequate notice and the opportunity to rebut the allegations.  These procedural safeguards satisfy what due process demands before a court enters a final contempt order.[20]  Accordingly, we hold that the bankruptcy court did not violate Trahant's right to procedural due process by issuing the June 7, 2022 Order and removing Trahant's clients from the Committee.

**B**

Trahant next maintains that the bankruptcy court was without jurisdiction to issue the October 11, 2022 Order because an earlier appeal divested that court of jurisdiction over the matter.  At issue is the jurisdictional significance of Trahant's immediate appeal to the district court

---

[17] *Id.*

[18] *Id.* at 340-41.

[19] *See id.* at 339 (stating that the district court found the attorney and client in contempt after the show-cause hearing).

[20] *See, e.g., id.* at 339-40 ("In general, due process requires 'that one charged with contempt of court be advised of the charges against him, have a reasonable opportunity to meet them by way of defense or explanation, have the right to be represented by counsel, and have a chance to testify and call other witnesses.'" (quoting *In re Oliver*, 333 U.S. 257, 275 (1948))).

of the June 7, 2022 Order. Trahant contends that the pending appeal divested the bankruptcy court of jurisdiction.

Whether a bankruptcy court possesses subject matter jurisdiction is a question of law we review de novo.[21] It is axiomatic that "[t]he filing of a notice of appeal is an event of jurisdictional significance—it confers jurisdiction on the court of appeals and divests the district court of its control over those aspects of the case involved in the appeal."[22] "This rule applies with equal force to bankruptcy cases."[23] When a final judgment is appealed from the bankruptcy court, the district court assumes jurisdiction over the matter.[24] Nevertheless, "this rule presupposes that there is a final judgment from which to appeal."[25] Under 28 U.S.C. § 158(a)(3), in the absence of a final judgment, a party cannot appeal an interlocutory order from the bankruptcy court unless the district court grants leave to take an interlocutory appeal.[26]

Our court has explained that "[i]t is well-settled that a civil contempt order is not 'final' for purposes of appeal unless two actions occur: (1) a finding of contempt is issued, and (2) an appropriate sanction is imposed."[27] We have also stated that a contempt order is not "final" when the bankruptcy

---

[21] *In re OCA, Inc.*, 551 F.3d 359, 366 (5th Cir. 2008).

[22] *Griggs v. Provident Consumer Disc. Co.*, 459 U.S. 56, 58 (1982).

[23] *In re Transtexas Gas Corp.*, 303 F.3d 571, 579 (5th Cir. 2002).

[24] *See id.* (explaining that the notice of appeal from a final order of the bankruptcy court divested the bankruptcy court of jurisdiction over the case and placed jurisdiction in the district court, acting as the appellate court).

[25] *In re U.S. Abatement Corp.*, 39 F.3d 563, 568 (5th Cir. 1994).

[26] 28 U.S.C. § 158(a).

[27] *In re U.S. Abatement Corp.*, 39 F.3d at 567.

court "clearly contemplates an assessment of damages in the future."[28] Simply put, finality requires a bankruptcy court to complete its contempt proceeding.

As explained in the preceding section, we disagree with Trahant's characterization of the June 7, 2022 Order as a final contempt order. Following the issuance of that Order, the bankruptcy court stated on multiple occasions that sanctions had not been imposed. For instance, during a hearing one month later, the bankruptcy court stated:

> [T]he Court's order of June 7, 2022 is not a final order because no assessment of sanctions has occurred. In fact, the order specifically states that the Court will issue a separate order to show cause to determine appropriate sanction for Trahant's disclosure of confidential information in violation of this Court's protective order.

Likewise, at the show-cause hearing, the bankruptcy court observed: "Of course, no sanctions have been awarded yet." This underscores that the June 7, 2022 Order was a non-final, interlocutory order.

Nevertheless, this interlocutory order was still subject to review if the district court granted Trahant leave to appeal under 28 U.S.C. § 158(a)(3) and Federal Rule of Bankruptcy Procedure 8004(d). Trahant contends that he requested the district court grant leave to appeal the June 7, 2022 Order in accordance with Rule 8004(d). He asserts that the district court "expressly allowed the appeal" to move forward by denying the Archdiocese's motion to dismiss for lack of subject matter jurisdiction on August 23, 2022. We disagree.

---

[28] *Id.*

No. 23-30466

Under Rule 8004(d), "[i]f an appellant timely files a notice of appeal . . . but does not include a motion for leave, the district court . . . may order the appellant to file a motion for leave, or treat the notice of appeal as a motion for leave and either grant or deny it."[29]  Our court has explained that Rule 8004(d) "contemplates some exercise of discretion by the district court—it must 'either grant or deny' leave to appeal."[30]  Here, the district court never expressly granted leave to appeal.  Instead, the district court incorrectly concluded that the June 7, 2022 Order "appear[ed] to satisfy the finality and contempt elements required for this appeal to proceed forward."  This is insufficient.  Our caselaw firmly establishes that a district court cannot impliedly grant leave to appeal by merely ruling on an appeal before it from the bankruptcy court.[31]

Our unpublished decision in *In re Holloway*[32] elucidates this point.  There, the issue was whether a bankruptcy court order that had denied the enforcement of a settlement agreement was appealable to the district court.[33]  The district court treated the order as a final appealable order, but on appeal, we held that the order was interlocutory.[34]  We concluded that the district court lacked subject matter jurisdiction over the appeal because the district

---

[29] FED. R. BANKR. P. 8004(d) (2024) (amended in 2024 with stylistic changes).

[30] *In re Delta Produce, L.P.*, 845 F.3d 609, 618 (5th Cir. 2016) (quoting FED. R. BANKR. P. 8004(d) (2024)).

[31] *See id.* ("In allowing a district court to treat a notice of appeal as a request for leave to appeal, Rule 8004(d) still contemplates some exercise of discretion by the district court—it must 'either grant or deny' leave to appeal." (quoting FED. R. BANKR. P. 8004(d) (2024))).

[32] 370 F. App'x 490 (5th Cir. 2010) (unpublished).

[33] *Id.* at 491.

[34] *Id.* at 492.

court had not granted leave to allow an appeal of the interlocutory order.[35] We noted that "[n]othing in the record indicate[d]" that the district court chose to treat the notice of appeal as a motion for leave.[36] In other words, even though the district court considered the order to be final and appealable, it could not "impliedly grant" leave to appeal.[37]

Trahant attempts to distinguish *In re Holloway* by noting that he "expressly requested" leave to appeal in his opposition to the motion to dismiss. However, Trahant misses two critical points. First, like the appellant in *In re Holloway*, Trahant failed to file a motion for leave to appeal. Second, as in *In re Holloway*, "[n]othing in the record indicates"[38] that the district court chose to treat the notice of appeal as a motion for leave. Accordingly, we conclude that the district court did not grant leave to appeal the June 7, 2022 Order and that Trahant's notice of appeal regarding the June 7, 2022 Order was "premature and of no effect."[39] The bankruptcy court retained subject matter jurisdiction to issue the October 11, 2022 Order.

## C

Trahant's final argument is that the bankruptcy court abused its discretion by finding him in contempt and imposing a $400,000 sanction in the October 11, 2022 Order. Trahant asserts that (1) he did not violate the protective order, (2) the October 11, 2022 Order was not supported by

---

[35] *Id.* at 493.

[36] *Id.*

[37] *Id.* at 492-93.

[38] *Id.* at 493.

[39] *In re U.S. Abatement Corp.*, 39 F.3d 563, 568 (5th Cir. 1994).

competent evidence, and (3) the sanctions are disproportionate to the alleged conduct.

**1**

Trahant contends that he did not violate the protective order because the only confidential information he communicated to third parties was the priest's name and the fact that the priest was the chaplain at the high school. He maintains that "as a matter of law and public policy, the mere name of a priest who served for many years as a chaplain at a high school either is public, non-protected information or should be declassified under the Protective Order." This argument is unavailing.

First, the bankruptcy court's finding that Trahant disseminated protected information was fully supported by the record. Trahant admitted that he sent text messages to his cousin containing the priest's name and asking if the priest was still employed at the high school. Trahant also averred that, when sending those messages, he knew his cousin would understand the priest had been accused of sexual abuse. Trahant confirmed that he intended to "plant a seed" because "[he] didn't want that guy back on [the high school] campus." Moreover, Trahant admitted that he contacted the journalist with the intention that the journalist would investigate and report on the alleged misconduct. In doing so, Trahant communicated confidential information "contained in, or derived from" the protected materials in direct violation of the protective order.

Second, even if the priest's name and association with the high school were public information, the fact that the priest was associated with allegations of sexual abuse was undoubtedly confidential. The priest's name was not included on the "Credibly Accused List" that was originally published by the Archdiocese to the general public in 2018. Nor were the allegations against the priest identified in a proof of claim filed in the

bankruptcy case. As noted by the Archdiocese, the allegations against the priest were "totally confidential." For these reasons, the bankruptcy court correctly concluded that "[n]o dispute exists that the information that reached the media was information that could not have come from any other source but the [Archdiocese's] production of discovery in this case."

Lastly, Trahant's contention that the priest's name should be "declassified" now does not excuse his failure to seek declassification before revealing the confidential information. Even if there were an over-classification issue in this bankruptcy proceeding, the protective order provided a detailed process for challenging confidentiality designations. Paragraph 6 provided that a party could "move the court for an order stating that the information designated as [confidential] is not confidential information within the meaning of this Protective Order and is not entitled to the protections of this Protective Order." This provision is unambiguous; it did not empower Trahant to disclose confidential information before the confidential designation had been lifted. To this point, protective orders serve as narrow exceptions to the general rule of disclosure.[40] They allow parties to keep specific categories of documents confidential by agreement. Here, the protective order governed not only what materials were protected, but also the method of contesting a confidentiality designation. By failing to follow these terms, Trahant violated the protective order.

---

[40] *See Le v. Exeter Fin. Corp.*, 990 F.3d 410, 416-19 (5th Cir. 2021) ("[T]he working presumption is that judicial records should not be sealed."); *see also Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 34 (1984) ("[A] protective order prevents a party from disseminating *only* that information obtained through use of the discovery process. Thus, [a litigant] may disseminate the identical information covered by the protective order as long as the information is gained through means independent of the court's processes." (emphasis added)).

**2**

Trahant next contends that the October 11, 2022 Order is not supported by competent evidence. He maintains that the evidence considered by the bankruptcy court, including the attorney fee statements, the Trustee's report, and Trahant's deposition, was not properly offered by the parties. In the words of the district court, this argument "blinks reality."

The bankruptcy court stated—on multiple occasions—that it was adopting the factual findings of the Trustee's report and considering the fees and costs the parties incurred due to Trahant's conduct. Trahant's attorney specifically acknowledged that the bankruptcy court had "adopted the findings of the report" and challenged the report as inadmissible hearsay during the show-cause hearing. Likewise, Trahant was fully aware that the parties were submitting invoices to the court so that the court could determine the appropriate sanction. But Trahant did not object to the bankruptcy court's consideration of the invoices.

Unlike the cases invoked by Trahant, wherein disputed documents were not presented to the court or considered by the court,[41] the evidence at issue here was filed in the record and considered by the bankruptcy court in issuing its October 11, 2022 Order. The record included an extensive exchange between the bankruptcy court and Trahant during the show-cause hearing as well as Trahant's own deposition. It also included the Trustee's report and the attorney fee statements, which the bankruptcy court specifically ordered the parties to prepare for its consideration in the

---

[41] *See Callejo v. Bancomer, S.A.*, 764 F.2d 1101, 1119 n.25 (5th Cir. 1985) (refusing to consider on appeal letters that were not presented to the district court); *United States v. Dwoskin*, 644 F.2d 418, 421 (5th Cir. 1981) ("[T]he record is clear that this check was not admitted into evidence because it could not be identified. . . . We can not consider 'evidence' which is not in the record.").

contempt proceeding. Trahant was provided multiple opportunities to confront this evidence and rebut any findings made by the bankruptcy court by offering his own evidence into the record. We therefore cannot accept Trahant's contention that the October 11, 2022 Order was not supported by competent evidence.

**3**

Notwithstanding the fact that the record fully supported the bankruptcy court's finding that Trahant violated the protective order, Trahant maintains that he "acted in the utmost good faith at all times" and that the sanctions are "disproportionate" to the alleged conduct. To support this argument, Trahant points to his "legal, moral, and ethical obligation . . . to keep [the priest] away from children." He also points to his belief that the $400,000 sanction is "not causally related to any actual damage or prejudice to any party." These arguments are without merit.

Although the bankruptcy court issued its October 11, 2022 Order pursuant to both Federal Rule of Civil Procedure 37(b)(2) and 11 U.S.C. § 105(a), we consider its reliance on Rule 37(b)(2) to be sufficient. Under Rule 37(b)(2), a bankruptcy court may impose sanctions for the failure to obey discovery orders, including protective orders.[42]

We have repeatedly emphasized that courts "ha[ve] broad discretion under Rule 37(b) to fashion remedies suited to the misconduct."[43] Authorized sanctions under Rule 37(b)(2) include imposing reasonable

---

[42] *See* Fed. R. Bankr. P. 7037 (2024) (amended in 2024 with stylistic changes) (incorporating Rule 37 of the Federal Rules of Civil Procedure into the Bankruptcy Rules); *see also Smith & Fuller, P.A. v. Cooper Tire & Rubber Co.*, 685 F.3d 486, 488-90 (5th Cir. 2012) (applying Rule 37(b)(2) to a violation of a protective order).

[43] *Smith & Fuller, P.A.*, 685 F.3d at 488 (quoting *Pressey v. Patterson*, 898 F.2d 1018, 1021 (5th Cir. 1990)).

expenses, such as attorney's fees resulting from the failure to obey a discovery order.[44]  While more onerous sanctions, such as striking pleadings or dismissing a case, require a finding of willfulness or bad faith, lesser sanctions do not.[45]  Sanctions are proper when clear and convincing evidence indicates "(1) that a court order was *in effect*, and (2) that the order required certain conduct by the respondent, and (3) that the respondent failed to comply with the court's order."[46]  As previously explained, the evidence in the record established that Trahant violated the protective order, meaning the bankruptcy court did not abuse its discretion in imposing sanctions.

Trahant nevertheless contends that the $400,000 sanction is disproportionate because "the only allegedly contemptuous conduct that [he] engaged in was to communicate [the priest's] name and the fact that [the priest] was the chaplain at [the high school]."  Trahant further asserts that the costs incurred by the Archdiocese and the Committee were "self-imposed and mitigable" because he "made every effort to discuss what he knew but was repeatedly rebuffed."  We disagree.

For months, Trahant avoided accountability by not admitting to the violation.  As early as February 9, 2022, Trahant was aware that his communications with the high school principal and the journalist may have constituted a violation of the protective order.  He specifically contacted the bankruptcy court via email to request permission to attend a status conference on the matter that was to be held on February 11, 2022.  However,

---

[44] *Id.* at 488, 490.

[45] *Id.* at 488.

[46] *In re Bradley*, 588 F.3d 254, 264 (5th Cir. 2009) (quoting *Fed. Deposit Ins. Corp. v. LeGrand*, 43 F.3d 163, 170 (5th Cir. 1995)); *see also Waste Mgmt. of Wash., Inc. v. Kattler*, 776 F.3d 336, 341 (5th Cir. 2015) ("To hold a party in civil contempt, the court must find such a violation by clear and convincing evidence.").

rather than disclosing his own conduct, the email stated that an investigation should be pursued against the Archdiocese. Similarly, on March 17, 2022, Trahant attended a public hearing regarding the matter. Instead of disclosing his conduct, Trahant remained silent while the attorneys argued over the investigation.

It was not until April 12, 2022, that Trahant finally admitted that he had contacted the high school principal. But even this admission came only after the high school revealed in a response to interrogatories filed eight days before that Trahant was the source of the confidential information. Moreover, Trahant's admission did not mention his disclosure of confidential information to the journalist. The bankruptcy court, therefore, reasonably concluded that Trahant's failure to come forward "created waste, disrupted the progress in this case, and delayed resolution of this particular matter for months." The bankruptcy court also reasonably concluded that a sanction reflecting the costs incurred by the Archdiocese and the Committee in investigating the leak was appropriate.

Trahant's reliance on *Topalian v. Ehrman*[47] is not to the contrary. There, we held that a court's reasoning for imposing sanctions must reflect the following four factors:

> (1) What conduct is being punished or is sought to be deterred by the sanction? . . . (2) What expenses or costs were caused by the violation of the rule? . . . (3) Were the costs or expenses "reasonable," as opposed to self-imposed, mitigatable, or the result of delay in seeking court intervention? . . . (4) Was the sanction the least severe sanction adequate to achieve the purpose of the rule under which it was imposed?[48]

---

[47] 3 F.3d 931 (5th Cir. 1993).

[48] *Id.* at 936-37 (emphasis omitted).

No. 23-30466

Although the bankruptcy court did not explicitly reference these factors, the court addressed these concerns in the October 11, 2022 Order. The bankruptcy court provided a detailed summary of the expenses incurred by the parties, described why these expenses were incurred, and explained the conduct the court sought to deter by imposing the sanctions. The bankruptcy court also explained that, under the circumstances, the sanction award was narrowly tailored to the wrong. Despite finding the billing entries to be justified, the bankruptcy court reduced the total amount of the fees incurred by approximately 50% to arrive at the $400,000 sanction imposed. In light of this reduction and the fees incurred due to Trahant's misconduct, we hold that the bankruptcy court did not abuse its discretion.

\*      \*      \*

For the foregoing reasons, we AFFIRM the district court's judgment affirming the bankruptcy court's finding of contempt and imposition of sanctions.

# *United States Court of Appeals*
### FIFTH CIRCUIT
### OFFICE OF THE CLERK

<table>
<tr><td>LYLE W. CAYCE<br>CLERK</td><td>TEL. 504-310-7700<br>600 S. MAESTRI PLACE,<br>Suite 115<br>NEW ORLEANS, LA 70130</td></tr>
</table>

February 18, 2026

Ms. Carol L. Michel
U.S. District Court, Eastern District of Louisiana
500 Poydras Street
Room C-151
New Orleans, LA 70130

     No. 23-30466   Trahant v. Official Committee
                   USDC No. 2:22-CV-1740
                   USDC No. 2:22-CV-4101

Dear Ms. Michel,

Enclosed is a copy of the judgment issued as the mandate and a
copy of the court's opinion.

                Sincerely,

                LYLE W. CAYCE, Clerk

                By: _____
                Sean Hannan, Deputy Clerk
                504-310-7702

cc w/encl:
     Mr. John Henry Denenea Jr.
     Mr. Douglas Scott Draper
     Mr. Soren E. Gisleson
     Mr. Omer F. Kuebel III
     Mr. Mark Alan Mintz
     Mr. Jack Edward Morris
     Ms. Samantha Oppenheim
     Mr. Paul Maury Sterbcow
     Mr. Richard Charles Trahant
     Mr. Robert Patrick Vance