**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| IN RE: | § | CASE NO: 20-10846 |
| | § | (JOINTLY ADMINISTERED) |
| THE ROMAN CATHOLIC CHURCH | § | |
| OF THE ARCHDIOCESE OF NEW | § | CHAPTER 11 |
| ORLEANS, | § | COMPLEX CASE |
| | § | |
| DEBTOR. | § | SECTION A |

**FIFTEENTH INTERIM AND FINAL APPLICATION OF JONES WALKER LLP, AS COUNSEL FOR THE DEBTOR AND THE DEBTOR IN POSSESSION, FOR ALLOWANCE OF COMPENSATION AND REIMBURSEMENT OF EXPENSES**

> **A HEARING WILL BE CONDUCTED ON THIS MATTER ON THURSDAY, MAY 14, 2026, AT 9:30 A.M. AND FRIDAY, MAY 15, 2026, AT 9:30 A.M. IN PERSON AT THE UNITED STATES BANKRUPTCY COURT, 500 POYDRAS ST., COURTROOM B709, NEW ORLEANS, LOUISIANA 70130. PER THE RULES SET FORTH IN THE COURT'S AMENDED GENERAL ORDER 2021, AVAILABLE AT HTTPS://WWW.LAEB.USCOURTS.GOV/, SOME PARTIES IN INTEREST MAY PARTICIPATE IN THE HEARING (I) BY TELEPHONE ONLY (DIAL-IN 504.517.1385, ACCESS CODE 129611) OR (II) BY TELEPHONE USING THE DIAL-IN NUMBER AND VIDEO USING HTTPS://GOTOMEET.ME/JUDGEGRABILL (MEETING CODE: "JUDGEGRABILL"). IF YOU OBJECT TO THE RELIEF REQUESTED IN THIS PLEADING, YOU MUST RESPOND IN WRITING. UNLESS DIRECTED OTHERWISE BY THE COURT, YOU MUST FILE YOUR RESPONSE WITH THE CLERK OF THE BANKRUPTCY COURT NO LATER THAN TUESDAY, MARCH 31, 2026. YOU MUST SERVE A COPY OF YOUR RESPONSE ON THE PERSON WHO SENT YOU THE NOTICE; OTHERWISE, THE COURT MAY TREAT THE PLEADING AS UNOPPOSED AND GRANT THE RELIEF REQUESTED.**

## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: | § | CASE NO: 20-10846 |
| | § | (JOINTLY ADMINISTERED) |
| THE ROMAN CATHOLIC CHURCH | § | |
| OF THE ARCHDIOCESE OF NEW | § | CHAPTER 11 |
| ORLEANS, | § | COMPLEX CASE |
| | § | |
| DEBTOR. | § | SECTION A |

## SUMMARY SHEET FOR
## FIFTEENTH INTERIM AND FINAL APPLICATION OF JONES WALKER LLP, AS COUNSEL FOR THE DEBTOR AND THE DEBTOR IN POSSESSION, FOR ALLOWANCE OF COMPENSATION AND REIMBURSEMENT OF EXPENSES

| | |
|---|---|
| Name of Applicant: | Jones Walker LLP |
| Authorized to Provide Services to: | The Debtor and Debtor in Possession |
| Petition Date: | May 1, 2020 |
| Retention Date: | June 19, 2020 *nunc pro tunc* to May 1, 2020 |
| Remaining Balance of Pre-Petition Retainer: | $0.00 |
| Are Any Rates Higher than Those Approved or Disclosed at Retention? | Yes.  *See* Hourly Billing Rates section in Application. |
| **Fifteenth Interim Fee Period** | |
| • Period for which interim compensation and reimbursement is sought: | • March 1, 2025 – December 26, 2025 (the "**Fifteenth Interim Fee Period**") |
| • Amount of compensation sought: | • $2,663,592.00[1] |
| • Amount of expense reimbursement sought: | • $104,420.07 |
| • Blended rate for all attorneys: | • $396.91 |
| • Blended rate for all timekeepers: | • $384.17 |
| • No. of timekeepers: | • 43 (excluding law clerks) |
| • No. of timekeepers billing fewer than 15 hours: | • 23 |
| **Final Fee Period** | |
| • Period for which final compensation and reimbursement is sought: | • May 1, 2020 – December 26, 2025 (the "**Final Fee Period**") |
| • Amount of compensation sought: | • $17,290,624.50[2] |

---

[1] This amount reflects a voluntary reduction of $50,856.00, which represents fees billed during the Fifteenth Interim Fee Period by timekeepers who billed fewer than 50.0 hours during the Final Fee Period.  This reduction is not reflected in the statistics provided in this Application.

[2] This amount reflects a reduction of $60,000.00 in fees requested pursuant to Jones Walker's First Interim Fee Application, [ECF No. 568], which was agreed to with the UST's office and memorialized in the *Order Approving First Interim Application of Jones Walker LLP For Allowance of Compensation and Reimbursement of Expenses, as Counsel to the Debtor and the Debtor In Possession, for the Period from May 1, 2020 through September 30, 2020*, [ECF No. 682], (the "**First Interim Fee Order**").  It also reflects a voluntary reduction of $254,842.50, which represents fees billed by timekeepers who billed fewer than 50.0 hours during the Final Fee Period.  These reductions are not reflected in the statistics provided in this Application.

2

#110929577v2

| | |
|---|---|
| • Amount of expense reimbursement sought: | • $533,736.99 |
| • Blended rate for all attorneys: | • $356.80 |
| • Blended rate for all timekeepers: | • $345.23 |
| • No. of timekeepers: | • 100 (excluding law clerks) |
| • No. of timekeepers billing fewer than 15 hours: | • 44 |
| **Historical Information** | |
| • Compensation approved by interim order to date: | • $11,573,236.00 |
| • Expenses approved by interim order to date: | • $315,725.90 |
| • Total allowed compensation paid to date: | • $11,573,236.00 |
| • Total allowed expenses paid to date: | • $315,725.90 |
| • Compensation paid pursuant to a monthly fee statement but not yet approved by interim order: | • $4,690,710.16 |
| • Expenses paid pursuant to a monthly fee statement but not yet approved by interim order: | • $213,683.72 |

This is a combined <u>interim</u> and <u>final</u> application.

Pursuant to §§ 105(a), 330, and 331 of title 11 of the United States Code (the "**Bankruptcy Code**"), Rule 2016 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), Rule 2016-1 of the Local Rules of the United States Bankruptcy Court for the Eastern District of Louisiana (the "**Local Rules**"), the *U.S. Trustee Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed Under 11 U.S.C. § 330 by Attorneys in Larger Chapter 11 Cases* (the "**UST Guidelines**"), Section XV of *General Order 2019-4* (the "**Complex Case Procedures**"), and the *Order Approving Employment of Jones Walker LLP as Attorneys for the Debtor*, [ECF No. 170], (the "**Retention Order**"), Jones Walker LLP ("**Jones Walker**"), counsel for the debtor and debtor in possession (the "**Debtor**" or "**Archdiocese**") in the above-captioned chapter 11 case (the "**Chapter 11 Case**"), hereby submits this fifteenth interim and final application (this "**Application**"), requesting that the Court: (a) allow reasonable compensation for legal services rendered and reimbursement of actual and necessary expenses incurred on behalf of the Debtor (i) for the <u>Fifteenth Interim Fee Period</u>, the amounts of $2,663,592.00 in fees and $104,420.07 in actual and necessary expenses, and (ii) for the <u>Final Fee Period</u>, the amounts of $17,290,624.50 in fees and $533,736.99 in actual and necessary expenses;

3

and (b) grant such other and further relief as is just and proper.  In support of this Application, Jones Walker respectfully represents as follows:

## INTRODUCTION

1.      On May 1, 2020 (the "**Petition Date**"), the Archdiocese filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  Lasting more than five and a half years, the Chapter 11 Case was fraught with extensive litigation, hard-fought negotiations, significant complexity, and disruptions ranging from a global pandemic to a Category 4 hurricane. Notwithstanding these obstacles, due to the tireless efforts of the Debtor's representatives and advisors, the Debtor was able to reach settlements with virtually all major stakeholders.

2.      During this Chapter 11 Case, Jones Walker worked closely with the Debtor's representatives and other professionals to guide the Debtor through a successful restructuring process that, among other things, (a) provided a centralized forum for the orderly and equitable resolution of the claims of abuse survivors and other claimants, (b) culminated in a value-maximizing, nearly consensual plan of reorganization containing unprecedented child-protection protocols, and (c) enabled the Debtor to exit bankruptcy without the need for further financial reorganization.

3.      On December 8, 2025, the Court entered an Order, [ECF No. 4767], (the "**Confirmation Order**"), confirming the *Seventh Amended Modified Joint Chapter 11 Plan of Reorganization for The Roman Catholic Church of the Archdiocese of New Orleans and Additional Debtors, Proposed by the Debtor, the Additional Debtors, and the Official Committee of Unsecured Creditors, Dated as of December 8, 2025*, [ECF No. 4762], (the "**Joint Plan**").  The Effective Date under the Joint Plan occurred on December 26, 2025.  [ECF No. 4817].

#110929577v2

4.      By this Application, Jones Walker seeks approval of compensation earned and expenses incurred during the Fifteenth Interim Fee Period, and approval on a final basis of all compensation earned and expenses incurred throughout this Chapter 11 Case.

## JURISDICTION AND VENUE

5.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334.  This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

6.      Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

## FACTUAL BACKGROUND

7.      The Office of the United States Trustee (the "**UST**") appointed the Official Committee of Unsecured Creditors (the "**Committee**" or "**Survivors' Committee**") on May 20, 2020 [ECF No. 94], which Committee was reconstituted on June 10, 2020 [ECF No. 151], October 8, 2020 [ECF No. 478], June 7, 2022 [ECF No. 1575], June 21, 2022 [ECF No. 1618], and February 13, 2023 [ECF No. 2081].  The UST appointed the Official Committee of Commercial Unsecured Creditors (the "**Commercial Committee**") on March 5, 2021.  [ECF Nos. 772 & 792].

8.      The Court authorized the Debtor to retain and employ Jones Walker as its lead bankruptcy counsel, *nunc pro tunc* to the Petition Date, pursuant to the Retention Order, which was entered on June 19, 2020.  [ECF No. 170].

9.      The Retention Order authorizes Jones Walker to apply for compensation for professional services rendered and reimbursement of expenses incurred in compliance with §§ 330 and 331 of the Bankruptcy Code and the applicable provisions of the Bankruptcy Rules, the Local Rules, the Complex Case Procedures, and any other applicable procedures and orders of the Court. The Retention Order also directs Jones Walker to make a reasonable effort to comply with the requests for information and additional disclosures as set forth in the UST Guidelines.  As further

#110929577v2

explained in the *Application to Employ Jones Walker LLP as Attorneys for the Debtor*, [ECF No. 75], (the "**Retention Application**"), Jones Walker agreed to be compensated on an hourly basis.

10.    On December 8, 2025, the Court entered the Confirmation Order, thereby confirming the Joint Plan.  The Effective Date under the Joint Plan occurred on December 29, 2025.

11.    Although the Joint Plan calls for the filing of final fee applications within forty-five (45) after the Effective Date,[3] the Court's Order dated December 23, 2025 extended such deadline to February 27, 2026.[4]

## INTERIM FEE APPLICATIONS FILED

12.    During the course of this Chapter 11 Case, Jones Walker has filed the following fourteen (14) applications for interim approval and allowance of compensation and reimbursement of expenses:[5]

|  | | Requested | | Approved by Interim Order | |
|---|---|---|---|---|---|
|  | Period Covered | Fees | Expenses | Fees | Expenses |
| 1 | 5/1/2020 – 9/30/2020 | $2,092,461.00 | $76,168.58 | $2,032,461.00 | $76,168.58 |
| 2 | 10/1/2020 – 1/31/2021 | $1,120,960.00 | $17,958.76 | $1,120,960.00 | $17,958.76 |
| 3 | 2/1/2021 – 5/31/2021 | $1,040,201.00 | $23,009.27 | $1,040,201.00 | $23,009.27 |
| 4 | 6/1/2021 – 9/30/2021 | $1,180,440.50 | $16,811.60 | $1,180,440.50 | $16,811.60 |
| 5 | 10/1/2021 – 1/31/2022 | $1,038,247.50 | $22,426.49 | $1,038,247.50 | $22,426.49 |
| 6 | 2/1/2022 – 5/31/2022 | $1,127,452.00 | $25,650.80 | $1,127,452.00 | $25,650.80 |
| 7 | 6/1/2022 – 10/31/2022 | $1,275,789.00 | $35,822.71 | $1,275,789.00 | $35,822.71 |
| 8 | 11/1/2022 – 2/28/2023 | $841,486.00 | $33,743.87 | $841,486.00 | $33,743.87 |
| 9 | 3/1/2023 – 6/30/2023 | $967,481.00 | $30,606.49 | $967,481.00 | $30,606.49 |
| 10 | 7/1/2023 – 10/31/2023 | $948,718.00 | $33,527.33 | $948,718.00 | $33,527.33 |
| 11 | 11/1/2023 – 2/29/2024 | $857,676.00 | $30,595.15 | $0.00 | $0.00 |
| 12 | 3/1/2024 – 6/30/2024 | $824,179.00 | $25,310.39 | $0.00 | $0.00 |

---

[3] *See* Joint Plan, Art. 2.2(b).

[4] *See* ECF No. 4811, at p. 6.

[5] At this time, Jones Walker's eleventh, twelfth, thirteenth, and fourteenth interim fee applications remain pending at ECF Nos. 2927, 3240, 3525, and 3864, respectively.

#110929577v2

| 13 | 7/1/2024 – 10/31/2024 | $862,649.00 | $28,156.53 | $0.00 | $0.00 |
| 14 | 11/1/2024 – 2/28/2025 | $713,279.00 | $29,528.95 | $0.00 | $0.00 |

## MONTHLY FEE STATEMENTS

13.     In addition, in connection with the Fifteenth Interim Fee Period, Jones Walker has submitted to the Professional Fee Notice Parties (as defined in the Complex Case Procedures) ten (10) monthly fee statements that have not yet been the subject of an interim fee application. The Complex Case Procedures authorize the Debtor to pay Jones Walker 80% of fees and 100% of expenses identified in each monthly fee statement to which no objection has been served. The applicable objection periods have expired, and Jones Walker did not receive any objections to these fee statements.

|   | **Period Covered** | **Fees Requested** | **Expenses Requested** |
|---|---|---|---|
| 1 | 3/1/2025 – 3/31/2025 | $104,560.80 (80% of $130,701.00) | $6,939.28 |
| 2 | 4/1/2025 – 4/30/2025 | $126,413.60 (80% of $158,017.00) | $8,780.86 |
| 3 | 5/1/2025 – 5/31/2025 | $206,491.20 (80% of $258,114.00) | $9,128.50 |
| 4 | 6/1/2025 – 6/30/2025 | $178,398.40 (80% of $222,998.00) | $9,531.92 |
| 5 | 7/1/2025 – 7/31/2025 | $297,900.00 (80% of $372,375.00) | $9,614.80 |
| 6 | 8/1/2025 – 8/31/2025 | $308,180.80 (80% of $385,226.00) | $14,704.20 |
| 7 | 9/1/2025 – 9/30/2025 | $329,937.60 (80% of $412,422.00) | $16,714.37 |
| 8 | 10/1/2025 – 10/31/2025 | $290,139.20 (80% of $362,674.00) | $12,762.96 |
| 9 | 11/1/2025 – 11/30/2025 | $243,092.00 (80% of $303,865.00) | $11,918.99 |
| 10 | 12/1/2025 – 12/26/2025 | $86,444.80 (80% of $108,056.00) | $4,324.37 |

## RELIEF REQUESTED

14.     By this Application, Jones Walker seeks allowance of compensation and reimbursement of expenses incurred as follows:

    a.  for the Fifteenth Interim Fee Period, $2,663,592.00 in fees (reflecting a voluntary reduction of $50,856.00) and $104,420.07 in actual and necessary expenses; and

    b.  for the Final Fee Period, $17,290,624.50 in fees (reflecting a reduction of $60,000.00 in accordance with the First Interim Fee Order and a voluntary reduction of $254,842.50) and $533,736.99 in actual and necessary expenses.

15.    Attached hereto as **Exhibit A** are summary charts for the Fifteenth Interim Fee Period consisting of the following:

    a.  A list of the Jones Walker timekeepers performing services on behalf of the Debtor during the Fifteenth Interim Fee Period, along with their respective titles, practice areas, years of admission, hourly billing rates, total hours billed, and total fees billed;

    b.  A breakdown, by project category, of the hours and fees billed by Jones Walker during the Fifteenth Interim Fee Period; and

    c.  An itemization of expenses incurred and for which reimbursement is sought, by expense category, during the Fifteenth Interim Fee Period.

16.    Attached hereto as **Exhibit B** are summary charts for the Final Fee Period consisting of the following:

    a.  A list of the Jones Walker timekeepers performing services on behalf of the Debtor during the Final Fee Period, along with their respective titles, practice areas, years of admission, hourly billing rates, total hours billed, and total fees billed;

    b.  A breakdown, by project category, of the hours and fees billed by Jones Walker during the Final Fee Period; and

    c.  An itemization of expenses incurred and for which reimbursement is sought, by expense category, during the Final Fee Period.

17.    Attached hereto as **Exhibit C** are customary and comparable compensation disclosures for Jones Walker.

18.    Attached hereto as **Exhibits D** through **Q**, respectively, are copies of Jones Walker's fourteen interim fee applications, which contain, among other things, copies of accompanying monthly fee statements.   Each monthly fee statement, in turn, contains

contemporaneously maintained time entries for each timekeeper in increments of tenths (1/10) of an hour and an itemization of expenses.

19.     Finally, attached hereto as **Exhibits R** through **AA**, respectively, are copies of Jones Walker's fee statements for the months of March, April, May, June, July, August, September, October, November, and December 2025.  These monthly fee statements reflect fees and expenses incurred during the Fifteenth Interim Fee Period.

20.     All services rendered by Jones Walker for which compensation is sought pursuant to this Application were performed for, or on behalf of, the Debtor.  Jones Walker has not entered into any agreements to fix fees or to share compensation as prohibited by 18 U.S.C. § 155 and 11 U.S.C. § 504.

## HOURLY BILLING RATES

21.     Jones Walker agreed to charge discounted hourly rates and voluntarily capped its rates for this Chapter 11 Case at $490.00.  Additionally, although Jones Walker annually reexamines and adjusts rates of professionals and paraprofessionals based on increases in seniority and changes in experience, expertise, and status, Jones Walker did not request rate increases for the vast majority of timekeepers staffed to this matter.

22.     As set forth below, the Debtor agreed to an incremental increase, effective June 1, 2023, in the hourly rates of only four (4) Jones Walker professionals who consistently expend substantial time working on this Chapter 11 Case.

| Professional | Original Rate | Revised Rate (Effective June 1, 2023) |
|---|---|---|
| Mark A. Mintz | $400.00 | $490.00 |
| Edward D. Wegmann | $300.00 | $400.00 |
| Samantha A. Oppenheim | $250.00 | $300.00 |
| Caroline M. Lee (f/k/a Caroline V. McCaffrey) | $250.00 | $300.00 |

9

23.     The Debtor also agreed to a rate increase from $250.00 to $400.00 for Allison B. Kingsmill, effective January 1, 2023, in connection with her promotion from "Associate" to "Partner."

## FEE REDUCTIONS

24.     As previously stated, the statistics provided in this Application do not reflect the $60,000.00 reduction in fees pursuant to the First Interim Fee Order.

25.     Additionally, in an exercise of its billing judgment, Jones Walker is voluntarily reducing its request for compensation in this Application by not charging for timekeepers who billed fewer than 50.0 hours during the Final Fee Period.  This billing decision reduces the number of timekeepers and the amount of fees requested for the Fifteenth Interim Fee Period and the Final Fee Period as follows:

| Period | Reduction in Number of Timekeepers: | Reduction in Amount of Fees Requested: |
|---|---|---|
| Fifteenth Interim Fee Period | 25 | $50,856.00 |
| Final Fee Period | 68 | $254,842.50 |

Although these voluntary reductions are not reflected in the statistics set forth in this Application, the timekeepers billing fewer than 50.0 hours during the Final Fee Period are shaded blue on Exhibits A and B.

## SUMMARY OF SERVICES RENDERED BY JONES WALKER

26.     As reflected on Exhibit B, during the Final Fee Period, Jones Walker professionals and paraprofessionals billed 50,996.0 hours for services rendered on behalf of the Debtor to twenty (20) distinct project categories.[6]

---

[6] These statistics do not reflect the $60,000.00 reduction in fees pursuant to the First Interim Fee Order or the voluntary fee reduction of $254,842.50.

#110929577v2

27.     The following discussion highlights certain categories in which significant services were rendered to the Debtor during the Final Fee Period and identifies some of the issues that Jones Walker was required to address.  This summary is not intended to be an exhaustive description of the work performed.  Narratives detailing the day-to-day services provided by Jones Walker are located within Exhibits D-AA.

     a.   **Asset Analysis and Recovery – Project Code B120.**
        **Hours: 416.9; Fees: $143,979.00**

28.     This category includes efforts undertaken by Jones Walker to assist with the investigation of assets and other potential sources of recovery for the estate.  During the Final Fee Period, Jones Walker analyzed, among other things, the availability of insurance coverage and potential sources of recovery from other chapter 11 cases.

     b.   **Asset Disposition – Project Code B130.**
        **Hours: 1,427.5; Fees: $435,397.00**

29.     Throughout the Chapter 11 Case, Jones Walker counseled the Debtor on a variety of significant immovable property sales having aggregate net sale proceeds of $19,188,585, including: (1) 1000 Howard Ave. and Oretha Castle Haley Blvd., New Orleans, LA, with net sale proceeds of $7,967,675; (2) 4119 St. Elizabeth Dr., Kenner, LA, with net sale proceeds of $1,810,000; (3) a parcel of real property located in New Orleans East, with net sale proceeds of $63,450; (4) a dedication of a sewer servitude located on Westbank Expressway, Marrero, LA, in exchange for $20,475; (5) the St. Jude Community Center in New Orleans, LA, with net sale proceeds of $2,089,390; (6) 3017-3019 S. Carrollton Ave., New Orleans, LA, with net sale proceeds of $366,600; (7) 3003-3009 S. Carrollton Ave., New Orleans, LA, with net sale proceeds of $807,485; (8) 1941 Dauphine St., New Orleans, LA, with net sale proceeds of $1,043,560; (9) 2908 S. Carrollton Ave., New Orleans, LA, with net sale proceeds of $711,350; (10) 69033

11

Riverbend Dr., Covington, LA, with net sale proceeds of $458,600; and (11) the Hope Haven property, consisting of a portion of Lot 6A1, Fazande Tract, in Marrero, LA, with net sale proceeds of $3,850,000.

30.     Each of the foregoing transactions was approved by the Court after Jones Walker drafted an appropriate motion for authority pursuant to § 363 of the Bankruptcy Code.  In addition to drafting and arguing the sale motions, Jones Walker prepared numerous purchase agreements and represented the Debtor in the closings of several sales.  Along the way, Jones Walker also coordinated and participated in regular calls with the Debtor's real estate broker and counsel for the Committees to provide visibility into the real estate disposition process.  The net sale proceeds were held in segregated accounts consistent with the Court's orders approving the sales and were used as part of the $130 million funding for the Joint Plan.

**c. Business Operations – Project Code B210.**
**Hours: 894.3; Fees: $388,067.00**

31.     This category includes issues related to debtor-in-possession operations such as employee, vendor, tenant issues, and other similar problems.  During the Final Fee Period, Jones Walker's professionals advised the Debtor with respect to, among other things, employment matters and credit card, bank account, and post-petition financing issues.

**d. Case Administration – Project Code B110.**
**Hours: 10,877.5; Fees: $3,520,196.00**

32.     The demands of this Chapter 11 Case required Jones Walker to provide extensive administrative services during the case to ensure its successful resolution.  Throughout the Chapter 11 Case, Jones Walker participated in: (a) planning and strategy conferences and coordinated tasks among Jones Walker professionals to ensure efficiency and to avoid duplication of efforts; (b) numerous calls and regularly scheduled meetings with the Debtor's leadership and other Debtor

12

professionals to coordinate with respect to open business and legal issues facing the Debtor; and (c) weekly calls with counsel for the Survivors' Committee and the Commercial Committee to discuss the status of the case and steps for moving forward.  In addition to participating in calls and in-person meetings, Jones Walker's professionals communicated with the foregoing groups via email on a consistent—if not daily—basis.  Jones Walker also regularly communicated with other parties-in-interest regarding a variety of issues and responded to inquiries concerning the Chapter 11 Case on an as-needed basis.

33.     During the pendency of the case, Jones Walker also coordinated the preparation and filing of more than five dozen monthly operating reports.  Among other things, Jones Walker reviewed and finalized schedules compiled by the Debtor's representatives and financial advisors, ensured that confidential information was redacted, and addressed follow-up questions regarding such reports.

34.     Time billed to this category also includes the preparation of notices of agenda for omnibus and other hearings.  During the Chapter 11 Case, Jones Walker drafted countless notices of agenda in accordance with the Complex Case Procedures.

e.   **Claims Administration and Objections – Project Code B310.**
     **Hours: 7,320.2; Fees: $2,300,206.00**

35.     Throughout the Chapter 11 Case, Jones Walker advised the Debtor with respect to various issues concerning abuse and non-abuse claims asserted against the Debtor.  Shortly after the Petition Date, Jones Walker devoted a significant amount of time to developing, prosecuting, and negotiating a bar date order.  In addition to establishing the deadlines by which creditors could submit their claims, the bar date order approved a special proof of claim form tailored to the needs of abuse survivors, a comprehensive confidentiality protocol, and a robust noticing program.

#110929577v2

36.     Jones Walker also reviewed and analyzed abuse and non-abuse proofs of claim filed in the Chapter 11 Case.  Jones Walker supplemented its extensive claims analyses on a rolling basis during the case as hundreds of additional late-filed abuse proofs of claim were submitted.

**f.    Fee/Employment Applications – Project Code B160.**
**Hours: 2,643.3; Fees: $791,207.00**

37.     During the Chapter 11 Case, Jones Walker prepared and filed applications to employ various Debtor professionals, as well as interim applications for allowance of compensation and reimbursement of expenses on behalf of those professionals.  Jones Walker also prepared and submitted to the Professional Fee Notice Parties numerous monthly fee statements for the Debtor's professionals.

38.     The preparation of monthly fee statements included a pro forma review process to comply with the UST Guidelines, the Complex Case Procedures, and the Local Rules, as well as to remove any disclosures that may violate privilege or confidentiality.  The review process was primarily undertaken by an associate, with supervisory review by a partner.

39.     Time billed to this category also includes communications with Debtor representatives to ensure payment of outstanding amounts owed to the retained professionals.

**g.    Fee/Employment Objections – Project Code B170.**
**Hours: 470.3; Fees: $138,929.00**

40.     Throughout the Chapter 11 Case, Jones Walker reviewed other estate professionals' monthly fee statements and interim fee applications and communicated with Debtor representatives regarding the same.  Jones Walker also worked with other estate professionals to be more efficient and cost effective.  In the few instances in which the Debtor's concerns about billing practices could not be resolved by informal means, Jones Walker drafted and filed limited objections to the applicable interim fee applications.

14

**h.  General Bankruptcy Advice/Opinions – Project Code B410.**
   **Hours: 1,090.6; Fees: $320,380.00**

41.     During the Chapter 11 Case, Jones Walker advised the Debtor with respect to general case and mediation strategy.  Jones Walker also attended to issues concerning various pending and contemplated matters, including, but not limited to, a bar date motion, an opposition to a motion to dismiss, an opposition to a motion to remand, and oppositions to motions for relief from stay.  Jones Walker notes that certain time entries classified under this project category are more properly classified elsewhere.

**i.  Other Contested Matters – Project Code B190.**
   **Hours: 15,724.8; Fees: $5,338,636.00**

42.     Throughout the Chapter 11 Case, Jones Walker advised the Debtor with respect to a wide variety of issues that do not fall within any standalone project categories and, therefore, are classified under this category.  Some of the contested matters to which Jones Walker devoted significant time include, but are not limited to: (1) the Survivors' Committee's motion to dismiss the chapter 11 case and subsequent post-trial motion; (2) the Bond Trustee's motion to reconstitute the Survivors' Committee; (3) discovery disputes concerning the Survivors' Committee's Rule 2004 requests; (4) the investigation of a suspected violation of this Court's Protective Order, followed by various appeals to the District Court and the U.S. Court of Appeals for the Fifth Circuit; (5) tolling issues; (6) motions to appoint and extend the appointments of mediators; (7) adversary proceedings commenced by the Survivors' Committee and the Bond Trustee; (8) the Court's Order appointing an expert witness; and (9) numerous 9019 motions concerning settlements of various non-bankruptcy disputes.

43.     With respect to these contested matters, Jones Walker engaged in a variety of tasks in support, including, but not limited to: (a) legal research; (b) drafting of pleadings, motions,

objections, briefs, and other papers to be filed with the courts; and (c) preparing for and attending omnibus hearings, evidentiary hearings, and status conferences.

44.     During the Chapter 11 Case, Jones Walker also advised the Debtor regarding abuse claim litigation and dozens of removed abuse claim lawsuits.  Among other things, Jones Walker successfully opposed a motion to remand and drafted quarterly bankruptcy status reports in two lawsuits.

> **j.    Plan and Disclosure Statement – Project Code B320.**
> **Hours: 9,065.5; Fees: $3,871,684.00**

45.     Throughout the Chapter 11 Case, Jones Walker advised the Debtor with respect to issues relating to a plan of reorganization and disclosure statement.  Shortly after the Petition Date, Jones Walker began analyzing potential plan structures and drafting a proposed plan and disclosure statement.  When ongoing negotiations with key stakeholders failed to produce a global resolution by September 2024, the Debtor and the Survivors' Committee each filed their own plan and disclosure statement.

46.     By May 2025, agreements in principle were reached among the Debtor, the Additional Debtors, the Survivors' Committee, and all but one of the Debtor's insurance carriers. Those terms were memorialized in the first iteration of the Joint Plan that was filed in July 2025. Jones Walker played a commanding role in negotiating, drafting, revising, and filing various iterations of the Joint Plan, as well as its extensive exhibits and supplements.  Exhibits to the Joint Plan included, among other things, unprecedented child-protection protocols that were heavily negotiated with the Survivors' Committee over the course of several years.  Jones Walker also assisted with preparing an insurance settlement motion and its accompanying settlement agreements and proposed orders.

16

47. In addition, Jones Walker advised the Debtor with respect to the Joint Disclosure Statement and its voluminous exhibits. In connection with that process, Jones Walker also drafted solicitation and voting procedures, voting ballots, and a motion requesting approval of such materials.

48. With respect to confirmation, Jones Walker prepared the joint pretrial order, the plan proponents' witness and exhibit list and exhibits, an extensive brief in support of confirmation, and a proposed confirmation order. Many of these documents required input from various parties in interest, and Jones Walker played an instrumental role in driving that process forward.

49. Time billed to this category also includes, among other things, preparing for and attending numerous mediation sessions, the disclosure statement hearing, and the nine-day confirmation hearing. Finally, following entry of the Confirmation Order, Jones Walker spent time addressing issues related to consummating, effectuating, and implementing the Joint Plan.

    **k.**   **Relief from Stay/Adequate Protection Proceedings – Project Code B140. Hours: 702.2; Fees: $216,711.00**

50. Throughout the Chapter 11 Case, Jones Walker advised the Debtor with respect to issues concerning the automatic stay. This category consists of time spent, among other things, conducting legal research, drafting memoranda, and preparing oppositions to motions for relief from stay filed by two abuse survivors and several non-abuse personal injury tort claimants.

    **l.**   **Other Project Categories.**

51. During the Chapter 11 Case, Jones Walker devoted minimal time to each of the following project categories:

**Assumption/Rejection of Leases and Contracts – Project Code B185.**
Hours: 17.1; Fees: $4,674.00

17

**Avoidance Action Analysis – Project Code B180.**
Hours: 0.2; Fees: $98.00

**Board of Directors Matters – Project Code B260.**
Hours: 1.9; Fees: $931.00

**Employee Benefits/Pensions – Project Code B220.**
Hours: 80.7; Fees: $31,782.00

**Financing/Cash Collections – Project Code B230.**
Hours: 20.2; Fees: $8,971.00

**Meetings of and Communications with Creditors – Project Code B150.**
Hours: 6.9; Fees: $3,066.00

**Other – Project Code B430.**
Hours: 3.1; Fees: $775.00

**Real Estate – Project Code B250.**
Hours: 210.5; Fees: $79,931.00

**Restructurings – Project Code B420.**
Hours: 22.3; Fees: $9,847.00

## <u>EXPENSES INCURRED BY JONES WALKER</u>

52.     Section 330 of the Bankruptcy Code authorizes "reimbursement for actual, necessary expenses" incurred by professionals employed in a chapter 11 case.  11 U.S.C. § 330(a)(1)(B).  Accordingly, Jones Walker seeks interim allowance of expenses incurred in connection with services rendered to the Debtor during the Fifteenth Interim Fee Period in the amount of $104,420.07.  Additionally, Jones Walker seeks final allowance of expenses incurred in connection with services rendered to the Debtor during the Final Fee Period in the amount of $533,736.99.

53.     Jones Walker made a conscious, diligent effort to minimize its expenses in the Chapter 11 Case.  The expenses incurred in rendering professional services were necessary, reasonable, and justified under the circumstances to serve the Debtor.

#110929577v2

## ALLOWANCE OF COMPENSATION

54.     Jones Walker's professionals and paraprofessionals expended a total of 50,996.0 hours during the Final Fee Period.  The reasonable value of these services is $17,290,624.50.[7]

55.     Section 330 of the Bankruptcy Code authorizes the Court to award professional persons employed pursuant to Bankruptcy Code § 327 reasonable compensation for actual and necessary services rendered and reimbursement for actual and necessary expenses incurred.  *See* 11 U.S.C. § 330.  With respect to reasonableness of compensation, Bankruptcy Code § 330(a)(3) provides:

> In determining the amount of reasonable compensation to be awarded . . . , the court shall consider the nature, the extent, and the value of such services, taking into account all relevant factors, including—
>
> > **(A)** the time spent on such services;
> > **(B)** the rates charged for such services;
> > **(C)** whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title;
> > **(D)** whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed;
> > **(E)** with respect to a professional person, whether the person is board certified or otherwise has demonstrated skill and experience in the bankruptcy field; and
> > **(F)** whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.

11 U.S.C. § 330(a)(3).

56.     The Fifth Circuit traditionally has used the lodestar method to calculate reasonable attorneys' fees.  *See Combs v. City of Huntington Texas,* 829 F.3d 388, 392 (5th Cir. 2016); *see*

---

[7] This number reflects a reduction of $60,000.00 in fees in accordance with the First Interim Fee Order, as well as a voluntary fee reduction of $254,842.50.

19

*also In re Fender,* 12 F.3d 480, 487 (5th Cir. 1994). The lodestar is derived by multiplying the number of hours an attorney would reasonably spend for the same type of work by the prevailing hourly rate in the community. *See Shipes v. Trinity Indus.*, 987 F.2d 311, 319 (5th Cir. 1993). A court then may adjust the lodestar up or down based on the factors contained in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974). *See Am. Benefit Life Ins. Co. v. Braddock (In re First Colonial Corp. of Am.)*, 544 F.2d 1291, 1298 (5th Cir. 1977) (applying the *Johnson* factors in the bankruptcy context). The *Johnson* factors include: (1) time and labor required; (2) the novelty and difficulty of the questions involved; (3) the skill required to perform the professional services properly; (4) the preclusion of other employment by the professional due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation and ability of the professionals; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *See Johnson*, 488 F.2d at 717-19; *see also In re ASARCO LLC*, No. 05-21207, 2011 WL 2975691, at *7 (Bankr. S.D. Tex. July 20, 2011) (applying the *Johnson* factors).

57. In accordance with the factors enumerated in § 330 of the Bankruptcy Code, Jones Walker respectfully submits that the amount requested is fair and reasonable given (a) the complexity of this Chapter 11 Case, (b) the time expended, (c) the nature and extent of the services rendered, (d) the value of such services, and (e) the costs of comparable services for non-bankruptcy cases.

58. With respect to the application of the *Johnson* factors, the professional services rendered by Jones Walker during the Final Fee Period required a high degree of professional competence and expertise. Jones Walker submits that the services rendered to the Debtor were

20

performed efficiently and effectively, and that the results obtained have provided tangible, identifiable, and material benefits to all stakeholders in connection with this Chapter 11 Case. After taking into consideration the time and labor expended, the nature and extent of the representation, and the results obtained, Jones Walker respectfully submits that the allowance requested herein is reasonable and should be approved.

a. **The Time and Labor Required.**

59.     As stated above, Jones Walker's professionals expended 50,996.0 hours during the Final Fee Period in representing the Debtor.  Although Jones Walker has decided not to charge the estate for timekeepers who billed fewer than 50.0 hours during the Final Fee Period, Jones Walker submits that all time spent was necessary and appropriate for the representation of the Debtor in this Chapter 11 Case.  This is especially true considering the nature and urgency of the issues and tasks that arose in this Chapter 11 Case, including, among other things, the time and skill required to respond to various matters on an expedited basis or otherwise compressed timeframe.

60.     Jones Walker's representation of the Debtor required it to balance the need to provide quality services with the need to act quickly and to represent the Debtor in an effective, efficient, and timely manner.  Jones Walker submits that the hours spent were reasonable given the size and complexity of the case, as well as the significant—and often urgent—issues raised.

61.     Jones Walker also submits that diligent efforts were made to avoid duplication of work.  Generally, where services of more than one professional were provided, it occurred for one of the following reasons: (a) supervision by a senior attorney of a junior attorney or paralegal so that tasks could be performed by professionals at lower billing rates; or (b) internal conferences and meetings among attorneys with different responsibilities and expertise to discuss global case strategy and to disseminate information, assign tasks, and coordinate efforts.

21

**b.** **The Novelty and Difficulty of the Questions Involved.**

62.     This Chapter 11 Case is designated as a "complex" case and involves a significant number of complex issues in the areas of restructuring, finance, real estate, tax, insurance coverage, and tort law.  *See Order Granting Complex Chapter 11 Bankruptcy Case Treatment* [ECF No. 18].  As such, Jones Walker's services to the Debtor involved intricate, novel, and difficult questions.

**c.** **The Skill Required to Perform the Professional Services Properly.**

63.     Jones Walker believes that its recognized expertise has facilitated the resolution of this Chapter 11 Case and benefited the Debtor's estate.  Due to the nature and complexity of the legal issues presented, Jones Walker was required to exhibit a high degree of legal skill.  Additionally, Jones Walker's strong working relationship with various interested parties enabled Jones Walker to work with such professionals towards resolution of many salient issues.

**d.** **The Preclusion of Other Employment by the Professional Due to Acceptance of the Case.**

64.     Given the size of the firm, Jones Walker's representation of the Debtor did not preclude its acceptance of new clients.  The time demands and scale of the representation did, however, impact Jones Walker's ability to staff certain professionals on new bankruptcy engagements.

**e.** **The Customary Fee.**

65.     The rates charged by the Jones Walker's professionals in this Chapter 11 Case are similar to the rates charged by Jones Walker in connection with non-bankruptcy work.  However, the professional fees sought herein are based upon Jones Walker's discounted hourly rates for services of this kind.

66.     Jones Walker respectfully submits that the professional fees sought herein are not unusual given the magnitude and complexity of this case and the time expended in representing

22

the Debtor.  Such fees also are commensurate with the fees that Jones Walker has been awarded in other cases and with the professional fees charged by other attorneys of comparable experience.

### f.   **Whether the Fee is Fixed or Contingent.**

67.     Pursuant to Bankruptcy Code §§ 330 and 331, all fees sought by professionals employed under Bankruptcy Code § 327 are based on its regular hourly rates, discounted as set forth herein and in the Retention Application and subject in all respects to this Court's final approval.  Jones Walker has not requested any contingent fee in this Chapter 11 Case.

### g.   **Time Limitations Imposed by the Client or the Circumstances.**

68.     As stated above, the unique circumstances of this Chapter 11 Case often required Jones Walker to respond to matters on an expedited basis or otherwise compressed timeframe. The bankruptcy was mired with complex legal disputes since the Petition Date.

### h.   **The Amount Involved and the Results Obtained.**

69.     Jones Walker submits that the fees requested in this Application are reasonable and appropriate considering the results obtained on behalf of the Debtor.  As previously stated, Jones Walker guided the Debtor through a successful restructuring process that culminated in a value-maximizing, nearly consensual plan of reorganization containing unprecedented child-protection protocols.  The total fees Jones Walker seeks to approve in this Application are commensurate with the issues in this Chapter 11 Case.

### i.   **The Experience, Reputation, and Ability of the Professionals.**

70.     Jones Walker believes and respectfully submits that its attorneys are highly regarded as experts in the areas of bankruptcy, litigation, and corporate matters, among others. Jones Walker's attorneys, over many years, have appeared in bankruptcy courts throughout the United States providing legal representation to trustees, debtors, secured creditors, and unsecured

#110929577v2

creditors.  Further, Jones Walker has a sophisticated bankruptcy and restructuring practice and is playing or has played a major role representing debtors in other cases.

71.     Jones Walker's experience enabled it to perform the services described herein competently and expeditiously.  In addition to its restructuring expertise, Jones Walker called upon the expertise of its partners and associates in other practice areas to perform the wide-ranging scope of legal work necessitated by this Chapter 11 Case, including, but not limited to, tax, real estate, corporate, and labor and employment law.

**j.    The Undesirability of the Case.**

72.     This matter was not undesirable for Jones Walker.

**k.    The Nature and Length of the Professional Relationship with the Client.**

73.     Jones Walker was appointed to serve as counsel to the Debtor on June 19, 2020, *nunc pro tunc* to the Petition Date.

**l.    Awards in Similar Cases.**

74.     Jones Walker respectfully submits that the amounts requested are fair and reasonable based on the customary compensation charged by comparably skilled practitioners at Jones Walker and other firms in comparable bankruptcy and non-bankruptcy cases.

**NO PRIOR REQUEST**

75.     Except for the filing of prior interim fee applications and the submission of monthly fee statements, no prior application for the relief requested herein has been made to this or any other court.

**WHEREFORE**, Jones Walker respectfully requests that the Court enter an Order in substantially the same form as the proposed Order attached hereto (i) approving and allowing on a final basis compensation in the amount of $17,290,624.50 for the reasonable and necessary legal

24

services that Jones Walker rendered to the Debtor during the Final Fee Period, and reimbursement of actual and necessary expenses incurred in the amount of $533,736.99; (ii) directing the Reorganized Debtor to pay Jones Walker the remaining unpaid balance of allowed fees and expenses; and (iii) granting such other and further relief as the Court may deem just and proper.

Dated: February 27, 2026                    Respectfully submitted,

/s/ Mark A. Mintz
R. PATRICK VANCE (#13008)
ELIZABETH J. FUTRELL (#05863)
MARK A. MINTZ (#31878)
SAMANTHA A. OPPENHEIM (#38364)
Jones Walker LLP
201 St. Charles Avenue, 51st Floor
New Orleans, LA   70170
Telephone: (504) 582-8000
Facsimile:  (504) 589-8260
Email:  pvance@joneswalker.com
Email:  efutrell@joneswalker.com
Email:  mmintz@joneswalker.com
Email:  soppenheim@joneswalker.com

**ATTORNEYS FOR
THE ROMAN CATHOLIC CHURCH OF
THE ARCHDIOCESE OF NEW ORLEANS**

[*Remainder of page intentionally blank*]

25

## CERTIFICATION OF COMPLIANCE

I, Mark A. Mintz, pursuant to 28 U.S.C. § 1746, hereby declare under penalty of perjury that the following is true and accurate to the best of my knowledge and belief:

(A)     I am a partner with the applicant firm, Jones Walker LLP.

(B)     I personally performed many of the services rendered by Jones Walker LLP as attorney to the Debtor and am familiar with the other work performed on behalf of the Debtor by the professionals at Jones Walker LLP.

(C)     I have reviewed the foregoing Application, and the facts set forth therein are true and correct to the best of my knowledge, information, and belief.  Moreover, I have reviewed Local Rule 2016-1, the Complex Case Procedures, and the UST Guidelines and submit that this Application substantially complies with the same.

Dated: February 27, 2026
New Orleans, Louisiana

*/s/ Mark A. Mintz*
Mark A. Mintz

## CERTIFICATE OF SERVICE

I hereby certify, on February 27, 2026, that a true and correct copy of this Application (a) is being filed through the Court's ECF system, which provides electronic notice to all attorneys registered to receive notice through such system, and (b) is being provided to Donlin Recano & Company, LLC ("**DRC**"), to be served by email or First Class U.S. Mail, postage prepaid, on all other parties requiring service under the Court's *Ex Parte Order Authorizing the Debtor to Limit Notice and Establishing Notice Procedures* [ECF No. 22].  DRC shall file a certificate of service to that effect when service is complete.

*/s/ Mark A. Mintz*
Mark A. Mintz

#110929577v2