# IN THE UNITED STATES BANKRUPTCY COURT
# EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| In re:<br><br>**THE ROMAN CATHOLIC CHURCH OF THE ARCHDIOCESE OF NEW ORLEANS**,<br><br>Debtor.[1] | Case No. 20-10846<br><br>**Chapter 11**<br><br>Complex Case<br><br>Section "A" |

**DECLARATION OF DONALD C. MASSEY AS SETTLEMENT TRUSTEE IN SUPPORT OF MOTION FOR ENTRY OF AN ORDER TO ENFORCE THE TERMS OF THE CONFIRMATION ORDER OF THE SEVENTH AMENDED MODIFIED JOINT CHAPTER 11 PLAN OF REORGANIZATION APPROVING SETTLEMENT AGREEMENT AND POLICY BUY-BACKS WITH UNITED STATES FIDELITY & GUARANTY<br>AND GRANTING RELATED RELIEF**

I, Donald C. Massey, declare under penalty of perjury as follows:

1. I am an attorney, duly admitted and licensed to practice in the State of Louisiana. I am also admitted to practice in the following courts: (i) the Supreme Court of the United States, (ii) the United States Court of Appeals for the Fifth Circuit, (iii) the United States District Courts for the Eastern, Middle, and Western Districts of Louisiana, and (iv) the United States District Court for the District of Colorado. I submit this declaration as Settlement Trustee of the Settlement Trust, in support of the Motion For Entry of an Order to Enforce the Terms of the Confirmation Order of the Seventh Amended Modified Joint Chapter 11 Plan of Reorganization Approving Settlement Agreement and Policy Buybacks with United States Fidelity & Guaranty Company and Granting Related Relief (the "Motion").[2] The testimony contained here is based upon personal

---

[1] The last four digits of the Debtor's federal tax identification number are 8966. The Debtor's principal place of business is located at 7887 Walmsley Ave., New Orleans, LA 70125.

[2] All capitalized terms not otherwise defined in this Declaration have the meanings ascribed to them in the Seventh Amended Modified Joint Chapter 11 Plan of Reorganization for the Roman Catholic Church of the Archdiocese of New Orleans and Additional Debtors, Proposed by the Debtor, the Additional Debtors, and the Official Committee of Unsecured Creditors, Dated as of December 8, 2025 [ECF No. 4762] including the First Amended Plan Supplements [ECF No. 4610] (as may be modified, amended, or supplemented from time-to time hereafter, the "Joint Plan").

1

knowledge unless otherwise indicated to be on information and belief. In accordance with the Joint Plan and the Confirmation Order, I was appointed to serve as the Settlement Trustee of the Settlement Trust.

2. Troutman Pepper Locke and Pachulski Stang Ziehl & Jones jointly represented the Official Committee of Unsecured Creditors ("UCC") in this matter. On the Plan Effective Date I hired the same counsel to represent the Settlement Trust, pursuant to the authority provided in Section 2.1 of the Settlement Trust Agreement.

3. The Settlement Trust Agreement, at Section 1.8, acknowledges that "[T]he transfer of assignment of any information subject to an attorney-client or similar privilege to the Settlement Trustee shall not result in the destruction or waiver of any applicable privileges pertaining thereto." I have spoken with former UCC counsel and now my counsel upon Plan confirmation regarding the USF&G settlement discussions and other relevant information. Below I describe the facts supporting the Settlement Trust entering into the USF&G settlement that is the subject of the Motion. I am not relying upon or imparting any legal advice that is privileged. I am specifically protecting all such privileged information to avoid any waiver of the attorney-client privilege with respect to the Settlement Trustee.

4. I have familiarized myself with the history of the Bankruptcy Case prior to confirmation of the Joint Plan In particular, and in the context of the Motion, I have considered (i) the long history of the settlement negotiations with United States Fidelity & Guaranty Company ("USF&G") regarding their coverage obligations; (ii) the relevant pleadings; (iii) the Joint Plan; (iv) the Settlement Trust Agreement; and (v) the Settling Insurers' Settlement Agreements.

5. In addition, I sought out and had discussions with various state court counsel representing Abuse Claimants, including counsel for the individual members of the UCC and

2

counsel for Certain Abuse Survivors. From these discussions, I learned what these various constituencies thought about litigating with the Debtor and other related parties and with USF&G or settling with USF&G and ending the prospect of future litigation. I learned what issues they felt strongly about and how they felt about them.

6. I also attended the Abuse Claimants' victims' statements made to this Court on December 11, 2025.

7. I understood that these constituencies were all concerned with (i) the potential length of time any litigation with the Diocese and other related parties and USF&G could take; (ii) the uncertainty regarding the outcome of any such litigation; (iii) the cost of any such litigation with USF&G, which cost would reduce Trust assets otherwise available to be distributed to Abuse Claimants; and (iv) the amount of any settlement with USF&G.

8. On information received from counsel for the UCC, I believe that on December 8, 2025, the UCC conducted a vote concerning the settlement terms of a proposed settlement with USF&G, including the settlement amount of $75 million. It is my understanding that the UCC, represented by their counsel at the meeting, voted overwhelmingly in favor of the settlement amount, with the understanding that the remaining terms of any such settlement were still to be documented. Depending on timing and other factors, if necessary, any final agreement would be subject to my review and approval in accordance with the terms of the Settlement Trust.

9. The Settlement Trust Agreement requires a five-member Settlement Trust Advisory Committee (the "STAC"). *See* Trust Agreement at section 7.1. The initial members of the STAC were disclosed to the Bankruptcy Court in connection with confirmation of the Joint Plan. Section 7.3 of the Trust Agreement provides that "[T]he Settlement Trustee shall consult with the Settlement Trust Advisory Committee and seek written approval from the Settlement Trust

3

Advisory Committee before accepting any Insurance Settlement." I complied with Section 7.3 by holding a meeting with the Settlement Advisory Trust. All members were in attendance, as were their counsel. They voted unanimously in favor of the Trust entering into the settlement with USF&G, and I followed the dictates of section 7.3 regarding notice and written approval.

10. It is my belief that it is an appropriate exercise of sound business judgment for the Settlement Trustee on behalf of the Trust to enter into the settlement agreement with USF&G for the reasons provided above, such as uncertainty, delay and cost. In reaching this determination, in addition to my consultation with the STAC, I considered the interests of the Abuse Claimants who are the beneficiaries of the Settlement Trust, and the risk, time and cost of litigation of myriad issues with USF&G. I spoke with counsel for Certain Abuse Survivors about these issues. I also considered the determination by the UCC to accept the proposed settlement amount. I concluded that those with the most at stake, the Abuse Claimants, overwhelmingly supported ending this case with a global resolution of insurance coverage disputes, as well as their own personal litigation.

11. For the reasons stated above, I support the Motion and ask the Court to grant the proposed relief.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Dated this 9th day of March 2026.

_____
DONALD C. MASSEY