**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| IN RE: | ) |
| | ) |
| THE ROMAN CATHOLIC CHURCH OF | ) CASE NO. 20-10846 |
| THE ARCHDIOCESE OF NEW | ) (JOINTLY ADMINISTERED) |
| ORLEANS | ) |
| | ) CHAPTER 11 |
| DEBTOR.[1] | ) COMPLEX CASE |
| | ) |
| | ) SECTION A |

**MOTION TO COMPEL ANSWERS TO INTERROGATORIES AND PRODUCTION OF**
**DOCUMENTS AND FOR OTHER RELIEF**

Troutman Pepper Locke LLP ("Troutman") and Pachulski Stang Ziehl & Jones, LLP

("Pachulski", and together with Troutman, the "Committee Professionals") hereby submit this

*Motion to Compel Answers to Interrogatories and Production of Documents and For Other Relief*

(the "Motion") and respectfully state as follows:

**INTRODUCTION AND SUMMARY OF ARGUMENT**

1.      By asking this Court to deny millions in compensation to the Committee

Professionals, the Archdiocese seeks a multi-million dollar disgorgement of funds already paid to

the Committee Professionals for their many years of work on this case—work that eventually

produced an historic plan of reorganization that successfully concluded one of the longest, and most

contentious catholic diocese bankruptcy cases ever filed in this country. Despite this extraordinary

demand, the Archdiocese believes that it need not respond to basic discovery about what documents

---

[1] On November 13, 2025, the Court entered an Order directing joint administration of the Chapter 11 bankruptcy case of The Roman Catholic Church of The Archdiocese of New Orleans, with 157 cases filed by certain Archdiocesan parishes, suppressed Archdiocesan parishes, and Archdiocesan agencies (collectively, the "Additional Debtors"). [ECF No. 4603]. On December 8, 2025, the Court entered an Order confirming a joint plan of reorganization [ECF No. 4767], and on December 29, 2025, the jointly administered debtors filed a Notice of Occurrence of the Effective Date of that plan [ECF No. 4817]. The Court has entered final decrees and closed the cases filed by the Additional Debtors.

it plans to use to support its fee objections. During a meet-and-confer session regarding the parties' discovery, the Archdiocese's new counsel suggested that they only intend to rely on public pleadings on the docket. If true, then the Archdiocese should provide discovery responses saying that. If not, then the Archdiocese should explain exactly what documents and/or information it intends to use at the hearing set to begin on July 8, 2026 so that the Committee Professionals can prepare for that proceeding. Despite the Archdiocese's claims, the Committee Professionals do not want to know the litigation strategy of the Archdiocese's counsel or wish to use its work product. They want to avoid a trial by ambush of the kind unwelcome in this Court.

2.　　　　Additionally, the Archdiocese also selectively wields the mediation privilege in its refusal to provide discovery regarding the tactics the Archdiocese employed to prolong this Bankruptcy Case. In defending their fees, the Committee Professionals should have the right to present evidence regarding documents, discussions, and negotiations previously subject to the mediation privilege. This Bankruptcy Case lasted nearly six years because the Archdiocese—time and time again—refused to make realistic plan settlement offers or negotiate in good faith while also grossly understating the value of its key assets and ability to pay. That course of conduct must be fair game in evaluating whether the accrued fees of Committee Professionals are reasonable and appropriate. This Court should therefore require the Archdiocese to respond to discovery and should rule that mediation communications are admissible for purposes of the upcoming fee objection hearings.

## **JURISDICTION AND VENUE**

3.　　　　This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 1334. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b).

4.　　　　Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

**FACTUAL BACKGROUND**

5.      On May 1, 2020 (the "Petition Date"), The Roman Catholic Church of the Archdiocese of New Orleans (the "Archdiocese" or the "Reorganized Debtor") filed a voluntary petition under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code") to commence the above-captioned bankruptcy case (the "Bankruptcy Case").

6.      On May 20, 2020, the Office of the United States Trustee for Region 5 (the "U.S. Trustee") appointed the Official Committee of Unsecured Creditors (the "Committee") in the Bankruptcy Case pursuant to section 1102(a)(1) of the Bankruptcy Code [ECF Doc. No. 94].

7.      On September 15, 2021, the Court entered the *Order Granting Joint Motion to Appoint Mediator* [ECF Doc. No. 1058] (the "Mediation Order"), in which United States Bankruptcy Judge Gregg W. Zive was appointed to mediate the Bankruptcy Case. The Mediation Order provided that the mediation would be governed by Section XVI of the Procedures for Complex Chapter 11 Cases in the Eastern District of Louisiana (the "Complex Case Procedures").[2]

8.      On February 27, 2026, Pachulski filed the *Seventeenth and Final Application for Allowance and Payment of Compensation and Reimbursement of Expenses of Pachulski Stang Ziehl & Jones LLP as Co-Counsel for the Official Committee of Unsecured Creditors for the Period May 22, 2020 Through December 26, 2025* [ECF Doc. No. 4895] (the "Pachulski Fee Application").

9.      On February 27, 2026, Troutman filed the *Seventeenth and Final Application of Troutman Pepper Locke LLP as Co-Counsel to the Official Committee of Unsecured Creditors for Allowance of Compensation and Reimbursement of Expenses for the Period from May 22, 2020 Through February 27, 2026* [ECF Doc. No. 4902] (the "Troutman Fee Application", and together with the Pachulski Fee Application, the "Fee Applications").

---

[2] Since the filing of the Mediation Order, the Complex Case Procedures have been amended. Section XVI has been renumbered as Section XVII.

10. On April 22, 2026, the Reorganized Debtor filed the *Debtor's Objection to the Final Fee Applications of Pachulski Stang Ziehl & Jones LLP and Troutman Pepper Locke LLP as Co-Counsel for the Official Committee of Unsecured Creditors* [ECF Doc. No. 5052] (the "Fee Objection"). Both Pachulski and Troutman resolved concerns raised by the US Trustee consensually, and no US Trustee objection was filed to the Fee Applications.

11. On April 29, 2026, the Court entered that certain *Amended Scheduling Order* [ECF Doc. No. 5065], which set certain deadlines for discovery pertaining to the disputes regarding the Fee Applications (the "Amended Scheduling Order").

12. On May 7, 2026, Troutman, Pachulski, and Berkeley Research Group, LLC served the *First Set of Interrogatories, Requests for Admission, and Requests for Production of Documents* (the "Discovery Requests") on the Archdiocese.

13. On May 22, 2026, the Archdiocese served the *Responses and Objections to the Official Committee of Unsecured Creditor's* [sic] *First Set of Interrogatories, Requests for Admission and Requests for Production of Documents to the Roman* [sic] *in Connection with the Debtor's Objections to the Final Fee Applications of Pachulski Stang Ziehl & Jones LLP, Troutman Pepper Locke LLP, and Berkeley Research Group, LLC* (the "Objections").

## **ARGUMENT**

14. This Court should compel the Archdiocese to provide responses to all interrogatories and produce documents responsive[3] to the Discovery Requests because (a) the Archdiocese has not identified any applicable privilege and (b) the Committee Professionals have a substantial need for the prompt production of such documents and communications so that they can prepare for the July

---

[3] Despite the Archdiocese's failure to provide the Objections to the Committee Professionals by the 14-day deadline set by this Court in Para. 4 of the Amended Scheduling Order, the Committee Professionals do not request relief regarding their Requests for Admission.

8, 2026 hearing on the Objections.

## I. The Reorganized Debtor Has Failed to Identify Any Applicable Privilege.

15. The Reorganized Debtor relies heavily on "mediation privilege" throughout its Objections, going so far as to mention it twelve (12) times. But this privilege is not absolute, and it is up to the Court to determine if it will apply under these circumstances.

16. As set forth in the Objections, the Archdiocese claims that certain information and documents are protected from disclosure by mediation privilege. *See, e.g.*, Objections, Obj. to Def. No. 22 ("The Archdiocese objects to . . . disclosure of matters protected by mediation privilege under La. R.S. 9:4112, by Federal Rule of Evidence 408, and by the confidentiality provisions of General Order 2019-4 § XVII(F).").

17. Despite the Archdiocese's assertions to the contrary, the confidentiality provision of the Complex Case Procedures is not absolute. Section XVIII(B) provides that the Court "may depart from these [Complex Case Procedures] to meet the specific needs of any case before it." Complex Case Procedures, § XVIII(B). Under the circumstances presented by the Archdiocese's Fee Objection, this Court should depart from the confidentiality provision in the Complex Case Procedures. In particular, courts typically do not allow parties to invoke the mediation privilege when they wish to use it as a sword, as the Archdiocese does here, rather than as a shield. *See, e.g., Sprague v. Kroger Texas, L.P.*, 4:17-cv-00874-O, 2018 WL 6599578, at *2 (N.D. Tex. Dec. 15, 2018) (agreeing plaintiff may not "testify about *her version* of conversations with [mediator] while simultaneously invoking confidentiality to prevent the only other party to the conversation from testifying") (emphasis in original). The Fifth Circuit Court of Appeals agreed, writing that "when a party entitled to claim the [] privilege uses confidential information against his adversary (the sword), he implicitly waives its use protectively (the shield) under that privilege." *Willy v.*

5

*Administrative Review Bd.*, 423 F.3d 483, 497 (5th Cir. 2005) (noting "case law amply demonstrates the narrower proposition that . . . privilege only prohibits a party from *simultaneously* using confidential information as both a shield and a sword").

18.     Here, the Archdiocese filed the Fee Objection complaining, in part, about the substantial time the Committee Professionals spent preparing for and attending mediation in this case. (*See* Doc. No. 5052 at 18-20). The Archdiocese further objects to the overall expense of the case and seeks broad, categorical expense reductions. Those objections put the mediation squarely at issue (the "sword"), and yet, the Archdiocese argues that *its* conduct at mediation should be exempt from discovery (the "shield"). This Court should reject this stratagem. *Willy*, 423 F.3d at 497. It should allow both discovery into and presentation of evidence regarding all mediation negotiations, discussions, and related activity. While the mediation privilege encourages frank discussion and negotiation, the dispute between the Archdiocese and the Committee Professionals occasioned by the Fee Objection does not present the situation in which one party seeks to use mediation communications to establish the other's liability. That ship sailed last year after this Court confirmed the Plan and established what is now an approximately $305 million fund for the benefit of survivors. On the contrary, the mediation activity pertains to the legitimacy—and, frankly, the hypocrisy—of the Archdiocese's own Fee Objection.

## II.     The Archdiocese's Objections Hold No Merit.

19.     Spanning 103 pages, the Archdiocese's Objections imposed numerous objections to the Discovery Requests—including no less than twenty (20) pages of objections to the definitions and instructions. The Archdiocese's litigation strategy here is unmistakable: provide no substantive responses to the Discovery Requests and instead bury its opponents in baseless objections. The Committee Professionals maintain that these Objections have no merit and that the Archdiocese

should be required to provide the basic information requested, as described further below.

### A. Objections & Responses to Interrogatories

20.　　While the Committee Professionals will examine the Interrogatories in more detail below, broadly speaking, the Archdiocese refuses to identify the exhibits it may use or the witnesses it may call at the July 2026 hearing. The Archdiocese's new counsel believes that its exhibit and witness list—filed on the eve of the hearing—should suffice. However, parties are entitled to discovery precisely to avoid this type of trial by ambush. The Archdiocese must identify <u>now</u> what documents and witnesses it may use to allow the Committee Professionals to examine those documents and witnesses and prepare for the hearing. Its refusal to do so is inexcusable.

21.　　In addition, the Archdiocese did not provide a written verification of its answers to the Interrogatories from an officer or agent of the Archdiocese, as required by Rule 33(b)(1)(B) of the Federal Rules of Civil Procedure, as made applicable to this proceeding by Rules 9014 and 7033 of the Federal Rules of Bankruptcy Procedure. FED. R. CIV. P. 33, FED. R. BANKR. P. 7033, 9014. Verification is essential to the integrity of the discovery responses. The Archdiocese should be required to provide this sworn verification to the Committee Professionals as soon as possible.

22.　　**Interrogatory No. 1. "Identify every witness You may call at the Fee Objection Hearing, including for each such witness: (a) full name; (b) present or last known position or title; (c) whether the witness is expected to provide fact and/or expert testimony; and (d) a summary of the subject matter and substance of the testimony You expect the witness to give."**

The Archdiocese objected to Interrogatory No. 1 for "seek[ing] information governed by the Amended Scheduling Order". However, the Committee Professionals have the right to know in advance whom the Archdiocese anticipates calling at the Fee Objection Hearing (as defined in the Discovery Requests) and the nature of each witness's knowledge/testimony. If the Archdiocese's

objection is upheld, the Committee Professionals will have no opportunity to depose the individuals that the Archdiocese plans to call at the Fee Objection Hearing because the July 2 deadline to file final witness and exhibit lists falls after the July 1 discovery-cutoff date. This scenario would not allow the Committee Professionals to adequately prepare for the Fee Objection Hearing.

23. **Interrogatory No. 2. "Identify every exhibit You may use at the Fee Objection Hearing, including for each exhibit: (a) a brief description of the exhibit; (b) the Bates number(s) or other identifying information; and (c) a summary of the purpose for which You intend to use the exhibit.**

The Archdiocese objected to Interrogatory No. 2 for "seek[ing] information governed by the Amended Scheduling Order". Again, the Committee Professionals have the right to know in advance what the Archdiocese may present as an exhibit at the Fee Objection Hearing.

24. **Interrogatory No. 3. "State the factual basis for Your contention on pages 14 and 15 of the Fee Objection that the Committee made a 'willful violation of the protective order,' including for each alleged Protective Order violation: (a) the specific provision(s) of the Protective Order allegedly violated; (b) the date(s) of the alleged violation(s); (c) the identity of all persons involved in or with knowledge of the alleged violation(s); (d) a description of each communication, disclosure, or other act You contend constituted a violation by the Committee; (e) a description identifying all Documents relating to such alleged violation(s); and (f) a description of any harm, prejudice, or other consequences You contend resulted from such alleged violation(s)."**

The Archdiocese objected to Interrogatory No. 3 on three (3) grounds. *First*, the Archdiocese argued that Interrogatory No. 3 contained "six discrete subparts that constitute separate interrogatories". That objection is groundless on its face. Interrogatory No. 3 merely details the type

of information the Committee Professionals are seeking in relation to the alleged Protective Order violations. *Second*, the Archdiocese claimed that subparts (e) and (f) are protected by the attorney work-product doctrine. The Committee Professionals do not understand how the Archdiocese could allege that "willful violation[s] of the protective order" occurred and then claim that attorney work-product shields it from even having to describe those alleged violations. *Third*, the Archdiocese argued that the protective-order proceedings have already been "extensive[ly]" investigated, and thus, Interrogatory No. 3 "is not proportional to the needs of this contested matter". If the Archdiocese believes this to be true, then it is unclear why the Archdiocese even mentioned the alleged violations in its Fee Objection. In sum, this Court should deny all the objections that the Archdiocese lodged in response to Interrogatory No. 3 and require it to answer that Interrogatory completely and without objection or reservation.

25.     **Interrogatory No. 4. "Identify the individual(s) with the Archdiocese and/or Debtor's counsel, any affiliate and/or Additional Debtors who: (a) authorized, approved, recommended, or participated in the decision to file the Fee Objections; and (b) reviewed the filed Fee Objections before they were filed."**

The Archdiocese objected to Interrogatory No. 4 on five (5) grounds. *First*, the Archdiocese argued that Interrogatory No. 4 contained "five discrete subparts that constitute separate interrogatories". Again, this boilerplate objection is untrue. Interrogatory No. 4 merely requests the identities of those persons who were involved in the preparation and filing of the Fee Objections. *Second*, the Archdiocese claimed that Interrogatory No. 4 "is not proportional to the needs of this contested matter". But Interrogatory No. 4 focuses on those individuals involved in the preparation and filing of the *Fee Objection*, which is directly at issue in the *Fee Objection Hearing*. *Third*, the Archdiocese stated that Interrogatory No. 4 is protected by the attorney-client privilege and work-

product doctrine and that identifying who was involved in the decision to file "cannot be separated from the substance of the attorney-client communications by which counsel advised on the merits and strategy of the Fee Objections, and the client's responses to that advice." This argument makes no sense. The Committee Professionals are not requesting attorney-client communications themselves. Rather, they are simply seeking the identities of those persons involved with the Fee Objection so that they can identify who may need to be deposed. *Fourth*, the Archdiocese argued that Interrogatory No. 4 was "impermissibly vague and overbroad" and that the verbs in subpart (a) "are not defined and do not have settled meanings." This argument contradicts the Archdiocese's first objection to this Interrogatory, in which it stated that "[t]hose verbs are not synonyms; each identifies a different category of involvement". *Fifth*, the Archdiocese stated that Interrogatory No. 4 is "misdirected". Frankly, this objection is incomprehensible. The Committee Professionals asked a simple question. Some person (or persons) at the Archdiocese authorized the Fee Objection. Who was it? That the Archdiocese "decline[d]" to provide a straight answer speaks volumes.

26.    **Interrogatory No. 5. "With respect to the 'overstaffed events' category in the Fee Objections, describe in detail: (a) the criteria You used to determine when an event was 'overstaffed' or involved 'spectators'; (b) any analysis You conducted of the staffing and time billed by Debtor's counsel or the Archdiocese's other professionals at the same hearings, mediations, or depositions, including identification of any events at which four or more professionals for the Debtor or its insurers attended or billed time; (c) all facts supporting Your contention that the presence of each additional Committee professional beyond the number You deem 'reasonable' provided no incremental benefit to the estate; and (d) all Documents and Communications reflecting any internal discussion, analysis or concern by You regarding Your own or Your professionals' staffing levels for any hearings, mediations,**

10

**or depositions in the Chapter 11 Case."**

The Archdiocese objected to Interrogatory No. 5 on five (5) grounds. *First*, the Archdiocese once again argued that Interrogatory No. 5 contained "four discrete subparts that constitute separate interrogatories". And again, the Committee Professionals maintain that Interrogatory No. 5 merely clarifies which details the Committee Professionals sought from the Archdiocese with regard to its "overstaffed events" objection. *Second*, the Archdiocese claimed that subpart (c) of the Interrogatory "manufactures a contention that the Debtor neither made nor was required to make." It is not clear what the Archdiocese meant by this, as it *did* make contentions about overstaffed events in its Fee Objection. The term "overstaffed events" is referenced in the Fee Objection at least five (5) times. *Third* and *fourth*, the Archdiocese argued that subparts (b) and (d) seek attorney work product. But as stated above, privilege cannot act as both sword and shield. If the Archdiocese is going to make these arguments, it must provide context and reasoning for them. *Fifth*, the Archdiocese argues that Interrogatory No. 5 "is not proportional to the needs of the contested matter" and that the Committee Professionals do "not need to depose the methodology itself." Like the rest of its boilerplate objections, this one is meritless. The Committee Professionals are well within their rights to depose the methodology if the Archdiocese utilizes the methodology in its Fee Objection.

27.     **Interrogatory No. 6. "Identify date of and the total value of all consideration offered by the Archdiocese to fund a settlement trust for the benefit of Abuse Claimants in the first settlement offer that the Archdiocese delivered to Mediator Zive after he was appointed as mediator in the Chapter 11 Case on September 15, 2021 [ECF Doc. No. 1058]."**

28.     The Archdiocese objected to Interrogatory No. 6 on four (4) grounds. *First* and *second*, the Archdiocese claimed that the information sought was protected by mediation privilege.

11

As explained above, the Committee Professionals maintain that the Court may depart from the Complex Case Procedures in this situation so that the Archdiocese cannot hide behind the mediation privilege even as it puts the Committee's and the Committee Professionals' judgment and actions during mediation directly at issue. *E.g., Willy*, 423 F.3d at 497. *Third*, the Archdiocese argued Interrogatory No. 6 was not "proportional to the needs of the contested matter". However, the Archdiocese made very few offers during the Bankruptcy Case. In other words, this Interrogatory asks the Archdiocese to identify a mere handful of (inadequate) offers made along with the dates they were delivered. That request is surely proportional for the reasons set forth above. *Fourth*, the Archdiocese stated Interrogatory No. 6 is "directed at categorically inadmissible information". Here again, the Archdiocese—and not the Committee Professionals—put mediation at issue by objecting to fees incurred in connection with the mediation process. The mediation conduct and history of offers and negotiations is directly relevant. Once again, the Archdiocese attempts to use the mediation as both a sword and a shield.

29.      **Interrogatory No. 7. "Identify the date that counsel for the Archdiocese first discussed with any Bond Trustee Professional the possibility that the Archdiocese would enter into the Bond Trustee Settlement Agreement with the Bond Trustee."**

The Archdiocese objected to Interrogatory No. 7 on three (3) grounds. *First*, the Archdiocese once again wheeled out its boilerplate argument that Interrogatory No. 7 was not "proportional to the needs of this contested matter" but acknowledged that the Fee Objection challenged the "Committee's decision to spend hundreds of hours opposing the Bond Trustee's participation in the negotiating process". Suffice it to say, this question is not disproportional to the needs of the case—it asks for **_one (1)_** date in time. *Second*, the Archdiocese argued that the information sought is protected as "settlement negotiations . . . used to prove or disprove the validity

or amount of a disputed claim." The Committee Professionals are not seeking the substance of the Archdiocese's discussions with the Bond Trustee's professionals. Rather, they simply seek the date that certain of the discussions began. *Third*, the Archdiocese maintained that it would identify evidence concerning the Bond Trustee workstream when it files the final witness and exhibit lists for the Fee Objection Hearing. The Committee Professionals reiterate that they should not have to wait until July 2 to receive crucial information ahead of the Fee Objection Hearing.

### B. Objections and Responses to Requests for Production

30. **Request for Production No. 1. "Produce all Documents and Communications identified, described, or referenced in Your responses to the Interrogatories, including any Documents that form the basis of, support, or contradict the facts stated in those responses."**

The Archdiocese objected to Request for Production ("RFP") No. 1 on four (4) grounds. *First*, the Archdiocese argued the RFP No. 1 was "overbroad on its face." This is a *per se*, boilerplate objection with no basis whatsoever. This Court should find that it has been waived. *Second*, the Archdiocese claimed that RFP No. 1 seeks documents that are protected by the attorney work-product doctrine. The Committee Professionals reiterate their comments above regarding privilege. *Third*, the Archdiocese stated that the documents "identified or referenced in [its] interrogatory responses consist almost entirely of court filings on the public docket of this Chapter 11 Case" and should not be re-produced. The Committee Professionals note that if the Archdiocese had proffered more substantive responses to the Interrogatories instead of relying on the sword and shield of privilege, then the Archdiocese would not have had to worry about re-producing court filings on the public docket. The Archdiocese can simply identify which of the 5,148 docket entries it plans to use, and the Committee Professionals could easily find them. *Fourth*, the Archdiocese "incorporate[d] into its objections in response to Request for Production No. 1 for each objection

asserted in response to each underlying Interrogatory." This is another baseless *per se* objection that the Court should find to be waived.

31. **Request for Production No. 3. "Produce all Documents and Communications specifically referenced in the Fee Objections and/or relied upon by You in support of the allegations made in the Fee Objections."**

The Archdiocese objected to RFP No. 3 on four (4) grounds. *First*, the Archdiocese argued that RFP No. 3 was "facially overbroad." This is a *per se* objection that the Court should find to be waived. *Second*, the Archdiocese claimed that RFP No. 3 seeks documents that are protected by the attorney work-product doctrine. The Committee Professionals reiterate their comments above regarding privilege. *Third*, the Archdiocese stated that the documents referenced in the Fee Objection are "part of the public docket of this Chapter 11 Case and are equally accessible to Committee Counsel" and should not be re-produced. However, the Committee Professionals suspect that all documents and communications "relied upon by [the Archdiocese] in support of the allegations made in the Fee Objections" may include documents not available on the public docket. Accordingly, the Archdiocese needs to (1) confirm with verification that there are no non-public documents responsive to this request or (2) produce the non-public documents and communications it intends to use at the Fee Objection Hearing. *Fourth*, the Archdiocese "incorporate[d] the privilege objections asserted in response to each underlying Interrogatory and Admission Request." This is a *per se* objection that the Court should find to be waived.

32. **Request for Production No. 4. "Produce all Documents You may use, rely upon, or refer to as exhibits at the Fee Objection Hearing."**

The Archdiocese objected to RFP No. 4 on four (4) grounds. *First*, the Archdiocese argued that RFP No. 4 seeks information governed by the Amended Scheduling Order. The Committee

14

Professionals reiterate their above comments regarding their need for adequate time to properly examine the documents the Archdiocese intends to use as exhibits at the Fee Objection Hearing. The Amended Scheduling Order sets forth deadlines for certain filings, but parties may always pursue discovery to find information ahead of such deadlines. The Archdiocese should have identified its exhibits weeks ago instead of waiting in the wings and attempting to conduct trial by ambush. And again, if the Archdiocese intends to rely on certain public court filings, it can easily identify them on the docket so that the Committee Professionals can review them. *Second*, the Archdiocese argued that RFP No. 4 was "overbroad on its face." This is a *per se* objection that the Court should find to be waived. Moreover, the request is not overly broad—it is only as broad as the exhibits the Archdiocese itself plans to use. *Third*, the Archdiocese claimed that RFP No. 4 seeks documents that are protected by the attorney work-product doctrine. The Committee Professionals reiterate their above comments regarding privilege. *Fourth*, the Archdiocese stated that the documents it may use as exhibits "will consist *primarily* of court filings on the public docket of this Chapter 11 Case" (emphasis added). Since the documents the Archdiocese plans to utilize are not *solely* or *exclusively* public court filings, the Archdiocese must make available the non-public documents it intends to use as exhibits.

33.     **Request for Production No. 6. "Produce all Documents and Communications concerning any allegation or contention by You that Committee Counsel's or BRG's actions: (a) delayed confirmation of the Joint Plan; (b) impeded settlement or mediation; or (c) unnecessarily increased administrative costs."**

The Archdiocese objected to RFP No. 6 on four (4) grounds. *First*, the Archdiocese claimed that RFP No. 6 sought documents protected by various privileges. The Committee Professionals refer to their comments above regarding privilege. *Second* and *third*, the Archdiocese asserted the

15

RFP No. 6 was "overbroad, unduly burdensome," and "impermissibly vague and ambiguous." Here again, we have groundless, boilerplate objections that the Court should find to be waived. *Fourth*, the Archdiocese stated that factual basis for the contentions referenced in RFP No. 4 "is set forth on the public record" and should not be duplicated. However, the Committee Professionals again do not understand how all documents and communications that reference the above contentions could be available on the public docket in the Bankruptcy Case. That statement simply has no basis. Accordingly, the Archdiocese needs to produce the non-public documents and communications.

## CONCLUSION

34.     For the foregoing reasons, the Committee Professionals respectfully request that the Court: (A) grant this Motion and require that the Archdiocese (i) answer the Interrogatories identified above fully and without reservation or further objection and provide verifications in connection with the Interrogatories and (ii) produce any and all documents responsive to the Requests for Production identified above within five (5) calendar days of the entry of the Order on this Motion; (B) pursuant to Complex Case Procedure XVIII(B), grant amendment of or departure from the Mediation Order to allow the Committee Professionals to present documents, correspondence, and offers related to the mediation process to defend against the Fee Objections; and (C) grant the Committee Professionals such other relief as the Court deems to be just and proper.

Dated:  June 16, 2026

Respectfully submitted,

By: /s/ Bradley C. Knapp
Bradley C. Knapp (La #35867)
Omer F. Kuebel, III (La #21682)
**TROUTMAN PEPPER LOCKE LLP**
601 Poydras Street, Suite 2660
New Orleans, Louisiana 70130-6036
Telephone: (504) 558-5111
Facsimile: (504) 558-5200
Email: brad.knapp@troutman.com
        rick.kuebel@troutman.com


W. Steven Bryant (*admitted pro hac vice*)
Texas Bar. No. 24027413
Federal I.D. No.  32913
Troutman Pepper Locke LLP
300 Colorado Street, Ste. 2100
Austin, Texas 78701
Telephone: (512) 305-4726
Facsimile: (512) 305-4800
Email: steve.bryant@troutman.com

-**and**-

/s/ Andrew W. Caine
**PACHULSKI STANG ZIEHL & JONES LLP**
James I. Stang (CA Bar No. 94435)
Andrew W. Caine (CA Bar No. 110345)
10100 Santa Monica Blvd., Suite 1300
Los Angeles, CA 90067
Telephone: (310) 277-6910
Facsimile: (310) 201-0760
Email: jstang@pszjlaw.com
        acaine@pszjlaw.com

*Former Co-Counsel to the Official Committee of Unsecured Creditors*

17

## CERTIFICATE OF CONFERENCE

I, W. Steven Bryant, hereby certify that on June 2, 2026, Andrew Caine, Omer F. "Rick" Kuebel, and I conferred with Land Murphy and Harris Blum, counsel for the Archdiocese regarding the Archdiocese's responses and objections to the Committee Professionals' discovery requests. The Archdiocese and the Committee Professionals did not reach any resolution on their dispute over the discovery requests despite the conference.

*/s/ W. Steven Bryant*
W. Steven Bryant

## CERTIFICATE OF SERVICE

I hereby caused a true and correct copy of the foregoing *Motion* to be served on June 16, 2026, upon all parties by electronic case filing for those parties receiving notice via the Court's Electronic Case Filing system and by U.S. Mail on the all other parties requiring service under the Special Notice List, as set forth in the Court's May 1, 2020 *Ex Parte Order Authorizing the Debtor to Limit Notice and Establishing Notice Procedures* [Doc. No. 22] via first-class United States mail, postage prepaid on June 17, 2026.

*/s/ W. Steven Bryant*
W. Steven Bryant