**UNITED STATES BANKRUPTCY COURT**

**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **IN RE:**<br><br>**THE ROMAN CATHOLIC CHURCH OF THE ARCHDIOCESE OF NEW ORLEANS,**<br>**DEBTOR** | **CASE NO.: 20-10846**<br><br>**SECTION "A"**<br><br>**CHAPTER 11** |

**RESPONSE TO THE SETTLEMENT TRUSTEE'S SECOND STATUS REPORT**

The Roman Catholic Church of the Archdiocese of New Orleans (the "Archdiocese") submits this Response to the Court related to the Second Status Report [Doc. 5338] of Donald C. Massey, as Settlement Trustee (the "Trustee") to address the Trustee's claims regarding the Non-Monetary Plan Provisions ("NMPP") [Doc 4762-7]. Much raised in this Trustee Second Report was not brought to the attention of the Archdiocese as a concern until this report was publicly filed. Those in the ministry of protecting children are flabbergasted that the Trustee would not immediately bring concerns about child safety to the Archdiocese so that such concerns can be immediately addressed. We implore the Trustee to immediately provide specific safety and non-compliance issues he currently has and may learn of through his work directly to the Archdiocese so that children and vulnerable adults can be protected.

As a general matter, the Trustee's claims either mischaracterize the Archdiocese's actions or seek to renegotiate and change the written terms of the NMPP that was voted for by all but two Survivors and approved by this Court. The Trustee may be entitled to certain information to ensure compliance with the NMPP, but he cannot require alterations, additions, or changes to the court-approved NMPP as written. The Archdiocese has invested significant time and resources into

complying with and, in many instances, exceeding the requirements of the NMPP. The Archdiocese is proud of its status and success in the implementation of and compliance with these provisions. Not only has the Archdiocese met all deadlines to date contained in the NMPP, it remains on track to meet all future deadlines, details of which are spelled out in its Semi-Annual Compliance Report, publicly available, properly circulated, and filed with the Court [Doc. 5196-1]. The Archdiocese now submits this Response to address claims made by the Trustee related to the Archdiocese's compliance with the NMPP.

**A. Child Protection Consultant**

As an initial matter, the Archdiocese notes that the Settlement Trustee indicated that he "is satisfied with the qualifications and credentials of the UP Institute and its team." Doc. 5338, ¶ 71. The Archdiocese disagrees with the Trustee's characterization that he "struggled at length to obtain documentation related to the terms of the CPC's engagement." Doc. 5338, ¶ 72. Counsel for the Trustee first contacted counsel for the Archdiocese requesting information about such documentation by email on June 30, 2026. Counsel for the Archdiocese responded on July 1, 2026, to this request with some initial information about the requested documentation and also proposed a call to further discuss any issues. Counsel for the Trustee and the Archdiocese discussed the issues in a call on July 2, 2026, during which call the Trustee requested all agreements between the Archdiocese and the CPC. At no point did the Archdiocese "assert[] such engagement agreement and related confidentiality agreements were both protected from disclosure to the Settlement Trustee." *See* Doc. 5338, ¶ 72. To the contrary, counsel for the Archdiocese indicated that he would discuss the request with the Archdiocese. On August 4, 2026, the Archdiocese sent all of the requested documentation to the Trustee.

Although the Trustee claims that the terms of the Archdiocese's agreements with the CPC were inconsistent with the NMPP, this is not the case. NMPP Section C(1) states that "Subject to the Child Protection Consultant's entering into a form of confidentiality agreement mutually acceptable to the Creditors' Committee and RCCANO, during the Child Protection Consultant's Retention Period, the Child Protection Consultant will have full access to the RCCANO Parties' records, policies, and procedures…" Doc. 4762-7. Although the Creditors' Committee was no longer in existence at the time the Archdiocese entered into confidentiality agreements with the CPC, the Archdiocese ensured that it used the Court's Permitted Party Agreement that all parties to the bankruptcy, including the Creditors' Committee, had agreed to and signed onto, in order to receive confidential information during the pendency of the bankruptcy. This ensured that the CPC entered into a form of confidentiality agreement that had been acceptable to the Creditors' Committee.

Additionally, out of an abundance of caution and due to a desire to be both more freely communicative with the CPC while simultaneously protecting Survivors' information, the Archdiocese entered into an additional confidentiality agreement with the CPC, which was based on the language of the Confidentiality and Non-Disclosure Agreement between the Archdiocese, the Creditors' Committee, and the Board of Supervisors of Louisiana State University and Agricultural and Mechanical College, which was incorporated as part of the Public Service Agreement, to which the Settlement Trustee was a party. Both the LSU Public Service Agreement and that Confidentiality and Non-Disclosure Agreement were attached as Appendix A (Archivist Agreement) to the NMPP. Moreover, the language of this secondary confidentiality agreement was nearly identical to the language of a confidentiality agreement the Archdiocese proposed to enter into with the Trustee related to a separate issue, and the Trustee agreed to the terms of that

separate agreement. The agreement specifically provides that "nothing in this agreement is intended to conflict with or obstruct the requirements of the Archdiocese's Non-Monetary Plan Provisions." Finally, since sending these agreements to the Trustee, the Archdiocese has not received any communications from the Trustee of what "issues…require discussion" concerning these agreements.

The confidentiality provisions in these agreements are not intended to restrict the CPC's work in any way, which is not controlled or limited by the Archdiocese. Rather, confidentiality is designed to protect the identities and information of Survivors who filed claims in the Chapter 11 and Survivors who have chosen not to participate in the Chapter 11, and to protect the confidentiality of information as required by the Court. The Archdiocese has made all records available to the CPC and has offered an office to the CPC for in-person review and interviews. The CPC has interviewed all Archdiocesan employees requested and has also visited the Victims Assistance Coordinator's offices. The Archdiocese has implemented several initiatives suggested by the CPC to-date including initiatives for Survivors to feel welcomed back to the Church, training on trauma-informed responses by personnel to survivors, and recommendations related to the CPC's review of the Archdiocese's policies. Numerous persons at and on behalf of the Archdiocese, including undersigned counsel, are in communication with the CPC to ensure that any questions are responded to, any requested documents are provided, and any other assistance is provided.

More than a month ago, the Archdiocese communicated to the Trustee that the CPC had advised that it did not have any outstanding requests for additional information or records from the Archdiocse at that time. Since that time, the Archdiocese has not received any further communications from the Trustee regarding the CPC. The Archdiocese is complying with all

aspects of the NMPP related to the CPC and continues to work well with the CPC related to its ongoing work. The Archdiocese looks forward to reviewing the CPC's report when it is prepared.

**B. Archdiocese-Appointed Positions**

The Archdiocese has full faith in the leadership of its child protection team. The Archdiocese continues to comply with the requirements of the NMPP related to the child-protection policies set forth therein. Required reports are shared with those specifically required by the NMPP to receive those reports. The Trustee and his attorneys have met with the Youth Protection Advisor and the Victims Assistance Coordinator, and have met twice with the Youth Protection Executive, and – to the Archdiocese's knowledge – have expressed satisfaction with their qualifications and demeanors in their approaches to survivors, reporting, and child protection initiatives. Since those meetings, which took place through June and July, the Archdiocese has not received any communications or complaints from the Trustee related to the YPE, YPA, or VAC. Nor had the Archdiocese received any comments prior to the Trustee's Report regarding the Archdiocese's Vicar General (and does not see any specific complaints in the Report either); but, in any case, the position of Vicar General is a canonical appointment.

**C. IRB Activity**

The Archdiocese will specifically address the Trustee's Motion to Compel disclosures related to the IRB in its response to that Motion.

The Archdiocese categorically denies that it has "flatly refuse[d]" to conduct IRB investigations of alleged perpetrators, which is plainly false, as noted in various ways below. *See* Doc 5338, ¶ 79. Moreover, it is simply false that the Archdiocese is "continu[ing] to suppress identities of credibly accused abusers." *See* Doc 5338, ¶ 79.

Regarding the Trustee's request seeking an investigation of deceased clergy members who are not listed on the Archdiocese's Report Regarding Clergy Abuse (see Doc. 5338, ¶ 77), the Archdiocese notes that the NMPP were specifically written and negotiated to protect Survivors of Child Sexual Abuse from traumatization by unsolicited contact from the Archdiocese. The Creditors' Committee specifically agreed to and an almost unanimous vote of support of Survivors confirmed these provisions. The NMPP provide a specific mechanism for a Survivor to request a formal investigation of his or her claim.

Under Section C(2), "upon the written request of a Child Sexual Abuse Claimant to RCCANO's Vicar General, RCCANO will retain an investigator to examine such Claimant's Child Sexual Abuse Claim…" along with certain information, after which "the investigator shall report to the IRB and the IRB will make a recommendation to the Archbishop as to whether the Clergy should be added to the Report Regarding Clergy Abuse." The Archdiocese welcomes any such requests from Survivors and any information directly from Survivors that would allow for full, formal investigations. Indeed, that process is already occurring, with at least one Survivor so far having submitted a written request and an investigation pursuant to that request currently underway. It is not fair or appropriate for the Trustee to insist that the Archdiocese institute investigations and contact Survivors unsolicited based on third-party complaints when the Survivors themselves have negotiated, voted for, and approved a specific process for their claims to be investigated and for them to be contacted in connection with such investigations.

Moreover, the Trustee is not only seeking to re-write the terms of the NMPP related to investigating Survivor claims but also making inaccurate claims to the Court. All claims received in the bankruptcy identifying a living Archdiocesan clergy member have already been presented to the IRB for review or are currently under investigation for future presentation to the IRB. This

was reported directly to the Trustee in the Archdiocese's June 2026 Semi-Annual Report, which the Archdiocese also publicly published on its website and filed with the Court. *See* Doc. 5196-1 at p. 5. The Semi-Annual Report specifically delineated the actions taken regarding these claims. The Archdiocese has not received any communications from the Trustee since the Semi-Annual Report on this issue.

Additionally, Archbishop Checchio has instructed that all claims received in the bankruptcy identifying deceased Archdiocesan clergy members will be submitted to the IRB for review and recommendations for action by the Archbishop, whether to be added to the Report Regarding Clergy Abuse or to await further investigation pending a written request by a Survivor. That process is underway.

**D. Law Enforcement**

The Archdiocese strongly rejects any assertion that "it is further gatekeeping law enforcement reporting." *See* Doc. 5338, ¶ 81. For claims received in the bankruptcy, the NMPP – again, specifically negotiated and approved by Survivors themselves – specifically require that the Archdiocese will only provide Proofs of Claim to law enforcement "if the Settlement Trust Advisory Committee informs both RCCANO and the Settlement Trustee, in writing, that the Settlement Trust Advisory Committee has obtained written permission from the Child Sexual Abuse Claimant for inclusion of his or her Proof of Claim with the letter." NMPP Sec. C(6)(c)(ii) [Doc 4762-7]. To date, the Archdiocese has not received any notices from the STAC advising as to any written permissions received from Survivors.

While the Archdiocese welcomes any Survivors who wish to provide the Archdiocese with such written permission to send their Proofs of Claim to law enforcement, the Archdiocese understands this is a difficult decision for Survivors and that the NMPP were specifically

negotiated to empower Survivors to best determine whether and how their own information is released to law enforcement, to avoid any re-traumatization. Each Survivor who is currently an adult with a claim filed in the Chapter 11 has the choice to report his or her claim to law enforcement pursuant to the specific process the Survivors themselves approved of during the bankruptcy. The implication of the Trustee's assertions in ¶ 81, *i.e.*, that the Archdiocese should be reporting Proofs of Claim to law enforcement in the absence of any such written permissions, would be a clear violation of the NMPP.

Moreover, under Archdiocesan policy, all other claims of sexual abuse not received in the Chapter 11 and subject to the NMPP are reported to law enforcement. The archdiocese has reported claims of sexual abuse to law enforcement and works with law enforcement in the investigation of these claims. Additionally, the first joint letter sent by the Archdiocese and the Trustee included more information reported to law enforcement than was required by the NMPP, and that inclusion was at the Archdiocese's request.

**E. LSU Document Archive**

The Archdiocese continues to produce documents to LSU pursuant to the requirements of the NMPP. The December 26, 2026 deadline for complete production to LSU will be met. In cooperation, the archdiocese has provided The Trustee with all documents that have been produced to LSU. The types of information required to be redacted in the documents, unrelated to privilege, were specifically negotiated with the Creditors' Committee and approved by Survivors and the Court under the terms of the NMPP. Moreover, the redactions are being made by an experienced third-party whose work is not limited or directly supervised by the Archdiocese. All redactions related to privilege have been documented on privilege logs that have been submitted to the

Trustee. The Archdiocese had not received any communications or complaints from the Trustee relating to any of the documents produced to LSU prior to the Trustee's Report.

**F. Meetings**

As the Trustee's Report notes, the requirement for group meetings between the Archbishop and Survivors has already been met. The Archdiocese fulfilled this commitment over six months ago when then-Archbishop Aymond visited each deanery and held a group meeting open to Survivors of sexual abuse. The schedule of his visits was published as required and the appropriate press release was issued. The communication of these meetings was vast and expensive. These visits were intentionally scheduled during a period that normally sees the greatest number of visitors to the geographic region of the Archdiocese, and at different times on both weekdays and weekends to accommodate work schedules, with Survivors able to choose from multiple times and locations for their convenience. There was no limitation on attendance or participation in any of the meetings. While some survivors may have indicated concerns to the Trustee with the meetings as held, many others have specifically expressed that the group meetings are not the appropriate forum. Many others have said they have found comfort and healing in the manner the Church welcomed them and continues to welcome and treat them with respect.

Last week, the Archdiocese received the Trustee's request for an additional group meeting beyond what the NMPP require, and Archbishop Checchio is reviewing this request in consultation with others while also noting, in his experience and as expressed to him by Survivors, that individual meetings offer the best opportunity for reconciliation and healing. As Archbishop Checchio has told the Trustee, he reserves part of his weekly schedule to meet with Survivors and has already met with Survivors at his office and at other neutral locations, as agreed. The

Archbishop continues to welcome any Survivor of sexual abuse to contact him as he strives to offer comfort and support in assisting each person's journey toward healing.

### G. Memorials

Last week, the Trustee requested information related to the memorials. Although the primary focus thus far has been on implementation of the NMPP processes related to the protection of current minors, the Archdiocese understands the importance of these memorials to Survivors. Regarding the Place of Remembrance at the entrance to the Chancery, the Archdiocese has been working on developing concepts related to a design for the memorial. The Archdiocese has prepared a response letter sharing those ideas, which has or will be sent to the Trustee today and has noted in the letter that it welcomes the Trustee's thoughts and input.

Regarding the memorial at Hope Haven-Madonna Manor, counsel for the Archdiocese reached out to counsel for the Creditors' Committee multiple times prior to the sale of the property to inquire about finalizing plans for the memorial but received no response. Indeed, even the Trustee has admitted he is dilatory in this aspect of finalizing the design memorial on what is now Jefferson Parish property. The Archdiocese placed the agreed-upon funding to construct the memorial in escrow and is ready to review his design when received and to issue the funds once the design and construction logistics have been arranged.

### H. Quarterly Reports

The Archdiocese does not understand the Trustee's complaint regarding Quarterly Reports in ¶ 91. Section C(6)(e) provides that the Archdiocese "will provide confidential quarterly summary reports…to (i) the YPA, (ii) the YPE, (iii) the IRB, (iv) the Child Protection Consultant during the Child Protection Consultant's Retention Period, and (v) the principal of any RCCANO School where (A) such Child was enrolled at the time the Child Sexual Abuse occurred, and (B)

the Child Sexual Abuse is asserted against an RCCANO Actor at such RCCANO School." Doc. 4762-7. All Quarterly Reports have been prepared and circulated as required by this provision of the NMPP.

The Archdiocese does not understand what the Trustee means by claiming that he "cannot identify whether a specific report of abusive behavior by a clergy member with which a STAC member is personally aware appeared in the report." *See* Doc 5338, ¶ 91. If he refers to a report made by a member of STAC, that incident is item 2026-1 on page 12 of the Semi-Annual Compliance report [Doc. 5196-1]. If it is not, the Archdiocese again asks the Trustee or his counsel to simply share that information with the Archdiocese so that it can be immediately addressed to ensure the continued protection of minors.

**I. Evaluation of Non-Incardinated Clergy or Religious**

The Archdiocese has not previously received any information or complaints from the Trustee related to the issue of evaluating non-incardinated clergy or religious. Since the effective date of the Plan, the Archdiocese has not received any claims of Child Sexual Abuse by currently active non-incardinated clergy or religious. The Archdiocese is in the process of implementing the evaluative protocols of the NMPP related to non-incardinated clergy and religious.

**J. Anti-Abuse Plaques**

The Archdiocese has confirmed that the Anti-Abuse Plaques are on display in all RCCANO Schools as required by the NMPP. In addition, non-RCCANO schools also received these plaques for display at their choosing. The Archdiocese is unaware of any "anecdotal, unverified information that some plaques allegedly *may* not be in place" and the Trustee has not provided any such information to the Archdiocese. *See* Doc 5338, ¶ 94 (emphasis original). Again, we ask the

Trustee to directly share information of any institution not in compliance so that issue can be addressed.

**K. Annual Remembrance Campaign**

The Archdiocese is confused that the Trustee finds fault in the use of the language, "God chose you to protect his children." Nearly identical language was approved by Survivors and is mandated by the NMPP in multiple ways. The same Anti-Abuse Plaques the Trustee complains "allegedly may not be in place" are required by NMPP Section C(11) to include this statement: "God has chosen you to protect His children." Additionally, NMPP Section C(13) requires the statement: "God has chosen you to protect His children" to be "included somewhere clearly visible on the RCCANO Website and in every issue of *The Clarion Herald*" in connection with contact information for law enforcement to report child abuse.

**CONCLUSION**

The Archdiocese is fully committed to maintaining a high standard of protection for children and vulnerable adults in its care. Parents and guardians have entrusted 48,779 youth to our care in ministry and our commitment to them has seen 18,802 adults (clergy, religious, employees, and volunteers) Safe Environment Certified for their protection. The Archdiocese is satisfied with its progress to date in completing the requirements of the NMPP and exceeding them in many instances, implementing each provision to ensure the protection of our youth and to respect the privacy and to promote the healing of Survivors. The Archdiocese is aware that implementation of the NMPP must always be accompanied by constant and ever-increasing vigilance to ensure the safety of our children. The Archdiocese reminds the Trustee that though certain persons may wish to renegotiate or alter the terms of the NMPP after-the-fact, the terms of the NMPP were extensively negotiated with representatives of Survivors, who subsequently

approved, in an overwhelming fashion, the terms of the provisions. Those provisions and their requirements must be followed, especially when it comes to provisions that are in place to respect the privacy of Survivors and to reduce potential instances of re-traumatization. The Archdiocese of New Orleans will never waiver in its commitment and efforts to maintain the safety of children and vulnerable adults.

Respectfully submitted,

**DENECHAUD AND DENECHAUD, L.L.C.**

_______*/s/ Ian P. Gunn*____________________
RICHARD A. BORDELON, NO. 14091
TODD R. GENNARDO, NO. 32039
DYLAN K. KNOLL, NO. 35507
IAN P. GUNN, NO. 35803
NICHOLAS M. KLEMM, NO. 41298
201 St. Charles Ave., Suite 3920
New Orleans, LA 70170
TEL: (504) 522-4756 | FAX: (504) 568-0783
Email: rbordelon@denechaudlaw.com
tgennardo@denechaudlaw.com
dknoll@denechaudlaw.com
igunn@denechaudlaw.com
nklemm@denechaudlaw.com
*Counsel for The Roman Catholic Church of the Archdiocese of New Orleans*

## CERTIFICATE OF SERVICE

I hereby caused a true and correct copy of the foregoing Motion to be served on September 17, 2026, upon all parties by electronic case filing for those parties receiving notice via the Court's Electronic Case Filing system.

_______*/s/ Ian P. Gunn*_________
IAN P. GUNN