**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| **IN RE:** | ) | |
| | ) | **Case No. 20-10846** |
| **THE ROMAN CATHOLIC CHURCH OF THE ARCHDIOCESE OF NEW ORLEANS** | ) | |
| | ) | **Section "A"** |
| | ) | |
| | ) | |
| **DEBTOR.**[1] | ) | **Chapter 11** |
| | ) | |

**<u>THE SETTLEMENT TRUSTEE'S THIRD STATUS REPORT</u>**

Donald C. Massey, as Settlement Trustee (the "<u>Settlement Trustee</u>"), submits this Third Status Report[2] and respectfully states as follows:

## I. INTRODUCTION

1. The Settlement Trust Team has made substantial progress advancing both the monetary and non-monetary aspects of the Joint Plan of Reorganization confirmed in this case. With respect to monetary issues, the Claims Reviewer has concluded the reconsideration process. The Distribution Agent has sent final distribution letters to most of the Survivor claimants. On November 5, 2026, the Settlement Trust began making monetary distributions to Survivors. **Many Survivor claimants have failed to provide required documentation to enable distributions. The Settlement Trustee urges all claimants who receive correspondence requesting documentation to respond expeditiously.**

2. With respect to the non-monetary plan provisions ("NMPP." *See* ECF 4762-7), on November 3, 2026, the Settlement Trustee participated in his third meeting with Archbishop Checchio. This status report will address several areas of focus with the NMPP.

[1] The last four digits of the Debtor's federal tax identification number are 8966. The Debtor's principal place of business is located at 7887 Walmsley Ave., New Orleans, LA 70125.
[2] The Settlement Trustee's initial *Status Report* was filed on May 13, 2026, and appears at ECF No. 5110. The Settlement Trustee's *Second Status Report* was filed on September 14, 2026, and appears at ECF No. 5338.

## II. MONETARY DISTRIBUTION UPDATE

3. The Settlement Trustee has advanced the distribution process and anticipates making distributions to a substantial majority of the claimants in the coming weeks. At this point, for claims that were filed timely and are not subject to objection, the main impediment to completing full distributions is a lack of paperwork compliance from certain claimants and a few remaining lien clearances.

### A. Distribution Letters

4. As a result of the diligent efforts of Brown Greer to clear liens and a prompt review of reconsideration requests by the Claims Reviewer, the Settlement Trust Team sent distribution letters to all claimants, or their living representatives, with point scores greater than zero, to inform them of the updated calculation of their monetary award for the initial distribution. In addition, letters containing written reasons from the Claims Reviewer were sent to the 98 claimants that had requested reconsideration of their point award.

5. In addition to the final points allocation and "points to dollar" calculation, all claimants who have cleared liens as of November 2, 2026 (approximately 600 claimants at that time), the Distribution sent them, or their counsel if they are represented, were sent Distribution Statements.

6. The distribution letters, in which Distribution Statements are included, inform claimants of the amount of anticipated distribution following completion of claim review and the entire reconsideration process. Distribution Statements detail that claimant's specific points to dollars award less any expenses. Claimants, or their counsel, are required to execute the Distribution Statements and return them to the Settlement Trust. The distribution letters also inform claimants of any missing documentation needed to enable the Settlement Trustee to distributed funds.

7. Also, late last week, Settlement Trust Lien Administrator, Brown Greer, reported that it completed negotiations with the additional Medicaid MCO entities, who have agreed to waive liens. This is an incredibly positive development. It will enable additional generation or additional Disbursement Statements, which will be sent to claimants, or their attorneys for represented claimants, this week.

8. The Settlement Trust Distribution Team will send additional settlement letters, including each specific claimants' Distribution Statements as additional liens are cleared.

9. For each claim, once lien clearance is complete, the Settlement Trustee will pay claims on a rolling basis, once claimants have provided all necessary documentation, including execution and return of the required release form and Distribution Statement.

10. As of November 5, 2026, the Settlement Trustee has begun paying claimants that had returned their Disbursement Statements and payments will continue in the coming weeks for claimants with cleared liens who have provided all necessary documentation.

**B. Documentation Issues**

11. Many claimants—both represented and *pro se*—have failed to provide documentation needed to enable the Settlement Trust Team to clear their claim for distribution. Other claimants have failed to provide critical demographic data so Medicare and Medicaid liens can be cleared for distributions. Examples of missing documentation include full social security numbers, dates of birth, notarized release forms (which are required under the Joint Plan), signed Distribution Statements, banking information, and W9s for distributions involving law firms. The Settlement Trust Team has sent multiple reminders for this documentation and will continue to do so. **The Settlement Trustee urges all Survivor claimants and counsel to promptly respond to requests for information so that distributions can be delivered. Failure to provide documentation may ultimately result in denial of claim and loss of payment.** Documentation

may be uploaded electronically via the Trust site at https://portal.ano-settlementtrust.com/ utilizing their 11-digit Notice or Unique ID or via encrypted Facsimile to 1-985-218-0006.

## III. NON-MONETARY PLAN PROVISIONS

8. The Settlement Trustee remains focused on the implementation of the non-monetary plan provisions. Based on ongoing discussions with Archbishop Checchio, the Settlement Trustee is optimistic that ANO, the Settlement Trust, and the scores of Survivors who have spoken publicly (as well as well as those who have shared quietly with Settlement Trust Team members) share the following common goals: protection of children, healing of Survivors, and a public demonstration that the ANO culture of the past has changed for the better. While many aspects of the NMPP remain on-going works in progress, the Settlement Trustee believes that there has been significant forward, positive movement and progress.

9. Archbishop Checchio and the Settlement Trustee met in person on November 3, 2026. The discussion was direct and collaborative. While, from the perspective of the Settlement Trustee, there are aspects of the NMPP that have not been fully implemented, improvement opportunities that exist, and certain adjustments that would be helpful to Survivors, the Settlement Trustee views the most recent discussion and subsequent action by the Archbishop as significant, positive, and encouraging.

10. This Status Report will focus on several of the key areas.

### A. UP Institute Meetings and Status

11. The Settlement Trustee has enjoyed multiple substantive and productive meetings with the UP Institute's experts. UP Institute is the Child Protection Consultant selected by ANO prior to Plan Confirmation. UP Institute has been accessible, engaging, and collaborative in the Settlement Trustee's efforts facilitate and make a connection with UP Institute and Survivors or others with important factual knowledge of troubling prior issues. UP Institute has received

documents and other tangible evidence of these concerns, which highlight deficiencies that existed within ANO prior to plan confirmation, and which the NMPP seek to eradicate. Also, the Settlement Trustee is actively working with UP Institute to document and prevent new reports of abuse, and to assure that prior shortcomings in the reporting and handling of claims, and failing to protect children and vulnerable persons against further abuse by known abusers, are not repeated. Further, UP Institute has confirmed that ANO has and continues to provide it with access to a broad and unfettered set of documents and key individuals.

12. The Settlement Trustee continues to believe the UP Institute is well-qualified and positioned to carry out the tasks assigned to it and prepare detailed reports regarding the Archdiocese child protection efforts and Survivor complaint intake.

13. The Settlement Trustee has coordinated additional meetings between UP Institute and Survivors and other persons with important knowledge, and he plans to set several more in the coming weeks.

14. Following the Settlement Trustee's recent meeting with Archbishop Checchio, the Settlement Trustee perceives a willingness and receptiveness by both UP Institute and Archbishop Checchio to work collaboratively with and otherwise receive input from the Settlement Trust.

15. Given a prior lack of communication on key issues, at several points the Settlement Trustee has expressed concerns whether the Settlement Trust, and therefore Survivors' interests, would be able to provide information to, as well as meet and interact with UP Institute experts, much less have an opportunity for review of preliminary drafts of UP Institute reports. The Settlement Trustee's biggest concerns have been over transparency in the report drafting process and the ability to assure that all opinions, favorable or not, are disclosed. That concern arose due to ANO's unilateral engagement of UP Institute, and no mention of the concerns described above.

16. Based upon the Settlement Trust Team's various interactions with UP Institute and the Settlement Trustee's most recent discussions with Archbishop Checchio, the Settlement Trustee has a much higher degree of confidence in the process. To assure the necessary protections, Settlement Trustee intends to work quickly to achieve a short, succinct agreement among ANO, UP Institute, and the Settlement Trust confirming these important points.

**B. <u>Internal Review Board Activity</u>**

17. The Archdiocese has an Internal Review Board ("IRB") that, among other things, evaluates abuse claims and makes recommendations to the Archbishop regarding allegations of clergy abuse. As the ANO's counsel reported to the Court at the last status conference, among its tasks, the IRB is apparently reviewing all clergy identified in any Proof of Claim filed in the bankruptcy case to evaluate whether additional names need to be added to the Archdiocese's list of credibly accused clergy. At the Settlement Trustee's most recent meeting with Archbishop Checchio, the Archbishop offered additional high-level clarity.

18. Archbishop Checchio confirmed that the IRB has commenced the review of *all* clergy who appear in any ANO Bankruptcy Proof of Claim as an alleged abuser. Additionally, there are multiple separately commenced, individual complaints that are in line to be presented to the IRB. ANO is well aware of the lack of an IRB meeting during pendency of the bankruptcy case, and Archbishop Checchio has confirmed ANO's commitment to move expeditiously through the process while honoring Canon Law and processes that surround the IRB's work.

19. Shortly after the November 3, 2026 meeting and consistent with the discussion, Archbishop Checchio announced that multiple credibly accused abusers have been added to the public listings that ANO began publishing in 2018. This first large batch of now publicly-named abusers are deceased abusers. The Settlement Trustee understands that there are ongoing investigations of living clergy who are currently under investigation and consideration by the IRB.

20. The Settlement Trustee is grateful that Archbishop Checchio has published the names of approximately twenty-seven credibly accused abusers.

21. The Settlement Trustee has previously expressed concerns on the individual IRB investigatory process, and in particular, perceived shortcomings and improvement opportunities in executing the investigations process. These are based on firsthand experience by Survivors and others attempting to commence an IRB investigation.

22. Also, the Settlement Trustee has requested additional detail regarding how claims are investigated and regarding the interaction between the IRB and any appointed investigator with Survivors. The Settlement Trustee has anecdotal evidence from certain Survivors involved in the IRB investigation process that raises questions whether the investigations are being conducted in a trauma-informed manner. Indeed, from individual, anecdotal reports, the process appears to have triggered Survivors at times. Whether mitigation of possible triggering has been considered or effected is unknown. The Settlement Trustee is in discussion with the Archbishop regarding these concerns to look for agreeable improvements.

23. Additionally, the Settlement Trustee has requested periodic reporting regarding the status of the investigations. Archbishop Checchio has expressed his absolute commitment to the important IRB process, and assuring that it works in a fair and just manner and consistent with Canon Law and other ecumenical considerations. The Settlement Trust made a direct request to the Archbishop to share substantive information confirming the serious and genuine commitment the Archbishop expressed. Given the nature of the investigations, the confidentiality that surrounds the process, and the need to complete its process prior to publicly announcing any findings or recommendations by the IRB, the Settlement Trust acknowledges that interim sharing of information would necessarily need to be confidential.

24. The Settlement Trustee hopes to work collaboratively with ANO to create an interim, confidential process that will allow for periodic (i.e., monthly), confidential reporting to provide the Settlement Trustee visibility into the progress of the IRB's work and allow the Settlement Trustee to confirm how seriously the Archdiocese is taking the substantial revelations of abuse that have come to light as a result of the bankruptcy case. Considering ANO's substantive, good faith efforts in its response of November 5, 2026, and actual public disclosures of that information on November 6, 2026, the Settlement Trustee is optimistic that further collaboration should result in a fair and reasonably non-intrusive process to monitor the IRB's progress on processing and addressing the information discovered during and derived from the bankruptcy process.

25. Based on the Settlement Trustee's most recent discussion with Archbishop Checchio and the Archbishop's subsequent actions, the Settlement Trustee anticipates further productive discussions that will allow for a better understanding of the process and ANO's willingness to consider improvement opportunities. We look forward to updating the Court, Survivors, and other interested persons on the progress of those efforts.

## C. <u>Anti-Abuse Plaques</u>

26. NMPP Section C(11) requires that ANO "prominently and visibly display a plaque at the entrance of each RCCANO School," which states:

> The Archdiocese of New Orleans has zero tolerance for abuse. God has chosen you to protect His children. If you have cause to believe a minor has been abused, contact the Louisiana Department of Children and Family Services (1-855-452-5437) or the local police.

27. The Archdiocese previously explained its position that the wording of the NMPP required plaques in only nine (9) schools, all of which are directly owned by ANO. In fact, while there are different ways to read and interpret that provisions of the NMPP, the parties do not

necessarily agree on the interpretation of the provision. When read in light of other provisions of the NMPP, the Settlement Trustee acknowledges that ANO had a good faith basis for its interpretation. Even so, on November 3, 2026, ANO counsel advised, and the Settlement Trustee confirmed directly with Archbishop Checchio, that ANO has actually placed anti-abuse plaques in all of its approximately sixty (60) schools.

28. Archbishop Checchio was adamant and steadfast during discussion that, regardless of whether ANO is required under the NMPP or not, he and his staff are committed to best practices to protect against any future abuse. Once he learned of the issue and gained a better understanding of the circumstances, Archbishop Checchio took immediate steps to directly request that anti-abuse plaques be placed in all schools.

29. This may seem like a small and potentially small change by some. The Settlement Trustee, however, views it as pivotal and significant action taken by the Archbishop. From the Settlement Trust Team's vantage point, it reflects a move away from literal, inflexible document interpretation that is more indicative of a culture that strives to assure protection of children and prevention of child sexual abuse within Archdiocese schools. The Archbishop's efforts are greatly appreciated.

**D. <u>VIRTUS Training</u>**

30. At an earlier status discussion in open court, the Settlement Trustee referenced an instance that was reported to him concerning the Archdiocese's VIRTUS training requirements. It concerned an unnamed person working with children at an ANO facility who had reportedly not undertaken ANO's required VIRTUS training. ANO has made several inquiries about the identity of the person who reportedly was not properly trained. The Settlement Trustee followed up each time. The person who initially related the issue has advised that the appropriate training has since been provided and that the individual described does not wish to come forward. In light of that

compliance, it seems be counterproductive to single out the individual or the church or school at issue.

31. Because ANO did not have, and has not had a fair opportunity to confront the allegation and investigate the accuracy of it, it seems fundamentally unfair to suggest there may be issue with ANO's compliance with that aspect of the NMPP, certainly if it is based solely upon that allegation. From the standpoint of the Settlement Trust, there is no additional factual information that contradicts ANO's representation of its compliance with the VIRTUS training aspects of the NMPP.

### E. Chancery/ ANO Headquarters Memorial

32. NMPP Section E(7) requires that ANO "design and install a place of remembrance for all survivors of Sexual Abuse at a prominent location at the entrance of the RCCANO chancery." At the most recent status conference, the Settlement Trustee was waiting on communication from ANO to interact with two designated STAC members. Since then, ANO has provided a description of the design and some details, including proposed inscriptions. Those were circulated to STAC members for consideration. Moreover, one STAC member was able to meet with ANO to gain a fulsome understanding of ANO's proposal.

33. The Settlement Trustee understands that ANO is planning to complete the memorial and dedicate it prior to April 2027. April has been designated as "Child Sexual Assault Awareness Month and National Child Abuse Prevention Month." NMPP Section C (12). As soon as more complete drafts become available, the Settlement Trustee will provide copies to the STAC members for their review and comments.

## IV. CONCLUSION

34. Shortly before the end of October, and almost two weeks prior to the target date, the Claims Review Team provided final points allocations to the Settlement Trustee. The Settlement

Trust Team re-doubled its efforts to provide the important, final allocations and "points to dollars" calculations to Survivors and their counsel. Those hundreds of letters were sent by expedited delivery service to Survivors and their counsel within a week of receipt of the allocations.

35. On a parallel track the Settlement Trust's Lien Agent has been diligent and timely in resolving the overwhelming majority of Medicare and Medicaid liens that were originally asserted by these federal and state entities or third-party providers acting for them. As of now, over 85.0% of Survivor's claims fit one of two categories: the claims were never subject to a lien, or any liens claimed have been resolved.

36. Distribution to Survivors commenced on November 5, 2026, approximately two weeks after notification of the final points allocations.

37. Thus, the time between full funding of the Settlement Trust on June 1, 2026, and commencing distribution of allocated settlement proceeds was approximately five (5) months.

38. A significant number of Survivors and counsel have not yet returned executed releases and/ or a related Distribution Statement for Survivors with no liens or cleared liens. Also, the Settlement Trust Team is waiting on payment information on a number of Survivors. The parties should be well aware, collectively and on an individual basis, of the important need to provide these materials and the consequence of failing to do so.

39. Since the last status conference on November 17, 2026, there has been significant progress with efforts to align the Settlement Trust and ANO on Non-Monetary Plan Provision issues. The Settlement Trust Team greatly appreciates the Archbishop's recent disclosure of names of twenty-seven (27) credibly accused abusers, and candid, productive discussions with the Settlement Trustee toward the end of working collaboratively on outstanding issues are much appreciated.

40. We look forward to our ongoing work on this important matter.

Dated: November 9, 2026

Respectfully submitted,



Donald C. Massey
Settlement Trustee of the Archdiocese of New Orleans Settlement Trust
1100 Poydras Street
Suite 3250 Energy Centre
New Orleans, LA 70163
(504) 588-1288
(504) 430-6276 (direct)
Email: dmassey@ano-settlementtrust.com

Bradley C. Knapp (La #35867)
Omer F. Kuebel, III (La #21682)
Troutman Pepper Locke LLP
601 Poydras Street, Suite 2660
New Orleans, Louisiana 70130-6036
Telephone: (504) 558-5111
Facsimile: (504) 558-5200
Email: brad.knapp@troutman.com
rick.kuebel@troutman.com

W. Steven Bryant (*admitted pro hac vice*)
Texas Bar. No. 24027413
Federal I.D. No. 32913
Troutman Pepper Locke LLP
300 Colorado Street, Ste. 2100
Austin, Texas 78701
Telephone: (512) 305-4726
Facsimile: (512) 305-4800
Email: steven.bryant@troutman.com

Jonathan C. Pedersen (La. Bar No. 32290)
516 N. Columbia Street
Covington, Louisiana 70433
Telephone: (985) 893-3607
Email: jcp@reedandpedersen.com

*Counsel to Donald C. Massey, as Settlement Trustee*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that, on November 9, 2026, true and correct copies of the foregoing Third Status Report was served electronically using the Court's electronic filing system and by U.S. Mail on the Notice Parties, listed below, as set forth in the Court's Order [ECF Doc. No. 5327]:

Jones Walker LLP
Attn: Mark Mintz, R. Patrick Vance,
Elizabeth Futrell, Samantha Oppenheim
201 St. Charles Ave.
New Orleans, LA 70170-5100

Lugenbuhl, Wheaton, Peck, Rankin & Hubbard
Attn: Douglas Draper, Greta Brouphy,
and Michael Landis
601 Poydras Street, Suite 2775
New Orleans, LA 70130

Office of the United States Trustee
Attn: Amanda George
400 Poydras Street, Suite 2110
New Orleans, LA 70130

*/s/ Bradley C. Knapp*
Bradley C. Knapp